IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Eric Slawin,<br><br>     Plaintiff,<br><br>v.<br><br>Bank of America Merchant Services, Bank of America Corporation, First Data Corporation, and Fiserv, Inc.,<br><br>     Defendants. | Civil Action File<br>Case No. 1:19-cv-04129-AT |

**DEFENDANTS' FIRST DATA CORPORATION AND FISERV, INC.'S MOTION TO DISMISS WITH MEMORANDUM IN SUPPORT**

Defendants First Data Corporation ("***First Data***") and Fiserv, Inc., ("***Fiserv***"),[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss Plaintiff Eric Slawin's ("***Plaintiff***") Complaint in its entirety for failure to state a claim.

**I.     INTRODUCTION**

Plaintiff is a former employee of Bank of America Merchant Services ("***BAMS***"), who alleges he expressed concerns to members of BAMS'

---

[1] Together with Bank of America Merchant Services and Bank of America Corporation, the "***Defendants.***"

management team regarding its non-compliance with certain data security requirements. Plaintiff alleges after he expressed his concerns and downloaded certain emails to his personal email address, he was terminated by BAMS in retaliation for his conduct in violation of Sarbanes-Oxley, the Consumer Financial Protection Act, and the Dodd-Frank Wall Street Reform and Consumer Protection Act.

Plaintiff does not allege he was employed by First Data or Fiserv. Plaintiff does not allege he ever expressed any of his concerns to any First Data or Fiserv employee or any member of their management teams. And, Plaintiff does not allege, nor could he, that First Data or Fiserv terminated his employment, nor that either entity was aware of his alleged protected conduct. As is quite clear from his Complaint, there is simply no factual basis for the claims Plaintiff asserts against First Data and Fiserv. Plaintiff's claims against First Data and Fiserv must be dismissed.

## II.   FACTUAL ALLEGATIONS

Plaintiff was hired by BAMS as a Vice President Operation Control Officer on December 7, 2017. (Compl. ¶ 40.) Plaintiff's job duties involved assessment of risk and compliance issues, as well as serving as a liaison between BAMS' Independent Risk Management, Complaint, and Internal Audit Segments. (Compl.

¶¶ 40-41.)  Plaintiff's core job function was to evaluate BAMS' compliance issues and to advise BAMS about responding to client inquiries regarding data security. (Compl. ¶ 41.)

One of Plaintiff's duties was also to advise BAMS on Payment Card Industry Data Security Standards ("**PCI DSS**"), a list of security requirements promulgated by the PCI Security Standards Council which apply to all organizations where cardholder data is stored, processed, or transmitted. (Compl. ¶ 22.)  BAMS was subject to these standards. (*Id.*)

Plaintiff alleges that during his tenure at BAMS, BAMS was never PCI-compliant. (Compl. ¶ 1.)  As a result, Plaintiff claims he had concerns regarding BAMS' responses to client inquiries regarding its PCI compliance, and repeatedly expressed his concerns to executives at BAMS, telling them he believed BAMS was engaging in fraud by not disclosing its PCI non-compliance status. (Compl. ¶¶ 64, 66.)  Plaintiff does not allege First Data was non-compliant; but, instead, acknowledges that at all relevant times First Data was in fact PCI compliant. (Compl. ¶ 37.)

During the month of July 2017, Plaintiff admits he began downloading work emails to his personal email account related to BAMS' alleged PCI non-compliance. (Compl. ¶100.)  On December 8, 2017, a representative from BAMS

Human Resources Department approached Plaintiff regarding his downloading of company emails and asked Plaintiff to destroy these emails and execute an affidavit to that effect. (Compl. ¶¶ 101-102.) Plaintiff refused to sign the affidavit or destroy the emails he had sent to his personal email address. (Compl. ¶104.) As a result, BAMS terminated Plaintiff's employment on December 12, 2017. (Compl. ¶¶ 67, 105.) Plaintiff filed a whistleblower complaint with the SEC on the same day. (Compl. ¶ 106.)

On September 13, 2019, Plaintiff filed his Complaint in this action alleging Defendants had retaliated against him for being a whistleblower in violation of: (1) Sarbanes-Oxley, 18 U.S.C. § 1514A; (2) the Consumer Financial Protection Act, 12 U.S.C. §5567; and (3) Dodd-Frank, 15 U.S.C. § 78u-g. (*See generally* Compl.)

### III.   ARGUMENT AND CITATION TO AUTHORITY

#### A.   <u>Applicable Legal Standard Under Rule 12(b)(6).</u>

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, a complaint must contain

enough facts to indicate the presence of the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Moreover, "conclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 188 (11th Cir. 2002).

### B. First Data and Fiserv Did Not Employ Plaintiff and Were Not Involved in Plaintiff's Termination.

Each of Plaintiff's claims requires Plaintiff be an "employee" and that he be retaliated against by his "employer" or in the terms and conditions of his "employment." Neither First Data nor Fiserv ever employed Plaintiff, nor does Plaintiff allege otherwise. Plaintiff's claims against First Data and Fiserv must be dismissed.

Sarbanes-Oxley ("***SOX***") states: "No company with a class of securities registered under section 12 of the [SEC] . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate ***against an employee*** in the terms and conditions of employment because of any lawful act done by the employee . . . to provide information . . . regarding any conduct ***which the employee*** reasonably believes constitutes a violation . . . ." *See* 18 U.S.C. § 1514A (emphasis added).

Similarly, the Consumer Financial Protection Act provides: "No covered person . . . shall terminate or in any other way discriminate against, or cause to be terminated or discriminated against, *any covered employee*." *See* 12 U.S.C. § 5567 (emphasis added).  The term "covered employee" means any individual performing tasks related to the offering or provision of a consumer financial product or service. 12 U.S.C. § 5567 (b).  The Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6 ("***Dodd-Frank***") also provides: "***No employer*** may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower *in the terms and conditions of employment* because of any lawful act done by the whistleblower." 15 U.S.C. § 78u-6 (h)(1)(A) (emphasis added).

First Data and Fiserv did not employ Plaintiff – BAMS did. (Compl. ¶ 1.) Plaintiff repeatedly alleges throughout his Complaint that BAMS terminated his employment, that BAMS was allegedly PCI non-compliant, and that BAMS was the entity allegedly committing a fraud on its customers and shareholders. (Compl. ¶¶ 1, 47, 50, 66, 105, 107, 120-121, 132-133.)  Plaintiff does not, and cannot, allege First Data (or Fiserv) employed him, terminated his employment, or that either entity was involved in, or even aware of, his termination.  Instead, Plaintiff alleges he was only employed by, retaliated against, and terminated by BAMS.

(Compl. ¶¶ 1, 105, 107, 120-121, 132-133.) The only substantive allegation Plaintiff sets forth regarding First Data in his entire Complaint is that First Data was "[a]t all relevant times" PCI compliant. (Compl. ¶ 37.)

First Data and Fiserv cannot be held liable for retaliation under any of the statutes set forth in Plaintiff's Complaint where neither entity employed Plaintiff, affected the terms and conditions of his employment, nor made the decision to terminate his employment. Plaintiff's Complaint against First Data and Fiserv must be dismissed.

### C. Plaintiff Fails To Plead Any Knowledge by First Data or Fiserv Regarding any Whistleblower Activity.

Plaintiff does not plead anywhere in his Complaint that First Data (or Fiserv) was aware that BAMS was PCI non-compliant, nor that he informed First Data of BAMS' non-compliance. Therefore, and even assuming Plaintiff had pled that First Data was his employer, Plaintiff has not pled First Data had any knowledge of his alleged protected activity—a necessary element to a retaliation claim under every statute Plaintiff relies upon.

> 1. Each of Plaintiff's claims requires knowledge by the employer.
>    (a) SOX Prima Facie case.

The Department of Labor regulations provide that a complaint alleging a violation of SOX "shall be dismissed unless the complainant has made a *prima*

*facie* showing that protected behavior or conduct was a contributing factor in the unfavorable personnel action alleged in the complaint." 29 C.F.R. § 1980.104(b) (2010). "To make this showing, the employee must prove by a preponderance of the evidence that (1) he engaged in protected activity, (2) the employer knew or suspected that the employee engaged in a protected activity, (3) the employee suffered an unfavorable personnel action, and (4) the protected activity was a contributing factor in the unfavorable action." *Gale v. U.S. Dep't of Labor*, 384 F. App'x 926, 929 (11th Cir. 2010).

> *(b) Consumer Financial Protection Act ("CFPA") Prima Facie case.*

In order to establish a *prima facie* case of retaliation under the CFPA, Plaintiff must plead that "(1) he engaged in protected activity; (2) the employer knew or suspected, either actually or constructively, that he engaged in the protected activity; (3) he suffered an unfavorable personnel or employment action; and (4) the protected activity was a contributing factor in the unfavorable action." *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 805 (6th Cir. 2015).

> *(c) Dodd-Frank Prima Facie case.*

[A] valid claim for retaliation under Dodd-Frank . . . must allege that (1) plaintiff engaged in a protected activity, (2) plaintiff suffered a materially adverse employment action, and (3) the adverse action was causally connected to the

protected activity." *Hall v. Teva Pharm. USA, Inc.*, 214 F. Supp. 3d 1281, 1289 (S.D. Fla. 2016); *see also Kruchoski v. MiMedx Grp., Inc.*, No. 1:17-CV-00577-LMM, 2017 WL 3433697, at *4 (N.D. Ga. June 13, 2017) (holding same).

### 2. Plaintiff has failed to plead a *prima facie* case under each statute.

Plaintiff has failed to plead a *prima facie* case against First Data or Fiserv under any of the statutes upon which he bases his Complaint. Plaintiff does not allege First Data or Fiserv knew of his alleged protected activity, nor that they had any knowledge of BAMS' failure to comply with PCI-DSS. Instead Plaintiff repeatedly alleges his protests "were to the highest levels of BAMS management." (Compl. ¶¶ 80, 83, 85, 117, 129.) First Data and Fiserv cannot retaliate against Plaintiff based on something of which they have no knowledge.

Nor does Plaintiff set forth any allegations that BAMS management reported Plaintiff's concerns to anyone at First Data, or plead that he ever made any such protests or expressed any of his concerns to First Data or Fiserv. In fact, Plaintiff does not allege First Data's or Fiserv's actions were improper or fraudulent in any way, instead admitting First Data was PCI compliant at all times. (Compl. ¶ 37.)

As Plaintiff has failed to plead a *prima facie* case against First Data or Fiserv under SOX, the CFPA, or Dodd-Frank, his claims must be dismissed.

### D. Plaintiff's Claim Under Dodd-Frank Must Be Dismissed Because Plaintiff Is Not a Whistleblower.

Dodd-Frank makes it unlawful for an employer to "discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower" in "providing information" to the SEC." A whistleblower is defined under the Act as any individual who provides . . . information relating to a violation of the securities laws to the [SEC], in a manner established, by rule or regulation, by the [SEC]." 15 U.S.C. § 78u-6(a)(6).

Plaintiff does not allege when he filed his SEC complaint or whether BAMS (or any other defendant) was even aware of the complaint prior to his termination. The Supreme Court has clearly held "retaliation for internal reporting would not be reached by Dodd–Frank, for [it] applies only where the employer retaliates against the employee '*because of*' the SEC reporting." *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 779 (2018) (emphasis added) (noting if the employer is "unaware that the employee has alerted the SEC" no liability under Dodd-Frank can exist); *Price v. UBS Fin. Servs.*, No. 17-cv-01882, 2018 U.S. Dist. LEXIS 66200, 2018 WL 1885669 (D.N.J. Apr. 19, 2018) (finding that the Supreme Court was "unequivocal" in holding that an individual who has not reported a violation to the

SEC falls outside the Dodd-Frank Act's scope); *Ransaw v. United Servs. Auto. Ass'n*, No. 2:16-CV-147-MHT-GMB, 2017 WL 2858295, at *4 (M.D. Ala. May 23, 2017) ("[T]he plain language of the Dodd-Frank whistleblower-protection provision creates a private cause of action only for individuals who provide information relating to a violation of the securities laws to the SEC.")

Plaintiff was terminated on December 12, 2017. (Compl. ¶ 105.) On the same day, Plaintiff filed his whistleblower complaint with the SEC. (Compl. ¶ 106.) No retaliation can exist where the protected conduct occurred after or, at worst, simultaneously with, Plaintiff's termination. Although Plaintiff generally pleads he is a "whistleblower as defined by Dodd Frank since he filed a whistleblower complaint online with the SEC," he fails to plead whether that complaint was filed prior to his termination or whether BAMS, or any other defendant, was aware of his SEC complaint. (Compl. ¶ 137.) Instead, Plaintiff generally pleads he was "terminated in retaliation for his repeated disclosures regarding BAMS fraud" . . . ." and that such "protected activity contributed to the decision to terminate him." (Compl. ¶¶139-140.) Plaintiff therefore appears to allege his internal reports to members of BAMS' management team qualify as protected conduct under Dodd-Frank. They do not. *See Digital Realty Tr., Inc.,*

138 S. Ct. at 779.  Plaintiff has failed to plead his SEC complaint caused, or at a minimum was a contributing factor to, his termination.

Accordingly, Plaintiff does not qualify as a whistleblower under Dodd-Frank and his Complaint must be dismissed.

### E.     Plaintiff's Allegation That BAMS Was a Subsidiary of First Data Does Not Make First Data Liable For Its Actions.

Finally, and to the extent Plaintiff claims his allegation that BAMS is a "subsidiary" of First Data (Compl. ¶ 19) is sufficient to make First Data liable for BAMS' actions –it is not.  Even if BAMS was a subsidiary of First Data, in order to impute liability upon a parent corporation, Plaintiff would be required to plead facts demonstrating BAMS and First Data operated as an integrated enterprise. Plaintiff has not (and cannot) make any such allegations.

To determine whether two entities constitute an integrated enterprise sufficient to impute liability upon the parent entity courts, consider "the following criteria: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987). In assessing whether corporate entities have interrelated operations, courts assess whether the businesses have "combined accounting records, bank accounts, lines of credit, payroll preparation, switchboard, telephone numbers, or offices." *Hegre*

*v. Alberto-Culver USA, Inc.,* 508 F. Supp. 2d 1320, 1333 (S.D. Ga. 2007), aff'd, 275 F. App'x 873 (11th Cir. 2008). "Courts have recognized that the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Id.* at 1334 (internal quotations omitted).

Plaintiff allegation that BAMS is a subsidiary of First Data, standing alone, is not sufficient to claim First Data is liable for BAMS' actions. Plaintiff does not allege there was any common management, interrelation of operations, or that First Data controlled BAMS' day-to-day operations. Nor does Plaintiff allege there were any common employees or shared resources between the two entities. In fact, every allegation in Plaintiff's Complaint makes it clear that BAMS had its own operating structure and separate management team to whom Plaintiff reported his concerns. (Compl. ¶¶ 43, 45, 46, 53, 101) (alleging Plaintiff reported his concerns to BAMS' Senior Vice President, BAMS' Head of Operations and Planning, BAMS' Director of Risk and Control, BAMS' Vice President of Corporate Information and Security, BAMS' Senior Vice President of Merchant Data Security and Cyber Security Director, and BAMS' VP of Human Resources.) Plaintiff has failed to plead any facts demonstrating that BAMS and First Data operated as an integrated enterprise and as, such, his Complaint is insufficient to

the extent it suggests liability based on the relationship between BAMS and First Data (or Fiserv).

## IV. CONCLUSION

Plaintiff's Complaint fails to allege that either First Data or Fiserv employed him, were aware of his alleged protected activity, or played any role in his termination. Plaintiff's claims against First Data and Fiserv should be dismissed in their entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

Respectfully submitted this 13th day of November, 2019.

          */s/ Aiten M. McPherson*
          Christopher Paul Galanek
          E-Mail:  chris.galanek@bclplaw.com
          Aiten M. McPherson
          E-Mail:  aiten.mcpherson@bclplaw.com
          **BRYAN CAVE LEIGHTON PAISNER LLP**
          One Atlantic Center, Fourteenth Floor
          1201 W. Peachtree Street, NW
          Atlanta, GA  30309
          Telephone:   (404) 572-6600

*Counsel for First Data Corporation and Fiserv, Inc.*

## **CERTIFICATION UNDER L.R. 7.1.D.**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is a computer document and was prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1.C.

                                        */s/ Aiten M. McPherson*
                                        Aiten M. McPherson

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Eric Slawin,<br><br>       Plaintiff,<br><br>v.<br><br>Bank of America Merchant Services, Bank of America Corporation, First Data Corporation, and Fiserv, Inc.,<br><br>       Defendants. | Civil Action File<br>Case No. 1:19-cv-04129-AT |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2019, I electronically filed the foregoing **DEFENDANTS' FIRST DATA CORPORATION AND FISERV, INC.'S MOTION TO DISMISS WITH MEMORANDUM IN SUPPORT** with the Clerk of Court by using the CM/ECF system and first class mail as follows:

>Jean Simonoff Marx, Esq.
>Robert N. Marx, Esq.
>MARX Law Group
>1050 Crown Point Parkway
>Suite 500
>Atlanta, GA 303338

   */s/ Aiten M. McPherson*
   Aiten M. McPherson
   E-Mail:   aiten.mcpherson@bclplaw.com

**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309
Telephone:    (404) 572-6600

*Counsel for First Data Corporation and Fiserv, Inc.*