BEFORE THE UNITED STATES DEPARTMENT OF LABOR
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION

ERIC SLAWIN,

    Complainant,

v.

                                                    Case No. 4-3750-18-035

BANK OF AMERICA MERCHANT
SERVICES, LLC; MARK KENDALL;
NATASHA COLLINS, SHERRA GRISSOM,
THOMAS FONTANA, TIM TYNAN, and
MIKE SOLAN,

    Respondents.

## AMENDED COMPLAINT

This amends the Online Whistleblower Complaint submitted by Mr. Slawin (herein after "Complainant" or "Mr. Slawin") on December 12, 2017 against Bank of America Merchant Services, LLC. (hereinafter "BAMS")[1]. This Amended Complaint is submitted by Eric Slawin, by and through his counsel of record, Jean Simonoff Marx and Robert N. Marx, of Marx & Marx, L.L.C. against Bank of America Merchant Services, LLC ("hereinafter BAMS"), Mark Kendall, Natasha

---

[1] BAMS is referenced in SEC filings as BA Merchant Services, LLC or as Banc of America Merchant Services, LLC.

1

Collins, Sherra Grisson, Thomas Fontana, Tim Tynan and Mike Solan, for unlawful retaliation in violation of Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. Sec. 1514A and Title X of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §5567(a) following his complaints about BAMS' failure to be PCI compliant as a payment process servicer, and his refusal to cooperate in a conspiracy to cover up BAMS' PCI noncompliance. Specifically, as a result of his aforesaid complaints and immediately following his documented refusal to cover up Respondents' PCI noncompliance, Mr. Slawin was terminated by BAMS. Mr. Slawin seeks make whole relief, including damages for back pay and reinstatement or front pay in lieu thereof, special damages including for mental anguish and injury to his reputation, an award of attorneys' fees and costs, and such other relief as is available and just and proper.

## I. PARTIES

Mr. Slawin is a male natural born citizen residing in Fulton County in the State of Georgia. He is the former VP Operations Control Officer at Respondent BAMS. Mr. Slawin was hired by Respondent BAMS for that position on November 5, 2015 and started his employment at BAMS on December 7, 2015. Mr. Slawin's job duties entailed serving as the liaison with BAMS Independent Risk Management, Compliance and Internal Audit segments. In general, this involved Mr. Slawin's identification and assessment of risk and compliance issues,

2

his development of risk and compliance strategies, and his oversight of attainment of milestones, including remediation if necessary, to ensure successful Internal Audit results. Mr. Slawin has served in the Securities and Banking Regulatory and Compliance field since 1991 and has held numerous regulatory and compliance positions both for governmental regulatory agencies as well as for other banks. Accordingly, Mr. Slawin is qualified for his job as VP Operations Control Officer at BAMS. Mr. Slawin was employed by BAMS from December 7, 2015 until December 12, 2017, when he was notified of his termination. During his employment, Mr. Slawin reported directly to Respondent Natasha Collins and to Respondent Mark Kendall. Mr. Slawin also reported to Brian Rubin

Respondent BAMS was established in 2009 as a joint venture between Bank of America ("BOA") and First Data Corporation ("First Data") to provide payment processing services. BOA and First Data have roughly equivalent ownership stakes in BAMS, with a third party investor owning a very small stake. BAMS is a subsidiary of First Data Corporation and is listed as such on First Data's SEC filings, including its most recent 10K filed with the SEC on February 21, 2018. First Data Corporation is a publicly traded company. BAMS is also denominated as an affiliate of BOA and included in BOA's financial reports filed with the SEC. BOA is a publicly traded company.

Respondent Tim Tynan is a natural born citizen on information and belief

residing in New York, and is the Chief Executive Officer of Respondent BAMS.

Respondent Thomas Fontana is a natural born citizen on information and belief residing in New York, and the Chief Risk Officer of Respondent BAMS. Mr. Fontana reports to Respondent Tim Tynan.

Respondent Sherra Grissom is a natural born citizen on information and belief residing in Mecklenburg County, North Carolina, and a Senior Vice President, Business Controls Manager of Respondent BAMS. Ms. Grissom reports to Thomas Fontana.

Respondent Natasha Collins is a natural born citizen on information and belief residing in Atlanta, Georgia, and is a Senior Vice President, Head of Sales Operations and Planning of Respondent BAMS. Ms. Collins reports to Tim Tynan.

Respondent Mark Kendall is a natural born citizen on information and belief residing in Mecklenburg County North Carolina, and is Director of Risk and Controls at Respondent BAMS. Mr. Kendall reports to Ms. Collins.

'Respondent Mike Solan is a natural born citizen on information and belief residing in Mecklenburg County North Carolina, and is Assistant Vice President, Human Resources at Respondent BAMS.

## II. FACTS

Respondent BAMS is a subsidiary of First Data Corporation as reflected in First Data Corporation's SEC filings and its financial information is included in

those filings. Accordingly, BAMS is a covered employer within the meaning of Section 806 of the Sarbanes-Oxley Act,18 U.S.C. Sec. 1514A.

Respondent BAMS provides payment processing services to major private merchants and governmental organizations to facilitate credit and debit card transactions between these entities and their customers. Processing credit and debit card transactions involves the acquisition of and access to "Primary Account Number " ("PAN") data which is a key piece of information on consumers' credit or debit cards. BAMS provides numerous services to its clients that involves its acquisition and transmission of full PAN data. Accordingly, BAMS is required to be "PCI compliant". PCI compliance refers to adherence to a set of security standards embodied in the Payment Card Industry Data Security Standard (PCI DDS), to which all companies, including providers of payment processing services such as BAMS must adhere since it accepts, processes, stores or transmits credit or debit card information. As a payment processor BAMS comes within the meaning of CFPA, 12 U.S.C. §5481(15)(A)(vii).

At all relevant times from December 7, 2015 until he was fired on December 12, 2017, Complainant Eric Slawin was an employee of Respondent BAMS, and is subject to the protections of Section 806 of the Sarbanes-Oxley Act,18 U.S.C. Sec. 1514A and Title X of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §5567(a).

At the time he was hired Mr. Slawin reported directly to Defendant Natasha Collins, and commencing in September 2017 reported directly to Mark Kendall who reported to Ms. Collins.

Mr. Slawin's core job function and responsibilities centered around his evaluation and assessment of compliance issues of BAMS, his evaluation and assessment of risk for BAMS, and his development and proposal of measures to mitigate such risks. Central to this job function and responsibility was his responsibility for advising BAMS regarding client inquiries regarding data security which embodies the aforementioned PAN data.

Beginning in or around May 2017, the issue of BAMS being non PCI compliant with respect to PAN data arose among the highest level of BAMS executives and became a subject of discussion. One area in which the issue of BAMS' non PCI compliance rose was in the context of how BAMS should respond to client questionnaires that raised questions regarding how data was secured by BAMS. As noted above, BAMS was required to be PCI compliant, because BAMS received PAN data, stored PAN data and transmitted PAN data, as BAMS' highest level executives confirmed.

During May and throughout the summer of 2017, there were numerous email exchanges including among the highest level of BAMS' executives regarding the magnitude of the PCI non compliance issue given the large volume of PAN

data, and BAMS' resolute decision *not* to become PCI compliant.

Joseph Moll had been Vice President Corporate Information Security Officer, Risk and Compliance at BAMS. In or about July 2017 Mr. Moll described thousands of instances in which "PAN data is being mishandled by BAMS", noting that that figure was under-representative of all PCI violations since those numbers were reflecting emailing PAN data and did not include all instances in which PAN data was stored, processed or otherwise transmitted.[2]

In or about June 2017 David Ades, Executive Vice President, General Manager and Head of Sales at BAMS reporting directly to Tim Tynan, BAMS' CEO, sent out an email which corroborated his conversations with other senior BAMS executives regarding BAMS' non PCI compliance, including Allie Davis, Senior Vice President Risk Governance and Merchant Compliance at BAMS. In his email, Mr. Ades confirmed that BAMS uses full PAN data, that BAMS is not PCI compliant, and that BAMS did not want to become PCI compliant because it is "very costly and time consuming."

Other emails similarly reflected high level corporate knowledge of BAMS' non PCI compliance, and BAMS' consideration of how to deflect questions and handle representations to customers regarding data security without BAMS becoming PCI compliant.

---

[2] Mr. Moll left that position at BAMS on information and belief in August 2017.

Throughout the summer and continuing through the fall of 2017 Mr. Slawin participated in numerous conversations in which he discussed with his superiors and other senior executives at BAMS, including Allie Davis and Joseph Moll, the problems surrounding BAMS' being non PCI compliant. In particular these discussions included the issue of BAMS' misrepresentation to its customers on this PCI compliance/non compliance issue, and BAMS' efforts to sidestep this data security issue in lieu of becoming PCI compliant. Mr. Slawin also had discussions with Mark Kendall to whom Mr. Slawin directly reported when he was terminated, and Sherra Grissom, in which he discussed concerns about BAMS' non PCI compliance. During these conversations the issue was raised about the ramifications if this information were to become public. Mr. Slawin also expressed his concerns about BAMS not being PCI compliant to Brian Rubin, Business Management, PMO and Process Engineering Executive. During his tenure at BAMS, Mr. Slawin had also reported to Mr. Rubin.

Mr. Slawin was particularly concerned about BAMS' PCI noncompliance because of the seriousness of data security and risk to BAMS customers' and their customers in light of such risk, BAMS' exposure to large fines as a result of being non PCI compliant, and the fraud being perpetuated by BAMS through both solicitation of new customers, and to existing customers by deliberately misleading such customers regarding the PCI compliance issue. Indeed, since new business

relationships were cultivated and existing business relationships were serviced through the internet, mail, email, and over the phone, omissions and misleading communications regarding data security and PCI compliance implicated mail and wire fraud issues. In addition, Mr. Slawin was concerned about SEC fraud as well as fraud upon shareholders as a result of BAMS' financial status inclusion in BAMS' parent company, First Data's reports filed with the SEC, as well as BOA's financial statements filed with the SEC in which BAM's results were included on a consolidated basis.

BAMS' response to the PAN data issue and its non PCI compliance was to deflect its non PCI compliance by trying to get its parent, First Data, to answer customer questionnaires regarding data security, in order to camouflage that BAMS, which received, retained and transmitted its customers' PAN data, was not PCI compliant. Mr. Slawin was expected to go along with the deflection and information omission strategy. Mark Kendall specifically had directed that discussion of the PAN data and PCI non compliance issue be kept quiet, and that written references to this issue be deleted. During this time, Mr. Slawin began to download emails to his personal email regarding the PAN data and BAMS' PCI non compliance issue because he was being drawn into fraudulent and improper data security practices by BAMS which concerned him.

On December 8, 2017 Mr. Slawin was approached by Mike Solan, BAMS

VP of Human Resources, and Mark Kendall concerning the emails regarding the PAN data and PCI non compliance issue that Mr. Slawin had sent to his personal email address. Mr. Solan and Mr. Kendall wanted Mr. Slawin to execute an affidavit affirming that he (Mr. Slawin) had destroyed all emails that he had sent to his personal email address. On December 11, 2018 at approximately 10 AM and 2:17 PM, Mr. Solan sent to Mr. Slawin emails asking Mr. Slawin to contact him to discuss next steps in light of their conversation the prior Friday regarding the emails, and Mr. Solan's attempt to get Mr. Slawin to sign the affidavit he had sent him. Mr. Slawin responded by email on December 11, 2018 at 3:44 PM that he would not sign the affidavit because doing so "could make it appear" that he agreed with BAMS' actions to cover up its non PCI compliance, and that he did "not at any time" agree with these actions. BAMS terminated Mr. Slawin's employment on December 12, 2017. Mr. Slawin filed a whistleblower complaint with the SEC on December 12, 2017.

## III. RELIEF REQUESTED

As a result of the unlawful retaliatory actions of Bank of America Merchant Services, LLC, Mark Kendall, Natasha Collins, Sherra Grissom, Thomas Fontana, Tim Tynan, and Mike Solan, Complaint charges Respondents with violation of Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. Sec. 1514A and Title X of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §5567(a). Complainant

has suffered substantial damages and requests that the following relief be awarded:

1. An Order declaring that each of the Respondents unlawfully retaliated and/or discriminated against Mr. Slawin in violation of the Sarbanes Oxley Act;

2. . An Order declaring that each of the Respondents unlawfully retaliated and/or discriminated against Mr. Slawin in violation of Title X of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §5567(a).

3. An Order prohibiting any further retaliation or discrimination against Mr. Slawin, including but not limited to, acting upon or publishing the untrue assertion that he was fired "for cause", or words to that effect;

4. An Order expunging from Complainant's employment record of any negative references or inferences that may have been caused by or can be attributed to the unlawful retaliation and/or discrimination;

5. An Order requiring that Bank of America Merchant Services, LLC reinstate the Complainant;

6. An Order for front pay in lieu of reinstatement in the event that reinstatement is not possible or practicable;

7. An Order requiring back pay and lost benefits to be paid to the Complainant from the date of his termination and continuing;

8. An Order awarding monetary relief to the Complainant and against the respondents, jointly and severally for emotional distress and mental anguish;

9. An Order awarding special damages to the Complainant and against the respondents, jointly and severally including to compensate him for damage to his reputation;

10. An Order awarding payment of all attorneys' fees and costs (including but not limited to transcripts, travel, and expert witness fees) to each of the Complainants and against the respondents, jointly and severally;

11. An Order awarding interest on all monetary sums awarded compounded daily; and

12. An Order providing such other and further relief as may be requested or determined by the agency to be just and proper.

Respectfully submitted, this 27th day of April 2018.

*/s/ Jean Simonoff Marx*
JEAN SIMONOFF MARX
Georgia Bar No. 475276
ROBERT N. MARX
Georgia Bar No. 475280
ATTORNEYS FOR COMPLAINANT
1050 Crown Pointe Parkway
Suite 500
Atlanta, GA 30338
lawyers@marxlawgroup.com
(404) 261-9559