**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ERIC SLAWIN, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 1:19-cv-04129-AT |
| v. | : | |
| | : | |
| BANK OF AMERICA | : | |
| MERCHANT SERVICES, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT BANC OF AMERICA MERCHANT SERVICES, LLC'S
MOTION TO DISMISS COUNTS II AND III
OF PLAINTIFF'S COMPLAINT
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Defendant Banc of America Merchant Services, LLC[1] ("BAMS" or

"Defendant"), by undersigned counsel and pursuant to Federal Rule of Civil

Procedure 12(b)(6), respectfully moves for an order dismissing Counts II and III of

Plaintiff's Complaint.  In support of its Motion, Defendant states as follows.

<u>**INTRODUCTION**</u>

Eric Slawin is a former employee of BAMS, a limited liability company

whose two members are subsidiaries of Fiserv, Inc. and Bank of America

---

[1] Banc of America Merchant Services, LLC is incorrectly identified by its trade name, "Bank of America Merchant Services" in the Complaint.

Corporation.  BAMS provides card and payment processing products and services to merchants, in coordination with its members.  In early 2017, BAMS' risk organization raised a question about Payment Card Industry Data Security Standard ("PCI DSS") compliance.  Consistent with BAMS' commitment to data security, transparency and compliance, BAMS self-identified the question as an internal audit issue so that it could be assessed and resolved, as appropriate.  Slawin was tasked with leading the effort, but failed to act with any urgency.  By early fall 2017, Slawin's failure to complete assigned tasks and meet deadlines had become so significant that his managers formally counselled him about the need to improve his performance.  Despite this, Slawin's performance did not improve and he continued to fail to complete his work in a timely and effective manner.

In late November 2017, BAMS' data loss prevention system flagged that Slawin had sent internal emails regarding the audit issue to his personal email address in violation of BAMS' information security policies and practices.  Slawin was evasive when he was questioned about why he had done so and seemed unconcerned about his serious policy violations.  As a result, BAMS terminated Slawin's employment.  Had Slawin done his job, he would know that the outcome of the assessment is that BAMS is in full compliance with its legal and contractual data security requirements.

The story set forth in Slawin's Complaint has quite a different spin and its factual allegations must be accepted as true only for purposes of this motion. Slawin alleges that BAMS does not comply with its PCI DSS obligations, at least with respect to its role in the chargeback process. (*E.g.*, Compl. ¶¶ 20-39, 47.) Slawin alleges that throughout the summer and fall of 2017 he discussed this with his supervisors and other senior executives at BAMS, as well as his concerns that BAMS was misleading its customers regarding its PCI compliance. (*Id.* ¶ 60.) Slawin further alleges that he began downloading emails regarding the issue to his personal email because he was concerned about being drawn into fraudulent and improper data security practices. (*Id.* ¶ 100.) According to Slawin, BAMS terminated his employment when he protested the "effort to make him complicit in BAMS' fraud" by asking him to sign an affidavit affirming that he had destroyed BAMS' confidential emails. (*Id.* ¶¶ 100-105.)

Slawin now seeks to bring whistleblower retaliation claims under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (Count I), the Consumer Financial Protection Act, 12 U.S.C. § 5567 ("CFPA") (Count II), and the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6 ("Dodd-Frank") (Count III). As discussed below, Slawin cannot state a claim for relief under either

of the latter two statutes, the CFPA or Dodd-Frank.  Accordingly, Counts II and III of the Complaint should be dismissed.

## ARGUMENT

### I.    Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).

"The tenet that a court must accept as true all of the allegations contained in a complaint," however, "is inapplicable to legal conclusions."  *Id*. (citing *Twombly*, 550 U.S. at 555 and noting that "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'").  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## II.   Slawin Cannot State A Claim Under the CFPA.

In Count II, Slawin alleges that the termination of his employment violated the CFPA's anti-retaliation provision, 12 U.S.C. § 5567.  As explained below, this count should be dismissed for two independent reasons.

*First*, this provision only governs the conduct of "**covered persons**" and "**service providers**" — as those terms are defined by the CFPA — and the Complaint itself reveals that BAMS is neither.[2]  *Id.* § 5567(a).  *Second*, the anti-retaliation provision only applies to adverse employment actions "by reason of," as relevant here, a report by the employee relating to a purported violation of either (i) the CFPA itself or (ii) some other law or rule within the jurisdiction of or prescribed by the Consumer Financial Protection Bureau ("CFPB").  *Id.* § 5567(a)(1)-(4). While the Complaint may describe reports of concerns by Slawin of violations of non-consumer financial law, it describes none regarding those covered by this CFPA provision.

---

[2] Terms defined by the CFPA are **bolded** here the first time they appear.

### A.   The Complaint Does Not Properly Allege that BAMS is Either a "Covered Person" or a "Service Provider."

The CFPA's anti-retaliation provision governs conduct toward employees by only two defined categories of actors:  "covered persons" and "service providers." 12 U.S.C. § 5567(a) ("No covered person or service provider shall terminate … ."). The Complaint does not cognizably allege that BAMS is within either of those two categories.  Indeed, the closest it comes is by mashing these two carefully defined terms together, charging that BAMS is a "covered service provider." (Compl. ¶ 125; *see id.* ¶¶ 22, 126).  Even if read as an allegation that BAMS is either a "covered person" or a "service provider," that charge would have to be disregarded for purposes of this motion not only because it is a bald legal conclusion, *see Iqbal*, 556 U.S. at 678-79, but also because the rest of the Complaint describes BAMS as falling outside the CFPA's definitions of both terms.

### 1.   "Covered Person"

"Covered person" means, as relevant here, "any person that engages in offering or providing a **consumer financial product or service**" (a "CFP/S").  12 U.S.C. § 5481(6)(A) (emphasis added).[3]  "CFP/S," in turn, is defined in relevant part

---

[3] Although an entity can also be a "covered person" if it "acts as a service provider" to an affiliate that is, itself, a "covered person" under the definition just quoted above, *id.* § 5481(6)(B), BAMS will dispense with that aspect of the "covered person" definition when it explains below why BAMS is not a "service provider" under the CFPA to anyone, including to any affiliate.

as "any financial product or service" if that product or service is both: [a] "described in one or more" of eleven "categories" enumerated "(i)" through "(xi)" in paragraph (15)(A) of the section; *and* [b] "is offered or provided for use by **consumers** primarily for personal, family, or household purposes." *Id.* § 5418(5)(A) (emphasis added). A "consumer" is simply an "individual" (and certain of his or her representatives). *Id.* § 5418(4). Similarly, the very last phrase of the CFP/S definition — "for personal, family, or household purposes" — has for decades been used in consumer financial law to mean "consumer purposes" (such as using a loan to buy a residence) as opposed to business purposes (such as using a loan to start a commercial venture).[4] In sum, then, a "covered person" is someone that offers or provides:

- one of the categories of financial products or services enumerated in the CFPA,

- "for use by consumers primarily for" consumer (as opposed to business) purposes.

The Complaint actually describes BAMS as falling *outside of* both of the two elements of the "covered person" definition, and for the same reason:  BAMS, according to the Complaint, does not provide any products or services "for use by"

---

[4] *See, e.g.*, 12 C.F.R. Part 1026 ("Regulation Z," which implements the Truth-in-Lending Act) and specifically §§ 1026.2(a)(12) ("*Consumer credit* means credit offered or extended to a consumer primarily for personal, family, or household purposes."), 1026.3(a)(1), & associated commentary.

or to consumers, much less for consumer purposes.   To the contrary, Slawin repeatedly identifies BAMS' customers as consisting only of "merchants" and "municipalities."  (Compl. ¶¶ 1, 25, 28, and 32-34.)

Slawin's description of BAMS' customer base defeats his attempt to show the second "covered person" element above ("for use by consumers …") for obvious reasons.  Why he fails to allege the first "covered person" element – that BAMS provides an enumerated category of products or services – requires inspection of the only statutory category he identifies: category "(vii)."  (*See* Compl. ¶ 22 ("As a payment processor, BAMS comes within the meaning of the [CFPA], 12 U.S.C. § 5481(15)(A)*(vii)* ('CFPA').") (emphasis added).)  As quoted with emphasis by a court in this district, subsection (vii) refers to "providing payments or other financial data processing products or services *to a consumer* by any technological means, including ... through any payments systems or network used for processing payments data."  *CFPB v. Universal Debt & Payment Sol'ns*," 2015 WL 11439178, at *15 (N.D. Ga. Sep. 1, 2015); *see id.* (agreeing that some of the defendants could not be "covered persons" because they, like BAMS, offered services not "to consumers but

to merchants").  Thus, Slawin does not properly allege either of the elements that would be required to find that BAMS is a "covered person" under the CFPA.[5]

### 2.    "Service Provider"

For similar reasons, the Complaint also does not describe BAMS as a "service provider" under the CFPA.  The definition of that term relies heavily on the two defined terms just discussed:  "covered person" and "[CFP/S]."  Specifically, and subject to certain exceptions, "service provider" means (with the previously defined terms **bolded** again here):

> any person that provides a material service to a **covered person** in connection with the offering or provision by such **covered person** of a **[CFP/S]**, including a person that—
>
> (i)   participates in designing, operating, or maintaining the **[CFP/S]**; or
>
> (ii)  processes transactions relating to the **[CFP/S]** (other than unknowingly or incidentally transmitting or processing financial data in a manner that such data is undifferentiated from other types of data of the same form as the person transmits or processes).

12 U.S.C. § 5481(26)(A) (emphasis added).

Thus, for the Complaint to allege cognizably that BAMS is a statutory "service provider," it would have to describe BAMS plausibly as providing a

---

[5] For the same reasons that BAMS is not a "covered person," Slawin himself cannot be a "covered employee," as this anti-retaliation provision also requires.  *See* 12 U.S.C. § 5567(b) ("covered employee" means "any individual performing tasks related to the offering or provision of a [CFP/S]").

material service to [i] some "covered person" and [ii] "in connection with" that covered person's "offering or provision" of a [CFP/S].  The Complaint does allege, as noted above, that BAMS provided products and services both to merchants and municipalities (*e.g.*, Compl. ¶¶ 1, 25), but it nowhere even attempts to describe either merchants or municipalities as "covered persons" per the exacting definition described above, much less as "covered persons" that offer or provide any type of "consumer financial product or service."

The only other entity that the Complaint even arguably alleges to be the recipient of BAMS' services — "its parent, First Data" (Compl. ¶ 33) — is actually described affirmatively as falling *outside* the "covered person" definition.  An essential element of that definition, as noted above, is the requirement that the person provide products or services "for use by consumers primarily for" consumer purposes.  12 U.S.C. § 5418(5)(A).  The Complaint, in contrast, describes First Data as, like BAMS, removed from a consumer: "BAMS contracts with its parent, First Data, to process payments, including inter alia to sell First Data products to its merchant and municipal customers such as credit machines to process those payments."  (Compl. ¶ 33; *see also id.* ¶¶ 34-35.)

In sum, because the Complaint does not, and cannot, allege that BAMS is either a "covered person" or a "service provider" under the CFPA, Slawin's claim under that law's anti-retaliation provision must be dismissed on this basis alone.

**B.      The Complaint Also Contains No Cognizable Allegation of Protected Activity Under the CFPA.**

Slawin's claim under the CFPA also should be dismissed for the independent reason that he fails to allege that his termination was "by reason of" any activity protected by that law.  12 U.S.C. § 5567(a).  In particular, while Slawin alleges that he raised concerns about what in his mind may have been violations of securities laws and criminal laws, he nowhere describes any concerns raised about purported violations of the consumer financial laws covered by this provision.

As relevant here, the CFPA protects employees from adverse action "by reason of the fact that such employee … has":

(1)    provided, [or] caused to be provided … information to the employer, the [CFPB], or any other … government authority or law enforcement agency relating to *any violation of*, or any act or omission that the employee *reasonably believes* to be a violation of, *any provision of [the CFPA] or any other provision of law that is subject to the jurisdiction of the [CFPB], or any rule, order, standard, or prohibition prescribed by the [CFPB]*;
… or

(4)    objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee … *reasonably believed* to be in violation of *any law, rule, order, standard, or*

> *prohibition, subject to the jurisdiction of, or enforceable by, the [CFPB]*.

12 U.S.C. § 5567(a) (emphasis added).[6]

Under this definition, and particularly the italicized phrases, it is clear the Complaint fails to allege that Slawin engaged in any activity protected by the CFPA. Indeed, whenever the Complaint can possibly be read as specifically describing purported violations of any particular law, the pleading always describes laws *different from* the consumer-financial laws referred to above. For example, the Complaint charges that "Mr. Slawin reasonably believed that BAMS' deceptive practices regarding its being non-PCI compliant violated federal mail fraud, bank fraud, and wire fraud laws, as well as violated federal law regarding corporate financial disclosures." (Compl. ¶ 1, at 2.) These are all either criminal or securities laws that are neither found in the CFPA nor enforced by the CFPB. The same is true for each other instance in which Slawin specifies particular laws. (*See* Compl. ¶¶ 69 ("federal laws against" [i] bank fraud, [ii] wire fraud, [iii] mail fraud, [iv] reporting requirements to the SEC, and [v] control provisions in section 404 of the Sarbanes-Oxley Act of 2002) and 73 ("securities violation").)

---

[6] The other two types of protected activity similarly refer only to violations of consumer financial laws and rules. *Id.*

Unable to identify any specific conduct reported to his employer that he reasonably believed to be a potential violation of *consumer financial* law, Slawin resorts to mere legal conclusions that fall short. *See Iqbal*, 556 U.S. at 678-79. In particular, he contends that he "had a good faith belief" — notably not a "reasonabl[e] belie[f]," as the CFPA requires — "that BAMS' non-PCI compliance and fraudulent conduct related to its refusal to be PCI compliant violated laws subject to the jurisdiction of the [CFPB] including *inter alia* the CFPA and the Electronic Fund Transfer Act (15 U.S.C. 1693 et seq.) ('EFTA')." (Compl. ¶ 130; *see also id.* ¶ 74 (similar, though without describing any law like EFTA that is referenced in the CFPA).)

The Complaint also fails to allege plausibly how he could have reasonably believed that any conduct related to BAMS' purported "non-PCI compliance" could have violated any consumer financial law. This failure includes the Complaint's reference to EFTA, because as administered by the CFPB, EFTA generally only "applies to financial institutions," 12 C.F.R. § 1005.3(a) (quoting "Regulation E," the CFPB rule implementing EFTA), which BAMS is not, *id.* § 1005.2(i) (definition of "financial institution").

Because Slawin does not and cannot describe any activity protected by the CFPA's anti-retaliation provision, his claim under that law must fail for that

independent reason as well.  Accordingly, Count II of Plaintiff's Complaint should be dismissed.

## III.  Slawin Cannot State A Claim Under Dodd-Frank.

In Count III, Slawin alleges that the termination of his employment also violated the anti-retaliation provision of the whistleblower section of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h).  That section prohibits an employer from discharging or otherwise discriminating against a whistleblower because of certain lawful acts by the whistleblower.  *See* 15 U.S.C. § 78u-6(h)(1)(A).  "Whistleblower" is defined as an individual who provides information relating to a violation of the securities laws to the Securities and Exchange Commission ("SEC").  *Id.* § 76u-6(a)(6).  Thus, employees who provide information to the SEC relating to a violation of the securities laws are protected from retaliation by their employer for certain conduct.

Last year, the Supreme Court resolved a split in the courts based on language in the section about what conduct by the whistleblower is protected.  The Supreme Court held that, in order to be protected by the anti-retaliation provision of Dodd-Frank, an employee must first provide information relating to a violation of the securities laws to the SEC.  *See Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767 (2018).  In that case, the plaintiff, Somers, did not report his concerns about

suspected securities-law violations to the SEC prior to his termination. *Id.* at 776.
As a result, the Court explained:

> The disposition of this case is therefore evident: Somers did not provide
> information "to the Commission" before his termination, §78u-6(a)(6),
> so he did not qualify as a "whistleblower" at the time of the alleged
> retaliation. He is therefore ineligible to seek relief under §78u-6(h).

*Id.* at 778. Thus, *Digital Realty Trust* confirms that the Dodd-Frank whistleblower
provision does not apply to purely internal reports such as at issue here. *See Wadler
v. Bio-Rad Labs., Inc.*, 754 F. App'x 661, 662 (9th Cir. 2019); *Wutherich v. Rice
Energy Inc.*, Civil Action No. 18-200, 2018 U.S. Dist. LEXIS 171113, at *16-20
(W.D. Pa. Oct. 2, 2018); *Price v. UBS Fin. Servs.*, No. 2:17-01882, 2018 U.S. Dist.
LEXIS 66200, at *5-6 (D.N.J. Apr. 19, 2018).

According to the allegations of the Complaint, Slawin first went to the SEC
after BAMS terminated his employment. Specifically, he alleges that BAMS
terminated his employment on December 12, 2017, and that the same day he filed a
whistleblower complaint with the SEC in which he complained about his
termination. (Compl. ¶¶ 105-107.) Because Slawin did not file a complaint with the
SEC before his termination, he did not qualify as a "whistleblower" under Dodd-
Frank at the time of his termination. *Id.* Accordingly, Slawin cannot state a claim
under 15 U.S.C. § 78u-6(h) and Count III of his Complaint should be dismissed.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, BAMS respectfully requests that its Motion be granted, that Counts II and III of Plaintiff's Complaint be dismissed with prejudice, and that the Court grant such other and further relief to BAMS as it deems appropriate.

Respectfully submitted this 19th day of November, 2019

<div style="margin-left: 40%;">

*/s/ M. Laughlin Allen*

M. Laughlin Allen
Georgia Bar No. 901999
McGuireWoods LLP
1230 Peachtree Street, N.E.
Suite 2100, Promenade
Atlanta, GA  30309
Tel.:  (404) 443-5738
Fax:  (404) 443-5773
mlallen@mcguirewoods.com

Elena D. Marcuss (*pro hac vice to be filed*)
McGuireWoods LLP
500 East Pratt Street, Suite 1000
Baltimore, MD  21202
Tel.:  (410) 659-4454
Fax:  (410) 659-4547
emarcuss@mcguirewoods.com

*Attorneys for Banc of America Merchant Services, LLC*

</div>

## <u>CERTIFICATE OF SERVICE AND</u>
## <u>COMPLIANCE WITH LOCAL RULE 5.1B</u>

I certify that on November 19, 2019, I electronically filed the foregoing *Defendant Banc of America Merchant Services, LLC's Motion to Dismiss Counts II and III of Plaintiff's Complaint and Incorporated Memorandum of Law* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Jean Simonoff Marx, Esq.
Robert N. Marx, Esq.
Marx Law Group
1050 Crown Pointe Parkway
Suite 500
Atlanta, GA 30338
jeannie.marx@marxlawgroup.com
robert.marx@marxlawgroup.com
lawyers@marxlawgroup.com

Christopher Paul Galanek, Esq.
Aiten Musaeva McPherson, Esq.
Bryan Cave Leighton Paisner, LLP
One Atlantic Center, 14th Floor
1201 West Peachtree St., N.W.
Atlanta, GA 30309-3471
chris.galanek@bclplaw.com
aiten.mcpherson@bclplaw.com

I further certify that a copy of the foregoing was served upon the following non-CM/ECF participants via electronic mail:

17

Sean K. McMahan, Esq.
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
sean.mcmahan@morganlewis.com

Sam S. Shaulson, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
sam.shaulson@morganlewis.com

Mark E. Zelek, Esq.
Joseph D. Magrisso, Esq.
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL  33131-2339
mark.zelek@morganlewis.com
joseph.magrisso@morganlewis.com

I further certify that I prepared this document in 14 point Times New Roman

font and complied with the margin and type requirements of this Court.

/s/ M. Laughlin Allen
M. Laughlin Allen, Esq.

123792272_2