IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC SLAWIN,

                         Plaintiff,

v.

 

BANK OF AMERICA MERCHANT
SERVICES; BANK OF AMERICA
CORPORATION; FIRST DATA CORPORATION;
FISERV, INC.,

                       Defendants.

Civil Action File
No. 1:19-cv-04129-AT

_____x

PLAINTIFF'S REPONSE IN OPPOSITION TO DEFENDANT BANK OF
AMERICA CORPORATION'S MOTION TO DISMISS

Statement of the Facts

BAMS[1] is a joint venture between Bank of America Corporation ("BOA")

and First Data, Inc. (now Fiserv, Inc.), providing payment processing services,

with BOA and First Data having roughly equivalent ownership stakes in BAMS.

(Complaint ¶¶1,8). BOA is a publicly traded company. (Complaint ¶10). BAMS is

listed as an affiliate of BOA and included in its financial statements filed with the

SEC. (Complaint ¶19).

_____

[1] Bank of America Merchant Services, LLC, s/h/a Bank of America Merchant
Services.

1

"In July 2019 [Firserv] and Bank of America jointly announced the dissolution of the Banc of America Merchant Services joint venture ("BAMS"), to be effective June 2020" (FISERV, November 7, 2019, 10-Q, p. 36)[2]. BOA's 10-Q filed October 28, 2019 similarly states that "[o]n July 29, 2019, [BOA] gave notice to the joint venture partner of the termination of the [BAMS] joint venture upon conclusion of its current term in June 2020" (BOA, October 28, 2019, 10-Q, p. 78).

BAMS provides payment processing services to major private merchants such as Home Depot, Target, Amazon, Exon Mobile, Royal Caribbean Lines, MGM and others, as well as to numerous municipalities, to facilitate credit and debit card transactions between those entities and their customers. (Complaint ¶25). On its website, BOA describes its affiliate companies under the heading "Bank of America" as Bank of America Corporation and Bank of America, N.A. , Complaint, ¶26).  BAMS *together with its parent, BOA*, under the name Bank of America, N.A. enters into agreements to provide payment processing services to its customers. (Complaint, ¶27). In "Merchant Processing Agreements" BAMS along with BOA through its affiliate, Bank of America, N.A. are the "Servicer",

---

[2] This Court may take judicial notice of SEC filings on a 12(b)(6) motion to dismiss without converting the motion to summary judgment. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1272–87 (11th Cir. 1999). In any event, a motion for summary judgment would need to be denied in order to allow discovery of facts unavailable to the non-movant under Fed.R.Civ.P. 56(d)

providing to its customers, including retail merchants and municipalities, processing services regarding credit, debit and other delineated card transactions and service. (Complaint, ¶28). BAMS and BOA warrant under these Merchant Processing Agreements that they are operating in compliance with "Card Organization Rules" which agreements specifically state includes rules promulgated by the Payment Card Industry Security Standards Council. (Complaint, ¶29). The Merchant Processing Agreements under which BAMS and BOA jointly constitute the "servicer" specifically requires PCI compliance regarding PAN data, and state that any breach in use of PAN data could result in immediate and irreparable harm to its customers and that money damages could be inadequate to remedy. (Complaint ¶¶30, 31).

<u>POINT I</u>
<u>BOA AND BAMS ARE "ONE AND THE SAME"</u>

A. <u>The Statutes</u>

On July 21, 2010, Congress enacted  Public Law 111-203, entitled the "Dodd-Frank Wall Street Reform and Consumer Protection Act." 124 Stat. 1376. The act amended or enacted all three statutes in this action:

- Section 929A of the act amended Sarbanes-Oxley (hereinafter "SOX") to clarify that parent companies are liable under SOX for the unlawful discharge of  an employee of a wholly owned subsidiary whose financials are included in the consolidated financials of the

parent company. 124 Stat. 1852.

- Section 922(a) of the act extended protection to employees who report fraudulent practices to the SEC. 124 Stat. 1841.  It is codified as 15 U.S.C. §78u-6 and is generally referred to as "Dodd-Frank."

- Section 1057 of the act extended protection to employees who report fraudulent practices internally. 124 Stat. 2031.  It is codified as 12 U.S.C. §5667 and is generally referred to as the "Consumer Financial Protection Act" (or "CFPA").

All three amendments/enactments were enacted to ". . . promote the financial stability of the United States by improving accountability and transparency in the financial system, to end 'too big to fail', to protect the American taxpayer by ending bailouts, [and] to protect consumers from abusive financial services practices . . ." 124 Stat. 1376.  None of the statutes were enacted for the stated purpose of providing protections to employees, except insofar as such protections served the aforesaid expressed purposes.  All three amendment/statutes, passed on the same day as part of the same act, are read *in pari materia*. *Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC*, 2015 WL 11439178, at *7 (N.D. Ga. Sept. 1, 2015), *citing Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972)(CFPA as part of Dodd-Frank Act is read in *pari materia* to Dodd-

Frank, because "statues relating to the same subject matter should 'be construed' as if they were one law.'")

B. Sarbanes-Oxley

Publicly traded companies and their subsidiaries are "one and the same for Section 806[3] coverage purposes" *Johnson v. Siemens Building Technologies, Inc., et al*., 2011 WL 1237202 (DOL Adm. Rev. Board, ARB Case, No.08-032, ALJ Case No. 2005-SOX-015, March 31, 2011) ("*Johnson v. SBT*").

The key language in SOX, added as part of the July 21, 2010 amendment, provides that:

> *No company* . . .*including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company* . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee.

18 U.S.C.A. § 1514A (West) (emphasis added). Thus, an entity covered by the anti-retaliation provision of SOX is a company which is required to file reports with the SEC and *includes* a subsidiary or affiliate whose financial information is

---

[3] 18 U.S.C. §1514A was enacted on July 30, 2002 as part of Public Law 107-204, 116 Stat. 745.  Title VIII of the statute was entitled, "Corporate and Criminal Fraud Accountability." Section 806 of Title VIII, entitled, "Protection for employees of publicly traded companies who provide evidence of fraud", which provided that it be  codified as 18 U.S.C. §1514A, is found at 116 Stat. 802.  Thus, courts and administrative agencies often refer to Section 806 when referring to SOX's whistleblower protection for employees, codified as 18 U.S.C. §1514A.

included in the company's consolidated financial statements. Mr. Slawin's complaint alleges that BOA is a publicly traded company, and that BAMS is a subsidiary whose financials are included in the consolidated financials statements of BOA filed with the SEC. (Complaint ¶¶1,8,9,10, 19).

As described above, on July 21, 2010, Section 929A of the Dodd-Frank Wall Street Reform and Consumer Protection Act amended Section 806 of SOX to define "company" as "*including* any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company." 124 Stat. 1852. Prior to this amendment, the issue of subsidiary coverage was unsettled, and both the Department of Labor and courts had been divided on SOX's coverage of subsidiaries, relying on different theories such as agency, "integrated enterprise" or "single employer" for their divergent results. *Johnson v. SBT,* 2001 WL 1247202 at *8; *Leshinsky v. Telvent GIT, S.A.*, 873 F.Supp 2d 582, 596-97 (S.D.N.Y. 2012) (noting that courts had considered subsidiary coverage unsettled before Dodd-Frank).

However, Dodd-Frank's amendment clarified[4] that "company" within the meaning of Section 806 of SOX includes its subsidiaries and affiliates whose

---

[4] Although not critical here, the courts as well as the Department of Labor concluded that the 2010 amendment of Section 806 was a clarification and not a change in the law, allowing retroactive application. *Leshinsky v. Telvent GIT, S.A.*, 873 F.Supp 2d 582, 591-92 (S.D.N.Y. 2012), *Johnson v. Siemens Building Technologies, Inc. et al.*, (U.S. Dep't. of Labor Administrative Review Board,

financials are consolidated with the company, so that consolidated subsidiaries are "part of the publicly traded company for purposes of Section 806 coverage." *Johnson v. SBT,* 2001 WL 1247202 at *9 "[O]nly by effectively viewing publicly traded companies and their subsidiaries as one and the same for Section 806 coverage purposes can the critical role that Congress envisioned for whistleblowers be achieved." *Id*. at *10. SOX's provisions, its history and role as a *securities* and not employment law provide the statutory and regulatory backdrop "to support the conclusion that publicly traded parent companies and their consolidated subsidiaries constitute *a single, unitary company* for Section 806 purposes." *Johnson v. SBT*, E. Cooper Brown, *concurring*, 2001 WL 1247202 at *15-21.

BOA's central argument is that it is not a proper defendant because it did not employ Mr. Slawin but misrepresents the only case it cites in support of that argument.[5]  BOA cites *Kshetrapal v. Dish Network, LLC*, 2018 WL 1474375 (S.D.N.Y. Mar. 23, 2018) at p. 7 of its brief, but that case does not hold that "a necessary element of a SOX whistleblower claim is that the defendant was the plaintiff's employer . . ."  In *Kshretrapal*, the plaintiff alleged that that he had been blacklisted by his former employer – from which he had voluntarily resigned – because of objections he had made to certain business practices when he had been

March 31, 2011) 2001 WL 1247202 *11.

[5] First Data, Inc. and Fiserv, Inc. did not cite any case law at all to support that argument. (Doc. 23, p. 9 of 29).

employed there. The court's decision in *Kshetrapal* was that the plaintiff could not

prove[6] that the actions of his former employer affected the terms of his

employment with his current employer.  The court did not hold that the plaintiff

had to prove that the defendant was his employer:

> Here, application of the Avoidance Policy to the Plaintiff
> . . . did not affect Plaintiff's employment. . . . Plaintiff
> has pointed to no evidence suggesting that Dish
> Network's mere avoidance of doing business with
> Plaintiff's employers actually affected his employment.

*Kshetrapal v. Dish Network, LLC*, 2018 WL 1474375 at *9.

BOA's "employment law" argument is a red herring because it confuses

SOX, CFPA and Dodd-Frank as employment laws, when in fact they are securities

laws. The ARB rejected precisely the same arguments as BOA makes here, that it

is not Mr. Slawin's employer, that it did not control his employment and did not

know of BAMS' fraudulent non-PCI compliance schemes. In *Johnson v. SBT,*

2001 WL 1247202 at *12, the ARB reversed the ALJ's dismissal of the parent

Siemens AG which had been based on the ALJ's conclusion that there was no

evidence that Siemens AG controlled employment decisions at the employing

subsidiary, SBT, that Siemens AG knew of Johnson's concerns about accounting

irregularities or played any role in the termination of her employment**.**

This is because, as recognized by courts and the ARB, SOX is a securities

---

[6] *Kshretrapal* was a motion for summary judgment after full discovery.

law, and guidelines and standards developed for labor laws do not control SOX's whistleblower protections.

In *Leshinsky v. Telvent GIT, S.A*., 873 F.Supp 2d 582 (S.D.N.Y. 2012), the court agreed that the plaintiff there could likely not meet the single-integrated enterprise test to hold the parent corporation liable for the unlawful discharge by the wholly owned subsidiary and then stated, "[b]ut this only illustrates the inappropriateness of the labor law approach to this issue . . . . Sarbanes–Oxley, however, is not a labor or employment statute—it is an anti-fraud statute concerned with corporate transparency." 873 F.Supp. 2d at 604.

In explaining why the labor law standard was inappropriate, and contrary to Congressional intent as reflected in the statute, the court stated that,

> . . . as a matter of policy under Sarbanes–Oxley, it makes more sense to focus on whether a subsidiary was the parent's agent for purposes of producing accounting or financial information which is consolidated into the parent's financial reports, than whether the subsidiary was the parent's agent with respect to human resources matters . . . .

> Although day-to-day operational and personnel decisions were largely performed by the subsidiaries independently of the parent, the subsidiaries directly contributed to the financial state of the company, and the financial information of the subsidiaries was included in the consolidated financial statements of the parent. A whistleblower statute that protects investors in Telvent GIT [the parent company] would be concerned not so much with who made the day-to-day employment decisions, but rather with decisions that affect the value

9

of the company.

*Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d at 605 (internal quotation marks omitted).

In *Johnson v. SBT,* 2001 WL 1247202  a*21, n. 24, the ARB noted the importance Congress gave to subsidiaries as impacting the valuation of the parent company as a basis for effecting Congressional intent to extend liability under the statue to a parent company for the unlawful acts of a wholly owned subsidiary:

> In his remarks on the Senate floor at the time of SOX's passage, Senator Leahy, co-author of Section 806, noted Enron's "hidden corporations" . . . . 148 Cong. Rec. S7358 (July 25, 2002). The Senate Report accompanying Sarbanes-Oxley's passage . . . cited Enron's layers of subsidiaries and partnerships that "under a code of corporate silence" were "used essentially to cook the books and trick both the public and federal regulators about how well Enron was doing financially." S. Rep. No. 107-146, at 2-5.

The ARB noted that, "Congress recognized the important role that subsidiaries could play in deceiving investors and in affecting the financial health of publicly traded companies."  2011 WL 1247202, at *11. In his concurrence, E. Cooper Brown further explained the *unitary status of a company along with its consolidated subsidiaries* makes perfect sense within the securities law framework, since,

> financial information of majority-owned or controlled subsidiaries are consolidated on the registration statement and annual reports *because these subsidiaries are*

10

> *controlled by, and thus considered part of and wholly*
> *inseparable from, the parent company* for the purposes of
> complying with sections 12 and 15(d) of the Exchange
> Act.

*Johnson v. SBT,* 2001 WL 1247202 at *20 (emphasis added). As the majority in

*Johnson v. SBT*, explained, the SEC also supported extending liability to parents of

wholly owned subsidiaries in order to give effect to the Congressional intent:

> Interpreting Section 806 not to cover consolidated
> subsidiaries would mean that whether a whistleblower
> was protected would turn on whether he worked for the
> parent or an unincorporated division rather than for a
> subsidiary, even though the consequences of his
> reporting misconduct would be exactly the same in both
> situations. It seems quite unlikely that Congress intended
> that outcome. Nor would it make sense to exclude from
> whistleblower protection the employees most likely to
> know of misstatements in consolidated financial
> statements, such as misstatements concerning inventory
> and sales at subsidiaries where inventory is maintained
> and sales staff is actually located.

*Johnson v. SBT*, 2011 WL 1247202 at *11, *citing*, SEC *Amicus* Brief at 11).

C.  <u>Dodd-Frank</u>

Since Dodd-Frank incorporates by reference the protections of SOX, similar

principles apply. 15 U.S.C. §78u-6(h)(1)(A)(iii). BOA cites to 15 U.S.C. §78u-

6(h)(1)(A) to argue that Dodd-Frank refers to an "employer" (Def. Br. 9), but sub-

section (iii) of that same section expressly incorporates SOX's protections.

Accordingly, Congress's intent to include subsidiaries and affiliates whose

financials are included in the consolidated financials of the public company, as a

"one and the same" entity, applies to Dodd-Frank as well. BOA does not point to any contrary definition of "employer" in Dodd-Frank, nor could it, since Dodd-Frank does not contain any.

D. <u>CFPA</u>

The CFPA, like SOX and Dodd-Frank, is a securities law, not an employment law. Law derived from the employment law context is irrelevant to the stated Congressional intent to protect the stability of the American financial system by encouraging employees to report fraudulent practices that might impact the valuation of publicly traded companies.  The same Congressional intent to encourage employees of wholly owned subsidiaries to report fraudulent practices that might impact the valuation of the parent companies militates in favor of extending liability to the parent companies for unlawful acts of their wholly owned subsidiaries, irrespective of the technicalities of corporate organization.

Under the CFPA an entity or individual who is not an employer may still be liable as a "covered person or service provider". 12 U.S.C. §5567(a). The CFPA does not refer to employers in the section making acts unlawful under the statute. The pertinent provision of the statute provides that:

> No covered person or service provider shall terminate or in any other way discriminate against, <u>or cause to be terminated</u> or discriminated against, any covered employee or any authorized representative of covered employees by reason of the fact that such employee or representative . . . has – (1) provided, caused to be

> provided, or is about to provide or cause to be provided, information . . . .

12 U.S.C. §5567(a) (emphasis added).  The words, "or cause to be terminated" would include a person or entity who is not an employer, but who could influence an employer to terminate an employee for have provided information under the statute, which is consistent with *Kshetrapal*. Any other reading would render the clause, "or cause to be terminated or discriminated against" redundant.  Since the operative term under the statute is not "employer", but rather, "covered person", the statute does not define the term "employer", but does define the term "covered person" and does so in a manner that includes BOA.  Thus, BOA's reliance upon one of the statute's procedural provisions, 12 U.S.C. §5567(c)(3)(B) (Def. Br. 8) to suggest that the CFPA only relates to employers, is misleading and unavailing.  BOA's assertion would lead one to believe that the CFPA expressly defines a covered person as an employer, but that is not the definition under the statute.  BOA cites no case law in support of its argument.

The CFPA was enacted as Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act. (124 Stat. 1376.) 12 U.S.C. §5481, also enacted on July 21, 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1955, provides definitions for words and phrases contained in the CFPA. §5481(6) defines "covered person" as follows:

> The term "covered person" means –

13

> (A) any person that engages in offering a consumer
> financial product or service; and
> (B) any affiliate of a person described in subparagraph
> (A) if such affiliate acts as a service provider to such
> person.

A "consumer financial product or service" is defined as,

> . . . any financial product or service that is described in
> one or more categories under . . . paragraph (15) and is
> offered or provided for use by consumers primarily for
> personal, family, or household purposes . . .

12 U.S.C. §5481(5).

Under paragraph 15(A)(vii) a "financial product or service" includes:

> (vii) providing payments or other financial data
> processing products or services to a consumer by any
> technological means, including processing or storing
> financial or banking data for any payment instrument, or
> through any payments systems or network used for
> processing payments data, including payments made
> through an online banking system or mobile
> telecommunications network . . .[7]

12 U.S.C. §5481 (15) (vii).

The Complaint pleads that BAMS was in the business of processing

consumer payments for purchases from merchants through online banking systems

(¶22), that, "BAMS together with its parent, BOA, under the name Bank of

America, N.A. enters into agreements to provide payment processing services to its

---

[7] The exceptions – for the merchants themselves or for website hosts (12 U.S.C.
§5481 (15) (vii) (I) and (II) – are not applicable to BAMS' business as a third-party
processor of payments for consumers' payments to merchants.

customers" (¶27),  and that, "[i]n 'Merchant Processing Agreements' BAMS along with BOA through its affiliate, Bank of America, N.A. are the 'Servicer' providing to its customers, including retail merchants and municipalities, processing services regarding credit, debit and other delineated card transactions and service." (¶28). Thus, BAMS <u>and</u> BOA were involved in providing a "consumer financial product or service" as defined in the CFPA.

A "person" includes a ". . . company, corporation . . . or other entity."  12 U.S.C. §5481 (19). BOA, as a corporation, was thus a person under the statute. Since BOA was involved in the processing of credit card payments, it was a "service provider" under the statute:

> The term "service provider" means any person that provides a material service to a covered person in connection with the offering or provision by such covered person of a consumer financial product or service, including a person that –
> (i) participates in designing, operating, or maintaining the consumer financial product or service; or
> (ii) processes transactions relating to the consumer financial product or service . . .

12 U.S.C. §5481(26).  Thus, BOA is clearly a "service provider" under the statute. (Complaint, ¶¶22, 27, 28, above).

The statute defines "affiliate" as "any person that controls, is controlled by, or is under common control with another person." 12 U.S.C. §5481(1).  The Complaint pleads that BAMS is a joint venture between First Data and BOA.

Since BAMS is "controlled by" BOA, it is an affiliate under the statute, and thus a "covered person" under the statute. It is therefore liable for the unlawful acts of BAMS under the statute, irrespective of any corporate technicalities, irrespective of any lack of participation in the termination decision and irrespective of any alleged lack of *scienter* on its part.  As shown above regarding SOX and Dodd-Frank, that is precisely what Congress intended, in order to protect shareholders of BOA, a publicly traded company valued with reference to its wholly owned subsidiary, BAMS.  Accordingly, BOA's argument at pp. 9-10 of its brief is unavailing.

POINT II
PLAINTIFF DOES NOT HAVE TO PLEAD OR PROVE
*SCIENTER* OR PARTICIPATION ON THE PART OF BOA

For purposes of Rule 8, pleading "[s]pecific facts [is] not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007).  Listing the elements that make out a *prima facie* claim is unnecessary, and the plaintiff need not plead a *prima facie* case in order to survive a motion to dismiss. *See Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511 (2002). The question on a (12)(b)(6) motion is whether the Plaintiff has stated a *plausible* claim for relief. *Erickson,* 551 U.S. at 93.  Dismissal is only appropriate when there is a lack of a cognizable legal theory or on the absence of facts that would support a valid

theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).

A.  BOA is "one and the same" with BAMS under the statutes

BOA's argument (Def. Br., pp. 9-10) that Plaintiff has to plead and show *scienter* and participation specifically on the part of BOA is met by the fact that for purposes of SOX, CFPA and Dodd-Frank, BOA and BAMS are one and the same. *See*, Point I, *supra*.   In addition and alternatively, BOA would be vicariously liable under joint venture, alter ego and successor theories. *See*, Point IV, *infra*. In addition, upon completion of the dissolution of BAMS, BOA will be substituted as a Defendant under Fed.R.Civ.P. 25. *See*, Point IV, *infra*.

B. Plaintiff Should Be Granted Leave to Replead in Lieu of Dismissal

Additional facts support the fact that BAMS and BOA are one and the same. BAMS corporate office is located in One Bank of America Center in Charlotte, N.C. and Mr. Slawin's training took place there.[8] The Merchant Services Agreements described in the Complaint provide for joint and several liability of BAMS and BOA. Mr. Slawin will testify that Sherra Grissom, a Senior Vice President, Business Controls Manager of BAMS, two levels down from BAMS' CEO, (Complaint, ¶¶55, 62, 63), told him that the OCC, which regulates BOA, warned BOA that it was at risk because of BAMS' activities. Ms. Grissom told

---

[8]In Atlanta the BAMS offices are in the Fiserv, formerly First Data Building.

him that the risk department at BAMS, which included his job function, was

created in response to the OCC's warning. Sherra Grissom was one among

numerous individuals who Mr. Slawin spoke to about BAMS' non-PCI compliance

and his concerns about fraud and the ramifications if this information were to

become public. (Complaint, ¶61). While proof of BOA's *scienter* is not necessary,

Mr. Slawin should be allowed to amend his complaint to allege these facts in lieu

of dismissal and should be entitled to develop this evidence during discovery.[9]

POINT III
SLAWIN EXHAUSTED HIS ADMINISTRATIVE
REMEDIES AS TO BOTH BAMS AND BOA

Since BOA and BAMS are "one and the same" for purposes of SOX and

CFPA, the fact that BOA was not technically named in the caption of Slawin's

administrative charge is no defense to this lawsuit as a matter of law.

Nevertheless, even if BOA were to be considered a separate entity from BAMS,

Slawin still exhausted his administrative remedies regarding BOA because the

anticipated scope of the OSHA investigation would have included BOA.  BOA's

argument that it had to be named in the caption of the administrative complaint is a

---

[9] While BAMS, BOA and First Data/Fiserv have retained separate counsel for this case, Plaintiff refers the Court to *MobilePay, LLC. v. BAMS, BOA, NA*, *and First Data*, 6:18-cv-00321-ADA (W.D. Tex), a patent infringement case arising out of BAMS', BOA's, and First Data's joint use of a particular device in their payment processing service. In *MobilePay*, all three defendants were represented by the same counsel and admitted their joint venture status, and BOA's and First Data's joint ownership of BAMS.

formalistic, technical argument that is contrary to the intent and purposes of SOX

and CFPA, is undermined by OSHA's regulation that a complaint does not even

have to be in written form (29 C.F.R. § 1980.103(b)), and has been rejected by the

ARB, a District Court and the Fourth and Fifth Circuit Courts of Appeals.

In 2008 the ARB clarified that a SOX administrative complaint filed with

OSHA need not name the parent corporation:

> . . . SOX does not require a complainant to name a
> corporate respondent that is itself "registered under
> section 12 . . . or that is required to file reports under
> section 15 so long as the complainant names at least one
> respondent who is covered under the Act as an 'officer,
> employee, contractor, subcontractor, or agent' of such a
> company."[10]

*Andrews v. ING North America Insurance Corp.*, ARB No. 06-071, ALJ Nos.

2005-SOX-050, 2005-SOX-051 (ARB, August 29, 2008) at p. 5, *citing*,

*Klopfenstein v. PCC Flow Techs. Holdings, Inc.*,  ARB No. 04-149, ALJ No. 2004-

SOX—011 (ARB May 31, 2006) (internal quotation marks omitted).

The Fifth Circuit has held that a SOX administrative complaint includes all

individuals and entities who reasonably would be anticipated to be included in

OSHA's investigation:

---

[10] *Andrews* which allowed the complainant to hold the parent company liable under
agency theory pre-dated the July 21, 2010 amendment to SOX "clarifying" that, as
a matter of law, Section 806 liability extends to parents of subsidiary corporations
whose financial statements are included in the consolidated financial statements of
the parent publicly-traded corporation.

> . . . the exhaustion requirement should go only as far as is necessary to give the agency its initial crack at the case; rather than focusing only on the four corners of the facts included in the original agency complaint, the *Thomas*[11] standard extends the scope of the resulting action to the extent of the investigation that the agency complaint can reasonably be expected to spawn.

*Wallace v. Tesoro Corp.*, 796 F.3d 468, 476 (5th Cir. 2015).

> We therefore apply the same exhaustion standard [as in Title VII] in SOX-retaliation cases: The scope of a judicial complaint is limited to the sweep of the OSHA investigation that can reasonably be expected to ensue from the administrative complaint….[W]e join the only other circuit to have directly addressed the issue. The Fourth Circuit analyzed the scope of SOX exhaustion under the same framework it applies to Title VII complaints. "[L]itigation may encompass claims 'reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint.' "

*Wallace v. Tesoro Corp.*, 796 F.3d 468, 476 (5th Cir. 2015), *citing*, *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 669 (4th Cir. 2015), *citing*, *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996). *See also,* *Sydnor v. Fairfax Cnty., Va.,* 681 F.3d 591, 595 (4th Cir.2012).

In *Jones v. Southpeak Interactive Corp. of Delaware*, ("*Southpeak*"), employees of the defendant corporation had not been formally named in the OSHA

---

[11] *Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000). (The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.).

administrative complaint.  While the plaintiff had given the names of the

employees to be included in the administrative complaint, OSHA had neglected to

do that, and as a result the employees were never formally notified that they would

be named as defendants in any subsequent federal suit.  The Court of Appeals

found the administrative complaint sufficient because the employees had been

identified in it.  Here too, Mr. Slawin's OSHA administrative complaint identified

BOA within the body of that complaint.[12]

BOA's argument was squarely rejected by the court in *Wadler v. Bio-Rad

Labs., Inc.*, 141 F. Supp. 3d 1005, 1020–21 (N.D. Cal. 2015) where the court

denied a motion to dismiss the complaint for failure to formally name one of the

defendants in the OSHA administrative complaint.[13]  Squarely rejecting the cases

cited by BOA, the court stated:

> Defendants cite a line of cases in which a handful of
> district courts . . . have held that an individual defendant
> must be named in the "caption" of an administrative
> complaint to state a claim against that defendant. *See . . .
> Bozeman v. Per-Se Technologies, Inc.*, 456 F.Supp.2d
> 1282, 1358 (N.D.Ga.2006) . . . *Smith v. Psychiatric
> Solutions, Inc.*, 2009 WL 903624, at *8 (N.D.Fla. Mar.
> 31, 2009) *aff'd*, 358 Fed.Appx. 76 . . . . The undersigned
> declines to follow this formalistic approach, which is
> based on the assumption that a complaint filed in an
> OSHA proceeding must meet the same pleading

---

[12] (Doc. 6-2, p. 3, lines 12, 13, 18; p. 9, line 6).

[13] The court granted the motion to dismiss the complaint as to two defendants who
had not been identified in the body of the administrative charge.  Here, Mr. Slawin
identified BOA in the body of his administrative charge. *See*, n.12, *supra*.

> requirements as a complaint that is filed in federal district
> court. As discussed above, it is not. To require that an
> individual defendant be named in the caption of an
> administrative complaint when no formal pleading (or
> even written document) is even required under Sarbanes-
> Oxley is inconsistent with the statutory and regulatory
> framework established by Congress and the Department
> of Labor to ensure compliance with Sarbanes-Oxley.

*Wadler v. Bio-Rad Labs., Inc.,* 141 F. Supp. 3d at 1020–21 (N.D. Cal. 2015)

(Emphasis added).  Indeed, the court in *Bio-Rad* noted that the complaint to OSHA

does not even have to be in written form but could be oral only. *Wadler v. Bio-Rad*

*Labs., Inc.*, 141 F. Supp. 3d at 1020, *citing*, 29 C.F.R. § 1980.103(b).

  In addition to having been rejected by the District Court in *Wadler v. Bio-*

*Rad Labs., Inc.,* the cases relied upon by BOA are all distinguishable. *Bozeman v.*

*Per-Se Techs., Inc.*, 456 F. Supp. 2d 1282 (N.D. Ga. 2000), and the cases it cites,

were all decided before the above decision of the ARB in  *Andrews v. ING North*

*America Insurance Corp*., and before the July 21, 2010 amendment of SOX to

extend Section 806 liability under the statute to parent corporations of wholly

owned subsidiaries whose financials are consolidated into the parent's financials.

Moreover, *Bozeman* is inapposite as it did not raise similar facts here where BOA

as the parent corporation owns BAMS and includes BAMS' financials in BOA's

consolidated financial statements. *Bozeman*  did not involve parent and subsidiary

corporations, but rather, individuals of the corporate defendant who had not been

named in the administrative complaint.

In *Hall v. Bank of Am. Corp.*, 2019 WL 215617 (W.D.N.C. Jan. 16, 2019), *affd.*, 765 F. *App'x* 33 (4th Cir. 2019), the plaintiff filed a complaint against BOA only, but had failed to file *any* timely administrative complaint with OSHA.

*Smith v. Psychiatric Solutions, Inc.*, 2009 WL 903624 (N.D. Fla. Mar. 31, 2009), *aff'd*, 358 F. App'x 76 (11th Cir. 2009)[14] is distinguishable because it was decided before the July 21, 2010 amendment to SOX that clarified that a parent corporation may be liable for the unlawful acts of its wholly owned subsidiary whose financial statements are incorporated into the consolidated financial statements of the parent corporation. The District Court's opinion states that the plaintiff there had named Psychiatric Solutions, Inc. ("PSI") in her administrative complaint, but not Premier Behavioral Solutions, Inc. ("PBS") or Gulf Coast Treatment Center, Inc. ("GCTC"). The opinion states that GCTC was plaintiff's employer,[15] that PBS was a subsidiary of PSI and that GCTC was a subsidiary of PBS.[16] However, it is not clear from the opinion whether the financial statements of GCTC or PBS were incorporated into the consolidated financial statements of

---

[14] The Court of Appeals' affirmance is not binding on this Court because it was an unpublished opinion. 11th Cir. R. 36-2.

[15] "On January 10, 2006, Smith was hired by GCTC . . . " *Smith v. Psychiatric Sols., Inc.*, 2009 WL 903624, at *1. "Even if PSI were properly alleged to be Smith's employer, there is no evidence to support an employment relationship between PSI and Smith." *Id.* at *9.

[16] Defendant Psychiatric Solutions, Inc. ("PSI"), is a publicly traded company. . . . Thus, PSI own PBS, which owns GCTC." *Smith v. Psychiatric Sols., Inc.*, 2009 WL 903624, n.1 at *1.

PSI.  To the contrary, the opinion states that ". . . these subsidiaries maintain separate financial records." *Smith v. Psychiatric Sols., Inc.*, 2009 WL 903624, at *9.  In addition, it is significant that the case was decided before the July 21, 2010 amendment to SOX, which would have clarified that PSI would be liable for any unlawful acts of PBS or GCTC if their financial statement were incorporated into the consolidated financial statements of PSI.  Thus, PSI's argument that it could not be liable under SOX because it did not employ the plaintiff [17] would not have been available to PSI if in fact the financial statements of PBS or GCTC were incorporated into PSI's consolidated financial statements.  In that case, the rationale for the District Court's decision in *Smith v. Psychiatric Sols., Inc.* – that PSI, PBS and GCTC were separate entities –  would have been legislatively overruled by the July 21, 2010 amendment to SOX Section 806 liability.  In this respect it is significant that the court's discussion regarding PSI's liability is based on the irrelevant labor law-derived concept of a single integrated enterprise, analyzing whether PSI had control over the day to day operations of PBS or GCTC. *Smith v. Psychiatric Sols., Inc.*, 2009 WL 903624 at *9.

Further, unlike the case here, the body of the administrative complaint in *Smith v. Psychiatric Sols., Inc*. failed to mention PBS or GCTC.  (" . . . Smith did not name PBS or GCTC in the heading of her administrative complaint or indeed

---

[17] *Smith v. Psychiatric Sols., Inc.*, 2009 WL 903624, at *9.

*anywhere* in her complaint."). *Smith v. Psychiatric Sols., Inc.*, 2009 WL 903624, at *8. (Emphasis in original). Here, Mr. Slawin affirmatively stated in his administrative complaint that BOA owns BAMS as a joint venturer and includes BAMS in its consolidated financial statements. *See*, n.12, *supra*.

*Smith v. Corning Inc*., 2007 WL 2120375 (W.D.N.Y. July 23, 2007) did not involve the issue of a parent corporation whose wholly owned subsidiary's financial statements were incorporated into the parent corporation's consolidated financial statements. In that case the plaintiff sought to name a supervisory employee of the corporation who had fired him in his federal court complaint but had not named the employee in the administrative complaint filed with OSHA.

POINT IV
BOA IS LIABLE AS A JOINT VENTURER,
ALTER EGO AND/OR SUCCESSOR

A. <u>BOA Is Liable as a Joint Venturer</u>

Under both Georgia law and Delaware[18] law, a joint venture is regarded as a single employer. *Boatman v. George Hyman Const. Co*., 157 Ga. App. 120, 122–23(1981) "Joint venturers bear the same relation to each other as do the partners in a partnership. Each is an agent of the entity." *Id*. *"[A]n employee engaged in activities of the joint venture is an employee of each of the joint adventurers under ordinary principles of agency." Id*. (Emphasis added). *Hudson v. A.C. & S. Co.,*

---

[18]BOA is a Delaware corporation.

535 A.2d 1361, 1363 (Del. Super. Ct. 1987) ("an employee of the joint venture is an employee of each of the joint venturers and each joint venturer is jointly and severally liable. . ."). "[T]he mere fact that one corporation is a subsidiary of another does not alone serve to insulate the parent" where the evidence supports a joint venture relationship. *Kissun v. Humana, Inc*., 267 Ga. 419, 419–21, 479 S.E.2d 751, 751–54 (1997). BOA's liability is vicarious. *New York v. Grand River Enterprises Six Nations, Ltd.*, 2019 WL 516955, at *8–10 (W.D.N.Y. Feb. 11, 2019) (denying motion to dismiss; allegations support joint venture, "plausibly implicat[ing] GRE under a theory of vicarious liability").  Federal law similarly recognizes joint ventures in various contexts. *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978) (in the maritime context); *Nat'l Coal. Gov't of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 358–59 (C.D. Cal. 1997)(denying motion to dismiss under Alien Tort Claims Act on joint venture theory).

B. <u>BOA Can Be Held Liable Under an Alter Ego Theory</u>

"Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another." *Kissun,* 267 Ga. at 419-20. The corporate form is disregarded if: (1) the corporation is a "mere instrumentality" of the parent company or the shareholders,

and (2) to observe the corporate form would "work an injustice." *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1328 (N.D. Ga. 2014). As an equitable doctrine, the alter ego doctrine can be applied where there is no other legal remedy, such as when there "are insufficient corporate assets to satisfy the plaintiff's claim." *Johnson v. Lipton*, 254 Ga. 326, 327 (1985); *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) ("veil-piercing. . .is usually invoked when the...corporate entity is insolvent"). Fiserv's SEC filings establish that Fiserv and BOA will dissolve BAMS as of June 2020, so that an alter ego theory of liability is appropriate since BAMS will cease to exist to satisfy any judgment in this case against it. *Baker's Bay at Great Guana, LLC v. Discovery Baker's Bay Inv'rs, LLC*, 2018 WL 3093960, at *6 (N.D. Ga. Feb. 16, 2018) (motion to dismiss corporate parent denied given subsidiary's insolvency, and where plaintiff should have discovery regarding the interrelatedness of the parent and subsidiary corporations).

C. <u>Plaintiff will be Able to Substitute BOA after BAMS is dissolved</u>

Similarly, the Complaint and Fiserv's SEC filings establishing BOA as well as Fiserv Inc. as successor joint venturers in the BAMS venture and Fiserv's joint intent with BOA to dissolve BAMS in June 2020, is sufficient to retain BOA both under a successor theory and on the ground that Fed.R.Civ.P. Rule 25(c) would allow Mr. Slawin to move for substitution in June 2020 when BAMS is terminated.

*Virgo v. Riviera Beach Associates*, 30 F.3d 1350, 1358 (11th Cir. 1994) (allowing substitution of corporate party which purchased all of the assets of corporation originally named in Title VII case); *Wallace v. DM Customs, Inc.*, 2006 WL 8440090, at *4–5 (M.D. Fla. May 12, 2006) (granting motion to add successor corporation as a defendant).

POINT V
*DIGITAL REALTY* DOES NOT CONTROL THIS CASE

The Supreme Court's decision in *Digital Realty Tr., Inc. v. Somers*, 138 S.Ct. 767 (2018) does not control this case because here Mr. Slawin filed information of Defendants' fraudulent actions with the SEC. (Complaint, ¶¶106, 107). He is thus a whistleblower under the clear wording of the statute:

> The term "whistleblower" means any individual who provides . . . information relating to a violation of the securities laws to the Commission [SEC] . . .

15 U.S.C. §78u-6(a)(6).

While it is true that the filing with the SEC was after he was fired, the Supreme Court acknowledged that the wording of the statute does not contain any temporal requirement. 138 S.Ct. at 780-781. As the Supreme Court itself noted in *Digital Realty*, "When a statute includes an explicit definition, we must follow that definition, 'even if it varies from a term's ordinary meaning.'" *Digital Realty*, 138 S.Ct. at 776-77, *citing*, *Burgess v. United States*, 553 U.S. 124, 130, 128 S.Ct. 1572, 170 L.Ed.2d 478 (2008). Thus the Supreme Court held in *Digital Realty*,

28

courts must apply the law as specifically written. The clear and unambiguous wording of Dodd-Frank requires only a report of a violation to the SEC; it does not say when the report needs to be made.  This Court is simply not empowered to say when it must be made, even if it would "make sense" to the Court that the report to the SEC should be made before the discharge.

Here, Mr. Slawin is a <u>dual reporter</u>, internally as well as to the SEC, so that he is presently covered under Dodd-Frank even under *Digital Realty*. The clear wording of Dodd-Frank protects employees who ". . . provide information to the Commission . . . " [15 U.S.C. §78u-6(h)(1)(A)(i)] . . . "**or** (iii) . . . mak[e] disclosures . . . protected under Sarbanes-Oxley . . ." [15 U.S.C. §78u-6(h)(1)(A)(iii)] (emphasis added). The *Digital Realty* plaintiff never filed any report with the SEC so clearly was not covered under Dodd-Frank.[19]

Currently pending legislation clarifies that Dodd-Frank's anti-retaliation provision protects a corporate whistleblower who complains internally even without having gone to the SEC. On July 10, 2019 the House passed the Whistleblower Protection Reform Act of 2019 (H.R. 2515) by an overwhelming bipartisan majority to clarify that an internal corporate whistleblower is protected

---

[19] Because the plaintiff in *Digital Realty* never filed a report with the SEC the Supreme Court's language suggesting that a Dodd-Frank plaintiff has to file a report with the SEC before being fired, is non-binding *dicta*.

under the anti-retaliation provision of Dodd-Frank. (165 Cong.Rec. No. 114, Whistleblower Protection Reform Act of 2019 (daily ed. July 9, 2019), <u>Pages H5276-H5278</u>. On September 23, 2019 Senator Charles Grassley introduced the companion Senate Bill, the Whistleblower Programs Improvement Act (WPIA) similarly clarifying that Dodd-Frank protects internal corporate whistleblowers. The WPIA is presently in Committee.  Whistleblower Programs Improvement Act, H.R. 4816, 116th Cong. (2019).

As Senator Grassley explained in his Senate floor remarks, Congress did not intend to deny anti-retaliation protection under Dodd-Frank to whistleblowers who report internally, or to protect them only if they disclosed wrong-doing to the SEC. 165 Cong.Rec. No. 166, Whistleblower Programs Improvement Act (daily ed. Oct. 21, 2019) (statement of Sen. Grassley). The unintended anomaly here addressed in *Digital Realty* emanated from a drafting error in Section 922 Dodd-Frank Act which contained a definition of "whistleblower" in the statute that was inconsistent with the text of <u>its</u> own anti-retaliation provision, which expressly protects internal disclosures (by incorporating Sarbanes-Oxley protected conduct within the ambit of Dodd-Frank protected conduct).  The definition of "whistleblower" in Section 922 appears to have been drafted solely for the provision creating the SEC whistleblower reward program and was not intended to apply to the anti-retaliation provision.

<u>CONCLUSION</u>
<u>DEFENDANT BANK OF AMERICA CORPORATION'S MOTION</u>
<u>TO DISMISS THE COMPLAINT  SHOULD BE DENIED,</u>
<u>OR PLAINTIFF SHOULD BE GRANTED</u>
<u>LEAVE TO REPLEAD IN LIEU OF DISMISSAL</u>

Respectfully submitted, this 7th day of February 2020.

> s/Jean Simonoff Marx
> Georgia Bar Number 475276
> Robert N. Marx
> Georgia Bar Number 475280
> Attorneys for Plaintiff
> Marx & Marx, L.L.C.
> 1050 Crown Pointe Parkway
> Suite 500
> Atlanta, Georgia 30338
> Tel: (404) 261-9559
> lawyers@marxlawgroup.com
> jeannie.marx@marxlawgroup.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC SLAWIN,

                                  :

                      Plaintiff,

                                  :

v.

                                  :         Civil Action File
                                            No. 1:19-cv-04129-AT
BANK OF AMERICA MERCHANT
SERVICES; BANK OF AMERICA        :
CORPORATION; FIRST DATA CORPORATION;
FISERV, INC.,

                      Defendants.  :
_____x

CERTIFICATE OF SERVICE

      This is to certify that on February 7, 2020, I electronically filed: **Plaintiff's Response in Opposition to Defendant Bank of America Corporation's Motion to Dismiss the Complaint with Exhibit,** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

**Elena D. Marcuss**
McGuire Woods, LLP
Suite 1000
Seven Saint Paul Street
Baltimore, MD 21202
410-659-4454
Fax: 410-659-4547
Email:
emarcuss@mcguirewoods.com

**Meredith Laughlin Allen**
McGuire Woods LLP-GA
1230 Peachtree Street, N.E.

Promenade, Suite 2100
Atlanta, GA 30309-3534
404-443-5738
Fax: 404-443-5773
Email: mlallen@mcguirewoods.com

**Joseph D. Magrisso**
Morgan Lewis & Bockius-FL
200 South Biscayne Boulevard
Suite 5300
Miami, FL 33131-2339
305-415-3424
Email: joseph.magrisso@morganlewis.com

**Mark E. Zelek**
Morgan Lewis & Bockius-FL
200 South Biscayne Boulevard
Suite 5300
Miami, FL 33131-2339
305-415-3303
Email: mzelek@morganlewis.com

**Charles Edward Solley**
Moser Law Company
The Stove Works
Suite 26
112 Krog Street, N.E.
Atlanta, GA 30307
404-537-5330
Fax: 404-537-5340
Email: tsolley@moserlawco.com

**Christopher Paul Galanek**
Bryan Cave Leighton Paisner LLP - ATL
One Atlantic Center, 14th Floor
1201 West Peachtree St., N.W.
Atlanta, GA 30309-3471
404-572-6600
Email: chris.galanek@bclplaw.com

**Aiten Musaeva McPherson**
Bryan Cave Leighton Paisner LLP - ATL
One Atlantic Center, 14th Floor
1201 West Peachtree St., N.W.
Atlanta, GA 30309-3471
404-572-6716
Email: aiten.mcpherson@bclplaw.com

Respectfully submitted, this 7th day of February 2020.

s/Robert N. Marx
Georgia Bar Number 475280
Marx & Marx, L.L.C.
Attorneys for Plaintiff
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
Telephone: (404) 261-9559
Email: lawyers@marxlawgroup.com

34