IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC SLAWIN,
                Plaintiff,

v.

BANK OF AMERICA MERCHANT SERVICES; BANK OF AMERICA CORPORATION; FIRST DATA CORPORATION; FISERV, INC.,
                Defendants.

Civil Action File
No. 1:19-cv-04129-AT

---

**PLAINTIFF'S REPONSE IN OPPOSITION TO DEFENDANT
BANK OF AMERICA MERCHANT SERVICES, LLC'S[1] MOTION TO
DISMISS COUINTS II AND III OF THE COMPLAINT[2]**

**POINT I
BAMS[3] IS LIABLE UNDER THE CFPA
AS EITHER A "COVERED PERSON"
OR A "SERVICE PROVIDER"**

The CFPA makes it unlawful for any "covered person" *or* "service provider"

to terminate an employee for having given information or who was about to give

---

[1] Sued herein as Bank of America Merchant Services.
[2] Bank of America Merchant Services, LLC, s/h/a Bank of America Merchant Services, moves for dismissal of Counts II (CFPA) and III (Dodd-Frank) of the Complaint; but does not move for dismissal of Count I of the Complaint (SOX).
[3] Bank of America Merchant Services, LLC, sued herein as Bank of America Merchant Services.

1

information to specified agencies regarding unlawful practices under the statute. 12 U.S.C. §5567(a)(herein after "CFPA").  12 U.S.C. §5481, also enacted on July 21, 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1955, provides definitions for words and phrases contained in the act.

§5481(6) defines "covered person as follows:

> The term "covered person" means –
> (A) any person that engages in offering a consumer financial product or service; and
> (B) any affiliate of a person described in subparagraph (A) if such affiliate acts as a service provider to such person.

A "consumer financial product or service" is defined as,

> . . . any financial product or service that is described in one or more categories under . . . paragraph (15) and is offered or provided for use by consumers primarily for personal, family, or household purposes . . .

12 U.S.C. §5481(5).

Under paragraph 15(A)(vii) a "financial product or service" includes:

> (vii) providing payments or other financial data processing products or services to a consumer by any technological means, including processing or storing financial or banking data for any payment instrument, or through any payments systems or network used for processing payments data, including payments made through an online banking system or mobile telecommunications network . . .[4]

---

[4] The exceptions – for the merchants themselves or for website hosts (12 U.S.C. §5481 (15) (vii) (I) and (II) – are not applicable to BAMS' business as a third-party processor of payments for consumers' payments to merchants.

12 U.S.C. §5481 (15) (vii).

The Complaint pleads that BAMS was in the business of processing consumer payments for purchases from merchants through online banking systems and First Data's[5] terminals. (Complaint, ¶¶22, 25, 125). When a retail merchant processes credit or debit card transactions, those transactions were handled through First Data, using First Data's terminals which BAMS sold to its customers. (Complaint, ¶36). However, chargebacks by merchants, requiring credit and debit card refunds, were handled by BAMS. (Complaint, ¶38). BAMS' direct handling of credit and debit card refunds and chargebacks necessarily required BAMS to obtain, utilize, store, and convey PAN (personal account number) data, requiring BAMS to be PCI complaint, which it was not. (Complaint, ¶¶1, 20-23, 39). BAMS' handling of PAN data without being PCI compliant, especially in its role in the chargeback process, created a significant data breach risk. (Complaint, ¶47). Vast amounts of PAN data were regularly transmitted between First Data and BAMS in non-PCI compliant batch files and spreadsheets, so that BAMS acquired, hosted, and transmitted that data in violation of PCI-DDS, and in breach of its Merchant Processing Agreements with its customers, rendering that PAN data vulnerable to data security breach. (Complaint, ¶77). Client inquiries and concerns

---

[5] First Data, Inc.

about PCI compliance were deflected to First Data to cover up that BAMS' non-PCI compliance when it received, retained and transmitted customers' PAN data. (Complaint, ¶76). Mr. Slawin repeatedly raised concerns to numerous superiors, objecting to being in a position of having to go along with this deflection and information strategy, and raising his concerns about First Data's huge potential financial exposure and risks emanating from this situation. (Complaint, ¶¶79-94). Thus, it is clear from the allegations in the Complaint that BAMS was involved in providing a "consumer financial product or service" as defined in the CFPA.

BAMS' reliance on *CFPB v. Universal Debt & Payment Solutions, LLC*, 2015 WL 11439178 (N.D.Ga. Sept. 1, 2015) is misplaced because in that case the payments were processed by the defendants for debt collectors, whereas here the payments were processed for consumer purchases. Thus, the court's emphasis of the words "to consumers" and BAMS' reliance upon those emphasized words, is misplaced. Moreover, BAMS fails to cite the very next part of the decision, where the court found the defendants could be liable under the statute alternatively as service providers:

> But, even if the Payment Processors are not covered persons, they could still be subject to liability for unfair acts or practices if they are service providers. See 12 U.S.C. § 5536(a). As explained below, they are.

*Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC,* 2015 WL 11439178, at *15. Since the court held that the defendants could be liable under

the statute as service providers, it is not at all clear that the court issued a definitive holding as to whether or not the defendants in that case could have been liable as covered persons ("even if . . ."). In any event, since there the payments were processed for debt collectors and here the payments were processed for consumers, the case is clearly distinguishable.

In addition, since BAMS processed the payments for consumer purchases, it can be liable as a service provider under the statute:

> The term "service provider" means any person that provides a material service to a covered person in connection with the offering or provision by such covered person of a consumer financial product or service, including a person that –
> (i) participates in designing, operating, or maintaining the consumer financial product or service; or
> (ii) processes transactions relating to the consumer financial product or service . . .

12 U.S.C. §5481(26).

As set forth above, the court in *Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC* held that the payment processors for debt collectors could be liable under the CFPA as service providers even if they might not be liable under the statute as covered persons. Here, BAMS can be held liable under the statute both as a covered person and a service provider.

The Complaint pleads that BAMS is a provider of payment processing services to its customers (¶1), that BAMS provides payment processing services to

major private merchants such as Home Depot, Target, Amazon, Exon Mobile, Royal Caribbean Lines, MGM and others. (¶25), that BAMS contracts with its parent, First Data, to process payments (¶33), and that BAMS solicits the business, *i.e.* merchant and municipal customers, and is the "face" of the relationship between its customers, while First Data handles the payment processing from the back end. (¶34).

In fact, BAMS together with its parent, BOA[6], under the name Bank of America, N.A. enters into "Merchant Processing Agreements" in which both entities jointly are defined as the "Servicer" providing payment processing services to its customers. (Complaint, ¶¶ 27, 28). In the "Merchant Processing Agreements", BAMS and BOA as the "Servicer", provides to its customers, including retail merchants and municipalities, payment processing services regarding credit, debit and other delineated card transactions and service. (Complaint, ¶28). BAMS and BOA warrant under these Merchant Processing Agreements that they are operating in compliance with "Card Organization Rules" which agreements specifically state includes rules promulgated by the Payment Card Industry Security Standards Council. (Complaint, ¶29). The Merchant Processing Agreements under which BAMS and BOA jointly constitute the "Servicer", specifically requires PCI compliance regarding PAN data, and state

---

[6] Bank of America Corporation.

that any breach in use of PAN data could result in immediate and irreparable harm to its customers and that money damages could be inadequate to remedy. (Complaint ¶¶30, 31).

BAMS' argument that it is not covered under the CFPA because it dealt only with merchants (Def. Br. 8), was squarely rejected by the court in *Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC,* the case upon which it relies. As the court there held, a payment processor can be held liable under the CFPA if it provides services *in connection with* any transaction with a consumer for a financial product or service:

> Pathfinder denies that it could have committed a primary violation of the unfair practices provision because the CFPB does not allege Pathfinder "entered into 'a transaction with a consumer for a consumer financial product or service or the offering of a consumer financial product or service.' " [citation to record omitted]. Instead, Pathfinder says it "does business with other businesses." [citation to record omitted]. But § 5531(c)(1) forbids a "service provider from committing or engaging in an unfair ... act or practice under Federal law *in connection with* any transaction with a consumer for a financial product or service." 12 U.S.C. § 5531(c)(1) (emphasis added). <u>As a result, the service provider need not engage directly with the consumer. The standard is broader</u>, and the CFPB has adequately alleged Pathfinder's actions were acts performed in connection with debt collection, as Pathfinder helped the Debt Collectors obtain and keep payment-processing accounts with Global Payments.

*Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC*, 2015 WL 11439178, at *18 (first emphasis in original; second emphasis added).

BAMS' argument (Br. 11-14) that the actions of BAMS as a payment processor for consumer purchases is not an activity protected under the CFPA was thus also squarely rejected by the court in *Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC*, 2015 WL 11439178, at *18, quoted immediately above. (". . . the service provider need not engage directly with the consumer. The standard is broader . . .").

The protected activity covered under the CFPA extends to any ". . . act or practice in connection with a transaction with a consumer for a consumer financial product or service . . . that . . . causes or is likely to cause substantial injury to consumers . . ." (12 U.S.C. §5531) (emphasis added). Clearly, BAMS hiding the fact that it was not PCI-compliant, which could result in a data breach making vulnerable consumers' personal account information data, is an "act or practice . . . likely to cause substantial injury to consumers."  It is thus a covered protected activity under the CFPA.

Therefore, BAMS can be held liable under the CFPA as either a "covered" person" or a "service provider."  However, if the Court finds that Slawin did not "properly allege" in the Complaint that BAMS is either a "covered person" or a "service provider" under the CFPA (Def. Br. 6), or that he "fails to allege that [he]

engaged in an activity protected by the CFPA" (Def. Br. 12), Slawin should be granted leave to replead in lieu of dismissal.

## POINT II
## *DIGITAL REALTY* DOES NOT CONTROL THIS CASE

The Supreme Court's decision in *Digital Realty Tr., Inc. v. Somers*, 138 S.Ct. 767 (2018) does not control this case because here Mr. Slawin filed information of Defendants' fraudulent actions with the SEC. (Complaint, ¶¶106, 107). He is thus a whistleblower under the clear wording of the statute:

> The term "whistleblower" means any individual who provides . . . information relating to a violation of the securities laws to the Commission [SEC] . . .

15 U.S.C. §78u-6(a)(6).

While it is true that the filing with the SEC was after he was fired, the Supreme Court acknowledged that the wording of the statute does not contain any temporal requirement. 138 S.Ct. at 780-781. As the Supreme Court itself noted in *Digital Realty*, "When a statute includes an explicit definition, we must follow that definition, 'even if it varies from a term's ordinary meaning.'" *Digital Realty*, 138 S.Ct. at 776-77, *citing*, *Burgess v. United States,* 553 U.S. 124, 130, 128 S.Ct. 1572, 170 L.Ed.2d 478 (2008).

It admittedly might make sense to require an employee to file with the SEC before being fired, just like – as the plaintiff argued in *Digital Realty* – it might make sense for an employee who has reported fraud to a person other than the SEC

9

to be deemed a whistleblower under Dodd-Frank – but as the Supreme Court held in *Digital Realty*, courts must apply the law as specifically written, and are not empowered to make "common sense" adjustments to the statute where its wording is clear and unambiguous. The clear and unambiguous wording of Dodd-Frank requires only a report of a violation to the SEC; it does not say when the report needs to be made. This Court is simply not empowered to say when it must be made, even if it would "make sense" to the Court that the report to the SEC should be made before the discharge.

Here, Mr. Slawin is a <u>dual reporter</u>, internally as well as to the SEC, so that he is presently covered under Dodd-Frank even under *Digital Realty*. The clear wording of Dodd-Frank protects employees who ". . . provide information to the Commission . . . " [15 U.S.C. §78u-6(h)(1)(A)(i)] . . . "**or** (iii) . . . mak[e] disclosures . . . protected under Sarbanes-Oxley . . ." [15 U.S.C. §78u-6(h)(1)(A)(iii)] (emphasis added). The *Digital Realty* plaintiff never filed any report with the SEC so clearly was not covered under Dodd-Frank.[7]

Currently pending legislation clarifies that Dodd-Frank's anti-retaliation provision protects a corporate whistleblower who complains internally even without having gone to the SEC. On July 10, 2019 the House passed the

---

[7] Because the plaintiff in *Digital Realty* never filed a report with the SEC the Supreme Court's language suggesting that a Dodd-Frank plaintiff has to file a report with the SEC before being fired, is non-binding *dicta*.

Whistleblower Protection Reform Act of 2019 (H.R. 2515) by an overwhelming bipartisan majority to clarify that an internal corporate whistleblower is protected under the anti-retaliation provision of Dodd-Frank. (165 Cong.Rec. No. 114, Whistleblower Protection Reform Act of 2019 (daily ed. July 9, 2019), Pages H5276-H5278. On September 23, 2019 Senator Charles Grassley introduced the companion Senate Bill, the Whistleblower Programs Improvement Act (WPIA) similarly clarifying that Dodd-Frank protects internal corporate whistleblowers. The WPIA is presently in Committee.  Whistleblower Programs Improvement Act, H.R. 4816, 116th Cong. (2019).

As Senator Grassley explained in his Senate floor remarks, Congress did not intend to deny anti-retaliation protection under Dodd-Frank to whistleblowers who report internally, or to protect them only if they disclosed wrong-doing to the SEC. 165 Cong.Rec. No. 166, Whistleblower Programs Improvement Act (daily ed. Oct. 21, 2019) (statement of Sen. Grassley). The unintended anomaly here addressed in *Digital Realty* emanated from a drafting error in Section 922 Dodd-Frank Act which contained a definition of "whistleblower" in the statute that was inconsistent with the text of its own anti-retaliation provision, which expressly protects internal disclosures (by incorporating Sarbanes-Oxley protected conduct within the ambit of Dodd-Frank protected conduct).  The definition of "whistleblower" in Section 922 appears to have been drafted solely for the provision creating the SEC

11

whistleblower reward program and was not intended to apply to the anti-retaliation provision.

CONCLUSION

DEFENDANTS BANK OF AMERICA MERCHANT SERVICES'[8] MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT SHOULD BE DENIED, OR PLAINTIFF SHOULD BE GRANTED LEAVE TO REPLEAD IN LIEU OF DISMISSAL

Respectfully submitted, this 7th day of February 2020.

   s/Jean Simonoff Marx
Georgia Bar Number 475276
Robert N. Marx
Georgia Bar Number 475280
Attorneys for Plaintiff
Marx & Marx, L.L.C.
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
Tel: (404) 261-9559
lawyers@marxlawgroup.com
jeannie.marx@marxlawgroup.com

---

[8] Sued herein as Bank of America Merchant Services.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC SLAWIN,
:
                      Plaintiff,
:
v.
:
                                               Civil Action File
BANK OF AMERICA MERCHANT          No. 1:19-cv-04129-AT
SERVICES; BANK OF AMERICA
CORPORATION; FIRST DATA CORPORATION;  :
FISERV, INC.,
                      Defendants.  :
_____x

CERTIFICATE OF SERVICE

      This is to certify that on February 7, 2020, I electronically filed: **Plaintiff's Response in Opposition to Defendants Bank of America Merchant Services, LLC's (sued herein as Bank of America Merchant Services) Motion to Dismiss Counts II and III of the Complaint,** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

**Elena D. Marcuss**
McGuire Woods, LLP
Suite 1000
Seven Saint Paul Street
Baltimore, MD 21202
410-659-4454
Fax: 410-659-4547
Email:
emarcuss@mcguirewoods.com

**Meredith Laughlin Allen**
McGuire Woods LLP-GA

13

1230 Peachtree Street, N.E.
Promenade, Suite 2100
Atlanta, GA 30309-3534
404-443-5738
Fax: 404-443-5773
Email: mlallen@mcguirewoods.com

**Joseph D. Magrisso**
Morgan Lewis & Bockius-FL
200 South Biscayne Boulevard
Suite 5300
Miami, FL 33131-2339
305-415-3424
Email: joseph.magrisso@morganlewis.com

**Mark E. Zelek**
Morgan Lewis & Bockius-FL
200 South Biscayne Boulevard
Suite 5300
Miami, FL 33131-2339
305-415-3303
Email: mzelek@morganlewis.com

**Charles Edward Solley**
Moser Law Company
The Stove Works
Suite 26
112 Krog Street, N.E.
Atlanta, GA 30307
404-537-5330
Fax: 404-537-5340
Email: tsolley@moserlawco.com

**Christopher Paul Galanek**
Bryan Cave Leighton Paisner LLP - ATL
One Atlantic Center, 14th Floor
1201 West Peachtree St., N.W.
Atlanta, GA 30309-3471
404-572-6600
Email: chris.galanek@bclplaw.com

**Aiten Musaeva McPherson**
Bryan Cave Leighton Paisner LLP - ATL
One Atlantic Center, 14th Floor
1201 West Peachtree St., N.W.
Atlanta, GA 30309-3471
404-572-6716
Email: aiten.mcpherson@bclplaw.com

 Respectfully submitted, this 7th day of February 2020.

          s/Robert N. Marx
          Georgia Bar Number 475280
          Marx & Marx, L.L.C.
          Attorneys for Plaintiff
          1050 Crown Pointe Parkway
          Suite 500
          Atlanta, Georgia 30338
          Telephone: (404) 261-9559
          Email:  lawyers@marxlawgroup.com