## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Eric Slawin,

      Plaintiff,

v.

Bank of America Merchant Services,
Bank of America Corporation, First
Data Corporation, and Fiserv, Inc.,

      Defendants.

Civil Action File
Case No. 1:19-cv-04129-AT

## DEFENDANTS' FIRST DATA CORPORATION AND FISERV, INC.'S
## REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants First Data Corporation ("***First Data***") and Fiserv, Inc.,

("***Fiserv***"), hereby file their Reply in Support of their Motion to Dismiss Plaintiff

Eric Slawin's ("***Plaintiff***") Complaint in its entirety for failure to state a claim.

## I.    Plaintiff's Dodd-Frank Claim Must Be Dismissed.

Plaintiff admits in his Response that he filed his complaint with the SEC

*after* his employment with BAMS was terminated. [Doc. No. 23 at 20.]  Therefore,

Plaintiff's claim for retaliation under the Dodd-Frank Wall Street Reform and

Consumer Protection Act ("***Dodd-Frank***") must be dismissed, as he does not

qualify as a whistleblower under the Act.  *See* 15 U.S.C. § 78u-6(a)(6) (providing a

whistleblower is "any individual who provides ... information relating to a violation of the securities laws *to the Commission*.")

Prior to his termination all of Plaintiff's complaints were internal. (Compl. ¶ 1, 60, 61, 66.) The United States Supreme Court has expressly held that retaliation for internal reporting is not protected under Dodd-Frank. *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 777 (2018). In *Digital Realty*, the employer terminated plaintiff's employment after he made internal complaints regarding securities-law violations to his supervisor. *Id.* at 776. Plaintiff did not alert the SEC of these violations. *Id.* Subsequently, he brought an action against Digital Realty for whistleblower retaliation under Dodd-Frank. *Id.* The Supreme Court affirmed the dismissal of plaintiff's complaint, holding plaintiff "did not provide information 'to the Commission' *before his termination* . . . so he did not qualify as a 'whistleblower' at the time of the alleged retaliation." *Id.* at 778. (emphasis added).

Plaintiff now argues *Digital Realty* does not apply because, unlike the plaintiff in *Digital Realty*, he, nevertheless, filed a whistleblower complaint with the SEC after his termination. Plaintiff contends the Supreme Court acknowledged in *Digital Realty* that the statute does not contain a temporal requirement. Plaintiff misrepresents the Court's holding. Although the Solicitor General argued Dodd-

Frank did not contain a temporal requirement, this argument was never adopted by the Court. *Digital Realty*, 138 S. Ct. at 777-78. Instead, the Supreme Court held there can be no whistleblower protection where an employee has failed to provide any information to the SEC prior to his termination. *Id.* at 778.

Plaintiff claims his report to the SEC *after his termination* somehow means *Digital Realty* is not controlling precedent. Although courts in the Eleventh Circuit have not expressly addressed this issue, courts in other circuits have held even where a plaintiff later makes a report to the SEC the plaintiff is not covered by Dodd-Frank's whistleblower protections. *See Frye v. Anadarko Petroleum Corp.*, 2019 WL 7374806, at *4 (5th Cir. Nov. 4, 2019) (holding plaintiff's arguments that "because she later reported to the SEC… this court can consider all retaliation related to her whistleblower activities, even retaliation that occurred before she reported to the SEC" was unavailing as the Supreme Court had clarified in *Digital Realty* that "the individual must be a statutory whistleblower at the time of the retaliation for the Act to apply."); *Johnson v. AmeriGas Propane, L.P.*, 2018 WL 2304742, at *5 (N.D.N.Y. May 21, 2018) (quoting *Digital Realty* and holding "it is undisputed that Plaintiff did not make a complaint to the SEC until after his termination" and as such "Plaintiff was not a 'whistleblower' under Dodd-Frank . . . . "); *Danon v. Vanguard Grp., Inc.*, 2018 WL 5785342, at *4 (E.D. Pa. Nov. 2,

2018) ("In order to establish himself as a protected 'whistleblower' under the anti-retaliation provisions of Dodd-Frank and *Digital Realty*, Plaintiff must have reported to the SEC prior to termination.") [1]

Plaintiff was terminated on December 12, 2017. (Compl. ¶ 105.)  Plaintiff admits he did not file a complaint with the SEC until after his termination. [Doc. No. 23 at 20.]  Plaintiff, therefore, does not qualify as a whistleblower under Dodd-Frank.

## II.   First Data and Fiserv Cannot Be Held Liable Merely As the Alleged Parent of a Subsidiary under SOX and Dodd-Frank.

Plaintiff argues publicly traded companies and their subsidiaries are one and the same for purposes of Sarbanes-Oxley ("*SOX*").  In support of this argument, Plaintiff argues the anti-retaliation provision of SOX covers public companies, such as First Data and Fiserv, which are required to file reports with the SEC, and also applies to any subsidiary or affiliate whose financial information is included in the financial statements filed by those companies.  (Doc. No. 23. at 7.)

First Data and Fiserv do not disagree that SOX provides "[n]o company… including any subsidiary or affiliate … may discharge . . . an employee . . . because of any lawful act done by the employee."  *See* 18 U.S.C. § 1514A.  Further, neither

---

[1] Plaintiff's arguments regarding "currently pending legislation" which purport to clarify Dodd-Frank's anti-retaliation provision are irrelevant.

disputes that a subsidiary of a publicly traded company can be held liable for retaliating against an employee under SOX.  Plaintiff, however, tries to expand and distort the statute so an affiliate's actions are automatically imputed to its parent. Neither the statute nor the case law cited by Plaintiff support this proposition.

Instead, SOX, as amended, and the cases cited by Plaintiff all hold, *a subsidiary* cannot avoid liability for its actions merely because it is not a publicly traded entity.  *See* 18 U.S.C. § 1514A; *Leshinsky v. Telvent GIT, S.A.,* 873 F. Supp. 2d 582, 604 (S.D.N.Y. 2012) (holding "Plaintiff, as an employee of the subsidiary of a public company whose financial information is included in the consolidated financial statements of the public company, is a covered employee under Section 806"); Senate Report 111-176 at 114 (Apr. 30, 2010) (S. 3217) (noting "[Section 929A] amends Section 806 of [SOX] to make clear that subsidiaries and affiliates of issuers may not retaliate against whistleblowers . . . ."); *Carri S. Johnson v. Siemens Building Technologies, Inc., and Siemens Ag*, 2011 WL 1247202, at *11 (DOL RB Mar. 31, 2011) (applying the amendment to Section 806 retroactively to hold a subsidiary of Siemens Ag liable under SOX as the "whistleblower provision covers a subsidiary whose financial information is included in a publicly traded parent company's consolidated financial statements.").

No case, statute, or regulation construing SOX holds that a parent is automatically liable for the acts of its subsidiary merely by the virtue of the fact that it holds an ownership interest in the subsidiary. Nor do they suggest the parent and subsidiary are not separate and distinct corporate entities. The cases Plaintiff cites merely clarify a subsidiary may be held liable under SOX and Dodd-Frank for its own allegedly discriminatory actions – that issue is not in dispute. Fiserv and First Data, however, cannot be held liable for BAMS alleged actions merely by virtue of being the alleged parent organization.

**III.   Plaintiff's Alter Ego and Joint Venture Liability Theories Are Meritless.**

Case law in this Circuit has clearly held "[a]s a general rule, a parent company will be considered a separate corporate entity from its wholly owned subsidiary." *Wood v. S. Bell Tel. & Tel. Co*., 725 F. Supp. 1244, 1247 (N.D. Ga. 1989). To determine whether liability will extend to a parent based on a subsidiary's actions, "[c]ourts have formulated several tests. . . (1) the 'integrated enterprise' test, (2) the 'agency' test, (3) the 'alter ego' test, and (4) the 'mere instrumentality' test." *Id.* at 1247-48. In apparent acknowledgement that something more than the parent/subsidiary relationship is required, Plaintiff argues Fiserv and First Data should be held liable for BAMS' actions under two theories: (1) joint venture liability; and (2) an alter ego theory. Neither theory is applicable.

A.    <u>Alter Ego</u>

Plaintiff contends in his Brief, but does not allege in his Complaint, that because BAMS may be dissolved as of June 2020, he has somehow established BAMS is merely an alter ego of Fiserv and First Data.  Plaintiff's argument is premature at best.

To prevail on an alter ego theory, Plaintiff must, at the very least, plead that "shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and owners no longer exist."  *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1328–29 (N.D. Ga. 2014).  Further, Plaintiff "must generally establish evidence of fraud, abuse of the corporate form, commingling of assets or corporate insolvency at the time of the transaction." *Id.*  Plaintiff has made no such allegations.

Not only can Plaintiff not establish any fraud or abuse, but he has altogether failed to plead any such facts. Plaintiff does not plead BAMS is a mere instrumentality for Fiserv, First Data, or Bank of America.  Plaintiff does not plead how the corporate form has been disregarded, or that it has been disregarded at all. Nor does Plaintiff plead there is such unity of ownership that the separate

personalities of the corporations no longer exist.  Plaintiff's newly formulated alter ego claim should be disregarded for this reason alone.

Plaintiff's dissolution argument is similarly unavailing.  Plaintiff has not plead the future dissolution anywhere in his Complaint, despite citing to Fiserv's 10-K and Prospectus Supplement in his Complaint for other propositions. (Compl. ¶¶12-13.) Nor has a dissolution occurred at this time, or any judgment against BAMS (or any other defendant) been entered.  Further, Plaintiff's cases do not demonstrate that Fiserv and First Data should remain in this case under an alter ego theory simply because BAMS may be dissolved at some future date.  *Baker's Bay*, cited by Plaintiff, hinged on express allegations that defendant was a "shell" with "no assets," and thus was insolvent or incapable of satisfying a judgment. *Baker's Bay at Great Guana, LLC v. Discovery Baker's Bay Inv'rs, LLC*, 2018 WL 3093960, at *6 (N.D. Ga. Feb. 16, 2018) (finding "Plaintiff ha[d] alleged sufficient facts asserting DBBI is a 'mere instrumentality' . . . ."); *Johnson v. Lipton*, 254 Ga. 326, 327 (1985) (holding where corporation had sufficient assets to pay creditor's claim, the corporate veil could not be pierced.)  Plaintiff has made no allegations regarding any Defendant's current insolvency or lack of ability to satisfy a money judgment.  Plaintiff's alter ego argument is without merit.

B.   <u>Joint Venture</u>

Plaintiff next claims that a joint venture should be regarded as a single employer for purposes of his retaliation claims. Thus, Plaintiff argues as an employee of BAMS he is also an employee of Fiserv and First Data. Plaintiff does not allege he was an employee of all three organizations. In fact Plaintiff clearly alleges in his Complaint, "Mr. Slawin was hired by Defendant BAMS for the position of BAMS' VP Operations Control Officer . . . ." (Compl. ¶ 40.) The sole allegation regarding a joint venture merely states BAMS is a joint venture between Bank of America and First Data. (Compl. ¶ 8.) Plaintiff does not allege any vicarious liability should attach to First Data as a result of this venture, nor does he claim BAMS was an agent of First Data, Fiserv, or Bank of America.

Further, and under Plaintiff's own case law, joint venture liability does not apply to claims of retaliation, but is, instead, limited to claims of negligence. *See Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (1997) (*quoting Boatman v. George Hyman Constr. Co.*, 157 Ga. App. 120, 123 (1981)) (holding the "theory of joint venturers arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control . . . so as to render all joint venturers liable for the negligence of the other."); *Adams v. Unum Life Ins. Co. of Am.*, 508 F. Supp. 2d 1302, 1315 (N.D. Ga. 2007) (noting *Kissum* is limited

to holding "joint venturer liability holds all joint venturers liable for the negligence of the others" and where "[p]laintiff has alleged claims for breach of contract and bad faith breach of contract . . . joint venturer liability is not applicable to her claims."); *see also Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*, No. 1:12-CV-1250-AT, 2016 WL 9735798, at *23, n.13 (N.D. Ga. Aug. 16, 2016) ("The theory of joint venturer liability holds all joint venturers liable for the negligence of the others, and is not applicable to claims for breach of contract.")   Accordingly, Fiserv and First Data also cannot be held liable under a joint venture theory.

## IV.    Fiserv and First Data Are Not Covered Persons Under the CFPA.

Plaintiff's claims against Fiserv and First Data should be dismissed not only because neither entity employed Plaintiff, but also because neither entity qualifies as a "covered person" or "service provider" under the Consumer Financial Protection Act ("*CFPA*").

The CFPA provides "[n]o covered person or service provider shall terminate . . . . any covered employee . . . by reason of the fact that such employee . . . provided . . . information to the employer … that the employee reasonably believed to be a violation off, any provision of this title . . . ."  *See* 12 U.S.C. § 5567 (a). Plaintiff now claims First Data is a "covered person" and a "service provider" under the statute.  Plaintiff has failed to allege either in his Complaint.

Regardless, neither First Data nor Fiserv is a "covered person" under the statute. A covered person is defined as a person who provides "a consumer financial product or service." 12 U.S.C. § 5481(6)(A). A consumer is defined as an individual. *Id.* §5481(4). A consumer financial product is a financial product or service "offered or provided for use by consumers primarily for personal, family, or household purposes." *Id.* §5481(5) (A). A covered person is, therefore, someone who provides services used by individual consumers primarily for personal, family, or household purposes. Plaintiff has not plead any facts demonstrating First Data or Fiserv provide any services to any natural person which are primarily used for family or household purposes. In fact, Plaintiff does not even reference the term "covered persons" in his Complaint.

Even assuming Plaintiff could show First Data and Fiserv should be liable for BAMS' actions under one of his imputed liability theories, Plaintiff has plead BAMS was in the business of processing payments, not for individual consumers, but for major merchants such as Home Depot, Target and Amazon, as well as for municipalities. (Compl. ¶ 25.) Therefore, BAMS would not qualify as a covered person under the statute.

Plaintiff's argument that Fiserv and First Data are "service providers" also fails. To plead Fiserv and First Data are service providers, Plaintiff would have to

show the entities were providing material services to a "covered person" in connection with that covered persons provision of products or services. 12 U.S.C. § 5481(26)(A). As noted above, BAMS is not a "covered person." Thus, and even assuming Plaintiff had plead that Fiserv or First Data were service providers, Plaintiff's claim under the CFPA would fail. [2]

## V.   Knowledge of the Complaint is an Element of Each of Plaintiff's Claims.

As an initial matter, Plaintiff's argument that SOX, Dodd Frank, and the CFPA are not employment statutes is irrelevant and does not address the core of First Data and Fiserv's argument. Neither First Data nor Fiserv argue these statutes are employment statues, but rather that a *prima facie* claim of retaliation made under each statute must be plead in a similar manner to an allegation of retaliation made under an employment statute. *See* 29 C.F.R. § 1980.104 (e)(1) & (2).

Pursuant to the procedures set forth for handling retaliation complaints under SOX, the complaint "must allege the existence of facts and evidence to make a *prima facie* showing as follows:  (i) The employee engaged in a protected activity;

---

[2] Plaintiff's argument that First Data was an "affiliate" of BAMS under the CFPA fails for the same reason. Plaintiff claims that First Data is an affiliate of BAMS and that under 12 U.S.C. §5481(6)(B) "any affiliate … [that] acts as a service provider" to a covered person is also a covered person under the CFPA. Plaintiff has failed to plead BAMS is a covered person. Plaintiff's affiliate argument is therefore similarly without merit.

(ii) The respondent knew or suspected that the employee engaged in the protected activity; (iii) The employee suffered an adverse action; and (iv) The circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action." *Id*. at § 1980.104 (e) (2); *see also Gale v. U.S. Dep't of Labor*, 384 F. App'x 926, 929 (11th Cir. 2010) ("Department of Labor regulations provide that a complaint alleging a violation of SOX shall be dismissed unless the complainant has made a *prima facie* showing that protected behavior or conduct was a contributing factor in the unfavorable personnel action alleged in the complaint."); *Hall v. Teva Pharm. USA, Inc.,* 214 F. Supp. 3d 1281, 1290 (S.D. Fla. 2016) ("To establish a causal connection [under Dodd Frank] a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated."); *Veard v. F&M Bank*, 704 Fed. Appx. 469, 473 (6th Cir. 2017) ("The prima facie elements that [the plaintiff] must establish [under the CFPA] are that '(1) he engaged in protected activity; (2) the employer knew or suspected, either actually or constructively, that he engaged in the protected activity; (3) he suffered an unfavorable personnel or employment action; and (4) the protected activity was a contributing factor in the unfavorable action.'").

Plaintiff has failed to properly plead the essential elements of his *prima facie* case under SOX, Dodd-Frank, or the CFPA.  Although Plaintiff correctly notes for purposes of Rule 8 he is required to provide defendants with fair notice of his claims, Plaintiff fails to meet this standard.  To survive a motion to dismiss, "a complaint must state a claim to relief that is plausible on its face … [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Simpson v. Alabama Dep't of Human Res.*, 2012 WL 5873553, at *2 (N.D. Ala. Nov. 16, 2012) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)). The "complaint must demonstrate more than a sheer possibility that a defendant has acted unlawfully" and must set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence to support the claim." *Id.*

Plaintiff has not alleged Fiserv or First Data knew of his alleged protected activity. Plaintiff does not allege BAMS management reported any of Plaintiff's concerns to anyone at First Data, or that he ever made any complaints to First Data or Fiserv. Plaintiff now erroneously contends his alter ego and joint venture liability theories establish BAMS' knowledge is somehow imputed onto First Data and Fiserv.  Not only has Plaintiff not plead any such facts in his Complaint, as set

forth in detail above, Plaintiff cites no case law or statutory or regulatory support for his position.

There is simply nothing that can save Plaintiff's Complaint as plead from a proper dismissal.

## VI.    CONCLUSION

Plaintiff's claims against First Data and Fiserv should be dismissed in their entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [3]

Respectfully submitted this 21st day of February, 2020.

  */s/ Aiten M. McPherson*
Christopher Paul Galanek
E-Mail: chris.galanek@bclplaw.com
Aiten M. McPherson
E-Mail: aiten.mcpherson@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309

*Counsel for First Data Corporation and Fiserv, Inc.*

---

[3] To the extent any other defendant has set forth a different basis for dismissal of Plaintiff's Complaint, which is not set forth herein but for consistency would require dismissal of the Complaint, such basis is incorporated herein by reference.

## **CERTIFICATION UNDER L.R. 7.1.D.**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is a computer document and was prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1.C.

This 21st day of February, 2020.

/s/ Aiten M. McPherson
Aiten M. McPherson

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing **DEFENDANTS' FIRST DATA CORPORATION AND FISERV, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 21st day of February, 2020.

/s/ Aiten M. McPherson
Aiten M. McPherson