THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN, : | |
| : | |
| Plaintiff, : | CIVIL ACTION NO. |
| : | 1:19-cv-04129-AT |
| v. : | |
| : | |
| BANK OF AMERICA : | |
| MERCHANT SERVICES, *et al*., : | |
| : | |
| Defendants. : | |

**DEFENDANT BANC OF AMERICA MERCHANT SERVICES, LLC'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
COUNTS II AND III OF PLAINTIFF'S COMPLAINT**

Defendant Banc of America Merchant Services, LLC ("BAMS"), by undersigned counsel, respectfully submits this reply in support of its Motion to Dismiss Counts II and III of Plaintiff's Complaint (Doc. 8) ("BAMS' Motion") and in response to Plaintiff's Response in Opposition thereto (Doc. 31) ("Opposition"). For the reasons discussed in BAMS' Motion and below, Counts II and III of Plaintiff's Complaint should be dismissed.

1

## ARGUMENT

I. **Slawin Cannot State A Claim Under the CFPA.**

    A. **CFPA's Anti-Retaliation Provision, 12 U.S.C. § 5567, Applies Only to "Covered Persons" and "Service Providers."**

Like his Complaint, Slawin's Opposition conflates, confuses, and seeks to make ambiguous key terms in the CFPA that Congress, in fact, chose carefully and defined with precision. In particular, Slawin continues to mash together and zig-zag between the two precisely defined, distinct terms "covered person" and "service provider," much in the way his Complaint did with the meaningless phrase "covered service provider." (Compl. ¶ 125.) Indeed, it is often hard to tell when Slawin is contending that BAMS is a "covered person" versus when he is making the quite different argument that BAMS is a "service provider" to some other "covered person."

Slawin's arguments on these defined terms fail because as explained below, he never alleges that BAMS provides services either:

- to consumers (natural persons), which would be essential to categorizing BAMS itself as a "covered person"; or

- to some other "covered person," which would be essential to categorizing BAMS as a "service provider."

### 1.     **BAMS is Not a "Covered Person."**

A "covered person" is "any person that engages in offering or providing a consumer financial product or service," 12 U.S.C. § 5481(6)(A), which means a person that offers or provides any "service that is":

1. "described in one or more categories" in § 5481(15)(A). The only "category" identified by Slawin for BAMS' services is category "(vii)" (of that § 5481(15)(A)) (Compl. ¶ 22), which describes the performance of only certain "services ***to a consumer***";
2. "***for use by consumers***," and
3. "***primarily for personal, family or household [i.e., for consumer] purposes***."

§ 5481(5)(A) (all emphasis added) (Motion at 6-8). In view of these requirements, Slawin's Opposition only confirms that BAMS is *not* a "covered person." Indeed, Slawin affirmatively describes BAMS (again) as providing services *not* "to a consumer" (or "for use by consumers" or "primarily for" consumer purposes), as the statute requires, but rather *only* "to merchant and municipal customers," including "to major private merchants such as Home Depot, Target, Amazon, Exon Mobile, Royal Caribbean Lines, [and] MGM." (Opposition at 5-6.)

Unable to align BAMS' work with the text of the definition, Slawin resorts to several different, vague formulations of BAMS' business. All of these descriptions

somehow contain the word "consumer" in them, but none comport with the *any* of the three elements of the "covered person" definition just described.[1]

### 2. BAMS is Not a "Service Provider" to Some "Covered Person" Either.

An entity cannot be a "service provider" unless, among other things, it "provides a material service to a covered person." 12 U.S.C. § 5481(26)(A). For BAMS to be a "service provider" then, at a minimum, it would have to provide services to a "covered person." But like his Complaint, Slawin's Opposition identifies none. BAMS' merchant customers are not "covered persons," nor are the municipal customers.

Likewise, Slawin's reliance on *CFPB v. Universal Debt & Payment Solutions* to support the argument that BAMS is a "service provider" is misplaced because, as discussed below, the defendants there *agreed that they served covered persons*, namely several "Debt Collectors." By contrast, none of the entities even allegedly serviced by BAMS are covered persons.

---

[1] Examples of these non-statutory descriptions include (all emphasis added):
- BAMS processed payments for merchants that were, in turn, "*for consumer purchases*" (Opposition at 4 and 8);
- "BAMS was in the business of *processing consumer payments* for purchases from merchants" (Opposition at 3); and
- "BAMS *was involved in* providing a 'consumer financial product or service,'" (Opposition at 4).

*Universal Debt* was a lawsuit brought by the Consumer Financial Protection Bureau ("CFPB") alleging that "Debt Collectors" engaged in a "scheme targeting millions of consumers" to collect debts that "were not in fact owed," in violation of the CFPA's prohibition on unfair, deceptive, or abusive acts or practices in 12 U.S.C. § 5531. *CFPB v. Universal Debt & Payment Solutions*, 2015 WL 11439178, at *1 (N.D. Ga. Sept. 1, 2015). The opinion, however, only concerned motions by three other defendants who provided services to the Debt Collectors but were not themselves Debt Collectors (the "Movants"). According to the CFPB, the Movants were liable along with the Debt Collectors because they had "failed to monitor the Debt Collectors' accounts for signs of unlawful conduct." *Id.* at *2.

The relevant portion of *Universal Debt* is its discussion of whether the Movants were either "covered persons" or "service providers." The court said that the Movants were not "covered persons" because, like BAMS, they provided no services "to consumers" but instead served only the debt-collection businesses. 2015 WL 11439178, at *15.

The court went on to consider whether the Movants were "services providers" and concluded that they were because, *unlike BAMS*, they provided services to the Debt Collectors at the center of the scheme who were admittedly "covered persons." *Universal Debt*, 2015 WL 11439178, at *15-16 (Movants "do not challenge that the

5

Debt Collectors are covered persons."). Indeed, the CFPA specifically identifies the "collection of debt" from consumers as a "covered person" activity. 12 U.S.C. § 5481(15)(A)(x); *see* §§ 5481(5), 5481(6). By contrast, Slawin does not allege that any of BAMS' merchant or municipal customers were debt collectors, and he even concedes this crucial distinction elsewhere. (Opposition at 5 (*Universal Debt* "held that the payment processors [*i.e.*, the Movants] *for debt collectors* could be liable under the CFPA *as service providers*." (emphasis added)).) Nor does Slawin allege, because he cannot, that BAMS' customers were "covered persons" in any other way.

Because BAMS can only be a "service provider" if it served "covered persons," Slawin is also well off the mark in arguing that BAMS somehow "provides services *in connection with*" a consumer financial transaction. (Opposition at 7-8 (emphasis in original).) Indeed, the Opposition's block quotation of *Universal Debt*, and the "in connection with" statutory language within that quotation, do not concern the definition of "service provider" at all. (Opposition at 7-8.) Instead, the block quote and quoted law relate to the alleged substantive violations of 12 U.S.C § 5531, the CFPA's prohibition of certain "unfair" practices. That analysis, however, arises only if a court already has found that someone is a "service provider" to some covered person, because only a service provider (or a covered person itself) can be

6

liable for an "unfair" act committed "in connection with" a consumer financial transaction. § 5531(a).

### B. Slawin Engaged in No Protected Activity Under § 5567.

Although Slawin's failure to plead that BAMS is either a "covered person" or a "service provider" to another covered person is dispositive of his CFPA claim, the claim can also be dismissed for the independent reason that it fails to allege any activity *by Slawin* that was protected by the anti-retaliation provision on which he relies, 12 U.S.C. § 5567(a). As BAMS has explained (Motion at 11-14), the CFPA protects employees who report purported *violations of consumer-financial laws*, not violations of "mail fraud, bank fraud, and wire fraud laws," or "corporate financial disclosures" requirements that Slawin contends he reported. (Compl. ¶ 1, at 2.) Slawin's Opposition does not even respond to this argument insofar as it fails to identify activities by him protected by the CFPA.

Accordingly, Count II of Plaintiff's Complaint should be dismissed and because Slawin has affirmatively pled facts that establish the inapplicability of the CFPA, and he should not be granted leave to amend.

## II. Slawin Cannot State A Claim Under Dodd-Frank.

Slawin's argument that the Supreme Court's decision in *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767 (2018) does not control this case is entirely without

merit. In fact, *Digital Realty* is dispositive of Slawin's claim under § 78u-6(h) of Dodd-Frank Act.

After discussing some of the arguments considered by the Court in *Digital Realty*, Slawin states that "[t]his Court is simply not empowered to say when [the report to the SEC] must be made, even if it would 'make sense' to the Court that the report to the SEC should be made before the discharge." (Opposition at 10.) But that is exactly what the Supreme Court did in *Digital Realty*. As the Court explained, the "statute's unambiguous whistleblower definition" in § 78u-6(a)(6) operates in conjunction with § 78u-6(h) which prohibits an employer from discharging, harassing, or otherwise discriminating against a "whistleblower" "*because of* any lawful act done by the whistleblower" to provide or disclose information relating to a violation of the securities laws. *See* 138 S. Ct. at 774, 777, 782 citing 15 U.S.C. § 76u-6(a)(6) and (h)(emphasis added). Ultimately, the Court held, directly on point:

> In sum, Dodd-Frank's text and purpose leave no doubt that the term "whistleblower" in §78u-6(h) carries the meaning set forth in the section's definitional provision. The disposition of this case is therefore evident: Somers did not provide information "to the Commission" *before his termination*, §78u-6(a)(6), so he did not qualify as a "whistleblower" *at the time of the alleged retaliation*. He is therefore ineligible to seek relief under §78u-6(h).

*Id.* at 778 (emphasis added).  Slawin, like the plaintiff in *Digital Realty*, did not provide information to the Commission before his termination and therefore is ineligible to seek relief under §78u-6(h).

Slawin also argues that because he filed a whistleblower complaint with the SEC *after* his termination he is now a whistleblower within the meaning of § 76u-6(a)(6).  But that does not save his claim because the allegedly retaliatory action – the termination of his employment – occurred *before* any complaint or report to the SEC.  It is therefore impossible for the decision to terminate to have been *because of* a report to the SEC that had not yet occurred.  *See* 15 U.S.C. §78u-6(h) (prohibiting retaliation against a "whistleblower in the terms and conditions of employment *because of* any lawful act done by the whistleblower") (emphasis added).

Since the Supreme Court's decision in *Digital Realty*, courts have consistently held that an individual who makes a report to the Commission only *after* the alleged adverse action does not have a claim under § 76u-6(h).  For example, in *Wutherich v. Rice Energy Inc.* the Western District of Pennsylvania rejected precisely the same argument Slawin makes here: that *Digital Realty* is distinguishable because the plaintiff reported a violation to the Commission after he was terminated.  *See* Civil Action No. 18-200, 2018 U.S. Dist. LEXIS 171113, *18-20 (W.D. Pa. Oct. 2, 2018)

(holding that "because Plaintiff did not provide information to the Commission before his termination, he did not qualify as a whistleblower at the time of the alleged retaliation and is therefore ineligible to seek relief under 15 U.S.C. § 78u-6(h)"). The Fifth Circuit in *Frye v. Anadarko Petroleum Corp*. rejected a similar argument, concluding that in *Digital Realty* "[t]he Court held that the individual must be a statutory whistleblower at the time of the retaliation for the Act to apply" and that *Digital Realty* "holds that a whistleblower may receive protection under the Dodd-Frank Act only for retaliation that occurs after they file a report with the SEC." *See* 2019 U.S. App. LEXIS 37375, at *12-15 (5th Cir. Nov. 4, 2019). *See also Price v. UBS Fin. Servs.*, No. 2:17-01882, 2018 U.S. Dist. LEXIS 66200, at *5-6 (D.N.J. Apr. 19, 2018) (holding that "any attempt to amend his complaint with facts stating that he disclosed information to the SEC *after his termination* would be futile") (emphasis original); *Johnson v. AmeriGas Propane, L.P.*, 2018 U.S. Dist. LEXIS 84379, at *14-15 (N.D.N.Y. May 21, 2018) (holding that because the plaintiff did not make a complaint to the SEC until after his termination he was not a whistleblower at any time prior to his termination and his Dodd-Frank Act claim therefore failed).

   The Supreme Court's decision in *Digital Realty* controls this case and because Slawin admits that he did not make a report to the SEC until after he was fired

(Opposition at 9), Slawin cannot state a claim under 15 U.S.C. § 78u-6(h). Accordingly, Count III of the Complaint should be dismissed, and his request to file an amended complaint should be denied as futile.

## CONCLUSION

WHEREFORE, for the foregoing reasons and those discussed in BAMS' Motion, BAMS respectfully requests that its Motion be granted, that Counts II and III of Plaintiff's Complaint be dismissed with prejudice, and that the Court grant such other and further relief to BAMS as it deems appropriate.

Respectfully submitted this 6th day of March, 2020.

        */s/ M. Laughlin Allen*
        M. Laughlin Allen
        Georgia Bar No. 901999
        McGuireWoods LLP
        1230 Peachtree Street, N.E.
        Suite 2100, Promenade
        Atlanta, GA  30309
        Tel.:  (404) 443-5738
        Fax:  (404) 443-5773
        mlallen@mcguirewoods.com

        Elena D. Marcuss (admitted *pro hac vice*)
        McGuireWoods LLP
        500 East Pratt Street, Suite 1000
        Baltimore, MD  21202
        Tel.:  (410) 659-4454
        Fax:  (410) 659-4547
        emarcuss@mcguirewoods.com
        *Attorneys for Banc of America Merchant Services, LLC*

## CERTIFICATE OF SERVICE AND
## COMPLIANCE WITH LOCAL RULE 5.1B

I certify that on March 6, 2020, I electronically filed the foregoing *Defendant Banc of America Merchant Services, LLC's Reply in Support of its Motion to Dismiss Counts II and III of Plaintiff's Complaint* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Jean Simonoff Marx, Esq.
Robert N. Marx, Esq.
Marx Law Group
1050 Crown Pointe Parkway
Suite 500
Atlanta, GA 30338
jeannie.marx@marxlawgroup.com
robert.marx@marxlawgroup.com
lawyers@marxlawgroup.com

Christopher Paul Galanek, Esq.
Aiten Musaeva McPherson, Esq.
Bryan Cave Leighton Paisner, LLP
One Atlantic Center, 14th Floor
1201 West Peachtree St., N.W.
Atlanta, GA 30309-3471
chris.galanek@bclplaw.com
aiten.mcpherson@bclplaw.com

Mark E. Zelek, Esq.
Joseph D. Magrisso, Esq.
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL  33131-2339
mark.zelek@morganlewis.com
joseph.magrisso@morganlewis.com

Ted Solley, Esq.
Moser Law Co.
112 Krog Street NE Suite 26
Atlanta, GA 30307
tsolley@moserlawco.com

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

*/s/ M. Laughlin Allen*
M. Laughlin Allen, Esq.

123792272_2