## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN, | |
| Plaintiff, | |
| v. | Civil Action File No. 1:19-cv-04129-AT |
| BANC OF AMERICA MERCHANT SERVICES, LLC, s/h/a BANK OF AMERICA MERCHANT SERVICES, | |
| Defendant. | |

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY FISERV, INC.'S MOTION TO QUASH SUBPOENA

Non-Party Fiserv Inc., ("**Fiserv**") pursuant to Federal Rule of Civil Procedure 45 (d)(3), respectfully submits its Motion and Incorporated Memorandum to Quash Plaintiff Eric Slawin's ("**Plaintiff**") Subpoena to Produce Documents served on Fiserv (the "**Subpoena**").  In support, Fiserv shows the Court as follows:

## I.     INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff filed this lawsuit on September 13, 2019, against Bank of America Merchant Services, LLC ("**BAMS**"), Fiserv, First Data Corporation ("**First Data**"), and Bank of America Corporation ("**BAC**") asserting "whistleblower" claims under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("**SOX**"), the Consumer Financial

1

Protection Act, 12 U.S.C. § 5567 ("**CFPA**"), and the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6 ("***Dodd-Frank***").

Each Defendant filed a Motion to Dismiss. [Dkt. Nos. 4, 6, & 8.] On September 30, 2020, the Court dismissed First Data, Fiserv, and BAC from the action. [Dkt. No. 47.] The Court granted BAMS' Motion to Dismiss as to Count III (Dodd Frank) of Plaintiff's Complaint and denied the Motion as to Count II (CFPA). (*Id.*)  Therefore, only two claims remain in this action: (1) Count I claiming BAMS terminated Plaintiff in retaliation for his protected activity in violation of SOX; and, (2) Count II for retaliation under the CFPA. [*Id.*]

On February 23, 2022, Fiserv accepted service of the Subpoena. The Subpoena requires Fiserv to produce documents responsive to 132 separate requests. A true and correct copy of the Subpoena is attached as Exhibit A.  Each request in and of itself is overbroad and unduly burdensome, seeking "all documents" "discussing, regarding, referring to, relating to, or reflecting" matters as broad as the interrelationship between several corporate non-parties, agreements that may or may not reference certain topics, and email correspondence that may in any way refer to PCI compliance. (*See generally* Subpoena.) Further, many of the requests in the Subpoena are duplicative of requests already served on Defendant BAMS, and seek documents irrelevant to the claims remaining in this litigation.  Accordingly, Fiserv

asks that the Court quash the Subpoena in its entirety as it is facially overbroad, unduly burdensome, duplicative, and seeks documents that are completely irrelevant to Plaintiff's claims.

## II.   ARGUMENT AND CITATION OF AUTHORITY

Pursuant to Federal Rule of Civil Procedure 45(d)(3), "the Court is required to grant a timely motion to quash a subpoena that subjects a person to undue burden." *Jenkins v. Corizon Health Inc*., No. CV418-099, 2022 WL 229896, at *1 (S.D. Ga. Jan. 25, 2022) (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). To determine whether a subpoena creates an undue burden, the Court must "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Jordan v. Comm'r, Miss. Dep't of Corr*., 947 F. 3d 1322, 1337 (11th Cir. 2020) (*quoting* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2019)). Further, "[n]on-party status is a factor courts may consider when analyzing whether a subpoena is unduly burdensome." *Pinehaven Plantation Properties, LLC v. Mountcastle Fam. LLC,* No. 1:12-CV-62 WLS, 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013).

Fiserv moves to quash the Subpoena pursuant to Fed. R. Civ. P. 45 (d)(3) because the Subpoena: (1) subjects Fiserv to needless undue burden as Plaintiff can get the documents and information he seeks directly from BAMS and in fact has

requested the *exact same documents* from BAMS; (2) subjects Fiserv to undue burden because the Subpoena contains 132 individual overly broad document requests; and (3) seeks documents which are wholly irrelevant to Plaintiff's remaining claims.

### A.   The Subpoena Subjects Fiserv to an Undue Burden and Compliance With the Subpoena Would Require Fiserv to Incur Significant Expense.

Rule 45 requires that a facially overbroad subpoena which subjects the subpoena target to an undue burden "must" be quashed or modified.  Fed. R. Civ. P. 45(c)(3)(A)(iv) ("On timely motion, the issuing court *must quash* or modify a subpoena that… subjects a person to undue burden") (emphasis added).  *See* F.R.C.P. 45 Advisory Committees Note (Rule 45 is intended to protect nonparties from "significant expense resulting from involuntary assistance to the court.") "With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *Bozeman v. Chartis Cas. Co.*, No. 2:10-CV-102-FTM-36, 2010 WL 4386826, at *4 (M.D. Fla. Oct. 29, 2010).

Plaintiff's Subpoena clearly imposes an undue burden on Fiserv. As an initial and dispositive matter, Plaintiff's Subpoena asks Fiserv, a non-party, to produce

documents responsive to 132 separate requests for a time period ranging from 2015 to the present.  Further, many of the requests served do not even appear to be directed at Fiserv, but instead seek documents in the possession, custody, or control of other entities. For example, Request No. 1 seeks "[a]ll MSA's [Merchant Services Agreements and/or Master Services Agreements] entered into between *BOA* and any of the Selected Merchants . . . ." (*See* Subpoena, ¶ 1.)  Similarly, Request Nos. 6 and 7 seek documents and agreements between BAC and BAMS. (*Id.* at ¶¶ 6-7); *see also* ¶¶ 60-62 (seeking incorporation and ownership documents from JV Wind Down, LLC), ¶¶ 112-114 (seeking agreements between Visa, Discover and MasterCard and JV Wind Down, LLC); ¶¶ 122-125 (seeking financials from JV Wind Down, LLC).

Even a cursory review of the type of requests served further establishes the significant burden and expense Fiserv would have to incur in order to respond to the Subpoena.  For example, Request No. 4 asks Fiserv to produce "all agreements with any of the Selected Merchants that discussed, described, or set forth any role Defendant [BAMS] had in the payment processing system involving such Selected Merchants from 2015 to the present." (*See* Subpoena, ¶ 4.) The term "Selected Merchants" is defined to include 42 separate merchants.  In effect, this single request asks Fiserv to review all of its agreements with 42 merchants over a 7-year period of time in order to determine if the agreements may in any way discuss any role

BAMS had in payment processing -- a process which would require significant time and effort.   Request No. 19 asks Fiserv to produce "[a]ll documents and communications sent to any Selected Merchants discussing or referring to PCI compliance." (Ex. Subpoena, ¶ 19.) Once again, Fiserv would have to review its documents and communications with 42 merchants over a 7-year period of time in order to determine whether such documents may discuss or refer to PCI compliance.

Further, many of the requests require Fiserv to produce documents not only concerning its own business, but also to produce documents that may describe certain "interrelationships" Fiserv may have.   For example, Request No. 7 asks Fiserv to produce "[a]ll documents that describe or set forth any interrelationship between BOA and Defendant, including but not limited to, describing or setting forth their respective duties and obligations, and compensation, with respect to provision of payment processing services to customers, from 2015 to the present, including following the cessation of BAMS' business activity effective on or about July 1, 2020." (*See* Subpoena, ¶ 7.)  Similarly, Requests Nos. 8 and 9 ask Fiserv to produce documents that describe any interrelationship between First Data and BAMS or Fiserv and BAMS. (*See* Subpoena, ¶¶ 8-9.)  Once again, Fiserv would have to review all of its documents for a multiyear period in order to determine whether such documents may discuss "duties and obligations and compensation" between Fiserv,

BAC, and BAMS with respect to their provision of payment processing services. These requests would take several people numerous hours in order to even begin to determine whether responsive documents exist.

Many of Plaintiff's requests also require Fiserv to parse through its documents and emails to not only determine whether they are responsive, but also to ensure that any privileged information has been culled out. *See* Request No. 17 ("[a]ll emails discussing, referring to, or regarding PCI compliance by Defendant"); Request No. 20 ("[d]rafts of any documents intended or proposed to be sent … to any Selected Merchants regarding PCI compliance"); Request No. 40 ("[a]ll documents discussing or referring to Defendant's handling of Primary Account Number Data.") These requests, like a majority of those in the Subpoena, once again place a significant burden on non-party Fiserv. *See McMullen v. GEICO Indem.* Co., No. 14-CV-62467, 2015 WL 2226537, at *8 (S.D. Fla. May 13, 2015) (quashing a subpoena where it would require nonparty lawyers "to sift through six years of documents related to the underlying lawsuit, culling out privileged information, and preparing a privilege log as necessary.")

Plaintiff's Subpoena and its included requests, both in breadth and numerosity, present the type of unduly burdensome requests that must be quashed by the Court. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).

**B.**   **A Majority of the Requests in the Subpoena are Duplicative of Requests served on BAMS.**

The requests in the Subpoena are also duplicative of requests already served on BAMS that have been responded to and, in some instances, objected to by BAMS - a party to the litigation. (A true and correct copy of Plaintiff's First Document Requests is attached as Exhibit B.)  For example, Requests Nos. 1-4 in the Subpoena seek information regarding all MSA's entered into between BAC, First Data, and Fiserv and any of the Selected Merchants. (*See* Subpoena ¶¶ 1-4.) Similarly, Requests for Production Nos. 12, 13, and 14 seek all MSA's entered into between BAMS and any Selected Merchants.

Requests for Production Nos. 64-66 seek documents reflecting the incorporation, organization, ownership, and stock owners of non-party JV Wind Down LLC. (*See* RFP, ¶¶ 64-66.) The exact same requests are made of Fiserv in the Subpoena. (*See* Subpoena, ¶¶ 60-62.) Requests for Production Nos. 67- 68 seek documents related to the assets and transfer of assets of BAMS and JV Wind Down, LLC, including checking and banking statements and wire transfers. (RFP ¶¶ 67-68.) Identical requests are set forth in the Subpoena. (Subpoena ¶¶ 66-67.)  The list goes on and on:

- Request for Production Nos. 14-16 are identical to Subpoena Request Nos. 4-6;

- Request for Production Nos. 17-19 are identical to Subpoena Request Nos. 10-12;

- Request for Production Nos. 21-32 are identical to Subpoena Request Nos. 21-32;

- Request for Production Nos. 33-35 are identical to Subpoena Request Nos. 40-42;

- Request for Production Nos. 43-46 are identical to Subpoena Request Nos. 35-38;

- Request for Production Nos. 47-51 are identical to Subpoena Request Nos. 42, 44-47;

- Request for Production Nos. 59-63 are identical to Subpoena Request Nos. 55-59;

- Request for Production Nos. 64-68 are identical to Subpoena Request Nos. 60-66;

- Request for Production Nos. 69-73 are identical to Subpoena Request Nos. 67-72;

- Request for Production Nos. 75-78 are identical to Subpoena Request Nos. 74-77;

- Request for Production No. 83 mirror Subpoena Requests 78;

- Request for Production Nos. 85-89 mirror Subpoena Requests 81-86;

- Request for Production Nos. 103-103 mirror Subpoena Requests 88-89;

- Request for Production Nos. 104-107 are identical to Subpoena Requests 91-94;

- Request for Production Nos. 111-113 are nearly identical to Subpoena Requests 95-98; and

- Request for Production Nos. 116-135 are identical to Subpoena Requests 101-132.

*See generally* Ex. A, Subpoena, and Ex. B, Requests for Production.

Where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" the Court ***must*** limit the extent of discovery otherwise allowed. *See* Fed. R. Civ. P. 26 (b)(2)(C)(i). Here, Plaintiff clearly seeks the exact same documents from non-party Fiserv as he is seeking from BAMS, a defendant in this litigation. Plaintiff should not be allowed to serve completely duplicative requests

on a non-party to a litigation. *Bingham v. Sys.*, No. 8:14-CV-73-T-23JSS, 2016 WL 4467213, at *4 (M.D. Fla. Aug. 24, 2016) (holding "[b]ecause the discovery requested appears unreasonably cumulative and would subject non-party WFC to undue burden, the discovery should be limited."); *Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05CV1056-J-32MCR, 2006 WL 1627020, at *4 (M.D. Fla. June 6, 2006) (finding "in an effort to spare third parties the expense and cost of responding to the subpoenas, the Court finds that Defendant ought to first attempt to obtain such evidence directly from Plaintiff pursuant to other available avenues under the Federal Rules of Civil Procedure.") Plaintiff's Subpoena should be quashed for this reason as well.

### C.   The Requests in the Subpoena Are Not Relevant to Plaintiff's Claims.

Finally, based on the claims remaining in this litigation, many of Plaintiff's requests are irrelevant and the Subpoena should be quashed for this reason as well.

"While Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). In ruling on a motion to quash issued to a third-party, the Federal Rules of Civil Procedure limit discovery to matters that are either relevant to the claim or defense

of any party or are reasonably calculated to lead to the discovery of admissible evidence.  *See* Fed. R. Civ. P. 26(b)(1).  *American Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 2007 WL 4139466, *5 (N.D. Ga. Nov. 14, 2007); *Fastener Corp. v. Spotnails, Inc*., 43 F.R.D. 204, 206 (N.D. Ill. 1967); *see also* 9A Wright & Miller, Federal Practice and Procedure: Civil 3d § 2452.  The party seeking discovery has the burden of showing that the materials requested are relevant.  *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 696 (N.D. Ga. 2007) (prohibiting certain discovery sought by non-party subpoena where requesting party failed to show relevancy); *Fadalla v. Life Auto. Prods., Inc*., 258 F.R.D. 501, 504 (M.D. Fla. 2007) (modifying subpoena to exclude irrelevant and confidential information). Further, even where the discovery of certain information could be relevant "the Court may nonetheless limit non-party discovery when the information is available through less-intrusive avenues." *Pinehaven Plantation Properties, LLC*, 2013 WL 6734117, at *2.

The only claims remaining in this litigation are Plaintiff's whistleblower retaliation claims against BAMS under SOX and the CFPA. [Dkt. No. 47.] To prove each of his claims, Plaintiff must show he engaged in protected activity, BAMS knew he engaged in such activity, and he was terminated as a result.  *See Gale v. U.S. Dep't of Labor*, 384 F. App'x 926, 929 (11th Cir. 2010) (setting forth the proof

required under SOX); *Veard v. F & M Bank*, 704 F. App'x 469, 473 (6th Cir. 2017) (setting out the requirements under the CFPA).

Yet, Plaintiff's Subpoena seeks documents which go far beyond any of his allegations. For example, Plaintiff seeks documents referring in any way to relationships Fiserv has with First Data, BAC, and BAMS, any interrelationships between the entities, MSA's that Fiserv has in its possession with 42 merchants, and any documents that Fiserv may have sent or received that in any way deal with PCI compliance. (*See generally* Subpoena.) Plaintiff also seeks credit card brand rule books (which are publicly available and can be easily accessed by Plaintiff himself), as well as Fiserv's SEC filings, banking and checking statements, and information related to Fiserv, BAMS' and First Data's assets and liabilities. (*Id.*) Despite these broad requests, Plaintiff's only remaining claim is that he was retaliated against by BAMS when he allegedly reported a PCI non-compliance issue. Plaintiff's requests are not tailored to matters that are relevant to his claims nor are they reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's Subpoena should be quashed.

### D.   **Alternatively, Plaintiff Should Be Required to Reimburse Fiserv for Expenses and Cost of Production.**

"Rule 45 requires the Court to protect non-parties from significant expense resulting from compliance with a subpoena." *Bozeman*, 2010 WL 4386826, at *4.

Where significant costs will be incurred in compliance with a Subpoena "[a] district court has "substantial discretion in the allocation of costs in discovery." *Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir.2005).

In the alternative, and should the Court determine that portions of the Subpoena should not be quashed, Fiserv respectfully requests that Plaintiff be ordered to reimburse Fiserv for the costs of review of its email and document databases, the employee time lost in doing so, any attorneys' fees that may be incurred as a result, and the cost of production.

## III.   CONCLUSION

Based on the foregoing, Fiserv respectfully requests that the Court quash Plaintiff's Subpoena as overly broad, unduly burdensome, duplicative of requests served on BAMS, and as not relevant to any claims or defense in this litigation.  In the alternative, Fiserv requests that the Court order Plaintiff to reimburse it for its expenses, attorneys' fees, and cost of production.

Respectfully submitted this 10th day of March 2022.

> */s/ Aiten M. McPherson*
> Christopher P. Galanek (GA Bar No. 282390)
> Chris.Galanek@bclplaw.com
> Aiten M. McPherson (GA Bar No. 439899)
> Aiten.McPherson@bclplaw.com

**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: 404-572-6600

*Attorneys for Fiserv, Inc.*

## **LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

I hereby certify that the foregoing pleading has been prepared with Times New Roman 14 point font, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

This 10th day of March 2022.

*/s/ Aiten M. McPherson*
Aiten M. McPherson

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing **MOTION AND MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY FISERV, INC.'S MOTION TO QUASH SUBPOENA** with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 10th day of March 2022.

*/s/ Aiten M. McPherson*
Aiten M. McPherson