# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Georgia

| | | |
|---|---|---|
| ERIC SLAWIN | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:19-CV-04129-AT |
| BANC OF AMERICA MERCHANT SERVICES, LLC | ) | |
| s/h/a BANK OF AMERICA MERCHANT SERVICES | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                            Fiserv, Inc.
                          2900 Westside Parkway, Alpharetta, GA 30004
                          *(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

       See Attachment "A" hereto.

| Place:   Marx & Marx, L.L.C. | Date and Time: |
|---|---|
| 1050 Crown Pointe Parkway, Ste. 500<br>Atlanta, GA 30338 | 03/14/2022 12:53 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   02/14/2022

         *CLERK OF COURT*
                                              OR
                                                          s/Robert N. Marx
         _____                 _____
         *Signature of Clerk or Deputy Clerk*             *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Eric Slawin, Plaintiff
_____ , who issues or requests this subpoena, are:

Robert N. Marx, 1050 Crown Pointe Parkway, Ste. 500, Atlanta, GA 30338; lawyers@marxlawgroup.com; (404)261-9559

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:19-CV-04129-AT

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*

❑ I served the subpoena by delivering a copy to the named person as follows:

on *(date)*                                      ; or

❑ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$   .

My fees are $                    for travel and $                    for services, for a total of $       0.00      .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                         *Server's signature*


                                                         *Printed name and title*



                                                         *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Attachment "A" to Subpoena

Definitions

A.  The Uniform Definitions in Discovery Requests set forth in Federal Rule of Civil Procedure 34(a) are incorporated herein and made a part hereof.

B.  "Document" and "tangible things" is used in the broadest sense, and means all data, both electronic and written. This includes writings and tangible things of any kind, and electronically stored information (ESI, as described in Definition C below),  including but not limited to all originals and non-identical copies, and drafts, alterations, modifications, changes and amendments of the following items, whether printed, recorded electronically or magnetically, reproduced by hand, typed, lithographed, transcribed, audio or video taped, disked, filmed, or otherwise stored or maintained in a computer, or in a computer-compatible mode, namely: graphic matter, correspondence, memoranda, notes, e-mails, voice mails, computer printouts, computer files, floppy discs, ASCII discs, computer tapes, summaries of personal conversations, meetings or interviews, minutes of meetings or conferences, opinions or reports of consultants, projections, statistical statements, financial and other reports, contracts, appraisals, studies, proposals, agreements, proposed agreements, parts of agreements, parts of proposed agreements, purchase orders, other orders, bills of lading, invoices, bills of sale, shipping orders, receipts, confirmations, cables, telegrams, telexes, fax

1

transmissions, logs, diaries, books, letters, literature, tape recordings, charts,

photographs, notebooks, drawings, plans, worksheets, interoffice and intraoffice

communications, operating manuals, instruction bulletins, test data, suggestions,

comments and any other matter relating in any way to the specified subject matter.

 C. <u>Electronically Stored Information:</u> This includes data promulgated or

maintained in any electronic medium, including but not limited to on any server,

hard drive, flash drive, thumb drive, laptop, in any cloud account, cloud storage or

source such as Amazon Web Services, Microsoft Azure, Box, Dropbox, Google

Drive, Microsoft OneDrive, Apple iCloud, and on any mobile device (including

but not limited to any phone, tablet, iPad).  ESI within this definition also includes

any email (on any email server whether maintained by BOA and/or Fiserv or on

any virtual machine leased from a cloud provider, running mail server software, or

hosted by a cloud provider), text message, chat (whether on a third party site or

group chat such as on Slack) or on any social media (including but not limited to

Facebook, Twitter, LinkedIn, Instagram, Snapchat or any blogging platform).

 This subpoena requires production of system metadata fields for all

produced files to include custodian, source device, originating path, filename,

modified dates including last modified date and last modified time. For email

messages, these discovery requests required production of metadata to include

custodian, "to", "from", "cc", "bcc", subject, data sent (or received), time sent (or

2

received), attachments, mail folder path, message ID. Metadata also includes

metadata values generated in connection to responding to these document requests,

including but not limited to Bates numbers and ranges, hash values, production

paths and names, and family relationships.

This subpoena requires BOA and/or Fiserv to produce ESI in the form or

forms in which it is ordinarily maintained, on a CD, flash drive or other similar

appropriate medium for downloading such data onto a transportable device. If

some or all responsive data is maintained by BOA and/or /Fiserv or any of its

agents in a hard copy form as well as electronically, BOA and/or Fiserv is

requested to produce the responsive data in both the computerized format as well

as the hard copy format.

D. "Record" shall have the same meaning as "Document."

E.  "And" as well as "Or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of any document request, all

documents that might otherwise be construed to be outside the scope of the

document request; and as used herein the singular shall include the plural and the

plural shall include the singular, except as the context may otherwise require.

F.  For any document including ESI responsive to this request claimed to be

lost, destroyed, or otherwise disposed of since its preparation or receipt, set forth:

(1) the names of all persons who received the original(s) and all copies; (2) the

3

identity of the last person(s) to have custody or control of the document, including the original(s) or any copies; (3) the circumstances under which each such document was lost or destroyed; and (4) all efforts and attempts which have been made to locate each such document.

G.     "Defendant" is Banc of America Merchant Services, LLC, a/k/a BAMS, s/h/a Bank of America Merchant Services and on information and belief now known as JV Wind Down, LLC.

H.     "Plaintiff" is Eric Slawin.

I.     "PCI" is Payment Card Industry Data Security Standard, and "PCI" compliance refers to compliance with those standards.

J.     "PAN data" is primary account number data.

K.     "BOA" is Bank of America Corporation and includes any of its subsidiaries and/or affiliates.

L.     "First Data" is First Data Corporation and includes any of its subsidiaries and/or affiliates and/or parent companies.

M.     "Fiserv" is Fiserv, Inc. and includes any of its subsidiaries and/or affiliates.

N.     "MSA's" are any and all Merchant Services Agreements and/or Master Services Agreements and/or any other agreements providing for Defendant and/or BOA and/or First Data and/or Fiserv to provide processing services,

including regarding credit, debit and certain other Card transactions and services entered into between Defendant and/or BOA and/or First Data and/or Fiserv and any merchants and from 2015 to the date of response, and/or any such agreements signed by Defendant on behalf of BOA, and/or First Data and/or Fiserv for such purposes and effective during said period, and/or any such agreements requiring Defendant to provide services that were executed by Bank of America Corporation, Bank of America, N.A., or in any other way required Defendant to provide processing services along with, in conjunction with, or as part of the Bank of America, and/or First Data and/or Fiserv corporate umbrellas.

O.   "Selected Merchants" are the following, including any subdivisions thereof and/or any wholly owned corporations thereof and/or any joint ventures thereof:

1. Disney (The Walt Disney Company);

2. Amazon;

3. Best Buy;

4. MGM (MetroGoldwynMayer);

5. Exxon Mobil;

6. Target;

7. Home Depot (The Home Depot);

8. Staples;

5

9. Nordstrom;

10. Family Dollar;

11. Ross Stores;

12. P.F. Chang;

13. Macy's;

14. Publix;

15. Luxottica retail brands;

16. Safeway;

17. Albertsons;

18. Lowes;

19. CVS;

20. Estee Lauder;

21. Adobe;

22. Dunkin Brands

23. Walgreens;

24. Chevron;

25. American Airways;

26. Party City.

27. Alipay;

28. Alibaba;

29. Burlington Stores;

30. Dish;

31. NCL;

32. AMC;

33. American Eagle;

34. Royal Caribbean;

35. Xerox;

36. Best Buy;

37. Costco;

38. State of Delaware;

39. State of New Hampshire;

40. State of Florida;

41. L Brands; and

42. Metropolitan Transportation Authority (MTA).

P.  "Visa" includes any subsidiaries and affiliates.

Q.  "MasterCard" includes any subsidiaries and affiliates.

R.  "Discover" includes any subsidiaries and affiliates.

S.  With respect to emails, please produce all attachments.

T.  With respect to emails, please produce such emails in a format that allows Plaintiff to determine all chains of custody, including any blind copies, and

to determine any edits that were made to any such emails.

U.     BOA and/or Fiserv shall produce all documents in <u>its</u> possession, custody or control including, but not limited to, documents in the physical possession of BOA's/ and/or Fiserv's attorneys.

V.     With respect to any document request regarding which respondent objects on the basis of privilege, respondent shall produce a privilege log regarding any allegedly privileged document(s), which log shall be produced simultaneously with the response to this subpoena, together with all non-privileged documents covered by such Document Request.

W.     "effective during the period 2015 to date" includes any documents that were dated from 2015 to the present.

<u>Documents to be Produced</u>

1.

All MSA's entered into between BOA and any of the Selected Merchants from 2015 to the present.

2.

All MSA's entered into between First Data and any of the Selected Merchants from 2015 to the present.

3.

All MSA's entered into between Fiserv and any of the Selected Merchants

from 2015 to the present.

4.

Whether or not denominated as "MSA", all agreements with any of the Selected Merchants that discussed, described or set forth any role Defendant had in the payment processing system involving such Selected Merchants from 2015 to the present.

5.

All agreements between First Data and Defendant regarding, discussing, reflecting or referring to payment processing services from 2015 to the present.

6.

All agreements between BOA and Defendant regarding, discussing, reflecting or referring to payment processing services from 2015 to the present.

7.

All documents that describe or set forth any interrelationship between BOA and Defendant, including but not limited to, describing or setting forth their respective duties and obligations, and compensation, with respect to provision of payment processing services to customers, from 2015 to the present, including following the cessation of BAMS' business activity effective on or about July 1, 2020.

9

8.

All documents that describe or set forth any interrelationship between First Data and Defendant, including but not limited to, describing or setting forth their respective duties and obligations, and compensation, with respect to provision of payment processing services to customers, from 2015 to the present, including following the cessation of BAMS' business activity effective on or about July 1, 2020.

9.

All documents that describe or set forth any interrelationship between Fiserv and Defendant, including but not limited to, describing or setting forth their respective duties and obligations, and compensation, with respect to provision of payment processing services to customers, from 2015 to the present, including following the cessation of BAMS' business activity effective on or about July 1, 2020.

10.

All agreements between BOA and/or First Data and/or Defendant regarding, discussing, reflecting or referring to payment processing services from 2015 to the present.

11.

All MSA's with any of the Selected Merchants and signed by Defendant on

behalf of BOA from 2015 to the present.

12.

All MSA's with any of the Selected Merchants naming Defendant, and/or obligating Defendant to provide processing services along with BOA and/or participate along with BOA in any way to fulfill the MSA from 2015 to the present.

13.

All MSA's with any of the Selected Merchants and signed by Defendant on behalf of First Data from 2015 to the present.

14.

All MSA's with any of the Selected Merchants naming Defendant, and/or obligating Defendant to provide processing services along with First Data and/or participate along with First Data in any way to fulfill the MSA from 2015 to the present.

15.

All MSA's with any of the Selected Merchants and signed by Defendant on behalf of Fiserv from 2015 to the present.

16.

All MSA's with any of the Selected Merchants naming Defendant, and/or obligating Defendant to provide processing services along with Fiserv and/or participate along with Fiserv in any way to fulfill the MSA from 2015 to the

present.

17.

All emails discussing, referring to, or regarding PCI compliance by Defendant.

18.

All documents or communications sent to any Selected Merchants discussing or referring to Defendant being PCI compliant.

19.

All documents or communications sent to any Selected Merchants discussing or referring to PCI compliance.

20.

Drafts of any documents intended or proposed to be sent or communicated to any Selected Merchants regarding PCI compliance.

21.

All documents that set forth, describe or discuss Defendant's role in providing payment processing services in connection with the joint venture between First Data and BOA from 2015 to the present.

22.

All documents that set forth, describe or discuss Defendant's role in providing payment processing services as that role related to any role played by

12

First Data from 2015 to the present.

23.

All documents that set forth, describe or discuss Defendant's role in providing payment processing services as that role related to any role played by BOA from 2015 to the present.

24.

All documents, including but not limited to emails, regarding, reflecting or referring to PCI compliance.

25.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to Defendant being or not being PCI compliant.

26.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to Defendant taking any action(s) to become PCI compliant.

27.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to BOA being or not being PCI compliant.

28.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to BOA taking any action(s) to become PCI compliant.

29.

All documents sent to or received from BOA regarding PCI compliance.

30.

All documents sent to or received from BOA regarding Defendant being or not being PCI compliant.

31.

All documents, sent to or received from BOA, including but not limited to emails, discussing, regarding, reflecting or referring to BOA taking any action(s) to become PCI compliant.

32.

All documents, sent to or received from BOA, including but not limited to emails, regarding, reflecting or referring to Defendant taking any action(s) to become PCI compliant.

33.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to First Data being or not being PCI compliant.

34.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to First Data taking any action(s) to become PCI compliant.

14

35.

All documents sent to or received from First Data regarding PCI compliance.

36.

All documents sent to or received from First Data regarding Defendant being or not being PCI compliant.

37.

All documents, sent to or received from First Data, including but not limited to emails, discussing, regarding, reflecting or referring to Defendant taking any action(s) to become PCI compliant.

38.

All documents in BOA's possession, custody or control between First Data and BOA regarding PCI compliance.

39.

All documents in Fiserv's possession, custody or control between First Data and BOA regarding PCI compliance.

40.

All documents discussing or referring to Defendant's handling of Primary Account Number Data.

15

41.

All surveys, evaluations, calculations, investigations or any other documents that discuss, set forth, or refer to the volume of transactions handled by Defendant which required Defendant to obtain, convey, utilize, or in any other manner, handle PAN data.

42.

All documents created by, referred to, relied upon, sent by or received from Joseph Moll regarding Defendant's handling of PAN data.

43.

All documents regarding, reflecting or referring to any joint venture between BOA and First Data and referring to Defendant.

44.

All documents discussing, regarding, referring to, or reflecting the purchase of First Data by Fiserv.

45.

All documents discussing, regarding, referring to, or reflecting the purchase of First Data by Fiserv and referring to Defendant.

46.

All documents discussing, regarding, referring to, or reflecting the purchase of First Data by Fiserv and referring to BOA.

16

47.

All documents discussing, regarding, referring to, or reflecting the purchase of First Data by Fiserv and referring to Defendant and BOA.

48.

All documents discussing, regarding, referring to or reflecting the corporate status of First Data after its purchase by Fiserv, including whether or not it was dissolved, or established as a subsidiary of Fiserv, or some other entity under the Fiserv umbrella.

49.

All documents discussing, regarding, referring to or reflecting the the corporate status of First Data after its purchase by Fiserv, including whether or not it was dissolved, or established as a subsidiary of Fiserv, or some other entity under the Fiserv umbrella and referring to Defendant.

50.

All documents discussing, regarding, referring to or reflecting the the corporate status of First Data after its purchase by Fiserv, including whether or not it was dissolved, or established as a subsidiary of Fiserv, or some other entity under the Fiserv umbrella and referring to BOA.

17

51.

All documents discussing, regarding, referring to or reflecting the corporate

status of First Data after its purchase by Fiserv, including whether or not it was

dissolved, or established as a subsidiary of Fiserv, or some other entity under the

Fiserv umbrella and referring to Defendant and BOA.

52.

All documents regarding or referring to the assets of First Data upon its

purchase by Fiserv.

53.

All documents regarding or referring to the assets of First Data upon any

change of its corporate status after its purchase by Fiserv.

54.

All documents regarding, referring to or discussing the assumption of First

Data's liabilities upon its purchase by Fiserv.

55.

All documents discussing, regarding, referring to or reflecting the

disposition and/or assignment of any MSA's or any other agreements related to the

provision of payment processing services upon the purchase of First Data by

Fiserv.

56.

All documents discussing, regarding, referring or reflecting the disposition

and/or assignment of any MSA's or any other agreements related to the provision

of payment processing services upon any change in the corporate status of First

Data after its purchase by Fiserv, including whether or not First Data was

dissolved, or established as a subsidiary of Fiserv, or some other entity under the

Fiserv umbrella.

57.

All documents discussing, regarding, referring to or reflecting the

disposition and/or assignment of any MSA's or any other agreements related to the

provision of payment processing services upon the dissolution of Defendant.

58.

All documents discussing, regarding, referring to or reflecting the

disposition and/or assignment of any MSA's or any other agreements related to the

provision of payment processing services upon JV Wind Down, LLC. becoming

the successor to Defendant.

59.

All documents discussing, regarding, referring to or reflecting the

disposition and/or assignment of any MSA's upon JV Wind Down, LLC becoming

the successor to Defendant.

19

60.

All documents regarding, referring to or reflecting the incorporation and or organization of JV Wind Down, LLC.

61.

All documents regarding, referring to or reflecting the owners and/or the ownership of JV Wind Down, LLC.

62.

All documents regarding, referring to or reflecting the owners of the stock of JV Wind Down, LLC.

63.

All documents regarding, referring to or reflecting the owners and/or the ownership of Defendant.

64.

All documents regarding, referring to or reflecting the owners of the stock of Defendant.

65.

All documents regarding, referring to or reflecting the assets of Defendant, including but not limited to checking and banking statements, and balance sheets.

66.

All documents regarding, referring to or reflecting the assets of JV Wind

Down, LLC., including but not limited to checking and banking statements and balance sheets.

67.

All documents regarding, referring to or reflecting the disposition and/or transfer of assets of Defendant to JV Wind Down, LLC., including but not limited to checking and banking statements, wire transfers, and balance sheets.

68.

All documents regarding, referring to or reflecting the disposition and/or transfer of assets of Defendant to any corporation, individual or entity, including but not limited to checking and banking statements, wire transfers, and balance sheets.

69.

All agreements between JV Wind Down, LLC and Defendant.

70.

All agreements between JV Wind Down, LLC, Defendant and BOA.

71.

All agreements between JV Wind Down, LLC, Defendant/ and Fiserv, Inc.

72.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants upon or in reference to the purchase of First

Data by Fiserv.

73.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants upon any change in the corporate status of First Data after its purchase by Fiserv, including whether or not First Data was dissolved, or established as a subsidiary of Fiserv, or some other entity under the Fiserv umbrella.

74.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants upon or in reference to the dissolution of Defendant.

75.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants from or referring to JV Wind Down, LLC.

76.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants upon or in reference to JV Wind Down, LLC. becoming the successor to Defendant.

77.

All documents regarding, referring to, or discussing the assumption of

22

Defendant's liabilities upon the cessation of its operations.

78.

All documents between Defendant and First Data discussing, describing or referring to its corporate, business, subsidiary, and/or other affiliate relationship between Defendant and First Data.

79.

All documents between Defendant and BOA discussing, describing or referring to its corporate, business, subsidiary, and/or other affiliate relationship between Defendant and BOA.

80.

All documents between Defendant and Fiserv discussing, describing or referring to its corporate, business, subsidiary, and/or other affiliate relationship between Defendant and Fiserv.

81.

All rulebooks from VISA applicable to Defendant.

82.

All rulebooks from MasterCard applicable to Defendant.

83.

All rulebooks from Discover applicable to Defendant.

84.

All documents setting forth, describing, or referring to any rules of VISA applicable to Defendant regarding PCI compliance.

85.

All documents setting forth, describing, or referring to any rules of MasterCard applicable to Defendant regarding PCI compliance.

86.

All documents setting forth, describing, or referring to any rules of Discover applicable to Defendant regarding PCI compliance.

87.

All documents sent by or received by Defendant, or prepared by Defendant, related to any filings by BOA with the SEC.

88.

All documents sent by or received by Defendant, or prepared by Defendant, related to any filings by First Data with the SEC.

89.

All documents sent by or received by Defendant, or prepared by Defendant, related to any filings by Fiserv with the SEC.

90.

All documents filed with the SEC regarding or referring to Defendant.

91.

All documents that discussed, referred to or set forth any estimate or calculation of the amount of PAN data transmitted between First Data and Defendant.

92.

All batch files containing PAN data transmitted between First Data and Defendant.

93.

All spreadsheets containing, referring to or reflecting PAN data transmitted between First Data and Defendant.

94.

All emails containing, referring to discussing, or reflecting PAN data transmitted between First Data and Defendant.

95.

All questionnaires or inquiries received from Home Depot regarding or referring to PCI compliance.

96.

All responses to questionnaires or inquiries received from Home Depot regarding or referring to PCI compliance.

97.

All drafts of or proposed responses to questionnaires or inquiries received from Home Depot regarding or referring to PCI compliance.

98.

All questionnaires or inquiries received from any Selected Merchant regarding or referring to PCI compliance.

99.

All responses to questionnaires or inquiries received from any Selected Merchant regarding or referring to PCI compliance.

100.

All drafts of or proposed responses to questionnaires or inquiries received from any Selected Merchant regarding or referring to PCI compliance.

101.

Each and every Power of attorney from BOA to Defendant effective during the period 2015 to date.

102.

All agreements between Defendant and VISA effective during the period 2015 to date.

103.

All agreements between Defendant and Mastercard effective during the

period 2015 to date.

104.

All agreements between Defendant and Discover effective during the period 2015 to date.

105.

All agreements signed by Defendant on behalf of BOA with VISA effective during the period 2015 to date.

106.

All agreements signed by Defendant on behalf of BOA with Mastercard effective during the period 2015 to date.

107.

All agreements signed by Defendant on behalf of BOA with Discover effective during the period 2015 to date.

108.

All agreements with VISA that discuss, refer or relate to Defendant providing any payment processing services  effective during the period 2015 to date.

109.

All agreements with Mastercard that discuss, refer or relate to Defendant providing any payment processing services effective during the period 2015 to

27

date.

110.

All agreements with Discover that discuss, refer or relate to Defendant providing any payment processing services effective during the period 2015 to date.

111.

All agreements between JV Wind Down, LLC and VISA effective during the period 2015 to date.

112.

All agreements between JV Wind Down, LLC and Mastercard effective during the period 2015 to date.

113.

All agreements between JV Wind Down, LLC and Discover effective during the period 2015 to date.

114.

All agreements signed by JV Wind Down, LLC on behalf of BOA with VISA effective during the period 2015 to date.

115.

All agreements signed by JV Wind Down, LLC on behalf of BOA with Mastercard effective during the period 2015 to date.

116.

All agreements signed by JV Wind Down, LLC on behalf of BOA with Discover effective during the period 2015 to date.

117.

Defendant's banking and checking statements from 2015 to the present.

118.

All profit and loss statements of Defendant from 2015 to the present.

119.

All balance sheets of Defendant from 2015 to the present.

120.

All documents regarding, referring to or reflecting the assets of Defendant from 2015 to the present.

121.

All documents regarding, referring to or reflecting the transfer and/or disposition of the assets of Defendant.

122.

All banking and checking statements of JV Wind Down, LLC.

123.

All profit and loss statements of JV Wind Down, LLC.

29

124.

All balance sheets of JV Wind Down, LLC.

125.

All documents regarding, referring to or reflecting the assets of JV Wind Down, LLC.

126.

All documents discussing, regarding, referring to or reflecting the assignment and/or assumption of legal liabilities of Defendant.

127.

All documents sent between Defendant and BOA referring, relating to or discussing Defendant's financial performance, assets, liabilities, receivables including but not limited to any such documents provided to BOA for purposes of BOA's reporting to the SEC.

128.

All documents sent between Defendant and First Data referring, relating to or discussing Defendant's financial performance, assets, liabilities, receivables including but not limited to any such documents provided to First Data for purposes of First Data's reporting to the SEC.

129.

All documents sent between Defendant and Fiserv referring, relating to or

discussing Defendant's financial performance, assets, liabilities, receivables including but not limited to any such documents provided to Fiserv for purposes of Fiserv's reporting to the SEC.

### 130.

All documents sent between Defendant and BOA referring, relating to or discussing Defendant's financial performance.

### 131.

All documents sent between Defendant and First Data referring, relating to or discussing Defendant's financial performance.

### 132.

All documents sent between Defendant and Fiserv referring, relating to or discussing Defendant's financial performance.

* * * End of Attachment "A" to Subpoena * * *