## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>BANC OF AMERICA MERCHANT<br>SERVICES, LLC, s/h/a BANK OF<br>AMERICA MERCHANT SERVICES,<br><br>　　　　　　　　Defendant. | Civil Action No. 1:19-cv-04129-AT |

## NONPARTY BANK OF AMERICA CORPORATION'S MOTION TO QUASH SUBPOENA AND INCORPORATED MEMORANDUM OF LAW

Bank of America Corporation ("BOA") is not a party in this action, the Court having dismissed all claims against BOA a year and a half ago, on September 30, 2020.  Despite BOA's longstanding status as a nonparty, Plaintiff Eric Slawin has served BOA with a subpoena (the "Subpoena") for the production of voluminous records irrelevant to his sole remaining claims:

- The Subpoena contains a staggering 132 document requests.

- The requests themselves are extremely broad, seeking all documents related to a host of topics, including any Payment Card Industry ("PCI") compliance; primary account number ("PAN") data; forty-two separate

merchants plus each one's subdivisions, wholly owned corporations, and joint ventures; payment processing services; relationships, transactions, and agreements among Defendant Banc of America Merchant Services, LLC ("BAMS"), BOA, and other nonparties; Securities and Exchange Commission ("SEC") filings; and all assets, liabilities, and other financial information of multiple entities.

- Many requests do not have date limitations, and those that do require production of documents from a seven-year period (2015 to the present), even though Plaintiff was a BAMS employee only from 2015 to 2017.

- Most of the requests (110 of 132) are duplicative of requests that Plaintiff already served on BAMS, and Plaintiff can seek the documents from sources other than BOA.

The heavy burden that these requests impose on BOA far outweighs any need that Plaintiff might have for the documents.  In this case, Plaintiff claims only that BAMS terminated his employment in retaliation for his opposition to alleged noncompliant activity.  Whether the alleged noncompliant activity occurred is irrelevant to Plaintiff's claim that he was terminated in retaliation for his opposition, as the underlying conduct does not have to have actually occurred for

2

Plaintiff to make out his claim. Yet the Subpoena seeks irrelevant documents relating to any aspects of PCI compliance, PAN data, etc., rather than just to Plaintiff's specific alleged complaints that allegedly resulted in his termination. Even requests relating to any noncompliance that Plaintiff allegedly complained about would be at best only tangential to his claims, such that the discovery requests would be disproportionate.

Because it imposes a significant and undue burden on BOA, the Subpoena "must" be quashed under Federal Rule of Civil Procedure 45(d)(3).  Further, the requests seek privileged documents and confidential business and financial documents, which are additional, independent bases for quashing the Subpoena. Therefore, BOA respectfully requests that the Court quash Plaintiff's Subpoena.

## I.     BACKGROUND.

On September 13, 2019, Plaintiff commenced this action against BAMS, BOA, First Data Corporation ("First Data"), and Fiserv, Inc. ("Fiserv").  *See* ECF No. 1.  Plaintiff claimed that BAMS terminated his employment in retaliation for his opposition to misleading customers into thinking that BAMS' handling of primary account number ("PAN") data (credit or debit card numbers) was compliant with Payment Card Industry ("PCI") standards for data security, "when

issues of PCI compliance were raised by those customers." *Id.* ¶¶ 1, 20, 22. Plaintiff asserted whistleblower claims under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX"), the Consumer Financial Protection Act, 12 U.S.C. § 5567 ("CFPA"), and the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6 ("Dodd-Frank"). *Id.* ¶¶ 112-143.

Each defendant filed a motion to dismiss. ECF Nos. 4, 6, 8. On September 30, 2020, the Court dismissed all claims against BOA, First Data, and Fiserv. ECF No. 47 at 27. The Court held that Plaintiff had failed to exhaust administrative remedies for his SOX and CFPA claims against BOA, First Data, and Fiserv. *Id.* at 8-15. The Court then dismissed Plaintiff's Dodd-Frank claims against all Defendants because he had not filed an SEC complaint before his termination. *Id.* at 15-16. But the Court denied BAMS' motion to dismiss Plaintiff's CFPA claim. *Id.* at 27. Therefore, only two claims remain in this action: Plaintiff's SOX and CFPA claims against BAMS. *Id.*

On March 9, 2022, BOA accepted service of the Subpoena attached as Exhibit A. Despite the limited nature of Plaintiff's remaining claims—two claims against BAMS for allegedly terminating his employment in retaliation for opposing the specific conduct of misleading particular customers about BAMS'

4

PCI compliance with respect to handling PAN data—the Subpoena contains 132 requests for the production of voluminous documents irrelevant to those claims. The requests seek "all" documents discussing, regarding, referring to, relating to, or reflecting matters as expansive as the following:

- Payment processing services agreements entered into with forty-two "Selected Merchants," plus these merchants' subdivisions, wholly owned corporations, and joint ventures, from 2015 to the present; and documents regarding certain dispositions or assignments of such agreements (Requests 1-4, 11-16, and 57-59).

- Documents regarding any aspect of PCI compliance, including any PCI compliance or noncompliance of BAMS, BOA, or First Data (Requests 17-20, 24-39, and 95-100).

- Documents regarding any handling by BAMS of PAN data, including documents regarding the volume of transactions, regarding the amount of data transmitted between BAMS and First Data, and containing the transmitted data itself (Requests 40-42 and 91-94).

- Documents filed with the SEC regarding BAMS; documents that BAMS prepared or exchanged regarding SEC filings by BOA, First Data, or Fiserv;

5

and documents about BAMS' financial performance for purposes of SEC reporting (Requests 87-90 and 127-132).

- Agreements and documents regarding the interrelationship between BOA, First Data, Fiserv, and BAMS, from 2015 to the present; and documents regarding any joint venture between BOA and First Data referring to BAMS (Requests 5-10, 21-23, 43, 78-80, and 101).

- Documents regarding BAMS' agreements, financial performance, assets, liabilities, and receivables, including all of BAMS' banking and checking statements, profit and loss statements, and balance sheets from 2015 to the present (Requests 65, 68, 77, 117-121, and 126).

- Documents regarding JV Wind Down, LLC's ("JV Wind Down") incorporation or organization and ownership (Requests 60-64).[1]

- Agreements between JV Wind Down and BAMS, or between JV Wind Down, BAMS, and BOA or Fiserv (Requests 69-71).

- Documents regarding JV Wind Down's assets, banking and checking statements, profit and loss statements, and balance sheets (Requests 66, 67, and 122-125).

---

[1] As BAMS stated in the Joint Preliminary Report and Discovery Plan, BAMS is "now known as JV Wind Down, LLC." ECF No. 53 at 4.

6

- Notices sent to the forty-two Selected Merchants, plus the merchants' subdivisions, wholly owned corporations, and joint ventures, regarding BAMS' dissolution or regarding JV Wind Down (Requests 74-76).

- Documents regarding Fiserv's purchase of First Data, including documents regarding First Data's corporate status, assets, assumption of liabilities, and disposition or assignment of agreements (Requests 44-56 and 72-73).

- Visa, Mastercard, or Discover rulebooks, PCI compliance rules, and agreements with BAMS or JV Wind Down (Requests 81-86 and 102-116).

Most of these requests—for example, those seeking documents regarding any aspect of PCI compliance, agreements, financial information, and PAN data— encompass confidential documents, including the confidential information of nonparty customers.  Additionally, the requests are broad enough to bring within their scope documents protected from disclosure by the attorney-client privilege, work product doctrine, or common interest privilege, including requests for documents regarding PCI compliance; the handling of PAN data; SEC filings; and the interrelationship between BOA, First Data, Fiserv, and BAMS or any joint venture between BOA and First Data referring to BAMS.

Further, most of the requests—110 of 132—are duplicative of requests that

Plaintiff already served on Defendant BAMS.  The following chart identifies the

Subpoena requests that are substantially similar to those in Plaintiff's First

Document Requests to BAMS, which are attached as Exhibit B:

| Subpoena | BAMS | Subpoena | BAMS | Subpoena | BAMS |
|---|---|---|---|---|---|
| 4-6 | 14-16 | 43-47 | 47-51 | 87-89 | 101-103 |
| 7 | 9 | 52 | 56 | 91-94 | 104-107 |
| 10-12 | 17-19 | 54-62 | 58-66[2] | 95-97 | 111-112 |
| 17 | 81 | 65-67 | 67-69 | 99-100 | 113 |
| 18 | 20 | 68 | 126 | 101-118 | 116-133 |
| 21-32 | 21-32 | 69-77 | 70-78[3] | 119-129 | 124-134[4] |
| 33-39 | 41-46 | 78-79 | 82-83 | 130 | 132 |
| 40-42 | 33-35 | 81-85 | 85-89 | 131-132 | 135, 134 |

Indeed, many of the requests in the Subpoena read as if they were intended

for BAMS, or certain nonparties, rather than for BOA.  For example, the Subpoena

[2] The overlap between Request 56 to BOA and Request 60 to BAMS is partial, as the request to BOA is broader.
[3] The overlap between Request 73 to BOA and Request 74 to BAMS is partial, as the request to BOA is broader.
[4] Plaintiff's First Document Requests to BAMS include two different sets numbered 124-133.

8

requests documents that would be in the possession, custody, or control of BAMS or JV Wind Down, including documents about the relationship between, or documents exchanged between, BAMS or JV Wind Down and entities other than BOA (Requests 5, 8, 9, 13-16, 22, 69, 71, 78, 80, 91-94, 102-104, 111-113, 128, 129, 131, and 132); documents regarding BAMS' or JV Wind Down's assets, liabilities, and finances (Requests 65-68, 77, 117-126); documents regarding the incorporation or organization of JV Wind Down and the ownership of BAMS or JV Wind Down (Requests 60-64); and documents sent, received, or prepared by BAMS regarding SEC filings by entities other than BOA (Requests 88 and 89).

The Subpoena also contains requests for documents that would be in the possession, custody, or control of First Data or Fiserv, such as agreements that First Data or Fiserv entered into (Requests 2-3 and 71); documents regarding First Data's PCI compliance (Requests 33-34); documents regarding the purchase of First Data by Fiserv (Requests 44-56 and 72-73); and documents about the relationship between, or documents exchanged between, BAMS and First Data or Fiserv (Requests 5, 8, 9, 78, 80, 91-94, 128, 129, 131, and 132).  Request 39 even seeks "[a]ll documents in *Fiserv's* possession, custody or control between First Data and BOA regarding PCI compliance."  Ex. A at 15 (emphasis added).

Indeed, the Subpoena that Plaintiff served on BOA is identical to the subpoena that he previously served on Fiserv.  *See* ECF No. 79-1.

## II.   <u>ARGUMENT.</u>

### A.   <u>Legal standard.</u>

Federal Rule of Civil Procedure 45 requires that, "[o]n timely motion, the court for the district where compliance is required ***must*** quash or modify a subpoena that" (as relevant here) "subjects a person to undue burden" or "requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv) (emphasis added); *see also Jordan v. Comm'r, Miss. Dep't of Corrs.*, 947 F.3d 1322, 1325, 1337 (11th Cir. 2020) (holding "that Plaintiffs' subpoena was required to be quashed because it subjected the [nonparty] to an 'undue burden,' which, pursuant to Rule 45(d)(3)(A)(iv), mandates the quashing of the subpoena").

Rule 45 also provides that, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires" (as relevant here) "disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i).

10

**B.      The Subpoena subjects BOA to an undue burden.**

"The undue burden analysis requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Jordan*, 947 F.3d at 1337 (quotation marks omitted). "In determining whether a subpoena presents an undue burden, courts consider (1) the relevance of the information requested, (2) the requesting party's need for the documents, (3) the breadth of the document request, (4) the time period covered by the request, (5) the particularity with which the documents are described, and (6) the burden imposed, including the expense and inconvenience to a nonparty to whom a request is made." *BMO Harris Bank, N.A. v. Richert Funding, LLC*, No. 15-3886, 2017 WL 11627485, at *11 (N.D. Ga. July 3, 2017) (Totenberg, J.).

**1.      BOA is a nonparty.**

"[N]on-party status in and of itself is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue," and "[c]ourts often weigh non-party status against disclosure." *Robinson v. McNeese*, No. 20-160, 2021 WL 232672, at *2 (M.D. Ga. Jan. 22, 2021) (quotation marks and brackets omitted). Accordingly, the fact that BOA is a nonparty weighs in favor of a finding that the Subpoena imposes an undue burden.

11

## 2. The Subpoena imposes a substantial burden because the requests are numerous and overbroad, seeking "all" responsive documents from a long time span.

Courts have held that subpoena requests that are not narrowly tailored, but that seek "all" responsive documents over a long span of time, are overbroad and unduly burdensome.  For example, in one case, the plaintiff's subpoena sought "every document ever created related to [certain] information," which would have required the subpoenaed entity "to find and produce every record related to the development and drafting of [the requested] documents, without any limitation as to time period." *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 528 (N.D. Ga. 2012). The court quashed the twenty subpoena requests at issue, holding that they were "overbroad and unduly burdensome, and … not narrowly tailored to lead to the discovery of admissible evidence," as they were "not limited to the relevant time period at issue," or limited to those records containing information relevant to [the plaintiff's] claims." *Id.*  The court in another case held that subpoenas were overbroad and unduly burdensome because, "[i]nstead of narrowly tailoring the subpoenas to specific issues in this case, [the defendant sought] *all* of the documents in the [nonparties'] files related to [certain topics]," which would have

12

required "sift[ing] through six years of documents."  *McMullen v. GEICO Indem. Co.*, No. 14-62467, 2015 WL 2226537, at *8 (S.D. Fla. May 13, 2015).

Plaintiff's Subpoena is even more burdensome than those in *Alig-Mielcarek* and *McMullen*.  Not only do the individual requests seek "all" documents relating to numerous, broad topics throughout an undefined or seven-year span (depending on the request), but the Subpoena has a staggering 132 requests, thereby greatly multiplying the burden.

Moreover, the topics for which the Subpoena seeks "all" documents are themselves extraordinarily broad.  For instance, the Subpoena seeks documents regarding any aspect of PCI compliance and BAMS' handling of PAN data (not just documents regarding complaints Plaintiff allegedly made regarding PCI compliance); agreements and documents regarding any aspect (even if unconnected to Plaintiff's claims) of the interrelationship between BOA, First Data, Fiserv, and BAMS; and documents regarding seemingly any aspect of BAMS' and JV Wind Down's finances, including their banking and checking statements, profit and loss statements, and balance sheets (even if they have no bearing on Plaintiff's claims).

13

The Subpoena also contains no fewer than twenty-one requests (Requests 1-4, 11-16, 18-20, 72-76, and 98-100) for documents regarding "Selected Merchants," which Plaintiff defines to include *forty-two* apparent customers of BAMS' payment processing services, *plus* each one's subdivisions, wholly owned corporations, and joint ventures, thereby ballooning the number of responsive entities to an indeterminate number.  Ex. A at 5-7.  Moreover, Plaintiff identifies the Selected Merchants only by generic names rather than by their official names, which would make it difficult or impossible to identify the specific merchants, subdivisions, wholly owned corporations, and joint ventures about which BOA would have to collect documents.

Further underscoring the burden to BOA, most of Plaintiff's requests would require BOA to examine documents not only for responsiveness, but also for privilege.  *See McMullen*, 2015 WL 2226537, at *8 (holding that subpoena was overbroad and unduly burdensome where it would require nonparties "to sift through six years of documents … , culling out privileged information, and preparing a privilege log as necessary").  The requests are broad enough to bring within their scope documents protected from disclosure by the attorney-client privilege, work product doctrine, or common interest privilege, including requests

seeking documents regarding PCI compliance; the handling of PAN data; SEC filings; and the interrelationship between BOA, First Data, Fiserv, and BAMS or any joint venture between BOA and First Data referring to BAMS.  For example, documents sent, received, or prepared by BAMS relating to SEC filings by BOA, First Data, or Fiserv (Requests 87-89) would include privileged drafts of SEC filings.  *See, e.g.*, *Smith v. Unilife Corp.*, No. 13-5101, 2015 WL 667432, at *3-4 (E.D. Pa. Feb. 13, 2015) (concluding that drafts of 10-K reports were privileged).

### 3.  The Subpoena seeks irrelevant documents, which Plaintiff does not need.

The Eleventh Circuit has stated that "a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information." *Jordan*, 947 F.3d at 1329.  "[T]he party seeking to enforce a subpoena bears the burden of demonstrating that the requests are relevant." *BMO Harris Bank, N.A. v. Richert Funding, LLC*, No. 15-3886, 2016 WL 11531451, at *6 (N.D. Ga. Dec. 27, 2016).

Plaintiff cannot meet his burden of demonstrating that the requests are relevant because the requests are overbroad and not narrowly tailored to the issues. In the instructive case of *BMO Harris Bank*, the defendant served on a nonparty bank a subpoena that "requested ten broad categories of electronic and 'hard-copy' documents, including virtually every record relating to [one entity's] accounts at

15

[the bank]." *Id.* at *1.  The court denied the defendant's motion to compel the bank to produce documents. *Id.*  The court determined that the defendant did not "come close to meeting its burden of showing that the requested documents have any relevance to the claims and defenses in [the] action." *Id.* at *4.  The court reasoned that "the requests cannot fairly be characterized as narrowly tailored in scope or in time," because most requests did not "place[] any limit on time," and one request sought documents from over a two-year span, "going far beyond the date restrictions that the parties negotiated." *Id.* at *3.  The court also reasoned that "[n]ot only [did] the subpoena ask for the production of all communications, it also broadly define[d] [the bank, account holder, and account holder's affiliate] to include all corporate parents and affiliates as well as anyone acting or purporting to act on its behalf, including its officers, directors, employees, and agents." *Id.*

Here, the Subpoena suffers from the same infirmities, to an even greater extent.  The only claims remaining in this litigation are Plaintiff's SOX and CFPA claims that BAMS terminated his employment in retaliation for his alleged opposition to misleading particular customers about BAMS' PCI compliance.  To prove each of his claims, Plaintiff must show that he engaged in protected activity, BAMS knew he engaged in such activity, and such activity was a contributing

16

factor in his employment termination.  *See Gale v. U.S. Dep't of Labor*, 384 F. App'x 926, 929 (11th Cir. 2010) (SOX); *Veard v. F & M Bank*, 704 F. App'x 469, 473 (6th Cir. 2017) (CFPA).

Yet the Subpoena's scope is far broader than the scope of Plaintiff's claims. There is no indication that all aspects of PCI compliance or of BAMS' handling of PAN data are related to Plaintiff's specific alleged complaints that allegedly resulted in his termination.  Further, Plaintiff would not need to inspect, for this single-plaintiff employment retaliation case, all aspects of the relationships between BAMS and BOA, First Data, and Fiserv; or all aspects of BAMS' and JV Wind Down's finances, including their banking and checking statements, profit and loss statements, and balance sheets.  Nor would Plaintiff need documents relating to all SEC filings by BOA, First Data, and Fiserv.  Additionally, like in *BMO Harris Bank*, Plaintiff defines "Selected Merchants" to include forty-two entities and their subdivisions, wholly owned corporations, and joint ventures, but there is no indication that Plaintiff's retaliation claims implicate all of these entities.  And, also like in *BMO Harris Bank*, Plaintiff seeks documents from an undefined or seven-year span (depending on the request), despite the fact that his

BAMS employment lasted only from 2015 to 2017, such that most of the time period that the Subpoena covers is irrelevant.

To the extent that Plaintiff is seeking discovery about any noncompliance that Plaintiff allegedly complained about, the discovery would be at best only tangential to his claims, and therefore disproportionate.  In *West v. City of Albany, Georgia*, the plaintiff asserted a whistleblower claim, alleging that she was fired in retaliation for "disclosing financial irregularities within the Teller Division of [her] Department."  830 F. App'x 588, 591 (11th Cir. 2020).  She sought to depose the defendant about "any audits, investigations, analyses of financial procedures, and financial irregularities involving any tellers in [her] Department."  *Id.*  But the district court granted the defendant's motion for a protective order, holding that the plaintiff's "request was overbroad, vague, at risk of causing the [defendant] undue burden and expense, and of questionable relevance disproportionate to the needs of her case."  *Id.* at 593.  The Eleventh Circuit affirmed, holding that the plaintiff's "discovery request was only tangentially relevant to her claim."  *Id.*  The Eleventh Circuit stated that the whistleblower statute at issue "requires that an employee disclose a suspected legal violation, not prove that the violation actually occurred."  *Id.*  The Eleventh Circuit then reasoned that the plaintiff's request "would not

make the fact of her disclosure more or less true; the information would only establish that the conduct she complained of actually occurred." *Id.*

Similarly, here, to the extent that Plaintiff is seeking discovery about any noncompliance that he allegedly complained about, such discovery would not show whether he made any complaints, much less whether BAMS terminated his employment in retaliation for any complaints. Because Plaintiff would not have to establish that a noncompliance actually occurred, *see Gale*, 384 F. App'x at 929 (SOX elements); *Veard*, 704 F. App'x at 473 (CFPA elements), his discovery requests are at best tangential to his claims, and therefore unduly burdensome in light of the substantial burden that responding to the Subpoena would involve.

### 4. Most of the requests are duplicative of requests served on Defendant BAMS, and Plaintiff can seek the documents from less burdensome sources.

"[T]he court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive …." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added). Thus, in one case, the court granted a motion to quash a subpoena where "much of the information that Plaintiffs could

get from [the nonparty] … [could] be obtained from other sources (including, for example, [the defendant]).” *Morton v. Lien Filers, Etc. of Heath W. Williams, L.L.C.*, No. 20-3211, 2021 WL 4815899, at *4 (N.D. Ga. Aug. 19, 2021).[5]

Plaintiff's Subpoena is mostly duplicative of the document requests that Plaintiff served on Defendant BAMS, as 110 of the 132 requests in the Subpoena are substantially similar to requests to BAMS.  Also, the Subpoena is identical to the subpoena that Plaintiff served on Fiserv.

Moreover, Plaintiff can obtain the discovery from more convenient, less burdensome, or less expensive sources, such as BAMS.  Indeed, many of the requests in the Subpoena seem like they were intended for BAMS, or certain nonparties, rather than for BOA.  *See supra* Pt. I.

### C.   The Subpoena encompasses privileged documents.

---

[5] *See also Bingham v. BayCare Health Sys.*, No. 14-73, 2016 WL 4467213, at *4 (M.D. Fla. Aug. 24, 2016) (holding that "[b]ecause the discovery requested appears unreasonably cumulative and would subject [a] non-party … to undue burden, the discovery should be limited"), *order clarified on other grounds*, No. 14-73, 2016 WL 7232436 (M.D. Fla. Sept. 20, 2016); *Maxwell v. Health Ctr. of Lake City, Inc.*, No. 05-1056, 2006 WL 1627020, at *4 (M.D. Fla. June 6, 2006) ("[I]n an effort to spare third parties the expense and cost of responding to the subpoenas, the Court finds that Defendant ought to first attempt to obtain such evidence directly from Plaintiff pursuant to other available avenues under the Federal Rules of Civil Procedure.").

An additional and independent reason that the Subpoena must be quashed is that it encompasses privileged documents. *See Jordan*, 947 F.3d at 1337 ("Among the mandatory grounds, a subpoena must be quashed if it requires disclosure of privileged or other protected matter …." (quotation marks omitted)). As discussed above, the requests are broad enough to bring within their scope documents protected from disclosure by the attorney-client privilege, work product doctrine, or common interest privilege. *See supra* Pt. II-B-2.

### D.   The Subpoena requires disclosure of confidential information.

"[F]ederal courts have recognized that privacy interests and confidentiality concerns can factor into a decision whether to quash a subpoena under Rule 45, even though the information requested by the subpoena is not subject to a federal evidentiary privilege." *Jordan*, 947 F.3d at 1336. "As to the provision of Rule 45 permitting the quashing of a subpoena that seeks to disclose trade secrets and other confidential information—Rule 45(d)(3)(B)(i)—courts weigh the claim to privacy against the need for disclosure." *Id.* at 1335 (quotation marks omitted).

Most of the requests in the Subpoena encompass confidential documents. For example, the Subpoena seeks documents regarding any aspect of PCI compliance. PCI compliance records may contain information about a company's

21

cyber defenses and network architecture, which, if known to a hacker or threat actor, could be used to compromise the system more easily.  *See How to Secure with the PCI Data Security Standard*, PCI SECURITY STANDARDS COUNCIL, https://www.pcisecuritystandards.org/pci_security/how   (last visited Mar. 23, 2022) ("It's only by achieving and maintaining compliance that your cyber defenses will be adequately primed against attacks aimed at stealing cardholder data.").  The Subpoena further seeks PAN data—i.e., nonparties' credit and debit card number data.  Also, the Subpoena seeks copious financial information about BAMS and JV Wind Down.  As the Court's Consent Protective Order provides, the PAN data and the financial information that the Subpoena seeks are confidential.  *See* ECF No. 69 ¶ 2 (defining "Confidential Information" to include "financial, and personally identifiable information … belonging to any of the Parties that is not publicly available and is of a generally understood personal and/or confidential nature").  Although the Consent Protective Order confers a degree of protection on this confidential information, there is still a risk of disclosure, as the Consent Protective Order states that "no party shall be precluded from filing 'Confidential Information' with the Court in this action or referring to it in any … filing nor shall any party be required to file 'Confidential Information'

with the Court under seal in the absence of a Court Order specifically requiring that such filing be made under seal." *Id.*

## III.   <u>CONCLUSION.</u>

For the foregoing reasons, nonparty BOA respectfully requests that the Court quash Plaintiff's subpoena.[6]

---

[6] If the Court ultimately requires that BOA comply with the Subpoena in whole or in part, BOA alternatively requests that the Court require Plaintiff to reimburse BOA for all expenses that it incurs in responding to the Subpoena, including the costs of reviewing email and document databases, the employee time lost in doing so, attorneys' fees incurred in responding, and the cost of production.  Rule 45 states that, if a court issues "an order compelling production or inspection" under a subpoena, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Fed. R. Civ. P. 45(d)(2)(B)(i)-(ii).  Where significant costs will be incurred in compliance with a subpoena, "[a] district court has "substantial discretion in the allocation of costs in discovery."  *Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005).

Respectfully submitted this 31st day of March, 2022.

*s/ Charles Solley*
Sam S. Shaulson (*pro hac vice*)
Joseph D. Magrisso (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Telephone: (305) 415-3000
Fax: (305) 415-3001
sam.shaulson@morganlewis.com
joseph.magrisso@morganlewis.com

Charles Edward Solley (GA Bar Number 010108)
MOSER LAW CO.
691 John Wesley Dobbs Ave NE Suite D-212
Atlanta, GA 30312
404-537-5339
tsolley@moserlawco.com

*Attorneys for Non-Party Bank of America
Corporation*

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing motion has been prepared in accordance with Local Rule 5.1, including preparation in Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

This 31st day of March, 2022.

*s/ Charles Solley*
Charles Edward Solley

## **CERTIFICATE OF SERVICE**

I certify that I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification or otherwise.

This 31st day of March, 2022.

*s/ Charles Solley*
Charles Edward Solley