IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC SLAWIN,

                Plaintiff,

v.

BANC OF AMERICA MERCHANT
SERVICES, LLC, s/h/a BANK OF
AMERICA MERCHANT
SERVICES,

                Defendant.

Civil Action File No.
1:19-cv-04129-AT

## PLAINTIFF'S FIRST DOCUMENT REQUESTS

PLEASE TAKE NOTICE THAT, pursuant to Rule 34 of the Federal Rules

of Civil Procedure, Plaintiff, ERIC SLAWIN, by his attorneys, Marx & Marx,

L.L.C., hereby requests that Defendant BANC OF AMERICA MERCHANT

SERVICES, LLC, s/h/a BANK OF AMERICA MERCHANT SERVICES and on

information and belief now known as JV WIND DOWN, LLC, (hereinafter

"Defendant" or "BAMS"), produce and permit Plaintiff to inspect and make copies

of each of the following documents and/or tangible things as those terms are

defined herein, which are in Defendant's  custody, possession and/or control and

additionally, all other documents and/or tangible things which refer or relate in any

way to the subject matter of the Complaint filed in this action.  Plaintiff requests

1

that the documents and other tangible things be produced by <u>Defendant</u> for inspection and copying by Plaintiff within thirty (30) days after service hereof, at 10:00 A.M. at the office of Plaintiff's counsel, Marx & Marx, L.L.C. at 1050 Crown Pointe Parkway, Suite 500, Atlanta, GA 30338, or at such other place as may be mutually agreed.

<u>Please note that a response that any or all responsive documents are or will be made available at the offices of Defendant's counsel will be deemed to be an inadequate response</u>.

<u>Definitions</u>

A.  The Uniform Definitions in Discovery Requests set forth in Federal Rule of Civil Procedure 34(a) are incorporated herein and made a part hereof.

B.  "Document" and "tangible things" is used in the broadest sense, and means all <u>data</u>, both electronic and written. This includes writings and tangible things of any kind, and electronically stored information (ESI, as described in Definition C below),  including but not limited to all originals and non-identical copies, and drafts, alterations, modifications, changes and amendments of the following items, whether printed, recorded electronically or magnetically, reproduced by hand, typed, lithographed, transcribed, audio or video taped, disked, filmed, or otherwise stored or maintained in a computer, or in a computer-compatible mode, namely: graphic matter, correspondence, memoranda, notes, e-

mails, voice mails, computer printouts, computer files, floppy discs, ASCII discs,

computer tapes, summaries of personal conversations, meetings or interviews,

minutes of meetings or conferences, opinions or reports of consultants, projections,

statistical statements, financial and other reports, contracts, appraisals, studies,

proposals, agreements, proposed agreements, parts of agreements, parts of

proposed agreements, purchase orders, other orders, bills of lading, invoices, bills

of sale, shipping orders, receipts, confirmations, cables, telegrams, telexes, fax

transmissions, logs, diaries, books, letters, literature, tape recordings, charts,

photographs, notebooks, drawings, plans, worksheets, interoffice and intraoffice

communications, operating manuals, instruction bulletins, test data, suggestions,

comments and any other matter relating in any way to the specified subject matter.

     C. <u>Electronically Stored Information:</u> This includes data promulgated or

maintained in any electronic medium, including but not limited to on any server,

hard drive, flash drive, thumb drive, laptop, in any cloud account, cloud storage or

source such as Amazon Web Services, Microsoft Azure, Box, Dropbox, Google

Drive, Microsoft OneDrive, Apple iCloud, and on any mobile device (including

but not limited to any phone, tablet, iPad).  ESI within this definition also includes

any email (on any email server whether maintained by <u>Defendant </u>or on any virtual

machine leased from a cloud provider, running mail server software, or hosted by a

cloud provider), text message, chat (whether on a third party site or  group chat

such as on Slack) or on any social media (including but not limited to Facebook, Twitter, LinkedIn, Instagram, Snapchat or any blogging platform).

These discovery requests require production of system metadata fields for all produced files to include custodian, source device, originating path, filename, modified dates including last modified date and last modified time. For email messages, these discovery requests required production of metadata to include custodian, "to", "from", "cc", "bcc", subject, data sent (or received), time sent (or received), attachments, mail folder path, message ID. Metadata also includes metadata values generated in connection to responding to these document requests, including but not limited to Bates numbers and ranges, hash values, production paths and names, and family relationships.

These discovery requests require Defendant to produce ESI in the form or forms in which it is ordinarily maintained, on a CD, flash drive or other similar appropriate medium for downloading such data onto a transportable device. If some or all responsive data is maintained by Defendant or any of its agents in a hard copy form as well as electronically, Defendant is requested to produce the responsive data in both the computerized format as well as the hard copy format.

D.  "Complete personnel file" means all documents traditionally included in an employee's personnel file, or referring to an employee and/or his or her compensation, maintained in the regular course of business, whether or not

4

specifically denominated as a "personnel file", including all such files maintained at a particular job location and/or at any corporate office, and whether or not generated by or maintained in Defendant's personnel office, Human Relations office or any other similarly named office concerning employee files.  "Complete personnel file" also includes documents described above that may be maintained by a supervisor or other supervisory employee, in a file at his or her office or electronically maintained on a computer, flash drive, hard drive, Ipad or other electronic device that such supervisor or supervisory employee maintains or otherwise has access to.  "Complete personnel and payroll files" includes but is not limited to that (those) particular employee's (employees') pay stubs, W-2 forms, documents reflecting compensation paid to the employee, application(s) for employment, resume(s) including any cover letter(s), all records regarding the employee's (employees') qualifications and salary and job history both before, during, and after Defendant's  employ, all job descriptions while employed by Defendant, all records regarding the employee's (employees') educational background, any notes or written memorializations regarding any interview or consideration by the Defendant of the employee(s) for employment including any internal memos regarding same, any offer letter(s) sent to or regarding the employee(s) even if not actually sent to the employee(s), all documents regarding the decision to hire or not to hire the employee(s), all records reflecting the

5

employee's (employees') salary and job history with the <u>Defendant</u>, any reviews, performance reviews or appraisals of or regarding the employee(s), or any documents regarding an employee's (employees') performance, any records reflecting or regarding any hire, transfer, promotion, demotion, termination, criticism, reprimand, discipline, commendation, compliment, bonus, salary increase, salary increase and or reimbursement sent to or noted regarding the employee(s), all job change forms or similarly named documents or documents which reflect an employee's (employees') change of job title or job function including any promotions, demotions, pay increases and/or pay decreases, any internal memoranda or letters regarding an employee's (employees') change of job title or job function or the decision to make or recommend any such change, all documents referring or relating to a decision to terminate or not to terminate an employee(s), any complaints filed or lodged against the employee(s), any complaints filed or lodged by the employee(s), attendance records, timesheets, and any records regarding paid or unpaid leaves of absence of any kind -- whether medical, educational, military, personal or otherwise -- requested by or granted to the employee(s).  "Complete personnel and payroll files" does not mean insurance and beneficiary information, requests for verification of employment, documents regarding wage garnishment or other collection actions by third parties, or documents regarding jury duty.

6

E. "Payroll file" means all documents reflecting an employee's compensation, including but not limited to all documents regarding or reflecting any change or potential change to an employee's compensation, such as any actual, potential or considered pay raise or pay decrease.

F. "Record" shall have the same meaning as "Document."

G. "And" as well as "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of any document request, all documents that might otherwise be construed to be outside the scope of the document request; and as used herein the singular shall include the plural and the plural shall include the singular, except as the context may otherwise require.

H. "Identify" with respect to a document means to state:(1) the identity of the person(s) originating and preparing it (and, if different, the person who signed it): (2) its date; (3) its general type (e.g., letter, memo, report, invoice, etc.), title and/or identifying number; (4) the general nature of its subject matter; (5) the identity of the addressees and distributees, if any; (6) its custodian; and (7) its general location.

I. "Identify" or "set forth the identity of ", with respect to a person means to state: (1) the full name (or, if not known, to supply a description of the individual's physical appearance); (2) present or last known residence and telephone number; (3) present or last known place of employment; (4) Social

7

Security number; and (5) Employee Number.

J. For any document including ESI responsive to this request claimed to be lost, destroyed, or otherwise disposed of since its preparation or receipt, set forth: (1) the names of all persons who received the original(s) and all copies; (2) the identity of the last person(s) to have custody or control of the document, including the original(s) or any copies; (3) the circumstances under which each such document was lost or destroyed; and (4) all efforts and attempts which have been made to locate each such document.

K. "Defendant" is Banc of America Merchant Services, LLC, s/h/a Bank of America Merchant Services and on information and belief now known as JV Wind Down, LLC (hereinafter "Defendant", "BAMS" or "Defendant/BAMS").

L. "Plaintiff" is Eric Slawin.

M. "PCI" is Payment Card Industry Data Security Standard, and "PCI" compliance refers to compliance with those standards.

N. "PAN data" is primary account number data.

O. "BOA" is Bank of America Corporation and includes any of its subsidiaries and/or affiliates.

P. "First Data" is First Data Corporation and includes any of its subsidiaries and/or affiliates.

Q. "Fiserv" is Fiserv, Inc. and includes any of its subsidiaries and/or

8

affiliates.

R.     "MSA's" are any and all Merchant Services Agreements and/or

Master Services Agreements and/or any other agreements providing for Defendant

to provide processing services, including regarding credit, debit and certain other

Card transactions and services entered into between Defendant and any merchants

and effective during the period 2015 to date of response, and/or any such

agreements signed by Defendant on behalf of Bank of America Corporation for

such purposes and effective during said period, and/or any such agreements

requiring Defendant to provide services that were executed by Bank of America

Corporation, Bank of America, N.A., or in any other way required Defendant to

provide processing services along with, in conjunction with, or as part of the Bank

of America corporate umbrella.

S.     "Selected Merchants" are the following, including any subdivisions

thereof and/or any wholly owned corporations thereof and/or any joint ventures

thereof:

1.  Disney (The Walt Disney Company);

2.  Amazon;

3.  Best Buy;

4.  MGM (MetroGoldwynMayer);

5.  Exxon Mobil;

9

6.  Target;

7.  Home Depot (The Home Depot);

8.  Staples;

9.  Nordstrom;

10.  Family Dollar;

11.  Ross Stores;

12.  P.F. Chang;

13.  Macy's;

14.  Publix;

15.  Luxottica retail brands;

16.  Safeway;

17.  Albertsons;

18.  Lowes;

19.  CVS;

20.  Estee Lauder;

21. Adobe;

22.  Dunkin Brands

23. Walgreens;

24.  Chevron;

25.  American Airways;

26. Party City.

27. Alipay;

28. Alibaba;

29. Burlington Stores;

30. Dish;

31. NCL;

32. AMC;

33. American Eagle;

34. Royal Caribbean;

35. Xerox;

36. Best Buy;

37. Costco;

38. State of Delaware;

39. State of New Hampshire;

40. State of Florida;

41. L Brands; and

42. Metropolitan Transportation Authority (MTA).

T.     "Visa" includes any subsidiaries and affiliates.

U.     "MasterCard" includes any subsidiaries and affiliates.

V.     "Discover" includes any subsidiaries and affiliates.

11

W.    With respect to emails, Defendant shall produce all attachments.

X.    With respect to emails Defendant shall produce such emails in a format that allows Plaintiff to determine all chains of custody, including any blind copies, and to determine any edits that were made to any such emails.

Y.    <u>Defendant</u> shall produce all documents in <u>its</u> possession, custody or control including, but not limited to, documents in the physical possession of <u>Defendant's</u> attorneys.

Z.    These Document Requests shall be deemed to be continuing so as to require supplemental production should <u>Defendant</u> or <u>its</u> counsel obtain further or supplemental documents between the time that the documents are produced and the time of trial.

AA.    With respect to any document request regarding which Defendant objects on the basis of privilege, Defendant shall produce a privilege log regarding any allegedly privileged document(s), which log shall be produced simultaneously with Response to the Document Request, together with all non-privileged documents covered by such Document Request.

<u>Document Requests</u>

1.

Complete personnel file of Plaintiff.

12

2.

Complete payroll file of Plaintiff.

3.

All documents regarding, referring to or reflecting Plaintiff's salary, and
salary history.

4.

All documents regarding, referring to or reflecting Plaintiff's bonus, and
bonus history.

5.

All documents regarding, referring to or reflecting Plaintiff's employment
benefits, and employment benefits history.

6.

All documents setting forth the criteria for payment of any bonus to Plaintiff.

7.

All documents setting forth the criteria for payment of non-salary
employment benefits to Plaintiff.

8.

Documents that provide the basis for Defendant's statement in Paragraph 8
of its Answer that it is "a limited liability company whose two members are
subsidiaries of Fiserv and BofA", including documents that identify the "two

13

members" referred to in Paragraph 8 of the Answer.

9.

All documents that describe or set forth any interrelationship between BOA and Defendant, including but not limited to, describing or setting forth their respective duties and obligations, and compensation, with respect to their joint provision of payment processing services to customers, including following the cessation of BAMS' business activity effective on or about July 1, 2020 as referred to in Paragraph 25 of Defendant's Answer.

10.

All documents discussing, regarding, referring to, relating to, or reflecting the decision to terminate Plaintiff's employment.

11.

All documents discussing, regarding, referring to, relating to, or reflecting the termination of Plaintiff's employment.

12.

All MSA's entered into between Defendant and any of the Selected Merchants (Definitions, Section S).

13.

All MSA's with any of the Selected Merchants and signed by Defendant.

14.

Whether or not denominated as "MSA", all agreements with any of the Selected Merchants that discussed, described or set forth any role BAMS had in the payment processing system involving such Selected Merchants.

15.

All agreements between First Data Corporation and BAMS regarding, discussing, reflecting or referring to payment processing services.

16.

All agreements between BOA and BAMS regarding, discussing, reflecting or referring to payment processing services.

17.

All agreements between Bank of America, N.A, First Data Corporation and BAMS regarding, discussing, reflecting or referring to payment processing services.

18.

All MSA's with any of the Selected Merchants and signed by Defendant signed on behalf of BOA.

19.

All MSA's with any of the Selected Merchants naming Defendant, and/or obligating Defendant to provide processing services along with BOA and/or

participate along with BOA in any way to fulfill the MSA.

20.

All documents sent by BAMS to Selected Merchants discussing or referring to BAMS being PCI compliant.

21.

All documents that set forth, describe or discuss BAMS' role in providing payment processing services in connection with the joint venture between First Data Corporation and BOA.

22.

All documents that set forth, describe or discuss BAMS' role in providing payment processing services as that role related to any role played by First Data Corporation.

23.

All documents that set forth, describe or discuss BAMS' role in providing payment processing services as that role related to any role played by BOA or any of its subsidiaries or affiliates.

24.

All documents, including but not limited to emails, regarding, reflecting or referring to PCI compliance.

25.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to Defendant/BAMS being or not being PCI compliant.

26.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to Defendant/BAMS taking any action(s) to become PCI compliant.

27.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to BOA being or not being PCI compliant.

28.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to BOA taking any action(s) to become PCI compliant.

29.

All documents sent to or received from BOA regarding PCI compliance.

30.

All documents sent to or received from BOA regarding BAMS' being or not being PCI compliant.

31.

All documents, sent to or received from BOA, including but not limited to

emails, discussing, regarding, reflecting or referring to BOA taking any action(s) to become PCI compliant.

32.

All documents, sent to or received from BOA, including but not limited to emails, regarding, reflecting or referring to Defendant/BAMS taking any action(s) to become PCI compliant.

33.

All documents discussing or referring to Defendant/BAMS' handling of Primary Account Number Data.

34.

All surveys, evaluations, calculations, investigations or any other documents that discuss, set forth, or refer to the volume of transactions handled by BAMS which required BAMS to obtain, convey, utilize, or in any other manner, handle PAN data.

35.

All documents created by, referred to, relied upon, sent by or received from Joseph Moll regarding BAMS' handling of PAN data.

36.

All documents that set forth, describe, or refer to Mr. Slawin's job functions and/or job responsibilities.

37.

Natasha Collins' personnel file.

38.

Mark Kendall's personnel file.

39.

Brian Rubin's personnel file.

40.

Joseph Moll's personnel file.

41.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to First Data Corporation being or not being PCI compliant.

42.

All documents, including but not limited to emails, discussing, regarding, reflecting or referring to First Data Corporation taking any action(s) to become PCI compliant.

43.

All documents sent to or received from First Data Corporation regarding PCI compliance.

44.

All documents sent to or received from First Data Corporation regarding

BAMS' being or not being PCI compliant.

45.

All documents, sent to or received from First Data Corporation, including

but not limited to emails, discussing, regarding, reflecting or referring to Defendant

taking any action(s) to become PCI compliant.

46.

All documents in Defendant's possession, custody and control between First

Data Corporation and BOA regarding PCI compliance.

47.

All documents regarding, reflecting or referring to any joint venture between

BOA and First Data Corporation and referring to Defendant/BAMS.

48.

All documents discussing, regarding, referring to, or reflecting the purchase

of First Data Corporation by Fiserv, Inc.

49.

All documents discussing, regarding, referring to, or reflecting the purchase

of First Data Corporation by Fiserv, Inc. and referring to Defendant/BAMS.

50.

All documents discussing, regarding, referring to, or reflecting the purchase

of First Data Corporation by Fiserv, Inc. and referring to BOA.

51.

All documents discussing, regarding, referring to, or reflecting the purchase of First Data Corporation by Fiserv, Inc. and referring to Defendant/BAMS and BOA.

52.

All documents discussing, regarding, referring to or reflecting the dissolution of First Data Corporation.

53.

All documents discussing, regarding, referring to or reflecting the dissolution of First Data Corporation and referring to Defendant/BAMS.

54.

All documents discussing, regarding, referring to or reflecting the dissolution of First Data Corporation and referring to BOA.

55.

All documents discussing, regarding, referring to or reflecting the dissolution of First Data Corporation and referring to Defendant/BAMS and BOA.

56.

All documents regarding or referring to the assets of First Data Corporation upon its purchase by Fiserv, Inc.

57.

All document regarding or referring to the assets of First Data Corporation upon its dissolution.

58.

All documents regarding, referring to or discussing the assumption of First Data's liabilities upon its purchase by Fiserv, Inc.

59.

All documents discussing, regarding, referring to or reflecting the disposition and/or assignment of any MSA's or any other agreements related to the provision of payment processing services upon the purchase of First Data Corporation by Fiserv, Inc.

60.

All documents discussing, regarding, referring or reflecting the disposition and/or assignment of any MSA's or any other agreements related to the provision of payment processing services upon the dissolution of First Data Corporation.

61.

All documents discussing, regarding, referring to or reflecting the disposition and/or assignment of any MSA's or any other agreements related to the provision of payment processing services upon the dissolution of BAMS.

62.

All documents discussing, regarding, referring to or reflecting the disposition and/or assignment of any MSA's or any other agreements related to the provision of payment processing services upon JV Wind Down, LLC. becoming the successor to Defendant/BAMS.

63.

All documents discussing, regarding, referring to or reflecting the disposition and/or assignment of any MSA's upon JV Wind Down, LLC becoming the successor to Defendant/BAMS.

64.

All documents regarding, referring to or reflecting the incorporation and or organization of JV Wind Down, LLC.

65.

All documents regarding, referring to or reflecting the owners and/or the ownership of JV Wind Down, LLC.

66.

All documents regarding, referring to or reflecting the owners of the stock of JV Wind Down, LLC.

67.

All documents regarding, referring to or reflecting the assets of

Defendant/BAMS, including but not limited to checking and banking statements, and balance sheets.

68.

All documents regarding, referring to or reflecting the assets of JV Wind Down, LLC., including but not limited to checking and banking statements and balance sheets.

69.

All documents regarding, referring to or reflecting the disposition and/or transfer of assets of Defendant/BAMS to JV Wind Down, LLC., including but not limited to checking and banking statements, wire transfers, and balance sheets.

70.

All agreements between JV Wind Down, LLC and Defendant/BAMS.

71.

All agreements between JV Wind Down, LLC Defendant/BAMS and BOA.

72.

All agreements between JV Wind Down, LLC Defendant/BAMS and Fiserv, Inc..

73.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants upon or in reference to the purchase of First

Data Corporation by Fiserv, Inc.

74.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants upon or in reference to the dissolution of First Data Corporation.

75.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants upon or in reference to the dissolution of Defendant/BAMS.

76.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants from or referring to JV Wind Down, LLC.

77.

All documents discussing, regarding, referring to or reflecting any notices sent to any of the Selected Merchants upon or in reference to JV Wind Down, LLC. becoming the successor to Defendant/BAMS.

78.

All documents regarding, referring to, or discussing the assumption of BAMS' liabilities upon the cessation of its operations.

79.

All documents that provide the factual basis for BAMS' factual assertion that "it complied with applicable payment card industry and contractual data security rules, regulations, and requirements and therefore denies Plaintiff's allegations that it was 'not PCI compliant'" in Paragraph 1 of its Answer, and its similar denial in Paragraph 47 of its Answer.

80.

All documents providing the factual basis for BAMS' admission "that in June 2017 BAMS's risk organization raised a question about the use and handling of primary account number data in certain situations" in Paragraph 48 of its Answer, including but not limited to all documents, emails, investigations, surverys, memos, or any other document discussing, relating to, referring to, or regarding this admission.

81.

All emails discussing, referring to, or regarding PCI compliance by BAMS.

82.

All documents between BAMS and First Data Corporation discussing, describing or referring to its corporate, business, subsidiary, and/or other affiliate relationship between Defendant/BAMS and First Data Corporation.

83.

All documents between BAMS and BOA discussing, describing or referring to its corporate, business, subsidiary, and/or other affiliate relationship between Defendant/BAMS and BOA.

84.

All documents that provide the factual basis for Defendant's denial that Defendant/BAMS was required to be PCI compliant in Paragraph 23 of its Answer.

85.

All rulebooks from VISA applicable to Defendant/BAMS.

86.

All rulebooks from MasterCard applicable to Defendant/BAMS.

87.

All rulebooks from Discover applicable to Defendant/BAMS.

88.

All documents setting forth, describing, or referring to any rules of VISA applicable to Defendant/BAMS regarding PCI compliance.

89.

All documents setting forth, describing, or referring to any rules of MasterCard applicable to Defendant/BAMS regarding PCI compliance.

90.

All documents prepared and/or created by, sent to, or received from Joseph Moll regarding, discussing, or referring to Defendant/BAMS' handling of PAN data and/or PCI compliance.

91.

All documents prepared and/or created by, sent to, or received from David Ades regarding, discussing, or referring to Defendant/BAMS' handling of PAN data, and/or PCI compliance.

92.

All documents prepared and/or created by, sent to, or received from Allie Davis regarding, discussing, or referring to Defendant/BAMS' handling of PAN data, and/or PCI compliance.

93.

All documents prepared and/or created by, sent to, or received from Bryan Glynn regarding, discussing, or referring to Defendant/BAMS' handling of PAN data, and/or PCI compliance.

94.

All documents prepared and/or created by, sent to, or received from Brian Rubin regarding, discussing, or referring to Defendant/BAMS' handling of PAN data, and/or PCI compliance.

95.

All documents prepared and/or created by, sent to, or received from Sherra Grissom regarding, discussing, or referring to Defendant/BAMS' handling of PAN data, and/or PCI compliance.

96.

All documents prepared and/or created by, sent to, or received from Mark Kendall regarding, discussing, or referring to Defendant/BAMS' handling of PAN data, and/or PCI compliance.

97.

All documents prepared and/or created by, sent to, or received from Natasha Collins regarding, discussing, or referring to Defendant/BAMS' handling of PAN data, and/or PCI compliance.

98.

All documents prepared and/or created by, sent to, or received from Larry Brennan regarding, discussing, or referring to Defendant/BAMS' handling of PAN data, and/or PCI compliance.

99.

All documents prepared and/or created by, sent to, or received from Thomas Fontana regarding, discussing, or referring to Defendant/BAMS' handling of PAN data, and/or PCI compliance.

100.

All documents prepared and/or created by, sent to, or received from Tim
Tynan regarding, discussing, or referring to Defendant/BAMS' handling of PAN
data, and/or PCI compliance.

101.

All documents sent by or received by Defendant/BAMS, or prepared by
Defendant/BAMS related to any filings by BOA with the SEC.

102.

All documents sent by or received by Defendant/BAMS, or prepared by
Defendant/BAMs related to any filings by First Data with the SEC.

103.

All documents sent by or received by Defendant/BAMS, or prepared by
BAMs related to any filings by Fiserv Corporation with the SEC.

104.

All documents that discussed, referred to or set forth any estimate or
calculation of the amount of PAN data transmitted between First Data and
Defendant/BAMS.

105.

All batch files containing PAN data transmitted between First Data and
Defendant/BAMS.

106.

All spreadsheets containing, referring to or reflecting PAN data transmitted between First Data and Defendant/BAMS.

107.

All emails containing, referring to or reflecting PAN data transmitted between First Data and Defendant/BAMS.

108.

All memos, notes, or any other documentation memorializing meetings or conversations or regarding such meetings or conversations that Plaintiff had with Natasha Collins, including meetings admitted by Defendant/BAMS in Paragraph 83 of its Answer.

109.

All job descriptions or descriptions of job duties and/or job functions of Larry Brennan as Senior Vice President for Merchant Data Security and Cyber Security during 2017.

110.

All memos, notes, or any other documentation memorializing meetings or conversations that Plaintiff had with Walt Zimmerman regarding PCI data security standard compliance admitted by Defendant/BAMS in Paragraph 85 of its Answer.

111.

All questionnaires sent by Home Depot regarding or referring to PCI
compliance.

112.

All documents in Defendant/BAMS' custody, control or possession
regarding or responding to any questionnaires sent by Home Depot regarding or
referring to PCI compliance.

113.

All documents in Defendant/BAMS' custody, control or possession
regarding or responding to any questionnaires or inquiries by any of the Selected
Merchants regarding or referring to PCI compliance.

114.

All emails or text messages, memos, or any other documents sent between
Mike Solan and Mark Kendall regarding or referring to Plaintiff.

115.

All emails, text messages, memos, drafts or any other documents related to,
discussing the substance and/or delivery of, or referring to the "Declaration"
referred to in Paragraphs 102 of BAMS' Answer.

116.

Each and every Power of attorney from BOA to Defendant/BAMS effective during the period 2015 to date.

117.

All agreements between Defendant/BAMS and VISA effective during the period 2015 to date.

118.

All agreements between Defendant/BAMS and Mastercard effective during the period 2015 to date.

119.

All agreements between Defendant/BAMS and Discover effective during the period 2015 to date.

120.

All agreements signed by Defendant/BAMS on behalf of BOA with VISA effective during the period 2015 to date.

121.

All agreements signed by Defendant/BAMS on behalf of BOA with Mastercard effective during the period 2015 to date.

122.

All agreements signed by Defendant/BAMS on behalf of BOA with Discover effective during the period 2015 to date.

123.

All agreements with VISA that discuss, refer or relate to Defendant/BAMS providing any payment processing services effective during the period 2015 to date.

124.

All agreements with Mastercard that discuss, refer or relate to Defendant/BAMS providing any payment processing services effective during the period 2015 to date.

125.

All agreements with Discover that discuss, refer or relate to Defendant/BAMS providing any payment processing services effective during the period 2015 to date.

126.

All agreements between JV Wind Down, LLC and VISA effective during the period 2015 to date.

127.

All agreements between JV Wind Down, LLC and Mastercard effective

during the period 2015 to date.

128.

All agreements between JV Wind Down, LLC and Discover effective during the period 2015 to date.

129.

All agreements signed by JV Wind Down, LLC on behalf of BOA with VISA effective during the period 2015 to date.

130.

All agreements signed by JV Wind Down, LLC on behalf of BOA with Mastercard effective during the period 2015 to date.

131.

All agreements signed by JV Wind Down, LLC on behalf of BOA with Discover effective during the period 2015 to date.

132.

Defendant's/BAMS' banking and checking statements during the period 2015 to date.

133.

All profit and loss statements of Defendant/BAMS during the period 2015 to date.

124.

All balance sheets of Defendant/BAMS during the period 2015 to date.

125.

All documents regarding, referring to or reflecting the assets of

Defendant/BAMS during the period 2015 to date.

126.

All documents regarding, referring to or reflecting the transfer and/or

disposition of the assets of Defendant/BAMS.

127.

All banking and checking statements of JV Wind Down, LLC.

128.

All profit and loss statements of JV Wind Down, LLC.

129.

All balance sheets of JV Wind Down, LLC.

130.

All documents regarding, referring to or reflecting the assets of JV Wind

Down, LLC.

131.

All documents discussing, regarding, referring to or reflecting the

assignment and/or assumption of legal liabilities of Defendant/BAMS.

132.

All documents sent between Defendant/BAMS and BOA referring, relating to or discussing Defendant/BAMS' financial performance, assets, liabilities, receivables including but not limited to any such documents provided to BOA for purposes of BOA's reporting to the SEC.

133.

All documents sent between Defendant/BAMS and First Data referring, relating to or discussing Defendant/BAMS' financial performance, assets, liabilities, receivables including but not limited to any such documents provided to First Data for purposes of First Data's reporting to the SEC.

134.

All documents sent between Defendant/BAMS and Fiserv, Inc. referring, relating to or discussing Defendant/BAMS' financial performance, assets, liabilities, receivables including but not limited to any such documents provided to Fiserv for purposes of Fiserv's reporting to the SEC.

135.

All documents sent between Defendant/BAMS and First Data referring, relating to or discussing Defendant/BAMS' financial performance.

136.

All document received from non-parties and regarding Plaintiff, whether

received voluntarily, as a result of service of a subpoena, or otherwise.

This <u>2nd</u> day of April 2021.

<u>s/Jean SimonoffMarx</u>
Jean Simonoff Marx, Esq.
Georgia Bar No. 475276
Robert N. Marx, Esq.
Georgia Bar No. 475280
Marx & Marx, L.L.C.
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
Telephone: (404) 261-9559
<u>lawyers@marxlawgroup.com</u>
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN,<br><br>            Plaintiff,<br><br>v.<br><br>BANC OF AMERICA MERCHANT SERVICES, LLC, s/h/a BANK OF AMERICA MERCHANT SERVICES,<br><br>            Defendant. | Civil Action File No.<br>1:19-cv-04129-AT |

CERTIFICATE OF SERVICE

This is to certify that on April 2, 2021, I served: **Plaintiff's First Document Requests** by email to Defendant's attorney of record as follows:

M. Laughlin Allen, Esq.
McGuire Woods LLP
1230 Peachtree Street, N.E.
Suite 2100, Promenade
Atlanta, GA 30309
mlallen@mcguirewoods.com

Respectfully submitted, this 2nd day of April 2021.

        s/Jean Simonoff Marx
Georgia Bar Number 475276
Attorneys for Plaintiff
Marx & Marx, L.L.C.
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338

39

Telephone: (404) 261-9559
E-mail:  lawyers@marxlawgroup.com