IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN,<br><br>              Plaintiff,<br><br>v.<br><br>BANC OF AMERICA MERCHANT<br>SERVICES, LLC, s/h/a BANK OF<br>AMERICA MERCHANT<br>SERVICES,<br><br>              Defendant. | Civil Action File No.<br>1:19-cv-04129-AT |

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY FISERV, INC.'S MOTION TO QUASH SUBPOENA**

In the same Order that granted the motions to dismiss made by Fiserv, Inc.

("Fiserv"). First Data Corporation ("First Data") and Bank of America Corporation

("BOA"), this Court specifically did not address whether any or all of those

Defendants might be deemed to be successors to Defendant Bank of America

Merchant Services, LLC ("BAMS") and/or whether they might be vicariously

liable under Georgia law for BAMS' actions. (Doc. 47, pp. 16 – 17).  Thus, this

Court authorized Plaintiff to file an appropriate motion pursuant to Fed.R.Civ.P.

25(c), and recognized that discovery might be necessary for Plaintiff to file such a

motion. (Doc. 47, pp. 16 – 17, n. 16, p. 17). The Court subsequently extended the

deadline to file such a motion until the matter was administratively closed. (*See*, Docket Entry, Oct. 13, 2020, Docket Entry, Nov. 5, 2020, Doc. 54, Docket Entry June 4, 2021, Doc. 71).

The Joint Modified Scheduling Order submitted after the second unsuccessful mediation (Doc. 78) did not request a specific deadline for filing a motion pursuant to Fed.R.Civ.P. 25(c) because, as set forth in Plaintiff's motion to Amend the Scheduling Order filed before the second mediation (Doc. 70), Defendant has still not produced any documents in response to Plaintiff's First Document Requests that had been served on April 1, 2021, and the parties had been preparing the appropriate joint statement regarding the discovery dispute when the parties decided to revisit mediation.  Since discovery is needed for Plaintiff to file a motion pursuant to Rule 25(c), and since it is clear that Defendant will not produce any responsive documents until the outstanding discovery dispute has been resolved by the Court, it would be futile to set a deadline for the Rule 25(c) motion while the discovery dispute is pending.

After this case was reopened, Plaintiff's counsel restarted the dialogue regarding preparation of the joint statement regarding the outstanding discovery dispute, and served the subpoena on Fiserv which is the subject of this response memorandum of law in opposition to Fiserv's motion to quash the subpoena.

Argument and Citations of Authority

**Applicable Standard**

> As the party moving to quash the subpoena, [Fiserv]
> must show the subpoena subjects it to undue burden.
> *Sherwood v. Michelin N. Am., Inc*., No. 7:06-CV-93
> (HL), 2007 WL 431090, at *2 (M.D. Ga. Feb. 2, 2007)
> (*citing*, *Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d
> 812, 818 (5th Cir. 2004)); see also *Heat and Control, Inc.
> v. Hester Indus., Inc*., 785 F.2d 1017, 1025 (Fed. Cir.
> 1986) (citation omitted) ("The burden of proving that a
> subpoena is oppressive is on the party moving to quash
> and is a heavy one."); 9A Charles Alan Wright & Arthur
> R. Miller, Federal Practice and Procedure, § 2463.1 (3d
> ed. 2008) ("[The movant] cannot rely on a mere assertion
> that compliance would be burdensome and onerous
> without showing the manner and extent of the burden and
> the injurious consequences of insisting upon compliance
> with the subpoena."). Conclusory statements, without
> more, are not enough to meet the burden of proof for a
> motion to quash.

 *Pace v. Valmet, Inc.*, 2019 WL 9828532, at *2 (N.D. Ga. Nov. 27, 2019).

**The Subpoena is not "unreasonably cumulative or duplicative" nor has Fiserv
Shown that the Documents Requested "can be obtained from some other
source that is more convenient, less burdensome, or less expensive"**

BAMS was a joint venture of BOA and First Data, the latter of which was

subsequently purchased by Fiserv. (Complaint, ¶¶1, 8, 11, 12, 13).  Moreover, in

the Joint Preliminary Report and Discovery Plan, BAMS states that it is now

knows as JV Wind Down, LLC ("JV Wind Down"), a limited liability company

whose two members are: FDS Holdings, Inc., a subsidiary of Fiserv and BAMS

Solutions, Inc., an indirect subsidiary of BOA. (Doc. 53, p. 4).  Thus, according to

the Complaint, BAMS was controlled in part by Fiserv, and according to Defendant, that continues to the present, wherein the successor to BAMS, JV Wind Down, is controlled in part by Fiserv.

Given First Data's control of BAMS as a joint venturer with BOA, and Fiserv's present and continuing control in part of BAMS' successor, it is not at all clear what entity or entities are in possession and/or control of the documents sought in Plaintiff's Document Requests addressed to BAMS, and in the subpoena addressed to Fiserv.  Since First Data, and later BAMS, were dissolved, it is unknowable where the documents retained by BAMS, or by First Data, are now.  It is therefore not unreasonable to ask all parties to the joint venture that owned BAMS for relevant documents, and thereby to discover who currently has some or all of those documents. Thus, the subpoena is not *unreasonably* cumulative or duplicative.

Indeed, the subpoena is neither duplicative nor cumulative at all in the sense that the documents sought in the subpoena have not yet been produced by anybody.  This is not a situation where Plaintiff has already obtained documents and is asking for them to be produced again by the same party or by a different party.   Fiserv's argument that credit card company rule books are "publicly available and can be easily accessed" (Doc. 79, p. 13), is simply untrue.[1]

---

[1] Slawin Decl., ¶7.

4

Fiserv's reliance on *Bingham v. Baycare Health System*, 2016 WL 4467213 (M.D. Fla. 2016) is misplaced for precisely this reason.  In *Bingham*, the documents sought in the subpoena had already been produced, and thus the requests were duplicative in fact. (". . . Plaintiff has obtained the information he seeks from another source." 2016  WL 4467213 at \*2; "Defendant has produced documents the documents responsive to these requests . . ." *Id*., at \*3).

While the court in *Maxwell v. Health Center of Lake City, Inc*., 2006 WL 1627020 (M.D. Fla. 2006) did require the Defendant serving subpoenas on plaintiff's prior employers to first request the prior employment information from the plaintiff, the facts are quite different in that the plaintiff – a natural person in a Title VII case – presumably still existed, had not gone through corporate changes, had not been purchased and had not been dissolved.  While a corporation is a legal person in the eyes of the law, there are still factual differences between natural persons and corporations that are relevant to discovery issues. It was thus reasonable to expect that the plaintiff would still be in possession of his own prior employment documents, which is not the case here.

Since it is not clear which entity or entities are currently in possession or control of the documents sought in the subpoena, Fiserv has failed to demonstrate that the documents sought in the subpoena "can be obtained from some other source that is more convenient, less burdensome, or less expensive", *i.e*., that they

can be obtained by the Document Requests addressed to BAMS. In this respect, Fiserv fails to state exactly who is in possession and/or control of the documents sought in the subpoena, nor does Fiserv state that it does not have possession or control of some or all of the documents sought in the subpoena. Since FDS Holdings, Inc, which is a subsidiary of Fiserv, is a member of the LLC (JV Wind Down) that is represented to be BAMS' successor, it would appear to be a simple matter for Fiserv to ascertain whether BAMS or its successor currently has the documents that are sought in the subpoena, and to so advise the Court, but Fiserv has not done that. That leaves Fiserv without any showing that in fact, the documents sought in the subpoena are more easily obtainable from BAMS.

Fiserv's reliance on its current status as a non-party (Doc. 79, pp. 3, 11) is inappropriate since it *might become* a party pursuant to Fed.R.Civ.P. 25(c) if the documents sought in the subpoena establish the necessary requirements for Fiserv to be added as a party under that Rule. In this sense, Fiserv seeks to prevent Plaintiff from discovering the very documents that he needs to make such a motion. Fiserv's reliance on *Pinehaven Plantation Properties, LLC v. Mountcastle Fam. LLC*, WL 6734117 (M.D. Ga. Dec. 19, 2013) is misplaced because there was no suggestion that the non-party recipient of a subpoena might subsequently become a party, nor was there any issue of a motion that might be made by the Plaintiff pursuant to Fed.R.Civ.P. 25(c). Indeed, even so, there the court required

the non-party to comply with the subpoena to produce certain agreements, but denied enforcement as to employment and tax records.

**Documents Sought in the Subpoena are Relevant**

<u>Fiserv Misapprehends what is Relevant to this Case</u>

Fiserv erroneously assumes that the only relevant issue is whether Mr. Slawin can prove his case of unlawful retaliation. To the contrary, as noted above, additionally, there remains in this case the issue of whether Fiserv and/or BOA should be added as a party Defendant pursuant to Fed.R.Civ.P. 25(c) or will be liable under a Georgia state law alter ego, joint venture or successor liability theory. Fiserv's objections based on relevance overlook these salient issues and their relevance arguments are thus based on an incorrect premise.

In any event, even were Fiserv's premise correct – which it is not – that would still beg the question of which entity has possession and control of documents relevant to Mr. Slawin's protected activity, to the objective basis for his belief that BAMS was hiding from its customers the fact that it was not PCI compliant, the magnitude of such non-compliance, the fines that BAMS would be liable to pay it its customers discovered that BAMS was not PCI compliant, and the circumstances of Mr. Slawin's termination. Thus, as noted previously, it is not clear which entity has possession and/or control of the documents relevant to Mr. Slawin proving his cause of action for unlawful retaliatory discharge.

Demonstration that Each of the 132 Requests is Relevant

While there are admittedly 132 separately numbered requests in the subpoena, they are easily grouped into 26 categories.  It was necessary to anticipate all the possible permutations applicable to each category of questions in order not to miss requesting any relevant documents. In other words, if Plaintiff had been aware of Fiserv's nomenclature for its documents and the organizational architecture for their retention, there would only have been approximately 26 requests in the subpoena. For ease of reference and discussion, they are listed below with a letter assigned to each of the 26 categories of requests.

A. Contracts (Master Service Agreements, or MSA's) between any of the non-BAMS former Defendants (Fiserv, First Data and BOA), or signed by BAMS  on behalf of BOA, Fiserv, or Fiserv and certain selected merchants during the period 2015 to date. Requests Nos. 1 – 4, 11 – 16.

These requests are relevant to establish the organizational structure or interrelationship of BAMS, First Data, BOA and Fiserv. The entities that signed the contracts with the merchants or which signed on behalf of other of the non-BAMS former Defendants, could establish, as is pled in the Complaint, that BAMS was owned by First Data, now a wholly owned subsidiary of Fiserv, and by BOA (¶1),[2] that BAMS is a subsidiary of First Data and is listed as such on First Data's SEC filings, and that BAMS is listed as an affiliate of BOA on its SEC filings.

_____

[2] All paragraph references are to the Complaint. (Doc. 1).

(¶8). These requests are also relevant to establish that "BAMS, together with its parent, BOA, under the name Bank of America, N.A. enters into agreements to provide payment processing services to its customers." (¶27). These requests are also relevant to establish the warranties given to customers in the MSA's regarding PCI compliance. (¶¶29 – 32, 70, 71).

B.  Agreements between First Data and BAMS, and between BOA and BAMS referring to payment processing services, 2015 to date. Requests Nos. 5, 6, 10.

These requests are relevant to the involvement of First Data, now a wholly owned subsidiary of Fiserv (¶1) in the payment processing services performed by BAMS. (¶1).  These requests are relevant to establishing that, "BAMS solicits the business, *i.e.*, merchant and municipal customers, and is the 'face' of the relationship between its customers, while First Data handles the payment processing from the back end." (¶¶34 – 36).  The request for agreements between BAMS and BOA is appropriate in a subpoena to Fiserv because First Data – now Fiserv – and BOA were joint venturers that owned BAMS. (¶¶1, 8)[3].

C.  Documents regarding the interrelationship between BOA and BAMS, between First Data and BAMS, and between Fiserv and BAMS, 2015 to present. Requests Nos. 7 – 9, 78 – 80.

---

[3] Plaintiff's references to specific paragraphs of the Complaint are not meant to be exhaustive, and throughout this memorandum of law, paragraphs in the Complaint other than those specifically referenced may be relevant to some or all of the requests in the subpoena.

These requests are relevant to establishing that BAMS was a joint venture owned by BOA and First Data, which is now a wholly owned subsidiary of Fiserv.  (¶¶1, 8).  That is relevant to any motion that Plaintiff might make under Fed.R.Civ.P. 25(c) to have any of the non-BAMS former Defendants added as a party Defendant to this case, under state law principles of alter ego liability, joint venturer liability and/or successor liability. (¶¶1, 8, 9, 11 – 14, 19, 34 – 36, 81). These requests are also made relevant by Defendant's statement in the Joint Preliminary Report and Discovery Plan  that "BAMS, now known as JV Wind Down, LLC ('BAMS'), is a limited liability company whose two members are: FDS Holdings, Inc., a subsidiary of Fiserv, Inc. ('Fiserv'), and BAMS Solutions, Inc., an indirect subsidiary of Bank of America Corporation ('BofA)." (Doc. 53, p. 4).

D. Emails and other documents regarding PCI compliance by BAMS and/or BOA and/or First Data, including documents discussing steps to be taken to become PCI compliant. Requests Nos. 17, 24 – 39.

These requests are relevant to the basic theory and pleading of the Complaint, that BAMS was not PCI compliant, that First Data – now Fiserv – and BOA were aware of that fact but did not take any steps to have BAMS become PCI compliant and instead sought to hide that fact from its customers, the merchants  and municipalities for whom they processed credit card transactions, that Mr. Slawin refused to go along with hiding that fact from the customers, and

was fired because of such refusal. (¶¶1, 3, 47, 48, 50 – 52, 56 – 61, 64 – 66, 69 –

74, 79, 80 – 86, 89, 93 – 95, 98, 99, 103 – 105).

E.  Documents sent to the selected merchants discussing or referring to PCI
compliance. Requests Nos. 18 – 20.

      These requests are relevant to the pleadings in the Complaint that the fact

that BAMS was not PCI compliant was hidden from the customers and instead that

they were either misleadingly told that BAMS was PCI compliant or that questions

regarding PCI compliance were redirected to First Data – now Fiserv – which was

PCI compliant. (¶¶1, 49, 59, 65, 69, 76, 77, 78, 83, 89, 90).

F.  Documents describing BAMS' role in payment processing services in
connection with the joint venture between First Data and BOA, 2015 to present.
Requests Nos. 21 – 23.

      These requests are relevant for the same reasons as set forth with respect to

categories A, B and C above. (¶¶1, 8, 27, 29 – 32, 34 – 36, 70, 71).

G.  Documents regarding BAMS' handling of Primary Account Number ("PAN")
Data. Request No. 40.

      This request is relevant to whether or not BAMS was PCI compliant.

(Complaint, *passim*).

H.  Documents reflecting or discussing the volume of transactions handled by
BAMS, including estimates of data transmitted between BAMS and First Data.
Requests Nos. 41, 91 - 94.

      These requests are relevant to the scope of the problem created by BAMS

being non-PCI compliant.  This is relevant to Mr. Slawin's resistance to

participating in the cover-up, to the cost of BAMS becoming PCI-compliant, which would establish BAMS' motive to fire Mr. Slawin rather than take steps to become PCI compliant, and to the magnitude of the fines which BAMS might be liable to pay its customers if they were to discover that, despite the warranties contained in the MSA's, BAMS was not PCI compliant. (¶¶21 – 24, 51, 52, 54, 57, 73, 77, 81, 84, 94).

I.  Documents sent to or received from Joseph Moll regarding BAMS's handling of PAN data.  Request No. 42.

This request is relevant to the cover-up of BAMS not being PCI compliant. Joseph Moll had been BAMS' Vice President Corporate Information Security Officer, Risk and Compliance and was aware of thousands of instances in which confidential data was being mishandled by BAMS. (¶¶1, 53, 54).

J.  Documents regarding or reflecting the joint venture between BOA and First Data and referring to BAMS. Request No. 43.

This request is relevant for the same reasons as set forth regarding categories A, B, C and F above. (¶¶1, 8, 27, 29 – 32, 34 – 36, 70, 71, Doc. 53, p. 4).

K.  Documents regarding the purchase of First Data by Fiserv, including documents reflecting the corporate status of First Data after the purchase, the transfer of any of First Data's assets and assumption of any of First Data's liabilities. Requests Nos. 44 – 56.

These requests are relevant for the same reasons as set forth regarding category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

L.  Documents regarding the disposition of MSA's following dissolution of BAMS. Requests Nos. 57 – 59, 77.

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

M. Documents regarding the incorporation and ownership of JV Wind Down Requests Nos. 60 – 62.

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

N.  Documents regarding the ownership of BAMS. Requests Nos. 63 – 64.

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

O.  Documents regarding the transfer of BAMS' assets. Requests Nos. 65 – 68.

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

P.  Agreements between JV Wind Down and BAMS, BOA and/or Fiserv. Requests Nos. 69 – 71.

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

Q.  Notices sent to merchants upon the purchase of First Data by Fiserv and upon the dissolution of BAMS. Requests Nos. 72 – 76.

These requests are relevant for the same reasons set forth regarding

categories C and E above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 49, 59, 65, 69, 76,

77, 78, 81, 83, 89, 90, Doc. 53, p. 4).

R. <u>Rules and rule books from credit card companies applicable to BAMS.</u>
<u>Requests Nos. 81 – 86.</u>

These requests are relevant to establish that the credit card companies

required BAMS to be PCI compliant and subjected BAMS to substantial fines if

BAMS were not PCI compliant. (¶¶1, 20, 21, 23, 29).

S. <u>Documents regarding SEC filings by Fiserv, BOA, or First Data and referring</u>
<u>to BAMS. Requests Nos. 87 – 90.</u>

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

T. <u>Documents regarding questionnaires received from merchants and regarding</u>
<u>PCI compliance. Requests Nos. 95 – 100.</u>

These requests are relevant to the allegations in the Complaint that BAMS

deflected questions from merchants as to whether BAMS was PCI compliant,

which in turn is relevant to the issue of BAMS' cover-up and Mr. Slawin's refusal

to go along with it. This is relevant to showing that his refusal to go along with the

cover-up resulted in his termination. (¶¶1, 49, 59, 64 – 66, 76, 79, 80, 82, 83, 85,

88 – 90, 92, 93, 98).

U. <u>Any power of attorney from BOA to BAMS effective during the period 2015 to</u>
<u>date. Request Nos. 101.</u>

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

V.  <u>Agreements with credit card companies and BAMS, or JV Wind Down, or signed by BAMS or JV Wind Down, on behalf of BOA during the period 2015 to date. Requests Nos. 102 – 116.</u>

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

W. <u>Banking statements, checking statements, profit and loss statements, balance sheets, documents reflecting the assets, transfer of assets and/or disposition of assets of BAMS and its successor, JV Wind Down during the period 2015 to present. Requests Nos. 117 – 125.</u>

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

X.  <u>Documents reflecting the assignment of BAMS' liabilities. Request No. 126.</u>

This request is relevant for the same reasons as set forth regarding category

C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

Y.  <u>Documents discussing BAMS' financial performance by BOA, Fiserv and/or First Data for purposes of preparing reports to be filed with the SEC by any of those entities. Requests Nos. 127 -129.</u>

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

Z. <u>Documents between BAMS and BOA, and/or First Data and/or Fiserv regarding BAMS' financial performance. Requests Nos. 130 – 132.</u>

These requests are relevant for the same reasons as set forth regarding

category C above. (¶¶1, 8, 9, 11, 12, 13, 14, 19, 34 – 36, 81, Doc. 53, p. 4).

<u>Fiserv Fails to Demonstrate that Any of the Requests are Irrelevant</u>

Aside from stating that the scope of discovery should be informed by relevance, Fiserv's relevance argument (Doc. 79, pp.11 – 13), fails to discuss even one of the 132 requests.  Instead, Fiserv "punts the ball" to the Court by simply citing, "(*See generally* Subpoena)."  (Doc. 79, p. 13 [Emphasis in original]).  Fiserv contents itself with a general assertion that the requests in the subpoena are "broad" and leaves it at that. Thus Fiserv requires the Court to parse through the subpoena on its own and to speculate what Fiserv's relevance argument might be regarding any of those requests.  Fiserv's memorandum of law fails to address the dispositive question before the Court, which is whether application of those legal principles <u>to the facts of this case</u>, *i.e.*, to the specific requests in the subpoena, warrants the relief sought in its motion.  In contrast, as set forth above, Plaintiff has discussed every one of the 132 requests in the subpoena, demonstrated why each of them are relevant, and keyed each request back to specific allegations in the Complaint. Fiserv's failure to demonstrate why any one of the requests is irrelevant, warrants rejection in its entirety of Fiserv's motion to quash.[4]

---

[4] Fiserv should not be permitted to "cure" its failure in a reply brief, which would effectively acknowledge that it failed to substantiate its objections based on relevance in its initial brief. Plaintiff's discussion of why each of the 132 requests is relevant took approximately 9 ½ pages. Fiserv filed a 16-page brief, and thus had plenty of room under the Local Rules to discuss each of the requests as Plaintiff

Fiserv relies on cases involving drastically different facts. In *Jordan v. Commissioner, Mississippi Department of Corrections*, 947 F.3d 1322 (11th Cir. 2022) death penalty opponents served a subpoena on the Georgia Department of Corrections to discover that agency's source for the compounded drug that the agency used for executions. The Court of Appeals held that the documents were not relevant because the plaintiffs argued that use of the compounded drug was also unconstitutional and because discovery of its sources would effectively make it unavailable anyway; and the court held that discovery would impose too high a burden on the State of Georgia since it would effectively compromise that State's ability to carry out its judgments.

In *Fastener Corporation v. Spotnails, Inc*., 43 F.R.D. 204 (N.D. Ill. 1967), the defendant served a subpoena on the plaintiff, which asserted that the proper discovery between parties should have been under Rule 34. Further, the court determined from the briefing on the motion to quash that there was a possibility that the dispute could have been resolved without resort to a motion, and the plaintiff had failed to comply with the local rule requiring the parties to try to resolve the dispute between themselves prior to filing a motion.

---

has; nor did Fiserv ask for any page extension to do so. In the event that Fiserv attempts in its reply to now discuss each of the 132 requests specifically, Plaintiff will seek leave to file a sur-reply.

*Jenkins v. Corizon Health, Inc.*, 2022 WL 229896 (S.D. Ga. 2022) is wholly inapposite because there the plaintiff <u>did</u> <u>not</u> <u>object</u> to quashing the subpoena for trial testimony by a non-party witness who resided far from the trial venue, provided that she was allowed to read the non-party witness' deposition testimony at the trial instead, which request was granted.

*American Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 2007 WL 4139466 (N.G. Ga. 2007) *enforced compliance* with a subpoena served on a *non-party* for a Fed.R.Civ.P. 30(b)(6) deposition based on the *facts* of *that* case.

*Carnes v. Crete Carrier Corp*., 244 F.R.D. 694 (N.D. Ga. 2007) exemplifies why it is unhelpful to ask the Court to decide this case with these facts based on other facts in other cases. In *Carnes*, the court enforced the subpoena as to non-party UPS records created prior to an accident involving one of its trucks, found the request for documents regarding the contents of the truck unenforceable because that was irrelevant, and denied enforcement of the subpoena as to the request for UPS' investigation of the accident as privileged under work product doctrine. The fact that *Carnes* applied the law to the facts there and that this Court should apply the law to the facts here does not by itself "move the needle" in Fiserv's favor absent its showing that under the facts of *this case* the subpoena is irrelevant or overly burdensome.  Similarly, in *Fadalla v. Life Automotive Products, Inc*., 258 F.R.D. 501 (M.D. Fla. 2007), the court enforced some requests,

denied enforcement as to others and modified some and then granted enforcement as so modified, all based on the specific facts before *that* court.

## Fiserv Fails to Establish Undue Burden

Fiserv has the burden of establishing that any of the requests in the subpoena would cause it an undue burden. While Fiserv requests the Court to quash the subpoena in its entirety, it does not discuss the subpoena in its entirety. Fiserv "cherry picks" only 19 requests to discuss,[5] and even with respect to those few requests Fiserv fails to establish that it would be unduly burdensome to respond to them. Nevertheless, that leaves 113 requests regarding which Fiserv has made no showing whatsoever.[6]

Fiserv's first undue burden argument, that it is a non-party, should be rejected because, as set forth above, it is no stranger to this litigation and may eventually be a party Defendant again pursuant to Fed.R.Civ.P. 25(c) on successor liability, alter ego and joint venture theories.

Fiserv's argument regarding requests Nos. 1, 6, 7, 60 – 62, 112 – 114 and 122 – 125 (Doc. 79, p. 5) is just that those requests seek production of documents that refer to BAMS, BOA or JV Wind Down, but as noted above, there is reason to believe that Fiserv might be in current possession of those documents, regardless

---

[5] 1, 4, 6 – 9, 17, 19, 20, 40,  60 – 62, 112 – 114, 122 – 125 (Doc. 79, pp. 4 – 7).
[6] 2, 3, 5, 10 – 16, 18, 21 – 39, 41 – 59, 63 – 111, 115 – 121, 126 – 132.

of the entities that originally had them, and Fiserv does not state and has made no

showing that it currently is not in possession or control of any of those documents.

Fiserv's statement that those requests " . . . seek documents in the

possession, custody, or control of other entities" (Doc. 79, p. 5) is an unsupported

assumption.  After the sale of First Data to Fiserv and its subsequent dissolution,

after the dissolution of BAMS, after the creation of JV Wind Down as a successor

to BAMS and Defendant's representation in this litigation that Fiserv is an indirect

owner of JV Wind Down,[7]  It is not at all certain that that only BOA, or JV Wind

Down have possession of documents originally held by BOA, BAMS or First

Data.  It is thus reasonable to *discover* which of those entities – *including* Fiserv –

currently has possession or control over documents originally held by BOA,

BAMS, First Data, or by JV Wind Down as successor to BAMS.

Fiserv's argument regarding Request No. 4 is that it asks Fiserv to produce

all agreements with 42 merchants over a seven-year period.  The fact is that those

agreements typically have a duration of 3 years,[8] so there would be no more than

three agreements regarding each of the 42 merchants. Fiserv does not and cannot

demonstrate that it is unduly burdensome for it to locate and produce a total of no

---

[7] "BAMS, now known as JV Wind Down, LLC ('BAMS'), is a limited liability company whose two members are: FDS Holdings, Inc., a subsidiary of Fiserv, Inc. ('Fiserv'), and BAMS Solutions, Inc., an indirect subsidiary of Bank of America Corporation ('BofA')." (Doc. 53, p. 4) (Emphasis added).
[8] Slawin Decl. ¶5.

more than  approximately 126 agreements.  Aside from mere assertion that it

would " . . . require significant time and effort" (Doc. 79, p. 6), Fiserv has failed to

show any burden to locate and produce approximately 126 documents.  It should

be noted that there are more than 10,000 merchants,[9] and Plaintiff narrowed the

request to only 42, precisely to avoid causing an undue burden.

Fiserv makes a similar argument regarding Request No. 19, which requests

documents reflecting communications with those 42 merchants discussing PCI

compliance. Fiserv fails to demonstrate that relevant documents could not be

located by using search words.  As the Court is undoubtedly aware,

communications are more and more done by email, which is easily

searchable.  Especially considering that there were upwards of 10,000 merchants, it

is unlikely that most or even any of the relevant communications were done by

"snail mail."

The same is true regarding Requests Nos. 7 – 9, which request documents

regarding the interrelationship of BOA, BAMS, First Data, Fiserv and JV Wind

Down.  Again, Fiserv makes no showing as to why responsive documents could

not be located and produced by using a search feature, other than to conclusorily

assert that "[t]hese requests would take several people numerous hours . . ." (Doc.

79, p. 7.  It is noteworthy that even this conclusory assertion fails to tell the Court

---

[9] Slawin Decl. ¶6.

*how many* people or *how many* hours Fiserv is assuming the search would require.

*Fadalla v. Life Automotive Products, Inc.* – cited by Fiserv – actually supports

Plaintiff's position on this point:

> . . . other than a conclusory statement that it would cause
> undue burden on Engine Fog to obtain all the documents
> requested, Engine Fog fails to provide this Court with
> details regarding approximately how many responsive
> documents it has and how many hours of review would
> be required to provide such information. Thus, the Court
> is not persuaded that responding to these requests would
> cause an undue burden . . .

*Fadalla*, 258 F.R.D. at 513.

Fiserv's failure to provide any supporting affidavit with specific information

demonstrating alleged burden is alone a basis to categorically reject Fiserv's

motion. *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 6438614, at

*5 (N.D. Fla. Nov. 2, 2020) (rejecting claim of undue burden where government

failed to present affidavit or other evidence); *Gabe Staino Motors, Inc. v.

Volkswagen of Am., Inc.*, 2003 WL 25666135, at *2 (E.D. Pa. Feb. 28, 2003)

("Merely asserting that a party will suffer an undue burden without specific

estimates of staff hours needed to comply will be categorically rejected.").

Against this unsupported assertion of a burden, this Court must balance the

need that Plaintiff has for the requested information.

> . . . to determine whether the subpoena subjects the
> subpoena recipient to an undue burden, one must identify

> both that burden and the interests served by demanding
> compliance with the subpoena.

*Jordan v. Comm'r, Mississippi Department of Corrections*, 947 F.3d at 1342.  The

interrelationships between and among BOA, First Data, BAMS, Fiserv and JV

Wind Down is precisely the information that the Plaintiff needs in order to file any

appropriate motion pursuant to Fed. R. Civ. P. 25(c).  It is respectfully submitted

that the balance weighs heavily in favor of enforcing the subpoena.

Fiserv asserts that it would be burdensome to locate emails regarding PCI

compliance (Request No. 17), but emails are easily searchable and Fiserv has made

no showing, nor even an assertion, that it could not easily use the search

feature.  Similarly, Fiserv has failed to show that it could not easily identify

privileged material in the same search that locates the responsive emails.

Fiserv's objection to Requests Nos. 20 (drafts of documents to be sent to

merchants regarding PCI compliance) and 40 (documents discussing BAMS'

handling of Primary Account Number Data) again asserts a burden without

demonstrating one, and again fails to demonstrate that it could not similarly use a

search feature to identify privileged documents.

These are the only – 19 – requests that Fiserv *specifically* asserts are unduly

burdensome. As to the other 113 requests, Fiserv makes no argument or showing

whatsoever.

The two cases Fiserv relies upon in its argument that the subpoena is unduly burdensome are fact-specific and aside from stating generally applicable legal principles, the decisions turn on the facts of each case.

In *McMullen v. GEICO Indemnity Company*, 2015 WL 2226537 (S.D. Fla. 2015), the court found the subpoena to be overbroad, and thus unduly burdensome, because it requested production of an attorney's entire litigation file regarding a case. The court allowed that the subpoena would be enforceable were it narrowly tailored "to specific issues in this case." 2015 WL 2226537 at *8. Here, Plaintiff has not sought production of Fiserv's entire files regarding each of the 42 merchants, but only the MSA's, and documents discussing PCI compliance and BAMS' handling of Primary Account Data. The subpoena does not request every document it has sent to or received from BOA, BAMS, First Data or JV Wind Down, nor every document regarding or referring to those entities, but only those documents that refer to or reflect the interrelationships between and among those entities. At this point in discovery there is no way to further narrow the scope of those requests.

*Bozeman v. Chartis Casualty Company*, 2010 WL 4386826 (M.D. Fla. 2010) turned largely on the fact that the recipient of the subpoena was a non-party, which, as demonstrated above, is very different from the facts here, where Fiserv is

no stranger to this litigation and may ultimately became a party Defendant again.

In any event, in *Bozeman*, the court <u>enforced</u> the subpoena on the non-party.[10]

## This Court should Modify the Subpoena and Enforce It as Modified in Lieu of Quashing It

In the event that the Court deems it necessary, it should modify the subpoena and grant enforcement as modified in lieu of granting the motion to quash the subpoena. "Generally, modification of a subpoena is preferable to quashing it outright." *Fadalla*, 258 F.R.D at 507, *quoting*, *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

---

[10] Fiserv also cites *Bozeman* for authority to require Plaintiff to share the costs of compliance with the subpoena. However, as the *Bozeman* court noted, and Fiserv in its brief acknowledges, a District Court has "substantial discretion in the allocation of costs in discovery", 2010 WL 4386826 at *4, *citing*, *Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005) (Doc. 79, p. 14).   Here, it is respectfully submitted that Fiserv has failed to demonstrate any undue burden, has failed to set forth the number of people or amount of time that would be required to comply with the subpoena, and has failed to set forth any other factor that would justify requiring Plaintiff to share in the costs of compliance with the subpoena. Accordingly, Fiserv's requests for such alternative relief (Doc. 79, pp. 13 – 14) should be denied.

<u>CONCLUSION</u>
<u>THIS COURT SHOULD DENY THE MOTION TO QUASH THE SUBPOENA
OR IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE
SUBPOENA AND ENFORCE IT AS MODIFIED, AND THE COURT SHOULD
DENY THE REQUEST FOR PLAINTIFF TO SHARE IN THE COSTS OF
COMPLIANCE WITH THE SUBPOENA</u>

This 6th day of April 2022.

                         s/Robert N. Marx
                        Robert N. Marx, Esq.
                        Georgia Bar No. 475280
                        Jean Simonoff Marx, Esq.
                        Georgia Bar No. 475276
                        Marx & Marx, L.L.C.
                        1050 Crown Pointe Parkway
                        Suite 500
                        Atlanta, Georgia 30338
                        Telephone:  (404) 261-9559
                        lawyers@marxlawgroup.com
                        Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| ERIC SLAWIN, <br><br>               Plaintiff, <br><br> v. <br><br> BANC OF AMERICA MERCHANT SERVICES, LLC, s/h/a BANK OF AMERICA MERCHANT SERVICES, <br><br>               Defendant. | Civil Action File No. 1:19-cv-04129-AT |

CERTIFICATE OF SERVICE

This is to certify that on April 6, 2022, I electronically filed: **Plaintiff's Memorandum of Law in Opposition to Non-Party Fiserv, Inc.'s Motion to Quash Subpoena and Declaration of Eric Slawin,** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> Christopher P. Galanek
> chris.galanek@bclplaw.com
> Aiten M. McPherson
> aiten.mcpherson@bclplaw.com
> Bryan Cave Leighton Paisner LLP-ATL
> One Atlantic Center, 14th Floor
> 1201 West Peachtree Street, N.W.
> Atlanta, GA 30309-3471
> Tel. (404) 572-6600
> Counsel for Defendant and for Non-Party Fiserv, Inc.

Respectfully submitted, this 6th day of April 2022.

 s/Robert N. Marx
Georgia Bar Number 475280
Attorneys for Plaintiff
Marx & Marx, L.L.C.
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
Telephone:  (404) 261-9559
E-mail:  lawyers@marxlawgroup.com