# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BANC OF AMERICA MERCHANT SERVICES, LLC, s/h/a BANK OF AMERICA MERCHANT SERVICES,<br><br>　　　　Defendant. | Civil Action File No.<br>1:19-cv-04129-AT |

## REPLY IN SUPPORT OF NON-PARTY FISERV, INC.'S MOTION TO QUASH SUBPOENA

Non-Party Fiserv Inc., ("***Fiserv***") pursuant to Federal Rule of Civil Procedure 45 (d)(3), respectfully submits its Reply in Support of its Motion to Quash Plaintiff Eric Slawin's ("***Plaintiff***") Subpoena to Produce Documents served on Fiserv (the "***Subpoena***"). In support of its Reply, Fiserv shows the Court as follows:

**I.　BAMS Produced Documents to Plaintiff in July and August 2021.**

Plaintiff's Opposition to Fiserv's Motion to Quash ("***Opposition***") is rife with misrepresentations to the Court. Most egregious is Plaintiff's repeated representation that BAMS has not produced *any* documents in response to his First Document Requests. (*See* Dkt. No. 83 at 2, 4.) In fact, BAMS produced nearly 500 documents

and 2800 pages to Plaintiff eight (8) months ago. (*See* Declaration of Aiten McPherson ("**McPherson Decl.**") at ¶¶ 5, 8, a true and correct copy of which is attached as Exhibit A.) Plaintiff's misrepresentations to the Court, on their own, warrant quashing the Subpoena in its entirety.

Plaintiff served his First Document Requests on BAMS on April 2, 2021. (McPherson Decl. ¶ 4.) On July 2, 2021, and pursuant to an agreed upon extension with Plaintiff, BAMS provided written responses to Plaintiff's First Document Requests and produced 110 pages of responsive documents. (*Id.* at ¶ 5.)  After entry of the Protective Order on August 13, 2021, [Dkt. No. 69] BAMS made its second production of documents to Plaintiff on the same day, producing an additional 2700 pages of documents consisting of 486 documents. (*Id.* at ¶¶ 6-8.) Because of the size of its production, BAMS electronically produced its documents via an FTP link which expired within 14 days. (*Id.* at ¶ 9.)  Plaintiff, however, failed to download the link or apparently even attempt to access the link until March 2022. (*Id.* at ¶ 10.) Instead, on March 3, 2022, counsel for Plaintiff emailed BAMS' counsel and asked that the original link from August 13, 2021 be resent. (*Id.* at ¶ 11.) Counsel for BAMS resent the link for both the July 2021 and August 2021 productions on March 4, 2022. (*Id.* at ¶ 12.) Based on Plaintiff's representations to the Court, however, it

appears Plaintiff has once again failed to review the documents produced despite asking for a link to such documents only a month before filing his Opposition.

Fiserv should not be required to respond to a Subpoena consisting of 132 requests where BAMS, a party to the litigation, has already produced hundreds of documents and where such documents have not been reviewed by Plaintiff or his counsel. At the very least, Plaintiff's counsel should be required to review the documents produced by BAMS almost 8 months ago and certify to the Court they have reviewed such documents prior to sending facially overbroad and unduly burdensome subpoenas to non-parties.

## II.     **Plaintiff's Requests are Duplicative**.

Other than Plaintiff's false representations to the Court that he has received no documents from BAMS, Plaintiff has failed to explain why he should be allowed to serve redundant requests on a non-party. Plaintiff's Subpoena is almost entirely duplicative of the document requests he served on BAMS, with over 80% of the Subpoena and Requests for Production overlapping. Plaintiff has not only failed to show he could not obtain discovery from a more convenient, less burdensome source, he has in fact failed to review documents that were already produced by such a source prior to serving his Subpoena (or opposing a well-taken motion to quash). Plaintiff's Subpoena should be quashed.

### III. Fiserv Is Not A Party To This Litigation.

Plaintiff's argument that Fiserv cannot rely on its status as a non-party because it *might* become a party is similarly without merit. Any and all claims against Fiserv were dismissed by this Court on September 30, 2020. [Dkt. No. 47.]  Fiserv is no longer a party to this litigation.

Yet, Plaintiff attempts to create a link between Fiserv and the action he has initiated by arguing because Fiserv was previously a party to this litigation, it somehow has a heightened burden to respond to a non-party subpoena. Plaintiff cannot create a duty that does not exist merely by initially suing a party in his complaint. Nor has Plaintiff cited to *any* case law in support of his contention.

### IV. Plaintiff's Requests to Fiserv Are Still Unduly Burdensome.

Plaintiff's attempt to group his 132 requests into 26 supposedly "manageable" categories is also unavailing. Setting aside that 26 separate categories grouping together 132 different requests is still in and of itself unduly burdensome - making it difficult to even address all 26 categories in this reply - the requests themselves are still overbroad, unduly burdensome, targeted at other parties, and would require Fiserv to potentially parse through hundreds of thousands of documents to determine not only the responsiveness of those documents, but to ensure it does not produce privileged or confidential business records.

A. <u>Plaintiff has failed to direct his Requests to the proper party.</u>

First, Plaintiff has altogether failed to explain how serving a non-party Subpoena with requests directed to another party (or non-party) is proper. Plaintiff claims he is unaware which party has what documents and, as such, he is justified in serving broad requests on Fiserv seeking documents related in any way to its relationship with BOA or BAMS or any agreements it may have with those entities. Yet, Plaintiff fails to explain how serving a request *directed at another party* is relevant or proper. For example, Request No. 1 seeks Master Services Agreements ("**MSA's**") "entered into **between BOA** and any of the Selected Merchants." (Subpoena at ¶ 1.) (emphasis added). Similarly, Request No. 6 seeks agreements "**between BOA** and Defendant [BAMS]," Request No. 11 seeks MSA's signed by BAMS "on behalf of BOA," and Request No. 38 expressly seeks documents in BOA's possession, custody or control. (Subpoena at ¶¶ 6, 11, 38.) These requests are clearly directed at another non-party - a non-party which Plaintiff has also served with a Subpoena (and a non-party which, like Fiserv, already secured a dismissal of Plaintiff's claims against it). Plaintiff's purported confusion and explanation do not absolve him of the duty to draft narrowly tailored requests directed to the party they are served upon and to avoid imposing undue expense and burden on non-parties. *See generally,* FRCP 45(d)(1).

B. <u>Plaintiff's claim that the Requests are not onerous is disingenuous</u>.

Plaintiff's attempt to argue his Requests are not unduly burdensome by claiming the production of agreements and communications can be easily made by using undefined search words is nothing more than a self-serving assumption.

Plaintiff claims the MSA's he seeks typically have a duration of three years so there would be no more than three agreements per merchant. Even if true, this would still be an overly burdensome request of a non-party. Plaintiff's argument does not take into account the difficulty of searching and reviewing such agreements, some of which are over 100 pages long. Nor does Plaintiff appear to acknowledge his own definition of "Selected Merchants"- a definition which includes not only the 42 merchants listed, but also all subdivisions, wholly owned corporations and joint ventures for entities as large and global as Amazon, Disney, Target, MGM, Nordstrom, and Publix (which affiliated entities may themselves have separate MSA's.)  (*See* Subpoena at 5-6). Plaintiff also fails to account for the fact such agreements may have been amended or modified one or more times and that locating even 3 agreements for 42 merchants would require a significant amount of time. Fiserv would not only have to find each MSA in its system, it would have to review each document to determine whether it is responsive, redact any confidential or proprietary merchant information, and, pursuant to confidentiality provisions within

each MSA, give each merchant notice that the agreement is being produced and allow them time to object to the production if necessary. This is not, as Plaintiff assumes, a quick or easy process.

Plaintiff's conclusory statements that Fiserv could simply use "search terms" and pull emails which are responsive to his requests similarly ignore the realities of the e-discovery process. Fiserv would have to first determine what search terms to use, what custodian inboxes it should search through, and then pull each such inbox for a 7-year period of time. Fiserv would then have to review each document containing the search terms agreed upon by the Parties (search terms which could be as broad as "PCI compliance"), review the documents for privilege and confidentiality, and only then be able to produce any responsive documents. Even assuming there are "only" 26 categories of documents as Plaintiff attempts to claim, Fiserv would have to go through this process for each category and then review each of the 132 requests to make sure it has pulled all relevant and responsive documents. This would create an immense burden on Fiserv and require it to not only set aside employee time in order to pull such documents, but likely also to hire an ESI vendor to review each document - incurring a significant expense and burden

disproportionate to the value of the information sought to Plaintiff's claims before Plaintiff has even reviewed or accessed documents already produced by BAMS.[1]

C. <u>Plaintiff's refusal to make even a minimal effort counsels in favor of quashing the Subpoena.</u>

Plaintiff's refusal to not only review documents that have been in his possession for almost eight months, but also to pull publicly available documents further counsels in favor of quashing the Subpoena. For instance, Plaintiff refuses to pull public SEC filings, instead demanding a non-party produce all documents it has filed with the SEC. (*See* Subpoena ¶ 90.)[2]  Plaintiff also refuses to review credit card websites to try to locate the vague "rule books" he seeks - instead stating in a conclusory manner these rulebooks are not easily accessible. (Dkt. No. 83-1 at ¶ 7.) Plaintiff has failed to explain what issues with access he has had or what steps he has taken to even attempt to locate such rulebooks. A flippant statement that these

---

[1] Given Plaintiff's lack of diligence in reviewing ESI previously produced, Fiserv would ask that if it is required to produce further ESI to Plaintiff that he and his counsel certify under oath that the entirety of such production has been reviewed before the close of discovery in this case.

[2] Fiserv's SEC filings are publicly available and easily found both on Fiserv's website and on the SEC's website. *See* https://newsroom.fiserv.com/financial-information/sec-filings & https://www.sec.gov/edgar/browse/?CIK=0000798354

rulebooks "are difficult to access" and "are changed from time to time" is insufficient. (Dkt. No. 83-1 at ¶ 7.) [3]

Plaintiff should not be allowed to completely abdicate his responsibilities as a party to this litigation by failing to review documents produced to him months ago and not even attempting to pull publicly available documents and then serve a Subpoena containing 132 document requests on a non-party.

## V.     Plaintiff Has Failed to Establish His Requests Are Relevant.

Finally, and regardless of Plaintiff's grouping of categories, the requests in the Subpoena are not relevant and Plaintiff's cursory arguments to the contrary are unavailing. Plaintiff seeks to bring a single plaintiff employment retaliation case. Plaintiff has failed to show why he is entitled to requests seeking all documents regarding relationships between BAMS, BOA, First Data, and Fiserv or to agreements between each of these entities and their merchants. Nor has he shown why he should be allowed to access each entity's balance sheets, bank records or

---

[3] In fact, a quick Google search reveals that Visa and MasterCard rulebooks are easily accessible. *See:*

https://usa.visa.com/dam/VCOM/download/about-visa/visa-rules-public.pdf   and https://www.mastercard.us/content/dam/mccom/global/documents/mastercard-rules.pdf

financial statements. Plaintiff's requests are clearly irrelevant, overly broad, and unduly burdensome.

### A. Fiserv addressed the relevance of the Subpoena requests in its Motion.

As an initial matter, Plaintiff misrepresents Fiserv's discussions as to the relevance of the requests in the Subpoena, stating Fiserv "punts the ball" and that Fiserv should not be permitted to cure its failure in its reply brief. (Dkt. No. 83 at 16). In fact, Fiserv spent three pages of its brief discussing the irrelevance of Plaintiff's requests. (Dkt. No. 79 at 11-13). Fiserv set out the fact that the only claims remaining in this litigation are Plaintiff's whistleblower retaliation claims, discussed what Plaintiff must show in order to prove his claims, and then gave examples of all the ways Plaintiff's subpoena went beyond the bounds of those claims.[4]

Plaintiff ignores this portion of Fiserv's brief, instead claiming Fiserv requires the Court to speculate as to Fiserv's relevance argument. There is no need to speculate here. Plaintiff's *only* remaining claim is he was retaliated against by BAMS when he allegedly reported a PCI noncompliance issue. Plaintiff's claim requires him to show he engaged in protected activity, BAMS knew he engaged in

---

[4] Plaintiff makes much of the fact that Fiserv did not discuss the relevance of every single one of his 132 requests, but, as Plaintiff himself seems to acknowledge in his Response, the breadths and number of these requests make it impossible not only to respond to each request, but to address each individual request in any detail.

protected activity, and he was terminated as a result. Plaintiff's numerous requests fall far outside the bounds of those elements - seeking documents related to MSA's and other agreements with 42 separate merchants and their subdivisions, wholly owned corporations, and joint ventures (Subpoena at ¶¶ 1-4, 11-16, 55-59), publicly available credit card rulebooks and SEC filings, financial statements and bank records, and documents that in any way may relate to PCI compliance (¶¶ 17-20, 24-39, 65-68, 117-132).[5]  Yet, Plaintiff only needs to establish he was terminated in retaliation for complaints related to PCI non-compliance. BAMS does not dispute it was not PCI compliant, nor is its PCI compliance relevant to Plaintiff's claim as Plaintiff does not have to establish non-compliance in order to meet his burden. *See Veard v. F & M Bank*, 704 F. App'x 469, 473 (6th Cir. 2017) (setting out the requirements under the CFPA).

Plaintiff's Subpoena is not only overly broad and unduly burdensome, but the requests set forth in the Subpoena are completely irrelevant to any claim or defense in this litigation and not proportional to the needs of the case.

---

[5] Since it is BAMS position that PCI compliance is irrelevant to Plaintiff's claims, it has offered to stipulate it was not PCI compliant, as it did not process payments and, as such, was never required to be PCI compliant. BAMS' proposed stipulation moots most, if not all, of Plaintiff's subpoena requests.

B. <u>Plaintiff's potentially forthcoming Rule 25(c) motion does not make his requests relevant</u>.

Although in its Order dismissing Fiserv from this litigation the Court stated Plaintiff may file an appropriate motion under Rule 25(c), the Court did not expressly recognize discovery was necessary for Plaintiff to file such a motion - nor did it allow for Plaintiff to abuse the discovery process by serving hundreds of duplicative requests on non-parties to this litigation. [Dkt. No. 47.]  Plaintiff's potential Rule 25(c) motion does not in and of itself make his requests relevant as he attempts to claim, nor can Plaintiff point to any case law or precedent showing otherwise.

Plaintiff must still show his requests are relevant to the claims and defenses in this litigation. *See* Fed. R. Civ. P. 26(b)(1). *American Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 2007 WL 4139466, *5 (N.D. Ga. Nov. 14, 2007). The only relevant issue here is whether Plaintiff's was retaliated against. Plaintiff's numerous requests are not even tangentially related to the issues in this case and are, therefore, irrelevant and improper.

C. <u>Plaintiff seeks documents which go to issues not in dispute</u>.

Finally, many of the reasons Plaintiff argues his requests are relevant are not in dispute. For example, Plaintiff argues the reason he needs the MSA's for 42 merchants over a seven-year period of time is to establish BAMS was owned by

First Data, a subsidiary of Fiserv. This fact is not in dispute. BAMS has admitted as much in its Answer. [Dkt. No. 50 at ¶ 1 ("BAMS is a limited liability company whose two members are subsidiaries of Fiserv and Bank of America Corporation … [BAMS was] a joint venture between subsidiaries of Fiserv and BOA"), ¶ 13 (admitting First Data Corporation is "a wholly owned subsidiary of Fiserv."). Plaintiff also claims his requests for documents regarding the relationships between BOA and BAMS, First Data and BAMS, and Fiserv and BAMS are relevant to establishing BAMS was a joint venture owned by BOA and First Data - once again a fact admitted in BAMS' answer. (Dkt. No. 50 at ¶¶ 1, 13).

Further, Plaintiff's requests for documents related to PCI compliance, BAMS' role in payment processing and the volume of transactions handled by BAMS, and documents regarding BAMS' handling of Primary Account Numbers ("*PAN*") are also not in dispute based on BAMS proposed stipulation.[6] Nevertheless, and even if disputed, none of these requests are relevant to Plaintiff's termination or the reasons for such termination. Plaintiff does not have to prove that any PCI violation actually occurred to establish his case. *See West v. City of Albany, Georgia*, 830 F. App'x

---

[6] Regardless, Plaintiff has failed to explain how all aspects of the PCI compliance process or the handling of PAN data are related to Plaintiff's specific alleged complaints which allegedly resulted in his termination.

588, 593 (11th Cir. 2020) (refusing to allow plaintiff to depose defendant about audits and financial procedures as she was only required to show she "disclose[d] a suspected legal violation, not prove that the violation actually occurred.") The Subpoena should be quashed for these reasons as well.

## III. CONCLUSION

Based on the foregoing and its initial Motion to Quash, Fiserv respectfully requests the Court quash Plaintiff's Subpoena as overly broad, unduly burdensome, duplicative of requests served on BAMS, and as not relevant to any claims or defense in this litigation. At the very least, and given Plaintiff's failure to review documents already produced by BAMS, Plaintiff should be required to review BAMS' production and certify his review of these documents prior to being allowed to pursue any non-party subpoenas. In the alternative, and should the Court allow Plaintiff to subpoena certain categories of documents, Fiserv requests the Court order Plaintiff to reimburse it for its expenses, attorneys' fees, and costs of production.

Respectfully submitted this 20th day of April 2022.

          */s/ Aiten M. McPherson*
          Christopher P. Galanek (GA Bar No. 282390)
          Chris.Galanek@bclplaw.com
          Aiten M. McPherson (GA Bar No. 439899)
          Aiten.McPherson@bclplaw.com

 

**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: 404-572-6600

*Attorneys for Fiserv, Inc.*

## LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing pleading has been prepared with Times New Roman 14 point font, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

This 20th day of April 2022.

*/s/ Aiten M. McPherson*
Aiten M. McPherson

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing **REPLY IN SUPPORT OF NON-PARTY FISERV, INC.'S MOTION TO QUASH SUBPOENA** with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 20th day of April 2022.

*/s/ Aiten M. McPherson*
Aiten M. McPherson

605112812.4