IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC SLAWIN,

                Plaintiff,

v.

BANC OF AMERICA MERCHANT
SERVICES, LLC, s/h/a BANK OF
AMERICA MERCHANT
SERVICES,

                Defendant.

Civil Action File No.
1:19-cv-04129-AT

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY BANK OF AMERICA CORPORATION'S MOTION TO QUASH SUBPOENA

In the same Order that granted the motions to dismiss made by Fiserv, Inc.

("Fiserv"). First Data Corporation ("First Data") and Bank of America Corporation

("BOA"), this Court specifically did not address whether any or all of those

Defendants might be deemed to be successors to Defendant Bank of America

Merchant Services, LLC ("BAMS") and/or whether they might be vicariously

liable under Georgia law for BAMS' actions. (ECF 47, pp. 16 – 17).  Thus, this

Court authorized Plaintiff to file an appropriate motion pursuant to Fed.R.Civ.P.

25(c), and recognized that discovery might be necessary for Plaintiff to file such a

motion. (ECF 47, pp. 16 – 17, n. 16, p. 17). The Court subsequently extended the

deadline to file such a motion until the matter was administratively closed. (*See*,

Docket Entry, Oct. 13, 2020, Docket Entry, Nov. 5, 2020, ECF 54, Docket Entry

June 4, 2021, ECF 71).

The Joint Modified Scheduling Order submitted after the second

unsuccessful mediation (ECF 78) did not request a specific deadline for filing a

motion pursuant to Fed.R.Civ.P. 25(c) because, as set forth in Plaintiff's motion to

Amend the Scheduling Order filed before the second mediation (ECF 70),

Defendant has still not produced many documents in response to Plaintiff's First

Document Requests that had been served on April 1, 2021, and the parties had

been preparing the appropriate joint statement regarding the discovery dispute

when the parties decided to revisit mediation.[1]  Since discovery is needed for

---

[1] While BAMS did produce a limited number of documents, including from
Plaintiff's personnel file, it has yet to produce numerous documents and to respond
to several key interrogatories that were served upon BAMS over a year ago. A
summary of the documents that have not been produced and the interrogatories that
have not been answered are as follows:
**Discovery of the reason(s) for Plaintiff's termination**
Interrogatory No. 1.; Document Requests Nos.  Although not identified in
Plaintiff's good faith letter, upon further review we note that Defendant's response
is insufficiently vague.  Defendant should set forth all the reason(s) for Plaintiff's
termination, not just that the reasons "included" the ones set forth in the response.
**Discovery of Plaintiff's employment with BAMS**
Document Requests Nos. 2 – 7, 10 – 11, 108, 110
**Discovery of individuals with knowledge or information re the case**
Interrogatories Nos. 4, 5; Document Requests Nos. 37 – 40,
(footnote 1, continued)

**Discovery of persons who were involved in and/or made the termination decision**

Interrogatories Nos. 2, 3

**Emails/documents re the Plaintiff**

Document Requests Nos. 114, 146 [Misnumbered as No. 136].

**Emails between and among BAMS employees/officers re PCI-Compliance**

Document Requests Nos. 24 – 34, 90 – 100

**Discovery of BAMS and PCI-Compliance**

Document Requests Nos. 81, 104 – 107, 109

**Discovery of conversations between and among BAMS' employees and officers re PCI compliance and possible notice to customers that BAMS was not PCI-compliant**

Interrogatories Nos. 6 – 8; Document Requests Nos. 35,

**Discovery regarding the customers and notices/emails to them re PCI-compliance**

Interrogatory No. 24; Document Requests Nos. 14, 19, 20, 73 – 77, 111 – 113

**Discovery of legal relationship between and among BAMS, BOA, First Data and Fiserv**

Interrogatories Nos. 9, 10; Document Requests Nos. 9; Document Requests Nos. 48 – 55, 70 – 72, 82 – 83, 101 – 103, 116, 142 – 145 [Misnumbered as Nos. 132 – 135],

**Discovery of the joint venture**

Interrogatories Nos. 11, 12; Document Requests Nos. 8, 15 – 18, 21 – 23, 47,

**Discovery re JV Wind Down, LLC**

Interrogatories Nos. 22 – 23; Document Requests Nos. 64 – 66, 126 – 140[1]

**Discovery of documents involving BOA, First Data and/or Fiserv in BAMS' custody or control**

Document Requests Nos. 41 – 46,

(footnote 1, continued)

**Discovery of the transfer of BAMS' assets/liabilities**

Interrogatories Nos. 18 – 21; Document Requests Nos. 56 – 60, 67 – 69, 78, 141 [Misnumbered as No. 131],

**Discovery regarding the MSA's**

Interrogatories Nos. 13 – 17; Document Requests Nos. 12 – 13, 61 – 63,

**Discovery regarding pleadings in the Answer**

Document Requests Nos. 79 – 80, 84, 115

**Discovery regarding VISA, Mastercard, Discover contracts and rule books**

Document Requests Nos. 86 – 89, 117 – 125

Plaintiff to file a motion pursuant to Rule 25(c), and since it is clear that Defendant will not produce any responsive documents until the outstanding discovery dispute has been resolved by the Court, it would be futile to set a deadline for the Rule 25(c) motion while the discovery dispute is pending.

After this case was reopened, Plaintiff's counsel restarted the dialogue regarding preparation of the joint statement regarding the outstanding discovery dispute, and served the subpoena on BOA which is the subject of this response memorandum of law in opposition to BOA's motion to quash the subpoena.

On February 22, 2022, Plaintiff's counsel sent a copy of the proposed subpoena to counsel for BOA, inquiring whether he would accept service of the subpoena.  On February 28, 2022, counsel for BOA responded that he would accept service of the subpoena provided that the subpoena was made returnable for March 31, 2022, to which Plaintiff's counsel agreed.  BOA's counsel did not request modification or any narrowing of the subpoena.  On May 23, 2022 – after Plaintiff's counsel had completed the trial in the matter of Bird v. University of Florida, 1:18-cv-221-AW-GRU, pending in the Northern District of Florida – Plaintiff's counsel spoke with BOA's counsel, inquiring whether BOA would agree to withdraw its motion to quash the subpoena if Plaintiff agreed to substantially narrow the subpoena.  BOA's counsel responded by asking Plaintiff's counsel to forward a copy of the proposed modified subpoena, which Plaintiff's

counsel did on that same day.  A copy of Attachment A constituting the proposed

narrowing of the subpoena, and of the transmittal letter, is annexed hereto as an

exhibit.  On May 25, 2022, BOA's counsel responded by refusing the proposed

narrowing/modification. A copy of BOA's response email is annexed hereto as an

exhibit.

<u>Argument and Citations of Authority</u>

<u>POINT I</u>
<u>THE SUBPOENA SHOULD BE ENFORCED AS WRITTEN</u>

<u>Applicable Standard</u>

> As the party moving to quash the subpoena, [BOA] must
> show the subpoena subjects it to undue burden. *Sherwood
> v. Michelin N. Am., Inc*., No. 7:06-CV-93 (HL), 2007 WL
> 431090, at *2 (M.D. Ga. Feb. 2, 2007) (*citing*, *Wiwa v.
> Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir.
> 2004)); see also *Heat and Control, Inc. v. Hester Indus.,
> Inc*., 785 F.2d 1017, 1025 (Fed. Cir. 1986) (citation
> omitted) ("The burden of proving that a subpoena is
> oppressive is on the party moving to quash and is a heavy
> one."); 9A Charles Alan Wright & Arthur R. Miller,
> Federal Practice and Procedure, § 2463.1 (3d ed. 2008)
> ("[The movant] cannot rely on a mere assertion that
> compliance would be burdensome and onerous without
> showing the manner and extent of the burden and the
> injurious consequences of insisting upon compliance
> with the subpoena."). Conclusory statements, without
> more, are not enough to meet the burden of proof for a
> motion to quash.

*Pace v. Valmet, Inc.*, 2019 WL 9828532, at *2 (N.D. Ga. Nov. 27, 2019).

<u>Documents Sought in the Subpoena are Relevant</u>

BOA's relevance argument (ECF. 82, pp. 15 – 19) is based on misrepresenting three cases and ignoring this Court's Order on the Defendants' respective motions to dismiss the complaint. (ECF. 47).

Contrary to BOA's assertion, *Gale v. U.S. Dep't. of Labor.*, 384 F. App'x 926, 928 (11th Cir. 2010) held unambiguously that a plaintiff in a Sarbanes-Oxley[2] ("SOX") case must prove that he had <u>both</u> a subjectively <u>and</u> <u>objectively</u> reasonable belief that the complained-of conduct constituted a violation of the statute:

> The whistleblower protection provision of SOX prohibits a publicly traded company or their officers from discharging an employee for providing information to a supervisory authority about conduct that the employee "reasonably believes" constitutes a violation of federal laws . . . .

> Although we have not had occasion to define what "reasonably believes" means under § 1514A(a)(1), all of our sister circuits which have addressed this issue have uniformly held that it encompasses both a subjective and an objective component. . . .

*Gale*, 384 Fed. App'x at 929.

> The "reasonable belief" standard that we have applied in the context of other retaliation statutes, such as Title VII, requires both a subjective and an objective element. *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311–12 (11th Cir.2002) (" 'A plaintiff must not only show that he

---

[2] Sarbanes-Oxley Act of 2002, 18 U.S.C. §1514A.

> *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.' "). Accordingly, like our sister circuits, we conclude that § 1514A(a)(1) requires an employee to demonstrate both a subjective belief and an objectively reasonable belief that the company's conduct violated a law listed in that section.

*Gale*, 384 Fed. App'x. at 929-930 (Emphasis in original).

Indeed, this Court has already held – citing *Gale* – that Mr. Slawin must demonstrate that he had an <u>objective</u> basis for believing that the statute had been violated. ECF. 47, pp. 7, 25-26. For the same reason, regarding the CFPA[3], this Court has already held that Mr. Slawin must prove an objective basis for his belief that the statute had been violated, *Id*., p. 25, *citing*, *Veard v. F&M Bank*, 704 Fed. App'x. 469 (6th Cir. 2017).

The third case cited by BOA – *West v. City of Albany*, 830 Fed. App'x. 588 (11th Cir. 2020) – is inapposite because that case involved a different statute which did not require a "reasonable" belief by the plaintiff that the statute had been violated. Thus, SOX provides in pertinent part that,

> No company with a class of securities . . . may discharge . . . an employee . . . because of any lawful act done by the employee . . . regarding any conduct which the employee *reasonably believes* constitutes a violation . . .

---

[3] Consumer Financial Protection Act of 2010, 12 U.S.C. §5567.

18 U.S.C. §1514A. (Emphasis added). And the CFPA provides in pertinent part

that,

> No covered person or service provider shall terminate ...
> any covered employee ... by reason of the fact that such
> employee ... [has] provided, caused to be provided, or is
> about to provide or cause to be provided, information to
> the employer ... relating to any violation of, or any act or
> omission that the employee reasonably believes to be a
> violation of, any provision of this title or any other
> provision of law that is subject to the jurisdiction of the
> Bureau, ... [or] objected to, or refused to participate in,
> any activity, policy, practice, or assigned task that the
> employee ... <u>reasonably</u> <u>believed</u> to be in violation of any
> law, rule, order, standard, or prohibition, subject to the
> jurisdiction of, or enforceable by, the Bureau.

12 U.S.C. § 5567(a) (Emphasis added).  Indeed, the Sixth Circuit held in *Veard v.*

*F&M Bank* that "[r]easonable belief requires both a subjective and objective

component."  704 Fed. App'x at 474.

In contrast, the statute involved in *West v. City of Albany* was the Georgia

Whistleblower Act, which does not contain the requirement of a reasonable belief:

> No public employer shall retaliate against a public
> employee for disclosing a violation of or noncompliance
> with a law, rule, or regulation to either a supervisor or a
> government agency, unless the disclosure was made with
> knowledge that the disclosure was false or with reckless
> disregard for its truth or falsity.

Ga. Code Ann. § 45-1-4(d)(2).

Thus, BOA's argument that "[w]hether the alleged noncompliant activity

occurred is irrelevant to Plaintiff's claim . . ." (ECF. 82, p. 2) and that Mr. Slawin

does not have to "prove that the violation actually occurred" (*Id.*, p. 18) is a misstatement of the case law and of this Court's Order, which in any event constitutes law of this case.  Therefore, it is relevant whether BAMS was PCI compliant, whether BAMS and/or BOA knew that, what if anything they intended to do about that, whether either or both of those parties misrepresented to their customers that BAMS was not PCI compliant and what if anything either or both of them misrepresented to their customers what BAMS or BOA intended to do about that.

In addition, BOA erroneously assumes that the only relevant issue is whether Mr. Slawin can prove his case of unlawful retaliation. To the contrary, as noted above, additionally, there remains in this case the issue of whether Fiserv and/or BOA should be added as a party Defendant pursuant to Fed.R.Civ.P. 25(c) or will be liable under a Georgia state law alter ego, joint venture or successor liability theory.  BOA's  objections based on relevance overlook these salient issues and their relevance arguments are thus based on an incorrect premise.  Thus, discovery of BAMS' assets and liabilities after it was dissolved, the subsequent creation of its successor, JV Wind Down, LLC, the transfer of BAMS' former assets and liabilities to JV Wind Down, LLC, are all relevant to a motion pursuant to Fed.R.Civ.P. 25 to add Fiserv and/or BOA as a party to this case under a theory of joint venturer or Georgia state law.

<u>BOA has not Demonstrated that the Documents Sought</u>
<u>can be Obtained from BAMS</u>

BOA asserts (ECF. 82, pp. 8, 19 – 21) that some or all of the documents

sought in the subpoena can be obtained from BAMS, and gives the Court a chart

(*Id.*, p. 8) purportedly demonstrating that the requests have already been requested

in Plaintiff's First Document Requests to BAMS.  This is similar to the argument

Fiserv made in its motion to quash the subpoena served upon it. ECF. 79, pp. 8-11,

using bullets instead of a chart.  But as noted previously most if not all of the key

documents have still not been produced by BAMs. See, . 2, n. 1, *supra*.  Moreover,

BAMS objected to 27 of Plaintiff's First Document Requests in part on the ground

that the documents seek information regarding third parties no longer in the case or

on the ground that the requested documents were in the possession custody or

control of a third party no longer in the case.  Thus, BAMS objected to Request

No. 19 on the ground that it "seeks documents in the possession, custody or control

of a third party no longer a party to this action" and the request specifically refers,

*inter alia*, to BOA.  BAMS objected to Requests Nos. 38 – 40 because they

"seek[]private, confidential and personal personnel information concerning a

nonparty to this litigation."  Those requests sought the personnel files of *BAMS'*

*employees* Mark Kendall [No. 38], Brian Rubin [No. 39] and Joseph Moll [No.

40].  The Complaint alleges that each of those individuals was or had been an

<u>employee of</u> <u>BAMS</u> (Mark Kendall - ¶42, Brian Rubin - ¶42, Joseph Moll - ¶53).

This is a clear indication that some or all of BAMS' documents may no longer be in BAMS' possession or control and those individuals may now be employed by "a nonparty to this litigation", quite possibly, BOA, who was one of the joint venturers who owned BAMS.

Similarly, BAMS objected to Requests Nos. 46, 47, 54 and 55 – all of which refer to BOA – on the ground that they "seek[]information regarding third parties who are no longer parties to this action", including, presumably, BOA.  And BAMS objected to Requests Nos. 50 and 51, both of which specifically refer to BOA, on the ground that they "seek[]information regarding third parties not parties to this litigation and information not in the possession custody or control of BAMS."

This is a "shell game." The overarching fact is that BAMS was a joint venture of First Data, later acquired by Fiserv, and BOA.  BAMS has been dissolved and it is unclear what or which entity currently has possession and/or control of documents relevant to this case.  BAMS says it does not have some or all of the requested documents, but Fiserv and BOA say they are "non-parties" and point to BAMS. Everybody is pointing to everybody else, BAMS is dissolved, nobody pretends to know where the documents are, and – relying on their newly-found status as "nonparties" – Fiserv and BOA now assert that it would be unduly burdensome to seek any of the documents from them.

BAMS was a joint venture of BOA and First Data, the latter of which was subsequently purchased by Fiserv. (Complaint, ¶¶1, 8, 11, 12, 13).  Moreover, in the Joint Preliminary Report and Discovery Plan, BAMS states that it is now knows as JV Wind Down, LLC ("JV Wind Down"), a limited liability company whose two members are: FDS Holdings, Inc., a subsidiary of Fiserv and BAMS Solutions, Inc., an indirect subsidiary of BOA. (ECF 53, p. 4).  Thus, according to the Complaint, BAMS was controlled in part by BOA and Fiserv, and according to Defendant, that continues to the present, wherein the successor to BAMS, JV Wind Down, is controlled in part by BOA and Fiserv.

Given BOA's control of BAMS as a joint venturer with Fiserv, and BOA's present and continuing control in part of BAMS' successor, it is not at all clear what entity or entities are in possession and/or control of the documents sought in Plaintiff's Document Requests addressed to BAMS, and in the subpoena addressed to BOA.  Since First Data, and later BAMS, were dissolved, it is unknowable where the documents retained by BAMS, or by First Data, are now.  It is therefore not unreasonable to ask all parties to the joint venture that owned BAMS for relevant documents, and thereby to discover who currently has some or all of those documents. Thus, the subpoena is not *unreasonably* cumulative or duplicative.

Indeed, the subpoena is neither duplicative nor cumulative at all in the sense that the documents sought in the subpoena have not yet been produced by

anybody.  *See*, p. 2, n. 1, *supra*.  This is not a situation where Plaintiff has already

obtained documents and is asking for them to be produced again by the same party

or by a different party.

Since it is not clear which entity or entities are currently in possession or

control of the documents sought in the subpoena, BOA has failed to demonstrate

that the documents sought in the subpoena "can be obtained from some other

source that is more convenient, less burdensome, or less expensive", *i.e*., that they

can be obtained by the Document Requests addressed to BAMS.  In this respect,

BOA fails to state exactly who is in possession and/or control of the documents

sought in the subpoena, nor does BOA state that it does not have possession or

control of some or all of the documents sought in the subpoena. Since BOA is a

member of the LLC (JV Wind Down) that is represented to be BAMS' successor,

it would appear to be a simple matter for BOA to ascertain whether BAMS or its

successor currently has the documents that are sought in the subpoena, and to so

advise the Court, but BOA has not done that. Instead it relies on general legal

principles bereft of any factual showing and caselaw involving different fact

patterns.   That leaves BOA without any showing that in fact, the documents

sought in the subpoena are more easily obtainable from BAMS.

The unique facts here make it reasonable for Plaintiff to seek relevant

documents from BAMS <u>and</u> BOA <u>and</u> Fiserv because they all at one time had

possession and/or control of relevant documents.  None of the cases relied upon by BOA involve a similar fact pattern, whereby the non-party had at one time been a joint venturer who created and owned the remaining defendant in the case, here BAMS.  Relying on its current status as a non-party – which might change if some of the requested documents are produced – BOA asserts a burden of complying with the subpoena but fails to establish any burden in fact, and it is settled law that BOA bears that burden on its motion to quash the subpoena served upon it.  *See*, pp. 5-6, *supra*.

BOA has not Demonstrated any Undue Burden

BOA's  failure to provide any supporting affidavit with specific information demonstrating alleged burden is alone a basis to categorically reject BOA's s motion. BOA asserts that it would be burdensome to locate emails regarding PCI compliance (Request No. 17), but emails are easily searchable and BOA has made no showing, nor even an assertion, that it could not easily use the search feature.  Similarly, BOA has failed to show that it could not easily identify privileged material in the same search that locates the responsive emails.

BOA's  objection to Requests Nos. 20 (drafts of documents to be sent to merchants regarding PCI compliance) and 40 (documents discussing BAMS' handling of Primary Account Number Data) again asserts a burden without

14

demonstrating one, and again fails to demonstrate that it could not similarly use a search feature to identify privileged documents.

> . . . other than a conclusory statement that it would cause undue burden on Engine Fog to obtain all the documents requested, Engine Fog fails to provide this Court with details regarding approximately how many responsive documents it has and how many hours of review would be required to provide such information. Thus, the Court is not persuaded that responding to these requests would cause an undue burden . . .

*Fadalla v. Life Automotive Products, Inc.*, 258 F.R.D. 501, 513  (M.D. Fla. 2007).

*In re 3M Combat Arms Earplug Prod. Liab. Litig*., 2020 WL 6438614, at *5 (N.D. Fla. Nov. 2, 2020) (rejecting claim of undue burden where government failed to present affidavit or other evidence); *Gabe Staino Motors, Inc. v. Volkswagen of Am., Inc.*, 2003 WL 25666135, at *2 (E.D. Pa. Feb. 28, 2003) ("Merely asserting that a party will suffer an undue burden without specific estimates of staff hours needed to comply will be categorically rejected.").

<u>BOA is Currently a Non-Party but Might *Become* a Party</u>

BOA's  reliance on its current status as a non-party (ECF 82, p. 11) is inappropriate since it *might become* a party pursuant to Fed.R.Civ.P. 25(c) if the documents sought in the subpoena establish the necessary requirements for BOA to be added as a party under that Rule.  In this sense, BOA seeks to prevent Plaintiff from discovering the very documents that he needs to make such a motion.  BOA's reliance on *Robinson v. McNeese*, 2021 WL 232672 (M.D. Ga. Jan. 22, 2021) is

misplaced because the facts there do not reflect that there was any possibility that the non-party upon whom the subpoena had been served might subsequently become a party to the litigation.

<u>POINT II</u>
<u>IN THE ALTERNATIVE, THE SUBPOENA</u>
<u>SHOULD BE ENFORCED AS MODIFIED</u>

As noted above, Plaintiff has offered to modify the subpoena to reduce the number of requests from 133 to 77, to limit the temporal scope of the request to 2015 to date or in some cases to 2017 to date and to withdraw all requests that refer only to Fiserv. "Generally, modification of a subpoena is preferable to quashing it outright." *Fadalla*, 258 F.R.D at 507, *quoting*, *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

<u>Demonstration that the Requests as Modified are Relevant</u>

A. <u>Contracts (Master Service Agreements, or MSA's) between any of the non-BAMS former Defendants (Fiserv, First Data and BOA), or signed by BAMS on behalf of BOA, Fiserv, or Fiserv and certain selected merchants during the period 2015 to date. Requests Nos. 1, 4, 11, 12.</u>

These requests are relevant to establish the organizational structure or interrelationship of BAMS, First Data, BOA and Fiserv. The entities that signed the contracts with the merchants or which signed on behalf of other of the non-BAMS former Defendants, could establish, as is pled in the Complaint, that BAMS was owned by First Data, now a wholly owned subsidiary of Fiserv, and by BOA

(¶1),[4] that BAMS is a subsidiary of First Data and is listed as such on First Data's SEC filings, and that BAMS is listed as an affiliate of BOA on its SEC filings. (¶8). These requests are also relevant to establish that "BAMS, together with its parent, BOA, under the name Bank of America, N.A. enters into agreements to provide payment processing services to its customers." (¶27). These requests are also relevant to establish the warranties given to customers in the MSA's regarding PCI compliance. (¶¶29 – 32, 70, 71).

BOA's argument regarding Request No. 4 is that it asks it to produce all agreements with 42 merchants over a seven-year period. The fact is that those agreements typically have a duration of 3 years,[5] so there would be no more than three agreements regarding each of the 42 merchants. BOA does not and cannot demonstrate that it is unduly burdensome for it to locate and produce a total of no more than approximately 126 agreements. BOA's complaint that the names of the Selected Merchants are generic and not their precise legal names merely underlines the fact that that information is not in Plaintiff's possession but is most likely in BOA's possession, since it has access to the contracts. It should be noted that there are more than 10,000 merchants,[6] and Plaintiff narrowed the request to only 42, precisely to avoid causing an undue burden.

---

[4] All paragraph references are to the Complaint. (ECF 1).
[5] Slawin Decl. ECF 83-1, ¶5.
[6] Slawin Decl. ¶6.

B.  <u>Agreements between First Data and BAMS, and between BOA and
BAMS referring to payment processing services, 2015 to date. Requests
Nos. 6, 10.</u>

These requests are relevant to the involvement of BOA in the payment

processing services performed by BAMS. (¶1).   The request for agreements

between BAMS and BOA is appropriate in a subpoena to Fiserv because First Data

– now Fiserv – and BOA were joint venturers that owned BAMS. (¶¶1, 8)[7].

C.  <u>Documents regarding the interrelationship between BOA and BAMS,
between First Data and BAMS, and between Fiserv and BAMS, 2015 to
present. Requests Nos. 7 , 79.</u>

These requests are relevant to establishing that BAMS was a joint venture

owned by BOA and First Data, which is now a wholly owned subsidiary of

Fiserv.  (¶¶1, 8).  That is relevant to any motion that Plaintiff might make under

Fed.R.Civ.P. 25(c) to have any of the non-BAMS former Defendants added as a

party Defendant to this case, under state law principles of alter ego liability, joint

venturer liability and/or successor liability. (¶¶1, 8, 9, 11 – 14, 19, 34 – 36, 81).

These requests are also made relevant by Defendant's statement in the Joint

Preliminary Report and Discovery Plan  that "BAMS, now known as JV Wind

Down, LLC ('BAMS'), is a limited liability company whose two members are:

───────────────

[7] Plaintiff's references to specific paragraphs of the Complaint are not meant to be
exhaustive, and throughout this memorandum of law, paragraphs in the Complaint
other than those specifically referenced may be relevant to some or all of the
requests in the subpoena.

FDS Holdings, Inc., a subsidiary of Fiserv, Inc. ('Fiserv'), and BAMS Solutions,

Inc., an indirect subsidiary of Bank of America Corporation ('BofA)." (ECF 53, p.

4).

   D. <u>Notices sent to Selected Merchants regarding JV Wind Down, LLC 2015
      to date. Requests Nos. 74 – 76</u>

These requests are relevant for the same reasons set forth regarding C above.

   E. <u>Documents regarding the assumption of BAMs' liabilities upon its
      dissolution. Request No. 77.</u>

These requests are relevant for the same reasons set forth regarding C above.

   F. <u>Emails and other documents regarding PCI compliance by BAMS and/or
      BOA and/or First Data, including documents discussing steps to be taken
      to become PCI compliant, 2015 to date. Requests Nos. 17, 24 – 32, 38.</u>

These requests are relevant to the basic theory and pleading of the

Complaint, that BAMS was not PCI compliant, that First Data – now Fiserv – and

BOA were aware of that fact but did not take any steps to have BAMS become PCI

compliant and instead sought to hide that fact from its customers, the

merchants  and municipalities for whom they processed credit card transactions,

that Mr. Slawin refused to go along with hiding that fact from the customers, and

was fired because of such refusal. (¶¶1, 3, 47, 48, 50 – 52, 56 – 61, 64 – 66, 69 –

74, 79, 80 – 86, 89, 93 – 95, 98, 99, 103 – 105).

G. <u>Documents sent to the selected merchants discussing or referring to PCI compliance 2015 to date. Requests Nos. 18 – 20.</u>

These requests are relevant to the pleadings in the Complaint that the fact that BAMS was not PCI compliant was hidden from the customers and instead that they were either misleadingly told that BAMS was PCI compliant or that questions regarding PCI compliance were redirected to First Data – now Fiserv – which was PCI compliant. (¶¶1, 49, 59, 65, 69, 76, 77, 78, 83, 89, 90).

BOA fails to demonstrate that relevant documents could not be located by using search words.  As the Court is undoubtedly aware, communications are more and more done by email, which is easily searchable.  Especially considering that there were upwards of 10,000 merchants, it is unlikely that most or even any of the relevant communications were done by "snail mail."

H. <u>Documents describing BAMS' role in payment processing services in connection with the joint venture between First Data and BOA, 2015 to present. Requests Nos. 21, 23.</u>

These requests are relevant for the same reasons as set forth with respect to categories A, B and C above. (¶¶1, 8, 27, 29 – 32, 34 – 36, 70, 71).

I. <u>Documents regarding BAMS' handling of Primary Account Number ("PAN") Data 2015 to date.. Request No. 40.</u>

This request is relevant to whether or not BAMS was PCI compliant.

(Complaint, *passim*).

J.  Documents reflecting or discussing the volume of transactions handled
 by BAMS, including estimates of data transmitted between BAMS and First
 Data 2015 to date.   Request No. 41.

This request is relevant to the scope of the problem created by BAMS being

non-PCI compliant.  This is relevant to Mr. Slawin's resistance to participating in

the cover-up, to the cost of BAMS becoming PCI-compliant, which would

establish BAMS' motive to fire Mr. Slawin rather than take steps to become PCI

compliant, and to the magnitude of the fines which BAMS might be liable to pay

its customers if they were to discover that, despite the warranties contained in the

MSA's, BAMS was not PCI compliant. (¶¶21 – 24, 51, 52, 54, 57, 73, 77, 81, 84,

94).

K.  Documents sent to or received from Joseph Moll regarding BAMS's
     handling of PAN data 2015 to date.  Request No. 42.

This request is relevant to the cover-up of BAMS not being PCI compliant.

Joseph Moll had been BAMS' Vice President Corporate Information Security

Officer, Risk and Compliance and was aware of thousands of instances in which

confidential data was being mishandled by BAMS. (¶¶1, 53, 54).

L.  Documents regarding or reflecting the joint venture between BOA and
     First Data and referring to BAMS 2015 to date. Request No. 43.

This request is relevant for the same reasons as set forth above and made

relevant by Paragraphs 1, 8, 27, 29 – 32, 34 – 36, 70 and 71 of the Complaint and

by ECF. 53, p. 4).

M. <u>Documents regarding the purchase of First Data by Fiserv, including documents reflecting the corporate status of First Data after the purchase, the transfer of any of First Data's assets and assumption of any of First Data's liabilities. Requests Nos. 46, 47, 50, 51</u>.

These requests are relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and 81 of the Complaint and to ECF 53, p. 4.

N. <u>Documents regarding the disposition of MSA's following dissolution of BAMS. Requests Nos. 57 – 59, 77</u>.

These requests are relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and 81 of the Complaint and to ECF 53, p. 4.

O. <u>Documents regarding the incorporation and ownership of JV Wind Down 2015 to date. Requests Nos. 60 – 62</u>.

These requests are relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and 81 of the Complaint and to ECF 53, p. 4.

P. <u>Documents regarding the ownership of BAMS 2015 to date. Requests Nos. 63 – 64</u>.

These requests are relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and 81 of the Complaint and to ECF 53, p. 4.

Q. <u>Documents regarding the transfer of BAMS' assets 2015 to date. Requests Nos. 65 – 68</u>.

These requests are relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and 81 of the Complaint and to ECF 53, p. 4.

R.  Agreements between JV Wind Down and BAMS, BOA and/or Fiserv 2015 to date. Requests Nos. 69, 70.

These requests are relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36

and 81 of the Complaint and to ECF 53, p. 4.

S.  Notices sent to merchants upon the purchase of First Data by Fiserv and upon the dissolution of BAMS. Requests Nos. 74 – 76.

These requests are relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36,

49, 59, 65, 69, 76, 77, 78, 81, 83, 89 and 90 of the Complaint and to ECF 53, p. 4.

T.  Documents sent or received by BAMS, or prepared by BAMS, related to any filings by BOA with the SEC, 2019 to date. Request No. 87.

This request is relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and

81 of the Complaint, and to, ECF 53, p. 4.

U.  Any power of attorney from BOA to BAMS effective during the period 2015 to date. Request No. 101.

This request is relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and

81 of the Complaint and to ECF 53, p. 4.

V.  Agreements with credit card companies and BAMS, or JV Wind Down, or signed by BAMS or JV Wind Down, on behalf of BOA during the period 2017 to date. Requests Nos. 105 – 108, 111 - 116.

These requests are relevant to Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36

and 81 of the Complaint and to ECF 53, p. 4.

W. <u>Banking statements, checking statements, profit and loss statements, balance sheets, documents reflecting the assets, transfer of assets and/or disposition of assets of BAMS and its successor, JV Wind Down during the period 2017 to present. Requests Nos. 117 – 125.</u>

These requests are relevant for the same reasons as set forth regarding category C above. They are made relevant by Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and 81 of the Complaint and by ECF  53, p. 4.

X. <u>Documents reflecting the assignment of BAMS' liabilities 2017 to date. Request No. 126</u>.

This request is relevant for the same reasons as set forth regarding category C above. It is made relevant by Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and 81 of the Complaint and by ECF  53, p. 4.

Y. <u>Documents discussing BAMS' financial performance by BOA for purposes of preparing reports to be filed with the SEC 2017 to date. Request No. 127</u>.

This request is relevant for the same reasons as set forth regarding category C above. It is made relevant by Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and 81 of the Complaint and by ECF  53, p. 4.

Z. <u>Documents sent between BAMS and BOA regarding BAMS' financial performance 2017 to date. Request No. 130</u>.

This request is relevant for the same reasons as set forth regarding category C above. It is made relevant by Paragraphs 1, 8, 9, 11, 12, 13, 14, 19, 34 – 36 and 81 of the Complaint and by ECF  53, p. 4.

<u>POINT III</u>

<u>BOA HAS NOT DEMONSTRATED ANY FACTUAL BASIS FOR SHARING
THE COST OF COMPYLING WITH THE SUBPOENA</u>

This Court has "substantial discretion in the allocation of costs in

discovery", *Bozeman v. Chartis Casualty Company*, 2010 WL 4386826 at *4

(M.D. Fla. 2010), *citing*, *Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005)

Cost sharing or allocation should be denied here because BOA has failed to

demonstrate any undue burden, has failed to set forth the number of people or

amount of time that would be required to comply with the subpoena, and has failed

to set forth any other factor that would justify requiring Plaintiff to share in the

costs of compliance with the subpoena.

<u>CONCLUSION</u>
<u>THE COURT SHOULD DENY BOA'S MOTION TO QUASH THE SUBPOENA
IN ITS ENTIRETY, OR IN THE ALTERNATIVE, THE COURT SHOULD
MODIFY THE SUBPOENA AS REFLECTED IN PLAINTIFF'S MAY 23, 2022
LETTER TO BOA'S COUNSEL, ATTACHED HERETO AS AN EXHIBIT,
AND SHOULD ENFORCE THE SUBPOENA AS SO MODIFIED
AND THE COURT SHOULD DENY THE REQUEST FOR PLAINTIFF TO
SHARE IN THE COSTS OF COMPLIANCE WITH THE SUBPOENA</u>

This 27th day of May 2022.

<div style="margin-left:40%">

<u>s/Robert N. Marx</u>
Robert N. Marx, Esq.
Georgia Bar No. 475280
Jean Simonoff Marx, Esq.
Georgia Bar No. 475276
Marx & Marx, L.L.C.
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338

</div>

Telephone:  (404) 261-9559
lawyers@marxlawgroup.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN,<br><br>           Plaintiff,<br><br>v.<br><br>BANC OF AMERICA MERCHANT SERVICES, LLC, s/h/a BANK OF AMERICA MERCHANT SERVICES,<br><br>           Defendant. | Civil Action File No.<br>1:19-cv-04129-AT |

CERTIFICATE OF SERVICE

This is to certify that on May 27, 2022, I electronically filed: **Plaintiff's Memorandum of Law in Opposition to Non-Party Bank of America Corporation's Motion to Quash Subpoena with Exhibits thereto,** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

Charles E. Solley
Moser Law Co.
691 John Wesley Dobbs Avenue N.E.
Suite D-212
Atlanta, GA 30312
tsolley@moserlawco.com
Counsel for Non-Party Bank of America Corporation

Respectfully submitted, this 27th day of May 2022.

      s/Robert N. Marx
       ROBERT N. MARX

Georgia Bar Number 475280
Attorneys for Plaintiff
Marx & Marx, L.L.C.
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
Telephone:  (404) 261-9559
E-mail:  lawyers@marxlawgroup.com

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing memorandum of law has been prepared in accordance with Local Rule 5.1 using Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

Respectfully submitted, this 27th day of May 2022.

 s/Robert N. Marx
   ROBERT N. MARX