# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN,<br><br>             Plaintiff,<br><br>       v.<br><br>BANC OF AMERICA MERCHANT SERVICES, LLC, s/h/a BANK OF AMERICA MERCHANT SERVICES,<br><br>             Defendant. | Civil Action No. 1:19-cv-04129-AT |

## NONPARTY BANK OF AMERICA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA

In its Motion to Quash Subpoena ("Motion"), nonparty Bank of America (BOA)[1] showed that Plaintiff's Subpoena imposes an undue burden. In summary, it contains 132 requests, most of which are duplicative because Plaintiff already served them on BAMS, the defendant, and it seeks "all documents" over the span of seven or more years regarding very broad topics, including documents unrelated to the central issue in Plaintiff's claims, i.e., his specific complaints that allegedly resulted in his termination. BOA also showed that the Subpoena seeks privileged and confidential documents, which are independent bases for quashing it.

Plaintiff's Opposition does not refute these points. Plaintiff never establishes that **all documents** relating to **all aspects** of (for example) PCI compliance, entities' interrelationships, and BAMS' and JV Wind Down's finances are relevant; or the relevance of all forty-two "Selected Merchants" and their subdivisions, wholly owned corporations, and joint ventures. Because Plaintiff "bears the burden of demonstrating that the requests are relevant," the lack of proof of relevance suffices to quash the Subpoena. *See BMO Harris Bank, N.A. v. Richert Funding, LLC*, No. 15-3886, 2016 WL 11531451, at *6 (N.D. Ga. Dec. 27, 2016); *Jordan v. Comm'r, Miss. Dep't of Corrs.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (subpoena "should be quashed to the extent it seeks irrelevant information").

---

[1] Terms used in this Reply have the same definitions as in BOA's Motion.

Additionally, Plaintiff's purported reasons for seeking the requested information are neither compelling nor valid.  First, although Plaintiff claims to seek the documents for a Rule 25(c) motion to add or substitute parties, BOA is not BAMS' successor and cannot be added under Rule 25(c).  Also, a comprehensive subpoena would not be necessary for such a motion.  Regardless, Plaintiff's deadline to file a Rule 25(c) motion passed.

Second, although Plaintiff argues that certain requests are relevant to whether he reasonably believed a violation occurred, he ignores BOA's point that the Subpoena is much broader than documents relating to his alleged complaints. Also, because Plaintiff need not prove that a violation actually occurred, his requests seeking evidence that violations occurred are *tangential* to his clams and thus *disproportionate*.  Nor does Plaintiff address that BAMS offered to stipulate that it was not PCI compliant, which moots any such requests.

Third, Plaintiff argues that the Subpoena is not unreasonably cumulative or duplicative because BAMS has not produced some documents, and he does not know who possesses certain documents.  But Plaintiff served the Subpoena before even checking what BAMS produced.  Also, BAMS' discovery objections averred that BOA possessed the documents responsive to *only two* of 146 requests.  And

2

Plaintiff has not exhausted remedies to resolve any discovery dispute with BAMS, so he does not yet have the full scope of BAMS' production.

Fourth, Plaintiff argues that BOA did not submit an affidavit about burden, and that emails can be searched easily. However, case law establishes that facially unduly burdensome subpoenas are properly quashed without an affidavit. Plaintiff's unsupported conjecture that emails can be searched easily ignores the realities of the significant burdens and expenses of e-discovery.

Fifth, contrary to Plaintiff's argument that BOA's nonparty status does not matter because it might become a party, Rule 45 requires that the party serving the subpoena avoid unduly burdening any recipient.

Finally, although Plaintiff argues that he offered to modify the Subpoena, the modified version suffers from the same problems as the original version. For all of these reasons, the Court should quash the Subpoena.

## I. Plaintiff's desire to file a Rule 25(c) motion does not justify the Subpoena.

As an initial matter, Plaintiff's deadline to file a Rule 25(c) motion passed. The deadline was originally October 30, 2020. *See* ECF No. 47 at 17. The Court extended it multiple times until it ended up being September 20, 2021. *See* ECF No. 54 at 2; ECF Paperless Order (June 4, 2021). There have been no further

3

extensions. On September 20, 2021, Plaintiff moved to withdraw the then-current deadlines. ECF No. 70 at 3. The Court denied Plaintiff's motion as moot, administratively closed the case pending mediation, and ordered the parties "to file a joint proposed scheduling order" after the mediation. ECF No. 71 at 1. Despite filing a joint proposed scheduling order, a motion to reopen the case, and a joint proposed modified scheduling order, Plaintiff never requested an extension of the deadline to file a Rule 25(c) motion. ECF Nos. 75-77. Plaintiff appears to claim that he failed to seek an extension because "it would be futile to set a deadline" while the parties' "discovery dispute is pending." ECF No. 88 at 4. But Plaintiff's excuse (1) does not change the fact that the deadline was never extended, and (2) is not credible because, notwithstanding the alleged pending "discovery dispute," Plaintiff managed to propose a deadline for all discovery, and then to request an extension of that discovery deadline. ECF No. 75 at 2; ECF No. 77 at 2.

Even if the deadline for a Rule 25(c) motion had not passed, Rule 25(c) still would not have justified the Subpoena. Federal Rule of Civil Procedure 25(c) states that, "[i]f an interest is transferred," "the transferee" may be "substituted in the action or joined with the original party." Consistent with that language, the Court's order granting BOA's motion to dismiss contemplates that Rule 25(c)

would apply if BOA succeeds BAMS. *See* ECF No. 47 at 16-17 (stating that Plaintiff "ha[d] implied that BOA may be the successor by dissolution of BAMS pursuant to Fed. R. Civ. P. 25(c) [and an Eleventh Circuit decision]," and that the order was "without prejudice" to an argument that "any of the non-BAMS parties is the successor to BAMS under applicable state law," but that Plaintiff ha[d] not filed a motion to substitute under that rule"). Rule 25(c) does not apply here because BOA is not BAMS' successor. BAMS states that it is "now known as JV Wind Down, LLC." ECF No. 53 at 4. Because BAMS still exists as JV Wind Down, Plaintiff's Subpoena would not create a basis for a Rule 25(c) motion.[2]

Even if there was a genuine question about whether BOA has succeeded BAMS, Plaintiff has not explained why he needs to obtain comprehensive records—relating to, for example, all aspects of BAMS' and JV Wind Down's finances, including their banking and checking statements, profit and loss statements, and balance sheets—just to find out whether BOA succeeded BAMS.

## II. The Subpoena seeks documents that are unrelated to Plaintiff's alleged complaints and his termination, and documents that are at best tangential to the claims and disproportionate.

In its Motion, BOA argued that the Subpoena's scope is far broader than the

---

[2] Plaintiff is incorrect that "BOA is a member of the LLC (JV Wind Down)." ECF No. 88 at 13. BAMS states that JV Wind Down's members are a Fiserv subsidiary and "an indirect subsidiary of [BOA]." ECF No. 53 at 4.

scope of Plaintiff's claims, including because Plaintiff's requests are not limited to seeking information related to specific complaints that allegedly resulted in his termination. ECF No. 82 at 17-18. Plaintiff fails to dispute this point.

BOA also argued that, to the extent Plaintiff's requests relate to any noncompliance he allegedly complained about, the discovery would be at best tangential to his claims and disproportionate because he is not required to prove that a noncompliance actually occurred. *Id.* at 18-19. Plaintiff focuses on this latter point and falsely accuses BOA of misrepresenting case law, arguing that the Subpoena is relevant because he must prove that he had an objectively reasonable belief that the conduct he complained of was a violation. However, BOA correctly stated that Plaintiff does not have to prove that a violation occurred. Plaintiff is conflating different concepts. Some whistleblower laws require proof that a violation occurred, while some require a reasonable belief, and courts distinguish the two standards. *See, e.g.*, *Bonnafant v. Chico's FAS, Inc.*, 17 F. Supp. 3d 1196, 1201 (M.D. Fla. 2014) ("There appears to be a split of authority as to whether [Fla. Stat.] § 448.102(3) requires plaintiff to prove an actual violation of law, as opposed to a reasonable, good faith belief that a violation of law has occurred."). As Plaintiff admits, *see* ECF No. 88 at 6, the laws at issue here require only a

reasonable belief that a violation occurred, *see* ECF No. 47 at 24-26. Therefore, Plaintiff does not have to prove that a violation occurred, and the Subpoena requests that seek evidence of a violation are disproportionate.

An additional, independent reason for quashing the Subpoena is that Plaintiff fails to explain why he needs to serve any requests about whether BAMS was PCI compliant, when BAMS "has offered to stipulate that it was not PCI compliant." ECF No. 85 at 11 n.5.[3] As Fiserv stated in its reply brief, "BAMS' proposed stipulation moots most, if not all, of Plaintiff's subpoena requests." *Id.* BAMS' proposed stipulation underscores how disproportionate Plaintiff's Subpoena is, and Plaintiff does not even attempt to deny that point.

### III. The Subpoena is unreasonably cumulative and duplicative, and Plaintiff has not exhausted remedies to resolve a discovery dispute with BAMS.

Plaintiff's argument that he had to serve BOA with a Subpoena because BAMS had not produced documents that he requested is not credible, given that Plaintiff served the Subpoena before he even accessed BAMS' production to see what was in it. *See* ECF No. 85 at 1-3; ECF No. 85-1 at 2-3; ECF No. 85-4 at 2.

Even if BAMS has not produced certain documents that Plaintiff seeks—and

---

[3] Fiserv explains that "it is BAMS['] position that PCI compliance is irrelevant to Plaintiff's claims," and that BAMS "did not process payments and, as such, was never required to be PCI compliant." ECF No. 85 at 11 n.5.

7

BOA does not know whether that is the case because BOA has not been involved in discovery exchanges between Plaintiff and BAMS—Plaintiff has not exhausted remedies to resolve any discovery dispute with BAMS. Plaintiff provides no authority that he can burden a nonparty with duplicative requests before exhausting an effort to obtain the documents from the actual defendant. Nor would such an argument make sense, because requiring a nonparty to produce documents just because the party has objected to doing so would impose a harsher discovery burden on the nonparty than on the party. Shifting the discovery burden to BOA violates Plaintiff's obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Plaintiff's accusation that BAMS and BOA are running "a 'shell game'" by punting on who is in possession of documents is baseless. ECF No. 88 at 11. To begin with, of his 146 requests to BAMS, Plaintiff ostensibly relies on only twenty-seven of BAMS' responses for his argument. In reality, BAMS states that it does not have certain documents in its possession, custody, or control ("PCC") in response to only seven requests, and *only two* of those requests even mention BOA. ECF No. 88-1 at 19-21, 23-24 (Responses 48-52, 56, and 58). Moreover, those two requests mention BOA only tangentially—they actually seek documents

about Fiserv's purchase of First Data that merely refer to BOA. *Id.* at 20 (Responses 50 and 51). Plaintiff never explains why he needs these documents, particularly when BAMS does not dispute that Fiserv wholly owns First Data. ECF No. 85 at 13 (citing ECF No. 50 ¶ 13). BAMS objects to two more requests that mention BOA, objecting that they seek documents in a third party's PCC; however, BAMS does not deny having the documents, and the requests seek MSAs signed by or naming BAMS. ECF No. 88-1 at 6-7 (Responses 18 and 19). Moreover, Plaintiff again fails to explain why he needs these specific MSAs. Of the remaining eighteen responses of BAMS' on which Plaintiff's "shell game" argument appears to rely, BAMS does not object that it does not have responsive documents in its PCC, but rather that the requests seek information ***regarding*** nonparties.[4] Plaintiff's serving of a 132-request (or 77-request) Subpoena on BOA when BAMS denies having just a couple categories of documents that Plaintiff does not even need violates Rule 45's command to avoid unduly burdening

---

[4] Of the eighteen requests, Plaintiff focuses on those for the personnel files of Mark Kendall, Brian Rubin, and Joseph Moll, and he claims that BAMS' objection that the requests seek private information about nonparties suggests that BOA might employ them. But Plaintiff does not request these personal files in his Subpoena. Regardless, BAMS does not object that the responsive documents are in the PCC of a nonparty—only that Plaintiff seeks private information about these nonparty individuals. Furthermore, Kendall and Rubin ceased being BOA employees before Plaintiff started working for BAMS, and Moll was never employed by BOA.

nonparties, and Rule 26's requirement that discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

**IV.  The Subpoena is unduly burdensome on its face.**

Contrary to Plaintiff's argument, a nonparty is not required to submit an affidavit to establish undue burden, as courts often quash subpoenas that are unduly burdensome on their face.  For example, the courts in two cases that BOA discussed in its Motion held that subpoenas were unduly burdensome based on the nature of the requests themselves, without referring to any affidavits or declarations about the burden to the nonparties.  *See McMullen v. GEICO Indem. Co.*, No. 14-62467, 2015 WL 2226537, at *8 (S.D. Fla. May 13, 2015) ("The problem with the subpoenas … is that they are incredibly overbroad and unduly burdensome ***as written***." (emphasis added)); *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 527-28 (N.D. Ga. 2012) ("Plaintiff's demands are like a bulldozer that levels an entire hill in the hopes of finding some specks of gold.").  Plaintiff does not attempt to distinguish these cases.  Other courts have similarly quashed subpoenas that the courts held were overbroad and unduly burdensome on their face.[5]

---

[5] *See Schaaf v. SmithKline Beecham Corp.*, No. 06-120, 2006 WL 2246146, at *2 (M.D. Fla. Aug. 4, 2006) (quashing subpoena because it was "overly broad on its face," as it "encompasse[d] numerous documents wholly irrelevant to the lawsuit," and "to require compliance with the document request as worded would result in

10

The cases on which Plaintiff relies are distinguishable because they did not involve anything close to the number of requests in his Subpoena, and the nonparties did not argue that the subpoenas were facially unduly burdensome.[6]

Additionally, Plaintiff's claim that BOA could "easily" search emails using "the search feature" and "easily identify privileged material in the same search" does not appreciate the realities of e-discovery. ECF No. 88 at 14. Plaintiff does not take into account the expenses of hosting, searching, and reviewing electronic

---

an undue and unnecessary burden on the movant"); *Lynn v. Romar Marina Club, LLC*, No. 07-173, 2009 WL 10692088, at *1 (S.D. Ala. May 28, 2009) (quashing subpoena, where requests were "overly broad and unduly burdensome on their faces"); *Great Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1309-11 (S.D. Fla. 2015) (quashing subpoena category because it was "facially overbroad and compliance would place an undue burden and expense on the … non-party," as the request spanned nearly three years and "would encompass a large number of documents that have no relevance to the claims or defenses herein and would impose an undue burden on the [nonparty], which would have to review voluminous documents for privilege and compile a privilege log"); *Barrington v. Mortage IT, Inc.*, No. 07-61304, 2007 WL 4370647, at *4, *6 (S.D. Fla. Dec. 10, 2007) (quashing subpoenas because they were "overly broad on their face").

[6] *See Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504, 511 (M.D. Fla. 2007) (only six and thirteen requests, respectively, were at issue in the order on two motions to quash), *reconsideration granted in part on other grounds*, No. 07-42, 2008 WL 68594 (M.D. Fla. Jan. 4, 2008); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, Nos. 19-2885, 20-56, 2020 WL 6438614, at *5 (N.D. Fla. Nov. 2, 2020) (involving merely a subpoena "to attend a brief, remote deposition"); *Gabe Staino Motors, Inc. v. Volkswagen of Am., Inc.*, No. 99-5034, 2003 WL 25666135, at *2-4 (E.D. Pa. Feb. 28, 2003) (only thirteen requests were at issue, and "Plaintiffs offered to reimburse [the nonparty] for the cost of reproduction").

data. Plaintiff's broad requests necessarily would require substantial e-discovery expenses. *See In re Application of O2CNI Co., Ltd.*, No. 13-80125, 2013 WL 4442288, at *8 (N.D. Cal. Aug. 15, 2013) (in quashing subpoenas, reasoning in part that "[t]he e-discovery that is contemplated is voluminous on its face and would be expensive"). For example, Plaintiff seeks virtually all documents relating to PCI compliance and BAMS' handling of PAN data that exist throughout all of BOA—one of the largest financial institutions in the country (Requests 17-20, 24, 27-39, 41-42, 84-86, and 91-100). Complying with these requests would require searching untold numbers of documents for all time. Plaintiff does not limit the custodians to be searched or identify search terms to use. Even if he did, BOA would still have to review, one by one, an untold number of hits for responsiveness and privilege. Plaintiff does not identify the "eas[y]" method of "identify[ing] privileged material" to which he refers. ECF No. 88 at 14.

## V. Plaintiff's desire to make BOA a party does not deprive BOA of the protection granted to nonparties.

Plaintiff cites no authority for his argument that BOA cannot rely on its nonparty status because it might become a party. Contrary to Plaintiff's argument, the Supreme Court has held that "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-

asserting measure stating the time within which the party served must appear and defend." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 345 (1999). Here, the Court dismissed BOA from the case, and BOA has not been required to reappear as a party. Moreover, Rule 45 does not distinguish between nonparties that might or might not become parties. It states categorically that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). If BOA is subjected to the discovery obligations of a party just because it might become one in the future, but then never ends up becoming a party, BOA will have been needlessly and baselessly subjected to a burden that the rule is intended to protect it from.

## VI. Plaintiff's proposed modified version of the Subpoena suffers from the same problems as his original version.

Plaintiff's proposed modified version of the Subpoena continues to impose a substantial and undue burden on BOA, and to seek irrelevant documents that Plaintiff does not actually need, as well as privileged and confidential documents.

The modified Subpoena still contains numerous requests (77). Its requests are still largely duplicative of Plaintiff's requests to BAMS. Further, Plaintiff continues to request documents relating to any aspect of PCI compliance, BAMS'

13

handling of PAN data, entities' interrelationship, and BAMS' and JV Wind Down's finances. Plaintiff continues to request agreements and other documents regarding the same forty-two "Selected Merchants," plus their subdivisions, wholly owned corporations, and joint ventures.[7] Plaintiff's requests still encompass confidential documents, and Plaintiff continues to request documents relating to BOA's SEC filings, which would include privileged and confidential drafts.

Furthermore, Plaintiff again fails to explain why he needs the voluminous documents requested in the modified Subpoena. Although he claims that certain requests are relevant to establishing the structure or interrelationships of BAMS, First Data, Fiserv, and BOA, it is not in dispute who BAMS' members are, or that Fiserv wholly owns First Data. *See* ECF No. 50 ¶¶ 1, 13. Similarly, Plaintiff continues to seek all documents regarding PCI compliance and BAMS' handling of PAN data even though BAMS "has offered to stipulate it was not PCI compliant." ECF No. 85 at 11 n.5. Although Plaintiff claims that certain requests are relevant to a Rule 25(c) motion, there is no basis for discovery on this issue. *See supra* Pt. I.

---

[7] Although Plaintiff claims that there would be at most 126 agreements for the forty-two Selected Merchants, 126 is still a substantial number; Plaintiff does not address the lengths of these agreements; Plaintiff does not account for potential modifications of or amendments to these agreements; Plaintiff requests documents besides agreements; and Plaintiff also requests documents regarding each Selected Merchant's subdivisions, wholly owned corporations, and joint ventures.

The proposed modified Subpoena does not meaningfully reduce the burden. Despite Plaintiff limiting certain requests' time period to 2015 to the present or (for at most three requests) 2017 to the present, those are still spans of over seven or five years. Plaintiff was a BAMS employee only from 2015 to 2017. And Plaintiff states that he has only "[t]emporarily [l]imited" the temporal scope. ECF No. 88-2 at 1. Moreover, of the fifty-six requests that Plaintiff removes, forty-six are either really directed to Fiserv (original requests 2, 3, 5, 8, 9, 13-16, 22, 33-37, 39, 44, 45, 48, 49, 52-56, 71-73, 78, 80, 88-89, 91-94, 128, 129, 131, and 132), or seek publicly available documents (original requests 81-86).

Plaintiff states that BOA's counsel "refus[ed]" the modified Subpoena, and that he attached BOA's counsel's email to his Opposition, ECF No. 88 at 5, but Plaintiff failed to attach the email. BOA attaches it here. *See* Ex. 1. As the email shows, Plaintiff fails to mention in his Opposition that BOA's counsel notified Plaintiff's counsel of the continuing problems with the modified Subpoena.

### VII. Conclusion.

For the foregoing reasons and those stated in its Motion, nonparty BOA respectfully requests that the Court quash Plaintiff's subpoena.

Respectfully submitted this 24th day of June, 2022.

>*s/ Charles Solley*
>Sam S. Shaulson (*pro hac vice*)
>Joseph D. Magrisso (*pro hac vice*)
>MORGAN, LEWIS & BOCKIUS LLP
>600 Brickell Avenue, Suite 1600
>Miami, FL 33131-3075
>Telephone: (305) 415-3000
>Fax: (305) 415-3001
>sam.shaulson@morganlewis.com
>joseph.magrisso@morganlewis.com
>
>Charles Edward Solley (GA Bar Number 010108)
>MOSER LAW CO.
>691 John Wesley Dobbs Ave NE Suite D-212
>Atlanta, GA 30312
>404-537-5336
>tsolley@moserlawco.com
>
>*Attorneys for Non-Party Bank of America Corporation*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing motion has been prepared in accordance with Local Rule 5.1, including preparation in Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

This 24th day of June, 2022.

*s/ Charles Solley*
Charles Edward Solley

## CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification or otherwise.

This 24th day of June, 2022.

*s/ Charles Solley*
Charles Edward Solley
