The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

```
1                  IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
2                          ATLANTA DIVISION

3    ERIC SLAWIN,                       :
                                        :
4              PLAINTIFF,               :
                                        :
5    vs.                                :   DOCKET NUMBER
                                        :   1:19-CV-4129
6    BANC OF AMERICA MERCHANT           :
     SERVICES, LLC, S/H/A BANK OF       :
7    AMERICA MERCHANT SERVICES,         :
                                        :
8              DEFENDANT.               :

9
```

**TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS**

**BEFORE THE HONORABLE AMY TOTENBERG**

**UNITED STATES DISTRICT SENIOR JUDGE**

**SEPTEMBER 3, 2024**

**3:17 P.M.**

*MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

*TRANSCRIPT PRODUCED BY:*

*OFFICIAL COURT REPORTER:*          *SHANNON R. WELCH, RMR, CRR*
                                    *2394 UNITED STATES COURTHOUSE*
                                    *75 TED TURNER DRIVE, SOUTHWEST*
                                    *ATLANTA, GEORGIA  30303*
                                    *(404) 215-1383*

1              **A P P E A R A N C E S   O F   C O U N S E L**

2

3    **FOR THE PLAINTIFF:**

4

5         ROBERT NATHAN MARX
         JEAN SIMONOFF MARX
6         MARX & MARX LLC

7    **FOR THE DEFENDANT:**

8

9         CHRISTOPHER PAUL GALANEK
         BRIAN McKINLEY UNDERWOOD, JR.
10        BRYAN CAVE LEIGHTON PAISNER LLP - ATL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|   |   |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | **(Atlanta, Fulton County, Georgia; September 3, 2024.)** |
| 3 | COURTROOM DEPUTY CLERK:  Hello.  This is Keri again. |
| 4 | And we are ready to begin the teleconference for Slawin v. Bank |
| 5 | of America, Case Number 19-CV-4129. |
| 6 | And Judge Totenberg is here.  We're ready to get |
| 7 | started. |
| 8 | THE COURT:  Good morning -- or, good afternoon. |
| 9 | Sorry for the delay. |
| 10 | I am realizing I have a whole other set of disputes |
| 11 | here that I didn't quite note in their fullness.  But I think |
| 12 | I've got the gist of things.  So if I don't, we'll just have to |
| 13 | continue on. |
| 14 | When is this deposition scheduled, first of all? |
| 15 | MR. GALANEK:  Your Honor, this is Chris Galanek for |
| 16 | the defendant. |
| 17 | It is not yet scheduled in large part because we need |
| 18 | to understand the scope of topics.  There is a witness that had |
| 19 | previously been offered up in her individual capacity, Ali |
| 20 | Davis.  The plaintiffs went through that notice a month ago. |
| 21 | She will be our 30(b)(6) witness on those topics that |
| 22 | are not in dispute, including certain topics related to PCI |
| 23 | compliance. |
| 24 | We have given dates that she's available.  She had |
| 25 | two dates available in September, I believe the 23rd and 24th; |

 1    two dates available the end of October.  She travels a lot for

 2    her job.

 3              It is my understanding that plaintiff's counsel is

 4    not available for the September date.  So I believe for

 5    Ms. Davis' deposition, we're targeting one of those two October

 6    dates -- I believe it is the 23rd or 24th of October -- with

 7    respect to the topics that we're going to discuss with you

 8    today and you may rule on.

 9              If there are additional topics that you determine

10    that a witness has to be made available, it likely would not be

11    Ms. Davis.  So we'll have to identify the witness and identify

12    when they are available.

13              But I believe that the parties had asked the Court to

14    extend discovery and the Court entered an order limiting it to

15    an extension of discovery solely for the purpose of completing

16    the 30(b)(6) until November the 8th.

17              And at least from the defendant's perspective, absent

18    something unexpected, we don't see any reason that date should

19    not be met.

20              THE COURT:  Okay.

21              MR. MARX:  Your Honor, this is Mr. Marx representing

22    the plaintiff.

23              I agree with what Mr. Galanek said.

24              I just want to point out that we had actually issued

25    a notice with a date on it in August.  And when it became clear

```
 1   that defendant was intending to designate a witness who would

 2   not be available, we agreed, especially since we have this

 3   dispute -- and we did, in fact, join with the defendant in the

 4   motion to move the date -- the deposition to a date when that

 5   witness would be available.

 6              THE COURT:  All right.  So in summary, you both agree

 7   on that.  The question is -- I just lost a step there.

 8              Are you presuming then that you can proceed with the

 9   witness the end of October?  Do you agree on that, or are we

10   talking about a different witness now?

11              That is what I wasn't clear about.

12              MR. MARX:  Your Honor, this is Mr. Marx.

13              We're fine with the deposition at the end of October.

14   We were told that the witness would be available then, and we

15   have made plans to be available ourselves as well.

16              MR. GALANEK:  Yes.  Your Honor, that is our

17   understanding too.

18              Ms. Davis -- for those topics that were noticed that

19   are not in dispute, Ms. Davis will be the corporate rep.  She's

20   available, and we're available.  And it is our understanding,

21   especially with Mr. Marx's reiteration that they are

22   available -- so that deposition will take place.

23              I don't know if there has been a consensus yet

24   reached whether it will be the 23rd or the 24th of October.

25   But those are the dates available.  That deposition will occur.
```

1            The only question is:  If there are additional topics

2    based on the discussions that we have with Your Honor today

3    that a witness has to be made available, some of those

4    Ms. Davis may be able to speak to.  There are others that she

5    would not be the proper witness for.  And we may have to

6    designate someone else -- locate and prepare a different

7    witness on other topics if other topics are allowed.

8            THE COURT:  Okay.  All right.  Well, I also note that

9    I have the consolidated joint discovery statement about the

10    redactions in defendant's document production.

11            I'm not really prepared to deal with that today

12    unless there is some way you feel that you can walk me through

13    this in a coherent way.  But there is just more here than I can

14    absorb in connection with the rest of the material that the

15    discovery statement of the 26th dealt with.

16            So we'll see how long this takes.  You can sort of --

17    I'll have a follow-up around the other, if necessary.

18            Okay.  In terms of the issue Number 1, topic 2,

19    factual basis for defendant's affirmative defenses, the

20    defendant's position was that certain affirmative defenses are

21    purely legal, including the first defense and fifth defense and

22    that the seventh defense is just a reservation of rights.

23            So unfortunately I thought I had printed the -- tell

24    me what again the count -- the counts that are in dispute as to

25    the first defense and the fifth defense, go ahead and tell me

1    again what those are.

2         MR. GALANEK:  Yes, Your Honor.  This is Chris

3    Galanek.

4         The first defense that has been raised by the

5    defendant is just a failure to state a claim.  So it is

6    literally failure to state a claim.  So I really don't know how

7    we can prepare a witness for that.

8         The fifth defense that we don't think we should have

9    to prepare a witness on is basically our statement about

10   plaintiff's failure to mitigate.

11        So it is literally merely us taking the position that

12   the plaintiff has an obligation to mitigate their damages.  And

13   presumably at trial, the plaintiff will have to present

14   evidence that he has, in fact, mitigated his damages.

15        So we don't really know on those two defenses how we

16   can prepare a factual -- a witness to testify as to a factual

17   basis for one which is a purely legal defense and the other

18   which is actually plaintiff's burden.

19        MR. MARX:  Your Honor, this is Mr. Marx for the

20   plaintiff.

21        The fifth defense, as Mr. Galanek stated, is an

22   alleged failure to mitigate.  We do think there is a factual --

23   there needs to be a factual basis for that defense, if there is

24   any.  And I think we're entitled to know what the defendant

25   thinks that factual basis is.

1          The defendants have the burden of proving that

2     defense if they did have it as an affirmative defense.  So I

3     don't understand that.  They have taken Mr. Slawin's deposition

4     obviously.

5          And so we're, I believe, looking to get on a 30(b)(6)

6     the corporation's designated testimony as to what factual

7     basis, if any, the defendant thinks it has with respect to that

8     defense which is a factual showing that the defendant would

9     need to make if it did, in fact, try to prove that defense.

10    And we think during discovery we should find out what they

11    think that is.

12          THE COURT:  Well, except failure to mitigate damages

13    is really -- the plaintiff is showing in that circumstance I

14    think I suffered damages of a million dollars and the defendant

15    is saying you didn't work, you didn't do -- I'm not saying

16    these are the actual facts -- but you didn't in any way

17    endeavor to typically mitigate your damages by getting other

18    employment, by investing, or anything else like that.

19          So it doesn't seem like a classic circumstance where

20    the defendant would actually have any evidence specifically.

21          Tell me what you think that the defendant might

22    have -- why -- what sort of thing that the defendant -- what

23    sort of evidence the defendant might present that you would

24    actually -- at this juncture of the case that the corporate

25    representative would have at that point that you would then

1    want to be exploring and would likely exist.

2         MR. MARX:  Well, the defendant has obtained

3    Mr. Slawin's job search efforts, his documentation such as it

4    is, what he had.  He did a lot of online applications.

5         We would like to know if the defendant is aware of

6    any job opportunities that they allege that Mr. Slawin did not

7    apply for.  A lot of these things are, you know, on LinkedIn

8    and they are posted.

9         So to the extent that defendants are going to assert

10   that there were openings that they might have been aware of or

11   that they think Mr. Slawin should have found, I think that is a

12   factual statement and we don't -- you know, that is what

13   discovery is.

14        If the defendant doesn't have any facts other than

15   what Mr. Slawin has, then that is a statement that we can avoid

16   being blindsided at a trial if the defendant then tried to

17   bring in some evidence that, oh, there was a job at ABC Company

18   and they knew about it and it was posted.

19        THE COURT:  Okay.  And what does opposing counsel

20   respond to that?  Because that sounds --

21        MR. GALANEK:  Yes, Your Honor.

22        THE COURT:  To the extent that it is limited and

23   defined in that way, that makes sense to me.  But if you --

24   tell me why not.

25        MR. GALANEK:  Yes, Your Honor.  This is Chris Galanek

1    for the defendant.

2           I think it is a simpler answer, which is anything

3    that my client would have and would point to for failure to

4    mitigate would be something that Mr. Slawin himself testified

5    to.  There is nothing outside of that.

6           I just don't think we need to put up a witness to

7    basically review and articulate and regurgitate the testimony

8    of the plaintiff himself about the fact that he effectively day

9    traded for the first year after his employment terminated.

10          But that is -- so I mean, if the issue is they don't

11   wish to be blindsided, I have no problem representing to the

12   Court, to opposing counsel that any arguments regarding failure

13   to mitigate would be based on plaintiff's own testimony at

14   trial or plaintiff's testimony in his deposition.  There is

15   nothing outside of that that we would be offering.

16          THE COURT:  All right.  Well, that is a satisfactory

17   response as well.

18          But I will say this:  If you have -- if there is any

19   evidence that the defendant is thinking it may tender to

20   impeach that testimony, for instance, that the Bank of America

21   is aware that there were jobs in other portions of the industry

22   and there is no evidence that he -- that the plaintiff applied

23   there, then you would need to -- you would need to identify

24   that.

25          And if you -- and that is -- additionally, frankly,

```
 1   if you don't identify it and later on wish to present that,

 2   you're going to have to on a timely basis supplement discovery.

 3              MR. GALANEK:  Of course, Your Honor.  Of course.  We

 4   understand that.

 5              Thank you, Your Honor.

 6              THE COURT:  Okay.  One thing I'm concerned about with

 7   the depositions right now when I look over the scope of the

 8   disputes, Mr. Marx, is that -- I mean, you have a lot -- there

 9   are a lot of disputes here, and you don't have all of the time

10   in the world in a deposition.

11              So just, you know, where there is something like that

12   that you can resolve without using time for the deposition, it

13   is certainly worth your while.  And I thought there were a

14   number of these where I'm going, are you really going to spend

15   all your time on this?

16              There were some other -- you know, we started off

17   with the first defense and the fifth defense.

18              Were there any others that beyond that, Mr. Galanek,

19   you wanted to be specific about?

20              MR. GALANEK:  No, Your Honor.  All of the other

21   defenses that we assert -- any other affirmative defense that

22   we assert, we will, in fact, identify a witness -- and that

23   will likely be Ali Davis -- to testify as to the factual basis

24   for those other defenses.

25              We didn't have a problem with those.  We only were
```

1    concerned about the two we specifically referenced.

2             THE COURT:  Right.  But we went through the first

3    defense.  What is the fifth defense?

4             MR. GALANEK:  It was the mitigation defense.

5             THE COURT:  Mitigation.  And what is the first?  I'm

6    sorry.

7             MR. GALANEK:  The first one was failure to state a

8    claim.

9             THE COURT:  All right.  The thing about the failure

10   to state a claim is -- and I'm not sure that, again, a

11   nonlawyer would be able to respond to this.  But if there is --

12   that I can conceive of that there may be claims here that the

13   plaintiff has information on that he wants to be able to find

14   out does the corporate representative have some information

15   about.  I don't know what those are.

16            And if there is something -- a particular complaint

17   involving a particular factual scenario, Mr. Marx, would you

18   identify that so I could get a better sense of what is at issue

19   here?

20            MR. MARX:  Your Honor, this is Mr. Marx.  I do not

21   obviously want to interrupt the Court.

22            But we don't need to go into the first or the seventh

23   defense.  I'm really more focused on the fifth defense, which

24   we already discussed.  So we can dispense with the first and

25   the seventh.

```
 1                THE COURT:  All right.  Great.

 2           The next item was topic 3A.  And the summary of that

 3      was the joint venture that set up Defendant BAMS and the legal

 4      relationship between and among Defendant BAMS, BOA, and First

 5      Data.

 6           And as I understand it, at this juncture given the

 7      Court's rulings and the defendant's position is that plaintiffs

 8      are effectively trying to relitigate dismissal of other parties

 9      and it would be overbroad and unduly burdensome to revisit

10      those issues.

11                MR. MARX:  Your Honor, may I --

12                THE COURT:  Yeah, you can.  I'm looking at your

13      response again about this.  And so I just want to ask you this

14      question first before you go on.

15           Tell me, first of all, why is it relevant.  Because

16      we know that you know you can't now add new defendants under a

17      joint employer theory.  And you did have time to substitute a

18      party under Rule 25(c).

19           What more do you need beyond the previous written

20      responses?

21                MR. MARX:  Well, Your Honor, again, this is Mr. Marx.

22           One of the things going on here -- and some of these

23      topics bleed into each other.  With respect to the email chains

24      that we received -- that were produced and we were required to

25      put together -- that is Number 6 -- topic 6 -- a lot of these
```

1    email chains involve people or some of them involve people

2    outside of BAMS and Bank of America, certainly Marty Mederos.

3    And, in fact, we understand that the defendant's position is

4    that there is not a contest as to -- or, dispute as to topic

5    3b, which is the operational relationship among BAMS, First

6    Data, and Fiserv.

7         And insofar as this is discovery, we understand the

8    Court's position on the dismissal.  We're not relitigating

9    that.

10        The topic does not include anything about assets or

11   transfers of assets or banking.  We understand the Court's

12   position, and we're mindful of that.

13        But with respect to the joint venture, BAMS was a

14   joint venture that is remaining, at least before it was

15   dissolved.  It did have these different pieces to it.  And it

16   is just a matter of discovery and how all these pieces fit

17   together.

18        We understand we're not going to be substituting any

19   new defendants in this case.  That is not what this is about.

20        If the Court looks in the joint statement on Page --

21   Page 6, letter O, there are all these Bates numbers.  These are

22   email chains involving certain vendors, one of which is

23   Verisign.  And, again, we have that -- that is on Page 9, AU

24   and AV, the email chains which we put together.

25        The actors were not limited to BAMS.  We understand

 1    the case in terms of liability and the defendant and the box is

 2    limited to BAMS.  We get that.

 3          But in terms of -- in fact, the operations as they

 4    operated were not necessarily limited to BAMS.  And a lot of

 5    cases when the -- where the merchants were asking for

 6    attestations of compliance, AOCs, regarding PCI compliance, in

 7    many -- well, in most cases, actually BAMS was trying to give

 8    them First Data's AOC.  And the merchants were saying, well, we

 9    really would like to see yours.  So First Data then became

10    involved in some of these email chains.

11          And so in terms of discovery, we think it is relevant

12    to see how these pieces fit together.  And the defendants also,

13    as I pointed out, are not objecting to three -- 3b -- to 3b, as

14    in boy, the operational relationship.

15          And I think it is an arbitrary distinction, and it is

16    going to hinder the discovery and perhaps cause more confusion

17    than necessary if it is straitjacketed that we can't discuss

18    the legal positions as well.

19          We're not seeking any substitution.  We know the

20    Court is not going to do that.  But it was a joint venture, and

21    it was a joint venture that operated with all three parts

22    moving together.  And that is why we think it is appropriate to

23    discover that relationship.

24          MR. GALANEK:  Your Honor, may I briefly respond?

25          THE COURT:  Yes.

16

```
 1                MR. GALANEK:  Thank you.
 2           Obviously, Your Honor started out with, let's look at
 3      issue 2.  You were starting at exactly the right place.
 4           And I'm not really sure what Mr. Marx said since his
 5      -- or just said since his position specifically says it is
 6      respectfully submitted it is relevant and indeed necessary to
 7      identify the current entity, if any, that would be responsible
 8      for payment of any judgment in this matter and who is the
 9      actual -- or, who is the actual defendant.
10           You know, this is exactly the issue that the Court
11      has already addressed at least twice.  I know you dealt with it
12      a year ago April, so almost 14 months ago, with respect to
13      written discovery.
14           You also dealt with it again when plaintiff wished to
15      discuss a 25 -- or -- 25 -- Rule 25 substitution motion.  Both
16      times you have explained that you do not believe that it is
17      relevant to look at either things post-judgment or it is not
18      relevant to look inside the legal status of these other parties
19      who are not parties to this case.
20           Mr. Marx is correct.  We have no problem -- and we
21      have already said we will identify a witness -- again, it will
22      be Ms. Davis -- to talk about the operational differences
23      between First Data, Bank of America, and BAMS.
24           Basically, if you recall, Your Honor, this was a
25      joint venture.  It lasted for ten years.  It dissolved in 2020.
```

```
 1              A number of the issues we're going to talk about
 2    today is because of the timeline that we're dealing with.
 3              Mr. Slawin's employment was terminated in December of
 4    2017.  BAMS ceased to operate as the joint venture ceased in
 5    2020.  There are no employees of BAMS.  The two joint
 6    venturers, First Data and Bank of America, separated their
 7    interests at that point in time.
 8              First Data was ultimately sold to Fiserv.  And so
 9    Fiserv has been charged with the responsibility of winding up
10    legal disputes, litigation.  Their in-house legal department is
11    basically charged with handling that issue, as everyone winds
12    down the joint venture.
13              But, clearly, what is being asked for and is exactly
14    what the plaintiff says with respect to issue 2, topic 3a,
15    which is the joint venture setup and the legal relationships is
16    they are saying it is relevant for purposes of understanding
17    who the proper defendant is and who should pay the judgment,
18    which the Court has already addressed.
19              The Court has already said it is both untimely and
20    irrelevant.  And if it was irrelevant and untimely a year and a
21    half ago and six months ago, I don't believe that the passage
22    of time has it made it any more relevant at this point in time.
23              MR. MARX:  Your Honor, may I respond?
24              THE COURT:  Go ahead.
25              MR. MARX:  Yeah.  We are not looking for
```

1    post-judgment collection discovery.  We do think that it is

2    relevant to know who the defendant is.  As they pointed out in

3    our statement, Mr. Galanek's notice of appearance states that

4    he is appearing for BAMS, which is now known as JV Wind Down,

5    LLC.

6         So we do think certainly to understand who the

7    defendant is, is not post-judgment discovery to find out who

8    the defendant is.  We're not looking for anything further than

9    that.

10        But we think it is certainly the first part of any

11   discovery to find out who the defendant is and who is going to

12   be responsible for paying any judgment.

13        As far as the --

14        THE COURT:  Well, let's stop with that for a second.

15   Let's just stop with -- all right.

16        You want to know who the defendant is and who was

17   responsible -- and in turn that that entity is responsible for

18   payment of any judgment in the event there is a judgment in

19   favor of the plaintiff.

20        So what is the answer of who is the defendant?  Let

21   me ask Mr. Galanek there.  Is there actually a dispute as to

22   who the defendant is?

23        MR. GALANEK:  Your Honor, I don't think there ever

24   has been.  When this lawsuit was filed, BAMS was still -- you

25   know, my understanding is BAMS was still a legal entity.  If

1    you recall, we substituted in for original counsel.

2          And subsequently with the wind down, BAMS in the

3    wind-down mode is known as JV Wind Down, LLC.  So that is the

4    defendant.  There is no -- I don't think there has ever been a

5    dispute about that.

6          And certainly if there was, it probably should have

7    been raised at some point in the lat two and a half years of

8    discovery.

9          But no, there is no -- my understanding is like every

10   other wind down, that is also the entity -- if there is a

11   judgment, that will be the entity that pays a judgment.

12          There is just no reason to be doing discovery with

13   respect to First Data, Fiserv, B of A, when none of them are

14   actually listed as defendants, they have not been named as

15   defendants, and, in fact, none of them ever employed

16   Mr. Slawin.

17          THE COURT:  Mr. Marx --

18          MR. MARX:  Your Honor --

19          THE COURT:  -- why is that not a satisfactory answer?

20   I mean, because you can send them, of course, a request for

21   admission if you want that instead or in addition as a

22   supplemental matter.

23          Why will that -- why is that response not adequate

24   for you?

25          MR. MARX:  Well, because -- Your Honor, this is

```
1     Mr. Marx -- it doesn't answer the question as to whether BAMS
2     is the proper defendant.  BAMS was the proper defendant at some
3     point.  And then I hear that BAMS is no longer known as BAMS.
4     It is now JV Wind Down, which leads to the question of is BAMS
5     a proper defendant.
6              I think that is kind of the primary question, it
7     would seem to me.  And we have tried to find the answer to that
8     question.
9              And so we have raised this issue at an early stage,
10    and we did try to get some information about that, and it was
11    denied to us.
12             So -- but I think -- and we're not trying to suppress
13    their assets.  We're not looking for transfer of assets.  But I
14    think just to find out the identity of the defendant, which we
15    have tried to do up until now -- I think that is an appropriate
16    topic.
17             THE COURT:  Well, it is not that I think it is an
18    inappropriate topic.  I'm just not hearing from you why you
19    think Mr. Galanek's response, which as counsel for the
20    defendant he is -- I would view as binding, why do you -- why
21    do you view that as inadequate?  That is what I'm trying to
22    understand.
23             If you just don't think it is true, that is -- then
24    just tell me that you -- but I just don't understand -- you're
25    not explaining to me why you think it is inadequate.  He has
```

1    taken a position.  You may not like the position.  You may

2    think it is false.

3            But just -- you have to tell me what are the grounds

4    for saying it is -- you need to explore it further and you are

5    not -- you are really not telling me why, other than the fact

6    that it is something that requires investigation.

7            MR. MARX:  Your Honor, I don't know what is true or

8    not true.  It is not within my knowledge.

9            But if Mr. -- if defendants will stipulate that they

10   are now apparently known as JV Wind Down, LLC, then that would

11   resolve the matter.

12           MR. GALANEK:  Your Honor, I'll have to go back and

13   look.  I believe all of that has already been laid out in a

14   prior interrogatory response that was verified and provided in

15   this case a year and a half ago.

16           THE COURT:  All right.  Well, you go ahead and do

17   that.  And whatever you find, yea or nay or in between, provide

18   it also to the Court.  All right?

19           Go ahead and just --

20           MR. GALANEK:  That's fine.

21           THE COURT:  Go ahead and just file whatever it is

22   that you're representing is evidence of this.

23           And if you find that it is not really adequate, then

24   you should still go ahead and talk with opposing counsel about

25   what you are willing to stipulate to.

1          MR. GALANEK:  Of course.  That's -- Your Honor, we

2     don't have any desire to do anything, other than, honestly,

3     move this case forward at this point in time.  The parties that

4     are involved in the case are the parties that are ultimately

5     going to be responsible for trying the case and to pay any

6     judgment that would be rendered in the case, if any.

7          THE COURT:  All right.

8          MR. GALANEK:  But I'll be happy to look back at the

9     discovery responses, and we'll go back and again confirm with

10     in-house legal counsel.

11          And, again, I believe all of this also is set forth

12     in the SEC filings of Bank of America and First Data, which

13     were the public companies at the time.

14          THE COURT:  Then as to who was responsible for any

15     payment of any judgment in this matter, I realize defendant's

16     position is that it is premature and more appropriate for post

17     judgment.  I think this just goes back to yet again the wind

18     down.

19          So I think once you can clarify that, for instance,

20     if it -- or stipulate that it is JV Wind Down that would be

21     responsible, then -- and perhaps some other entity as well,

22     then we don't have to spend time having the 30(b)(6) witness

23     dealing with this.

24          Okay.  So that is the additional request as to that

25     item about responsibilities of payment of any judgment.

1          Next issue was Number 4a, a BAMS document retention

2     policy from January 1st, 2016, until the dissolution of BAMS as

3     it pertained to emails in 2017.

4          So I think that plaintiffs is going a little bit into

5     the weeds on this from my perspective.  But in general, is

6     there any reason why I shouldn't just simply order that the

7     30(b)(6) witness has to be prepared to speak to the document

8     retention policy for this period for emails, IMs, and instant

9     messages only?

10         MR. GALANEK:  Well, the instant messages, Your Honor,

11    there is no document retention policy.  It is transitory data.

12    So it was not saved.  It was literally 2017.  It was instant

13    messaging.

14         It was used for purposes of -- every witness who has

15    talked about instant messaging in this case, everyone that the

16    plaintiffs have asked, they said the same thing, which is this

17    was not something that was used for any substance.  No one

18    testified that they knew if it was retained or how it was

19    retained.

20         They all basically said, well, we would ask IT if

21    someone asked us if we could get something.  And the answer is

22    it wasn't retained.  It wasn't journaled.  It wasn't archived.

23    There is nothing there.

24         I mean, it is instant messaging.  It is transitory

25    data.  It is not saved.  It is not like email.  And every

1   witness also testified that that is how it was used.  It was

2   used for purposes of saying, can I have a quick call with you?

3   Can I grab lunch?

4            Not a single witness testified that IMs were used in

5   any way, shape, or form to discuss Mr. Slawin, Mr. Slawin's

6   claims, Mr. Slawin's termination or PCI noncompliance.  And

7   there are six witnesses who have been questioned about all of

8   these issues.

9            So, you know, with respect to IMs, there just --

10  there is nothing to testify about.

11           With respect to document retention, the primary

12  issue, Your Honor, is that there are no BAMS employees.  BAMS

13  had ceased to operate in 2020.

14           Every witness that we have made available, all of

15  which we have tracked down to make available at the request of

16  plaintiffs, none of them are BAMS employees.  They are all

17  scattered to the wind at this point.

18           BAMS -- none of them have worked for BAMS for the

19  last four years.  Many of them have been gone for seven years

20  since Mr. Slawin was gone.

21           So the question is:  We don't know that there is

22  anyone who can testify as to what BAMS' document retention

23  policy was in 2017 as to emails.

24           THE COURT:  Well, Mr. Marx, do you have any evidence

25  that there is information as to that available?

25

```
 1              MR. MARX:  Your Honor, we have, which we have given

 2    to Your Honor, deposition -- and copied the plaintiffs -- the

 3    defendant obviously.  Mr. Kendall testified that the IMs --

 4    this is on Mr. Kendall's deposition -- so we didn't number the

 5    pages of the excerpt.  But it is Page 134 of his deposition --

 6    in which he says that IMs --

 7              Question, did you use the IM feature while you were

 8    working at BAMS?

 9              Answer, yes.

10              Question, about how often?

11              Answer, daily.

12              Question, how many times a day?

13              Answer, many.  Ten.  One to ten.  1 to 50.  Different

14    every day.  But I would say daily, just like every other person

15    in the firm.

16              That is at 135.

17              And then at Page 136 of his deposition, Mr. Kendall:

18              Answer, to the best of my knowledge, all -- we were

19    expected to treat IM the same way we treat email, that it was

20    all viewable and recordable by the firm.  It wasn't -- it was a

21    company platform on a company computer that was monitored.

22              Now, with all due respect, we have deposition

23    testimony that would indicate that this was a very prevalent

24    form of communication that wasn't limited to just, hi, how are

25    you, let's go have lunch.  We have documents, Bates
```

 1   Number 8583, with the reaction made -- this is Exhibit 78.  We

 2   asked Ms. Collins about it at the deposition referring to

 3   pinging, which refers to an IM.

 4        We raised that issue with defendants on duty to

 5   confer with Ms. McPherson when she was still representing

 6   defendants.  And we were told, oh, it is not really an issue.

 7        So rather than go off, you know, and start making

 8   arguments without evidence, we waited for the depositions.  And

 9   we got deposition testimony from Mr. Kendall and from Mr. Ades

10   and Natasha Collins, all of which were given to Your Honor,

11   that this was a very prevalent form of communication.

12        Now, to the extent that the defendant's position is

13   they didn't -- you know, they don't have it any more, well,

14   first of all, they were on notice before BAMS was resolved that

15   this litigation was actually ongoing and they had a duty to

16   preserve whatever they had.

17        And I believe that we're entitled to get the

18   company's institutional memory, institutional resources to find

19   out what, if anything, happened to these things.  Were they put

20   on servers?  Where were these servers?  Was there a spoliation

21   issue?

22        We're not going to go off half-cocked, but I think we

23   are entitled to get evidence.

24        THE COURT:  Well --

25        MR. MARX:  And there is deposition testimony that

1    that is going on.

2        THE COURT:  All right.  Well, I'm not going to be

3    able to resolve this by phone.  I think that the 30(b)(6)

4    witness should make an appropriate investigation into this

5    question, and he will -- he or she will be subject to

6    cross-examination about it.  What did -- what did he or she do

7    to determine what the retention policy was in practice, and

8    what was the -- what was the policy and what was it for emails

9    and what was it for IMs at that period of time and the

10   immediate years thereafter?

11       I don't -- you know, I don't know that I can do much

12   beyond that.  But I do think it is appropriate for the 30(b)(6)

13   witness to be charged with the responsibility of being able to

14   address that topic based on his or her investigation and to be

15   able to testify to that on behalf of the defendant.

16       MR. GALANEK:  Your Honor, we'll endeavor to prepare a

17   witness.  Again, all the witness can do is make inquiries.

18       THE COURT:  That's right.

19       MR. GALANEK:  Unfortunately -- and unfortunately -- I

20   do need to say I would like for the Court to review what

21   Mr. Marx actually submitted.  There is nothing in any of the

22   deposition testimony that he just cited that, in fact, says

23   what he said.

24       In fact, each of those witnesses takes a position,

25   yeah, everybody used it, nobody used it for any import.  No one

said it was retained.  No one -- the witnesses he is talking
about, they were operational managers that had nothing to do
with IT.  And they all basically said, I don't know.  You would
have to ask IT.

But we're happy to try to prepare the witness.  She
will make the same inquiries that Mr. Underwood and I have
already made.  We will put her in touch with the same former
employees that we have already talked to.

And she will, I am certain, testify exactly as I just
represented the facts to the Court.

THE COURT:  Well, may well do so.  But at the same
time, she should obviously still independently conduct the
investigation.  She just can't repeat what you told her to.
But I know you're not going to do that.

MR. GALANEK:  Yeah.  No.  We're going to put her in
touch and let her interview these people.

My only point to the Court is I want the Court to
understand the limited expectation or -- limited expectations
that we have about the availability of data.

THE COURT:  All right.

MR. GALANEK:  We basically -- I'll be happy to
represent to the Court we spoke earlier this week to the person
who throughout BAMS' existence handled all the discovery for
the court.  And she is no longer with the company.  And the
individual from IT, who, if there was an ability to conduct an

```
 1    investigation or who would use instant messages in
 2    investigations on the HR front, what could be done and the
 3    limitations of those.  We will put her in touch with those same
 4    people.  There really is no one else we can put her in touch
 5    with.
 6              THE COURT:  All right.  Well, just sort of as a segue
 7    to the same issue on preservation of documents relevant to the
 8    litigation after BAMS' dissolution, which is issue Number 5,
 9    I'm just going to presume you're going to do -- we're going to
10    follow the same ruling in that connection.
11              MR. GALANEK:  That's right, Your Honor.
12              THE COURT:  Okay.  And as to the location of BAMS
13    documents after dissolution -- that is issue Number 7 -- is
14    that -- is that the same issue again?  I mean, there was no
15    place for any documents to be maintained, or did you already
16    identify that in your view?
17              MR. GALANEK:  No, Your Honor.  In my opinion, that is
18    a very different issue from the IM issue.  We can prepare a
19    witness on that.
20              I mean, what it comes down to is my understanding,
21    but we will have the witness do the investigation and ask the
22    question as to the extent that BAMS has documents that were
23    documents relevant to what was the business of the joint
24    venture partner, First Data -- those documents went to Fiserv
25    upon its acquisition of First Data, and they have been
```

1    maintained.

2        That is where all the discovery has come from in this

3    case.  But we'll have someone to address that.

4        You did however, Your Honor, skip issue Number 6 --

5        THE COURT:  Sorry.

6        MR. GALANEK:  -- which to your prior point about

7    getting into the weeds, all of a sudden there is a list of, I

8    believe, nine or ten different subpoints within issue Number 6

9    about specifics of who knew about what documents when, et

10   cetera, et cetera.

11       And I'll be honest, Your Honor, it is extremely late

12   in the game when a 30(b)(6) notice is served for the first time

13   on August the 15th, so 13 days before the close of discovery

14   after two and a half years of open discovery and after we asked

15   the plaintiff for the topics that they wished to depose a

16   witness on on August the 2nd.

17       And I believe that the other things that we are going

18   to make the witness available on, which is where did the

19   documents get shipped to upon the dissolution, tell us about IM

20   or document retention policies with respect to emails -- I

21   believe that those are sufficient without going into the weeds

22   of issue Number 6.

23       Which to your point earlier, it would not seem to be

24   an appropriate use of a 30(b)(6) witness and is clearly overly

25   burdensome when you look at the number of subtopics here that

1  presumably they are asking for a witness to be educated on

2  when, quite frankly, they can't be.

3          MR. UNDERWOOD:  Your Honor, this is Brian Underwood,

4  just to jump in.  And I think it is a minor correction of what

5  Mr. Galanek said.

6          The defendant requested the date -- requested the

7  30(b)(6) topics actually July 2nd, not --

8          MR. GALANEK:  I'm sorry.  Not August 2nd.  I'm sorry.

9  July 2nd.  Correct.

10          So basically six and a half weeks before we got them.

11  We got them 13 days before the close of the discovery period.

12          THE COURT:  All right.

13          MR. MARX:  Your Honor --

14          THE COURT:  Mr. Marx, before you start talking, let

15  me just ask you:  Could you, first of all, focus in terms of

16  issue Number 6, topic 4c, which of all, what you have listed

17  here, is really central to you.

18          MR. MARX:  Well, we can review it.

19          Topic 6 is follow-up to topic 5.  The first one, it

20  would seem to me, is the essential one.  What happened to BAMS

21  data storage systems after BAMS was dissolved?  Location,

22  identity, and contact information of any current custodian.

23  That is really what we're looking for.

24          THE COURT:  Okay.  All right.  So that is the core of

25  it.  And when you look, is there something else -- is there

```
1   something else so that we just sort of figure out what -- if
2   there is something else that is lingering, I would rather deal
3   with it now than later.
4           MR. MARX:  Well, we do have the subtopics.  I mean,
5   what is essential is the subtopics.  But certainly number 5,
6   text messages, which is kind of like, we believe, IMs.  We
7   don't know what things are called by different defendants.  We
8   call them sometimes text messages.  Sometimes they call them
9   IMs and emails.
10          So if we could -- so, for example, as I was telling
11  Your Honor, we -- well, so basically in response to Your
12  Honor's inquiries, what happened to the data storage systems,
13  that is the first thing.
14          And then go down to Number 5, text messages;
15  Number 6, the emails where they are and how they were stored.
16  That is the essential part of that topic.
17          THE COURT:  Okay.
18          MR. GALANEK:  Your Honor, I don't understand what the
19  relevance of any of that is.  And I don't --
20          COURT REPORTER:  Mr. Galanek, could I get you to
21  speak up?
22          I am struggling to hear both of you, honestly.
23          This is the court reporter.
24          MR. GALANEK:  I'm so sorry.
25          Your Honor, I am just -- I am at a loss to understand
```

1  at this point the relevance of those issues.  It has -- I mean,

2  this case deals with a retaliation claim.  Discovery closed on

3  the 28th.  These topics weren't served in a timely fashion if

4  there was going to be follow-up written discovery.  We were

5  served 13 days before the close of discovery.

6        So I don't -- and I apologize.  Like I said, I don't

7  mean to be obtuse.  I just don't understand the relevance of

8  this information to the underlying claims in the case.

9        THE COURT:  Well, it would seem like issue Number 6,

10 the first one that obviously plaintiff's counsel viewed as most

11 important, is still the same search for information.  And he is

12 not clear that any of -- where was their data system and the

13 information within it maintained, how was it maintained.

14       That seems to me a direct question.  I don't -- it

15 doesn't seem very complicated.

16       MR. GALANEK:  I agree.  I agree, Your Honor.

17       THE COURT:  Okay.  And the subparts as to the text

18 messages and emails are just the same thing again.  It is just

19 a subpart really of the general question.

20       So did you-all maintain the text messages and the

21 emails and in what format and, you know, what discs and did you

22 at some point no longer retain them or not or what measures did

23 you take, who was in charge of it.

24       That seems to me relevant and straightforward,

25 frankly.

34

 1          MR. GALANEK:  Your Honor, I guess my question is:

 2   None of this is limited to the case.  I mean, if the question

 3   was, what was done to retain data relevant to this case, I

 4   don't disagree with you.

 5          But this question isn't limited like that.  It is

 6   basically, well, tell us what you did with any text messages

 7   about anything anywhere anytime.  Tell us what you did with any

 8   email about anything at any time.  This is a joint venture that

 9   lasted for ten years.  Tell us about data systems that may or

10   may not have had anything to do with this case.

11          And I mean, I understand, you know, kind of where we

12   have been tracking with respect to kind of the very specific

13   question of what did you do to capture data that may be

14   relevant in this case.  That is a question that can be

15   answered.

16          The rest of this seems -- I just don't want to have

17   my client and more importantly a witness put in a position of

18   having to prepare for this broad spectrum of questions about

19   things that have nothing to do with information in any way

20   relevant to this case.

21          MR. MARX:  Your Honor, with due respect, I don't

22   think the defendant's counsel can state with certainty that we

23   won't be getting relevant information because we want to find

24   out what the data storage system was and what happened to it.

25          I don't think it is overly burdensome to answer that

1  simple question.  I'm not asking for 5000 more documents or any

2  more documents.  I'm just asking what happened to the data

3  storage system.

4          We were told just a few minutes ago that it is

5  impossible to get to the IMs any more.  Well, with all due

6  respect, I think we have a right to find out is there bona fide

7  to that assertion.  Maybe some expert will tell us, oh, they

8  are over here, which is, by the way, what the employees

9  thought.  They thought they were being maintained.

10          It may turn out that Mr. Galanek is right.  But I do

11  think we have a right to find out.

12          THE COURT:  Well, it is obviously a difficult

13  question to answer without having any idea how document

14  retention or data system retention was handled.  I mean, one

15  can easily imagine that there would be different retention

16  decisions for different databases within BAMS' operation.  But

17  I don't know that.

18          So I mean, I agree that you may not -- it may be

19  really silly to be looking at the entire system.  But we don't

20  really know how the -- how the whole retention was handled.  So

21  it may be that you get back to Mr. Marx or you get back to

22  Mr. Marx and the Court and say this is -- you know, I can

23  only -- this is the information.  I'm not trying to waste

24  anyone's time.

25          But most of us at this point have dealt with what

```
 1   happens with the retention of a system's data.  And sometimes
 2   it is very complex.  And sometimes it is not as complex.
 3           Some of it -- it would be only a small subset
 4   obviously that would be relevant to the plaintiff's claims.
 5   But the problem is he doesn't know how the data was retained --
 6   maintained.  So that is --
 7           MR. GALANEK:  I understand, Your Honor.  We will do
 8   our best.
 9           And, again, I don't mean to be obtuse.  But what I
10   just heard from Mr. Marx is we're not asking for any other
11   documents.  So if there is no question about any other
12   documents, I don't understand the relevance of an inquiry into
13   even the retention.
14           THE COURT:  Well, I agree.
15           MR. GALANEK:  But I understand.
16           THE COURT:  I mean, it may be if you have no
17   documents on something then, of course, that he thinks vital to
18   his claims, then that is -- I don't know what Mr. Marx was
19   saying.
20           I mean, we're not going to go on a search for this if
21   there is no hope that it is going to provide any relevant
22   documents.
23           So I think, Mr. Marx, is there some sort of data or
24   set of documents that you think that you have not received that
25   are relevant to your client's claims?
```

```
 1              MR. MARX:  The instant messages, the IMs.  I mean,
 2    that came out of nowhere.  It was in documents that defendants,
 3    by the way, did not produce until after the Court's first
 4    order.  We did not get that document until September of last
 5    year.
 6              That is when the first ping issue, the IM issue
 7    surfaced.  And we have been trying to get to the bottom of
 8    that.  We were told it was a nonissue, and then I have three
 9    witnesses in depositions tell us they used it all the time.
10              And so I do think we're entitled to find out where
11    all that information went.  It is a simple question, I think.
12              MR. GALANEK:  Your Honor, again, what we're talking
13    about is the instant messaging.  You have already ruled on
14    that.  And we will -- I have got no problem having a witness
15    prepared to the extent possible to discuss the fact -- and I
16    keep hearing Mr. Marx say we didn't get IMs.  They don't exist.
17    They never existed.  It is transitory data.  It is not saved.
18              But I understand that no one -- that I'm not
19    testifying.  And I understand we will need to be prepared.
20              But if what we're hearing is it is just IMs, why are
21    we looking for -- why are we spending the time talking about it
22    but why are -- why am I spending time preparing a witness to
23    deal with things other than the IMs?
24              That is really my only question.
25              THE COURT:  It is a very legitimate question because
```

I'm looking at the subprovisions of issue Number 6.  And, of
course, counsel is asking also for emails and any other
nonprivileged documents regarding or referring to Mr. Slawin's
lawsuit, et cetera.

So, Mr. Marx, you need just to take a look at what
you are saying here and tell us -- can you tell us now are you
actually looking for documents that you don't have or you think
that exist, other than the IMs, which --

MR. MARX:  Well, I don't know until I find out if
documents were destroyed or not.  I mean, I don't know the
answer to that question because I don't know what happened to
their documents, what happened to their data sources.

When defendants produce documents and say this is
what we have, it doesn't answer the question of whether there
is something else that was not preserved.

THE COURT:  All right.

MR. MARX:  So I did know about the text messages.  I
call them text messages.  Some people call them IMs.  We have
been told they are transitory.  That is not what the employees
thought.

But, look, if there are relevant emails out there, we
are entitled to them.  We were produced a certain number of
documents.  Most of them only asked for the Court's position on
discovery.  But I am not prepared to certify that there are no
more relevant documents out there.  That is what discovery is

```
 1   all about.
 2           THE COURT:  All right.  I'm just going through this
 3   so that we have a record so we don't dance around this any
 4   further.
 5           Number 1, you asked for was, within this issue
 6   Number 6, documents regarding or referring to former BAMS
 7   personnel.
 8           Is there a reason that you are looking for that?
 9   Because that is a very broad -- is there something specific
10   you're asking for?  Because that is so broad that I can't
11   imagine what -- how they would look for that.
12           MR. MARX:  All right.  With respect to Your
13   Honor's -- if you want to just go through the specifics,
14   Number 3, documents regarding referring to BAMS' PCI
15   noncompliance; four, documents referring to plaintiff's
16   termination; five, text messages; six, emails --
17           THE COURT:  Emails regarding plaintiff's termination?
18   I mean, because text messages are emails --
19                   (Unintelligible cross-talk)
20           MR. MARX:  -- regarding PCI noncompliance,
21   plaintiff's termination (unintelligible).  And that would be
22   it.
23           THE COURT:  All right.
24           Well, that is what it is then.  We'll see what they
25   can find, if anything.  But in any event, that is -- the topic
```

40

```
 1    is still clear, what happened to BAMS' data storage system

 2    after BAMS was dissolved, including location, identity, and

 3    contact information for current custodian, which they probably

 4    do have a custodian.  And then the topics that we just went

 5    over and the documents that might be identified.  All right.

 6            MR. GALANEK:  Your Honor, I just want to make sure I

 7    understand.  So on those topics, we're just supposed to be

 8    trying to identify where and how those things were stored or

 9    are we supposed to be doing something more than that?

10            Because we produced -- every custodian that was put

11    on a lit hold -- every custodians' email box was immediately

12    saved upon being put on a lit hold in early 2017 after the

13    client became aware of Mr. Slawin's SEC filing.  And those are

14    the email boxes that were searched.

15            But I'm assuming what you are asking us to do is

16    identify who is the custodian of those email boxes, not

17    identify what documents exist in every email box that was

18    preserved and has already been searched and produced.

19            I'm assuming just what has been kept and who kept it;

20    right?

21            THE COURT:  Well, when you're using the word box, I

22    want to make sure I understand what you are referring to.

23            MR. GALANEK:  Yes, ma'am.  I'm referring to, okay, a

24    couple of things.  One, the text messages and IM, completely

25    different things.  I don't know why Mr. Marx believes that they
```

 1    are the same.  They are completely different.

 2              Emails though, with respect to this case, when

 3    Mr. Slawin's claim was filed, you know, the internal process

 4    went into place, the documents were preserved, and a litigation

 5    hold went out.  And the email -- the inboxes or not just the

 6    inboxes but the entire email account with respect to each

 7    person who was identified as having something or anything to do

 8    with the claim that Mr. Slawin was making with respect to his

 9    termination or the retaliation, everything that was at the

10    beginning of this case before Your Honor dismissed certain

11    claims -- all of those custodians were identified.  Their email

12    boxes were retained.

13              And as searches have been done throughout this case

14    to respond to I believe we were up to 140 different document

15    requests from the plaintiffs -- each of those requests and

16    document searches were made against those email boxes.

17              With respect to text messages, text messages would

18    have been dealt with -- or, text messages, it is different.

19    Those are things that are on people's individual telephones.

20              And I don't believe that there has been any testimony

21    about anybody using text messages, et cetera.

22              The IM system, instant messaging, is exactly what it

23    is.  You, I, or anyone else pops up on your screen.

24    Mr. Underwood sends me a message, Mr. Galanek, can you meet

25    right now?  No.  You send it back.  That data is not preserved.

42

```
1   Again, that is a different issue.
2            So with respect to what we can -- you know, the way I
3   view this request and what I understand we're being asked to do
4   is to identify basically what happened with stuff.
5            Your question was what did I mean by email box.  It
6   is those custodial accounts.  It would be all of Judge
7   Totenberg's email account was preserved.  This is where it was
8   preserved.  This is how it was preserved.  This is who
9   preserved it for purposes of use in this litigation.
10           I'm assuming that is what we're being asked to do?
11           THE COURT:  Yes.
12           MR. GALANEK:  Okay.  Thank you, Your Honor.
13           MR. MARX:  And, Your Honor, this is Mr. Marx.  I
14  just -- I didn't create the idea of instant messaging or
15  pinging.  It came out from the documents.  It came out from the
16  defendant's deposition testimony.
17           And I do think Mr. Galanek's representation or
18  Mr. Galanek's understanding, you know -- nevertheless, there
19  may be somebody who knows about these IMs.  And I don't want to
20  be understood as agreeing that we're not talking about IMs to
21  the extent that we might find out what happened to them.
22           MR. GALANEK:  Again, Your Honor --
23           THE COURT:  Well, hopefully, this will indicate one
24  way or another did they preserve them.  You have asked about
25  preservation.  So either they are preserving them in some form
```

1    or something is being stored.

2         I mean, the same thing is really true as to documents

3    referring to BAMS' PCI noncompliance.  So either they have some

4    and find some that they -- and -- or, they don't, and you'll go

5    from there.

6         MR. GALANEK:  Okay.

7         THE COURT:  So we went back to 6, which I had skipped

8    by error.

9         So I think we're at issue Number 7; is that right?

10   Topic 4d?

11        MR. GALANEK:  I believe it is the same issue, Your

12   Honor.

13        THE COURT:  Okay.

14        MR. GALANEK:  It is just where a document is located.

15        THE COURT:  Okay.  I think that is correct.

16        Issue Number 8 was topic for BAMS' IM system.

17        MR. MARX:  Your Honor --

18        THE COURT:  Yes.

19        MR. MARX:  -- it is the same as -- yeah.  We could

20   actually go to Number 9.

21        THE COURT:  Okay.  Let's jump to Number 9 then, which

22   is topic 5, MSAs produced in this litigation, including

23   documents produced on or about October 19th, 2023, pursuant to

24   the Court's order.

25        What the defendant wants to do, as I understand it,

1    is adopt the testimony of David -- is it Ades or Ades?

2          MR. GALANEK:  It is Ades, Your Honor.

3          THE COURT:  Ades?

4          MR. GALANEK:  Yes, Your Honor.

5          THE COURT:  The defendant wants to adopt his

6    testimony on questions pertaining to the produced MSAs.

7          And do you have a problem with that, Mr. Marx?  Or --

8    and if so, what is the problem?

9          MR. MARX:  Well, Mr. Ades didn't negotiate or he was

10   not -- he himself stated that his knowledge was limited to only

11   certain business sections.  He did not sign or execute certain

12   of the MSAs, including the Disney MSA.

13         So I mean, he wasn't testifying as a 30(b)(6)

14   witness, and he was testifying to his personal knowledge, and

15   his personal knowledge does not cover the five MSAs that were

16   produced under the Court's order.

17         And now, they may -- the defendant may decide to

18   educate Mr. Ades or take another witness.  But we don't have

19   the corporation's testimony regarding particularly the Disney

20   MSA and other MSAs that were produced.  Mr. Ades was on some

21   but not all.

22         That is his testimony, and that is the excerpts that

23   we gave to Your Honor today.

24         MR. GALANEK:  Your Honor, if I may, here is the core

25   question.  There is no relevance to the MSAs.  The MSAs --

1  these are the merchant services agreements between BAMS and,

2  you know, certain merchants.  They say what they say.

3          I'm assuming that the position of plaintiff is they

4  want to say, well, these documents show that certain merchants

5  required a representation from BAMS as to PCI compliance.  And

6  they either do, or they don't.  The documents say that, or they

7  don't say that.

8          We have already said repeatedly we're willing to

9  stipulate to the authenticity of such documents.  But testimony

10 about the negotiation of a -- or, a merchant services agreement

11 between BAMS and a third party at some point in time before

12 2017 -- again, there is no one who we can present, there is no

13 relevance to that information as to the sole issue in this

14 case, which is whether or not Mr. Slawin was terminated in

15 retaliation for some concern that he had expressed.

16         And if the plaintiff's desire is to say, well,

17 clearly you had a concern, BAMS, because you had this

18 obligation to tell third parties that you were or were not PCI

19 compliant, it says that in the document itself.

20         There is no additional testimony that can be offered

21 by anyone of any value.  We're not trying to say that they

22 can't use those documents.  They can.

23         Mr. Ades ran the group.  He was basically the general

24 manager of that line of business.  He ran the group that

25 negotiated those documents, even if he didn't negotiate them

46

1    himself.

2            He is not an employee.  We had to track him down in

3    Canada.  He lives and works in Canada.  And we tracked him down

4    and made him available at their request.

5            So I don't understand the additional value of any

6    further testimony on this point because I think there is no

7    relevance.  Meaning it is an undue burden at this point in time

8    to make any further witness available.

9            Again, we're not contesting that the documents are

10   what they are or that they say what they are.  And we are more

11   than happy to allow Mr. Ades' testimony that he has already

12   given, when they had an opportunity to question him about the

13   MSA and about how they were handled within his group -- we

14   don't have any problem with saying that that should -- can be

15   adopted as the corporation testimony.  It can be binding on the

16   corporation.

17           MR. MARX:  Your Honor, this is Mr. Marx.

18           Mr. Ades testified that he was not aware of the legal

19   meaning of the MSAs, he was not aware of what it meant to be

20   whether or not they were PCI compliant or required to be.

21           And the heart of this case is not -- is not limited

22   to what -- MSAs but to the defendant's understanding of its

23   reputational damage and its consequences as it came out to the

24   merchants that BAMS was not PCI compliant.

25           And in some cases, they entered into these MSAs at a

1    time they knew they were not.  So BAMS' understanding of the

2    consequences of not complying with these MSAs and what the --

3    what was entailed not to be compliant -- PCI compliant in view

4    of the MSAs they entered into is at the heart of this case.

5         And David Ades did not testify to those issues.  He

6    testified that he negotiated some of these MSAs, not all of

7    them, particularly not the Disney MSA.  I'm not sure about the

8    Chevron.

9         So it is relevant to find out whether BAMS was

10   concerned as a corporate entity that it might come out to the

11   merchants that they were not PCI compliant and what kind of

12   economic or reputational damage that would ensue in

13   consideration of the MSAs.

14        And given the fact that Mr. Slawin had indicated his

15   disinclination to go along with this essentially coverup, that

16   that could have been a motivating factor, at least in part, of

17   his discharge.

18        I do think it is relevant, and I do think we're

19   entitled to find out what BAMS itself thought about these MSAs.

20   We have not received that testimony.

21        THE COURT:  Well, I'm not --

22        MR. GALANEK:  Your Honor --

23        THE COURT:  Yes.  I mean, it sounds like either

24   you've got to -- I mean, obviously Mr. Ades testified just to

25   some issues.  I don't know that -- he didn't testify as a

```
 1    corporate representative.  He didn't get explored -- his
 2    testimony wasn't explored in the same fashion.
 3            So either you've got to make Mr. Ades available for
 4    somewhat longer or somebody else who will take on that
 5    responsibility as being the corporate -- and that you already
 6    had somebody in mind, I assume, for this whole 30(b)(6).
 7            MR. GALANEK:  No, we don't.
 8            THE COURT:  All right.
 9            MR. GALANEK:  No, we have no one in mind.  There is
10    no one who can testify as to this issue beyond Mr. Ades, which
11    means his knowledge is what his knowledge is.
12            And Mr. Marx just conflated this with yet another
13    topic, which is this idea that somehow that BAMS, an entity
14    that no longer can exist, can testify as to what its mindset
15    would have been if it had known that it was not PCI compliant
16    in 2017 and that a witness can be prepared for that.
17            Mr. Marx also routinely leaves out the fact that BAMS
18    was sufficiently concerned with the issue of PCI compliance.
19    It self-identified this as an audit issue and assigned it to
20    his client, Mr. Slawin, to investigate.  Are we PCI compliant?
21    If we are not, what do we need to do to either become compliant
22    or make sure that our processes are changed so that we no
23    longer have to be compliant and what are the risks?
24            That was his client's role in his job and what he was
25    assigned to do in 2017 and what he did not do.
```

1              The idea that the corporation now, seven years later,

2    can somehow testify as to what a mindset would have been if

3    Mr. Slawin had done his job and reported back about any of

4    these issues is not -- it is not something that -- testimony

5    can't be offered on.  It just can't.  It is rank speculation as

6    to what would have been in the contemplation of the corporate

7    entity seven years ago on these issues.

8              MR. MARX:  Your Honor, the point about this case is

9    it wasn't just that BAMS self-identified the order issue and

10   had Mr. Slawin work on it.  He was told to keep it quiet, to

11   keep it confidential, to keep it from the merchants at the same

12   time that he was getting inquiries from the merchants, and he

13   was put right into the crosshairs.

14             To say that he didn't do his job is -- he was put in

15   an impossible situation.  When he tried to extricate himself

16   from it and defend himself, he got fired.

17             So the fact is we are entitled to find out what was

18   going on in BAMS, what they were seeking at the time.  This is

19   what 30(b)(6) testimony is about.

20             THE COURT:  At the time -- at the time of the

21   termination the plaintiff and beforehand, or what is the

22   time frame you're thinking about?

23             MR. MARX:  At the time -- yes, at the time that the

24   operative events occurred in 2017, Your Honor.

25             THE COURT:  Okay.  And you didn't ask those questions

```
1    when you took the testimony of Mr. Ades before?
2          MR. MARX:  He said he wasn't competent to answer
3    those questions.  He said, I signed some of them.  I didn't
4    sign all of them.  And he was just signing it as a business.
5    And he (unintelligible).
6          If he had been identified as a 30(b)(6), then he
7    could have testified to those issues.
8          THE COURT:  All right.
9          MR. MARX:  But Mr. Ades' personal awareness of the
10   reputational consequences -- now, Mr. Kendall and Mr. Solan
11   testified to what they understood to be the reputational
12   consequences of not complying with the MSAs.
13         Mr. Ades did not, and he stated he could not.
14         MR. UNDERWOOD:  Your Honor, this is Brian Underwood.
15   I also attended Mr. Ades' deposition.  Mr. Ades testified that
16   he had the ultimate authority as to whether any of these MSAs
17   got signed, that the employees who signed some of these MSAs,
18   even if he did not, did so at his instruction or agreement.
19         So this notion that Mr. Marx keeps saying, well,
20   because Mr. Ades did not sign the agreements means that he was
21   not the right person, I don't think that is what Mr. Ades'
22   testimony shows.
23         And as to Mr. Galanek's point earlier, ultimately the
24   corporation, which is dissolved, has no knowledge except as its
25   employees have knowledge.
```

1          If Mr. Ades doesn't recall anything beyond what he

2    already testified to, we're not entirely sure how we can

3    further prepare a witness to provide corporate knowledge that

4    the corporation no longer has.

5          MR. MARX:  Your Honor, Mr. Ades testified -- and I

6    asked him, would you have the ultimate authority to sign a MSA?

7    Is that correct?

8          Answer, that is correct.

9          Question, all right.  And was that true for all of

10   the MSAs that BAMS entered into while you were executive VP/GM?

11         Answer, only for the lines of business I was

12   responsible for, which leaves it open ended.

13         Even if they adopt that testimony, it doesn't give us

14   the answer to the other MSAs.  And he didn't sign all of them,

15   particularly not --

16                    **(Unintelligible cross-talk)**

17         MR. GALANEK:  Your Honor, I'm -- I am not sure what

18   other lines of businesses Mr. Marx deems would be relevant to

19   this case.

20         But in any event, he was testifying -- and more than

21   that, Your Honor, the Court limited the amount of MSAs that

22   would need to be produced by order.  We went through this

23   discussion last year.

24         So the five MSAs are the five MSAs.  That is what we

25   have.  That is what we're working with.

1          MS. MARX:  Well, Your Honor, this is Jeanie Marx.

2          Yes.  So Mr. Underwood is correct.  We're not talking

3     about a vast number of MSAs.  Mr. Ades also testified that he

4     was told to sign the MSAs on advice of his counsel.  So he

5     didn't really have a full understanding of the contents of the

6     MSAs.

7          And there is this kind of shell game back and forth

8     as to who was -- what was BAMS telling the merchants as to who

9     was required to be PCI compliant with an attempt to convey to

10    the merchants First Data's PCI compliance when merchants were

11    asking about and the MSAs seem to indicate that BAMS needed to

12    provide its own PCI attestations of compliance.

13         And, furthermore, some of the MSAs, in fact, were

14    signed in 2017 after BAMS knew about the non-PCI compliance

15    issue and while they did undertake a SIAI, self-identified

16    audit issue, every single witness -- every single witness

17    testified that they had no knowledge as to what the resolution

18    of that issue was under any fact.

19         The only documentation indicates that it was

20    continuing to be an issue without any resolution date or

21    resolution and nobody knew what it was.

22         MR. GALANEK:  And, Your Honor, Ali Davis has already

23    been identified as to a topic that we haven't objected to to

24    talk about the resolution of the SIAI.  That is one of the

25    topics that we have agreed to make Ms. Davis available on.

1   Ms. Davis owned the PCI issue.  That is why we are making her

2   available.  That is not --

3                    **(Unintelligible cross-talk)**

4            THE COURT:  And is she going to be speaking in a

5   corporate capacity --

6            MR. GALANEK:  Yes, ma'am.  Yes, ma'am.

7            THE COURT:  -- as a 30(b)(6)?

8            MR. GALANEK:  She's our 30(b)(6) witness.  Yes,

9   ma'am.

10           THE COURT:  All right.  Well, I'm going to leave it

11  this way.  Ms. Davis is going to be -- going to be made

12  available as a 30(b)(6).  If -- and I know the defendants want

13  to also additionally adopt the testimony of Mr. Ades as the

14  30(b)(6).

15           If though -- if Mr. -- Ms. Davis' testimony does not

16  satisfactorily address this, then we'll have another phone

17  conference and we'll figure out whether I need to authorize a

18  defined period of time for an additional deposition of Mr. Ades

19  in his corporate capacity.

20           MR. GALANEK:  I appreciate that, Your Honor.  But I

21  just want to make sure everybody understands Mr. Ades -- the

22  topic that we're talking about -- part of the problem is that

23  we're going through individual topics.  But plaintiff's counsel

24  wants to talk about all topics at once.

25           The topic that we're dealing with is the MSAs.  The

1    Court ordered -- after going through a lot of these same

2    arguments a year and a half ago, the Court basically said,

3    look, I'm not going to require MSAs -- I believe that whatever

4    they asked for -- MSAs of 41 different merchants.  You said no,

5    we're going to produce five.  And we're going to take a look at

6    the five and you can ask questions about the five.

7         The MSAs that were produced -- that is what Mr. Ades

8    was questioned about.  That is what his group controlled.  With

9    respect to MSAs -- those five MSAs, some of which he executed

10   himself, as Mr. Underwood said, others which he testified, if I

11   didn't execute them, the people who did, did so at my direction

12   and was part of my group.

13        Ms. Davis did not -- was not involved with the MSAs.

14   Ms. Davis was, in fact, involved because what has happened is

15   the MSA issue, which is just the MSA issue, during argument now

16   morphed into, well, it is because of PCI issues, et cetera --

17   Ms. Davis will be able to testify as to these were the PCI

18   issues.  This is what was handled in the self-identified audit.

19   This is how it was handled.  This is how it was resolved.

20        So they are, in fact, two different issues.  She

21   can't testify as to the meaning of the MSAs.  She wasn't part

22   of the group that signed or negotiated the MSAs.  Mr. Ades was.

23   Again, he headed that entire group.

24        And we are -- and I understand this is not anyone's

25   problem but mine that I have a client who ceased operations

1    four years ago.  But that is, in fact, the fact.  We had to

2    track down Mr. Ades, the absolute best witness to testify on

3    the MSAs, in Canada.

4         Mr. Marx said, well, if he had been identified as a

5    30(b)(6) -- and yes, if Mr. Marx and the plaintiff had actually

6    provided 30(b)(6) topics before all of those witnesses were

7    identified, we could have indicated of these witnesses, these

8    witnesses can handle topic X, Y, and Z.

9         But despite the fact that we asked for topics on

10   July 2nd, before most of these depositions were taken, no

11   topics were provided to us until August the 15th.

12        So we weren't able to designate under the 30(b)(6) at

13   the time of his deposition because no topics had been provided.

14        THE COURT:  Do you have a copy of the deposition?

15        MR. GALANEK:  Yes, Your Honor.  We can provide a

16   copy -- the full copy of the deposition.

17        THE COURT:  All right.  Just file a copy of the

18   deposition with the Court then and let me look at it.

19        MR. GALANEK:  We will, Your Honor.  Thank you, Your

20   Honor.

21        THE COURT:  Okay.  Let's just move on.

22        The plaintiff wants a witness who has knowledge about

23   the particulars of 62 categories of documents.  I don't know

24   how plaintiff -- this is as to Mr. and Mrs. Marx.  I don't

25   understand how you think you possibly would get through all of

```
1    that.
2              MR. MARX:  Well, first of all, if a witness is
3    prepared, they can get through all of that.  They can say, yes,
4    this is a complete email chain.  Yes, these pieces go together.
5    No, there are no missing parts of it.
6              The problem that I have -- if I'm the plaintiff has
7    is we are essentially given a data dump.  And, you know, we
8    spent time going through 9000 documents, which were produced
9    without respect to the numbers request.  And the Bates numbers
10   are literally all over the place.  We painstakingly tried to
11   put them together by matching, you know, dates and time issues
12   and one goes to the next.
13             But I have no guarantee that as we get to a trial
14   that the defendant won't say, oh, you know, something needs --
15   these really don't go together.
16             The witnesses that we depose, they would agree only
17   to whatever the name was on them, which is standard.  I don't
18   expect the --
19                   (Unintelligible cross-talk)
20             THE COURT:  All right.  Let me stop you for a second.
21   As I understood it, you wanted 62 categories of documents.
22             But so how many documents does that represent?
23             MR. MARX:  Well, the defendants -- I didn't count.
24   The defendants said it is 200 documents.
25             MR. GALANEK:  More than 200.
```

1          MR. MARX:  I'm sorry?

2          MR. GALANEK:  It is more than -- it is more than 200

3    documents, Your Honor.

4          And if you actually look at the notice of deposition

5    that is attached to the parties' joint statement of dispute,

6    you will see that the vast majority of those documents were

7    used as exhibits in depositions of witnesses who they deposed

8    who would have had knowledge of those documents.

9          With respect to --

10         MR. MARX:  They had knowledge --

11              **(Unintelligible cross-talk)**

12         MR. GALANEK:  I take offense to the suggestion that

13   there was a data dump.  The documents were produced.  We're

14   dealing with electronic data.  The electronic data was produced

15   based upon searches in the exact fashion in which it is kept on

16   the system.

17         There had been a number of document productions in

18   this case.  And interestingly enough, on at least one and we

19   believe two different occasions, after we produced documents

20   that the other side had requested and they alerted the Court

21   that they needed additional time to review, they never

22   downloaded the documents.

23         And, in fact, we know at least in one situation that

24   was the case because we get receipts of when something is

25   downloaded.  And months later, they came back to say, oh, we

58

1    need that set of documents again.

2         So the fact that -- there is no defendant data dump.

3    We have produced the documents in the manner in which they were

4    kept.  It is electronic data.  We all know what that means is

5    you may have a number of different email strings.

6         We have already told plaintiff's counsel we will not

7    object to the authenticity of any document that we produced.

8    If your concerns are authenticity, we have already said we will

9    not object, we will stipulate as to the authenticity of each

10   and every document.  If it came out of our system, our

11   production, it is an authentic document.

12        To the extent that they already have deposed each of

13   these witnesses -- again, if you look at the attachment -- the

14   30(b)(6) notice, they basically list we want a witness to talk

15   about Exhibits 3, 4, 5, 12, 18 from Joe Moll's deposition.

16        Well, some of those documents Joe Moll was asked,

17   hey, seven years ago, what did you -- why did you put this

18   document together?  And Joe Moll said, I don't know.  There

19   is -- if there was a document that Joe Moll put together seven

20   years ago -- and I don't blame him for saying I don't know -- I

21   don't have a way to prepare a witness to testify as to Joe

22   Moll's knowledge of what Joe Moll -- why he put it together

23   when he doesn't even know that.

24        But it is just -- it is not an appropriate way to

25   handle a 30(b)(6).  And, in fact, the way the depositions were

```
 1  handled here, if we had the topics in advance of any of the
 2  depositions, we could have averted a lot of these issues.  But
 3  we didn't.  So we're all addressing these now.
 4          But the idea that we would prepare a witness on 200
 5  individual documents to testify as to what they mean and how
 6  they mean, it simply is --
 7              (Unintelligible cross-talk)
 8          THE COURT:  Plaintiff's counsel, you're going to have
 9  to narrow this down.  If you -- you can always -- if you think
10  that there is something that is not authentic, that is
11  something else.
12          But this is -- no witness can be prepared to be able
13  to do that.  So either you've got to focus in on a select
14  number of documents that you give them -- you identify in
15  advance so that they can prepare them that are really relevant
16  for you, or it is just not really helpful.
17          MR. MARX:  Okay.  Your Honor, we can -- we can narrow
18  it down.
19          THE COURT:  Okay.
20          MR. MARX:  We'll get back to Mr. Galanek about that.
21              (There was a brief pause in the proceedings.)
22          THE COURT:  All right.  The next one was topic 7b,
23  BAMS' understanding of the legal, economic, and reputational
24  consequences of PCI noncompliance.
25          I don't know that you can get a lay witness to be
```

1    discussing the legal consequences.  So we will put that aside.

2            For the witness to be prepared to address the

3    economic, management, or reputational consequences, that is

4    something different.  That would seem to be something that

5    defense counsel should be able to prepare the witness on.

6            Does that help to sort of narrow it for everyone?

7            MR. GALANEK:  Your Honor, we'll do our best.  We'll

8    try to have Ms. Davis prepared.

9            Again, when we're talking about a point in time seven

10   years ago, I'm not sure exactly how that can be done.  As

11   Mr. Marx said, there have already been witnesses who have

12   testified and there are documents that have been produced that

13   acknowledge that there are potential reputational consequences.

14           I don't know how we can quantify seven years after

15   the fact economic consequences for something that didn't exist.

16           THE COURT:  Well, that is -- if you don't think there

17   were economic consequences, then that is something else -- if

18   the witness doesn't.

19           MR. GALANEK:  We don't -- we don't -- yes.  There

20   were no economic consequences.  Nothing ever happened.  And so

21   the idea that there would have been, should have been, could

22   have been, it is purely speculating what might have happened

23   under a different set of circumstances.

24           THE COURT:  Topic 7 -- so I think -- anyway, I still

25   think you need to have somebody responsible for addressing that

1      at least.

2              MR. GALANEK:  Yes, Your Honor.

3              THE COURT:  At least the best you can.  Because it is

4      still different as a 30(b)(6) witness than just the other

5      witnesses, even if they sometimes wear two different hats.

6              The next one was inquiries from -- topic 7c,

7      inquiries from merchants in 2017 regarding PCI compliance.

8              Is there documentation that reflects this so that it

9      would be easier for a witness to be prepared?

10             MR. GALANEK:  Your Honor, this is another one that

11     you actually addressed a year and a half ago where you

12     basically said I'm going to require the production of a limited

13     number of inquiries.  You, plaintiffs, can choose 20 merchants.

14     And if there have been inquiries made, produce those documents.

15             Those are the questionnaires, if you recall, Your

16     Honor.  In fact, of the 20 that were designated, only a handful

17     had ever made such inquiries.  We produced those documents.

18             But, again, we questioned the relevance of it.  I

19     mean, the documents are what they are.  There are requests that

20     are being made.

21             Again, we're not -- we can't challenge -- we're not

22     going to challenge the authenticity of the requests that are

23     being made.

24             So I'm not really sure what a witness is to testify

25     to except that, yeah, we got these inquiries.

```
1              THE COURT:  Well, I guess it would be the response to
2      the inquiries -- any actions taken in response to the
3      inquiries.
4              MR. GALANEK:  I understand, Your Honor.  Again, I
5      don't -- I don't understand the relevance of that to the
6      underlying claims in the case or the materiality.  I understand
7      it is not a question of relevance.  Discovery is very broad.
8              But it would not seem to be material to a claim or
9      defense what response was given or not given.  If an inquiry
10     was made, an inquiry asks or it doesn't ask.
11             THE COURT:  Mr. Marx, do you want to identify what
12     you think is the relevance of the response to that in terms
13     of --
14             MS. MARX:  Yes.  Actually, this is Jeanie Marx.
15             So in answer to the question you first asked, are
16     there documents from which a witness could testify, the answer
17     to that is yes, there are documents.  So, for example, there
18     were inquiries that went for many months, for example, from the
19     merchant Verisign and the whole back-and-forth about what
20     information BAMS should be giving to Verisign and then Ross and
21     L brand and certain other of the merchants.
22             And, in fact, some of those -- some of the documents
23     expressly discuss that if the -- if responses are not provided,
24     a lot is riding on it, including getting the business from the
25     merchant.
```

63

```
 1              So it goes to a reasonable belief that Mr. Slawin was
 2     essentially told to withhold information.  He was doing the
 3     best he could.  He told -- he -- at Mr. Kendall's deposition
 4     when Mr. Kendall was asked, in fact, whether Slawin raised to
 5     him his concern about what merchants were being told, Kendall
 6     testified that he couldn't remember and that he couldn't -- he
 7     was asked if Slawin testified that he told you, he admitted
 8     that he couldn't deny that fact.
 9              So we think this is very relevant because under SOX,
10     for example, the burden of proof is a contributing factor
11     standard.  So Mr. Slawin has to show that his protected
12     activity was a contributing factor.  At which point, the burden
13     of proof shifts to the defendant to prove that it would have
14     fired him irrespective of his protected activity.
15              So BAMS' concerns about what it was telling merchants
16     and whether or not they would find out if BAMS was PCI
17     compliant and, in fact, not PCI compliant is very essential to
18     the motivation to why they fired him when he refused to
19     destroy --
20                    (Unintelligible cross-talk)
21              THE COURT:  I do understand that.  I guess the
22     question I have at this juncture though is, is your intent then
23     to examine the corporate witness about -- further about these
24     inquiries from merchants and whatever follow-up there was or no
25     follow-up?  Is that your intention?
```

64

```
 1            MS. MARX:  Yes.  Yes.  And there is a limited group
 2    of documents that there are on these issues.
 3            THE COURT:  That's fine.  All right.  You can
 4    proceed -- you can do that.
 5            Let's move on to topic e.
 6            MR. GALANEK:  Your Honor, could we just -- can we
 7    ask -- if there is a limited number of documents to allow or
 8    facilitate the preparation of the witnesses, can those
 9    documents be provided --
10            THE COURT:  Sure.
11            MR. GALANEK:  -- if they know what documents they
12    want to talk to the witness about so I can properly prepare the
13    witness?
14            Since the witness will not have created the
15    documents, will not have responded to the documents, the only
16    way I can adequately prepare the witness is to know what the
17    documents are they wish to ask questions about.
18            MR. MARX:  Your Honor, yeah, we can do that.  It is
19    in our list that -- those documents.
20            But certainly we can produce it, sure.
21            THE COURT:  Okay.  All right.  Why don't you provide
22    a list.  And it sounds like -- I mean, if there were 200
23    documents, that is not -- I mean, simply check off the ones
24    that you're planning to ask about or potentially planning to --
25    reasonably planning to so that counsel can go ahead and pull
```

```
 1    them and share them with the witness.

 2              MR. MARX:  Okay.

 3              THE COURT:  I think that is the fastest way of doing

 4    it.

 5              I mean, do you have a document list of the 200

 6    approximately?

 7              MR. GALANEK:  Your Honor, I think they are saying

 8    that there is a subset of documents dealing with those

 9    customers.

10              THE COURT:  Yeah, I understand that.

11              Just provide the subset that you intend to -- that

12    you think yourselves are relevant and/or arguably relevant and

13    provide the listing.

14              I just don't know that you want to have to go copy

15    all of them.  If you have them all together, go ahead.  Just

16    copy them.  That could be the simplest.

17              I'm not going to micromanage what is the easiest for

18    you to do.

19              MR. MARX:  Okay.

20              THE COURT:  Topic 7e, notices, communications.  This

21    is more of the same as the 7c.  One is inquiries from

22    merchants, and the other one is the communications to

23    merchants.

24              Okay.  So this is sort of the same issue?

25              MR. MARX:  It is the same.
```

```
1              THE COURT:  So we'll treat them all as one.

2              And topic 9 was BAMS' answers to some interrogatories

3    and requests for production -- well, to the extent that the

4    answers are ones based on the documentary record or facts, I

5    think that is appropriate to the extent that the responses are

6    legal statements or legal positions.  I would not expect the

7    30(b)(6) witness to be in the position to respond to those.

8              MR. GALANEK:  Your Honor, I'm assuming there is not a

9    requirement that the 30(b)(6) witness talk in any way, shape,

10   or form about the responses to 139 different requests for

11   production that were served in the case.  I'm presuming you are

12   limiting your order to interrogatory responses.

13                   (Unintelligible cross-talk)

14             MR. MARX:  Your Honor, this is Mr. Marx.

15             Yeah.  I am sorry.  We're only talking about the

16   interrogatories.

17             THE COURT:  Topic 9, BAMS' answers for the

18   interrogatories and the requests for production.

19             MR. MARX:  Yes, Your Honor.  But we can limit that to

20   the responses to the interrogatories.  As we stated,

21   Ms. Collins -- well, she testified that she signed the

22   interrogatory responses -- one of them.  There were two

23   separate ones.  One is Ms. Davis.

24             But Ms. Collins said she didn't know that they were

25   true and correct.  She assumed they were because they were
```

1    prepared by someone else.  We just want to button down the

2    corporate response either way.

3              THE COURT:  Okay.

4              MR. GALANEK:  Your Honor, with respect to what

5    Ms. Collins said, they were verified.  That is the corporate

6    response.  Her testimony was actually -- since that response

7    was in 2021, she basically said, I don't recall if I prepared

8    them or reviewed them after they were prepared, but I signed

9    them.  When she was asked are they correct, she said because,

10   well, I signed them, so at the time they must have been.  That

11   was her response.

12             That is -- they are verified, and that is the

13   corporate response to those interrogatories.

14             And Ms. Davis responded or verified the second set,

15   and she is going to be the witness who is testifying on the

16   other 30(b)(6) topics or what we discussed -- at least the ones

17   that we're not objecting to or the witness may have to discuss

18   the other things that you have ordered today.

19             So we don't know -- we don't understand why it would

20   be necessary for Ms. Collins to come in again and say, yes,

21   that is my signature, and, yes, I am -- I agree this is the

22   corporate position.  I'm telling you this is the corporate

23   position.  That is the corporate responses.  They are verified

24   by the witness, and I think we're bound by them.

25             THE COURT:  All right.  I think that should be

```
 1    satisfactory.  If counsel is saying --
 2            MR. MARX:  Yeah.
 3            THE COURT:  -- they feel the company is bound by
 4    them, that is sufficient.
 5            MR. MARX:  Okay.  We can accept that, Your Honor.
 6            THE COURT:  All right.  I know that there was a
 7    supplemental submission.  But I am not prepared to address that
 8    now.  I'm going to take -- I think, but I'm going to take a
 9    quick look and see if there is anything I can quickly deal
10    with.  And if not, then we'll reschedule.
11            So just we're going to get off the phone for five
12    minutes and just put you on hold and get back to you shortly.
13            MR. MARX:  All right.
14                  (A brief break was taken at 5:01 PM.)
15            COURTROOM DEPUTY CLERK:  This is Keri from Judge
16    Totenberg's, and we are ready to get started again.
17            Is everybody still with us?
18            MR. GALANEK:  Yes.
19            MR. MARX:  Yes, we are here.
20            COURTROOM DEPUTY CLERK:  Perfect.
21            THE COURT:  Great.  Okay.  If I had gotten to the
22    bottom line here when I looked at it before, I would have been
23    able to move this quicker when we were last on just a few
24    minutes ago.
25            So it seems to me -- my experience when we've got
```

```
1   these sorts of disputes, the easiest thing is for me to simply
2   just do the in camera review.  And that is -- and I don't think
3   we can -- I could, in fact, be able to make a ruling without
4   that at this juncture.  And I don't think it would be fruitful
5   for us to be having argument about it either when some of it is
6   redacted.
7            So let's just -- if counsel for the defendant would
8   provide the Court with an in camera -- just in camera group of
9   the documents with a highlight of whatever you are claiming
10  privilege on or if it is the whole document and if you could
11  indicate what the -- is this all attorney-client or are there
12  different -- or work product, or what -- are there other sorts
13  of privileges being asserted?
14           MR. UNDERWOOD:  Yes, Your Honor.  It is all
15  attorney-client except for one redaction, which was made
16  pursuant to a prior email order from the Court permitting the
17  redaction of certain requested information.
18           But to Your Honor's point, I'm happy to provide
19  copies of those in camera and provide the highlights so the
20  Court knows what is redacted.
21           THE COURT:  Okay.  All right.  Well, let's just
22  proceed in that fashion.
23           And can you get them to us by the end of the week?
24           MR. UNDERWOOD:  By the end of the week should be
25  fine.  We can do that.
```

```
 1                THE COURT:  All right.  Very good.

 2                All right.  Well, I think that we have a road forward

 3      and you know how to find me if it turns out to fall apart.

 4                Thank you very much.

 5                MR. MARX:  Your Honor, this is Mr. Marx.  I just want

 6      to confirm when we were talking about issue 10, topic 6, which

 7      is the documents of defendant's position that they will

 8      stipulate to the authenticity to documents they produced.

 9                THE COURT:  I'm sorry.  Are you talking about

10      topic -- I'm just looking at my chart.

11                MR. MARX:  It is issue Number 10, topic 6.  This is

12      all the documents.  And I believe the defendant's counsel said

13      they would stipulate to the authenticity of documents that they

14      produced.  And I just wanted to kind of confirm that on the

15      record.

16                MR. GALANEK:  Yes, Your Honor.  I think I already

17      said it on the record.

18                MR. MARX:  Okay.

19                MR. GALANEK:  I'm not sure about confirming it, but

20      we said it.  And we have made that representation numerous

21      times to plaintiff's counsel.  And we have said it on the

22      record numerous times today.

23                MS. MARX:  And, Your Honor, just one more thing.

24      This is Jeanie Marx.

25                With respect to the defendant's production for your
```

1    in camera review, I would ask if the defendants can produce the

2    entire email chain.  Because our position, as you read, is that

3    any advice or any copying of an attorney was part of a

4    business -- the business consideration of how to respond to --

5    how to respond to merchants.

6            So just so that we have it in context, I would just

7    ask that the defendants produce the entire email chain.

8            MR. UNDERWOOD:  Your Honor, we will produce the

9    documents exactly as they were produced to the plaintiffs just

10   without the redactions.  I will produce whatever is context and

11   then the document necessary for understanding it.

12           THE COURT:  All right.  All right.  Thank you very

13   much.

14           MS. MARX:  Thank you, Your Honor.

15           THE COURT:  All right.

16           MR. MARX:  Thank you, Your Honor.

17           THE COURT:  All right.  We're adjourned then.

18   Bye-bye.

19                **(The proceedings were thereby concluded at 5:10**

20                **PM.)**

21

22

23

24

25

```
 1                  C E R T I F I C A T E

 2

 3    UNITED STATES OF AMERICA

 4    NORTHERN DISTRICT OF GEORGIA

 5

 6         I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7    the United States District Court, for the Northern District of

 8    Georgia, Atlanta Division, do hereby certify that the foregoing

 9    71 pages constitute a true transcript of proceedings had before

10    the said Court, held in the City of Atlanta, Georgia, in the

11    matter therein stated.

12         In testimony whereof, I hereunto set my hand on this, the

13    12th day of September, 2024.

14

15

16    _____
             SHANNON R. WELCH, RMR, CRR
17           OFFICIAL COURT REPORTER
             UNITED STATES DISTRICT COURT
18

19

20

21

22

23

24

25
```

**COURT REPORTER: [1]** 32/20
**COURTROOM DEPUTY CLERK: [3]** 3/3 68/15 68/20
**MR. GALANEK: [68]** 3/15 5/16 7/2 9/21 9/25 11/3 11/20 12/4 12/7 15/24 16/1 18/23 21/12 21/20 22/1 22/8 23/10 27/16 27/19 28/15 28/21 29/11 29/17 30/6 31/8 32/18 32/24 33/16 34/1 36/7 36/15 37/12 40/6 40/23 42/12 42/22 43/6 43/11 43/14 44/2 44/4 44/24 47/22 48/7 48/9 51/17 52/22 53/6 53/8 53/20 55/15 55/19 56/25 57/2 57/12 60/7 60/19 61/2 61/10 62/4 64/6 64/11 65/7 66/8 67/4 68/18 70/16 70/19
**MR. MARX: [53]** 4/21 5/12 7/19 9/2 12/20 13/11 13/21 17/23 17/25 19/18 19/25 21/7 25/1 26/25 31/13 31/18 32/4 34/21 37/1 38/9 38/17 39/12 39/20 42/13 43/17 43/19 44/9 46/17 49/8 49/23 50/2 50/9 51/5 56/2 56/23 57/1 57/10 59/17 59/20 64/18 65/2 65/19 65/25 66/14 66/19 68/2 68/5 68/13 68/19 70/5 70/11 70/18 71/16
**MR. UNDERWOOD: [5]** 31/3 50/14 69/14 69/24 71/8
**MS. MARX: [5]** 52/1 62/14 64/1 70/23 71/14
**THE COURT: [98]**

**-**
**-- as [1]** 53/7
**-- if [1]** 64/11
**-- which [1]** 30/6

**1**
**10 [2]** 70/6 70/11
**12 [1]** 58/15
**12th [1]** 72/13
**13 [3]** 30/13 31/11 33/5
**134 [1]** 25/5
**135 [1]** 25/9
**136 [1]** 25/17
**1383 [1]** 1/22
**139 [1]** 66/10
**14 [1]** 16/12
**140 [1]** 41/14
**15th [2]** 30/13 55/11
**18 [1]** 58/15
**19th [1]** 43/23
**1:19-CV-4129 [1]** 1/5
**1st [1]** 23/2

**2**
**20 [2]** 61/13 61/16
**200 [6]** 56/24 56/25 57/2 59/4 64/22 65/5
**2016 [1]** 23/2
**2017 [11]** 17/4 23/3 23/12 24/23 40/12 45/12 48/16 48/25 49/24 52/14 61/7
**2020 [3]** 16/25 17/5 24/13
**2021 [1]** 67/7
**2023 [1]** 43/23
**2024 [3]** 1/13 3/2 72/13
**215-1383 [1]** 1/22
**2394 [1]** 1/21
**23rd [3]** 3/25 4/6 5/24
**24th [3]** 3/25 4/6 5/24
**25 [4]** 13/18 16/15 16/19 16/15
**26th [1]** 6/15
**28th [1]** 33/3
**2nd [5]** 30/16 31/7 31/8 31/9 55/10

**3**
**30 [27]** 3/21 4/16 8/5 22/22 23/7 27/3 27/12 30/12 30/24 31/7 44/13 48/6 50/7 50/6 53/7 53/8 53/12 53/14 55/5 55/6 55/12 58/14 58/25 61/4 66/7 66/9 67/16
**30303 [1]** 1/22
**3:17 [1]** 1/14
**3A [2]** 13/2 17/14
**3b [3]** 14/5 15/13 15/13

**4**
**404 [1]** 1/22
**41 [1]** 54/4
**4129 [2]** 1/5 3/5
**4a [1]** 23/1
**4c [1]** 31/16
**4d [1]** 43/10

**5**
**50 [1]** 25/13
**5000 [1]** 35/1
**5:01 [1]** 68/14
**5:10 [1]** 71/19

**6**
**62 [2]** 55/23 56/21

**7**
**71 [1]** 72/9
**75 [1]** 1/21
**78 [1]** 26/1
**7b [1]** 59/22
**7c [2]** 61/6 65/21
**7e [1]** 65/20

**8**
**8583 [1]** 26/1
**8th [1]** 4/16

**9**
**90 [1]** 1/4
**9000 [1]** 56/8

**A**
**ABC [1]** 9/17
**ability [1]** 28/25
**able [12]** 6/4 12/11 12/13 27/3 27/13 27/15 54/17 55/12 59/12 60/5 68/23 69/3
**about [81]**
**absent [1]** 4/17
**absolute [1]** 55/2
**absorb [1]** 6/14
**accept [1]** 68/5
**account [2]** 41/6 42/7
**accounts [1]** 42/6
**acknowledge [1]** 60/13
**acquisition [1]** 29/25
**actions [1]** 62/2
**activity [1]** 63/12 63/14
**actors [1]** 14/25
**actual [3]** 8/16 16/9 16/9
**actually [17]** 4/24 7/18 8/20 8/24 15/7

**1**
**8/2 9/4** 26/15 27/21 31/7 38/7 43/20 55/5 57/4 61/11 62/14 67/6
**add [1]** 13/16
**addition [1]** 19/21
**additional [7]** 4/9 6/1 22/24 45/20 46/5 53/18 57/21
**additionally [2]** 10/25 53/13
**address [5]** 27/14 30/3 53/16 60/2 68/7
**addressed [3]** 16/11 17/18 61/11
**addressing [1]** 59/3 60/25
**adequate [2]** 19/23 21/23
**adequately [1]** 64/16
**Ades [27]** 26/9 44/1 44/1 44/2 44/3 44/9 44/18 44/20 45/23 46/18 47/5 47/24 48/3 48/10 50/1 50/13 50/15 50/20 51/1 51/5 52/3 53/13 53/18 53/21 54/7 54/22 55/2
**Ades' [4]** 46/11 50/9 50/15 50/21
**adjourned [1]** 71/17
**admission [1]** 19/21
**admitted [1]** 63/7
**adopt [4]** 44/1 44/5 51/13 53/13
**adopted [1]** 46/15
**advance [2]** 59/1 59/15
**advice [2]** 52/4 71/3
**affirmative [4]** 6/19 6/20 8/2 11/21
**after [15]** 1/6 10/9 29/8 29/13 30/14 30/14 31/21 37/3 40/2 40/12 52/14 54/1 57/19 60/14 67/8
**afternoon [1]** 3/8
**again [30]** 3/3 6/24 7/1 12/10 13/13 13/21 14/23 16/14 16/21 22/9 22/11 22/17 27/17 29/14 33/18 36/9 37/12 42/1 42/22 45/12 46/9 54/23 58/1 58/13 60/9 61/18 61/21 62/4 67/20 68/16
**against [1]** 41/16
**ago [15]** 3/20 16/12 16/12 17/21 17/21 21/15 35/4 49/7 54/2 55/1 58/17 58/20 60/10 61/11 68/24
**agree [9]** 4/23 5/6 5/9 33/16 33/16 35/18 36/14 56/16 67/21
**agreed [2]** 5/2 52/25
**agreeing [1]** 42/20
**agreement [2]** 45/10 50/18
**agreements [2]** 45/1 50/20
**ahead [8]** 6/25 17/24 21/16 21/19 21/21 21/24 64/25 65/15
**AIDED [1]** 1/18
**alerted [1]** 57/20
**Ali [3]** 3/19 11/23 52/22
**all [90]**
**allege [1]** 9/6
**alleged [1]** 7/22
**allow [2]** 46/11 64/7
**allowed [1]** 6/7
**almost [1]** 16/12
**along [1]** 47/15
**already [21]** 12/24 16/11 16/21 17/18 17/19 21/13 28/7 28/8 29/15 37/13 40/18 45/8 46/11 48/5 51/2 52/22 58/6 58/8 58/12 60/11 70/16
**also [12]** 6/8 15/12 16/14 19/10 21/18 22/11 24/1 38/2 48/17 50/15 52/3 53/13
**always [1]** 59/9
**am [11]** 3/10 28/9 32/22 32/25 32/25 37/22 38/24 51/17 66/15 67/21 68/7
**AMERICA [9]** 1/6 1/7 3/5 10/20 14/2 16/23 17/6 22/12 72/3

## A

among [2]  13/4 14/5
amount [1]  51/21
AMY [1]  1/11
another [5]  42/24 44/18 48/12 53/16 61/10
answer [20]  10/2 18/20 19/19 20/1 20/7 23/21 25/9 25/11 25/13 25/18 34/25 35/13 38/11 38/14 50/2 51/8 51/11 51/14 62/15 62/16
answered [1]  34/15
answers [3]  66/2 66/4 66/17
any [66]  1/8 4/18 7/24 8/7 8/16 8/20 9/6 9/14 10/12 10/18 11/18 11/21 14/18 15/19 16/7 16/8 17/22 18/10 18/12 18/18 22/2 22/5 22/6 22/14 22/15 22/25 23/6 23/17 24/5 24/24 26/13 27/21 27/25 29/15 31/22 32/19 33/12 34/6 34/7 34/8 34/19 35/1 35/5 35/13 36/10 36/11 36/21 38/2 39/3 39/25 41/20 45/21 46/5 46/8 46/14 49/3 50/16 51/20 52/18 52/20 58/7 59/1 62/2 66/9 71/3 71/3
anybody [1]  41/21
anyone [3]  24/21 41/23 45/21
anyone's [2]  35/24 54/24
anything [13]  8/18 10/2 14/10 18/8 22/2 26/19 34/7 34/8 34/10 39/25 41/7 51/1 68/9
anytime [1]  34/7
anyway [1]  60/24
anywhere [1]  34/7
AOC [1]  15/8
AOCs [1]  15/6
apart [1]  70/3
apologize [1]  33/6
apparently [1]  21/10
appearance [1]  18/3
appearing [1]  18/4
applications [1]  9/4
applied [1]  10/22
apply [1]  9/7
appreciate [1]  53/20
appropriate [8]  15/22 20/15 22/16 27/4 27/12 30/24 58/24 66/5
approximately [1]  65/6
April [1]  16/12
arbitrary [1]  15/15
archived [1]  23/22
are [120]
arguably [1]  65/12
argument [2]  54/15 69/5
arguments [3]  10/12 26/8 54/2
around [2]  6/17 39/3
articulate [1]  10/7
as [98]
aside [1]  60/1
ask [14]  13/13 18/21 23/20 28/4 29/21 31/15 49/25 54/6 62/10 64/7 64/17 64/24 71/1 71/7
asked [19]  4/13 17/13 23/16 23/21 26/2 30/14 38/23 39/5 42/3 42/10 42/24 51/6 54/4 55/9 58/16 62/15 63/4 67/9
asking [9]  15/5 31/1 35/1 35/2 36/10 38/2 39/10 40/15 52/11
asks [1]  62/10
assert [3]  9/9 11/21 11/22
asserted [1]  69/13
assertion [1]  35/7
assets [4]  14/10 14/11 20/13 20/13
assigned [2]  48/19 48/25
assume [1]  48/6
assumed [1]  66/25
assuming [5]  40/15 40/19 42/10 45/3 66/8
ATL [1]  2/9
ATLANTA [5]  1/2 1/22 3/2 72/8 72/10
attached [2]  1/4 57/5
attaching [1]  1/7
attachment [1]  58/13
attempt [1]  52/9
attended [1]  50/15
attestations [2]  15/6 52/12
attorney [3]  69/1 69/15 71/3
attorney-client [2]  69/1 69/15
AU [1]  14/23
audit [3]  48/19 52/16 54/18
August [5]  4/25 30/13 30/16 31/8 55/11
August 2nd [1]  31/8
authentic [2]  58/11 59/10
authenticity [7]  45/9 58/7 58/8 58/9 61/22 70/8 70/13
authority [2]  50/16 51/6
authorize [1]  53/17
AV [1]  14/24
availability [1]  28/19
available [25]  3/24 3/25 4/1 4/4 4/10 4/12 5/2 5/5 5/14 5/15 5/20 5/20 5/22 5/25 6/3 24/14 24/15 24/25 30/18 46/4 46/8 48/3 52/25 53/2 53/12
averted [1]  59/2
avoid [1]  9/15
aware [6]  9/5 9/10 10/21 40/13 46/18 46/19
awareness [1]  50/9

## B

back [14]  21/12 22/8 22/9 22/17 35/21 35/21 41/25 43/7 49/3 52/7 57/25 59/20 62/19 68/12
BAMS [53]  13/3 13/4 14/2 14/5 14/13 14/25 15/2 15/4 15/7 16/23 17/4 17/5 18/4 18/24 18/25 19/2 20/1 20/2 20/3 20/3 20/4 23/1 23/2 24/12 24/12 24/16 24/18 24/18 25/8 26/14 29/12 29/22 31/20 31/21 39/6 40/2 45/1 45/5 45/11 45/17 46/24 47/9 47/19 48/13 48/17 49/9 49/18 51/10 52/8 52/11 52/14 62/20 63/16
BAMS' [13]  24/22 28/23 29/8 35/16 39/14 40/1 43/3 43/16 47/1 59/23 63/15 66/2 66/17
BANC [1]  1/6
BANK [7]  1/6 3/4 10/20 14/2 16/23 17/6 22/12
banking [1]  14/11
based [5]  6/2 10/13 27/14 57/15 66/4
basically [16]  7/9 10/7 16/24 17/11 23/20 28/3 28/21 31/10 32/11 34/6 42/4 45/23 54/2 58/14 61/12 67/7
basis [7]  6/19 7/17 7/23 7/25 8/7 11/2 11/23
Bates [3]  14/21 25/25 56/9
be [110]
became [2]  4/25 15/9 40/13
because [25]  3/17 9/20 13/15 17/2 19/20 19/21 25/23 34/23 37/25 38/11 39/9 39/10 39/18 40/10 45/17 46/6 50/20 54/14 54/16 55/13 57/24 61/3 63/9 66/25 67/9 71/2
become [1]  48/21
been [38]  3/19 5/23 7/4 9/10 17/9 18/24 19/4 19/7 19/14 21/13 24/7 24/19 29/25 34/12 37/7 38/19 40/18 40/19 41/13 41/18 41/20 47/16 48/15 49/2 49/6 50/6 52/23 55/4 55/13 57/17 60/11 60/12 60/21 60/21 60/22 61/14 67/10 68/22
before [16]  1/11 13/14 14/14 26/14 30/13 31/10 31/11 31/14 33/5 41/10 45/11 50/1 55/6 55/10 68/22 72/9
beforehand [1]  49/21
begin [1]  3/4
beginning [1]  41/10
behalf [1]  27/15
being [13]  9/16 17/13 27/13 35/9 40/12 42/3 42/10 43/1 48/5 61/20 61/23 63/5 69/13
belief [1]  63/1
believe [20]  3/25 4/4 4/6 4/13 8/5 16/16 17/21 21/13 22/11 26/17 30/8 30/17 30/21 32/6 41/14 41/20 43/11 54/3 57/19 70/12
believes [1]  40/25
best [6]  25/18 36/8 55/2 60/7 61/3 63/3
better [1]  12/18
between [5]  13/4 16/23 21/17 45/1 45/11
beyond [5]  11/18 13/19 27/12 48/10 51/1
binding [2]  20/20 46/15
bit [1]  23/4
blame [1]  58/20
bleed [1]  13/23
blindsided [2]  9/16 10/11
BOA [1]  13/4
bona [1]  35/6
both [4]  5/6 16/15 17/19 32/22
bottom [2]  37/7 68/22
bound [2]  67/24 68/3
box [5]  15/1 40/11 40/17 40/21 42/5
boxes [4]  40/14 40/16 41/12 41/16
boy [1]  15/14
brand [1]  62/21
break [1]  68/14
BRIAN [3]  2/9 31/3 50/14
brief [2]  59/21 68/14
briefly [1]  15/24
bring [1]  9/17
broad [4]  34/18 39/9 39/10 62/7
BRYAN [1]  2/9
burden [5]  7/18 8/1 46/7 63/10 63/12
burdensome [3]  13/9 30/25 34/25
business [8]  29/23 44/11 45/24 50/4 51/11 62/24 71/4 71/4
businesses [1]  51/18
button [1]  67/1
bye [2]  71/18 71/18
Bye-bye [1]  71/18

## C

call [5]  24/2 32/8 32/8 38/18 38/18
called [1]  32/7

**C**

**came [6]** 37/2 42/15 42/15 46/23 57/25 58/10
**camera [5]** 69/2 69/8 69/8 69/19 71/1
**can [71]** 5/8 6/12 6/13 6/16 7/7 7/16 9/15 11/12 12/12 12/24 13/12 19/20 22/19 24/2 24/3 24/22 27/11 27/17 29/4 29/18 31/18 34/14 34/22 35/15 35/22 38/6 39/25 41/24 42/2 45/12 45/20 45/22 46/14 46/15 48/10 48/14 48/14 48/16 49/2 51/2 54/6 55/8 55/15 56/3 56/3 59/9 59/12 59/15 59/17 59/17 59/25 60/10 60/14 61/3 61/13 64/3 64/4 64/6 64/8 64/12 64/16 64/18 64/20 64/25 66/19 68/5 68/9 69/3 69/23 69/25 71/1
**can't [10]** 13/16 15/17 28/13 31/2 39/10 45/22 49/5 49/5 54/21 61/21
**Canada [3]** 46/3 46/3 55/3
**capacity [3]** 3/19 53/5 53/19
**capture [1]** 34/13
**case [31]** 3/5 8/24 14/19 15/1 16/19 21/15 22/3 22/4 22/5 22/6 23/15 30/3 33/2 33/8 34/2 34/3 34/10 34/14 34/20 41/2 41/10 41/13 45/14 46/21 47/4 49/8 51/19 57/18 57/24 62/6 66/11
**cases [3]** 15/5 15/7 46/25
**categories [2]** 55/23 56/21
**cause [1]** 15/16
**CAVE [1]** 2/9
**ceased [4]** 17/4 17/4 24/13 54/25
**central [1]** 31/17
**certain [12]** 3/22 6/20 14/22 28/9 38/22 41/10 44/11 44/11 45/2 45/4 62/21 69/17
**certainly [7]** 11/13 14/2 18/6 18/10 19/6 32/5 64/20
**certainty [1]** 34/22
**certify [2]** 38/24 72/8
**cetera [5]** 30/10 30/10 38/4 41/21 54/16
**chain [3]** 56/4 71/2 71/7
**chains [5]** 13/23 14/1 14/22 14/24 15/10
**challenge [2]** 61/21 61/22
**changed [1]** 48/22
**charge [1]** 33/23
**charged [3]** 17/9 17/11 27/13
**chart [1]** 70/10
**check [1]** 64/23
**Chevron [1]** 47/8
**choose [1]** 61/13
**Chris [3]** 3/15 7/2 9/25
**CHRISTOPHER [2]** 2/8
**circumstance [2]** 8/13 8/19
**circumstances [1]** 60/23
**cite [1]** 1/4
**cited [1]** 27/22
**City [1]** 72/10
**claim [8]** 7/5 7/6 12/8 12/10 33/2 41/3 41/8 62/8
**claiming [1]** 69/9
**claims [8]** 12/12 24/6 33/8 36/4 36/18 36/25 41/11 62/6
**clarify [1]** 22/19
**classic [1]** 8/19
**clear [4]** 4/25 5/11 33/12 40/1

**clearly [3]** 17/13 30/24 45/17
**client [7]** 10/3 34/17 40/13 48/20 54/25 69/11 69/15
**client's [2]** 36/25 48/24
**close [3]** 30/13 31/11 33/5
**closed [1]** 33/2
**CM [2]** 1/2 1/3
**CM/ECF [1]** 1/2 1/3
**cocked [1]** 26/22
**coherent [1]** 6/13
**collection [1]** 18/1
**Collins [6]** 26/2 26/10 66/21 66/24 67/5 67/20
**come [3]** 30/2 47/10 67/20
**comes [1]** 29/20
**communication [2]** 25/24 26/11
**communications [2]** 65/20 65/22
**companies [1]** 22/13
**company [5]** 9/17 25/21 25/21 28/24 68/3
**company's [1]** 26/18
**competent [1]** 50/2
**complaint [1]** 12/16
**complete [1]** 56/4
**completely [2]** 40/24 41/1
**completing [1]** 4/15
**complex [2]** 36/2 36/2
**compliance [9]** 3/23 15/6 15/6 45/5 48/18 52/10 52/12 52/14 61/1
**compliant [13]** 45/19 46/20 46/24 47/3 47/3 47/11 48/15 48/20 48/21 48/23 52/9 63/17 63/17
**complicated [1]** 33/15
**complying [2]** 47/2 50/12
**computer [2]** 1/18 25/21
**COMPUTER-AIDED [1]** 1/18
**conceive [1]** 12/12
**concern [3]** 45/15 45/17 63/5
**concerned [4]** 11/6 12/1 47/10 48/18
**concerns [2]** 58/8 63/15
**concluded [1]** 71/19
**conduct [2]** 28/12 28/25
**confer [1]** 26/5
**conference [2]** 1/10 53/17
**confidential [1]** 49/11
**confirm [3]** 22/9 70/6 70/14
**confirming [1]** 70/19
**conflated [1]** 48/12
**confusion [1]** 15/16
**connection [2]** 6/14 29/10
**consensus [1]** 5/23
**consequences [11]** 46/23 47/2 50/10 50/12 59/24 60/1 60/3 60/13 60/15 60/17 60/20
**consideration [2]** 47/13 71/4
**consolidated [1]** 6/9
**constitute [1]** 72/9
**contact [2]** 31/22 40/3
**contemplation [1]** 49/6
**contents [1]** 52/5
**contest [1]** 14/4
**contesting [1]** 46/9
**context [2]** 71/6 71/10
**continue [1]** 3/13
**continuing [1]** 52/20
**contributing [2]** 63/10 63/12
**controlled [1]** 54/8
**convey [1]** 52/9

**copied [1]** 25/2
**copies [1]** 69/19
**copy [6]** 55/14 55/16 55/16 55/17 65/14 65/16
**copying [1]** 71/3
**core [2]** 31/24 44/24
**corporate [17]** 5/19 8/24 12/14 47/10 48/1 48/5 49/6 51/3 53/5 53/19 63/23 67/2 67/5 67/13 67/22 67/22 67/23
**corporation [5]** 46/15 46/16 49/1 50/24 51/4
**corporation's [2]** 8/6 44/19
**correct [8]** 16/20 31/9 43/15 51/7 51/8 52/2 66/5 67/9
**correction [1]** 31/4
**could [19]** 12/18 23/21 29/2 31/15 32/10 32/20 43/19 47/16 50/7 50/13 55/7 59/2 60/21 62/16 63/3 64/6 65/16 69/3 69/10
**couldn't [3]** 63/6 63/6 63/8
**counsel [20]** 4/3 9/19 10/12 19/1 20/19 21/24 22/10 33/10 34/22 38/2 52/4 53/23 58/6 59/8 60/5 64/25 68/1 69/7 70/12 70/21
**count [2]** 6/24 56/23
**counts [1]** 6/24
**County [1]** 3/2
**couple [1]** 40/24
**course [6]** 11/3 11/3 19/20 22/1 36/17 38/2
**court [36]** 1/3 1/6 1/9 1/1 1/20 4/13 4/14 10/12 12/21 14/20 15/20 16/10 17/18 17/19 21/18 27/20 28/10 28/17 28/17 28/22 28/24 32/23 35/22 51/21 54/1 54/2 55/18 57/20 69/8 69/16 69/20 72/6 72/7 72/10 72/17 72/17
**Court's [7]** 13/7 14/8 14/11 37/3 38/23 43/24 44/16
**COURTHOUSE [1]** 1/21
**cover [1]** 44/15
**coverup [1]** 47/15
**create [1]** 42/14
**created [1]** 64/14
**cross [9]** 27/6 39/19 51/16 53/3 56/19 57/11 59/7 63/20 66/13
**cross-examination [1]** 27/6
**cross-talk [8]** 39/19 51/16 53/3 56/19 57/11 59/7 63/20 66/13
**crosshairs [1]** 49/13
**CRR [3]** 1/20 72/6 72/16
**current [3]** 16/7 31/22 40/3
**custodial [1]** 42/6
**custodian [5]** 31/22 40/3 40/4 40/10 40/16
**custodians [1]** 41/11
**custodians' [1]** 40/11
**customers [1]** 65/9
**CV [2]** 1/5 3/5

**D**

**daily [2]** 25/11 25/14
**damage [2]** 46/23 47/12
**damages [5]** 7/12 7/14 8/12 8/14 8/17
**dance [1]** 39/3
**data [35]** 13/5 14/6 15/9 16/23 17/6 17/8 19/13 22/12 23/11 23/25 28/19 29/24 29/25 31/21 32/12 33/12 34/3 34/9 34/13 34/24 35/2 35/14 36/1 36/5

**D**

**data... [11]** 36/23 37/17 38/12 40/1
41/25 56/7 57/13 57/14 57/14 58/2 58/4
**Data's [2]** 15/8 52/10
**databases [1]** 35/16
**date [7]** 4/4 4/18 4/25 5/4 5/4 31/6
52/20
**dates [6]** 3/24 3/25 4/1 4/6 5/25 56/11
**David [2]** 44/1 47/5
**Davis [17]** 3/20 4/11 5/18 5/19 6/4
11/23 16/22 52/22 52/25 53/1 53/11
54/13 54/14 54/17 60/8 66/23 67/14
**Davis' [2]** 4/5 53/15
**day [4]** 10/8 25/12 54/7 72/13
**days [4]** 1/4 30/13 31/11 33/5
**deal [4]** 6/11 32/2 37/23 68/9
**dealing [5]** 17/2 22/23 53/25 57/14
65/8
**deals [1]** 33/2
**dealt [5]** 6/15 16/11 16/14 35/25 41/18
**December [1]** 17/3
**decide [1]** 44/17
**decisions [1]** 35/16
**deems [1]** 51/18
**defend [1]** 49/16
**defendant [48]** 1/8 2/7 3/16 5/1 5/3 7/5
7/24 8/7 8/8 8/14 8/20 8/21 8/22 8/23
9/2 9/5 9/14 9/16 10/1 10/19 13/3 13/4
15/1 16/9 17/17 18/2 18/7 18/8 18/11
18/16 18/20 18/22 19/4 20/2 20/2 20/5
20/14 20/20 25/3 27/15 31/6 43/25 44/5
44/17 56/14 58/2 63/13 69/7
**defendant's [14]** 4/17 6/10 6/19 6/20
13/7 14/3 22/15 26/12 34/22 42/16
46/22 70/7 70/12 70/25
**defendant's affirmative [1]** 6/19
**defendant's position [1]** 70/7
**defendants [18]** 8/1 9/9 13/16 14/19
15/12 19/14 19/15 21/9 26/4 26/6 32/7
37/2 38/13 53/12 56/23 56/24 71/1 71/7
**defense [24]** 6/21 6/21 6/22 6/25 6/25
7/4 7/8 7/17 7/21 7/23 8/2 8/2 8/8 8/9
11/17 11/17 11/21 12/3 12/3 12/4 12/23
12/23 60/5 62/9
**defenses [5]** 6/19 6/20 7/15 11/21
11/24
**defined [2]** 9/23 53/18
**delay [1]** 3/9
**denied [1]** 20/11
**deny [1]** 63/8
**department [1]** 17/10
**depose [2]** 30/15 56/16
**deposed [2]** 57/7 58/12
**deposition [29]** 3/14 4/5 5/4 5/13 5/22
5/25 8/3 10/14 11/10 11/12 25/2 25/4
25/5 25/17 25/22 26/2 26/9 26/25 27/22
42/16 50/15 53/18 55/13 55/14 55/16
55/18 57/4 58/15 63/3
**depositions [7]** 11/7 26/8 37/9 55/10
57/7 58/25 59/2
**designate [3]** 5/1 6/6 55/12
**designated [2]** 8/6 61/16
**desire [2]** 22/2 45/16
**despite [1]** 55/9
**destroy [1]** 63/19
**destroyed [1]** 38/10
**determine [2]** 4/9 27/7

**did [38]** 5/3 6/23 8/9 9/4 9/6 13/17 14/15
20/10 25/7 27/6 27/6 29/15 30/4 30/18
33/20 33/21 33/22 34/6 34/7 34/13 37/3
37/4 38/17 42/5 42/24 44/11 47/5 48/25
50/13 50/18 50/18 50/20 52/15 54/11
54/11 54/13 58/17 58/17
**didn't [23]** 3/11 8/15 8/15 8/16 11/25
25/4 26/13 37/16 42/14 44/9 45/25
47/25 48/1 49/14 49/25 50/3 51/14 52/5
54/11 56/23 59/3 60/15 66/24
**differences [1]** 16/22
**different [24]** 5/10 6/6 14/15 25/13
29/18 30/8 32/7 35/15 35/16 40/25 41/1
41/14 41/18 42/1 54/4 54/20 57/19 58/5
60/4 60/23 61/4 61/5 66/10 69/12
**difficult [1]** 35/12
**direct [1]** 33/14
**direction [1]** 54/11
**disagree [1]** 34/4
**discharge [1]** 47/17
**discover [1]** 15/23
**discovery [29]** 4/14 4/15 6/9 6/15 8/10
9/13 11/2 14/7 14/16 15/11 15/16 16/13
18/1 18/7 18/11 19/8 19/12 22/9 28/23
30/2 30/13 30/14 31/11 33/2 33/4 33/5
38/24 38/25 62/7
**discs [1]** 33/21
**discuss [7]** 4/7 15/17 16/15 24/5 37/15
62/23 67/17
**discussed [2]** 12/24 67/16
**discussing [1]** 60/1
**discussion [1]** 51/23
**discussions [1]** 6/2
**disinclination [1]** 47/15
**dismissal [2]** 13/8 14/8
**dismissed [1]** 41/10
**Disney [3]** 44/12 44/19 47/7
**dispense [1]** 12/24
**dispute [8]** 3/22 5/3 5/19 6/24 14/4
18/21 19/5 57/5
**disputes [5]** 3/10 11/8 11/9 17/10 69/1
**dissolution [4]** 23/2 29/8 29/13 30/19
**dissolved [5]** 14/15 16/25 31/21 40/2
50/24
**distinction [1]** 15/15
**DISTRICT [7]** 1/1 1/1 1/12 72/4 72/7
72/7 72/17
**DIVISION [2]** 1/2 72/8
**do [60]** 5/9 7/22 8/15 12/20 13/19
15/20 16/16 18/1 18/6 20/15 20/20
20/21 21/16 22/2 24/24 27/6 27/11
27/12 27/17 27/20 28/2 28/11 28/14
29/9 29/21 32/4 34/10 34/13 34/19
35/10 36/7 37/10 40/4 40/15 41/7 42/3
42/10 42/17 43/25 44/7 45/6 47/18
47/18 48/21 48/21 48/25 48/25 49/14
54/14 59/13 60/7 62/11 63/21 64/4
64/18 65/5 65/18 69/2 69/25 72/8
**docket [2]** 1/5 1/5
**document [23]** 1/8 6/10 23/1 23/7
23/11 24/11 24/22 30/20 35/13 37/4
41/14 41/16 43/14 45/19 57/17 58/7
58/10 58/11 58/18 58/19 65/5 69/10
71/11
**documentary [1]** 66/4
**documentation [3]** 9/3 52/19 61/8
**documents [78]**
**does [7]** 9/19 12/14 14/10 44/15 53/15

56/23 60/6
**doesn't [11]** 8/19 9/14 20/1 33/15 36/5
38/14 51/1 51/13 58/23 60/18 62/10
**doing [4]** 19/12 40/9 63/2 65/3
**dollars [1]** 8/14
**don't [83]**
**done [5]** 29/2 34/3 41/13 49/3 60/10
**down [19]** 17/12 18/4 19/2 19/3 19/3
19/10 20/4 21/10 22/18 22/20 24/15
29/20 32/14 46/2 46/3 55/2 59/9 59/18
67/1
**downloaded [2]** 57/22 57/25
**DRIVE [1]** 1/21
**due [3]** 25/22 34/21 35/5
**dump [3]** 56/7 57/13 58/2
**during [2]** 8/10 54/15
**duty [2]** 26/4 26/15

**E**

**each [6]** 13/23 27/24 41/6 41/15 58/9
58/12
**earlier [3]** 28/22 30/23 50/23
**early [2]** 20/9 40/12
**easier [1]** 61/9
**easiest [2]** 65/17 69/1
**easily [1]** 35/15
**ECF [2]** 1/2 1/3
**economic [6]** 47/12 59/23 60/3 60/15
60/17 60/20
**educate [1]** 44/18
**educated [1]** 31/1
**effectively [2]** 10/8 13/8
**efforts [1]** 9/3
**either [10]** 16/17 42/25 43/3 45/6 47/23
48/3 48/21 59/13 67/2 69/5
**electronic [3]** 57/14 57/14 58/4
**else [12]** 6/6 8/18 29/4 31/25 32/1 32/2
38/15 41/23 48/4 59/11 60/17 67/1
**email [23]** 13/23 14/1 14/22 14/24
15/10 23/25 25/19 34/8 40/11 40/14
40/16 40/17 41/5 41/6 41/11 41/16 42/5
42/7 56/4 58/5 69/16 71/2 71/7
**emails [25]** 23/3 23/8 24/23 27/8 30/20
32/9 32/15 33/18 33/21 38/2 38/21
39/16 39/17 39/18 41/2
**employed [1]** 19/15
**employee [1]** 46/2
**employees [8]** 17/5 24/12 24/16 28/8
35/8 38/19 50/17 50/25
**employer [1]** 13/17
**employment [3]** 8/18 10/9 17/3
**end [5]** 4/1 5/9 5/13 69/23 69/24
**endeavor [2]** 8/17 27/16
**ended [1]** 51/12
**enough [1]** 57/18
**ensue [1]** 47/12
**entailed [1]** 47/3
**entered [4]** 4/14 46/25 47/4 51/10
**entire [5]** 35/19 41/6 54/23 71/2 71/7
**entirely [1]** 51/2
**entitled [7]** 7/24 26/17 26/23 37/10
38/22 47/19 49/17
**entity [9]** 16/7 18/17 18/25 19/10 19/11
22/21 47/10 48/13 49/7
**entry [1]** 1/5
**ERIC [1]** 1/3
**error [1]** 43/8
**especially [2]** 5/2 5/21

## E

**essential [4]** 31/20 32/5 32/16 63/17
**essentially [3]** 47/15 56/7 63/2
**et [5]** 30/9 30/10 38/4 41/21 54/16
**even [9]** 36/13 45/25 50/18 51/13 58/23 61/5
**event [1]** 18/18 39/25 51/20
**events [1]** 49/24
**ever [5]** 18/23 19/4 19/15 60/20 61/17
**every [12]** 19/9 23/14 23/25 24/14 25/14 25/14 40/10 40/11 40/17 52/16 52/16 58/10
**everybody [3]** 27/25 53/21 68/17
**everyone [3]** 17/11 23/15 60/6
**everything [1]** 41/9
**evidence [10]** 7/14 8/20 8/23 9/17 10/19 10/22 21/22 24/24 26/8 26/23
**exact [1]** 57/15
**exactly [7]** 16/3 16/10 17/13 28/9 41/22 60/10 71/9
**examination [1]** 27/6
**examine [1]** 63/23
**example [4]** 32/10 62/17 62/18 63/10
**except [4]** 8/12 50/24 61/25 69/15
**excerpt [1]** 25/5
**excerpts [1]** 44/22
**execute [2]** 44/11 54/11
**executed [1]** 54/9
**executive [1]** 51/10
**Exhibit [1]** 26/1
**exhibits [2]** 57/7 58/15
**Exhibits 3 [1]** 58/15
**exist [6]** 9/1 37/16 38/8 40/17 48/14 60/15
**existed [1]** 37/17
**existence [1]** 28/23
**expect [2]** 56/18 66/6
**expectation [1]** 28/18
**expectations [1]** 28/18
**expected [1]** 25/19
**experience [1]** 68/25
**expert [1]** 35/7
**explained [1]** 16/16
**explaining [1]** 20/25
**explore [1]** 21/4
**explored [2]** 48/1 48/2
**exploring [1]** 9/1
**expressed [1]** 45/15
**expressly [1]** 62/23
**extend [1]** 4/14
**extension [1]** 4/15
**extent [9]** 9/9 9/22 26/12 29/22 37/15 42/21 58/12 66/3 66/5
**extremely [1]** 30/11
**extricate [1]** 49/15

## F

**facilitate [1]** 64/8
**fact [32]** 5/3 7/14 8/9 10/8 11/22 14/3 15/3 19/15 21/5 27/22 27/24 37/15 47/14 48/17 49/17 52/13 52/18 54/14 54/20 55/1 55/1 55/9 57/23 58/2 58/25 60/15 61/16 62/22 63/4 63/8 63/17 69/3
**factor [3]** 47/16 63/10 63/12
**facts [4]** 8/16 9/14 28/10 60/6
**factual [11]** 6/19 7/16 7/16 7/22 7/23 7/25 8/6 8/8 9/12 11/23 12/17

**failure [9]** 7/5 7/6 7/10 7/22 8/12 10/3 10/12 12/7 12/9
**fall [1]** 70/3
**false [1]** 21/2
**far [1]** 18/13
**fashion [4]** 33/3 48/2 57/15 69/22
**fastest [1]** 65/3
**favor [1]** 18/19
**feature [1]** 25/7
**feel [2]** 6/12 68/3
**few [3]** 35/4 68/23
**fide [1]** 35/6
**fifth [7]** 6/21 6/25 7/8 7/21 11/17 12/3 12/23
**figure [2]** 32/1 53/17
**file [2]** 21/21 55/17
**filed [5]** 1/2 1/6 1/8 18/24 41/3
**filing [1]** 40/13
**filings [1]** 22/12
**find [22]** 8/10 12/13 18/7 18/11 20/7 20/14 21/17 21/23 26/18 34/23 35/6 35/11 37/10 38/9 39/25 42/21 43/4 47/9 47/19 49/17 63/16 70/3
**fine [4]** 5/13 21/20 64/3 69/25
**fired [3]** 49/16 63/14 63/18
**firm [2]** 25/15 25/20
**first [36]** 3/14 6/21 6/25 7/4 10/9 11/17 12/2 12/5 12/7 12/22 12/24 13/4 13/14 13/15 14/5 15/8 15/9 16/23 17/6 17/8 18/10 19/13 22/12 26/14 29/24 29/25 30/12 31/15 31/19 32/13 33/10 37/3 37/6 52/10 56/2 62/15
**Fiserv [5]** 14/6 17/8 17/9 19/13 29/24
**fit [2]** 14/16 15/12
**five [9]** 39/16 44/15 51/24 51/24 54/5 54/6 54/6 54/9 68/11
**focus [2]** 31/15 59/13
**focused [1]** 12/23
**follow [6]** 6/17 29/10 31/19 33/4 63/24 63/25
**follow-up [5]** 6/17 31/19 33/4 63/24 63/25
**following [1]** 1/1
**foregoing [1]** 72/8
**form [5]** 24/5 25/24 26/11 42/25 66/10
**format [1]** 33/21
**former [2]** 28/7 39/6
**forth [3]** 22/11 52/7 62/19
**forward [2]** 22/3 70/2
**found [1]** 9/11
**four [3]** 24/19 39/15 55/1
**frame [1]** 49/22
**frankly [3]** 10/25 31/2 33/25
**front [1]** 29/2
**fruitful [1]** 69/4
**full [3]** 1/8 52/5 55/16
**fullness [1]** 3/11
**Fulton [1]** 3/2
**further [7]** 18/8 21/4 39/4 46/6 46/8 51/3 63/23
**furthermore [1]** 52/13

## G

**GALANEK [13]** 2/8 3/15 4/23 7/3 7/21 9/25 11/18 18/21 31/5 32/20 35/10 41/24 59/20
**Galanek's [5]** 18/3 20/19 42/17 42/18 50/23

**game[2]** 30/12 52/7
**gave [1]** 44/23
**general [3]** 23/5 33/19 45/23
**GEORGIA [6]** 1/1 1/22 3/2 72/4 72/8 72/10
**get [37]** 3/6 8/5 12/18 15/2 20/10 23/21 26/17 26/23 30/19 32/20 35/5 35/21 35/21 37/4 37/7 37/16 48/1 55/25 56/3 56/13 57/24 59/20 59/25 68/11 68/12 68/16 69/23
**getting [5]** 8/17 30/7 34/23 49/12 62/24
**gist [1]** 3/12
**give [3]** 15/7 51/13 59/14
**given [9]** 3/24 13/6 25/1 26/10 46/12 47/14 56/7 62/9 62/9
**giving [1]** 62/20
**GM [1]** 51/10
**go [24]** 6/25 12/22 13/14 17/24 21/12 21/16 21/19 21/21 21/24 22/9 25/25 26/7 26/22 32/14 36/20 39/13 43/4 43/20 47/15 56/4 56/15 64/25 65/14 65/15
**goes [3]** 22/17 56/12 63/1
**going [46]** 4/7 9/9 11/2 11/14 11/14 13/22 14/18 15/16 15/20 17/1 18/11 22/5 23/4 26/22 27/1 27/2 28/14 28/15 29/9 29/9 29/9 30/17 30/21 33/4 36/20 36/21 39/2 49/18 53/4 53/10 53/11 53/11 53/23 54/1 54/3 54/5 54/5 56/8 59/8 61/12 61/22 65/17 67/15 68/8 68/8 68/11
**gone [2]** 24/19 24/20
**good [3]** 3/8 3/8 70/1
**got [12]** 3/12 26/9 31/10 31/11 37/14 47/24 48/3 49/16 50/17 59/13 61/25 68/25
**gotten [1]** 68/21
**grab [1]** 24/3
**Great [2]** 13/1 68/21
**grounds [1]** 21/3
**group [9]** 45/23 45/24 46/13 54/8 54/12 54/22 54/23 64/1 69/8
**guarantee [1]** 56/13
**guess [3]** 34/1 62/1 63/21

## H

**had [37]** 3/18 3/24 4/13 4/24 6/23 9/4 24/13 26/15 26/16 28/2 34/10 43/7 45/15 45/17 45/17 46/2 46/12 47/14 48/6 48/15 49/3 49/10 50/6 50/16 52/17 55/1 55/4 55/5 55/13 57/8 57/10 57/17 57/20 59/1 61/17 68/21 72/9
**half [8]** 17/21 19/7 21/15 26/22 30/14 31/10 54/2 61/11
**half-cocked [1]** 26/22
**hand [1]** 72/12
**handful [1]** 61/16
**handle [2]** 55/8 58/25
**handled [7]** 28/23 35/14 35/20 46/13 54/18 54/19 59/1
**handling [1]** 17/11
**happened [13]** 26/19 31/20 32/12 34/24 35/2 38/11 38/12 40/1 42/4 42/21 54/14 60/20 60/22
**happens [1]** 36/1
**happy [5]** 22/8 28/5 28/21 46/11 69/18
**has [36]** 1/6 4/10 5/23 6/3 7/4 7/12 7/14 8/7 9/2 9/15 12/13 16/11 17/9 17/18

**H**

**has... [22]** 17/19 17/22 18/24 19/4
20/25 21/13 23/7 23/14 29/22 30/2 33/1
40/18 40/19 41/20 46/11 50/24 51/4
52/22 54/14 55/22 56/6 63/11
**hats [1]** 61/5
**have [146]**
**haven't [1]** 52/23
**having [6]** 22/22 34/18 35/13 37/14
41/7 69/5
**he [80]**
**headed [1]** 54/23
**hear [2]** 20/3 32/22
**heard [1]** 36/10
**hearing [3]** 20/18 37/16 37/20
**heart [2]** 46/21 47/4
**held [1]** 72/10
**Hello [1]** 3/3
**help [1]** 60/6
**helpful [1]** 59/16
**her [12]** 3/19 4/2 27/14 28/7 28/13
28/15 28/16 29/3 29/4 53/1 67/6 67/11
**here [15]** 3/6 3/11 6/13 11/9 12/12
12/19 13/22 30/25 31/17 35/8 38/6
44/24 59/1 68/19 68/22
**hereby [1]** 72/8
**hereunto [1]** 72/12
**hey [1]** 58/17
**hi [1]** 25/24
**highlight [1]** 69/9
**highlights [1]** 69/19
**him [9]** 46/2 46/3 46/4 46/12 51/6
58/20 63/5 63/14 63/18
**himself [7]** 10/4 10/8 44/10 46/1 49/15
49/16 54/10
**hinder [1]** 15/16
**his [35]** 7/14 9/3 10/9 10/14 16/4 16/5
25/5 25/17 27/14 36/18 41/8 44/5 44/10
44/14 44/15 44/22 46/13 47/14 47/17
48/1 48/11 48/11 48/20 48/24 48/24
49/3 49/14 50/18 52/4 53/19 54/8 55/13
63/5 63/11 63/14
**hold [4]** 40/11 40/12 41/5 68/12
**honest [1]** 30/11
**honestly [2]** 22/2 32/22
**Honor [92]**
**Honor's [3]** 32/12 39/13 69/18
**HONORABLE [1]** 1/11
**hope [1]** 36/21
**hopefully [1]** 42/23
**house [2]** 17/10 22/10
**how [32]** 6/16 7/6 7/15 14/16 15/12
23/18 24/1 25/10 25/12 25/24 32/15
33/13 35/13 35/20 35/20 36/5 39/11
40/8 42/8 46/13 51/2 54/19 54/19 55/24
55/25 56/22 59/5 60/10 60/14 70/3 71/4
71/5
**however [2]** 1/7 30/4
**HR [1]** 29/2

**I**

**I'll [5]** 6/17 21/12 22/8 28/21 30/11
**I'm [47]** 6/11 8/15 11/6 11/14 12/5
12/10 12/23 13/12 16/4 20/18 20/21
27/2 29/9 31/8 31/8 32/24 35/1 35/2
35/23 37/18 38/1 39/2 40/15 40/19
40/23 42/10 45/3 47/7 47/21 51/17

**I've [1]** 3/12
**idea [6]** 35/13 42/14 48/13 49/1 59/4
60/21
**identified [11]** 40/5 41/7 41/11 48/19
49/9 50/6 52/15 52/23 54/18 55/4 55/7
**identify [15]** 4/11 4/11 10/23 11/1
11/22 12/18 16/7 16/21 29/16 40/8
40/16 40/17 42/4 59/14 62/1
**identity [3]** 20/14 31/22 40/2
**IM [9]** 25/7 25/19 26/3 29/18 30/19 37/6
40/24 41/22 43/16
**imagine [2]** 35/15 39/11
**immediate [1]** 27/10
**immediately [1]** 40/11
**impeach [1]** 10/20
**import [1]** 27/25
**important [1]** 33/11
**importantly [1]** 34/17
**impossible [2]** 35/5 49/15
**IMs [17]** 23/8 24/4 24/9 25/3 25/6 27/9
32/6 32/9 35/5 37/1 37/16 37/20 37/23
38/8 38/18 42/19 42/20
**inadequate [2]** 20/21 20/25
**inappropriate [1]** 20/18
**inboxes [2]** 41/5 41/6
**include [1]** 14/10
**including [6]** 3/22 6/21 40/2 43/22
44/12 62/24
**indeed [1]** 16/6
**independently [1]** 28/12
**indicate [4]** 25/23 42/23 52/11 69/11
**indicated [2]** 47/14 55/7
**indicates [1]** 52/19
**individual [5]** 3/19 28/25 41/19 53/23
59/5
**industry [1]** 10/21
**information [17]** 12/13 12/14 20/10
24/25 31/22 33/8 33/11 33/13 34/19
34/23 35/23 37/11 40/3 45/13 62/20
63/2 69/17
**inquiries [15]** 27/17 28/6 32/12 49/12
61/6 61/7 61/13 61/14 61/17 61/25 62/2
62/3 62/18 63/24 65/21
**inquiry [3]** 36/12 62/9 62/10
**inside [1]** 16/18
**insofar [1]** 14/7
**instance [2]** 10/20 22/19
**instant [10]** 23/8 23/10 23/12 23/15
23/24 29/1 37/1 37/13 41/22 42/14
**instead [1]** 19/21
**institutional [2]** 26/18 26/18
**instruction [1]** 50/18
**intend [1]** 65/11
**intending [1]** 5/1
**intent [1]** 63/22
**intention [1]** 63/25
**interestingly [1]** 57/18
**interests [1]** 17/7
**internal [1]** 41/3
**interrogatories [5]** 66/2 66/16 66/18
66/20 67/13
**interrogatory [3]** 21/14 66/12 66/22
**interrupt [1]** 12/21
**interview [1]** 28/16
**investigate [1]** 48/20

**investigation [6]** 21/6 27/4 27/14 28/13
29/1 29/21
**investigations [1]** 29/2
**investing [1]** 8/18
**involve [2]** 14/1 14/1
**involved [4]** 15/10 22/4 54/13 54/14
**involving [2]** 12/17 14/22
**irrelevant [2]** 17/20 17/20
**irrespective [1]** 63/14
**is [448]**
**isn't [1]** 34/5
**issue [47]** 6/18 10/10 12/18 16/3 16/10
17/11 17/14 20/9 23/1 24/12 26/4 26/6
26/21 29/7 29/8 29/13 29/14 29/18
29/18 30/4 30/8 30/22 31/16 33/9 37/6
37/6 38/1 39/5 42/1 43/9 43/11 43/16
45/13 48/10 48/18 48/19 49/9 52/15
52/16 52/18 52/20 53/1 54/15 54/15
65/24 70/6 70/11
**issued [1]** 4/24
**issues [13]** 13/10 17/1 24/8 33/1 47/5
47/25 49/4 49/7 50/7 54/16 54/18 54/20
56/11 59/2 64/2
**it [248]**
**item [2]** 13/2 22/25
**its [6]** 29/25 46/22 46/23 48/14 50/24
52/12
**itself [2]** 45/19 47/19

**J**

**January [1]** 23/2
**January 1st [1]** 23/2
**JEAN [1]** 2/5
**Jeanie [3]** 52/1 62/14 70/24
**job [7]** 4/2 9/3 9/6 9/17 48/24 49/3
49/14
**jobs [1]** 10/21
**Joe [6]** 58/15 58/16 58/18 58/19 58/21
58/22
**join [1]** 5/3
**joint [16]** 6/9 13/3 13/17 14/13 14/14
14/20 15/20 15/21 16/25 17/4 17/5
17/12 17/15 29/23 34/8 57/5
**journaled [1]** 23/22
**JR [1]** 2/9
**JUDGE [4]** 1/12 3/6 42/6 68/15
**judgment [14]** 16/8 16/17 17/17 18/1
18/7 18/12 18/18 18/18 19/11 19/11
22/6 22/15 22/17 22/25
**July [3]** 31/7 31/9 55/10
**July 2nd [3]** 31/7 31/9 55/10
**jump [2]** 31/4 43/21
**juncture [4]** 8/24 13/6 63/22 69/4
**just [84]**
**JV [5]** 18/4 19/3 20/4 21/10 22/20

**K**

**keep [4]** 37/16 49/10 49/11 49/11
**keeps [1]** 50/19
**Kendall [6]** 25/3 25/17 26/9 50/10 63/4
63/5
**Kendall's [2]** 25/4 63/3
**kept [4]** 40/19 40/19 57/15 58/4
**Keri [2]** 3/3 68/15
**kind [7]** 20/6 32/6 34/11 34/12 47/11
52/7 70/14
**knew [6]** 9/18 23/18 30/9 47/1 52/14
52/21

**K**

**know [64]** 5/23 7/6 7/15 7/24 9/5 9/7 9/12 11/11 11/16 12/15 13/16 13/16 15/19 16/10 16/11 18/2 18/16 18/25 21/7 24/9 24/21 26/7 26/13 27/11 27/11 28/3 28/14 32/7 33/21 34/11 35/17 35/20 35/22 36/5 36/18 38/9 38/10 38/11 38/17 40/25 41/3 42/2 42/18 45/2 47/25 53/12 55/23 56/7 56/11 56/14 57/23 58/4 58/18 58/20 58/23 59/25 60/14 64/11 64/16 65/14 66/24 67/19 68/6 70/3
**knowledge [15]** 21/8 25/18 44/10 44/14 44/15 48/11 48/11 50/24 50/25 51/3 52/17 55/22 57/8 57/10 58/22
**known [5]** 18/4 19/3 20/3 21/10 48/15
**knows [2]** 42/19 69/20

**L**

**laid [1]** 21/13
**large [1]** 3/17
**last [4]** 24/19 37/4 51/23 68/23
**lasted [2]** 16/25 34/9
**lat [1]** 19/7
**late [1]** 30/11
**later [4]** 11/1 32/3 49/1 57/25
**lawsuit [1]** 18/24 38/4
**lay [1]** 59/25
**leads [1]** 20/4
**least [9]** 4/17 14/14 16/11 47/16 57/18 57/23 61/1 61/3 67/16
**leave [1]** 53/10
**leaves [2]** 48/17 51/12
**legal [15]** 6/21 7/17 13/3 15/18 16/18 17/10 17/10 17/15 18/25 22/10 46/18 59/23 60/1 66/6 66/6
**legitimate [1]** 37/25
**LEIGHTON [1]** 2/9
**let [5]** 18/20 28/16 31/14 55/18 56/20
**let's [9]** 16/2 18/14 18/15 25/25 43/21 55/21 64/5 69/7 69/21
**letter [1]** 14/21
**liability [1]** 15/1
**like [16]** 8/18 8/19 9/5 11/11 15/9 19/9 21/1 23/25 25/14 27/20 32/6 33/6 33/9 34/5 47/23 64/22
**likely [3]** 4/10 9/1 11/23
**limit [1]** 66/19
**limitations [1]** 29/3
**limited [15]** 9/22 14/25 15/2 15/4 25/24 28/18 28/18 34/2 34/5 44/10 46/21 51/21 61/12 64/1 64/7
**limiting [2]** 4/14 66/12
**line [3]** 1/6 45/24 68/22
**lines [2]** 51/11 51/18
**lingering [1]** 32/2
**LinkedIn [1]** 9/7
**list [5]** 30/7 58/14 64/19 64/22 65/5
**listed [2]** 19/14 31/16
**listing [1]** 65/13
**lit [2]** 40/11 40/12
**literally [4]** 7/6 7/11 23/12 56/10
**litigation [6]** 17/10 26/15 29/8 41/4 42/9 43/22
**little [1]** 23/4
**lives [1]** 46/3
**LLC [5]** 1/6 2/5 18/5 19/3 21/10

**LLP [1]** 2/9
**locate [1]** 6/6
**located [1]** 43/14
**location [3]** 29/12 31/21 40/2
**long [1]** 6/16
**longer [7]** 20/3 28/24 33/22 48/4 48/14 48/23 51/4
**look [17]** 11/7 16/2 16/17 16/18 21/13 22/8 30/5 25/25 38/5 38/21 39/11 54/3 54/5 55/18 57/4 58/13 68/9
**looked [1]** 68/22
**looking [12]** 8/5 13/12 17/25 18/8 20/13 31/23 35/19 37/21 38/1 38/7 39/8 70/10
**looks [1]** 14/20
**loss [1]** 32/25
**lost [1]** 5/7
**lot [10]** 4/1 9/4 9/7 11/8 11/9 13/25 15/4 54/1 59/2 62/24
**lunch [2]** 24/3 25/25

**M**

**ma'am [4]** 40/23 53/6 53/6 53/9
**made [17]** 4/10 5/15 6/3 17/22 24/14 26/1 28/7 41/16 46/4 53/11 61/14 61/17 61/20 61/23 62/10 69/15 70/20
**maintain [1]** 33/20
**maintained [6]** 29/15 30/1 33/13 33/13 35/9 36/6
**majority [1]** 57/6
**make [14]** 8/9 24/15 27/4 27/17 28/6 30/18 40/6 40/22 46/8 48/3 48/22 52/25 53/21 69/3
**makes [1]** 9/23
**making [3]** 26/7 41/8 53/1
**management [1]** 60/3
**manager [1]** 45/24
**managers [1]** 28/2
**manner [1]** 58/3
**many [6]** 15/7 24/19 25/12 25/13 56/22 62/18
**Marty [1]** 14/2
**MARX [43]** 2/4 2/5 2/5 2/5 4/21 5/12 7/19 11/8 12/17 12/20 13/21 16/4 16/20 19/17 20/1 24/24 27/21 31/14 35/21 35/22 36/10 36/18 36/23 37/16 38/5 40/25 42/13 44/7 46/17 48/12 48/17 50/19 51/18 52/1 55/4 55/5 55/24 60/11 62/11 62/14 66/14 70/5 70/24
**Marx's [1]** 5/21
**matching [1]** 56/11
**material [2]** 6/14 62/8
**materiality [1]** 62/6
**matter [6]** 14/16 16/8 19/22 21/11 22/15 72/11
**may [27]** 1/2 1/4 4/8 6/4 6/5 10/19 12/12 13/11 15/24 17/23 21/1 21/1 28/11 34/9 34/10 34/13 35/10 35/18 35/18 35/21 36/16 42/19 44/17 44/17 44/24 58/5 67/17
**Maybe [1]** 35/7
**McKINLEY [1]** 2/9
**McPherson [1]** 26/5
**me [23]** 6/12 6/24 6/25 8/21 9/23 9/24 13/15 18/21 20/7 20/24 20/25 21/3 21/5 31/15 31/20 33/14 33/24 41/24 55/18 56/20 68/25 69/1 70/3
**mean [30]** 10/10 11/8 19/20 23/24

**LLP [1]** 2/9
29/14 29/20 32/4 33/1 33/7 34/2 34/11 35/14 35/18 36/9 36/16 36/20 37/1 38/10 39/18 42/5 43/2 44/13 47/23 47/24 59/5 59/6 61/19 64/22 64/23 65/5
**meaning [3]** 46/7 46/19 54/21
**means [3]** 48/11 50/20 58/4
**meant [1]** 46/19
**measures [1]** 33/22
**MECHANICAL [1]** 1/18
**Mederos [1]** 14/2
**meet [1]** 41/24
**memory [1]** 26/18
**merchant [6]** 1/6 1/7 45/1 45/10 62/19 62/25
**merchants [21]** 15/5 15/8 45/2 45/4 46/24 47/11 49/11 49/12 52/8 52/10 52/10 54/4 61/7 61/13 62/21 63/5 63/15 63/24 65/22 65/23 71/5
**merely [1]** 7/11
**message [1]** 41/24
**messages [19]** 23/9 23/10 29/1 32/6 32/8 32/14 33/18 33/20 34/6 37/1 38/17 38/18 39/16 39/18 40/24 41/17 41/17 41/18 41/21
**messaging [6]** 23/13 23/15 23/24 37/13 41/22 42/14
**met [1]** 4/19
**micromanage [1]** 65/17
**might [7]** 8/21 8/23 9/10 40/5 42/21 47/10 60/22
**million [1]** 8/14
**mind [2]** 48/6 48/9
**mindful [1]** 14/12
**mindset [2]** 48/14 49/2
**mine [1]** 54/25
**minor [1]** 31/4
**minutes [3]** 35/4 68/12 68/24
**missing [1]** 56/5
**mitigate [7]** 7/10 7/12 7/22 8/12 8/17 10/4 10/13
**mitigated [1]** 7/14
**mitigation [2]** 12/4 12/5
**mode [1]** 19/3
**Moll [4]** 58/16 58/18 58/19 58/22
**Moll's [2]** 58/15 58/22
**monitored [1]** 25/21
**month [1]** 3/20
**months [4]** 16/12 17/21 57/25 62/18
**more [20]** 6/13 12/23 13/19 15/16 17/22 22/16 26/13 34/17 35/1 35/2 35/5 38/25 40/9 46/10 51/20 56/25 57/2 57/2 65/21 70/23
**morning [1]** 3/8
**morphed [1]** 54/16
**most [5]** 15/7 33/10 35/25 38/23 55/10
**motion [2]** 5/4 16/15
**motivating [1]** 47/16
**motivation [1]** 63/18
**move [5]** 5/4 22/3 55/21 64/5 68/23
**moving [1]** 15/22
**Mr [6]** 21/9 32/20 47/24 50/23 53/15 55/24
**Mr. [108]**
**Mr. Ades [21]** 26/9 44/9 44/18 44/20 45/23 46/18 48/3 48/10 50/1 50/13 50/15 50/20 51/1 51/5 52/3 53/13 53/18 53/21 54/7 54/22 55/2
**Mr. Ades' [4]** 46/11 50/9 50/15 50/21

80

## M

**Mr. Galanek [8]** 4/23 7/21 11/18 18/21 31/5 35/10 41/24 59/20
**Mr. Galanek's [4]** 18/3 20/19 42/17 42/18
**Mr. Kendall [5]** 25/3 25/17 26/9 50/10 63/4
**Mr. Kendall's [2]** 25/4 63/3
**Mr. Marx [35]** 4/21 5/12 7/19 11/8 12/17 12/20 13/21 16/4 16/20 19/17 20/1 24/24 27/21 31/14 35/21 35/22 36/10 36/18 36/23 37/16 38/5 40/25 42/13 44/7 46/17 48/12 48/17 50/19 51/18 55/4 55/5 60/11 62/11 66/14 70/5
**Mr. Marx's [1]** 5/21
**Mr. Slawin [15]** 9/6 9/11 9/15 10/4 19/16 24/5 24/20 41/8 45/14 47/14 48/20 49/3 49/10 63/1 63/11
**Mr. Slawin's [8]** 8/3 9/3 17/3 24/5 24/6 38/3 40/13 41/3
**Mr. Solan [1]** 50/10
**Mr. Underwood [4]** 28/6 41/24 52/2 54/10
**Mrs. [1]** 55/24
**Mrs. Marx [1]** 55/24
**Ms [1]** 5/18
**Ms. [21]** 4/5 4/11 5/19 6/4 16/22 26/2 26/5 52/25 53/1 53/11 53/15 54/13 54/14 54/17 60/8 66/21 66/23 66/24 67/5 67/14 67/20
**Ms. Collins [5]** 26/2 66/21 66/24 67/5 67/20
**Ms. Davis [13]** 4/11 5/19 6/4 16/22 52/25 53/1 53/11 54/13 54/14 54/17 60/8 66/23 67/14
**Ms. Davis' [2]** 4/5 53/15
**Ms. McPherson [1]** 26/5
**MSA [7]** 44/12 44/20 46/13 47/7 51/6 54/15 54/15
**MSAs [38]** 43/22 44/6 44/12 44/15 44/20 44/25 44/25 46/19 46/22 46/25 47/2 47/4 47/6 47/13 47/19 50/12 50/16 50/17 51/10 51/14 51/21 51/24 51/24 52/3 52/4 52/6 52/11 52/13 53/25 54/3 54/4 54/7 54/9 54/9 54/13 54/21 54/22 55/3
**much [3]** 27/11 70/4 71/13
**must [1]** 67/10
**my [19]** 4/3 10/3 18/25 19/9 21/8 23/5 25/18 28/17 29/17 29/20 34/1 34/17 37/24 54/11 54/12 67/21 68/25 70/10 72/12

## N

**name [1]** 56/17
**named [1]** 19/14
**narrow [3]** 59/9 59/17 60/6
**Natasha [1]** 26/10
**NATHAN [1]** 2/4
**nay [1]** 21/17
**necessarily [1]** 15/4
**necessary [5]** 6/17 15/17 16/6 67/20 71/11
**need [16]** 3/17 8/9 10/6 10/23 10/23 12/22 13/19 21/4 27/20 37/19 38/5 48/21 51/22 53/17 58/1 60/25
**needed [2]** 52/11 57/21

**needs [2]** 7/23 56/14
**negotiate [2]** 44/9 45/25
**negotiated [3]** 45/25 47/6 54/22
**negotiation [1]** 45/10
**never [2]** 37/17 57/21
**nevertheless [1]** 42/18
**new [2]** 13/16 14/19
**next [5]** 13/2 23/1 56/12 59/22 61/6
**nine [1]** 30/8
**no [52]** 10/11 10/22 11/20 16/20 17/5 19/4 19/9 19/9 19/12 20/3 21/11 23/17 24/12 27/25 28/1 28/15 28/24 29/4 29/14 29/17 33/22 36/11 36/16 36/21 37/14 37/18 38/24 41/25 44/25 45/12 45/12 45/20 46/6 48/7 48/9 48/9 48/10 48/14 48/22 50/24 51/4 52/17 54/4 55/10 55/13 56/5 56/5 56/13 58/2 59/12 60/20 63/24
**nobody [2]** 27/25 52/21
**non [1]** 52/14
**non-PCI [1]** 52/14
**noncompliance [5]** 24/6 39/15 39/20 43/3 59/24
**none [5]** 19/13 19/15 24/16 24/18 34/2
**nonissue [1]** 37/8
**nonlawyer [1]** 12/11
**nonprivileged [1]** 38/3
**NORTHERN [3]** 1/1 72/4 72/7
**not [150]**
**note [2]** 3/11 6/8
**nothing [8]** 10/5 10/15 23/23 24/10 27/21 28/2 34/19 60/20
**notice [7]** 3/20 4/25 18/3 26/14 30/12 57/4 58/14
**noticed [1]** 5/18
**notices [1]** 65/20
**notion [1]** 50/19
**November [1]** 4/16
**now [18]** 5/10 11/7 13/16 18/4 20/4 20/15 21/10 25/22 26/12 32/3 38/6 41/25 44/7 49/1 50/10 54/15 59/3 68/8
**nowhere [1]** 37/2
**number [38]** 1/5 1/6 1/5 3/5 6/18 11/14 13/25 17/1 23/1 25/4 26/1 29/8 29/13 30/4 30/8 30/22 30/25 31/16 32/5 32/14 32/15 33/9 38/1 38/22 39/5 39/6 39/14 43/9 43/16 43/20 43/21 52/3 57/17 58/5 59/14 61/13 64/7 70/11
**Number 1 [2]** 6/18 39/5
**Number 10 [1]** 70/11
**Number 19-CV-4129 [1]** 3/5
**Number 3 [1]** 39/14
**Number 4a [1]** 23/1
**Number 5 [2]** 29/8 32/14
**Number 6 [9]** 13/25 30/4 30/8 30/22 31/16 32/15 33/9 38/1 39/6
**Number 7 [2]** 29/13 43/9
**Number 8 [1]** 43/16
**Number 8583 [1]** 26/1
**Number 9 [2]** 43/20 43/21
**numbers [3]** 14/21 56/9 56/9
**numerous [2]** 70/20 70/22

## O

**object [2]** 58/7 58/9
**objected [1]** 52/23
**objecting [2]** 15/13 67/17
**obligation [2]** 7/12 45/18

**obtained [1]** 9/2
**obtuse [2]** 33/7 36/9
**obviously [9]** 8/4 12/21 16/2 25/3 28/12 33/10 35/12 36/4 47/24
**occasions [1]** 57/19
**occur [1]** 5/25
**occurred [1]** 49/24
**October [7]** 4/1 4/5 4/6 5/9 5/13 5/24 43/23
**October 19th [1]** 43/23
**off [5]** 11/16 26/7 26/22 64/23 68/11
**offense [1]** 57/12
**offered [3]** 3/19 45/20 49/5
**offering [1]** 10/15
**official [7]** 1/1 1/2 1/3 1/7 1/20 72/6 72/17
**often [1]** 25/10
**oh [5]** 9/17 26/6 35/7 56/14 57/25
**okay [29]** 4/20 6/8 6/18 9/19 11/6 22/24 29/12 31/24 32/17 33/17 40/23 42/12 43/6 43/13 43/15 43/21 49/25 55/21 59/17 59/19 64/21 65/2 65/19 65/24 67/3 68/5 68/21 69/21 70/18
**once [2]** 22/19 53/24
**one [35]** 4/5 7/17 11/6 12/7 13/22 14/22 23/17 25/13 27/25 28/1 29/4 31/19 31/20 33/10 35/14 37/18 40/24 42/23 45/12 48/9 48/10 52/24 56/12 57/18 57/23 59/22 61/6 61/10 65/21 65/22 66/1 66/22 66/23 69/15 70/23
**ones [4]** 64/23 66/4 66/23 67/16
**ongoing [1]** 26/15
**online [1]** 9/4
**only [17]** 1/2 1/6 6/1 11/25 23/9 28/17 35/23 36/3 37/24 38/23 44/10 51/11 52/19 56/16 61/16 64/15 66/15
**open [2]** 30/14 51/12
**openings [1]** 9/10
**operate [2]** 17/4 24/13
**operated [2]** 15/4 15/21
**operation [1]** 35/16
**operational [4]** 14/5 15/14 16/22 28/2
**operations [1]** 15/3 54/25
**operative [1]** 49/24
**opinion [1]** 29/17
**opportunities [1]** 9/6
**opportunity [1]** 46/12
**opposing [3]** 9/19 10/12 21/24
**order [9]** 4/14 23/6 37/4 43/24 44/16 49/9 51/22 66/12 69/16
**ordered [2]** 54/1 67/18
**original [1]** 19/1
**other [36]** 3/10 6/7 6/7 7/17 8/17 9/14 10/21 11/16 11/20 11/21 11/24 13/8 13/23 16/18 19/10 21/5 22/2 22/21 25/14 30/17 36/10 36/11 37/23 38/2 38/8 44/20 51/14 51/18 57/20 61/4 62/21 65/22 67/16 67/18 69/12
**others [3]** 6/4 11/18 54/10
**our [13]** 3/21 5/16 5/20 7/9 18/3 36/8 48/22 53/8 58/10 58/10 60/7 64/19 71/2
**ourselves [1]** 5/15
**out [35]** 4/24 8/10 12/14 15/13 16/2 18/2 18/7 18/11 20/14 21/13 26/19 32/1 34/24 35/6 35/10 35/11 37/2 37/10 38/9 38/21 38/25 41/5 42/15 42/15 42/21 46/23 47/9 47/10 47/19 48/17 49/17 53/17 58/10 63/16 70/3

**O**

outside [3]  10/5 10/15 14/2
over [4]  11/7 35/8 40/5 56/10
overbroad [1]  13/9
overly [2]  30/24 34/25
own [2]  10/13 52/12
owned [1]  53/1

**P**

P.M [1]  1/14
page [6]  1/5 14/20 14/21 14/23 25/5 25/17
Page 134 [1]  25/5
Page 136 [1]  25/17
Page 6 [1]  14/21
Page 9 [1]  14/23
pages [2]  25/5 72/9
painstakingly [1]  56/10
PAISNER [1]  2/9
part [8]  3/17 18/10 32/16 47/16 53/22 54/12 54/21 71/3
partial [1]  1/8
particular [2]  12/16 12/17
particularly [3]  44/19 47/7 51/15
particulars [1]  55/23
parties [7]  4/13 13/8 16/18 16/19 22/3 22/4 45/18
parties' [1]  57/5
partner [1]  29/24
parts [2]  15/21 56/5
party [2]  13/18 45/11
passage [1]  17/21
PAUL [1]  2/8
pause [1]  59/21
pay [2]  17/17 22/5
paying [1]  18/12
payment [4]  16/8 18/18 22/15 22/25
pays [1]  19/11
PCI [26]  3/22 15/6 24/6 39/14 39/20 43/3 45/5 45/18 46/20 46/24 47/3 47/11 48/15 48/18 48/20 52/9 52/10 52/12 52/14 53/1 54/16 54/17 59/24 61/7 63/16 63/17
PDF [1]  1/1
people [6]  14/1 14/1 28/16 29/4 38/18 54/11
people's [1]  41/19
Perfect [1]  68/20
perhaps [2]  15/16 22/21
period [5]  1/4 23/8 27/9 31/11 53/18
permitting [1]  69/16
person [4]  25/14 28/22 41/7 50/21
personal [3]  44/14 44/15 50/9
personnel [1]  39/7
perspective [2]  4/17 23/5
pertained [1]  23/3
pertaining [1]  44/6
phone [3]  27/3 53/16 68/11
pieces [4]  14/15 14/16 15/12 56/4
ping [1]  37/6
pinging [2]  26/3 42/15
place [5]  5/22 16/3 29/15 41/4 56/10
plaintiff [20]  1/4 2/3 4/2 7/12 7/13 7/20 8/13 10/8 10/22 12/13 16/14 17/14 18/19 30/15 45/3 49/21 55/5 55/22 55/24 56/6
plaintiff's [15]  4/3 7/10 7/18 10/13

plaintiffs [9]  3/20 13/7 23/4 23/16 24/16 25/2 41/15 61/13 71/9
planning [1]  64/24 64/24 64/25
plans [1]  5/15
platform [1]  25/21
PM [2]  68/14 71/20
point [23]  4/8 4/25 10/3 17/7 17/22 19/7 20/3 22/3 24/17 28/17 30/6 30/23 33/1 33/22 35/25 45/11 46/6 46/7 49/8 50/23 60/9 63/12 69/18
pointed [2]  15/13 18/2
policies [1]  30/20
policy [6]  23/2 23/8 23/11 24/23 27/7 27/8
pops [1]  41/23
portion [1]  1/4
portions [1]  10/21
position [20]  6/20 7/11 13/7 14/3 14/8 14/12 16/5 21/1 21/12 22/16 26/12 27/24 34/17 38/23 45/3 66/7 67/22 67/23 70/7 71/2
positions [2]  15/18 66/6
possible [1]  37/15
possibly [1]  55/25
post [4]  16/17 18/1 18/7 22/16
post-judgment [3]  16/17 18/1 18/7
posted [2]  9/8 9/18
potential [1]  60/13
potentially [1]  64/24
practice [1]  27/7
premature [1]  22/16
preparation [1]  64/8
prepare [15]  6/6 7/7 7/9 7/16 27/16 28/5 29/18 34/18 51/3 58/21 59/4 59/15 60/5 64/12 64/16
prepared [15]  6/11 23/7 37/15 37/19 38/24 48/16 56/3 59/12 60/2 60/8 61/9 67/1 67/7 67/8 68/7
preparing [1]  37/22
present [4]  7/13 8/23 11/1 45/12
preservation [1]  29/7 42/25
preserve [2]  26/16 42/24
preserved [8]  38/15 40/18 41/4 41/25 42/7 42/8 42/8 42/9
preserving [1]  42/25
presumably [2]  7/13 31/1
presume [1]  29/9
presuming [1]  5/8 66/11
prevalent [2]  25/23 26/11
previous [1]  13/19
previously [1]  3/19
primary [2]  20/6 24/11
printed [1]  6/23
prior [3]  21/14 30/6 69/16
privilege [1]  69/10
privileges [1]  69/13
probably [2]  19/6 40/3
problem [11]  10/11 11/25 16/20 36/5 37/14 44/7 44/8 46/14 53/22 54/25 56/6
proceed [3]  5/8 64/4 69/22
proceedings [5]  1/10 1/18 59/21 71/19 72/9
process [1]  41/3
processes [1]  48/22
produce [9]  37/3 38/13 54/5 61/14 64/20 71/1 71/7 71/8 71/10

produced [23]  1/19 13/24 38/22 40/10 40/18 43/22 43/23 44/6 44/16 44/20 51/22 54/7 56/8 57/13 57/14 57/19 58/3 58/7 60/12 61/17 70/8 70/14 71/9
product [1]  69/12
production [7]  6/10 58/11 61/12 66/3 66/11 66/18 70/25
production -- well [1]  66/3
productions [1]  57/17
prohibited [1]  1/7
proof [2]  63/10 63/13
proper [5]  6/5 17/17 20/2 20/2 20/5
properly [1]  64/12
protected [2]  63/11 63/14
prove [2]  8/9 63/13
provide [11]  21/17 36/21 51/3 52/12 55/15 64/21 65/11 65/13 69/8 69/18 69/19
provided [6]  21/14 55/6 55/11 55/13 62/23 64/9
proving [1]  8/1
public [1]  22/13
pull [1]  64/25
purely [3]  6/21 7/17 60/22
purpose [1]  4/15
purposes [4]  17/16 23/14 24/2 42/9
pursuant [2]  43/23 69/16
put [19]  10/6 13/25 14/24 26/19 28/7 28/15 29/3 29/4 34/17 40/10 40/12 49/13 49/14 56/11 58/17 58/19 58/22 60/1 68/12

**Q**

quantify [1]  60/14
question [35]  5/7 6/1 13/14 20/1 20/4 20/6 20/8 24/21 25/7 25/10 25/12 27/5 29/22 33/14 33/19 34/1 34/2 34/5 34/13 34/14 35/1 35/13 36/11 37/11 37/24 37/25 38/11 38/14 42/5 44/25 44/25 46/12 51/9 62/7 62/15 63/22
questioned [3]  24/7 54/8 61/18
questionnaires [1]  61/15
questions [6]  34/18 44/6 49/25 50/3 54/6 64/17
quick [2]  24/2 68/9
quicker [1]  68/23
quickly [1]  68/9
quiet [1]  49/10
quite [2]  3/11 31/2

**R**

raised [5]  7/4 19/7 20/9 26/4 63/4
ran [2]  45/23 45/24
rank [1]  49/5
rather [2]  26/7 32/2
reached [1]  5/24
reaction [1]  26/1
read [1]  71/2
ready [3]  3/4 3/6 68/16
realize [1]  22/15
realizing [1]  3/10
really [24]  6/11 7/6 7/15 8/13 11/14 12/23 15/9 16/4 21/5 21/23 26/6 29/4 31/17 31/23 33/19 35/19 35/20 37/24 43/2 52/5 56/15 59/15 59/16 61/24
reason [4]  4/18 19/12 23/6 39/8
reasonable [1]  63/1
reasonably [1]  64/25

**R**

recall [5]  16/24 19/1 51/1 61/15 67/7
receipts [1]  57/24
received [5]  13/24 36/24 47/20
record [5]  39/3 66/4 70/15 70/17 70/22
recordable [1]  25/20
redacted [2]  69/6 69/20
redaction [2]  69/15 69/17
redactions [2]  6/10 71/10
referenced [1]  12/1
referencing [1]  1/5
referring [8]  26/2 38/3 39/6 39/14
39/15 40/22 40/23 43/3
refers [1]  26/3
reflects [1]  61/8
refused [1]  63/18
regarding [9]  10/12 15/6 38/3 39/6
39/14 39/17 39/20 44/19 61/7
regurgitate [1]  10/7
reiteration [1]  5/21
related [1]  3/22
relationship [4]  13/4 14/5 15/14 15/23
relationships [1]  17/15
relevance [11]  32/19 33/1 33/7 36/12
44/25 45/13 46/7 61/18 62/5 62/7 62/12
relevant [27]  13/15 15/11 16/6 16/17
16/18 17/16 17/22 18/2 29/7 29/23
33/24 34/3 34/14 34/20 34/23 36/4
36/21 36/25 38/21 38/25 47/9 47/18
51/18 59/15 63/9 65/12 65/12
relitigate [1]  13/8
relitigating [1]  14/8
remaining [1]  14/14
remember [1]  63/6
rendered [1]  22/6
rep [1]  5/19
repeat [1]  28/13
repeatedly [1]  45/8
reported [1]  49/3
reporter [6]  1/3 1/6 1/20 32/23 72/6
72/17
represent [2]  28/22 56/22
representation [1]  42/17 45/5 70/20
representative [3]  8/25 12/14 48/1
represented [1]  28/10
representing [4]  4/21 10/11 21/22 26/5
reputational [7]  46/23 47/12 50/10
50/11 59/23 60/3 60/13
request [6]  19/20 22/24 24/15 42/3
46/4 56/9
requested [4]  31/6 31/6 57/20 69/17
requests [7]  41/15 41/15 61/19 61/22
66/3 66/10 66/18
require [2]  54/3 61/12
required [4]  13/24 45/5 46/20 52/9
requirement [1]  66/9
requires [1]  21/6
reschedule [1]  68/10
reservation [1]  6/22
resolution [4]  52/17 52/20 52/21 52/24
resolve [3]  11/12 21/11 27/3
resolved [2]  26/14 54/19
resources [1]  26/18
respect [25]  4/7 8/7 13/23 14/13 16/12
17/14 19/13 24/9 24/11 25/22 30/20
34/12 34/21 35/6 39/12 41/2 41/6 41/8
41/17 42/2 54/9 56/9 57/9 67/4 70/25

respectfully [1]  16/6
respond [8]  9/20 12/11 15/24 17/23
41/14 66/7 71/4 71/5
responded [2]  64/15 67/14
response [15]  10/17 13/13 19/23 20/19
21/14 32/11 62/1 62/2 62/9 62/12 67/2
67/6 67/6 67/11 67/13
responses [9]  13/20 22/9 62/23 66/5
66/10 66/12 66/20 66/22 67/23
responsibilities [1]  22/25
responsibility [3]  17/9 27/13 48/5
responsible [9]  16/7 18/12 18/17 18/17
22/5 22/14 22/21 51/12 60/25
rest [2]  6/14 34/16
restricted [1]  1/3
retain [2]  33/22 34/3
retained [6]  23/18 23/19 23/22 28/1
36/5 41/12
retaliation [3]  33/2 41/9 45/15
retention [13]  23/1 23/8 23/11 24/11
24/22 27/7 30/20 35/14 35/14 35/15
35/20 36/1 36/13
review [6]  10/7 27/20 31/18 57/21 69/2
71/1
reviewed [1]  67/8
revisit [1]  13/9
riding [1]  62/24
right [51]  5/6 6/8 10/16 11/7 12/2 12/9
13/1 16/3 18/15 21/16 21/18 22/7 27/2
27/18 28/20 29/6 29/11 31/12 31/24
35/6 35/10 35/11 38/16 39/2 39/12
39/23 40/5 40/20 41/25 43/9 48/8 49/13
50/8 50/21 51/9 53/10 55/17 56/20
59/22 64/3 64/21 67/25 68/6 68/13
69/21 70/1 70/2 71/12 71/12 71/15
71/17
rights [1]  6/22
risks [1]  48/23
RMR [3]  1/20 72/6 72/16
road [1]  70/2
ROBERT [1]  2/4
role [1]  48/24
Ross [1]  62/20
routinely [1]  48/17
rule [3]  4/8 13/18 16/15
Rule 25 [2]  13/18 16/15
ruled [1]  37/13
ruling [2]  29/10 69/3
rulings [1]  13/7

**S**

S/H/A [1]  1/6
said [33]  4/23 16/4 16/5 16/21 17/19
23/16 23/20 27/23 28/1 28/3 31/5 33/6
45/8 50/2 50/3 54/2 54/4 54/10 55/4
56/24 58/8 58/18 60/11 61/12 66/24
67/5 67/7 67/9 70/12 70/17 70/20 70/21
72/10
same [21]  23/16 25/19 28/6 28/7 28/11
29/3 29/7 29/10 29/14 33/11 33/18 41/1
43/2 43/11 43/19 48/2 49/11 54/1 65/21
65/24 65/25
satisfactorily [1]  53/16
satisfactory [3]  10/16 19/19 68/1
saved [4]  23/12 23/25 37/17 40/12
say [19]  10/18 25/14 27/20 35/22 37/16
38/13 45/2 45/2 45/4 45/6 45/7 45/16
45/21 46/10 49/14 56/3 56/14 57/25

saying [13]  8/15 8/15 15/8 17/16 21/4
24/2 36/19 38/6 46/14 50/19 58/20 65/7
68/1
says [5]  16/5 17/14 25/6 27/22 45/19
scattered [1]  24/17
scenario [1]  12/17
scheduled [2]  3/14 3/17
scope [2]  3/18 11/7
screen [1]  41/23
search [3]  9/3 33/11 36/20
searched [2]  40/14 40/18
searches [3]  41/13 41/16 57/15
SEC [2]  22/12 40/13
second [3]  18/14 56/20 67/14
sections [1]  44/11
see [7]  4/18 6/16 15/9 15/12 39/24 57/6
68/9
seeking [2]  15/19 49/18
seem [9]  8/19 20/7 30/23 31/20 33/9
33/15 52/11 60/4 62/8
seems [4]  33/14 33/24 34/16 68/25
segue [1]  29/6
select [1]  59/13
self [4]  48/19 49/9 52/15 54/18
self-identified [4]  48/19 49/9 52/15
54/18
send [2]  19/20 41/25
sends [1]  41/24
SENIOR [1]  1/12
sense [2]  9/23 12/18
separate [1]  66/23
separated [1]  17/6
SEPTEMBER [6]  1/13 3/2 3/25 4/4
37/4 72/13
served [4]  30/12 33/3 33/5 66/11
servers [2]  26/20 26/20
services [4]  1/6 1/7 45/1 45/10
set [3]  3/10 13/3 22/11 36/24 58/1
60/23 67/14 72/12
setup [1]  17/15
seven [7]  24/19 49/1 49/7 58/17 58/19
60/9 60/14
seventh [3]  6/22 12/22 12/25
SHANNON [3]  1/20 72/6 72/18
shape [2]  24/5 66/9
share [1]  65/1
she [23]  3/21 3/24 4/1 6/4 26/5 27/5
27/6 28/5 28/9 28/12 28/13 28/24 53/4
54/20 54/21 66/21 66/21 66/24 66/25
67/7 67/9 67/9 67/15
she's [3]  3/24 5/19 53/8
shell [1]  52/7
shifts [1]  63/13
shipped [1]  30/19
shortly [1]  68/12
should [15]  4/18 7/8 8/10 9/11 17/17
19/6 21/24 27/4 28/12 46/14 60/5 60/21
62/20 67/25 69/24
shouldn't [1]  23/6
show [2]  45/4 63/11
showing [2]  8/8 8/13
shows [1]  50/22
SIAI [2]  52/15 52/24
side [1]  57/20
sign [6]  44/11 50/4 50/20 51/6 51/14
52/4
signature [1]  67/21

83

**S**

**signed [8]** 50/3 50/17 50/17 52/14 54/22 66/21 67/8 67/10
**signing [1]** 50/4
**silly [1]** 35/19
**SIMONOFF [1]** 2/5
**simple [2]** 35/1 37/11
**simpler [1]** 10/2
**simplest [1]** 65/16
**simply [4]** 23/6 59/6 64/23 69/1
**since [6]** 5/2 16/4 16/5 24/20 64/14 67/6
**single [3]** 24/4 52/16 52/16
**situation [2]** 49/15 57/23
**six [4]** 17/21 24/7 31/10 39/16
**skip [1]** 30/4
**skipped [1]** 43/7
**SLAWIN [19]** 1/3 3/4 9/6 9/11 9/15 10/4 19/16 24/5 24/20 41/8 45/14 47/14 48/20 49/3 49/10 63/1 63/4 63/7 63/11
**Slawin's [8]** 8/3 9/3 17/3 24/5 24/6 38/3 40/13 41/3
**small [1]** 36/3
**so [109]**
**Solan [1]** 50/10
**sold [1]** 17/8
**sole [1]** 45/13
**solely [1]** 4/15
**some [35]** 6/3 6/12 9/17 11/16 12/14 13/22 14/1 15/16 19/7 20/2 20/10 22/21 33/22 35/7 36/3 36/23 38/18 42/25 43/3 43/4 44/20 45/11 45/15 46/25 47/6 47/25 50/3 50/17 52/13 54/9 58/16 62/22 62/22 66/2 69/5
**somebody [4]** 42/19 48/4 48/6 60/25
**somehow [2]** 48/13 49/2
**someone [4]** 6/6 23/21 30/3 67/1
**something [25]** 4/18 10/4 11/11 12/16 21/6 23/17 23/21 31/25 32/1 32/2 36/17 38/15 39/9 40/9 41/7 43/1 49/4 56/14 57/24 59/10 59/11 60/4 60/4 60/15 60/17
**sometimes [5]** 32/8 32/8 36/1 36/2 61/5
**somewhat [1]** 48/4
**sorry [9]** 3/9 12/6 30/5 31/8 31/8 32/24 57/1 66/15 70/9
**sort [8]** 6/16 8/22 8/23 29/6 32/1 36/23 60/6 65/24
**sorts [2]** 69/1 69/12
**sounds [3]** 9/20 47/23 64/22
**sources [1]** 38/12
**SOUTHWEST [1]** 1/21
**SOX [1]** 63/9
**speak [3]** 6/4 23/7 32/21
**speaking [1]** 53/4
**specific [3]** 11/19 34/12 39/9
**specifically [3]** 8/20 12/1 16/5
**specifics [2]** 30/9 39/13
**spectrum [1]** 34/18
**speculating [1]** 60/22
**speculation [1]** 49/5
**spend [2]** 11/14 22/22
**spending [2]** 37/21 37/22
**spent [1]** 56/8
**spoke [1]** 28/22
**spoliation [1]** 26/20

**stage [1]** 20/9
**standard [2]** 56/17 63/11
**start [2]** 26/7 31/14
**started [4]** 3/7 11/16 16/2 68/16
**starting [1]** 16/3
**state [5]** 7/5 7/6 12/7 12/10 34/22
**stated [5]** 7/21 44/10 50/13 66/20 72/11
**statement [8]** 6/9 6/15 7/9 9/12 9/15 14/20 18/3 57/5
**statements [1]** 66/6
**states [7]** 1/1 1/12 1/21 18/3 72/3 72/7 72/17
**status [1]** 16/18
**STENOGRAPHY [1]** 1/18
**step [1]** 5/7
**still [10]** 18/24 18/25 21/24 26/5 28/12 33/11 40/1 60/24 61/4 68/17
**stipulate [7]** 21/9 21/25 22/20 45/9 58/9 70/8 70/13
**stop [3]** 18/14 18/15 56/20
**storage [5]** 31/21 32/12 34/24 35/3 40/1
**stored [3]** 32/15 40/8 43/1
**straightforward [1]** 33/24
**straitjacketed [1]** 15/17
**strings [1]** 58/5
**struggling [1]** 32/22
**stuff [1]** 42/4
**subject [1]** 27/5
**submission [1]** 68/7
**submitted [2]** 16/6 27/21
**subpart [1]** 33/19
**subparts [1]** 33/17
**subpoints [1]** 30/8
**subprovisions [1]** 38/1
**subsequently [1]** 2/14
**subset [3]** 36/3 65/8 65/11
**substance [1]** 23/17
**substitute [1]** 13/17
**substituted [1]** 19/1
**substituting [1]** 14/18
**substitution [2]** 15/19 16/15
**subtopics [3]** 30/25 32/4 32/5
**such [5]** 9/3 45/9 61/17
**sudden [1]** 30/7
**suffered [1]** 8/14
**sufficient [2]** 30/21 68/4
**sufficiently [1]** 48/18
**suggestion [1]** 57/12
**summary [2]** 5/6 13/2
**supplement [1]** 11/2
**supplemental [2]** 19/22 68/7
**supposed [2]** 40/7 40/9
**suppress [1]** 20/12
**sure [14]** 12/10 16/4 40/6 40/22 47/7 48/22 51/2 51/17 53/21 60/10 61/24 64/10 64/20 70/19
**surfaced [1]** 37/7
**system [10]** 33/12 34/24 35/3 35/14 35/19 40/1 41/22 43/16 57/16 58/10
**system's [1]** 36/1
**systems [3]** 31/21 32/12 34/9

**T**

**take [9]** 5/22 33/23 38/5 44/18 48/4 54/5 57/12 68/8 68/8
**taken [5]** 8/3 21/1 55/10 62/2 68/14

**takes [2]** 47/19 27/24
**taking [1]** 7/11
**talk [16]** 16/22 17/1 21/24 39/19 51/16 52/24 53/3 53/24 56/19 57/11 58/14 59/7 63/20 64/12 66/9 66/13
**talked [2]** 23/15 28/8
**talking [12]** 5/10 28/1 31/14 37/12 37/21 42/20 52/2 53/22 60/9 66/15 70/6 70/9
**targeting [1]** 4/5
**TED [1]** 1/21
**teleconference [1]** 3/4
**TELEPHONE [1]** 1/10
**telephones [1]** 41/19
**tell [16]** 6/23 6/25 8/21 9/24 13/15 20/24 21/3 30/19 34/6 34/7 34/9 35/7 37/9 38/6 38/6 45/18
**telling [5]** 21/5 32/10 52/8 63/15 67/22
**ten [5]** 16/25 25/13 25/13 30/8 34/9
**tender [1]** 10/19
**terminated [3]** 10/9 17/3 45/14
**termination [6]** 24/6 39/16 39/17 39/21 41/9 49/21
**terms [6]** 6/18 15/1 15/3 15/11 31/15 62/12
**testified [20]** 10/4 23/18 24/1 24/4 25/3 46/18 47/6 47/24 50/7 50/11 50/15 51/2 51/5 52/3 52/17 54/10 60/12 63/6 63/7 66/21
**testify [18]** 7/16 11/23 24/10 24/22 27/15 28/9 47/5 47/25 48/10 48/14 49/2 54/17 54/21 55/2 58/21 59/5 61/24 62/16
**testifying [5]** 37/19 44/13 44/14 51/20 67/15
**testimony [31]** 8/6 10/7 10/13 10/14 10/20 25/23 26/9 26/25 27/22 41/20 42/16 44/1 44/6 44/19 44/22 45/9 45/20 46/6 46/11 46/15 47/20 48/2 49/4 49/19 50/1 50/22 51/13 53/13 53/15 67/6 72/12
**text [15]** 32/6 32/8 32/14 33/17 33/20 34/6 38/17 38/18 39/16 39/18 40/24 41/17 41/17 41/18 41/21
**than [17]** 6/13 9/14 15/17 18/8 21/5 22/2 26/7 32/3 37/23 38/8 40/9 46/11 51/20 56/25 57/2 57/2 61/4
**Thank [8]** 11/5 16/1 42/12 55/19 70/4 71/12 71/14 71/16
**that [522]**
**That's [5]** 21/20 22/1 27/18 29/11 64/3
**their [10]** 3/11 7/12 17/6 17/10 20/13 33/12 38/12 38/12 41/11 46/4
**them [44]** 14/1 15/8 19/13 19/15 19/20 24/16 24/18 24/19 31/10 31/11 32/8 32/8 33/22 38/18 38/18 38/22 38/23 42/21 42/24 42/25 45/25 47/7 50/3 50/4 51/14 54/1 56/11 56/17 59/14 59/15 65/1 65/1 65/15 65/15 65/16 66/1 66/22 67/8 67/8 67/9 67/10 67/24 68/4 69/23
**then [31]** 5/8 5/14 8/25 9/15 9/16 10/23 15/9 20/3 20/23 21/10 21/23 22/14 22/21 22/22 25/17 32/14 36/17 36/18 37/8 39/24 40/4 43/21 50/6 53/16 55/18 60/17 62/20 63/22 68/10 71/11 71/17
**theory [1]** 13/17
**there [115]**
**thereafter [1]** 27/10

84

**T**

**thereby [1]** 71/19
**therein [1]** 72/11
**these [42]** 8/16 9/7 11/14 13/22 13/25 14/15 14/16 14/21 14/21 15/10 15/12 16/18 24/8 26/19 26/20 28/16 33/3 42/19 45/1 45/4 46/25 47/2 47/6 47/19 49/4 49/7 50/16 50/17 54/1 54/17 55/7 55/7 55/10 56/4 56/15 58/13 59/2 59/3 61/25 63/23 64/2 69/1
**they [117]**
**thing [9]** 8/22 11/6 12/9 23/16 32/13 33/18 43/2 69/1 70/23
**things [14]** 3/12 9/7 13/22 16/17 26/19 30/17 32/7 34/19 37/23 40/8 40/24 40/25 41/19 67/18
**think [70]** 3/11 7/8 7/22 7/24 8/10 8/11 8/14 8/21 9/11 9/11 10/2 10/6 15/1 15/15 15/22 18/1 18/6 18/10 18/23 19/4 20/6 20/12 20/14 20/15 20/17 20/19 20/23 20/25 21/2 22/17 22/19 23/4 26/22 27/3 27/12 31/4 34/22 34/25 35/6 35/11 36/23 36/24 37/10 37/11 38/7 42/17 43/9 43/15 46/6 47/18 47/18 50/21 55/25 59/9 60/16 60/24 60/25 62/12 63/9 65/3 65/7 65/12 66/5 67/24 67/25 68/8 69/2 69/4 70/2 70/16
**thinking [2]** 10/19 49/22
**thinks [3]** 7/25 8/7 36/17
**third [2]** 45/11 45/18
**this [137]**
**those [47]** 3/21 4/5 5/18 5/25 6/3 7/1 7/15 11/24 11/25 12/15 13/10 27/24 29/3 29/3 29/24 30/21 33/1 40/7 40/8 40/13 40/16 41/11 41/15 41/16 41/19 42/6 45/22 45/25 47/5 49/25 50/3 50/7 54/9 55/6 57/6 57/8 58/16 61/14 61/15 61/17 62/22 64/8 64/19 65/8 66/7 67/13 69/19
**though [3]** 41/2 53/15 63/22
**thought [6]** 6/23 11/13 35/9 35/9 38/20 47/19
**three [3]** 15/13 15/21 37/8
**through [11]** 3/20 6/12 12/2 39/2 39/13 51/22 53/23 54/1 55/25 56/3 56/8
**throughout [2]** 28/23 41/13
**time [35]** 11/9 11/12 11/15 13/17 17/7 17/22 17/22 22/3 22/13 22/22 27/9 28/12 30/12 34/8 35/24 37/9 37/21 37/22 45/11 46/7 47/1 49/12 49/18 49/20 49/20 49/22 49/23 49/23 53/18 55/13 56/8 56/11 57/21 60/9 67/10
**timeline [1]** 17/2
**timely [2]** 11/2 33/3
**times [4]** 16/16 25/12 70/21 70/22
**today [7]** 4/8 6/2 6/11 17/2 44/23 67/18 70/22
**together [12]** 13/25 14/17 14/24 15/12 15/22 56/4 56/11 56/15 58/18 58/19 58/22 65/15
**told [13]** 5/14 26/6 28/13 35/4 37/8 38/19 49/10 52/4 58/6 63/2 63/3 63/5 63/7
**too [1]** 5/17
**took [1]** 50/1
**topic [32]** 6/18 13/2 13/25 14/4 14/10 17/14 20/16 20/18 27/14 31/16 31/19

91/19 32/16 39/25 43/16 43/16 43/22 48/13 52/23 53/22 53/25 55/8 59/22 60/24 61/6 64/5 65/20 66/2 66/17 70/6 70/10 70/11
**topics [24]** 3/18 3/21 3/22 4/7 4/9 5/18 6/1 6/7 6/7 13/23 30/15 31/7 33/3 40/4 40/7 52/25 53/23 53/24 55/6 55/9 55/11 55/13 59/1 67/16
**TOTENBERG [2]** 1/11 3/6
**Totenberg's [2]** 42/7 68/16
**touch [4]** 28/7 28/16 29/3 29/4
**track [2]** 46/2 55/2
**tracked [2]** 24/15 46/3
**tracking [1]** 34/12
**traded [1]** 10/9
**transcript [7]** 1/1 1/5 1/7 1/8 1/10 1/19 72/9
**transcripts [1]** 1/2
**transfer [1]** 20/13
**transfers [1]** 14/11
**transitory [4]** 23/11 23/24 37/17 38/19
**travels [1]** 4/1
**treat [3]** 25/19 25/19 66/1
**trial [4]** 7/13 9/16 10/14 56/13
**tried [5]** 9/16 20/7 20/15 49/15 56/10
**true [7]** 20/23 21/7 21/8 43/2 51/9 66/25 72/9
**try [4]** 8/9 20/10 28/5 60/8
**trying [9]** 13/8 15/7 20/12 20/21 22/5 35/23 37/7 40/8 45/21
**turn [2]** 18/17 35/10
**TURNER [1]** 1/21
**turns [1]** 70/3
**twice [1]** 16/11
**two [12]** 3/25 4/1 4/5 7/15 12/1 17/5 19/7 30/14 54/20 57/19 61/5 66/22
**typically [1]** 8/17

**U**

**ultimate [2]** 50/16 51/6
**ultimately [3]** 17/8 22/4 50/23
**under [7]** 13/16 13/18 44/16 52/18 55/12 60/23 63/9
**underlying [2]** 33/8 62/6
**understand [35]** 3/18 8/3 11/4 13/6 14/3 14/7 14/11 14/18 14/25 18/6 20/22 20/24 28/18 32/18 32/25 33/7 34/11 36/7 36/12 36/15 37/18 37/19 40/7 40/22 42/3 43/25 46/5 54/4 55/25 62/4 62/5 62/6 63/21 65/10 67/19
**understanding [13]** 4/3 5/17 5/20 17/16 18/25 19/9 29/20 42/18 46/22 47/1 52/5 59/23 71/11
**understands [1]** 53/21
**understood [3]** 42/20 50/11 56/21
**undertake [1]** 52/15
**UNDERWOOD [7]** 2/9 28/6 31/3 41/24 50/14 52/2 54/10
**undue [1]** 42/7
**unduly [1]** 13/9
**unexpected [1]** 4/18
**unfortunately [3]** 6/23 27/19 27/19
**unintelligible [10]** 39/19 39/21 50/5 51/16 53/3 56/19 57/11 59/7 63/20 66/13
**UNITED [6]** 1/1 1/12 1/21 72/3 72/7 72/17
**unless [1]** 6/12

**until [7]** 4/16 20/13 23/2 37/3 37/4 38/9 55/11
**untimely [2]** 17/19 17/20
**up [13]** 3/19 6/17 10/6 13/3 17/9 20/15 31/19 32/21 33/4 41/14 41/23 63/24 63/25
**upon [4]** 29/25 30/19 40/12 57/15
**us [18]** 7/11 20/11 23/21 30/19 34/6 34/7 34/9 35/7 35/25 37/9 38/6 38/6 40/15 51/13 55/11 68/17 69/5 69/23
**use [5]** 25/7 29/1 30/24 42/9 45/22
**used [9]** 23/14 23/17 24/1 24/2 24/4 27/25 27/25 37/9 57/7
**using [3]** 11/12 40/21 41/21

**V**

**value [2]** 45/21 46/5
**vast [2]** 52/3 57/6
**vendors [1]** 14/22
**venture [11]** 13/3 14/13 14/14 15/20 15/21 16/25 17/4 17/12 17/15 29/24 34/8
**venturers [1]** 17/6
**verified [5]** 21/14 67/5 67/12 67/14 67/23
**Verisign [5]** 14/23 62/19 62/20
**very [14]** 25/23 26/11 29/18 33/15 34/12 36/7 37/25 39/9 62/7 63/9 63/17 70/1 70/4 71/12
**view [5]** 20/20 20/21 29/16 42/3 47/3
**viewable [1]** 25/20
**viewed [1]** 33/10
**vital [1]** 36/17
**VP [1]** 51/10
**VP/GM [1]** 51/10
**vs [1]** 1/5

**W**

**waited [2]** 26/8
**walk [1]** 6/12
**want [22]** 4/24 9/1 12/21 13/13 18/16 19/21 28/17 34/16 34/23 39/13 40/6 40/22 42/19 45/4 53/12 53/21 58/14 62/11 64/12 65/14 67/1 70/5
**wanted [3]** 11/19 56/21 70/14
**wants [5]** 12/13 43/25 44/5 53/24 55/22
**was [155]**
**wasn't [11]** 5/11 23/22 23/22 23/22 25/20 25/24 44/13 48/2 49/9 50/2 54/21
**waste [1]** 35/23
**way [19]** 6/12 6/13 8/16 9/23 24/5 25/19 34/19 35/8 37/3 42/2 42/24 53/11 58/21 58/24 58/25 64/16 65/3 66/9 67/2
**we [224]**
**we'll [14]** 3/12 4/11 6/16 22/9 27/16 30/3 39/24 53/16 53/17 59/20 60/7 60/7 66/1 68/10
**we're [54]** 3/6 4/5 4/7 5/13 5/20 7/24 8/5 14/8 14/12 14/18 15/19 17/1 17/2 18/8 20/12 20/13 26/17 26/22 28/5 28/15 29/9 31/23 36/10 36/20 37/10 37/12 37/20 40/7 42/3 42/10 42/20 43/9 45/8 45/21 46/9 47/18 51/2 51/25 52/2 53/22 53/23 53/25 54/5 54/5 57/13 59/3 60/9 61/21 61/21 66/15 67/17 67/24 71/13 71/17
**we've [1]** 68/25

**W**

**wear [1]** 61/5
**weeds [3]** 23/5 30/7 30/21
**week [3]** 28/22 69/23 69/24
**weeks [1]** 31/10
**WELCH [3]** 1/20 72/6 72/16
**well [55]** 5/15 6/8 8/12 9/2 10/16 10/17 13/21 15/7 15/8 15/18 18/14 19/25 20/17 21/16 22/21 23/10 23/20 24/24 26/13 26/24 27/2 28/11 28/11 29/6 31/18 32/4 32/11 33/9 34/6 35/5 35/12 36/14 38/9 39/24 40/21 42/23 44/9 45/4 45/16 47/21 50/19 52/1 53/10 54/16 55/4 56/2 56/23 58/16 60/16 62/1 66/3 66/21 67/10 69/21 70/2
**went [10]** 3/20 12/2 29/24 37/11 40/4 41/4 41/5 43/7 51/22 62/18
**were [79]**
**weren't [2]** 33/3 55/12
**what [146]**
**whatever [8]** 21/17 21/21 26/16 54/3 56/17 63/24 69/9 71/10
**when [34]** 3/14 4/12 4/25 5/4 11/7 15/5 16/14 18/24 19/13 26/5 30/9 30/12 30/25 31/2 31/25 37/6 38/13 40/21 41/2 46/12 49/15 50/1 52/10 57/24 58/23 60/9 63/4 63/18 67/9 68/22 68/23 68/25 69/5 70/6
**where [15]** 8/19 11/1 11/14 15/5 26/20 30/2 30/18 32/15 33/12 34/11 37/10 40/8 42/7 43/14 61/11
**whereof [1]** 72/12
**whether [10]** 5/24 20/1 38/14 45/14 46/20 47/9 50/16 53/17 63/4 63/16
**which [48]** 7/17 7/18 8/8 10/2 12/23 14/5 14/22 14/24 17/15 17/18 18/4 20/4 20/14 20/19 22/12 23/16 24/15 25/1 25/6 26/3 26/10 29/8 30/6 30/18 30/23 31/16 32/6 35/8 38/8 40/3 43/7 43/21 45/14 48/10 48/13 50/24 51/12 54/9 54/10 54/15 56/8 56/17 57/15 58/3 62/16 63/12 65/15 70/6
**while [4]** 11/13 25/7 51/10 52/15
**who [42]** 5/1 16/8 16/9 16/19 17/17 17/17 18/2 18/6 18/7 18/11 18/11 18/16 18/16 18/20 18/22 22/14 23/14 24/7 24/22 28/23 28/25 29/1 30/9 33/23 40/16 40/19 41/7 42/8 42/19 45/12 48/4 48/10 50/17 52/8 52/8 54/11 54/25 55/22 57/7 57/8 60/11 67/15
**whole [5]** 3/10 35/20 48/6 62/19 69/10
**why [24]** 8/22 9/24 13/15 15/22 19/19 19/23 19/23 20/18 20/20 20/20 20/25 21/5 23/6 37/20 37/21 37/22 37/22 40/25 53/1 58/17 58/22 63/18 64/21 67/19
**will [40]** 1/3 3/21 5/19 5/22 5/24 5/25 7/13 10/18 11/22 11/23 16/21 16/21 19/11 19/23 21/9 27/5 27/5 28/6 28/7 28/9 29/3 29/21 35/7 36/7 37/14 37/19 42/23 48/4 54/17 55/19 57/6 58/6 58/8 58/9 60/1 64/14 64/15 70/7 71/8 71/10
**willing [2]** 21/25 45/8
**wind [10]** 18/4 19/2 19/3 19/3 19/10 20/4 21/10 22/17 22/20 24/17
**wind-down [1]** 19/3
**winding [1]** 17/9
**winds [1]** 17/9
**wish [3]** 10/11 11/1 64/17
**wished [2]** 16/14 30/15
**withhold [1]** 63/2
**within [6]** 21/8 30/8 33/13 35/16 39/5 46/13
**without [8]** 11/12 26/8 30/21 35/13 52/20 56/9 69/3 71/10
**witness [72]** 3/18 3/21 4/10 4/11 5/1 5/5 5/9 5/10 5/14 6/3 6/5 6/7 7/7 7/9 7/16 10/6 11/22 16/21 22/22 23/7 23/14 24/1 24/4 24/14 27/4 27/13 27/17 27/17 28/5 29/19 29/21 30/16 30/18 30/24 31/1 34/17 37/14 37/22 44/14 44/18 46/8 48/16 51/3 52/16 52/16 53/8 55/2 55/22 56/2 58/14 58/21 59/4 59/12 59/25 60/2 60/5 60/18 61/4 61/9 61/24 62/16 63/23 64/12 64/13 64/14 64/16 65/1 66/7 66/9 67/15 67/17 67/24
**witnesses [13]** 24/7 27/24 28/1 37/9 55/6 55/7 55/8 56/16 57/7 58/13 60/11 61/5 64/8
**won't [2]** 34/23 56/14
**word [1]** 40/21
**work [3]** 8/15 49/10 69/12
**worked [1]** 24/18
**working [2]** 25/8 51/25
**works [1]** 46/3
**world [1]** 11/10
**worth [1]** 11/13
**would [72]** 4/10 5/1 5/5 5/14 6/5 8/8 8/20 8/23 8/25 8/25 9/1 9/5 10/3 10/3 10/4 10/13 10/15 10/23 10/23 12/11 12/17 13/9 15/9 16/7 20/7 20/20 21/10 22/6 22/20 23/20 25/14 25/23 27/20 28/3 29/1 30/23 31/20 32/2 33/9 35/15 36/4 39/11 39/21 41/17 42/6 47/12 48/15 49/2 49/6 51/6 51/18 51/22 55/25 56/16 57/8 59/4 60/4 60/21 61/9 62/1 62/8 63/13 63/16 66/6 67/19 68/22 69/4 69/7 70/13 71/1 71/6
**written [3]** 13/19 16/13 33/4

**Y**

**yea [1]** 21/17
**yeah [10]** 13/12 17/25 27/25 28/15 43/19 61/25 64/18 65/10 66/15 68/2
**year [8]** 10/9 16/12 17/20 21/15 37/5 51/23 54/2 61/11
**years [14]** 16/25 19/7 24/19 24/19 27/10 30/14 34/9 49/1 49/7 55/1 58/17 58/20 60/10 60/14
**yes [33]** 5/16 7/2 9/21 9/25 15/25 25/9 40/23 42/11 43/18 44/4 47/23 49/23 52/2 53/6 53/6 53/8 55/5 55/15 56/3 56/4 60/19 61/2 62/14 62/17 64/1 64/1 66/19 67/20 67/21 68/18 68/19 69/14 70/16
**yet [4]** 3/17 5/23 22/17 48/12
**you [202]**
**you'll [1]** 43/4
**you're [10]** 11/2 20/24 21/22 28/14 29/9 39/10 40/21 49/22 59/8 64/24
**you've [3]** 47/24 48/3 59/13
**you-all [1]** 33/20
**your [110]**
**yours [1]** 15/9
**yourselves [1]** 65/12