# Exhibit A

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 1

1          IN THE UNITED STATES DISTRICT COURT

           FOR THE NORTHERN DISTRICT OF GEORGIA

2                    ATLANTA DIVISION

3

ERIC SLAWIN,                    )

4                               )

     Plaintiff,                 )

5                               ) Civil Action File

vs.                             )

6                               ) Case No. 1:19-cv-04129-AT

BANC OF AMERICA MERCHANT        )

7   SERVICES, LLC, s/h/a BANK OF   )

AMERICA MERCHANT SERVICES,      )

8                               )

     Defendant.                 )

9

10

11          VIRTUAL VIDEOTAPED DEPOSITION OF

12                    ERIC SLAWIN

13               Tuesday, July 19, 2022

14                    9:31 a.m.

15

16          Robin K. Ferrill, CCR-B-1936, RPR

17

18

19

20

21

22

23

24

25

Page 2

1                    APPEARANCES OF COUNSEL
2    On behalf of the Plaintiff
     ROBERT N. MARX, Esquire
3         Marx & Marx, L.L.C.
          1050 Crown Pointe Parkway, Suite 500
4         Atlanta, Georgia  30338-7702
          404.261.9559
5         lawyers@marxlawgroup.com
6
7    On behalf of the Defendant
     CHRISTOPHER P. GALANEK, Esquire
8    AITEN M. McPHERSON, Esquire
          Bryan Cave Leighton Paisner LLP
9         1201 West Peachtree Street, N.W., 14th Floor
          Atlanta, Georgia  30309-3471
10        404.572.6600
          chris.galanek@bclplaw.com
11        aiten.mcpherson@bclplaw.com
12
13   ALSO PRESENT:
14        Jill Poole, Associate General Counsel FiServ
15        MIKE BROWN, Videographer
16        SHEILA LAFFERTY, Client Services Rep, BAMS
17        GEORGE LIBBARES, Concierge
18
19
20
21
22
23
24
25

Eric Slawin                                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 3

1                              INDEX

2              VIRTUAL VIDEOTAPED DEPOSITION OF

3                          ERIC SLAWIN

4                    Tuesday, July 19, 2022

5      EXAMINATION BY                                    PAGE

6      By Mr. Galanek                                        9

7

8

9

10

11                  DESCRIPTION OF EXHIBITS

12     EXHIBIT            IDENTIFICATION            PAGE

13     Exhibit 4   Bank of America Merchant Services   128

14                 onboarding information, Bates

15                 labeled PLAINTIFF 000141 - 149

16     Exhibit 5   Offer Letter from Brian Dieckhoff   147

17                 to Eric Slawin, dated 11/5/2015,

18                 Bates labeled PLAINTIFF 000150 -

19                 152

20     Exhibit 6   Proprietary Rights and Information   148

21                 Agreement, Bates labeled PLAINTIFF

22                 000155 - 156

23

24

25

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 4

1                    INDEX CONTINUED

2                DESCRIPTION OF EXHIBITS

3    EXHIBIT              IDENTIFICATION              PAGE

4    Exhibit 7   City of Deland, Florida Request     170

5                for Commission Action, dated

6                10/7/2013, Bates labeled PLAINTIFF

7                000157 - 158

8    Exhibit 8   E-mail from Mike Solan to Eric      212

9                Slain, dated 12/8/2017, Subject:

10               Action Required - Legal Affidavit

11               & Cease and Desist Letter -

12               Information Security Violation,

13               Bates labeled PLAINTIFF 000001 - 2

14   Exhibit 9   Letter from Meg Troughton to Eric   213

15               Slawin, dated 12/8/2017 with

16               attachment, Bates labeled

17               PLAINTIFF 000016 - 17

18   Exhibit 10  E-mail string Bates labeled         225

19               PLAINTIFF 000020 - 24

20   Exhibit 11  E-mail chain Bates labeled          228

21               PLAINTIFF 000025 - 31

22   Exhibit 13  E-mail string Bates labeled         233

23               PLAINTIFF 000037 - 39

24

25

Eric Slawin                                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

                                                    Page 5

1                   INDEX CONTINUED

2               DESCRIPTION OF EXHIBITS

3   EXHIBIT            IDENTIFICATION              PAGE

4   Exhibit 16  E-mail string Bates labeled        237

5               PLAINTIFF 000047 - 50

6   Exhibit 17  E-mail string Bates labeled        238

7               PLAINTIFF 000056 - 57

8   Exhibit 20  E-mail from Eric Slawin to Mark     239

9               Kendall, dated 6/2/2017, Subject:

10              check it out, Bates labeled

11              PLAINTIFF 000074 - 75

12  Exhibit 21  E-mail string Bates labeled         240

13              PLAINTIFF 000076 - 80

14  Exhibit 30  Georgia Form 500, Individual        108

15              Income Tax Return 2018, Bates

16              labeled PLAINTIFF 000589 - 592

17  Exhibit 32  North Carolina Department of        112

18              Revenue 2018 Individual Income Tax

19              Return, Bates labeled PLAINTIFF

20              000596 - 600

21

22

23

24

25

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 6

```
 1                    INDEX CONTINUED

 2                 DESCRIPTION OF EXHIBITS

 3   EXHIBIT           IDENTIFICATION            PAGE

 4   Exhibit 33  North Carolina Department of     115

 5               Revenue 2019 Individual Income Tax

 6               Return, Bates labeled PLAINTIFF

 7               000602 - 609

 8   Exhibit 34  Bank of America Merchant Services  173

 9               Merchant Processing Agreement

10               (Government), Bates labeled

11               PLAINTIFF 000612

12   Exhibit 36  U.S. Securities and Exchange      243

13               Commission TCR Summary, Bates

14               labeled PLAINTIFF 000665 - 671

15   Exhibit 37  E-mail string Bates labeled       244

16               PLAINTIFF 000672 - 673

17   Exhibit 42  Letter from Michael Solan to Eric  209

18               Slawin, dated 12/12/2017, Bates

19               labeled PLAINTIFF 000711 - 712

20

21

22

23

24

25
```

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 8 of 317
Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 7

1                    INDEX CONTINUED

2                  DESCRIPTION OF EXHIBITS

3    EXHIBIT              IDENTIFICATION              PAGE

4    Exhibit 43  Letter from Meg Troughton to Eric     207

5                Slawin, dated 12/8/2017, Bates

6                labeled PLAINTIFF 000713

7    Exhibit 49  Whistleblower Online Complaint,       248

8                Bates labeled PLAINTIFF 000739 -

9                743

10   Exhibit 51  E-mail chain Bates labeled BAMS       250

11               00000111 - 112

12   Exhibit 52  E-mail chain Bates labeled BAMS       251

13               00000129 - 131

14   Exhibit 53  E-mail string Bates labeled BAMS      253

15               00000157 - 158

16   Exhibit 57  E-mail string Bates labeled BAMS      254

17               00000464 - 468

18   Exhibit 64  Bank of America Merchant Services     154

19               Coaching Form for Eric Slawin,

20               dated 9/25/17, Bates labeled BAMS

21               00001368 - 1370

22

23       (Original exhibits attached to the Original

24    transcript.)

25

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 9 of 317
Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 8

 1              VIRTUAL VIDEOTAPED DEPOSITION OF

 2                        ERIC SLAWIN

 3                   Tuesday, July 19, 2022

 4          THE VIDEOGRAPHER:  We are on the record.

 5      My name is Mike Brown representing Veritext

 6      Legal Solutions.  The date is July 19th, 2022.

 7      The time on the video monitor is 9:31 a.m.

 8          Caption of the case is Eric Slawin versus

 9      Banc of America Merchant Services, LLC, et al.

10      The name of the witness, Eric Slawin.

11          Counsel, please state your name for the

12      record and whom you represent.

13          MR. GALANEK:  Chris Galanek.

14          MR. MARX:  Sorry.

15          MR. GALANEK:  Chris Galanek.  I'll be

16      taking the deposition.  I represent the

17      Defendant Bank of America Merchant Services.

18          MR. MARX:  Robert Marx of Marx & Marx for

19      the Plaintiff Eric Slawin.

20          MS. McPHERSON:  Aiten McPherson.  I

21      represent the Defendant as well.

22          THE VIDEOGRAPHER:  Our court reporter,

23      Robin Ferrill.

24          Will the court reporter please swear in the

25      witness.

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 9

1    ERIC SLAWIN,

2              called as a witness, having been duly sworn

3    by a Notary Public, was examined and testified as

4    follows:

5    EXAMINATION

6    BY MR. GALANEK:

7         Q.    Good morning, Mr. Swalin.

8         A.    It's Slawin.  It's Slawin.

9               And who is Sheila?  She didn't introduce

10   herself.  Who are you?

11        Q.    Sheila Lafferty is a client rep of BAMS.

12        A.    A client rep?  I don't know what that

13   means.  What does that mean?

14              MS. LAFFERTY:  I work in the Legal

15        Department of Fiserv and we are representing

16        BAMS in this matter.

17              MR. MARX:  I'm sorry, what was that last

18        name?  The last name?

19              MS. LAFFERTY:  Lafferty.

20              MR. MARX:  Lafferty.  Thank you very much.

21              THE WITNESS:  You work for Fiserv and you

22        get to attend the deposition?  I don't

23        understand that.

24              MR. GALANEK:  She is the corporate

25        representative representing BAMS.

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 10

1        Q.   (By Mr. Galanek) All right.  Mr. Slawin --

2        A.   Slawin.  Slawin.

3        Q.   -- have you ever had your deposition taken

4   before?  Slawin.

5        A.   No, I haven't.

6        Q.   And, Mr. Slawin, where are you sitting

7   today?

8        A.   My basement.

9        Q.   Where is that located?

10       A.   At my house.

11       Q.   Physical address, please?

12            MR. MARX:  Mr. Galanek, I have no problem

13       with him giving you his address, but can we --

14       the court reporter, can we leave it off the

15       record in terms of his address, his date of

16       birth and his social?

17            MR. GALANEK:  Mr. Marx, I don't think the

18       court reporter can leave anything off the

19       record.  We have got a Protective Order in this

20       case.  I fully expect that you will be

21       designating this appropriately.  And obviously

22       the deposition will never be filed with any

23       personal identifiable information.

24            MR. MARX:  Okay.  With that

25       representation -- so, Mr. Galanek, when you

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 11

1       file -- if you file the deposition, you will

2       redact that out, right?

3            MR. GALANEK:  Of course.  Personal

4       identifying information would be redacted out if

5       it was filed.

6            MR. MARX:  Okay.  Thank you.

7            You can go ahead and answer.

8       Q.   (By Mr. Galanek) Mr. Slawin, I need your

9   physical address, Mr. Slawin.

10       A.   3561 Cape York Trace, Alpharetta, Georgia,

11  30022.

12       Q.   And is there anyone else present in the

13  room with you today?

14       A.   No, there is not.

15       Q.   Do you have any electronic devices that are

16  currently in the room with you other than the

17  computer on which you are accessing this deposition?

18       A.   No, I do not.

19       Q.   Do you currently have any programs running

20  on this computer other than the Zoom link for

21  purposes of this deposition?

22       A.   No, I do not.

23       Q.   What did you do to prepare for your

24  deposition today?

25       A.   Just had a few meetings with my attorneys.

Page 12

1        Q.   How many?

2        A.   Three.

3        Q.   And when were those meetings?

4        A.   During the course of last week.

5        Q.   And where were the meetings conducted?

6        A.   At the offices of my attorney.

7        Q.   And that's your attorney, Robert Marx?

8        A.   Correct.

9        Q.   All three meetings were in person at his

10   office?

11       A.   I did one -- have one discussion over the

12   phone.

13       Q.   So there were two meetings in person and

14   one discussion over the phone?

15       A.   Correct.

16       Q.   When was the first meeting?

17       A.   Last Tuesday.

18       Q.   How long did the meeting last?

19       A.   Approximately eight hours.

20       Q.   Was there anyone else present during that

21   meeting?

22       A.   At one point, my other attorney, Jeannie

23   Marx.

24       Q.   And I don't want to know what you were

25   shown.  Were you shown any documents at that meeting,

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 13

1    however?

2        A.    Yes.

3        Q.    Were you shown any documents that have not

4    been produced in this case?

5        A.    No.

6        Q.    Were any of the documents you were shown

7    shown to you to refresh your recollection?

8        A.    Yes.

9        Q.    What documents were shown to you to refresh

10   your recollection?

11       A.    I don't remember all of them.  I will say

12   the Complaint, the OSHA complaint, and some

13   Interrogatories.

14       Q.    Was it the Interrogatories that were shown

15   to you or your responses to the Interrogatories?

16       A.    I'd say both.  It had the question and my

17   answer.

18       Q.    All right.

19       A.    Are the Interrogatories questions?  I'm

20   just trying to get comfortable with the legal jargon.

21       Q.    Yes, sir.

22       A.    Okay.

23       Q.    All right.  So that first meeting was eight

24   hours.  Was that meeting followed by the phone call

25   or another in-person meeting?

Eric Slawin                                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 14

1       A.    Another in-person meeting.

2       Q.    When did that meeting occur?

3       A.    Wednesday.

4       Q.    Last Wednesday?

5       A.    Correct.

6       Q.    That was also in the offices of Mr. Marx?

7       A.    Correct.

8       Q.    How long did that meeting last?

9       A.    About five hours.

10      Q.    Who else was present in that meeting, if

11  anyone?

12      A.    No one.

13      Q.    Were you shown any documents during that

14  meeting?

15      A.    Yes.

16      Q.    Were any of the documents that you were

17  shown during that meeting for purposes of refreshing

18  your recollection of events?

19      A.    Yes.

20      Q.    What documents were shown to you during

21  that meeting to refresh your recollection?

22      A.    The same ones as mentioned before.

23      Q.    All right.  And then you indicated there

24  was a third meeting, but that took place by

25  telephone.  When was that?

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 15

1       A.    Sunday.

2       Q.    That was the 17th?

3       A.    Hold on a second.  Let me confirm that

4    date.

5             Yes.

6       Q.    And who participated in that telephone

7    call?

8       A.    Just my attorney, Robert Marx.

9       Q.    And how long was that call?

10      A.    About four or five hours.

11            What was that ping?  What did that mean?

12      Q.    Sorry?

13      A.    There was a pinging.  What is that -- what

14   did that mean?

15      Q.    I have no idea.  I didn't hear a ping.

16      A.    Okay.

17      Q.    All right.  So your call on Sunday with

18   Mr. Marx lasted four or five hours.  Other than

19   meeting with your counsel, did you do anything else

20   to prepare for your deposition today?

21      A.    No.

22      Q.    Did you review any other documents other

23   than those provided to you by your counsel?

24      A.    No.

25      Q.    Are you on any medication today?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 16

1        A.    Just some heart medication.

2        Q.    What medication?

3        A.    Metoprolol.  I don't think I'm pronouncing

4    it correctly.

5        Q.    Anything else?

6        A.    No.

7        Q.    You currently take any other prescription

8    medication?

9        A.    At times, I take allopurinol, lisinopril,

10   Tadalafil.  I can't pronounce that, but it's for my

11   prostate.

12       Q.    Anything else?

13       A.    No.

14       Q.    And what conditions are those medications

15   used to treat?

16       A.    High blood pressure, excessive heart rate.

17   The prostate drug is -- I have prostate cancer, so

18   I'm being treated for it.  So it keeps me -- keeps my

19   prostate, I guess, from enlarging and so I cannot

20   urinate.  And the allopurinol is for gout.

21       Q.    When were you first diagnosed with high

22   blood pressure?

23       A.    Twenty years ago now.

24       Q.    When were you diagnosed with prostate

25   cancer?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 17

1          A.    Two years ago.

2          Q.    I'm sorry.  You cut out.

3          A.    Oh, I apologize.  Approximately two years

4     ago.  A little more than two years ago.

5          Q.    Are you in any way impaired today so that

6     you could not give your best truthful testimony?

7          A.    No, sir.  No.

8          Q.    Obviously, in this lawsuit, you are suing

9     Bank of America Merchant Services.  Is it all right

10    with you if I refer to that entity as "BAMS" during

11    the course of the day today?

12         A.    That's fine with me.

13         Q.    If it confuses you in any way, please let

14    me know.

15               Other than your lawsuit against BAMS, have

16    you been involved in any other lawsuits?

17         A.    No.

18         Q.    Have you asserted any claims against any

19    party in any administrative form?

20         A.    I don't really understand that question.

21         Q.    This is a lawsuit you are involved in.

22    It's been filed in court.  My question is, have you

23    been involved in asserting any other claim before any

24    administrative agency?  MLRB?  OSHA?  The EEOC?  Any

25    administrative agency, Federal or state?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 18

1      A.    So prior to this filing of this lawsuit, I
2  did file a complaint with OSHA.
3      Q.    Other than filing a complaint with OSHA,
4  have you filed a complaint with any other
5  administrative agency against either BAMS or any
6  other party?
7      A.    Can you define "complaint," please?  I
8  don't understand.  I mean, it's just such a broad
9  term to me.
10     Q.    Sure.
11          Have you asserted any claim of any type in
12  any forum against anyone?
13     A.    A claim against anyone.  What does that
14  mean?
15     Q.    Have you asserted -- made an allegation
16  against anyone of any wrongful conduct in any form?
17     A.    Anyone?  Who is anyone?
18     Q.    Anyone.  Any person, any entity.
19     A.    Well, I -- yes, I did file -- I guess you
20  would say file something with the SEC and CFPB.
21     Q.    And the claims that were filed with OSHA,
22  the SEC and the FCPB, did those all relate to the
23  same allegations that are set forth in your Complaint
24  that is pending in the Northern District of Georgia?
25     A.    Yes.

Eric Slawin                                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 19

1      Q.    You also filed an action with the NLRB.

2      A.    I don't know who that is.

3      Q.    National Labor Relations Board.

4      A.    I -- no, I don't recall doing that.

5      Q.    Did you ever authorize the filing of an

6  action on your behalf with the National Labor

7  Relations Board?

8      A.    No.

9      Q.    Completely separate from this lawsuit, have

10 you ever been involved in any other court proceeding?

11     A.    Court proceeding?  Do you mean something

12 that went to court?

13     Q.    I mean anything that was filed in a court.

14     A.    No.

15     Q.    Never had a traffic ticket?  Never had to

16 appear because of an arrest?  No divorce papers,

17 nothing along those lines?

18     A.    Oh, I have had a speeding ticket.

19     Q.    Anything else?

20     A.    No.

21     Q.    Have you ever been arrested?

22     A.    No.

23     Q.    You were never arrested for possession of

24 marijuana?

25     A.    Yes, I was in -- when I was -- prior to

Eric Slawin                                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 20

1    being an adult.  I think I was 17.  I take that back.

2    I apologize.

3         Q.   Were you arrested more than one time for

4    possession of marijuana?

5         A.   No.  Actually, I don't know if I was

6    arrested.  So -- but that's years ago.  So I was a

7    minor.

8         Q.   Where did that occur?

9              Where did that occur?

10        A.   In Florida.

11        Q.   Where in Florida?

12        A.   Brandon.

13        Q.   Who lives with you currently in your home

14   in Alpharetta?

15        A.   My wife, my daughter --

16        Q.   What's -- I'm sorry, what's your wife's

17   name?

18        A.   Kimberly.

19        Q.   And is your daughter a minor or an adult?

20        A.   An adult.

21        Q.   And how old is she?

22        A.   Eighteen.

23        Q.   Anyone else live at your home?

24        A.   My sister-in-law.

25        Q.   And what is her name?

Eric Slawin                                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 21

 1        A.    Karen.

 2        Q.    How long has your sister-in-law lived in

 3   your home?

 4        A.    Approximately about three years or so.

 5        Q.    But she moved into your home in 2019?

 6        A.    Yes.

 7        Q.    What is her last name?

 8        A.    Hardtke.

 9        Q.    Anyone else live in your home?

10        A.    No.

11        Q.    Has anyone else lived in your home since

12   2015 other than your wife, your daughter, yourself

13   and your sister-in-law?

14        A.    My son.

15        Q.    How old is your son?

16        A.    Twenty-two.

17        Q.    When was the last time he lived in the home

18   with you?

19        A.    2018.

20        Q.    Anyone else lived in your home with you

21   since 2015?

22        A.    No.

23        Q.    For any period of time?  More than a week?

24        A.    No.

25        Q.    Neither your mother nor your mother-in-law

Eric Slawin                                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 22

1    ever lived in your home in Alpharetta?

2         A.    My mother-in-law did.

3         Q.    When was that?

4         A.    I don't know the exact dates.  I don't

5    remember when she passed away.  I don't know.  I

6    don't remember.

7         Q.    How many years did your mother-in-law live

8    in the home with you?

9         A.    Approximately one.

10        Q.    Did she live in the home with you until she

11   passed away?

12        A.    Yes.

13        Q.    Now, did any of these other individuals

14   that you have identified who have lived in your home

15   since 2015 have employment outside of the home?

16        A.    No.

17        Q.    Were you responsible for the financial

18   support of each of the individuals that you have just

19   mentioned who lived in your home at any point in time

20   since 2015?

21        A.    Yes.

22        Q.    Anyone that we haven't discussed who has

23   lived in your home since 2015?

24        A.    No.

25        Q.    What's your educational background?

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 23

1      A.    I have a Bachelor's degree in finance.

2      Q.    From where?

3      A.    The University of Florida.

4      Q.    When did you graduate?

5      A.    1991.

6      Q.    Any further education after receiving your

7   Bachelor's degree?

8      A.    Yes.

9      Q.    Tell me about that further education.

10     A.    It was IT-related.  I attended Columbia

11  University and New York University.

12     Q.    When?  When did you attend Columbia

13  University?

14     A.    In the early nineties.

15     Q.    Did you actually receive a degree or some

16  sort of certification?

17     A.    A certification.

18     Q.    What certification did you receive?

19     A.    It was related to IT.

20     Q.    Can you give me any more detail than that?

21     A.    No.  That's what it was.  Is was

22  IT-related.

23     Q.    So it was just called a certificate of IT?

24     A.    I think so.  Yes.

25     Q.    How long was the course of study to receive

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 24

1    that certification?

2         A.   Approximately two years.

3         Q.   You said you also took additional or had

4    additional education at New York University?

5         A.   Yes.

6         Q.   When was that?

7         A.   Same, same timeframe.

8         Q.   So it was a joint program between Columbia

9    University and New York University?

10        A.   No.

11        Q.   So what type of program did you attend at

12   New York University?

13        A.   Again, IT-related.

14        Q.   Did you receive some sort of certification?

15        A.   No.

16        Q.   Some sort of degree that you received as a

17   result of that training?

18        A.   No.

19        Q.   Are there any other certifications that you

20   hold?

21        A.   Some time ago I obtained a CCNA.

22        Q.   I'm sorry, that was PCNA?

23        A.   A CCNA.

24        Q.   CC.  What does that stand for?

25        A.   I don't know.

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 25

1      Q.    But what was the area of study for the

2    CCNA?

3      A.    I didn't study for that.

4      Q.    What type of certification was it?

5      A.    It was to run the op part -- to know about

6    the operating system for a -- for Cisco routers.

7      Q.    When did you receive that certification?

8      A.    Approximately the same timeframe.

9      Q.    Any other certifications that you hold?

10     A.    Can you define "certification," please?

11     Q.    Yes.  It's something other than a degree.

12   Something other than a professional license, but that

13   you have taken some sort of coursework for and that

14   you received some sort of documentation of

15   completion.

16     A.    No.

17     Q.    Do you hold any professional licenses?

18     A.    No.

19     Q.    Have you ever held any professional

20   licenses?

21     A.    Yes.

22     Q.    What professional licenses have you held?

23     A.    I had a Series 7, a Series 24 and a

24   Series 63.

25     Q.    Sorry, 53?

Page 26

1      A.    Sixty-three.

2      Q.    During what period of time did you hold a

3   Series 7?

4      A.    From the, I would say, mid-to-late nineties

5   until 2012 or '13.

6      Q.    Was there a particular brokerage house that

7   held that license for you?

8      A.    Yes.

9      Q.    Who?

10      A.    It was SunTrust Securities.

11      Q.    During what period of time did you hold the

12   Series 24?

13      A.    During the same amount of time.

14      Q.    Was that also held by SunTrust?

15      A.    Yes.

16      Q.    And the Series 63, during what period of

17   time did you hold Series 63?

18      A.    The same amount of time.

19      Q.    Was that also maintained with SunTrust?

20      A.    Yes.

21      Q.    Any other professional license that you now

22   hold or have ever held?

23      A.    No.

24      Q.    Any other certifications that you currently

25   hold or that you have ever held?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 27

1      A.    No.

2      Q.    Any other education that you have received

3   that you have not already described to me?

4      A.    No, not -- in high school.

5      Q.    Do you have any legal training?

6      A.    What do you mean by "legal training"?

7      Q.    Just that.  Have you ever taken any course,

8   any training whatsoever with respect to any legal

9   issue?

10     A.    I, at one point, took some classes to take

11  the LSAT.

12     Q.    Did you actually take the LSAT?

13     A.    No.

14     Q.    When did you take those classes?

15     A.    I don't remember.  I mean, approximately

16  2010.

17     Q.    Do you have any particularized legal -- or

18  particular training dealing with compliance with

19  Sarbanes-Oxley?

20     A.    Sarbanes-Oxley.  No.  No, not really.

21     Q.    Do you have any training dealing with

22  compliance with regulations and the requirements of

23  the CFPA?

24     A.    I don't know who the CFPA is.

25     Q.    They were financial -- or, excuse me,

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 28

1    Consumer Financial Protection Act.

2         A.    No.

3         Q.    Do you have any training with respect to

4    compliance with the terms of Dodd-Frank?

5         A.    No.

6         Q.    Any other professional education or

7    training that you have undertaken since leaving

8    college that we have not discussed?

9         A.    I did take a few classes at the New York

10   Institute of Finance.

11        Q.    When was that?

12        A.    Maybe beginning of 2000s.

13        Q.    What type of coursework?

14        A.    It was related to broker-dealer compliance.

15        Q.    And did you receive any sort of degree or

16   certification as a result of taking those courses?

17        A.    No.

18        Q.    Were those courses taken with the intent of

19   receiving some sort of certification or degree?

20        A.    No.

21        Q.    Any other professional education or

22   training since you left college that we have not

23   discussed?

24        A.    No.

25        Q.    Are you currently employed?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 29

1        A.    Yes.

2        Q.    Where are you currently employed?

3        A.    That I have some apprehension about.  You

4   know, I think we talked about that in the

5   Interrogatories.  I -- you know, I don't want to be

6   retaliated against or anything like that.

7        Q.    Sir, where are you currently employed?

8        A.    USAA.

9        Q.    What role do you play at USAA?

10       A.    I am a lead.

11       Q.    Functionally, what duties do you perform

12   for USAA?

13       A.    I handle escalated matters.

14       Q.    What type of escalated matters?

15       A.    What type?  Various.

16       Q.    Give me an example.

17       A.    I write controls.

18       Q.    What types of controls do you write?

19       A.    What type of controls?  Business-related

20   purposes.

21       Q.    For what business units of USAA?

22       A.    Claims.

23       Q.    For which line of insurance?

24       A.    Auto.

25       Q.    Do you work from a USAA office or do you

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 30

1    work remotely?

2          A.    Both.

3          Q.    When you work in the office, where is the

4    office located?

5          A.    Tampa, Florida.

6          Q.    How frequently do you work out of the

7    Tampa, Florida office?

8          A.    Approximately five days a month.

9          Q.    And do you have a supervisor?

10         A.    Of course.

11         Q.    Who is that supervisor?

12         A.    Liz.

13         Q.    What is Liz' last name?

14         A.    L-y-s-s-y, Lyssy.

15         Q.    What is her title?

16         A.    Director.

17         Q.    Director of what?

18         A.    Controls.  I don't -- I don't know beyond

19    Director.

20         Q.    How long have you worked for Ms. Lyssy?

21         A.    Approximately a year.

22         Q.    How long have you worked with USAA?

23         A.    About two and a half years.

24         Q.    When did you start?

25         A.    April of 2019.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 31

1       Q.    Your compensation fixed or variable?

2       A.    What does that mean?

3       Q.    Do you have a base salary?

4       A.    Yes.

5       Q.    What is your base salary?

6       A.    Approximately 125,000.

7       Q.    Is there any variable component to your

8    compensation, either commissions or bonuses?

9       A.    There is a bonus.

10      Q.    Is that bonus discretionary or is that

11   bonus an earned bonus for having set benchmarks over

12   the course of the year?

13      A.    I would say, based on that description,

14   it's discretionary.

15      Q.    What is the bonus potential?

16      A.    I don't know.  I don't know if it's limited

17   or unlimited.  I don't know.

18      Q.    Did you receive a bonus in 2021 from USAA?

19      A.    '21?

20      Q.    Last year.

21      A.    Last year?  Yes.  Must have.

22      Q.    How much?  How much?

23      A.    I don't remember.  10,000.  I don't

24   remember.

25      Q.    Is your income reported on a W-2 from USAA?

Eric Slawin                           July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 32

1        A.    Yes.

2        Q.    So your total income from last year should

3   be properly reported on a W-2; is that correct?  To

4   the extent earned from USAA?

5        A.    Yes.

6        Q.    USAA provide you with benefits?

7        A.    What do you mean by "benefits"?

8        Q.    Health insurance?

9        A.    I pay for it.

10       Q.    Pay for the entirety of it or does the

11  company pay for a portion of it?

12       A.    The company pays for a portion of it.

13       Q.    What percentage of the cost of your health

14  insurance does the company pay?

15       A.    I don't know.

16       Q.    Are you provided with any life insurance

17  from USAA?

18       A.    Yes.

19       Q.    How much life insurance does USAA provide

20  you?

21       A.    Approximately 300,000.  I'm not completely

22  sure the exact amount.

23       Q.    Did USAA provide any retirement benefits to

24  you, a pension, an opportunity to invest in a 401(k),

25  anything along those lines?

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 33

1        A.    Yes.

2        Q.    What type of retirement opportunities does

3    USAA provide you?

4        A.    There is an option to invest in a 401(k)

5    and I --

6        Q.    So a matching --

7        A.    -- believe --

8        Q.    I'm sorry.  Go ahead.  I didn't mean to

9    interrupt you.

10       A.    I believe there's some type of pension plan

11   but I'm not totally sure.

12       Q.    401(k)investing -- or, excuse me, a

13   matching 401(k)?

14       A.    Yes.

15       Q.    What portion of them is it matched by the

16   company?

17       A.    I believe it's currently four percent.  I

18   don't know the exact number.

19       Q.    Have you been in the same role at USAA

20   since April of 2019 or have your roles changed?

21       A.    I have been in the same role.

22       Q.    Anyone report to you?

23       A.    No.

24       Q.    Any point in time since 2019, April of 2019

25   when you joined USAA, have you received any workplace

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 34

1    discipline?

2         A.    No.

3         Q.    Any point in time since you joined USAA,

4    have you been placed on any Performance Improvement

5    Plan?

6         A.    No.

7         Q.    Received any written coaching?

8         A.    No.

9         Q.    Has your base salary been the same since

10   you joined USAA?

11        A.    It's increased.

12        Q.    What was your starting base salary?

13        A.    Approximately 115,000, I guess.

14        Q.    During the time that you have worked with

15   USAA, have you had any other sources of income?

16        A.    No.

17        Q.    No rental income, no dividends?

18        A.    No.

19        Q.    Are there any garnishments or liens against

20   you or your property?

21        A.    No.

22        Q.    At any point in time have there been any

23   garnishments or liens placed against your property by

24   the Internal Revenue Service?

25        A.    No.

Eric Slawin                                           July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 35

1      Q.    Are you currently indebted to the Internal

2  Revenue Service for any amount of tax or any tax year

3  prior to the current tax year?

4      A.    No.

5      Q.    Are you currently indebted to any taxing

6  authority for any amount of tax due for any year

7  other than the current tax year?

8      A.    No.

9      Q.    Prior to your employment with USAA where

10 were you employed?

11     A.    Citibank.

12     Q.    Sorry, Citibank?

13     A.    Yes.

14     Q.    What was your title?

15     A.    I don't remember the exact title.

16     Q.    What was your role?

17     A.    I handled operational risk matters.

18     Q.    During what period of time were you

19 employed by Citibank?

20     A.    Let's say from August 2018 to the date I

21 began work at USAA.

22     Q.    Who did you report to at Citibank?

23     A.    John Hospadarek.

24     Q.    Spell the last name, please.

25     A.    H-o-s-p-a-d-a-r-e-k.

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 36

1       Q.    And did you work with Citibank at a

2   physical location or did you work remotely?

3       A.    Physical location.

4       Q.    What was that physical location?

5       A.    Their offices.

6       Q.    Where?

7       A.    Tampa, Florida.

8       Q.    What was your compensation in the role that

9   you held at Citibank?

10      A.    Approximately 90,000.

11      Q.    Is that base salary or was that total

12  compensation?

13      A.    That was base salary.

14      Q.    Was there a variable portion to your

15  compensation?

16      A.    Are you defining variable as you did this

17  previously?

18      Q.    Basically anything that wasn't base that

19  you received, yes, sir.

20      A.    Yes.

21      Q.    What was the variable amount of your

22  compensation while at Citibank?

23      A.    Approximately 10,000.

24      Q.    And it appears you worked at Citibank for

25  less than a year; is that correct?

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 37

1        A.    Yes.

2        Q.    And why did you leave Citibank?

3        A.    To pursue the opportunity at USAA.

4        Q.    Was the termination of your employment at

5   Citibank voluntary?

6        A.    Yes.

7        Q.    At any point in time while you were an

8   employee of Citibank did you receive any written

9   coaching?

10        A.    No.

11        Q.    Did you receive any criticism of your work

12   performance?

13        A.    No.

14        Q.    Were you placed on a Performance

15   Improvement Plan?

16        A.    No.

17        Q.    The $90,000 base, would that have been an

18   annualized salary or is that what you received during

19   the approximately nine months that you worked there?

20        A.    It would have been annualized, I guess,

21   yearly.

22        Q.    You actually own a home in Tampa, Florida?

23        A.    No.

24        Q.    Do you own property outside of the home

25   that you own in Alpharetta?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 38

1        A.    No.

2        Q.    Prior to Citibank where did you work?

3        A.    Wells Fargo.

4        Q.    During what period of time did you work at

5    Wells Fargo?

6        A.    From December 2018 or -- yes, December 2018

7    to June 2019.

8        Q.    June 2019 or 2018?  I'm sorry, December of

9    '18 to June '19?

10       A.    Correct.

11       Q.    All right.  You indicated -- and perhaps I

12   took it down wrong -- you indicated that you worked

13   at Citibank from August of 2018 through April of

14   2019.  Are those dates wrong or did you work at both

15   at the same time?

16       A.    I apologize.  So I was at Wells from

17   December 2018 to June 2019.  I was at Citi from

18   approximately August 2019 to April 2020 and then from

19   USAA 2020 on.  I apologize.

20       Q.    What was your title at Wells Fargo?

21       A.    Operational Risk Consultant.

22       Q.    Who did you report to?

23       A.    Sheana Smith.

24       Q.    Did you work from a physical location?

25       A.    Yes.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 39

1        Q.    What was that physical location?

2        A.    Charlotte, North Carolina.

3        Q.    Is there actually an address in Charlotte,

4    North Carolina?

5        A.    I believe it was on Tryon Street.  I

6    don't -- I don't know any more details about that

7    address.

8        Q.    During your work with Wells Fargo, did

9    anyone report to you?

10       A.    No.

11       Q.    How did you obtain the job at Wells Fargo?

12       A.    By applying on their online site.

13       Q.    And who interviewed you for that position?

14       A.    Sheana Smith and two other people.

15       Q.    And what compensation did you receive in

16   the Wells Fargo position?

17       A.    Approximately 125,000.

18       Q.    That, again, was base salary?

19       A.    Yes.

20       Q.    Annualized based salary?

21       A.    Yes.

22       Q.    Was there a variable component that was

23   also available to you?

24       A.    There was.

25       Q.    And what was that variable component?

Eric Slawin                                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 40

1        A.    A discretionary bonus.

2        Q.    Up to what amount?

3        A.    I do not know.

4        Q.    Was there a targeted amount?

5        A.    I do not remember.

6        Q.    Did you receive any health benefits at

7    Wells Fargo?

8        A.    Yes.

9        Q.    It was provided entirely by Wells Fargo or

10   did you have to pay for a portion of those?

11       A.    I paid for a portion.

12       Q.    And do you know what the plan or program

13   was?  Aetna?  Blue Shield?

14       A.    Oh, I believe it was Aetna.

15       Q.    Did you have an opportunity for any

16   retirement savings through your position at Wells

17   Fargo?

18       A.    Yes.

19       Q.    What type of retirement benefits did Wells

20   Fargo provide?

21       A.    I recall a 401(k) plan.

22       Q.    Was that a matching plan?

23       A.    Yes, it was.

24       Q.    Up to what level?

25       A.    I do not remember the exact level.

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 41

1          Q.    I apologize, I forgot to ask you with

2     respect to Citibank.

3                With respect to Citibank, did you receive

4     health insurance?

5          A.    Yes.

6          Q.    Was that fully provided by the company or

7     did you have to pay a portion?

8          A.    I had to pay a portion.

9          Q.    What portion?

10         A.    I do not know the percentages.  It just

11    came out of my paycheck.

12         Q.    You also have potential retirement benefits

13    through Citibank?

14         A.    Yes, I recall a 401(k) option.

15         Q.    Do you recall whether that was a matching

16    option or not?

17         A.    I believe it was.

18         Q.    So to this point, I just want to make sure

19    I understand, USAA is your current employer.  You

20    have been there two and a half years.  Prior to that,

21    you were at Citibank.  You were at Citibank for a

22    period of time from April of 2019 through -- excuse

23    me, August 2019 through April 2020.  You left the

24    position at Citibank voluntarily to take the position

25    at USAA; is that correct?

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 42

1         A.    That's correct.

2         Q.    Prior of that you were employed at Wells

3    Fargo.  There appears to be a two-month gap in your

4    employment between the end of your employment at

5    Wells Fargo and the beginning of your employment at

6    Citibank; is that correct?

7         A.    Yes, correct.

8         Q.    Have any employment during that two-month

9    gap?

10        A.    No.

11        Q.    Did you receive or generate any income from

12   any source during that two-month gap?

13        A.    No.

14        Q.    So you were not issued a W-2 or a 1099 with

15   respect to any earned income during that two-month

16   gap; is that correct?

17        A.    That's correct.

18        Q.    Functionally, what was your role at Wells

19   Fargo?

20        A.    We handled operational risk matters for

21   securities trading.

22        Q.    Did you voluntarily end your employment

23   with Wells Fargo?

24        A.    No.

25        Q.    You were terminated at Wells Fargo?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 43

1        A.    Correct.

2        Q.    Why were you terminated?

3        A.    Policy violation.

4        Q.    That policy violation was related to your

5   becoming intoxicated at a company event; is that

6   correct?

7        A.    It wasn't explained in that detail.  They

8   just said policy violation.

9        Q.    Were you terminated after becoming

10  intoxicated at a company event?

11       A.    Yes.

12       Q.    And while intoxicated at that company

13  event, you were verbally abusive; is that correct?

14       A.    I don't recall that night at all.

15       Q.    Were you told by the investigators at Wells

16  Fargo that you had become verbally abusive while

17  drunk at a company event?

18       A.    No.

19       Q.    Did anyone ever tell you that you had

20  become verbally abusive while at a company event?

21       A.    No.

22       Q.    Anyone tell you that you had made

23  inappropriate sexual advances while at a company

24  event?

25       A.    No.

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 44

1        Q.    Did anyone tell you that you had made

2    threatening comments about killing other employees of

3    Wells Fargo or third parties while intoxicated at a

4    company event?

5        A.    No.

6        Q.    As a result of your conduct at that company

7    event, were you referred to Wells Fargo's EAP?

8        A.    Yes.

9        Q.    Did you actually see any psychiatrist or

10   psychiatrist as a result of that referral?

11       A.    Yes.

12       Q.    Who did you see?

13       A.    I believe her name was Lindsey Carpenter.

14       Q.    Ms. Carpenter a psychologist or a

15   psychiatrist?

16       A.    I do not know her absolute designation.

17       Q.    How many times did you meet with

18   Dr. Carpenter?

19       A.    Three or four.

20       Q.    Were those in-person visits?

21       A.    Yes.

22       Q.    Were you truthful in your visits with

23   Dr. Carpenter?

24       A.    Yes.

25       Q.    Over what period of time did you see

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 45

1   Dr. Carpenter?

2          A.    March 2019 through April or so.  Yes,

3   that's right.

4          Q.    And you indicated the termination of your

5   employment from Wells Fargo was June of 2019; is that

6   correct?

7          A.    Yes.

8          Q.    Was there a period of time that you were

9   placed on administrative leave?

10         A.    Yes.

11         Q.    During what period of time were you placed

12  on administrative leave?

13         A.    March 2019 through my termination date.

14         Q.    So from March 2019 through June of 2019,

15  you continued to be employed and compensated by Wells

16  Fargo but performing no services?

17         A.    Yes.

18         Q.    At any point in time were you brought back

19  from administrative leave to perform services for

20  Wells Fargo?

21         A.    No.

22         Q.    At the time of your termination, did Wells

23  Fargo inform you that you were designated for no

24  rehire by Wells Fargo?

25         A.    I'm sorry, can you repeat the question?

Page 46

1      Q.   At the time of your termination from Wells

2    Fargo, were you told that you had been designated as

3    a no rehire, that you could not be rehired in the

4    future by Wells Fargo?

5      A.   Yes.

6      Q.   Did they tell you why?

7      A.   Policy violation is what I was told.

8      Q.   What policy?

9      A.   I was not told what policy.

10     Q.   Did you seek unemployment compensation

11   following the termination of your employment from

12   Wells Fargo?

13     A.   No.

14     Q.   Following your termination from Wells Fargo

15   and prior to your employment with Citibank, did you

16   have any employment whatsoever?

17     A.   No.

18     Q.   You indicated your employment ended in

19   June of 2019.  When in June?

20     A.   Early to mid June.  I don't know the exact

21   date.

22     Q.   And you indicated your employment with

23   Citibank began in August of 2019.  When in August of

24   2019?

25     A.   Approximately maybe the third week or so of

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 47

1    that August.

2        Q.    So you were unemployed for approximately

3    eight weeks?

4        A.    Yes.

5        Q.    When you interviewed at Citibank, did you

6    inform them that you had been terminated for

7    violation of company policy at Wells Fargo?

8        A.    No.

9        Q.    Did you disclose to anyone at Citibank that

10   you had been terminated from your employment at BAMS

11   for a violation of company policy?

12           MR. MARX:  Objection to the form.

13       Q.    (By Mr. Galanek) Sir, please answer the

14   question.

15       A.    Do I answer after an objection?

16           MR. MARX:  Yes.  Yes.  I just -- I just

17       posed an objection for the record.

18           You can answer.

19       A.    Can you repeat the question, please?

20           MR. GALANEK:  Sure.

21           Robin, can you please read my question

22       back?

23           (WHEREUPON, the record was read back by the

24       reporter as follows:)

25           "QUESTION:  Did you disclose to anyone at

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 49 of 317

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 48

1          Citibank that you had been terminated from your

2          employment at BAMS for a violation of company

3          policy?"

4          A.   No.

5          Q.   (By Mr. Galanek) When you applied for the

6     position with USAA, did you inform anyone at USAA

7     that your employment with either Wells Fargo or BAMS

8     have been terminated for violations of company

9     policy?

10              MR. MARX:   Object to the question -- object

11         to form.

12              You can answer.

13         A.   No.

14         Q.   (By Mr. Galanek) You don't contest that

15    you, in fact, did violate Wells Fargo's company

16    policy, do you?

17              MR. MARX:   Object to the form.

18         A.   I don't know what policy I violated, so I

19    don't know how to answer that question.

20         Q.   (By Mr. Galanek) You don't contest that

21    Wells Fargo informed you that your employment was

22    coming to an end because you had violated company

23    policy, correct?

24         A.   Correct.

25         Q.   Where were you employed prior to Wells

Eric Slawin                                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 49

1    Fargo?

2         A.    UPS.

3         Q.    During what period of time were you

4    employed by UPS?

5         A.    I think the -- November 2018.

6         Q.    Just for the month of November of 2018?

7         A.    Yes.

8         Q.    What position did you hold at UPS?

9         A.    A truck loader.

10        Q.    Did you interview for that position?

11        A.    Yes.

12        Q.    And were you working at a facility for UPS?

13        A.    Yes.

14        Q.    Which facility?

15        A.    Their warehouse in Alpharetta, Georgia.

16        Q.    What was your compensation while working at

17   UPS?

18        A.    Ten -- I think it was $10 an hour.

19        Q.    You resigned your employment with UPS or

20   were you terminated?

21        A.    I resigned.

22        Q.    So your departure was completely voluntary?

23        A.    Yes.

24             THE WITNESS:  Can I ask to take a bathroom

25        break?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 50

1           MR. GALANEK:  Of course.  We will take ten

2      minutes.

3           THE VIDEOGRAPHER:  Going off the record.

4      The time, 10:41.

5           (WHEREUPON, a recess was taken.)

6           THE VIDEOGRAPHER:  We are back on the

7      record.  The time, 10:52.

8      Q.   (By Mr. Galanek) During the period of time

9  that you were on administrative leave from Wells

10 Fargo, did you have any other source of income?

11     A.   No.

12     Q.   You understand that Wells Fargo conducted

13 an investigation into your conduct during the period

14 of time that you were placed on administrative leave?

15     A.   Yes.

16     Q.   Did you participate in that investigation?

17     A.   Yes.

18     Q.   What was your participation in that

19 investigation?

20     A.   I answered questions when asked.

21     Q.   Was a formal interview conducted of you?

22     A.   Yes, I guess.

23     Q.   Do you know whether or not the interview

24 was recorded?

25     A.   No.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 51

1        Q.    Do you know whether or not that interview
2    of you was transcribed?
3        A.    No.
4        Q.    Do you know who else was interviewed as
5    part of that investigation?
6        A.    No.
7        Q.    We were talking about your employment with
8    UPS that you voluntarily resigned after November of
9    2018.  So how long did you actually work at UPS?
10       A.    Approximately -- well, three to four weeks.
11       Q.    Where did you work prior to UPS?
12       A.    Prior to UPS?  BAMS.  Can I refer to BAMS
13   also?
14       Q.    Yes, please.
15       A.    Okay.
16       Q.    And your employment with BAMS ended in
17   December of 2017; is that correct?
18       A.    Yes.
19       Q.    How soon after you terminated your
20   employment with UPS did you begin your employment
21   with Wells Fargo?
22       A.    A week.
23       Q.    So you had a period of unemployment that
24   ran from approximately the first week in December of
25   2017 until November of 2018; is that correct?

Eric Slawin                                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 52

1        A.    Yes.

2        Q.    During that period of time, did you

3    generate any taxable income?

4        A.    Based on what?  I mean, that's -- income

5    can be defined many ways.  Did you say taxable

6    income?

7        Q.    Yes.  Let's focus on the income that you

8    have to report to the IRS.

9        A.    Okay.

10       Q.    Did you have any reportable income to the

11   IRS during 2018 other than income generated from

12   employment with UPS and Wells Fargo?

13       A.    Yes.

14       Q.    And what was the source of that income?

15       A.    My IRA.

16       Q.    And how much income did your IRA generate

17   during that period of time?

18       A.    It didn't generate income.  I had to take

19   money from it to support my family.  So when I did

20   that, since it was an early withdrawal, I had to

21   report it as income on my taxes and take a tax --

22       Q.    And how much did you withdraw?

23       A.    I would have to look at my tax return.  I

24   don't know the exact number, but all of it.

25       Q.    During your employment at Wells Fargo, what

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 53

1    were your hours that you were expected to work?

2           A.    Well, it was salary, so as many as we need

3    to get the job done.

4           Q.    Were there particular office hours that you

5    were supposed to maintain when you were to be

6    available?

7           A.    Yes.  The nine to five, eight to five.

8           Q.    And with your job at Citibank, were there

9    particular hours that you were supposed to be

10   available to work?

11          A.    Yes.

12          Q.    What were those hours?

13          A.    Eight to five.

14          Q.    When you worked with BAMS, where there

15   particular hours you were supposed to be available?

16          A.    Yes.

17          Q.    What were those hours?

18          A.    Eight to five.

19          Q.    And in your current employment with USAA,

20   are there hours that you are to be available?

21          A.    Yes.

22          Q.    What are those hours?

23          A.    Eight to five.

24          Q.    I'm assuming in all of those roles, the

25   eight to five hours were weekday and not weekend

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 54

1    hours?

2         A.    Yes.

3         Q.    Where did you work prior to BAMS?

4         A.    SunTrust Securities.

5         Q.    During what period of time did you work

6    with SunTrust Securities?

7         A.    Oh.   Early 2000, so 2000 or so to when I

8    started at BAMS.   So it was approximately 14 years, I

9    guess.

10        Q.    Was there any gap in your employment

11   between SunTrust and BAMS?

12        A.    Yes, a small one.

13        Q.    How long?

14        A.    A month, month or two.

15        Q.    Did you voluntarily leave your employment

16   with SunTrust --

17        A.    Yes.

18        Q.    -- or were you terminated?

19        A.    I voluntarily left.

20        Q.    Were you given a choice of voluntarily

21   leaving or being terminated?

22        A.    No.

23        Q.    At any point in time during your employment

24   with SunTrust were you ever placed on a Performance

25   Improvement Plan?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 55

1        A.    Yes.

2        Q.    When?

3        A.    Near the end of my employment.

4        Q.    Was the Performance Improvement Plan still

5   in place at the time your employment terminated?

6        A.    Yes.

7        Q.    And what was the basis for the Performance

8   Improvement Plan that was in place?

9        A.    Just tracking what I did for work.

10        Q.    I'm assuming that the Performance

11   Improvement Plan was just that.  It was asking you to

12   improve on certain aspects of your employment,

13   correct?

14        A.    Yes.

15        Q.    What aspects of your employment were you

16   being asked to improve upon?

17        A.    I guess my current duties.

18              THE COURT REPORTER:  I'm sorry?

19        A.    My current duties.

20        Q.    (By Mr. Galanek) Was there anything in

21   particular that you were asked to improve on?

22        A.    Not that I recall, no.  I don't recall the

23   details.

24        Q.    Who did you report to at SunTrust in your

25   last position?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 56

1       A.    Susan Boltacz.

2       Q.    What was your last position at SunTrust?

3       A.    Grade W Compliance Officer.

4       Q.    During your employment at SunTrust, UPS,

5  Wells Fargo, Citibank or USAA, in any of those

6  positions, have you ever made a complaint to anyone

7  in Human Resources?

8       A.    Could you state the names again?  I think

9  you said from SunTrust on.

10      Q.    Sure.

11      A.    I apologize.

12      Q.    SunTrust on, other than BAMS, do you ever

13  make any complaints to Human Resources about any

14  issue?

15      A.    No.

16      Q.    In any of those employment or any of those

17  positions with any of those companies, were there

18  ever any complaints made about you to Human

19  Resources?

20      A.    No.

21      Q.    The IRA from which you took the withdrawals

22  during 2018, who is that IRA held with?

23      A.    It was Vanguard.

24      Q.    I'm assuming you received some sort of tax

25  documentation, a 1099 or otherwise, with respect to

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 57

1    the withdrawal?

2          A.    Yes.

3          Q.    During 2016, you maintained a brokerage

4    account for purposes of trading stocks?

5          A.    2016?  Yes.

6          Q.    With whom?

7          A.    Vanguard.

8          Q.    Anyone else?  Any other brokerage account

9    other than the Vanguard account in 2016?

10         A.    I had one with Fidelity, I believe.

11         Q.    Any other brokerage accounts that you used

12   for trading stocks in 2016 other than the account

13   with Vanguard and the one with Fidelity?

14         A.    No.

15         Q.    What about 2017?  Did you hold any

16   brokerage accounts for purposes of trading stocks in

17   2017?

18         A.    2017?  Yes.

19         Q.    With whom?

20         A.    Vanguard.

21         Q.    Anyone else?

22         A.    Probably Fidelity.

23         Q.    Anyone else?

24         A.    No.

25         Q.    During 2018, did you hold any brokerage

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 58

1    accounts for purposes of trading stocks?

2        A.    2018?  No.  Well, I had -- one was --

3    Fidelity, I believe, was an open account but not

4    active.

5        Q.    What do you mean by "not active"?

6        A.    I -- I don't recall making -- conducting

7    transactions in it.

8        Q.    Do you recall conducting transactions with

9    respect to the Vanguard account in 2016?

10       A.    '16?  Yes.

11       Q.    And do you recall conducting transactions

12   with respect to the Fidelity account in 2016?

13       A.    No.

14       Q.    Do you recall conducting transactions with

15   the Vanguard account in 2017?

16       A.    You said Vanguard?

17       Q.    Yes.

18       A.    Yes.

19       Q.    What about with the Fidelity account in

20   2017?

21       A.    No.

22       Q.    With respect to your Vanguard account for

23   each of the years '16, '17 and '18, you would have

24   received at year end a statement of all of the

25   transactions, both purchases and sales, of any

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 59

1   securities over the course of the year from that

2   entity; is that correct?

3        A.   I -- yes.  Yes.

4        Q.   And the same with Fidelity?

5        A.   Yes.

6        Q.   And to the extent income was earned as a

7   result of any trades on the Fidelity or the Vanguard

8   account in 2016 through 2018, you would have received

9   tax documentation reflecting the income received,

10  correct?

11       A.   No.

12       Q.   Did you receive any tax documentation from

13  Vanguard in 2016?

14       A.   Yes.

15       Q.   From Fidelity in 2016?

16       A.   Yes.

17       Q.   From Vanguard in 2017?

18       A.   Yes.

19       Q.   From Fidelity in 2017?

20       A.   This is tax documentation?  I'm sorry. I

21  lost you.

22       Q.   Yes.  Yes.

23       A.   Yes.

24       Q.   From Fidelity in 2018?

25       A.   Yes.

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 60

1      Q.   Do you currently maintain any brokerage

2  accounts for the purposes of trading securities?

3      A.   Yes, but I don't trade securities.

4      Q.   In 2016, did you suffer any losses as a

5  result of your stock trading activities on either the

6  Vanguard or Fidelity accounts?

7          MR. MARX:  Object to the form.

8      A.   I honestly don't recall.

9      Q.   (By Mr. Galanek) What about in 2017?

10          MR. MARX:  Object to the form.

11      Q.   (By Mr. Galanek) Any losses -- let me

12  finish the question before you --

13          MR. MARX:  I'm sorry.

14      Q.   (By Mr. Galanek) In 2017?

15          MR. MARX:  Object to the form.

16      Q.   (By Mr. Galanek) In 2017, did you suffer

17  any losses from the sale of any stock on either the

18  Vanguard or the Fidelity accounts?

19          MR. MARX:  Object to form.

20      A.   I don't recall.

21      Q.   (By Mr. Galanek) Did you suffer any losses

22  in 2018 as a result of the sale or purchase of any

23  stock?

24          MR. MARX:  Object to form.

25      A.   2018?  Yes.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 61

1      Q.    (By Mr. Galanek) And what were the losses

2   that you suffered in 2018?

3      A.    Approximately $200,000.

4      Q.    Is that associated with a single trade or

5   multiple trades?

6      A.    I would say multiple trades.

7      Q.    At any point during 2017, did you make any

8   stock trades during normal business hours?

9      A.    Yes.

10     Q.    How frequently?

11     A.    I don't know the exact number.

12     Q.    Are there any days on which you made

13  multiple trades of stock during 2017?

14     A.    I don't know for sure.

15     Q.    Certainly information regarding trades made

16  during 2017 would be reflected in documents from the

17  Vanguard or Fidelity, correct?

18     A.    Yes.

19     Q.    And the stock markets on which you traded,

20  did you trade on markets other than NASDAQ or

21  New York Stock Exchange?

22     A.    No.

23     Q.    And the hours that those exchanges are open

24  are approximately the same hours as your business

25  hours; is that correct?  For work?

Eric Slawin                                 July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 62

1        A.   Well, there's after hours trading, so it
2    was on the hours that you worked.
3        Q.   Did you make trades during business hours
4    during 2017?
5        A.   Yes.
6        Q.   During 2016?
7        A.   Yes.
8        Q.   I'm assuming trades were being made, not on
9    days on which you were taking vacation, but on days
10   that you were actually performing services for BAMS?
11       A.   It's quite possible I made trades on
12   vacation days too.
13       Q.   But you also made trades during business
14   hours that you were working for BAMS, correct?
15       A.   Yes.
16       Q.   Did you generate any income in 2017 from
17   the trades that you made in securities during
18   business hours at BAMS?
19       A.   The income, I mean, as disclosed on my tax
20   returns?  I don't know.
21       Q.   Well, I'm assuming you disclosed all of the
22   income that you earned from trades on your tax
23   returns; is that correct?
24       A.   Yes, as required.  Uh-huh.
25       Q.   So how much income did you disclose to the

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 63

1    IRS from stock trades in 2017?

2        A.    I don't think any.

3        Q.    How about in 2016?

4        A.    Again, I'd have -- I don't think any.

5    Well, I say that, though, is it's how you disclose it

6    on your tax return.  I mean, the transactions were

7    made in, you know, IRA accounts.

8        Q.    At any point in time did you ever disclose

9    to anyone at BAMS that you were involved in day

10   trading while also employed at BAMS?

11       A.    Yes.

12       Q.    To who?

13       A.    Mark Kendall.

14       Q.    Were you telling Mr. Kendall the truth?

15       A.    About what?

16       Q.    About your day trading activities.

17       A.    Yes.

18       Q.    You were never employed by Bank of America;

19   is that correct?

20       A.    I don't know.

21       Q.    Are you aware of having ever been employed

22   by Bank of America?

23       A.    It's possible I was a dual employee.  I

24   just don't know.

25       Q.    Then you have no awareness of being

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 64

1    employed by Bank of America, correct?

2              MR. MARX:  Object to the form.

3              You can answer.

4        A.   I don't know for sure.

5        Q.   (By Mr. Galanek) Did you ever receive a

6    paycheck from Bank of America?

7        A.   No.

8        Q.   Were you ever employed by First Data?

9        A.   I don't know.

10       Q.   Did you ever receive a paycheck from First

11   Data?

12       A.   No.

13       Q.   Were you ever employed by Fiserv?

14       A.   No.

15       Q.   At any point in time have you ever declared

16   personal bankruptcy?

17       A.   No.

18       Q.   Past your prior arrest when you were a

19   teenager for possession of marijuana have you been

20   arrested at any other point in time?

21       A.   No.

22       Q.   Have you ever filed for divorce?

23       A.   No.

24       Q.   Have there ever been periods in which you

25   have been legally separated from your spouse?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 65

1          A.    I don't know how to define legal

2     separation.

3          Q.    Well, has there ever been a period where,

4     on your income tax filings, you indicated that you

5     were separated from your spouse?

6          A.    No.

7          Q.    Under any definition of the word have you

8     ever been separated from your spouse?

9          A.    Can you define it, please?  Define

10    "separation" how you define it?

11         Q.    I'm basically saying however you choose to

12    define it.

13              MR. MARX:  Object to the form.

14              You can answer.

15         A.    Yes.

16         Q.    (By Mr. Galanek) During what period of

17    time?

18         A.    I would say large portion of 2002.

19         Q.    Why did that separation occur?

20         A.    Because I was wrongfully terminated and

21    retaliated against by BAMS.

22         Q.    And what would your wife say was the reason

23    for the terminate -- or the separation -- of your

24    separation during 2018?

25         A.    I don't know.

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 66

1      Q.    Who made the determination that you should
2    separate during 2018?
3      A.    I would call it a joint decision.
4      Q.    What were the reasons that your spouse
5    provided you for her portion of that joint decision?
6      A.    I would say we just weren't getting along.
7      Q.    And what was the source of the friction?
8      A.    Lack of income is part of it.
9      Q.    Anything else?
10     A.    I would say I wasn't very pleasant to be
11   around.  I was rather depressed.
12     Q.    Any allegations of infidelity made by
13   either party?
14     A.    Absolutely not to that question.
15     Q.    Do you maintain a personal e-mail address?
16     A.    Yes.
17     Q.    What was that personal e-mail address?
18     A.    Eslawin116@gmail.com.
19     Q.    Is that the only personal e-mail address
20   that you maintain?
21     A.    No.
22     Q.    What other e-mail addresses, personal
23   e-mail addresses do you maintain?
24     A.    Slawineric@gmail.com.
25     Q.    How long have you maintained that e-mail

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 67

1    address?

2          A.    Which e-mail address?

3          Q.    The one you just mentioned,

4    slawineric@gmail.com.

5          A.    I'd say since 2018.

6          Q.    Okay.  What was the purpose of creating

7    that e-mail account?

8          A.    To look for employment.

9          Q.    And why did you choose to use that account

10   as opposed to your -- that existing Gmail account?

11         A.    Efficiency.

12         Q.    So any application for employment that you

13   made, you made using the slawin.eric@gmail account?

14         A.    Yes.

15         Q.    Did you make any efforts to seek employment

16   during 2018 that were not made online?

17         A.    No.  I don't think so.

18         Q.    In this case in response to Interrogatories

19   asking about steps that you took to seek employment

20   during 2018, your counsel directed us to documents

21   that had been produced.  Have you produced all

22   documents that reflect any efforts to obtain

23   employment during 2018?

24         A.    Yes.

25         Q.    Are there any documents that you have

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 69 of 317
Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 68

1    withheld from that production reflecting efforts to

2    get employment in 2018?

3        A.    No.

4        Q.    The earliest documents provided or produced

5    in response to the Interrogatories about your

6    attempts to obtain employment during 2018 are from

7    April of 2018.  So you took no steps to seek

8    employment prior to April of 2018; is that correct?

9        A.    No, I -- well, I was looking around.  I --

10   I -- well, you know, what I should -- let me

11   backtrack.

12           I was applying directly on to job sites for

13   prospective employers.  So there's a chance I didn't

14   need or use that e-mail address.

15       Q.    Do you have any records of any attempt to

16   apply for employment prior to April of 2018 in your

17   possession?

18       A.    No.

19       Q.    What employment did you seek, by

20   identifying the companies, please, prior to April of

21   2018?

22       A.    I don't recall the specific names.  Various

23   banks is what I would say.

24       Q.    You can't identify any entity for which you

25   actually submitted an application here today; is that

Eric Slawin                                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 69

1    correct?

2        A.   Well, I would say probably U.S. Bank, but I

3    don't recall specifically doing that.

4        Q.   So obviously, you are aware you are under

5    oath today, and I only want you to tell me factually

6    those things that you can testify to.  So are you

7    saying that you did, in fact, apply for employment

8    with U.S. Bank prior to April of 2018?

9        A.   I can't say absolute in fact at this moment

10   that I did that.

11       Q.   In fact, sitting here today, you can't

12   identify any entity that you actually sought

13   employment with prior to April of 2018, correct?

14       A.   Correct.

15       Q.   You retained your current counsel,

16   Mr. Marx, in March of 2018; is that correct?

17       A.   Approximately, yes.

18       Q.   Did you retain any counsel for purposes of

19   pursuing claims against BAMS prior to your retention

20   of Mr. Marx?

21       A.   No.

22       Q.   Did you interview any counsel prior to

23   Mr. Marx for purposes of starting a claim against

24   BAMS?  And I'm not asking for discussions that you

25   had with them, just did you actually interview any

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 70

1    other counsel?

2         A.    Yes.

3         Q.    Who did you interview?

4         A.    I don't remember the name of either firm.

5         Q.    How many firms did you interview?

6         A.    Three, I believe.

7         Q.    When did you interview those firms?

8         A.    Roughly January through March of 2018.

9         Q.    Did any of the firms that you represented

10   decline to represent you?

11        A.    Decline, yes.

12        Q.    How many of them?

13        A.    One.

14        Q.    Any person other than Mr. Marx' firm offer

15   to represent you?

16        A.    No.

17        Q.    Which firm declined to represent you?

18        A.    I don't know the exact name, but it was

19   Koch -- Cohen & Cohen in Palo Pinto, I believe.

20        Q.    You talk about two Gmail accounts that you

21   maintain.  Are there any other e-mail accounts,

22   personal e-mail accounts that you maintain?

23        A.    Yes.  There are some other Gmail accounts

24   and one office account.

25        Q.    Please identify the other personal Gmail

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 72 of 317

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 71

1    accounts that you maintain.

2         A.    I don't have the names off the top of my

3    head.  They are just not that active.  They are just

4    not closed.

5         Q.    Why do you have multiple Gmail accounts?

6         A.    To play computer games.

7         Q.    Did you also have a personal Outlook

8    account and what is that account?

9         A.    I think it's slawin@outlook.com.

10        Q.    How long have you maintained that account?

11        A.    I don't know.

12        Q.    What is the purpose of your maintenance of

13   that account?

14        A.    I would say mostly to have a Microsoft Xbox

15   account.

16        Q.    Do you use any personal e-mail account for

17   purposes of seeking employment during the year

18   2018 -- or I shouldn't say that -- from the time of

19   your termination or the termination of your

20   employment at BAMS until your employment with Wells

21   Fargo, other than the Gmail account you have already

22   mentioned?

23        A.    The eslawin116 I could have used also.

24        Q.    And what steps have you taken to gather

25   documents from either of those two accounts regarding

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 72

1    your efforts to obtain employment during the period

2    of time between the termination of your employment

3    from BAMS and the beginning of your employment with

4    Wells Fargo?

5         A.   I'm sorry.  Can you repeat that question?

6         Q.   Sure.

7              What steps have you taken to maintain any

8    evidence in those two Gmail accounts of your seeking

9    employment from the termination of your employment

10   with BAMS until the beginning of your employment at

11   Wells Fargo?

12        A.   Just, I guess, didn't delete the e-mails

13   that I have as part of that job-seeking function.

14        Q.   And the slawin.eric@gmail account that you

15   indicated that you opened for that purpose, did you

16   use that e-mail account for any other purpose?

17        A.   Yes, personal.

18        Q.   What other purposes?

19        A.   Just e-mails.  I don't know.  I --

20   that's -- descriptions, I don't -- I don't -- nothing

21   specific.

22        Q.   What devices do you use to access your

23   personal e-mail accounts?

24        A.   My home computer.

25        Q.   How long have you had that home computer?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 73

1        A.    A while.  A while.  A few years.

2        Q.    Have you had that home computer since your

3    employment with BAMS?

4        A.    No.

5        Q.    Do you have any computer, cell phone,

6    tablet or any other device with a hard drive on which

7    information can be stored that is in your possession

8    currently that you also had while you were employed

9    with BAMS?

10       A.    No.

11       Q.    Have you disposed of any such device at any

12   point in time following the termination of your

13   employment with BAMS?

14              MR. MARX:  Object to the form.

15              You can answer.

16       A.    No.

17       Q.    (By Mr. Galanek) Okay.  So during your

18   employment with BAMS, you had no personal computer,

19   no personal tablet, no personal cell phone?

20       A.    Yes, I had a cell phone and a personal

21   computer.

22       Q.    Okay.  Do you still have them?

23       A.    No.

24       Q.    So you have disposed of them?

25       A.    Well, no.  No, not necessarily.  My -- oh,

Page 74

1    yeah, the cell phone is gone.  And the other hard

2    drive crashed.  I just no longer have it.  I don't

3    recall disposing of it, though.

4         Q.   Is it still in your house?

5         A.   No.

6         Q.   Still in possession of it?

7         A.   No.

8         Q.   What about the cell phone?  Still in

9    possession of the cell phone?

10        A.   No.

11        Q.   And when did you no longer possess the

12   computer?

13        A.   I don't know the exact date.

14        Q.   Do you know the year?

15        A.   Probably 2018.

16        Q.   When did you dispose of the cell phone?

17        A.   2018.

18        Q.   What type of cell phone was it?

19        A.   I think it was an Android phone.

20        Q.   Do you currently have a cell phone,

21   personal cell phone?

22        A.   Yes.

23        Q.   Is it an Android phone or an Apple phone?

24        A.   Apple phone.

25        Q.   Was the Android phone, while it was in your

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 75

1  possession, backed up to a cloud account?

2       A.    No.

3       Q.    Do you currently maintain any cloud

4  accounts?

5       A.    When you say "a cloud account," what do you

6  mean?

7       Q.    Basically a cloud storage account.

8       A.    Yes, Apple.

9       Q.    How long have you had that account?

10       A.    A year.

11       Q.    When you started having that cloud account,

12  did you maintain any cloud-based storage with respect

13  to any of your personal devices?

14       A.    Yes.  Oh -- yes.  Yes.

15       Q.    What cloud-based storage accounts have you

16  maintained?

17       A.    Microsoft OneSource.

18       Q.    How long have you maintained the OneSource

19  account?

20       A.    Approximately a year.

21       Q.    Prior to obtaining the Microsoft OneSource

22  account, did you maintain any cloud accounts for

23  purposes of data storage or to back up any of your

24  personal devices?

25       A.    No.

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 76

1          Q.    At any point in time did you maintain any

2     external hard drives for the purposes of backing up

3     any of your personal devices?

4          A.    No.

5          Q.    What is your cell phone number?

6          A.    (770) 296-5671.

7          Q.    And who is your cell phone provider?

8          A.    Verizon.

9          Q.    Do you have a Wi-Fi provider that provides

10    personal Wi-Fi to your home?

11         A.    No.

12         Q.    Do you maintain any social media accounts?

13         A.    Can you define "social media," please?

14         Q.    Sure.  Facebook, Twitter, Instagram,

15    TikTok.

16         A.    Yes, I have a Twitter account.  I do not

17    have a Facebook account or Instagram, I don't.

18         Q.    What is your user name for your Twitter

19    account?

20         A.    Mr. Dice, and there's some numbers after

21    it.

22         Q.    Mr. Dice, D-i-c-e?

23         A.    Uh-huh.

24         Q.    All right.

25               We are going to speak a bit about

Eric Slawin                     July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 77

1   healthcare providers.  There have been a couple of

2   healthcare providers in your Interrogatory responses.

3   I need more information on others, though.

4          With respect to your hypertension, do you

5   have a doctor that treats you for your hypertension?

6   A.   Yes.

7   Q.   Who is that?

8   A.   Dr. Amy Barfield.

9   Q.   Do you know the name of her practice?

10  A.   North Point something.  I don't know

11  exactly.

12  Q.   Is she an internist?

13  A.   No.

14  Q.   How long have you seen Dr. Barfield?

15  A.   Ten years I was at that practice.  I saw

16  another doctor previously.

17  Q.   Who was the doctor that you saw previously?

18  A.   Dr. Eubanks.

19  Q.   How long did you see Dr. Eubanks?

20  A.   Oh, ten years I guess, roughly.

21  Q.   Setting aside for a moment any

22  psychologist, psychiatrist or counselor, have you

23  been treated by any other physician since 2015?

24  A.   Yes.

25  Q.   What other physicians have treated you

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 78

1    since 2015?

2        A.    I can't think of her name.  The woman who's

3    treating me for my prostate cancer and another doctor

4    who treated me for my prostate cancer.

5        Q.    Anyone else?

6        A.    No.

7        Q.    And do you know the name of the practice

8    with the physicians that are treating you for your

9    cancer?

10       A.    I do not for, I guess you would say the --

11   would be the primary care physician.  However, I go

12   to the Emory proton beam -- I think it's Winship

13   Center for the cancer.

14       Q.    Any other physicians that have treated you

15   since 2015 other than those who are treating you for

16   your cancer, Dr. Eubanks and Dr. Barfield?

17       A.    No.

18       Q.    When were you first diagnosed with

19   depression?

20       A.    I would say diagnosed with depression,

21   roughly 2015.

22       Q.    Who made that diagnosis?

23       A.    I believe his last name was Wolfberg.

24       Q.    And is Dr. Wolfberg a psychiatrist, a

25   psychologist?

Eric Slawin                                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 79

1       A.    Psychiatrist.

2       Q.    During what period of time did you see

3   Dr. Wolfberg?

4       A.    Roughly 2014-ish, '15-ish.

5       Q.    The period of time that you worked with

6   SunTrust?

7       A.    Yes.

8       Q.    And where is Dr. Wolfberg's practice

9   located?

10      A.    It was Alpharetta, Georgia.

11      Q.    Do you know the name of the practice?

12      A.    No, I do not.

13      Q.    Why did you start seeing Dr. Wolfberg?

14      A.    I had some difficult times with my parents

15  due to illness and death.

16      Q.    Dr. Wolfberg diagnose you with any

17  conditions other than depression?

18      A.    OCD, I believe.

19      Q.    Is that the first time that you had ever

20  been diagnosed with OCD?

21      A.    Yes.

22      Q.    Any point prior to 2015, had you -- whether

23  diagnosed or not, had you been treated for either

24  depression or OCD?

25      A.    No, and I was going to the doctor for that.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 80

1      Q.   Dr. Wolfberg provide you medication for

2  your condition --

3      A.   Yes.

4      Q.   -- not provide, but prescribe you

5  medication?

6      A.   Yes.

7      Q.   What medication was prescribed for your

8  depression?

9      A.   I guess serotonin reuptake inhibitors.  I

10  don't remember the exact names.

11     Q.   What about for your OCD?  Were there any

12  prescription medications prescribed by Dr. Wolfberg

13  for your OCD?

14     A.   The same ones.

15     Q.   How long did you take those medications?

16     A.   Throughout my time with him.

17     Q.   Did you continue taking those medications

18  at any point in time after you stopped seeing

19  Dr. Wolfberg?

20     A.   No.

21     Q.   Why did you stop seeing Dr. Wolfberg?

22     A.   He retired.

23     Q.   Retain any records of your treatment, your

24  prior treatment by Dr. Wolfberg?

25     A.   No.

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 81

1        Q.   Do you have any contact information with

2    Dr. Wolfberg, current or past?

3        A.   No.  No.  He's --

4        Q.   What doctor -- sorry.

5        A.   No, that's okay.

6        Q.   Do you know what Dr. Wolfberg's first name

7    was?

8        A.   No.

9        Q.   All right.

10            MR. GALANEK:  Guys, let's go off the record

11       for just a second because I seem to be having a

12       bit of a computer problem with my video.  So

13       let's go off the record.  Why don't we take a

14       five-minute break.  We've been going about an

15       hour and then we will start back up.

16            THE VIDEOGRAPHER:  Off the record, 11:46.

17            (WHEREUPON, a recess was taken.)

18            THE VIDEOGRAPHER:  Back on the record.  The

19       time, 11:58.

20            MR. MARX:  Yes.  During the break, Jill

21       Poole indicated that she was appearing or

22       attending, Associate General Counsel for Fiserv.

23       Initially, Ms. Lafferty was identified as the

24       corporate representative for BAMS.  Fiserv is

25       not a party.  So I don't understand why

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 83 of 317
Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 82

1          Ms. Poole is attending.

2               MR. GALANEK:  Ms. Poole is a representative

3          of BAMS.  She is employed by Fiserv.  She

4          actually represents BAMS with respect to this

5          litigation.

6               MR. MARX:  Okay.  Well, as I -- well, first

7          of all, you identified Ms. Lafferty as the

8          corporate representative for BAMS, in which

9          case, I mean, one of them can be the corporate

10         representative but not both.  So I think one of

11         them should not be here.

12              And it's up to you.  I mean, you want to

13         identify Ms. Poole instead of Ms. Lafferty,

14         that's your business.  But I don't think we can

15         have all of Fiserv's counsel showing up and they

16         all take the same designation for BAMS.  That I

17         don't think is appropriate.

18              MR. GALANEK:  And so what exactly is your

19         objection?

20              MR. MARX:  They should not be here.

21              MR. GALANEK:  You are objecting -- you are

22         objecting that BAMS cannot have more than a

23         single corporate rep attend the deposition?

24              MR. MARX:  Well, yes, number one.  And two,

25         I find it suspect to begin with.  Ms. Lafferty

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 83

1    initially identified herself as being with
2    Fiserv and so does Ms. Poole.  So I find the
3    whole thing a little bit suspect.
4         But yes, in that context, yes, to answer
5    your question is one of them, not both.
6         MR. GALANEK:  And, Mr. Marx, you are aware
7    that in Georgia, depositions are considered
8    court proceedings and they are public
9    proceedings, correct?
10        MR. MARX:  I don't care.  I don't care
11   about that.  You can have a corporate
12   representative, okay, and --
13        MR. GALANEK:  Mr. Marx --
14        MR. MARX:  You can have one corporate
15   representative -- let me finish, please, okay?
16   I've made my position clear.
17        MR. GALANEK:  Then are you finished?
18        MR. MARX:  I am finished.
19        MR. GALANEK:  Okay.  Let me finish then.
20        Depositions are considered public
21   proceedings in Georgia, which means anyone can
22   attend.  Okay?  It's not a closed proceeding.
23   With respect to both Ms. Lafferty and Ms. Poole
24   they both, as counsel representing BAMS through
25   Fiserv, are -- they understand their obligations

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 85 of 317
Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 84

1          under the Protective Order in this case.

2                 Are you saying that you wish to exclude

3          either/or both?

4                 MR. MARX:  Yes.

5                 MR. GALANEK:  All right.  Let's take

6          another break and go off -- and go off the

7          record.  I'm going to go off camera.  Let me

8          have a conversation with my clients.

9                 THE VIDEOGRAPHER:  Off the record, 12:02.

10                (WHEREUPON, a recess was taken.)

11                THE VIDEOGRAPHER:  Back on the record,

12         12:03.

13         Q.   (By Mr. Galanek) Mr. Slawin, your counsel

14    wouldn't let me ask you off the record if you want to

15    take a lunch break.  Would you like to take a lunch

16    break now or would you like to continue on for a bit

17    before taking a lunch break?

18         A.   Well, I would continue on.  However, I

19    guess for sure that this dispute about more than one

20    Fiserv representative be resolved before we do that.

21                MR. GALANEK:  That's fine.  We are going to

22         go off the record.  I'm going to chat with my

23         client about that.  And so you would like to

24         continue on for a bit before we take lunch; is

25         that correct?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 85

1           THE WITNESS:  I'm okay with doing that,

2      yes.

3           MR. GALANEK:  Okay.  Great.

4           At any point in time when you are ready to

5      take a lunch break, you just need to tell me,

6      okay?  Because you are the only person who I

7      really care about having lunch today, other than

8      Robin, because she works really hard.

9           All right?  Let's go off the record.

10          THE VIDEOGRAPHER:  Off the record, 12:04.

11          (WHEREUPON, a recess was taken.)

12          THE VIDEOGRAPHER:  Back on the record.  The

13     time, 12:15.

14          MR. GALANEK:  My understanding that

15     Mr. Marx has objected to Ms. Poole's attendance

16     at the deposition despite the fact that this is,

17     in fact, a public -- a public proceeding under

18     Georgia law.  I have no desire to take this

19     issue up with the court at this moment, nor do I

20     wish to delay the questioning of the witness.

21          So Ms. Poole at this time has decided that

22     she will not attend based upon Mr. Marx'

23     objection.  However, we think the objection is

24     unfounded and we reserve our rights with respect

25     to such objection and with respect to the

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 87 of 317
Eric Slawin                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 86

1       deposition.

2       Q.   (By Mr. Galanek) Mr. Slawin -- and I

3   apologize.  If I slip on your last name, always feel

4   free to correct me.

5           Mr. Slawin, we were talking about your

6   treatment by Dr. Wolfberg, and you indicated your

7   treatment with him ended in 2015 upon his retirement.

8   At the time of his retirement, did he make a referral

9   to you -- a referral to any other professional?

10      A.   Yes.  He provided a letter with some other

11  names.

12      Q.   Did you choose, yourself, to discontinue

13  such treatment?

14      A.   Yes.

15      Q.   And it's my understanding from your

16  testimony a bit earlier today that upon the

17  termination of your employment -- actually, I guess

18  before the termination of your employment, but while

19  you were basically suspended from employment -- that

20  you did see a Dr. Carpenter through the EAP at Wells

21  Fargo.

22          Other than Dr. Wolfberg and

23  Dr. Carpenter -- we will certainly come back to

24  Dr. Carpenter -- but other than those two, have you

25  seen at any point in time any other psychologist or

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 87

1    psychiatrist or counselor to assist you with any

2    psychological concern?

3        A.    So Bob Nicholas and there was a counselor

4    at -- for the Employee Assistance Program.  I think

5    her name was Renee Bell.

6        Q.    Sorry.  Renee Bell?

7        A.    I believe so.  I believe that was her name.

8        Q.    And she was a counselor through the Wells

9    Fargo Employee Assistance Program?

10       A.    Yes, sir.

11       Q.    Let's speak about Ms. Bell first.

12             How long did you see Ms. Bell?

13       A.    The same amount of time as Ms. Carpenter.

14   So I guess March through April or so of 2019.

15       Q.    How many sessions did you do with Ms. Bell?

16       A.    Roughly three or four.

17       Q.    And what was your purpose for seeing

18   Ms. Bell?

19       A.    She was part of the program, a counselor.

20   I would just say part of the program.  That's the way

21   I took it.

22       Q.    Did she counsel you -- what issues did she

23   counsel you on?

24       A.    My depression.  And I thought her notes

25   referenced OCD.

Eric Slawin                               July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 88

1      Q.    And you indicated you saw Dr. Carpenter

2  also for three or four visits during that same period

3  of time?

4      A.    Yes.

5      Q.    At any point in time have you been

6  diagnosed with anxiety or an anxiety condition other

7  than OCD?

8      A.    No.  I don't -- it's always been OCD.

9      Q.    You indicated you had seen Bob Nichols.

10 Did I get that right?  Is it Nichols or Nicholas?

11     A.    Nicholas.

12     Q.    I'm still not hearing you.

13     A.    Oh, I'll speak up.

14           Nicholas.

15     Q.    Nicholas.  Thank you.

16     A.    Uh-huh.

17     Q.    And is Dr. Nicholas a psychiatrist or a

18 psychologist?

19     A.    Psychiatrist.

20     Q.    And over what period of time did you see

21 Dr. Nicholas?

22     A.    November -- let's see.  I believe it was

23 November 2017 through October-ish 2018.

24     Q.    How is it you came to become a patient of

25 Dr. Nicholas?

Eric Slawin                                           July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 89

1       A.    I found him on the Internet.

2       Q.    Where is Dr. Nicholas located?

3       A.    I don't have his current address.

4       Q.    Where were his offices located?

5       A.    In Atlanta, Georgia.

6       Q.    Atlanta proper or in one of the suburbs?

7       A.    Proper.

8       Q.    Approximately where were his offices

9   located?

10      A.    Over by REI, the camping store.

11      Q.    Okay.

12      A.    In that general area.

13      Q.    The one off North Druid Hills?

14      A.    I believe so.  I -- my -- if I recall

15  correctly, I thought my Interrogatories has his

16  address.

17      Q.    What was the name of his practice?

18      A.    Bob Nicholas, Inc.  I don't know.

19      Q.    Why did you stop seeing Dr. Nicholas?

20      A.    It was money, money issues.

21      Q.    How much did Dr. Nicholas cost per session?

22      A.    Roughly 250, 275.

23      Q.    And you began with Wells Fargo in December

24  of 2018, correct?

25      A.    Correct.

Page 90

1      Q.   So is there a reason you did not seek to

2   continue your treatment with Dr. Nicholas after you

3   began working with Wells Fargo?

4      A.   I was -- had financial issues.  Just didn't

5   have the discretionary income for that.  And then I

6   had to relocate to Charlotte for my job at Wells

7   Fargo.

8      Q.   And was it during 2018 that you suffered

9   $200,000 in trade losses?

10     A.   Yes.

11     Q.   Did that negatively impact your financial

12  condition?

13     A.   Yes.

14     Q.   We are going to come back and talk about

15  all of these doctors and their treatments.

16          Have you seen any psychologist,

17  psychiatrist or counselor other than Ms. Bell,

18  Dr. Carpenter or Dr. Nicholas at any point in time --

19  well, at any point in time?

20     A.   I did see a psychologist -- I don't

21  remember a name -- roughly around the time I was with

22  Dr. Nicholas.  It was very brief.  So I just don't

23  recall her name at the moment.

24     Q.   And did Dr. Nicholas prescribe any

25  medications for you?

Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 91

1          A.    Yes.

2          Q.    What negotiations did he prescribe?

3          A.    Effexor and I believe it was Klonopin, if

4     I'm pronouncing that correctly.

5          Q.    And did Dr. Nicholas make any diagnosis of

6     any medical condition with respect to you during his

7     period of treatment?

8          A.    Yes.  A major depressive disorder.

9          Q.    Were you truthful with Dr. Nicholas in your

10    sessions?

11         A.    Yes.

12         Q.    And I apologize if I asked earlier.  Were

13    you also truthful with Dr. Carpenter during your

14    sessions with her?

15         A.    Yes.

16         Q.    Were you truthful with Dr. Wolfberg during

17    your sessions with him?

18         A.    Yes.

19         Q.    And with Ms. Bell?

20         A.    Yes.

21         Q.    And the counselor that you saw at the same

22    time that you are seeing Dr. Nicholas, was she or he

23    associated with Dr. Nicholas' practice?

24         A.    No.

25         Q.    And do you know the practice that that

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 92

1    person was associated with?

2         A.    I do not.  I do not.

3         Q.    Did you see that person in a separate

4    location than the location you saw Dr. Nicholas?

5         A.    Yes.

6         Q.    What was that location?

7         A.    I don't have the exact address.

8         Q.    And were you referred to that person by

9    Dr. Nicholas?

10        A.    No.

11        Q.    Why did you start seeing that person

12   independent from your sessions with Dr. Nicholas?

13        A.    Just wanted somebody to talk to.

14        Q.    What was the cost of that counselor per

15   session?

16        A.    Roughly $150, maybe.

17        Q.    At any point in time have you sought

18   treatment for alcoholism?

19        A.    No.

20        Q.    At any point in time have you sought

21   treatment for use of any controlled substance?

22        A.    No.

23        Q.    At any point in time have you sought to

24   commit yourself for any treatment for any

25   psychological disorder?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 93

```
 1        A.    No.

 2        Q.    At any point in time has anyone else sought

 3   to either voluntarily or involuntarily commit you for

 4   treatment of any psychological disorder?

 5        A.    No.

 6        Q.    When is the first time that you used

 7   marijuana?

 8        A.    High school.

 9        Q.    When was the last time that you used

10   marijuana?

11        A.    Probably 2018.

12        Q.    What was the longest period of time between

13   high school and 2018 that you went without using

14   marijuana?

15        A.    Fifteen years.

16        Q.    What was that 15-year period where you did

17   not use marijuana?

18        A.    I would say during my -- most of my

19   employment with SunTrust and also previous employers.

20   I -- it's probably 25 years.

21        Q.    When did you begin using marijuana again?

22        A.    It was right around, I would say, end of

23   2018.

24        Q.    That's when you began using marijuana

25   again?
```

Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 94

1        A.    Again, yes.  Uh-huh.  When you say "using,"
2    I -- like, can you define it?
3        Q.    Yes, not really.  I mean --
4        A.    Okay.
5        Q.    Did you -- did you consume marijuana in any
6    form, whether smoking it or eating it or in any other
7    form at any point in time during 2015?
8        A.    No.
9        Q.    During 2016?
10       A.    No.
11       Q.    During 2017?
12       A.    No.
13       Q.    During 2018?
14       A.    Yes.
15       Q.    During 2019?
16       A.    Yes.
17       Q.    2020?
18       A.    No.
19       Q.    So it's your testimony that you did not use
20    marijuana in any form from high school until 2018?
21       A.    Yes.  For the most part, yes.
22       Q.    Well, it's not for the most part.  Either
23    yes or no.
24       A.    Yes.
25       Q.    At any point in time from high school until

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 96 of 317
Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 95

1    2018 did you use any other controlled substances?

2        A.    Controlled substance.  What do you mean by

3    that, please?

4        Q.    Did you use any other illegal drugs at any

5    point in time from when you graduated high school

6    until 2018?

7        A.    No, not that I recall.  Huh-uh.

8        Q.    Didn't use cocaine?

9        A.    Since between high school and 2018?

10       Q.    Yes.

11       A.    Correct.

12       Q.    Were there any other -- can you hear me

13   okay?

14       A.    Yes.

15       Q.    Did you use any other illegal drugs during

16   2018 or 2019 other than marijuana?

17       A.    Yes.

18       Q.    I'm sorry.  Can you hear me now?

19       A.    Yes.

20       Q.    Sorry.  Let me restate the last question.

21             During 2018 did you use any illegal drugs

22   other than marijuana?

23       A.    Yes.

24       Q.    What did you use in 2018 other than

25   marijuana?

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 96

1        A.    Psilocybin.

2        Q.    Mushrooms?

3        A.    Yes.

4        Q.    How frequent was your marijuana use during

5    2018?

6        A.    Roughly weekly.

7        Q.    Once a week?

8        A.    More like three times a week or so.

9        Q.    Throughout 2018?

10       A.    For a chunk of the time, yes.

11       Q.    And how about the 2019, what was your

12   marijuana usage during 2019?

13       A.    The first half of the year, probably about

14   the same amount.

15       Q.    And did you use any other drugs in 2019,

16   illegal drugs?

17       A.    No.

18       Q.    And it's your testimony that from

19   graduation from high school until 2018 you did not

20   partake of either marijuana or any other illegal

21   drug; is that correct?

22       A.    I can't attest to every day, all of the

23   whole time, but yes, I'm -- you know, much of it it

24   wasn't a problem.

25       Q.    I'm not asking whether it was a problem.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 97

1    I'm just asking, did you use illegal drugs at any

2    point in time from when you graduated high school

3    until 2018?

4         A.    It's just such a long span of time.  I'm

5    going to say for the most part, no.

6         Q.    And if the medical records from these

7    psychiatrists or psychologists that you have seen

8    reflected otherwise, their entries would be false?

9         A.    I wouldn't say that.  No.

10        Q.    So if their records indicate usage during

11   that period of time, your testimony would be false?

12        A.    I wouldn't say that either.

13        Q.    Okay.  Well, either their records are false

14   or your testimony is false if their records indicate

15   usage of illegal drugs after high school and prior to

16   2018.  So which is it?

17             MR. MARX:  Object to the form of the

18        question.

19             You can answer.

20        A.    I would defer to the psychologist's

21   records.

22        Q.    (By Mr. Galanek) How much did you spend on

23   illegal drugs during 2018?

24        A.    I don't know.

25        Q.    Well, how much per week were you spending

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 98

1    on marijuana?

2         A.   I don't know.  $25, maybe.

3         Q.   How much were you spending on mushrooms

4    during 2018 per week?

5         A.   Per week?

6         Q.   Yes.

7         A.   Pennies.

8         Q.   How much were you spending on alcohol

9    during 2018 per week?

10        A.   I would say roughly a hundred dollars,

11   $120.

12        Q.   Same during 2019?

13             MR. MARX:  Object to the form of the

14        question.

15             You can answer.

16        Q.   (By Mr. Galanek) How much -- how much were

17   you spending on alcohol per week in 2019?

18        A.   Per week, I would say half of that, maybe,

19   per week.

20        Q.   How much were you spending on marijuana per

21   week during 2019?

22        A.   Roughly $25.

23        Q.   At any point in time were you in any

24   treatment program for alcohol abuse?

25        A.   No.

Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 99

1      Q.    And if the psychologists' records -- or the

2    records of any of the psychologists or psychiatrists

3    that we mentioned previously reflected otherwise,

4    those records would be inaccurate?

5      A.    No.  I would defer to them probably.

6      Q.    So you have been in a program at some point

7    in time?

8      A.    Well, I -- if you are referring to the

9    Employee Assistance Program, I was -- I look at that

10   as I was being treated for my depression.

11     Q.    Sir, I'm just asking if you have ever been

12   in a program to treat you for alcohol abuse.  It's

13   either "yes" or "no."  I don't know the answer, but

14   presumably you do.

15     A.    I have not been in a program, in my mind,

16   for alcohol abuse.

17     Q.    Have you ever attended an AA meeting?

18     A.    No.

19     Q.    When did you first start drinking?

20     A.    Socially?

21     Q.    When did you first start drinking alcohol,

22   at what age?

23     A.    High school.

24     Q.    Can you be more specific than that?

25     A.    No.

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 100

```
 1        Q.   And if your psychologists' or
 2   psychiatrists' medical records indicated a specific
 3   age, would you defer to them?
 4        A.   Yes.
 5        Q.   Because presumably you would have told them
 6   at what age in your sessions; is that correct?
 7        A.   That's correct.
 8        Q.   So if the records of your psychologist and
 9   psychiatrist indicated you began drinking hard liquor
10   at the age of 14, would that be accurate?
11        A.   I think that's sooner than when I started.
12        Q.   Do you know why the records would reflect
13   that if you didn't tell them that?
14        A.   No.
15        Q.   Were you truthful with your psychiatrist?
16        A.   Yes.
17        Q.   Were you truthful with the psychologist
18   that you worked with?
19        A.   Yes.
20        Q.   Truthful with the counselors you worked
21   with?
22        A.   Yes.
23        Q.   Since you began drinking at or about the
24   age of 14, have you gone more than a year without
25   drinking?
```

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

                                              Page 101

1        A.   Without having a drink?

2        Q.   Yes.

3        A.   Did you say more than a year?

4        Q.   Yes.

5        A.   No.

6        Q.   Have you gone more than a month without

7   having a drink?

8        A.   Yes.

9        Q.   During what period of time?

10       A.   Before I was 21.

11       Q.   From the age of 21 to now -- well, you

12   don't need to now -- from the age of 21 through the

13   termination of your employment with Wells Fargo, did

14   you go more than a month without having a drink of

15   alcohol?

16       A.   Yes.

17       Q.   During what period of time?

18       A.   I would say through my -- probably through

19   2016 I wasn't a heavy drinker.

20       Q.   2016 did you become a heavy drinker?

21       A.   A heavy drinker?  I drank probably once a

22   month.

23       Q.   It's your testimony in 2016 you were only

24   drinking once a month?

25       A.   Yes -- I mean yes.

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 102

1      Q.    Do you use credit cards for retail
2   purchases?
3      A.    Yes.
4      Q.    What credit cards have you maintained since
5   2015?
6      A.    A MasterCard and Visa.
7      Q.    Who is the MasterCard with?
8      A.    I believe for one is with Barclays.  And I
9   have one with Bank of America.
10     Q.    And what about the Visa card?
11     A.    Visa cards are with Bank of America.
12     Q.    So Visa cards.  So you have more than one
13  Visa card?
14     A.    Yes.
15     Q.    Are they both -- you have multiple cards
16  with Bank of America or one is with Bank of America
17  and other cards are with others?
18     A.    One is with -- I have multiple cards with
19  Bank of America.
20     Q.    How many?
21     A.    Three.
22     Q.    How frequently did you drink during 2017,
23  drink alcohol?
24     A.    Near the end, from summer on, it was daily.
25  Probably -- well, I would say daily from the summer

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 103

1    on.

2        Q.   When you say "summer," what is your

3    definition meaning summer, Memorial Day or June 1?

4        A.   I would say July.

5        Q.   The beginning of July 2017 you began

6    drinking daily?

7        A.   Yes, roughly.

8        Q.   How much did you drink on a daily basis?

9        A.   I would say the equivalent of a fourth of a

10   bottle or so.

11       Q.   How much credit card debt did you hold in

12   2000 -- or have in 2016?  Total?

13       A.   I don't know.  It's minimal.

14       Q.   How much credit card debt did you have in

15   2017?

16       A.   I don't know the exact amount, but it was

17   more than 16.

18       Q.   Thousand of dollars or less than a thousand

19   in credit card debt?

20       A.   I'm sorry.  Can you repeat that?  You broke

21   up.

22       Q.   Sure.

23            In 2017, were you carrying more than a

24   thousand dollars in credit card debt on a monthly

25   basis?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 104

1      A.   In 2017?  You say 2017?

2      Q.   Yes.

3      A.   Yes.

4      Q.   More than $5,000 on a monthly basis during

5   2017?

6      A.   I don't know the exact number.

7      Q.   More than $10,000 a month during 2017?

8      A.   No.

9      Q.   Is there a mortgage on your home in

10   Alpharetta?

11      A.   Yes.

12      Q.   Was there a mortgage on your home in

13   Marietta in 2016?

14      A.   No.

15      Q.   2017?

16      A.   Can you repeat the entire question, please?

17      Q.   Sure.

18           Was there a mortgage on your home in

19   Alpharetta in 2017?

20      A.   Oh, I thought -- yes.  I thought you said

21   Marietta.

22      Q.   No.  I'm sorry if I said it.  I did not

23   mean to.  So let me repeat.

24           In 2016 was there a mortgage on your home

25   in Alpharetta?

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 105

1      A.   Yes.

2      Q.   When did you first have a mortgage on your

3   home?

4      A.   2001.

5      Q.   In 2017 what was the balance of that

6   mortgage?

7      A.   I don't know.

8      Q.   Do you have more than one mortgage on your

9   home?

10     A.   No.

11     Q.   Other than Dr. Wolfberg, Dr. Carpenter,

12  Dr. Nicholas and Ms. Bell and the counselor you say

13  you cannot remember, have you sought any other

14  assistance from any professional with respect to any

15  psychological disorder?

16     A.   No.  No.

17     Q.   And when was the last time you saw

18  Dr. Nicholas?

19     A.   You are breaking up.  When I saw who?

20     Q.   I'm sorry.

21          When was the last time that you saw

22  Dr. Nicholas?

23     A.   Oh, let's see.  I'll go backwards.  Roughly

24  September of 2018.

25     Q.   And you have been with USAA for the last

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 106

```
 1   two and a half years; is that correct?

 2        A.   Yes.

 3        Q.   You had healthcare insurance throughout

 4   that time?

 5        A.   Yes.

 6        Q.   Prior to USAA you worked with Citi Group;

 7   is that correct?

 8        A.   Yes.

 9        Q.   You had healthcare insurance with Citi

10   Group; is that correct?

11        A.   Yes.

12        Q.   During the period of time that you were

13   with Wells Fargo you had healthcare insurance; is

14   that correct?

15        A.   Yes.

16        Q.   Are you currently taking any medication for

17   depression or anxiety?

18        A.   No.

19        Q.   Are you currently taking any treatment for

20   depression or anxiety?

21        A.   No.

22        Q.   Have you and your spouse ever sought

23   counseling jointly?

24        A.   No.

25        Q.   Have there been any periods of time since
```

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 107

1    2015 where you were self-employed?

2        A.    You broke up again, Chris.

3        Q.    I apologize.  I'm going to -- give me one

4    second here.

5              I'm sorry.  Can you hear me better now?

6        A.    Yes.

7        Q.    Had there been any period of time since

8    2015 where you were self-employed?

9        A.    No.

10             MR. GALANEK:  George, can I get you to pull

11       up for us what we have previously marked for you

12       as Exhibit 30?

13             THE CONCIERGE:  Sure.  Stand by.

14             THE WITNESS:  Am I going to have to look at

15       a document?

16             MR. GALANEK:  Yes.  There will be a

17       document that will be up on the screen.  And you

18       will be able to direct George around that

19       document.  I think George can probably also

20       release that document to you.  It has previously

21       been marked as Exhibit 30.

22             And, Mr. Marx, that is your client's

23       production, 589 through 592.

24             THE WITNESS:  Can I ask for a five-minute

25       bathroom break, please?

Eric Slawin                         July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

                                        Page 108

1          MR. GALANEK:  Oh, of course.  Absolutely.

2     Absolutely.

3          Let's go off the record.

4          THE VIDEOGRAPHER:  Off the record, 12:52.

5          (WHEREUPON, a recess was taken.)

6          THE VIDEOGRAPHER:  Back on the record.  The

7     time, 12:57.

8          MR. GALANEK:  George, if you would, please,

9     share Exhibit 30, share the screen with the

10     witness.

11          (Defendant's Exhibit 30, Georgia Form 500,

12     Individual Income Tax Return 2018, Bates labeled

13     PLAINTIFF 000589 - 592, marked for

14     identification.)

15          MR. GALANEK:  Mr. Slawin, all you need to

16     do is direct George up, down, zoom in, zoom out.

17     In fact, I believe George can probably turn

18     control over to you if you would like it.

19          THE WITNESS:  Okay.

20          MR. GALANEK:  And I will tell you the

21     questions that I have.  I would just like to

22     know, this purports to be a Georgia Form 500

23     individual income tax return for 2018.  I'm

24     going to ask if this is your Georgia income tax

25     return for 2018, if you prepared it.  And you

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 109

1          will note that there is income reported.  I'm

2          going to be asking you the source of that

3          income.

4              But feel free to let -- to review the

5          document and let me know after you've finished

6          reviewing it.  And feel free to direct George to

7          move up, move down, zoom in, zoom out, whatever

8          you need to him to do.

9              THE WITNESS:  Okay.

10             George, can you move down, please?  Can you

11         stop for a moment?

12             Go up.  Oh, okay.

13             Go down.

14             Okay.  Please go down.

15             Okay.  Please go down.

16             Please go down.

17             Okay.  Further.

18             Okay.  Thank you.

19             Okay.

20     Q.   (By Mr. Galanek) Sir, do you recognize this

21     document?

22     A.   Yes.

23     Q.   What is this document?

24     A.   It is the Georgia tax form that I filed.

25     Q.   And did you prepare this document?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 110

1        A.    Yes.

2        Q.    Everything true and correct in this

3    document?

4        A.    Yes.

5        Q.    This document reflects income in 2018 of

6    $132,749 on Page 3.  What is the source of that

7    income?

8        A.    My IRA.

9        Q.    And, unfortunately, neither your 2018

10   Federal tax return, nor your 2018 Georgia tax return

11   attached any schedules.  Do you continue to maintain

12   those schedules?

13       A.    No, I did not.

14       Q.    You don't have copies of the schedules from

15   the tax returns that you prepared in 2018?

16       A.    I do not believe so at the moment.  I guess

17   the answer is I'm not sure.

18       Q.    You prepared your taxes yourself in 2018;

19   is that correct?

20       A.    Yes.

21       Q.    And you submitted with your taxes all

22   necessary schedules, correct?

23       A.    Yes.

24       Q.    And you would have attached to your taxes

25   copies of any W-2 or 1099 that you received for the

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 111

1    taxable year 2018, correct?

2         A.    Yes.

3         Q.    Is there any reason that you believe that

4    you do not have those schedules or attachments to

5    your tax returns in your possession?

6         A.    The only reason -- no.

7         Q.    Do you possess any documentation reflecting

8    the withdrawal from your IRA account in 2018?

9         A.    No.

10        Q.    Do you have any communications with

11   Vanguard reflecting the withdrawal of monies from

12   your IRA in 2018?

13        A.    No.

14        Q.    How did you accomplish the withdrawal of

15   funds from your IRA in 2018?

16        A.    Would have asked for a withdrawal from

17   Vanguard.

18        Q.    Would you have done that by phone call, by

19   e-mail or by some other electronic communication?

20        A.    Another electronic communication.

21        Q.    Would you have done that by an electronic

22   communication through the Vanguard website?

23        A.    Yes.

24        Q.    And would you have received some

25   notification that that request had been received?

Eric Slawin                                     July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 112

1         A.    I guess the other website.

2         Q.    And Vanguard would have issued you some

3    sort of tax documentation reflecting that withdrawal,

4    correct?

5         A.    I assume so, yes.

6         Q.    And you can actually go on to the Vanguard

7    site and request past tax documents or tax documents

8    for past years for withdrawals, correct?

9         A.    Well, that account's closed as far as I

10   recall.  So I don't think I can.

11        Q.    When did that account close?

12        A.    I don't know the exact date.

13        Q.    Why did that account close?

14        A.    Zero balance.

15        Q.    All right.

16             MR. GALANEK:  George, you can close that

17        document out, but if you don't mind pulling up

18        Exhibit 32.

19             (Defendant's Exhibit 32, North Carolina

20        Department of Revenue 2018 Individual Income Tax

21        Return, Bates labeled PLAINTIFF 000596 - 600,

22        marked for identification.).

23             MR. GALANEK:  And, Mr. Marx, Exhibit 32 is

24        Plaintiff's Bates Number 596 through 600.

25             MR. MARX:  Let me get to that.

Page 113

1          MR. GALANEK:  Mr. Slawin, with this

2     document, feel free to direct George to scroll

3     up, scroll down, whatever you need to do.  Very

4     similar questions with respect to this document.

5          THE WITNESS:  Please go down.

6          Please go down.

7          Please go down.

8          Please go down.

9          Okay.  Please go down.

10         George, can you go all the way back up,

11    please?

12         THE CONCIERGE:  The top of the document?

13         THE WITNESS:  The top of the document,

14    please.

15         THE CONCIERGE:  Sure.

16         THE WITNESS:  Okay.  Just a moment.

17         Okay.

18         Okay.

19         Can you go back up?  Please stop right

20    there, please.

21         Okay.

22         Okay.

23         Please go down.

24         Please go down.

25         Please go down.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 114

1              Okay.  Please go down.

2              Please go down further.

3              Okay.  Please go down.

4              Okay.  Please go down.

5              Please go down.

6              Please go down.

7              Okay.  Thank you.

8         Q.   (By Mr. Galanek) Sir, do you recognize this

9    document?

10        A.   Yes.

11        Q.   And this purports to be an individual

12   income tax return for the State of North Carolina.

13   Did you prepare this document?

14        A.   Yes.

15        Q.   Did you submit this document to the State

16   of North Carolina?

17        A.   Yes.

18        Q.   Were there attachments and schedules to

19   this document when you submitted it?

20        A.   I assume so, yes.

21        Q.   Large portions of this document have been

22   redacted.  That means they have been blacked out.  Do

23   you know why these portions of this document have

24   been blacked out?

25              THE WITNESS:  Can you go down further,

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 115

1       please?

2       A.   No, I do not.

3       Q.   (By Mr. Galanek) Great.  Thank you.

4            MR. GALANEK:  All right, George.  You can

5       set that one aside.

6            If we can pull up, George, Exhibit 33,

7       please.

8            Mr. Marx, this is Plaintiff's 602 to 609.

9            (Defendant's Exhibit 33, North Carolina

10      Department of Revenue 2019 Individual Income Tax

11      Return, Bates labeled PLAINTIFF 000602 - 609,

12      marked for identification.)

13      Q.   (By Mr. Galanek) Mr. Slawin, again, feel

14      free to direct George, to the extent that you need

15      him to do so, similar questions about this document.

16      A.   Okay.

17      Q.   Okay.

18      A.   Let's go down.

19           Please go down.

20           Please go down.

21           Okay.  Please go down.

22           George, can you go back to the top, please?

23      The very top.

24           Oh.  Okay.  Go down further.

25           Please go down.

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

                                                    Page 116

1              Okay.  Please go down.

2              Please go down further.

3              Please go down further.

4              Okay.  Please go down further.

5              Further, please.

6              Can you go up, please?

7              Okay.  Please go down further.

8              Please go down further.

9              Can you go back up, please?

10             Okay.  Can you go back to the top, please?

11     Sorry.  I'm just trying to keep the date.

12             Okay.

13             Okay.  Go down further, please, or back to

14     where you were.

15             Okay.  Please go down further.

16             Okay.  Please go down further.

17             Stop, please.

18             Okay.  Please go down further.

19             Okay.  If you can keep scrolling down,

20     please.

21             Please go down further.

22             Please go down further.

23             Please go down further.

24             Okay.  Thank you.

25         Q.   Mr. Slawin, do you recognize this document?

Eric Slawin                                     July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 117

1       A.   Yes.

2       Q.   What is this document?

3       A.   It's the tax return I filed to the State of

4   North Carolina for the year 2019.

5       Q.   And you prepared this document yourself; is

6   that correct?

7       A.   Yes.

8       Q.   And when you prepared this document it

9   would have had certain attachments to it on file?

10      A.   Yes, I assume so.

11      Q.   At what point in time did you and your wife

12  separate?

13      A.   It was -- gosh, we were separated, I mean,

14  off and on between 2018 and 2019.

15      Q.   Between 2018 and 2019.

16           When did you actually file the 2019 tax

17  return?  I understand it was for the tax year 2019.

18  When did you actually file.

19      A.   I don't remember the exact date.

20      Q.   You and your wife separate before or after

21  the termination of your employment by Wells Fargo?

22      A.   Before.

23      Q.   All right.

24           MR. GALANEK:  That's all I need with that

25           document, George.

Eric Slawin                                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

                                                    Page 118

1        Q.    (By Mr. Galanek) Mr. Slawin, did you

2    indicate to any of the psychologists or psychiatrists

3    who have treated you that you have a problem with a

4    gambling addiction?

5              MR. MARX:  Object to the form of the

6         question.

7              You can answer.

8         A.   I don't remember.

9         Q.   (By Mr. Galanek) If it is reflected in the

10   medical records of any of the psychiatrists or

11   psychologists that you saw that you indicated that or

12   that they determined that you had a gambling

13   addiction, would that be accurate?

14        A.   No.

15        Q.   Okay.  So the medical records of the

16   psychologists that saw you would be inaccurate if it

17   indicated that you had a gambling problem?

18        A.    In regard to that I would say yes.

19        Q.    So their records should not be trusted with

20   respect to that entry?

21        A.    That's correct.  I think that's an

22   overstatement.

23        Q.    So are other portions of the records

24   susceptible to overstatement?

25        A.    Generally speaking, no.

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 119

1      Q.   How is the jury to tell when the

2  psychologists or psychiatrists have overstated a

3  condition versus understated it?

4           MR. MARX:  Object to the form.

5      Q.   (By Mr. Galanek) When their records -- if

6  you believe that their records are inaccurate as to

7  statements regarding gambling?

8           MR. MARX:  Object to the form.

9      A.   I would address what they wrote, I guess,

10  individually line-by-line.

11      Q.   (By Mr. Galanek) Have you reached out to

12  any of the psychologists or psychiatrists who treated

13  you to ask them to testify in this matter?

14      A.   No.

15      Q.   Have you asked anyone to reach out to them

16  on your behalf to ask them to testify in this matter?

17      A.   No.

18      Q.   What damages are you seeking in this

19  matter?

20      A.   Back pay and mental anguish.

21      Q.   Back pay for what period of time?

22      A.   As I understand it, at least for the year

23  2018.  And into maybe -- we have a calculation that

24  we worked on.

25      Q.   Well, I don't care about the "we" there.

Page 120

1    I'm asking you, as the Plaintiff in the case, for

2    what period of time are you seeking back pay?

3         A.    Well, I consider back pay lost pay.  So

4    from when I was terminated by BAMS to when I began my

5    employment with USAA.

6         Q.    I'm sorry.  Were you employed with anyone

7    else between your employment with USAA and BAMS?

8         A.    Yes.

9         Q.    And your employment with Wells Fargo, you

10   actually were compensated at a level higher than your

11   compensation with BAMS, correct?

12        A.    I thought it was comparable.

13        Q.    And your employment with Citi Group also

14   preceded your employment with USAA; is that correct?

15        A.    Yes.

16        Q.    And the only period of time that you were

17   unemployed was an eight-week period of time between

18   your employment with Wells Fargo and your employment

19   with Citi Group, correct?

20        A.    Notwithstanding 2018?

21        Q.    Yes.

22        A.    Yes.

23        Q.    Okay.  So you were unemployed from

24   December, mid December of 2017 until you obtained

25   employment with UPS in 2018, in November, correct?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 121

1          A.    Correct.

2          Q.    Then you were employed with Wells Fargo,

3    correct?

4          A.    Yes, after UPS.

5          Q.    And you continued employment with Wells

6    Fargo until they terminated you for a policy

7    violation, correct?

8          A.    Yes, correct.

9          Q.    And then you were employed by Citi Group,

10   correct?

11         A.    A few months subsequent to my termination

12   from Wells, yes.

13         Q.    I believe we talked about it being

14   approximately eight weeks, correct?

15         A.    Correct.

16         Q.    And after that, you were employed by USAA,

17   correct?

18         A.    Yes, correct.

19         Q.    So other than an eight-week period of time

20   after your termination by Wells Fargo for a policy

21   violation, you have been employed consistently since

22   November of 2018, correct?

23         A.    Correct.

24         Q.    And so what is the amount you are seeking

25   in back pay?

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 122

```
 1        A.    Approximately $250,000.
 2        Q.    Are there any other components of your
 3   damages calculation that you are seeking other than
 4   back pay?
 5        A.    Mental anguish.
 6        Q.    What amount are you seeking for mental
 7   anguish?
 8        A.    I haven't determined that amount, frankly.
 9        Q.    And what is the factual basis of your claim
10   for mental anguish?
11        A.    Factual basis?  I don't understand that
12   question.
13        Q.    What are the facts upon which you are
14   basing your claim for mental anguish?
15        A.    The fact that I was retaliated against and
16   also terminated from BAMS.
17        Q.    And your claim is that you were retaliated
18   against by the termination of your employment?
19        A.    When you say "by," I mean "via."  I don't
20   know if that's the same thing.
21        Q.    I'm just asking, was there any other form
22   of retaliation that you are claiming other than the
23   termination of your employment?
24        A.    Yes.  I feel the performance review I was
25   put on during my employment with BAMS was
```

Eric Slawin                            July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 123

1    retaliation.

2         Q.    And anything other than your termination

3    and the performance review?

4         A.    For mental anguish?

5         Q.    Is the basis for your retal -- you said

6    your mental anguish is based upon retaliation.

7         A.    You are echoing.

8         Q.    Yeah.  I don't think I am.  I think

9    somebody else has got -- needs to mute their speaker.

10        A.    Okay.

11        Q.    You indicated that your mental anguish

12   claim is based upon retaliation.  Okay.  So let's

13   step back.

14             Is your mental anguish claim based upon

15   anything other than the alleged retaliation?

16        A.    Yes.  The subsequent depression and things

17   I went through as a result of that retaliation,

18   wrongful termination.

19        Q.    BAMS' only conduct that you claim caused

20   you mental anguish is the retaliation, correct?

21        A.    Well, during my employment, when I -- you

22   know, I felt that I was being put in the middle of --

23   hang on just a second.  I'm sorry, my computer

24   blanked out.

25             Can you hear me?

Page 124

```
1        Q.   We can hear you.

2        A.   Can you repeat the question, please?

3        Q.   Sure.

4             MR. GALANEK:  Robin, can you please read

5        the question back?

6             (WHEREUPON, the record was read back by the

7        reporter as follows:)

8             "QUESTION:  BAMS' only conduct that you

9        claim caused your mental anguish is the

10       retaliation, correct?"

11       A.   No.

12       Q.   (By Mr. Galanek) What other conduct do you

13   claim forms a basis for your mental anguish?

14       A.   Well, I felt I was in the middle of a

15   fraud, being set up as the fall guy.  And every time

16   I protested to my management, it was met with total

17   indifference.  And that was very hard to deal with.

18       Q.   Prior to the termination of your employment

19   was your salary reduced in any way?

20       A.   At BAMS?

21       Q.   Correct.

22       A.   No.

23       Q.   Was your other compensation reduced in any

24   way at BAMS prior to the termination of your

25   employment?
```

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 125

1          A.    I don't know the answer to that.

2          Q.    Were any of your benefits taken away by

3    BAMS prior to the termination of your employment?

4          A.    No.

5          Q.    Was your title taken away from you prior to

6    the termination of your employment at BAMS?

7          A.    No.

8          Q.    Were your duties or responsibilities

9    curtailed in any way?

10         A.    No.

11         Q.    Was the office that you sat in changed in

12   any way?

13         A.    No.

14         Q.    Okay.  Did your reporting change in any way

15   prior to the termination of your employment?  Did you

16   report to the same people?

17         A.    No.

18         Q.    How did your reporting change?

19         A.    I reported to -- well, can you give me a

20   time period, please?

21         Q.    Sure.

22               In 2017, from April until the termination

23   of your employment, did your reporting structure

24   change?

25         A.    Yes.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 126

1    Q.    Okay.  How did it change?

2    A.    I reported to different managers.

3    Q.    Which managers did you report to?

4    A.    Natasha Collins, Brian Rubin and Mark

5  Kendall.

6    Q.    And did those direct reports change as

7  punishment to you or because those individuals

8  received promotions?

9    A.    I -- I would say they their job duties

10  changed.  I don't know that any of them were

11  promoted.

12    Q.    Their job duties changed.  And as a result

13  of the changes in their job duties, those people to

14  whom you reported changed; is that fair?

15    A.    Yes.  However, I -- thinking now, I believe

16  Natasha Collins was promoted.

17    Q.    Okay.  Is there anything else upon which

18  you are basing your claim of mental anguish?

19    A.    Yes.  The long year of 2018 was very

20  difficult.  And what happened to me at Wells I feel

21  strongly was -- I feel strongly the way I was treated

22  at BAMS and when I was wrongfully terminated was a

23  catalyst to that happening.

24          My -- my marriage is bad.  And I've lost

25  years of my children.  My house is in disrepair

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 127

1    because I -- you know, I still am trying to recover

2    financially.  I lost my retirement.  Frankly, I

3    attempted suicide.  Yes, a lot of stuff.

4         Q.   The conduct that we are talking about, not

5    the impact, and I understand.  If you need a moment

6    at any point in time, you just tell me.  I understand

7    you just discussed what you believe the impact to be

8    that resulted in your mental anguish that you are

9    claiming.

10             My question goes to the conduct.  Is there

11   any other conduct of BAMS other than terminating your

12   employment upon which you base your mental anguish

13   claim?

14        A.   The indifference by management when I

15   routinely opposed participating in their fraud and

16   how I was positioned by them.

17        Q.   At any point in time prior to the

18   termination of your employment, did you make any

19   complaint to the Human Resources Department at BAMS

20   about any treatment by any other employee of BAMS?

21        A.   No.

22        Q.   Any point in time prior to your termination

23   did you call the Human Resources hotline to make a

24   complaint about the conduct of any other employee of

25   BAMS?

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 128

1        A.    No.

2        Q.    And you understand that that Human

3   Resources line or hotline allows for anonymous

4   complaints, correct?

5        A.    I don't recall a hotline being available.

6        Q.    We will take a look at -- take a look at

7   that now.

8             MR. GALANEK:  George, if you will please

9        pull up Exhibit 4 for me.

10            (Defendant's Exhibit 4, Bank of America

11        Merchant Services onboarding information, Bates

12        labeled PLAINTIFF 000141 - 149, marked for

13        identification.)

14            THE WITNESS:  I'm sorry.  Can I just have a

15        couple minutes off the record, please?

16            MR. GALANEK:  That's fine.

17            Before you go off the record, because of

18        your attorney's complaints before, is now a good

19        time for us to take a lunch break, Mr. Slawin?

20            THE WITNESS:  Yeah.  That would be great.

21            MR. GALANEK:  Why don't we do that.  Why

22        don't we take -- it's 1:30.  Why don't we

23        reconvene at -- we will try to be quick.  How

24        about ten minutes after two?

25            THE WITNESS:  Okay.

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 129

```
 1              MR. GALANEK:  Great.  Let's take a break
 2         until a couple minutes after two.
 3              THE VIDEOGRAPHER:  Off the record, 1:32.
 4              (WHEREUPON, a luncheon recess was taken,
 5         1:32 p.m. - 2:12 p.m.)
 6              THE VIDEOGRAPHER:  Back on the record.  The
 7         time is 2:12.
 8         Q.   (By Mr. Galanek) All right.  Mr. Slawin,
 9    let me just follow up on a couple of questions and
10    then we will get to that exhibit.
11              When you -- your employment was terminated
12    with Wells Fargo, did you sign any sort of Separation
13    Agreement?
14         A.   Not to my knowledge, no.
15         Q.   Were you provided any severance?
16         A.   No.
17         Q.   Were you provided the option to take COBRA
18    coverage for healthcare matters?
19         A.   Yes.
20         Q.   Sorry?
21         A.   Yes.
22         Q.   And did you take COBRA coverage?
23         A.   Yes.
24         Q.   So there was no gap in healthcare coverage
25    for you or your family from the beginning of your
```

Eric Slawin                    July 19, 2022

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 130

1    employment with Wells Fargo to date, was there?

2        A.    Oh, God.  Correct.

3        Q.    Sorry.  Correct?

4        A.    Yes.  Yes.  Yes, you are correct.

5        Q.    Pardon me.

6              You indicated before lunch that you

7    attempted suicide.  When was that?

8        A.    I'm sorry.  Just give me a second.

9        Q.    Sure.

10       A.    It was after I was terminated -- well, it

11   was after I was put on, you know, leave from Wells.

12       Q.    So this was during your employment with

13   Wells Fargo, correct?

14       A.    Correct.

15       Q.    It was after the conduct you engaged in for

16   which you were put on administrative leave?

17       A.    Yes.

18       Q.    And that conduct involved alcohol, correct?

19       A.    Yes.

20       Q.    And, in fact, you drank so much that, at

21   least based on your earlier testimony, you don't seem

22   to remember the conduct you engaged in; is that fair?

23       A.    That's fair.

24       Q.    And I believe you told me earlier that you

25   began drinking daily, about a quarter of a bottle of

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 131

1    alcohol a day, sometime in July of 2017, right?

2         A.    That's correct.

3         Q.    And how soon after you were put on

4    administrative leave did you attempt suicide?

5         A.    Within a week.

6         Q.    And in what manner did you attempt suicide?

7         A.    I took as much as I could of the medication

8    that Dr. Carpenter had prescribed.

9         Q.    All right.  And did you seek treatment

10   after your unsuccessful suicide attempt?

11        A.    No.

12        Q.    You didn't seek to see or you didn't seek

13   any medical attention?

14        A.    No.

15        Q.    So you didn't go to the Emergency Room, no

16   stomach pump, nothing along those lines?

17        A.    No.

18        Q.    Did anyone find you and resuscitate you or

19   did you just wake up?

20        A.    I just woke up.

21        Q.    All right.

22             MR. GALANEK:  George, if you don't mind

23        pulling up Exhibit 4, please.  Again, this is

24        Plaintiff's document out of Plaintiff's

25        production, Bates Number 141 to 149.

Page 132

1          Q.    (By Mr. Galanek) Mr. Slawin, as before,

2     feel free to tell George to direct you up and through

3     the document.  This is out of your production,

4     meaning that you have possession of this.  Your

5     lawyers have provided it to us in the litigation.

6     The only question that I'm going to have about this

7     document after you review it is as whether or not, in

8     fact, on -- I believe it's Page 3, but I'll tell you

9     exactly -- whether or not you were provided with

10    contact information for the HR hotline.

11             Actually, it can be a bit more than Page 3.

12    It's actually Plaintiff's 149.  So why don't we go to

13    Plaintiff's 149.

14             You can certainly go back to and review

15    whatever you want to.  But let's just go to that page

16    first so I can show you what I want to ask you a

17    question about.  Right there.

18             MR. GALANEK:  Go down and show him the

19         Bates number, George.  Plaintiff's 149.

20         Q.    (By Mr. Galanek) So that means that it's

21    out of the production of documents that you have

22    possession of.

23             You understand that, Mr. Slawin?

24         A.    I do.

25         Q.    Okay.

Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 133

 1           MR. GALANEK:  And if you don't mind,
 2      George, just go up so we can all see the first
 3      row on that page.
 4      Q.   (By Mr. Galanek) The first row reads "Alpha
 5   Staff Contact Numbers."
 6           Do you see that row, Mr. Slawin?
 7      A.   I do.
 8      Q.   And is this a document that you received at
 9   the beginning of your employment with -- let's see.
10   This is the beginning of your employment with BAMS;
11   is that correct?
12           THE WITNESS:  George, can you go down
13      further, please?
14           MR. GALANEK:  And actually, George, you may
15      want him to go to the beginning of the document.
16      And I apologize, Mr. Slawin, you can have him go
17      wherever, but I think you probably wanted him to
18      go up and get the first page.
19           THE WITNESS:  Yes.  Thank you.
20           Okay.  Can you go down further, George,
21      please?
22           Okay.  Please go down further.
23           Further, please.
24           And further -- can you just go to the end,
25      please?

Page 134

1           Is that the bottom, George?

2           THE CONCIERGE:  This is the last page.

3           THE WITNESS:  Okay.  Okay.

4      Q.   (By Mr. Galanek) All right.  Mr. Slawin,

5  this is a document that you received on beginning

6  your employment with BAMS; is that correct?

7      A.   I do not recall receiving this.

8      Q.   You certainly had possession of it in this

9  case to produce it back to BAMS, correct?

10     A.   Correct.

11     Q.   Okay.  And in this document there are

12 certain key resources and contacts that are listed in

13 case you need them, correct?

14     A.   Correct.

15     Q.   Including a number of HR numbers, one for

16 HR Service Center Associates Line, the EAP and the

17 Discrimination and Harassment Hotline; is that

18 correct?

19     A.   Yes.  I do see those numbers there.

20     Q.   And BAMS also had a Code of Conduct; is

21 that correct?

22     A.   I'm not -- I'm not aware of that.

23     Q.   Are you aware that -- I'm sorry.  Were you

24 in a compliance role at BAMS?

25     A.   No, it was a Risk Management role.

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 135

1      Q.    Okay.  So you had no compliance problem

2    that you weren't looking at, any processes or

3    operations of BAMS to make sure that there was --

4    they were complying with their own policies,

5    procedures?

6      A.    No, I don't recall performing that role.

7      Q.    All right.  And so as an employee of BAMS,

8    you never reviewed the Code of Conduct?

9      A.    I don't remember reviewing it.

10      Q.    At any point in time did you raise any

11    concern to anyone here in Human Resources that you

12    felt that you were being placed in an inappropriate

13    position by your managers while at BAMS?

14      A.    No.

15      Q.    At any point in time did you contact the

16    Legal Department at BAMS to indicate that you felt

17    that you were being placed in an inappropriate

18    position by any of your managers?

19      A.    No.

20      Q.    At any point did you contact anyone in the

21    Legal Department at BAMS to express concerns about

22    any conduct of any of your managers with respect to

23    the treatment of PCI compliance data -- or the

24    failure to meet PCI DSS, or data security standards

25    with respect to the handling of PAN data?

Eric Slawin                           July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 136

1      A.    That was a long question.  Can you --

2      Q.    Sure.

3      A.    Did you say -- I just need to know who you

4   asked me I contacted.

5      Q.    Let me back up.

6            At any point in time -- how about this.  At

7   any point in time did you contact anyone in the Legal

8   Department at BAMS to express any concern about any

9   issue prior to the termination of your employment?

10      A.    Probably as part of my job duties.  When

11   you say concern, it's -- I would reach out to General

12   Counsel if I needed, you know, an answer or an

13   approval to do something.

14      Q.    Great.  So you certainly knew who to

15   contact within the General Counsel's Office as part

16   of your job, correct?

17      A.    Correct.

18      Q.    And, in fact, you had e-mail correspondence

19   frequently with members of the General Counsel's

20   Office, correct?

21      A.    Yes, I did send them e-mails.

22      Q.    At any point in time did you reach out to

23   anyone in the Office of the General Counsel to

24   express concern about the way that you were being

25   treated by management?

Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 137

 1    A.    No.

 2    Q.    Did you reach out to anyone in the General

 3  Counsel's Office to express concern that you felt

 4  that you were being placed in an inappropriate

 5  position based on decisions being made by your

 6  managers with respect to the handling of primary

 7  account numbers by BAMS?

 8    A.    Did you -- did I reach out to -- I'm sorry.

 9  I'm not trying to be evasive.  Did you say -- are you

10  asking if I reached out to General Counsel about

11  that?

12    Q.    Yes.

13        MR. GALANEK:  Robin, please read the

14        question back.

15        (WHEREUPON, the record was read back by the

16        reporter as follows:)

17        "QUESTION:  Did you reach out to anyone at

18        General Counsel's Office to express concern that

19        you felt that you were being placed in an

20        inappropriate position based on decisions being

21        made by your managers with respect to the

22        handling of primary account numbers by BAMS?"

23        THE WITNESS:  Robin, did you say

24        "inappropriate position"?  I thought you said

25        "decisions" twice.

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 138

1            THE COURT REPORTER:  I did say "decisions"

2       twice it should be "positions."  Sorry.

3            THE WITNESS:  Okay.

4       A.   The answer is no.

5       Q.   (By Mr. Galanek) All right.

6            MR. GALANEK:  George, you can take that one

7       down, please.

8       Q.   (By Mr. Galanek) All right.  Now, we were

9   talking about the damages that you are claiming in

10  this case, Mr. Slawin.  You indicated that you were

11  seeking back pay.  We have discussed that.  You

12  indicated that you were seeking mental anguish

13  damages.  You could not articulate an amount you were

14  seeking.  I asked you what that was based upon and

15  you explained how you felt emotionally.

16           I believe you said, when I asked you about

17  the conduct that you claim gave rise to that mental

18  anguish, it was the termination and also being placed

19  on a Performance Plan; is that correct?

20      A.   Well, I would add in just the sheer

21  indifference that I experienced when I would complain

22  or oppose what was going on, you know, with this

23  fraud.  And that was just the -- a lingering thing

24  that was very difficult to deal with.  Nobody seemed

25  interested.

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 139

1        Q.    Now, with respect to the Performance Plan,

2     you were given a written coaching form in September

3     of 2017, correct?

4        A.    Correct.

5        Q.    After receiving that written coaching form,

6     did you communicate to anyone in HR that you felt

7     that being placed or being provided that written

8     coaching form was somehow in retaliation for any

9     conduct that you had engaged in?

10       A.    No.

11       Q.    Did you communicate to anyone at that time

12    in HR, in Legal, anyone within the company that you

13    felt that you were being provided that written

14    coaching form as a result of any activity that you

15    had engaged in?

16       A.    "Any activity" is pretty broad.  Can you

17    define it a little better, please?

18       Q.    No, because I'm basically asking you a very

19    broad question.  Did you contact anyone and tell them

20    that you felt that you were being given that written

21    coaching form as a result of any, you know, activity

22    or conduct that you had engaged in that you thought

23    was proper?

24       A.    No.

25       Q.    In fact, that written coaching form

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 140

1    reiterated concerns that had previously been provided

2    to you in an oral fashion by Ms. Collins in June of

3    2017, correct?

4              MR. MARX:  Object to the form.

5              You can answer.

6         A.   I don't -- I don't really -- I don't

7    recollect her complaining about my -- what I was

8    doing.

9         Q.   (By Mr. Galanek) I'm sorry.  You didn't --

10   you don't recall being coached orally about poor job

11   performance by Ms. Collins in June of 2017?

12        A.   Not specifically.  We talked about a lot of

13   things.  I mean, there were things I was behind on,

14   but I wouldn't call it coaching.  I was just a matter

15   of trying to work through deadlines.

16        Q.   She, in fact, required you to begin having

17   one-on-one meetings with her beginning in June of

18   2017 to ensure that you were, in fact, following up

19   on your job responsibilities, correct?

20             MR. MARX:  Object to the form.

21             You can answer.

22        A.   I don't recollect that was the reason for

23   the meetings.  I thought it was just to talk about

24   the deadlines and what I'm getting done.

25        Q.   (By Mr. Galanek) Well, it wasn't what you

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 142 of 317
Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 141

1    were getting done, it was what you were not getting

2    done, correct?

3            MR. MARX:  Object to the form.

4            You can answer.

5        A.    It was what tasks I had completed and what

6    tasks I had not completed.

7        Q.    (By Mr. Galanek) In your discussions with

8    Ms. Collins in June of 2017, she expressed concerns

9    over the lack of the amount of work that you had, in

10   fact, completed in a timely fashion, did she not?

11           MR. MARX:  Object to the form.

12           You can answer.

13       A.    I don't -- I don't recall that overall, no.

14       Q.    (By Mr. Galanek) All right.  Are there any

15   other components of the damages that you are seeking

16   in this case?

17       A.    Well, it certainly has affected my

18   reputation.  You know, I was totally humiliated.  I

19   really feel like my career trajectory was thrown off

20   kilter.  It was -- it was stymied, at a minimum.

21       Q.    You didn't disclose that you were

22   terminated for a policy violation by BAMS to anyone,

23   did you?

24           MR. MARX:  Object to the form.

25           You can answer.

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 142

1          A.    To prospective employers, when it came up.

2          Q.    (By Mr. Galanek) You did disclose that to

3     prospective employers?

4          A.    In a very general nature, yes, when they

5     asked me.

6          Q.    Okay.  Who did you disclose that to?

7               MR. MARX:  Object to the form.

8               You can answer.

9          A.    Well, it would have been when I interviewed

10    for the job at Wells Fargo and when I interviewed for

11    the job at Citi Group.

12         Q.    (By Mr. Galanek) When I asked you earlier

13    if you had disclosed that you been terminated for a

14    policy violation when you interviewed at Wells Fargo

15    you said no.  So you did disclose that to Wells

16    Fargo?

17              MR. MARX:  Object to the form.

18              You can answer.

19         A.    I did disclose what happened to me at BAMS,

20    yes.

21         Q.    (By Mr. Galanek) Okay.

22         A.    In a very general nature.

23         Q.    What did you disclose?  What did you

24    disclose?

25         A.    What I recall was saying that, you know, I

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 143

1    didn't agree what was going on.  And when I put my

2    opposition in writing I was terminated.

3        Q.    And did Wells Fargo hire you?

4        A.    Yes.

5        Q.    And did you make a similar general

6    disclosure to Citi Group?

7        A.    Yes.

8        Q.    And did Citi Group hire you?

9        A.    Yes.

10       Q.    Okay.  Did you make such a disclosure to

11   someone who didn't hire you?

12       A.    No.  I kept this very private.

13       Q.    And you are not aware of anyone at BAMS

14   disclosing anything about your termination to any

15   potential employer, correct?

16       A.    Correct.

17       Q.    And you voluntarily chose to file this

18   lawsuit; is that right?

19       A.    Yes.

20       Q.    And in the Complaint, you make a number of

21   disclosures about what you say was occurring and what

22   happened to you, correct?

23       A.    Yes.

24       Q.    Okay.  Is there any other component to the

25   damages that you are seeking in this case?

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 144

1        A.    I guess not.  I just think mental anguish,

2    what I went through encompasses much of it.  So --

3        Q.    Tell me how you became employed by BAMS.

4        A.    I applied, what I recall, online.  I don't

5    exactly remember or if I sent a resume to BAMS.  But

6    then I was subsequently called by someone in Human

7    Resources and an interview was set up with Natasha

8    Collins.

9        Q.    And when you interviewed with Ms. Collins

10   you were still employed by SunTrust?

11       A.    No.

12       Q.    You had already left your employment with

13   SunTrust?

14       A.    I had resigned, correct.

15       Q.    And you resigned while you were still on a

16   Performance Improvement Plan?

17       A.    Yes.

18       Q.    And you had not completed that Performance

19   Improvement Plan; is that correct?

20       A.    It was -- it hadn't, I guess, been closed.

21   So I don't know if I hadn't completed it.

22       Q.    All right.

23       A.    I would say I was doing the tasks -- I'm

24   sorry.

25       Q.    Go ahead.

Eric Slawin                            July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 145

1      A.   I was doing the task of the Performance

2    Plan, so I was doing it.

3      Q.   Did you disclose to Ms. Collins that you

4    had been placed on a Performance Improvement Plan by

5    your prior employer?

6      A.   No.  I don't recall that coming up.

7      Q.   All right.  You have been -- you were

8    placed on a Performance Improvement Plan by SunTrust.

9    You were terminated by BAMS.  You were terminated by

10   Wells Fargo.  Have you ever been terminated by any

11   other employer?

12     A.   No.

13     Q.   Okay.  But you interviewed with

14   Ms. Collins.  Did you interview with anyone other

15   than Ms. Collins?

16     A.   No.

17     Q.   How soon after you -- or what position did

18   you interview for?

19     A.   The one I was hired for.

20     Q.   Which was?

21     A.   Business Control Officer, I believe.

22     Q.   The title --

23     A.   The title, I don't -- I don't -- I don't

24   remember the exact title.  But it's -- it was the

25   role that I was in when I left.

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 146

1        Q.    Functionally on a day-to-day basis --
2   functionally on a day-to-day basis what were you
3   doing in that role?
4        A.    Handling operational risk matters for the
5   large clients.  You got the universe of large clients
6   for -- that BAMS had.
7        Q.    And what did you tell Ms. Collins about
8   your past experience that would qualify you for that
9   position?
10       A.    It was a long time ago, but I'm sure I
11  would have spoke to my resume and my past experience
12  with risk management and operational risk management.
13       Q.    How soon after you interviewed with
14  Ms. Collins were you offered a position?
15       A.    Approximately a week.
16            MR. GALANEK:  George, if you don't mind,
17       let's pull up Exhibit Number 5, please.
18            MR. MARX:  What number is this?
19            MR. GALANEK:  Exhibit 5.  Oh, I'm sorry.
20       It's Bates Number 150 to 152 out of your
21       production.
22            MR. MARX:  Plaintiff's -- okay.  All right.
23       Thank you.  Plaintiff's.
24            MR. GALANEK:  Everything is out of your
25       production unless I say otherwise.

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 147

1          MR. MARX:  Okay.  That's good.

2          What number was it?  I'm sorry.

3          MR. GALANEK:  It's Exhibit 5, 150 to 152.

4          MR. MARX:  Thank you.

5          (Defendant's Exhibit 5, Offer Letter from

6     Brian Dieckhoff to Eric Slawin, dated 11/5/2015,

7     Bates labeled PLAINTIFF 000150 - 152, marked for

8     identification.)

9          MR. GALANEK:  Mr. Slawin, as before, please

10    feel free to direct George up and down

11    throughout the document.

12          THE WITNESS:  George, please go down.

13          Okay.  Thank you.

14          Can you stop for just a moment?

15          Okay.  Please go down.

16          Okay.  Please go down.

17          Please go down.

18          You can go further.

19          You can probably go to the bottom, please.

20          Okay.  Thank you.

21     Q.   (By Mr. Galanek) Mr. Slawin, is that your

22    signature on the last page of this document?

23     A.   Yes, it appears to be.

24     Q.   And what is this document?

25     A.   It looks like the offer letter that I

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 148

1    received from BAMS.

2        Q.    As part of the offer from BAMS, you

3    understood that you were also agreeing to certain

4    nondisclosure obligations?

5        A.    I can't say that I understood that at the

6    time.

7        Q.    I'm assuming at the time that you signed

8    this letter you could read, correct?

9        A.    Yes, I could read.

10       Q.    Okay.

11             MR. GALANEK:  George, let's pull up Exhibit

12             6, please.  That's Plaintiff's document 155 to

13             156.

14             (Defendant's Exhibit 6, Proprietary Rights

15             and Information Agreement, Bates labeled

16             PLAINTIFF 000155 - 156, marked for

17             identification.)

18             MR. GALANEK:  Mr. Slawin, again, please

19             feel free to direct George through this

20             document, make sure you're comfortable before I

21             start asking you questions.

22             THE WITNESS:  Okay.

23             Please go down further, George.

24             Stop, please.

25             Okay.  Please go down.

Eric Slawin                                     July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 149

1              Okay.  Please go down.

2              Okay.  Please go down.

3              Okay.  Thank you.

4         Q.   (By Mr. Galanek) Mr. Slawin, is that your

5    signature on this document?

6         A.   Yes, it appears to be.

7         Q.   And you signed this document at the

8    beginning of your employment with BAMS; is that

9    correct?

10        A.   Based on the date there, I would say yes.

11             MR. GALANEK:  Thank you, George.  You can

12        take that down.

13        Q.   (By Mr. Galanek) After you were hired,

14   Mr. Slawin, who were you reporting to?

15        A.   Natasha Collins.

16        Q.   How long did you report to Ms. Collins?

17        A.   From the date of my hire to September 2017.

18        Q.   Okay.  So from November of 2015 to

19   September of 2017?

20        A.   Did you say -- excuse me, September 2017?

21        Q.   Yes, from November of 2015 through

22   September of 2017.

23        A.   That sounds correct, yes.

24        Q.   Now, during that period of time did you

25   have anyone who reported to you?

Eric Slawin                                         July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 150

1        A.    No.

2        Q.    During that period of time was Mr. Kendall,

3    a peer of yours, also reporting to Ms. Collins?

4        A.    Yes.

5        Q.    Now, at some point in time after September

6    '17, did you begin reporting to someone else?

7        A.    Did you say after September '17?

8        Q.    Yes.

9        A.    Okay.  Yes.

10        Q.    Who did you begin reporting to after

11    September of 2017?

12        A.    Mark Kendall.

13        Q.    How long did you report to Mr. Kendall?

14        A.    Until the date of my termination.

15        Q.    Were the only two people that you reported

16    to during the course of your employment Ms. Collins

17    and Mr. Kendall?

18        A.    No.

19        Q.    Who else did you report to?

20        A.    Brian Rubin.

21        Q.    When did you report to Mr. Rubin?

22        A.    Approximately April or May of 2017 to

23    probably September 2017.

24        Q.    Were you reporting to Mr. Rubin at the same

25    time that you were reporting to Ms. Collins?

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 151

1          A.    Yes.

2          Q.    They both had responsibility for

3    supervising your activities?

4          A.    That was my understanding, yes.

5          Q.    And was there a distinction between their

6    obligations that they were managing?

7          A.    I would say Brian was day-to-day with me.

8    Our interactions were daily.  And Natasha Collins was

9    more weekly, biweekly interactions.

10         Q.    Did you complain about Brian's personality

11   to Mark Kendall?

12         A.    Yes.

13         Q.    Did you complain about Natasha's

14   personality to Mark Kendall?

15         A.    I don't specifically recall that.

16         Q.    Did you complain about Ms. Collins'

17   management style to Mr. Kendall?

18         A.    I don't recall that.

19         Q.    Do you recall telling Mr. Kendall that you

20   were making more money day trading during 2017 than

21   doing your job?

22         A.    I recall telling him I was day trading.  I

23   don't recall saying I was making more money.

24         Q.    And if that's his recollection he would not

25   be telling the truth?

Page 152

1          A.    I'm sorry?

2          Q.    That's what he remembers you telling him.

3     He would be lying?

4          A.    I'm not going to say someone else is lying.

5     I -- I'm telling you I don't recall saying I was

6     making more money doing that.

7          Q.    Did you ever tell Mr. Kendall that you

8     disliked your job?

9          A.    Yes.

10         Q.    Did you ever criticize your managers to

11    Mr. Kendall?

12         A.    I don't recall specifically doing that.

13         Q.    Did you ever tell Mr. Kendall you were

14    interviewing for other positions while at BAMS?

15         A.    Yes.

16         Q.    Were you interviewing for other positions

17    during 2017?

18         A.    Yes.

19         Q.    And where were you interviewing?

20         A.    SunTrust.  I was speaking with them again.

21    And it was a broker-dealer.  I don't remember the

22    name of the broker-dealer in the midwest.

23         Q.    And when were these interviews taking

24    place?

25         A.    Roughly between, I guess -- let's see,

Eric Slawin                         July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 153

1   August and October.  Oh, and there's another one,

2   Worldcom, I believe, who I think is local here in

3   Atlanta.

4       Q.   As part of the written coaching that you

5   were -- sorry.  Anyone else?

6       A.   No.

7       Q.   As part of the written coaching that you

8   received in September of 2017 from Ms. Collins, were

9   you informed that if your employment -- if your

10  performance did not improve you could be disciplined

11  up to and including the termination of your

12  employment?

13      A.   I don't remember verbally being told that.

14  I would have to look at the performance review to see

15  if that's what it said.

16      Q.   All right.

17          MR. GALANEK:  Let's pull up Exhibit

18      Number 64.  And this is actually out of the BAMS

19      production.

20          Mr. Marx, this is Exhibit 1360 -- or

21      document 1368 and 1369.

22          MR. MARX:  Thank you.

23          MR. GALANEK:  Mr. Slawin, again, feel free

24      to tell George how you would like to view this

25      document.

Eric Slawin                            July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 154

1              (Defendant's Exhibit 64, Bank of America

2       Merchant Services Coaching Form for Eric Slawin,

3       dated 9/25/17, Bates labeled BAMS 00001368 -

4       1370, marked for identification.)

5              THE WITNESS:  Okay.

6              Okay.  Please scroll down for me.

7              Okay.  Please go down further.

8              Okay.  Please go down further.

9              Okay.

10             George, can you go down further, please.

11             Okay.

12       Q.    (By Mr. Galanek) Do you recognize this

13   document?

14       A.    I do, yes.

15       Q.    And is this the coaching form that was

16   delivered to you by Ms. Collins in September of 2017?

17             THE WITNESS:  Can you please go down

18       further, George?

19             Oh, can you go up, please?

20       A.    I don't believe she sent it to me.

21       Q.    (By Mr. Galanek) It was delivered to you,

22   correct?

23       A.    Yes.

24       Q.    Okay.  Did she hand it to you?  Did she

25   e-mail it to you?  How did you receive this document?

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 155

1       A.    What I recall is I thought it was sent to
2    me by HR.
3       Q.    And when Ms. Collins and Mr. Kendall state
4    in the coaching form on the first page that you had
5    missed multiple deadlines across the organization and
6    that it was unclear what you had accomplished in the
7    last year, was that false?
8       A.    I think that's overstatement of the facts.
9    I don't agree with that assessment.
10       Q.    Had you missed a deadline?
11       A.    I was -- yes, I was behind on some task.
12    It was natural.  There was so much to do.
13       Q.    Were you behind on more than one task?
14       A.    I don't specifically remember if I was
15    behind on more than one task.
16       Q.    Is it accurate that during the course of
17    2017, the responsibility for risk and control
18    self-assessments had been removed from you and had
19    been taken up by the Enterprise Risk Management
20    Center of Excellence?
21       A.    I do recall going to training for that,
22    that the Enterprise put on.  And then -- and I think
23    that's the role, if that's what you are alluding to,
24    that they became -- or they wanted it done their way,
25    and so they trained us on it.  But I always thought I

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 156

1    had to -- you know, that would be part of my job

2    duties ongoing.

3         Q.    So you are saying you disagree --

4              MR. GALANEK:  Let's go back up, George.

5         Let's go to the first page, please.

6         Q.    (By Mr. Galanek) And in the first paragraph

7    after the bullet point, the first sentence it states

8    "The biggest part of the BCO job is Risk & Control

9    Self Assessments and that responsibility was assumed

10   by the Enterprise Risk Management Center of

11   Excellence this year."

12             Do you disagree with that statement?

13        A.    I -- I understand when they say the

14   responsibility was theirs but I still was -- I

15   thought I had to carry out those tasks.

16        Q.    Do you disagree with the statement two

17   sentences down that "Coaching has been provided on

18   required structured, status reporting to allow

19   management to help you get organized, manage

20   priorities and ensure" that your deadlines were met?

21        A.    I don't recall that occurred.

22        Q.    Do you disagree with the statement that

23   "Eric has not done that reporting with any

24   regularity"?

25        A.    Yes.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 157

1      Q.   And did you, after receiving this coaching
2  form, if you disagreed with portions of it, is there
3  a reason that you did not submit a statement setting
4  forth your disagreement?
5      A.   I was advised by Human Resources I didn't
6  have a choice, that it was put in place.  I didn't
7  know that I had the option to disagree with it in
8  writing.  And it was -- it was a done deal.  So here
9  you go.
10     Q.   And you weren't under a Contract of
11 Employment; is that correct?
12     A.   When you say "contract," I don't know what
13 you --
14     Q.   Sure.
15          You could have left BAMS at any point in
16 time, correct?
17     A.   Yes.
18     Q.   So if you disagreed with the coaching that
19 you were receiving, you could have left BAMS, right?
20     A.   Given I had the opportunity to, yes.
21     Q.   And you were already interviewing for other
22 jobs before you even received this coaching, correct?
23     A.   Correct.
24     Q.   And you acknowledged receipt of this by
25 signing -- electronically signing your name and

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 158

1    dating it electronically October 2nd, 2017, correct?

2        A.    Correct.

3        Q.    And the statement immediately above your

4    signature alerted you to the fact that your failure

5    to meet and sustain the performance objectives

6    outlined in the coaching form could lead to

7    disciplinary action up to and including your

8    termination, correct?

9            THE WITNESS:  George, can you go down

10           further, please, to the bottom?

11       A.    Yes, I do see that statement.

12       Q.    (By Mr. Galanek) Did you express to anyone

13   in Human Resources Department that you felt that the

14   coaching was unfair or inappropriate?

15       A.    Yes.

16       Q.    To whom?

17       A.    I believe her name is Lori Ascio -- or I

18   don't remember her exact last name.

19       Q.    What did you tell her?

20       A.    That I didn't think this was fair, there's

21   too much to do in the job, and I'm surprised I

22   received it.

23       Q.    So your complaint was you didn't think it

24   was fair because there was too much to do in the job,

25   not that what was recited was inaccurate?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 159

1      A.   I don't recall disputing the accuracy.  I
2   would say I would dispute the veracity.
3      Q.   Explain what you mean by that.
4      A.   I mean I think the tone is very aggressive
5   and intimidating.
6      Q.   What do you understand the word "veracity"
7   to mean?
8      A.   A harsh way to say things.
9      Q.   Okay.  You understand that is not the
10   definition of veracity, right?
11      A.   Okay.  I guess I do now.
12      Q.   Okay.
13      A.   That's what I meant.
14      Q.   Veracity means truthfulness.
15      A.   Oh, okay.
16      Q.   You felt that the language was too harsh;
17   is that fair?
18      A.   Yes.  I felt it was, I would say,
19   aggressive and intimidating.
20           MR. GALANEK:  All right, George.  That's
21      all for that document.
22      Q.   (By Mr. Galanek) Now, at some point in time
23   you began sending internal BAMS communications to
24   your personal Gmail account; is that correct?
25      A.   That's correct.

Eric Slawin                     July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 160

1       Q.    Why did you do that?

2       A.    I felt it was the only way I could

3   demonstrate, should the fraud become known broadly,

4   that I didn't make the decision to perpetuate the

5   fraud and keep it going or participate in it.

6       Q.    So you were fine remaining employed and

7   being paid by a company that you felt was engaged in

8   fraud, you just didn't want to be blamed for the

9   fraud?

10      A.    I needed to make a living for my family.

11  So I was doing the best I could to make ends meet.  I

12  didn't have a choice.

13      Q.    Well, of course you had a choice.  You

14  could have complained to the SEC before sending any

15  e-mails to your personal e-mail account, couldn't

16  you?

17      A.    I didn't know that at the time.

18      Q.    Well, what did you do to research it?

19      A.    At that time?

20      Q.    At any time.  How did you learn you could

21  complain to the SEC?

22      A.    Subsequent to my termination.  I started

23  Googling.

24      Q.    Okay.  So at no point prior to your

25  termination were you aware that the conduct that you

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 161

1    felt that BAMS was engaging in would be problematic

2    from the SEC perspective, correct?

3        A.   I had an opinion about that.

4        Q.   Okay.  Well, what informed that opinion?

5        A.   My past background at working with capital

6    markets.

7        Q.   Okay.  So your past work in capital markets

8    informed an opinion that this would be something that

9    the SEC was interested in but you chose not to inform

10   the SEC, correct, before the termination of your

11   employment?

12       A.   I felt it could be something the SEC would

13   be interested in, yes.

14       Q.   Okay.  When did you have that epiphany?

15            MR. MARX:  Object to the form.

16            You can answer.

17       A.   Well, what's -- what's "epiphany" mean?

18   Can you define it?

19       Q.   (By Mr. Galanek) Sure.

20            When did you come to that understanding?

21   When did that opinion formulate itself?

22       A.   Let's say roughly probably July of that

23   year, 2017.

24       Q.   Okay.  And in July of 2017, you did not go

25   to the SEC to complain about any conduct that you

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 162

1    felt was problematic that was occurring at BAMS; is

2    that correct?

3         A.    That's correct.

4         Q.    Did you go to the CF -- CF -- I can't do it

5    either -- CFPB in July of 2017 to express concern

6    about any conduct by BAMS?

7         A.    No.

8         Q.    Did you alert anyone external to the

9    company at any government regulator that you felt

10   that any conduct that was occurring at BAMS was

11   inappropriate?

12        A.    No.

13        Q.    And did you attempt to make an anonymous

14   tip at that point in time to any government

15   regulator?

16        A.    No.

17        Q.    And at what point in time did you learn or

18   did you come to believe that any of the conduct

19   occurring at BAMS violated any provision of the

20   Consumer Financial Protection Act?

21        A.    That was after my termination.

22        Q.    And at what point in -- at what point in

23   time did you come to understand that any conduct that

24   was occurring at BAMS somehow violated the Dodd-Frank

25   Act?

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 163

1      A.    After my termination.

2      Q.    Sometime in July of 2017 you began sending

3   internal correspondence with BAMS employees to your

4   personal Gmail account; is that correct?

5      A.    Did you say July 2017?

6      Q.    Yes.

7      A.    Yes.

8      Q.    Now, setting aside for the moment the

9   purpose or belief with which you did it, you would

10  agree with me that sending e-mails to an external

11  personal e-mail account without the consent of the

12  company was a violation of BAMS' policies, correct?

13     A.    I would not agree --

14           MR. MARX:  Object to the form.

15     Q.    (By Mr. Galanek) Sorry.

16     A.    I would not agree.  I would -- I would not

17  agree to that.

18     Q.    Okay.  So sending an e-mail external to the

19  company to a personal e-mail account of company

20  confidential information, regardless of what it was,

21  would not violate any BAMS policy?

22     A.    I do not know what specific policy it would

23  violate.

24     Q.    Okay.  Are you telling me you are not, in

25  your role with BAMS, you are not familiar with the

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 164

1    global information securities policy?

2         A.   I would tell you I didn't receive it.

3         Q.   Are you telling me that -- that sending

4    e-mails external, to an external e-mail address

5    containing BAMS' confidential information without the

6    consent of the company would not violate the

7    provision set forth in your Employment Agreement or

8    your employment letter?

9              MR. MARX:   Object to the form.

10             You can answer.

11        A.   I do not know that to be the case, no.  I

12   would say no.

13        Q.   (By Mr. Galanek) Your employment letter set

14   forth certain nondisclosure obligations, correct?

15        A.   I would have to pull it back up and see.

16        Q.   Did you have anyone's consent to send any

17   BAMS information to your personal e-mail account?

18        A.   No.

19        Q.   Prior to the company coming to you to tell

20   you that the company believed this was a violation of

21   its policies, did you inform anyone at the company

22   that you were doing this?

23        A.   No.

24        Q.   And you sent BAMS information to your

25   personal e-mail account for five months before anyone

Eric Slawin                               July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 165

1  approached you to tell you that they have become

2  aware of it and that they viewed it as problematic;

3  is that correct?

4       A.   So I -- I think yes, that sounds accurate.

5       Q.   And when you were approached and told that

6  this was a violation of company policy and that you

7  would need to delete the e-mails, you refused,

8  correct?

9       A.   I don't recall verbally saying that.

10      Q.   Are you telling me you told someone you

11 would delete the e-mails?

12      A.   I do not remember that ever coming up in a

13 conversation about deleting the e-mails.

14      Q.   Sir, it was communicated to you that you

15 were in violation of company policy, correct?

16           MR. MARX:  Object to the form.

17           You can answer.

18      A.   No, I -- I wouldn't -- I don't recall

19 verbally being told it was in violation of the

20 company policy.

21      Q.   (By Mr. Galanek) Sir, I didn't say anything

22 about verbal.  Were you or were you not -- was it or

23 was it not communicated to you that you were in

24 violation of company policy by sending e-mails to a

25 personal e-mail address?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 166

1           MR. MARX:  Object to the form.

2           You can answer.

3       A.   I guess to answer that question in the

4   affirmative I would need to see what was sent to me.

5       Q.   (By Mr. Galanek) Sir, are you telling me

6   that despite the fact that you have filed a lawsuit

7   in this case, you do not remember, sitting here

8   today, whether or not it was ever communicated to you

9   that sending BAMS information to your personal e-mail

10  account was in violation of company policy?  Is that

11  your testimony?

12          MR. MARX:  Object to the form.

13          You can answer.

14      A.   Yes, I don't verbally -- I don't remember

15  verbally being told that.

16      Q.   (By Mr. Galanek) Sir, I didn't say anything

17  about -- sir, hold on a second.

18          Do you know what "communication" means?

19  I'm talking about any communication, written, verbal,

20  nonverbal.  Do you understand that?

21      A.   Yes.  Now that you have explained it, I do.

22      Q.   Great.  Do you recall that the company

23  communicated to you prior to terminating your

24  employment that it felt that your sending BAMS

25  internal communication to a very personal e-mail

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 167

1   account violated company policy?

2       A.   Again, I -- I think if that communication

3   was made to me, it would have been in the documents

4   that Mike Solan sent me.  And in order to actually

5   answer that, I would like to see them.

6       Q.   Okay.  Great.  Well, we will let the jury

7   assess the credibility of that response.

8            At any point in time did you delete the

9   e-mails that you sent to your personal e-mail

10  account?

11      A.   No.

12      Q.   At any point in time did you return to BAMS

13  the e-mails that you sent to your personal e-mail

14  account?

15      A.   No.

16      Q.   You were, in fact, interviewed by

17  Mr. Kendall and a member of BAMS HR about the e-mails

18  that you sent to your personal e-mail account, were

19  you not?

20      A.   There was a discussion.  I wouldn't call it

21  an interview.

22      Q.   Well, tell me about that discussion.  What

23  did they tell you?

24      A.   Well, from what I recall, they -- they said

25  they're aware that I had sent e-mails to my personal

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 168

1    account.  And they asked me -- I believe they asked
2    me, you know, why.  And that was it.  That's what I
3    recall.
4         Q.   Are you saying in that discussion no one
5    told you that this was a problem?
6         A.   I don't recall being verbally told that.
7         Q.   Regardless of what was communicated, they
8    did ask you to delete the e-mails, correct?
9         A.   I think that was one of the stipulations or
10   part of the cease and desist letter that I received.
11        Q.   So yes, you were asked to delete the
12   e-mails?
13        A.   I need to see the letter to answer that in
14   the affirmative right now.
15        Q.   Now you are telling me that, sitting
16   here -- so I just want to make sure I understand.  So
17   you are telling me that sitting here today you cannot
18   answer that question without seeing a document?
19        A.   To answer with confidence I want to see a
20   document.  Because verbally I do not recall being
21   told that.
22        Q.   Sir, I'm not asking you verbally, not
23   verbally.  I'm just asking you right now, was it ever
24   communicated to you by BAMS that BAMS wished for you
25   to delete the e-mails that you had sent to your

Eric Slawin                            July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 169

1    personal e-mail account containing BAMS information?

2         A.   To the best of my knowledge, I think that

3    was put to me in writing, but I'm not sure unless I

4    see the document, absolutely.

5         Q.   And you refused to delete any e-mails; is

6    that correct?

7         A.   That's correct.

8         Q.   Okay.  And those e-mails still reside on

9    your Gmail account, correct?

10        A.   Yes.

11        Q.   And you have disclosed those e-mails to

12   others, have you not?

13        A.   No.

14        Q.   You have not provided those e-mails to your

15   counsel?

16             THE WITNESS:  Hey, Rob, is that

17        attorney/client privilege?

18             MR. MARX:  You can answer the question.

19        A.   I have, yes.

20        Q.   (By Mr. Galanek) Have you provided any of

21   those e-mails to any representative of the SEC?

22        A.   No.

23        Q.   Have you provided any of those e-mails to

24   any representative of OSHA?

25        A.   I -- no.  I don't think so, no.

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 170

1        Q.   Did you have the consent of any of the

2   authors or other recipients of those e-mails to

3   e-mail those documents external to the company?

4        A.   No.

5        Q.   Upon the termination of your employment did

6   you return all of those e-mails to the company?

7        A.   No.

8        Q.   Now, you didn't just send BAMS

9   communications to your personal e-mail account, you

10  also retained copies of agreements with BAMS' client,

11  did you not?

12       A.   I don't recall doing that.  So I don't

13  recall doing that.

14            THE WITNESS:  May I take a three-minute

15       bathroom break?

16            MR. GALANEK:  Of course.

17            THE VIDEOGRAPHER:  Off the record, 3:12.

18            (WHEREUPON, a recess was taken.)

19            THE VIDEOGRAPHER:  Back on the record.  The

20       time, 3:15.

21            MR. GALANEK:  George, pull up Exhibit

22       Number 7 for me out of Plaintiff's production

23       157 to 158.

24            MR. MARX:  Thank you.

25            (Defendant's Exhibit 7, City of Deland,

Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 171

1         Florida Request for Commission Action, dated

2         10/7/2013, Bates labeled PLAINTIFF 000157 - 158,

3         marked for identification.).

4              MR. MARX:  Sorry, what were the numbers?

5              MR. GALANEK:  157 to 158.

6              MR. MARX:  Oh, I'm sorry.  My mistake.  I'm

7         sorry.  My bad.

8              MR. GALANEK:  George, sorry if you didn't

9         hear me.  If you could pull up Exhibit 7.

10              THE CONCIERGE:  Oh, 7.  Okay.  Yes, I

11         didn't hear you.

12         Q.   (By Mr. Galanek) Mr. Slawin, the first

13     thing that I'll point out --

14              MR. GALANEK:  Just go to the bottom of this

15         page, if you don't mind, George.

16         Q.   (By Mr. Galanek) Mr. Slawin, this, like

17     every other document that I have used unless I say

18     otherwise, there's a Plaintiff's page number, meaning

19     that it was produced to BAMS by your counsel.  I'm

20     assuming your counsel received it from you.

21              MR. GALANEK:  Let's go back up, George.

22         Q.   (By Mr. Galanek) This document is --

23     purports to be a cover page reflecting action by the

24     City of Deland, Florida on a contract with BAMS.

25              Was this in your possession upon the

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 172

1    termination of your employment?

2         A.    I do not recall that being in my

3    possession.

4         Q.    Do you know how your attorney would have

5    gotten it if it wasn't in your possession?

6         A.    No.

7         Q.    Did you return this document to BAMS upon

8    the termination of your employment?

9         A.    I would have to check -- I still can't tell

10   you I have that.  So --

11        Q.    Sir, did you return any documents -- did

12   you package up any documents whatsoever and return

13   them to BAMS following the termination of your

14   employment?

15        A.    Yes, I think I -- along with my laptop and

16   things like that, I did return blank copies of their

17   cease and desist letter and whatever else they sent

18   me that day.

19        Q.    Did you retain copies of any BAMS

20   information?

21        A.    I retained the e-mails we have been talking

22   about.

23        Q.    And unless there's some explanation for how

24   your client or your attorney has this, do you have

25   any reason to believe that this was not something you

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 174 of 317
Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 173

1    provided to your attorney, which meant you kept a

2    copy of it?

3         A.    I don't have -- I'm sorry.  Can you ask the

4    question again?

5         Q.    Do you have an explanation as to how your

6    attorney would have had this document if you didn't

7    retain a copy following the termination of your

8    employment?

9         A.    No.

10        Q.    All right.

11             MR. GALANEK:  George, pull up Exhibit

12        Number 34 for me, please.

13             And this is -- Mr. Marx, this is Page 1 of

14        an agreement, a BAMS agreement inside of your

15        production.  It begins at Page 612.  The

16        agreement continues on, but we are just pulling

17        up Page 612.

18             MR. MARX:  612.  Thank you.

19             (Defendant's Exhibit 34, Bank of America

20        Merchant Services Merchant Processing Agreement

21        (Government), Bates labeled PLAINTIFF 000612,

22        marked for identification.)

23             MR. GALANEK:  George, if you don't mind, go

24        down to the bottom of this page.  And Mr. Slawin

25        can see that this is, again, a document that was

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 174

1        provided by his counsel to BAMS.

2              Go back to the top of the page.

3        Q.    (By Mr. Galanek) Mr. Slawin, do you

4    recognize that this is, in fact, a BAMS Merchant

5    Processing Agreement?

6        A.    It appears to be one page of it, yes.

7        Q.    Yes.  And do you have an explanation as to

8    how your attorney would have come to possess this

9    document if it was not something that you retained

10   and failed to return upon the termination of your

11   employment?

12       A.    This document in particular is available on

13   the Internet.

14       Q.    Did you pull this document from the

15   Internet?

16       A.    Yes.

17       Q.    When?

18       A.    During, I'm going to say, maybe the last --

19   if I remember correctly, the last few months of my

20   employment with BAMS.

21       Q.    So you pulled it from the Internet during

22   your employment with BAMS.  Why?

23       A.    I, in the context of the fraud that was

24   going on, I was curious what was being represented to

25   clients.  Because every time I complained, I said "We

Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 175

1    needed to disclose this problem" and nobody wanted to

2    do it.

3        Q.    And so when you pulled up this document and

4    determined fraud was being committed, did you

5    immediately resign your employment so as not to

6    participate in such fraud?

7        A.    No.

8        Q.    Did you immediately contact the SEC?

9        A.    When -- no.

10       Q.    Did you immediately contact the Consumer

11   Financial Protection Bureau for -- or, excuse me,

12   Consumer Financial Protection Agency to alert them to

13   the fraud that you had discovered by pulling this

14   document up?

15       A.    No.

16       Q.    Did you contact any state or Federal agency

17   to alert them that BAMS was somehow engaged in fraud

18   that you had discovered as soon as you pulled this

19   document up during the last three months of your

20   employment with BAMS?

21       A.    No.

22       Q.    All right.

23            MR. GALANEK:  You can take that one down,

24       George.

25       Q.    (By Mr. Galanek) Now, the fraud that you

Page 176

1    claimed that BAMS was engaged in, tell me what that

2    fraud was.

3        A.    It was omission, I think, a twofold

4    omission that the firm needs to be PCI compliant and

5    that, you know, when you look at these documents,

6    it's being represented to clients that the firm's PCI

7    compliant.

8        Q.    At any point in time prior to the

9    termination of your employment did you communicate to

10   any client of BAMS that you felt that false

11   representations were being made to them?

12       A.    No.

13       Q.    Did you call any client and make an

14   anonymous representation that they should look into

15   this issue because you were concerned that they were

16   being defrauded?

17       A.    No.

18       Q.    Did you contact anyone in the General

19   Counsel's Office of BAMS to express to them your

20   concern that you believed that BAMS was defrauding

21   customers?

22       A.    No.

23       Q.    Now, you certainly understood that BAMS was

24   an entity that was owned both by Bank of America and

25   First Data, correct?

Page 177

1        A.   Yes.

2        Q.   At any point in time prior to the

3   termination of your employment did you contact anyone

4   at Bank of America to express concern that management

5   at BAMS was engaged in fraudulent conduct?

6        A.   No.

7        Q.   Did you contact anyone at First Data to

8   express concern that management at BAMS was engaged

9   in fraudulent conduct?

10       A.   No.

11       Q.   Now, you sent e-mails to your personal

12   e-mail account that contained BAMS information that

13   had nothing to do with PCI, didn't you?

14       A.   Possibly.  I'm not entirely sure.

15       Q.   Why did you send e-mails to your personal

16   e-mail account that had nothing to do with PCI

17   compliance?

18       A.   I was -- what I recall is maybe -- I

19   believe I was working on spreadsheets and I would

20   work on the spreadsheet at home.  And so I was just

21   forwarding those e-mails or those spreadsheets to my

22   e-mail address is what I recall in those instances.

23       Q.   Did you return all those spreadsheets on

24   the termination of your employment?

25       A.   No.

Eric Slawin                         July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 178

1     Q.    Did you communicate with anyone at BAMS

2   that you were sending BAMS material external to the

3   company for any purpose?

4     A.    No.

5     Q.    Did you seek consent of your manager that

6   you send BAMS information external to the company?

7     A.    No.

8     Q.    Did you talk to someone in BAMS' IT

9   Department to make sure that you had permission to

10  send BAMS information external to the company?

11    A.    No.

12    Q.    What precisely is it that you claim made

13  BAMS not PCI compliant?

14    A.    I believe they never registered or never

15  went through the process to become PCI compliant.

16    Q.    Do you even know what that process

17  requires?

18    A.    My understanding is an independent audit of

19  their systems so that you can determine that there's

20  data -- I'm generally speaking -- much strength

21  there, data integrity.

22    Q.    What is that understanding based on?

23    A.    Research I did.

24    Q.    What research?

25    A.    Literally get on the Internet when this

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 179

1    situation was presented.  I wanted to understand, you

2    know, what the ramifications of it were and

3    understand what was needed and what the requirements

4    were.

5          Q.   And what does PCI stand for?

6          A.   Payment card industry.

7          Q.   And the payment card industry data security

8    standards, those are voluntary standards adopted by

9    the payment industry; is that correct?

10         A.   I don't know if they're voluntary.  I guess

11   if you want to do business in certain ways you have

12   to have it.  So I wouldn't necessarily call it -- I

13   would call it a requirement, not voluntary.

14         Q.   It's not a government requirement, correct?

15         A.   Not to my knowledge.

16         Q.   And, in fact, organizations all the time

17   self-certify compliance with BAMS, don't they --

18   excuse me, compliance with PCI DDS, correct -- or

19   DSS, correct?

20         A.   Yes.  I believe their merchants were

21   required to do that pursuant to their agreements.

22         Q.   And so your testimony is that the only

23   reason you believe BAMS was not PCI compliant was

24   because they had not had an auditor come in and say

25   that they were PCI compliant?

Eric Slawin                         July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 180

1      A.    Well, I would add that they were receiving
2   PAN data and that that made them, pursuant to those
3   standards, have to become PCI compliant.
4      Q.    Well, you don't have to be PCI compliant if
5   you are not actually using PAN data, do you?
6      A.    I don't know all the requirements.  I don't
7   know if there are other ones that require you to be
8   PCI compliant.  But, I mean, I'm focused on primary
9   account numbers.
10      Q.    Okay.  But if you are a company and you
11   eliminate a process that would use primary account
12   numbers, just eliminate the process in its entirety
13   so the process doesn't exist, and that it doesn't
14   exist, there's no requirement to be PCI compliant, is
15   there?
16      A.    I can't say that absolutely because I --
17   you know, there could be other things that require
18   you to be PCI compliant that I'm not aware of.
19      Q.    Because you just don't know and you didn't
20   ask anyone, correct?
21      A.    When you say I don't know or didn't ask
22   anyone, I don't understand the question.
23      Q.    Yes.
24          With respect to the use of PAN data at
25   BAMS, the concern about the access to such data, who

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 181

1    raised that concern?

2        A.    I first heard about it from Joe Moll and I

3    think her name is Ali Davis, the Compliance Officers.

4        Q.    So this is an issue that was identified by

5    you, correct?

6        A.    Correct.

7        Q.    Others within the organization identified

8    the potential issue, correct?

9        A.    Yes.

10       Q.    And others within the organization

11   indicated that it should be self-identified as an

12   audit issue so the company could determine how to

13   deal with the issue, correct?

14       A.    Yes, that was the -- I guess you would say

15   the wrapper category I think they wanted the issue

16   treated as.

17       Q.    All right.  And one of the ways that was

18   discussed addressing any concern over the use of

19   personal -- or, excuse me, primary account numbers

20   was merely to remove any process from BAMS that would

21   require the use of such numbers.  Outsource that to

22   another party, correct?

23       A.    I believe that was one of the strategies

24   proposed, yes.

25       Q.    And the outsourcing of that task would

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

                                        Page 182

1    ultimately result in the termination of current BAMS

2    employees who were performing that task, correct?

3         A.   I didn't know that to be the absolute

4    result of that.

5         Q.   Well, you knew that if somebody had a job

6    that was performing a task in which PAN data would be

7    used and if that task was eliminated, those jobs

8    could be eliminated, didn't you?

9         A.   I remember David Ades making that comment

10   or raising that possibility, but I didn't know that

11   that was going to be the absolute result.  If the

12   task was removed by -- I would -- well, I wouldn't be

13   surprised if those individuals are doing other tasks

14   too.  So I don't know if that was going to be the

15   result of --

16        Q.   Mr. Ades raised that issue at the same time

17   that he expressed concern, the discussions about

18   remediation efforts you maintained as confidential,

19   since it could potentially affect other people's

20   jobs, correct?

21        A.   I don't recall to that detail.

22        Q.   So it didn't happen or you just don't

23   recall it?

24        A.   I just don't recall to that detail, that

25   that --

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 184 of 317

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 183

1    Q.   Who is it you contend engaged in wrongful
2    conduct at BAMS?
3    A.   When you say "wrongful conduct," what do
4    you mean?
5    Q.   I mean, you are complaining about wrongful
6    conduct of BAMS.  I want to know what your definition
7    is and who you are saying engaged in wrongful
8    conduct.
9    A.   Well, overall, as a whole, it's management
10   across the board.  I mean, the wrongful conduct is
11   not disclosing this -- this problem.  I mean, it's
12   omission.  It's fraud.  And I felt that the
13   implications of this, to your point with the SEC and
14   things, could ultimately affect shareholders of
15   various companies.
16   Q.   And when did you come to that conclusion?
17   A.   Like I previously answered, roughly July
18   2017.
19   Q.   And when you came to that conclusion you
20   did nothing to alert the SEC to this potential fraud?
21   A.   I did not alert the SEC to that.
22   Q.   You did nothing to alert the General
23   Counsel's Office of BAMS to this potential fraud?
24   A.   Correct.
25   Q.   You did nothing to alert Bank of America to

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 184

1    this potential fraud?

2         A.    Correct.

3         Q.    You did nothing to alert First Data to this

4    potential fraud?

5         A.    Correct.

6         Q.    You did not seek to terminate your own

7    employment to remove yourself from the participation

8    in such fraud?

9         A.    I did my best to find other opportunities

10   but they didn't pan out.

11        Q.    So the answer is you did not remove

12   yourself from the company to make sure that you

13   weren't somehow participating or perpetrating fraud,

14   correct?

15        A.    I was unable to remove myself from the

16   company.

17        Q.    Are you saying you were physically unable

18   to remove yourself, they somehow locked you in an

19   office, didn't let you leave?

20        A.    No.

21        Q.    Okay.

22              Now, you claim in this case that you were

23   retaliated against.  Who do you claim engaged in

24   retaliation against you?

25        A.    Whoever made the determination to terminate

Page 185

1   me.

2       Q.   Okay.  Who do you claim made the

3   determination to terminate you?

4       A.   Well, I think what's clear is Mark Kendall.

5   I'm sure that Natasha Collins had a hand in that, HR,

6   General Counsel.

7       Q.   What's the factual basis for claiming that

8   the General Counsel of BAMS had anything to do with

9   the decision to terminate your employment?

10      A.   They -- they were the authors of the cease

11  and desist letter and the affidavit that was sent to

12  me.

13      Q.   Anything else?

14      A.   No, not that I can recall.

15      Q.   And I believe you have already told me

16  repeatedly you never told anyone in the Office of

17  General Counsel that you were concerned that the

18  company was somehow engaged in fraudulent conduct;

19  isn't that correct?

20      A.   Correct.

21      Q.   Did you ever tell anyone in HR that the

22  company was engaged in fraudulent conduct?

23      A.   HR?  No.

24      Q.   At any point prior to the termination of

25  your employment did you tell anyone in HR or the

Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 186

1    General Counsel Office that you felt that any conduct

2    they engaged in at BAMS violated Sarbanes-Oxley?

3         A.    You said HR and, I'm sorry, who else?

4         Q.    In the General Counsel's Office.

5         A.    No.

6         Q.    At any point in time prior to the

7    termination of your employment did you tell anyone in

8    HR or the General Counsel's Office that you felt the

9    conduct of BAMS violated the Consumer Financial

10   Protection Act?

11        A.    No.

12        Q.    Did you tell anyone in either HR or the

13   General Counsel's Office that you felt conduct being

14   engaged in at BAMS violated the Dodd-Frank Act?

15        A.    No.

16        Q.    Did you tell anyone in HR or the General

17   Counsel's Office that you felt BAMS was defrauding

18   its customers?

19        A.    No.

20        Q.    Did you tell anybody at BAMS prior to the

21   termination of your employment that you felt that the

22   conduct that BAMS was engaging in violated the

23   Dodd-Frank Act?

24        A.    No.

25        Q.    Did you tell anyone at BAMS prior to

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 187

1    terminating -- the termination of your employment

2    that you felt that any conduct at BAMS violated

3    Sarbanes-Oxley?

4         A.    No.

5         Q.    Did you tell anyone at BAMS that you felt

6    the conduct that was being engaged in violated the

7    Consumer Financial Protection Act?

8         A.    No.

9         Q.    Did you tell anyone at BAMS at any time

10   prior to the termination of your employment that you

11   felt that the conduct that BAMS was engaging in with

12   respect to PCI data was a violation of any law?

13        A.    I'm sorry.  Can you repeat the question,

14   please?

15        Q.    Prior to the termination of your employment

16   did you tell anyone, any employee of BAMS that you

17   felt the conduct that BAMS was engaging in with

18   respect to PAN data was a violation of any law?

19        A.    Yes.

20        Q.    Who?

21        A.    I told Mark Kendall that I thought it was

22   fraud.  I discussed it with Treicia Brooks.  And I

23   told --

24        Q.    Who?

25        A.    Her name -- Treicia Brooks.

Eric Slawin                           July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 188

1      Q.   Okay.

2      A.   And I told Sherra Grissom.

3      Q.   What was the name, Sherrie Grissom?

4      A.   Yes.  G-r-i-s-s-o-m, I believe.

5      Q.   And what was Ms. Grissom's role in the

6   company?

7      A.   She was Enterprise Risk Management and I

8   had a dotted line to her.  So she was another

9   reporting, I guess, line for me.

10     Q.   She was your superior or she was your peer?

11     A.   She was a superior.

12     Q.   And what precisely did you tell her?

13     A.   That I felt that the fact that this isn't

14  being disclosed to clients is omission and it's

15  fraud.

16     Q.   When did you tell her this?

17     A.   November 2017.

18     Q.   Did you tell her orally or did you put it

19  in writing?

20     A.   Orally.

21     Q.   Did you ever express this concern that you

22  had regarding misrepresentations to clients or fraud

23  on clients, did you ever put that in writing and

24  provide it to anyone at BAMS?

25     A.   No.

Page 189

1      Q.   All right.

2           Was this a single conversation with

3      Ms. Grissom?

4      A.   I said it on two different occasions.  We

5      had biweekly meetings where I'd report to her my

6      activities.

7      Q.   And you told her that you thought that BAMS

8      was engaged in fraud?

9      A.   Yes.

10     Q.   And that's the word you used?

11     A.   Yes.

12     Q.   What did she say?

13     A.   She said -- she listened and she said she

14     was going to raise it to her superior.

15     Q.   Did she say anything else?

16     A.   Not -- not that I recall.  There was, you

17     know, again listening and, I mean, that was the

18     closest thing to no indifference that I experienced.

19     Q.   Sitting here today, you have no idea

20     whether she ever discussed that with anyone else, do

21     you?

22     A.   That's correct.  I don't know if she told

23     her superior.

24     Q.   And you don't contend that Ms. Grissom

25     played any role in the decision to terminate your

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 190

1    employment, do you?

2         A.   I don't know that.  I don't know.  To be

3    honest, I don't know what feedback she may have given

4    about me.

5         Q.   You don't have any factual basis that you

6    could point to to say that she somehow participated

7    in the decision to terminate your employment,

8    correct?

9         A.   At this moment, no.

10        Q.   Ms. Brooks.  What -- who was Ms. Brooks?

11   What role did she play in the company?

12        A.   She had the same role as me.  But she

13   performed those duties over, I believe, the marketing

14   team.

15        Q.   She was a peer, then?

16        A.   Yes.

17        Q.   You don't contend that Ms. Brooks played

18   any role in the decision to terminate your

19   employment, do you?

20        A.   I do -- I don't know that to be a fact.

21        Q.   You don't have any evidence to suggest that

22   she actually participated in the decision to

23   terminate you, correct?

24        A.   Correct.

25        Q.   Okay.  What did you tell Ms. Brooks?

Page 191

1      A.   Well, I had numerous conversations with her

2   and just talked about how -- what a mess this was and

3   can't believe it's going on.  And every time I say

4   something to somebody about it no one's doing

5   anything.

6      Q.   And when did you have these conversations

7   with Ms. Brooks.

8      A.   During the month of October, November-ish.

9   They were ongoing.

10     Q.   Of 2017?

11     A.   Yes.

12     Q.   At what point did you form the opinion that

13  BAMS was misrepresenting to customers that it either

14  was PCI compliant or did not have to be PCI

15  compliant?

16     A.   Misrepresenting -- I would say August,

17  September, around that time.

18     Q.   You didn't put anything in writing to

19  Ms. Brooks expressing these concerns, did you?

20     A.   No.

21     Q.   And you indicated that you also told Mark

22  Kendall that you believed BAMS was engaging in fraud.

23  When did you tell this to Mr. Kendall?

24     A.   It was routinely.  I spoke to Mark

25  virtually daily.  And I started saying that July

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 192

1    2017.

2         Q.    Okay.  Can you explain to me how you

3    started telling Mr. Kendall in July of 2017 that you

4    felt that BAMS was committing fraud when less than

5    five minutes ago, you testified that you did not have

6    the opinion that BAMS was committing fraud until

7    August or September of 2017?

8         A.    Well, I think you misstated.  I understood

9    your question for that was representation of, you

10   know, PCI compliance.  When I spoke with Mr. Kendall,

11   it was always clear that this was going to be an

12   omission.  And I know omission is -- is part of the

13   definition of fraud.  And the fact that once I saw

14   what was being said by senior management that this

15   wasn't going to be fixed or disclosed, that's --

16   that's the conclusion I reached.

17        Q.    I'm sorry.  Would you like to restate that,

18   when you reached that conclusion?

19        A.    Well, you asked me about the agreements and

20   representing to clients about PCI compliance.  Okay.

21   To me, that's different, the agreements that say

22   that.  I came to that conclusion.

23        Q.    That's not what I asked you.  I asked you

24   who within the company you expressed concerns that

25   BAMS was engaged in some sort of illegal conduct.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 193

1    And you said "Well, I told Mark Kendall, Ms. Brooks
2    and Ms. Grissom that I felt this was fraud."  All we
3    have ever been talking about.  So when did you tell
4    Mr. Kendall that you felt that BAMS was somehow
5    engaged in illegal conduct?
6         A.    July 2017.
7         Q.    Okay.
8         A.    I'm just making a distinction, based on the
9    definition of fraud.
10        Q.    Where do you obtain your definition of
11   fraud?
12        A.    My past experience in investigating it.
13        Q.    And what past experience do you have in
14   investigating fraud?
15        A.    I investigated stock manipulations,
16   misrepresentations to clients for the State of
17   Florida and for NASDAQ, which is now FINRA.
18        Q.    And brokers owe a fiduciary obligation to
19   their clients; is that correct?
20        A.    Yes.
21        Q.    Do contracting parties in the payment space
22   owe fiduciary obligations to one another?
23        A.    Do contract -- can you repeat that, please?
24        Q.    Do contracting parties or a payment
25   processing contract owe fiduciary obligations to one

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 194

1    another, in your opinion, since you are espousing

2    your understanding of legal fraud?

3           A.    To the extent the contracts lay that out,

4    yes, in my opinion.

5           Q.    Tell me precisely what you told Mr. Kendall

6    in July of 2017.

7           A.    I can't remember absolutely, precisely, but

8    it was that we discussed next steps, what a large

9    mess this was.  And I routinely told him that this

10   needs to be disclosed, that it's omission.  It's a

11   fraud.

12          Q.    And how did Mr. Kendall respond?

13          A.    He agreed.  And said we got to keep it

14   confidential, don't tell anybody.

15          Q.    Did he tell you why he thought it should be

16   confidential?

17          A.    Not specifically.  We were discussing in

18   the context of how big of an issue it could become if

19   it got out.

20          Q.    And these discussions were taking place in

21   July of 2017?

22          A.    Yes.  It was around when we started with,

23   you know, talking about the issue.  So yes.

24          Q.    And the issue wasn't identified by you.  It

25   was identified by others within the business,

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 195

1    correct?

2          A.    Others was in the company, so to my

3    knowledge, it was identified by the Chief Information

4    Security Officer, Joe Moll.  And the Chief Compliance

5    Officer, Ali Davis.

6          Q.    And they identified it as an issue that

7    needed to be subject to audit by the company,

8    correct?

9          A.    I don't -- when you say "audit," my

10   understanding is somebody comes in and looks at

11   things as an auditor.  I don't think there was --

12   could be identified that way.

13         Q.    You were assigned or they both indicated

14   that this needed to be subject to a self-identified

15   audit issue, correct?

16         A.    Yes.

17         Q.    And you were involved because you were

18   informed that based on the concerns expressed by

19   these two individuals, that you needed to actually

20   write up the self-identification audit issue so the

21   company could determine how to both investigate it

22   and resolve the issue, correct?

23         A.    Yes.  Or more specifically, come up with a

24   project plan, which I believe is what the

25   self-identified audit issues are.

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 196

1      Q.    And you never actually completed a project

2   plan, did you?

3      A.    I didn't write the project plans as part of

4   my job.

5      Q.    You also didn't write the self-identified

6   audit issue document, did you?

7      A.    For this matter?

8      Q.    Yes.

9      A.    I don't recall me putting that in writing,

10  no.

11     Q.    There's actually a template to do that; is

12  that correct?

13     A.    I guess I would call it a form.  I don't

14  know if it's a template.

15     Q.    And this was a task that was assigned to

16  you, correct?

17     A.    Yes.  I was put on point for that by I

18  believe Natasha.

19     Q.    And you had the ability to write in that

20  form the same concerns that you are expressing now,

21  correct?

22     A.    No, I wouldn't go that far.

23     Q.    Well, you certainly didn't write in that

24  form the same concerns that you are expressing now,

25  did you?

Eric Slawin                                            July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 197

1        A.    I did not write those down, no.

2        Q.    Okay.

3        A.    I was being told -- I was being told

4    routinely to keep it confidential, so --

5        Q.    Yes.

6              The conversation that you were having with

7    Mark Kendall in July of 2017, he was your peer at

8    that point in time, correct?

9        A.    Yes.

10       Q.    He wasn't your manager at that time,

11   correct?

12       A.    Not in July.

13       Q.    So when Mr. Kendall was telling you in July

14   of 2017 to keep this confidential, he didn't have any

15   ability to hire or fire you, did he?

16       A.    No.

17       Q.    At any point in time prior to the

18   termination of your employment did you inform anyone

19   at BAMS that you felt that consumers could be injured

20   as a result of BAMS' treatment of PAN data?

21       A.    Consumers?

22       Q.    Yes.

23       A.    I -- I know we discussed a data breach that

24   could happen if the data isn't secure, which it

25   wasn't.  So I guess in that way, yes.

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 198

1      Q.    Who did you discuss the data breaches with?

2      A.    Mark Kendall.  Joe Moll told us that.  It's

3   his -- in his role.  And I can't think of the

4   gentleman's name.  He was -- he was like me, but over

5   the team, the sales support team that was in receipt

6   of the PAN data at the moment.  I just can't remember

7   his name.  Darien Newman.

8      Q.    So Mr. Moll informed all of you that he

9   would have concerns that the failure to properly

10  handle PAN data could lead to a data breach, correct?

11     A.    Yes.

12     Q.    And from that, did you then tell anyone

13  within BAMS that you had a concern that consumers

14  could be injured as a result of the manner in which

15  BAMS was handling PAN data?

16     A.    I can't remember specifically saying that.

17     Q.    All right.

18           You indicated that you expressed concerns

19  about BAMS' conduct to Mark Kendall, Treicia Brooks

20  and Ms. Grissom.  Anyone else?

21     A.    Can you repeat the question, please?

22     Q.    Sure.

23           I asked you earlier to whom did you express

24  concerns that BAMS was somehow engaged in illegal

25  activity.  You said Mark Grissom, Ms. Brooks --

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 199

1    excuse me, Mark Kendall, Ms. Brooks and Ms. Grissom.

2    And that what you expressed to them was that the

3    conduct that BAMS was engaging in was fraud.

4            Is there anyone else that you haven't told

5    me about to whom you directly disclosed any concern

6    that BAMS was engaged in illegal conduct or fraud?

7        A.    No.

8        Q.    At any point in time prior to the

9    termination of your employment did you put your

10   concerns in writing and provide them to anyone within

11   the company?

12       A.    No.

13       Q.    And you were having, on a routine basis,

14   e-mail communication with various employees within

15   BAMS regarding how the company was dealing with the

16   PAN data issue, correct?

17       A.    On a routine basis?  I don't -- can you ask

18   the question again, please?

19       Q.    You sent out a number of e-mails dealing

20   with the PAN data issue, right?

21       A.    To whoever was in the group that knew about

22   it and had agreed, as a group, or like I was told to

23   keep it confidential or who I could communicate with.

24       Q.    And a lot of those are the e-mails that you

25   sent to yourself to your personal e-mail address,

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 200

1    right?

2         A.    Those are -- it's some of the ones.

3         Q.    And this working group that you are talking

4    about, you never put in writing to anyone in that

5    working group that you felt that the conduct that was

6    being engaged in at BAMS was somehow illegal or

7    fraudulent, did you?

8         A.    No.

9         Q.    Now, when I asked you earlier about who had

10   input on the decision to terminate your employment,

11   you said "I'm sure Natasha Collins had input."  What

12   is the basis for that statement?

13        A.    I would say it's probably more of an

14   assumption.

15        Q.    So nobody told you that she was involved in

16   the decision; is that fair?

17        A.    Well, I thought I recalled seeing our --

18   there's, like -- there's a document or something that

19   you guys produced which talks about her involvement.

20        Q.    Listen to my question.  My question was,

21   did anyone tell you that she was involved?

22        A.    At the time, no.

23        Q.    Since the time of your termination, has

24   someone told you that Ms. Collins was involved in any

25   determination of your continued employment with the

Eric Slawin                                           July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 201

1  company?

2        A.   Tell me -- no one's told me that.

3        Q.   Okay.  And what document is -- what

4  document exists that you say somehow indicates that

5  she was involved?

6        A.   I don't have the specifics.

7        Q.   Well, give me the generalities.

8        A.   I thought it was some type of verification

9  or something to -- questions or something.

10       Q.   And what evidence do you have that Mark

11  Kendall was involved in the determination regarding

12  the termination of your employment?

13       A.   He was at the meeting where they terminated

14  me.

15       Q.   He was present for the meeting.  That's

16  the -- that's the evidence that you have?

17       A.   Yes, it was -- yes.

18       Q.   Has anyone ever told you that Mr. Kendall

19  was a decision-maker related to the decision to

20  terminate your employment?

21       A.   I'm trying to think.  I -- at the meeting

22  when they terminated me, I remember asking "Are you

23  in agreement with this, Mark?"

24       Q.   And what did he say?

25       A.   He just said yes.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 202

1    Q.   And what were you told the reason was for
2    the termination of your employment?
3        A.   It wasn't specific.  It was after an
4    investigation, they have made a determination to
5    terminate me.  And that's it.  I mean, that was it.
6        Q.   So nobody told you what the investigation
7    was about?
8        A.   They did tell me what the investigation was
9    about.
10       Q.   And what did they tell you the
11   investigation was about?
12       A.   Me downloading the e-mails.
13       Q.   You sending e-mails outside of the company
14   to a personal e-mail account?
15       A.   Well, I think that's one and the same.  So
16   I just remember downloading e-mails.
17       Q.   They told you that's what the investigation
18   was about.  Did they also request that you delete
19   those e-mails?
20       A.   I don't -- you keep asking me the same
21   question.  I don't -- I will tell you I don't
22   remember verbally being told to delete the e-mails.
23       Q.   Was it ever communicated to you that you
24   needed to delete the e-mails?
25       A.   It -- well, needed, I mean, it was --

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 203

1   that's what they wanted, the -- I believe the cease

2   and desist order, or however you call it, and the

3   affidavit.

4        Q.   You certainly read the cease and desist

5   letter when you received it, didn't you?

6        A.   Yes.

7        Q.   And the cease and desist letter took place

8   before the termination meeting, correct?

9        A.   It was sent to me prior to the termination

10  meeting, yes.

11       Q.   The cease and desist letter indicated that

12  you needed to delete BAMS information that you had

13  sent to your personal e-mail account, correct?

14       A.   To be absolutely certain, I would tell you

15  to put the document in front of me so I can read it

16  again.  I haven't looked at it.

17       Q.   What's the factual basis for your

18  contention that your termination was not based on

19  your sending e-mails containing BAMS information to a

20  personal e-mail account and, instead, was based on

21  some expression that you made that BAMS' conduct with

22  respect to PAN data and PCI compliance was

23  inappropriate?

24       A.   It was the reaction that I didn't -- I

25  didn't know I was going to be terminated.  And then I

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 204

1    put that in writing and I was terminated.

2         Q.    You put that in writing in an e-mail back

3    to the company in which you refused to delete the

4    e-mail, correct?

5         A.    Along with the reasons as to why.

6         Q.    So basically after they have sent you a

7    letter saying "You must delete this information,"

8    then you put in writing "I'm not going to delete it"

9    and then you were terminated.  Is that the basis for

10   your retaliation claim?

11        A.    No.  The basis is that I -- after months of

12   telling people that I oppose this fraud, management,

13   along with -- not just fraud but also talking with

14   Natasha Collins, Brian Rubin, talking about many

15   other things about these questionnaires, they -- I

16   was positioned to being forced to represent that the

17   company was PCI compliant.  I was totally

18   uncomfortable with that.

19             But in the end, my e-mail was clear as to

20   why I was not going to delete those e-mails.  I was

21   not -- I was positioned -- I felt I was positioned in

22   the middle of a fraud to be a fall guy.  And I was

23   clear in that e-mail, and if anybody reads that -- I

24   know you have a different opinion -- but if anybody

25   reads that in an e-mail, they will come to the same

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 205

1    conclusion.  It was clear what my -- what -- where I

2    stood.  And that's it.  Well, that's it.

3         Q.    Was it clear where you stood when you spoke

4    with Mr. Kendall in July of 2017?

5         A.    It was clear, I thought, that this was

6    fraud going on because it was an omission.

7         Q.    And your employment was not terminated in

8    July of 2017; is that correct?

9         A.    That's correct.

10        Q.    And it wasn't -- your employment wasn't

11   terminated in August, September, October or November

12   of 2017, correct?

13        A.    Correct.

14        Q.    And when you expressed these concerns to

15   Ms. Brooks in October of 2017, your employment was

16   not terminated; is that correct?

17        A.    Correct.

18        Q.    And you indicated that Ms. Grissom was a

19   superior to yours and when you expressed these

20   concerns to Ms. Grissom in November of 2017, your

21   employment was not terminated, was it?

22        A.    It was not.

23        Q.    So the basis for your claim that you were

24   retaliated against for engaging in what you have

25   characterized in the lawsuit as protected activity

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 206

1  was because you were terminated after you sent an

2  e-mail back to the HR representative in December of

3  2017 indicating that you would not delete BAMS

4  information that you had e-mailed to yourself; is

5  that correct?

6       A.    I think that's parsed to your benefit.

7       Q.    I'm sorry.  I don't understand that

8  response.  Explain --

9       A.    The e-mails's clear.  I mean, I think you

10  are being selective for the benefit of your client.

11  The e-mail, when you look at holistically -- when you

12  look at it holistically, it's clear, okay, that those

13  e-mails, I wasn't going to delete those e-mails

14  because I was in the middle of a fraud.  And I'm not

15  going to be pulled into that.  And I'm not going to

16  be -- I'm not going to be set up so I -- you know, my

17  contention is I told them that and they terminated

18  me.  And they retaliated against me.

19       Q.    You told them that in the e-mail you sent

20  after they said delete the e-mails, correct?

21       A.    Yes.

22       Q.    Okay.  That's all I'm trying to understand.

23  You are basically saying the trigger for your

24  termination was you telling them in an e-mail "I am

25  not going to delete those e-mails and this is why I'm

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 207

1    not going to delete them."  And you say that's why

2    you were terminated, correct?

3        A.    I believe that e-mail, me sending that is

4    protected activity.

5        Q.    And you sent that e-mail after the concerns

6    had been raised to you about the fact that you had

7    sent e-mails in violation of company policy to a

8    personal e-mail account, correct?

9        A.    After the meeting, yeah --yes.

10       Q.    All right.

11            MR. GALANEK:  George, if you don't mind

12       pulling up Exhibit Number 43.

13            (Defendant's Exhibit 43, Letter from Meg

14       Troughton to Eric Slawin, dated 12/8/2017, Bates

15       labeled PLAINTIFF 000713, marked for

16       identification.)

17            MR. GALANEK:  Which is the -- which is

18       Plaintiff 713.

19            And once again, Mr. Slawin, please take

20       your time to direct George around however you

21       would like for him to be directed around so you

22       can review this document.

23            THE WITNESS:  Okay.

24            Please go down.

25       Q.    (By Mr. Galanek) Okay.  Did you receive

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 208

1    this letter, sir?

2         A.   Yes.

3         Q.   Did you receive this letter on or about

4    December the 8th, 2017?  Is that correct?

5         A.   I will not dispute the date on it.  I don't

6    know if I exactly received it on the 8th.

7         Q.   After receiving this letter, or when you

8    received this letter, the letter informs you that

9    BAMS believed that you had violated company policy by

10   e-mailing documents to your personal e-mail account;

11   is that correct?

12           THE WITNESS:  George, can you go down for

13        me, please?

14           Stop, please.

15        A.   I don't believe it's saying I violated the

16   policy.

17        Q.   (By Mr. Galanek) You don't read this

18   letter, quote, "holistically," to use your term, as

19   informing you that the company believes that you are

20   in violation of the company's policy?

21        A.   I -- no, I read it differently.

22        Q.   Great.  You certainly understand that the

23   company has informed you, quote, "In conformance with

24   your legal obligations, you are to destroy all"

25   copies -- excuse me, "all originals and copies of

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 209

1  confidential documents and information of BAMS, that

2  you sent to your personal email," correct?

3        A.    I do see that paragraph, yes.

4        Q.    In response to this letter, did you, in

5  fact, destroy all BAMS information that you had sent

6  to your personal e-mail account?

7        A.    No.

8              THE COURT REPORTER:  Can we take a break

9        real quick?

10             MR. GALANEK:  Of course.

11             THE VIDEOGRAPHER:  Off the record, 4:17.

12             (WHEREUPON, a recess was taken.)

13             THE VIDEOGRAPHER:  Back on the record.  The

14        time is 4:25.

15             MR. GALANEK:  George, can you please pull

16        up Exhibit 42 for me.  This is Plaintiff's 711

17        through 712.

18             (Defendant's Exhibit 42, Letter from

19        Michael Solan to Eric Slawin, dated 12/12/2017,

20        Bates labeled PLAINTIFF 000711 - 712, marked for

21        identification.)

22             MR. MARX:  711 through 12.  Thank you.

23             MR. GALANEK:  Mr. Slawin, please feel free

24        to ask George to move around the document.  Tell

25        me after you've had a chance to review it.

Page 210

1            THE WITNESS:  Okay.

2            Okay.  George, can you go down further,

3       please?

4            George, can you go down just a little bit

5       further, please?

6            Okay.  Thank you.

7            Okay.  I have read the letter.

8       Q.   (By Mr. Galanek) Do you recognize this

9   document?

10      A.   Yes.

11      Q.   The letter that you received?

12      A.   Yes.

13      Q.   You received this letter on or about

14  December 12th, 2017?

15      A.   Yes.

16      Q.   You understand that this letter effected a

17  termination of your employment?

18      A.   Yes.

19      Q.   Do you know when the decision to terminate

20  your employment was actually made?

21      A.   I would say it was the 12th.

22      Q.   I didn't ask what you would say.  Do you

23  actually have facts to support an understanding of

24  when the decision to terminate your employment was

25  actually made?

Eric Slawin                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 211

1          A.    I knew I was terminated on the 12th.  So I

2    don't -- I mean, that's my answer.

3          Q.    And so the letter communicates to you the

4    decision to terminate your employment.  Do you have

5    any independent information beyond this letter to

6    point to as to when the decision to terminate your

7    employment was made, whether on the 12th or at some

8    earlier date?

9          A.    I found out I was terminated on the 12th.

10         Q.    Okay.  So the answer is all that you have

11   is this letter; is that fair?

12         A.    Relative to what?

13         Q.    When the decision to terminate your

14   employment was actually made.

15         A.    Yes.  I mean, this letter told me I was

16   terminated.

17         Q.    You, of course, understand that a decision

18   to terminate your employment could have occurred at

19   any point in time prior to this letter, but

20   obviously, it didn't occur after this letter; is that

21   fair?

22         A.    I don't -- I don't know how you say --

23   well, I don't understand that part.  I know I was

24   terminated on the 12th.  So I -- I don't know.  I

25   don't quite get what you are saying.

Page 212

1            MR. GALANEK:  George, let's pull up

2        Exhibit 8, please.

3            MR. MARX:  Sorry, what is that number?

4            MR. GALANEK:  I'm -- yeah, I'm sorry,

5        Robert.  Exhibit 8 is actually Plaintiff's 1 and

6        2.

7            MR. MARX:  Thank you.

8            (Defendant's Exhibit 8, E-mail from Mike

9        Solan to Eric Slain, dated 12/8/2017, Subject:

10        Action Required - Legal Affidavit & Cease and

11        Desist Letter - Information Security Violation,

12        Bates labeled PLAINTIFF 000001 - 2, marked for

13        identification.)

14            MR. MARX:  1 and 2.

15            THE WITNESS:  George, can you go up,

16        please?

17        A.    Okay.

18        Q.    (By Mr. Galanek) All right.  Do you

19    recognize Exhibit 8 as a document or as an e-mail

20    that you received from Mike Solan?

21        A.    Yes.

22        Q.    And that was the e-mail that you received

23    from Mr. Solan on or about 4:19 on December 8th,

24    2017; is that correct?

25        A.    Yes.  Yes, according to the data -- the

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 214 of 317
Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 213

1   date and time of the e-mail.

2       Q.   And in the e-mail, Mr. Solan indicates to

3   you that you should read and sign and return the

4   Legal Affidavit that is attached, you know, if

5   they -- if the affidavit is true to the best of your

6   knowledge.  And that if any part of the affidavit is

7   not true, you should contact him to discuss next

8   steps, correct?

9       A.   Yes.

10      Q.   Did you contact Mr. Solan to tell him that

11  any parts of the affidavit were not true?

12      A.   No.

13      Q.   And, in fact, you didn't contact Mr. Solan

14  at all before receiving the letter that we just

15  looked at on the 12th; is that correct?

16      A.   No, there were -- the letter on the 12th,

17  there were e-mails with him and I on the 11th.

18      Q.   I apologize.  You're right.  You're right.

19  We'll get there.

20          MR. GALANEK:  All right.  George, if you

21      could pull up Exhibit Number 9, please.

22          And this is Plaintiff's document 16 and 17.

23          (Defendant's Exhibit 9, Letter from Meg

24      Troughton to Eric Slawin, dated 12/8/2017 with

25      attachment, Bates labeled PLAINTIFF 000016 - 17,

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 214

1          marked for identification.)

2              MR. MARX:  Thank you.

3          Q.  (By Mr. Galanek) Now, this is the letter

4      Mr. Slawin, that we have already seen, but the other

5      letter did not have the attachment.

6              MR. GALANEK:  So, George, if you could go

7          to the next page, which, for him, is the

8          proposed Declaration.  Let me know after you

9          have had a chance to review this, Mr. Slawin.

10             THE WITNESS:  Okay.

11             Please go down further, George.

12         A.  Okay.

13         Q.  (By Mr. Galanek) All right.  This is the

14     Declaration that was -- that was sent to you by

15     Mr. -- actually, it was sent to you by the Office of

16     General Counsel.  This is the affidavit that is

17     referenced in the e-mail that we just looked at from

18     Mr. Solan, correct?

19         A.  Yes, it was sent to me.

20         Q.  And the Declaration that you are being

21     asked to sign merely states that you are affirming

22     that on the signing of this document, you would have

23     permanently deleted all copies of BAMS confidential

24     information in your possession, custody or control

25     and you would further be affirming that you had not

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 215

1    sent -- or, excuse me, forwarded or shared such files

2    with other persons, correct?

3         A.   Yes.  I think you paraphrased it somewhat,

4    but yes.

5         Q.   And you chose not to sign this Declaration,

6    correct?

7         A.   That's correct.

8         Q.   Because you chose not to delete the

9    information, correct?

10        A.   Above and beyond that, it was -- I -- after

11   months of protesting with management and opposing

12   their fraud, I -- I -- and looking at what's going

13   on, the e-mails was my -- was the only defense I had

14   after everything to prove I wasn't going to be part

15   of that fraud.  And I was sent this after I told them

16   I wasn't going to participate in this fraud.  So --

17        Q.   You were -- you were sent this document on

18   December the 8th, correct?

19        A.   Oh, you're right.  I stand corrected.

20        Q.   This was sent to you before you told them

21   "By God, I am not going to stand for fraud," correct?

22        A.   Yes.  I believe as part of that e-mail I

23   did.  Uh-huh.

24        Q.   I asked you before who within BAMS you

25   communicated any concern that BAMS was engaged in

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 216

1   illegal conduct.  And you at that point said "Well, I
2   communicated that BAMS was engaged in fraudulent
3   conduct to Ms. Brooks, Mrs Grissom and Mr. Kendall."
4           Now, in other times, you stated "Oh, well,
5   I have been opposing fraud at management."  You have
6   not identified anyone else.  Is there anyone other
7   than those three people who you expressed that you
8   believe that BAMS was engaged in fraudulent conduct?
9       A.   I expressed to Natasha Collins and Brian
10  Rubin, and I think it was Leonard Ebel and the
11  gentleman that was the Relationship Manager for Home
12  Depot that the questionnaires I was being asked to
13  complete, I was not going to do that because
14  representing that was not appropriate.
15      Q.   Okay.  With respect to any of these
16  individuals that you just mentioned, Ms. Collins,
17  Mr. Rubin, Leonard Ebel or the Home Depot
18  relationship individual whose name you can't
19  remember, did you indicate to any of them that you
20  felt that BAMS was somehow engaged in fraud?
21      A.   I did not use the word "fraud" with them.
22      Q.   Did you indicate to any of them that you
23  felt that BAMS was engaged in any illegal activity?
24      A.   I thought -- or I think, too, that, you
25  know, misrepresenting your piece as compliant on

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 217

1    those questionnaires is tantamount to fraud and being

2    illegal.  That's how I feel about it.

3        Q.  Sir, I'm not asking about your feelings.

4    I'm asking you what you communicated to these four

5    individuals.  Did you communicate to any of those

6    four individuals that you felt BAMS was engaged in

7    illegal conduct?

8        A.  I do not remember using the word "illegal."

9    I just was expressing my concerns routinely about

10   being positioned to misrepresent the facts, and I

11   deem that to be illegal.

12       Q.  Did you indicate to any of those four

13   individuals that you felt any conduct that BAMS was

14   engaging in violated any state or Federal law or

15   regulation?

16       A.  No, I used the word "fraud" broadly or, you

17   know, inappropriate activity, illegal activity.  I --

18       Q.  You told me you didn't use -- go ahead.

19       A.  No.  Go ahead.  I'm sorry.

20       Q.  Well, you just told me you didn't use the

21   word "fraud" with any of them.  So my question was,

22   because you said I didn't use the word "fraud," I

23   didn't use the word "illegal conduct," so I'm asking

24   you, did you tell any of the four of these that you

25   felt that any of the conduct that BAMS was engaging

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 218

1    in somehow violated any state or Federal law or

2    regulation?

3         A.    I do not recall being asked specifics

4    relative to state regulations or whatever -- however

5    you put it.

6         Q.    And other than Ms. Collins, do you contend

7    that any of the other four -- any of the other three

8    individuals had any input whatsoever in the decision

9    to terminate your employment?

10        A.    No.

11        Q.    To whom did you express the ramifications

12   that you believed would occur if it became public

13   that BAMS was somehow not PCI compliant?

14        A.    For months, Mark Kendall, Sherra Grissom.

15   I did discuss that with Natasha Collins.  I said

16   "That's going to affect shareholders, or could affect

17   shareholders."  Treicia Brooks.  That's -- that's

18   what I recall.

19        Q.    What were the ramifications that you

20   informed these individuals of?

21        A.    That it could become an issue with it

22   getting out that data wasn't secure at merchants and

23   that could affect their bottom line.  And ultimately,

24   the bottom line leads to earnings per

25   share/shareholders.

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 219

1      Q.   So you told them that the ramifications

2  that may follow a disclosure that BAMS was not

3  compliant with PCI was that the individual

4  merchants -- it could negatively impact the

5  individual merchants who did business with BAMS,

6  their bottom lines and their share value by the

7  merchants' share value?

8      A.   I said shareholders.  I didn't

9  specifically --

10     Q.   Okay.  I'm sorry.  I'm sorry.  But you were

11 talking about the shareholders of the merchants?

12     A.   Yes.  That's how I felt how big it was and

13 possibly still is.

14     Q.   When did you have those conversations?

15     A.   With Mark Kendall, at least once a month.

16 Natasha, we had biweekly meetings leading up to

17 September.  I told her right around that time.  Brian

18 Rubin --

19     Q.   I'm sorry.  Hold on.

20          I'm sorry.  You told Ms. Collins in

21 September of 2017?

22     A.   Yes, roughly.  Uh-huh.  Yes.

23     Q.   Okay.  And when did you tell this to

24 Mr. Rubin?

25     A.   October-ish because he had -- we had talked

Eric Slawin                           July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 220

1  how his duties had changed, and he was going to --
2  his new role was to redesign processes, and he was
3  reporting in to a gentleman -- I think his name is
4  Dave Darey -- who had a line into Bank of America.
5  But I told Brian that all of this is going on and I'm
6  concerned about what's being represented in
7  questionnaires, what I'm being asked to represent.
8  And this could blow up and affect merchants and their
9  shareholders.  And I was hoping that Brian would
10  communicate that up to his superior.
11      Q.   You have no idea if Mr. Rubin communicated
12  that further, correct?
13      A.   I do not.
14      Q.   What was the reaction of any of these
15  individuals to whom you communicated those
16  ramifications to your statements?
17      A.   Agreement and indifference.
18      Q.   Who agreed?
19      A.   Mark Kendall agreed more than once that it
20  could have big implications like that.  Natasha,
21  her -- Mark Kendall, in particular.
22      Q.   Okay.  And what did they say?  You say they
23  agreed.  How did they voice that agreement?
24      A.   He said "Yes, I agree this has big
25  implications."  That's what I recall.  And "That's

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 221

1    why we need to keep it confidential and not tell

2    anybody."

3         Q.   Those implications -- and I asked about

4    ramifications, but I'm assuming you are using the

5    word "ramifications" and "implications" as synonyms?

6         A.   Sure.  Yes.

7         Q.   Did you ever put those ramifications in any

8    written document to share with anyone at BAMS?

9         A.   No.  I was -- I didn't want to put anything

10   in writing because since I was told to keep it

11   confidential, and there's -- both -- I was told that

12   written and verbally, I was afraid if I did that I

13   was going to be terminated.

14        Q.   You were told that by Mark Kendall, who was

15   a peer, correct?

16        A.   At the time he told me that, I -- if I

17   recall, he was my manager.

18        Q.   So you -- earlier you told me that you told

19   him that you felt it was fraud when he was your peer.

20   And you are saying that later you were concerned that

21   if you put something in writing about ramifications

22   that he would terminate you?  Even though you had

23   previously told him, while he was your peer, that you

24   felt it was fraud?

25        A.   Well, I was telling him it was fraud after

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 222

1    he was my manager also.

2        Q.    When did you tell Mr. Kendall that it was

3    fraud?

4        A.    I would say monthly.  We talked almost

5    daily.  And I -- I remember consistently raising it

6    weekly at least.  Because I was just so afraid of the

7    position I was in.

8        Q.    And you used the word "fraud"?

9        A.    Yes.

10       Q.    Do you have any awareness of any loss that

11   has occurred whatsoever to a payment processor as a

12   result of any PCI DSS violation?

13       A.    I know there's been -- there's been signs

14   from Visa and MasterCard, or at least one of those

15   two payment processors, for PCI compliance problems

16   or --

17       Q.    How do you come about that knowledge?

18       A.    I take that back.  Not necessarily a

19   payment processor, but I know Visa and MasterCard

20   have levied fines for that.

21       Q.    They've levied fines against merchants,

22   correct?

23       A.    Yes, I believe it is merchants.

24       Q.    You are not aware of either Visa or

25   MasterCard ever levying any fine against a payment

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 223

1    processor for failure to comply with PCI DSS,

2    correct?

3         A.   Payment processor, no.  But I'm clear that

4    if they knew a payment processor should be P -- you

5    know, PCI compliant that they could fine them.

6         Q.   And what is that based on?

7         A.   Based on the way I have read their rules.

8         Q.   Which rules have you read?

9         A.   The rule book when I looked at it in the

10   past.

11        Q.   Which rule book?  That's what I'm asking

12   you.

13        A.   Oh.  Probably would have been either Visa

14   or MasterCard's.  I don't remember which one.

15        Q.   What rule book?

16        A.   I don't remember which one.

17        Q.   Do you recall?

18        A.   I don't know of any other.

19        Q.   In what way did BAMS' noncompliance and

20   your alleged -- or the alleged fraudulent

21   misrepresentation that it was making to its customers

22   regarding how it was handling credit card data

23   violate the Consumer Financial Protection Act?

24        A.   I don't know the answer to that.

25        Q.   In what way did it violate Sarbanes-Oxley?

Eric Slawin                            July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 224

1    A.    Violate Sarbanes-Oxley?  I don't know the

2  answer to that.  I don't know how that would violate

3  Sarbanes-Oxley.

4    Q.    In what way did it violate the Dodd-Frank

5  Act?

6    A.    The Dodd-Frank Act?  The Dodd-Frank Act?  I

7  don't know.

8    Q.    When did you first become aware that BAMS

9  was not, in fact, in your mind, PCI compliant?

10   A.    The date I saw the letter or -- I'm sorry,

11  the e-mail from Dave Ades where it was stated there.

12   Q.    When was that?

13   A.    I believe it was June 2017.

14   Q.    In your Complaint, you say that BAMS'

15  senior management understood the seriousness of the

16  issue and directed all written references to BAMS

17  being noncompliant be deleted.  Who directed you to

18  delete any reference to BAMS being noncompliant with

19  PCI DSS?

20   A.    Mark Kendall.

21   Q.    When did Mr. Kendall do that?

22   A.    After he was my manager.  I don't remember

23  the exact date, but the context was this was going to

24  be reported up in a deck or a PowerPoint presentation

25  to the CEO.  And I asked him if he still wanted a

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 225

1    reference to BAMS not being PCI compliant in that

2    deck.  And I said -- you know, he told me to take it

3    out -- or actually he said -- I said "Do you want it

4    to be taken out?"  And he said "Yes.  Good catch."

5    That would have -- you know, giving the CEO

6    deniability.

7        Q.   Yes.  That was an e-mail that you sent

8    asking him whether you should take that reference

9    out, correct?

10       A.   Correct.  Following his direction to keep

11   it confidential.

12       Q.   Is there any other, quote, "directive," in

13   any written reference to PCI being noncompliant be

14   deleted that you are referring to in your Complaint?

15       A.   No.

16       Q.   All right.

17            MR. GALANEK:  George, if you can please

18       pull up Exhibit Number 10, please.

19            MR. MARX:  And what number is that?

20            MR. GALANEK:  I'm sorry.  It's Plaintiff's

21       20.

22            MR. MARX:  Thank you.

23            (Defendant's Exhibit 10, E-mail string

24       Bates labeled PLAINTIFF 000020 - 24, marked for

25       identification.).

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 226

1          MR. GALANEK:  If you would please review
2      what we have marked as Exhibit 10.  Tell George
3      to move up and down as you need and tell me
4      after you've reviewed it.
5          THE WITNESS:  George, if you would move
6      down, please.
7          Okay.  I have read it.
8          MR. GALANEK:  Give me one second.  I
9      apologize.
10     Q.   (By Mr. Galanek) Can you hear me, sir?
11     A.   Yes, I can.
12     Q.   Exhibit 10, this is an e-mail, obviously
13  one of the e-mails that was sent to yourself.  But
14  the e-mail at the bottom of the page, this e-mail,
15  from, to, only to Mark, correct?
16     A.   You broke up.
17     Q.   You sent this e-mail to Mr. Kendall on
18  October 26th of 2017; is that correct?
19     A.   Yes.  Appears to be, uh-huh.
20     Q.   And in this e-mail, you indicate that --
21  that you do not believe that the highlighted language
22  will satisfy the existing merchants that we are
23  pitching.
24          So you're indicating to Mr. Kendall that
25  merely representing that First Data is handling data

Page 227

1    is going to be sufficient with respect to merchant

2    representations, correct?

3         A.    When you say the high -- what are you

4    talking about, the highlighted language in the

5    e-mail?

6         Q.    Yes.

7         A.    Can you repeat the question, please?

8         Q.    How about this?  In this e-mail that you

9    drafted to Mr. Kendall in October of 2017, you don't

10   indicate to Mr. Kendall that you feel that the

11   process of discussing with merchants information

12   regarding the handling of data or PCI compliance is

13   fraudulent, do you?

14        A.    In this e-mail?  I do not say -- I'm sorry.

15   Can you repeat the question, please?

16        Q.    Do you use the word "fraud" in this e-mail?

17        A.    I do not see the word "fraud" in the

18   e-mail.

19        Q.    Do you see the word "misrepresentation" in

20   the e-mail?

21        A.    No.

22        Q.    Do you see any reference to a violation of

23   law in the e-mail?

24        A.    No.

25        Q.    All right.

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 228

1              MR. GALANEK:  Let's pull up, George,

2       Exhibit Number 11.

3              MR. MARX:  I'm sorry.  What number is that?

4              MR. GALANEK:  I apologize.  Exhibit 11 is

5       Plaintiff's 25 through 31.

6              MR. MARX:  25 to 31.  Thank you.

7              (Defendant's Exhibit 11, E-mail chain Bates

8       labeled PLAINTIFF 000025 - 31, marked for

9       identification.)

10             MR. GALANEK:  Please feel free to direct

11      George around so you can read the e-mail.

12             THE WITNESS:  Okay.

13             George, can you go lower, please?

14             Okay.  Can you go lower, please?

15             Can you go down lower, please?

16             Lower, please.

17             Can you go lower, please?

18             Can you go lower, please?

19             Can you go lower, please?

20             Can you go lower, please?  Okay.  Can you

21      go lower, please?

22             Okay.  Can you go lower, please?

23             Okay.  Can you go lower, please?

24             Can you go lower, please?

25             Lower, please.

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 229

```
 1            Okay.  Thank you.
 2       Q.   (By Mr. Galanek) Sir, what I want to do
 3  is --
 4            MR. GALANEK:  George, go back to
 5       Plaintiffs's 25, please.
 6       Q.   (By Mr. Galanek) Mr. Slawin, on Friday,
 7  October the 27th, you wrote an e-mail to Aaron
 8  Einhorn that begins at the bottom of that page; is
 9  that correct?
10       A.   Yes.
11       Q.   And Mr. Einhorn was an attorney for BAMS in
12  the Office of General Counsel, correct?
13       A.   That's my recollection, yes.
14       Q.   And you were seeking legal advice from him?
15       A.   Not that this is legal advice, but yes,
16  yes, I guess you could say that, yes.
17       Q.   And you retained this document after the
18  termination of your employment; is that correct?
19       A.   Yes.
20       Q.   And you disclosed this e-mail to your
21  current counsel; is that correct?
22       A.   To my current counsel?
23       Q.   Yes.
24       A.   Yes.
25       Q.   And in your e-mail of October 27th, you
```

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 231 of 317
Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 230

1    basically state that you have been operating under

2    the assumption that BAMS is not PCI compliant and

3    does not have to be.  Is that a statement that you

4    wrote on October the 27th of 2017?

5          A.   Yes.

6          Q.   So up until October 27th, 2017, you were

7    under the impression that BAMS did not need to be PCI

8    compliant, correct?

9          A.   No, that's not correct.

10         Q.   When did you become aware that BAMS did not

11   need to be -- when did you become aware that BAMS

12   needed to be PCI compliant?

13         A.   July 2017.

14         Q.   Is there a reason you don't tell

15   Mr. Einhorn that you have been aware since July of

16   2017 that BAMS is not PCI compliant but needed to be?

17         A.   Yes, because I was being told by my manager

18   to not speak about it.

19         Q.   Yes.  Your manager is not on this e-mail;

20   is that correct?

21         A.   I didn't see that, no.

22         Q.   This is a direct communication between

23   yourself and in-house counsel for BAMS, correct?

24         A.   Yes.

25         Q.   You take this opportunity to tell in-house

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 231

1    counsel for BAMS that you have concerns that BAMS is

2    engaging in an illegal activity?

3         A.    In this e-mail?

4         Q.    Yes.

5         A.    I didn't say that in this e-mail.

6         Q.    Nor did you say that you believe that BAMS

7    is engaged in fraudulent conduct; isn't that correct?

8         A.    In this e-mail?

9         Q.    Yes.

10        A.    Yes.

11        Q.    And, in fact, you state in the last

12   sentence of your e-mail "It's important I understand

13   the situation relative to BAMS' PCI Compliance so I

14   can provide the proper support to our sales team."

15             So is it your position that you fully

16   understood the situation relative to BAMS' PCI

17   compliance when you were writing this e-mail to

18   in-house counsel but you weren't disclosing that to

19   him?

20        A.    With this e-mail, I was trying to -- I

21   wanted -- I was trying to verify BAMS' PCI compliance

22   status, as I knew it, as I -- and I knew they weren't

23   PCI compliant.  But I was in a difficult situation

24   because I was being told not to talk about that.

25             So I sent this e-mail to Aaron and -- to

Eric Slawin                                        July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 232

1    see what his understanding was and not -- I mean,

2    follow my manager's directive to not disclose it.

3         Q.    If you are not to speak about it, why are

4    you engaging with Mr. Einhorn anyway?

5         A.    Well, my understanding was I was -- what I

6    was told not to say is that BAMS is not PCI compliant

7    and in receipt of PAN data.

8         Q.    You don't express that in your e-mail to

9    him, do you?  You don't express to him that you

10   believe that BAMS is not PCI compliant?

11        A.    I say that -- my assumption is that BAMS is

12   not PCI compliant.

13        Q.    And your assumption is that they don't have

14   to be PCI compliant.  That's what you are

15   communicating to him, correct?

16        A.    Obviously, I was following the directive of

17   my manager.  I wanted -- I wanted to find out from

18   Aaron what the status was.  I thought he knew too.

19   And I didn't know how else to say it without saying

20   it.

21        Q.    Are you saying your manager directed you to

22   send this e-mail to Mr. Einhorn?

23        A.    No.

24        Q.    And you don't copy your manager on this

25   e-mail, correct?

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 233

1          A.    Correct.

2          Q.    And, in fact, you affirmatively delete your

3     manager and others who are on the earlier string from

4     the e-mail that you sent to Mr. Einhorn; is that

5     correct?

6          A.    Well, I felt if I included every -- you

7     know, more people, I would have been terminated.

8     Because I was told not to do that.

9          Q.    Sir, my question was simple.  You

10    affirmatively deleted everyone else from this e-mail;

11    is that correct?

12         A.    I wouldn't say I did -- I deleted them.  I

13    didn't include them in this inquiry.  I don't know

14    what you mean by "deleted."

15         Q.    You made an inquiry directly to

16    Mr. Einhorn, just you and just him, correct?

17         A.    That's what -- that's what the e-mail

18    string shows here, at least for this part of it, yes.

19              MR. GALANEK:  George, let's pull up

20         Exhibit 13, please.

21              MR. MARX:  What number is that?

22              MR. GALANEK:  Plaintiff's 37 and 38.

23              MR. MARX:  Thank you.

24              (Defendant's Exhibit 13, E-mail string

25         Bates labeled PLAINTIFF 000037 - 39, marked for

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 234

1          identification.)

2                  MR. GALANEK:  Please take your time to

3          review the document.

4                  THE WITNESS:  Okay.

5                  George, can you go down, please?

6                  Can you go down a little bit more, please?

7                  George, can you go down further, please?

8                  Okay.  Can you go down, please?

9                  Okay.  Thank you.

10                 MR. GALANEK:  George, please go back up to

11         Page 37, Plaintiff's 37.

12         Q.   (By Mr. Galanek) Mr. Slawin, is this the

13    e-mail that you referred to earlier that forms the

14    basis for your allegation that management insisted

15    that you delete any and all written references to the

16    PCI issue that appears in your Complaint?

17         A.   Well, when you say "any and all," are you

18    reading from the Complaint?

19         Q.   Just answer my question, sir.  Is this the

20    e-mail that you are referring to -- we asked that --

21    we talked about that earlier.  Is this the e-mail you

22    were referring to?

23         A.   Yes.

24         Q.   Okay.  And your e-mail appears at the

25    bottom of Page 37; is that correct?

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 235

1          THE WITNESS:  George, can you go down,

2      please?

3      A.   Yes.

4      Q.   (By Mr. Galanek) And you're inquiring as to

5  whether or not you should delete something, correct?

6      A.   At the direction of my manager, yes.

7      Q.   Yet your e-mail precedes the direction of

8  your manager, correct?

9      A.   I'm sorry, what's that?

10     Q.   You sent your e-mail at 2:30 on

11  November 8th, 2017, correct?

12     A.   Uh-huh.

13     Q.   "Yes"?

14     A.   Yes.  That's the date and time stamp on

15  this e-mail, yes.

16     Q.   And at the time of this e-mail, Mr. Kendall

17  was your manager, correct?

18     A.   Yes.

19     Q.   And Mr. Kendall responds to your e-mail.

20  He didn't send you an e-mail before your e-mail.  He

21  responds to yours, correct?

22     A.   Yes.

23     Q.   You didn't report to Sara Saha, correct?

24     A.   Correct.

25     Q.   Now, all of the e-mails that you forwarded

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 236

1   to yourself at the eslawin16Gmail account, to the

2   extent that you forwarded e-mails to that account

3   that purport to have been written by you or received

4   by you, they were, in fact, written by you or

5   received by you, correct?

6        A.   The e-mails I -- you lost me on that

7   question.   I apologize.

8        Q.   The e-mails that you forwarded to your

9   personal e-mail account, they were all genuine

10   e-mails, correct?  You are not contending that

11   someone created an e-mail in your e-mail account?

12       A.   All those e-mails were forwarded from my

13   work e-mails.  So I guess if that meets the

14   definition of genuine.

15            MR. GALANEK:  George, if you will pull up

16       (Zoom interruption), please.

17            MR. MARX:  Which number, Counsel?

18            MR. GALANEK:  Plaintiff's 47 through 50.

19            MR. MARX:  And what number is that

20       Defendant's number?

21            MR. GALANEK:  No, it's Exhibit 16.  It's

22       Plaintiff's 47 through 50.

23            MR. MARX:  Right.  Defendant's 16, you

24       said?

25            MR. GALANEK:  Exhibit 16.

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 237

1           MR. MARX:  Yes, 16.  I didn't know if you

2      said 60.  Thank you.

3           (Defendant's Exhibit 16, E-mail string

4      Bates labeled PLAINTIFF 000047 - 50, marked for

5      identification.)

6           THE WITNESS:  Okay.

7           George, can you go down further?

8           Okay.  Can you go down further, please?

9           Can you go down further, please?

10          Can you go down further, please?

11          I'm sorry, George, can you go up just a

12      little bit, please?  Thank you.

13          Okay.  Can you go down further, please?

14          Go down further.

15          Okay.  Thank you.

16      Q.   (By Mr. Galanek) Mr. Slawin, you became

17  aware of the self-identification or the suggestion of

18  a self-identified audit issue for Mr. Ades on or

19  about June 13, 2017, correct?

20      A.   Correct.

21      Q.   And you were with preparing the

22  self-identified audit issue, correct?

23      A.   We started talking about how to, I guess,

24  come up with a solution or, you know, a strategy on

25  how to deal with it.  I didn't hand write or -- (Zoom

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 238

1    interruption) as an SIA -- SIAI.

2         Q.   You were the person who was charged with

3    preparing the SIAI, correct?

4         A.   Initially, yes.

5         Q.   And you received this e-mail string when

6    Ms. Collins copied you on it on June 13th at 5:18 in

7    the evening, correct?

8              THE WITNESS:  Can you go down further,

9         George?

10        A.   Yes, correct.

11             MR. GALANEK:  Follow me, George.

12             You can take it down.

13             THE CONCIERGE:  Okay.

14             MR. GALANEK:  If you can next pull up

15        Exhibit 17 for me, please.  This is Plaintiff's

16        Bates Number 56 and 57.

17             (Defendant's Exhibit 17, E-mail string

18        Bates labeled PLAINTIFF 000056 - 57, marked for

19        identification.)

20        Q.   (By Mr. Galanek) Mr. Slawin, it this an

21   e-mail that you wrote on or about December 20, 2017?

22        A.   Yes.

23        Q.   And you sent it to Mr. Kendall and

24   Ms. Collins?

25        A.   Yes.  They are part of the e-mail string,

Eric Slawin                                            July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 239

1    uh-huh.

2             MR. GALANEK:  Follow me, George.  You can

3         take it down.  That's all we need, George.  You

4         can take it down.

5             George, can you please pull up Exhibit 20?

6             Exhibit 20 is Plaintiff's 74 and 75.

7             (Defendant's Exhibit 20, E-mail from Eric

8         Slawin to Mark Kendall, dated 6/2/2017, Subject:

9         check it out, Bates labeled PLAINTIFF 000074 -

10        75, marked for identification.)

11        Q.   (By Mr. Galanek) Did you write the e-mail

12   that appears at the top of this page?

13        A.   Yes.

14        Q.   And did you attach to that e-mail a

15   internal messaging string that you had written?

16        A.   I don't know.  That appears to be the case

17   here.

18        Q.   I'm sorry?

19        A.   That appears to be the case here.

20        Q.   Thank you.

21             And you sent this e-mail to Mr. Kendall on

22   June 2nd, 2017; is that right?

23        A.   Yes.

24        Q.   And at that time Mr. Kendall was your peer?

25        A.   Yes.

Page 240

1      Q.    And what did you mean by the statement at

2    the end, "nice to know you and start making some

3    money in the market"?

4             THE WITNESS:  Can you go back up, please,

5        George?

6      A.    I meant that I was going to look for a job

7    and that, you know, hopefully, I can make some money

8    in the stock market.

9      Q.    (By Mr. Galanek) Did you ever tell anyone

10   that you spent 2018 in your underwear in your

11   basement day trading?

12     A.    I didn't remember saying that until I saw

13   what was put in.  I believe that was in the OSHA

14   complaint response.  So I know I talked to Mark about

15   trading in my basement.  But I don't -- I don't -- I

16   didn't -- I don't specifically say in my underwear.

17            MR. GALANEK:  If you would please pull up

18       Exhibit 21, George.

19            This is Plaintiff's 76, Mr. Marx.

20            MR. MARX:  Thank you.

21            What Defendant's number is that?

22            MR. GALANEK:  It's -- it's Exhibit 21.

23            MR. MARX:  Thank you.

24            (Defendant's Exhibit 21, E-mail string

25       Bates labeled PLAINTIFF 000076 - 80, marked for

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 241

1    identification.)

2        Q.    (By Mr. Galanek) Mr. Slawin, did you write

3    the e-mail -- or, excuse me, did you receive the

4    e-mail from Ms. Collins on June 6th, 2017 that's in

5    the middle of this page?

6        A.    Yes.

7        Q.    And you forwarded it to your personal

8    e-mail account on June 6th, 2017; is that correct?

9            THE WITNESS:    George, can you go up?

10       A.    Yes.

11       Q.    (By Mr. Galanek) And you also forwarded it

12   to an eslawin@comcast.net account that you didn't

13   mention earlier, correct?

14       A.    Correct.

15       Q.    That's yet another personal e-mail account

16   that you maintain?

17       A.    Yes, it is.

18       Q.    And you forwarded this e-mail string that

19   goes on from Page 76 through 80 to those two personal

20   e-mail accounts on June 6th, 2017, correct?

21       A.    Yes.  That would have been what was

22   forwarded, uh-huh.

23       Q.    This is more than a week before any issue

24   of PCI DSS had been identified by anyone at BAMS,

25   correct?

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 242

1      A.   Well, I don't know identified by anyone.  I

2   think Joe Moll probably knew about it sooner, but

3   this was before I knew about it.

4      Q.   This e-mail string that you chose to

5   forward outside of the company without the company's

6   consent has nothing to do with PCI compliance,

7   correct?

8           THE WITNESS:  George, can you go down

9        further, please?

10          Further, please.

11          Can you go down further, please?

12     A.   The e-mail itself doesn't.  I don't know if

13   the questionnaire from Verisign.

14          THE CONCIERGE:  Repeat that, please.

15          MR. GALANEK:  You can take that one down,

16       George.

17          Can you tell me how much time we have got

18       left?

19          THE VIDEOGRAPHER:  Yes.  We are at six

20       hours, 25 minutes.

21          MR. GALANEK:  Let's take a five-minute

22       break, please.

23          THE VIDEOGRAPHER:  Off the record.  The

24       time is 5:28.

25          (WHEREUPON, a recess was taken.)

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 243

1           THE VIDEOGRAPHER:  Back on the record.  The

2       time, 5:35.

3           MR. GALANEK:  George, if you don't mind

4       pulling up Exhibit 36, please.

5           Mark, this is Plaintiff's 665 is the

6       beginning number.

7           MR. MARX:  Thank you.

8           (Defendant's Exhibit 36, U.S. Securities

9       and Exchange Commission TCR Summary, Bates

10      labeled PLAINTIFF 000665 - 671, marked for

11      identification.)

12      Q.   (By Mr. Galanek) Mr. Slawin, my question on

13  this is going to be fairly simple.  This purports to

14  be a redacted copy of a complaint that you filed with

15  the Securities & Exchange Commission.  And I just

16  want you to confirm that this is, in fact, what you

17  filed with the Securities & Exchange Commission and

18  that you filed it following the termination of your

19  employment.

20          THE WITNESS:  George, can you go down,

21      please?

22      A.   Yes, that's correct.

23      Q.   (By Mr. Galanek) And the submission date

24  has been blacked out here.  Do you know why that

25  submission date's been blacked out?

Eric Slawin                            July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 244

1          A.    I do not.

2          Q.    And you submitted this following the

3    termination of your employment; is that correct?

4          A.    That's correct.

5                MR. GALANEK:  George, could you please pull

6          up Exhibit 37 for me.

7                MR. MARX:  Okay.  What number is that?

8                MR. GALANEK:  Sorry.  Plaintiff's 672.

9                (Defendant's Exhibit 37, E-mail string

10         Bates labeled PLAINTIFF 000672 - 673, marked for

11         identification.)

12               MR. MARX:  Thank you.

13         Q.    (By Mr. Galanek) Mr. Slawin, we have marked

14   this as Exhibit Number 37.  Is this an e-mail that

15   you received back from the CFPB regarding your

16   submission of a complaint?

17         A.    Yes.

18         Q.    And you submitted your complaint to the

19   CFPB following the termination of your employment; is

20   that right?

21         A.    I submitted it late that day when I --

22   which is the day I found out I was terminated.

23         Q.    Right.  So after you found out you were

24   terminated you submitted this, correct?

25         A.    Correct.

Eric Slawin                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 245

1      Q.    And you received an acknowledgment that
2    your complaint has been submitted, which is the
3    second page of this two-page exhibit, on or about
4    January 1 of 2018; is that correct?
5      A.    Yes.
6            MR. GALANEK:  George, if you don't mind,
7         could you pull up Exhibit Number 34 again.  It's
8         one we have already looked at.
9            This is the exhibit -- or it's Exhibit 34,
10        Mr. Marx.  It's Plaintiff's 612.
11     Q.    (By Mr. Galanek) Mr. Slawin, we looked at
12   this document earlier.  It's the first page from a
13   BAMS Merchant Processing Agreement.  You earlier
14   testified that you pulled this document out while
15   employed with BAMS and you pulled it up from a
16   publicly available website.
17           What website did you pull this document up
18   from?
19     A.    I don't recall.
20     Q.    How did you find the website?
21     A.    A Google search.
22     Q.    And what did you Google search to find this
23   document?
24     A.    I don't recall exactly what I typed.
25     Q.    Did you do that on a BAMS computer?

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 246

1       A.    No.

2       Q.    Did it on a personal computer?

3       A.    Yes.

4       Q.    So you did it from home?

5       A.    Yes.

6       Q.    And where is that computer that you used to

7  pull up this document now?

8       A.    In the trash.

9       Q.    You indicated that you had a hard drive

10 crash.  When did that occur?

11      A.    It's happened quite a few times throughout

12 these last few years.

13      Q.    When you say the computer is in the trash,

14 do you still have physical possession of the computer

15 and it is merely not working, or you no longer have

16 physical possession of the computer?

17      A.    I no longer have physical possession of the

18 computer.

19      Q.    And when did you surrender physical

20 possession of that computer?

21      A.    I don't know the exact date.

22      Q.    Before or after this lawsuit was filed?

23      A.    I don't -- I don't remember the exact date.

24      Q.    Do you remember the year?

25      A.    It would still be a guess.

Page 247

1      Q.    What type of computer was it?

2      A.    It's a -- I built it myself.  It was a

3   motherboard and the various components and a hard

4   drive.  It's not a type.

5      Q.    At any point in time did you tell any of

6   the counselors or psychiatrists that you worked with

7   that you owed a significant amount of money to the

8   IRS?

9      A.    Yes.

10     Q.    How much money did you owe to the IRS in

11  2019?

12     A.    In 2019?  I don't know the exact amount.

13     Q.    More than a hundred thousand dollars?

14     A.    No.

15     Q.    More than $50,000?

16     A.    No.

17     Q.    More than $25,000?

18     A.    I believe it was around in the thirties.

19  It was an unexpected expense because I was with -- I

20  was using early withdrawals from my IRA to live on

21  and I didn't anticipate that.  So I was feeling

22  pressure.

23          MR. GALANEK:  George, if you would please

24     pull up Exhibit 49.

25          MR. MARX:  What number is it?

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 248

1              MR. GALANEK:  I'm sorry.  This is

2        Plaintiff's 739.  It's the first page of it.

3              MR. MARX:  PX739.  Thank you.

4              (Defendant's Exhibit 49, Whistleblower

5        Online Complaint, Bates labeled PLAINTIFF 000739

6        - 743, marked for identification.)

7        Q.    (By Mr. Galanek) Mr. Slawin, we pulled up

8    what is Exhibit Number 49.  Do you recognize this

9    document?

10             THE WITNESS:  George, can you go down

11        further, please?

12             Can you go down further, please, George?

13             Can you go down further, please?

14             Stop, George.

15             Can you go back up, please?

16             Can you go down to the next page?

17             Thank you.

18        Q.    (By Mr. Galanek) Do you recognize this

19    document, sir?

20        A.    That -- that page there reminds me that

21    this is, I believe, the OSHA complaint, my initial

22    submission.

23        Q.    This is an OSHA complaint that you

24    submitted following the termination of your

25    employment?

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 250 of 317
Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 249

1            THE WITNESS:  Can you go back up, George,

2       please?  I'm just looking for a date, George.

3            Can you go back up, please?

4            Stop, please.

5       A.   Yes.  It would have been subsequent to my

6  termination.

7       Q.   (By Mr. Galanek) Now, your complaint to

8  OSHA, your complaint to the CFPA and your complaint

9  to the SEC all took place following the termination

10 of your employment, on the 12th, within hours

11 following the termination of your employment; is that

12 correct?

13      A.   I remember the CFPB one was dated within

14 hours.  I don't see a time for this one.  I don't

15 remember.  And the SEC, I don't know if that was

16 within hours.

17      Q.   You certainly submitted all three of your

18 complaints within no more than a day or so after the

19 termination of your employment; is that correct?

20      A.   I don't know that for sure.

21      Q.   Within a week of the termination of your

22 employment?

23      A.   Yes, I would say within a month.  I

24 don't -- I just don't know the exact date for all of

25 them.

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 250

1       Q.    Certainly, the OSHA complaint that you

2    filed that we're looking at, you purport to have

3    filed it on the 12th, following the termination of

4    your employment; is that right?

5       A.    Where do you see that date?

6       Q.    On the very first page.

7       A.    Oh, okay.  I see that there.  Yes.  Uh-huh.

8       Q.    So certainly within 24 hours of your

9    employment being terminated, you had figured out how

10   to file a complaint with OSHA expressing concerns

11   about BAMS' conduct, correct?

12      A.    I'm sorry.  Can you repeat the question?

13      Q.    Sure.

14            Within 24 hours of the termination of your

15   employment, you had figured out how to make a

16   complaint to OSHA with respect to what you believed

17   to be inappropriate conduct by BAMS, correct?

18      A.    Yes.  Based on this date, that's correct.

19      Q.    All right.

20            MR. GALANEK:  Let's take a look, George, at

21      Exhibit 51.

22            This is actually out of the BAMS

23      production.  This is BAMS 111, Mr. Marx.

24            MR. MARX:  Thank you.

25            (Defendant's Exhibit 51, E-mail chain Bates

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 251

1      labeled BAMS 00000111 - 112, marked for

2      identification.)

3          Q.    (By Mr. Galanek)  Okay.  Mr. Slawin, what

4   I'm interested in talking to you about is the first

5   e-mail on this page from Ms. Collins to a number of

6   individuals and copying you.  The e-mail is dated

7   June 13th of 2017.  This is the e-mail whereby your

8   manager at the time is assigning to you to get the

9   SAIA documented, correct?

10         A.    Yes.

11         Q.    I'm sorry?

12         A.    Yes.

13             MR. GALANEK:  Thank you.  That's all we

14      need for that, George.

15             George, if you pull up Exhibit Number 52,

16      please.

17             (Defendant's Exhibit 52, E-mail chain Bates

18      labeled BAMS 00000129 - 131, marked for

19      identification.)

20             MR. MARX:  What number is that?

21             MR. GALANEK:  I'm sorry, Mr. Marx.  It's

22      BAMS -- it starts BAMS 129.  The question that I

23      have is merely I want Mr. Slawin to let me know

24      if he wrote the e-mail that is at the top of

25      BAMS 130.

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 253 of 317
Eric Slawin                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 252

1              THE WITNESS:  Okay.

2              MR. MARX:  Okay.  129.  I'm sorry, so just

3       to be precise, Defendant's -- we're at 52 is

4       Defendant's document production with Bates

5       numbers 129 through what number?

6              MR. GALANEK:  It's 129 through 131.  And

7       the question that I have of the witness is --

8              MR. MARX:  Yes, I know.  I just wanted to

9       make sure I have the whole document.  I get it.

10             MR. GALANEK:  Yes, of course.  Of course.

11             If you go down, George, to -- on Page 130,

12      it's the top e-mail from Mr. Slawin to Brian

13      Rubin of May 11, 2017 at 9:11.

14      Q.     (By Mr. Galanek) Mr. Slawin, do you see the

15  e-mail of May 11, 2017 at 9:11?

16      A.     May 11 -- you said May 11, 2017 at 9:11?

17      Q.     Yes.

18      A.     Yes.  Uh-huh.

19      Q.     Is that an e-mail that you wrote?

20      A.     Yes.

21      Q.     At this point in time was Mr. Rubin your

22  manager?

23      A.     Yes.

24             MR. GALANEK:  I don't have anything further

25      on that one, George.

Eric Slawin                               July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 253

 1          If you would pull up, George, Exhibit
 2      Number 53 for me.
 3          Mr. Marx, this is from the BAMS production.
 4      It's 157 through 158.
 5          MR. MARX:  Thank you.
 6          (Defendant's Exhibit 53, E-mail string
 7      Bates labeled BAMS 00000157 - 158, marked for
 8      identification.)
 9      Q.   (By Mr. Galanek) Mr. Slawin, I want to ask
10  you if you received the e-mail from Ms. Collins that
11  appears at the middle -- begins at the middle of
12  Page 157.
13          THE WITNESS:  George, can you pan up just a
14      little bit, please?
15      A.   Yes.
16      Q.   (By Mr. Galanek) You did receive this from
17  Ms. Collins; is that correct?
18      A.   That's what that date indicates, yes.
19      Q.   And then you turned around and e-mailed it
20  to your personal e-mail account; is that correct?
21          THE WITNESS:  George, can you go up?
22      A.   Yes.
23      Q.   (By Mr. Galanek) There's no reference to
24  PCI compliance anywhere within the e-mail that
25  Ms. Collins sent you, is there?

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 254

1      A.    I would have to look through it, please.

2            THE WITNESS:  Okay.  Can you go down

3      further, please, George?

4            Can you go down further, please, George?

5            Can you go down further, please, George?

6      A.    I do not see the acronym PCI.

7            MR. GALANEK:  All right, George.  If you

8      don't mind, we are done with that.

9            Please pull up Exhibit Number 57 for me.

10           It's BAMS 464 --

11           MR. MARX:  464?

12           MR. GALANEK:  -- through 468.

13           MR. MARX:  Through 468.  Okay.  Thanks.

14           (Defendant's Exhibit 57, E-mail string

15     Bates labeled BAMS 00000464 - 468, marked for

16     identification.)

17     Q.    (By Mr. Galanek) Mr. Slawin, we have seen

18 this e-mail string before with the exception of the

19 e-mail at the beginning of the first page on BAMS

20 464, which is an e-mail from yourself to Mr. Kendall.

21           Did you write that e-mail on or about

22 June 7th, 2017?

23     A.    Yes, that appears to be the case.  I sent

24 this e-mail.

25     Q.    What was the purpose of this e-mail?

Eric Slawin                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 255

1          A.    I don't recall specifically.

2          Q.    What did you mean by this e-mail when you

3     say "I have been checked again...not checkmate but I

4     am running out of pieces on the board.  B obviously

5     sent her my e-mails to Dean"?

6          A.    I'm trying to recall the situation.

7                THE WITNESS:  Can you go down further?

8          A.    I was reflecting on that Natasha had seen

9     my e-mails to Dean.  And I guess I was reflecting

10    on -- what's that?

11         Q.    (By Mr. Galanek) Dean who?

12         A.    I don't remember his last name.

13         Q.    And in your e-mails to Dean, had you been

14    critical of Dean, critical of the company?  What were

15    your e-mails to Dean about?

16         A.    No, I was -- as somebody who reported to

17    Dean, I -- trying to remember the details.  I was --

18    I was just frustrated, I believe, with that person,

19    if I recall correctly.  And so that was it.  That's

20    the best I can remember from this e-mail string.

21               MR. GALANEK:  All right.  Let's take a

22          break.

23               Mike, how much time do we have in?

24               THE VIDEOGRAPHER:  We have 12 minutes left.

25               Off the record, 5:58.

Page 256

1          (WHEREUPON, a recess was taken.)

2          THE VIDEOGRAPHER:  Back on the record.  The

3     time, 6:02.

4          MR. GALANEK:  Today I have no further

5     questions for the witness.

6          Thank you, Mr. Slawin.  I appreciate your

7     time.

8          MR. MARX:  I have no questions.

9          THE VIDEOGRAPHER:  Okay.  Off the record.

10    The time is 6:02.

11          (WHEREUPON, the proceedings were concluded

12    at 6:02 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 257

C E R T I F I C A T E

1

2    STATE OF GEORGIA    )

3                        ) ss.:

4    FULTON COUNTY       )

5

6        I,  Robin Ferrill, Certified Court Reporter within

7    the State of Georgia, do hereby certify:

8            That ERIC SLAWIN, the witness whose deposition

9    is hereinbefore set forth, was duly sworn by me and that

10   such deposition is a true record of the testimony given by

11   such witness.

12           I further certify that I am not related to any

13   of the parties to this action by blood or marriage; and

14   that I am in no way interested in the outcome of this

15   matter.

16           IN WITNESS WHEREOF, I have hereunto set my

17   hand this 4th day of August, 2022.

18   _____

19   _____

20           ROBIN K. FERRILL, RPR

21

22

23

24

25

Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 258

1    To: MR. MARX
     Re: Signature of Deponent Eric Slawin
2    Date Errata due back at our offices: 30 days
3    Greetings:
     This deposition has been requested for read and sign by
4    the deponent.  It is the deponent's responsibility to
     review the transcript, noting any changes or corrections
5    on the attached PDF Errata.  The deponent may fill out the
     Errata electronically or print and fill out manually.
6
     Once the Errata is signed by the deponent and notarized,
7    please mail it to the offices of Veritext (below).
8    When the signed Errata is returned to us, we will seal and
     forward to the taking attorney to file with the original
9    transcript.  We will also send copies of the Errata to all
     ordering parties.
10
     If the signed Errata is not returned within the time
11   above, the original transcript may be filed with the
     court without the signature of the deponent.
12
13   Please send completed Errata to:
14   VeritextProduction Facility
15   20 Mansell Court
16   Suite 300
17   Roswell, GA 30076
18   (770) 343-9696
19
20
21
22
23
24
25

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 259

1    ERRATA for ASSIGNMENT # 5273551

2    I, the undersigned, do hereby certify that I have read the

3    transcript of my testimony, and that

4    ___ There are no changes noted.

5    ___ The following changes are noted:

6

     Pursuant to Rule 30(7)(e) of the Federal Rules of Civil

7    Procedure and/or OCGA 9-11-30(e), any changes in form or

     substance which you desire to make to your testimony shall

8    be entered upon the deposition with a

     statement of the reasons given for making them.  To assist

9    you in making any such corrections, please use

     the form below.  If additional pages are necessary, please

10   furnish same and attach.

11   Page _____ Line _____ Change _____

12   _____

13   Reason for change _____

14   Page _____ Line _____ Change _____

15   _____

16   Page _____ Line _____ Change _____

17   _____

18   Reason for change _____

19   Page _____ Line _____ Change _____

20   _____

21   Page _____ Line _____ Change _____

22   _____

23   Reason for change _____

24   Page _____ Line _____ Change _____

25   _____

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

Page 260

1   Page _____ Line _____ Change _____

2   _____

3   Reason for change _____

4   Page _____ Line _____ Change _____

5   _____

6   Page _____ Line _____ Change _____

7   _____

8   Reason for change _____

9   Page _____ Line _____ Change _____

10  _____

11  Page _____ Line _____ Change _____

12  _____

13  Page _____ Line _____ Change _____

14  _____

15  Reason for change _____

16  Page _____ Line _____ Change _____

17  _____

18

19

                    _____

20                        ERIC SLAWIN

21  Sworn to and subscribed before me this ___ day of

22  _____, _____.

23  _____

    NOTARY PUBLIC

24

25  My Commission Expires:_____

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[& - 158]**                                                    Page 1

**&**

**&**    2:3 4:11 8:18
   70:19 156:8
   212:10 243:15
   243:17

**0**

**000**    37:17
**000001**    4:13
   212:12
**00000111**    7:11
   251:1
**00000129**    7:13
   251:18
**00000157**    7:15
   253:7
**00000464**    7:17
   254:15
**00001368**    7:21
   154:3
**000016**    4:17
   213:25
**000020**    4:19
   225:24
**000025**    4:21
   228:8
**000037**    4:23
   233:25
**000047**    5:5 237:4
**000056**    5:7
   238:18
**000074**    5:11
   239:9
**000076**    5:13
   240:25
**000141**    3:15
   128:12

**000150**    3:18
   147:7
**000155**    3:22
   148:16
**000157**    4:7 171:2
**000589**    5:16
   108:13
**000596**    5:20
   112:21
**000602**    6:7
   115:11
**000612**    6:11
   173:21
**000665**    6:14
   243:10
**000672**    6:16
   244:10
**000711**    6:19
   209:20
**000713**    7:6
   207:15
**000739**    7:8 248:5
**04129**    1:6

**1**

**1**    103:3 173:13
   212:5,14 245:4
**10**    4:18 49:18
   225:18,23 226:2
   226:12
**10,000**    31:23
   36:23 104:7
**10/7/2013**    4:6
   171:2
**1050**    2:3
**108**    5:14
**1099**    42:14 56:25
   110:25

**10:41**    50:4
**10:52**    50:7
**11**    4:20 228:2,4,7
   252:13,15,16,16
**11/5/2015**    3:17
   147:6
**111**    250:23
**112**    5:17 7:11
   251:1
**115**    6:4
**115,000**    34:13
**11:46**    81:16
**11:58**    81:19
**11th**    213:17
**12**    209:22 255:24
**12/12/2017**    6:18
   209:19
**12/8/2017**    4:9,15
   7:5 207:14
   212:9 213:24
**120**    98:11
**1201**    2:9
**125,000**    31:6
   39:17
**128**    3:13
**129**    251:22 252:2
   252:5,6
**12:02**    84:9
**12:03**    84:12
**12:04**    85:10
**12:15**    85:13
**12:52**    108:4
**12:57**    108:7
**12th**    210:14,21
   211:1,7,9,24
   213:15,16
   249:10 250:3

**13**    4:22 26:5
   233:20,24
   237:19
**130**    251:25
   252:11
**131**    7:13 251:18
   252:6
**132,749**    110:6
**1360**    153:20
**13637**    257:18
**1368**    153:21
**1369**    153:21
**1370**    7:21 154:4
**13th**    238:6 251:7
**14**    54:8 100:10
   100:24
**141**    131:25
**147**    3:16
**148**    3:20
**149**    3:15 128:12
   131:25 132:12
   132:13,19
**14th**    2:9
**15**    79:4 93:16
**150**    92:16 146:20
   147:3
**152**    3:19 146:20
   147:3,7
**154**    7:18
**155**    148:12
**156**    3:22 148:13
   148:16
**157**    170:23 171:5
   253:4,12
**158**    4:7 7:15
   170:23 171:2,5
   253:4,7

Eric Slawin
July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[16 - 240]

Page 2

**16**   5:4 58:10,23
103:17 213:22
236:21,23,25
237:1,3
**17**   4:17 5:6 20:1
58:23 150:6,7
213:22,25
238:15,17
**170**   4:4
**173**   6:8
**17th**   15:2
**18**   38:9 58:23
**19**   1:13 3:4 8:3
38:9
**1936**   1:16
**1991**   23:5
**19th**   8:6
**1:19**   1:6
**1:30**   128:22
**1:32**   129:3,5

**2**

**2**   4:13 31:25
32:3 42:14
110:25 212:6,12
212:14
**20**   5:8 225:21
238:21 239:5,6,7
258:15
**200,000**   61:3
90:9
**2000**   54:7,7
103:12
**2000s**   28:12
**2001**   105:4
**2002**   65:18
**2010**   27:16

**2012**   26:5
**2014**   79:4
**2015**   21:12,21
22:15,20,23
77:23 78:1,15,21
79:22 86:7 94:7
102:5 107:1,8
149:18,21
**2016**   57:3,5,9,12
58:9,12 59:8,13
59:15 60:4 62:6
63:3 94:9
101:19,20,23
103:12 104:13
104:24
**2017**   51:17,25
57:15,17,18
58:15,20 59:17
59:19 60:9,14,16
61:7,13,16 62:4
62:16 63:1
88:23 94:11
102:22 103:5,15
103:23 104:1,1,5
104:7,15,19
105:5 120:24
125:22 131:1
139:3 140:3,11
140:18 141:8
149:17,19,20,22
150:11,22,23
151:20 152:17
153:8 154:16
155:17 158:1
161:23,24 162:5
163:2,5 183:18
188:17 191:10
192:1,3,7 193:6

194:6,21 197:7
197:14 205:4,8
205:12,15,20
206:3 208:4
210:14 212:24
219:21 224:13
226:18 227:9
230:4,6,13,16
235:11 237:19
238:21 239:22
241:4,8,20 251:7
252:13,15,16
254:22
**2018**   5:15,18
21:19 35:20
38:6,6,8,13,17
49:5,6 51:9,25
52:11 56:22
57:25 58:2 59:8
59:24 60:22,25
61:2 65:24 66:2
67:5,16,20,23
68:2,6,7,8,16,21
69:8,13,16 70:8
71:18 74:15,17
88:23 89:24
90:8 93:11,13,23
94:13,20 95:1,6
95:9,16,21,24
96:5,9,19 97:3
97:16,23 98:4,9
105:24 108:12
108:23,25 110:5
110:9,10,15,18
111:1,8,12,15
112:20 117:14
117:15 119:23
120:20,25

121:22 126:19
240:10 245:4
**2019**   6:5 21:5
30:25 33:20,24
33:24 38:7,8,14
38:17,18 41:22
41:23 45:2,5,13
45:14,14 46:19
46:23,24 87:14
94:15 95:16
96:11,12,15
98:12,17,21
115:10 117:4,14
117:15,16,17
247:11,12
**2020**   38:18,19
41:23 94:17
**2021**   31:18
**2022**   1:13 3:4
8:3,6 257:17
**207**   7:4
**209**   6:17
**21**   5:12 31:19
101:10,11,12
240:18,22,24
**212**   4:8
**213**   4:14
**225**   4:18
**228**   4:20
**233**   4:22
**237**   5:4
**238**   5:6
**239**   5:8
**24**   4:19 25:23
26:12 225:24
250:8,14
**240**   5:12

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[243 - 8th]**                                                    Page 3

| | | | |
|---|---|---|---|
| **243** 6:12 | **34** 6:8 173:12,19 | **5** | **609** 6:7 115:8,11 |
| **244** 6:15 | 245:7,9 | **5** 3:16 146:17,19 | **612** 173:15,17,18 |
| **248** 7:7 | **343-9696** 258:18 | 147:3,5 | 245:10 |
| **25** 93:20 98:2,22 | **3561** 11:10 | **5,000** 104:4 | **63** 25:24 26:16 |
| 228:5,6 229:5 | **36** 6:12 243:4,8 | **50** 5:5 236:18,22 | 26:17 |
| 242:20 | **37** 6:15 233:22 | 237:4 | **64** 7:18 153:18 |
| **25,000** 247:17 | 234:11,11,25 | **50,000** 247:15 | 154:1 |
| **250** 7:10 89:22 | 244:6,9,14 | **500** 2:3 5:14 | **665** 243:5 |
| **250,000** 122:1 | **38** 233:22 | 108:11,22 | **671** 6:14 243:10 |
| **251** 7:12 | **39** 4:23 233:25 | **51** 7:10 250:21 | **672** 244:8 |
| **253** 7:14 | **3:12** 170:17 | 250:25 | **673** 6:16 244:10 |
| **254** 7:16 | **3:15** 170:20 | **52** 7:12 251:15 | **6:02** 256:3,10,12 |
| **26th** 226:18 | **4** | 251:17 252:3 | **6th** 241:4,8,20 |
| **275** 89:22 | **4** 3:13 128:9,10 | **5273551** 259:1 | **7** |
| **27th** 229:7,25 | 131:23 | **53** 7:14 25:25 | **7** 4:4 25:23 26:3 |
| 230:4,6 | **401** 32:24 33:4 | 253:2,6 | 170:22,25 171:9 |
| **296-5671** 76:6 | 33:12,13 40:21 | **56** 238:16 | 171:10 259:6 |
| **2:12** 129:5,7 | 41:14 | **57** 5:7 7:16 | **711** 209:16,22 |
| **2:30** 235:10 | **404.261.9559** 2:4 | 238:16,18 254:9 | **712** 6:19 209:17 |
| **2nd** 158:1 | **404.572.6600** | 254:14 | 209:20 |
| 239:22 | 2:10 | **589** 107:23 | **713** 207:18 |
| **3** | **42** 6:17 209:16 | **592** 5:16 107:23 | **739** 248:2 |
| **3** 110:6 132:8,11 | 209:18 | 108:13 | **74** 239:6 |
| **30** 5:14 107:12 | **43** 7:4 207:12,13 | **596** 112:24 | **743** 7:9 248:6 |
| 107:21 108:9,11 | **464** 254:10,11,20 | **5:18** 238:6 | **75** 5:11 239:6,10 |
| 258:2 259:6 | **468** 7:17 254:12 | **5:28** 242:24 | **76** 240:19 241:19 |
| **300** 258:16 | 254:13,15 | **5:35** 243:2 | **770** 76:6 258:18 |
| **300,000** 32:21 | **47** 236:18,22 | **5:58** 255:25 | **7th** 254:22 |
| **30022** 11:11 | **49** 7:7 247:24 | **6** | **8** |
| **30076** 258:17 | 248:4,8 | **6** 3:20 148:12,14 | **8** 4:8 212:2,5,8 |
| **30309-3471** 2:9 | **4:17** 209:11 | **6/2/2017** 5:9 | 212:19 |
| **30338-7702** 2:4 | **4:19** 212:23 | 239:8 | **80** 5:13 240:25 |
| **31** 4:21 228:5,6,8 | **4:25** 209:14 | **60** 237:2 | 241:19 |
| **32** 5:17 112:18 | **4th** 257:17 | **600** 5:20 112:21 | **8th** 208:4,6 |
| 112:19,23 | | 112:24 | 212:23 215:18 |
| **33** 6:4 115:6,9 | | **602** 115:8 | 235:11 |

Eric Slawin
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

July 19, 2022

**[9 - aggressive]**

Page 4

| 9 | | | |
| --- | --- | --- | --- |

**9**  3:6 4:14
  213:21,23
**9-11-30**  259:7
**9/25/17**  7:20
  154:3
**90,000**  36:10
**9:11**  252:13,15
  252:16
**9:31**  1:14 8:7
**9o**  37:17

| a |
| --- |

**a.m.**  1:14 8:7
**aa**  99:17
**aaron**  229:7
  231:25 232:18
**ability**  196:19
  197:15
**able**  107:18
**absolute**  44:16
  69:9 182:3,11
**absolutely**  66:14
  108:1,2 169:4
  180:16 194:7
  203:14
**abuse**  98:24
  99:12,16
**abusive**  43:13,16
  43:20
**access**  72:22
  180:25
**accessing**  11:17
**accomplish**
  111:14
**accomplished**
  155:6

**account**  57:4,8,9
  57:12 58:3,9,12
  58:15,19,22 59:8
  67:7,9,10,13
  70:24 71:8,8,10
  71:13,15,16,21
  72:14,16 75:1,5
  75:7,9,11,19,22
  76:16,17,19
  111:8 112:11,13
  137:7,22 159:24
  160:15 163:4,11
  163:19 164:17
  164:25 166:10
  167:1,10,14,18
  168:1 169:1,9
  170:9 177:12,16
  180:9,11 181:19
  202:14 203:13
  203:20 207:8
  208:10 209:6
  236:1,2,9,11
  241:8,12,15
  253:20
**account's**  112:9
**accounts**  57:11
  57:16 58:1 60:2
  60:6,18 63:7
  70:20,21,22,23
  71:1,5,25 72:8
  72:23 75:4,15,22
  76:12 241:20
**accuracy**  159:1
**accurate**  100:10
  118:13 155:16
  165:4
**acknowledged**
  157:24

**acknowledgm...**
  245:1
**acronym**  254:6
**act**  28:1 162:20
  162:25 186:10
  186:14,23 187:7
  223:23 224:5,6,6
**action**  1:5 4:5,10
  19:1,6 158:7
  171:1,23 212:10
  257:13
**active**  58:4,5
  71:3
**activities**  60:5
  63:16 151:3
  189:6
**activity**  139:14
  139:16,21
  198:25 205:25
  207:4 216:23
  217:17,17 231:2
**add**  138:20
  180:1
**addiction**  118:4
  118:13
**additional**  24:3
  24:4 259:9
**address**  10:11,13
  10:15 11:9 39:3
  39:7 66:15,17,19
  67:1,2 68:14
  89:3,16 92:7
  119:9 164:4
  165:25 177:22
  199:25
**addresses**  66:22
  66:23

**addressing**
  181:18
**ades**  182:9,16
  224:11 237:18
**administrative**
  17:19,24,25 18:5
  45:9,12,19 50:9
  50:14 130:16
  131:4
**adopted**  179:8
**adult**  20:1,19,20
**advances**  43:23
**advice**  229:14,15
**advised**  157:5
**aetna**  40:13,14
**affect**  182:19
  183:14 218:16
  218:16,23 220:8
**affidavit**  4:10
  185:11 203:3
  212:10 213:4,5,6
  213:11 214:16
**affirmative**
  166:4 168:14
**affirmatively**
  233:2,10
**affirming**  214:21
  214:25
**afraid**  221:12
  222:6
**age**  99:22 100:3
  100:6,10,24
  101:11,12
**agency**  17:24,25
  18:5 175:12,16
**aggressive**  159:4
  159:19

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[ago - appropriately]                                          Page 5

| | | | |
|---|---|---|---|
| **ago** 16:23 17:1,4 17:4 20:6 24:21 146:10 192:5 | **alerted** 158:4 | **anguish** 119:20 122:5,7,10,14 123:4,6,11,14,20 124:9,13 126:18 127:8,12 138:12 138:18 144:1 | **anyone's** 164:16 |
| | **ali** 181:3 195:5 | | **anyway** 232:4 |
| | **allegation** 18:15 234:14 | | **apologize** 17:3 20:2 38:16,19 41:1 56:11 86:3 91:12 107:3 133:16 213:18 226:9 228:4 236:7 |
| **agree** 143:1 155:9 163:10,13 163:16,17 220:24 | **allegations** 18:23 66:12 | |
| | **alleged** 123:15 223:20,20 | **annualized** 37:18,20 39:20 | |
| **agreed** 194:13 199:22 220:18 220:19,23 | **allopurinol** 16:9 16:20 | **anonymous** 128:3 162:13 176:14 | **appear** 19:16 |
| | | | **appearances** 2:1 |
| **agreeing** 148:3 | **allow** 156:18 | **answer** 11:7 13:17 47:13,15 47:18 48:12,19 64:3 65:14 73:15 83:4 97:19 98:15 99:13 110:17 118:7 125:1 136:12 138:4 140:5,21 141:4 141:12,25 142:8 142:18 161:16 164:10 165:17 166:2,3,13 167:5 168:13,18,19 169:18 184:11 211:2,10 223:24 224:2 234:19 | **appearing** 81:21 |
| **agreement** 3:21 6:9 129:13 148:15 164:7 173:14,14,16,20 174:5 201:23 220:17,23 245:13 | **allows** 128:3 | | **appears** 36:24 42:3 147:23 149:6 174:6 226:19 234:16 234:24 239:12 239:16,19 253:11 254:23 |
| | **alluding** 155:23 | |
| | **alpha** 133:4 | |
| | **alpharetta** 11:10 20:14 22:1 37:25 49:15 79:10 104:10,19 104:25 | |
| | | | **apple** 74:23,24 75:8 |
| | **america** 1:6,7 3:13 6:8 7:18 8:9,17 17:9 63:18,22 64:1,6 102:9,11,16,16 102:19 128:10 154:1 173:19 176:24 177:4 183:25 220:4 | | **application** 67:12 68:25 |
| **agreements** 170:10 179:21 192:19,21 | | **answered** 50:20 183:17 | **applied** 48:5 144:4 |
| **ahead** 11:7 33:8 144:25 217:18 217:19 | | | **apply** 68:16 69:7 |
| | | **anticipate** 247:21 | **applying** 39:12 68:12 |
| **aiten** 2:8 8:20 | | **anxiety** 88:6,6 106:17,20 | **appreciate** 256:6 |
| **aiten.mcpherson** 2:11 | | | **apprehension** 29:3 |
| **al** 8:9 | **amount** 26:13,18 32:22 35:2,6 36:21 40:2,4 87:13 96:14 103:16 121:24 122:6,8 138:13 141:9 247:7,12 | **anybody** 186:20 194:14 204:23 204:24 221:2 | **approached** 165:1,5 |
| **alcohol** 98:8,17 98:24 99:12,16 99:21 101:15 102:23 130:18 131:1 | | | **appropriate** 82:17 216:14 |
| | | | **appropriately** 10:21 |
| **alcoholism** 92:18 | | | |
| **alert** 162:8 175:12,17 183:20,21,22,25 184:3 | **amy** 77:8 | | |
| | **android** 74:19 74:23,25 | | |

Eric Slawin
July 19, 2022

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[approval - aware]

Page 6

**approval** 136:13
**approximately**
12:19 17:3 21:4
22:9 24:2 25:8
27:15 30:8,21
31:6 32:21
34:13 36:10,23
37:19 38:18
39:17 46:25
47:2 51:10,24
54:8 61:3,24
69:17 75:20
89:8 121:14
122:1 146:15
150:22
**april** 30:25
33:20,24 38:13
38:18 41:22,23
45:2 68:7,8,16
68:20 69:8,13
87:14 125:22
150:22
**area** 25:1 89:12
**arrest** 19:16
64:18
**arrested** 19:21
19:23 20:3,6
64:20
**articulate**
138:13
**ascio** 158:17
**aside** 77:21
115:5 163:8
**asked** 50:20
55:16,21 91:12
111:16 119:15
136:4 138:14,16
142:5,12 168:1,1

168:11 192:19
192:23,23
198:23 200:9
214:21 215:24
216:12 218:3
220:7 221:3
224:25 234:20
**asking** 55:11
67:19 69:24
96:25 97:1
99:11 109:2
120:1 122:21
137:10 139:18
148:21 168:22
168:23 201:22
202:20 217:3,4
217:23 223:11
225:8
**aspects** 55:12,15
**asserted** 17:18
18:11,15
**asserting** 17:23
**assess** 167:7
**assessment**
155:9
**assessments**
155:18 156:9
**assigned** 195:13
196:15
**assigning** 251:8
**assignment**
259:1
**assist** 87:1 259:8
**assistance** 87:4,9
99:9 105:14
**associate** 2:14
81:22

**associated** 61:4
91:23 92:1
**associates**
134:16
**assume** 112:5
114:20 117:10
**assumed** 156:9
**assuming** 53:24
55:10 56:24
62:8,21 148:7
171:20 221:4
**assumption**
200:14 230:2
232:11,13
**atlanta** 1:2 2:4,9
89:5,6 153:3
**attach** 239:14
259:10
**attached** 7:23
110:11,24 213:4
258:5
**attachment** 4:16
213:25 214:5
**attachments**
111:4 114:18
117:9
**attempt** 68:15
131:4,6,10
162:13
**attempted** 127:3
130:7
**attempts** 68:6
**attend** 9:22
23:12 24:11
82:23 83:22
85:22
**attendance**
85:15

**attended** 23:10
99:17
**attending** 81:22
82:1
**attention** 131:13
**attest** 96:22
**attorney** 12:6,7
12:22 15:8
169:17 172:4,24
173:1,6 174:8
229:11 258:8
**attorney's**
128:18
**attorneys** 11:25
**audit** 178:18
181:12 195:7,9
195:15,20,25
196:6 237:18,22
**auditor** 179:24
195:11
**august** 35:20
38:13,18 41:23
46:23,23 47:1
153:1 191:16
192:7 205:11
257:17
**authority** 35:6
**authorize** 19:5
**authors** 170:2
185:10
**auto** 29:24
**available** 39:23
53:6,10,15,20
128:5 174:12
245:16
**aware** 63:21
69:4 83:6
134:22,23

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[aware - based]                                        Page 7

143:13 160:25
165:2 167:25
180:18 222:24
224:8 230:10,11
230:15 237:17
**awareness** 63:25
222:10

**b**

**b** 1:16 255:4
**bachelor's** 23:1
23:7
**back** 20:1 45:18
47:22,23 50:6
75:23 81:15,18
84:11 85:12
86:23 90:14
108:6 113:10,19
115:22 116:9,10
116:13 119:20
119:21 120:2,3
121:25 122:4
123:13 124:5,6
129:6 132:14
134:9 136:5
137:14,15
138:11 156:4
164:15 170:19
171:21 174:2
204:2 206:2
209:13 222:18
229:4 234:10
240:4 243:1
244:15 248:15
249:1,3 256:2
258:2
**backed** 75:1

**background**
22:25 161:5
**backing** 76:2
**backtrack** 68:11
**backwards**
105:23
**bad** 126:24
171:7
**balance** 105:5
112:14
**bams** 2:16 7:10
7:12,14,16,20
9:11,16,25 17:10
17:15 18:5
47:10 48:2,7
51:12,12,16
53:14 54:3,8,11
56:12 62:10,14
62:18 63:9,10
65:21 69:19,24
71:20 72:3,10
73:3,9,13,18
81:24 82:3,4,8
82:16,22 83:24
120:4,7,11
122:16,25
123:19 124:8,20
124:24 125:3,6
126:22 127:11
127:19,20,25
133:10 134:6,9
134:20,24 135:3
135:7,13,16,21
136:8 137:7,22
141:22 142:19
143:13 144:3,5
145:9 146:6
148:1,2 149:8

152:14 153:18
154:3 157:15,19
159:23 161:1
162:1,6,10,19,24
163:3,12,21,25
164:5,17,24
166:9,24 167:12
167:17 168:24
168:24 169:1
170:8,10 171:19
171:24 172:7,13
172:19 173:14
174:1,4,20,22
175:17,20 176:1
176:10,19,20,23
177:5,8,12 178:1
178:2,6,8,10,13
179:17,23
180:25 181:20
182:1 183:2,6,23
185:8 186:2,9,14
186:17,20,22,25
187:2,5,9,11,16
187:17 188:24
189:7 191:13,22
192:4,6,25 193:4
197:19,20
198:13,15,19,24
199:3,6,15 200:6
203:12,19,21
206:3 208:9
209:1,5 214:23
215:24,25 216:2
216:8,20,23
217:6,13,25
218:13 219:2,5
221:8 223:19
224:8,14,16,18

225:1 229:11
230:2,7,10,11,16
230:23 231:1,1,6
231:13,16,21
232:6,10,11
241:24 245:13
245:15,25
250:11,17,22,23
251:1,18,22,22
251:25 253:3,7
254:10,15,19
**banc** 1:6 8:9
**bank** 1:7 3:13
6:8 7:18 8:17
17:9 63:18,22
64:1,6 69:2,8
102:9,11,16,16
102:19 128:10
154:1 173:19
176:24 177:4
183:25 220:4
**bankruptcy**
64:16
**banks** 68:23
**barclays** 102:8
**barfield** 77:8,14
78:16
**base** 31:3,5 34:9
34:12 36:11,13
36:18 37:17
39:18 127:12
**based** 31:13
39:20 52:4
75:12,15 85:22
123:6,12,14
130:21 137:5,20
138:14 149:10
178:22 193:8

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 269 of 317

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[based - book]**                                                      Page 8

195:18 203:18
203:20 223:6,7
250:18
**basement** 10:8
240:11,15
**basically** 36:18
65:11 75:7
86:19 139:18
204:6 206:23
230:1
**basing** 122:14
126:18
**basis** 55:7 103:8
103:25 104:4
122:9,11 123:5
124:13 146:1,2
185:7 190:5
199:13,17
200:12 203:17
204:9,11 205:23
234:14
**bates** 3:14,18,21
4:6,13,16,18,20
4:22 5:4,6,10,12
5:15,19 6:6,10
6:13,15,18 7:5,8
7:10,12,14,16,20
108:12 112:21
112:24 115:11
128:11 131:25
132:19 146:20
147:7 148:15
154:3 171:2
173:21 207:14
209:20 212:12
213:25 225:24
228:7 233:25
237:4 238:16,18

239:9 240:25
243:9 244:10
248:5 250:25
251:17 252:4
253:7 254:15
**bathroom** 49:24
107:25 170:15
**bclplaw.com**
2:10,11
**bco** 156:8
**beam** 78:12
**becoming** 43:5,9
**began** 35:21
46:23 89:23
90:3 93:24
100:9,23 103:5
120:4 130:25
159:23 163:2
**beginning** 28:12
42:5 72:3,10
103:5 129:25
133:9,10,15
134:5 140:17
149:8 243:6
254:19
**begins** 173:15
229:8 253:11
**behalf** 2:2,7 19:6
119:16
**belief** 163:9
**believe** 33:7,10
33:17 39:5
40:14 41:17
44:13 57:10
58:3 70:6,19
78:23 79:18
87:7,7 88:22
89:14 91:3

102:8 108:17
110:16 111:3
119:6 121:13
126:15 127:7
130:24 132:8
138:16 145:21
153:2 154:20
158:17 162:18
168:1 172:25
177:19 178:14
179:20,23
181:23 185:15
188:4 190:13
191:3 195:24
196:18 203:1
207:3 208:15
215:22 216:8
222:23 224:13
226:21 231:6
232:10 240:13
247:18 248:21
255:18
**believed** 164:20
176:20 191:22
208:9 218:12
250:16
**believes** 208:19
**bell** 87:5,6,11,12
87:15,18 90:17
91:19 105:12
**benchmarks**
31:11
**benefit** 206:6,10
**benefits** 32:6,7
32:23 40:6,19
41:12 125:2
**best** 17:6 160:11
169:2 184:9

213:5 255:20
**better** 107:5
139:17
**beyond** 30:18
211:5 215:10
**big** 194:18
219:12 220:20
220:24
**biggest** 156:8
**birth** 10:16
**bit** 76:25 81:12
83:3 84:16,24
86:16 132:11
210:4 234:6
237:12 253:14
**biweekly** 151:9
189:5 219:16
**blacked** 114:22
114:24 243:24
243:25
**blamed** 160:8
**blank** 172:16
**blanked** 123:24
**blood** 16:16,22
257:13
**blow** 220:8
**blue** 40:13
**board** 19:3,7
183:10 255:4
**bob** 87:3 88:9
89:18
**boltacz** 56:1
**bonus** 31:9,10,11
31:11,15,18 40:1
**bonuses** 31:8
**book** 223:9,11
223:15

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[bottle - certify]                                           Page 9

**bottle** 103:10
130:25
**bottom** 134:1
147:19 158:10
171:14 173:24
218:23,24 219:6
226:14 229:8
234:25
**brandon** 20:12
**breach** 197:23
198:10
**breaches** 198:1
**break** 49:25
81:14,20 84:6,15
84:16,17 85:5
107:25 128:19
129:1 170:15
209:8 242:22
255:22
**breaking** 105:19
**brian** 3:16 126:4
147:6 150:20
151:7 204:14
216:9 219:17
220:5,9 252:12
**brian's** 151:10
**brief** 90:22
**broad** 18:8
139:16,19
**broadly** 160:3
217:16
**broke** 103:20
107:2 226:16
**broker** 28:14
152:21,22
**brokerage** 26:6
57:3,8,11,16,25
60:1

**brokers** 193:18
**brooks** 187:22
187:25 190:10
190:10,17,25
191:7,19 193:1
198:19,25 199:1
205:15 216:3
218:17
**brought** 45:18
**brown** 2:15 8:5
**bryan** 2:8
**built** 247:2
**bullet** 156:7
**bureau** 175:11
**business** 29:19
29:21 61:8,24
62:3,13,18 82:14
145:21 179:11
194:25 219:5

**c**

**c** 76:22 257:1,1
**calculation**
119:23 122:3
**call** 13:24 15:7,9
15:17 66:3
111:18 127:23
140:14 167:20
176:13 179:12
179:13 196:13
203:2
**called** 9:2 23:23
144:6
**camera** 84:7
**camping** 89:10
**cancer** 16:17,25
78:3,4,9,13,16

**cape** 11:10
**capital** 161:5,7
**caption** 8:8
**card** 102:10,13
103:11,14,19,24
179:6,7 223:22
**cards** 102:1,4,11
102:12,15,17,18
**care** 78:11 83:10
83:10 85:7
119:25
**career** 141:19
**carolina** 5:17 6:4
39:2,4 112:19
114:12,16 115:9
117:4
**carpenter** 44:13
44:14,18,23 45:1
86:20,23,24
87:13 88:1
90:18 91:13
105:11 131:8
**carry** 156:15
**carrying** 103:23
**case** 1:6 8:8
10:20 13:4
67:18 82:9 84:1
120:1 134:9,13
138:10 141:16
143:25 164:11
166:7 184:22
239:16,19
254:23
**catalyst** 126:23
**catch** 225:4
**category** 181:15
**caused** 123:19
124:9

**cave** 2:8
**cc** 24:24
**ccna** 24:21,23
25:2
**ccr** 1:16
**cease** 4:11
168:10 172:17
185:10 203:1,4,7
203:11 212:10
**cell** 73:5,19,20
74:1,8,9,16,18
74:20,21 76:5,7
**center** 78:13
134:16 155:20
156:10
**ceo** 224:25 225:5
**certain** 55:12
117:9 134:12
148:3 164:14
179:11 203:14
**certainly** 61:15
86:23 132:14
134:8 136:14
141:17 176:23
196:23 203:4
208:22 249:17
250:1,8
**certificate** 23:23
**certification**
23:16,17,18 24:1
24:14 25:4,7,10
28:16,19
**certifications**
24:19 25:9
26:24
**certified** 257:6
**certify** 179:17
257:7,12 259:2

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 271 of 317

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[cf - coming]                                                    Page 10

**cf** 162:4,4
**cfpa** 27:23,24
  249:8
**cfpb** 18:20 162:5
  244:15,19
  249:13
**chain** 4:20 7:10
  7:12 228:7
  250:25 251:17
**chance** 68:13
  209:25 214:9
**change** 125:14
  125:18,24 126:1
  126:6 259:11,13
  259:14,16,18,19
  259:21,23,24
  260:1,3,4,6,8,9
  260:11,13,15,16
**changed** 33:20
  125:11 126:10
  126:12,14 220:1
**changes** 126:13
  258:4 259:4,5,7
**characterized**
  205:25
**charged** 238:2
**charlotte** 39:2,3
  90:6
**chat** 84:22
**check** 5:10 172:9
  239:9
**checked** 255:3
**checkmate** 255:3
**chief** 195:3,4
**children** 126:25
**choice** 54:20
  157:6 160:12,13

**choose** 65:11
  67:9 86:12
**chose** 143:17
  161:9 215:5,8
  242:4
**chris** 8:13,15
  107:2
**chris.galanek**
  2:10
**christopher** 2:7
**chunk** 96:10
**cisco** 25:6
**citi** 38:17 106:6
  106:9 120:13,19
  121:9 142:11
  143:6,8
**citibank** 35:11
  35:12,19,22 36:1
  36:9,22,24 37:2
  37:5,8 38:2,13
  41:2,3,13,21,21
  41:24 42:6
  46:15,23 47:5,9
  48:1 53:8 56:5
**city** 4:4 170:25
  171:24
**civil** 1:5 259:6
**claim** 17:23
  18:11,13 69:23
  122:9,14,17
  123:12,14,19
  124:9,13 126:18
  127:13 138:17
  178:12 184:22
  184:23 185:2
  204:10 205:23
**claimed** 176:1

**claiming** 122:22
  127:9 138:9
  185:7
**claims** 17:18
  18:21 29:22
  69:19
**classes** 27:10,14
  28:9
**clear** 83:16
  185:4 192:11
  204:19,23 205:1
  205:3,5 206:9,12
  223:3
**client** 2:16 9:11
  9:12 84:23
  169:17 170:10
  172:24 176:10
  176:13 206:10
**client's** 107:22
**clients** 84:8
  146:5,5 174:25
  176:6 188:14,22
  188:23 192:20
  193:16,19
**close** 112:11,13
  112:16
**closed** 71:4
  83:22 112:9
  144:20
**closest** 189:18
**cloud** 75:1,3,5,7
  75:11,12,15,22
**coached** 140:10
**coaching** 7:19
  34:7 37:9 139:2
  139:5,8,14,21,25
  140:14 153:4,7
  154:2,15 155:4

**156:17 157:1,18**
  157:22 158:6,14
**cobra** 129:17,22
**cocaine** 95:8
**code** 134:20
  135:8
**cohen** 70:19,19
**college** 28:8,22
**collins** 126:4,16
  140:2,11 141:8
  144:8,9 145:3,14
  145:15 146:7,14
  149:15,16 150:3
  150:16,25 151:8
  151:16 153:8
  154:16 155:3
  185:5 200:11,24
  204:14 216:9,16
  218:6,15 219:20
  238:6,24 241:4
  251:5 253:10,17
  253:25
**columbia** 23:10
  23:12 24:8
**comcast.net**
  241:12
**come** 86:23
  90:14 161:20
  162:18,23 174:8
  179:24 183:16
  195:23 204:25
  222:17 237:24
**comes** 195:10
**comfortable**
  13:20 148:20
**coming** 48:22
  145:6 164:19
  165:12

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[comment - concerned]**                                Page 11

comment 182:9
comments 44:2
commission 4:5
  6:13 171:1
  243:9,15,17
  260:25
commissions
  31:8
commit 92:24
  93:3
committed 175:4
committing
  192:4,6
communicate
  139:6,11 176:9
  178:1 199:23
  217:5 220:10
communicated
  165:14,23 166:8
  166:23 168:7,24
  202:23 215:25
  216:2 217:4
  220:11,15
communicates
  211:3
communicating
  232:15
communication
  111:19,20,22
  166:18,19,25
  167:2 199:14
  230:22
communications
  111:10 159:23
  170:9
companies 56:17
  68:20 183:15

company 32:11
  32:12,14 33:16
  41:6 43:5,10,12
  43:17,20,23 44:4
  44:6 47:7,11
  48:2,8,15,22
  139:12 160:7
  162:9 163:12,19
  163:19 164:6,19
  164:20,21 165:6
  165:15,20,24
  166:10,22 167:1
  170:3,6 178:3,6
  178:10 180:10
  181:12 184:12
  184:16 185:18
  185:22 188:6
  190:11 192:24
  195:2,7,21
  199:11,15 201:1
  202:13 204:3,17
  207:7 208:9,19
  208:23 242:5
  255:14
company's
  208:20 242:5
comparable
  120:12
compensated
  45:15 120:10
compensation
  31:1,8 36:8,12
  36:15,22 39:15
  46:10 49:16
  120:11 124:23
complain 138:21
  151:10,13,16
  160:21 161:25

complained
  160:14 174:25
complaining
  140:7 183:5
complaint 7:7
  13:12,12 18:2,3
  18:4,7,23 56:6
  127:19,24
  143:20 158:23
  224:14 225:14
  234:16,18
  240:14 243:14
  244:16,18 245:2
  248:5,21,23
  249:7,8,8 250:1
  250:10,16
complaints
  56:13,18 128:4
  128:18 249:18
complete 216:13
completed 141:5
  141:6,10 144:18
  144:21 196:1
  258:13
completely 19:9
  32:21 49:22
completion
  25:15
compliance
  27:18,22 28:4,14
  56:3 134:24
  135:1,23 177:17
  179:17,18 181:3
  192:10,20 195:4
  203:22 222:15
  227:12 231:13
  231:17,21 242:6
  253:24

compliant 176:4
  176:7 178:13,15
  179:23,25 180:3
  180:4,8,14,18
  191:14,15
  204:17 216:25
  218:13 219:3
  223:5 224:9
  225:1 230:2,8,12
  230:16 231:23
  232:6,10,12,14
comply 223:1
complying 135:4
component 31:7
  39:22,25 143:24
components
  122:2 141:15
  247:3
computer 11:17
  11:20 71:6
  72:24,25 73:2,5
  73:18,21 74:12
  81:12 123:23
  245:25 246:2,6
  246:13,14,16,18
  246:20 247:1
concern 87:2
  135:11 136:8,11
  136:24 137:3,18
  162:5 176:20
  177:4,8 180:25
  181:1,18 182:17
  188:21 198:13
  199:5 215:25
concerned
  176:15 185:17
  220:6 221:20

Eric Slawin                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[concerns - correct]**                                    Page 12

concerns   135:21
140:1 141:8
191:19 192:24
195:18 196:20
196:24 198:9,18
198:24 199:10
205:14,20 207:5
217:9 231:1
250:10
concierge   2:17
107:13 113:12
113:15 134:2
171:10 238:13
242:14
concluded
256:11
conclusion
183:16,19
192:16,18,22
205:1
condition   80:2
88:6 90:12 91:6
119:3
conditions   16:14
79:17
conduct   18:16
44:6 50:13
123:19 124:8,12
127:4,10,11,24
130:15,18,22
134:20 135:8,22
138:17 139:9,22
160:25 161:25
162:6,10,18,23
177:5,9 183:2,3
183:6,8,10
185:18,22 186:1
186:9,13,22

187:2,6,11,17
192:25 193:5
198:19 199:3,6
200:5 203:21
216:1,3,8 217:7
217:13,23,25
231:7 250:11,17
conducted   12:5
50:12,21
conducting   58:6
58:8,11,14
confidence
168:19
confidential
163:20 164:5
182:18 194:14
194:16 197:4,14
199:23 209:1
214:23 221:1,11
225:11
confirm   15:3
243:16
conformance
208:23
confuses   17:13
consent   163:11
164:6,16 170:1
178:5 242:6
consider   120:3
considered   83:7
83:20
consistently
121:21 222:5
consultant   38:21
consume   94:5
consumer   28:1
162:20 175:10
175:12 186:9

187:7 223:23
consumers
197:19,21
198:13
contact   81:1
132:10 133:5
135:15,20 136:7
136:15 139:19
175:8,10,16
176:18 177:3,7
213:7,10,13
contacted   136:4
contacts   134:12
contained
177:12
containing   164:5
169:1 203:19
contend   183:1
189:24 190:17
218:6
contending
236:10
contention
203:18 206:17
contest   48:14,20
context   83:4
174:23 194:18
224:23
continue   80:17
84:16,18,24 90:2
110:11
continued   4:1
5:1 6:1 7:1
45:15 121:5
200:25
continues   173:16
contract   157:10
157:12 171:24

193:23,25
contracting
193:21,24
contracts   194:3
control   108:18
145:21 155:17
156:8 214:24
controlled   92:21
95:1,2
controls   29:17
29:18,19 30:18
conversation
84:8 165:13
189:2 197:6
conversations
191:1,6 219:14
copied   238:6
copies   110:14,25
170:10 172:16
172:19 208:25
208:25 214:23
258:9
copy   173:2,7
232:24 243:14
copying   251:6
corporate   9:24
81:24 82:8,9,23
83:11,14
correct   12:8,15
14:5,7 32:3
36:25 38:10
41:25 42:1,6,7
42:16,17 43:1,6
43:13 45:6
48:23,24 51:17
51:25 55:13
59:2,10 61:17,25
62:14,23 63:19

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[correct - current]                                    Page 13

64:1 68:8 69:1
69:13,14,16 83:9
84:25 86:4
89:24,25 95:11
96:21 100:6,7
106:1,7,10,14
110:2,19,22
111:1 112:4,8
117:6 118:21
120:11,14,19,25
121:1,3,7,8,10
121:14,15,17,18
121:22,23
123:20 124:10
124:21 128:4
130:2,3,4,13,14
130:18 131:2
133:11 134:6,9
134:10,13,14,18
134:21 136:16
136:17,20
138:19 139:3,4
140:3,19 141:2
143:15,16,22
144:14,19 148:8
149:9,23 154:22
157:11,16,22,23
158:1,2,8 159:24
159:25 161:2,10
162:2,3 163:4,12
164:14 165:3,8
165:15 168:8
169:6,7,9 176:25
179:9,14,18,19
180:20 181:5,6,8
181:13,22 182:2
182:20 183:24
184:2,5,14

185:19,20
189:22 190:8,23
190:24 193:19
195:1,8,15,22
196:12,16,21
197:8,11 198:10
199:16 203:8,13
204:4 205:8,9,12
205:13,16,17
206:5,20 207:2,8
208:4,11 209:2
212:24 213:8,15
214:18 215:2,6,7
215:9,18,21
220:12 221:15
222:22 223:2
225:9,10 226:15
226:18 227:2
229:9,12,18,21
230:8,9,20,23
231:7 232:15,25
233:1,5,11,16
234:25 235:5,8
235:11,17,21,23
235:24 236:5,10
237:19,20,22
238:3,7,10 241:8
241:13,14,20,25
242:7 243:22
244:3,4,24,25
245:4 249:12,19
250:11,17,18
251:9 253:17,20
**corrected** 215:19
**corrections**
258:4 259:9
**correctly** 16:4
89:15 91:4

174:19 255:19
**correspondence**
136:18 163:3
**cost** 32:13 89:21
92:14
**counsel** 2:1,14
8:11 15:19,23
67:20 69:15,18
69:22 70:1
81:22 82:15
83:24 84:13
87:22,23 136:12
136:23 137:10
169:15 171:19
171:20 174:1
185:6,8,17 186:1
214:16 229:12
229:21,22
230:23 231:1,18
236:17
**counsel's** 136:15
136:19 137:3,18
176:19 183:23
186:4,8,13,17
**counseling**
106:23
**counselor** 77:22
87:1,3,8,19
90:17 91:21
92:14 105:12
**counselors**
100:20 247:6
**county** 257:4
**couple** 77:1
128:15 129:2,9
**course** 11:3 12:4
17:11 23:25
27:7 30:10

31:12 50:1 59:1
108:1 150:16
155:16 160:13
170:16 209:10
211:17 252:10
252:10
**courses** 28:16,18
**coursework**
25:13 28:13
**court** 1:1 8:22,24
10:14,18 17:22
19:10,11,12,13
55:18 83:8
85:19 138:1
209:8 257:6
258:11,15
**cover** 171:23
**coverage** 129:18
129:22,24
**crash** 246:10
**crashed** 74:2
**created** 236:11
**creating** 67:6
**credibility** 167:7
**credit** 102:1,4
103:11,14,19,24
223:22
**critical** 255:14
255:14
**criticism** 37:11
**criticize** 152:10
**crown** 2:3
**curious** 174:24
**current** 35:3,7
41:19 53:19
55:17,19 69:15
81:2 89:3 182:1
229:21,22

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 275 of 317
Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[currently - define]                                              Page 14

**currently** 11:16
11:19 16:7
20:13 26:24
28:25 29:2,7
33:17 35:1,5
60:1 73:8 74:20
75:3 106:16,19
**curtailed** 125:9
**custody** 214:24
**customers**
176:21 186:18
191:13 223:21
**cut** 17:2
**cv** 1:6

**d**

**d** 35:25 76:22
**daily** 102:24,25
103:6,8 130:25
151:8 191:25
222:5
**damages** 119:18
122:3 138:9,13
141:15 143:25
**darey** 220:4
**darien** 198:7
**data** 64:8,11
75:23 135:23,24
135:25 176:25
177:7 178:20,21
179:7 180:2,5,24
180:25 182:6
184:3 187:12,18
197:20,23,24
198:1,6,10,10,15
199:16,20
203:22 212:25
218:22 223:22

226:25,25
227:12 232:7
**date** 8:6 10:15
15:4 35:20
45:13 46:21
74:13 112:12
116:11 117:19
130:1 149:10,17
150:14 208:5
211:8 213:1
224:10,23
235:14 243:23
246:21,23 249:2
249:24 250:5,18
253:18 258:2
**date's** 243:25
**dated** 3:17 4:5,9
4:15 5:9 6:18
7:5,20 147:6
154:3 171:1
207:14 209:19
212:9 213:24
239:8 249:13
251:6
**dates** 22:4 38:14
**dating** 158:1
**daughter** 20:15
20:19 21:12
**dave** 220:4
224:11
**david** 182:9
**davis** 181:3
195:5
**day** 17:11 63:9
63:16 96:22
103:3 131:1
146:1,1,2,2
151:7,7,20,22

172:18 240:11
244:21,22
249:18 257:17
260:21
**days** 30:8 61:12
62:9,9,12 258:2
**dds** 179:18
**deadline** 155:10
**deadlines** 140:15
140:24 155:5
156:20
**deal** 124:17
138:24 157:8
181:13 237:25
**dealer** 28:14
152:21,22
**dealing** 27:18,21
199:15,19
**dean** 255:5,9,11
255:13,14,15,17
**death** 79:15
**debt** 103:11,14
103:19,24
**december** 38:6,6
38:8,17 51:17,24
89:23 120:24,24
206:2 208:4
210:14 212:23
215:18 238:21
**decided** 85:21
**decision** 66:3,5
160:4 185:9
189:25 190:7,18
190:22 200:10
200:16 201:19
201:19 210:19
210:24 211:4,6
211:13,17 218:8

**decisions** 137:5
137:20,25 138:1
**deck** 224:24
225:2
**declaration**
214:8,14,20
215:5
**declared** 64:15
**decline** 70:10,11
**declined** 70:17
**deem** 217:11
**defendant** 1:8
2:7 8:17,21
**defendant's**
108:11 112:19
115:9 128:10
147:5 148:14
154:1 170:25
173:19 207:13
209:18 212:8
213:23 225:23
228:7 233:24
236:20,23 237:3
238:17 239:7
240:21,24 243:8
244:9 248:4
250:25 251:17
252:3,4 253:6
254:14
**defense** 215:13
**defer** 97:20 99:5
100:3
**define** 18:7
25:10 65:1,9,9
65:10,12 76:13
94:2 139:17
161:18

Eric Slawin

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

July 19, 2022

[defined - disciplined]

Page 15

**defined** 52:5
**defining** 36:16
**definition** 65:7
  103:3 159:10
  183:6 192:13
  193:9,10 236:14
**defrauded**
  176:16
**defrauding**
  176:20 186:17
**degree** 23:1,7,15
  24:16 25:11
  28:15,19
**deland** 4:4
  170:25 171:24
**delay** 85:20
**delete** 72:12
  165:7,11 167:8
  168:8,11,25
  169:5 202:18,22
  202:24 203:12
  204:3,7,8,20
  206:3,13,20,25
  207:1 215:8
  224:18 233:2
  234:15 235:5
**deleted** 214:23
  224:17 225:14
  233:10,12,14
**deleting** 165:13
**delivered** 154:16
  154:21
**demonstrate**
  160:3
**deniability**
  225:6
**department** 5:17
  6:4 9:15 112:20

115:10 127:19
  135:16,21 136:8
  158:13 178:9
**departure** 49:22
**deponent** 258:1
  258:4,5,6,11
**deponent's**
  258:4
**deposition** 1:11
  3:2 8:1,16 9:22
  10:3,22 11:1,17
  11:21,24 15:20
  82:23 85:16
  86:1 257:8,10
  258:3 259:8
**depositions** 83:7
  83:20
**depot** 216:12,17
**depressed** 66:11
**depression** 78:19
  78:20 79:17,24
  80:8 87:24
  99:10 106:17,20
  123:16
**depressive** 91:8
**described** 27:3
**description** 3:11
  4:2 5:2 6:2 7:2
  31:13
**descriptions**
  72:20
**designated** 45:23
  46:2
**designating**
  10:21
**designation**
  44:16 82:16

**desire** 85:18
  259:7
**desist** 4:11
  168:10 172:17
  185:11 203:2,4,7
  203:11 212:11
**despite** 85:16
  166:6
**destroy** 208:24
  209:5
**detail** 23:20 43:7
  182:21,24
**details** 39:6
  55:23 255:17
**determination**
  66:1 184:25
  185:3 200:25
  201:11 202:4
**determine**
  178:19 181:12
  195:21
**determined**
  118:12 122:8
  175:4
**device** 73:6,11
**devices** 11:15
  72:22 75:13,24
  76:3
**diagnose** 79:16
**diagnosed** 16:21
  16:24 78:18,20
  79:20,23 88:6
**diagnosis** 78:22
  91:5
**dice** 76:20,22
**dieckhoff** 3:16
  147:6

**different** 126:2
  189:4 192:21
  204:24
**differently**
  208:21
**difficult** 79:14
  126:20 138:24
  231:23
**direct** 107:18
  108:16 109:6
  113:2 115:14
  126:6 132:2
  147:10 148:19
  207:20 228:10
  230:22
**directed** 67:20
  207:21 224:16
  224:17 232:21
**direction** 225:10
  235:6,7
**directive** 225:12
  232:2,16
**directly** 68:12
  199:5 233:15
**director** 30:16
  30:17,19
**disagree** 156:3
  156:12,16,22
  157:7
**disagreed** 157:2
  157:18
**disagreement**
  157:4
**disciplinary**
  158:7
**discipline** 34:1
**disciplined**
  153:10

Eric Slawin
July 19, 2022

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[disclose - drinker]                                                    Page 16

**disclose** 47:9,25
  62:25 63:5,8
  141:21 142:2,6
  142:15,19,23,24
  145:3 175:1
  232:2
**disclosed** 62:19
  62:21 142:13
  169:11 188:14
  192:15 194:10
  199:5 229:20
**disclosing**
  143:14 183:11
  231:18
**disclosure** 143:6
  143:10 219:2
**disclosures**
  143:21
**discontinue**
  86:12
**discovered**
  175:13,18
**discretionary**
  31:10,14 40:1
  90:5
**discrimination**
  134:17
**discuss** 198:1
  213:7 218:15
**discussed** 22:22
  28:8,23 127:7
  138:11 181:18
  187:22 189:20
  194:8 197:23
**discussing**
  194:17 227:11
**discussion** 12:11
  12:14 167:20,22

168:4
**discussions**
  69:24 141:7
  182:17 194:20
**disliked** 152:8
**disorder** 91:8
  92:25 93:4
  105:15
**dispose** 74:16
**disposed** 73:11
  73:24
**disposing** 74:3
**dispute** 84:19
  159:2 208:5
**disputing** 159:1
**disrepair** 126:25
**distinction** 151:5
  193:8
**district** 1:1,1
  18:24
**dividends** 34:17
**division** 1:2
**divorce** 19:16
  64:22
**doctor** 77:5,16
  77:17 78:3
  79:25 81:4
**doctors** 90:15
**document**
  107:15,17,19,20
  109:5,21,23,25
  110:3,5 112:17
  113:2,4,12,13
  114:9,13,15,19
  114:21,23
  115:15 116:25
  117:2,5,8,25
  131:24 132:3,7

133:8,15 134:5
  134:11 147:11
  147:22,24
  148:12,20 149:5
  149:7 153:21,25
  154:13,25
  159:21 168:18
  168:20 169:4
  171:17,22 172:7
  173:6,25 174:9
  174:12,14 175:3
  175:14,19 196:6
  200:18 201:3,4
  203:15 207:22
  209:24 210:9
  212:19 213:22
  214:22 215:17
  221:8 229:17
  234:3 245:12,14
  245:17,23 246:7
  248:9,19 252:4,9
**documentation**
  25:14 56:25
  59:9,12,20 111:7
  112:3
**documented**
  251:9
**documents**
  12:25 13:3,6,9
  14:13,16,20
  15:22 61:16
  67:20,22,25 68:4
  71:25 112:7,7
  132:21 167:3
  170:3 172:11,12
  176:5 208:10
  209:1

**dodd** 28:4
  162:24 186:14
  186:23 224:4,6,6
**doing** 19:4 69:3
  85:1 140:8
  144:23 145:1,2
  146:3 151:21
  152:6,12 160:11
  164:22 170:12
  170:13 182:13
  191:4
**dollars** 98:10
  103:18,24
  247:13
**dotted** 188:8
**downloading**
  202:12,16
**dr** 44:18,23 45:1
  77:8,14,18,19
  78:16,16,24 79:3
  79:8,13,16 80:1
  80:12,19,21,24
  81:2,6 86:6,20
  86:22,23,24 88:1
  88:17,21,25 89:2
  89:19,21 90:2,18
  90:18,22,24 91:5
  91:9,13,16,22,23
  92:4,9,12 105:11
  105:11,12,18,22
  131:8
**drafted** 227:9
**drank** 101:21
  130:20
**drink** 101:1,7,14
  102:22,23 103:8
**drinker** 101:19
  101:20,21

Eric Slawin                                           July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[drinking - electronic]**                                    Page 17

| | | | |
|---|---|---|---|
| **drinking** 99:19 | 136:18,21 | 233:4,10,17,24 | **earnings** 218:24 |
| 99:21 100:9,23 | 154:25 160:15 | 234:13,20,21,24 | **eating** 94:6 |
| 100:25 101:24 | 160:15 163:10 | 235:7,10,15,16 | **ebel** 216:10,17 |
| 103:6 130:25 | 163:11,18,19 | 235:19,20,20,25 | **echoing** 123:7 |
| **drive** 73:6 74:2 | 164:4,4,17,25 | 236:2,6,8,9,10 | **education** 23:6,9 |
| 246:9 247:4 | 165:7,11,13,24 | 236:11,11,12,13 | 24:4 27:2 28:6 |
| **drives** 76:2 | 165:25 166:9,25 | 237:3 238:5,17 | 28:21 |
| **drug** 16:17 | 167:9,9,13,13,17 | 238:21,25 239:7 | **educational** |
| 96:21 | 167:18,25 168:8 | 239:11,14,21 | 22:25 |
| **drugs** 95:4,15,21 | 168:12,25 169:1 | 240:24 241:3,4,8 | **eeoc** 17:24 |
| 96:15,16 97:1,15 | 169:5,8,11,14,21 | 241:15,18,20 | **effected** 210:16 |
| 97:23 | 169:23 170:2,3,6 | 242:4,12 244:9 | **effexor** 91:3 |
| **druid** 89:13 | 170:9 172:21 | 244:14 250:25 | **efficiency** 67:11 |
| **drunk** 43:17 | 177:11,12,15,16 | 251:5,6,7,17,24 | **efforts** 67:15,22 |
| **dss** 135:24 | 177:21,22 | 252:12,15,19 | 68:1 72:1 |
| 179:19 222:12 | 199:14,19,24,25 | 253:6,10,19,20 | 182:18 |
| 223:1 224:19 | 202:12,13,14,16 | 253:24 254:14 | **eight** 12:19 |
| 241:24 | 202:19,22,24 | 254:18,19,20,21 | 13:23 47:3 53:7 |
| **dual** 63:23 | 203:13,19,20 | 254:24,25 255:2 | 53:13,18,23,25 |
| **due** 35:6 79:15 | 204:2,4,19,20,23 | 255:5,9,13,15,20 | 120:17 121:14 |
| 258:2 | 204:25 206:2,4,9 | 257:1,1 259:6,7 | 121:19 |
| **duly** 9:2 257:9 | 206:11,13,13,19 | **eap** 44:7 86:20 | **eighteen** 20:22 |
| **duties** 29:11 | 206:20,24,25 | 134:16 | **einhorn** 229:8 |
| 55:17,19 125:8 | 207:3,5,7,8 | **earlier** 86:16 | 229:11 230:15 |
| 126:9,12,13 | 208:10,10 209:6 | 91:12 130:21,24 | 232:4,22 233:4 |
| 136:10 156:2 | 212:8,19,22 | 142:12 198:23 | 233:16 |
| 190:13 220:1 | 213:1,2,17 | 200:9 211:8 | **either** 18:5 31:8 |
| | 214:17 215:13 | 221:18 233:3 | 48:7 60:5,17 |
| **e** | 215:22 224:11 | 234:13,21 | 66:13 70:4 |
| **e** 4:8,18,20,22 | 225:7,23 226:12 | 241:13 245:12 | 71:25 79:23 |
| 5:4,6,8,12 6:15 | 226:13,14,14,17 | 245:13 | 84:3 93:3 94:22 |
| 7:10,12,14,16 | 226:20 227:5,8 | **earliest** 68:4 | 96:20 97:12,13 |
| 35:25 66:15,17 | 227:14,16,18,20 | **early** 23:14 | 99:13 162:5 |
| 66:19,22,23,25 | 227:23 228:7,11 | 46:20 52:20 | 186:12 191:13 |
| 67:2,7 68:14 | 229:7,20,25 | 54:7 247:20 | 222:24 223:13 |
| 70:21,22 71:16 | 230:19 231:3,5,8 | **earned** 31:11 | **electronic** 11:15 |
| 72:12,16,19,23 | 231:12,17,20,25 | 32:4 42:15 59:6 | 111:19,20,21 |
| 76:22 111:19 | 232:8,22,25 | 62:22 | |

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 279 of 317
Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[electronically - eslawin16gmail]                                    Page 18

**electronically**
157:25 158:1
258:5
**eliminate**  180:11
180:12
**eliminated**  182:7
182:8
**email**  209:2
**emergency**
131:15
**emory**  78:12
**emotionally**
138:15
**employed**  28:25
29:2,7 35:10,19
42:2 45:15
48:25 49:4
63:10,18,21 64:1
64:8,13 73:8
82:3 107:1,8
120:6 121:2,9,16
121:21 144:3,10
160:6 245:15
**employee**  37:8
63:23 87:4,9
99:9 127:20,24
135:7 187:16
**employees**  44:2
163:3 182:2
199:14
**employer**  41:19
143:15 145:5,11
**employers**  68:13
93:19 142:1,3
**employment**
22:15 35:9 37:4
42:4,4,5,8,22
45:5 46:11,15,16

46:18,22 47:10
48:2,7,21 49:19
51:7,16,20,20
52:12,25 53:19
54:10,15,23 55:3
55:5,12,15 56:4
56:16 67:8,12,15
67:19,23 68:2,6
68:8,16,19 69:7
69:13 71:17,20
71:20 72:1,2,3,9
72:9,10 73:3,13
73:18 86:17,18
86:19 93:19
101:13 117:21
120:5,7,9,13,14
120:18,18,25
121:5 122:18,23
122:25 123:21
124:18,25 125:3
125:6,15,23
127:12,18
129:11 130:1,12
133:9,10 134:6
136:9 144:12
149:8 150:16
153:9,12 157:11
161:11 164:7,8
164:13 166:24
170:5 172:1,8,14
173:8 174:11,20
174:22 175:5,20
176:9 177:3,24
184:7 185:9,25
186:7,21 187:1
187:10,15 190:1
190:7,19 197:18
199:9 200:10,25

201:12,20 202:2
205:7,10,15,21
210:17,20,24
211:4,7,14,18
218:9 229:18
243:19 244:3,19
248:25 249:10
249:11,19,22
250:4,9,15
**encompasses**
144:2
**ended**  46:18
51:16 86:7
**ends**  160:11
**engaged**  130:15
130:22 139:9,15
139:22 160:7
175:17 176:1
177:5,8 183:1,7
184:23 185:18
185:22 186:2,14
187:6 189:8
192:25 193:5
198:24 199:6
200:6 215:25
216:2,8,20,23
217:6 231:7
**engaging**  161:1
186:22 187:11
187:17 191:22
199:3 205:24
217:14,25 231:2
232:4
**enlarging**  16:19
**ensure**  140:18
156:20
**entered**  259:8

**enterprise**
155:19,22
156:10 188:7
**entire**  104:16
**entirely**  40:9
177:14
**entirety**  32:10
180:12
**entity**  17:10
18:18 59:2
68:24 69:12
176:24
**entries**  97:8
**entry**  118:20
**epiphany**  161:14
161:17
**equivalent**  103:9
**eric**  1:3,12 3:3
3:17 4:8,14 5:8
6:17 7:4,19 8:2
8:8,10,19 9:1
147:6 154:2
156:23 207:14
209:19 212:9
213:24 239:7
257:8 258:1
260:20
**errata**  258:2,5,5
258:6,8,9,10,13
259:1
**escalated**  29:13
29:14
**eslawin**  241:12
**eslawin116**
66:18 71:23
**eslawin16gmail**
236:1

Eric Slawin
July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[espousing - fact]
Page 19

| | | | |
|---|---|---|---|
| **espousing** 194:1 | **excessive** 16:16 | 239:6,7 240:18 | **expressed** 141:8 |
| **esquire** 2:2,7,8 | **exchange** 6:12 | 240:22,24 243:4 | 182:17 192:24 |
| **et** 8:9 | 61:21 243:9,15 | 243:8 244:6,9,14 | 195:18 198:18 |
| **eubanks** 77:18 | 243:17 | 245:3,7,9,9 | 199:2 205:14,19 |
| 77:19 78:16 | **exchanges** 61:23 | 247:24 248:4,8 | 216:7,9 |
| **evasive** 137:9 | **exclude** 84:2 | 250:21,25 | **expressing** |
| **evening** 238:7 | **excuse** 27:25 | 251:15,17 253:1 | 191:19 196:20 |
| **event** 43:5,10,13 | 33:12 41:22 | 253:6 254:9,14 | 196:24 217:9 |
| 43:17,20,24 44:4 | 149:20 175:11 | **exhibits** 3:11 4:2 | 250:10 |
| 44:7 | 179:18 181:19 | 5:2 6:2 7:2,23 | **expression** |
| **events** 14:18 | 199:1 208:25 | **exist** 180:13,14 | 203:21 |
| **evidence** 72:8 | 215:1 241:3 | **existing** 67:10 | **extent** 32:4 59:6 |
| 190:21 201:10 | **exhibit** 3:12,13 | 226:22 | 115:14 194:3 |
| 201:16 | 3:16,20 4:3,4,8 | **exists** 201:4 | 236:2 |
| **exact** 22:4 32:22 | 4:14,18,20,22 | **expect** 10:20 | **external** 76:2 |
| 33:18 35:15 | 5:3,4,6,8,12,14 | **expected** 53:1 | 162:8 163:10,18 |
| 40:25 46:20 | 5:17 6:3,4,8,12 | **expense** 247:19 | 164:4,4 170:3 |
| 52:24 61:11 | 6:15,17 7:3,4,7 | **experience** 146:8 | 178:2,6,10 |
| 70:18 74:13 | 7:10,12,14,16,18 | 146:11 193:12 | |
| 80:10 92:7 | 107:12,21 108:9 | 193:13 | **f** |
| 103:16 104:6 | 108:11 112:18 | **experienced** | |
| 112:12 117:19 | 112:19,23 115:6 | 138:21 189:18 | **f** 257:1 |
| 145:24 158:18 | 115:9 128:9,10 | **expires** 260:25 | **facebook** 76:14 |
| 224:23 246:21 | 129:10 131:23 | **explain** 159:3 | 76:17 |
| 246:23 247:12 | 146:17,19 147:3 | 192:2 206:8 | **facility** 49:12,14 |
| 249:24 | 147:5 148:11,14 | **explained** 43:7 | 258:14 |
| **exactly** 77:11 | 153:17,20 154:1 | 138:15 166:21 | **fact** 48:15 69:7,9 |
| 82:18 132:9 | 170:21,25 171:9 | **explanation** | 69:11 85:16,17 |
| 144:5 208:6 | 173:11,19 | 172:23 173:5 | 108:17 122:15 |
| 245:24 | 207:12,13 | 174:7 | 130:20 132:8 |
| **examination** 3:5 | 209:16,18 212:2 | **express** 135:21 | 136:18 139:25 |
| 9:5 | 212:5,8,19 | 136:8,24 137:3 | 140:16,18 |
| **examined** 9:3 | 213:21,23 | 137:18 158:12 | 141:10 158:4 |
| **example** 29:16 | 225:18,23 226:2 | 162:5 176:19 | 166:6 167:16 |
| **excellence** | 226:12 228:2,4,7 | 177:4,8 188:21 | 174:4 179:16 |
| 155:20 156:11 | 233:20,24 | 198:23 218:11 | 188:13 190:20 |
| **exception** 254:18 | 236:21,25 237:3 | 232:8,9 | 192:13 207:6 |
| | 238:15,17 239:5 | | 209:5 213:13 |
| | | | 224:9 231:11 |

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[fact - first]                                                   Page 20

233:2 236:4
243:16
**facts** 122:13
155:8 210:23
217:10
**factual** 122:9,11
185:7 190:5
203:17
**factually** 69:5
**failed** 174:10
**failure** 135:24
158:4 198:9
223:1
**fair** 126:14
130:22,23
158:20,24
159:17 200:16
211:11,21
**fairly** 243:13
**fall** 124:15
204:22
**false** 97:8,11,13
97:14 155:7
176:10
**familiar** 163:25
**family** 52:19
129:25 160:10
**far** 112:9 196:22
**fargo** 38:3,5,20
39:8,11,16 40:7
40:9,17,20 42:3
42:5,19,23,25
43:16 44:3 45:5
45:16,20,23,24
46:2,4,12,14
47:7 48:7,21
49:1 50:10,12
51:21 52:12,25

56:5 71:21 72:4
72:11 86:21
87:9 89:23 90:3
90:7 101:13
106:13 117:21
120:9,18 121:2,6
121:20 129:12
130:1,13 142:10
142:14,16 143:3
145:10
**fargo's** 44:7
48:15
**fashion** 140:2
141:10
**fcpb** 18:22
**federal** 17:25
110:10 175:16
217:14 218:1
259:6
**feedback** 190:3
**feel** 86:3 109:4,6
113:2 115:13
122:24 126:20
126:21 132:2
141:19 147:10
148:19 153:23
209:23 217:2
227:10 228:10
**feeling** 247:21
**feelings** 217:3
**felt** 123:22
124:14 135:12
135:16 137:3,19
138:15 139:6,13
139:20 158:13
159:16,18 160:2
160:7 161:1,12
162:1,9 166:24

176:10 183:12
186:1,8,13,17,21
187:2,5,11,17
188:13 192:4
193:2,4 197:19
200:5 204:21
216:20,23 217:6
217:13,25
219:12 221:19
221:24 233:6
**ferrill** 1:16 8:23
257:6,20
**fi** 76:9,10
**fidelity** 57:10,13
57:22 58:3,12,19
59:4,7,15,19,24
60:6,18 61:17
**fiduciary** 193:18
193:22,25
**fifteen** 93:15
**figured** 250:9,15
**file** 1:5 11:1,1
18:2,19,20 117:9
117:16,18
143:17 250:10
258:8
**filed** 10:22 11:5
17:22 18:4,21
19:1,13 64:22
109:24 117:3
166:6 243:14,17
243:18 246:22
250:2,3 258:11
**files** 215:1
**filing** 18:1,3 19:5
**filings** 65:4
**fill** 258:5,5

**finance** 23:1
28:10
**financial** 22:17
27:25 28:1 90:4
90:11 162:20
175:11,12 186:9
187:7 223:23
**financially** 127:2
**find** 82:25 83:2
131:18 184:9
232:17 245:20
245:22
**fine** 17:12 84:21
128:16 160:6
222:25 223:5
**fines** 222:20,21
**finish** 60:12
83:15,19
**finished** 83:17
83:18 109:5
**finra** 193:17
**fire** 197:15
**firm** 70:4,14,17
176:4
**firm's** 176:6
**firms** 70:5,7,9
**first** 12:16 13:23
16:21 51:24
64:8,10 78:18
79:19 81:6 82:6
87:11 93:6
96:13 99:19,21
105:2 132:16
133:2,4,18 155:4
156:5,6,7 171:12
176:25 177:7
181:2 184:3
224:8 226:25

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 282 of 317
Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[first - further]                                                          Page 21

245:12 248:2
250:6 251:4
254:19
**fiserv** 2:14 9:15
9:21 64:13
81:22,24 82:3
83:2,25 84:20
**fiserv's** 82:15
**five** 14:9 15:10
15:18 30:8 53:7
53:7,13,18,23,25
81:14 107:24
164:25 192:5
242:21
**fixed** 31:1
192:15
**floor** 2:9
**florida** 4:4 20:10
20:11 23:3 30:5
30:7 36:7 37:22
171:1,24 193:17
**focus** 52:7
**focused** 180:8
**follow** 129:9
219:2 232:2
238:11 239:2
**followed** 13:24
**following** 46:11
46:14 73:12
140:18 172:13
173:7 225:10
232:16 243:18
244:2,19 248:24
249:9,11 250:3
259:5
**follows** 9:4 47:24
124:7 137:16

**forced** 204:16
**forgot** 41:1
**form** 5:14 7:19
17:19 18:16
47:12 48:11,17
60:7,10,15,19,24
64:2 65:13
73:14 94:6,7,20
97:17 98:13
108:11,22
109:24 118:5
119:4,8 122:21
139:2,5,8,14,21
139:25 140:4,20
141:3,11,24
142:7,17 154:2
154:15 155:4
157:2 158:6
161:15 163:14
164:9 165:16
166:1,12 191:12
196:13,20,24
259:7,9
**formal** 50:21
**forms** 124:13
234:13
**formulate**
161:21
**forth** 18:23
157:4 164:7,14
257:9
**forum** 18:12
**forward** 242:5
258:8
**forwarded** 215:1
235:25 236:2,8
236:12 241:7,11
241:18,22

**forwarding**
177:21
**found** 89:1 211:9
244:22,23
**four** 15:10,18
33:17 44:19
51:10 87:16
88:2 217:4,6,12
217:24 218:7
**fourth** 103:9
**frank** 28:4
162:24 186:14
186:23 224:4,6,6
**frankly** 122:8
127:2
**fraud** 124:15
127:15 138:23
160:3,5,8,9
174:23 175:4,6
175:13,17,25
176:2 183:12,20
183:23 184:1,4,8
184:13 187:22
188:15,22 189:8
191:22 192:4,6
192:13 193:2,9
193:11,14 194:2
194:11 199:3,6
204:12,13,22
205:6 206:14
215:12,15,16,21
216:5,20,21
217:1,16,21,22
221:19,24,25
222:3,8 227:16
227:17
**fraudulent** 177:5
177:9 185:18,22

200:7 216:2,8
223:20 227:13
231:7
**free** 86:4 109:4,6
113:2 115:14
132:2 147:10
148:19 153:23
209:23 228:10
**frequent** 96:4
**frequently** 30:6
61:10 102:22
136:19
**friction** 66:7
**friday** 229:6
**front** 203:15
**frustrated**
255:18
**fully** 10:20 41:6
231:15
**fulton** 257:4
**function** 72:13
**functionally**
29:11 42:18
146:1,2
**funds** 111:15
**furnish** 259:10
**further** 23:6,9
109:17 114:2,25
115:24 116:2,3,4
116:5,7,8,13,15
116:16,18,21,22
116:23 133:13
133:20,22,23,24
147:18 148:23
154:7,8,10,18
158:10 210:2,5
214:11,25
220:12 234:7

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 283 of 317
Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[further - george]**                                      Page 22

237:7,8,9,10,13
237:14 238:8
242:9,10,11
248:11,12,13
252:24 254:3,4,5
255:7 256:4
257:12
**future** 46:4

**g**

**g** 188:4
**ga** 258:17
**galanek** 2:7 3:6
8:13,13,15,15
9:6,24 10:1,12
10:17,25 11:3,8
47:13,20 48:5,14
48:20 50:1,8
55:20 60:9,11,14
60:16,21 61:1
64:5 65:16
73:17 81:10
82:2,18,21 83:6
83:13,17,19 84:5
84:13,21 85:3,14
86:2 97:22
98:16 107:10,16
108:1,8,15,20
109:20 112:16
112:23 113:1
114:8 115:3,4,13
117:24 118:1,9
119:5,11 124:4
124:12 128:8,16
128:21 129:1,8
131:22 132:1,18
132:20 133:1,4
133:14 134:4

137:13 138:5,6,8
140:9,25 141:7
141:14 142:2,12
142:21 146:16
146:19,24 147:3
147:9,21 148:11
148:18 149:4,11
149:13 153:17
153:23 154:12
154:21 156:4,6
158:12 159:20
159:22 161:19
163:15 164:13
165:21 166:5,16
169:20 170:16
170:21 171:5,8
171:12,14,16,21
171:22 173:11
173:23 174:3
175:23,25
207:11,17,25
208:17 209:10
209:15,23 210:8
212:1,4,18
213:20 214:3,6
214:13 225:17
225:20 226:1,8
226:10 228:1,4
228:10 229:2,4,6
233:19,22 234:2
234:10,12 235:4
236:15,18,21,25
237:16 238:11
238:14,20 239:2
239:11 240:9,17
240:22 241:2,11
242:15,21 243:3
243:12,23 244:5

244:8,13 245:6
245:11 247:23
248:1,7,18 249:7
250:20 251:3,13
251:21 252:6,10
252:14,24 253:9
253:16,23 254:7
254:12,17
255:11,21 256:4
**gambling** 118:4
118:12,17 119:7
**games** 71:6
**gap** 42:3,9,12,16
54:10 129:24
**garnishments**
34:19,23
**gather** 71:24
**general** 2:14
81:22 89:12
136:11,15,19,23
137:2,10,18
142:4,22 143:5
176:18 183:22
185:6,8,17 186:1
186:4,8,13,16
214:16 229:12
**generalities**
201:7
**generally** 118:25
178:20
**generate** 42:11
52:3,16,18 62:16
**generated** 52:11
**gentleman**
216:11 220:3
**gentleman's**
198:4

**genuine** 236:9
236:14
**george** 2:17
107:10,18,19
108:8,16,17
109:6,10 112:16
113:2,10 115:4,6
115:14,22
117:25 128:8
131:22 132:2,19
133:2,12,14,20
134:1 138:6
146:16 147:10
147:12 148:11
148:19,23
149:11 153:24
154:10,18 156:4
158:9 159:20
170:21 171:8,15
171:21 173:11
173:23 175:24
207:11,20
208:12 209:15
209:24 210:2,4
212:1,15 213:20
214:6,11 225:17
226:2,5 228:1,11
228:13 229:4
233:19 234:5,7
234:10 235:1
236:15 237:7,11
238:9,11 239:2,3
239:5 240:5,18
241:9 242:8,16
243:3,20 244:5
245:6 247:23
248:10,12,14
249:1,2 250:20

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[george - guess]                                          Page 23

251:14,15
252:11,25 253:1
253:13,21 254:3
254:4,5,7
**georgia**  1:1 2:4,9
5:14 11:10
18:24 49:15
79:10 83:7,21
85:18 89:5
108:11,22,24
109:24 110:10
257:2,7
**getting**  66:6
140:24 141:1,1
218:22
**give**  17:6 23:20
29:16 107:3
125:19 130:8
201:7 226:8
**given**  54:20
139:2,20 157:20
190:3 257:10
259:8
**giving**  10:13
225:5
**global**  164:1
**gmail**  67:10,13
70:20,23,25 71:5
71:21 72:8,14
159:24 163:4
169:9
**gmail.com.**
66:18,24 67:4
**go**  11:7 33:8
78:11 81:10,13
84:6,6,7,22 85:9
101:14 105:23
108:3 109:12,13

109:14,15,16
112:6 113:5,6,7
113:8,9,10,19,23
113:24,25 114:1
114:2,3,4,5,6,25
115:18,19,20,21
115:22,24,25
116:1,2,3,4,6,7,8
116:9,10,13,15
116:16,18,21,22
116:23 128:17
131:15 132:12
132:14,15,18
133:2,12,15,16
133:18,20,22,24
144:25 147:12
147:15,16,17,18
147:19 148:23
148:25 149:1,2
154:7,8,10,17,19
156:4,5 157:9
158:9 161:24
162:4 171:14,21
173:23 174:2
196:22 207:24
208:12 210:2,4
212:15 214:6,11
217:18,19
228:13,14,15,17
228:18,19,20,21
228:22,23,24
229:4 234:5,6,7
234:8,10 235:1
237:7,8,9,10,11
237:13,14 238:8
240:4 241:9
242:8,11 243:20
248:10,12,13,15

248:16 249:1,3
252:11 253:21
254:2,4,5 255:7
**god**  130:2
215:21
**goes**  127:10
241:19
**going**  50:3 76:25
79:25 81:14
84:7,21,22 90:14
97:5 107:3,14
108:24 109:2
132:6 138:22
143:1 152:4
155:21 160:5
174:18,24
182:11,14
189:14 191:3
192:11,15
203:25 204:8,20
205:6 206:13,15
206:15,16,25
207:1 215:12,14
215:16,21
216:13 218:16
220:1,5 221:13
224:23 227:1
240:6 243:13
**good**  9:7 128:18
147:1 225:4
**google**  245:21,22
**googling**  160:23
**gosh**  117:13
**gotten**  172:5
**gout**  16:20
**government**
6:10 162:9,14
173:21 179:14

**grade**  56:3
**graduate**  23:4
**graduated**  95:5
97:2
**graduation**
96:19
**great**  85:3 115:3
128:20 129:1
136:14 166:22
167:6 208:22
**greetings**  258:3
**grissom**  188:2,3
189:3,24 193:2
198:20,25 199:1
205:18,20 216:3
218:14
**grissom's**  188:5
**group**  106:6,10
120:13,19 121:9
142:11 143:6,8
199:21,22 200:3
200:5
**guess**  16:19
18:19 34:13
37:20 50:22
54:9 55:17
72:12 77:20
78:10 80:9
84:19 86:17
87:14 110:16
112:1 119:9
144:1,20 152:25
159:11 166:3
179:10 181:14
188:9 196:13
197:25 229:16
236:13 237:23
246:25 255:9

Eric Slawin
Eric Slawin v. Bank of America Merchant Services, LLC, et al.
July 19, 2022

[guy - identification]

Page 24

guy 124:15
204:22
guys 81:10
200:19

**h**

h 1:7 35:25
half 30:23 41:20
96:13 98:18
106:1
hand 154:24
185:5 237:25
257:17
handle 29:13
198:10
handled 35:17
42:20
handling 135:25
137:6,22 146:4
198:15 223:22
226:25 227:12
hang 123:23
happen 182:22
197:24
happened
126:20 142:19
143:22 246:11
happening
126:23
harassment
134:17
hard 73:6 74:1
76:2 85:8 100:9
124:17 246:9
247:3
hardtke 21:8
harsh 159:8,16

head 71:3
health 32:8,13
40:6 41:4
healthcare 77:1
77:2 106:3,9,13
129:18,24
hear 15:15 95:12
95:18 107:5
123:25 124:1
171:9,11 226:10
heard 181:2
hearing 88:12
heart 16:1,16
heavy 101:19,20
101:21
held 25:19,22
26:7,14,22,25
36:9 56:22
help 156:19
hereinbefore
257:9
hereunto 257:16
hey 169:16
high 16:16,21
27:4 93:8,13
94:20,25 95:5,9
96:19 97:2,15
99:23 227:3
higher 120:10
highlighted
226:21 227:4
hills 89:13
hire 143:3,8,11
149:17 197:15
hired 145:19
149:13
hold 15:3 24:20
25:9,17 26:2,11

26:17,22,25 49:8
57:15,25 103:11
166:17 219:19
holistically
206:11,12
208:18
home 20:13,23
21:3,5,9,11,17
21:20 22:1,8,10
22:14,15,19,23
37:22,24 72:24
72:25 73:2
76:10 104:9,12
104:18,24 105:3
105:9 177:20
216:11,17 246:4
honest 190:3
honestly 60:8
hopefully 240:7
hoping 220:9
hospadarek
35:23
hotline 127:23
128:3,5 132:10
134:17
hour 49:18
81:15
hours 12:19
13:24 14:9
15:10,18 53:1,4
53:9,12,15,17,20
53:22,25 54:1
61:8,23,24,25
62:1,2,3,14,18
242:20 249:10
249:14,16 250:8
250:14

house 10:10 26:6
74:4 126:25
230:23,25
231:18
hr 132:10 134:15
134:16 139:6,12
155:2 167:17
185:5,21,23,25
186:3,8,12,16
206:2
huh 62:24 76:23
88:16 94:1 95:7
215:23 219:22
226:19 235:12
239:1 241:22
250:7 252:18
human 56:7,13
56:18 127:19,23
128:2 135:11
144:6 157:5
158:13
humiliated
141:18
hundred 98:10
247:13
hypertension
77:4,5

**i**

idea 15:15
189:19 220:11
identifiable
10:23
identification
3:12 4:3 5:3 6:3
7:3 108:14
112:22 115:12
128:13 147:8

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 286 of 317

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[identification - informing]                                Page 25

148:17 154:4
171:3 173:22
195:20 207:16
209:21 212:13
214:1 225:25
228:9 234:1
237:5,17 238:19
239:10 241:1
243:11 244:11
248:6 251:2,19
253:8 254:16
**identified** 22:14
81:23 82:7 83:1
181:4,7,11
194:24,25 195:3
195:6,12,14,25
196:5 216:6
237:18,22
241:24 242:1
**identify** 68:24
69:12 70:25
82:13
**identifying** 11:4
68:20
**illegal** 95:4,15
95:21 96:16,20
97:1,15,23
192:25 193:5
198:24 199:6
200:6 216:1,23
217:2,7,8,11,17
217:23 231:2
**illness** 79:15
**immediately**
158:3 175:5,8,10
**impact** 90:11
127:5,7 219:4

**impaired** 17:5
**implications**
183:13 220:20
220:25 221:3,5
**important**
231:12
**impression**
230:7
**improve** 55:12
55:16,21 153:10
**improvement**
34:4 37:15
54:25 55:4,8,11
144:16,19 145:4
145:8
**inaccurate** 99:4
118:16 119:6
158:25
**inappropriate**
43:23 135:12,17
137:4,20,24
158:14 162:11
203:23 217:17
250:17
**include** 233:13
**included** 233:6
**including** 134:15
153:11 158:7
**income** 5:15,18
6:5 31:25 32:2
34:15,17 42:11
42:15 50:10
52:3,4,6,7,10,11
52:14,16,18,21
59:6,9 62:16,19
62:22,25 65:4
66:8 90:5
108:12,23,24

109:1,3 110:5,7
112:20 114:12
115:10
**increased** 34:11
**indebted** 35:1,5
**independent**
92:12 178:18
211:5
**index** 3:1 4:1 5:1
6:1 7:1
**indicate** 97:10
97:14 118:2
135:16 216:19
216:22 217:12
226:20 227:10
**indicated** 14:23
38:11,12 45:4
46:18,22 65:4
72:15 81:21
86:6 88:1,9
100:2,9 118:11
118:17 123:11
130:6 138:10,12
181:11 191:21
195:13 198:18
203:11 205:18
246:9
**indicates** 201:4
213:2 253:18
**indicating** 206:3
226:24
**indifference**
124:17 127:14
138:21 189:18
220:17
**individual** 5:14
5:18 6:5 108:12
108:23 112:20

114:11 115:10
216:18 219:3,5
**individually**
119:10
**individuals**
22:13,18 126:7
182:13 195:19
216:16 217:5,6
217:13 218:8,20
220:15 251:6
**industry** 179:6,7
179:9
**infidelity** 66:12
**inform** 45:23
47:6 48:6 161:9
164:21 197:18
**information**
3:14,20 4:12
10:23 11:4
61:15 73:7 77:3
81:1 128:11
132:10 148:15
163:20 164:1,5
164:17,24 166:9
169:1 172:20
177:12 178:6,10
195:3 203:12,19
204:7 206:4
209:1,5 211:5
212:11 214:24
215:9 227:11
**informed** 48:21
153:9 161:4,8
195:18 198:8
208:23 218:20
**informing**
208:19

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[informs - june]                                          Page 26

**informs** 208:8
**inhibitors** 80:9
**initial** 248:21
**initially** 81:23
83:1 238:4
**injured** 197:19
198:14
**input** 200:10,11
218:8
**inquiring** 235:4
**inquiry** 233:13
233:15
**inside** 173:14
**insisted** 234:14
**instagram** 76:14
76:17
**instances** 177:22
**institute** 28:10
**insurance** 29:23
32:8,14,16,19
41:4 106:3,9,13
**integrity** 178:21
**intent** 28:18
**interactions**
151:8,9
**interested**
138:25 161:9,13
251:4 257:14
**internal** 34:24
35:1 159:23
163:3 166:25
239:15
**internet** 89:1
174:13,15,21
178:25
**internist** 77:12
**interrogatories**
13:13,14,15,19

29:5 67:18 68:5
89:15
**interrogatory**
77:2
**interrupt** 33:9
**interruption**
236:16 238:1
**interview** 49:10
50:21,23 51:1
69:22,25 70:3,5
70:7 144:7
145:14,18
167:21
**interviewed**
39:13 47:5 51:4
142:9,10,14
144:9 145:13
146:13 167:16
**interviewing**
152:14,16,19
157:21
**interviews**
152:23
**intimidating**
159:5,19
**intoxicated** 43:5
43:10,12 44:3
**introduce** 9:9
**invest** 32:24 33:4
**investigate**
195:21
**investigated**
193:15
**investigating**
193:12,14
**investigation**
50:13,16,19 51:5
202:4,6,8,11,17

**investigators**
43:15
**investing** 33:12
**involuntarily**
93:3
**involved** 17:16
17:21,23 19:10
63:9 130:18
195:17 200:15
200:21,24 201:5
201:11
**involvement**
200:19
**ira** 52:15,16
56:21,22 63:7
110:8 111:8,12
111:15 247:20
**irs** 52:8,11 63:1
247:8,10
**ish** 79:4,4 88:23
191:8 219:25
**issue** 27:9 56:14
85:19 136:9
176:15 181:4,8
181:12,13,15
182:16 194:18
194:23,24 195:6
195:15,20,22
196:6 199:16,20
218:21 224:16
234:16 237:18
237:22 241:23
**issued** 42:14
112:2
**issues** 87:22
89:20 90:4
195:25

**j**

**january** 70:8
245:4
**jargon** 13:20
**jeannie** 12:22
**jill** 2:14 81:20
**job** 39:11 53:3,8
68:12 72:13
90:6 126:9,12,13
136:10,16
140:10,19
142:10,11
151:21 152:8
156:1,8 158:21
158:24 182:5
196:4 240:6
**jobs** 157:22
182:7,20
**joe** 181:2 195:4
198:2 242:2
**john** 35:23
**joined** 33:25
34:3,10
**joint** 24:8 66:3,5
**jointly** 106:23
**july** 1:13 3:4 8:3
8:6 103:4,5
131:1 161:22,24
162:5 163:2,5
183:17 191:25
192:3 193:6
194:6,21 197:7
197:12,13 205:4
205:8 230:13,15
**june** 38:7,8,9,17
45:5,14 46:19,19
46:20 103:3
140:2,11,17

Eric Slawin                                       July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[june - laptop]                                                Page 27

141:8 224:13
237:19 238:6
239:22 241:4,8
241:20 251:7
254:22
**jury** 119:1 167:6

**k**

**k** 1:16 32:24
33:4,12,13 35:25
40:21 41:14
257:20
**karen** 21:1
**keep** 116:11,19
160:5 194:13
197:4,14 199:23
202:20 221:1,10
225:10
**keeps** 16:18,18
**kendall** 5:9
63:13,14 126:5
150:2,12,13,17
151:11,14,17,19
152:7,11,13
155:3 167:17
185:4 187:21
191:22,23 192:3
192:10 193:1,4
194:5,12 197:7
197:13 198:2,19
199:1 201:11,18
205:4 216:3
218:14 219:15
220:19,21
221:14 222:2
224:20,21
226:17,24 227:9
227:10 235:16

235:19 238:23
239:8,21,24
254:20
**kept** 143:12
173:1
**key** 134:12
**killing** 44:2
**kilter** 141:20
**kimberly** 20:18
**klonopin** 91:3
**knew** 136:14
182:5 199:21
211:1 223:4
231:22,22
232:18 242:2,3
**know** 9:12 12:24
17:14 19:2 20:5
22:4,5 24:25
25:5 27:24 29:4
29:5 30:18
31:16,16,17
32:15 33:18
39:6 40:3,12
41:10 44:16
46:20 48:18,19
50:23 51:1,4
52:24 61:11,14
62:20 63:7,20,24
64:4,9 65:1,25
68:10 70:18
71:11 72:19
74:13,14 77:9,10
78:7 79:11 81:6
89:18 91:25
96:23 97:24
98:2 99:13
100:12 103:13
103:16 104:6

105:7 108:22
109:5 112:12
114:23 122:20
123:22 125:1
126:10 127:1
130:11 136:3,12
138:22 139:21
141:18 142:25
144:21 156:1
157:7,12 160:17
163:22 164:11
166:18 168:2
172:4 176:5
178:16 179:2,10
180:6,7,17,19,21
182:3,10,14
183:6 189:17,22
190:2,2,3,20
192:10,12
194:23 196:14
197:23 203:25
204:24 206:16
208:6 210:19
211:22,23,24
213:4 214:8
216:25 217:17
222:13,19 223:5
223:18,24 224:1
224:2,7 225:2,5
232:19 233:7,13
237:1,24 239:16
240:2,7,14 242:1
242:12 243:24
246:21 247:12
249:15,20,24
251:23 252:8
**knowledge**
129:14 169:2

179:15 195:3
213:6 222:17
**known** 160:3
**koch** 70:19

**l**

**l** 30:14
**l.l.c.** 2:3
**labeled** 3:15,18
3:21 4:6,13,16
4:18,20,22 5:4,6
5:10,12,16,19
6:6,10,14,15,19
7:6,8,10,12,14
7:16,20 108:12
112:21 115:11
128:12 147:7
148:15 154:3
171:2 173:21
207:15 209:20
212:12 213:25
225:24 228:8
233:25 237:4
238:18 239:9
240:25 243:10
244:10 248:5
251:1,18 253:7
254:15
**labor** 19:3,6
**lack** 66:8 141:9
**lafferty** 2:16
9:11,14,19,19,20
81:23 82:7,13,25
83:23
**language** 159:16
226:21 227:4
**laptop** 172:15

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[large - losses]**                                          Page 28

large   65:18
  114:21 146:5,5
  194:8
lasted   15:18
late   26:4 244:21
law   20:24 21:2
  21:13,25 22:2,7
  85:18 187:12,18
  217:14 218:1
  227:23
lawsuit   17:8,15
  17:21 18:1 19:9
  143:18 166:6
  205:25 246:22
lawsuits   17:16
lawyers   2:5
  132:5
lay   194:3
lead   29:10 158:6
  198:10
leading   219:16
leads   218:24
learn   160:20
  162:17
leave   10:14,18
  37:2 45:9,12,19
  50:9,14 54:15
  130:11,16 131:4
  184:19
leaving   28:7
  54:21
left   28:22 41:23
  54:19 144:12
  145:25 157:15
  157:19 242:18
  255:24
legal   4:10 8:6
  9:14 13:20 27:5

27:6,8,17 65:1
  135:16,21 136:7
  139:12 194:2
  208:24 212:10
  213:4 229:14,15
legally   64:25
leighton   2:8
leonard   216:10
  216:17
letter   3:16 4:11
  4:14 6:17 7:4
  86:10 147:5,25
  148:8 164:8,13
  168:10,13
  172:17 185:11
  203:5,7,11 204:7
  207:13 208:1,3,7
  208:8,8,18 209:4
  209:18 210:7,11
  210:13,16 211:3
  211:5,11,15,19
  211:20 212:11
  213:14,16,23
  214:3,5 224:10
level   40:24,25
  120:10
levied   222:20,21
levying   222:25
libbares   2:17
license   25:12
  26:7,21
licenses   25:17,20
  25:22
liens   34:19,23
life   32:16,19
limited   31:16
lindsey   44:13

line   29:23
  119:10,10 128:3
  134:16 188:8,9
  218:23,24 220:4
  259:11,14,16,19
  259:21,24 260:1
  260:4,6,9,11,13
  260:16
lines   19:17 32:25
  131:16 219:6
lingering   138:23
link   11:20
liquor   100:9
lisinopril   16:9
listed   134:12
listen   200:20
listened   189:13
listening   189:17
literally   178:25
litigation   82:5
  132:5
little   17:4 83:3
  139:17 210:4
  234:6 237:12
  253:14
live   20:23 21:9
  22:7,10 247:20
lived   21:2,11,17
  21:20 22:1,14,19
  22:23
lives   20:13
living   160:10
liz   30:12,13
llc   1:7 8:9
llp   2:8
loader   49:9
local   153:2

located   10:9
  30:4 79:9 89:2,4
  89:9
location   36:2,3,4
  38:24 39:1 92:4
  92:4,6
locked   184:18
long   12:18 14:8
  15:9 21:2 23:25
  30:20,22 51:9
  54:13 66:25
  71:10 72:25
  75:9,18 77:14,19
  80:15 87:12
  97:4 126:19
  136:1 146:10
  149:16 150:13
longer   74:2,11
  246:15,17
longest   93:12
look   52:23 67:8
  99:9 107:14
  128:6,6 153:14
  176:5,14 206:11
  206:12 240:6
  250:20 254:1
looked   203:16
  213:15 214:17
  223:9 245:8,11
looking   68:9
  135:2 215:12
  249:2 250:2
looks   147:25
  195:10
lori   158:17
loss   222:10
losses   60:4,11,17
  60:21 61:1 90:9

Eric Slawin July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[lost - marietta]** Page 29

| | | | |
|---|---|---|---|
| **lost** 59:21 120:3 | 204:19,23,25 | 163:10 164:4 | 259:8,9 |
| 126:24 127:2 | 206:2,11,19,24 | 165:7,11,13,24 | **manage** 156:19 |
| 236:6 | 207:3,5,8 208:10 | 167:9,13,17,25 | **management** |
| **lot** 127:3 140:12 | 209:6 212:8,19 | 168:8,12,25 | 124:16 127:14 |
| 199:24 | 212:22 213:1,2 | 169:5,8,11,14,21 | 134:25 136:25 |
| **lower** 228:13,14 | 214:17 215:22 | 169:23 170:2,6 | 146:12,12 |
| 228:15,16,17,18 | 224:11 225:7,23 | 172:21 177:11 | 151:17 155:19 |
| 228:19,20,21,22 | 226:12,14,14,17 | 177:15,21 | 156:10,19 177:4 |
| 228:23,24,25 | 226:20 227:5,8 | 199:19,24 | 177:8 183:9 |
| **lsat** 27:11,12 | 227:14,16,18,20 | 202:12,13,16,19 | 188:7 192:14 |
| **lunch** 84:15,15 | 227:23 228:7,11 | 202:22,24 | 204:12 215:11 |
| 84:17,24 85:5,7 | 229:7,20,25 | 203:19 204:20 | 216:5 224:15 |
| 128:19 130:6 | 230:19 231:3,5,8 | 206:13,13,20,25 | 234:14 |
| **luncheon** 129:4 | 231:12,17,20,25 | 207:7 213:17 | **manager** 178:5 |
| **lying** 152:3,4 | 232:8,22,25 | 215:13 226:13 | 197:10 216:11 |
| **lyssy** 30:14,20 | 233:4,10,17,24 | 235:25 236:2,6,8 | 221:17 222:1 |
| | 234:13,20,21,24 | 236:10,12,13 | 224:22 230:17 |
| **m** | 235:7,10,15,16 | 255:5,9,13,15 | 230:19 232:17 |
| **m** 2:8 188:4 | 235:19,20,20 | **mails's** 206:9 | 232:21,24 233:3 |
| **mail** 4:8,18,20 | 236:9,11,11 | **maintain** 53:5 | 235:6,8,17 251:8 |
| 4:22 5:4,6,8,12 | 237:3 238:5,17 | 60:1 66:15,20,23 | 252:22 |
| 6:15 7:10,12,14 | 238:21,25 239:7 | 70:21,22 71:1 | **manager's** 232:2 |
| 7:16 66:15,17,19 | 239:11,14,21 | 72:7 75:3,12,22 | **managers** 126:2 |
| 66:22,23,25 67:2 | 240:24 241:3,4,8 | 76:1,12 110:11 | 126:3 135:13,18 |
| 67:7 68:14 | 241:15,18,20 | 241:16 | 135:22 137:6,21 |
| 70:21,22 71:16 | 242:4,12 244:9 | **maintained** | 152:10 |
| 72:16,23 111:19 | 244:14 250:25 | 26:19 57:3 | **managing** 151:6 |
| 136:18 154:25 | 251:5,6,7,17,24 | 66:25 71:10 | **manipulations** |
| 160:15 163:11 | 252:12,15,19 | 75:16,18 102:4 | 193:15 |
| 163:18,19 164:4 | 253:6,10,20,24 | 182:18 | **manner** 131:6 |
| 164:17,25 | 254:14,18,19,20 | **maintenance** | 198:14 |
| 165:25 166:9,25 | 254:21,24,25 | 71:12 | **mansell** 258:15 |
| 167:9,13,18 | 255:2,20 258:7 | **major** 91:8 | **manually** 258:5 |
| 169:1 170:3,9 | **mailed** 206:4 | **maker** 201:19 | **march** 45:2,13 |
| 177:12,16,22 | 253:19 | **making** 58:6 | 45:14 69:16 |
| 199:14,25 | **mailing** 208:10 | 151:20,23 152:6 | 70:8 87:14 |
| 202:14 203:13 | **mails** 72:12,19 | 182:9 193:8 | **marietta** 104:13 |
| 203:20 204:2,4 | 136:21 160:15 | 223:21 240:2 | 104:21 |

Eric Slawin July 19, 2022

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[marijuana - meeting]** Page 30

**marijuana** 19:24
20:4 64:19 93:7
93:10,14,17,21
93:24 94:5,20
95:16,22,25 96:4
96:12,20 98:1,20
**mark** 5:8 63:13
126:4 150:12
151:11,14 185:4
187:21 191:21
191:24 193:1
197:7 198:2,19
198:25 199:1
201:10,23
218:14 219:15
220:19,21
221:14 224:20
226:15 239:8
240:14 243:5
**marked** 107:11
107:21 108:13
112:22 115:12
128:12 147:7
148:16 154:4
171:3 173:22
207:15 209:20
212:12 214:1
225:24 226:2
228:8 233:25
237:4 238:18
239:10 240:25
243:10 244:10
244:13 248:6
251:1,18 253:7
254:15
**market** 240:3,8
**marketing**
190:13

**markets** 61:19
61:20 161:6,7
**marriage** 126:24
257:13
**marx** 2:2,3,3
8:14,18,18,18,18
9:17,20 10:12,17
10:24 11:6 12:7
12:23 14:6 15:8
15:18 47:12,16
48:10,17 60:7,10
60:13,15,19,24
64:2 65:13
69:16,20,23
70:14 73:14
81:20 82:6,20,24
83:6,10,13,14,18
84:4 85:15,22
97:17 98:13
107:22 112:23
112:25 115:8
118:5 119:4,8
140:4,20 141:3
141:11,24 142:7
142:17 146:18
146:22 147:1,4
153:20,22
161:15 163:14
164:9 165:16
166:1,12 169:18
170:24 171:4,6
173:13,18
209:22 212:3,7
212:14 214:2
225:19,22 228:3
228:6 233:21,23
236:17,19,23
237:1 240:19,20

240:23 243:7
244:7,12 245:10
247:25 248:3
250:23,24
251:20,21 252:2
252:8 253:3,5
254:11,13 256:8
258:1
**marxlawgroup...**
2:5
**mastercard**
102:6,7 222:14
222:19,25
**mastercard's**
223:14
**matched** 33:15
**matching** 33:6
33:13 40:22
41:15
**material** 178:2
**matter** 9:16
119:13,16,19
140:14 196:7
257:15
**matters** 29:13,14
35:17 42:20
129:18 146:4
**mcpherson** 2:8
8:20,20
**mean** 9:13 15:11
15:14 18:8,14
19:11,13 27:6,15
31:2 32:7 33:8
52:4 58:5 62:19
63:6 75:6 82:9
82:12 94:3 95:2
101:25 104:23
117:13 122:19

140:13 159:3,4,7
161:17 180:8
183:4,5,10,11
189:17 202:5,25
206:9 211:2,15
232:1 233:14
240:1 255:2
**meaning** 103:3
132:4 171:18
**means** 9:13
83:21 114:22
132:20 159:14
166:18
**meant** 159:13
173:1 240:6
**media** 76:12,13
**medical** 91:6
97:6 100:2
118:10,15
131:13
**medication**
15:25 16:1,2,8
80:1,5,7 106:16
131:7
**medications**
16:14 80:12,15
80:17 90:25
**meet** 44:17
135:24 158:5
160:11
**meeting** 12:16
12:18,21,25
13:23,24,25 14:1
14:2,8,10,14,17
14:21,24 15:19
99:17 201:13,15
201:21 203:8,10
207:9

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[meetings - name]                                            Page 31

**meetings** 11:25
12:3,5,9,13
140:17,23 189:5
219:16
**meets** 236:13
**meg** 4:14 7:4
207:13 213:23
**member** 167:17
**members** 136:19
**memorial** 103:3
**mental** 119:20
122:5,6,10,14
123:4,6,11,14,20
124:9,13 126:18
127:8,12 138:12
138:17 144:1
**mention** 241:13
**mentioned** 14:22
22:19 67:3
71:22 99:3
216:16
**merchant** 1:6,7
3:13 6:8,9 7:18
8:9,17 17:9
128:11 154:2
173:20,20 174:4
227:1 245:13
**merchants**
179:20 218:22
219:4,5,7,11
220:8 222:21,23
226:22 227:11
**merely** 181:20
214:21 226:25
246:15 251:23
**mess** 191:2
194:9

**messaging**
239:15
**met** 124:16
156:20
**metoprolol** 16:3
**michael** 6:17
209:19
**microsoft** 71:14
75:17,21
**mid** 26:4 46:20
120:24
**middle** 123:22
124:14 204:22
206:14 241:5
253:11,11
**midwest** 152:22
**mike** 2:15 4:8
8:5 167:4 212:8
212:20 255:23
**mind** 99:15
112:17 131:22
133:1 146:16
171:15 173:23
207:11 224:9
243:3 245:6
254:8
**minimal** 103:13
**minimum**
141:20
**minor** 20:7,19
**minute** 81:14
107:24 170:14
242:21
**minutes** 50:2
128:15,24 129:2
192:5 242:20
255:24

**misrepresent**
217:10
**misrepresentat...**
223:21 227:19
**misrepresentat...**
188:22 193:16
**misrepresenting**
191:13,16
216:25
**missed** 155:5,10
**misstated** 192:8
**mistake** 171:6
**mlrb** 17:24
**moll** 181:2 195:4
198:2,8 242:2
**moment** 69:9
77:21 85:19
90:23 109:11
110:16 113:16
127:5 147:14
163:8 190:9
198:6
**money** 52:19
89:20,20 151:20
151:23 152:6
240:3,7 247:7,10
**monies** 111:11
**monitor** 8:7
**month** 30:8 42:3
42:8,12,15 49:6
54:14,14 101:6
101:14,22,24
104:7 191:8
219:15 249:23
**monthly** 103:24
104:4 222:4
**months** 37:19
121:11 164:25

174:19 175:19
204:11 215:11
218:14
**morning** 9:7
**mortgage** 104:9
104:12,18,24
105:2,6,8
**mother** 21:25,25
22:2,7
**motherboard**
247:3
**move** 109:7,7,10
209:24 226:3,5
**moved** 21:5
**multiple** 61:5,6
61:13 71:5
102:15,18 155:5
**mushrooms** 96:2
98:3
**mute** 123:9

**n**

**n** 2:2
**n.w.** 2:9
**name** 8:5,10,11
9:18,18 20:17,25
21:7 30:13
35:24 44:13
70:4,18 76:18
77:9 78:2,7,23
79:11 81:6 86:3
87:5,7 89:17
90:21,23 152:22
157:25 158:17
158:18 181:3
187:25 188:3
198:4,7 216:18
220:3 255:12

Eric Slawin                                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[names - object]**                                        Page 32

| | | | |
|---|---|---|---|
| **names** 56:8 | 202:25 203:12 | **noncompliant** | 134:15 143:20 |
| 68:22 71:2 | 230:12,16 | 224:17,18 | 146:17,18,20 |
| 80:10 86:11 | **needs** 123:9 | 225:13 | 147:2 153:18 |
| **nasdaq** 61:20 | 176:4 194:10 | **nondisclosure** | 170:22 171:18 |
| 193:17 | **negatively** 90:11 | 148:4 164:14 | 173:12 199:19 |
| **natasha** 126:4 | 219:4 | **nonverbal** | 207:12 212:3 |
| 126:16 144:7 | **negotiations** | 166:20 | 213:21 225:18 |
| 149:15 151:8 | 91:2 | **normal** 61:8 | 225:19 228:2,3 |
| 185:5 196:18 | **neither** 21:25 | **north** 5:17 6:4 | 233:21 236:17 |
| 200:11 204:14 | 110:9 | 39:2,4 77:10 | 236:19,20 |
| 216:9 218:15 | **never** 10:22 | 89:13 112:19 | 238:16 240:21 |
| 219:16 220:20 | 19:15,15,23 | 114:12,16 115:9 | 243:6 244:7,14 |
| 255:8 | 63:18 135:8 | 117:4 | 245:7 247:25 |
| **natasha's** 151:13 | 178:14,14 | **northern** 1:1 | 248:8 251:5,15 |
| **national** 19:3,6 | 185:16 196:1 | 18:24 | 251:20 252:5 |
| **natural** 155:12 | 200:4 | **notarized** 258:6 | 253:2 254:9 |
| **nature** 142:4,22 | **new** 23:11 24:4,9 | **notary** 9:3 | **numbers** 76:20 |
| **near** 55:3 102:24 | 24:12 28:9 | 260:23 | 133:5 134:15,19 |
| **necessarily** | 61:21 220:2 | **note** 109:1 | 137:7,22 171:4 |
| 73:25 179:12 | **newman** 198:7 | **noted** 259:4,5 | 180:9,12 181:19 |
| 222:18 | **nice** 240:2 | **notes** 87:24 | 181:21 252:5 |
| **necessary** | **nicholas** 87:3 | **notification** | **numerous** 191:1 |
| 110:22 259:9 | 88:10,11,14,15 | 111:25 | |
| **need** 11:8 53:2 | 88:17,21,25 89:2 | **noting** 258:4 | **o** |
| 68:14 77:3 85:5 | 89:18,19,21 90:2 | **notwithstanding** | |
| 101:12 108:15 | 90:18,22,24 91:5 | 120:20 | **o** 35:25 188:4 |
| 109:8 113:3 | 91:9,22,23 92:4 | **november** 49:5,6 | **oath** 69:5 |
| 115:14 117:24 | 92:9,12 105:12 | 51:8,25 88:22,23 | **object** 48:10,10 |
| 127:5 134:13 | 105:18,22 | 120:25 121:22 | 48:17 60:7,10,15 |
| 136:3 165:7 | **nichols** 88:9,10 | 149:18,21 | 60:19,24 64:2 |
| 166:4 168:13 | **night** 43:14 | 188:17 191:8 | 65:13 73:14 |
| 221:1 226:3 | **nine** 37:19 53:7 | 205:11,20 | 97:17 98:13 |
| 230:7,11 239:3 | **nineties** 23:14 | 235:11 | 118:5 119:4,8 |
| 251:14 | 26:4 | **number** 33:18 | 140:4,20 141:3 |
| **needed** 136:12 | **nlrb** 19:1 | 52:24 61:11 | 141:11,24 142:7 |
| 160:10 175:1 | **noncompliance** | 76:5 82:24 | 142:17 161:15 |
| 179:3 195:7,14 | 223:19 | 104:6 112:24 | 163:14 164:9 |
| 195:19 202:24 | | 131:25 132:19 | 165:16 166:1,12 |

Eric Slawin                                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[objected - ongoing]                                            Page 33

| | | | |
|---|---|---|---|
| **objected** 85:15 | **ocga** 259:7 | **okay** 10:24 11:6 | 185:2 188:1 |
| **objecting** 82:21 | **october** 88:23 | 13:22 15:16 | 190:25 192:2,20 |
| 82:22 | 153:1 158:1 | 51:15 52:9 67:6 | 193:7 197:2 |
| **objection** 47:12 | 191:8 205:11,15 | 73:17,22 81:5 | 201:3 206:12,22 |
| 47:15,17 82:19 | 219:25 226:18 | 82:6 83:12,15,19 | 207:23,25 210:1 |
| 85:23,23,25 | 227:9 229:7,25 | 83:22 85:1,3,6 | 210:2,6,7 211:10 |
| **objectives** 158:5 | 230:4,6 | 89:11 94:4 | 212:17 214:10 |
| **obligation** | **offer** 3:16 70:14 | 95:13 97:13 | 214:12 216:15 |
| 193:18 | 147:5,25 148:2 | 108:19 109:9,12 | 219:10,23 |
| **obligations** | **offered** 146:14 | 109:14,15,17,18 | 220:22 226:7 |
| 83:25 148:4 | **office** 12:10 | 109:19 113:9,16 | 228:12,14,20,22 |
| 151:6 164:14 | 29:25 30:3,4,7 | 113:17,18,21,22 | 228:23 229:1 |
| 193:22,25 | 53:4 70:24 | 114:1,3,4,7 | 234:4,8,9,24 |
| 208:24 | 125:11 136:15 | 115:16,17,21,24 | 237:6,8,13,15 |
| **obtain** 39:11 | 136:20,23 137:3 | 116:1,4,7,10,12 | 238:13 244:7 |
| 67:22 68:6 72:1 | 137:18 176:19 | 116:13,15,16,18 | 250:7 251:3 |
| 193:10 | 183:23 184:19 | 116:19,24 | 252:1,2 254:2,13 |
| **obtained** 24:21 | 185:16 186:1,4,8 | 118:15 120:23 | 256:9 |
| 120:24 | 186:13,17 | 123:10,12 | **old** 20:21 21:15 |
| **obtaining** 75:21 | 214:15 229:12 | 125:14 126:1,17 | **omission** 176:3,4 |
| **obviously** 10:21 | **officer** 56:3 | 128:25 132:25 | 183:12 188:14 |
| 17:8 69:4 | 145:21 195:4,5 | 133:20,22 134:3 | 192:12,12 |
| 211:20 226:12 | **officers** 181:3 | 134:3,11 135:1 | 194:10 205:6 |
| 232:16 255:4 | **offices** 12:6 14:6 | 138:3 142:6,21 | **onboarding** 3:14 |
| **occasions** 189:4 | 36:5 89:4,8 | 143:10,24 | 128:11 |
| **occur** 14:2 20:8 | 258:2,7 | 145:13 146:22 | **once** 96:7 101:21 |
| 20:9 65:19 | **oh** 17:3 19:18 | 147:1,13,15,16 | 101:24 192:13 |
| 211:20 218:12 | 40:14 54:7 | 147:20 148:10 | 207:19 219:15 |
| 246:10 | 73:25 75:14 | 148:22,25 149:1 | 220:19 258:6 |
| **occurred** 156:21 | 77:20 88:13 | 149:2,3,18 150:9 | **one's** 191:4 |
| 211:18 222:11 | 104:20 105:23 | 154:5,6,7,8,9,11 | 201:2 |
| **occurring** | 108:1 109:12 | 154:24 159:9,11 | **ones** 14:22 80:14 |
| 143:21 162:1,10 | 115:24 130:2 | 159:12,15 | 180:7 200:2 |
| 162:19,24 | 146:19 153:1 | 160:24 161:4,7 | **onesource** 75:17 |
| **ocd** 79:18,20,24 | 154:19 159:15 | 161:14,24 | 75:18,21 |
| 80:11,13 87:25 | 171:6,10 215:19 | 163:18,24 167:6 | **ongoing** 156:2 |
| 88:7,8 | 216:4 223:13 | 169:8 171:10 | 191:9 |
| | 250:7 | 180:10 184:21 | |

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 295 of 317
Eric Slawin                                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[online - parties]**                                                    Page 34

| | | | |
|---|---|---|---|

**online** 7:7 39:12
  67:16 144:4
  248:5
**op** 25:5
**open** 58:3 61:23
**opened** 72:15
**operating** 25:6
  230:1
**operational**
  35:17 38:21
  42:20 146:4,12
**operations** 135:3
**opinion** 161:3,4
  161:8,21 191:12
  192:6 194:1,4
  204:24
**opportunities**
  33:2 184:9
**opportunity**
  32:24 37:3
  40:15 157:20
  230:25
**oppose** 138:22
  204:12
**opposed** 67:10
  127:15
**opposing** 215:11
  216:5
**opposition** 143:2
**option** 33:4
  41:14,16 129:17
  157:7
**oral** 140:2
**orally** 140:10
  188:18,20
**order** 10:19 84:1
  167:4 203:2

**ordering** 258:9
**organization**
  155:5 181:7,10
**organizations**
  179:16
**organized**
  156:19
**original** 7:23,23
  258:8,11
**originals** 208:25
**osha** 13:12 17:24
  18:2,3,21 169:24
  240:13 248:21
  248:23 249:8
  250:1,10,16
**outcome** 257:14
**outlined** 158:6
**outlook** 71:7
**outlook.com.**
  71:9
**outside** 22:15
  37:24 202:13
  242:5
**outsource**
  181:21
**outsourcing**
  181:25
**overall** 141:13
  183:9
**overstated** 119:2
**overstatement**
  118:22,24 155:8
**owe** 193:18,22
  193:25 247:10
**owed** 247:7
**owned** 176:24
**oxley** 27:19,20
  186:2 187:3

223:25 224:1,3

**p**

**p** 2:7 35:25
  223:4
**p.m.** 129:5,5
  256:12
**package** 172:12
**page** 3:5,12 4:3
  5:3 6:3 7:3
  110:6 132:8,11
  132:15 133:3,18
  134:2 147:22
  155:4 156:5
  171:15,18,23
  173:13,15,17,24
  174:2,6 214:7
  226:14 229:8
  234:11,25
  239:12 241:5,19
  245:3,3,12 248:2
  248:16,20 250:6
  251:5 252:11
  253:12 254:19
  259:11,14,16,19
  259:21,24 260:1
  260:4,6,9,11,13
  260:16
**pages** 259:9
**paid** 40:11 160:7
**paisner** 2:8
**palo** 70:19
**pan** 135:25
  180:2,5,24 182:6
  184:10 187:18
  197:20 198:6,10
  198:15 199:16
  199:20 203:22

**papers** 19:16
**paragraph** 156:6
  209:3
**paraphrased**
  215:3
**pardon** 130:5
**parents** 79:14
**parkway** 2:3
**parsed** 206:6
**part** 25:5 51:5
  66:8 72:13
  87:19,20 94:21
  94:22 97:5
  136:10,15 148:2
  153:4,7 156:1,8
  168:10 192:12
  196:3 211:23
  213:6 215:14,22
  233:18 238:25
**partake** 96:20
**participate**
  50:16 160:5
  175:6 215:16
**participated**
  15:6 190:6,22
**participating**
  127:15 184:13
**participation**
  50:18 184:7
**particular** 26:6
  27:18 53:4,9,15
  55:21 174:12
  220:21
**particularized**
  27:17
**parties** 44:3
  193:21,24

232:7 253:13

Eric Slawin                                          July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[parties - ping]**                                 Page 35

257:13 258:9
**parts** 213:11
**party** 17:19 18:6
  66:13 81:25
  181:22
**passed** 22:5,11
**patient** 88:24
**pay** 32:9,10,11
  32:14 40:10
  41:7,8 119:20,21
  120:2,3,3 121:25
  122:4 138:11
**paycheck** 41:11
  64:6,10
**payment** 179:6,7
  179:9 193:21,24
  222:11,15,19,25
  223:3,4
**pays** 32:12
**pci** 135:23,24
  176:4,6 177:13
  177:16 178:13
  178:15 179:5,18
  179:23,25 180:3
  180:4,8,14,18
  187:12 191:14
  191:14 192:10
  192:20 203:22
  204:17 218:13
  219:3 222:12,15
  223:1,5 224:9,19
  225:1,13 227:12
  230:2,7,12,16
  231:13,16,21,23
  232:6,10,12,14
  234:16 241:24
  242:6 253:24
  254:6

**pcna** 24:22
**pdf** 258:5
**peachtree** 2:9
**peer** 150:3
  188:10 190:15
  197:7 221:15,19
  221:23 239:24
**pending** 18:24
**pennies** 98:7
**pension** 32:24
  33:10
**people** 39:14
  125:16 126:13
  150:15 204:12
  216:7 233:7
**people's** 182:19
**percent** 33:17
**percentage**
  32:13
**percentages**
  41:10
**perform** 29:11
  45:19
**performance**
  34:4 37:12,14
  54:24 55:4,7,10
  122:24 123:3
  138:19 139:1
  140:11 144:16
  144:18 145:1,4,8
  153:10,14 158:5
**performed**
  190:13
**performing**
  45:16 62:10
  135:6 182:2,6
**period** 21:23
  26:2,11,16 35:18

38:4 41:22
  44:25 45:8,11
  49:3 50:8,13
  51:23 52:2,17
  54:5 65:3,16
  72:1 79:2,5 88:2
  88:20 91:7
  93:12,16 97:11
  101:9,17 106:12
  107:7 119:21
  120:2,16,17
  121:19 125:20
  149:24 150:2
**periods** 64:24
  106:25
**permanently**
  214:23
**permission**
  178:9
**perpetrating**
  184:13
**perpetuate**
  160:4
**person** 12:9,13
  13:25 14:1
  18:18 44:20
  70:14 85:6 92:1
  92:3,8,11 238:2
  255:18
**personal** 10:23
  11:3 64:16
  66:15,17,19,22
  70:22,25 71:7,16
  72:17,23 73:18
  73:19,19,20
  74:21 75:13,24
  76:3,10 159:24
  160:15 163:4,11

163:19 164:17
  164:25 165:25
  166:9,25 167:9
  167:13,18,25
  169:1 170:9
  177:11,15
  181:19 199:25
  202:14 203:13
  203:20 207:8
  208:10 209:2,6
  236:9 241:7,15
  241:19 246:2
  253:20
**personality**
  151:10,14
**persons** 215:2
**perspective**
  161:2
**phone** 12:12,14
  13:24 73:5,19,20
  74:1,8,9,16,18
  74:19,20,21,23
  74:23,24,25 76:5
  76:7 111:18
**physical** 10:11
  11:9 36:2,3,4
  38:24 39:1
  246:14,16,17,19
**physically**
  184:17
**physician** 77:23
  78:11
**physicians** 77:25
  78:8,14
**piece** 216:25
**pieces** 255:4
**ping** 15:11,15

Case 1:19-cv-04129-AT Document 174-1 Filed 01/08/25 Page 297 of 317
Eric Slawin July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[pinging - pointe] Page 36

**pinging** 15:13
**pinto** 70:19
**pitching** 226:23
**place** 14:24 55:5
  55:8 152:24
  157:6 194:20
  203:7 249:9
**placed** 34:4,23
  37:14 45:9,11
  50:14 54:24
  135:12,17 137:4
  137:19 138:18
  139:7 145:4,8
**plaintiff** 1:4 2:2
  3:15,18,21 4:6
  4:13,17,19,21,23
  5:5,7,11,13,16
  5:19 6:6,11,14
  6:16,19 7:6,8
  8:19 108:13
  112:21 115:11
  120:1 128:12
  147:7 148:16
  171:2 173:21
  207:15,18
  209:20 212:12
  213:25 225:24
  228:8 233:25
  237:4 238:18
  239:9 240:25
  243:10 244:10
  248:5
**plaintiff's**
  112:24 115:8
  131:24,24
  132:12,13,19
  146:22,23
  148:12 170:22

171:18 209:16
  212:5 213:22
  225:20 228:5
  233:22 234:11
  236:18,22
  238:15 239:6
  240:19 243:5
  244:8 245:10
  248:2
**plaintiffs's** 229:5
**plan** 33:10 34:5
  37:15 40:12,21
  40:22 54:25
  55:4,8,11 138:19
  139:1 144:16,19
  145:2,4,8 195:24
  196:2
**plans** 196:3
**play** 29:9 71:6
  190:11
**played** 189:25
  190:17
**pleasant** 66:10
**please** 8:11,24
  10:11 17:13
  18:7 25:10
  35:24 47:13,19
  47:21 51:14
  65:9 68:20
  70:25 76:13
  83:15 95:3
  104:16 107:25
  108:8 109:10,14
  109:15,16 113:5
  113:6,7,8,9,11
  113:14,19,20,23
  113:24,25 114:1
  114:2,3,4,5,6

115:1,7,19,20,21
  115:22,25 116:1
  116:2,3,4,5,6,7,8
  116:9,10,13,15
  116:16,17,18,20
  116:21,22,23
  124:2,4 125:20
  128:8,15 131:23
  133:13,21,22,23
  133:25 137:13
  138:7 139:17
  146:17 147:9,12
  147:15,16,17,19
  148:12,18,23,24
  148:25 149:1,2
  154:6,7,8,10,17
  154:19 156:5
  158:10 173:12
  187:14 193:23
  198:21 199:18
  207:19,24
  208:13,14
  209:15,23 210:3
  210:5 212:2,16
  213:21 214:11
  225:17,18 226:1
  226:6 227:7,15
  228:10,13,14,15
  228:16,17,18,19
  228:20,21,22,23
  228:24,25 229:5
  233:20 234:2,5,6
  234:7,8,10 235:2
  236:16 237:8,9
  237:10,12,13
  238:15 239:5
  240:4,17 242:9
  242:10,11,14,22

243:4,21 244:5
  247:23 248:11
  248:12,13,15
  249:2,3,4 251:16
  253:14 254:1,3,4
  254:5,9 258:7,13
  259:9,9
**point** 12:22
  22:19 27:10
  33:24 34:3,22
  37:7 41:18
  45:18 54:23
  61:7 63:8 64:15
  64:20 73:12
  76:1 77:10
  79:22 80:18
  85:4 86:25 88:5
  90:18,19 92:17
  92:20,23 93:2
  94:7,25 95:5
  97:2 98:23 99:6
  117:11 127:6,17
  127:22 135:10
  135:15,20 136:6
  136:7,22 150:5
  156:7 157:15
  159:22 160:24
  162:14,17,22,22
  167:8,12 171:13
  176:8 177:2
  183:13 185:24
  186:6 190:6
  191:12 196:17
  197:8,17 199:8
  211:6,19 216:1
  247:5 252:21
**pointe** 2:3

Eric Slawin                                      July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[policies - procedures]                                    Page 37

**policies** 135:4
163:12 164:21
**policy** 43:3,4,8
46:7,8,9 47:7,11
48:3,9,16,18,23
121:6,20 141:22
142:14 163:21
163:22 164:1
165:6,15,20,24
166:10 167:1
207:7 208:9,16
208:20
**poole** 2:14 81:21
82:1,2,13 83:2
83:23 85:21
**poole's** 85:15
**poor** 140:10
**portion** 32:11,12
33:15 36:14
40:10,11 41:7,8
41:9 65:18 66:5
**portions** 114:21
114:23 118:23
157:2
**posed** 47:17
**position** 39:13
39:16 40:16
41:24,24 48:6
49:8,10 55:25
56:2 83:16
135:13,18 137:5
137:20,24
145:17 146:9,14
222:7 231:15
**positioned**
127:16 204:16
204:21,21
217:10

**positions** 56:6,17
138:2 152:14,16
**possess** 74:11
111:7 174:8
**possession** 19:23
20:4 64:19
68:17 73:7 74:6
74:9 75:1 111:5
132:4,22 134:8
171:25 172:3,5
214:24 246:14
246:16,17,20
**possibility**
182:10
**possible** 62:11
63:23
**possibly** 177:14
219:13
**potential** 31:15
41:12 143:15
181:8 183:20,23
184:1,4
**potentially**
182:19
**powerpoint**
224:24
**practice** 77:9,15
78:7 79:8,11
89:17 91:23,25
**preceded** 120:14
**precedes** 235:7
**precise** 252:3
**precisely** 178:12
188:12 194:5,7
**prepare** 11:23
15:20 109:25
114:13

**prepared** 108:25
110:15,18 117:5
117:8
**preparing**
237:21 238:3
**prescribe** 80:4
90:24 91:2
**prescribed** 80:7
80:12 131:8
**prescription**
16:7 80:12
**present** 2:13
11:12 12:20
14:10 201:15
**presentation**
224:24
**presented** 179:1
**pressure** 16:16
16:22 247:22
**presumably**
99:14 100:5
**pretty** 139:16
**previous** 93:19
**previously** 36:17
77:16,17 99:3
107:11,20 140:1
183:17 221:23
**primary** 78:11
137:6,22 180:8
180:11 181:19
**print** 258:5
**prior** 18:1 19:25
35:3,9 38:2
41:20 42:2
46:15 48:25
51:11,12 54:3
64:18 68:8,16,20
69:8,13,19,22

75:21 79:22
80:24 97:15
106:6 124:18,24
125:3,5,15
127:17,22 136:9
145:5 160:24
164:19 166:23
176:8 177:2
185:24 186:6,20
186:25 187:10
187:15 197:17
199:8 203:9
211:19
**priorities** 156:20
**private** 143:12
**privilege** 169:17
**probably** 57:22
69:2 74:15
93:11,20 96:13
99:5 101:18,21
102:25 107:19
108:17 133:17
136:10 147:19
150:23 161:22
200:13 223:13
242:2
**problem** 10:12
81:12 96:24,25
118:3,17 135:1
168:5 175:1
183:11
**problematic**
161:1 162:1
165:2
**problems** 222:15
**procedure** 259:7
**procedures**
135:5

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[proceeding - purchases]**                              Page 38

proceeding
  19:10,11 83:22
  85:17
proceedings
  83:8,9,21 256:11
process  178:15
  178:16 180:11
  180:12,13
  181:20 227:11
processes  135:2
  220:2
processing  6:9
  173:20 174:5
  193:25 245:13
processor
  222:11,19 223:1
  223:3,4
processors
  222:15
produce  134:9
produced  13:4
  67:21,21 68:4
  171:19 200:19
production  68:1
  107:23 131:25
  132:3,21 146:21
  146:25 153:19
  170:22 173:15
  250:23 252:4
  253:3
professional
  25:12,17,19,22
  26:21 28:6,21
  86:9 105:14
program  24:8,11
  40:12 87:4,9,19
  87:20 98:24
  99:6,9,12,15

programs  11:19
project  195:24
  196:1,3
promoted
  126:11,16
promotions
  126:8
pronounce  16:10
pronouncing
  16:3 91:4
proper  89:6,7
  139:23 231:14
properly  32:3
  198:9
property  34:20
  34:23 37:24
proposed  181:24
  214:8
proprietary  3:20
  148:14
prospective
  68:13 142:1,3
prostate  16:11
  16:17,17,19,24
  78:3,4
protected  205:25
  207:4
protection  28:1
  162:20 175:11
  175:12 186:10
  187:7 223:23
protective  10:19
  84:1
protested  124:16
protesting
  215:11
proton  78:12

prove  215:14
provide  32:6,19
  32:23 33:3
  40:20 80:1,4
  188:24 199:10
  231:14
provided  15:23
  32:16 40:9 41:6
  66:5 68:4 86:10
  129:15,17 132:5
  132:9 139:7,13
  140:1 156:17
  169:14,20,23
  173:1 174:1
provider  76:7,9
providers  77:1,2
provides  76:9
provision  162:19
  164:7
psilocybin  96:1
psychiatrist  44:9
  44:10,15 77:22
  78:24 79:1 87:1
  88:17,19 90:17
  100:9,15
psychiatrists
  97:7 99:2 100:2
  118:2,10 119:2
  119:12 247:6
psychological
  87:2 92:25 93:4
  105:15
psychologist
  44:14 77:22
  78:25 86:25
  88:18 90:16,20
  100:8,17

psychologist's
  97:20
psychologists
  97:7 99:1,2
  100:1 118:2,11
  118:16 119:2,12
public  9:3 83:8
  83:20 85:17,17
  218:12 260:23
publicly  245:16
pull  107:10
  115:6 128:9
  146:17 148:11
  153:17 164:15
  170:21 171:9
  173:11 174:14
  209:15 212:1
  213:21 225:18
  228:1 233:19
  236:15 238:14
  239:5 240:17
  244:5 245:7,17
  246:7 247:24
  251:15 253:1
  254:9
pulled  174:21
  175:3,18 206:15
  245:14,15 248:7
pulling  112:17
  131:23 173:16
  175:13 207:12
  243:4
pump  131:16
punishment
  126:7
purchase  60:22
purchases  58:25
  102:2

Eric Slawin                                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[purport - recall]                                              Page 39

| | | | |
|---|---|---|---|
| **purport** 236:3 250:2 | 47:14,19,21,25 48:10,19 60:12 | **r** | 94:3 140:6 141:19 |
| **purports** 108:22 114:11 171:23 243:13 | 66:14 72:5 83:5 95:20 97:18 98:14 104:16 | **r** 35:25 188:4 257:1 | **reason** 65:22 90:1 111:3,6 140:22 157:3 |
| **purpose** 67:6 71:12 72:15,16 87:17 163:9 178:3 254:25 | 118:6 122:12 124:2,5,8 127:10 132:6,17 136:1 137:14,17 | **raise** 135:10 189:14 **raised** 181:1 182:16 207:6 | 172:25 179:23 202:1 230:14 259:13,18,23 260:3,8,15 |
| **purposes** 11:21 14:17 29:20 57:4,16 58:1 60:2 69:18,23 71:17 72:18 75:23 76:2 | 139:19 166:3 168:18 169:18 173:4 180:22 187:13 192:9 198:21 199:18 200:20,20 | **raising** 182:10 222:5 **ramifications** 179:2 218:11,19 219:1 220:16 221:4,5,7,21 | **reasons** 66:4 204:5 259:8 **recall** 19:4 40:21 41:14,15 43:14 55:22,22 58:6,8 58:11,14 60:8,20 |
| **pursuant** 179:21 180:2 259:6 | 202:21 217:21 227:7,15 233:9 | **ran** 51:24 **rate** 16:16 | 68:22 69:3 74:3 89:14 90:23 |
| **pursue** 37:3 **pursuing** 69:19 | 234:19 236:7 243:12 250:12 251:22 252:7 | **reach** 119:15 136:11,22 137:2 137:8,17 | 95:7 112:10 128:5 134:7 135:6 140:10 |
| **put** 122:25 123:22 130:11 130:16 131:3 | **questioning** 85:20 **questionnaire** | **reached** 119:11 137:10 192:16 192:18 | 141:13 142:25 144:4 145:6 151:15,18,19,22 |
| 143:1 155:22 157:6 169:3 188:18,23 | 242:13 **questionnaires** 204:15 216:12 | **reaction** 203:24 220:14 **read** 47:21,23 | 151:23 152:5,12 155:1,21 156:21 159:1 165:9,18 |
| 191:18 196:17 199:9 200:4 203:15 204:1,2,8 | 217:1 220:7 **questions** 13:19 50:20 108:21 | 124:4,6 137:13 137:15 148:8,9 203:4,15 208:17 | 166:22 167:24 168:3,6,20 170:12,13 172:2 |
| 218:5 221:7,9,21 240:13 | 113:4 115:15 129:9 148:21 201:9 256:5,8 | 208:21 210:7 213:3 223:7,8 226:7 228:11 | 177:18,22 182:21,23,24 185:14 189:16 |
| **putting** 196:9 **px739** 248:3 | **quick** 128:23 209:9 | 258:3 259:2 **reading** 234:18 | 196:9 218:3,18 220:25 221:17 |
| **q** | **quite** 62:11 211:25 246:11 | **reads** 133:4 204:23,25 | 223:17 245:19 245:24 255:1,6 |
| **qualify** 146:8 **quarter** 130:25 **question** 13:16 17:20,22 45:25 | **quote** 208:18,23 225:12 | **ready** 85:4 **real** 209:9 **really** 17:20 27:20 85:7,8 | 255:19 |

Eric Slawin | July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[recalled - remaining]** | Page 40

| | | | |
|---|---|---|---|
| **recalled** 200:17 | 129:4 170:18 | **recover** 127:1 | **regard** 118:18 |
| **receipt** 157:24 | 209:12 242:25 | **redact** 11:2 | **regarding** 61:15 |
| 198:5 232:7 | 256:1 | **redacted** 11:4 | 71:25 119:7 |
| **receive** 23:15,18 | **recipients** 170:2 | 114:22 243:14 | 188:22 199:15 |
| 23:25 24:14 | **recited** 158:25 | **redesign** 220:2 | 201:11 223:22 |
| 25:7 28:15 | **recognize** 109:20 | **reduced** 124:19 | 227:12 244:15 |
| 31:18 37:8,11 | 114:8 116:25 | 124:23 | **regardless** |
| 39:15 40:6 41:3 | 154:12 174:4 | **refer** 17:10 | 163:20 168:7 |
| 42:11 59:12 | 210:8 212:19 | 51:12 | **registered** |
| 64:5,10 154:25 | 248:8,18 | **reference** 224:18 | 178:14 |
| 164:2 207:25 | **recollect** 140:7 | 225:1,8,13 | **regularity** |
| 208:3 241:3 | 140:22 | 227:22 253:23 | 156:24 |
| 253:16 | **recollection** 13:7 | **referenced** 87:25 | **regulation** |
| **received** 24:16 | 13:10 14:18,21 | 214:17 | 217:15 218:2 |
| 25:14 27:2 | 151:24 229:13 | **references** | **regulations** |
| 33:25 34:7 | **reconvene** | 224:16 234:15 | 27:22 218:4 |
| 36:19 37:18 | 128:23 | **referral** 44:10 | **regulator** 162:9 |
| 56:24 58:24 | **record** 8:4,12 | 86:8,9 | 162:15 |
| 59:8,9 110:25 | 10:15,19 47:17 | **referred** 44:7 | **rehire** 45:24 |
| 111:24,25 126:8 | 47:23 50:3,7 | 92:8 234:13 | 46:3 |
| 133:8 134:5 | 81:10,13,16,18 | **referring** 99:8 | **rehired** 46:3 |
| 148:1 153:8 | 84:7,9,11,14,22 | 225:14 234:20 | **rei** 89:10 |
| 157:22 158:22 | 85:9,10,12 108:3 | 234:22 | **reiterated** 140:1 |
| 168:10 171:20 | 108:4,6 124:6 | **reflect** 67:22 | **relate** 18:22 |
| 203:5 208:6,8 | 128:15,17 129:3 | 100:12 | **related** 23:10,19 |
| 210:11,13 | 129:6 137:15 | **reflected** 61:16 | 23:22 24:13 |
| 212:20,22 236:3 | 170:17,19 | 97:8 99:3 118:9 | 28:14 29:19 |
| 236:5 238:5 | 209:11,13 | **reflecting** 59:9 | 43:4 201:19 |
| 244:15 245:1 | 242:23 243:1 | 68:1 111:7,11 | 257:12 |
| 253:10 | 255:25 256:2,9 | 112:3 171:23 | **relations** 19:3,7 |
| **receiving** 23:6 | 257:10 | 255:8,9 | **relationship** |
| 28:19 134:7 | **recorded** 50:24 | **reflects** 110:5 | 216:11,18 |
| 139:5 157:1,19 | **records** 68:15 | **refresh** 13:7,9 | **relative** 211:12 |
| 180:1 208:7 | 80:23 97:6,10,13 | 14:21 | 218:4 231:13,16 |
| 213:14 | 97:14,21 99:1,2 | **refreshing** 14:17 | **release** 107:20 |
| **recess** 50:5 | 99:4 100:2,8,12 | **refused** 165:7 | **relocate** 90:6 |
| 81:17 84:10 | 118:10,15,19,23 | 169:5 204:3 | **remaining** 160:6 |
| 85:11 108:5 | 119:5,6 | | |

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 302 of 317
Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[remediation - responsibilities]                                    Page 41

**remediation**
  182:18
**remember**  13:11
  22:5,6 27:15
  31:23,24 35:15
  40:5,25 70:4
  80:10 90:21
  105:13 117:19
  118:8 130:22
  135:9 144:5
  145:24 152:21
  153:13 155:14
  158:18 165:12
  166:7,14 174:19
  182:9 194:7
  198:6,16 201:22
  202:16,22
  216:19 217:8
  222:5 223:14,16
  224:22 240:12
  246:23,24
  249:13,15
  255:12,17,20
**remembers**
  152:2
**reminds**  248:20
**remotely**  30:1
  36:2
**remove**  181:20
  184:7,11,15,18
**removed**  155:18
  182:12
**renee**  87:5,6
**rental**  34:17
**rep**  2:16 9:11,12
  82:23
**repeat**  45:25
  47:19 72:5

103:20 104:16
104:23 124:2
187:13 193:23
198:21 227:7,15
242:14 250:12
**repeatedly**
  185:16
**report**  33:22
  35:22 38:22
  39:9 52:8,21
  55:24 125:16
  126:3 149:16
  150:13,19,21
  189:5 235:23
**reportable**  52:10
**reported**  31:25
  32:3 109:1
  125:19 126:2,14
  149:25 150:15
  224:24 255:16
**reporter**  8:22,24
  10:14,18 47:24
  55:18 124:7
  137:16 138:1
  209:8 257:6
**reporting**  125:14
  125:18,23
  149:14 150:3,6
  150:10,24,25
  156:18,23 188:9
  220:3
**reports**  126:6
**represent**  8:12
  8:16,21 70:10,15
  70:17 204:16
  220:7
**representation**
  10:25 176:14

192:9
**representations**
  176:11 227:2
**representative**
  9:25 81:24 82:2
  82:8,10 83:12,15
  84:20 169:21,24
  206:2
**represented**  70:9
  174:24 176:6
  220:6
**representing**  8:5
  9:15,25 83:24
  192:20 216:14
  226:25
**represents**  82:4
**reputation**
  141:18
**request**  4:4
  111:25 112:7
  171:1 202:18
**requested**  258:3
**require**  180:7,17
  181:21
**required**  4:10
  62:24 140:16
  156:18 179:21
  212:10
**requirement**
  179:13,14
  180:14
**requirements**
  27:22 179:3
  180:6
**requires**  178:17
**research**  160:18
  178:23,24

**reserve**  85:24
**reside**  169:8
**resign**  175:5
**resigned**  49:19
  49:21 51:8
  144:14,15
**resolve**  195:22
**resolved**  84:20
**resources**  56:7
  56:13,19 127:19
  127:23 128:3
  134:12 135:11
  144:7 157:5
  158:13
**respect**  27:8
  28:3 41:2,3
  42:15 56:25
  58:9,12,22 75:12
  77:4 82:4 83:23
  85:24,25 91:6
  105:14 113:4
  118:20 135:22
  135:25 137:6,21
  139:1 180:24
  187:12,18
  203:22 216:15
  227:1 250:16
**respond**  194:12
**responds**  235:19
  235:21
**response**  67:18
  68:5 167:7
  206:8 209:4
  240:14
**responses**  13:15
  77:2
**responsibilities**
  125:8 140:19

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 303 of 317
Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[responsibility - rubin]**                                Page 42

**responsibility**
151:2 155:17
156:9,14 258:4
**responsible**
22:17
**restate** 95:20
192:17
**result** 24:17
28:16 44:6,10
59:7 60:5,22
123:17 126:12
139:14,21 182:1
182:4,11,15
197:20 198:14
222:12
**resulted** 127:8
**resume** 144:5
146:11
**resuscitate**
131:18
**retail** 102:1
**retain** 69:18
80:23 172:19
173:7
**retained** 69:15
170:10 172:21
174:9 229:17
**retal** 123:5
**retaliated** 29:6
65:21 122:15,17
184:23 205:24
206:18
**retaliation**
122:22 123:1,6
123:12,15,17,20
124:10 139:8
184:24 204:10

**retention** 69:19
**retired** 80:22
**retirement** 32:23
33:2 40:16,19
41:12 86:7,8
127:2
**return** 5:15,19
6:6 52:23 63:6
108:12,23,25
110:10,10
112:21 114:12
115:11 117:3,17
167:12 170:6
172:7,11,12,16
174:10 177:23
213:3
**returned** 258:8
258:10
**returns** 62:20,23
110:15 111:5
**reuptake** 80:9
**revenue** 5:18 6:5
34:24 35:2
112:20 115:10
**review** 15:22
109:4 122:24
123:3 132:7,14
153:14 207:22
209:25 214:9
226:1 234:3
258:4
**reviewed** 135:8
226:4
**reviewing** 109:6
135:9
**right** 10:1 11:2
13:18,23 14:23
15:17 17:9

38:11 45:3
76:24 81:9 84:5
85:9 88:10
93:22 112:15
113:19 115:4
117:23 129:8
131:1,9,21
132:17 134:4
135:7 138:5,8
141:14 143:18
144:22 145:7
146:22 153:16
157:19 159:10
159:20 168:14
168:23 173:10
175:22 181:17
189:1 198:17
199:20 200:1
207:10 212:18
213:18,18,20
214:13 215:19
219:17 225:16
227:25 236:23
239:22 244:20
244:23 250:4,19
254:7 255:21
**rights** 3:20 85:24
148:14
**rise** 138:17
**risk** 35:17 38:21
42:20 134:25
146:4,12,12
155:17,19 156:8
156:10 188:7
**rob** 169:16
**robert** 2:2 8:18
12:7 15:8 212:5

**robin** 1:16 8:23
47:21 85:8
124:4 137:13,23
257:6,20
**role** 29:9 33:19
33:21 35:16
36:8 42:18
134:24,25 135:6
145:25 146:3
155:23 163:25
188:5 189:25
190:11,12,18
198:3 220:2
**roles** 33:20
53:24
**room** 11:13,16
131:15
**roswell** 258:17
**roughly** 70:8
77:20 78:21
79:4 87:16
89:22 90:21
92:16 96:6
98:10,22 103:7
105:23 152:25
161:22 183:17
219:22
**routers** 25:6
**routine** 199:13
199:17
**routinely** 127:15
191:24 194:9
197:4 217:9
**row** 133:3,4,6
**rpr** 1:16 257:20
**rubin** 126:4
150:20,21,24
204:14 216:10

Eric Slawin

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

July 19, 2022

**[rubin - sent]**                                                           Page 43

216:17 219:18
219:24 220:11
252:13,21
**rule** 223:9,11,15
259:6
**rules** 223:7,8
259:6
**run** 25:5
**running** 11:19
255:4

**s**

**s** 1:7 30:14,14
35:25 188:4,4
**saha** 235:23
**saia** 251:9
**salary** 31:3,5
34:9,12 36:11,13
37:18 39:18,20
53:2 124:19
**sale** 60:17,22
**sales** 58:25 198:5
231:14
**sara** 235:23
**sarbanes** 27:19
27:20 186:2
187:3 223:25
224:1,3
**sat** 125:11
**satisfy** 226:22
**savings** 40:16
**saw** 77:15,17
88:1 91:21 92:4
105:17,19,21
118:11,16
192:13 224:10
240:12

**saying** 65:11
69:7 84:2
142:25 151:23
152:5 156:3
165:9 168:4
183:7 184:17
191:25 198:16
204:7 206:23
208:15 211:25
221:20 232:19
232:21 240:12
**schedules** 110:11
110:12,14,22
111:4 114:18
**school** 27:4 93:8
93:13 94:20,25
95:5,9 96:19
97:2,15 99:23
**screen** 107:17
108:9
**scroll** 113:2,3
154:6
**scrolling** 116:19
**seal** 258:8
**search** 245:21,22
**sec** 18:20,22
160:14,21 161:2
161:9,10,12,25
169:21 175:8
183:13,20,21
249:9,15
**second** 15:3
81:11 107:4
123:23 130:8
166:17 226:8
245:3
**secure** 197:24
218:22

**securities** 6:12
26:10 42:21
54:4,6 59:1 60:2
60:3 62:17
164:1 243:8,15
243:17
**security** 4:12
135:24 179:7
195:4 212:11
**see** 44:9,12,25
77:19 79:2
86:20 87:12
88:20,22 90:20
92:3 105:23
131:12 133:2,6,9
134:19 152:25
153:14 158:11
164:15 166:4
167:5 168:13,19
169:4 173:25
209:3 227:17,19
227:22 230:21
232:1 249:14
250:5,7 252:14
254:6
**seeing** 79:13
80:18,21 87:17
89:19 91:22
92:11 168:18
200:17
**seek** 46:10 67:15
67:19 68:7,19
90:1 131:9,12,12
178:5 184:6
**seeking** 71:17
72:8,13 119:18
120:2 121:24
122:3,6 138:11

138:12,14
141:15 143:25
229:14
**seen** 77:14 86:25
88:9 90:16 97:7
214:4 254:17
255:8
**selective** 206:10
**self** 107:1,8
155:18 156:9
179:17 181:11
195:14,20,25
196:5 237:17,18
237:22
**send** 136:21
164:16 170:8
177:15 178:6,10
232:22 235:20
258:9,13
**sending** 159:23
160:14 163:2,10
163:18 164:3
165:24 166:9,24
178:2 202:13
203:19 207:3
**senior** 192:14
224:15
**sent** 144:5
154:20 155:1
164:24 166:4
167:4,9,13,18,25
168:25 172:17
177:11 185:11
199:19,25 203:9
203:13 204:6
206:1,19 207:5,7
209:2,5 214:14
214:15,19 215:1

Eric Slawin                                            July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[sent - slawin]**                                         Page 44

215:15,17,20
225:7 226:13,17
231:25 233:4
235:10 238:23
239:21 253:25
254:23 255:5
**sentence** 156:7
231:12
**sentences** 156:17
**separate** 19:9
66:2 92:3
117:12,20
**separated** 64:25
65:5,8 117:13
**separation** 65:2
65:10,19,23,24
129:12
**september**
105:24 139:2
149:17,19,20,22
150:5,7,11,23
153:8 154:16
191:17 192:7
205:11 219:17
219:21
**series** 25:23,23
25:24 26:3,12,16
26:17
**seriousness**
224:15
**serotonin** 80:9
**service** 34:24
35:2 134:16
**services** 1:7,7
2:16 3:13 6:8
7:18 8:9,17 17:9
45:16,19 62:10
128:11 154:2

173:20
**session** 89:21
92:15
**sessions** 87:15
91:10,14,17
92:12 100:6
**set** 18:23 31:11
115:5 124:15
144:7 164:7,13
206:16 257:9,16
**setting** 77:21
157:3 163:8
**severance**
129:15
**sexual** 43:23
**share** 108:9,9
218:25 219:6,7
221:8
**shared** 215:1
**shareholders**
183:14 218:16
218:17,25 219:8
219:11 220:9
**sheana** 38:23
39:14
**sheer** 138:20
**sheila** 2:16 9:9
9:11
**sherra** 188:2
218:14
**sherrie** 188:3
**shield** 40:13
**show** 132:16,18
**showing** 82:15
**shown** 12:25,25
13:3,6,7,9,14
14:13,17,20

**shows** 233:18
**sia** 238:1
**siai** 238:1,3
**sign** 129:12
213:3 214:21
215:5 258:3
**signature** 147:22
149:5 158:4
257:18 258:1,11
**signed** 148:7
149:7 258:6,8,10
**significant** 247:7
**signing** 157:25
157:25 214:22
**signs** 222:13
**similar** 113:4
115:15 143:5
**simple** 233:9
243:13
**single** 61:4 82:23
189:2
**sir** 13:21 17:7
29:7 36:19
47:13 87:10
99:11 109:20
114:8 165:14,21
166:5,16,17
168:22 172:11
208:1 217:3
226:10 229:2
233:9 234:19
248:19
**sister** 20:24 21:2
21:13
**site** 39:12 112:7
**sites** 68:12
**sitting** 10:6
69:11 166:7

168:15,17
189:19
**situation** 179:1
231:13,16,23
255:6
**six** 242:19
**sixty** 26:1
**slain** 4:9 212:9
**slawin** 1:3,12 3:3
3:17 4:15 5:8
6:18 7:5,19 8:2
8:8,10,19 9:1,8,8
10:1,2,2,4,6 11:8
11:9 71:9 84:13
86:2,5 108:15
113:1 115:13
116:25 118:1
128:19 129:8
132:1,23 133:6
133:16 134:4
138:10 147:6,9
147:21 148:18
149:4,14 153:23
154:2 171:12,16
173:24 174:3
207:14,19
209:19,23
213:24 214:4,9
229:6 234:12
237:16 238:20
239:8 241:2
243:12 244:13
245:11 248:7
251:3,23 252:12
252:14 253:9
254:17 256:6
257:8 258:1
260:20

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 306 of 317
Eric Slawin                              July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[slawin.eric - states]                                    Page 45

**slawin.eric**
67:13 72:14
**slawineric** 66:24
67:4
**slip** 86:3
**small** 54:12
**smith** 38:23
39:14
**smoking** 94:6
**social** 10:16
76:12,13
**socially** 99:20
**solan** 4:8 6:17
167:4 209:19
212:9,20,23
213:2,10,13
214:18
**solution** 237:24
**solutions** 8:6
**somebody** 92:13
123:9 182:5
191:4 195:10
255:16
**somewhat** 215:3
**son** 21:14,15
**soon** 51:19 131:3
145:17 146:13
175:18
**sooner** 100:11
242:2
**sorry** 8:14 9:17
15:12 17:2
20:16 24:22
25:25 33:8
35:12 38:8
45:25 55:18
59:20 60:13
72:5 81:4 87:6

95:18,20 103:20
104:22 105:20
107:5 116:11
120:6 123:23
128:14 129:20
130:3,8 134:23
137:8 138:2
140:9 144:24
146:19 147:2
152:1 153:5
163:15 171:4,6,7
171:8 173:3
186:3 187:13
192:17 206:7
212:3,4 217:19
219:10,10,19,20
224:10 225:20
227:14 228:3
235:9 237:11
239:18 244:8
248:1 250:12
251:11,21 252:2
**sort** 23:16 24:14
24:16 25:13,14
28:15,19 56:24
112:3 129:12
192:25
**sought** 69:12
92:17,20,23 93:2
105:13 106:22
**sounds** 149:23
165:4
**source** 42:12
50:10 52:14
66:7 109:2
110:6
**sources** 34:15

**space** 193:21
**span** 97:4
**speak** 76:25
87:11 88:13
230:18 232:3
**speaker** 123:9
**speaking** 118:25
152:20 178:20
**specific** 68:22
72:21 99:24
100:2 163:22
202:3
**specifically** 69:3
140:12 151:15
152:12 155:14
194:17 195:23
198:16 219:9
240:16 255:1
**specifics** 201:6
218:3
**speeding** 19:18
**spell** 35:24
**spend** 97:22
**spending** 97:25
98:3,8,17,20
**spent** 240:10
**spoke** 146:11
191:24 192:10
205:3
**spouse** 64:25
65:5,8 66:4
106:22
**spreadsheet**
177:20
**spreadsheets**
177:19,21,23
**ss** 257:3

**staff** 133:5
**stamp** 235:14
**stand** 24:24
107:13 179:5
215:19,21
**standards**
135:24 179:8,8
180:3
**start** 30:24 79:13
81:15 92:11
99:19,21 148:21
240:2
**started** 54:8
75:11 100:11
160:22 191:25
192:3 194:22
237:23
**starting** 34:12
69:23
**starts** 251:22
**state** 8:11 17:25
56:8 114:12,15
117:3 155:3
175:16 193:16
217:14 218:1,4
230:1 231:11
257:2,7
**stated** 216:4
224:11
**statement** 58:24
156:12,16,22
157:3 158:3,11
200:12 230:3
240:1 259:8
**statements** 119:7
220:16
**states** 1:1 156:7
214:21

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[status - t]**                                        Page 46

| | | | |
|---|---|---|---|
| **status**  156:18 | 242:4 244:9 | **suffer**  60:4,16,21 | 47:20 56:10 |
| 231:22 232:18 | 253:6 254:14,18 | **suffered**  61:2 | 61:14 64:4 72:6 |
| **step**  123:13 | 255:20 | 90:8 | 76:14 84:19 |
| **steps**  67:19 68:7 | **strongly**  126:21 | **sufficient**  227:1 | 103:22 104:17 |
| 71:24 72:7 | 126:21 | **suggest**  190:21 | 107:13 110:17 |
| 194:8 213:8 | **structure**  125:23 | **suggestion** | 113:15 124:3 |
| **stipulations** | **structured** | 237:17 | 125:21 130:9 |
| 168:9 | 156:18 | **suicide**  127:3 | 135:3 136:2 |
| **stock**  60:5,17,23 | **study**  23:25 25:1 | 130:7 131:4,6,10 | 146:10 148:20 |
| 61:8,13,19,21 | 25:3 | **suing**  17:8 | 157:14 161:19 |
| 63:1 193:15 | **stuff**  127:3 | **suite**  2:3 258:16 | 168:16 169:3 |
| 240:8 | **style**  151:17 | **summary**  6:13 | 177:14 178:9 |
| **stocks**  57:4,12 | **stymied**  141:20 | 243:9 | 184:12 185:5 |
| 57:16 58:1 | **subject**  4:9 5:9 | **summer**  102:24 | 198:22 200:11 |
| **stomach**  131:16 | 195:7,14 212:9 | 102:25 103:2,3 | 221:6 249:20 |
| **stood**  205:2,3 | 239:8 | **sunday**  15:1,17 | 250:13 252:9 |
| **stop**  80:21 89:19 | **submission** | **suntrust**  26:10 | **surprised**  158:21 |
| 109:11 113:19 | 243:23,25 | 26:14,19 54:4,6 | 182:13 |
| 116:17 147:14 | 244:16 248:22 | 54:11,16,24 | **surrender** |
| 148:24 208:14 | **submit**  114:15 | 55:24 56:2,4,9 | 246:19 |
| 248:14 249:4 | 157:3 | 56:12 79:6 | **susan**  56:1 |
| **stopped**  80:18 | **submitted**  68:25 | 93:19 144:10,13 | **susceptible** |
| **storage**  75:7,12 | 110:21 114:19 | 145:8 152:20 | 118:24 |
| 75:15,23 | 244:2,18,21,24 | **superior**  188:10 | **suspect**  82:25 |
| **store**  89:10 | 245:2 248:24 | 188:11 189:14 | 83:3 |
| **stored**  73:7 | 249:17 | 189:23 205:19 | **suspended**  86:19 |
| **strategies** | **subscribed** | 220:10 | **sustain**  158:5 |
| 181:23 | 260:21 | **supervising** | **swalin**  9:7 |
| **strategy**  237:24 | **subsequent** | 151:3 | **swear**  8:24 |
| **street**  2:9 39:5 | 121:11 123:16 | **supervisor**  30:9 | **sworn**  9:2 257:9 |
| **strength**  178:20 | 160:22 249:5 | 30:11 | 260:21 |
| **string**  4:18,22 | **subsequently** | **support**  22:18 | **synonyms**  221:5 |
| 5:4,6,12 6:15 | 144:6 | 52:19 198:5 | **system**  25:6 |
| 7:14,16 225:23 | **substance**  92:21 | 210:23 231:14 | **systems**  178:19 |
| 233:3,18,24 | 95:2 259:7 | **supposed**  53:5,9 | **t** |
| 237:3 238:5,17 | **substances**  95:1 | 53:15 | **t**  257:1,1 |
| 238:25 239:15 | **suburbs**  89:6 | **sure**  18:10 32:22 | |
| 240:24 241:18 | | 33:11 41:18 | |

Case 1:19-cv-04129-AT   Document 174-1   Filed 01/08/25   Page 308 of 317

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[tablet - termination]** Page 47

**tablet** 73:6,19
**tadalafil** 16:10
**take** 16:7,9 20:1
  27:10,12,14 28:9
  41:24 49:24
  50:1 52:18,21
  80:15 81:13
  82:16 84:5,15,15
  84:24 85:5,18
  128:6,6,19,22
  129:1,17,22
  138:6 149:12
  170:14 175:23
  207:19 209:8
  222:18 225:2,8
  230:25 234:2
  238:12 239:3,4
  242:15,21
  250:20 255:21
**taken** 10:3 25:13
  27:7 28:18 50:5
  71:24 72:7
  81:17 84:10
  85:11 108:5
  125:2,5 129:4
  155:19 170:18
  209:12 225:4
  242:25 256:1
**talk** 70:20 90:14
  92:13 140:23
  178:8 231:24
**talked** 29:4
  121:13 140:12
  191:2 219:25
  222:4 234:21
  240:14
**talking** 51:7 86:5
  127:4 138:9

166:19 172:21
193:3 194:23
200:3 204:13,14
219:11 227:4
237:23 251:4
**talks** 200:19
**tampa** 30:5,7
  36:7 37:22
**tantamount**
  217:1
**targeted** 40:4
**task** 145:1
  155:11,13,15
  181:25 182:2,6,7
  182:12 196:15
**tasks** 141:5,6
  144:23 156:15
  182:13
**tax** 5:15,18 6:5
  35:2,2,3,6,7
  52:21,23 56:24
  59:9,12,20 62:19
  62:22 63:6 65:4
  108:12,23,24
  109:24 110:10
  110:10,15 111:5
  112:3,7,7,20
  114:12 115:10
  117:3,16,17
**taxable** 52:3,5
  111:1
**taxes** 52:21
  110:18,21,24
**taxing** 35:5
**tcr** 6:13 243:9
**team** 190:14
  198:5,5 231:14

**teenager** 64:19
**telephone** 14:25
  15:6
**tell** 23:9 43:19
  43:22 44:1 46:6
  69:5 85:5
  100:13 108:20
  119:1 127:6
  132:2,8 139:19
  144:3 146:7
  152:7,13 153:24
  158:19 164:2,19
  165:1 167:22,23
  172:9 176:1
  185:21,25 186:7
  186:12,16,20,25
  187:5,9,16
  188:12,16,18
  190:25 191:23
  193:3 194:5,14
  194:15 198:12
  200:21 201:2
  202:8,10,21
  203:14 209:24
  213:10 217:24
  219:23 221:1
  222:2 226:2,3
  230:14,25 240:9
  242:17 247:5
**telling** 63:14
  151:19,22,25
  152:2,5 163:24
  164:3 165:10
  166:5 168:15,17
  192:3 197:13
  204:12 206:24
  221:25

**template** 196:11
  196:14
**ten** 49:18 50:1
  77:15,20 128:24
**term** 18:9
  208:18
**terminate** 65:23
  184:6,25 185:3,9
  189:25 190:7,18
  190:23 200:10
  201:20 202:5
  210:19,24 211:4
  211:6,13,18
  218:9 221:22
**terminated**
  42:25 43:2,9
  47:6,10 48:1,8
  49:20 51:19
  54:18,21 55:5
  65:20 120:4
  121:6 122:16
  126:22 129:11
  130:10 141:22
  142:13 143:2
  145:9,9,10
  201:13,22
  203:25 204:1,9
  205:7,11,16,21
  206:1,17 207:2
  211:1,9,16,24
  221:13 233:7
  244:22,24 250:9
**terminating**
  127:11 166:23
  187:1
**termination** 37:4
  45:4,13,22 46:1
  46:11,14 71:19

Case 1:19-cv-04129-AT | Document 174-1 | Filed 01/08/25 | Page 309 of 317
Eric Slawin | July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[termination - time]** Page 48

| | | | |
|---|---|---|---|
| 71:19 72:2,9 | **thank** 9:20 11:6 | 118:21 123:8,8 | **thrown** 141:19 |
| 73:12 86:17,18 | 88:15 109:18 | 133:17 144:1 | **ticket** 19:15,18 |
| 101:13 117:21 | 114:7 115:3 | 153:2 155:8,22 | **tiktok** 76:15 |
| 121:11,20 | 116:24 133:19 | 158:20,23 159:4 | **time** 8:7 20:3 |
| 122:18,23 123:2 | 146:23 147:4,13 | 165:4 167:2 | 21:17,23 22:19 |
| 123:18 124:18 | 147:20 149:3,11 | 168:9 169:2,25 | 24:21 26:2,11,13 |
| 124:24 125:3,6 | 153:22 170:24 | 172:15 176:3 | 26:17,18 33:24 |
| 125:15,22 | 173:18 209:22 | 181:3,15 185:4 | 34:3,14,22 35:18 |
| 127:18,22 136:9 | 210:6 212:7 | 192:8 195:11 | 37:7 38:4,15 |
| 138:18 143:14 | 214:2 225:22 | 198:3 201:21 | 41:22 44:25 |
| 150:14 153:11 | 228:6 229:1 | 202:15 206:6,9 | 45:8,11,18,22 |
| 158:8 160:22,25 | 233:23 234:9 | 215:3 216:10,24 | 46:1 49:3 50:4,7 |
| 161:10 162:21 | 237:2,12,15 | 220:3 242:2 | 50:8,14 52:2,17 |
| 163:1 170:5 | 239:20 240:20 | **thinking** 126:15 | 54:5,23 55:5 |
| 172:1,8,13 173:7 | 240:23 243:7 | **third** 14:24 44:3 | 63:8 64:15,20 |
| 174:10 176:9 | 244:12 248:3,17 | 46:25 | 65:17 71:18 |
| 177:3,24 182:1 | 250:24 251:13 | **thirties** 247:18 | 72:2 73:12 76:1 |
| 185:24 186:7,21 | 253:5 256:6 | **thought** 87:24 | 79:2,5,19 80:16 |
| 187:1,10,15 | **thanks** 254:13 | 89:15 104:20,20 | 80:18 81:19 |
| 197:18 199:9 | **theirs** 156:14 | 120:12 137:24 | 85:4,13,21 86:8 |
| 200:23 201:12 | **thing** 83:3 | 139:22 140:23 | 86:25 87:13 |
| 202:2 203:8,9,18 | 122:20 138:23 | 155:1,25 156:15 | 88:3,5,20 90:18 |
| 206:24 210:17 | 171:13 189:18 | 187:21 189:7 | 90:19,21 91:22 |
| 229:18 243:18 | **things** 69:6 | 194:15 200:17 | 92:17,20,23 93:2 |
| 244:3,19 248:24 | 123:16 140:13 | 201:8 205:5 | 93:6,9,12 94:7 |
| 249:6,9,11,19,21 | 140:13 159:8 | 216:24 232:18 | 94:25 95:5 |
| 250:3,14 | 172:16 180:17 | **thousand** 103:18 | 96:10,23 97:2,4 |
| **terms** 10:15 28:4 | 183:14 195:11 | 103:18,24 | 97:11 98:23 |
| **testified** 9:3 | 204:15 | 247:13 | 99:7 101:9,17 |
| 192:5 245:14 | **think** 10:17 16:3 | **threatening** 44:2 | 105:17,21 106:4 |
| **testify** 69:6 | 20:1 23:24 29:4 | **three** 12:2,9 21:4 | 106:12,25 107:7 |
| 119:13,16 | 49:5,18 56:8 | 26:1 44:19 | 108:7 117:11 |
| **testimony** 17:6 | 63:2,4 67:17 | 51:10 70:6 | 119:21 120:2,16 |
| 86:16 94:19 | 71:9 74:19 78:2 | 87:16 88:2 96:8 | 120:17 121:19 |
| 96:18 97:11,14 | 78:12 82:10,14 | 102:21 170:14 | 124:15 125:20 |
| 101:23 130:21 | 82:17 85:23 | 175:19 216:7 | 127:6,17,22 |
| 166:11 179:22 | 87:4 100:11 | 218:7 249:17 | 128:19 129:7 |
| 257:10 259:3,7 | 107:19 112:10 | | 135:10,15 136:6 |

Eric Slawin

July 19, 2022

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[time - tryon]**                                                                                   Page 49

| | | | |
|---|---|---|---|
| 136:7,22 139:11 | 69:5,11 85:7 | **trace** 11:10 | **treating** 78:3,8 |
| 146:10 148:6,7 | 86:16 166:8 | **tracking** 55:9 | 78:15 |
| 149:24 150:2,5 | 168:17 189:19 | **trade** 60:3 61:4 | **treatment** 80:23 |
| 150:25 157:16 | 256:4 | 61:20 90:9 | 80:24 86:6,7,13 |
| 159:22 160:17 | **told** 43:15 46:2,7 | **traded** 61:19 | 90:2 91:7 92:18 |
| 160:19,20 | 46:9 100:5 | **trades** 59:7 61:5 | 92:21,24 93:4 |
| 162:14,17,23 | 130:24 153:13 | 61:6,8,13,15 | 98:24 106:19 |
| 167:8,12 170:20 | 165:5,10,19 | 62:3,8,11,13,17 | 127:20 131:9 |
| 174:25 176:8 | 166:15 168:5,6 | 62:22 63:1 | 135:23 197:20 |
| 177:2 179:16 | 168:21 185:15 | **trading** 42:21 | **treatments** |
| 182:16 186:6 | 185:16 187:21 | 57:4,12,16 58:1 | 90:15 |
| 187:9 191:3,17 | 187:23 188:2 | 60:2,5 62:1 | **treats** 77:5 |
| 197:8,10,17 | 189:7,22 191:21 | 63:10,16 151:20 | **treicia** 187:22,25 |
| 199:8 200:22,23 | 193:1 194:5,9 | 151:22 240:11 | 198:19 218:17 |
| 207:20 209:14 | 197:3,3 198:2 | 240:15 | **trigger** 206:23 |
| 211:19 213:1 | 199:4,22 200:15 | **traffic** 19:15 | **troughton** 4:14 |
| 219:17 221:16 | 200:24 201:2,18 | **trained** 155:25 | 7:4 207:14 |
| 234:2 235:14,16 | 202:1,6,17,22 | **training** 24:17 | 213:24 |
| 239:24 242:17 | 206:17,19 | 27:5,6,8,18,21 | **truck** 49:9 |
| 242:24 243:2 | 211:15 215:15 | 28:3,7,22 155:21 | **true** 110:2 213:5 |
| 247:5 249:14 | 215:20 217:18 | **trajectory** | 213:7,11 257:10 |
| 251:8 252:21 | 217:20 219:1,17 | 141:19 | **trusted** 118:19 |
| 255:23 256:3,7 | 219:20 220:5 | **transactions** | **truth** 63:14 |
| 256:10 258:10 | 221:10,11,14,16 | 58:7,8,11,14,25 | 151:25 |
| **timeframe** 24:7 | 221:18,18,23 | 63:6 | **truthful** 17:6 |
| 25:8 | 225:2 230:17 | **transcribed** 51:2 | 44:22 91:9,13,16 |
| **timely** 141:10 | 231:24 232:6 | **transcript** 7:24 | 100:15,17,20 |
| **times** 16:9 44:17 | 233:8 | 258:4,9,11 259:3 | **truthfulness** |
| 79:14 96:8 | **tone** 159:4 | **trash** 246:8,13 | 159:14 |
| 216:4 246:11 | **top** 71:2 113:12 | **treat** 16:15 | **try** 128:23 |
| **tip** 162:14 | 113:13 115:22 | 99:12 | **trying** 13:20 |
| **title** 30:15 35:14 | 115:23 116:10 | **treated** 16:18 | 116:11 127:1 |
| 35:15 38:20 | 174:2 239:12 | 77:23,25 78:4,14 | 137:9 140:15 |
| 125:5 145:22,23 | 251:24 252:12 | 79:23 99:10 | 201:21 206:22 |
| 145:24 | **total** 32:2 36:11 | 118:3 119:12 | 231:20,21 255:6 |
| **today** 10:7 11:13 | 103:12 124:16 | 126:21 136:25 | 255:17 |
| 11:24 15:20,25 | **totally** 33:11 | 181:16 | **tryon** 39:5 |
| 17:5,11 68:25 | 141:18 204:17 | | |

Eric Slawin                                      July 19, 2022

Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[tuesday - veracity]**                                    Page 50

| | | | |
|---|---|---|---|
| **tuesday** 1:13 3:4 | 215:23 219:22 | 231:16 | 53:19 56:5 |
| 8:3 12:17 | 226:19 235:12 | **undertaken** 28:7 | 105:25 106:6 |
| **turn** 108:17 | 239:1 241:22 | **underwear** | 120:5,7,14 |
| **turned** 253:19 | 250:7 252:18 | 240:10,16 | 121:16 |
| **twenty** 16:23 | **ultimately** 182:1 | **unemployed** | **usage** 96:12 |
| 21:16 | 183:14 218:23 | 47:2 120:17,23 | 97:10,15 |
| **twice** 137:25 | **unable** 184:15 | **unemployment** | **use** 67:9 68:14 |
| 138:2 | 184:17 | 46:10 51:23 | 71:16 72:16,22 |
| **twitter** 76:14,16 | **unclear** 155:6 | **unexpected** | 92:21 93:17 |
| 76:18 | **uncomfortable** | 247:19 | 94:19 95:1,4,8 |
| **two** 12:13 17:1,3 | 204:18 | **unfair** 158:14 | 95:15,21,24 96:4 |
| 17:4 21:16 24:2 | **undersigned** | **unfortunately** | 96:15 97:1 |
| 30:23 39:14 | 259:2 | 110:9 | 102:1 180:11,24 |
| 41:20 42:3,8,12 | **understand** 9:23 | **unfounded** | 181:18,21 |
| 42:15 54:14 | 17:20 18:8 | 85:24 | 208:18 216:21 |
| 70:20 71:25 | 41:19 50:12 | **united** 1:1 | 217:18,20,22,23 |
| 72:8 82:24 | 81:25 83:25 | **units** 29:21 | 227:16 259:9 |
| 86:24 106:1 | 117:17 119:22 | **universe** 146:5 | **user** 76:18 |
| 128:24 129:2 | 122:11 127:5,6 | **university** 23:3 | |
| 150:15 156:16 | 128:2 132:23 | 23:11,11,13 24:4 | **v** |
| 189:4 195:19 | 156:13 159:6,9 | 24:9,9,12 | |
| 222:15 241:19 | 162:23 166:20 | **unlimited** 31:17 | **vacation** 62:9,12 |
| 245:3 | 168:16 179:1,3 | **unsuccessful** | **value** 219:6,7 |
| **twofold** 176:3 | 180:22 206:7,22 | 131:10 | **vanguard** 56:23 |
| **type** 18:11 24:11 | 208:22 210:16 | **ups** 49:2,4,8,12 | 57:7,9,13,20 |
| 25:4 28:13 | 211:17,23 | 49:17,19 51:8,9 | 58:9,15,16,22 |
| 29:14,15,19 33:2 | 231:12 | 51:11,12,20 | 59:7,13,17 60:6 |
| 33:10 40:19 | **understanding** | 52:12 56:4 | 60:18 61:17 |
| 74:18 201:8 | 85:14 86:15 | 120:25 121:4 | 111:11,17,22 |
| 247:1,4 | 151:4 161:20 | **urinate** 16:20 | 112:2,6 |
| **typed** 245:24 | 178:18,22 194:2 | **usaa** 29:8,9,12 | **variable** 31:1,7 |
| **types** 29:18 | 195:10 210:23 | 29:21,25 30:22 | 36:14,16,21 |
| | 232:1,5 | 31:18,25 32:4,6 | 39:22,25 |
| **u** | **understated** | 32:17,19,23 33:3 | **various** 29:15 |
| | 119:3 | 33:19,25 34:3,10 | 68:22 183:15 |
| **u.s.** 6:12 69:2,8 | **understood** | 34:15 35:9,21 | 199:14 247:3 |
| 243:8 | 148:3,5 176:23 | 37:3 38:19 | **veracity** 159:2,6 |
| **uh** 62:24 76:23 | 192:8 224:15 | 41:19,25 48:6,6 | 159:10,14 |
| 88:16 94:1 95:7 | | | |

Case 1:19-cv-04129-AT    Document 174-1    Filed 01/08/25    Page 312 of 317

Eric Slawin                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[verbal - went]                                      Page 51

**verbal** 165:22
166:19
**verbally** 43:13
43:16,20 153:13
165:9,19 166:14
166:15 168:6,20
168:22,23
202:22 221:12
**verification**
201:8
**verify** 231:21
**verisign** 242:13
**veritext** 8:5
258:7
**veritextproduc...**
258:14
**verizon** 76:8
**versus** 8:8 119:3
**video** 8:7 81:12
**videographer**
2:15 8:4,22 50:3
50:6 81:16,18
84:9,11 85:10,12
108:4,6 129:3,6
170:17,19
209:11,13
242:19,23 243:1
255:24 256:2,9
**videotaped** 1:11
3:2 8:1
**view** 153:24
**viewed** 165:2
**violate** 48:15
163:21,23 164:6
223:23,25 224:1
224:2,4
**violated** 48:18
48:22 162:19,24

167:1 186:2,9,14
186:22 187:2,6
208:9,15 217:14
218:1
**violation** 4:12
43:3,4,8 46:7
47:7,11 48:2
121:7,21 141:22
142:14 163:12
164:20 165:6,15
165:19,24
166:10 187:12
187:18 207:7
208:20 212:11
222:12 227:22
**violations** 48:8
**virtual** 1:11 3:2
8:1
**virtually** 191:25
**visa** 102:6,10,11
102:12,13
222:14,19,24
223:13
**visits** 44:20,22
88:2
**voice** 220:23
**voluntarily**
41:24 42:22
51:8 54:15,19,20
93:3 143:17
**voluntary** 37:5
49:22 179:8,10
179:13
**vs** 1:5

**w**

**w** 31:25 32:3
42:14 56:3

110:25
**wake** 131:19
**want** 12:24 29:5
41:18 69:5
82:12 84:14
132:15,16
133:15 160:8
168:16,19
179:11 183:6
221:9 225:3
229:2 243:16
251:23 253:9
**wanted** 92:13
133:17 155:24
175:1 179:1
181:15 203:1
224:25 231:21
232:17,17 252:8
**warehouse**
49:15
**way** 17:5,13
87:20 113:10
124:19,24 125:9
125:12,14
126:21 136:24
155:24 159:8
160:2 195:12
197:25 223:7,19
223:25 224:4
257:14
**ways** 52:5
179:11 181:17
**we've** 81:14
**website** 111:22
112:1 245:16,17
245:20
**wednesday** 14:3
14:4

**week** 12:4 21:23
46:25 51:22,24
96:7,8 97:25
98:4,5,9,17,18
98:19,21 120:17
121:19 131:5
146:15 241:23
249:21
**weekday** 53:25
**weekend** 53:25
**weekly** 96:6
151:9 222:6
**weeks** 47:3
51:10 121:14
**wells** 38:3,5,16
38:20 39:8,11,16
40:7,9,16,19
42:2,5,18,23,25
43:15 44:3,7
45:5,15,20,22,24
46:1,4,12,14
47:7 48:7,15,21
48:25 50:9,12
51:21 52:12,25
56:5 71:20 72:4
72:11 86:20
87:8 89:23 90:3
90:6 101:13
106:13 117:21
120:9,18 121:2,5
121:12,20
126:20 129:12
130:1,11,13
142:10,14,15
143:3 145:10
**went** 19:12
93:13 123:17
144:2 178:15

Eric Slawin                                                    July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

[west - york]                                                    Page 52

| | | | |
|---|---|---|---|
| **west** 2:9 | 214:10 226:5 | 53:14 62:2 79:5 | **wrote** 119:9 |
| **whatsoever** 27:8 | 228:12 234:4 | 100:18,20 106:6 | 229:7 230:4 |
| 46:16 172:12 | 235:1 237:6 | 119:24 247:6 | 238:21 251:24 |
| 218:8 222:11 | 238:8 240:4 | **working** 49:12 | 252:19 |
| **whereof** 257:16 | 241:9 242:8 | 49:16 62:14 | |
| **whistleblower** | 243:20 248:10 | 90:3 161:5 | **x** |
| 7:7 248:4 | 249:1 252:1,7 | 177:19 200:3,5 | **xbox** 71:14 |
| **wi** 76:9,10 | 253:13,21 254:2 | 246:15 | |
| **wife** 20:15 21:12 | 255:7 256:5 | **workplace** 33:25 | **y** |
| 65:22 117:11,20 | 257:8,11,16 | **works** 85:8 | **y** 30:14,14 |
| **wife's** 20:16 | **woke** 131:20 | **worldcom** 153:2 | **yeah** 74:1 123:8 |
| **winship** 78:12 | **wolfberg** 78:23 | **wrapper** 181:15 | 128:20 207:9 |
| **wish** 84:2 85:20 | 78:24 79:3,13,16 | **write** 29:17,18 | 212:4 |
| **wished** 168:24 | 80:1,12,19,21,24 | 195:20 196:3,5 | **year** 30:21 31:12 |
| **withdraw** 52:22 | 81:2 86:6,22 | 196:19,23 197:1 | 31:20,21 32:2 |
| **withdrawal** | 91:16 105:11 | 237:25 239:11 | 35:2,3,6,7 36:25 |
| 52:20 57:1 | **wolfberg's** 79:8 | 241:2 254:21 | 58:24 59:1 |
| 111:8,11,14,16 | 81:6 | **writing** 143:2 | 71:17 74:14 |
| 112:3 | **woman** 78:2 | 157:8 169:3 | 75:10,20 93:16 |
| **withdrawals** | **word** 65:7 159:6 | 188:19,23 | 96:13 100:24 |
| 56:21 112:8 | 189:10 216:21 | 191:18 196:9 | 101:3 111:1 |
| 247:20 | 217:8,16,21,22 | 199:10 200:4 | 117:4,17 119:22 |
| **withheld** 68:1 | 217:23 221:5 | 204:1,2,8 221:10 | 126:19 155:7 |
| **witness** 8:10,25 | 222:8 227:16,17 | 221:21 231:17 | 156:11 161:23 |
| 9:2,21 49:24 | 227:19 | **written** 34:7 | 246:24 |
| 85:1,20 107:14 | **work** 9:14,21 | 37:8 139:2,5,7 | **yearly** 37:21 |
| 107:24 108:10 | 29:25 30:1,3,6 | 139:13,20,25 | **years** 16:23 17:1 |
| 108:19 109:9 | 35:21 36:1,2 | 153:4,7 166:19 | 17:3,4 20:6 21:4 |
| 113:5,13,16 | 37:11 38:2,4,14 | 221:8,12 224:16 | 22:7 24:2 30:23 |
| 114:25 128:14 | 38:24 39:8 51:9 | 225:13 234:15 | 41:20 54:8 |
| 128:20,25 | 51:11 53:1,10 | 236:3,4 239:15 | 58:23 73:1 |
| 133:12,19 134:3 | 54:3,5 55:9 | **wrong** 38:12,14 | 77:15,20 93:15 |
| 137:23 138:3 | 61:25 140:15 | **wrongful** 18:16 | 93:20 106:1 |
| 147:12 148:22 | 141:9 161:7 | 123:18 183:1,3,5 | 112:8 126:25 |
| 154:5,17 158:9 | 177:20 236:13 | 183:7,10 | 246:12 |
| 169:16 170:14 | **worked** 30:20,22 | **wrongfully** | **york** 11:10 23:11 |
| 207:23 208:12 | 34:14 36:24 | 65:20 126:22 | 24:4,9,12 28:9 |
| 210:1 212:15 | 37:19 38:12 | | 61:21 |

Eric Slawin                                July 19, 2022
Eric Slawin v. Bank of America Merchant Services, LLC, et al.

**[zero - zoom]**                                    Page 53

| z |
|---|
| **zero**  112:14 |
| **zoom**  11:20 |
|   108:16,16 109:7 |
|   109:7 236:16 |
|   237:25 |

Georgia Code

Title 9, Chapter 11

Article 5, Section 9-11-30

(e) Review by witness; changes; signing.
If requested by the deponent or a party before
completion of the deposition, the deponent shall
have 30 days after being notified by the officer
that the transcript or recording is available in
which to review the transcript or recording and, if
there are changes in form or substance, to sign a
statement reciting such changes and the reasons
given by the deponent for making them. The officer
shall indicate in the certificate prescribed by
paragraph (1) of subsection (f) of this Code
section whether any review was requested and, if
so, shall append any changes made by the deponent
during the period allowed. If the deposition is not
reviewed and signed by the witness within 30 days
of its submission to him or her, the officer shall
sign it and state on the record that the deposition
was not reviewed and signed by the deponent within
30 days. The deposition may then be used as fully
as though signed unless, on a motion to suppress
under paragraph (4) of subsection (d) of Code

Section 9-11-32, the court holds that the reasons
given for the refusal to sign require rejection of
the deposition in whole or in part.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE STATE RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.