# Exhibit B

Page 1

1            IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF GEORGIA

3                    ATLANTA DIVISION

4     _____

5     ERIC SLAWIN,

6            Plaintiff,

7        v.                              Civil Action

8     BANC OF AMERICA MERCHANT                File No.

9     SERVICES, LLC, s/h/a BANK OF        1:19-cv-04129-

10    AMERICA MERCHANT SERVICES,          AT

11           Defendant.

12    _____

13              VIDEOTAPED DEPOSITION OF

14                    DAVID ADES

15    DATE:          Monday, July 29, 2024

16    TIME:          10:17 a.m.

17    LOCATION:      Remote Proceeding

18                   Mississauga, Ontario L5L 5R1

19    REPORTED BY:   Tabatha Richards

20    JOB NO.:       6777053

21

22

23

24

25

Page 2

1                    A P P E A R A N C E S

2    ON BEHALF OF PLAINTIFF ERIC SLAWIN:

3          ROBERT N. MARX, ESQUIRE (by videoconference)

4          JEANNIE MARX, ESQUIRE (by videoconference)

5          Marx & Marx

6          1050 Crown Pointe Parkway, Suite 500

7          Atlanta, GA 30338

8          lawyers@marxlawgroup.com

9          jeannie.marx@marxlawgroup.com

10         (404) 261-9559

11

12   ON BEHALF OF DAVID ADES AND DEFENDANT BANC OF AMERICA

13   MERCHANT SERVICES, LLC, S/H/A BANK OF AMERICA MERCHANT

14   SERVICES:

15         BRIAN M. UNDERWOOD, JR., ESQUIRE (by

16         videoconference)

17         Bryan Cave Leighton Paisner, LLP

18         1201 West Peachtree Street NW, 14th Floor

19         Atlanta, GA 30309

20         brian.underwood@bclplaw.com

21         (404) 572-6600

22

23

24

25

David Ades                              July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

                                                  Page 3

1              A P P E A R A N C E S (Cont'd)

2      ALSO PRESENT:

3           Ted Yost, Videographer (by videoconference)

4           Shelley Marx, Paralegal for Marx & Marx (by

5           videoconference)

6           Sheila Lafferty, Corporate Representative (by

7           videoconference)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

David Ades                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

                                                      Page 4

1                         I N D E X

2   EXAMINATION:                                     PAGE

3        By Mr. Marx                                 8

4        By Mr. Underwood                            92

5        By Mr. Marx                                 105

6

7                    E X H I B I T S

8   NO.              DESCRIPTION                     PAGE

9   Exhibit 16       6/13/17 E-mail Chain           29

10  Exhibit 28       Self-Identified Audit          72

11  Exhibit 64       Amendment 4 to Master Services

12                   Agreement                       65

13  Exhibit 65       Addendum No. 2 to Merchant

14                   Services Agreement              45

15  Exhibit 79       PCI DSS Quick Reference Guide   39

16  Exhibit 82       PCI DSS Compliance with Visa    82

17

18            QUESTIONS INSTRUCTED NOT TO ANSWER

19                   PAGE         LINE

20                    15           21

21

22          D O C U M E N T S   R E Q U E S T E D

23  NO.       DESCRIPTION                            PAGE

24  1         Minutes from Monthly Audit Meetings    78

25

Case 1:19-cv-04129-AT    Document 174-2    Filed 01/08/25    Page 6 of 151

David Ades                                        July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 5

1               P R O C E E D I N G S

2               THE VIDEOGRAPHER:  Good morning.  We

3     are going on the record at 10:17 a.m. on July 29,

4     2024.  Please note this deposition's being conducted

5     virtually.  Quality of recording depends on the

6     quality of the camera and the internet connecting our

7     participants.  What is seen from the witness and heard

8     on the screen is what will be recorded.  Audio and

9     video recording will continue to take place unless all

10    parties agree to go off the record.

11               All right, Ms. Richards.

12               THE REPORTER:  Good morning.  My name

13    is Tabatha Richards.  I'm the reporter assigned by

14    Veritext to take the record of this proceeding.  We're

15    now on the written record at 10:18 a.m.

16               This is the deposition of David Ades in

17    the matter of Eric Slawin vs. Bank of America Merchant

18    Services, LLC on July 29, 2024, at Mississauga,

19    Ontario, Canada.

20               I am a Georgia certified reporter

21    authorized to take acknowledgements and give --

22    administer oaths.  Parties agree that I will swear in

23    the witness remotely.

24               Additionally, absent an objection on

25    the record before the witness is sworn, all parties

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

                                                    Page 6

1    and the witness understand and agree that any

2    certified transcript produced from the recording of

3    this proceeding:

4                    - is intended for all uses permitted

5                    under applicable procedural and

6                    evidentiary rules and laws in the same

7                    manner as a deposition recorded by

8                    stenographic means; and

9                    - shall constitute written stipulation

10                   of such.

11            This proceeding will be recorded via

12   video technology by Ted Yost.  At this time, will

13   everyone in attendance please identify yourself for

14   the record.

15            MR. MARX:  For the plaintiff, Robert

16   Marx of Marx & Marx.  My co-counsel is here, Jeannie

17   Marx.  We also have present but not on the video our

18   paralegal, Shelley Marx.

19            MR. UNDERWOOD:  My name is Brian

20   Underwood of BCLP here on behalf of defendant, BAMS,

21   as well as the witness.

22            Additionally, Sheila, I'll let you

23   introduce yourself.

24            Sheila, we can't hear your audio.

25            MS. LAFFERTY:  I had my mic up.  Can

Page 7

1    you hear me now?

2                    MR. UNDERWOOD:  Yes.

3                    MS. LAFFERTY:  Yes.  Sheila Lafferty,

4    corporate representative for the defendant.

5                    THE REPORTER:  Thank you.  Hearing

6    no --

7                    MR. UNDERWOOD:  David Ades, witness.

8                    THE REPORTER:  I'm sorry.

9                    MR. ADES:  That's okay.  David Ades,

10   witness.

11                   THE REPORTER:  Thank you.  Hearing no

12   objection, I will now swear in the witness.

13                   Please raise your right hand and state

14   and spell your first and last name.

15                   MR. ADES:  David, D-A-V-I-D.  Last name

16   Ades, A-D-E-S.

17   WHEREUPON,

18                        DAVID ADES,

19   called as a witness and having been first duly sworn

20   to tell the truth, the whole truth, and nothing but

21   the truth, was examined and testified as follows:

22                   THE REPORTER:  Thank you, Mr. Ades.

23                   Mr. Marx, you may proceed when ready.

24                   MR. MARX:  Thank you.

25   //

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 8

                              EXAMINATION
1

2   BY MR. MARX:

3        Q    Mr. Ades, my name is Robert Marx.  I'm an

4   attorney as you heard with Marx & Marx.  We represent

5   Eric Slawin, the plaintiff in this case.  First of

6   all, I want to thank you for agreeing to participate

7   via remote Zoom deposition.

8             My purpose here today is to ask some

9   questions, see what the answers are.  My purpose here

10  today is not to trick you or trap you.  If you don't

11  understand a question at any time, I'll be happy to

12  rephrase it.  If you do answer a question, I will

13  assume that you understood it.  Do you understand

14  that?

15       A    Yes, sir.

16       Q    And are you okay with that?

17       A    Yes, sir.

18       Q    Okay.  Is there any medical or physical

19  reason why you cannot give testimony today?

20       A    No, sir.

21       Q    Are you taking any prescription or over-the-

22  counter medications that might affect your ability to

23  listen to and understand my questions and give answers

24  to them?

25       A    No, sir.

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

                                                    Page 9

1        Q    Thank you.  Can I get your address for the

2   record, please?

3        A    1976 Lapad Court, Mississauga, Ontario,

4   Postal Code L5L 5R1.

5        Q    And you have a telephone number there?

6        A    Yeah.  (416) 725-1008.

7        Q    Are you today represented by counsel?

8        A    Yes.

9        Q    Okay.  Is that Mr. Underwood?

10        A    Yes.

11        Q    Thank you.  Can I get your e-mail?

12        A    Yep.  David Ades, the number 500, at

13   gmail.com.

14        Q    Thank you.  When did you first -- to your

15   understanding, when were you first represented by

16   Mr. Underwood?  I'm not interested in any

17   conversations you might have had.  That's privileged.

18   I just would like to know when to your understanding

19   that representation began?

20        A    With Mr. Underwood specifically?

21        Q    With Mr. Underwood's firm, which I

22   understand to be Bryan Cave.

23        A    I've only met Mr. Underwood or spoken to

24   Mr. Underwood in the last couple weeks.  But I did

25   have a conversation with the firm, I guess, a few

David Ades                              July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 10

1    months ago. And then it got -- maybe it was a year

2    ago.  I don't even remember.  A while back.

3         Q    Okay.  Again, don't tell me what was said.

4    That's privileged.

5         A    Yep.

6         Q    What if anything did you do to prepare for

7    today's deposition?

8         A    I reviewed some documentation.

9         Q    What documents did you review?

10        A    I reviewed a couple of e-mails that I had

11   written.

12        Q    Anything else?

13        A    That's basically it.

14        Q    Okay.  In preparation for today's

15   deposition, did you have any kind of a meeting with

16   Mr. Underwood or with anyone from his firm?  And,

17   again, don't tell me what was said.  Just tell me if

18   you had a meeting.

19        A    Yes.  We did have a meeting.

20        Q    Okay.  And when was that?

21        A    I don't have the exact date in front of me.

22   I could look it up, but it was a -- I'm going to say

23   within two weeks.  Last two weeks.

24        Q    Okay.  Was it one meeting or more than one

25   meeting?

David Ades                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 11

1        A     It was more than one meeting.

2        Q     How many meetings?

3        A     At least two.

4        Q     Okay.  So how long was the first meeting?

5        A     I'm going to say two hours.

6        Q     Was that by telephone?

7        A     It was by video call.

8        Q     Okay.  And how long was the second meeting?

9        A     Much less, maybe 15 minutes.

10       Q     Okay.  And during those meetings -- let's

11   take the first one -- did you look at any documents?

12       A     I looked at the e-mails that I referenced.

13       Q     Okay.  Anything else?

14       A     That's basically it.

15       Q     Okay.  And the second meeting, same

16   question.  Did you look at any documents?

17       A     Second meeting, I did not look at any

18   documents.  No.

19       Q     Okay.  Have you looked at the complaint in

20   this case?

21       A     I have looked at the complaint.

22       Q     Okay.  When did you do that?

23       A     Months ago.  When I -- when I was first

24   approached about this case.

25       Q     Okay.  All right.  And we're now in the end

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 12

1    of July of 2024.  When you say "months ago," would it

2    be correct that you looked at the complaint sometime

3    in 2024?

4                    MR. UNDERWOOD:  Object to form.

5         A    Probably in '23.  I don't think it was

6    in -- in 2024.  I think it was '23.

7         Q    Okay.  Okay.  When you looked at the

8    complaint, did you discuss it with anybody other than

9    counsel?

10        A    Nope.

11        Q    Were you represented by counsel at the time

12   you looked at the complaint?

13        A    Nope.

14        Q    Did you discuss the complaint with anybody

15   at all when you looked at it?

16        A    Nope.

17        Q    Okay.  How did you become aware of this

18   case?

19        A    I was contacted by a legal representation

20   of -- of BAMS or Fiserv.  I can't remember.

21        Q    Okay.  Do you know when that was, when you

22   were contacted?

23        A    Sometime in '23 perhaps.

24        Q    Okay.  Now, when you looked at the complaint

25   in or about 2023, to your understanding did BAMS still

Page 13

1    exist?

2                    MR. UNDERWOOD:  Objection to form.

3         A    No.  BAMS did not exist.

4         Q    Were you contacted from by somebody from

5    Fiserv?

6                    MR. UNDERWOOD:  Objection to form.

7    BY MR. MARX:

8         Q    I'm sorry.  Didn't get an answer.

9         A    I got -- I got -- someone sent me an e-mail.

10   I don't believe it was Fiserv.  I believe it was a

11   legal representation.

12                   THE REPORTER:  I'm sorry.  Could you

13   repeat what you just said?  You broke up a little.

14                   THE WITNESS:  I said I don't believe it

15   was Fiserv.  I believe I got an e-mail from a legal

16   representative of BAMs.

17   BY MR. MARX:

18        Q    Is that Mr. Underwood's firm?

19        A    I believe so.

20        Q    Okay.  Who contacted you?

21        A    I don't have the name in front of me.

22        Q    Okay.  Was it Mr. Galanek?

23        A    Is the first name Chris?

24        Q    Sorry?

25        A    Sorry.  I -- I didn't catch the last name.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 14

1      Q    Was it Mr. Galanek?

2      A    I don't recall.

3      Q    Was it a person named Chris?

4      A    I believe it was Chris something or other.

5      Q    Okay.  And when did Mr. Galanek's firm,

6   Mr. Underwood, start representing you?

7               MR. UNDERWOOD:  Objection to form.

8      A    Mr. Underwood was a couple of weeks ago.

9      Q    Okay.  So I'm sorry.  Did you say

10  Mr. Underwood is representing you or his firm?  Is

11  anyone else representing you?

12              MR. UNDERWOOD:  Objection to form.

13              MR. MARX:  What's the basis of the

14  objection?

15              MR. UNDERWOOD:  You're confusing the

16  witness.  You've already asked him whether we're here

17  representing him.  He's responded yes.  And I don't

18  understand what the question's asking because he has

19  already responded that I'm here as a representative of

20  Bryan Cave on behalf of the witness.

21              MR. MARX:  Okay.  Well, of course,

22  whether or not you understand the question's not a

23  basis for an objection.  But let me ask the witness.

24  BY MR. MARX:

25      Q    To your understanding, when did you first

David Ades                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 15

1    become represented by Mr. Brian Underwood?

2        A    Within the last two weeks.

3        Q    Were you represented by counsel at any time

4    before that?

5        A    No.

6        Q    Okay.  So when you spoke with Chris, you

7    were not represented by counsel at that time.

8    Correct?

9        A    Correct.

10            MR. UNDERWOOD:  Objection to form.

11   BY MR. MARX:

12       Q    Okay.  So tell me what Chris said to you

13   during that conversation and what you said to him.

14            MR. UNDERWOOD:  No.  Objection to --

15   Robert, no.

16            David, there is a confusion here about

17   the scope of the attorney-client relationship.

18            MS. MARX:  No.  There isn't.

19            MR. MARX:  Are you directing your

20   witness not to answer the question?  Yes or no?

21            MR. UNDERWOOD:  I'm directing my

22   witness not to answer the communications that he had

23   with Chris Galanek pertaining to this case.

24            MR. MARX:  Okay.

25            MR. UNDERWOOD:  There is a confusion

David Ades                      July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 16

1    here about when -- client relationship arose.  It

2    extends into last year.  Mr. Ades was only recently

3    introduced to me in the context of this case.

4                    And when you're asking him when did he

5    get to meet me, when was I involved in the case, that

6    doesn't mean he didn't have the relationship with my

7    firm before that -- he did.

8                    MS. MARX:  He testified that he --

9                    THE REPORTER:  I'm sorry.  Excuse me.

10   Excuse me.  This is the reporter.  I'm hearing

11   Ms. Marx also at the same time.  I can only get one

12   person at a time.

13                    Okay.  Please.

14                    MR. UNDERWOOD:  So the basis for the

15   objection, Robert, is that when you're asking him

16   whether I am here as his attorney or whether

17   Mr. Galanek was here, there was a relationship with my

18   firm, Bryan Cave Leighton Paisner, that extends into

19   last year and that we're going to object on the basis

20   of the privilege when you're asking about

21   communications that he had with representatives of my

22   firm.

23                    MR. MARX:  All right.  So I didn't want

24   to interrupt you, Mr. Underwood, but your testimony is

25   not relevant or even permissible.  The witness, asked

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 17

1    open-ended questions, has just testified that he was

2    not represented by any counsel at a point more than

3    two weeks ago, at which time he testified under oath

4    that when he spoke to the Chris Galanek, person named

5    Chris, that he was not represented by counsel.  That's

6    the testimony.  All right?  Your testimony has no

7    place in this.

8                  MR. UNDERWOOD:  And --

9                  MR. MARX:  Let me finish, please.  I

10   did not interrupt you.  Okay.  So this is the record

11   that is made.  We're going to go to the court with

12   this if necessary.  I want the record to be clear for

13   the court.

14                 So are you directing your witness not

15   to answer this question?

16                 MR. UNDERWOOD:  I am directing my

17   witness not to answer questions regarding the

18   substance of conversations between me, Mr. Galanek, or

19   Mr. McPherson and -- or any other representative of my

20   firm and Mr. Ades regarding this litigation on the

21   basis of attorney-client privilege.

22                 MR. MARX:  That's an insufficient

23   response.  It's way too ambiguous and vague.  I'm

24   asking a very simple question, which as an attorney

25   you should be able to understand.  I'm asking Mr. Ades

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 18

1    what Chris Galanek said to him at that time when he

2    was not represented by counsel and what he said to

3    Mr. Galanek.

4                    Are you directing your witness not to

5    answer that question?  Yes or no?

6                    MR. UNDERWOOD:  He was not -- he was

7    represented by counsel --

8                    MR. MARX:  Are you directing your

9    witness not to answer that question?  Yes or no?  I'm

10   entitled to a yes or no.  The court doesn't want an

11   ambiguous --

12                   THE REPORTER:  I can only get one at a

13   time.

14                   MR. MARX:  I know you can only get one

15   at a time.  But I am not going to have a situation

16   where Mr. Underwood gives a speech.

17                   It's a very simple question.  If you're

18   directing a witness not to answer a question, then do

19   so.  If you're not directing the witness to answer the

20   question, then don't.  I'm not looking for a speech.

21   Is the witness entitled to answer the question?  Yes

22   or no?

23                   MR. UNDERWOOD:  I'm entitled to give

24   you an answer and an explanation.  The answer is

25   yes --

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 19

1                    MR. MARX:  No.  I don't want the

2      explanation.  I just want the answer.

3                    MR. UNDERWOOD:  I know what you want,

4      but you're not entitled to that.  I'm entitled to an

5      explanation.

6                    MR. MARX:  You're not entitled to give

7      a speech.

8                    MR. UNDERWOOD:  I'm not giving a

9      speech.  I'm objecting on the basis of privilege.  I'm

10     instructing him not to answer on the basis of

11     privilege.  Okay?

12     BY MR. MARX:

13         Q    Mr. Ades, when you spoke to Chris Galanek,

14     at the time you were not represented by counsel.

15     Correct?

16                    MR. UNDERWOOD:  Objection to form.

17     BY MR. MARX:

18         Q    You can answer.

19         A    Could you explain "represented by counsel"?

20         Q    Who said that?

21         A    Me.  I said that.  Ades.

22         Q    At the time that you spoke to Mr. Galanek,

23     did you have an attorney?

24                    MR. UNDERWOOD:  Objection to form.

25         A    No.

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 20

1       Q    Okay.  At the time that you spoke to

2    Mr. Galanek, was he your attorney?

3                 MR. UNDERWOOD:  Objection to form.

4       A    When I spoke to Mr. Galanek, he introduced

5    himself as the attorney representing the interests of

6    BAMS.

7       Q    Right.  But he was at the time --

8       A    But he wasn't my -- but he wasn't my

9    attorney.  He was -- sorry to interrupt.  Could I just

10   clarify?

11      Q    All right

12      A    Yeah.  He wasn't my attorney.  He introduced

13   himself as who he was, why he was contacting me, and

14   who he was representing.

15      Q    And during that conversation, what did he

16   say to you, and what did he say to him?

17                 MR. UNDERWOOD:  Objection to privilege.

18   I think there's a confusion here.  Objection to

19   privilege.  We're going to instruct the witness not to

20   answer.  We can work it out on a break, Robert, and

21   maybe we can get you answers later.  But until I have

22   an opportunity to speak with Mr. Ades, we're going to

23   instruct him not to answer.

24                 MR. MARX:  I'm not going to have a

25   situation where you use a break to tell Mr. Ades what

David Ades                      July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 21

1    to say and tell and coach him.  That is totally

2    improper and irrelevant.  The record is clear right

3    now that Mr. Ades was not represented by counsel at

4    the time and understood himself not to be represented

5    by counsel at the time he spoke to Mr. Galanek.

6                    You have now instructed your witness

7    not to answer the question.  There's nothing going to

8    be explained on a break or thereafter.  If we go to

9    the court, this is the record that's going to go

10   there.

11                   MR. UNDERWOOD:  And, Robert, I wouldn't

12   ever tell a witness to tell anything in the break

13   other than the truth.  I would just assess the

14   basis --

15                   MR. MARX:  I don't believe that for a

16   second.

17                   MR. UNDERWOOD:  -- withdraw the

18   objection, I will let you know I will decide to

19   withdraw the objection, and that would be it.

20   Otherwise, I'm going to instruct him not to answer the

21   question.

22                   MR. MARX:  Are you directing him not to

23   answer the question?

24                   MR. UNDERWOOD:  For the time being,

25   yes.

David Ades                              July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 22

```
 1                     MR.  MARX:   Okay.

 2      BY MR. MARX:

 3           Q    At any time, did Mr. Galanek or his firm

 4      represent you personally?

 5           A    Well, yes.  They're representing me right

 6      now.

 7           Q    Right.  So that started to your

 8      understanding about two weeks ago, give or take.  Is

 9      that right?

10                     MR. UNDERWOOD:  Objection to form.

11           A    Can you repeat the question?

12                     MR. MARX:  Can you read it back,

13      please?

14                     THE REPORTER:  One moment.

15                     (The reporter repeated the record as

16                     requested.)

17                     THE WITNESS:  Sorry.  What -- what was

18      the question prior to that?

19                     THE REPORTER:  Okay.  One moment.

20                     Was that sufficient, Mr. Marx, the

21      question and answer?  If so, I have to start my

22      recording again.  Would you like me to go further

23      back?

24                     MR. MARX:  It's up to the witness if he

25      can answer the question.  It's not up to me.
```

Page 23

 1                    THE REPORTER:  Okay.  One moment,

 2     please.

 3                    Okay.  You may continue.

 4     BY MR. MARX:

 5          Q     Do you have any signed representation

 6     agreement with Mr. Brian Underwood or his firm

 7          A     Do I have a signed?  I have an

 8     acknowledgement.

 9          Q     Okay.  A written acknowledgement?

10          A     There was an e-mail exchange.

11          Q     Okay.  Okay.

12          A     Between myself --

13          Q     And do you know who's paying for your legal

14     representation here today?

15          A     I do not know who's paying.

16          Q     Are you?

17          A     I'm not paying.

18          Q     Okay.  Are you currently employed?

19          A     Yes, sir.

20          Q     And who is your employer?

21          A     Brink's Canada Inc.

22          Q     I'm sorry.  Can you spell that?

23          A     B-R-I-N-K-S.  Brink's.

24          Q     And how long have you been employed by

25     Brink's Canada Inc.?

David Ades                                        July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 24

1       A     Started in January of twenty twenty --
2    January 1 of 2023.
3       Q     What's your job title there?
4       A     Senior vice president digital payments.
5       Q     Have you been in that same job title since
6    you started on January 1, 2023?
7       A     Yes.
8       Q     Okay.  And where did -- were you employed
9    before that?
10      A     Yes.
11      Q     Where was that?
12      A     At Fiserv.
13      Q     And during what period of time were you
14   employed by Fiserv?
15      A     From July of twenty -- July 1st of 2020
16   until, let's see -- until I believe it was March of
17   2022.
18      Q     Okay.  And so from April of 2022 through
19   December of 2022, were you employed?
20      A     No.
21      Q     Okay.  And how did it come about that you
22   left Fiserv?
23      A     How did it come about?
24      Q     Well, was it a voluntary leave?
25      A     They asked me to relocate to New York.  I

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 25

1    was not in -- they were relocating my role to New York

2    City.  I was not interested in moving to New York

3    City, so I decided to leave.

4         Q    Okay.  Now, how did it come about that you

5    started working at Fiserv?

6         A    So when Bank of America Merchant Services

7    went through dissolution, we had conversations with

8    both entities, i.e., both shareholder, Bank of

9    America, and Fiserv in terms of opportunity to roll.

10   I was approached by an executive at Fiserv to join the

11   team at Fiserv post-dissolution of BAMS.

12        Q    The Bank of America Merchant Services, which

13   is the defendant in this case, was otherwise known as

14   BAMS.  Is that right?

15        A    That's correct.

16        Q    Yeah.  By the acronym B-A-M-S.  Correct?

17        A    That's correct.

18        Q    So if I refer to BAMS, will you understand

19   that I'm referring to the defendant in this case, Bank

20   of America Merchant Services?

21        A    Yes.

22        Q    Thank you.  What was your last job title

23   with BAMS?

24        A    Executive vice president, general manager,

25   and head of sales North America.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 26

1    Q    And then how long were you in that position?

2    A    I -- I don't know exactly.  I joined BAMS in

3    May of 2014.  And through that period -- in May of

4    2014, and I -- I've received some promotions in the

5    six years that I was there.  And I -- I can't tell you

6    exactly when I had that last position.

7    Q    Okay.  All right.  Now, do you have an

8    understanding of the joint venture relationship among

9    BAMS, Bank of America, and First Data Corporation?

10   A    Yes.

11   Q    And what is that understanding

12   A    First Data/Fiserv had 51 percent majority

13   ownership, and the bank had 49 percent.

14   Q    When you say "the bank," which bank are you

15   referring to?

16   A    Bank -- Bank of America.

17   Q    Okay.  And what is the basis of that

18   understanding?

19   A    What is the basis of that -- of that

20   understanding?

21   Q    Or how did you come to that understanding?

22   Someone tell you that?  Did you see any documents?

23   A    I was both told and I saw documents.

24   Q    Who told you?

25   A    Our chief legal officer.

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 27

1        Q    Okay.  And what documents did you see?

2        A    I think I -- I believe it was a shareholder

3    agreement.

4        Q    Okay.  Were you at all involved in the idea

5    to create the joint venture?

6        A    No.

7        Q    Okay.  Do you have an understanding as to

8    whether there was an operational relationship between

9    First Data, Bank of America Corporation, and BAMS?

10                   MR. UNDERWOOD:  Object to form.

11       A    Yes.

12       Q    And what's that understanding?

13       A    So First Data provided services to BAMS.

14       Q    Okay.  And what services did First Data

15   provide to BAMS?

16       A    A whole variety of services.  Card

17   processing, chargebacks, fraud prevention, platforms,

18   technology, client service.

19       Q    And to your understanding, did Bank of

20   America have any operational role in the joint

21   venture?

22       A    Bank of America did not have any operational

23   role.

24       Q    Now, did BAMS ever do any chargebacks?

25       A    BAMS did not do chargebacks.

David Ades                           July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 28

1      Q    Was BAMS ever involved in processing any

2    chargebacks?

3      A    BAMS was not involved in processing

4    chargebacks.

5      Q    Okay.  Now, you described your job title as

6    executive vice president, general manager, and head of

7    sales North America.  Is that right?

8      A    That is correct.

9      Q    Okay.  Is that three different job titles or

10    is --

11      A    That was the job title.

12      Q    Okay.  What were the job functions?

13      A    Head of sales, general management.

14      Q    What did you do as general management?

15      A    I managed the -- our -- our account

16    management team.

17           MR. MARX:  Shelley, I'm going to send

18    it to you.

19    BY MR. MARX:

20      Q    Okay.  Before we do that, now, Mr. Ades, you

21    said you looked at some e-mails in preparation for

22    today's deposition.  Is that right?

23      A    That's what I said.  Yes.

24      Q    Okay.  And was one of those an e-mail that

25    you sent in or about June of 2017?

David Ades                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 29

1      A    Yes.

2      Q    Okay.  Now, we're going to be you an exhibit

3    or sharing it, I guess.  We're doing the shared

4    screen.

5           Yeah, so the procedure is as follows.  When

6    we put an exhibit up on the share screen, you'll tell

7    our paralegal, Shelley, to move it around as you like.

8           And I'm going to sit here waiting until you

9    actually say "I'm ready to answer questions" so

10   there's no confusion as to you're ready.  And some

11   cases if you're done with a page, I misunderstand, and

12   I start jumping in.

13          So we're going to show you what we've marked

14   as Exhibit 16, put it on the share screen.

15                    (Exhibit 16 was marked for

16                    identification.)

17          And then let me know when you're ready to

18   answer questions.

19      A    Okay.  We can go to the next.  Yep.

20           Okay.  I'm ready.

21      Q    Thank you.  And for the record, Exhibit 16

22   is a two-page document produced by Defendant bearing

23   Bates numbers 1820 through 1821.

24          Now, is this an e-mail chain that you were

25   involved in, Mr. Ades?

David Ades                                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 30

1        A     Yes.

2        Q     Okay.  And so like most e-mail chains, the

3    prior in time e-mail would be the one starting on the

4    bottom of 1820.  Is that right?

5        A     That would be correct.

6        Q     Okay.  And that goes onto the next page,

7    1821. Correct?

8        A     Correct.

9        Q     Okay.  And that's an e-mail that you sent.

10   Right?

11       A     That is correct.

12       Q     And you sent that in the normal course of

13   business.  Right?

14       A     That is correct.

15       Q     Okay.  And so is that an e-mail that you

16   sent on, as it stated, June 13, 2017?

17       A     That's what it says.

18       Q     Okay.  At the second page, your name is

19   typed.  You didn't actually sign, but that is the

20   electronic version of your signature.  Correct?

21       A     That's correct.

22       Q     Okay.  Why did you send this?

23       A     Beg your pardon?

24       Q     Why did you send this e-mail?

25       A     Why did I send this e-mail?

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 31

1        Q    Yes.

2        A    Because I had had a meeting with Ali Davis

3    for some information that was related to me.  And then

4    that information that was related to me caused me to

5    send this e-mail to my staff or to three of my leaders

6    to get to the root cause of the problem that was

7    identified to me.

8        Q    And what was that information that was

9    related to you by Ms. Davis?

10        A    That our client services team were sending

11    PAN data, which is personal account number data, in

12    the clear, unencrypted to clients to help them manage

13    their chargebacks.

14        Q    Is PAN data also known as primary account

15    number?

16        A    Primary account number.  That's correct.

17        Q    All right.  And the second paragraph of your

18    e-mail, the second sentence you wrote "We - BAMS don't

19    want to go the route of PCI compliance as it would be

20    a very costly and time-consuming exercise."  You see

21    that?

22        A    Yes.

23        Q    And you wrote that.  Right?

24        A    I did.

25        Q    Okay.  So at the time that you wrote that,

Page 32

1    BAMS was not PCI compliant.  Correct?

2                    MR. UNDERWOOD:  Object to form.

3        A    BAMS -- BAMS was not PCI compliant as it was

4    made -- as I was made aware of by Ali Davis.  Correct.

5        Q    Okay.  So we're clear, as of June 13, 2017,

6    your understanding was that BAMS was not PCI

7    compliant.  Correct?

8                    MR. UNDERWOOD:  Object to form.

9        A    Correct.

10       Q    All right.  I'd like to see if we can flesh

11   out.  This last sentence on that first paragraph, you

12   wrote "Merchant calls in and request info on a

13   chargeback et cetera, and our client support team

14   sends the merch" -- I guess that's merchant -- "full

15   PAN data and not always via secure e-mail."

16            Describe for me that process as you

17   understood it when you wrote this.

18       A    It was brought to my knowledge that if one

19   of our merchants called into our client service

20   centers, spoke to one of our team members, and asked

21   about a particular chargeback that they were -- had

22   inquiries about, that our client service team member

23   was providing the actual primary account number

24   unencrypted and sometimes e-mailed it to them

25   unencrypted.

David Ades                                        July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 33

1      Q    Okay.  So to that extent, would it be

2  correct to say that BAMS was involved in chargebacks?

3              MR. UNDERWOOD:  Object to form.

4      A    No.

5      Q    No.  Okay.  Now, the transmission of full

6  PAN data by BAMS unencrypted, that was in response to

7  an inquiry about a chargeback.  Is that right?

8              MR. UNDERWOOD:  Object to form.

9      A    From my understanding.

10     Q    Okay.  Now, you sent this e-mail to Natasha

11  Collins, Brian Glynn, and Monica Kennedy?

12     A    Correct.

13     Q    What was Natasha Collins's job title at the

14  time?

15     A    She was vice president of sales operations,

16  I believe.

17     Q    Okay.  Did she report to you?

18     A    She did.

19     Q    Okay.  And Brian Glynn, what was his job

20  title?

21     A    I believe he was senior vice president of

22  account management.

23     Q    Did he report to you?

24     A    He did.

25     Q    And Monica Kennedy, what was her job title?

David Ades                            July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 34

1      A     I can't remember if she was senior vice

2    president or vice president, but she was one or the

3    other.  And I'm not -- I don't recall her exact title,

4    but her responsibilities was to manage our -- our bank

5    partners at Bank of America.

6      Q     Okay.  And did she report to you?

7      A     Yes.  She did.

8      Q     Okay.  Now, did you talk to anybody about

9    this substance of this e-mail?

10     A     At the time?

11     Q     Yes.  At the time.

12     A     I would have had conversations with the

13   three of them and maybe others.

14     Q     Okay.  Now, so we can avoid speculation, I

15   would appreciate it if you would -- can you remember

16   whether or not you actually had conversations, or are

17   you just assuming you might have?

18     A     Seven years ago, I -- I can't tell you with

19   a hundred percent certainty.  I imagine I would've had

20   conversations.

21     Q     And I'm sorry.  Who did you speak to about

22   it?

23     A     To these three and potentially others.

24     Q     Okay.  Did you speak to Tim Tynan about it?

25     A     I don't recall.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 35

1      Q    And he was the CEO at the time.  Is that
2    right?
3      A    He was my boss, and he was the CEO.
4      Q    All right.  To whom did you report?
5      A    To Tim Tynan.
6      Q    Okay.  So you reported directly to the CEO.
7    Is that right?
8      A    I did.
9      Q    Okay.  Thank you.  Now, you referred to your
10   bank -- BAMS bank partners at Bank of America.  What
11   did you mean by that?
12     A    Oh.  We worked very closely with the bank
13   treasury sales officers and corporate bankers at Bank
14   of America.
15     Q    What does that mean, you worked closely?
16     A    We worked in collaboration with them.
17     Q    What did you collaborate on?
18     A    Client initiatives.
19     Q    Like PCI compliance?
20     A    We -- no.  I mean, we worked -- we worked
21   with the bank teams on, you know, revenue initiative,
22   service initiatives.  We sold in a lot of cases
23   jointly into the bank's client base.
24     Q    Into the bank's what?
25     A    Into their customer base.

David Ades                               July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 36

1        Q    Oh.  The customer base.  Okay.

2        A    Yeah.

3        Q    So was it like Bank of America provided the

4    customers for BAMS to approach for their services?  Is

5    that what you're saying?

6        A    Yes.  Something along those lines.

7        Q    Okay.  The top, the first e-mail on Exhibit

8    16, that's the response you got back from Brian Glynn.

9    Is that right?

10       A    That's correct.

11       Q    And you received at or about that time

12   indicated, June 13, 2017?

13       A    Correct.

14       Q    In the normal course of business.  Correct?

15       A    Correct.

16       Q    Now, you're on the Visa Advisory Board.

17   Right?

18       A    I was.

19       Q    Oh.  You were.  You're no longer?

20       A    Yes.  No longer.

21       Q    Okay.  During what period of time were you

22   on the Visa Advisory Board?

23       A    Can you repeat the question?

24       Q    Sure.  During what period of time were you

25   on the Visa Advisory Board?

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 37

1       A    I was on their advisory board for a few

2   years.  I left the advisory when I left my role at

3   Fiserv.  When -- I -- I can't remember I -- when

4   exactly I joined but probably within 24 to 36 months

5   before I left.

6       Q    Okay.  Are you familiar with the term PCI

7   DSS?

8       A    Yep.

9       Q    Okay.  And does that stand for payment card

10  information [sic] data security system?

11      A    Standards.

12      Q    Standards.  Thank you.  Payment card

13  information [sic] data security standards.  Is that

14  right?

15      A    Correct.

16      Q    Okay.  And those standards are issued by the

17  PCI Security Standards Council.  Correct?

18      A    That is correct.

19      Q    And those standards are applicable to

20  entities that transmit or store or receive PAN data.

21  Correct?

22              MR. UNDERWOOD:  Object to form.

23      A    Correct.

24      Q    And your understanding in June of 2017 was

25  that BAMS was transmitting full PAN data.  Correct?

David Ades                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 38

1              MR. UNDERWOOD:  Object to form.

2       A    That's what was brought to my attention by

3   Ali Davis.  Correct.

4       Q    And that would be a violation of the

5   standards issued by the PCI Security Standards

6   Council.  Correct?

7              MR. UNDERWOOD:  Object to form.

8       A    It would be outside of that standard.

9       Q    We're going to show you another exhibit,

10  Mr. Ades.  Again, tell me when you're ready to answer

11  questions.  I think we're done with 16.

12            Okay.  For the record, let me ask you this

13  question.  Do you recognize this as the PCI Security

14  Standards Council Quick Reference Guide for PCI DSS?

15      A    I do.

16      Q    And if you look at page 6 -- the numbers are

17  kind of hard to see.  They're on the top right.  I

18  believe that's page 6.  To your understanding, the PCI

19  DSS requirements apply to all entities that store,

20  process, or transmit cardholder data.  Is that right?

21      A    That's what it states.

22      Q    Is that your understanding?

23      A    My understanding is what it states.

24      Q    Okay.  And that was your understanding in

25  2017 when you wrote your e-mail.  Right?

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 39

1      A    Correct.

2      Q    If you look at page 16, section 4.2 provides

3   that an entity should never be sending PAN data versus

4   unsecured e-mail -- by way of unsecure e-mail.

5   Correct?

6                MR. UNDERWOOD:  Object to form.

7      A    That is correct.

8      Q    Okay.

9                THE REPORTER:  I'm sorry.  Was that an

10   objection to form?

11                MR. UNDERWOOD:  Yes.  It was.

12                THE REPORTER:  Thank you.

13   BY MR. MARX:

14      Q    And to your understanding, was that true in

15   2017 when you wrote your e-mail?

16                MR. UNDERWOOD:  Object to form.

17      A    That was my understanding back -- yep.

18      Q    Okay.  So to the extent that BAMS was

19   sending PAN data -- full PAN data through unsecure e-

20   mail, it was in violation of that standard.  Correct?

21                MR. UNDERWOOD:  Object to form.

22      A    Correct.

23                THE REPORTER:  Excuse me.  Mr. Marx,

24   would that be Exhibit 2 marked as Number 79?  Would

25   you like that?

David Ades                                      July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 40

1              MR. MARX:  Yes.  Yes.

2              (Exhibit 79 was marked for

3              identification.)

4              THE REPORTER:  Okay.

5              MR. MARX:  What we've done, we've pre-

6     marked the exhibits.  They're going to be the same

7     through all the depositions.  So I think it's

8     much -- it's Exhibit 79.  Yeah.  We marked it as 79.

9              THE REPORTER:  Got you.

10             MR. MARX:  Yeah.

11             THE REPORTER:  Thank you.

12             MR. MARX:  I think I might have

13    misunderstood your question, but my co-counsel

14    corrected  me.

15             THE REPORTER:  Okay.

16             MR. MARX:  Yes.  Yes.

17             MR. UNDERWOOD:  Robert, was this

18    document produced?  Do we have Bates labels for it?

19             MR. MARX:  No.  It was not produced.

20    We got it off the internet.  We didn't have it.  We

21    looked up the URL indicated and some documents --

22             MS. MARX:  That you produced.

23             MR. MARX:  -- that were produced by the

24    defendant, but we didn't have it.  So we didn't have

25    it until last night, actually.

Page 41

1            I'm going to go into a series of

2    questions on a document, which will take some time.

3    Maybe it's time for a short break, would be

4    appropriate.  Ten minutes works for me.

5                    THE VIDEOGRAPHER:  We're going off the

6    record at 11:15 a.m.

7                    (Off the record.)

8                    THE VIDEOGRAPHER:  We are back on the

9    record at 11:27 a.m.

10   BY MR. MARX:

11       Q    So, Mr. Ades, to the extent that BAMS was

12   transmitting full PAN data via unsecure e-mail, that

13   was, as you said, a violation of the PCI DSS.

14   Correct?

15                    MR. UNDERWOOD:  Objection to form.

16       A    Correct.

17       Q    And to the extent that BAMS was storing or

18   transmitting PCI -- full PAN data, they were required

19   to be PCI compliant.  Correct?

20       A    That is --

21                    MR. UNDERWOOD:  Objection to form.

22                    THE REPORTER:  I'm sorry.  Mr. Ades,

23   did you answer that?  I think it may have been at the

24   same time the objection went on.

25                    THE WITNESS:  I said correct.

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 42

1              THE REPORTER:  Thank you.

2    BY MR. MARX:

3         Q    And just to correct my question, I said

4    "they."  But to the extent that BAMS was storing or

5    transmitting full PAN data, it, BAMS, was required to

6    be PCI compliant under the PCI DSS.  Correct?

7         A    Correct.

8              MR. UNDERWOOD:  Objection to form.

9    BY MR. MARX:

10        Q     All right.  Now, from time to time, BAMS

11   would enter into contracts with merchants for payment

12   card processing.  Correct?

13             MR. UNDERWOOD:  Objection to form.

14        A    Correct.

15             MR. MARX:  And what's the basis of the

16   objection, Mr. Underwood?

17             MR. UNDERWOOD:  You're calling him to

18   speculate on actions of corporate entity in general,

19   and I don't think a foundation's been laid.

20   BY MR. MARX:

21        Q    To your knowledge, from time to time did

22   BAMS enter into contracts with merchants for payment

23   card processing?

24        A    Correct.

25        Q    And these agreements were known as master

David Ades                        July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 43

1    services agreements or MSAs.  Correct?

2         A    Correct.

3         Q    Okay.  And in fact you signed some of them.

4    Correct?

5         A    Correct.

6         Q    I'm sorry.  So the MSAs were known as master

7    services agreements.  Correct?

8         A    Correct.

9         Q    Merchant services agreements.  Is that

10   right?

11        A    I believe they were merchant services

12   agreement.

13        Q    All right.  Thank you.  We're going to do

14   65, which is this -- to your understanding, sending

15   full PAN data via e-mail is equivalent to transmitting

16   it.  Correct?

17             MR. UNDERWOOD:  Objection to form.

18        A    You're asking me the difference between

19   sending and transmitting?

20        Q    Is there a difference to your understanding?

21             MR. UNDERWOOD:  Objection to form.

22        A    I don't believe so.

23        Q    So to your understanding, they're the same

24   thing.  Is that right?

25        A    To my understanding.

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 44

1                    MR. UNDERWOOD:  Objection to form.

2                    THE REPORTER:  I'm sorry.  Excuse me.

3         Could you repeat, Mr. Underwood, and also your answer,

4         Mr. Ades?

5                    MR. UNDERWOOD:  Objection to form.

6                    THE WITNESS:  And I said to my

7         understanding.

8                    THE REPORTER:  Thank you.

9                    MR. MARX:  And, again, Mr. Underwood,

10        what's the basis of the objection?

11                   MR. UNDERWOOD:  Vague and confusing.

12        What's the context we're talking about?  And which

13        transmitting and sending are the same?

14                   MR. MARX:  Okay.

15        BY MR. MARX:

16           Q    Now, with respect to BAMS retaining the e-

17        mails which had full PAN data unsecured, what happened

18        to those e-mails?

19                   MR. UNDERWOOD:  Objection to form.

20           A    What's happening -- I -- I was not privy to

21        e-mail storage regulations within BAMS.

22           Q    Okay.  Well, in your e-mail, your June 13,

23        2017, e-mail, you referred to PAN data, full PAN data,

24        being sent via unsecure e-mails.  Correct?

25           A    Correct.

Page 45

1      Q    Did you take any steps to find out what

2    happened to those e-mails?

3      A    After they were sent?

4      Q    Yes.

5      A    No.

6      Q    Okay.  And to your knowledge, were those e-

7    mails stored anywhere on a server?

8      A    I -- I couldn't tell you.

9      Q    Okay.  To your knowledge, were your e-mails

10   that you sent or received, were they stored on a

11   server?

12     A    I would assume they would be.

13     Q    Okay.  And would you assume that the e-mails

14   that had been sent with full PAN data unsecured were

15   also stored?

16                MR. UNDERWOOD:  Objection to form.

17     A    I couldn't tell you.

18     Q    And were those -- did you see any of the e-

19   mails that were -- contained full PAN data via

20   unsecured e-mail?

21     A    I did not.

22     Q    So you were told about them.  Is that right?

23     A    That's correct.

24     Q    Okay.  Is that what Ms. Ali Davis told you?

25     A    That's correct.

Page 46

1      Q    Let's go to Exhibit 65.

2                (Exhibit 65 was marked for

3                identification.)

4           We're going to again show you or share with

5      you an exhibit.  It's a longish exhibit.  It's 100

6      pages, I believe.  Take whatever time you need.  Tell

7      Shelley to go up and down, and let us know when you're

8      ready to answer questions.

9      A    You can keep scrolling.  You can keep going.

10               You can go to the next page.

11               You can go to the next page.

12               Next page.

13               Next page, please.

14               Keep scrolling.

15               Yep.  I'm good.

16     Q    Okay.  Now, for the record, Exhibit 65 is a

17     series of documents that were produced to us by the

18     defendant reporting to be the merchant services

19     agreement for Disney.  We received it without Bates

20     numbers on it.  And so those Bates numbers were just

21     Disney 001 and so on.  We put those on there for

22     purposes of being able to talk about this exhibit.

23               But having looked at it, Mr. Ades, can you

24     identify this as the merchant services agreement for

25     Disney?

Page 47

1      A    Yes.

2      Q    And, now, would it be fair to say that there

3   was an original MSA, for example, merchant services

4   agreement, that begins on page 28 entered into in 2014

5   and that there were certain subsequent addendums to

6   it?

7      A    It appears that way.

8      Q    Okay.  Any reason to question that?

9      A    No.

10      Q    Okay.  And was this a document that was

11   maintained by BAMS in the normal course of its

12   business?

13      A    Yes.

14      Q    Okay.  And on page 102, again I'm referring

15   to the Bates numbers at the bottom right bottom, not

16   the actual page number in the center of the document,

17   is that your signature?

18      A    Yes.

19      Q    Okay.  And how did it come about that -- and

20   is this an addendum that you signed, which begins on

21   page 96?

22      A    It appears it is an addendum.  Yep.

23      Q    And you signed that somewhere on about

24   July 10, 2015.  Is that right?

25      A    Is that what the date says?  I can't see it

Page 48

1    here.  Yes.  July -- July 10, 2015.  Yep.

2         Q    Okay.  And on page 102, that's your

3    signature.  Is that correct?

4         A    Yep.

5         Q    Where it says -- and did you print in the

6    word David -- the name David Ades?  Did you write

7    that? I

8         A    Did not.  That would have been my assistant.

9         Q    Okay.  And under it it says, correct,

10   "EVP/GM."  Is that right?

11        A    That's correct.  Yep.

12        Q    And that's executive vice president and

13   general manager.  Right?

14        A    That -- that's correct.

15        Q    Okay.  And that's the job title you told us

16   you were in, but you couldn't remember exactly when

17   you got it.  But you were in it at least on July 10,

18   2015.  Correct?

19        A    Correct.

20        Q    Okay.  And did you say your assistant put in

21   those?

22        A    Yep.  Yep.

23        Q    Yes?

24        A    Yes.

25        Q    Okay.  Now, you signed it in two places?

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 49

1        A     I did.

2        Q     And why was that?

3        A     Why did I sign it in two places?  Because

4    that was the requirement of the agreement.

5        Q     Okay.  So on the top, the signature at the

6    top portion of page 102, you signed on behalf of Bank

7    of America Merchant Services or BAMS.  Correct?

8        A     Yes.

9        Q     Okay.  And at the bottom you signed on

10   behalf of Bank of America, N.A.  Correct?

11       A     Correct.

12       Q     Okay.  Were you employed at the time by Bank

13   of America, N.A.?

14       A     No.

15       Q     Why did you sign it?

16       A     Because I was authorized to sign it.

17       Q     Okay.  Who authorized you to sign it?

18       A     Who authorized me to sign it?

19       Q     Yes, sir.

20       A     Our -- our legal counsel.

21       Q     Okay.  Now, would it be fair to say at that

22   time as executive V -- is that a correct way to say

23   it, executive VP?

24       A     Yeah.  That's fine.

25       Q     Yep.  Okay.  I'll just shorten it for

David Ades                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 50

1    purposes of talking about it in the transcript.  As

2    executive VP/GM, you reported directly to the CEO, Tim

3    Tynan.  Is that right?

4         A    That's correct.

5         Q    Would it be fair to say that you were the

6    number two person in the organization?

7                   MR. UNDERWOOD:  Object to form.

8         A    No.  I wouldn't say I was the number two

9    person.  No.

10        Q    Okay.  The MSAs or merchant services

11   agreements, were you in charge of having them executed

12   and negotiated?

13        A    Yes.  Me and the people that reported and

14   worked for me were in charge.  Yes.

15        Q    Okay.  So you and individuals reporting to

16   you were involved in negotiating and preparing the

17   MSAs.  Is that a correct statement?

18        A    That is correct.

19        Q    All right.  And you would have the ultimate

20   authority to sign an MSA.  Is that correct?

21        A    That's correct.

22        Q    All right.  And was that true for all of the

23   MSAs that BAMS entered into while you were executive

24   VP/GM?

25        A    Only for the lines of business I was

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 51

1    responsible for.

2        Q    Okay.  Okay.  And did you -- with respect to

3    the lines of business you were responsible for, did

4    you negotiate the MSAs on behalf of BAMS?

5        A    I did.

6              MR. UNDERWOOD:  Object to form.

7    BY MR. MARX:

8        Q    Okay.  And with respect to the lines of

9    business that you were responsible for, did you

10   negotiate the MSAs on behalf of Bank of America?

11       A    I did.

12             MR. UNDERWOOD:  Objection to form.

13   BY MR. MARX:

14       Q    And was that true through all the time that

15   you were executive VP/GM at BAMS?

16       A    Yes.

17             MR. UNDERWOOD:  Objection to form.

18   BY MR. MARX:

19       Q    Okay.  Now, when did you first become aware

20   that BAMS was not PCI compliant?

21             MR. UNDERWOOD:  Objection to form.

22       A    Pertaining to the e-mails that you saw when

23   Ali Davis and I met, and I -- I'm not -- I'm assuming

24   we met in June of -- of -- sometime in June of that

25   year.

David Ades                                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 52

1       Q    June of 2017.  Correct?

2       A    Correct.

3       Q    Okay.  And to your knowledge, did BAMS ever

4   become PCI compliant?

5                 MR. UNDERWOOD:  Objection to form.

6       A    No.

7       Q    Now, if you go to page 1 of Exhibit 65,

8   which is -- we'll call it the Disney MSA.  Is that

9   okay?

10      A    Yep.

11      Q    Okay.  It's signed on behalf of BAMS and

12  Bank of America by John Rubinetti.  Do you know who

13  that was?

14      A    Yep.

15      Q    Did he report to you?

16      A    He did.

17      Q    Okay.  And that was an addendum that was

18  entered into on March 25, 2017.  Correct?

19      A    Yep.

20      Q    And the next page, page 2, is an addendum

21  dated July 11, 2019.  Correct?

22      A    Correct.

23      Q    And same question.  Is Steve Herrmann -- is

24  that -- is he a senior VP of sales?

25      A    Yes.

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 53

1      Q    And did he report to you?

2      A    Yes.

3      Q    And did you authorize him to sign this?

4      A    Yes.

5      Q    Okay.  Let's go back to one -- to the prior

6   addendum, page 1.  Did you authorize Mr. Rubinetti to

7   sign it?

8      A    Yes.

9      Q    Now, at the time that this addendum was

10  entered into -- starts on page 2, July 11, 2019 -- it

11  was your understanding correct that BAMs was not PCI

12  compliant.  Correct?

13                 MR. UNDERWOOD:  Objection to form.

14     A    Sorry.  Could you repeat the date, please?

15     Q    Yes.  July 11, 2019.

16     A    July 11, 2019.   June -- so we would -- yes.

17  We were not compliant.

18     Q    Okay.  Then on page 3 of the exhibit,

19  there's an addendum, and that's dated March 26, 2018.

20  Correct?

21     A    March 26, 2018.  Yep.

22     Q    And that's signed on page 8 by Mr. Herrmann

23  again.  Right?

24     A    Yep.

25     Q    All right.  And he was senior VP sales.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 54

1    Right?

2        A    That's correct.

3        Q    And he was signed pursuant to your

4    authorization.  Correct?

5        A    That's -- that's correct.

6        Q    Okay.  And at the time, March 26, 2018, you

7    were aware -- your understanding was that BAMS was not

8    PCI compliant.  Correct?

9                MR. UNDERWOOD:  Objection to form.

10       A    My understanding would be that the issue

11   that was relayed to me by Ali Davis in June of 2017

12   would probably have been rectified before 2018.

13       Q    Okay.  But your understanding, was BAMS PCI

14   compliant in March of 2018?

15       A    I -- I can't tell you for certain.  I'm

16   assuming that we were by then compliant.

17       Q    And what's the basis of that understanding?

18       A    Well, the basis is when we -- when we found

19   out that we were noncompliant, we looked at options to

20   remedy the situation.

21       Q    Okay.

22       A    And -- and we would have -- when we -- when

23   we reported that we were noncompliant, we would have

24   been tracking to see that our remedial -- that we were

25   making process on our remedial plan to get us to

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

                                                    Page 55

1    compliancy.

2         Q    Okay.  When you say "would have," are you

3    aware of what if anything was done with respect to the

4    issue of PCI noncompliance that was identified in June

5    of 2017?

6                   MR. UNDERWOOD:  Objection to form.

7         A    I'm not a hundred percent aware.  I know

8    that we talked through some options and that we

9    probably would've followed through on some of the

10   options that were outlined in that e-mail.

11        Q    But you don't know for a fact either way.

12   Correct?

13        A    I -- I can't -- I can't recall with

14   certainty.

15        Q    And do you have under any understanding as

16   to what the remedy was?

17        A    The remedy would have been to outsource

18   handling of those chargebacks to First Data.

19        Q    Okay.  And do you know if in fact that was

20   something that was happening in March of 2018?

21        A    I -- I don't recall with a hundred percent

22   certainty.

23        Q    Okay.  You don't recall either way.

24   Correct?

25        A    I do -- I do not recall either way.

David Ades                                      July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 56

1        Q    All right.  Were you familiar with these

2    terms of the Disney merchant services agreement,

3    Exhibit 65?

4        A    Not in intimate detail.

5        Q    Okay.  Was it your understanding that the

6    Disney MSA, Exhibit 65, required BAMS to be PCI

7    compliant?

8                    MR. UNDERWOOD:  Objection to form.

9    BY MR. MARX:

10       Q    I'm sorry.  Did you answer?

11       A    I did not answer.  I'm not sure based on

12   what I'm looking at here.

13       Q    I'd like to refer your attention to page 41

14   of the exhibit, and I'm going to read a portion of it.

15   It's the paragraph -- the second bold paragraph

16   against a little Roman numeral small ii entitled

17   "Additional Data Security Requirements."

18               Nine lines from the bottom reads as follows:

19   "Each party further agrees that it shall (I)," Roman

20   numeral large I, "store all media containing

21   cardmember data in an area limited to select personnel

22   on a 'need to know' basis only and otherwise in

23   compliance with data security requirements."

24               Do you see that?

25       A    Yep.

David Ades                        July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 57

1        Q    Does that refresh your recollection as to

2    whether the Disney MSA required BAMS to be PCI

3    compliant?

4        A    Yep.  Yep.  Yes.

5                  MR. UNDERWOOD:  Objection --

6    BY MR. MARX:

7        Q    And what is that understanding?

8        A    Yes.

9                  MR. UNDERWOOD:  Objection to form.

10   BY MR. MARX:

11       Q    Okay.  So is it your understanding, having

12   had your memory refreshed, that the Disney MSA

13   required --

14       A    Yes.

15       Q    -- BAMS to be PCI compliant?

16       A    It did.

17                  MR. UNDERWOOD:  Objection to form.

18                  Please wait for the question to end.

19   BY MR. MARX:

20       Q    Now, the Disney MSA also required BAMS to

21   undertake an audit every year regarding its PCI

22   compliance.  Is that right?

23                  MR. UNDERWOOD:  Objection to form.

24       A    I believe so.

25       Q    Okay.  And do you know if that in fact

David Ades                                      July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 58

1    happened?

2         A    I believe it did

3         Q    Okay.  And, now, the audit would be

4    something that would be entered -- required to be

5    audited by a QSA, qualified security assessor.  Right?

6                   MR. UNDERWOOD:  Objection to form.

7         A    Typically.

8         Q    And do you know if in fact BAMS was audited

9    by a QSA?

10        A    I can't tell you with certainty.

11        Q    Okay.  And do you know whether BAMS relied

12   upon a Trustwave certification of First Data with

13   respect to that requirement?

14        A    I can't tell you --

15        Q    Okay.  Now, if you as executive VP and

16   general manager wanted to find out the answer to that

17   question, who would you ask?

18        A    I would ask our chief risk officer.

19        Q    Okay.  And who was that?

20        A    Tom Fontana.

21        Q    Who?

22        A    Tom Fontana.

23        Q    Can you spell that last name?

24        A    F-O-N-T-A-N-A.

25        Q    Did you do that?

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 59

1      A    Did I ask Tom Fontana?  Could -- sorry.
2    Could you repeat the question?
3      Q    Sure.  Did you ask Tom Fontana if BAMS had
4    been audited by a QSA?
5      A    I -- I don't recall.
6      Q    Okay.  Now, to your understanding, when you
7    became aware that BAMS was sending unsecure full PAN
8    data in an unsecure e-mail in about June of 2017, did
9    you engage an audit for PCI compliance?
10                   MR. UNDERWOOD:  Objection to form.
11     A    Do we engage with an external party?  Is
12   that the question?
13     Q    Yes.  Did you engage a QSA to do an audit?
14     A    I don't recall.
15     Q    Okay.  And when you say "don't recall," I
16   mean, you don't recall doing that?
17     A    I don't recall doing that.
18     Q    It would've been your decision to do that.
19   Correct?
20     A    It would not have been my decision.
21     Q    Whose decision would it have been?
22     A    It would have been Tom Fontana's decision.
23     Q    Okay.  Who did Tom Fontana report to?
24     A    Tim Tynan.
25     Q    Okay.  Did you discuss with Tim Tynan

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 60

1    whether there should be an audit by a QSA of BAMS?

2                    MR. UNDERWOOD:  Objection --

3        A    I don't recall having that specific

4    conversation with Tim Tynan.

5        Q    And what is the basis of your understanding

6    that BAMS did a PC [sic] audit -- or undertook a PCI

7    audit?

8        A    My understanding is that if we were required

9    to do it, that we would've done it.

10       Q    Oh.  But you don't know.  Correct?

11       A    I don't know.

12       Q    Okay.  Now, was it your understanding under

13   the Disney MSA, Exhibit 65, that if BAMS breached it

14   by not being PCI compliant, that it would be subject

15   to penalties?

16                   MR. UNDERWOOD:  Objection to form.

17       A    Which -- which section are you referring to?

18       Q    Well, let's look at page 37, the bottom.

19   And I'm looking at -- well, it's (b), actually,

20   "Termination by Customer," and it goes on the next

21   page as (b)(i), subdivision (i).  It's of "Material

22   Breach."

23            That's what I'm referring to, from 37 onto

24   38.  Was it your understanding that if BAMS breached

25   the Disney MSA by not being PCI compliant, that it

Case 1:19-cv-04129-AT    Document 174-2    Filed 01/08/25    Page 62 of 151

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 61

1    could be terminated by Disney?

2                    MR. UNDERWOOD:  Objection to form.

3        A    Well, the way I read this is there is a --

4    if something is a material breach, then there's

5    a -- there's a cure period.  It's about 15 days.  And

6    then there's more language about further discussion

7    and further diligence.  Somewhere there may be a cause

8    for termination.  But I'm not a legal expert, so I

9    can't tell you with certainty.

10       Q    Okay.  Let's go back to 16 for a minute.

11   We're going to go back to your e-mail for a minute,

12   Exhibit 16.

13       A    Yep.

14       Q    I'm going on to the second page, your second

15   paragraph.

16                    MR. MARX:  Yeah.  Right there.

17                    THE WITNESS:  Yep.

18   BY MR. MARX:

19       Q    All right.  So you wrote "So the options are

20   to have the merchants call directly to FD."  That's

21   First Data.  Right?

22       A    That is correct.

23       Q    Okay.  "To obtain info they request - might

24   not be a great client experience."  What did you mean

25   by that?

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 62

1      A    Well, because we're having a third party

2    answer our clients' questions.  And since we -- we

3    don't -- we didn't have immediate management and

4    supervision over the First Data -- First Data

5    individuals who would speak to our clients, we

6    couldn't -- we don't know what level of service that

7    our clients would -- would receive.

8      Q    Okay.  Was it a concern that having the

9    merchants go to First Data might somehow weaken or

10   damage the client relationship between BAMS and the

11   merchant?

12     A    It could potentially lead to poor service.

13   Potentially.

14                THE REPORTER:  I'm sorry.  This is the

15   reporter.  Was there an objection placed on the

16   record, Mr. Underwood?

17                MR. UNDERWOOD:  Yes, ma'am.  Objection

18   to form.

19                THE REPORTER:  I'm having a bit of a

20   difficulty hearing you.  I think I'm -- I'm pretty

21   sure I'm getting them all.  Could you speak up just a

22   little more?

23                MR. UNDERWOOD:  I'll bring my phone

24   closer to me.  Is that better?

25                THE REPORTER:  That's better.  I

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 63

1    appreciate it.

2                    MR. UNDERWOOD:  Thank you so much.  I

3    apologize.

4                    THE REPORTER:  No worries.

5    BY MR. MARX:

6        Q    Okay.  So would it be fair to say that there

7    was concern that if they had -- if BAMS was directing

8    merchants to go to First Data for their questions,

9    that they might lose the customer in the end?

10                   MR. UNDERWOOD:  Objection to form.

11       A    I'm not saying necessarily lose the customer

12   but maybe less than stellar client experience because,

13   again, we didn't have direct oversight over those

14   individuals that would then service our clients.

15       Q    Okay.  So from a business point of view, it

16   was undesirable to have the merchants going to First

17   Data instead of to BAMS.  Is that a correct statement?

18                   MR. UNDERWOOD:  Objection to form.

19       A    We've said desirable.  We've said we

20   would -- we would prefer that we spoke to our clients

21   directly.  And it was just a potential for less than

22   optimal service.

23       Q    Okay.  Was it your understanding when you

24   wrote your e-mail on June 13, 2017, that if the

25   merchants went to First Data for their chargeback

Page 64

1    information, that there would not be an issue with

2    BAMS sending unsecure PAN data through unsecure e-

3    mail?

4                  MR. UNDERWOOD:  Objection to form.

5        A    I'm trying to understand your question.

6        Q    Okay.  Well, you said that was an option.

7    In your e-mail you said and "the options are to have

8    the merchants call directly to First Data" --

9        A    Right.

10       Q    -- "to obtain the info they request"?

11       A    Correct.

12       Q    Okay.  That was an option that you

13   identified.  Right?

14       A    Correct.  Under the assumption that First

15   Data was PCI compliant.

16       Q    Right.  And so when you wrote this, your

17   understanding was it was an option to have the

18   merchants go to First Data, and then the whole PCI

19   issue wouldn't arise.  Correct?

20       A    Correct.

21       Q    Thank you.  And for the reasons you've just

22   testified to, that was an option that was not

23   considered a good one.  Correct?

24                  MR. UNDERWOOD:  Objection to form.

25       A    That option had some -- some potential

Page 65

1    issues with it.

2         Q    Okay.  And how would you identify those

3    issues?

4         A    As potentially not great client experience.

5         Q    Okay.  And was the solution of having the

6    merchants go directly to First Data, was that the

7    ultimate solution to the remediation of this problem

8    to your understanding?

9         A    I do not recall.

10                   MR. UNDERWOOD:  Objection --

11   BY MR. MARX:

12        Q    Okay.  All right.  We're going to show you

13   another exhibit, another MSA.  It'll be Exhibit 64.

14                   (Exhibit 64 was marked for

15                   identification.)

16                   Again, it's a long document.  Little bit

17   shorter, 66 pages.  And just let me know when you're

18   ready to talk about it.

19        A    Yep.  Keep scrolling.

20                   Hang on.  Hang on.  Hang on.  Can you

21   roll -- sorry.  Can you go back?  Go back.  I want to

22   see who signed.

23                   Oh.  Yep.  Keep coming.  Keep scrolling.

24                   Yep.  You can keep scrolling.

25                   Yep.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 66

1           Yep.

2           Okay.  I'm good.  We can talk about this

3    agreement.

4                MR. MARX:  Is he ready?

5                THE WITNESS: Yep.

6    BY MR. MARX:

7      Q    Oh.  Okay.

8      A    You don't need to keep scrolling.  I'm --

9    I'm ready.

10     Q    Oh.  Okay.  Well, Exhibit 64 is documents

11   that were produced by the defendant purporting to be

12   the MSA for Chevron with the original plus addendums.

13   Again, they were produced without Bates numbering. We

14   produced the Bates numbering, which indicates -- which

15   appears on the bottom right of each page going through

16   page 1 through page I think 66.

17           And can you identify this as the Chevron

18   MSA?

19     A    I can.

20     Q    Okay.  And this was entered into in the

21   normal course of business.  Is that correct?

22     A    Correct.

23     Q    Okay.  And I think your signature is on one

24   of these pages.  Hold on.

25     A    Yep.  I saw it.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 67

1      Q    Yeah.  Page 12, I believe.  Is that your

2    signature?

3      A    It is.

4      Q    Okay.  And, again, same questions.  That was

5    your signature, and the handwritten title was entered

6    into by your assistant.  Is that right?

7      A    That is correct.

8      Q    Okay.  On July 13, 2015.  Right?

9      A    That is correct.

10      Q    And you signed with authorization on behalf

11    of both BAMS and Bank of America.  Correct?

12      A    I did.

13      Q    Okay.  And I believe your signature's also

14    on page 25?

15      A    Yep.

16      Q    Okay.  Now, actually, on page 25 is your

17    title.

18      A    Actually, one second.  Yep.

19      Q    I don't see an actual -- it seems to be

20    blank.

21      A    Yep.

22      Q    Did you actually sign this at one time?

23    This is how it was produced to us.  Do you know

24    whether you signed it?

25      A    I do not know.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 68

1      Q    Okay.  But to your understanding, you agreed

2   to this agreement?

3                    MR. UNDERWOOD:  Objection -- form.

4      A    I agreed to the one that I signed. I'm not

5   sure --

6      Q    Yeah.  Okay.

7      A    Yep.

8      Q    And your understanding is that there is a

9   document with your signature on it.  Correct?

10      A    Yes.

11      Q    Okay.

12                    MR. UNDERWOOD:  Objection.

13                    THE REPORTER:  That an objection,

14   Mr. Underwood?

15                    MR. UNDERWOOD:  Yes.  There's

16   objection.  Form.

17   BY MR. MARX:

18      Q    Okay.  And if you look at page 27, I

19   believe, same thing.  Is that your signature?

20      A    Yes.

21      Q    Okay.  And in that case, you signed solely

22   on behalf of BAMS.  Right?

23      A    Yes.

24      Q    Okay.  This page here, 27, has to do with

25   certification requirements.  It has a list.  Appears

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 69

1    to be hardware.  I'm not a technical person.

2              Is this the terminals that First Data was

3    using for the customer?

4         A    This is hardware and software that the

5    client was using.  I'm not sure of the ownership of

6    that equipment, if it was owned by the client or by

7    First Data.

8         Q    Okay.  All right.  Thank you.

9         A    Yep.

10        Q    And did the Chevron MSA also require BAMS to

11   be PCI compliant?

12             MR. UNDERWOOD:  Objection to form.

13        A    I'm assuming it does.  I assume it does.

14        Q    That was your understanding.  Is that

15   correct?

16        A    Yes.

17             MR. UNDERWOOD:  Objection to form.

18   BY MR. MARX:

19        Q    Did you ever speak to Tim Tynan about the

20   substance of your June 13, 2017, e-mail?

21        A    No.  Not specifically.

22        Q    Okay.  Did you ever speak to Tim Tynan about

23   BAMS being or not being PCI compliant?

24             MR. UNDERWOOD:  Objection to form.

25        A    Not specifically.

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 70

1      Q    Did you speak to him generally or at all?

2      A    Well, there's -- sorry, Robert or Mr. Marx.

3  The reason I said "Not specifically" is because we

4  would have had an audit committee meeting.  In those

5  audit committee meetings, we would go through the

6  self-identified audit issues.

7           If that had been reported, it would've been

8  noted.  It would've been a subject of discussion

9  amongst myself and other members of that meeting.

10 Generally, Tim would attend those meetings.  Those

11 meetings were led by Tom Fontana.

12     Q    Okay.  Thank you.  And by Tim, you're

13 referring to Tim Tynan?

14     A    Tim Tynan.  Correct.

15     Q    Thank you.  Did you ever speak to anyone at

16 Bank of America about the PCI issue?

17     A    I do not -- I don't -- I do not recall

18 speaking to anybody at Bank of America.

19     Q    Okay.  And did you ever speak to anyone at

20 Fiserv about the Bank of America issue -- about the

21 PCI issue?  Excuse me.

22     A    I -- I personally did not speak to anybody

23 at -- at -- do not recall speaking to anybody at First

24 Data about this particular issue.

25     Q    I'm sorry.  What were these meetings called

Page 71

1    where you said it might come up?

2         A    There was a -- I forgot the name, but there

3    was a -- a monthly review of any audit issues.

4         Q    Were there any notes made of those meetings?

5         A    There were.

6         Q    Okay.  Do you know where they were kept?

7         A    Tom Fontana would have kept records

8    somewhere.

9         Q    At any time, did you undertake a search for

10   records regarding this case?

11        A    Personally, no.

12        Q    Okay.  And the minutes of these

13   meetings -- I'm sorry.  What were these meetings

14   called again?

15        A    I -- I don't recall the specific name of the

16   meeting.

17        Q    Okay.

18        A    But it was -- it was a review of -- of

19   outstanding audit issues.

20        Q    Okay.  Were there minutes of these meetings

21   collected anywhere?

22        A    There were minutes, and they were

23   circulated.

24        Q    Now, you referred one of your answers to a

25   self-identified audit issue?

Page 72

1      A     Yeah.

2      Q     Is that also known as SIAI?

3      A     It is.

4      Q     Okay.

5            MR. MARX:  Let's show him 28.

6   BY MR. MARX:

7      Q     We're going to show you another exhibit,

8   Mr. Ades.  We're done with that.

9      A     Sure.

10     Q     We'll go two pages.

11     A     Okay.

12     Q     Okay.  Exhibit 28 is a two-page document

13  produced by Defendant bearing Bates number 7235 to

14  7236.

15            (Exhibit 28 was marked for

16            identification.)

17         Can you identify this?

18     A     Yep.  It's a --

19     Q     What is it?

20     A     It's a form where we would have recorded the

21  self-identified audit issue.

22     Q     Okay.  And was this prepared in the normal

23  course of business?

24     A     Yes.

25     Q     Okay.  And on the second page at the bottom,

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 73

1    I see your name is typed in.  Do you see that?

2         A    Yep.  Yeah.

3         Q    And what participation if any did you have

4    in preparing this document?

5         A    I probably would have reviewed the document

6    after it was prepared.

7         Q    Okay.  And above your name is typed Brian

8    Glynn.  Right?

9         A    That's correct.

10        Q    And to your understanding, what

11   participation if any did he have in preparing this

12   document?

13        A    Brian would have been the lead person on my

14   team putting together this document with other team

15   members.  But he would be the -- the named owner,

16   business owner.

17        Q    Okay.  Now, this was the SIAI submission

18   regarding BAMS account managers handling PAN data

19   without PCI DSS compliance dated December 15, 2017.

20   Correct?

21        A    That is correct.

22        Q    Okay.  Was this the final SIAI on that

23   issue?

24        A    I can't say with certainty.

25        Q    Okay.  To your knowledge, was there a

David Ades                         July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 74

1    subsequent one?

2         A    I do not know, or I don't recall.  I don't

3    recall.

4         Q    Okay.  Do you recall any meetings, any of

5    these monthly meetings, where this SIAI issue as

6    entitled here on this Exhibit 28 was brought up again?

7         A    I do not recall.

8         Q    Okay.  Do you recall speaking to anybody

9    about preparing another for subsequent SIAI on this

10   issue?

11        A    I don't recall any specific conversations.

12        Q    Okay.  Now, to your knowledge, you found out

13   about the PCI noncompliance issue in or about June of

14   2017.  Correct?

15                  MR. UNDERWOOD:  Objection to form.

16        A    That's correct.

17        Q    All right.  And this SIAI is dated

18   December 15, 2017.  Correct?

19        A    Yes.

20        Q    Okay.  And as of that date, there was no

21   remediation that was already in effect at that point.

22   Correct?

23                  MR. UNDERWOOD:  Objection to form.

24        A    I assume there wasn't.

25        Q    Okay.  In fact the second page of the

Page 75

1    exhibit refers to steps taken in order to remediate

2    the issue.  Correct?

3         A    Yeah.  But it doesn't give any timelines,

4    so --

5         Q    Yeah.  But that's a future directed

6    statement.  Correct?

7                   MR. UNDERWOOD:  Object to form.

8         A    "Will take the following actions to

9    remediate."  Yep.

10        Q    Okay.  Reading the document, is it fair to

11   conclude that at the time the document was created,

12   BAMS was not PCI compliant?

13        A    That would be fair.

14                  MR. UNDERWOOD:  Objection to form.

15   BY MR. MARX:

16        Q    Okay.  And to your knowledge, were any of

17   the merchants told that?

18                  MR. UNDERWOOD:  Objection to form.

19        A    I do not recall.

20        Q    Okay.  To your understanding, did BAMS have

21   an obligation to tell any of their merchants that

22   under any of the MSAs?

23                  MR. UNDERWOOD:  Objection to form.

24        A    I don't specifically recall, and I don't

25   specifically recall how wide the issue was.

Page 76

1          Q    Okay.

2                    THE WITNESS:  Could I -- can I ask for

3     a two-minute bio break?

4                    MR. MARX:  Oh.  Yeah.  At any time.

5     I'm sorry I left that out of my speech.  Yes.

6                    THE WITNESS:  Yeah.  Sorry.  I'll be

7     quick.

8                    MR. MARX:  That's fine.  Okay.

9                    THE WITNESS:  All right.  Thank you.

10                   THE VIDEOGRAPHER:  We're off the record

11    at 12:40 p.m.

12                   (Off the record.)

13                   THE VIDEOGRAPHER:  We are back on the

14    record at 1:17 p.m.

15    BY MR. MARX:

16         Q    Okay.  Mr. Ades, while you were at BAMS,

17    they had an IM or instant messaging system.  Correct?

18         A    Yes.

19         Q    Okay.  And that was used routinely to

20    communicate among employees?

21         A    Yes.

22         Q    Okay.  And did you use it to discuss issues

23    with -- PCI issues?

24         A    I don't recall.

25         Q    But you might have?

Page 77

```
 1        A     Perhaps.

 2                    MR. UNDERWOOD:   Form

 3     BY MR. MARX:

 4        Q     Exhibit 28 -- was it 20 -- which is the

 5     SIAI --

 6                    MR. MARX:   Let's show it to the

 7     witness.

 8     BY MR. MARX:

 9        Q     Okay.  And just going back to my earlier

10     question, this instant messaging system, did this have

11     a name to your understanding?

12        A     I don't -- I don't recall, honestly.

13        Q     Okay.  Do you know where these instant

14     messages were kept or stored?

15        A     I do not.

16        Q     Okay.  So this Exhibit 28, which is the SIAI

17     submission dated December 15, 2017, Exhibit 28, was

18     this discussed in any of these monthly audit meetings?

19                    MR. UNDERWOOD:   Objection --

20        A     I believe I -- I -- you know, I can't tell

21     you with a hundred percent certainty, but I believe

22     they would have been or would have been.

23        Q     Okay.  And that would be reflected in the

24     minutes of the meeting if they were.  Correct?

25        A     If it was tabled in the meeting, it would
```

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 78

1    have been reflected in -- in the minutes of the

2    meeting.  Correct.

3         Q    Okay.  And these meetings were held on a

4    monthly basis.  Is that right?

5         A    I believe so.

6         Q    And who would attend these meetings?

7         A    I believe it would be our chief risk

8    officer, our chief legal officer, our CEO, our CFO,

9    and the line of business executives.

10        Q    Okay.  And do you know where the minutes of

11   these meetings were kept?

12        A    I do not.

13        Q    Okay.  But to your understanding, there were

14   minutes prepared and kept regarding these meetings.

15   Is that correct?

16        A    That is correct.

17             MR. MARX:  Mr. Underwood, we have not

18   received those minutes.  If the defendant could look

19   for them, we have not received them.

20             MR. UNDERWOOD:  Robert, we're happy to

21   discuss discovery.

22             MR. MARX:  Okay.  I just want it on

23   the -- we'll be happy to discuss it at a later date

24   off the record.  I just want it on the record that we

25   have made that record.

David Ades                              July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 79

1    BY MR. MARX:

2        Q    And do you know -- do you elect whether the

3    PCI noncompliance issue, the SIAI, was discussed at

4    any of the monthly audit meetings?

5        A    I can't recall.

6        Q    Okay.  Would it be your expectation that it

7    would have been discussed?

8        A    It depends.

9                MR. UNDERWOOD:  Objection --

10               THE REPORTER:  I'm sorry.  Was that an

11   objection?

12               MR. UNDERWOOD:  Yes.  I'm sorry.  It

13   was a little late.

14   BY MR. MARX:

15       Q    Just give me an understanding of what you

16   mean by "It depends."

17       A    Well, some things were submitted in -- in

18   writing prior to the meeting.  I'm not sure if we

19   covered every issue that was submitted.  So it could

20   have.  Could not have been.  I -- I can't tell you

21   with a hundred percent certainty if all items

22   were -- that were submitted were talked about or if we

23   dealt with them outside of the meeting forum.

24       Q    Now, I'm sorry.  Did you testify earlier

25   that it was routine to discuss SIAI issues at the

Page 80

1    audit meetings?

2         A    Yes.

3         Q    Okay.  All right.  Thank you.  Now, with

4    respect to the Disney MSA -- we're done with this

5    exhibit here.  I'd like to -- and that's Exhibit 65,

6    and I'd like to ask you a question about the audit,

7    which is on page 43.  But, again, if you -- feel free

8    to direct Shelley to move around where you might want

9    to be.

10         But my question has to do with the audit,

11   which is found I believe on page 43.  Let me know when

12   you're ready to answer a question.

13        A    Yep.  Just reading.

14              MR. MARX:  I'm sorry.  Did he say he

15   was ready?

16              THE WITNESS:  Yep.  I'm ready.

17   By MR. MARX:

18        Q    Okay.  Sorry.  So this is page 43, 0043, of

19   Exhibit 65.  Roman numeral vii refers to the PCI

20   audit.  That refers to an obligation for BAMS to be

21   audited for its PCI compliance.  Correct?

22        A    Well, it says servicers, so I'm not sure if

23   this is BAMS or -- or BAMS, you know, service.  Or it

24   could be broader.  It could be First Data.  The --

25   nonetheless, we're representing whether through us or

David Ades                     July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 81

1    through our provider, which was First Data, that a

2    audit would be performed.

3         Q    Now, on page 28 of this same exhibit -- this

4    the MSA 65 -- the servicer is listed as BAMS.  Right?

5         A    Where -- sorry?  Where are you pointing to?

6         Q    Yeah.  Page 28.  At the top, it defined who

7    the servicer -- I believe.

8         A    Each a servicer.  Yep.

9         Q    So to your understanding, the audit under

10   this MSA referred to an audit of BAMS.  Correct?

11             MR. UNDERWOOD:  Objection to form.

12        A    I'm not a hundred percent certain.

13        Q    Now, there was a time that you were on the

14   Visa board.  Right?

15        A    Visa Advisory Board.  Yep.

16        Q    Visa Advisory Board.  Thank you.  Do you

17   have an understanding as to whether or not BAMS is

18   required to perform its services to merchants in

19   compliance with Visa rules and regulations?

20             MR. UNDERWOOD:  Objection to form.

21        A    Can you repeat the question, please?

22        Q    Yeah.  Do you have an understanding as to

23   whether or not BAMS was required to perform its

24   services to merchants in compliance with Visa rules

25   and regulations?

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 82

1        A    Yes.

2                 MR. UNDERWOOD:  Same objection.

3        Q    And what is that understanding?

4                 MR. UNDERWOOD:  Objection to form.

5        A    That we would comply with the Visa rules and

6    regulations.

7        Q    All right.  Could you repeat your answer,

8    please?  We had the objection over it.

9        A    That we would comply to Visa rules and

10   regulations.

11       Q    Okay.  I'd like to show you now Exhibit 82,

12   which we just pulled off the internet.

13                 (Exhibit 82 was marked for

14                 identification.)

15                 It's not something we had.  That's why we

16   haven't produced it.  And when you've had a chance to

17   look through Exhibit 82, let me know when you're ready

18   to answer questions.

19       A    Okay.

20       Q    Now, do you recognize this Exhibit 82 as the

21   Visa rules regarding PCI DSS compliance?

22       A    I don't know if those are the specific

23   rules, but it's a document that refers to compliance

24   with Visa's PCI DSS.

25       Q    Okay.  Now, on the second page of the

Page 83

1    document exhibit, it says "Payment Card Industry Data

2    Security Standard" or PCI DSS --

3           A    Yep.

4           Q    -- "compliance is required of all entities

5    that store, process, or transmit Visa cardholder data

6    including financial institutions, merchants, and

7    service providers."  See that?

8           A    Yep.  Yep.

9           Q    Does that comport with your understanding of

10   BAMS's obligations to comply with Visa rules regarding

11   PCI DSS?

12          A    Yes.

13                   MR. UNDERWOOD:  Objection to form.

14   BY MR. MARX:

15          Q    Thank you.  Do you have an understanding as

16   to whether Visa could have sought financial penalties

17   from BAMs for BAMS not being PCI compliant?

18                   MR. UNDERWOOD:  Objection to form.

19          A    I can't answer with certainty.

20          Q    Okay.  Do you have an opinion regarding

21   that?

22                   MR. UNDERWOOD:  Objection to form.

23          A    It would depend on the violations,

24   frequency, severity, et cetera.

25          Q    Is it your understanding that the fact of

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 84

1    BAMS not being PCI compliant could under certain

2    circumstances result in financial penalties being

3    imposed by Visa?

4                    MR. UNDERWOOD:  Objection to form.

5        A    Again, depending on circumstances, I -- I

6    can't tell you with certainty.

7        Q    Okay.  Do you consider it to be a

8    possibility?

9                    MR. UNDERWOOD:  Objection to form.

10       A    Possibility, yes.

11       Q    Did you have any conversations with anyone

12   at Bank of America about any potential financial

13   liability as a result of BAMS not being PCI compliant?

14                   MR. UNDERWOOD:  Objection to form.

15       A    I did not.

16       Q    Do you know whether anyone did?

17       A    I do not.

18       Q    Okay.  Did you have any conversations with

19   anyone at Fiserv about any potential financial --

20   strike that.

21            Did you have any conversations with anyone

22   at First Data about any potential financial liability

23   as a result of BAMS not being PCI compliant?

24                   MR. UNDERWOOD:  Objection to form.

25       A    I did not.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 85

1        Q    Do you know if anyone did?

2              MR. UNDERWOOD:  Objection to form.

3        A    I do not.

4        Q    Now, did you have any conversations with

5    anyone at Bank of America regarding the PCI compliance

6    issue?

7              MR. UNDERWOOD:  Objection to form.

8        A    I did not.

9        Q    Sorry?

10       A    I did not.

11       Q    Okay.  Do you know whether anyone did?

12             MR. UNDERWOOD:  Objection to form.

13       A    I do not.

14       Q    Did you have conversations with anyone at

15   First Data regarding the PCI compliance issue?

16             MR. UNDERWOOD:  Objection to form.

17       A    Not to my recollection.

18       Q    Do you know whether anyone did

19             MR. UNDERWOOD:  Objection to form.

20       A    I do not know.

21       Q    Now, you testified that there was a

22   possibility that under certain circumstances to your

23   understanding BAMS might incur some financial

24   liability from Visa as a result of not being PCI

25   compliant.  If that were to be the case, what was your

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 86

1    understanding as to what the financial liability would

2    be?

3                   MR. UNDERWOOD:  Objection to form.

4        A    Again -- again, it depends on the situation,

5    the severity.  There's lots of mitigating

6    circumstances that would impact or have a bearing on

7    any kind of financial penalties.

8        Q    Okay.  There could be possibility to be a

9    fine.  Is that right?

10       A    Possibility to be a fine.

11       Q    Okay.  And what would be the range of what

12   potential fine could possibly be assessed to your

13   understanding?

14       A    I have no clue.

15       Q    Okay.  Other than this Exhibit 16, the e-

16   mail you wrote on June 13th, 2017, did you write any

17   other e-mails regarding the PCI issue?

18       A    I do not recall.

19       Q    Did you discuss the PCI issue at any time

20   with Mark Kendall?

21       A    I don't recall.

22       Q    Did you discuss the PCI issue at any time

23   with Eric Slawin?

24       A    I don't believe I did.

25       Q    Did you discuss the PCI issue at any time

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 87

1    with Natasha Collins?

2         A    I can't recall with certainty, but most

3    likely.

4         Q    Can you recall anything about that

5    conversation or conversations?

6         A    I cannot recall.

7         Q    Okay.  And do you know how many

8    conversations there were?

9         A    I don't.

10        Q    Okay.  Are you aware of any concern that

11   merchants would find out that BAMS was not PCI

12   compliant?

13                  MR. UNDERWOOD:  Objection to form.

14        A    Nope.  No.  No concerns.

15        Q    Okay.  Do you have an understanding as to

16   whether BAMS had any responsibility to tell

17   cardholders that their information was transmitted

18   insecurely and might be susceptible to that being

19   compromised?

20                  MR. UNDERWOOD:  Objection to form.

21        A    To cardholders, no.

22        Q    Okay.  Do you have any understanding as to

23   whether BAMS had any responsibility to tell the

24   merchants that that information was transmitted

25   unsecurely and might be susceptible to being

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 88

1    compromised?

2                    MR. UNDERWOOD:  Objection to form.

3        A    I'm not sure of any obligations required for

4    notification.

5        Q    Prior to becoming aware of this lawsuit, you

6    were aware of Mr. Slawin.  Correct?

7        A    I was aware that he was an employee under

8    Natasha Collins.  Yes.

9        Q    Okay.  Did you have any conversations with

10   him?

11       A    I don't recall having specific conversations

12   with Eric.  I may have, but I don't recall.

13       Q    Were you at all involved in his termination?

14       A    I was not.

15       Q    How did you become aware that he'd been

16   terminated?

17       A    I think Natasha would have told --

18       Q    Okay.  You don't remember if in fact she did

19   that?

20       A    I can't recall with certainty.  I'm just

21   assuming that she would tell me if one of her

22   employees was terminated.

23       Q    Okay.

24       A    For cause.

25       Q    You were not consulted regarding that

Page 89

1    decision.  Is that correct?

2                    MR. UNDERWOOD:  Objection.  Form.

3        A    I don't believe I was.

4        Q    Well, were were you ever advised as to any

5    reason why Mr. Slawin was terminated?

6                    MR. UNDERWOOD:  Objection to form.

7        A    I don't recall.

8        Q    Sorry.  What was the answer?

9        A    I don't recall.

10       Q    Okay.  Were you ever advised of any issue

11   with respect to Mr. Slawin downloading e-mails?

12                   MR. UNDERWOOD:  Objection to form.

13       A    Only after the fact.

14       Q    Okay.  After the fact being in 2023 or

15   thereafter?

16       A    Correct.

17       Q    Okay. Did you ever send an e-mail to

18   Mr. Slawin regarding the PCI issue?

19       A    Did I personally send him an e-mail?  I -- I

20   do not recall.

21       Q    Did you ever receive from him regarding the

22   PCI issue?

23       A    I don't believe so.

24       Q    Okay.  Okay.  If you were at BAMS -- when

25   you were at BAMS, if you had wanted to find an IM that

David Ades                                  July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 90

1    somebody had sent you or that you might have sent

2    somebody else, how would you go about doing that?

3        A    I guess I would have to go to my IT

4    department.

5        Q    Okay.  Do you know who was the head of the

6    IT department?

7        A    Well, we didn't have a head of it 'cause the

8    IT was provided by First Data.

9        Q    And do you know if the IMs were kept on a

10   server?

11       A    I mean, I'm -- I can only assume that they

12   would be.

13       Q    Do you know whether BAMS used Skype as the

14   program for sending or receiving IMs?

15       A    We did not use Skype.

16       Q    Okay.  Do you know who you did use or BAMS

17   did use?

18       A    I don't recall.

19       Q    Okay.  And why would you assume that the IMs

20   would be kept on a server?

21                    MR. UNDERWOOD:  Objection.  Form.

22       A    General -- general practice, e-mails and IMs

23   are -- are stored on servers.

24                    MR. MARX:  Can we take five minutes,

25   please?

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 91

1                     THE WITNESS:  Yep.

2                     MR. UNDERWOOD:  Sure.

3                     THE VIDEOGRAPHER:  We're off the record

4      at 1:41 p.m.

5                     (Off the record.)

6                     THE VIDEOGRAPHER:  Going back on the

7      record at 1:44 p.m.

8                     MR. MARX:  Okay.  Mr. Underwood --

9                     What is it?

10                     Okay.  On this -- and we'll be happy to

11     talk about it after the break.  I just want this on

12     the record.  Pursuant to the witness's testimony today

13     regarding Exhibit 65, which is the -- oh, sorry, 64,

14     which is the Chevron MSA, where he testified that he

15     did sign as an original signature for page 25, I'd

16     like to have a discussion with you.

17                     After we can explore to see if we can

18     find where that is because we didn't -- we got one

19     that was unsigned as you see.  We are going to -- and

20     I don't expect you to agree with it.  I just want to

21     make our position clear.  We're going to leave this

22     deposition open subject to the direction at the

23     earlier part of this deposition and the open issue of

24     the redactions.

25                     I have no further questions at this

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 92

1    time.

2                    MR. UNDERWOOD:  And, Robert, certainly

3    happy to discuss those issues with you after the

4    deposition.  I don't believe the witness represented

5    whether a signed copy of that particular page exists

6    or not, but we're certainly happy to look at it.

7                    MR. MARX:  Okay.  I appreciate that.

8                    MR. UNDERWOOD:  I do have a few

9    questions.

10                   MR. MARX:  Sorry.

11                   MR. UNDERWOOD:  No.  No problem at all.

12   I do have a few follow-up questions for the witness.

13                   EXAMINATION

14   BY MR. UNDERWOOD:

15        Q    First, Mr. Ades, you talked a little bit

16   about -- with Mr. Marx about IMs.  Do you recall

17   BAMS's retention schedule for instant messaging?

18        A    I do not.

19        Q    So if you were to be asked whether the

20   retention schedule was 30 days or 3 years, you

21   wouldn't know one way or the other?

22        A    No clue.

23                   MR. UNDERWOOD:  Robert, can I impose on

24   you all since it was your exhibit to put back 16 on

25   the screen?  I've got a few questions to follow up

David Ades                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 93

1   with the witness about that.

2                  MR. MARX:  All right.  All right.  All

3   right.  Shelley will do it.

4                  MR. UNDERWOOD:  Thank you.  I

5   appreciate the courtesy.

6                  MR. MARX:  Sure.

7                  MR. UNDERWOOD:  Shelley, please scroll

8   down to Mr. Ades's e-mail at the end if you don't

9   mind.  Thank you so much.

10  BY MR. UNDERWOOD:

11      Q    Now, Mr. Ades, I know we've talked about

12  this e-mail a lot today, and I know you've probably

13  answered this question already.  But can you remind me

14  what does SIAI mean in the subject line?

15      A    Self-identified audit issue.

16      Q    Were you familiar with the general process

17  for handling self-identified audit issues at BAMS?

18      A    Yes.

19      Q    Were you familiar with the reasons BAMS had

20  a process for self-identified audit issues?

21      A    Yep.  It was part of our audit culture of

22  accountability.

23      Q    Talk to me a little bit about that culture.

24      A    We had a --

25                  MR. MARX:  Object to the form of the

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 94

1    question.

2                    You can answer.

3                    THE WITNESS:  We -- we had a culture

4    of -- of accountability specifically --

5                    MR. UNDERWOOD:  I believe we have lost

6    the witness.

7                    THE WITNESS:  I'm back.

8    BY MR. UNDERWOOD:

9        Q    Okay.

10       A    We had culture of accountability.  We

11   cover -- we carried the Bank of America name, so we

12   were held to a pretty high standard by the bank.  We

13   had our own internal audit processes.  We had the

14   bank's audit processes.  And we had First Data's audit

15   processes.  And so it was an environment in which, you

16   know, accountability and ensuring strong business

17   practices was highly encouraged.

18       Q    Did BAMS encourage its employees to self-

19   identify issues?

20                   MR. MARX:  Object to the form of the

21   question.

22       A    Yes.  Yes.

23       Q    Why did BAMS encourage employees to self-

24   identify issues?

25                   MR. MARX:  Object to form of the

Page 95

1    question

2        A    Because the -- you know, the executive team

3    felt it was important that the -- not just the

4    leadership but the team members would be --

5    would -- would look for opportunities to improve

6    any -- any business processes that we had in place.

7        Q    Are you aware of any instances in which a

8    BAMS -- excuse me.  Let me rephrase that question.

9            Are you aware of any instances in which BAMS

10   punished an employee for self-identifying an issue?

11       A    Never.

12       Q    Now, looking at your e-mail, Mr. Ades, it

13   says "They strongly suggest we should self-identify

14   this issue."  Did I read that correctly?

15       A    Yes.

16       Q    And does "they" refer to Ali Davis and her

17   team?

18       A    Yes.

19       Q    Now, when you say "They strongly suggest we

20   should self-identify the issue," what do you mean?

21       A    Well, when -- when what I spoke to Ali Davis

22   about it, at the time it was we've uncovered this.  We

23   encourage you to -- to look into this and then self-

24   identify.  They could have reported as an audit issue,

25   or we could have through self-identification.  And the

David Ades                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 96

1    discussion what I had with Ali at the time was that we

2    should do the reporting of the issue, i.e., my team.

3         Q    Did they explain to you why they suggested

4    self-identifying the issue?

5                   MR. MARX:  Object to the form of the

6    question.

7         A    I don't -- I don't recollect the specific

8    reasons why.  But, again, it was -- it was part of our

9    culture and practice.

10        Q    Did you agree with their suggestion to self-

11   identify the issue?

12                  MR. MARX:  Object to the form of the

13   question.

14        A    Yes.  I did.

15        Q    Why did you agree?

16        A    Because I felt it was the right thing to do.

17        Q    Okay.  Turning to the next sentence, I think

18   Mr. Marx asked you about this.  Says "We, BAMS, don't

19   want to go the route of PCI compliance as it would be

20   a very costly and time-consuming exercise."  Did I

21   read that right?

22        A    Yes.  You did.

23        Q    What did you mean in that sentence?

24        A    What I meant, it would be a very onerous

25   exercise.  It would be time consuming.  It -- it would

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 97

1    require resources and, you know, eventually money

2    spent when we had other options.  So that's why I

3    suggested in my options that we don't go the PCI --

4    self PCI route and look to other options, which is

5    using our -- our provider, which happened to be First

6    Data at the time.

7         Q    Sure.  And you jumped ahead a little bit,

8    but you mentioned that there are other options to PCI

9    compliance.  And I want to make sure I understand

10   that.  When you say there are other options to PCI

11   compliance, what do you mean?

12        A    So what I -- what I meant there is we

13   wouldn't continue the practice of having merchants

14   call our teams directly to have access to their

15   chargeback information.  So we would have to stop that

16   practice because we didn't want to continue to send

17   PAN data in the open.

18             And so the options would be to have our --

19   our clients, instead of coming into us, into our teams

20   and accessing that data, we would redirect them to

21   First Data, which we knew would be PCI compliant.

22        Q    And I believe with Mr. Marx you said -- you

23   expressed concerns that that wouldn't be a great

24   client experience.  Correct?

25        A    Yep.  I was concerned about potential

David Ades                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 98

1    quality of service again because they weren't our

2    direct employees.

3        Q    Were there other options to redirecting the

4    service to First Data?

5        A    I mean, the other options --

6                MR. MARX:  Object to the form of the

7    question.

8        A    The other option would be just to not

9    prevent -- not to provide this service to our clients,

10   I guess, would be another option

11       Q    Of the options that were available to

12   addressing the issue, would you have wanted to keep

13   any of those options confidential?

14               MR. MARX:  Object to the form of the

15   question.

16       A    Confidential internally?  Externally?

17   Where -- where do you --

18               MR. MARX:  Object to the form of the

19   question.

20   BY MR. UNDERWOOD:

21       Q    That's a good clarification.  Would you have

22   wanted to keep any of these options confidential among

23   other BAMS employees?

24               MR. MARX:  Object to form of the

25   question.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 99

1        A    No.  No.

2        Q    There at the end of your sentence or at the

3    very end of that last paragraph, you asked the

4    question "If we go this route, we can reduce head

5    count to fund, seeing as these requests will lighten

6    the loads on our teams?"  Did I read that correctly?

7        A    Yes.

8        Q    Did you want to -- I'll back up.  In

9    resolving or in choosing these issues, did you want

10   BAMS employees to be aware that reducing headcount was

11   one of the options?

12                MR. MARX:  Object to the form of the

13   question.

14       A    Reducing headcount discussion would've been

15   kept at a -- at a management level.

16       Q    Why is that?

17                MR. MARX:  Object to the form of the

18   question.

19       A    Well, until we had certainty in terms of,

20   you know, any potential ramifications in -- in

21   reducing headcount, we would have to make sure that

22   we're doing it in -- in collaboration with both our HR

23   teams and our legal teams to ensure that we were

24   doing -- you know, handling those discussions

25   properly.

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 100

1              So you'd have to check all those boxes

2       before you'd have a conversation about, you know, any

3       kind of headcount reduction.

4          Q    During this paragraph at the end of your e-

5       mail, were you suggesting that BAMS should conceal the

6       PCI related issue?

7                   MR. MARX:  Object to the form of the

8       question.

9          A    Absolutely not.

10         Q    Were you suggesting that BAM should ignore

11      the issue to save time and cost?

12                  MR. MARX:  Objection the form of the

13      question.

14         A    Absolutely not.

15         Q    Were you suggesting that Ali Davis and her

16      team were wrong to suggest self-identifying the issue?

17                  MR. MARX:  Object to the form of the

18      question.

19         A    Absolutely not.

20         Q    Okay.

21                  MR. UNDERWOOD:  Thank you, Shelley.

22      You can take this one down a few more.

23      BY MR. UNDERWOOD:

24         Q    Just a few more questions, Mr. Ades.  We had

25      some discussions at the beginning of this regarding

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 101

1    your representation.

2              Do you recall conversations with a former

3    attorney at my firm named Aiten McPherson?

4         A    Sorry.  What was the name again?

5         Q    Aiten McPherson.

6         A    I -- I don't recall that specific name.

7         Q    Do you recall discussions with an attorney

8    or other attorneys at my firm in 2023?

9         A    Yes.

10        Q    And those were conversations when your

11   deposition in this case was originally scheduled.

12   Right?

13              MR. MARX:  Objection the form of the

14   question.

15        A    Correct.  Correct.

16        Q    Sorry.  Let me rephrase it to fix the

17   objection.  When were those conversations?

18        A    Sometime in 2023.

19        Q    What were they related to?

20        A    To this lawsuit.

21        Q    As it pertains -- did it pertain to your

22   role in the lawsuit?

23        A    It did.

24        Q    Was your deposition scheduled at the time?

25        A    I don't believe it was.

David Ades                     July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

                                              Page 102

1       Q    Do you recall -- sorry.  At the time, you

2    and BCLP agreed to have the -- oh, sorry.  Let me back

3    it up.

4            At the time, you agreed to have BCLP

5    represent you in connection with your deposition in

6    this case.  Right?

7                    MR. MARX:  Object to the form of the

8    question.  It's leading.

9       A    I do recall having a conversation where they

10   suggested and where they mentioned that they would be

11   representing me in this lawsuit

12      Q    And Mr. Marx has raised a deposition,

13   so -- or raised an objection, so let me try to fix it.

14           At the time, did you have conversations with

15   BCLP to represent you in connection with your

16   deposition?

17                   MR. MARX:  Object to the form of the

18   question.  Leading.

19      A    I -- I did have those conversations.

20   Correct.

21      Q    And at the time, did you agree to have BCLP

22   represent you in connection with your deposition?

23                   MR. MARX:  Object to the form of the

24   question.  Leading.

25      A    I did.

Page 103

1      Q    And that deposition ultimately is happening

2    today.  Right?

3      A    Correct.

4      Q    At any point between 2023 and now, did

5    anyone at BCLP tell you that the representation was

6    terminating due to the deposition being scheduled

7    later?

8                 MR. MARX:  Object to the form of the

9    question.  Leading.

10     A    I -- I got a e-mail a couple of weeks ago

11   saying that this case was still going on, that BCLP

12   was still involved, and asked if I still wanted to

13   retain them as legal counsel.

14     Q    But you never --

15     A    I can't remember if it was reengaged them or

16   agreed to it, but something along those lines.

17     Q    But do you recall ever affirmatively

18   terminating the representation prior to receiving that

19   e-mail?

20                 MR. MARX:  Object to the form of the

21   question.  Leading.

22     A    There was no termination to my knowledge.

23     Q    Okay.  So, previously, when you testified to

24   Mr. Marx that BCLP was not representing you at the

25   time of that e-mail, does this discussion refresh your

David Ades                              July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 104

1    recollection as to whether that was correct?

2                    MR. MARX:  Objection.  Leading the

3    witness all over the place.

4                    THE REPORTER:  I'm sorry.  I didn't get

5    the end of Mr. Underwood's question.  Apologize.

6                    MR. MARX:  That's a good thing that you

7    didn't.  It's ridiculous.

8                    THE WITNESS:  There was -- when

9    Mr. Marx asked me the question this morning, I was a

10   bit confused because I didn't -- I didn't -- you know,

11   because back in 2023, we didn't have a deposition

12   scheduled.  We didn't know if this thing was going to

13   go to court. We didn't know what was going to happen.

14                    We had some conversations.  We

15   exchanged a few e-mails.  And then I think I got an e-

16   mail at some point saying this thing is -- is

17   postponed indefinitely or something to that nature.

18                    And so I didn't -- when I was asked the

19   question this morning, I wasn't -- I didn't recall had

20   I -- you know, did I have representation.  But,

21   clearly, I did based on the conversation I had with

22   them originally about this potential case.

23   BY MR. UNDERWOOD:

24        Q    And I want to make sure the record is clear.

25   The conversation you had originally in this case

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 105

1    happened in 2023.  Correct?

2         A    Correct.

3         Q    And it's from that conversation that you

4    understand -- or excuse me.  Do you understand that

5    the representation originated from those conversations

6    in 2023?

7                   MR. MARX:  Objection.  Leading.

8         A    That is correct.

9         Q    And you understand that that -- or do you

10   understand -- do you have an understanding as to

11   whether that representation continues to today?

12                  MR. MARX:  Objection.  Leading

13        A    I do.

14        Q    And what is that understanding

15                  MR. MARX:  Objection.  Leading

16        A    That they continue to represent me.

17                  MR. MARX:  Objection.  Leading.

18                  MR. UNDERWOOD:  I think you're

19   objecting to the witness's response.  But I have no

20   other questions.  I will say the witness will read and

21   sign the deposition, though.

22                  MR. MARX:  All right.  I have some

23   questions.

24   //

25   //

David Ades                        July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

                                                    Page 106

1                        EXAMINATION

2        BY MR. MARX:

3            Q    Now, all this testimony you've given to us

4        about your so-called refreshed recollection, that's

5        after you've had an opportunity to speak to

6        Mr. Underwood.  Correct?

7            A    Nope.

8            Q    Okay.  It happened after we had some breaks.

9        Correct?

10           A    I did not have any conversation with

11       Mr. Underwood.

12           Q    Now, this culture of accountability at BAMS

13       that you've testified to --

14           A    Yeah.

15           Q    -- did that extend to informing merchants

16       that BAMS was not PCI compliant?

17           A    If -- if there was a blatant PCI issue, then

18       we would have -- we would have advised client

19       appropriately.

20           Q    Well, there was a blatant PCI issue based on

21       your e-mail, Exhibit 16.  Isn't that --

22           A    It's -- I guess what -- what I'm saying is

23       our compliance and legal team would follow whatever

24       rules and regulations required to advise merchants or

25       clients if they felt it was necessary.

Page 107

1      Q    Okay.  But your e-mail on June 13th, 2017,

2   reflects your understanding that there was a PCI

3   issue.  Right?  At BAMS.

4      A    Absolutely.

5            MR. UNDERWOOD:  Objection to form.

6   BY MR. MARX:

7      Q    And I'm asking you did the culture of

8   accountability at BAMS to your understanding extend to

9   informing merchants of that fact at that time?

10           MR. UNDERWOOD:  Objection to form.

11     A    We -- there was -- there was a question of

12  which merchants, and not all merchants called in to

13  ask for chargeback information.  So we didn't know if

14  it was a -- a broad issue, a single issue.  Was it one

15  merchant that was calling in?  I can't tell you.

16     Q    Okay.  Did the culture of accountability at

17  BAMS as you describe it extend to informing merchants

18  who had had chargebacks where BAMS had sent by

19  insecure e-mail full PAN data informing them that BAMS

20  was not PCI compliant at that time?  Yes or no?

21           MR. UNDERWOOD:  Objection to form.

22     A    Depends.  It's not a yes or no.

23     Q    What did it depend on?

24     A    Depends on the severity of the situation of

25  the -- the chargeback request, what data was being

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 108

1    shared.  It depends on the agreement that we had with

2    a particular merchant.  You know, it depends.

3         Q    Did you undertake to find out how severe the

4    issue was?

5         A    I had -- I had my teams look into the

6    situation and work in collaboration with members of

7    the compliance team, the legal team to see the

8    severity and what the remediation should -- should be.

9         Q    And they report to you.  Right?

10        A    My team reports to me.

11        Q    Your team reports to you.  And did you

12   advise or direct your team to report to you how severe

13   the issue was with respect to any of the merchants

14   where there had been chargebacks?

15        A    That would have taken place during the self-

16   identified audit issue --

17        Q    But you say "would have."  Do you recall if

18   it in fact happened?

19        A    I don't -- I don't recall, Mr. Marx,

20   specifically.

21        Q    Do you recall giving a direction to your

22   team or anyone on your team to tell you what the

23   severity of the issue was with respect to any merchant

24   where full PAN data had been sent via unsecure e-mail?

25                  MR. UNDERWOOD:  Objection to form.

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 109

1      A    What I recall is directing my team to -- to

2   remediate this -- this audit issue that was uncovered.

3                THE REPORTER:  Excuse me.  This is the

4   reporter.

5                Did you object to the last question,

6   Mr. Underwood?  It was very low.

7                MR. UNDERWOOD:  Sorry.  Yes.  The most

8   recent pending question.

9                MR. MARX:  Okay.  And now he can object

10  again because he still hasn't answered.

11  BY MR. MARX:

12      Q    Did you give a direction to anyone on your

13  team to advise you as to the severity of the issue

14  with respect to any merchant where full PAN data had

15  been sent through unsecured e-mail?  Yes or no?

16                MR. UNDERWOOD:  Objection to form.

17      A    Again, I advised my team to remediate the

18  issue that was uncovered.

19      Q    Other than that broad, general remediate the

20  issue that's uncovered direction, did you give a

21  specific direction to anyone on your team to tell you

22  what the severity was with respect to any merchant

23  where full PAN data had been sent through unsecure e-

24  mail?

25                MR. UNDERWOOD:  Objection to form.

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 110

1      A    I didn't get into specifics of particular

2   merchants.  There was an issue of PAN data being sent

3   in the clear, and I told the team that needed --

4   it -- it needed to get fixed.

5      Q    You didn't get into the specific individual

6   merchants?  Is that what you're saying?

7      A    That's correct.

8      Q    Why not?

9      A    I just didn't.

10      Q    Did it occur to you that you were required

11   to tell Disney about that fact?

12      A    No.

13            MR. UNDERWOOD:  Objection to form.

14   BY MR. MARX:

15      Q    Did it occur to --

16      A    I didn't even know if -- I didn't know if

17   Disney's data was -- was the one that was being sent

18   in -- in the clear.  I didn't know which client it

19   was.

20      Q    Did you take any steps to find out?

21            MR. UNDERWOOD:  Objection to form.

22      A    I personally did not take steps.  I allowed

23   the team to do their jobs and to go and figure out the

24   severity and how to solve and -- and remediate.

25      Q    So you didn't know whether or not Disney in

David Ades                              July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 111

1    fact was one of the merchants where full PAN data had

2    been sent via unsecure e-mail.  Correct?

3         A    I did -- I did not.

4              MR. UNDERWOOD:  Objection to form.

5    BY MR. MARX:

6         Q    And you took no steps to find out.  Correct?

7              MR. UNDERWOOD:  Objection to form.

8         A    I -- I did not take any steps to find out

9    particular -- which particular clients had been

10   impacted by this audit issue.

11        Q    Now, did you take any steps to find out

12   whether any of the merchants who had MSAs with BAMS

13   other than Disney had been involved in a situation

14   where full PAN data was sent out via unsecure e-mail?

15             MR. UNDERWOOD:  Objection to form.

16        A    The direction to the team was PAN data was

17   being sent.  This puts us offsite.  You need to get it

18   fixed.

19        Q    Okay.  But you didn't know which merchants

20   were affected.  Right?

21        A    I did not know.  Correct.

22        Q    And you took no steps to find out.  Correct?

23        A    I personally did not take any steps to find

24   out which merchants specifically were impacted.

25        Q    Do you know whether First Data ever

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 112

1    dedicated a team to BAMS to respond to the merchants

2    regarding --

3        A    You know, I was -- I -- actually don't

4    recall.  I don't recall.

5                    MR. MARX:  Okay.  All right.  Thank

6    you.  That's all I have at this time.

7                    THE REPORTER:  Okay.

8                    And you said you would like to reserve

9    signature, Mr. Underwood?

10                   MR. UNDERWOOD:  Yes, ma'am.

11                   THE REPORTER:  Would you like that sent

12   directly to you or to Mr. Ades?

13                   MR. UNDERWOOD:  Send it directly to me,

14   please.

15                   THE REPORTER:  Okay.

16                   And will you be ordering today,

17   Mr. Marx?

18                   MR. MARX:  Yes.

19                   THE REPORTER:  And you, Mr. Underwood?

20                   MR. UNDERWOOD:  I believe you have a

21   standard order for Mr. Galanek on file.  We'll follow

22   that if you don't --

23                   THE REPORTER:  Okay.

24                   And would you like to take -- give your

25   orders -- ask about your orders, Mr. Ted Yost?

David Ades                          July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 113

1                        THE VIDEOGRAPHER:  Yes.  I have

2      Mr. Mark's order already.

3                        Mr. Underwood, would you like a copy of

4      the video?

5                        MR. UNDERWOOD:  Well, let me check with

6      Mr. Galanek.  I assume the standing order is yes, but

7      I'll check, and then we'll follow up.

8                        THE VIDEOGRAPHER:  Okay.  Sounds good.

9                        All right.  We are going off the record

10     at 2:10 p.m. This concludes the deposition.

11                       (Signature reserved.)

12                       (Whereupon, at 2:10 p.m., the

13                        proceeding was concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 114

```
 1              CERTIFICATE OF DEPOSITION OFFICER
 2              I, TABATHA RICHARDS, the officer before whom
 3      the foregoing proceedings were taken, do hereby
 4      certify that any witness(es) in the foregoing
 5      proceedings, prior to testifying, were duly sworn;
 6      that the proceedings were recorded by me and
 7      thereafter reduced to typewriting by a qualified
 8      transcriptionist; that said digital audio recording of
 9      said proceedings are a true and accurate record to the
10      best of my knowledge, skills, and ability; that I am
11      neither counsel for, related to, nor employed by any
12      of the parties to the action in which this was taken;
13      and, further, that I am not a relative or employee of
14      any counsel or attorney employed by the parties
15      hereto, nor financially or otherwise interested in the
16      outcome of this action.
17
18                                  TABATHA RICHARDS
19                          Notary Public in and for the
20                                  State of Alabama
21
22
23
24
        [X] Review of the transcript was requested.
25
```

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 115

1                    CERTIFICATE OF TRANSCRIBER
2              I, LAUREN WEST, do hereby certify that this
3     transcript was prepared from the digital audio
4     recording of the foregoing proceeding, that said
5     transcript is a true and accurate record of the
6     proceedings to the best of my knowledge, skills, and
7     ability; that I am neither counsel for, related to,
8     nor employed by any of the parties to the action in
9     which this was taken; and, further, that I am not a
10    relative or employee of any counsel or attorney
11    employed by the parties hereto, nor financially or
12    otherwise interested in the outcome of this action.
13
14
15
16                              LAUREN WEST
17
18
19
20
21
22
23
24
25

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 116

1    David Ades c/o

     BRIAN M. UNDERWOOD, JR., ESQUIRE

2    brian.underwood@bclplaw.com

3                              August 13, 2024

4    RE: Slawin, Eric v. Banc Of America Merchant Services, Et Al.

5        7/29/2024, David Ades (#6777053)

6        The above-referenced transcript is available for

7    review.

8        Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12       The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   litsup-ga@veritext.com

16       Return completed errata within 30 days from

17   receipt of testimony.

18       If the witness fails to do so within the time

19   allotted, the transcript may be used as if signed.

20

21

22                  Yours,

23                  Veritext Legal Solutions

24

25

David Ades                                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 117

1    Slawin, Eric v. Banc Of America Merchant Services, Et Al.

2    David Ades (#6777053)

3                   E R R A T A   S H E E T

4    PAGE_____ LINE_____ CHANGE_____

5    _____

6    REASON_____

7    PAGE_____ LINE_____ CHANGE_____

8    _____

9    REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____    _____

24   David Ades                              Date

25

David Ades                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

Page 118

1    Slawin, Eric v. Banc Of America Merchant Services, Et Al.

2    David Ades (#6777053)

3                  ACKNOWLEDGEMENT OF DEPONENT

4        I, David Ades, do hereby declare that I

5    have read the foregoing transcript, I have made any

6    corrections, additions, or changes I deemed necessary as

7    noted above to be appended hereto, and that the same is

8    a true, correct and complete transcript of the testimony

9    given by me.

10

11   _____    _____

12   David Ades                         Date

13   *If notary is required

14                      SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                      _____ DAY OF _____, 20___.

16

17

18                      _____

19                      NOTARY PUBLIC

20

21

22

23

24

25

Case 1:19-cv-04129-AT    Document 174-2    Filed 01/08/25    Page 120 of 151

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

[& - 65]

Page 1

**&**

**&** 2:5 3:4 6:16
8:4

**0**

**001** 46:21
**0043** 80:18
**04129** 1:9

**1**

**1** 4:24 24:2,6
52:7 53:6
66:16
**10** 47:24 48:1
48:17
**100** 46:5
**102** 47:14 48:2
49:6
**105** 4:5
**1050** 2:6
**10:17** 1:16 5:3
**10:18** 5:15
**11** 52:21 53:10
53:15,16
**11:15** 41:6
**11:27** 41:9
**12** 67:1
**1201** 2:18
**12:40** 76:11
**13** 30:16 32:5
36:12 44:22
63:24 67:8
69:20 116:3
**13th** 86:16
107:1

**14th** 2:18
**15** 4:20 11:9
61:5 73:19
74:18 77:17
**16** 4:9 29:14,15
29:21 36:8
38:11 39:2
61:10,12 86:15
92:24 106:21
**1820** 29:23
30:4
**1821** 29:23
30:7
**1976** 9:3
**1:17** 76:14
**1:19** 1:9
**1:41** 91:4
**1:44** 91:7
**1st** 24:15

**2**

**2** 4:13 39:24
52:20 53:10
**20** 77:4 118:15
**2014** 26:3,4
47:4
**2015** 47:24
48:1,18 67:8
**2017** 28:25
30:16 32:5
36:12 37:24
38:25 39:15
44:23 52:1,18
54:11 55:5
59:8 63:24
69:20 73:19

**74:14,18 77:17**
86:16 107:1
**2018** 53:19,21
54:6,12,14
55:20
**2019** 52:21
53:10,15,16
**2020** 24:15
**2022** 24:17,18
24:19
**2023** 12:25
24:2,6 89:14
101:8,18 103:4
104:11 105:1,6
**2024** 1:15 5:4
5:18 12:1,3,6
116:3
**21** 4:20
**23** 12:5,6,23
**24** 37:4
**25** 52:18 67:14
67:16 91:15
**26** 53:19,21
54:6
**261-9559** 2:10
**26339** 115:15
**27** 68:18,24
**28** 4:10 47:4
72:5,12,15
74:6 77:4,16
77:17 81:3,6
**29** 1:15 4:9 5:3
5:18
**29871** 114:22

**2:10** 113:10,12

**3**

**3** 53:18 92:20
**30** 92:20
116:16
**30309** 2:19
**30338** 2:7
**36** 37:4
**37** 60:18,23
**38** 60:24
**39** 4:15

**4**

**4** 4:11
**4.2** 39:2
**404** 2:10,21
**41** 56:13
**416** 9:6
**43** 80:7,11,18
**45** 4:14
**49** 26:13

**5**

**500** 2:6 9:12
**51** 26:12
**572-6600** 2:21
**5r1** 1:18 9:4

**6**

**6** 38:16,18
**6/13/17** 4:9
**64** 4:11 65:13
65:14 66:10
91:13
**65** 4:12,13
43:14 46:1,2
46:16 52:7

Case 1:19-cv-04129-AT    Document 174-2    Filed 01/08/25    Page 121 of 151

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

[65 - aiten]

Page 2

56:3,6 60:13
80:5,19 81:4
91:13
**66**   65:17 66:16
**6777053**   1:20
116:5 117:2
118:2

**7**

**7/29/2024**
116:5
**72**   4:10
**7235**   72:13
**7236**   72:14
**725-1008**   9:6
**78**   4:24
**79**   4:15 39:24
40:2,8,8

**8**

**8**   4:3 53:22
**82**   4:16,16
82:11,13,17,20

**9**

**92**   4:4
**96**   47:21

**a**

**a.m.**   1:16 5:3
5:15 41:6,9
**ability**   8:22
114:10 115:7
**able**   17:25
46:22
**above**   73:7
116:6 118:7

**absent**   5:24
**absolutely**
100:9,14,19
107:4
**access**   97:14
**accessing**   97:20
**account**   28:15
31:11,14,16
32:23 33:22
73:18
**accountability**
93:22 94:4,10
94:16 106:12
107:8,16
**accuracy**   116:9
**accurate**   114:9
115:5
**acknowledge...**
23:8,9 118:3
**acknowledge...**
5:21
**acknowledg...**
116:12
**acronym**   25:16
**action**   1:7
114:12,16
115:8,12
**actions**   42:18
75:8
**actual**   32:23
47:16 67:19
**actually**   29:9
30:19 34:16
40:25 60:19
67:16,18,22

112:3
**addendum**
4:13 47:20,22
52:17,20 53:6
53:9,19
**addendums**
47:5 66:12
**additional**
56:17
**additionally**
5:24 6:22
**additions**   118:6
**address**   9:1
**addressing**
98:12
**ades**   1:14 2:12
5:16 7:7,9,9,15
7:16,18,22 8:3
9:12 16:2
17:20,25 19:13
19:21 20:22,25
21:3 28:20
29:25 38:10
41:11,22 44:4
46:23 48:6
72:8 76:16
92:15 93:11
95:12 100:24
112:12 116:1,5
117:2,24 118:2
118:4,12
**ades's**   93:8
**administer**
5:22

**advise**   106:24
108:12 109:13
**advised**   89:4,10
106:18 109:17
**advisory**   36:16
36:22,25 37:1
37:2 81:15,16
**affect**   8:22
**affected**   111:20
**affirmatively**
103:17
**ago**   10:1,2
11:23 12:1
14:8 17:3 22:8
34:18 103:10
**agree**   5:10,22
6:1 91:20
96:10,15
102:21
**agreed**   68:1,4
102:2,4 103:16
**agreeing**   8:6
**agreement**   4:12
4:14 23:6 27:3
43:12 46:19,24
47:4 49:4 56:2
66:3 68:2
108:1
**agreements**
42:25 43:1,7,9
50:11
**agrees**   56:19
**ahead**   97:7
**aiten**   101:3,5

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[al - authorization]**

Page 3

**al**   116:4 117:1
  118:1
**alabama**
  114:20
**ali**   31:2 32:4
  38:3 45:24
  51:23 54:11
  95:16,21 96:1
  100:15
**allotted**   116:19
**allowed**   110:22
**ambiguous**
  17:23 18:11
**amendment**
  4:11
**america**   1:8,10
  2:12,13 5:17
  25:6,9,12,20,25
  26:9,16 27:9
  27:20,22 28:7
  34:5 35:10,14
  36:3 49:7,10
  49:13 51:10
  52:12 67:11
  70:16,18,20
  84:12 85:5
  94:11 116:4
  117:1 118:1
**answer**   4:18
  8:12 13:8
  15:20,22 17:15
  17:17 18:5,9
  18:18,19,21,24
  18:24 19:2,10
  19:18 20:20,23

  21:7,20,23
  22:21,25 29:9
  29:18 38:10
  41:23 44:3
  46:8 56:10,11
  58:16 62:2
  80:12 82:7,18
  83:19 89:8
  94:2
**answered**
  93:13 109:10
**answers**   8:9,23
  20:21 71:24
**anybody**   12:8
  12:14 34:8
  70:18,22,23
  74:8
**apologize**   63:3
  104:5
**appears**   47:7
  47:22 66:15
  68:25
**appended**
  118:7
**applicable**   6:5
  37:19 116:8
**apply**   38:19
**appreciate**
  34:15 63:1
  92:7 93:5
**approach**   36:4
**approached**
  11:24 25:10
**appropriate**
  41:4

**appropriately**
  106:19
**april**   24:18
**area**   56:21
**arose**   16:1
**asked**   14:16
  16:25 24:25
  32:20 92:19
  96:18 99:3
  103:12 104:9
  104:18
**asking**   14:18
  16:4,15,20
  17:24,25 43:18
  107:7
**assess**   21:13
**assessed**   86:12
**assessor**   58:5
**assigned**   5:13
**assistant**   48:8
  48:20 67:6
**assume**   8:13
  45:12,13 69:13
  74:24 90:11,19
  113:6
**assuming**   34:17
  51:23 54:16
  69:13 88:21
**assumption**
  64:14
**atlanta**   1:3 2:7
  2:19
**attached**
  116:11

**attend**   70:10
  78:6
**attendance**
  6:13
**attention**   38:2
  56:13
**attorney**   8:4
  15:17 16:16
  17:21,24 19:23
  20:2,5,9,12
  101:3,7 114:14
  115:10 116:13
**attorneys**   101:8
**audio**   5:8 6:24
  114:8 115:3
**audit**   4:10,24
  57:21 58:3
  59:9,13 60:1,6
  60:7 70:4,5,6
  71:3,19,25
  72:21 77:18
  79:4 80:1,6,10
  80:20 81:2,9
  81:10 93:15,17
  93:20,21 94:13
  94:14,14 95:24
  108:16 109:2
  111:10
**audited**   58:5,8
  59:4 80:21
**august**   116:3
**authority**   50:20
**authorization**
  54:4 67:10

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[authorize - best]**                                              Page 4

**authorize**  53:3
  53:6
**authorized**
  5:21 49:16,17
  49:18
**available**  98:11
  116:6
**avoid**  34:14
**aware**  12:17
  32:4 51:19
  54:7 55:3,7
  59:7 87:10
  88:5,6,7,15
  95:7,9 99:10

**b**

**b**  4:7 23:23
  25:16 60:19,21
**back**  10:2
  22:12,23 36:8
  39:17 41:8
  53:5 61:10,11
  65:21,21 76:13
  77:9 91:6
  92:24 94:7
  99:8 102:2
  104:11
**bam**  100:10
**bams**  6:20
  12:20,25 13:3
  13:16 20:6
  25:11,14,18,23
  26:2,9 27:9,13
  27:15,24,25
  28:1,3 31:18
  32:1,3,3,6 33:2

33:6 35:10
36:4 37:25
39:18 41:11,17
42:4,5,10,22
44:16,21 47:11
49:7 50:23
51:4,15,20
52:3,11 53:11
54:7,13 56:6
57:2,15,20
58:8,11 59:3,7
60:1,6,13,24
62:10 63:7,17
64:2 67:11
68:22 69:10,23
73:18 75:12,20
76:16 80:20,23
80:23 81:4,10
81:17,23 83:17
83:17 84:1,13
84:23 85:23
87:11,16,23
89:24,25 90:13
90:16 93:17,19
94:18,23 95:8
95:9 96:18
98:23 99:10
100:5 106:12
106:16 107:3,8
107:17,18,19
111:12 112:1
**bams's**  83:10
  92:17
**banc**  1:8 2:12
  116:4 117:1

118:1
**bank**  1:9 2:13
  5:17 25:6,8,12
  25:19 26:9,13
  26:14,14,16,16
  27:9,19,22
  34:4,5 35:10
  35:10,10,12,13
  35:21 36:3
  49:6,10,12
  51:10 52:12
  67:11 70:16,18
  70:20 84:12
  85:5 94:11,12
**bank's**  35:23
  35:24 94:14
**bankers**  35:13
**base**  35:23,25
  36:1
**based**  56:11
  104:21 106:20
**basically**  10:13
  11:14
**basis**  14:13,23
  16:14,19 17:21
  19:9,10 21:14
  26:17,19 42:15
  44:10 54:17,18
  56:22 60:5
  78:4
**bates**  29:23
  40:18 46:19,20
  47:15 66:13,14
  72:13

**bclp**  6:20 102:2
  102:4,15,21
  103:5,11,24
**bclplaw.com**
  2:20 116:2
**bearing**  29:22
  72:13 86:6
**becoming**  88:5
**beg**  30:23
**began**  9:19
**beginning**
  100:25
**begins**  47:4,20
**behalf**  2:2,12
  6:20 14:20
  49:6,10 51:4
  51:10 52:11
  67:10 68:22
**believe**  13:10
  13:10,14,15,19
  14:4 21:15
  24:16 27:2
  33:16,21 38:18
  43:11,22 46:6
  57:24 58:2
  67:1,13 68:19
  77:20,21 78:5
  78:7 80:11
  81:7 86:24
  89:3,23 92:4
  94:5 97:22
  101:25 112:20
**best**  114:10
  115:6

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[better - check]**                                                    Page 5

| | | | |
|---|---|---|---|
| **better**  62:24,25 | **broad**  107:14 | **cardholder** | 83:19 84:6 |
| **bio**  76:3 | 109:19 | 38:20 83:5 | 87:2 88:20 |
| **bit**  62:19 65:16 | **broader**  80:24 | **cardholders** | 99:19 |
| 92:15 93:23 | **broke**  13:13 | 87:17,21 | **certificate** |
| 97:7 104:10 | **brought**  32:18 | **cardmember** | 114:1 115:1 |
| **blank**  67:20 | 38:2 74:6 | 56:21 | **certification** |
| **blatant**  106:17 | **bryan**  2:17 | **carried**  94:11 | 58:12 68:25 |
| 106:20 | 9:22 14:20 | **case**  8:5 11:20 | **certified**  5:20 |
| **board**  36:16,22 | 16:18 | 11:24 12:18 | 6:2 |
| 36:25 37:1 | **business**  30:13 | 15:23 16:3,5 | **certify**  114:4 |
| 81:14,15,16 | 36:14 47:12 | 25:13,19 68:21 | 115:2 |
| **bold**  56:15 | 50:25 51:3,9 | 71:10 85:25 | **cetera**  32:13 |
| **boss**  35:3 | 63:15 66:21 | 101:11 102:6 | 83:24 |
| **bottom**  30:4 | 72:23 73:16 | 103:11 104:22 | **cfo**  78:8 |
| 47:15,15 49:9 | 78:9 94:16 | 104:25 | **chain**  4:9 29:24 |
| 56:18 60:18 | 95:6 | **cases**  29:11 | **chains**  30:2 |
| 66:15 72:25 | | 35:22 | **chance**  82:16 |
| **boxes**  100:1 | **c** | **catch**  13:25 | **change**  117:4,7 |
| **breach**  60:22 | | **cause**  31:6 61:7 | 117:10,13,16 |
| 61:4 | **c**  2:1 3:1 4:22 | 88:24 90:7 | 117:19 |
| **breached**  60:13 | 5:1 116:1 | **caused**  31:4 | **changes**  116:10 |
| 60:24 | **call**  11:7 52:8 | **cave**  2:17 9:22 | 118:6 |
| **break**  20:20,25 | 61:20 64:8 | 14:20 16:18 | **charge**  50:11 |
| 21:8,12 41:3 | 97:14 | **center**  47:16 | 50:14 |
| 76:3 91:11 | **called**  7:19 | **centers**  32:20 | **chargeback** |
| **breaks**  106:8 | 32:19 70:25 | **ceo**  35:1,3,6 | 32:13,21 33:7 |
| **brian**  2:15 6:19 | 71:14 106:4 | 50:2 78:8 | 63:25 97:15 |
| 15:1 23:6 | 107:12 | **certain**  47:5 | 107:13,25 |
| 33:11,19 36:8 | **calling**  42:17 | 54:15 81:12 | **chargebacks** |
| 73:7,13 116:1 | 107:15 | 84:1 85:22 | 27:17,24,25 |
| **brian.underw...** | **calls**  32:12 | **certainly**  92:2,6 | 28:2,4 31:13 |
| 2:20 116:2 | **camera**  5:6 | **certainty**  34:19 | 33:2 55:18 |
| **bring**  62:23 | **canada**  5:19 | 55:14,22 58:10 | 107:18 108:14 |
| **brink's**  23:21 | 23:21,25 | 61:9 73:24 | **check**  100:1 |
| 23:23,25 | **card**  27:16 37:9 | 77:21 79:21 | 113:5,7 |
| | 37:12 42:12,23 | | |
| | 83:1 | | |

David Ades
July 29, 2024

Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[chevron - contacted]**

Page 6

**chevron**  66:12
66:17 69:10
91:14
**chief**  26:25
58:18 78:7,8
**choosing**  99:9
**chris**  13:23
14:3,4 15:6,12
15:23 17:4,5
18:1 19:13
**circulated**
71:23
**circumstances**
84:2,5 85:22
86:6
**city**  25:2,3
**civil**  1:7
**clarification**
98:21
**clarify**  20:10
**clear**  17:12
21:2 31:12
32:5 91:21
104:24 110:3
110:18
**clearly**  104:21
**client**  15:17
16:1 17:21
27:18 31:10
32:13,19,22
35:18,23 61:24
62:10 63:12
65:4 69:5,6
97:24 106:18
110:18

**clients**  31:12
62:2,5,7 63:14
63:20 97:19
98:9 106:25
111:9
**closely**  35:12
35:15
**closer**  62:24
**clue**  86:14
92:22
**coach**  21:1
**code**  9:4
**collaborate**
35:17
**collaboration**
35:16 99:22
108:6
**collected**  71:21
**collins**  33:11
87:1 88:8
**collins's**  33:13
**come**  24:21,23
25:4 26:21
47:19 71:1
**coming**  65:23
97:19
**committee**  70:4
70:5
**communicate**
76:20
**communicati...**
15:22 16:21
**complaint**
11:19,21 12:2
12:8,12,14,24

**complete**  118:8
**completed**
116:16
**compliance**
4:16 31:19
35:19 56:23
57:22 59:9
73:19 80:21
81:19,24 82:21
82:23 83:4
85:5,15 96:19
97:9,11 106:23
108:7
**compliancy**
55:1
**compliant**  32:1
32:3,7 41:19
42:6 51:20
52:4 53:12,17
54:8,14,16
56:7 57:3,15
60:14,25 64:15
69:11,23 75:12
83:17 84:1,13
84:23 85:25
87:12 97:21
106:16 107:20
**comply**  82:5,9
83:10
**comport**  83:9
**compromised**
87:19 88:1
**conceal**  100:5
**concern**  62:8
63:7 87:10

**concerned**
97:25
**concerns**  87:14
97:23
**conclude**  75:11
**concluded**
113:13
**concludes**
113:10
**conducted**  5:4
**confidential**
98:13,16,22
**confused**
104:10
**confusing**
14:15 44:11
**confusion**
15:16,25 20:18
29:10
**connecting**  5:6
**connection**
102:5,15,22
**consider**  84:7
**considered**
64:23
**constitute**  6:9
**consulted**
88:25
**consuming**
31:20 96:20,25
**cont'd**  3:1
**contacted**
12:19,22 13:4
13:20

David Ades
July 29, 2024

Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[contacting - data]**

Page 7

**contacting**
20:13
**contained**
45:19
**containing**
56:20
**context**  16:3
44:12
**continue**  5:9
23:3 97:13,16
105:16
**continues**
105:11
**contracts**  42:11
42:22
**conversation**
9:25 15:13
20:15 60:4
87:5 100:2
102:9 104:21
104:25 105:3
106:10
**conversations**
9:17 17:18
25:7 34:12,16
34:20 74:11
84:11,18,21
85:4,14 87:5,8
88:9,11 101:2
101:10,17
102:14,19
104:14 105:5
**copies**  116:14
**copy**  92:5
113:3

**corporate**  3:6
7:4 35:13
42:18
**corporation**
26:9 27:9
**correct**  12:2
15:8,9 19:15
25:15,16,17
28:8 30:5,7,8
30:11,14,20,21
31:16 32:1,4,7
32:9 33:2,12
36:10,13,14,15
37:15,17,18,21
37:23,25 38:3
38:6 39:1,5,7
39:20,22 41:14
41:16,19,25
42:3,6,7,12,14
42:24 43:1,2,4
43:5,7,8,16
44:24,25 45:23
45:25 48:3,9
48:11,14,18,19
49:7,10,11,22
50:4,17,18,20
50:21 52:1,2
52:18,21,22
53:11,12,20
54:2,4,5,8
55:12,24 59:19
60:10 61:22
63:17 64:11,14
64:19,20,23
66:21,22 67:7

67:9,11 68:9
69:15 70:14
73:9,20,21
74:14,16,18,22
75:2,6 76:17
77:24 78:2,15
78:16 80:21
81:10 88:6
89:1,16 97:24
101:15,15
102:20 103:3
104:1 105:1,2
105:8 106:6,9
110:7 111:2,6
111:21,22
118:8
**corrected**  40:14
**corrections**
118:6
**correctly**  95:14
99:6
**cost**  100:11
**costly**  31:20
96:20
**council**  37:17
38:6,14
**counsel**  6:16
9:7 12:9,11
15:3,7 17:2,5
18:2,7 19:14
19:19 21:3,5
40:13 49:20
103:13 114:11
114:14 115:7
115:10 116:14

**count**  99:5
**counter**  8:22
**couple**  9:24
10:10 14:8
103:10
**course**  14:21
30:12 36:14
47:11 66:21
72:23
**court**  1:1 9:3
17:11,13 18:10
21:9 104:13
**courtesy**  93:5
**cover**  94:11
**covered**  79:19
**create**  27:5
**created**  75:11
**crown**  2:6
**culture**  93:21
93:23 94:3,10
96:9 106:12
107:7,16
**cure**  61:5
**currently**  23:18
**customer**  35:25
36:1 60:20
63:9,11 69:3
**customers**  36:4
**cv**  1:9

**d**

**d**  4:1,22,22 5:1
7:15,15,16
**damage**  62:10
**data**  26:9,12
27:9,13,14

David Ades
July 29, 2024

Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[data - discussion]**

Page 8

31:11,11,14
32:15 33:6
37:10,13,20,25
38:20 39:3,19
39:19 41:12,18
42:5 43:15
44:17,23,23
45:14,19 55:18
56:17,21,23
58:12 59:8
61:21 62:4,4,9
63:8,17,25
64:2,8,15,18
65:6 69:2,7
70:24 73:18
80:24 81:1
83:1,5 84:22
85:15 90:8
97:6,17,20,21
98:4 107:19,25
108:24 109:14
109:23 110:2
110:17 111:1
111:14,16,25
**data's**  94:14
**date**  1:15 10:21
47:25 53:14
74:20 78:23
117:24 118:12
**dated**  52:21
53:19 73:19
74:17 77:17
**david**  1:14 2:12
5:16 7:7,9,15
7:18 9:12

15:16 48:6,6
116:1,5 117:2
117:24 118:2,4
118:12
**davis**  31:2,9
32:4 38:3
45:24 51:23
54:11 95:16,21
100:15
**day**  118:15
**days**  61:5 92:20
116:16
**dealt**  79:23
**december**
24:19 73:19
74:18 77:17
**decide**  21:18
**decided**  25:3
**decision**  59:18
59:20,21,22
89:1
**declare**  118:4
**dedicated**
112:1
**deemed**  118:6
**defendant**  1:11
2:12 6:20 7:4
25:13,19 29:22
40:24 46:18
66:11 72:13
78:18
**defined**  81:6
**department**
90:4,6

**depend**  83:23
107:23
**depending**  84:5
**depends**  5:5
79:8,16 86:4
107:22,24
108:1,2
**deponent**
116:13 118:3
**deposing**
116:13
**deposition**  1:13
5:16 6:7 8:7
10:7,15 28:22
91:22,23 92:4
101:11,24
102:5,12,16,22
103:1,6 104:11
105:21 113:10
114:1
**deposition's**
5:4
**depositions**
40:7
**describe**  32:16
107:17
**described**  28:5
**description**  4:8
4:23
**desirable**  63:19
**detail**  56:4
**difference**
43:18,20
**different**  28:9

**difficulty**  62:20
**digital**  24:4
114:8 115:3
**diligence**  61:7
**direct**  63:13
80:8 98:2
108:12
**directed**  75:5
**directing**  15:19
15:21 17:14,16
18:4,8,18,19
21:22 63:7
109:1
**direction**  91:22
108:21 109:12
109:20,21
111:16
**directly**  35:6
50:2 61:20
63:21 64:8
65:6 97:14
112:12,13
**discovery**
78:21
**discuss**  12:8,14
59:25 76:22
78:21,23 79:25
86:19,22,25
92:3
**discussed**  77:18
79:3,7
**discussion**  61:6
70:8 91:16
96:1 99:14
103:25

David Ades
July 29, 2024

Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

[discussions - evidentiary]

Page 9

**discussions**
99:24 100:25
101:7
**disney**  46:19,21
46:25 52:8
56:2,6 57:2,12
57:20 60:13,25
61:1 80:4
110:11,25
111:13
**disney's**  110:17
**dissolution**
25:7,11
**district**  1:1,2
**division**  1:3
**document**
29:22 40:18
41:2 47:10,16
65:16 68:9
72:12 73:4,5
73:12,14 75:10
75:11 82:23
83:1
**documentation**
10:8
**documents**
10:9 11:11,16
11:18 26:22,23
27:1 40:21
46:17 66:10
**doing**  29:3
59:16,17 90:2
99:22,24
**downloading**
89:11

**dss**  4:15,16
37:7 38:14,19
41:13 42:6
73:19 82:21,24
83:2,11
**due**  103:6
**duly**  7:19 114:5

**e**

**e**  2:1,1 3:1,1 4:1
4:7,9,22,22,22
4:22 5:1,1 7:16
9:11 10:10
11:12 13:9,15
23:10 28:21,24
29:24 30:2,3,9
30:15,24,25
31:5,18 32:15
32:24 33:10
34:9 36:7
38:25 39:4,4
39:15,19 41:12
43:15 44:16,18
44:21,22,23,24
45:2,6,9,13,18
45:20 51:22
55:10 59:8
61:11 63:24
64:2,7 69:20
86:15,17 89:11
89:17,19 90:22
93:8,12 95:12
100:4 103:10
103:19,25
104:15,15
106:21 107:1

107:19 108:24
109:15,23
111:2,14 117:3
117:3,3
**earlier**  77:9
79:24 91:23
**effect**  74:21
**either**  55:11,23
55:25
**elect**  79:2
**electronic**
30:20
**employed**
23:18,24 24:8
24:14,19 49:12
114:11,14
115:8,11
**employee**  88:7
95:10 114:13
115:10
**employees**
76:20 88:22
94:18,23 98:2
98:23 99:10
**employer**  23:20
**encourage**
94:18,23 95:23
**encouraged**
94:17
**ended**  17:1
**engage**  59:9,11
59:13
**ensure**  99:23
**ensuring**  94:16

**enter**  42:11,22
**entered**  47:4
50:23 52:18
53:10 58:4
66:20 67:5
**entities**  25:8
37:20 38:19
83:4
**entitled**  18:10
18:21,23 19:4
19:4,6 56:16
74:6
**entity**  39:3
42:18
**environment**
94:15
**equipment**
69:6
**equivalent**
43:15
**eric**  1:5 2:2
5:17 8:5 86:23
88:12 116:4
117:1 118:1
**errata**  116:11
116:13,16
**es**  114:4
**esquire**  2:3,4
2:15 116:1
**et**  32:13 83:24
116:4 117:1
118:1
**eventually**  97:1
**evidentiary**  6:6

Case 1:19-cv-04129-AT    Document 174-2    Filed 01/08/25    Page 129 of 151

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[evp - fiserv]**                                          Page 10

**evp**  48:10
**exact**  10:21
  34:3
**exactly**  26:2,6
  37:4 48:16
**examination**
  4:2 8:1 92:13
  106:1
**examined**  7:21
**example**  47:3
**exchange**  23:10
**exchanged**
  104:15
**excuse**  16:9,10
  39:23 44:2
  70:21 95:8
  105:4 109:3
**executed**  50:11
**executive**  25:10
  25:24 28:6
  48:12 49:22,23
  50:2,23 51:15
  58:15 95:2
**executives**  78:9
**exercise**  31:20
  96:20,25
**exhibit**  4:9,10
  4:11,13,15,16
  29:2,6,14,15,21
  36:7 38:9
  39:24 40:2,8
  46:1,2,5,5,16
  46:22 52:7
  53:18 56:3,6
  56:14 60:13

61:12 65:13,13
65:14 66:10
72:7,12,15
74:6 75:1 77:4
77:16,17 80:5
80:5,19 81:3
82:11,13,17,20
83:1 86:15
91:13 92:24
106:21
**exhibits**  40:6
**exist**  13:1,3
**exists**  92:5
**expect**  91:20
**expectation**
  79:6
**experience**
  61:24 63:12
  65:4 97:24
**expert**  61:8
**explain**  19:19
  96:3
**explained**  21:8
**explanation**
  18:24 19:2,5
**explore**  91:17
**expressed**
  97:23
**extend**  106:15
  107:8,17
**extends**  16:2,18
**extent**  33:1
  39:18 41:11,17
  42:4

**external**  59:11
**externally**
  98:16

**f**

**f**  58:24
**fact**  43:3 55:11
  55:19 57:25
  58:8 74:25
  83:25 88:18
  89:13,14 107:9
  108:18 110:11
  111:1
**fails**  116:18
**fair**  47:2 49:21
  50:5 63:6
  75:10,13
**familiar**  37:6
  56:1 93:16,19
**fd**  61:20
**feel**  80:7
**felt**  95:3 96:16
  106:25
**figure**  110:23
**file**  1:8 112:21
**final**  73:22
**financial**  83:6
  83:16 84:2,12
  84:19,22 85:23
  86:1,7
**financially**
  114:15 115:11
**find**  45:1 58:16
  87:11 89:25
  91:18 108:3
  110:20 111:6,8

111:11,22,23
**fine**  49:24 76:8
  86:9,10,12
**finish**  17:9
**firm**  9:21,25
  10:16 13:18
  14:5,10 16:7
  16:18,22 17:20
  22:3 23:6
  101:3,8
**first**  7:14,19
  8:5 9:14,15
  11:4,11,23
  13:23 14:25
  26:9,12 27:9
  27:13,14 32:11
  36:7 51:19
  55:18 58:12
  61:21 62:4,4,9
  63:8,16,25
  64:8,14,18
  65:6 69:2,7
  70:23 80:24
  81:1 84:22
  85:15 90:8
  92:15 94:14
  97:5,21 98:4
  111:25
**fiserv**  12:20
  13:5,10,15
  24:12,14,22
  25:5,9,10,11
  26:12 37:3
  70:20 84:19

David Ades
July 29, 2024

Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[five - go]**

Page 11

| | | | |
|---|---|---|---|
| **five**  90:24 | 51:17,21 52:5 | **foundation's** | **galanek's**  14:5 |
| **fix**  101:16 | 53:13 54:9 | 42:19 | **general**  25:24 |
| 102:13 | 55:6 56:8 57:9 | **fraud**  27:17 | 28:6,13,14 |
| **fixed**  110:4 | 57:17,23 58:6 | **free**  80:7 | 42:18 48:13 |
| 111:18 | 59:10 60:16 | **frequency** | 58:16 90:22,22 |
| **flesh**  32:10 | 61:2 62:18 | 83:24 | 93:16 109:19 |
| **floor**  2:18 | 63:10,18 64:4 | **front**  10:21 | **generally**  70:1 |
| **follow**  92:12,25 | 64:24 68:3,16 | 13:21 | 70:10 |
| 106:23 112:21 | 69:12,17,24 | **full**  32:14 33:5 | **georgia**  1:2 |
| 113:7 | 72:20 74:15,23 | 37:25 39:19 | 5:20 |
| **followed**  55:9 | 75:7,14,18,23 | 41:12,18 42:5 | **getting**  62:21 |
| **following**  75:8 | 77:2 81:11,20 | 43:15 44:17,23 | **give**  5:21 8:19 |
| **follows**  7:21 | 82:4 83:13,18 | 45:14,19 59:7 | 8:23 18:23 |
| 29:5 56:18 | 83:22 84:4,9 | 107:19 108:24 | 19:6 22:8 75:3 |
| **fontana**  58:20 | 84:14,24 85:2 | 109:14,23 | 79:15 109:12 |
| 58:22 59:1,3 | 85:7,12,16,19 | 111:1,14 | 109:20 112:24 |
| 59:23 70:11 | 86:3 87:13,20 | **functions**  28:12 | **given**  106:3 |
| 71:7 | 88:2 89:2,6,12 | **fund**  99:5 | 118:9 |
| **fontana's**  59:22 | 90:21 93:25 | **further**  22:22 | **gives**  18:16 |
| **foregoing** | 94:20,25 96:5 | 56:19 61:6,7 | **giving**  19:8 |
| 114:3,4 115:4 | 96:12 98:6,14 | 91:25 114:13 | 108:21 |
| 118:5 | 98:18,24 99:12 | 115:9 | **glynn**  33:11,19 |
| **forgot**  71:2 | 99:17 100:7,12 | **future**  75:5 | 36:8 73:8 |
| **form**  12:4 13:2 | 100:17 101:13 | | **gm**  48:10 50:2 |
| 13:6 14:7,12 | 102:7,17,23 | **g** | 50:24 51:15 |
| 15:10 19:16,24 | 103:8,20 107:5 | **g**  5:1 | **gmail.com.** |
| 20:3 22:10 | 107:10,21 | **ga**  2:7,19 | 9:13 |
| 27:10 32:2,8 | 108:25 109:16 | 116:15 | **go**  5:10 17:11 |
| 33:3,8 37:22 | 109:25 110:13 | **galanek**  13:22 | 21:8,9 22:22 |
| 38:1,7 39:6,10 | 110:21 111:4,7 | 14:1 15:23 | 29:19 31:19 |
| 39:16,21 41:15 | 111:15 | 16:17 17:4,18 | 41:1 46:1,7,10 |
| 41:21 42:8,13 | **former**  101:2 | 18:1,3 19:13 | 46:11 52:7 |
| 43:17,21 44:1 | **forum**  79:23 | 19:22 20:2,4 | 53:5 61:10,11 |
| 44:5,19 45:16 | **found**  54:18 | 21:5 22:3 | 62:9 63:8 |
| 50:7 51:6,12 | 74:12 80:11 | 112:21 113:6 | 64:18 65:6,21 |

David Ades
July 29, 2024

Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[go - information]**                                    Page 12

65:21 70:5
72:10 90:2,3
96:19 97:3
99:4 104:13
110:23
**goes**  30:6 60:20
**going**  5:3 10:22
  11:5 16:19
  17:11 18:15
  20:19,22,24
  21:7,9,20
  28:17 29:2,8
  29:13 38:9
  40:6 41:1,5
  43:13 46:4,9
  56:14 61:11,14
  63:16 65:12
  66:15 72:7
  77:9 91:6,19
  91:21 103:11
  104:12,13
  113:9
**good**  5:2,12
  46:15 64:23
  66:2 98:21
  104:6 113:8
**great**  61:24
  65:4 97:23
**guess**  9:25 29:3
  32:14 90:3
  98:10 106:22
**guide**  4:15
  38:14

**h**

**h**  1:9 2:13 4:7
  117:3
**hand**  7:13
**handling**  55:18
  73:18 93:17
  99:24
**handwritten**
  67:5
**hang**  65:20,20
  65:20
**happen**  104:13
**happened**
  44:17 45:2
  58:1 97:5
  105:1 106:8
  108:18
**happening**
  44:20 55:20
  103:1
**happy**  8:11
  78:20,23 91:10
  92:3,6
**hard**  38:17
**hardware**  69:1
  69:4
**head**  25:25
  28:6,13 90:5,7
  99:4
**headcount**
  99:10,14,21
  100:3
**hear**  6:24 7:1
**heard**  5:7 8:4

**hearing**  7:5,11
  16:10 62:20
**held**  78:3 94:12
**help**  31:12
**hereto**  114:15
  115:11 118:7
**herrmann**
  52:23 53:22
**high**  94:12
**highly**  94:17
**hold**  66:24
**honestly**  77:12
**hours**  11:5
**hr**  99:22
**hundred**  34:19
  55:7,21 77:21
  79:21 81:12

**i**

**i.e.**  25:8 96:2
**idea**  27:4
**identification**
  29:16 40:3
  46:3 65:15
  72:16 82:14
  95:25
**identified**  4:10
  31:7 55:4
  64:13 70:6
  71:25 72:21
  93:15,17,20
  108:16
**identify**  6:13
  46:24 65:2
  66:17 72:17
  94:19,24 95:13

95:20,24 96:11
**identifying**
  95:10 96:4
  100:16
**ignore**  100:10
**ii**  56:16
**imagine**  34:19
**immediate**  62:3
**impact**  86:6
**impacted**
  111:10,24
**important**  95:3
**impose**  92:23
**imposed**  84:3
**improper**  21:2
**improve**  95:5
**ims**  90:9,14,19
  90:22 92:16
**including**  83:6
**incur**  85:23
**indefinitely**
  104:17
**indicated**  36:12
  40:21
**indicates**  66:14
**individual**
  110:5
**individuals**
  50:15 62:5
  63:14
**industry**  83:1
**info**  32:12
  61:23 64:10
**information**
  31:3,4,8 37:10

David Ades                                                July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[information - know]**                                    Page 13

37:13 64:1
87:17,24 97:15
107:13
**informing**
106:15 107:9
107:17,19
**initiative**  35:21
**initiatives**
35:18,22
**inquiries**  32:22
**inquiry**  33:7
**insecure**
107:19
**insecurely**
87:18
**instances**  95:7
95:9
**instant**  76:17
77:10,13 92:17
**institutions**
83:6
**instruct**  20:19
20:23 21:20
**instructed**  4:18
21:6
**instructing**
19:10
**insufficient**
17:22
**intended**  6:4
**interested**  9:16
25:2 114:15
115:12
**interests**  20:5

**internal**  94:13
**internally**
98:16
**internet**  5:6
40:20 82:12
**interrupt**  16:24
17:10 20:9
**intimate**  56:4
**introduce**  6:23
**introduced**
16:3 20:4,12
**involved**  16:5
27:4 28:1,3
29:25 33:2
50:16 88:13
103:12 111:13
**irrelevant**  21:2
**issue**  54:10
55:4 64:1,19
70:16,20,21,24
71:25 72:21
73:23 74:5,10
74:13 75:2,25
79:3,19 85:6
85:15 86:17,19
86:22,25 89:10
89:18,22 91:23
93:15 95:10,14
95:20,24 96:2
96:4,11 98:12
100:6,11,16
106:17,20
107:3,14,14
108:4,13,16,23
109:2,13,18,20

110:2 111:10
**issued**  37:16
38:5
**issues**  65:1,3
70:6 71:3,19
76:22,23 79:25
92:3 93:17,20
94:19,24 99:9
**it'll**  65:13
**items**  79:21

**j**

**january**  24:1,2
24:6
**jeannie**  2:4
6:16
**jeannie.marx**
2:9
**job**  1:20 24:3,5
25:22 28:5,9
28:11,12 33:13
33:19,25 48:15
**jobs**  110:23
**john**  52:12
**join**  25:10
**joined**  26:2
37:4
**joint**  26:8 27:5
27:20
**jointly**  35:23
**jr**  2:15 116:1
**july**  1:15 5:3,18
12:1 24:15,15
47:24 48:1,1
48:17 52:21
53:10,15,16

67:8
**jumped**  97:7
**jumping**  29:12
**june**  28:25
30:16 32:5
36:12 37:24
44:22 51:24,24
52:1 53:16
54:11 55:4
59:8 63:24
69:20 74:13
86:16 107:1

**k**

**k**  23:23
**keep**  46:9,9,14
65:19,23,23,24
66:8 98:12,22
**kendall**  86:20
**kennedy**  33:11
33:25
**kept**  71:6,7
77:14 78:11,14
90:9,20 99:15
**kind**  10:15
38:17 86:7
100:3
**knew**  97:21
**know**  9:18
12:21 18:14
19:3 21:18
23:13,15 26:2
29:17 35:21
46:7 52:12
55:7,11,19
56:22 57:25

Case 1:19-cv-04129-AT    Document 174-2    Filed 01/08/25    Page 133 of 151

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[know - mail]**                                        Page 14

58:8,11 60:10
60:11 62:6
65:17 67:23,25
71:6 74:2
77:13,20 78:10
79:2 80:11,23
82:17,22 84:16
85:1,11,18,20
87:7 90:5,9,13
90:16 92:21
93:11,12 94:16
95:2 97:1
99:20,24 100:2
104:10,12,13
104:20 107:13
108:2 110:16
110:16,18,25
111:19,21,25
112:3
**knowledge**
32:18 42:21
45:6,9 52:3
73:25 74:12
75:16 103:22
114:10 115:6
**known**  25:13
31:14 42:25
43:6 72:2

**l**

**l5l**  1:18 9:4
**labels**  40:18
**lafferty**  3:6
6:25 7:3,3
**laid**  42:19

**language**  61:6
**lapad**  9:3
**large**  56:20
**late**  79:13
**lauren**  115:2,16
**laws**  6:6
**lawsuit**  88:5
101:20,22
102:11
**lawyers**  2:8
**lead**  62:12
73:13
**leaders**  31:5
**leadership**  95:4
**leading**  102:8
102:18,24
103:9,21 104:2
105:7,12,15,17
**leave**  24:24
25:3 91:21
**led**  70:11
**left**  24:22 37:2
37:2,5 76:5
**legal**  12:19
13:11,15 23:13
26:25 49:20
61:8 78:8
99:23 103:13
106:23 108:7
116:23
**leighton**  2:17
16:18
**level**  62:6 99:15
**liability**  84:13
84:22 85:24

86:1
**lighten**  99:5
**likely**  87:3
**limited**  56:21
**line**  4:19 78:9
93:14 117:4,7
117:10,13,16
117:19
**lines**  36:6 50:25
51:3,8 56:18
103:16
**list**  68:25
**listed**  81:4
**listen**  8:23
**litigation**  17:20
**litsup**  116:15
**little**  13:13
56:16 62:22
65:16 79:13
92:15 93:23
97:7
**llc**  1:9 2:13
5:18
**llp**  2:17
**loads**  99:6
**location**  1:17
**long**  11:4,8
23:24 26:1
65:16
**longer**  36:19,20
**longish**  46:5
**look**  10:22
11:11,16,17
38:16 39:2
60:18 68:18

78:18 82:17
92:6 95:5,23
97:4 108:5
**looked**  11:12
11:19,21 12:2
12:7,12,15,24
28:21 40:21
46:23 54:19
**looking**  18:20
56:12 60:19
95:12
**lose**  63:9,11
**lost**  94:5
**lot**  35:22 93:12
**lots**  86:5
**low**  109:6

**m**

**m**  2:15 4:22
25:16 116:1
**ma'am**  62:17
112:10
**made**  17:11
32:4,4 71:4
78:25 118:5
**mail**  4:9 9:11
13:9,15 23:10
28:24 29:24
30:2,3,9,15,24
30:25 31:5,18
32:15 33:10
34:9 36:7
38:25 39:4,4
39:15,20 41:12
43:15 44:21,22
44:23 45:20

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[mail - member]**                                          Page 15

55:10 59:8
61:11 63:24
64:3,7 69:20
86:16 89:17,19
93:8,12 95:12
100:5 103:10
103:19,25
104:16 106:21
107:1,19
108:24 109:15
109:24 111:2
111:14
**mailed**  32:24
**mails**  10:10
11:12 28:21
44:17,18,24
45:2,7,9,13,19
51:22 86:17
89:11 90:22
104:15
**maintained**
47:11
**majority**  26:12
**make**  91:21
97:9 99:21
104:24
**making**  54:25
**manage**  31:12
34:4
**managed**  28:15
**management**
28:13,14,16
33:22 62:3
99:15

**manager**  25:24
28:6 48:13
58:16
**managers**
73:18
**manner**  6:7
**march**  24:16
52:18 53:19,21
54:6,14 55:20
**mark**  86:20
**mark's**  113:2
**marked**  29:13
29:15 39:24
40:2,6,8 46:2
65:14 72:15
82:13
**marx**  2:3,4,5,5
3:4,4,4 4:3,5
6:15,16,16,16
6:17,18 7:23
7:24 8:2,3,4,4
13:7,17 14:13
14:21,24 15:11
15:18,19,24
16:8,11,23
17:9,22 18:8
18:14 19:1,6
19:12,17 20:24
21:15,22 22:1
22:2,12,20,24
23:4 28:17,19
39:13,23 40:1
40:5,10,12,16
40:19,22,23
41:10 42:2,9

42:15,20 44:9
44:14,15 51:7
51:13,18 56:9
57:6,10,19
61:16,18 63:5
65:11 66:4,6
68:17 69:18
70:2 72:5,6
75:15 76:4,8
76:15 77:3,6,8
78:17,22 79:1
79:14 80:14,17
83:14 90:24
91:8 92:7,10
92:16 93:2,6
93:25 94:20,25
96:5,12,18
97:22 98:6,14
98:18,24 99:12
99:17 100:7,12
100:17 101:13
102:7,12,17,23
103:8,20,24
104:2,6,9
105:7,12,15,17
105:22 106:2
107:6 108:19
109:9,11
110:14 111:5
112:5,17,18
**marxlawgrou...**
2:8,9
**master**  4:11
42:25 43:6

**material**  60:21
61:4
**matter**  5:17
**mcpherson**
17:19 101:3,5
**mean**  16:6
35:11,15,20
59:16 61:24
79:16 90:11
93:14 95:20
96:23 97:11
98:5
**means**  6:8
**meant**  96:24
97:12
**media**  56:20
**medical**  8:18
**medications**
8:22
**meet**  16:5
**meeting**  10:15
10:18,19,24,25
11:1,4,8,15,17
31:2 70:4,9
71:16 77:24,25
78:2 79:18,23
**meetings**  4:24
11:2,10 70:5
70:10,11,25
71:4,13,13,20
74:4,5 77:18
78:3,6,11,14
79:4 80:1
**member**  32:22

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[members - northern]**                                                    Page 16

**members**  32:20
  70:9 73:15
  95:4 108:6
**memory**  57:12
**mentioned**  97:8
  102:10
**merch**  32:14
**merchant**  1:8
  1:10 2:13,13
  4:13 5:17 25:6
  25:12,20 32:12
  32:14 43:9,11
  46:18,24 47:3
  49:7 50:10
  56:2 62:11
  107:15 108:2
  108:23 109:14
  109:22 116:4
  117:1 118:1
**merchants**
  32:19 42:11,22
  61:20 62:9
  63:8,16,25
  64:8,18 65:6
  75:17,21 81:18
  81:24 83:6
  87:11,24 97:13
  106:15,24
  107:9,12,12,17
  108:13 110:2,6
  111:1,12,19,24
  112:1
**messages**  77:14
**messaging**
  76:17 77:10

  92:17
**met**  9:23 51:23
  51:24
**mic**  6:25
**mind**  93:9
**minute**  61:10
  61:11 76:3
**minutes**  4:24
  11:9 41:4
  71:12,20,22
  77:24 78:1,10
  78:14,18 90:24
**mississauga**
  1:18 5:18 9:3
**misunderstand**
  29:11
**misunderstood**
  40:13
**mitigating**  86:5
**moment**  22:14
  22:19 23:1
**monday**  1:15
**money**  97:1
**monica**  33:11
  33:25
**monthly**  4:24
  71:3 74:5
  77:18 78:4
  79:4
**months**  10:1
  11:23 12:1
  37:4
**morning**  5:2,12
  104:9,19

**move**  29:7 80:8
**moving**  25:2
**msa**  47:3 50:20
  52:8 56:6 57:2
  57:12,20 60:13
  60:25 65:13
  66:12,18 69:10
  80:4 81:4,10
  91:14
**msas**  43:1,6
  50:10,17,23
  51:4,10 75:22
  111:12

**n**

**n**  2:1,3 3:1 4:1
  4:22 5:1 23:23
  58:24,24
**n.a.**  49:10,13
**name**  5:12 6:19
  7:14,15 8:3
  13:21,23,25
  30:18 48:6
  58:23 71:2,15
  73:1,7 77:11
  94:11 101:4,6
**named**  14:3
  17:4 73:15
  101:3
**natasha**  33:10
  33:13 87:1
  88:8,17
**nature**  104:17
**necessarily**
  63:11

**necessary**
  17:12 106:25
  118:6
**need**  46:6 56:22
  66:8 111:17
**needed**  110:3,4
**negotiate**  51:4
  51:10
**negotiated**
  50:12
**negotiating**
  50:16
**neither**  114:11
  115:7
**never**  39:3
  95:11 103:14
**new**  24:25 25:1
  25:2
**night**  40:25
**nine**  56:18
**noncompliance**
  55:4 74:13
  79:3
**noncompliant**
  54:19,23
**nope**  12:10,13
  12:16 87:14
  106:7
**normal**  30:12
  36:14 47:11
  66:21 72:22
**north**  25:25
  28:7
**northern**  1:2

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[notary - okay]**                                                    Page 17

| | | | |
|---|---|---|---|
| **notary**  114:19 | 99:12,17 100:7 | 84:4,9,14,24 | 11:19,22,25 |
| 118:13,19 | 100:17 102:7 | 85:2,7,12,16,19 | 12:7,7,17,21,24 |
| **note**  5:4 116:10 | 102:17,23 | 86:3 87:13,20 | 13:20,22 14:5 |
| **noted**  70:8 | 103:8,20 109:5 | 88:2 89:2,6,12 | 14:9,21 15:6 |
| 118:7 | 109:9 | 90:21 100:12 | 15:12,24 16:13 |
| **notes**  71:4 | **objecting**  19:9 | 101:13,17 | 17:10 19:11 |
| **notification** | 105:19 | 102:13 104:2 | 20:1 22:1,19 |
| 88:4 | **objection**  5:24 | 105:7,12,15,17 | 23:1,3,9,11,11 |
| **number**  9:5,12 | 7:12 13:2,6 | 107:5,10,21 | 23:18 24:8,18 |
| 31:11,15,16 | 14:7,12,14,23 | 108:25 109:16 | 24:21 25:4 |
| 32:23 39:24 | 15:10,14 16:15 | 109:25 110:13 | 26:7,17 27:1,4 |
| 47:16 50:6,8 | 19:16,24 20:3 | 110:21 111:4,7 | 27:7,14 28:5,9 |
| 72:13 | 20:17,18 21:18 | 111:15 | 28:12,20,24 |
| **numbering** | 21:19 22:10 | **obligation** | 29:2,19,20 |
| 66:13,14 | 39:10 41:15,21 | 75:21 80:20 | 30:2,6,9,15,18 |
| **numbers**  29:23 | 41:24 42:8,13 | **obligations** | 30:22 31:25 |
| 38:16 46:20,20 | 42:16 43:17,21 | 83:10 88:3 | 32:5 33:1,5,10 |
| 47:15 | 44:1,5,10,19 | **obtain**  61:23 | 33:17,19 34:6 |
| **numeral**  56:16 | 45:16 51:12,17 | 64:10 | 34:8,14,24 |
| 56:20 80:19 | 51:21 52:5 | **occur**  110:10 | 35:6,9 36:1,7 |
| **nw**  2:18 | 53:13 54:9 | 110:15 | 36:21 37:6,9 |
| | 55:6 56:8 57:5 | **officer**  26:25 | 37:16 38:12,24 |
| **o** | 57:9,17,23 | 58:18 78:8,8 | 39:8,18 40:4 |
| **o**  4:22 5:1 | 58:6 59:10 | 114:1,2 | 40:15 43:3 |
| 58:24 116:1 | 60:2,16 61:2 | **officers**  35:13 | 44:14,22 45:6 |
| **oath**  17:3 | 62:15,17 63:10 | **offsite**  111:17 | 45:9,13,24 |
| **oaths**  5:22 | 63:18 64:4,24 | **oh**  35:12 36:1 | 46:16 47:8,10 |
| **object**  12:4 | 65:10 68:3,12 | 36:19 60:10 | 47:14,19 48:2 |
| 16:19 27:10 | 68:13,16 69:12 | 65:23 66:7,10 | 48:9,15,20,25 |
| 32:2,8 33:3,8 | 69:17,24 74:15 | 76:4 91:13 | 49:5,9,12,17,21 |
| 37:22 38:1,7 | 74:23 75:14,18 | 102:2 | 49:25 50:10,15 |
| 39:6,16,21 | 75:23 77:19 | **okay**  7:9 8:16 | 51:2,2,8,19 |
| 50:7 51:6 75:7 | 79:9,11 81:11 | 8:18 9:9 10:3 | 52:3,9,11,17 |
| 93:25 94:20,25 | 81:20 82:2,4,8 | 10:14,20,24 | 53:5,18 54:6 |
| 96:5,12 98:6 | 83:13,18,22 | 11:4,8,10,13,15 | 54:13,21 55:2 |
| 98:14,18,24 | | | |

David Ades                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

[okay - paragraph]                                      Page 18

55:19,23 56:5
57:11,25 58:3
58:11,15,19
59:6,15,23,25
60:12 61:10,23
62:8 63:6,15
63:23 64:6,12
65:2,5,12 66:2
66:7,10,20,23
67:4,8,13,16
68:1,6,11,18,21
68:24 69:8,22
70:12,19 71:6
71:12,17,20
72:4,11,12,22
72:25 73:7,17
73:22,25 74:4
74:8,12,20,25
75:10,16,20
76:1,8,16,19,22
77:9,13,16,23
78:3,10,13,22
79:6 80:3,18
82:11,19,25
83:20 84:7,18
85:11 86:8,11
86:15 87:7,10
87:15,22 88:9
88:18,23 89:10
89:14,17,24,24
90:5,16,19
91:8,10 92:7
94:9 96:17
100:20 103:23
106:8 107:1,16

109:9 111:19
112:5,7,15,23
113:8
**onerous**  96:24
**ontario**  1:18
5:19 9:3
**open**  17:1
91:22,23 97:17
**operational**
27:8,20,22
**operations**
33:15
**opinion**  83:20
**opportunities**
95:5
**opportunity**
20:22 25:9
106:5
**optimal**  63:22
**option**  64:6,12
64:17,22,25
98:8,10
**options**  54:19
55:8,10 61:19
64:7 97:2,3,4,8
97:10,18 98:3
98:5,11,13,22
99:11
**order**  75:1
112:21 113:2,6
**ordering**
112:16
**orders**  112:25
112:25

**organization**
50:6
**original**  47:3
66:12 91:15
**originally**
101:11 104:22
104:25
**originated**
105:5
**outcome**
114:16 115:12
**outlined**  55:10
**outside**  38:8
79:23
**outsource**
55:17
**outstanding**
71:19
**oversight**  63:13
**own**  94:13
**owned**  69:6
**owner**  73:15,16
**ownership**
26:13 69:5

**p**

**p**  2:1,1 3:1,1
5:1
**p.m.**  76:11,14
91:4,7 113:10
113:12
**page**  4:2,8,19
4:23 29:11,22
30:6,18 38:16
38:18 39:2
46:10,11,12,13

47:4,14,16,21
48:2 49:6 52:7
52:20,20 53:6
53:10,18,22
56:13 60:18,21
61:14 66:15,16
66:16 67:1,14
67:16 68:18,24
72:12,25 74:25
80:7,11,18
81:3,6 82:25
91:15 92:5
117:4,7,10,13
117:16,19
**pages**  46:6
65:17 66:24
72:10
**paisner**  2:17
16:18
**pan**  31:11,14
32:15 33:6
37:20,25 39:3
39:19,19 41:12
41:18 42:5
43:15 44:17,23
44:23 45:14,19
59:7 64:2
73:18 97:17
107:19 108:24
109:14,23
110:2 111:1,14
111:16
**paragraph**
31:17 32:11
56:15,15 61:15

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[paragraph - potentially]**                                        Page 19

99:3 100:4
**paralegal**  3:4
    6:18 29:7
**pardon**  30:23
**parkway**  2:6
**part**  91:23
    93:21 96:8
**participants**
    5:7
**participate**  8:6
**participation**
    73:3,11
**particular**
    32:21 70:24
    92:5 108:2
    110:1 111:9,9
**parties**  5:10,22
    5:25 114:12,14
    115:8,11
**partners**  34:5
    35:10
**party**  56:19
    59:11 62:1
**paying**  23:13
    23:15,17
**payment**  37:9
    37:12 42:11,22
    83:1
**payments**  24:4
**pc**  60:6
**pci**  4:15,16
    31:19 32:1,3,6
    35:19 37:6,17
    38:5,13,14,18
    41:13,18,19

42:6,6 51:20
52:4 53:11
54:8,13 55:4
56:6 57:2,15
57:21 59:9
60:6,14,25
64:15,18 69:11
69:23 70:16,21
73:19 74:13
75:12 76:23
79:3 80:19,21
82:21,24 83:2
83:11,17 84:1
84:13,23 85:5
85:15,24 86:17
86:19,22,25
87:11 89:18,22
96:19 97:3,4,8
97:10,21 100:6
106:16,17,20
107:2,20
**peachtree**  2:18
**penalties**  60:15
    83:16 84:2
    86:7
**pending**  109:8
**people**  50:13
**percent**  26:12
    26:13 34:19
    55:7,21 77:21
    79:21 81:12
**perform**  81:18
    81:23
**performed**  81:2

**period**  24:13
    26:3 36:21,24
    61:5
**permissible**
    16:25
**permitted**  6:4
**person**  14:3
    16:12 17:4
    50:6,9 69:1
    73:13
**personal**  31:11
**personally**  22:4
    70:22 71:11
    89:19 110:22
    111:23
**personnel**
    56:21
**pertain**  101:21
**pertaining**
    15:23 51:22
**pertains**  101:21
**phone**  62:23
**physical**  8:18
**place**  5:9 17:7
    95:6 104:3
    108:15
**placed**  62:15
**places**  48:25
    49:3
**plaintiff**  1:6 2:2
    6:15 8:5
**plan**  54:25
**platforms**
    27:17

**please**  5:4 6:13
    7:13 9:2 16:13
    17:9 22:13
    23:2 46:13
    53:14 57:18
    81:21 82:8
    90:25 93:7
    112:14
**plus**  66:12
**point**  17:2
    63:15 74:21
    103:4 104:16
**pointe**  2:6
**pointing**  81:5
**poor**  62:12
**portion**  49:6
    56:14
**position**  26:1,6
    91:21
**possibility**  84:8
    84:10 85:22
    86:8,10
**possibly**  86:12
**post**  25:11
**postal**  9:4
**postponed**
    104:17
**potential**  63:21
    64:25 84:12,19
    84:22 86:12
    97:25 99:20
    104:22
**potentially**
    34:23 62:12,13
    65:4

**[practice - questions]**                                                   Page 20

| | | | q |
|---|---|---|---|
| **practice** 90:22 96:9 97:13,16 | 103:18 114:5 | 67:23 72:13 82:16 | **qsa** 58:5,9 59:4 59:13 60:1 |
| **practices** 94:17 | **privilege** 16:20 17:21 19:9,11 20:17,19 | **program** 90:14 | **qualified** 58:5 114:7 |
| **pre** 40:5 | | **promotions** 26:4 | |
| **prefer** 63:20 | **privileged** 9:17 10:4 | **properly** 99:25 | **quality** 5:5,6 98:1 |
| **preparation** 10:14 28:21 | **privy** 44:20 | **provide** 27:15 98:9 | **question** 8:11 8:12 11:16 15:20 17:15,24 18:5,9,17,18,20 18:21 21:7,21 21:23 22:11,18 22:21,25 36:23 38:13 40:13 42:3 47:8 52:23 57:18 58:17 59:2,12 64:5 77:10 80:6,10,12 81:21 93:13 94:1,21 95:1,8 96:6,13 98:7 98:15,19,25 99:4,13,18 100:8,13,18 101:14 102:8 102:18,24 103:9,21 104:5 104:9,19 107:11 109:5,8 |
| **prepare** 10:6 | **probably** 12:5 37:4 54:12 55:9 73:5 93:12 | **provided** 27:13 36:3 90:8 | |
| **prepared** 72:22 73:6 78:14 115:3 | | **provider** 81:1 97:5 | |
| **preparing** 50:16 73:4,11 74:9 | **problem** 31:6 65:7 92:11 | **providers** 83:7 | |
| | **procedural** 6:5 | **provides** 39:2 | |
| **prescription** 8:21 | **procedure** 29:5 | **providing** 32:23 | |
| **present** 3:2 6:17 | **proceed** 7:23 | **public** 114:19 118:19 | |
| **president** 24:4 25:24 28:6 33:15,21 34:2 34:2 48:12 | **proceeding** 1:17 5:14 6:3 6:11 113:13 115:4 | **pulled** 82:12 | |
| | | **punished** 95:10 | |
| | **proceedings** 114:3,5,6,9 115:6 | **purporting** 66:11 | |
| **pretty** 62:20 94:12 | | **purpose** 8:8,9 | |
| **prevent** 98:9 | **process** 32:16 38:20 54:25 83:5 93:16,20 | **purposes** 46:22 50:1 | |
| **prevention** 27:17 | | **pursuant** 54:3 91:12 | |
| **previously** 103:23 | **processes** 94:13 94:14,15 95:6 | **put** 29:6,14 46:21 48:20 92:24 | **question's** 14:18,22 |
| **primary** 31:14 31:16 32:23 | **processing** 27:17 28:1,3 42:12,23 | | **questions** 4:18 8:9,23 17:1,17 |
| **print** 48:5 | | **puts** 111:17 | |
| **prior** 22:18 30:3 53:5 79:18 88:5 | **produced** 6:2 29:22 40:18,19 40:22,23 46:17 66:11,13,14 | **putting** 73:14 | |

David Ades                                                    July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[questions - regulations]**                                    Page 21

| | | | |
|---|---|---|---|
| 29:9,18 38:11 | 116:11 117:6,9 | **recollect**  96:7 | **reengaged** |
| 41:2 46:8 62:2 | 117:12,15,18 | **recollection** | 103:15 |
| 63:8 67:4 | 117:21 | 57:1 85:17 | **refer**  25:18 |
| 82:18 91:25 | **reasons**  64:21 | 104:1 106:4 | 56:13 95:16 |
| 92:9,12,25 | 93:19 96:8 | **record**  5:3,10 | **reference**  4:15 |
| 100:24 105:20 | **recall**  14:2 34:3 | 5:14,15,25 | 38:14 |
| 105:23 | 34:25 55:13,21 | 6:14 9:2 17:10 | **referenced** |
| **quick**  4:15 | 55:23,25 59:5 | 17:12 21:2,9 | 11:12 116:6 |
| 38:14 76:7 | 59:14,15,16,17 | 22:15 29:21 | **referred**  35:9 |
| **r** | 60:3 65:9 | 38:12 41:6,7,9 | 44:23 71:24 |
| **r**  2:1 3:1 4:22 | 70:17,23 71:15 | 46:16 62:16 | 81:10 |
| 5:1 23:23 | 74:2,3,4,7,8,11 | 76:10,12,14 | **referring**  25:19 |
| 117:3,3 | 75:19,24,25 | 78:24,24,25 | 26:15 47:14 |
| **raise**  7:13 | 76:24 77:12 | 91:3,5,7,12 | 60:17,23 70:13 |
| **raised**  102:12 | 79:5 86:18,21 | 104:24 113:9 | **refers**  75:1 |
| 102:13 | 87:2,4,6 88:11 | 114:9 115:5 | 80:19,20 82:23 |
| **ramifications** | 88:12,20 89:7 | **recorded**  5:8 | **reflected**  77:23 |
| 99:20 | 89:9,20 90:18 | 6:7,11 72:20 | 78:1 |
| **range**  86:11 | 92:16 101:2,6 | 114:6 | **reflects**  107:2 |
| **read**  22:12 | 101:7 102:1,9 | **recording**  5:5,9 | **refresh**  57:1 |
| 56:14 61:3 | 103:17 104:19 | 6:2 22:22 | 103:25 |
| 95:14 96:21 | 108:17,19,21 | 114:8 115:4 | **refreshed** |
| 99:6 105:20 | 109:1 112:4,4 | **records**  71:7,10 | 57:12 106:4 |
| 116:9 118:5 | **receipt**  116:17 | **rectified**  54:12 | **regarding** |
| **reading**  75:10 | **receive**  37:20 | **redactions** | 17:17,20 57:21 |
| 80:13 | 62:7 89:21 | 91:24 | 71:10 73:18 |
| **reads**  56:18 | **received**  26:4 | **redirect**  97:20 | 78:14 82:21 |
| **ready**  7:23 29:9 | 36:11 45:10 | **redirecting** | 83:10,20 85:5 |
| 29:10,17,20 | 46:19 78:18,19 | 98:3 | 85:15 86:17 |
| 38:10 46:8 | **receiving**  90:14 | **reduce**  99:4 | 88:25 89:18,21 |
| 65:18 66:4,9 | 103:18 | **reduced**  114:7 | 91:13 100:25 |
| 80:12,15,16 | **recent**  109:8 | **reducing**  99:10 | 112:2 |
| 82:17 | **recently**  16:2 | 99:14,21 | **regulations** |
| **reason**  8:19 | **recognize** | **reduction** | 44:21 81:19,25 |
| 47:8 70:3 89:5 | 38:13 82:20 | 100:3 | 82:6,10 106:24 |

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[related - retaining]**                                                                Page 22

**related**  31:3,4,9
  100:6 101:19
  114:11 115:7
**relationship**
  15:17 16:1,6
  16:17 26:8
  27:8 62:10
**relative**  114:13
  115:10
**relayed**  54:11
**relevant**  16:25
**relied**  58:11
**relocate**  24:25
**relocating**  25:1
**remedial**  54:24
  54:25
**remediate**  75:1
  75:9 109:2,17
  109:19 110:24
**remediation**
  65:7 74:21
  108:8
**remedy**  54:20
  55:16,17
**remember**  10:2
  12:20 34:1,15
  37:3 48:16
  88:18 103:15
**remind**  93:13
**remote**  1:17 8:7
**remotely**  5:23
**repeat**  13:13
  22:11 36:23
  44:3 53:14
  59:2 81:21

82:7
**repeated**  22:15
**rephrase**  8:12
  95:8 101:16
**report**  33:17,23
  34:6 35:4
  52:15 53:1
  59:23 108:9,12
**reported**  1:19
  35:6 50:2,13
  54:23 70:7
  95:24
**reporter**  5:12
  5:13,20 7:5,8
  7:11,22 13:12
  16:9,10 18:12
  22:14,15,19
  23:1 39:9,12
  39:23 40:4,9
  40:11,15 41:22
  42:1 44:2,8
  62:14,15,19,25
  63:4 68:13
  79:10 104:4
  109:3,4 112:7
  112:11,15,19
  112:23
**reporting**
  46:18 50:15
  96:2
**reports**  108:10
  108:11
**represent**  8:4
  22:4 102:5,15
  102:22 105:16

**representation**
  9:19 12:19
  13:11 23:5,14
  101:1 103:5,18
  104:20 105:5
  105:11
**representative**
  3:6 7:4 13:16
  14:19 17:19
**representatives**
  16:21
**represented**  9:7
  9:15 12:11
  15:1,3,7 17:2,5
  18:2,7 19:14
  19:19 21:3,4
  92:4
**representing**
  14:6,10,11,17
  20:5,14 22:5
  80:25 102:11
  103:24
**request**  32:12
  61:23 64:10
  107:25
**requested**
  22:16 114:24
**requests**  99:5
**require**  69:10
  97:1
**required**  41:18
  42:5 56:6 57:2
  57:13,20 58:4
  60:8 81:18,23
  83:4 88:3

106:24 110:10
  118:13
**requirement**
  49:4 58:13
**requirements**
  38:19 56:17,23
  68:25
**reserve**  112:8
**reserved**
  113:11
**resolving**  99:9
**resources**  97:1
**respect**  44:16
  51:2,8 55:3
  58:13 80:4
  89:11 108:13
  108:23 109:14
  109:22
**respond**  112:1
**responded**
  14:17,19
**response**  17:23
  33:6 36:8
  105:19
**responsibilities**
  34:4
**responsibility**
  87:16,23
**responsible**
  51:1,3,9
**result**  84:2,13
  84:23 85:24
**retain**  103:13
**retaining**  44:16

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[retention - self]**

Page 23

**retention** 92:17
92:20
**return** 116:13
116:16
**revenue** 35:21
**review** 10:9
71:3,18 114:24
116:7
**reviewed** 10:8
10:10 73:5
**richards** 1:19
5:11,13 114:2
114:18
**ridiculous**
104:7
**right** 5:11 7:13
11:25 16:23
17:6 20:7,11
21:2 22:5,7,9
25:14 26:7
28:7,22 30:4
30:10,13 31:17
31:23 32:10
33:7 35:2,4,7
36:9,17 37:14
38:17,20,25
42:10 43:10,13
43:24 45:22
47:15,24 48:10
48:13 50:3,19
50:22 53:23,25
54:1 56:1
57:22 58:5
61:16,19,21
64:9,13,16

65:12 66:15
67:6,8 68:22
69:8 73:8
74:17 76:9
78:4 80:3 81:4
81:14 82:7
86:9 93:2,2,3
96:16,21
101:12 102:6
103:2 105:22
107:3 108:9
111:20 112:5
113:9
**risk** 58:18 78:7
**robert** 2:3 6:15
8:3 15:15
16:15 20:20
21:11 40:17
70:2 78:20
92:2,23
**role** 25:1 27:20
27:23 37:2
101:22
**roll** 25:9 65:21
**roman** 56:16
56:19 80:19
**root** 31:6
**route** 31:19
96:19 97:4
99:4
**routine** 79:25
**routinely** 76:19
**rubinetti** 52:12
53:6

**rules** 6:6 81:19
81:24 82:5,9
82:21,23 83:10
106:24

**s**

**s** 1:9 2:1,13 3:1
4:7,22,22 5:1
7:16 23:23
25:16 117:3
**sales** 25:25
28:7,13 33:15
35:13 52:24
53:25
**save** 100:11
**saw** 26:23
51:22 66:25
**saying** 36:5
63:11 103:11
104:16 106:22
110:6
**says** 30:17
47:25 48:5,9
80:22 83:1
95:13 96:18
**schedule** 92:17
92:20
**scheduled**
101:11,24
103:6 104:12
**scope** 15:17
**screen** 5:8 29:4
29:6,14 92:25
**scroll** 93:7
**scrolling** 46:9
46:14 65:19,23

65:24 66:8
**search** 71:9
**second** 11:8,15
11:17 21:16
30:18 31:17,18
56:15 61:14,14
67:18 72:25
74:25 82:25
**section** 39:2
60:17
**secure** 32:15
**security** 37:10
37:13,17 38:5
38:13 56:17,23
58:5 83:2
**see** 8:9 24:16
26:22 27:1
31:20 32:10
38:17 45:18
47:25 54:24
56:24 65:22
67:19 73:1,1
83:7 91:17,19
108:7
**seeing** 99:5
**seems** 67:19
**seen** 5:7
**select** 56:21
**self** 4:10 70:6
71:25 72:21
93:15,17,20
94:18,23 95:10
95:13,20,23,25
96:4,10 97:4
100:16 108:15

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[send - sorry]**                                                                Page 24

| | | | |
|---|---|---|---|
| **send** 28:17 | 83:7 98:1,4,9 | 93:7 100:21 | 116:19 |
| 30:22,24,25 | **servicer** 81:4,7 | **short** 41:3 | **simple** 17:24 |
| 31:5 89:17,19 | 81:8 | **shorten** 49:25 | 18:17 |
| 97:16 112:13 | **servicers** 80:22 | **shorter** 65:17 | **single** 107:14 |
| **sending** 31:10 | **services** 1:9,10 | **show** 29:13 | **sir** 8:15,17,20 |
| 39:3,19 43:14 | 2:13,14 4:11 | 38:9 46:4 | 8:25 23:19 |
| 43:19 44:13 | 4:14 5:18 25:6 | 65:12 72:5,7 | 49:19 |
| 59:7 64:2 | 25:12,20 27:13 | 77:6 82:11 | **sit** 29:8 |
| 90:14 | 27:14,16 31:10 | **siai** 72:2 73:17 | **situation** 18:15 |
| **sends** 32:14 | 36:4 43:1,7,9 | 73:22 74:5,9 | 20:25 54:20 |
| **senior** 24:4 | 43:11 46:18,24 | 74:17 77:5,16 | 86:4 107:24 |
| 33:21 34:1 | 47:3 49:7 | 79:3,25 93:14 | 108:6 111:13 |
| 52:24 53:25 | 50:10 56:2 | **sic** 37:10,13 | **six** 26:5 |
| **sent** 13:9 28:25 | 81:18,24 116:4 | 60:6 | **skills** 114:10 |
| 30:9,12,16 | 117:1 118:1 | **sign** 30:19 49:3 | 115:6 |
| 33:10 44:24 | **seven** 34:18 | 49:15,16,17,18 | **skype** 90:13,15 |
| 45:3,10,14 | **severe** 108:3,12 | 50:20 53:3,7 | **slawin** 1:5 2:2 |
| 90:1,1 107:18 | **severity** 83:24 | 67:22 91:15 | 5:17 8:5 86:23 |
| 108:24 109:15 | 86:5 107:24 | 105:21 116:12 | 88:6 89:5,11 |
| 109:23 110:2 | 108:8,23 | **signature** 30:20 | 89:18 116:4 |
| 110:17 111:2 | 109:13,22 | 47:17 48:3 | 117:1 118:1 |
| 111:14,17 | 110:24 | 49:5 66:23 | **small** 56:16 |
| 112:11 116:14 | **share** 29:6,14 | 67:2,5 68:9,19 | **software** 69:4 |
| **sentence** 31:18 | 46:4 | 91:15 112:9 | **sold** 35:22 |
| 32:11 96:17,23 | **shared** 29:3 | 113:11 114:22 | **solely** 68:21 |
| 99:2 | 108:1 | 115:15 | **solution** 65:5,7 |
| **series** 41:1 | **shareholder** | **signature's** | **solutions** |
| 46:17 | 25:8 27:2 | 67:13 | 116:23 |
| **server** 45:7,11 | **sharing** 29:3 | **signed** 23:5,7 | **solve** 110:24 |
| 90:10,20 | **sheet** 116:11 | 43:3 47:20,23 | **somebody** 13:4 |
| **servers** 90:23 | **sheila** 3:6 6:22 | 48:25 49:6,9 | 90:1,2 |
| **service** 27:18 | 6:24 7:3 | 52:11 53:22 | **sorry** 7:8 13:8 |
| 32:19,22 35:22 | **shelley** 3:4 6:18 | 54:3 65:22 | 13:12,24,25 |
| 62:6,12 63:14 | 28:17 29:7 | 67:10,24 68:4 | 14:9 16:9 20:9 |
| 63:22 80:23 | 46:7 80:8 93:3 | 68:21 92:5 | 22:17 23:22 |

David Ades                                           July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[sorry - susceptible]**                                    Page 25

34:21 39:9
41:22 43:6
44:2 53:14
56:10 59:1
62:14 65:21
70:2,25 71:13
76:5,6 79:10
79:12,24 80:14
80:18 81:5
85:9 89:8
91:13 92:10
101:4,16 102:1
102:2 104:4
109:7
**sought**  83:16
**sounds**  113:8
**speak**  20:22
34:21,24 62:5
62:21 69:19,22
70:1,15,19,22
106:5
**speaking**  70:18
70:23 74:8
**specific**  60:3
71:15 74:11
82:22 88:11
96:7 101:6
109:21 110:5
**specifically**
9:20 69:21,25
70:3 75:24,25
94:4 108:20
111:24
**specifics**  110:1

**speculate**  42:18
**speculation**
34:14
**speech**  18:16
18:20 19:7,9
76:5
**spell**  7:14 23:22
58:23
**spent**  97:2
**spoke**  15:6 17:4
19:13,22 20:1
20:4 21:5
32:20 63:20
95:21
**spoken**  9:23
**staff**  31:5
**stand**  37:9
**standard**  38:8
39:20 83:2
94:12 112:21
**standards**
37:11,12,13,16
37:17,19 38:5
38:5,14
**standing**  113:6
**start**  14:6
22:21 29:12
**started**  22:7
24:1,6 25:5
**starting**  30:3
**starts**  53:10
**state**  7:13
114:20
**stated**  30:16

**statement**
50:17 63:17
75:6
**states**  1:1 38:21
38:23
**stellar**  63:12
**stenographic**
6:8
**steps**  45:1 75:1
110:20,22
111:6,8,11,22
111:23
**steve**  52:23
**stipulation**  6:9
**stop**  97:15
**storage**  44:21
**store**  37:20
38:19 56:20
83:5
**stored**  45:7,10
45:15 77:14
90:23
**storing**  41:17
42:4
**street**  2:18
**strike**  84:20
**strong**  94:16
**strongly**  95:13
95:19
**subdivision**
60:21
**subject**  60:14
70:8 91:22
93:14

**submission**
73:17 77:17
**submitted**
79:17,19,22
**subscribed**
118:14
**subsequent**
47:5 74:1,9
**substance**
17:18 34:9
69:20
**sufficient**  22:20
**suggest**  95:13
95:19 100:16
**suggested**  96:3
97:3 102:10
**suggesting**
100:5,10,15
**suggestion**
96:10
**suite**  2:6
**supervision**
62:4
**support**  32:13
**sure**  36:24
56:11 59:3
62:21 68:5
69:5 72:9
79:18 80:22
88:3 91:2 93:6
97:7,9 99:21
104:24
**susceptible**
87:18,25

David Ades
July 29, 2024

Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

[swear - time]                                                                    Page 26

| | | | |
|---|---|---|---|
| **swear**  5:22 | 73:14,14 95:2 | **terminals**  69:2 | **thing**  43:24 |
| 7:12 | 95:4,17 96:2 | **terminated** | 68:19 96:16 |
| **sworn**  5:25 | 100:16 106:23 | 61:1 88:16,22 | 104:6,12,16 |
| 7:19 114:5 | 108:7,7,10,11 | 89:5 | **things**  79:17 |
| 118:14 | 108:12,22,22 | **terminating** | **think**  12:5,6 |
| **system**  37:10 | 109:1,13,17,21 | 103:6,18 | 20:18 27:2 |
| 76:17 77:10 | 110:3,23 | **termination** | 38:11 40:7,12 |
| | 111:16 112:1 | 60:20 61:8 | 41:23 42:19 |
| **t** | **teams**  35:21 | 88:13 103:22 | 62:20 66:16,23 |
| | 97:14,19 99:6 | **terms**  25:9 56:2 | 88:17 96:17 |
| **t**  4:7,22,22 | 99:23,23 108:5 | 99:19 | 104:15 105:18 |
| 58:24 117:3,3 | **technical**  69:1 | **testified**  7:21 | **third**  62:1 |
| **tabatha**  1:19 | **technology** | 16:8 17:1,3 | **three**  28:9 31:5 |
| 5:13 114:2,18 | 6:12 27:18 | 64:22 85:21 | 34:13,23 |
| **tabled**  77:25 | **ted**  3:3 6:12 | 91:14 103:23 | **tim**  34:24 35:5 |
| **take**  5:9,14,21 | 112:25 | 106:13 | 50:2 59:24,25 |
| 11:11 22:8 | **telephone**  9:5 | **testify**  79:24 | 60:4 69:19,22 |
| 41:2 45:1 46:6 | 11:6 | **testifying**  114:5 | 70:10,12,13,14 |
| 75:8 90:24 | **tell**  7:20 10:3 | **testimony**  8:19 | **time**  1:16 6:12 |
| 100:22 110:20 | 10:17,17 15:12 | 16:24 17:6,6 | 8:11 12:11 |
| 110:22 111:8 | 20:25 21:1,12 | 91:12 106:3 | 15:3,7 16:11 |
| 111:11,23 | 21:12 26:5,22 | 116:9,17 118:8 | 16:12 17:3 |
| 112:24 | 29:6 34:18 | **thank**  7:5,11,22 | 18:1,13,15 |
| **taken**  75:1 | 38:10 45:8,17 | 7:24 8:6 9:1,11 | 19:14,22 20:1 |
| 108:15 114:3 | 46:6 54:15 | 9:14 25:22 | 20:7 21:4,5,24 |
| 114:12 115:9 | 58:10,14 61:9 | 29:21 35:9 | 22:3 24:13 |
| **talk**  34:8 46:22 | 75:21 77:20 | 37:12 39:12 | 30:3 31:20,25 |
| 65:18 66:2 | 79:20 84:6 | 40:11 42:1 | 33:14 34:10,11 |
| 91:11 93:23 | 87:16,23 88:21 | 43:13 44:8 | 35:1 36:11,21 |
| **talked**  55:8 | 103:5 107:15 | 63:2 64:21 | 36:24 41:2,3 |
| 79:22 92:15 | 108:22 109:21 | 69:8 70:12,15 | 41:24 42:10,10 |
| 93:11 | 110:11 | 76:9 80:3 | 42:21,21 46:6 |
| **talking**  44:12 | **ten**  41:4 | 81:16 83:15 | 49:12,22 51:14 |
| 50:1 | **term**  37:6 | 93:4,9 100:21 | 53:9 54:6 |
| **team**  25:11 | | 112:5 | 67:22 71:9 |
| 28:16 31:10 | | | |
| 32:13,20,22 | | | |

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[time - understood]**                                                    Page 27

75:11 76:4
81:13 86:19,22
86:25 92:1
95:22 96:1,20
96:25 97:6
100:11 101:24
102:1,4,14,21
103:25 107:9
107:20 112:6
116:18
**timeframe**
116:8
**timelines**  75:3
**title**  24:3,5
25:22 28:5,11
33:13,20,25
34:3 48:15
67:5,17
**titles**  28:9
**today**  8:8,10,19
9:7 23:14
91:12 93:12
103:2 105:11
112:16
**today's**  10:7,14
28:22
**together**  73:14
**told**  26:23,24
45:22,24 48:15
75:17 88:17
110:3
**tom**  58:20,22
59:1,3,22,23
70:11 71:7

**took**  111:6,22
**top**  36:7 38:17
49:5,6 81:6
**totally**  21:1
**tracking**  54:24
**transcriber**
115:1
**transcript**  6:2
50:1 114:24
115:3,5 116:6
116:19 118:5,8
**transcriptionist**
114:8
**transmission**
33:5
**transmit**  37:20
38:20 83:5
**transmitted**
87:17,24
**transmitting**
37:25 41:12,18
42:5 43:15,19
44:13
**trap**  8:10
**treasury**  35:13
**trick**  8:10
**true**  39:14
50:22 51:14
114:9 115:5
118:8
**trustwave**
58:12
**truth**  7:20,20
7:21 21:13

**try**  102:13
**trying**  64:5
**turning**  96:17
**twenty**  24:1,1
24:15
**two**  10:23,23
11:3,5 15:2
17:3 22:8
29:22 48:25
49:3 50:6,8
72:10,12 76:3
**tynan**  34:24
35:5 50:3
59:24,25 60:4
69:19,22 70:13
70:14
**typed**  30:19
73:1,7
**typewriting**
114:7
**typically**  58:7

**u**

**u**  4:22,22
**ultimate**  50:19
65:7
**ultimately**
103:1
**uncovered**
95:22 109:2,18
109:20
**under**  6:5 17:3
42:6 48:9
55:15 60:12
64:14 75:22
81:9 84:1

85:22 88:7
**understand**  6:1
8:11,13,23
9:22 14:18,22
17:25 25:18
64:5 97:9
105:4,4,9,10
**understanding**
9:15,18 12:25
14:25 22:8
26:8,11,18,20
26:21 27:7,12
27:19 32:6
33:9 37:24
38:18,22,23,24
39:14,17 43:14
43:20,23,25
44:7 53:11
54:7,10,13,17
55:15 56:5
57:7,11 59:6
60:5,8,12,24
63:23 64:17
65:8 68:1,8
69:14 73:10
75:20 77:11
78:13 79:15
81:9,17,22
82:3 83:9,15
83:25 85:23
86:1,13 87:15
87:22 105:10
105:14 107:2,8
**understood**
8:13 21:4

David Ades                                      July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[understood - visa's]**                                    Page 28

32:17
**undertake**
57:21 71:9
108:3
**undertook**  60:6
**underwood**
2:15 4:4 6:19
6:20 7:2,7 9:9
9:16,20,23,24
10:16 12:4
13:2,6 14:6,7,8
14:10,12,15
15:1,10,14,21
15:25 16:14,24
17:8,16 18:6
18:16,23 19:3
19:8,16,24
20:3,17 21:11
21:17,24 22:10
23:6 27:10
32:2,8 33:3,8
37:22 38:1,7
39:6,11,16,21
40:17 41:15,21
42:8,13,16,17
43:17,21 44:1
44:3,5,9,11,19
45:16 50:7
51:6,12,17,21
52:5 53:13
54:9 55:6 56:8
57:5,9,17,23
58:6 59:10
60:2,16 61:2
62:16,17,23

63:2,10,18
64:4,24 65:10
68:3,12,14,15
69:12,17,24
74:15,23 75:7
75:14,18,23
77:2,19 78:17
78:20 79:9,12
81:11,20 82:2
82:4 83:13,18
83:22 84:4,9
84:14,24 85:2
85:7,12,16,19
86:3 87:13,20
88:2 89:2,6,12
90:21 91:2,8
92:2,8,11,14,23
93:4,7,10 94:5
94:8 98:20
100:21,23
104:23 105:18
106:6,11 107:5
107:10,21
108:25 109:6,7
109:16,25
110:13,21
111:4,7,15
112:9,10,13,19
112:20 113:3,5
116:1
**underwood's**
9:21 13:18
104:5
**undesirable**
63:16

**unencrypted**
31:12 32:24,25
33:6
**united**  1:1
**unsecure**  39:4
39:19 41:12
44:24 59:7,8
64:2,2 108:24
109:23 111:2
111:14
**unsecured**  39:4
44:17 45:14,20
109:15
**unsecurely**
87:25
**unsigned**  91:19
**url**  40:21
**use**  20:25 76:22
90:15,16,17
**used**  76:19
90:13 116:19
**uses**  6:4
**using**  69:3,5
97:5

| **v** |
|---|

**v**  1:7 7:15
49:22 116:4
117:1 118:1
**vague**  17:23
44:11
**variety**  27:16
**venture**  26:8
27:5,21
**verify**  116:9

**veritext**  5:14
116:14,23
**veritext.com**
116:15
**version**  30:20
**versus**  39:3
**vice**  24:4 25:24
28:6 33:15,21
34:1,2 48:12
**video**  5:9 6:12
6:17 11:7
113:4
**videoconfere...**
2:3,4,16 3:3,5,7
**videographer**
3:3 5:2 41:5,8
76:10,13 91:3
91:6 113:1,8
**videotaped**
1:13
**view**  63:15
**vii**  80:19
**violation**  38:4
39:20 41:13
**violations**
83:23
**virtually**  5:5
**visa**  4:16 36:16
36:22,25 81:14
81:15,16,19,24
82:5,9,21 83:5
83:10,16 84:3
85:24
**visa's**  82:24

David Ades
July 29, 2024
Slawin, Eric  Vs. Banc Of America Merchant Services, Et Al.

**[voluntary - zoom]**                                    Page 29

**voluntary**
  24:24
**vp**  49:23 50:2
  50:24 51:15
  52:24 53:25
  58:15
**vs**  5:17

**w**

**wait**  57:18
**waiting**  29:8
**want**  8:6 16:23
  17:12 18:10
  19:1,2,3 31:19
  65:21 78:22,24
  80:8 91:11,20
  96:19 97:9,16
  99:8,9 104:24
**wanted**  58:16
  89:25 98:12,22
  103:12
**way**  17:23 39:4
  47:7 49:22
  55:11,23,25
  61:3 92:21
**we've**  29:13
  40:5,5 63:19
  63:19 93:11
  95:22
**weaken**  62:9
**weeks**  9:24
  10:23,23 14:8
  15:2 17:3 22:8
  103:10
**went**  25:7
  41:24 63:25

**west**  2:18 115:2
  115:16
**wide**  75:25
**withdraw**
  21:17,19
**witness**  5:7,23
  5:25 6:1,21 7:7
  7:10,12,19
  13:14 14:16,20
  14:23 15:20,22
  16:25 17:14,17
  18:4,9,18,19,21
  20:19 21:6,12
  22:17,24 41:25
  44:6 61:17
  66:5 76:2,6,9
  77:7 80:16
  91:1 92:4,12
  93:1 94:3,6,7
  104:3,8 105:20
  114:4 116:8,10
  116:12,18
**witness's**  91:12
  105:19
**word**  48:6
**work**  20:20
  108:6
**worked**  35:12
  35:15,16,20,20
  50:14
**working**  25:5
**works**  41:4
**worries**  63:4
**would've**  34:19
  55:9 59:18

  60:9 70:7,8
  99:14
**write**  48:6
  86:16
**writing**  79:18
**written**  5:15
  6:9 10:11 23:9
**wrong**  100:16
**wrote**  31:18,23
  31:25 32:12,17
  38:25 39:15
  61:19 63:24
  64:16 86:16

**x**

**x**  4:1,7 114:24

**y**

**yeah**  9:6 20:12
  25:16 29:5
  36:2 40:8,10
  49:24 61:16
  67:1 68:6 72:1
  73:2 75:3,5
  76:4,6 81:6,22
  106:14
**year**  10:1 16:2
  16:19 51:25
  57:21
**years**  26:5
  34:18 37:2
  92:20
**yep**  9:12 10:5
  29:19 37:8
  39:17 46:15
  47:22 48:1,4

  48:11,22,22
  49:25 52:10,14
  52:19 53:21,24
  56:25 57:4,4
  61:13,17 65:19
  65:23,24,25
  66:1,5,25
  67:15,18,21
  68:7 69:9
  72:18 73:2
  75:9 80:13,16
  81:8,15 83:3,8
  83:8 91:1
  93:21 97:25
**york**  24:25 25:1
  25:2
**yost**  3:3 6:12
  112:25

**z**

**zoom**  8:7

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.