# EXHIBIT 33

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ERIC SLAWIN,

      Plaintiff,

v.

BANC OF AMERICA MERCHANT
SERVICES, LLC, s/h/a BANK OF
AMERICA MERCHANT SERVICES,
      Defendant.

Civil Action File
Case No. 1:19-cv-04129-AT

## DECLARATION OF MICHAEL SOLAN IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, Michael Solan, declare:

1.    I am over the age of twenty-one, and of sound mind, and am fully competent to make this Declaration.

2.    I have personal knowledge of the information set forth in this Declaration.

3.    I worked for Banc of America Merchant Services ("BAMS") from 2017 to 2019.

4.    While at BAMS, I served as an associate relations partner in BAMS's associate relations department, which is more colloquially referred to as the human resources ("HR") department.

1

5.      My job responsibilities at BAMS involved helping to investigate and to resolve a number of different employment-related matters, including investigations into alleged policy violations.

6.      My job responsibilities at BAMS further included documenting the investigations and reviews that I was working on.

7.      While employed at BAMS, I led the investigation that resulted in my recommendation to terminate Plaintiff Eric Slawin's ("Slawin") employment at BAMS.

8.      Slawin's job title while at BAMS was Vice President, Operations Control Officer.

9.      Slawin's position and job responsibilities at BAMS required that he appropriately handle proprietary, confidential, and/or sensitive information.

10.    Slawin's compensation at BAMS was not reduced prior to his termination.

11.    Slawin's benefits at BAMS were not reduced prior to his termination.

12.    Slawin's title at BAMS was not taken away prior to his termination.

13.    Slawin's duties and responsibilities at BAMS were not curtailed prior to his termination.

14.    Slawin's office was not changed prior to his termination.

15.    As a requirement of my job, I maintained contemporaneous notes of my investigation of the activities related to Slawin's termination from BAMS, including

2

information regarding Slawin's violations of BAMS's policies. A true and correct copy of my notes from my investigation into Slawin's conduct (the "HR Notes"), which has been redacted for privilege, was introduced during my deposition as Exhibit 51.

16.    I prepared the HR Notes at or near the events described therein.

17.    I prepared the HR Notes based on my personal knowledge of the activities recorded therein, or from information provided by others with knowledge of the recorded activities

18.    I prepared the HR Notes as part of my job responsibilities at BAMS.

19.    HR investigations and terminations, such as the one recorded in the HR Notes, were a regularly conducted activity at BAMS.

20.    Members of BAMS's HR department kept notes (including the HR Notes) as a regular practice in the course of investigations and terminations in which we were involved.

21.    On November 30, 2017, Dan Mong of BAMS's information security ("InfoSec") team emailed BAMS's HR at AssociateRelations@BankofAmericaMerchant.com indicating that First Data's data loss prevention ("DLP") team had detected multiple instances of Slawin sending emails from his work email address (Eric.Slawin@bankofamericamerchant.com) to his personal email address (eslawin116@gmail.com).

3

22.    As detected by First Data's InfoSec team, between August 25, 2017 and November 28, 2017, Slawin sent at least ten emails from his work email address to his personal email address.

23.    Further investigation revealed that Slawin sent more than just the ten emails initially identified by First Data's InfoSec team.

24.    Even after the decision was made to terminate Slawin, BAMS continued its investigation into the nature of the information that Slawin emailed to himself, including information beyond the ten emails initially identified by First Data's InfoSec team, in order to continue assessing the risks related to such information.

25.    I initiated my investigation into the conduct identified by First Data's DLP team on December 6, 2017.

26.    On December 6, 2017, I emailed First Data's DLP team requesting copies of the emails that Slawin forwarded to himself.

27.    In accordance with BAMS's standard practice for DLP incidents, on December 6, 2017, I communicated with Kendall, Slawin's manager at the time, regarding Slawin's apparent policy violation.

28.    On December 7, 2017, First Data's InfoSec team provided me with the incident reports for the ten emails that the DLP team identified as having been forwarded by Slawin to his personal email account.

29.    I reviewed the incident reports provided to me by First Data as part of my investigation. True and correct copies of the incident reports that were provided to me and that I reviewed as part of my investigation were introduced during my deposition as Exhibits 30 through 39.

30.    The incident reports contain a variety of information about the emails to which each report pertains, including a section on the message body of the forwarded email.

31.    I communicated with Kendall to understand the substance of the emails at issue.

32.    Multiple emails that Slawin sent to his personal account contained confidential information related to BAMS's business, including information related to the preparation of a self-identified audit issue ("SIAI") that Slawin was tasked with preparing.

33.    This SIAI pertained to concerns stemming from BAMS employees accessing and transmitting full primary account number ("PAN") data in a manner that was not compliant with Payment Card Industry ("PCI") Data Security Standards ("DSS").

34.    As part of my investigation, I further communicated with BAMS Asset Recovery about possible reasons why Slawin may have forwarded business emails to his personal address.

35.    For example, when BAMS HR personnel investigated DLP incidents, it was common for such incidents to result from BAMS employees emailing themselves documents for purposes of printing the materials for a client meeting, business travel, or in case of VPN issues.

36.    Based on my investigation, Slawin had a personal printer and cell phone, neither of which were issued by BAMS.

37.    Based on my investigation, Slawin did not travel frequently for work.

38.    Based on my investigation, Slawin worked from home except for one or two days each month.

39.    Based on my investigation, Slawin had no prior history of emailing himself confidential business documents.

40.    I have reviewed what has been marked as Exhibit 20 to the Deposition of Slawin in this matter, which depicts a June 2, 2017 email communication from Slawin that CC'd his personal email account. This email was not among the ten emails initially identified by First Data's DLP team, but I was aware of the email prior to the decision to terminate Slawin. Regardless, based on my review of the email, the email is nonspecific and does not meaningfully disclose the substance of confidential, proprietary, or sensitive information and would not necessarily raise concerns that the email itself violates BAMS's policies which may be why

6

it was not initially detected by First Data's DLP team and not initially escalated to HR for investigation.

41.    Because Slawin did not frequently travel for work, was able to print work documents directly from his work laptop, and did not have a history of routinely emailing himself documents despite primarily working from home, I determined it was unlikely that Slawin sent the emails flagged by First Data's DLP team in order to print them for work purposes.

42.    The lack of any prior history by Slawin of routinely forwarding business emails to his personal account was particularly concerning given the confidential and sensitive nature of a number of emails that Slawin sent to himself.

43.    When investigating DLP incidents, members of BAMS's HR department routinely interviewed the employee responsible for the conduct at issue.

44.    One of the purposes of interviewing the employee responsible for a DLP incident was to assess whether the employee had a defensible business justification for their conduct. Another purpose of interviewing the employee responsible for a DLP incident was to determine whether the employee had disclosed the information to anyone else. Another purpose of interviewing the employee responsible for a DLP incident was to provide any instructions to the employee that were necessary to protect the information at issue, including the potential return or destruction of the information at issue.

45.    If the employees were honest and candid during the investigation interview, provided a defensible business justification for their conduct and acknowledged the concern with their conduct, and followed any instructions from members of BAMS's HR department regarding the return or destruction of the information at issue, the policy violation would not necessarily result in the employee's termination.

46.    On December 8, 2017, I scheduled a call with Slawin and Kendall to interview Slawin concerning the emails that Slawin sent to his personal account.

47.    At the time, I anticipated that Slawin would provide a business justification for his conduct.

48.    Prior to the December 8, 2017 interview, I prepared a variety of probing questions to assess whether any business justification offered by Slawin for his conduct would validate why the behavior was exclusive only to emails/content, why the conduct occurred over multiple months, and whether the justification made sense when Slawin primarily worked from home.

49.    While Kendall attended the December 8, 2017 call as an observer, I conducted the interview and asked all questions.

50.    During the December 8, 2017 call, Slawin was provided an opportunity to explain why he sent the emails to his personal account.

51.    During the December 8, 2017 call, Slawin failed to provide any business need for sending the emails to his personal email account.

52.    Instead, Slawin's behavior during the December 8, 2017 call was apathetic, flippant, and unforthcoming in a manner that demonstrated a complete lack of care for his actions, the risks or ramifications of those actions to BAMS, and the risks or ramifications of those actions to his own job (about which he did not even ask).

53.    During the December 8, 2017 call, Slawin never expressed concerns related to noncompliance with PCI DSS by BAMS or related to any intent to act as a whistleblower with respect to any of the information within the emails that he forwarded to his personal account.

54.    During the December 8, 2017 call, Slawin confirmed that he did not usually send emails from his BAMS email address to his personal email address.

55.    During the December 8, 2017 call, Slawin represented that he did not send or save the emails anywhere other than his personal email address.

56.    Further details of my December 8, 2017 interview of Slawin are set forth in my HR Notes.

57.    After the December 8, 2017 call, I emailed Slawin to provide him a cease-and-desist letter from Meg Troughton, BAMS's Senior Vice President Associate General Counsel, as well as a declaration for Slawin to execute related to his

nondisclosure and handling of the information that Slawin emailed to himself.  A true and correct copy of the December 8, 2017 email that I sent to Slawin after the call is contained within the document introduced during my deposition as Exhibit 48.  I have reviewed what has been marked as Exhibits 8 and 9 to the Deposition of Slawin in this matter.  Exhibit 8 to Slawin's deposition is also a true and correct copy of my December 8, 2017 email, which I sent to Slawin after the call.  Exhibit 9 to Slawin's deposition is a true and correct copy of the attachments to my December 8, 2017 email, including the cease-and-desist letter and the proposed declaration.

58.    Based on Slawin's behavior during the December 8, 2017 call, I concluded there was a complete loss of trust that Slawin could continue to handle proprietary, confidential, and/or sensitive information, which was a core requirement of Slawin's position and employment at BAMS.  Kendall agreed with my conclusion.

59.    Based upon my personal investigation and evaluation of the facts at hand, I independently determined that Slawin violated the following BAMS policies: Slawin's Proprietary Rights and Information Agreement with BAMS, the Associate Handbook, the Information Security Policy (which incorporates and by extension includes the End User Policy), and the Code of Ethics.

60.    In sending confidential business emails to his personal email account, Slawin violated section 5 of his Proprietary Rights and Information Agreement with BAMS. A true and correct copy of the Proprietary Rights and Information Agreement was introduced during my deposition as Plaintiff's Exhibit 69.

61.    In sending confidential business emails to his personal email account, Slawin violated the Confidential Information section of the Associate Handbook. Slawin received and acknowledged the Associate Handbook while employed by BAMS. A true and correct copy of the Associate Handbook was introduced during my deposition as Plaintiff's Exhibit 72.

62.    In sending confidential business emails to his personal email account, Slawin violated the Information Security Policy and the incorporated End User Policy. A true and correct copy of the Information Security Policy was introduced during my deposition as Plaintiff's Exhibit 70. A true and correct copy of the January 23, 2017 version of the End User Policy is attached hereto as **Exhibit 1**. A true and correct copy of the November 30, 2017 version of the End User Policy is attached hereto as **Exhibit 2**.

63.    In sending confidential business emails to his personal email account, Slawin violated the Code of Ethics. Slawin received and acknowledged the Code of Ethics while employed by BAMS. A true and correct copy of the Code of Ethics was introduced during my deposition as Plaintiff's Exhibit 71.

11

64.    While the substance of the policies varies, together they establish a comprehensive set of expectations for BAMS employees regarding the handling of confidential company information in order to adequately protect it.

65.    While disclosing BAMS's confidential information to third parties without authorization or an adequate business justification would violate BAMS's policies, such disclosure is not necessary for a violation of BAMS's policies to occur.

66.    Mishandling BAMS's confidential information in a manner that compromises the measures undertaken to protect that confidential information—such as by sending BAMS's confidential information to unapproved email accounts beyond BAMS's control and outside of its firewall—violates BAMS's policies regardless of whether the confidential information is in fact disclosed to others.

67.    While employed at BAMS, Slawin received training on the Code of Ethics, the Associate Handbook, and global information security.  A true and correct copy of Slawin's training records at BAMS are attached hereto as **Exhibit 3**.

68.    Based on the interview of Slawin and on Slawin's policy violations, I recommended that Slawin be terminated to Maryann De Castro, my supervisor.

69.    I did not base my termination recommendation on any information besides Slawin's policy violations and the loss of trust that resulted from Slawin's conduct during his interview with me.

70.    The specific subject matter of the emails that Slawin sent to himself was irrelevant to my recommendation; instead, what mattered was that the emails contained BAMS's confidential, proprietary, and sensitive information.

71.    De Castro approved the recommendation on December 8, 2017.

72.    Also on December 8, 2017, I informed members of BAMS's management and InfoSec team that Slawin's employment had been terminated. For example, I communicated the decision to Dan Mong. This communication is evidenced in the December 8, 2017 email from Dan Mong to other members of the InfoSec team, which was introduced during my deposition as Exhibit 47.

73.    Slawin's employment with BAMS terminated effective December 8, 2017.

74.    Slawin's access to BAMS's systems terminated with his employment on December 8, 2017.

75.    I attempted to contact Slawin via telephone and instant message to inform him of the termination on December 8, 2017, but Slawin did not respond to my calls or messages on December 8, 2017. A true and correct copy of an email chain containing email communications between Slawin and me from December 8, 2017 through December 11, 2017 is contained within the document introduced during my deposition as Exhibit 48.

76.    BAMS's typical practice was to notify individuals of termination verbally before providing notice in writing.

77.    I attempted to call Slawin multiple times from December 8, 2017 to December 11, 2017.

78.    I emailed Slawin again on December 11, 2017 to attempt to schedule a call.

79.    Slawin responded to me on December 11, 2017. Slawin's response email confirms he was "unable to log into the network this morning." As such, Slawin was aware as of the time of that email that he was unable to access BAMS's systems.

80.    After Slawin's initial response on December 11, 2017, I again emailed Slawin on December 11, 2017 to schedule a call.

81.    Thereafter Slawin emailed me on December 11, 2017 to indicate that he would not sign the declaration. A true and correct copy of the email chain between Slawin and me that includes Slawin's December 11, 2017 emails is contained within the document introduced during my deposition as Exhibit 48.

82.    On December 12, 2017, Slawin and I engaged in further email exchanges in which Slawin finally agreed to speak with me over the phone. A true and correct copy of the December 12, 2017 email exchange between Slawin and me, which includes the emails regarding the scheduling of a call, is contained within the document introduced during my deposition as Exhibit 48.

83.    On December 12, 2017, I (joined by Kendall) spoke with Slawin over the phone and informed Slawin of his termination. Kendall attended the call as an observer, but I conducted the call.

84.    During the December 12, 2017 call, I further informed Slawin that BAMS still required Slawin to execute the declaration regarding the nondisclosure, return, and destruction of the confidential information, a version of which I emailed to Slawin on December 8, 2017 following my interview of Slawin.

85.    After the December 12, 2017 call, I emailed Slawin to provide him with a termination notice letter, an amended declaration letter, and the previously provided cease-and-desist letter.  A true and correct copy of the email chain containing my December 12, 2017 email that conveyed the termination notice letter was introduced during my deposition as Exhibit 50.  A true and correct copy of the termination notice letter dated December 12, 2017 was introduced during my deposition as Exhibit 45.

86.    The termination notice contains typographical errors identifying Slawin's date of termination as December 7, 2017, when in fact his date of termination is December 8, 2017.

87.    During the December 12, 2017 call, Slawin neither affirmed nor denied that he would execute the declaration concerning the nondisclosure, return, and destruction of the confidential information that Slawin sent to himself.

88.    Slawin never told me that he believed BAMS was engaged in fraudulent conduct; that BAMS was defrauding its customers; that BAMS was engaged in conduct that violated Sarbanes-Oxley, the Consumer Financial Protection Act, or the Dodd-Frank Act; or that Slawin was being placed in an inappropriate position by his managers. Additionally, throughout my investigation into this matter, no one ever told me that Slawin had expressed any of the foregoing.

89.    To the best of my knowledge, Slawin never told anyone in BAMS's HR that he believed BAMS was engaged in fraudulent conduct; that BAMS was defrauding its customers; that BAMS was engaged in conduct that violated Sarbanes-Oxley, the Consumer Financial Protection Act, or the Dodd-Frank Act; or that Slawin was being placed in an inappropriate position by his managers. Additionally, to the best of my knowledge, no one ever told anyone in BAMS's HR that Slawin had expressed any of the foregoing.

90.    BAMS maintained an Ethics hotline through which employees could anonymously report conduct that they believed was inappropriate or unethical.

91.    BAMS employees were provided an onboarding toolkit, which included contact information for the HR Service Center Associates Line, the Employee Assistance Program, and the Discrimination and Harassment Hotline, as well as instructions and links for accessing BAMS's Code of Ethics and Associate Handbook. I have reviewed what has been marked as Exhibit 4 to the Deposition

16

of Slawin in this matter.  Exhibit 4 to Slawin's deposition is a true and correct copy of the aforementioned onboarding toolkit.

92.    Brian Rubin did not have any role in the termination of Slawin's employment, and Brian Rubin did not make or recommend the decision to terminate Slawin's employment at BAMS.

93.    Leonard Ebel did not have any role in the termination of Slawin's employment, and Leonard Ebel did not make or recommend the decision to terminate Slawin's employment at BAMS.

94.    I do not know who BAMS's relationship manager for Home Depot was in 2017.  Regardless, that individual did not have any role in the termination of Slawin's employment at BAMS, and that individual did not make or recommend the decision to terminate Slawin's employment at BAMS.

95.    Treicia Brooks did not have any role in the termination of Slawin's employment, and Treicia Brooks did not make or recommend the decision to terminate Slawin's employment at BAMS.

96.    Sherra Grissom did not have any role in the termination of Slawin's employment, and Sherra Grissom did not make or recommend the decision to terminate Slawin's employment at BAMS.

97.    Natasha Collins did not have any role in the termination of Slawin's employment, and Natasha Collins did not make or recommend the decision to terminate Slawin's employment at BAMS.

98.    Mark Kendall did not make or recommend the decision to terminate Slawin's employment at BAMS, though he was supportive of HR's recommendation to terminate.

99.    The December 11, 2017 email in which Slawin refused to execute the declaration was sent by Slawin after BAMS made the decision to terminate him.

100.    The December 11, 2017 email in which Slawin refused to execute the declaration was sent by Slawin after the effective date of his termination.

101.    The December 11, 2017 email in which Slawin refused to execute the declaration does not use the word "fraud," does not mention any statute or regulation, and does not disclose any regulatory or statutory violations.

102.    I did not interpret the December 11, 2017 email in which Slawin refused to execute the declaration as reporting or objecting to any fraud, regulatory violation, or statutory violation.

[The balance of this page is intentionally left blank.]

FURTHER Declarant sayeth not,

I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed this ___7th___ day of January, 2025.

Michael Solan

## Solan Decl. – Exhibit 1

## (Jan. 23, 2017 End User Policy)

# Global End User Policy



| Document Information Coversheet | |
|---|---|
| **Document Administration and Contact Information** | |
| Document Owner: | Tom Fontana, EVP, Chief Risk Officer |
| Document Custodian: | Ali Davis, SVP, Risk Governance & Merchant Compliance |
| **Document Issuance and Revision Information** | |
| Originally Issued: | April 21, 2011 |
| Last Revised: | January 23, 2017 |
| Last Updated: | January 23, 2017 |

## Contents

1    Policy Overview ........................................................................................................................ 2
   1.1    Policy Statement ............................................................................................................. 2
   1.2    Policy Background / Rationale ........................................................................................ 2
   1.3    Policy Scope / Applicability ........................................................................................... 2
2    Roles and Accountabilities...................................................................................................... 4
3    Policy Requirements .............................................................................................................. 4
   3.1    Information Classification .............................................................................................. 4
   3.2    Sending Sensitive Information via Email ........................................................................ 4
   3.3    Automatic Encryption of Email ...................................................................................... 5
   3.4    Retention of Email ......................................................................................................... 5
   3.5    Access to Information Resources ................................................................................... 5
   3.6    Use of Non-Company Provided Information Systems and Mobile Devices .................... 5
   3.7    Use of External Storage Devices..................................................................................... 6
   3.8    Use of Company Information Systems and Network....................................................... 6
   3.9    Malware Protection ....................................................................................................... 6
   3.10    Validate Identify and Authorization before Sharing Information ................................. 7
   3.11    Passwords.................................................................................................................... 7
   3.12    Unattended Systems .................................................................................................... 8
   3.13    Acceptable Internet Use............................................................................................... 8
   3.14    Unacceptable Internet Use .......................................................................................... 9
   3.15    Social Media ................................................................................................................ 9
   3.16    Prohibited Activities..................................................................................................... 9
   3.17    Printed Information......................................................................................................10
   3.18    Clean Desk Work Environment ....................................................................................11
   3.19    Report Incidents and Policy Violations.........................................................................11
   3.20    Backup Data ................................................................................................................12
   3.21    Travel to High Risk Locations ......................................................................................12
   3.22    Acknowledgement .......................................................................................................12
   3.23    Information Security Awareness...................................................................................12
4    Controls and Monitoring .......................................................................................................12
5    Reporting and Escalation / Exceptions ..................................................................................12
6    Governance / Oversight.........................................................................................................13

CONFIDENTIAL

7    Related Documents ...........................................................................................................13

# 1    Policy Overview

## 1.1    Policy Statement

This document outlines the Bank of America Merchant Services End User Policy ("Policy") which sets forth the requirements for the use of information resources at Banc of America Merchant Services, LLC and its wholly owned subsidiaries, Bank of America Merchant Services Canada Corporation and BOFA Merrill Lynch Merchant Services (Europe) Limited (collectively "BAMS" or the "Company").

## 1.2    Policy Background / Rationale

Bank of America Merchant Services (BAMS), a joint venture between First Data (FDC) and Bank of America (BANA), is the entity responsible for overseeing the collection, processing, storage, and transmittal of many types of information – customer data, internal business documents, human resources data, etc. To manage the information, our parent companies, FDC and BANA, and BAMS maintain information resources including but not limited to computer systems, network equipment, storage devices, email, Internet sites, applications, telephones, communication devices, printers, copiers, fax machines, computer files, operating systems, and databases. BAMS has published this policy to extend the policies and standards from our parent companies as it applies to BAMS which includes:

    a.  Define acceptable use of information resources used by BAMS associates.

    b.  Preserve the confidentiality, integrity, and availability of its client and enterprise information.

    c.  Comply with customer agreements and contracts, government regulations, applicable law, industry and payment card association standards, and other BAMS policies, standards, practices, and procedures.

## 1.3    Policy Scope / Applicability

This policy applies to:

    a.  Associates and non- associates—contractors, consultants, seconded associates, authorized agents—of BAMS, its subsidiaries and relevant joint ventures, strategic alliances, and affiliates. Throughout this policy the word "User(s)" refers to associates and non-associates, and the "Company" refers to BAMS. References to non-associate workers herein, and the requirement that these workers comply with the terms of this Policy, does not imply or create an employment relationship with BAMS.

    b.  Information resources owned, operated, or in the possession of the Company whether located on Company premises or at an off-site location.

    c.  Company information, which includes and is not limited to customer data and information for which the Company is the custodian, internal business documents, human resources information, and any other information in all its forms, whether printed or written on paper, stored electronically, transmitted by post or electronic means, shown on films, cameras, projectors, interactive media, or spoken.

    d.  The Company's security administration of third-party service providers.

CONFIDENTIAL

Global End User Policy

For purposes of this Policy, the following definitions of key terminology apply.  Additional definitions are contained in the Global Information Security Policy.

| | |
|---|---|
| **Availability** | Ensuring timely and reliable access to information. |
| **Confidential** | Information that, if disclosed outside of the Company, could adversely impact the Company, its stakeholders, its business partners, and / or its clients and their customers. Only those persons who have a demonstrated need-to-know and approval by the asset or resource owner are to be granted access rights to CONFIDENTIAL information. This definition includes any specific information relating to cardholders, consumers, employees, or clients. Other examples include: customer information, financial data, purchasing information, confidential and audit reports, vendor contracts and operating procedures. |
| **Guideline** | A description that clarifies what should be done and how, to achieve the objectives set out in policies. Guidelines allow for user discretion and are a suggested course of action. |
| **Information** | Information [can be] printed or written on paper, stored electronically, transmitted by post or using electronic means, shown on video or spoken in conversation. |
| **Information Resources** | Anything that stores, processes or transmits information. For example, computers, printers, printed documents, USB storage devices, etc. |
| **Malware** | Short for malicious software, malware refers to software (code) inserted into a computer system and designed to do damage or other unwanted / undesirable actions. Common examples of malware include viruses, worms, Trojan horses, and spyware. |
| **Masking** | In the Payment Card Industry Data Security Standard PCI DSS, a process for blanking out parts of an account number.  Generally used when displaying or printing a report, a properly masked Primary Account Number (PAN) will only display the Banking Identification Number (BIN) and the last four (4) numbers of a PAN. |
| **Network Share / Folder** | Network Shares or Folders are a storage location available on shared computer systems and are accessed over the network. On most workstations, these shares are configured to be automatically accessible when the User logs into the network. On Windows machines, these can be seen by using "Windows Explorer" tool. Since letters A, C, D and E are usually used to denote local storage devices, network shares are usually denoted by letters F to Z. |
| **Truncation** | In PCI-DSS, a process that redacts part of the Primary Account Number.  In general, a Primary Account Number (PAN) is considered truncated if only the Bank Identification Number (BIN) and the last four (4) numbers of the PAN are stored.  **Truncation** is different than **Masking** as it affects the actual storage of PAN.  **Masking** only affects the display of PAN. |

CONFIDENTIAL

BAMS 00011238

## 2   Roles and Accountabilities

Roles and Accountabilities are outlined in the [Global Information Security Policy](Global Information Security Policy).

## 3   Policy Requirements

### 3.1   *Information Classification*

Users must consider whether information they intend to send outside the Company is sensitive; if so, the  User must encrypt the data. If the User does not know whether the information is sensitive, the User may  check with his or her supervisor, the BAMS Information Security Officer, or refer to the **BAMS Global Information Security Policy** located on BAMSZone.  If  the User does not have access to BAMSZone, the User should ask their supervisor for information on how to access the document mentioned above.  For more details on marking, handling, and destroying BAMS classified information, also see the **BAMS Global Information Security Policy** and the **Information Security  Classification and Handling Standard**.

| Examples of Confidential information include: | Examples of Restricted information include: |
|---|---|
| • Customer information<br>• Cardholder data<br>• Consumer data<br>• Social Security data<br>• Personally Identifiable Information<br>• Financial data<br>• Purchasing information<br>• Internal or Customer audit reports<br>• Contracts<br>• HR or personal employee information<br>• Payroll information<br>• Intellectual property<br>• Trade Secrets<br>• Source code | • Pending mergers or acquisitions documents<br>• Strategic corporate plans / financial information<br>• Pending lawsuit related information<br>• Pre-release quarterly / annual reports<br>• Communications with Law Enforcement<br>• Regulatory or otherwise sensitive audit reports.<br><br>*Note that there are additional precautions that must be taken for handling Restricted information which can be found in the Information Security Policy.* |

### 3.2   *Sending Sensitive Information via Email*

Sensitive information sent outside the Company via email must be encrypted.

To encrypt an email, insert the words "BAMSSecureMail:" in the Subject line of the message followed by  whatever other text you choose.

For example, an encrypted email subject line would read as "BAMSSecureMail: Test Update".

Emailing restricted information outside of the Company requires written approval from the appropriate  SVP and / or EVP.

### 3.2.1   Handling of PCI DSS Information

Associates must be aware that there are specific handling rules defined by PCI DSS for the handling of Primary Account Numbers (PAN) and Cardholder Data (CHD).

CONFIDENTIAL                                                                    BAMS 00011239

Unless required by a business process, PAN should be masked when being handled, and truncated in storage, especially when PAN is being handled via email.

In the rare instance that a business process requires full, non-truncated PAN, PCI requirements apply and PAN / CHD must be handled in accordance with PCI DSS, which includes, but is not limited to, strong encryption with appropriate key management processes in storage and in transit.

### 3.3  Automatic Encryption of Email

Note that BAMS automatically encrypts email to many identified domains. There is no additional setup  required by users to encrypt an email sent to one of these domains. A complete list of these domains is  found on BAMSZone.

If you frequently send confidential email to a specific domain that is not on the automatic encryption list,   BAMS Information Security Officer can add the domain to the list for you to improve your efficiency.

To have a frequently used domain added, please contact BAMS Information Security at *BAMSInfosec@bankofamericamerchant.com*.

### 3.4  Retention of Email

Email will be retained in accordance with the **Records and Retention Policy**.

In some cases, BAMS Legal has outlined a list of organizations that are permitted to retain emails for historical purposes in archives which may exceed the limits identified in the **Records and Retention Policy**.  Permissions to access email archives are controlled by the BAMS Information Security Officer based upon guidelines provided by BAMS Legal.

Requests to access email archiving solutions should be emailed to BAMS Information Security at *BAMSInfosec@bankofamericamerchant.com*.

### 3.5  Use of texting technologies for communications

BAMS Associates are prohibited from using texting technologies, from any device or application, to communicate with BAMS clients or BAMS prospective clients for sales or business solicitation purposes.

### 3.6  Access to Information Resources

Users must read, accept, and agree to this policy prior to accessing the Company's information resources and on a periodic basis thereafter, at the time of required Information Security awareness  training. In addition, Users are expected to only access information resources needed to perform work-  related tasks and / or assigned by their supervisor.

### 3.7  Use of Non-Company Provided Information Systems and Mobile Devices

BAMS business may only be conducted using Company issued equipment. The use of information systems or email accounts not provided by the Company and approved to handle BAMS Information is prohibited.

CONFIDENTIAL

BAMS 00011240

### 3.7.1   Use of personal mobile devices for access to Company systems

BAMS eMail, Calendar, and Contacts may be accessed by Associates that are participating in the company sponsored Bring Your Own Device ("BYOD") Policy.

Associates must sign the **BYOD Agreement** before participating in the BAMS BYOD program.  At all times, Associates must adhere to the **BYOD Agreement** and the **Personal Mobile Device Usage Policy** when handing BAMS Information on their personally owned devices.

## 3.8   Use of External Storage Devices

Users who have a business need to store Company information on an external storage device (e.g. USB  flash drives, external hard drives, pen drives, etc.) shall only do so using Company-approved and   provided encrypted external storage devices.

Users must document a business justification for their use of the Company-approved and provided encrypted external storage device at least annually and provide the business justification to the BAMS Information Security Officer along with a supervisory approval for the use of the External Storage Device.  The BAMS Information Security Officer will accept or deny requests or retention based upon the provided business justification.

Users may contact Associate Operations at workplace@bankofamericamerchant.com to request a Company-approved encrypted external storage  device.  The request must include a business justification.  When no longer needed, Users must return all storage devices back to the Associate Operations  team for destruction.

## 3.9   Use of Company Information Systems and Network

Minimal personal use of Company-provided desktops, laptops, telephones, printers, faxes, PDAs, and  other office equipment, is acceptable to the extent that such use does not interfere with or limit Company  business operations or violate any Company policy or **Code of Ethics**. Users should avoid storing or processing  personal data on Company information systems such as but not limited to processing personal taxes or applying for loans where associate's personally identifiable information is necessary to complete the task. Where allowed by local law, use of Company information  resources may be monitored. BAMS **Information Security Policies** and the **Code of Ethics** can be  found on BAMSZone.

BAMS issued equipment is intended only for use on the Company network.  Associates with laptops should avoid extended use of the Internet when not attached to the Company network as the protections are limited when not attached to the Company network.

## 3.10 Malware Protection

Malware is software that is designed to secretly load onto computer system software that is designed to corrupt or destroy data, log  keystrokes, transmit information and email surreptitiously, and replicate and distribute itself. Computer  malware can be introduced through external storage devices or other media (e.g., USB storage device,  CD, DVD, etc.), through email, or through web browsing of a malicious website.  End users are encouraged to:

- Never disable or attempt to disable anti-virus / anti-malware programs.
- Do not connect any non-Company provided storage media to Company computer systems.
- Avoid clicking on a link or opening an attachment in an unfamiliar email.

CONFIDENTIAL

- Be suspicious about opening an email from an unknown sender.
- Avoid downloading applications, media, or software from a non-Company approved website.

If Users suspect their system has been infected by malware, they must immediately stop using the  system and call BAMS Security and Privacy Hotline at 1-800-368-1000.

Additionally, Users must fully cooperate with the Company if notified of potential infection of their system or devices. Company reserves the right to immediately disconnect from the network any device  suspected of being infected with malware.

### 3.10.1 Phishing

Phishing is the attempt to acquire sensitive information such as usernames, passwords, and credit card details (and sometimes, indirectly, money), often for malicious reasons, by masquerading as a trustworthy entity in an electronic communication.

Associates must be aware email remains the primary delivery system for malware and social engineering attacks.

If you have received a suspicious email, do not click on any links.  Instead, send that email as an attachment to the Cybersecurity Investigations team using the email address: *phishing@firstdata.com* and copy *BAMSInfosec@bankofamericamerchant.com*.

## *3.11 Validate Identity and Authorization before Sharing Information*

Prior to providing information, Users must positively verify the identity of anyone who requests Company  information. Users must also verify that the requestor is authorized to access the information. If there is  any question regarding the identity of the person requesting information or their authorization to receive  the information, Users must obtain their supervisor's approval before providing any information.

## *3.12 Passwords*

User IDs and passwords uniquely identify a User and are required for a User's access to Company information resources. Users are accountable for any activity associated with their User IDs and passwords. User IDs and passwords must be managed in compliance with the Company's **Password  Standard**:

- Users must not under any circumstances give or hint at their password to another person.
- Users must not under any circumstances use another person's User ID or use group accounts for access to company resources.
- Users must avoid using the same passwords on multiple systems.  For example, using the same password on company and non-company systems would put access to the company in jeopardy should the non-company system become compromised.
- Users must change an initial or temporary password immediately after receipt or at any time a compromise of the password is suspected. A compromised password must be reported as a security incident. (See 2.18 for information on how to report security incidents.)
- Users must change their passwords every 60 days or when prompted by the system.
- Users must not use "remember my password" even if system prompts allow for this.

CONFIDENTIAL

BAMS 00011242

- Users must not write down or store unencrypted passwords.
- Users must follow the following password construction rules (if supported by the system):
- Passwords must be at least eight (8) characters in length.
- Passwords must not be easily predictable sequence of characters or consecutive repeating characters. Examples of unacceptable passwords: "X34JAN" in January, "X34FEB" in February, "AABBCC."
- Passwords must not solely consist of any word as it appears in a dictionary or use any easily guessable words. Examples: "BAMS", "Admin."
- Passwords must include characters from three of the following four categories: lowercase letters, uppercase letters, numbers and non-alphanumeric characters.
- In addition, the following guidelines for password construction may be used:
- Embed two or more numbers or special characters in between a word. Examples: "h4o5m&e1", "m$on5ey8"
- Use acronyms for sentences you can remember and mix them with numbers and special characters. Example: "&StIL2Eo4d" for "and sometimes I like to eat out for dinner"
- Misspell words by dropping letters or replacing them with similar sounding letters and mix them with numbers and special characters. Example: "WanaBrych@40!" for "Want to be rich at 40!"

### 3.13 Unattended Systems

To avoid theft or unauthorized access to Company resources:

- Users must not leave Company information resources unsecured or visible and unattended outside of Company facilities.
- Users must activate a password-protected screen saver by locking their computer when stepping away from their workstation.  Users can activate the BAMS password protected screen saver by pressing Ctrl-Alt-Del and choosing Lock this computer or by simply pressing the Windows key and L simultaneously.
- Users must log off / sign off or end sessions at the end of their work day.

### 3.14 Acceptable Internet Use

Access to the Internet is provided to facilitate and further the following objectives:

- Corporate business activity and communications.
- Research and development.
- Employee education related to job duties.
- General information gathering associated with being well informed about financial, business, governmental and public affairs.

The following is a list of acceptable uses for Company-provided Internet access:

- Accessing the Internet for Company business-related activity. Examples of websites generally  deemed appropriate include sites that:
  - Contain information with business-related data.
  - Contain information on software for business use.
  - Contain the price of stocks and the status of financial markets.
- Exchanges of email messages with a client or business partner for Company business-

CONFIDENTIAL

BAMS 00011243

related activity.

- Minimal use of Internet resources for personal reasons, such as web browsing. The minimal use of such resources for personal reasons is acceptable as long as the use does not violate any other parts of this policy, any other Company policy, or BAMS' Code of Conduct. Also, where allowed by law, web and email traffic is subject to monitoring and retention.

## 3.15 Unacceptable Internet Use

Users shall not use Company information resources for the following:

- For personal bulletin board messaging, updating wikis, or blogging (including audio and video blogs), podcasts and video podcasts.
- To join Internet chat-room conversations, mailing lists, unapproved file sharing sites, etc.
- To connect to social media for personal use.
- To access websites deemed by the Company Legal, Human Resources, and Risk and Compliance teams collectively to be inappropriate for the workplace. Such sites include, but are not limited to, pornography or other sexually explicit material, hate speech and other potentially violent or other criminal activity, and gambling.

Risk and Compliance, in consultation with Human Resources and Legal, may block without notice any sites deemed inappropriate.

Users should avoid attempting to access blocked websites. Risk and Compliance and Human Resources, where permitted by local law, may monitor reports on User attempts to access blocked websites and, in concert with management, initiate disciplinary action as deemed appropriate. Some websites that include objectionable content under this policy may not be blocked. Users are expected to exercise good judgment in evaluating whether particular website content is appropriate for the workplace. Questions should be referred to the User's supervisor.

In order to gain access to a restricted or blocked website that is needed for business use, Users must complete the Internet Access Request form located on BAMSZone.

## 3.16 Social Media

Social media can take many forms, including, but not limited to, micro-blogging sites, forums, blogs, customer review websites and bulletin boards; photo, video and document sharing sites; sites that enable professional networking; virtual worlds; and social games.

In order to gain access to a restricted or blocked website that is needed for business use, Users with a job or contractual duty that requires them to access social media must complete the Internet Access Request form located on BAMSZone.

## 3.17 Prohibited Activities

The following actions listed are prohibited unless the activity is part of the User's official Company job duty or is protected by local law. If deemed appropriate, Risk and Compliance in consultation with Legal and Human Resources may at any time deem User activity acceptable or prohibited.

Prohibited activities for Users include but are not limited to:

- Accessing, researching, or changing any account, file, record or application that is not

CONFIDENTIAL

Global End User Policy

required to perform their official job duties.

- Using any software or hardware on Company systems without the approval and / or assistance of the appropriate Company technical support team. For example: Adding unauthorized modem or wireless access card is prohibited.
- Using freeware, shareware, or public domain software on Company computers or other devices without supervisor and Risk and Compliance written approval.
- Moving or exchanging system components without authorization by the appropriate Company technical support team.
- Using instant messaging systems not provided by the Company.
- Lending or allowing access to Company information resources, including Company-provided devices, laptops and desktop computers by family members, friends, or non-Company employees.
- Modifying or tampering with hardware or software provided by the Company. Examples: Anti- virus software or firewalls may not be reconfigured or removed.
- Installing or using web server software on Company-provided laptop / workstation or other devices.
- Installing or using file sharing tools that incorporate Peer-to-Peer (P2P) or Bit Torrent clients and using, connecting to or transferring files using online storage.  Examples of these tools are but are not limited to: Dropbox, Google Drive, Skype, uTorrent, and Transmission
- Installing or using any remote access tool on Company-provided desktop / laptop or other devices, such as but not limited to GotoMyPC, Logmein, PC Anywhere, or VNC.
- Accessing non-Company email accounts from Company systems.
- Using email or any other electronic communication to send offensive, threatening, or otherwise inappropriate information that would be in violation of Company policies.
- Destruction of information required to be retained for Risk and Compliance investigations or other legal purposes.
- Accessing websites with inappropriate content for the workplace
- Knowingly introducing malware to Company systems.
- Knowingly installing or using pirated or any other unauthorized software or programs.
- Attempting to circumvent security controls, Risk and Compliance instructions, or this policy.

### 3.18 Printed Information

Users are responsible for the security of printed information and must follow these requirements:

- Users are only permitted to print to company owned printers and via company provided printing facilities.
- Users must retrieve all hard copy printouts from printers, fax machines, or distribution bins, as soon as the  documents are available for pick up.
- Place printed sensitive information in a designated locked shredder bin when no longer needed.  For information on document retention, read the Records Retention Policy found on BAMSZone.  Users who do not have access to BAMSZone must contact Human Resources or their supervisor  for information on how to access these policies.
- Where applicable, utilize the locked print feature on shared printers.
- Users must not leave printed or written Company sensitive information in shared areas,

CONFIDENTIAL                                                                    BAMS 00011245

such as  break rooms, conference rooms, whiteboards, etc.
- Classified information that is printed must be marked with its classification level and handled in  accordance with the **Classification and Handling Standard**.

## 3.19 Clean Desk Work Environment

The Company has adopted a Clean Desk practice for its work environments to reduce the risk of unauthorized access, loss, or damage to its information resources. Security requirements are:

- Cover printed sensitive information so that it is not readable by a passerby while away from their desk for a short period of time during business hours.
- When leaving the office for an extended period of time such as at the end of the workday, Users must secure all printed information, laptops, and other devices that contain sensitive Company information in a locked drawer or locked filing cabinet; use shred bins for disposal of sensitive documents; and remove sensitive printed materials left near printers and properly store or destroy them.
- Erase white board contents and clear materials out of meeting rooms upon end of meeting.
- On a periodic basis, Company management will perform clean desk walkthroughs of the work environment to ensure Associates' compliance with the Clean Desk practice.

## 3.20 Report Incidents and Policy Violations

Users must promptly report all security incidents to the Company Data Security and Data Privacy Hotline. The hotline is available 24 hours a day at the following numbers:

Inside or Outside of the United States: +1-800-368-1000.Examples of the types of incidents that must be reported via the Data Security and Data Privacy Hotline are:

- Lost, stolen, or otherwise unaccounted for Storage Devices or Portable Storage Devices
- Lost or misrouted BAMS Information (in printed or electronic format)
- Actual or attempted unauthorized access to BAMS Information, whether electronic or physical
- Improper disposal of BAMS Information
- Known or attempted phishing attack or social engineering scheme
- Crimes or other malicious acts against BAMS, its information, its client information or other corporate assets
- Any other similar incident potentially affecting BAMS Information
- Any significant event or incident which has the potential of having an impact on BAMS business (i.e. death of company officer, major business interruption, any event that warrants local/regional news coverage
- Any situation requiring extensive facility repair and relocation of business operations (i.e. power outage, flooding, hurricane etc.)

When calling the hotline, associates should be prepared to provide the following:

- Name or callers may remain anonymous if they prefer,
- What happened,
- Company name and office location,
- Current physical location, and
- Where you can be reached by phone. If not immediately available, a qualified individual

CONFIDENTIAL

will return the call to discuss the event.

### 3.21 Backup Data

The Company performs regular backups of data on its production computer systems. Desktops and laptops are not automatically backed up. Where possible, Users must back or copy their files onto their BAMS assigned network share or folder (see section 3 for definition). Where Users do not have an assigned network share or folder, they may contact the BAMS Technology Support group and request to be assigned a network share or folder.

### 3.22 Travel to High Risk Locations

Employees traveling to countries determined to be high risk from a security perspective should follow the **Travel to High Risk Locations** Standard. The standard lists the current countries deemed to be high risk and the necessary steps to take when traveling to these countries.

### 3.23 Acknowledgement

Users must read this policy and sign an acknowledgement stating that they understand this policy prior to use of any Company information resources. Thereafter, each employee must complete training annually to acknowledge their continued understanding and acceptance of this policy as a condition of employment. Non-Employee workers may be required under the terms of any service or vendor contract to complete such training as is required to be eligible to perform services to the Company.

### 3.24 Information Security Awareness

Users shall complete Information Security awareness training prior to use of any Company information resources and periodically as may be required by the Company thereafter.

## 4  Controls and Monitoring

BAMS monitors compliance with this Policy by reviewing metrics and reporting related to email usage and cybersecurity threats, including trending analysis and investigations where appropriate. Additionally, annual training and regular communications are administered to associates on information security requirements and processes.

## 5  Reporting and Escalation / Exceptions

Violation of this policy may be considered a breach of trust and may harm the Company as a result of improper handling, use, or disclosure of the Company's information.

Under the direction of the Executive Committee, Risk and Compliance has the authority to create and periodically modify standards and procedures that support this policy. Where possible, these will be enforced systematically.

A User's failure to comply with this policy or the standards and procedures derived from it, or to report a known violation, may lead to legal liability and disciplinary action. Associates who violate this policy may be subject to disciplinary action up to and including termination of employment. Non-Employee workers who violate this policy may have their assignment terminated. In addition, the Company may choose to involve appropriate law enforcement or regulatory authorities.

CONFIDENTIAL

BAMS Risk and Compliance, in conjunction with Operations, HR, Legal, and applicable management, and within local legal limits, may take any other action, including but not limited to restricting or revoking access privileges; confiscating Company-issued devices; inspecting, copying or removing data, programs or other resources; or any other action deemed by the Company as necessary or appropriate to protect Company information.

For BAMS associates, complying with this policy is a condition of continued employment at BAMS. Third-party agencies that provide resources to BAMS must comply with the requirements established in support of this policy.

However, nothing in this policy should be interpreted in a manner that would interfere with local, state or federal labor laws or regulations, including but not limited to Section 7 rights under the National Labor Relations Act ("NLRA"), or that the Company would take any adverse employment action in violation of such laws or regulations.

Users must read, accept, and agree to this policy prior to accessing BAMS information resources. In addition, Users are expected to access only those information resources that are needed to perform work-related tasks as assigned by their supervisor.

Exceptions to this policy must be handled in compliance with the **Security Policy Exception Standard**. Exceptions may be requested by contacting the Information Security Officer.

# 6 Governance / Oversight

The ERC is responsible for reviewing and approving this Policy, at a minimum, on an annual basis. Changes to this Policy, in advance of the annual review or an intra-year modification should be taken in response to activities such as a change in regulatory requirements or a process enhancement.

# 7 Related Documents

**BAMS Policies**

- Global Information Security Policy
- Health and Safety Policy
- Global Privacy and Business Confidential Information Policy
- Enterprise Data Management Policy
- Enterprise Third Party Risk Management Policy

**First Data Security Standards**

- Anti-Virus Standard
- Authentication Standard
- Information Security Classification and Handling Standard
- Information Security General Computing Standard
- IT Risk Management Standard
- Logging and Monitoring Standard
- Media Handling Standard
- Mobile Device Security Standard
- Password Standard
- Secure Remote Access Standard
- Security Testing Standard
- Travel to High Risk Locations Standard

CONFIDENTIAL

Global End User Policy

- User Account Management Standard
- Vulnerability Management Standard

CONFIDENTIAL

# Solan Decl. – Exhibit 2

## (November 30, 2017 End User Policy)

# Global End User Policy



| Document Information Coversheet | |
| --- | --- |
| **Document Administration and Contact Information** | |
| Document Owner: | Tom Fontana, EVP, Chief Risk Officer |
| Document Custodian: | Ali Davis, SVP, Risk Governance & Merchant Compliance |
| **Document Issuance and Revision Information** | |
| Originally Issued: | April 21, 2011 |
| Last Revised: | November 30, 2017 |
| Last Updated: | November 30, 2017 |

## Contents

1 Policy Overview ................................................................................................................ 2

   1.1 Policy Statement ...................................................................................................... 2

   1.2 Policy Background / Rationale ................................................................................. 2

   1.3 Policy Scope / Applicability .................................................................................... 3

2 Roles and Accountabilities ............................................................................................... 4

3 Policy Requirements ........................................................................................................ 4

   3.1 Information Classification ....................................................................................... 4

   3.2 Sending Sensitive Information via Email ................................................................ 5

      3.2.1 Handling of PCI DSS Information ................................................................. 5

   3.3 Automatic Encryption of Email .............................................................................. 5

   3.4 Retention of Email .................................................................................................. 6

   3.5 Use of texting technologies for communications ................................................. 6

   3.6 Access to Information Resources ........................................................................... 6

   3.7 Use of Non-Company Provided Information Systems and Mobile Devices ............ 6

      3.7.1 Use of personal mobile devices for access to Company systems ............... 6

   3.8 Use of External Storage Devices ............................................................................ 6

   3.9 Use of Company Information Systems and Network .............................................. 7

   3.10 Malware Protection ................................................................................................ 7

      3.10.1 Phishing ....................................................................................................... 7

   3.11 Validate Identity and Authorization before Sharing Information .......................... 8

   3.12 Passwords ............................................................................................................... 8

   3.13 Unattended Systems .............................................................................................. 9

   3.14 Acceptable Internet Use ........................................................................................ 9

   3.15 Unacceptable Internet Use .................................................................................... 9

CONFIDENTIAL

BAMS 00011250

3.16    Social Media ................................................................................................................ 10

3.17    Prohibited Activities ..................................................................................................... 10

3.18    Printed Information ...................................................................................................... 11

3.19    Clean Desk Work Environment ..................................................................................... 11

3.20    Report Incidents and Policy Violations ......................................................................... 12

3.21    Backup Data ................................................................................................................. 12

3.22    Travel to High Risk Locations ....................................................................................... 13

3.23    Acknowledgement ....................................................................................................... 13

3.24    Information Security Awareness ................................................................................... 13

4    Controls and Monitoring........................................................................................................ 13

5    Reporting and Escalation / Exceptions .................................................................................. 13

6    Governance / Oversight ......................................................................................................... 14

7    Related Documents................................................................................................................ 14

# 1    Policy Overview

## 1.1    *Policy Statement*

This document outlines the Bank of America Merchant Services End User **Policy ("Policy") which** sets forth the requirements for the use of information resources at Banc of America Merchant Services, LLC and its wholly owned subsidiaries, Bank of America Merchant Services Canada Corporation and BOFA Merrill Lynch Merchant Services (Europe) Limited (collect**ively "BAMS" or the "Company").**

## 1.2    *Policy Background / Rationale*

Bank of America Merchant Services (BAMS), a joint venture between First Data (FDC) and Bank of America (BANA), is the entity responsible for overseeing the collection, processing, storage, and transmittal of many types of information – customer data, internal business documents, human resources data, etc. To manage the information, our parent companies, FDC and BANA, and BAMS maintain information resources including but not limited to computer systems, network equipment, storage devices, email, Internet sites, applications, telephones, communication devices, printers, copiers, fax machines, computer files, operating systems, and databases. BAMS has published this policy to extend the policies and standards from our parent companies as it applies to BAMS which includes:

  a.    Define acceptable use of information resources used by BAMS associates.

  b.    Preserve the confidentiality, integrity, and availability of its client and enterprise information.

  c.    Comply with customer agreements and contracts, government regulations, applicable law, industry and payment card association standards, and other BAMS policies, standards,

CONFIDENTIAL

BAMS 00011251

Global End User Policy

practices, and procedures.

## 1.3  Policy Scope / Applicability

This policy applies to:

a.  Associates and non- associates—contractors, consultants, seconded associates, authorized agents—of BAMS, its subsidiaries and relevant joint ventures, strategic alliances, and affiliates.  Throughout this policy the word **"User(s)"** refers to associates and non-associates, and the **"Company"** refers to BAMS.  References to non-associate workers herein, and the requirement  that these workers comply with the terms of this Policy, does not imply or create an employment  relationship with BAMS.

b.  Information resources owned, operated, or in the possession of the Company whether located on  Company premises or at an off-site location.

c.  Company information, which includes and is not limited to customer data and information for  which the Company is the custodian, internal business documents, human resources information,  and any other information in all its forms, whether printed or written on paper, stored  electronically, transmitted by post or electronic means, shown on films, cameras, projectors,  interactive media, or spoken.

d.  The **Company's** security administration of third-party service providers.

For purposes of this Policy, the following definitions of key terminology apply.  Additional definitions are contained in the Global Information Security Policy.

| | |
|---|---|
| **Availability** | Ensuring timely and reliable access to information. |
| **Confidential** | Information that, if disclosed outside of the Company, could adversely impact  the Company, its stakeholders, its business partners, and / or its clients and  their customers. Only those persons who have a demonstrated need-to-know  and approval by the asset or resource owner are to be granted access rights  to CONFIDENTIAL information. This definition includes any specific  information relating to cardholders, consumers, employees, or clients. Other  examples include: customer information, financial data, purchasing  information, confidential and audit reports, vendor contracts and operating  procedures. |
| **Guideline** | A description that clarifies what should be done and how, to achieve the  objectives set out in policies. Guidelines allow for user discretion and are a  suggested course of action. |
| **Information** | Information [can be] printed or written on paper, stored electronically,  transmitted by post or using electronic means, shown on video or spoken in  conversation. |
| **Information Resources** | Anything that stores, processes or transmits information. For example,  computers, printers, printed documents, USB storage devices, etc. |
| **Malware** | Short for malicious software, malware refers to software (code) inserted into a  computer system and designed to do damage or other unwanted / undesirable  actions. Common examples of malware include viruses, worms, Trojan horses,  and spyware. |

CONFIDENTIAL                                                                         BAMS 00011252

Global End User Policy

| | |
|---|---|
| **Masking** | In the Payment Card Industry Data Security Standard PCI DSS, a process for blanking out parts of an account number.  Generally used when displaying or printing a report, a properly masked Primary Account Number (PAN) will only display the Banking Identification Number (BIN) and the last four (4) numbers of a PAN. |
| **Network Share / Folder** | Network Shares or Folders are a storage location available on shared  computer systems and are accessed over the network. On most workstations,  these shares are configured to be automatically accessible when the User logs  into the network. On Windows machines, these can be seen by using  **"Windows Explorer"** tool. Since letters A, C, D and E are usually used to denote  local storage devices, network shares are usually denoted by letters F to Z. |
| **Truncation** | In PCI-DSS, a process that redacts part of the Primary Account Number.  In general, a Primary Account Number (PAN) is considered truncated if only the Bank Identification Number (BIN) and the last four (4) numbers of the PAN are stored.  **Truncation** is different than **Masking** as it affects the actual storage of PAN.  **Masking** only affects the display of PAN. |

# 2   Roles and Accountabilities

Roles and Accountabilities are outlined in the <u>Global Information Security Policy</u>.

# 3   Policy Requirements

## 3.1   *Information Classification*

Users must consider whether information they intend to send outside the Company is sensitive; if so, the  User must encrypt the data. If the User does not know whether the information is sensitive, the User may  check with his or her supervisor, the BAMS Information Security Officer, or refer to the **BAMS Global Information Security Policy** located on BAMSZone.  If  the User does not have access to BAMSZone, the User should ask their supervisor for information on how to access the document mentioned above.  For more details on marking, handling, and destroying BAMS classified information, also see the **BAMS Global Information Security Policy** and the **Information Security  Classification and Handling Standard**.

CONFIDENTIAL

Global End User Policy

| Examples of Confidential information include: | Examples of Restricted information include: |
|---|---|
| <ul><li>Customer information</li><li>Cardholder data</li><li>Consumer data</li><li>Social Security data</li><li>Personally Identifiable Information</li><li>Financial data</li><li>Purchasing information</li><li>Internal or Customer audit reports</li><li>Contracts</li><li>HR or personal employee information</li><li>Payroll information</li><li>Intellectual property</li><li>Trade Secrets</li><li>Source code</li></ul> | <ul><li>Pending mergers or acquisitions documents</li><li>Strategic corporate plans / financial information</li><li>Pending lawsuit related information</li><li>Pre-release quarterly / annual reports</li><li>Communications with Law Enforcement</li><li>Regulatory or otherwise sensitive audit reports.</li></ul><br>*Note that there are additional precautions that must be taken for handling Restricted information which can be found in the Information Security Policy.* |

## 3.2   Sending Sensitive Information via Email

Sensitive information sent outside the Company via email must be encrypted.

To encrypt an email, insert the words **"BAMSSecureMail:"** in the Subject line of the message followed by  whatever other text you choose.

For example, an encrypted email subject line would read as **"BAMSSecureMail:** Test **Update".**

Emailing restricted information outside of the Company requires written approval from the appropriate  SVP and / or EVP.

### 3.2.1   Handling of PCI DSS Information

Associates must be aware that there are specific handling rules defined by PCI DSS for the handling of Primary Account Numbers (PAN) and Cardholder Data (CHD).

Unless required by a business process, PAN should be masked when being handled, and truncated in storage, especially when PAN is being handled via email.

In the rare instance that a business process requires full, non-truncated PAN, PCI requirements apply and PAN / CHD must be handled in accordance with PCI DSS, which includes, but is not limited to, strong encryption with appropriate key management processes in storage and in transit.

## 3.3   Automatic Encryption of Email

Note that BAMS automatically encrypts email to many identified domains. There is no additional setup  required by users to encrypt an email sent to one of these domains. A complete list of these domains is  found on BAMSZone.

If you frequently send confidential email to a specific domain that is not on the automatic encryption list,  BAMS Information Security Officer can add the domain to the list for you to improve your efficiency.

CONFIDENTIAL

To have a frequently used domain added, please contact BAMS Information Security at
*BAMSInfosec@bankofamericamerchant.com*.

## 3.4   Retention of Email

Email will be retained in accordance with the **Records and Retention Policy**.

In some cases, BAMS Legal has outlined a list of organizations that are permitted to retain
emails for historical purposes in archives which may exceed the limits identified in the **Records
and Retention Policy**.  Permissions to access email archives are controlled by the BAMS
Information Security Officer based upon guidelines provided by BAMS Legal.

Requests to access email archiving solutions should be emailed to BAMS Information Security at
*BAMSInfosec@bankofamericamerchant.com*.

## 3.5   Use of texting technologies for communications

BAMS Associates are prohibited from using texting technologies, from any device or
application, to communicate with BAMS clients or BAMS prospective clients for sales or
business solicitation purposes.

## 3.6   Access to Information Resources

Users must read, accept, and agree to this policy prior to accessing the **Company's** information
resources and on a periodic basis thereafter, at the time of required Information Security
awareness  training. In addition, Users are expected to only access information resources
needed to perform work-  related tasks and / or assigned by their supervisor.

## 3.7   Use of Non-Company Provided Information Systems and Mobile Devices

BAMS business may only be conducted using Company issued equipment. The use of
information systems or email accounts not provided by the Company and approved to handle
BAMS Information is prohibited.

### 3.7.1   Use of personal mobile devices for access to Company systems

BAMS eMail, Calendar, and Contacts may be accessed by Associates that are participating in the
company sponsored Bring Your Own Device ("BYOD") program.

Associates must sign the **BYOD Agreement** before participating in the BAMS BYOD program.  At
all times, Associates must adhere to the **BYOD Agreement** and the **Personal Mobile Device
Usage Policy** when handing BAMS Information on their personally owned devices.

## 3.8   Use of External Storage Devices

Users who have a business need to store Company information on an external storage device
(e.g. USB  flash drives, external hard drives, pen drives, etc.) shall only do so using Company-
approved and   provided encrypted external storage devices.

Users must document a business justification for their use of the Company-approved and
provided encrypted external storage device at least annually and provide the business
justification to the BAMS Information Security Officer along with a supervisory approval for the
use of the External Storage Device.  The BAMS Information Security Officer will accept or deny
requests or retention based upon the provided business justification.

CONFIDENTIAL

Users may contact Associate Operations at workplace@bankofamericamerchant.com to request a Company-approved encrypted external storage device. The request must include a business justification. When no longer needed, Users must return all storage devices back to the Associate Operations team for destruction.

## 3.9  Use of Company Information Systems and Network

Minimal personal use of Company-provided desktops, laptops, telephones, printers, faxes, PDAs, and other office equipment, is acceptable to the extent that such use does not interfere with or limit Company business operations or violate any Company policy or **Code of Ethics**. Users should avoid storing or processing personal data on Company information systems such as but not **limited to processing personal taxes or applying for loans where associate's personally** identifiable information is necessary to complete the task. Where allowed by local law, use of Company information resources may be monitored. BAMS **Information Security Policies** and the **Code of Ethics** can be found on BAMSZone.

BAMS issued equipment is intended only for use on the Company network. Associates with laptops should avoid extended use of the Internet when not attached to the Company network as the protections are limited when not attached to the Company network.

## 3.10 Malware Protection

Malware is software that is designed to secretly load onto computer system software that is designed to corrupt or destroy data, log keystrokes, transmit information and email surreptitiously, and replicate and distribute itself. Computer malware can be introduced through external storage devices or other media (e.g., USB storage device, CD, DVD, etc.), through email, or through web browsing of a malicious website. End users are encouraged to:

- Never disable or attempt to disable anti-virus / anti-malware programs.
- Do not connect any non-Company provided storage media to Company computer systems.
- Avoid clicking on a link or opening an attachment in an unfamiliar email.
- Be suspicious about opening an email from an unknown sender.
- Avoid downloading applications, media, or software from a non-Company approved website.

If Users suspect their system has been infected by malware, they must immediately stop using the system and call BAMS Security and Privacy Hotline at 1-800-368-1000.

Additionally, Users must fully cooperate with the Company if notified of potential infection of their system or devices. Company reserves the right to immediately disconnect from the network any device suspected of being infected with malware.

### 3.10.1 Phishing

Phishing is the attempt to acquire sensitive information such as usernames, passwords, and credit card details (and sometimes, indirectly, money), often for malicious reasons, by masquerading as a trustworthy entity in an electronic communication.

Associates must be aware email remains the primary delivery system for malware and social engineering attacks.

CONFIDENTIAL

BAMS 00011256

If you have received a suspicious email, do not click on any links.  Instead, send that email as an attachment to the Cybersecurity Investigations team using the email address: *phishing@firstdata.com* and copy *BAMSInfosec@bankofamericamerchant.com*.

## 3.11 Validate Identity and Authorization before Sharing Information

Prior to providing information, Users must positively verify the identity of anyone who requests Company  information. Users must also verify that the requestor is authorized to access the information. If there is  any question regarding the identity of the person requesting information or their authorization to receive  the information, Users must obtain their **supervisor's** approval before providing any information.

## 3.12 Passwords

User IDs and passwords uniquely identify a User and are required for a **User's** access to Company information resources. Users are accountable for any activity associated with their User IDs and passwords. User IDs and passwords must be managed in compliance with the **Company's Password  Standard**:

- Users must not under any circumstances give or hint at their password to another person.
- Users must not under any circumstances use **another person's User ID or use group** accounts for access to company resources.
- Users must avoid using the same passwords on multiple systems.  For example, using the same password on company and non-company systems would put access to the company in jeopardy should the non-company system become compromised.
- Users must change an initial or temporary password immediately after receipt or at any time a compromise of the password is suspected. A compromised password must be reported as a security incident. (See 2.18 for information on how to report security incidents.)
- Users must change their passwords every 60 days or when prompted by the system.
- **Users must not use "remember my password" even if system** prompts allow for this.
- Users must not write down or store unencrypted passwords.
- Users must follow the following password construction rules (if supported by the system):
- Passwords must be at least eight (8) characters in length.
- Passwords must not be easily predictable sequence of characters or consecutive repeating characters. Examples of unacceptable passwords: **"X34JAN" in January, "X34FEB" in February, "AABBCC."**
- Passwords must not solely consist of any word as it appears in a dictionary or use any **easily guessable words. Examples: "BAMS", "Admin."**
- Passwords must include characters from three of the following four categories: lowercase letters, uppercase letters, numbers and non-alphanumeric characters.
- In addition, the following guidelines for password construction may be used:
- Embed two or more numbers or special characters in between a word. Examples: **"h4o5m&e1", "m$on5ey8"**
- Use acronyms for sentences you can remember and mix them with numbers and **special characters. Example: "&StIL2Eo4d" for "and sometimes I like to eat out for dinner"**

CONFIDENTIAL

- Misspell words by dropping letters or replacing them with similar sounding letters and **mix them with numbers and special characters. Example: "WanaBrych@40!" for "Want to be rich at 40!"**

## 3.13 Unattended Systems

To avoid theft or unauthorized access to Company resources:

- Users must not leave Company information resources unsecured or visible and unattended outside of Company facilities.
- Users must activate a password-protected screen saver by locking their computer when stepping away from their workstation.  Users can activate the BAMS password protected screen saver by pressing Ctrl-Alt-Del and choosing Lock this computer or by simply pressing the Windows key and L simultaneously.
- Users must log off / sign off or end sessions at the end of their work day.

## 3.14 Acceptable Internet Use

Access to the Internet is provided to facilitate and further the following objectives:

- Corporate business activity and communications.
- Research and development.
- Employee education related to job duties.
- General information gathering associated with being well informed about financial, business, governmental and public affairs.

The following is a list of acceptable uses for Company-provided Internet access:

- Accessing the Internet for Company business-related activity. Examples of websites generally  deemed appropriate include sites that:
  - Contain information with business-related data.
  - Contain information on software for business use.
  - Contain the price of stocks and the status of financial markets.
- Exchanges of email messages with a client or business partner for Company business-related  activity.
- Minimal use of Internet resources for personal reasons, such as web browsing. The minimal use  of such resources for personal reasons is acceptable as long as the use does not violate any  other parts of this policy, any other Company policy, or BAMS' Code of Conduct. Also, where  allowed by law, web and email traffic is subject to monitoring and retention.

## 3.15 Unacceptable Internet Use

Users shall not use Company information resources for the following:

- For personal bulletin board messaging, updating wikis, or blogging (including audio and video blogs), podcasts and video podcasts.
- To join Internet chat-room conversations, mailing lists, unapproved file sharing sites, etc.
- To connect to social media for personal use.
- To access websites deemed by the Company Legal, Human Resources, and Risk and Compliance teams collectively to be inappropriate for the workplace. Such sites include,

CONFIDENTIAL

BAMS 00011258

but are not limited to, pornography or other sexually explicit material, hate speech and other potentially violent or other criminal activity, and gambling.

Risk and Compliance, in consultation with Human Resources and Legal, may block without notice any sites deemed inappropriate.

Users should avoid attempting to access blocked websites. Risk and Compliance and Human Resources, where permitted by local law, may monitor reports on User attempts to access blocked websites and, in concert with management, initiate disciplinary action as deemed appropriate. Some websites that include objectionable content under this policy may not be blocked. Users are expected to exercise good judgment in evaluating whether particular website content is appropriate for the workplace. Questions should be referred to the **User's** supervisor.

In order to gain access to a restricted or blocked website that is needed for business use, Users must complete the Internet Access Request form located on BAMSZone.

### 3.16 Social Media

Social media can take many forms, including, but not limited to, micro-blogging sites, forums, blogs, customer review websites and bulletin boards; photo, video and document sharing sites; sites that enable professional networking; virtual worlds; and social games.

In order to gain access to a restricted or blocked website that is needed for business use, Users with a job or contractual duty that requires them to access social media must complete the Internet Access Request form located on BAMSZone.

### 3.17 Prohibited Activities

The following actions listed are prohibited unless the activity is part of the **User's** official Company job duty or is protected by local law. If deemed appropriate, Risk and Compliance in consultation with Legal and Human Resources may at any time deem User activity acceptable or prohibited.

Prohibited activities for Users include but are not limited to:

- Accessing, researching, or changing any account, file, record or application that is not required to perform their official job duties.
- Using any software or hardware on Company systems without the approval and / or assistance of the appropriate Company technical support team. For example: Adding unauthorized modem or wireless access card is prohibited.
- Using freeware, shareware, or public domain software on Company computers or other devices without supervisor and Risk and Compliance written approval.
- Moving or exchanging system components without authorization by the appropriate Company technical support team.
- Using instant messaging systems not provided by the Company.
- Lending or allowing access to Company information resources, including Company-provided devices, laptops and desktop computers by family members, friends, or non-Company employees.
- Modifying or tampering with hardware or software provided by the Company. Examples: Anti- virus software or firewalls may not be reconfigured or removed.
- Installing or using web server software on Company-provided laptop / workstation or other devices.

CONFIDENTIAL                                                                                           BAMS 00011259

Global End User Policy

- Installing or using file sharing tools that incorporate Peer-to-Peer (P2P) or Bit Torrent clients and using, connecting to or transferring files using online storage.  Examples of these tools are but are not limited to: Dropbox, Google Drive, Skype, uTorrent, and Transmission
- Installing or using any remote access tool on Company-provided desktop / laptop or other devices, such as but not limited to GotoMyPC, Logmein, PC Anywhere, or VNC.
- Accessing non-Company email accounts from Company systems.
- Using email or any other electronic communication to send offensive, threatening, or otherwise inappropriate information that would be in violation of Company policies.
- Destruction of information required to be retained for Risk and Compliance investigations or other legal purposes.
- Accessing websites with inappropriate content for the workplace
- Knowingly introducing malware to Company systems.
- Knowingly installing or using pirated or any other unauthorized software or programs.
- Attempting to circumvent security controls, Risk and Compliance instructions, or this policy.
- The use of media devices in the workplace, including but not limited to still pictures, video and audio recording, is restricted. Any devices including handheld devices containing a media capture function or device that perform similar functions;  under no circumstances may utilized by an employee for the unauthorized capture, storage, or transmission of data classified as confidential or restricted (level 2 or above).

## 3.18 Printed Information

Users are responsible for the security of printed information and must follow these requirements:

- Users are only permitted to print to company owned printers and via company provided printing facilities.
- Users must retrieve all hard copy printouts from printers, fax machines, or distribution bins, as soon as the  documents are available for pick up.
- Place printed sensitive information in a designated locked shredder bin when no longer needed.  For information on document retention, read the Records Retention Policy found on BAMSZone.  Users who do not have access to BAMSZone must contact Human Resources or their supervisor  for information on how to access these policies.
- Where applicable, utilize the locked print feature on shared printers.
- Users must not leave printed or written Company sensitive information in shared areas, such as  break rooms, conference rooms, whiteboards, etc.
- Classified information that is printed must be marked with its classification level and handled in  accordance with the **Classification and Handling Standard**.

## 3.19 Clean Desk Work Environment

The Company has adopted a Clean Desk practice for its work environments to reduce the risk of unauthorized access, loss, or damage to its information resources. Security requirements are:

- Cover printed sensitive information so that it is not readable by a passerby while away from their desk for a short period of time during business hours.

CONFIDENTIAL                                                                                     BAMS 00011260

- When leaving the office for an extended period of time such as at the end of the workday, Users must secure all printed information, laptops, and other devices that contain sensitive Company information in a locked drawer or locked filing cabinet; use shred bins for disposal of sensitive documents; and remove sensitive printed materials left near printers and properly store or destroy them.
- Erase white board contents and clear materials out of meeting rooms upon end of meeting.
- On a periodic basis, Company management will perform clean desk walkthroughs of the **work environment to ensure Associates' compliance with the Clean Desk practice.**

## *3.20 Report Incidents and Policy Violations*

Users must promptly report all security incidents to the Company Data Security and Data Privacy Hotline. The hotline is available 24 hours a day at the following numbers:

Inside or Outside of the United States: +1-800-368-1000.Examples of the types of incidents that must be reported via the Data Security and Data Privacy Hotline are:

- Lost, stolen, or otherwise unaccounted for Storage Devices or Portable Storage Devices
- Lost or misrouted BAMS Information (in printed or electronic format)
- Actual or attempted unauthorized access to BAMS Information, whether electronic or physical
- Improper disposal of BAMS Information
- Known or attempted phishing attack or social engineering scheme
- Crimes or other malicious acts against BAMS, its information, its client information or other corporate assets
- Any other similar incident potentially affecting BAMS Information
- Any significant event or incident which has the potential of having an impact on BAMS business (i.e. death of company officer, major business interruption, any event that warrants local/regional news coverage)
- Any situation requiring extensive facility repair and relocation of business operations (i.e. power outage, flooding, hurricane etc.)

When calling the hotline, associates should be prepared to provide the following:

- Name or callers may remain anonymous if they prefer,
- What happened,
- Company name and office location,
- Current physical location, and
- Where you can be reached by phone. If not immediately available, a qualified individual will return the call to discuss the event.

## *3.21 Backup Data*

The Company performs regular backups of data on its production computer systems. Desktops and  laptops are not automatically backed up. Where possible, Users must back or copy their files onto their   BAMS assigned network share or folder (see section 3 for definition). Where Users do not have an   assigned network share or folder, they may contact the BAMS Technology Support group and request to   be assigned a network share or folder.

CONFIDENTIAL

Global End User Policy

### 3.22 Travel to High Risk Locations

Employees traveling to countries determined to be high risk from a security perspective should follow the **Travel to High Risk Locations** Standard. The standard lists the current countries deemed to be high risk and the necessary steps to take when traveling to these countries.

### 3.23 Acknowledgement

Users must read this policy and sign an acknowledgement stating that they understand this policy prior to use of any Company information resources. Thereafter, each employee must complete training annually to acknowledge their continued understanding and acceptance of this policy as a condition of employment. Non-Employee workers may be required under the terms of any service or vendor contract to complete such training as is required to be eligible to perform services to the Company.

### 3.24 Information Security Awareness

Users shall complete Information Security awareness training prior to use of any Company information resources and periodically as may be required by the Company thereafter.

## 4   Controls and Monitoring

BAMS monitors compliance with this Policy by reviewing metrics and reporting related to email usage and cybersecurity threats, including trending analysis and investigations where appropriate. Additionally, annual training and regular communications are administered to associates on information security requirements and processes.

## 5   Reporting and Escalation / Exceptions

Violation of this policy may be considered a breach of trust and may harm the Company as a result of improper handling, use, or disclosure of the Company's information.

Under the direction of the Executive Committee, Risk and Compliance has the authority to create and periodically modify standards and procedures that support this policy. Where possible, these will be enforced systematically.

A **User's** failure to comply with this policy or the standards and procedures derived from it, or to report a known violation, may lead to legal liability and disciplinary action. Associates who violate this policy may be subject to disciplinary action up to and including termination of employment. Non-Employee workers who violate this policy may have their assignment terminated. In addition, the Company may choose to involve appropriate law enforcement or regulatory authorities.

BAMS Risk and Compliance, in conjunction with Operations, HR, Legal, and applicable management, and within local legal limits, may take any other action, including but not limited to restricting or revoking access privileges; confiscating Company-issued devices; inspecting, copying or removing data, programs or other resources; or any other action deemed by the Company as necessary or appropriate to protect Company information.

For BAMS associates, complying with this policy is a condition of continued employment at BAMS. Third-party agencies that provide resources to BAMS must comply with the requirements established in support of this policy.

CONFIDENTIAL

BAMS 00011262

Global End User Policy

However, nothing in this policy should be interpreted in a manner that would interfere with local, state or federal labor laws or regulations, including but not limited to Section 7 rights under the National Labor Relations Act ("NLRA"), or that the Company would take any adverse employment action in violation of such laws or regulations.

Users must read, accept, and agree to this policy prior to accessing BAMS information resources. In addition, Users are expected to access only those information resources that are needed to perform work-related tasks as assigned by their supervisor.

Exceptions to this policy must be handled in compliance with the **Security Policy Exception Standard**. Exceptions may be requested by contacting the Information Security Officer.

# 6  Governance / Oversight

The ERC is responsible for reviewing and approving this Policy, at a minimum, on an annual basis. Changes to this Policy, in advance of the annual review or an intra-year modification should be taken in response to activities such as a change in regulatory requirements or a process enhancement.

# 7  Related Documents

**BAMS Policies**

- Global Information Security Policy
- Health and Safety Policy
- Global Privacy and Business Confidential Information Policy
- Enterprise Data Management Policy
- Enterprise Third Party Risk Management Policy

**First Data Security Standards**

- Anti-Virus Standard
- Authentication Standard
- Information Security Classification and Handling Standard
- Information Security General Computing Standard
- IT Risk Management Standard
- Logging and Monitoring Standard
- Media Handling Standard
- Mobile Device Security Standard
- Password Standard
- Secure Remote Access Standard
- Security Testing Standard
- Travel to High Risk Locations Standard
- User Account Management Standard
- Vulnerability Management Standard

CONFIDENTIAL                                                                                                        BAMS 00011263

# **Solan Decl. – Exhibit 3**

# **(Slawin Training Records)**

Produced in Native Format

CONFIDENTIAL

| Item ID | Item Type | Revision D: | Revision N | Title | User ID | Last Name | First Name | Middle Init | Completio | Completion | Completion Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MRM Trair | COURSE | 2/19/2016 | 1 | 2016 Model Risk Management Policy Training | D72166 | Slawin | Eric | | COURSE-A | Attended C | 3/4/2016 12:47 PM America/Chicago |
| Complianc | COMPLIANCE | 2/3/2016 1 | 1 | 2016 Anti-Money Laundering and Terrorist Financing | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 3/15/2016 11:19 AM America/Chicago |
| Complianc | COMPLIANCE | 2/10/2016 | 1 | 2016 Global Information Security | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 3/16/2016 04:30 PM America/Chicago |
| OCC MRA 1 | COURSE | 3/18/2016 | 1 | 2016 Third Party Training -- Vendor Management Progra | D72166 | Slawin | Eric | | COURSE-A | Attended C | 4/8/2016 01:18 PM America/Chicago |
| Complianc | COMPLIANCE | 4/21/2016 | 1 | 2016 Merchant-Contracted Third Party Service Provider | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 5/12/2016 09:57 AM America/Chicago |
| Complianc | COMPLIANCE | 4/18/2016 | 1 | 2016 Antitrust | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 5/12/2016 04:08 PM America/Chicago |
| Acknowled | ACKNOWLEDGEMENT | 2/2/2016 1 | 1 | 2016 Associate Handbook Acknowledgement | D72166 | Slawin | Eric | | ACKNOWL | Acknowled | 7/25/2016 04:08 PM America/Chicago |
| Complianc | COMPLIANCE | 6/24/2016 | 1 | 2016 Code of Ethics | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 7/26/2016 09:45 AM America/Chicago |
| Complianc | COMPLIANCE | 8/19/2016 | 1 | 2016 Treating Our Customers Fairly | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 9/13/2016 08:54 AM America/Chicago |
| Complianc | COMPLIANCE | 1/4/2017 C | 1 | 2017 What's the Risk? | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 2/10/2017 08:38 AM America/Chicago |
| Complianc | COMPLIANCE | 3/12/2017 | 1 | 2017 Antitrust | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 4/18/2017 06:49 PM America/Chicago |
| Complianc | COMPLIANCE | 3/12/2017 | 1 | 2017 Global Information Security | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 4/18/2017 09:27 PM America/Chicago |
| Marketing, | COURSE | 4/6/2017 C | 1 | Marketing Policy Training | D72166 | Slawin | Eric | | COURSE-PA | Passed Cou | 5/15/2017 02:38 PM America/Chicago |
| Complianc | COMPLIANCE | 5/18/2017 | 1 | 2017 Avoiding Bribery and Corruption | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 6/28/2017 06:28 PM America/Chicago |
| 2017AML | COMPLIANCE | 5/12/2017 | 1 | 2017 Global Anti-Money Laundering and Sanctions Prog | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 6/28/2017 08:36 PM America/Chicago |
| 2017Privac | COMPLIANCE | 5/14/2017 | 1 | 2017 Privacy and Sensitive Information | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 6/28/2017 09:00 PM America/Chicago |
| 2017 Mode | ACKNOWLEDGEMENT | 4/14/2017 | 1 | 2017 Model Risk Management | D72166 | Slawin | Eric | | ACKNOWL | Acknowled | 6/28/2017 09:16 PM America/Chicago |
| 2017AML | COMPLIANCE | 6/29/2017 | 4 | 2017 Global Anti-Money Laundering and Sanctions Prog | D72166 | Slawin | Eric | | COMPLIAN | Passed Cor | 6/29/2017 01:00 PM America/Chicago |
| 2017_Asso | WBT | 7/27/2017 | 1 | 2017 Associate Handbook Acknowledgement | D72166 | Slawin | Eric | | WBT-COMI | Web Basec | 8/11/2017 09:48 AM America/Chicago |
| 2017_COE | WBT | 7/24/2017 | 1 | 2017 Code of Ethics | D72166 | Slawin | Eric | | WBT-COMI | Web Basec | 8/11/2017 10:34 AM America/Chicago |
| 2017_ENT_ | WBT | 9/27/2017 | 1 | Global Third Party Risk Management Policy Training and | D72166 | Slawin | Eric | | WBT-COMI | Web Basec | 11/1/2017 03:16 PM America/Chicago |
| 2017_ENT_ | WBT | 9/28/2017 | 1 | 2017 Merchant-Contracted Third Party Service Provider | D72166 | Slawin | Eric | | WBT-COMI | Web Basec | 11/1/2017 04:12 PM America/Chicago |
| 2017_ENT_ | WBT | 10/30/201 | 2 | 2017 Treating Our Customers Fairly | D72166 | Slawin | Eric | | WBT-COMI | Web Basec | 11/1/2017 05:13 PM America/Chicago |