# EXHIBIT 39

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN,<br><br>    Plaintiff,<br><br>v.<br><br>BANC OF AMERICA MERCHANT SERVICES, LLC, s/h/a BANK OF AMERICA MERCHANT SERVICES,<br><br>    Defendant. | Civil Action File<br>Case No. 1:19-cv-04129-AT |

**DECLARATION OF MARK KENDALL IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Mark Kendall, declare:

1. I am over the age of twenty-one, and of sound mind, and am fully competent to make this Declaration.

2. I have personal knowledge of the information set forth in this Declaration.

3. In worked for Banc of America Merchant Services ("BAMS") from 2015 to 2018.

4. I became the manager of Plaintiff Eric Slawin ("Slawin") in September 2017, before which I was Slawin's peer.

5. On December 6, 2017, Michael Solan ("Solan") in BAMS's HR department communicated with me regarding apparent policy violations by Slawin.

1

6. Solan communicated with me to understand the substance of the emails that Slawin forwarded from his work account to his personal email account.

7. Multiple emails that Slawin sent to his personal account contained confidential information related to BAMS's business, including information related to the preparation of a self-identified audit issue ("SIAI") with which Slawin was tasked.

8. This SIAI pertained to concerns stemming from BAMS employees accessing and transmitting full primary account number ("PAN") data in a manner that was not compliant with Payment Card Industry ("PCI") Data Security Standards ("DSS").

9. Slawin sent a June 2, 2017 email to me in which he copied and pasted instant message communications complaining about Brian Rubin, who was Slawin's manager at the time. The substance of this email was sufficiently high level that it did not pose a concern about the mishandling of confidential business information. Although I was a recipient of the email, I was Slawin's peer at the time of the email and, in any event, did not notice that Slawin had cc'd his personal email.

10. I attended the December 8, 2017 call in which Solan interviewed Slawin about his policy violations. I attended as an observer, but Solan conducted the interview and asked all the questions.

11. During the December 8, 2017 call, Slawin was provided an opportunity to explain why he sent the emails to his personal account.

12. During the December 8, 2017 call, Slawin failed to provide any business need for sending the emails to his personal email account.

13. Instead, Slawin's behavior during the December 8, 2017 call was apathetic, flippant, and unforthcoming in a manner that demonstrated a complete lack of care for his actions, the risks or ramifications of those actions to BAMS, and the risks or ramifications of those actions to his own job (about which he did not even ask).

14. During the December 8, 2017 call, Slawin never expressed concerns related to noncompliance with PCI DSS by BAMS or related to any intent to act as a whistleblower with respect to any of the information within the emails that he forwarded to his personal account.

15. During the December 8, 2017 call, Slawin confirmed that he did not usually send emails from his BAMS email address to his personal email address.

16. During the December 8, 2017 call, Slawin represented that he did not send or save the emails anywhere other than his personal email address.

17. Based on Slawin's behavior during the December 8, 2017 call, I agreed with Solan that there was a complete loss of trust that Slawin could continue to handle proprietary, confidential, and/or sensitive information, which

was a core requirement of Slawin's position and employment at BAMS. Solan made the recommendation to terminate Slawin on December 8, 2017. Slawin was terminated that day, and he lost access to BAMS's systems on the same day.

18. On December 12, 2017, Solan and I had a call with Slawin over the phone to inform Slawin of his termination.

19. I attended the December 12, 2017 call as an observer, but Solan conducted the call.

20. During the December 12, 2017 call, Solan further informed Slawin that BAMS still required Slawin to execute the declaration regarding the nondisclosure, return, and destruction of the confidential information.

21. Even after the decision was made to terminate Slawin, BAMS continued its investigation into the nature of the information that Slawin emailed to himself, including information beyond the ten emails initially identified by First Data's InfoSec team, in order to continue assessing the risks related to such information. I provided Solan with a summary of the emails that Slawin sent himself on December 12, 2017 after the call with Slawin.

22. Slawin informed me that he often day traded during ordinary business hours while I was his peer.

23. Slawin was tasked with preparing a self-identified audit issue ("SIAI") related to the handling of full primary account ("PAN") data by David Ades's team.

24. Slawin did not timely initiate the SIAI related to the use of PAN data by Ades's team.

25. Slawin's delay in initiating the SIAI caused a corresponding delay in BAMS's ability to fully assess and remediate issues related to the use of PAN data by Ades's team.

26. Slawin failed to finalize the draft SIAI by the time of his termination.

27. The SIAI related to the use of PAN data by Ades's team continued after Slawin's termination.

28. I prepared the initial draft of the SIAI related to the use of PAN data by Ades's team on December 15, 2017.

29. I am unaware of anyone working on any of the PAN data SIAIs being terminated from BAMS due to their work on the same; moreover, aside from Slawin, I am unaware of any such individuals being terminated from BAMS for any reason.

30. It was not uncommon for SIAIs to be treated as confidential until the issue was fully assessed and appropriate remediation was determined such that it could be disseminated more broadly within BAMS.

31. I did not make or recommend the decision to terminate Slawin's employment at BAMS. Instead, because the termination was due to violations of BAMS's policies, the termination decision was made by BAMS's HR department.

FURTHER Declarant sayeth not,

I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed this 7th day of January, 2025.

_____
Mark Kendall