# EXHIBIT 40

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ERIC SLAWIN, | |
| Plaintiff, | Civil Action File |
| v. | Case No. 1:19-cv-04129-AT |
| BANC OF AMERICA MERCHANT SERVICES, LLC, s/h/a BANK OF AMERICA MERCHANT SERVICES, | |
| Defendant. | |

### DEFENDANT BANC OF AMERICA MERCHANT SERVICES'
### OBJECTIONS AND RESPONSES TO PLAINTIFF'S
### REQUESTS FOR ADMISSIONS

Defendant Banc of America Merchant Services, LLC, s/h/a Bank of America

Merchant Services ("**BAMS**" or "**Defendant**"), through undersigned counsel, serves

its Objections and Responses to Plaintiff Eric Slawin's ("**Plaintiff**" or "**Slawin**")

First Requests for Admissions (the "**Requests**"). Specifically, BAMS responds as

follows:

### RESPONSES AND SPECIFIC OBJECTIONS

**REQUEST 1.    This Court has subject matter jurisdiction over this**

**matter.**

RESPONSE:    Admitted.

**REQUEST 2.     This Court has personal jurisdiction over the Defendant.**

RESPONSE:     Admitted.

**REQUEST 3.     Defendant Banc of America Merchant Services, LLC ("BAMS"), is now known as JV Wind Down, LLC.**

RESPONSE:     Admitted.

**REQUEST 4.     Defendant/BAMS, now known as JV Wind Down, LLC ("BAMS"), is a limited liability company whose two members are:  FDS Holdings, Inc., a subsidiary of Fiserv, Inc. ("Fiserv"), and BAMS Solutions, Inc., an indirect subsidiary of Bank of America Corporation ("BOA").**

RESPONSE:     BAMS admits that it is a limited liability company whose two members are FDS Holdings, Inc., and BAMS Solutions Inc.

**REQUEST 5.     At all relevant times, Defendant/BAMS' business was to provide payment processing and related business support products and services to merchants and governmental organizations through a joint venture between subsidiaries of Fiserv and BOA ("Joint Venture").**

RESPONSE:     BAMS objects to this Request as it is unclear what time period Plaintiff is referring to when he states "at all relevant times." Subject to and without waiving the foregoing objections, BAMS admits that it provided payment processing

2

services, as well as related business support products and services, through First Data and that it was joint venture between FDS Holdings, Inc., and BAMS Solutions Inc.

**REQUEST 6.    The Joint Venture was dissolved effective July 1, 2020.**

RESPONSE:    Admitted.

**REQUEST 7.    The legal entity BAMS remains extant, but ceased all business activity effective July 1, 2020.**

RESPONSE:    Admitted.

**REQUEST 8.    Plaintiff was employed by Defendant from 2015 to 2017.**

RESPONSE:    BAMS admits that Plaintiff was employed by BAMS from December 7, 2015, through December 7, 2017.

**REQUEST 9.    BAMS terminated Plaintiff's employment as a result of an alleged policy violation.**

RESPONSE:    Denied.  Plaintiff's employment was terminated because he violated BAMS' policies by sending internal, confidential, business-related emails to his personal email address.

**REQUEST 10.    Defendant stated in its Initial Disclosures that, "Plaintiff's employment was terminated because he violated BAMS' policy by sending internal business-related emails to his personal email address."**

RESPONSE:    Admitted.

**REQUEST 11.    BOA is a publicly traded company.**

RESPONSE:    BAMS admits that Bank of America Corp. is a publicly traded company on the New York Stock Exchange.

**REQUEST 12.    Fiserv is a publicly traded company.**

RESPONSE:    BAMS admits that Fiserv is a publicly traded company on the NASDAQ stock exchange.

**REQUEST 13.    Fiserv is a Wisconsin corporation.**

RESPONSE:    Admitted.

**REQUEST 14.    Processing credit and debit card transactions involves the acquisition of and access to "Primary Account Number" ("PAN") data which is a key piece of information on consumers' credit or debit cards.**

RESPONSE:    BAMS admits that Primary Account Numbers (PAN) are unique identifiers located on credit and debit cards and are used to provide information about the individual cardholder. BAMS is without information or knowledge to

respond to what Plaintiff means by "key piece of information" on a consumers' credit or debit card, and as such denies that portion of the Request.

**REQUEST 15.    Given the vast number of debit and credit card transactions around the world on a daily basis involving a huge network of financial institutions, financial institutions and credit card processors have issued rules and standards regarding the security of transactional financial data including PAN data.**

RESPONSE:    BAMS objects to this Request as vague and over broad. Subject to and without waiving the foregoing objections, BAMS admits that certain rules and standards have been issued regarding how entities must store, process, or transmit cardholder information.

**REQUEST 16.    The PCI Security Standards Council has promulgated PCI Data Security Standards ("PCI DSS") for entities that store, process or transmit cardholder data to help protect the safety of that data.**

RESPONSE:    Admitted.

**REQUEST 17.    Visa and MasterCard issue security rules for their merchant customers.**

RESPONSE:    BAMS objects to this Request as vague and overly broad. Subject to and without waiving the foregoing objections, BAMS admits that Visa and

MasterCard promulgate PCI DSS compliance rules and publish such rules publicly on their websites.

**REQUEST 18.    Before it ceased business on July 1, 2020, Defendant provided payment processing and related business support products and services to merchants and governmental organizations.**

RESPONSE:    Admitted.

**REQUEST 19.    At all relevant times, Defendant provided payment processing and related business support products and services to merchants and governmental organizations.**

RESPONSE:    BAMS objects to this Request as it is unclear what time period Plaintiff is referring to when he states "at all relevant times." Subject to and without waiving the foregoing objections, BAMS admits that it provided payment processing services, as well as related business support products and services, through First Data to merchants and governmental organizations prior to July 1, 2020.

**REQUEST 20.    At all relevant times, Defendant's merchant customers were required to comply with applicable card organization rules, including PCI DSS.**

RESPONSE:    BAMS objects to this Request as it is unclear what time period Plaintiff is referring to when he states "at all relevant times." Subject to and without

waiving the foregoing objections, BAMS admits that those merchant customers who processed, stored, or transmitted cardholder data were required to comply with PCI DSS standards.

**REQUEST 21.    At all relevant times, Defendant provided payment processing services through First Data Corporation ("First Data") and sold or leased First Data's products, including card acceptance equipment.**

RESPONSE:    BAMS objects to this Request as it is unclear what time period Plaintiff is referring to when he states "at all relevant times." Subject to and without waiving the foregoing objections, admitted.

**REQUEST 22.    At all relevant times, Defendant marketed payment processing and related business support products and services to merchants and governmental organizations, including the sale of point-of-sale equipment that enabled the acceptance of card payments and received fees for the products and services it provided.**

RESPONSE:    BAMS objects to this Request as it is unclear what time period Plaintiff is referring to when he states "at all relevant times." Subject to and without waiving the foregoing objections, admitted.

**REQUEST 23.    At all relevant times, Defendant was the point of contact for certain chargebacks.**

RESPONSE:    BAMS objects to this Request as it is unclear what time period Plaintiff is referring to when he states "at all relevant times" or what he means when he references "certain chargebacks". Subject to and without waiving the foregoing objections, BAMS admits that at certain points in time it was the point of contact for some chargebacks.

**REQUEST 24.    Insofar as Defendant BAMS was the point of contact for certain chargebacks, BAMS was required to be PCI compliant.**

RESPONSE:    Denied.

**REQUEST 25.    BAMS received PAN data in connection with processing chargebacks.**

RESPONSE:    BAMS admits that at times it received PAN data in connection with processing chargebacks.

**REQUEST 26.    Defendant hired Plaintiff effective December 7, 2015 in the position of VP Operations Control Officer.**

RESPONSE:    Admitted.

**REQUEST 27.    During his employment, Plaintiff reported directly to Natasha Collins, Mark Kendall and Brian Rubin.**

RESPONSE:    BAMS admits that at different points in time during his employment with BAMS Plaintiff reported directly to each of the identified individuals.

8

**REQUEST 28.    Plaintiff reported to Natasha Collins was [sic] Senior Vice President, Head of Sales Operations and Planning in the summer of 2017.**

RESPONSE:    Admitted.

**REQUEST 29.    In the summer of 2017, Ms. Collins started to report directly to Tim Tynan, BAMS' CEO.**

RESPONSE:    Admitted.

**REQUEST 30.    Mark Kendall also reported to Ms. Collins.**

RESPONSE:    Admitted that for a period of time Mark Kendall reported to Ms. Collins.

**REQUEST 31.    In June 2017, Defendant's risk organization raised a question about the use and handling of primary account number data in certain situations.**

RESPONSE:    Denied.

**REQUEST 32.    In June 2017 David Ades, Executive Vice President, General Manager and Head of Sales at Defendant/BAMS, who reported to CEO Tim Tynan, sent an email regarding the question raised by the risk organization of the use and handling of primary account number data in certain situations.**

RESPONSE:    Admitted.

**REQUEST 33.**    **In his June 2017 email, Mr. Ades wrote that BAMS did not want to become PCI compliant because it is "very costly and time consuming."**

RESPONSE:    Denied.  In a June 13, 2017, email, Mr. Ades wrote that "We-BAMS don't want to go the route of PCI compliance as it would be very costly and time consuming."

**REQUEST 34.**    **In 2017 Sherra Grissom was a Senior Vice President, Business Controls Manager of Defendant/BAMS who reported to Thomas Fontana.**

RESPONSE:    Admitted.

**REQUEST 35.**    **In 2017 Thomas Fontana was BAMS' Chief Risk Officer and reported to CEO Tim Tynan.**

RESPONSE:    Admitted.

**REQUEST 36.**    **At the time of his termination, Mark Kendall was Plaintiff's immediate supervisor.**

RESPONSE:    Admitted.

**REQUEST 37.**    **Plaintiff discussed the issue of PCI data security standard compliance in a conversation with Walt Zimmerman, VP Business Consultant-Large Corporate.**

10

RESPONSE:     BAMS admits that Plaintiff mentioned the issue of PCI data security standard compliance in a conversation with Walt Zimmerman, VP Business Consultant - Large Corporate, as part of Plaintiff's overall job duties.

**REQUEST 38.      In 2017 Larry Brennan was a Senior Vice President for Merchant Data Security and Cyber Security.**

RESPONSE:     Admitted.

**REQUEST 39.      Mr. Solan and Mr. Kendall spoke with Plaintiff on December 8, 2017, concerning emails that he had sent from his BAMS email to his personal email.**

RESPONSE:     Admitted.

**REQUEST 40.      Mr. Solan and Mr. Kendall asked Plaintiff to sign a declaration affirming, among other things, that he had deleted all copies of emails he had sent from his BAMS email to this personal email.**

RESPONSE:     Admitted.

**REQUEST 41.      Mr. Solan contacted Plaintiff on December 11, 2017 to discuss the Declaration.**

RESPONSE:     BAMS admits that as part of his investigation into Plaintiff's security violations, Mr. Solan attempted to contact Plaintiff on December 11, 2017, to discuss the issue further, as well as to discuss the Declaration.

11

**REQUEST 42.    On December 11, 2017, Plaintiff sent an email to Mr. Solan stating that he would not sign the Declaration.**

RESPONSE:    BAMS admits that on December 11, 2017, Plaintiff sent an email to Mr. Solan refusing to sign the Declaration.

**REQUEST 43.    On December 12, 2017 Defendant/BAMS advised Plaintiff that his employment was terminated.**

RESPONSE:    Admitted.

**REQUEST 43.    Plaintiff's employment was terminated because he allegedly violated BAMs' policy by sending internal business-related emails to his personal email address.**

RESPONSE:    Denied.

**REQUEST 44.    Defendant BAMS sent Plaintiff a letter dated December 12, 2017, which reads in part:**

> **Secure handling of confidential, sensitive, and proprietary information is a core requirement of your role as an Operations Control Officer, as well as your employment at Bank of America Merchant Services.  Based on the findings of the investigation, as well as your answers during the investigative interview, we have concluded that your**

12

> **Information Security Violation was both significant and without justification, the result of which is termination of employment, effective December 7, 2017.**

RESPONSE:    BAMS admits that on December 12, 2017, Mike Solan sent Plaintiff a letter that, among other things, set forth the statement above.

**REQUEST 45.    Documents produced by Defendant bearing Bates Nos. 00000111-00000210 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 46.    Documents produced by Defendant bearing Bates Nos. 00000369-00000657 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 47.    Documents produced by Defendant bearing Bates Nos. 00000808-00000838 are authentic.**

13

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 48.    Documents produced by Defendant bearing Bates Nos. 00001022-00001065 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 49.    Documents produced by Defendant bearing Bates Nos. 00001070-00001110 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 50.    Documents produced by Defendant bearing Bates Nos. 00001112-00001129 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 51.**    **Documents produced by Defendant bearing Bates Nos. 00001131-00001139 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 52.**    **Documents produced by Defendant bearing Bates Nos. 00001142-00001208 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 53.**    **Documents produced by Defendant bearing Bates Nos. 00001209-00001212 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 54.**    **Documents produced by Defendant bearing Bates Nos. 00001213-00001225 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 55.    Documents produced by Defendant bearing Bates Nos. 00001227-00001243 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 56.    Documents produced by Defendant bearing Bates Nos. 00001245-00001259 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 57.    Documents produced by Defendant bearing Bates Nos. 00001263-00001264 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the admissibility of such documents at trial.

**REQUEST 58.    Documents produced by Defendant bearing Bates Nos. 00001267-00001269 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 59.    Documents produced by Defendant bearing Bates Nos. 00001270-00001272 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 60.    Documents produced by Defendant bearing Bates Nos. 00001273-00001275 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 61.    Documents produced by Defendant bearing Bates Nos. 00001276-00001284 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 62.    Documents produced by Defendant bearing Bates Nos. 00001286-00001288 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 63.    Documents produced by Defendant bearing Bates Nos. 00001289-00001305 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 64.    Documents produced by Defendant bearing Bates Nos. 00001313-00001352 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 65.    Documents produced by Defendant bearing Bates Nos. 00001354-00001408 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 66.    Documents produced by Defendant bearing Bates Nos. 00001410-00001520 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 67.    Documents produced by Defendant bearing Bates Nos. 00001521-00001621 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 68.    Documents produced by Defendant bearing Bates Nos. 00001623-00001640 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 69.     Documents produced by Defendant bearing Bates Nos. 00001642-00001648 are authentic.**

RESPONSE:     BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 70.     Documents produced by Defendant bearing Bates Nos. 00001643-00001648 are authentic.**

RESPONSE:     BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 71.     Documents produced by Defendant bearing Bates Nos. 00001650-00001784 are authentic.**

RESPONSE:     BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 72.     Documents produced by Defendant bearing Bates Nos. 00001786-00001963 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 73.    Documents produced by Defendant bearing Bates Nos. 00001967-00002199 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 74.    Documents produced by Defendant bearing Bates Nos. 00002234-00002250 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 75.    Documents produced by Defendant bearing Bates Nos. 00001448-00001450 are authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 76.    Documents produced by Defendant bearing Bates Nos. 00001450 is authentic.**

RESPONSE:    BAMS admits that the documents it has produced are authentic but reserves its right to object to the relevance or admissibility of such documents at trial.

**REQUEST 77.    Jill Poole appeared as corporate representative on behalf of BAMS at Mr. Slawin's deposition.**

RESPONSE:    BAMS objects to this Request as it is wholly irrelevant to any claim or defense in this litigation and as it is propounded solely to harass BAMS. Subject to and without waiving the foregoing objections, admitted.

**REQUEST 77.    At the time she appeared as BAMS' corporate representative, Ms. Poole was employed by FISERV.**

RESPONSE:    BAMS objects to this Request as it is wholly irrelevant to any claim or defense in this litigation and as it is propounded solely to harass BAMS. Subject to and without waiving the foregoing objections, admitted.

**REQUEST 78.    Sheila Lafferty appeared as corporate representative on behalf of BAMS at Mr. Slawin's deposition.**

RESPONSE:    BAMS objects to this Request as it is wholly irrelevant to any claim or defense in this litigation and as it is propounded solely to harass BAMS. Subject to and without waiving the foregoing objections, admitted.

**REQUEST 79.    At the time she appeared as BAMS' corporate representative, Ms. Lafferty was employed by FISERV.**

RESPONSE:    BAMS objects to this Request as it is wholly irrelevant to any claim or defense in this litigation and as it is propounded solely to harass BAMS. Subject to and without waiving the foregoing objections, admitted.

**REQUEST 80.    "Merchant Processing Agreements" set forth that BAMS along with BOA through its affiliate, Bank of America, N.A. are the "Servicer" providing to its customers, including retail merchants and municipalities, processing services regarding credit, debit and other delineated card transactions and service.**

RESPONSE:    Denied.

**REQUEST 81.    BAMS' direct handling of its customer credit and debit card refunds and chargebacks necessarily required BAMS to obtain, utilize, store, and convey PAN data.**

RESPONSE:    Denied.

**REQUEST 82.    BAMS was not PCI compliant.**

RESPONSE:    BAMS admits it was not PCI compliant as its business processes were structured and intended to operate without processing, storing, or transmitting cardholder data and, as such, BAMS was not required by the Card Brands to provide a PCI DSS Report on Compliance.

**REQUEST 83.    In or about July 2017 Mr. Moll described thousands of instances in which "PAN data was being mishandled by BAMS", noting that that figure was under-representative of all PCI violations since those numbers only reflected instances of emailing PAN data and did not include all instances in which PAN data was stored, processed or otherwise transmitted.**

RESPONSE:    Admitted.

**REQUEST 84.    In his June 2017 email, Mr. Ades wrote that BAMS was not PCI compliant.**

RESPONSE:    Denied.

**REQUEST 85.    BAMS had a merchant card processing services contract with the State of New Hampshire to provide credit card processing services for a contract period 2013-2018.**

RESPONSE:    BAMS admits that it had a merchant card processing services contract with the State of New Hampshire and that the term of the contract was from September 1, 2013 through June 30, 2018.

REQUEST 86.    In this contract with the State of New Hampshire, BAMS warranted that it would "ensure security on all data transmissions. . . . comply with all Payment Card Industry Standards, (PCI) and shall timely notify the designated State contact of all material changes in PCI Standards. Contractor shall remain in compliance with PCI DSS during the initial term of this Contract and any subsequent renewal period."

RESPONSE:    Denied.

REQUEST 87.    BAMS had a merchant services agreement with the State of Delaware that it had entered into in February 2017.

RESPONSE:    BAMS admits it entered into a Merchant Processing Agreement with the State of Delaware, Office of the State Treasurer on February 1, 2017.

REQUEST 88.    The merchant services agreement with the State of Delaware entered into by BAMS stated that BAMS was PCI complaint.

RESPONSE:    Denied.

REQUEST 89.    BAMS together Bank of America (BOA), under the name Bank of America, N.A. entered into agreements to provide payment processing services to its customers.

RESPONSE:    BAMS objects to this Request as vague and as not reasonably limited in time or scope, and as it is unclear what agreements Plaintiff is referring

to, during what time period, and with what customers. Subject to and without waiving the foregoing objections, denied.

**REQUEST 90.    Agreements entered into between BAMS and BOA under the name Bank of America, N.A. to provide payment processing services to customers were entered into and/or were operative during the time of Mr. Slawin's employment.**

RESPONSE:    BAMS objects to this Request as vague as it is unclear what sort of agreements Plaintiff is referring to and with what customers and as Plaintiff did not attach any agreements to his requests nor refer to any agreements by name. As a result and after reasonable inquiry, BAMS responds that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request.

**REQUEST 91.    Processing credit and debit card transactions involves the acquisition of and access to "Primary Account Number" ("PAN") data which is a key piece of information on consumers' credit or debit cards.**

RESPONSE:    BAMS objects to this Request as duplicative of Request 14. Subject to and without waiving the foregoing objections, BAMS admits that Primary Account Numbers (PAN) are unique identifiers located on credit and debit cards and are used to provide information about the individual cardholder. BAMS is without information or knowledge to respond to what Plaintiff means by "key piece of

information" on a consumers' credit or debit card, and as such denies that portion of the Request.

**REQUEST 92.     To any extent that BAMS handled, conveyed, came into possession of, and/or transmitted PAN date, BAMS was required to be PCI compliant.**

RESPONSE:    Denied.

**REQUEST 93.     BAMS was listed as a subsidiary of First Data Corporation as reflected in First Data Corporation's SEC filings and its financial information is included in those filings.**

RESPONSE:    BAMS objects to this Request as it is not clear what SEC filings Plaintiff is referring to or for what time period, nor has Plaintiff attached any such filings or pointed BAMS to any website to access such filings. As a result and after reasonable inquiry, BAMS responds that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request.

**REQUEST 94.     BAMS was listed as an affiliate of BOA and included in its financial statements filed with the SEC.**

RESPONSE:    BAMS objects to this Request as it is not clear what SEC filings Plaintiff is referring to or for what time period, nor has Plaintiff attached any such filings or pointed BAMS to any website to access such filings. As a result and after

reasonable inquiry, BAMS responds that the information it knows or can readily

obtain is insufficient to enable it to admit or deny this Request.

Respectfully submitted this 18th day of May, 2023.

*/s/ Aiten M. McPherson*
Christopher P. Galanek
Georgia Bar No. 282390
Chris.Galanek@bclplaw.com
Aiten M. McPherson
Georgia Bar No. 439899
Aiten.McPherson@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER
LLP**
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: 404-572-6600

*Counsel for Banc of America Merchant
Services, LLC, s/h/a Bank of America
Merchant Services*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ERIC SLAWIN,

     Plaintiff,

v.

BANC OF AMERICA MERCHANT
SERVICES, LLC, s/h/a BANK OF
AMERICA MERCHANT SERVICES,

     Defendant.

Civil Action File
Case No. 1:19-cv-04129-AT

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served a true and correct copy of the foregoing

**DEFENDANT BANC OF AMERICA MERCHANT SERVICES'
OBJECTIONS AND RESPONSES TO PLAINTIFF'S REQUESTS FOR
ADMISSIONS** on all counsel of record by email.

This 18th day of May 2023.

                    */s/  Aiten M. McPherson*
                    Aiten M. McPherson (Ga. Bar. 439899)