| Note Date | Note Associate | Note Details |
|---|---|---|
| 12/6/2017 | Solan, Michael John | DLP Escalation from FD InfoSec about Eric Slawin emailing to his personal email address internal org announcements regarding PCI non-compliance, which could cause reputational damage through unauthorized release. See below for the specific escalation: "Between 8/25/2017 and 11/28/2017, Eric Slawin forwarded 10 critical BAMS related emails to what appears to be a personal account, eslawin116@gmail.com. The first email dates back to 6/13/2017 where David Ades sent an email to a group of BAMS employees noting that BAMS was discovered as using full PAN data in client support situations, and debating whether BAMS should become PCI Compliant, or to have First Data dedicate a team for BAMS requests. The other emails were of the same topic, but with engagement with other BAMS VP's and SVP's, and the user also forwarded Excel documents which outline the course of action they plan to take to remediate the issue. It is uncertain why this user forwarded these emails to a Gmail account and what business purpose it serves." ---- Mike Solan responded asking for copies of the emails and attachments in question. DLP Escalation # is 27926883 |
| 12/7/2017 | Solan, Michael John | See attached for a summary email that ---- highlights the associate's key information, a summary of the issue, a summary of content of the emails he shared, a summary of the risks if this information is leaked, and an explanation of key attachments, as well as recommended next steps. |
| 12/8/2017 | Solan, Michael John | REDACTED - PRIVILEGED |
| 12/8/2017 | Solan, Michael John | Pre-Interview Notes: ....BAMS Asset Recovery confirmed that Eric Slawin's cell phone and printer are both personal devices, not issued by BAMS. A common reason that AR gets when investigating Information Security escalations are that associates email BAMS business information to their personal email addresses so that they can print materials for an upcoming client meeting or for business travel or in case of VPN issues. Eric having a personal printer means that very well might be the reason for the InfoSec Violation. But Eric works from home all but 1-2 days a month, and doesn't travel frequently for work, and has no prior history of emailing himself business documents. That excuse would be rationale if he frequently printed work documents to write on, or to build files for at his home office, but there's no prior history of him doing that. So the fact that he only sent himself highly confidential and sensitive information is very alarming. I also verified that Eric took and passed both the 2016 and 2017 Information Security Compliance Training which explicitly trains associates on how to treat confidential and sensitive information with respect to emailing, printing, and keeping hard copies. Going into this interview, we are preparing for his answer to be some kind of business justification such as "needing to print the documents for a home file or to write on during meetings", and have probing questions lined up to make sure that business justification validates why this behavior was exclusive only to emails/content related to this SIAI, and why it occurred over a 3 month timeframe, and whether that business justification even makes sense for a work from home associate. Next steps are for Mike Solan and Mark Kendall to interview Eric Slawin in the afternoon on Friday 12/8/17. |

| Date | Name | Notes |
|---|---|---|
| 12/8/2017 | Solan, Michael John | Interview Summary: At 4pm EST on Friday 12/8/17, Mike Solan (with Mark Kendall on the phone) interviewed Eric Slawin about the Information Security Escalation. The conversation began by asking if Eric was aware of the emails that I was referring to that he sent to his personal email address. He said "no, not really". I responded by asking if he normally sends emails from his BAMS device to his personal device. He said "no". I explained that the latest emails were as recently as last week, are you sure you don't remember what emails I'm referring to if this isn't a normal practice? He said, "yeah I kinda remember". I explained that the emails I'm referring to were all related to an SIAI and the related remediation efforts he was working on. Many of these emails had "confidential" and "sensitive" on them, and there were multiple exchanges where you acknowledged that any communications related to this subject were to be treated as confidential. I then asked if he has sent them externally anywhere other than his personal email address, or saved them anywhere other than his personal email (ie his personal computer's hard drive, etc.). "He said, not I just sent them to myself and that's it." "I frequently delete my personal emails too." I then asked why he sends them to himself. He responded by saying, "I don't know." I continued probing, and he then explained "you'd have to tell me about each one for me to remember why I sent them to myself." I explained one email that contained a spreadsheet of all 25 processes that were part of the SIAI. He knew the spreadsheet I was referring to, but could not articulate why he would need that email/spreadsheet on his personal email address or his personal computer. I opened it up broadly again, and asked why he would ever need to send BAMS business emails/content to his personal email address. He said "I don't know, sometimes I do research on my personal computer for work stuff an it helps having those emails." I asked if the websites he was doing research on were blocked by BAMS' firewall. He said "no, just a preference". I then asked if there were any other reasons why he would do this. He said, "I prefer the version of Word on my personal computer." After additional probing, those were the only answers/reasons we were able to get out of Eric. He answered most questions with "I don't know" or "I'm not sure". I then asked if he took the 2016 and 2017 Information Security compliance training that covers how to handle confidential and sensitive information. He responded by saying, "Yeah I guess so, now that you mention it." I asked if he remembered what they said about how to handle such information. He said "yeah kind of". At this point, since he continued to answer each question and treat this whole situation with apathy and without care, I wrapped up the conversation by saying, "Ok so since you claim that you haven't sent these documents anywhere, and since you claim that you delete your personal emails frequently, will you have any issue signing and returning a Legal Affidavit that you have not shared these emails/content anywhere else, and that you have deleted all records outside of BAMS devices and systems?" He replied "no, I wouldn't have an issue signing and returning that." I explained that he would also receive a Cease and Desist letter which highlights our expectations with the information he took. I closed by asking if there was anything else he wanted to say about this. He laughed and said just said "no". He didn't apologize for doing this, or clarify his intent. At this point the conversation ended and I emailed him the Legal Affidavit and Cease and Desist letter. Eric was completely apathetic on the phone throughout the entire conversation. He showed a complete lack of care in what he did, what the risks/ramifications were for BAMS, or his job. He didn't even ask if this would result in disciplinary action or termination. His lack of concern for BAMS' expectations around securing and protecting confidential and sensitive information, was evident. |
| 12/8/2017 | Solan, Michael John | After the interview ended, Mark Kendall and I connected and discussed his answers. We were both in alignment that, regardless of whether or not he signs the Legal Affidavit, there is a complete loss of trust that he can continue to handle proprietary, confidential, and/or sensitive information, which is a core requirement of both his position and employment at BAMS. He showed a complete lack of care for how confidential information is treated, failed to provide any business justification for his actions, failed to acknowledge understanding and care for the Information Security Compliance Training he took, and also failed to demonstrate any concern for committing a serious Information Security Violation. Based on all of this information, the decision (as approved by Mark Kendall (Mgr), Maryann D Castro (Associate Relations), Meg Troughton (Legal), and Lori Orrico (HRBP) is to terminate his employment, effective immediately, and request an immediate shutoff of all his systems access. I tried to instant message and call Eric so that we could discuss this decision, as well as next steps, but received no response. Eric also did not return the signed Legal Affidavit prior to our decision to terminate employment, nor did he return the signed Affidavit after the termination was executed on Friday 12/8/17. |
| 12/8/2017 | Solan, Michael John | Summary of Policies Eric Violated:   Eric's actions violated section 5 of his Proprietary Rights Agreement (attached), the entire Confidential Information section (including subsections A, B, and C) in the Associate Handbook, the Information Security Policy (section 3.32), and the Code of Ethics (section 1.B, 1. E, and 3.C).  Eric took compliance training in 2016 and 2017 acknowledging that he read and understood the Information Security Policy and Code of Ethics Policy. He also signed the Proprietary Rights Agreement acknowledging his understanding and acceptance of it. |
| 12/8/2017 | Solan, Michael John | Attached are the completed SuccessFactors training courses for Eric Slawin in 2016 and 2017. He completed multiple courses on Information Security, Sensitive Information, Code of Ethics, and Associate Handbook. |

343

CONFIDENTIAL

| Date | Name | Notes |
|---|---|---|
| 12/11/2017 | Solan, Michael John | On Monday 12/11/17, Eric has not answered or responded to multiple attempts to call him to explain the investigation results, as well as the termination notice, and the required next steps. [REDACTED - PRIVILEGED]. Eric did however respond with the attached email stating that he was not willing to sign Declaration statement for this reason: "I will not be executing the declaration provided to me on Friday December 8, 2017. This declaration was sent to my personal email address by an agent of Bank of America Merchant Services, Inc. Should I acknowledge the statements in the declaration by writing my signature on the document I could make it appear that I as a declarant agree with the actions taken by other parties to withhold information possibly demonstrated by and referenced as "BAMS' confidential business information" in the declaration statement. I have not at any time taken nor will I ever agree with any actions taken by parties either individually or acting as joint tortfeasors which implies, demonstrates, or creates a belief that information should be withheld that could damage the counter-parties of Bank of America Merchant Services, Inc. Also, in any matter as serious as actions taken by other parties to withhold information in conjunction with other parties or individually, I will not make a contemporaneous statement or create a statement about my own will when I am not available. I appreciate the opportunity to state my case but for reasons described above respectfully decline to sign the declaration." |
| 12/12/2017 | Solan, Michael John | On Tuesday 12/12/17, Eric agreed to speak verbally. A call was scheduled for 1:45pm EST. Mark Kendall and Mike Solan called Eric together and verbally informed him of the termination decision based on his Information Security Violation that was both significant and without justification. We also informed him of when he would receive his final paycheck, when benefits coverage would expire, etc. We then informed him of our continuing expectations regarding signing the declaration, destroying all copies of BAMS confidential information in his possession, and returning the company laptop in a reasonable timeframe. Deadline given for returning the signed declaration and laptop was December 19, 2017. Eric neither affirmed or denied that he was going to comply with these expectations, but he did affirm that he understood them. Mike Solan sent him a follow up email right afterwards at 2:06pm that explained everything that was verbally discussed, and also included the various appropriate attachments (Termination Notice Letter, Cease & Desist letter, Amended Declaration, Associate's Separation Checklist, and Pre-paid Shipping Label). |
| 12/19/2017 | Solan, Michael John | It has been confirmed that Eric Slawin dropped off his company issued laptop to FedEx today (12/19/17) for delivery on 12/20/17, which is in compliance with our requirements in his termination letter that he ship it no later than today. However he has not emailed the signed declaration document back to BAMS by today, which was his given deadline for doing so. Per the termination notice letter, Eric's refusal to sign and return it on or before December 19, 2017, will be taken as an indication that he has not deleted the confidential information and/or wrongfully distributed it. |
| 12/19/2017 | Solan, Michael John | Eric has not emailed the signed declaration document back to BAMS by the stated deadline in our termination notice letter to him (12/19/17), which was his given deadline for doing so. Per the termination notice letter, Eric's refusal to sign and return it on or before December 19, 2017, will be taken as an indication that he has not deleted the confidential information and/or wrongfully distributed it. |
| 12/20/2017 | Solan, Michael John | Eric submitted an official complaint to the Dept of Labor alleging retaliatory employment actions and claiming to be a Whistleblower. Attached is the Official Complaint. To reiterate, BAMS only knew of the extensive information security violations at the time of Eric's termination. To BAMS' knowledge, Eric had not "blown the whistle" by communicating his concerns to any media or regulatory body. In fact, Eric was on the team trying to remediate and fix the known PCI non-compliance issue. BAMS was not trying to, and did not take employment action, in an attempt to cover up this issue. BAMS took employment action because this associate violated 5 policies/agreements and could no longer be trusted in his role handling confidential/sensitive information. This Dept of Labor complaint has been passed along to BAMS Legal team to address. |

| Case Field | Case Value |
| --- | --- |
| ID | 708 |
| STATUS | Closed |
| LAST UPDATE BY | V87880 |
| LAST UPDATE DATE | 1/2/2018 6:08:26 PM |
| COMPLETE CANCELLED DATE | 1/2/2018 6:08:26 PM |
| REPORTING MEDIUM | Direct Contact-Control Group |
| ISSUE DATE | 11/28/2017 12:00:00 AM |
| CASE START DATE | 11/30/2017 12:00:00 AM |
| CASE END DATE | 12/20/2017 12:00:00 AM |
| CASE OWNER | V87880 |
| INITITIATOR | Information Security |
| INITIATOR ROLE | Control Group |
| SUBJECT | BAMS Associate |
| SUBJECT NAME | Slawin, Eric |
| SUBJECT ASSOCIATE ID | D72166 |
| SUBJECT DIVISION | Sales Ops Plan |
| SUBJECT SUB DIVISION | 156118-Sales Operations Planning |
| ISSUE CATEGORY | Handbook and Other Policy Violations |
| ISSUE SUB CATEGORY | Information Security |
| RESULTS | Termination |
| SUBSTANTIATED | Yes |
| ATTORNEY CLIENT PRIVELEDGE | Yes |

| Subject Data Field | Subject Data Value |
| --- | --- |
| DATA FROM DATE | Issue Date |
| EMPLOYEE ID | D72166 |
| FILE DT | 01/01/2018 |
| AGE | 49 |
| GENDER | Male |
| ETHNICITY | WHITE |
| SUPERVISOR NM | Kendall, Mark |
| DEPT CODE NM | 156118 : 156118-Sales Operations Planning |
| DIV CODE NM | Sales Ops Plan |
| EMP STATUS | T - Terminated |
| EMP TYPE | F - Full Time |
| PAY METHOD | S : Salary |
| JOB CODE NM | 410RO : Operations Control Officer-410RO |
| EMPL START DT | 12/07/2015 |
| SENIORITY DT | 12/07/2015 |
| JOB CODE | 41000132 |
| JOB TITLE | 410RO : Ops Control Officer |
| JOB TITLE DESCRIPTION | Operations Control Officer |
| FLSA CODE | E |

CONFIDENTIAL                                                                                                                                          BAMS 00009585