## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ERIC SLAWIN,

     Plaintiff,

v.

BANC OF AMERICA MERCHANT
SERVICES, LLC, s/h/a BANK OF
AMERICA MERCHANT SERVICES,

     Defendant.

Civil Action File
Case No. 1:19-cv-04129-AT

## DEFENDANT BANC OF AMERICA MERCHANT SERVICES, LLC'S
## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Respectfully submitted this 21st day of March, 2025.

         */s/ Brian M. Underwood, Jr.*
         Christopher P. Galanek
         Georgia Bar No. 282390
         E-Mail: chris.galanek@bclplaw.com
         Brian M. Underwood, Jr.
         Georgia Bar No. 804091
         E-Mail: brian.underwood@bclplaw.com
         **BRYAN CAVE LEIGHTON PAISNER LLP**
         One Atlantic Center, Fourteenth Floor
         1201 W. Peachtree Street, NW
         Atlanta, GA 30309

         *Counsel for Defendant Banc of America Merchant Services, LLC s/h/a Bank of America Merchant Services*

Slawin's response fixates on immaterial factual disputes regarding BAMS' PCI compliance status and its handling of that issue. The *material* questions are whether Slawin believed BAMS violated the CFPA or SOX; whether he engaged in a protected activity; and whether that activity contributed to his termination. BAMS is entitled to summary judgment on each issue, but refers the Court to its opening brief for additional arguments supporting summary judgment.

## I.    SLAWIN DID NOT BELIEVE BAMS VIOLATED THE ACTS.

Slawin's deposition testimony forecloses any finding that he subjectively believed BAMS violated either SOX or the CFPA:

> Q. And at what point in time did you learn or did you come to believe that any of the conduct occurring at BAMS violated any provision of the Consumer Financial Protection Act?
> A. That was after my termination.
> * * *
> Q. In what way did BAMS' noncompliance and your alleged -- or the alleged fraudulent misrepresentation that it was making to its customers regarding how it was handling credit card data violate the Consumer Financial Protection Act?
> A. I don't know the answer to that.
> Q. In what way did it violate Sarbanes-Oxley?
> A. Violate Sarbanes-Oxley? I don't know the answer to that. I don't know how that would violate Sarbanes-Oxley.

(ECF No. 175-4 at 162:17-21, 223:19-224:7.) This testimony dooms his claims.

First, because Slawin did not believe BAMS was violating the CFPA until after his employment, he cannot pursue a CFPA retaliation claim, full stop. Such a claim requires that he "actually believed [BAMS'] conduct violated the CFPA[.]"

1

*Veard v. F&M Bank*, 704 Fed. App'x 469, 474 (6th Cir. 2017). Slawin admitted plainly that he lacked such belief; thus, his CFPA claim is at its end.

Second, Slawin admitted he had no knowledge of how BAMS' conduct violated either the CFPA or SOX. (ECF No. 175-4 at 223:19-224:7.) This is not a simple failure to identify "the *specific provision*" at issue (which, in any event, goes to the objective prong rather than the subjective prong). *See Ronnie v. Office Depot, LLC*, 81 F.4th 1345, 1351 (11th Cir. 2023). And it is not a matter of "credibility" under the unreported *Van Elswyk v. RBS Securities, Inc.* decision, as Slawin's *deposition* never walks back or contradicts these unequivocal admissions. *See* 2017 WL 3431395, at *10 (D. Conn. Aug. 9, 2017). It is a straightforward, unconditional disclaimer of *any* belief in *any* violation of SOX or the CFPA.

Slawin cannot pursue retaliation claims unless he actually, subjectively believed BAMS violated SOX and the CFPA. *Ronnie*, 81 F.4th at 1351 ("[A] court must find that the employee *himself* believed that the alleged conduct violated SOX[.]" (original emphasis)); *Veard*, 704 Fed. App'x at 474 ("Veard must show that he actually believed F&M's conduct violated the CFPA[.]"). "A subjective belief means that the employee 'actually believed the conduct complained of constituted a violation of *pertinent law*.'" *Gale v. U.S. Dep't of Labor*, 384 Fed. App'x 926, 930 (11th Cir. 2010) (emphasis added). Slawin's conclusory assertions of "fraud" and a belief in regulatory "interest" are irrelevant: "The whistleblower protection

provision does not extend protection to every employee complaint about possible improper or even illegal conduct." *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, at *5 (N.D. Ga. Sept. 23, 2020) (quotations omitted). Irrespective of whether Slawin believed BAMS violated *other* laws, he cannot proceed unless he believed BAMS violated *pertinent* law—i.e., the CFPA and SOX. Because he admitted in deposition that he has no such knowledge of how either pertinent law was violated, his claims cannot proceed.

## II.    A REASONABLE PERSON WITH SLAWIN'S EXPERIENCE WOULD NOT BELIEVE A VIOLATION OCCURRED.

Slawin's claims further fail because no one with Slawin's extensive background in the financial industry would reasonably believe BAMS violated either the CFPA or SOX, let alone committed "fraud." *See Ronnie*, 81 F.4th at 1351 ("[A] court must find . . . that a reasonable person would believe the conduct violated SOX."); *Veard*, 704 Fed. App'x at 474 ("Veard must show . . . a reasonable person in his position would have believed F&M violated the [CFPA].").

> [W]e employ a totality of the circumstances test based on knowledge available to a reasonable person in the same factual circumstances—and with the same training and experience—as the complainant. Relevant to the totality of the circumstances is whether the employer acted with the requisite scienter, whether the misstatement was material, whether the misstatement was relied upon, and whether it yielded economic loss.

*Ronnie*, 81 F.4th at 1351.

Under these standards, Slawin could not reasonably believe BAMS was engaged in fraud or any violation of pertinent law. Starting with the obvious: PCI compliance is not a government requirement, and Slawin admitted as much: "Q. It's not a government requirement, correct? A. Not to my knowledge." (ECF No. 175-4 at 179:14-15.) Instead, PCI compliance is a *contractual* obligation. (*E.g.*, *id.* at 179:16-21.) Even if he could contradict this testimony, Slawin points to no authority that PCI compliance is required by or enforced by the federal government.[1] In addition, Slawin is a veteran of the financial industry, has considerable knowledge of what is (and is not) fraud, was aware of the differences between fiduciary relationships and arms-length commercial ones, and developed familiarity with the merchant contracts addressing PCI compliance (contracts which indemnified merchants for losses resulting from noncompliance). (ECF No. 182 at 5-6; ECF No. 175-4 at 193:13-194:4; ECF 176-15 at §§ 24.7, 27.2.)

These circumstances foreclose a reasonable belief in a violation of either the CFPA or SOX.[2] At its core, Slawin's theory about BAMS' misconduct is entirely

---

[1] Slawin argues PCI requirements are "industry *standards* to regulate . . . card processing," and because the CFPB also regulates "financial data processing," then PCI compliance is under the CFPB's jurisdiction. (ECF No. 182 at 16-17.) This strains credulity: a contractual obligation does not become a regulatory one simply because the contract shares a subject matter under an agency's purview.

[2] Additionally, as to SOX, the analysis "must be considered in the context of what is required to establish shareholder fraud," which "at a minimum" requires "an objectively reasonable belief that the company intentionally misrepresented or omitted certain facts **to investors**[.]" *Cruzan*, 2020 WL 10574160 at *6 (emphasis

contractual: that BAMS made various data security warranties in agreements with commercial merchants, allegedly did not fulfill those warranties, and purportedly did not disclose the issue. To quote Slawin's response: "Since the MSA's required BAMS to be PCI compliant, its failure to acknowledge that it was not, amounted to fraud by omission . . . ." (ECF No. 182 at 14-15.) It is a bedrock principle of law that "there must be an obligation to disclose before the defendant can be held liable for concealing material information." *E.g.*, *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 2005 WL 8154528, *12 (N.D. Ga. Sept. 14, 2005) (discussing principle in context of Georgia law). No one with Slawin's experience would think such duty existed between arms-length commercial parties, and "a reasonable person in Plaintiff's position could not have believed that a potential breach of the contractual provision Plaintiff cites could constitute fraud . . . rather than a mere breach of contract[.]" *Cruzan*, 2020 WL 10574160 at *12.

Last, with or without a contract, any belief BAMS committed fraud was patently unreasonable. While Slawin says "that BAMS never represented that it was PCI compliant misses the point," (ECF No. 182 at 14), that is *the entire* point. As Slawin repeatedly notes, BAMS directed merchants to information regarding First Data's PCI compliance; moreover, Slawin was instructed to do so. (*E.g.*, ECF No.

---

added) (quotations omitted). Slawin's only concerns were about downstream impacts on the merchants' "bottom line" which could affect shareholder earnings, not that any representations were being made to shareholders. (ECF No. 182 at 15.)

182 at 4, 6, 8, 10, 18.)  Slawin does not explain (because it is inexplicable) how merchants who received *First Data's* certificate of compliance could be misled as to whether or not *BAMS* was independently PCI compliant.  Any purported concern about "fraud" was therefore both unreasonable and unfounded.

## III.  SLAWIN'S CONCLUSORY ASSERTIONS WERE NOT A PROTECTED ACTIVITY.

Slawin bears the burden of showing that those who made the termination decision were aware he engaged in protected conduct.  *See Thomas v. Tyco Int'l Mgmt., Co., LLC*, 416 F. Supp. 3d 1340, 1363 (S.D. Fla. 2019).  They were not.

First, the only people who had *any* connection to Slawin's termination (in a decision-making capacity or otherwise) were BAMS' HR department (Solan and De Castro), BAMS' legal department, and Kendall.  (ECF No. 175-4 at 184:21-185:6, 187:5-192:1, 200:9-201:25, 215:24-220:13; ECF No. 175-16 at 111:19-112:10, 120:12-124:2; ECF No. 176-4 at ¶¶ 92-98; ECF No. 176-10 at ¶¶ 4, 31; ECF No. 176-8 at ¶¶ 3, 18-20; ECF No. 176-9.)  These are the only individuals whose knowledge is pertinent.  *See Hitt v. CSX Transp., Inc.*, 116 F.4th 1309, 1318-19 (11th Cir. 2024) (affirming summary judgment for employer where manager with knowledge of protected activity had no influence over the decision-making process).  What Slawin claims to have told others is immaterial.  (*See* ECF No. 182 at 6-10.)

Second, as to HR and legal, Slawin testified unequivocally that he *never* expressed *any* concerns of illegal conduct to such individuals prior to his

termination. (ECF No. 175-4 at 127:17-128:13, 131:22-134:19, 135:10-138:4, 139:11-24, 176:18-22, 183:22-24, 185:15-186:19, 230:22-231:10; ECF No. 176-4 at ¶¶ 88-91.) Moreover, he never put any of his concerns in writing to anyone at BAMS.[3] (ECF No. 175-4 at. 186:20-187:8; 216:15-218:5.)

Last, while Kendall (as Slawin's manager) was consulted in connection with Slawin's termination, and agreed with the same, there is no genuine dispute as to whether Kendall had any authority with respect to the termination; moreover, Slawin admitted his only evidence to the contrary is Kendall's stated agreement with the termination. (ECF No. 175-4 201:10-25.) BAMS' interrogatory responses do not alter that analysis, and they corroborate Solan and Kendall's testimony that (1) Solan and Kendall participated in an interview with Slawin concerning Slawin's emailing confidential business information to personal devices, (2) both agreed "there was a loss of trust and confidence between Plaintiff and BAMS," and (3) both agreed termination was appropriate. (ECF No. 182-29; *see also, e.g.*, ECF No. 176-4 at ¶¶ 56, 58; ECF No. 176-10 at ¶ 17.) This is not "significant probative evidence" of whether Kendall had *authority* to make the termination decision. *See Lewis v. Home Depot U.S.A.*, 2017 WL 11633802, at *1 (N.D. Ga. Jan. 9, 2017) (Salinas, M.J.) ("[T]he nonmovant must raise 'significant probative evidence' . . . sufficient for a

---

[3] These admissions preclude Slawin's attempts to use his December 11, 2017 email to Solan as protected conduct; regardless, this email does not on its face raise any concerns regarding any illegal conduct. (ECF No. 175-29 at BAMS 00000180.)

jury to find for that party."), *report and recommendation adopted by* 2017 WL 11633787 (N.D. Ga. Mar. 17, 2017) (Totenberg, J.). To the contrary, any authority to terminate Slawin based on policy violations was HR's alone, as was the decision itself. (*E.g.*, ECF No. 176-4 at ¶¶ 59-63, 92-98; ECF No. 176-10 at ¶ 31.)[4]

## IV.    BAMS' HR MADE THE DECISION TO TERMINATE SLAWIN ON DECEMBER 8, 2017 BASED ON HIS POLICY VIOLATIONS.

Slawin bears the burden of showing his protected conduct was a "contributing factor" to the adverse action at issue (i.e., his termination):

> To meet the contributing factor standard, an employee "need not [ ] prove that his employer acted with 'retaliatory intent' "—"something akin to animus." Instead, the employee must prove its employer's "intent to take some adverse employment action against the [ ] employee 'because of' his protected [ ] activity." In other words, the employer must have made "an intentional choice in which that factor play[ed] some role in the employer's thinking."

*Hitt*, 116 F.4th at 1315-16 (internal citations omitted).

Slawin has not identified a genuine issue of fact as to whether any of his claimed protected activities contributed to his termination. Slawin does not dispute that he forwarded various emails to his personal computer. (*E.g.*, ECF No. 183-2 at

---

[4] Additionally, Slawin's claimed complaints to Kendall are not protected conduct. Slawin's most direct claim is that he purportedly told Kendall "that it's omission. It's a fraud." (ECF No. 175-4 at 194:5-11; *see also id.* at 191:21-192:1, 218:11-219:13.) To qualify as protected conduct, Slawin was required to do more than make conclusory allegations of illegal conduct, and no retaliation claim is possible if the employer was not aware that the employee was engaging in protected conduct. *See Ronnie*, 81 F.4th at 1350-51; *see also Cruzan*, 2020 WL 10574160, at *10.

¶¶ 24-35.)  It is further beyond dispute that BAMS' HR determined these actions violated a variety of BAMS policies governing the handling of confidential company information.  (ECF No. 176-4 at ¶¶ 59-66 & Exs. 1-2; ECF No. 175-16 at 42:22-44:18, 105:8-113:22, 122:3-123:18, 155:14-160:11, 160:22-161:19,  162:9-165:22, 167:16-22, 170:22-171:22, 172:22-173:8; ECF Nos. 175-31, 175-32, 176-1, 176-2, 176-3.)

Slawin unsuccessfully attempts to create an issue of fact by complaining he never actually violated BAMS' policies.  (*See* ECF No. 182 at 24-25.)  In reality, Slawin "has merely thrown a 'hodgepodge of arguments at the wall'" that do not justify departing from the longstanding principle that a federal court "is not in the position to second-guess [an employer's] interpretation of its own policy and whether the undisputed conduct, following a thorough investigation, amounts to a violation of such." *Hall v. Teva Pharm. USA, Inc.*, 214 F. Supp. 3d 1281, 1295 (S.D. Fla. 2016) (granting summary judgment on Dodd-Frank and other retaliation claims when plaintiff "admitted to the underlying conduct . . .  but instead disagrees that her conduct amounted to a violation of [the employer's] policy").  "[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1319 (N.D. Ga. 2019) (Totenberg, J.) (quotations omitted).  Here, Slawin admits he sent

the emails at issue to his personal email address, disputing only whether doing so violated BAMS' policies. (*E.g.*, ECF No. 183-2 at ¶¶ 24-35.) Based on the undisputed underlying conduct, however, BAMS' HR personnel determined Slawin *did* violate policies intended to protect its confidential information. (*See, e.g.*, ECF No. 176-4 at ¶¶ 64-66.) Slawin "cannot succeed by simply quarreling with the wisdom of that" determination. *Moakler*, 374 F. Supp. 3d at 1318 (quotations omitted); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

Separately, there is no serious dispute that the decision to terminate Slawin was recommended by HR (by Solan) based on Slawin's policy violations, approved by HR (by De Castro), and internally communicated on December 8, 2017 (by Solan), at which time Slawin lost access to BAMS' systems. (*E.g.*, ECF No. 176-4 at ¶¶ 58-74; ECF No. 175-16 at 42:22-44:18, 70:14-75:9, 88:13-19, 105:8-114:22, 120:12-124:19, 127:8-12, 129:12-130:13, 139:10-17, 141:11-24, 151:14-153:24; ECF Nos. 175-27, 175-28 & 175-31; ECF No. 176-10 at ¶ 17.) Instead, in a last-ditch effort to save his case, Slawin argues that because the termination was not communicated until December 12, 2017, a material dispute of fact exists as to whether his December 11, 2017 email contributed to his termination. (*See* ECF No.

182 at 19-20.)  As already noted, the email is not a qualifying protected activity and did not notify Solan of any protected conduct.  (*See* ECF No. 175-4 at 127:17-128:13, 131:22-134:19, 135:10-138:4, 139:11-24, 176:18-22, 183:22-24, 185:15-187:8, 216:15-218:5, 230:22-231:10; ECF No. 176-4 at ¶¶ 88-91; ECF No. 175-29.) More fundamentally, the date on which Slawin was *informed* of his termination is not "significant probative evidence" of when the termination decision was *made*, and all record of the evidence demonstrates the decision was made on December 8, 2017.  (*E.g.*, ECF No. 176-4 at ¶¶ 58-74; Solan Dep. Ex. 51; ECF No. 175-16 at 42:22-44:18, 70:14-75:9, 88:13-19, 105:8-114:22, 120:12-124:19, 127:8-12, 129:12-130:13, 139:10-17, 141:11-24, 151:14-153:24; ECF Nos. 175-27, 175-28 & 175-31; ECF No. 176-10 at ¶ 17.)  When an employer is already contemplating an adverse action before it receives notice of an alleged protected activity, later "proceeding along lines previously contemplated . . . is no evidence whatever of causality."  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).  BAMS is therefore entitled to summary judgment.

## V.    THE SIX-MONTH GAP BETWEEN THE BEGINNING OF SLAWIN'S COMPLAINTS AND HIS TERMINATION PRECLUDES CAUSATION AS A MATTER OF LAW.

Slawin contends he began expressing concerns to Kendall in July 2017.  (ECF No. 175-4 at 191:21-192:1.)  As a matter of law, this protected activity is too remote from Slawin's termination in December 2017 and precludes causation as a matter of

law. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.").

Slawin's claim that he routinely raised substantially the same concerns over several months does not change the analysis. "In determining the temporal proximity between statutorily protected activity and the adverse employment action, courts begin their calculation on the date the employer gains the knowledge of said protected activity." *Santiago v. Univ. of Miami*, 2023 WL 3045417, at *11 (S.D. Fla. Apr. 6, 2023) (citing *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. App'x 820, 823 (11th Cir. 2008)), *report and recommendation adopted by* 2023 WL 3043414 (S.D. Fla. Apr. 21, 2023). For example, in *Thomas v. Tyco Int'l Mgmt. Co., LLC*, the plaintiff first expressed concerns on January 23, 2014, but was not terminated until May 14, 2014. 416 F. Supp. 3d 1340, 1363 (S.D. Fla. 2019). Notwithstanding that the plaintiff also expressed concerns in February, *id.* at 1348, the court still looked at the "*first* reported complaint that alerted Tyco to" the alleged issues for its temporal proximity analysis, *id.* at 1363-64 (emphasis added). Moreover, in *Santiago* (a Section 1981 case), the court concluded (on a motion to dismiss, no less) that an employee's complaint just two weeks prior to the adverse employment action was insufficient to support a finding of causation when the employee had repeatedly made such complaints throughout her employment. *Santiago*, 2023 WL 3045417 at

*10-12. Because the "earliest complaint" was too remote to support a finding of causation, the claim could not proceed simply because the plaintiff continually reiterated her concerns through the date she was allegedly forced to resign. *Id.*; *see also Raspanti*, 266 Fed. App'x at 823 (quoting Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)) ("Raspanti asks this Court to consider the brief amount of time between the settlement against Four Amigos in September and her discharge in November, but we begin our calculation on the date the employer gains 'knowledge of the protected expression[.]'").

The fact that Slawin claims to have repeatedly reiterated his purported concerns through his termination is irrelevant. According to Slawin's own testimony, his complaints began in July 2017 to Kendall, to whom Slawin "routinely" raised those concerns. (ECF No. 175-4 at 191:21-192:1, 194:5-11.) Because it is undisputed that Slawin's termination did not occur until several months later, Slawin cannot show such alleged protected activity contributed to the decision to terminate him. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d at 1364.

## VI.    SLAWIN'S SHAM AFFIDAVIT AND L.R. 56.1 VIOLATIONS FURTHER WARRANT GRANTING SUMMARY JUDGMENT.

In addition, Slawin's response suffers from numerous defects. First, despite multiple post-filing corrections to Slawin's response materials, Slawin's response violates the Local Rules and Standing Order (ECF No. 2) of this Court in multiple

ways.  Second, Slawin's declaration in opposition to summary judgment is in many

ways a sham, impermissibly contradicting his deposition testimony.

First, Slawin's response commits numerous violations of this Court's

Standing Order (ECF No. 2) and Local Rule 56.1.  Most obviously, when a party

relies on deposition testimony in connection with a motion for summary judgment,

that party must (1) attach exhibits containing those portions of the testimony cited

and (2) file the complete transcript of each deposition referenced.  L.R. 56.1(C); ECF

No. 2 at 25.  ***Slawin did neither.***  Moreover, he failed to file multiple transcripts

altogether (including for Natasha Collins, Mark Kendall, Joe Moll, and Ali Davis).

Additionally, Slawin's Statement of Disputed Facts fails to comply with L.R. 56.1

by repeatedly combining several factual assertions into a single numbered paragraph

(or even page, e.g., ECF No. 182-2 at ¶ 66), supported by a collective record citation

at the end.  L.R. 56.1(B)(1); L.R.(B)(3).  "[W]here a respondent, similar to a movant,

fails to conform its Rule 56.1 statement of additional facts to the rule's requirements,

the district court is vested with broad discretion to disregard it, in whole or in part."

*Peak v. ReliaStar Life Ins. Co.*, 2018 WL 6380772, at *3 (N.D. Ga. Sept. 28, 2018)

(Totenberg, J.) (citing *Reese v. Herbert*, 527 F.3d 1253, 1267 (11th Cir. 2008)).

Based on these pervasive issues, Slawin's disputed facts should be disregarded (at

least in substantial part), any factual assertion that Slawin supports with deposition

14

testimony should not be considered, and any of BAMS' material facts that Slawin seeks to contest with deposition testimony should be deemed admitted.

Second, Slawin's attempts to manufacture an issue of fact through his sham declaration should be disregarded. When a party has given clear answers to unambiguous questions, that party cannot create an issue with an affidavit that merely contradicts the prior testimony without explanation. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see also Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986); *Jackson v. Advance Auto Parts, Inc.*, 362 F. Supp. 2d 1323, 1325 (N.D. Ga. 2005) ("A party opposing summary judgment may not substitute an affidavit alleging helpful facts in place of earlier deposition testimony in hopes of avoiding summary judgment.").

Slawin's declaration includes testimony contradicting his deposition without explanation. For example, Slawin now states he believed BAMS violated laws falling within the scope of the pertinent statutes, contradicting his admissions during deposition regarding his lack of belief in statutory violations of SOX and the CFPA. (*Compare* ECF No. 182-3 at ¶ 49 *with* ECF No. 175-4 at 162:17-21, 223:19-224:7.) BAMS' objections to Slawin's Statement of Disputed Material facts more fully identify various contradictions, and BAMS respectfully refers the Court to the same. Regardless, whether in support of his own Statement of Disputed Facts or in opposition to BAMS' Statement of Undisputed Material Facts, inconsistent

testimony from Slawin without explanation is foreclosed by his previous sworn testimony. *See Rodriguez v. Jones Boat Yard, Inc.*, 435 Fed. App'x 885, 887-88 (11th Cir. 2011); *Lawver v. Hillcrest Hospice, Inc.*, 300 Fed. App'x 768, 771-72 (11th Cir. 2008); *Cruzan*, 2020 WL 10574160, at *7-10.

## CONCLUSION

This case presents multiple paths to judgment as a matter of law in BAMS' favor.  BAMS, however, only needs one: as the party who bears the burden of proof at trial, *Slawin* must point to a material, triable issue of fact as to *each* of the essential elements of his claims.  For the reasons above, he cannot do so, and BAMS is entitled to summary judgment on all of Slawin's claims.

## **CERTIFICATION UNDER L.R. 7.1.D**

I hereby certify that the foregoing filing has been prepared with Times New Roman 14-point font, one of the font selections approved by the Court in L.R. 5.1, N.D. Ga.

This 21st day of March, 2025.

/s/ Brian M. Underwood, Jr.
(Ga. Bar 804091)

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 21st day of March, 2025.

/s/ Brian M. Underwood, Jr.
Brian M. Underwood, Jr.
(Ga. Bar 804091)