# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ERIC SLAWIN,

       Plaintiff,

v.

BANC OF AMERICA MERCHANT
SERVICES, LLC, s/h/a BANK OF
AMERICA MERCHANT SERVICES,

       Defendant.

Civil Action File No.
1:19:cv-04129-AT

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1(B)(3), BAMS hereby submits its response to the Statement of Disputed Material Facts submitted by Plaintiff.  (ECF No. 182-2.)

**BAMS's Responses to Slawin's Assertions Regarding Slawin's Experience Investigating Banking and Securities Frauds[1]**

1. Slawin was hired by BAMS for the position of VP Operations Control Officer on or about November 5, 2015, and started his employment in that position on or about December 7, 2015. In that position, Slawin was the liaison between BAMS' Independent Risk Management, Compliance and Internal Audit segments. (Slawin Decl. ¶2).

---

[1] BAMS does not admit or deny the organizational headings in Plaintiff's Statement of Disputed Material Facts.

<u>This may be considered. (*See* BAMS SUMF ¶ 4.[2])</u>

2.      At the time he began employment at BAMS in December 2015, Slawin had almost 25 years in the Securities and Banking Regulatory and Compliance field, having started in this area in 1991. Prior to working at BAMS Slawin had held numerous regulatory and compliance positions both for governmental regulatory agencies as well as for other banks and broker dealers. (Slawin Decl. ¶3).

<u>This may be considered.</u>

3.      Slawin has investigated securities fraud for the State of Florida and NASDAQ, which became FINRA. Prior to his employment with BAMS, Slawin had over twenty years of experience in the securities industry, including extensive experience on Wall Street on the trading floor, as a go-to person to answer questions from the syndicate desk and the investment bankers regarding disclosures in offering documents. The syndicate desk is the intermediary between the investment bankers underwriting the proposed security and the sales force. Slawin became aware that in many cases the fraud is one of omission. (Slawin Decl. ¶37).

<u>This may be considered.</u>

---

[2] "SUMF" cites to Plaintiff's Corrected Response to BAMS's Statement of Undisputed Facts (ECF No. 183-2.)

**BAMS's Responses to Slawin's Assertions Regarding Mr. Slawin's Supervisors**

4.      During his employment, Slawin reported directly to Natasha Collins, Mark Kendall and Brian Rubin. (Slawin Decl. ¶4).

    This may be considered. (*See* BAMS SUMF ¶¶ 30, 43, 168).

5.      Natasha Collins was Senior Vice President, Head of Sales Operations and Planning. Slawin reported to Ms. Collins during the late summer and early fall of 2017 until in or about September 2017. (Slawin Decl. ¶5).

    This may be considered. (*See* BAMS SUMF ¶ 168).

6.      Until in or about September 2017, Mark Kendall was Director of Risk and Control and also reported to Ms. Collins. In or about September 2017, Mr. Kendall was promoted and became Slawin's immediate supervisor instead of Ms. Collins. (Slawin Decl. ¶7).

    This may be considered. (*See* BAMS SUMF ¶¶ 29-31).

7.      Even after Mark Kendall became Mr. Slawin's immediate supervisor in September 2017, Ms. Collins, as Mr. Kendall's supervisor, remained on a higher supervisory level than Mr. Slawin and within his chain of supervision. (Slawin Decl., ¶117)

    This may be considered.

8.      Brian Rubin was Mr. Slawin's immediate supervisor into the second quarter of 2017. (Slawin Decl.,¶119).

This may be considered.  (*See* BAMS SUMF ¶ 43.)

**BAMS's Responses to Slawin's Assertions Regarding BAMS Not PCI Compliant**

9.     A credit card or debit card has an account number on it. That is known as a Primary Account Number or PAN. (Slawin Decl. ¶12)

This may be considered.

10.     When an entity transmits or receives data containing a cardholder's complete account number, it is deemed to be transmitting or receiving "full PAN." (Slawin Decl. ¶13).

BAMS objects that this assertion is immaterial.  Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.  This includes disputes as to whether an entity may be "deemed to be transmitting or receiving 'full PAN'" when the entity at issue conducts its business on the systems of a PCI compliant, third-party service provider.  (*See* BAMS SUMF ¶ 270.)

11.     The payment card industry, known as PCI, has a series of data security standards, known as DSS. This includes, among other things, transmitting or receiving the data in an encrypted format. The payment card industry data security standards are known by the acronym PCI DSS. (Ex. 79 Davis Dep., 32:10-22; Moll Dep. 10:14-11:3, Slawin Decl. ¶14).

4

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcripts nor attached excerpts of the same to its response. BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that Ex. 79 is a PCI DSS Quick Reference Guide, not the PCI DSS standards themselves, and therefore constitutes inadmissible hearsay as to the actual substance or scope of PCI DSS. Moreover, on pages 3 through 39 of Ex. 79, the Quick Reference Guide states that it "does not replace or supersede PCI SSC Security Standards or their supporting documents," which are not in the record. BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the PCI DSS) by means other than the document itself, and such attempt does not fall into any permissible exception. Fed. R. Evid. 1002, 1003, 1004. BAMS objects that the second sentence in this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment. Otherwise, this may be considered as to the first and third sentence. (*See* BAMS SUMF ¶¶ 152, 199).

12. The Payment Card Industry Data Security Standards ("PCI DSS") are a list of twelve information security requirements promulgated by the Payment Card Industry Security Standards Council. They apply to all organizations and environments where cardholder data is stored, processed, or transmitted and require financial institutions and providers of payment processing services such as BAMS to protect cardholder data, ensure the maintenance of vulnerability management programs, implement strong access control measures, regularly monitor and test networks, and ensure the maintenance of information security policies. "PCI compliance" refers to adherence to this set of security standards embodied in the Payment Card Industry Data Security Standard (PCI DSS). (Ex. 79 Davis Dep., 32:10-22; Moll Dep. 10:14-11:3, Slawin Decl. ¶15).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcripts nor attached excerpts of the same to its response. BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that Ex. 79 is a PCI DSS Quick Reference Guide, not the PCI DSS standards themselves, and therefore constitutes inadmissible hearsay as to the actual substance or scope of PCI DSS. Moreover, on pages 3 through 39 of Ex. 79, the Quick Reference Guide states that it "does not replace or supersede PCI SSC

Security Standards or their supporting documents," which are not in the record. BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the PCI DSS) by means other than the document itself, and such attempt does not fall into any permissible exception. Fed. R. Evid. 1002, 1003, 1004. BAMS further objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

13.    The PCI DSS requires that entities that transmit or receive PAN data comply with the requirements of the payment card industry data security standards, or PCI DSS. An entity that complies with the PCI DSS is considered to be PCI compliant. An entity that does not comply with the payment card industry data security standards, or PCI DSS is considered to be PCI noncompliant, which is alternatively expressed as not being PCI compliant. (Ex. 79 Davis Dep., 32:10-22; Moll Dep. 10:14-11:3, Slawin Decl. ¶16).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcripts nor attached excerpts of the same to its response. BAMS objects that this

assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the PCI DSS) by means other than the document itself, and such attempt does not fall into any permissible exception. Fed. R. Evid. 1002, 1003, 1004. BAMS further objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

14.    BAMS discovered that it was not PCI compliant in January 2017. (Ex. 1).

BAMS objects the cited exhibit constitutes inadmissible hearsay, as it is an out-of-court statement intended to prove the truth of the matter asserted as to whether BAMS was PCI compliant. BAMS further objects that Plaintiff's evidence does not support the assertion stated; instead, while it indicates that BAMS's access to cardholder data would render it "in scope for PCI compliance," the discussion of potential noncompliance was in the context of "[i]f a system at BAMS was hacked or had a breach and cardholder data was accessed . . . ." One of the solutions discussed in said email was "to consider *validating* our compliance." (Emphasis

8

added.)  The email thus does not indicate that BAMS was not PCI compliant, but only that such compliance had not been (but may need to be) validated.  BAMS further objects that this assertion is immaterial.  Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

15.    On January 25, 2017, Alison Davis, BAMS Sr. VP, Risk and Compliance, in charge of PCI compliance (Davis Dep. 10:16-11:6) sent an email to Thomas Fontana, BAMS Chief Risk Officer "subject" "Hot Topic: PCI at BAMS" (Davis Dep. 16:3-18; 26:20-27:23), which referred to the fact that BAMS employees were accessing or using full PAN data, in a non-PCI compliant way. (Davis Dep. Ex. 1, 17:25-18:6; 78:15-79:1).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcript nor attached excerpts of the same to its response.

BAMS objects that Plaintiff's evidence does not support the assertion stated with respect to whether PAN data was being used "in a non-PCI compliant way"; instead, while it indicates that BAMS's access to cardholder data would render it "in scope for PCI compliance," the discussion of potential noncompliance was in the context of "[i]f a system at BAMS was hacked or had a breach and cardholder data

was accessed . . . ."  One of the solutions discussed in said email was "to consider *validating* our compliance."  (Emphasis added.)  The email thus does not indicate that BAMS was not PCI compliant, but only that such compliance had not been (but may need to be) validated.  Otherwise, this may be considered. (BAMS SUMF ¶¶ 150-158.)

16.     Ms. Davis did not label her January 25, 2027, email regarding BAMS using full PAN data and not being PCI compliant confidential. (Ex. 1).

BAMS objects that this assertion is immaterial.

17.     Ms. Davis wrote in her January 25, 2017, email that having a Qualified Security Assessor certify or validate that BAMS was PCI compliant would "cost an absolute fortune." *(Id.;* Davis Dep. 38:2-23).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcript nor attached excerpts of the same to its response.

BAMS objects the cited exhibit constitutes inadmissible hearsay, as it is an out-of-court statement intended to prove the truth of the matter asserted concerning the costs of "having a Qualified Security Assessor certify or validate that BAMS was PCI compliant."  BAMS further objects that this assertion is immaterial.

18.     The two options to correct this PCI compliance issue were to remove access to BAMS employees to full PAN data so that BAMS would not need to

become PCI compliant or for BAMS to go through the QSA process and become PCI compliant. (Davis Dep. 42:1-9).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcript nor attached excerpts of the same to its response.

BAMS objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including whether BAMS was compliant with the same and available methods of remediation, are immaterial to the bases for summary judgment.

19.    The next day, January 26, 2017, Joe Moll replied to Ms. Davis' January 25, 2017, email with an excel spreadsheet attached noting some instances Mr. Moll confirmed where BAMS employees were using full PAN data. (Ex. 1).

BAMS objects that Plaintiff's evidence does not support the assertion stated in that Exhibit 1 does not contain the spreadsheet or its contents. BAMS objects the cited exhibit constitutes inadmissible hearsay, as it is an out-of-court statement intended to prove the truth of the matter asserted as to the contents of the spreadsheet and whether Mr. Moll had confirmed BAMS employees were using full PAN data.

20.    Mr. Moll also did not mark his January 26, 2017, email concerning instances of BAMS employees using full PAN data while not being PCI compliant as confidential. *(Id.;* Ex. 88).

BAMS objects that this assertion is immaterial.

21.    When BAMS documentation referred to a "new layer of PCI compliance" that referred to the remediation of issues path so BAMS would not need to become PCI complaint, instead of the alternative path of becoming PCI compliant, which were the two options to deal with BAMS non-PCI compliance. (Ex. 11, Davis Dep. 98:8-11)

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcripts nor attached excerpts of the same to its response.

BAMS objects that Plaintiff's evidence does not support the assertion stated with respect to the purported meaning of "new layer of PCI compliance."  BAMS objects that this assertion is immaterial.  Matters concerning the interpretation of requirements related to PCI compliance, including whether BAMS was compliant with the same and available methods of remediation, are immaterial to the bases for summary judgment.

22.    Ali Davis confirmed that BAMS was not PCI compliant from at least January 2017 until the middle of 2018, and did not tell BAMS customers, i.e. merchants, this. (Davis Dep. 30:22-31:3, 52:20-53:13; Exs. 1, 3, 4, 5, 6, 8, 9, 10, 12, 17, 19).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcript nor attached excerpts of the same to its response.

BAMS objects that Plaintiff's evidence does not support the assertion stated with respect to the assertion that BAMS "did not tell [its] customers, i.e. merchants" that it was not PCI compliant from January 2017 until the middle of 2018. BAMS further objects that this assertion is immaterial.

23.    At all relevant times, throughout all of 2017, BAMS was not PCI compliant. (Ex. 1; Ades Dep. 31:17-32:9, 52:3-6, 53:9-17, 74:12-75:13; Ex. 3; Davis Dep. 30:22-31:3).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Davis deposition transcript nor attached excerpts of the same to its response. Additionally, Slawin failed to "include as an exhibit to the brief a copy of the specific pages of the" Ades deposition referenced, some of which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief. (ECF No. 2.)

BAMS objects the cited exhibits (Ex. 1 and Ex. 3) constitute inadmissible hearsay, as it is an out-of-court statement intended to prove the truth of the matter asserted as to whether BAMS was not PCI compliant and when. BAMS further objects that Ex. 1 does not support the assertion stated; instead, while it indicates

that BAMS's access to cardholder data would render it "in scope for PCI compliance," the discussion of potential noncompliance was in the context of "[i]f a system at BAMS was hacked or had a breach and cardholder data was accessed . . . ." One of the solutions discussed in said email was "to consider *validating* our compliance." (Emphasis added.) The email thus does not indicate that BAMS was not PCI compliant, but only that such compliance had not been (but may need to be) validated.

BAMS objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

24.    In June 2017, Ali Davis told Mr. Ades that his client services team was sending full PAN (personal account information data) in an unencrypted fashion which was not PCI compliant. (Ades Dep. 28:5-8, 31:8-32:9; Davis Dep. 34:1923).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Davis deposition transcripts nor attached excerpts of the same to its response. Additionally, Slawin failed to "include as an exhibit to the brief a copy of the specific pages of the" Ades deposition referenced. (ECF No. 2.)

25.    Ades understood in June 2017 that BAMS was transmitting full PAN data in derogation of the PCI Security Standards Council standards for transmission

of such data. (Ades Dep. 37:6-38:8; 41:11-25, Ex. 79; Davis Dep., 32:10-22; Moll Dep. 10:14-11:3).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Davis or Moll deposition transcripts nor attached excerpts of the same to its response. Additionally, Slawin failed to "include as an exhibit to the brief a copy of the specific pages of the" Ades deposition referenced, which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief. (ECF No. 2.)

BAMS objects that the remaining exhibit does not support the assertion stated. BAMS further objects that this assertion is immaterial.

26.    Under the applicable PCI DSS security standards, PAN data should never be sent via unsecured email. (Ades Dep. 38:13-39:7; Ex. 79; Davis Dep., 32:10-22; Moll Dep. 10:14-11:3).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Davis and Moll deposition transcripts nor attached excerpts of the same to its response. Additionally, Slawin failed to "include as an exhibit to the brief a copy of the specific pages of the" Ades deposition referenced, which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief. (ECF No. 2.)

BAMS objects that Ex. 79 is a PCI DSS Quick Reference Guide, not the PCI DSS standards themselves, and therefore constitutes inadmissible hearsay as to the actual substance or scope of PCI DSS. Moreover, on pages 3 through 39 of Ex. 79, the Quick Reference Guide states that it "does not replace or supersede PCI SSC Security Standards or their supporting documents," which are not in the record. BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the PCI DSS) by means other than the document itself, and such attempt does not fall into any permissible exception. Fed. R. Evid. 1002, 1003, 1004. BAMS objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

27.    Yet, BAMS was storing or transmitting full PAN data via unsecured email, which Ades knew meant that BAMS was not PCI compliant and violated PCI DSS standards. (Ades Dep. 32:12-15, 39:14-22, 41:11-25, 42:3-7; Ex. 79; Davis Dep., 32:10-22; Moll Dep. 10:14-11:3).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Davis and Moll deposition transcripts nor attached excerpts of the same to its response. Additionally, Slawin failed to "include as an exhibit to the brief a copy of the specific pages of the"

Ades deposition referenced, some of which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief.  (ECF No. 2.)

BAMS objects that Ex. 79 is a PCI DSS Quick Reference Guide, not the PCI DSS standards themselves, and therefore constitutes inadmissible hearsay as to the actual substance or scope of PCI DSS.  Moreover, on pages 3 through 39 of Ex. 79, the Quick Reference Guide states that it "does not replace or supersede PCI SSC Security Standards or their supporting documents," which are not in the record. BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the PCI DSS) by means other than the document itself, and such attempt does not fall into any permissible exception.  Fed. R. Evid. 1002, 1003, 1004.  BAMS further objects that this assertion is immaterial.  Matters concerning the interpretation of requirements related to PCI compliance, including whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

28.    On June 13, 2017, Mr. Ades wrote an email stating "We — BAMS don't want to go the route of PCI compliance as it would be a very costly and time consuming exercise." (Ades Dep. 30:9-31:24; Ex. 16 [Doc. 176-6]; Ex. 3). Mr. Ades sent this email to Natasha Collins, VP of Sales Operations, Brian Glynn Sr. VP of Account Management, and Monica Kennedy, who was either Sr. VP or VP. (Ades

Dep. 33:10 – 34:7), and suggested for the first time, setting up a Self-Identified Audit Issue (SIAI). (Davis Dep. 79:17-24, 81:2-4).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Davis deposition transcript nor attached excerpts of the same to its response. Additionally, Slawin failed to "include as an exhibit to the brief a copy of the specific pages of the" Ades deposition referenced, some of which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief. (ECF No. 2.) BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

29.    Ms. Collins, Mr. Glynn and Ms. Kennedy reported to Mr. Ades. (Ades Dep. 33:10 - 34:7).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Ades deposition referenced, some of which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief. (ECF No. 2.)

30.    Neither Mr. Ades nor Mr. Glynn or Ms. Collins labelled the various emails in the email chain as confidential. (Ex. 3).

BAMS objects that this assertion is immaterial.

31.    Mr. Glynn responded to Mr. Ades' June 13, 2017, on the same day, stating that "We all agree that the main disadvantage of outsourcing this type of request handling to FD directly is the negative impact it could have on client experience, which you mentioned. That said, we understand that going down the path of making BAMS PCI compliant is not something we want to consider." (Ex 3).

BAMS objects that this assertion is immaterial.  Matters concerning the interpretation of requirements related to PCI compliance, including whether BAMS was compliant with the same and available methods of remediation, are immaterial to the bases for summary judgment.

32.    BAMS did not know the full scope of its non-PCI compliance, and whether employees were sending full PAN data unencrypted fashion before 2017. (Kendall Dep. 162:8-163:6).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcript nor attached excerpts of the same to its response.  Regardless, BAMS objects that Plaintiff's evidence does not support the assertion stated, including that employees were sending full PAN data in unencrypted fashion before 2017.

33.    Joe Moll sent an email to Ms. Davis on July 11, 2017, setting forth the number of actual violations during the prior 12 months that BAMS handled full PAN data, which was 2,925 violations. (Ex 8; Davis Dep. 85:17-87:6). Mr. Moll noted to Ms. Davis that this number only included instances of BAMS employees sending full PAN data and does not include any other instances of full PAN being  stored, processed, or transmitted inappropriately by BAMS employees. (Ex. 8). Neither Ms. Davis nor Mr. Moll marked either email in the email chain as confidential. *(Id.,* Moll Dep. 30:1-31:7).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcripts nor attached excerpts of the same to its response.  BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that the remaining exhibit constitutes inadmissible hearsay, including as to "the number of actual violations during the prior 12 months that BAMS handled full PAN data, which was 2,925 violations" and that "this number only included instances of BAMS employees sending full PAN data and does not include any other instances of full PAN being stored, processed, or transmitted inappropriately by BAMS employees."  BAMS objects that this assertion is immaterial.

34.    The PCI noncompliance issue implicated debit suspense items as well as chargebacks that BAMS handled. (Ex 9; Davis Dep. 93:1-95:5, 100:16-20). The PAN data issue and not being PCI compliant was firm wide. (Ex 14; Davis Dep. 100: 22-101:21).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcript nor attached excerpts of the same to its response.  BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that the remaining exhibits constitute inadmissible hearsay as to the propositions stated.  BAMS further objects that this assertion is immaterial.

35.    Cardholders whose PAN data was at issue included businesses, business customers buying a business item for his or her consumption in their business, or consumers who did transactions with merchants buying a good or service for personal or family use, including from merchants serviced by BAMS. (Davis Dep. 103:3-22, 104:24-105:4, 105:23-106:19; Ex. 28).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcript nor attached excerpts of the same to its response.

BAMS objects that the remaining exhibit constitutes inadmissible hearsay offered to prove the matters asserted therein. BAMS further objects that the exhibit does not support the proposition stated. BAMS objects that the assertion is immaterial.

**BAMS's Responses to Slawin's Assertions Regarding Slawin's Protected Conduct**

36. BAMS never told its customers, *i.e* the merchants, that it was not PCI compliant. (Davis Dep. 54:15-20, 114:8-15)

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited deposition transcript nor attached excerpts of the same to its response.

BAMS objects that the assertion is immaterial.

37. BAMS was concerned about reputational risk if its customers/merchants found out that it was not PCI Compliant. (Solan Dep., Ex. 42; Collins Dep. 85:1186:10, 126:10-127:7; Solan Dep. 53:17-55:16, 56:24-59:15; Ex. 40).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Collins deposition transcript nor attached excerpts of the same to its response. Additionally, Slawin failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan

deposition referenced, some of which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief.  (ECF No. 2.)

BAMS objects that the assertion is immaterial.

38.    BAMS represented itself as a payment acquirer, an entity involved in payment processing to major private merchants such as Home Depot, Target, Amazon, Exon Mobile, Royal Caribbean Lines, MGM and others, as well as to numerous municipalities, to facilitate credit and debit card transactions between those entities and their customers. (Slawin Decl., ¶9).

BAMS objects that the assertion is immaterial.

39.    At all relevant times, BAMS solicited the business, *i.e.* merchant and municipal customers, and was the "face" of the relationship between its customers, while First Data Corporation ("First Data") handled the payment processing from the back end. (Slawin Decl., ¶10).

This assertion may be considered with respect to First Data handling payment processing on the backend.  BAMS objects that the remainder of this assertion is immaterial.

40.    First Data was sometimes referred to as "FD" or "FDMS" for First Data Merchant Services. (Slawin Decl., ¶118).

This may be considered.

41.    In this relationship, First Data was in essence the back office so that private merchants' and municipalities' point of contact was BAMS. (Slawin Decl., ¶11.

BAMS objects that the assertion is immaterial.

42.    On June 13, 2017 Natasha Collins copied Slawin on an email chain regarding BAMS sending full PAN data and not being PCI compliant. One email in the chain was from David Ades, dated June 13, 2017. Mr. Ades' email stated in pertinent part that BAMS was transmitting and receiving PAN data with respect to chargebacks, which required BAMS to be PCI compliant, but that BAMS was not PCI compliant. Mr. Ades also stated in his email, "We — BAMS don't want to go the route of PCI compliance as it would be a very costly and time consuming exercise. So the options are to have the merchants call directly to FD [First Data] to obtain info they request-might not be a great client experience." This email chain also contained a responding email from Brian Glynn, also dated June 13, 2017 stating, "We all agree that the main disadvantage of outsourcing this type of request handling to FD directly is the negative impact it could have on client experience, which you mentioned. That said, we understand that going down the path of making BAMS PCI compliant is not something we want to consider." (Slawin Decl., ¶18; Ex. 3).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that the assertion in material with respect to matters concerning the interpretation of requirements related to PCI compliance, including whether BAMS was compliant with the same and available methods of remediation, are immaterial to the bases for summary judgment. Otherwise, this may be considered. (*See* BAMS SUMF ¶ 174.)

43.    At all relevant times, Slawin was aware that merchants for whom BAMS did credit or debit card processing had to certify that they were PCI compliant. (Slawin Decl., ¶19).

BAMS objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

44.    In or about July 2017, Slawin became aware that BAMS was required to be PCI compliant under the Merchant Services Agreements (MSA's) that it had entered into, partnered with Bank of America, with merchants to do their credit or debit card processing. Slawin became aware that BAMS had to be PCI compliant because of the June 13, 2017 email from David Ades, and senior management said

that BAMS was receiving full PAN data. Slawin looked up agreements available on the internet over the next month following Mr. Ades' June 13, 2017 email and found boiler plate agreements for MSA's. (Slawin Decl., ¶20).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that the first two sentences of this assertion are immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment. Otherwise, the Court may consider the final sentence of this assertion. (*See* BAMS SUMF ¶¶ 209-211.)

45.    In or about July 2017 Slawin also found on the internet the executed Merchant Processing Agreement (MPA) between BAMS and Bank of America and the state of Delaware which indicated that BAMS was PCI compliant. (Slawin Dep. 173:19-175:2, Slawin Decl., ¶21).

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., a merchant agreement) by means other than the document itself, and such attempt does not fall into any permissible exception. Fed. R. Evid. 1002, 1003, 1004. BAMS further objects that

this assertion is immaterial as to matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same. Otherwise, the Court may consider the assertion to the extent that "[i]n or about July 2017 Slawin also found on the internet the executed Merchant Processing Agreement (MPA) between BAMS and Bank of America and the state of Delaware . . . ."

46.    In addition to the PCI DSS, credit card companies such as VISA and MASTERCARD have rulebooks which set forth rules that apply to merchants and acquiring banks such as BAMS. These rules include the right of companies like VISA and MASTERCARD to fine non-PCI compliant companies like BAMS up to $100,000 a month for each month that the company is not PCI compliant. Slawin knew this during his employment because he had seen such rulebooks online. (Slawin Decl., ¶22).

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the rulebooks) by means other than the document itself, and such attempt does not fall into any permissible exception. *See* Fed. R. Evid. 1002, 1003, 1004. As such, Slawin's testimony as to the contents of these records is inadmissible. BAMS further objects that this assertion is immaterial in that matters concerning the interpretation of requirements

related to PCI compliance, including matters such as whether BAMS was compliant, are immaterial to the bases for summary judgment.

47.    One area in which the issue of BAMS' non-PCI compliance rose was in the context of how BAMS should respond to client questionnaires that raised questions regarding how data was secured by BAMS, and direct inquiries about whether BAMS was PCI compliant. (Slawin Decl., ¶24).

BAMS objects that this assertion is immaterial in that matters concerning the interpretation of requirements related to PCI compliance, including matters such as whether BAMS was compliant, are immaterial to the bases for summary judgment.

48.    BAMS' highest level executives knew that BAMS was required to be PCI compliant and that it was not. (Slawin Decl., ¶25).

BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind of others.  *See* Fed. R. Evid. 602.  Slawin does not cite to any record evidence to support this unadorned speculation.  BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion."  *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

49.    During May and throughout the summer of 2017, there were email exchanges including among the highest level of BAMS' executives regarding the

magnitude of the PCI non-compliance issue given the large volume of PAN data that BAMS handled. (Slawin Decl., ¶26).

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the emails) by means other than the document itself, and such attempt does not fall into any permissible exception. *See* Fed. R. Evid. 1002, 1003, 1004. BAMS objects that the contents of the purported emails (as testified to in Slawin's declaration) constitute inadmissible hearsay as to the "magnitude of the PCI non-compliance issue given the large volume of PAN data that BAMS handled," as they are out-of-court statements intended to prove the truth of the matters asserted. BAMS objects that this assertion is immaterial in that matters concerning the interpretation of requirements related to PCI compliance, including matters such as whether BAMS was compliant and BAMS's steps to assess the issue, are immaterial to the bases for summary judgment. BAMS further objects that Plaintiff's evidence does not support the assertion stated, as the record citation does not contain information identifying the emails at issue. As such, this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

50.    Slawin was assigned the job task of preparing what is known as a self-identified audit issue, or SIAI, to resolve the issue of BAMS PCI noncompliance. (Ex. 3; Slawin Decl., ¶31).

<u>This may be considered.</u>

51.    The problem was that the only two ways of resolving the issue was either for BAMS to become PCI compliant, or to transfer all processing of PAN data to First Data, both of which options had effectively been taken off the table by Mr. Ades and the other high level executives at BAMS who agreed with the substance of his email. (Slawin Decl., ¶32).

<u>BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the email) by means other than the document itself, and such attempt does not fall into any permissible exception. <i>See</i> Fed. R. Evid. 1002, 1003, 1004. BAMS objects that this assertion is immaterial in that matters concerning the interpretation of requirements related to PCI compliance, including matters such as whether BAMS was compliant with the same and available methods of remediation, are immaterial to the bases for summary judgment. BAMS further objects that Plaintiff's evidence does not support the assertion stated, as the record citation does not contain information identifying the email at issue. As such, this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial</u>

sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

52.    In addition, there was an internal debate within BAMS regarding which business line or business area would own the SIAI, because it was toxic. It was toxic because the only way to fix the problem had effectively taken off the table. There was reluctance to be the owner of the SIAI. BAMS' employees were surprised because they had assumed that BAMS was PCI compliant. (Kendall Dep. 161:11-163:6, 164:6-11, 168:24-171:13; Slawin Decl., ¶33).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Kendall deposition transcript nor attached excerpts of the same to its response. BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind of others. *See* Fed. R. Evid. 602. BAMS objects that the remaining testimony from Slawin's declaration constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

31

53. The problem was not just that BAMS was not PCI compliant, but that it represented to merchants in its MSA's that it was. Slawin had seen from the internet boilerplate MSA's, and it was common knowledge that BAMS represented to its clients/merchants in its MSA's that it was PCI compliant. Slawin brought blank the agreements that he got from the internet to Mark Kendall on numerous occasions, including after Kendall became Slawin's supervisor, when Slawin discussed with Kendall him Slawin's concern that BAMS was misrepresenting to merchants that it was PCI compliant, when it was not. (Slawin Decl., ¶34).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the agreements) by means other than the document itself, and such attempt does not fall into any permissible exception. *See* Fed. R. Evid. 1002, 1003, 1004. BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011). This includes as to Slawin's claim that "it was common knowledge that BAMS represented to clients/merchants in its MSA's that it was PCI complaint

[sic]." BAMS objects that this assertion is immaterial in that matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

54.    Slawin researched the issue of what BAMS was telling its merchants. He obtained a copy of the MPA with the State of Delaware off the internet. He was aware that Delaware is a municipality, and not a publicly traded merchant, but believed that individuals and businesses in Delaware made credit card transactions, and knew that BAMS and Bank of America had entered into a Merchant Processing Agreement with Delaware representing that BAMS was PCI compliant. (Slawin Dep., 178:12-179:4; Slawin Decl., ¶35).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation). BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced. (ECF No. 2.)

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the agreement) by means other than the document itself, and such attempt does not fall into any permissible

exception. *See* Fed. R. Evid. 1002, 1003, 1004. BAMS objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including BAMS's compliance with warranties to merchants, are immaterial to the bases for summary judgment.

55.    Slawin discovered that BAMS was required under the MSA's it was entering into with the merchants to be PCI compliant and that it represented that it was in fact was PCI compliant, by reviewing blank agreements online and then discussing them with Mark Kendall, Natahsa Collins, Sherra Grissom and others during the SIAI scoping, so that Slawin knew that BAMS was engaging in acts of fraudulent misrepresentations and/or instances of fraud by omission as to its customers. (Slawin Decl., ¶36).

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the agreements) by means other than the document itself, and such attempt does not fall into any permissible exception. *See* Fed. R. Evid. 1002, 1003, 1004. BAMS objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including BAMS's compliance with warranties to merchants, are immaterial to the bases for summary judgment. BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported

summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).  This includes as to Slawin's claim that "BAMS was engaging in acts of fraudulent misrepresentations and/or instances of fraud by omissions as to its customers," as well as whether any belief in purported fraud was reasonable in light of the actual substance of the agreements

56.    BAMS' response to the PAN data issue and its non-PCI compliance was to deflect its non-PCI compliance by trying to get its parent, First Data, to answer customer questionnaires regarding data security, in order to camouflage that BAMS, which received, retained and transmitted its customers' PAN data, was not PCI compliant. (Ex. 63; Collins Dep. 68:9-19; Slawin Decl., ¶38).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Collins deposition transcript nor attached excerpts of the same to its response.

BAMS objects that Plaintiff's evidence does not support the assertion stated, in that Ex. 63 and Collins Dep. 68:9-19 do not support the assertion BAMS was "deflecting its non-PCI compliance by trying to get its parent, First Data, to answer, customer questionnaire regarding data security, in order to camouflage that BAMs, which received, retained and transmitted its customers' PAN data, was not PCI compliant," but rather that BAMS relied on information from First Data as its third-party service provider.  The remaining evidentiary citation constitutes "[c]onclusory,

uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011). BAMS objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

57.    Slawin's task was to deflect questions from merchants as to whether BAMS was PCI compliant to First Data, and thereby conceal by fraudulent omission that BAMS was not PCI compliant. (Ex. 63; Collins Dep. 68:9-19; Slawin Decl., ¶39).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Collins deposition transcript nor attached excerpts of the same to its response.

BAMS objects that Plaintiff's evidence does not support the assertion stated, in that Ex. 63 and Collins Dep. 68:9-19 do not support the assertion that Slawin's tasks was to deflect questions from merchants as to whether BAMS was PCI compliant to First Data. The remaining evidentiary citation constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir.

2011).  BAMS objects that this assertion is immaterial.  Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

58.    Slawin was uncomfortable being put in a position to misrepresent the facts. (Slawin Dep. 204:11-18; Slawin Decl., ¶40).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.  (ECF No. 2.)

BAMS objects that this assertion is immaterial because it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him.

59.    Slawin tried unsuccessfully for several months to get another job outside of BAMS so that he would not be in this position. Slawin was afraid of being made a scapegoat or fall guy if it got out that BAMS was not PCI compliant. (Slawin Decl., ¶41).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion is immaterial.

60.    First Data being PCI compliant did not resolve the PAN data security issues endemic to BAMS' not being PCI compliant. (Slawin Decl., ¶43).

BAMS objects that this assertion is immaterial. Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

61.    Slawin was expected to go along with BAMS' deflection and information omission strategy. (Slawin Decl., ¶44).

BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

62.    Slawin had at least four or five conversations with Mr. Kendall in which Slawin told Mr. Kendall that BAMS was acting fraudulently and misleading its customers, and that Slawin was not comfortable being a part of BAMS' conspiracy to mislead its clients. These conversations were both when Mr. Kendall was Slawin's peer, and after September 2017, when Kendall was Slawin's immediate supervisor. Kendall agreed that BAMS nondisclosure of its PCI noncompliance was fraud. Slawin noted his concern that it could affect shareholders, both of the merchants and

of Bank of America, particularly because of the Bank of America name association between BOA and BAMS. (Slawin Decl., ¶45; Slawin Dep. 187:15-19, 187:21-22, 187:15-188:17, 189:2-11, 191:21-194:23, 193:3-6, 194:5114, 205:3-6, 218:11-220:10, 221:25-222:9).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation). BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced. (ECF No. 2.)

BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Slawin testified explicitly that his concerns with respect to shareholders were "[t]hat it could become an issue with it getting out that data wasn't secure at merchants and that could affect their bottom line. And ultimately, the bottom line leads to earnings per share/shareholders"; moreover, when asked if he

was "talking about the shareholders of *the merchants*," he responded affirmatively. (Slawin Dep. 218:11-219:13 (emphasis added).) This testimony is in the record and is undisputed. (*See* BAMS SUMF ¶ 248.) Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020). BAMS further objects that Slawin Dep. 189:2-11 does not support the assertion because it pertains to Slawin's conversations with Grissom, not Kendall.

63.    During these conversations, Slawin stated that BAMS' fraud was bad for the clients, and bad for BAMS and its parents since the deception could expose the whole organization to massive financial exposure if it got out that BAMS was not PCI compliant. There are huge fines that attach to PCI non-compliance violations, and the potential costs of a data security breach were astronomical. Slawin believed that BAMS' failure to disclose or correct its non-PCI compliance was a massive fraud, including on the shareholders of Bank of America. (Slawin Dep. 197:23-198:7, 222:24-223:10; Ades Dep. 85:21-86:10; Slawin Decl., ¶46).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation). BAMS objects that this assertion violates L.R.

56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin and Ades depositions referenced, some of which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief. (ECF No. 2.)

BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Slawin testified explicitly that his concerns with respect to shareholders were "[t]hat it could become an issue with it getting out that data wasn't secure at merchants and that could affect their bottom line. And ultimately, the bottom line leads to earnings per share/shareholders"; moreover, when asked if he was "talking about the shareholders of the merchants," he responded affirmatively. (Slawin Dep. 218:11-219:13.) This testimony is in the record and is undisputed. (*See* BAMS SUMF ¶ 248.) Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020).

41

The remaining deposition testimony does not support assertions that "Slawin believed that BAMS' failure to disclose or correct its non-PCI compliance was a massive fraud, including on the shareholders of Bank of America." BAMS objects that the other sentences in the assertion are immaterial.

64.    Slawin raised his concern about and objection to BAMS' misleading its clients by misdirecting them to First Data. (Slawin Decl., ¶47).

BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011). This includes assertions that BAMS was "misleading its clients by misdirecting them to First Data," as well as any assertion that Slawin raised an "objection" in the sense of refusing to participate in the purported activities about which he complained.

BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Slawin's testimony as to what concerns he told others did not pertain

to any alleged "misdirecting" of BAMS's clients "to First Data." (*E.g.*, Slawin Dep. 190:25-192:1, 194:5-11, 215:24-217:11, 217:20-218:5, 218:11-220:13.).  Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020).

65.    During the period August through September 2017, Slawin had biweekly meetings with Natasha Collins. During these meetings Slawin discussed the creation of a self-identified audit issue and mitigation of BAMS' non-PCI compliance. Slawin repeatedly advised Ms. Collins about his concerns regarding BAMS' non-PCI compliance. Slawin reiterated several times that he was uncomfortable being asked to represent to BAMS' clients and to internal BAMS' teammates that BAMS was PCI compliant when Slawin knew that it was not. (Slawin Dep. 203:16-217:11, 204:6-205:2, 218:11-219:17; Slawin Decl., ¶48).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion is immaterial in that it is undisputed that Collins had no role in Slawin's termination.  (*E.g.*, BAMS SUMF ¶ 111.)

66.     Slawin knew that omission is part of the definition of fraud. He understood that the core requirement for the SEC is disclosure, that a public entity is required to disclose all information that might affect share price, so that an investor can then make an informed decision as to whether or not the potential investor wants to purchase shares of that company. Slawin came to a belief in or about July 2017 that BAMS was committing fraud by omission by not disclosing the fact that it was not PCI compliant, which could affect the shareholders of public entities that were having their customers' purchases processed by BAMS, especially if there was a data breach. Slawin also believed that the omission could affect shareholders of one of BAMS' parent company, Bank of America. While Slawin did not know the specific provisions or even the existence of Sarbanes-Oxley, Dodd-Frank, the CFPA, or any other federal statute giving jurisdiction to the SEC, or to the CFPB, he believed that the fraudulent omission could constitute bank fraud and securities fraud, at the very least, and possibly other types of fraud made unlawful under federal statutes. Slawin became aware that the conduct in which BAMS was engaging could be investigated by the SEC and be found to constitute unlawful acts under the statutes enforced by the SEC. In particular, Slawin was thinking about the 1933 and 1934 acts of the SEC. In his job at FINRA, he had been involved mostly with the 1934 act from the perspective of the public, regarding representations for sales of securities, and at J.P. Morgan, in the private sphere, he had been mostly involved

with the 1933 act for underwriting and disclosures in offering documents for the sales of securities. (Slawin Dep. 160:24162:3, 183:5-18, 191:12-193:7; Slawin Decl., ¶49).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).  In fact, it contains over a page of discrete factual assertions all supported with a collective citation to record materials at the end, which is plainly inconsistent with the instructions of the local rules requiring "a separate, concise, numbered statement of the material facts" and that "[e]ach material fact must be numbered separately and supported by a citation to evidence proving such fact."  L.R. 56.1(B)(1); L.R. 56.1(B)(3).  BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.  (ECF No. 2.)

BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Slawin testified explicitly that he had no understanding of how BAMS

violated pertinent law, specifically the CFPA and Sarbanes-Oxley, and he did not learn or believe any conduct at BAMS violated any provision of the CFPA until after his termination.  (Slawin Dep. 27:21-24, 162:17-21, 223:19-224:3.)  This testimony is in the record and is undisputed.  (*See* BAMS SUMF ¶¶ 194, 196-197.)  Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020).  BAMS further objects that the remaining deposition citations are insufficient to support the full page of factual contentions for which they are cited.

67.    At the time that he was tasked with the SIAI Slawin understood that the option of removing all job tasks involving PAN data and transferring them to First Data, who was PCI compliant, was undesirable from BAMS' point of view because it would negatively affect client relations with the merchants. This is what Brian Glynn had written on June 13, 2017, in the email chain that had been sent to him. (Slawin Decl., ¶50).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion is immaterial, as it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him. Moreover, whether a particular plan for remediation was "undesirable" has no impact on the fact that Slawin was still tasked with preparing the SIAI, even if the ultimate plan of remediation was not "desirable."

68.    Slawin was reluctant to put his name on the SIAI because he did not want it to look like he had covered up the fact that BAMS was not PCI compliant and yet was representing that it was. Slawin did not "complete" the SIAI because he kept seeking a resolution that effectively was impossible. (Slawin Decl., ¶51).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011). BAMS further objects that this assertion is immaterial, as it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware

of any protected conduct, or whether any protected conduct contributed to the decision to terminate him.

69.     Slawin was aware that communications between the merchants and BAMS regarding the PCI issue, their questionnaires, and BAMS responses were sent by email over the internet. (Slawin Decl., ¶52).

BAMS objects that this assertion is immaterial.

70.     Slawin believed that fraudulent communications communicated by email over the internet constitutes wire fraud. (Slawin Decl., ¶53).

BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Slawin testified explicitly that he had no understanding of how BAMS violated pertinent law, specifically the CFPA and Sarbanes-Oxley, and he did not learn or believe any conduct at BAMS violated any provision of the CFPA until after his termination.  (Slawin Dep. 27:21-24, 162:17-21, 223:19-224:3.)  This testimony is in the record and is undisputed.  (*See* BAMS SUMF ¶¶ 194, 196-197.)  Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent

testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020).  BAMS further objects that Slawin's awareness of losses from data breaches is immaterial.

71.    Everybody Slawin spoke to knew that BAMS should become PCI compliant, but they didn't want to do it. Nobody said that BAMS did not need to become PCI compliant. (Slawin Decl., ¶54).

BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind of others.  *See* Fed. R. Evid. 602.  BAMS further objects that the out-of-court statements of others regarding whether BAMS needed to become PCI compliant constitute inadmissible hearsay.  BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion."  *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).  BAMS further objects that this assertion is immaterial, as it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him.

72.    Mark Kendall agreed with Slawin that it was a problem that BAMS was receiving PAN data and was not PCI compliant. Kendall told Slawin that it would

be problematic if it got out that BAMS was not PCI compliant. (Slawin Dep. 220:14-221:17; Slawin Decl., ¶56).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.  (ECF No. 2.)

73.    To become PCI complaint would have required an audit by a Qualified Security Assessor (QSA) who, after an audit, would issue an Attestation of Compliance (AOC). However, the QSA inevitably would have discovered that BAMS had been representing that it was PCI compliant during a time when it was not and should have been. (Slawin Decl., ¶57).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion constitutes inadmissible speculation with respect to what conclusion a QSA would have drawn.  Fed. R. Evid. 602.  BAMS objects that the second sentence of this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).  BAMS further

objects that this assertion is immaterial, as it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him.

74.     Throughout the summer and continuing through the fall of 2017 Slawin participated in numerous conversations in which he discussed with his immediate superiors and other senior executives at BAMS the problems surrounding BAMS being PCI noncompliant, and his concerns and objections to BAMS' actions, which it intended to continue, to mislead and defraud its customers into believing that it was PCI compliant when it was not and had no intention of becoming PCI compliant. (Slawin Decl., ¶58).

BAMS objects to this assertion with respect to the claim that BAMS was engaged in conduct "to mislead and defraud its customers into believing that it was PCI compliant when it was not and had no intention of becoming PCI compliant," which constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011). The Court may consider that "[t]hroughout the summer and continuing through the fall of 2017 Slawin participated in numerous conversations in which he discussed with his immediate superiors and other senior

executives at BAMS the problems surrounding BAMS being PCI noncompliant, and his concerns" regarding purported fraud.

75.     Among the numerous individuals whom Slawin spoke to about BAMS' non-PCI compliance and his concerns about fraud and the ramifications if this information were to become public, were Brian Rubin, Sherra Grissom, Mark Kendall, Natasha Collins, and Walt Zimerman, who was a Senior Sales executive at BAMS assigned to the Home Depot relationship. (Slawin Dep. 188:2-20, 189:211, 203:17-205:6, 216:9-217:11; Slawin Decl., ¶59).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.  (ECF No. 2.)

BAMS objects that this assertion is immaterial in that it is undisputed that Rubin, Grissom, Collins, and Zimmerman (as the relationship lead for Home Depot, *see infra* ¶ 79) had no role in Slawin's termination.  (*E.g.,* BAMS SUMF ¶¶ 86, 94, 103, 111.)  As explained in BAMS's briefing, the assertion is immaterial as to Kendall in that Slawin contends he began expressing concerns to Kendall in July 2017.  (BAMS SUMF ¶ 244.)  This is too remote from Slawin's termination to support an inference of causation.

76.    Sherra Grissom was a Senior Vice President, Business Controls Manager of Respondent BAMS who reported to Thomas Fontana. (Slawin Decl., ¶60).

This may be considered.

77.    On at least two occasions Slawin specifically told Sherra Grissom that BAMS was engaged in fraud. Ms. Grissom was Enterprise Risk Management. "I had a dotted line to her. So she was another reporting...line for me"; thus Mr. Slawin's superior. In November 2017 Slawin told Grissom "that I felt that the fact that this isn't being disclosed to clients is omission and it's fraud" (Slawin Dep. 188:2-20, 189:2-11).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced. (ECF No. 2.)

BAMS objects that this assertion is immaterial, as it is undisputed that Grissom had no role in Slawin's termination. (*E.g.*, BAMS SUMF ¶ 103.)

78.    Thomas Fontana was BAMS' Chief Risk Officer and reported to CEO Tim Tynan. (Slawin Decl., ¶61).

This may be considered.

79.    Slawin had at least one conversation with Walt Zimmerman who was a Senior Sales executive at BAMS assigned to the Home Depot relationship. Slawin

objected to answering Home Depot's question in its questionnaire it sent to BAMS about whether BAMS was PCI compliant in any way that would indicate that BAMS was PCI compliant, when it was not. Slawin was unequivocal that he would not indicate that BAMS was PCI compliant. (Slawin Dep. 216:9-217:11; Slawin Decl., ¶62).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.  (ECF No. 2.) BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion is immaterial, as it is undisputed that the Home Depot relationship manager had no role in Slawin's termination.  (*E.g.*, BAMS SUMF ¶ 94.)

80.    Mr. Zimmerman expressed extreme concern about BAMS not being PCI compliant and indicated that he had been led to believe that BAMS was PCI complaint. (Slawin Decl., ¶63).

BAMS objects that the purported out-of-court statement by Mr. Zimmerman constitutes inadmissible hearsay as to whether BAMS was not PCI compliant and as to the conduct of others (i.e., what "he had been led to believe".  BAMS objects that

this assertion is immaterial, as it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him. Moreover, it is undisputed that Zimmerman (as the relationship manager for Home Depot) had no role in Slawin's termination. (*E.g.*, BAMS SUMF ¶ 94; *see supra* ¶ 80 (identifying Zimmerman as senior sales executive assigned to Home Depot).)

81.    Slawin was aware that Home Depot, one of BAMS' customers, was very concerned about PCI compliance issues since Home Depot's own auditors had been brought in to evaluate the handling of PAN data. (Slawin Decl., ¶64).

BAMS objects that this assertion is immaterial, as it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him.

82.    It was part of Slawin's job to provide answers to customers' inquiries, like those from Home Depot, about whether BAMS was PCI compliant. (Slawin Decl., ¶65).

This may be considered.

83.    Slawin told his superiors that he was not going to answer that BAMS was PCI compliant when it was not. (Slawin Dep. 216:9-217:11; Slawin Decl., ¶ 66).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced. (ECF No. 2.)

BAMS objects that this assertion is immaterial, because it is undisputed that the persons identified by name in the evidentiary citations (Collins, Rubin, Ebel, and the relationship manager for Home Depot) had no role in Slawin's termination. (*E.g.*, BAMS SUMF ¶¶ 86, 90, 94, 111.)

84.    Invariably the question was not answered, and other BAMS' employees who handled the Home Depot relationship, actively mislead Home Depot, and other similar BAMS' merchant and municipal customers, into believing that BAMS was PCI compliant by diverting the response to First Data. (Slawin Decl., ¶67).

BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind of others. *See* Fed. R. Evid. 602. BAMS objects that this assertion is immaterial, as it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him. BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir.

2011). This includes the conclusory assertion regarding actions by unidentified BAMS employees, as well as the assertion that "diverting the response to First Data" would somehow mislead merchants and municipal customers, was somehow actively misleading them, or would lead them to believe BAMS was PCI compliant.

85.    However, BAMS owned the relationship with Home Depot, and did not want First Data to usurp its primacy in the relationship with Home Depot. (Slawin Decl., ¶68).

BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind of others. *See* Fed. R. Evid. 602. BAMS objects that this assertion is immaterial. BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

86.    BAMS' response to Home Depot's concern and direct inquiry about BAMS' PCI compliance was to omit any disclosure that it was not PCI compliant. Such a disclosure would have been cataclysmic for the relationship since BAMS handled all the chargeback issues, not First Data, which meant that all the involved PAN information was being mishandled. (Slawin Decl., ¶69).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion is immaterial, as it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him. BAMS further objects that the second sentence in the assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

87.    Slawin was concerned about BAMS' strategy of sidestepping its customers' concerns and inquiries about PAN data security and PCI compliance instead of becoming PCI compliant. (Slawin Decl., ¶70).

BAMS objects that this assertion is immaterial, as it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him. BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported

summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

88.     Slawin repeatedly expressed his concern that BAMS was engaging in fraud by not disclosing its non-PCI compliance, instead misleading its potential and existing customers into believing that it was PCI compliant by having First Data (which was PCI compliant) answer those questions. (Slawin Dep. 124:14-17, 138:20-25, 197:23-198:7, 203-17-205:6, 206:9-18, 216:9-217:11, 218:11-220:10, 221:25-222:9; (Slawin Decl., ¶71).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.  (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated in that Slawin Dep. 197:23-198:7 pertains to potential data breaches and Slawin Dep. 216:9-217:11 specifically states that Slawin did not tell Collins, Rubin, Leonard Ebel or the Home Depot relationship manager that BAMS was engaged in "fraud".

89.     Slawin was expected to keep quiet, and to participate in BAMS' practice of misleading its merchant and municipal customers, to perpetuate their erroneous belief that BAMS was handling their PAN data in a PCI compliant manner. (Slawin Decl., ¶72).

BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind and expectations of others.  *See* Fed. R. Evid. 602.    BAMS objects that this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

90.    Other BAMS' employees who were not aware that BAMS was not PCI compliant could not believe it when Slawin discussed the issue with them. (Slawin Decl., ¶73).

BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind and expectations of others.  BAMS further objects that the out-of-court statements constitute inadmissible hearsay, including as to whether BAMS was not PCI compliant.  BAMS objects that this assertion is immaterial.    At most, this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

91.    While Slawin does not recall using the word "fraud" or "fraudulent" in his discussions with Natasha Collins, Brian Rubin, and Leonard Ebel, as he did when the talked to Mark Kendall and Sherra Grissom, he communicated that BAMS

actions in concealing its PCI non-compliance from its customers was deceptive, and could impact shareholders in various companies. (Slawin Dep. 183:5-15, 216:9-217:11; Slawin Decl., ¶75).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.  (ECF No. 2.)

BAMS objects that the assertion is immaterial, as it is undisputed that Collins, Rubin, Ebel, and Grissom did not have any role in Slawin's termination.  (*E.g.*, BAMS SUMF ¶¶ 86, 90, 103, 111.)

92.    Slawin also believed and understood that BAMS conduct violated consumer laws that protected people against data breaches, and he was aware of multimillion dollar losses from large data breaches. (Slawin Decl., ¶76).

BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Slawin testified explicitly that he had no understanding of how BAMS violated pertinent law, specifically the CFPA and Sarbanes-Oxley, and he did not

learn or believe any conduct at BAMS violated any provision of the CFPA until after his termination. (Slawin Dep. 27:21-24, 162:17-21, 223:19-224:3.) This testimony is in the record and is undisputed. (*See* BAMS SUMF ¶¶ 194, 196-197.) Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020). BAMS further objects that Slawin's awareness of losses from data breaches is immaterial.

93.    While he did not know the exact name of the CFPA, Slawin was aware from his experience in banking and regulation that entities involved in handling personal account information data, including entities involved in payment processing, were regulated under federal laws that protected the data security of personal account information, including credit card personal account information. (Slawin Decl., ¶77).

BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear

testimony."). Slawin testified he did not learn or believe any conduct at BAMS violated any provision of the CFPA until after his termination, and he does not know how BAMS's noncompliance with PCI DSS or any alleged fraudulent misrepresentation by BAMS to its customers regarding how BAMS was handling credit card data would violate the CFPA. (Slawin Dep. 27:21-24, 162:17-21, 223:19-24.) This testimony is in the record and is undisputed. (BAMS SUMF ¶¶ 194, 109.) Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020).

94. BAMS' own senior management understood the seriousness of this issue, directing that all written references to BAMS being non-PCI compliant be deleted. (Slawin Decl., ¶78).

BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Slawin testified explicitly that the only person who ever directed him

to delete "written references to BAMS being non-PCI compliant" was Mark Kendall, and the only instance of such directive about which Slawin complains occurred in a November 8, 2017 email.  (Slawin Dep. 224:14-225:15, 233:24-235:22; Slawin Dep. Ex. 13.)   This testimony is in the record and is undisputed.  (*See* BAMS SUMF ¶¶ 250-252.) Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation, by now contending that senior management generally directed the deletion of "all written references," when in fact it was a single direction from his immediate supervisor (in response to an inquiry *by Slawin* as to whether to delete the information in question). Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020).  BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind of others.  *See* Fed. R. Evid. 602.

95.    Mark Kendall, as Slawin's immediate supervisor, directed that discussion of the PAN data and PCI non-compliance issue be kept quiet, and that written references to this issue be deleted. At this time, there was no explicit statement about keeping the matter confidential, but Mark Kendall stated that it would be a problem if BAMS PCI non-compliance got out. (Slawin Decl., ¶79).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

For the reasons explained in ¶ 94, *supra*, BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine as to any implied assertion that Mark Kendall directed Slawin to delete written references on any occasion beyond the one to which Slawin testified in his deposition. BAMS objects that the second sentence of the assertion is immaterial as to any implication that Slawin had to be expressly told that a matter was confidential in order for him to violate company policies, as Slawin's obligations to comply with company policies regarding confidential information did not depend on whether the information at issue was specifically labeled as confidential.

96.    In July 2017 Slawin concluded that the SEC would be interested in BAMS' fraudulent misrepresentations and/or fraudulent concealment regarding its noncompliance with the PCI DSS rules, that such unlawful acts could be within the scope of statutes that the SEC enforces, and that he did not want to be the "fall guy." (Slawin Dep. 124:14-17, 183:5-15; Slawin Decl., ¶104).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced. (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated, as Slawin Dep. 124:14-17 does not have any relation to the assertion. BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Slawin testified explicitly that he had no understanding of how BAMS violated pertinent law, specifically the CFPA and Sarbanes-Oxley. (Slawin Dep. 223:19-224:3.) This testimony is in the record and is undisputed. (*See* BAMS SUMF ¶¶ 196-197.) Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020).

**BAMS's Responses to Slawin's Assertions Regarding The Downloaded Emails**

97.    In or about August 2017, Slawin began downloading emails to his personal email regarding the PAN data and BAMS' PCI noncompliance issue. He did this because he was concerned about being drawn into fraudulent and improper data security practices by BAMS, and to demonstrate that he had not willingly participated in a fraudulent scheme to mislead merchants into believing that BAMS was PCI compliant. (Slawin Dep. 159:22-160:5, 203:17-205:2, 206:9-18; Slawin Decl., ¶80).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.  (ECF No. 2.) BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS further objects that Plaintiff's evidence does not support the assertion stated as to the existence of any "fraudulent and improper data security practices by BAMS" or "a fraudulent scheme to mislead merchants into believing that BAMS was PCI compliant."

98.    Some of the emails that Slawin downloaded did not related to BAMS PCI noncompliance. (Slawin Decl. ¶83).

<u>This may be considered.</u>

99.    Not all of the emails Slawin downloaded referred to BAMS' PCI noncompliance. One of the emails was about his Management Form and he downloaded it to work on it from home. Apparently, one of the downloaded emails referred to BAMS' preparations for Hurricane Irma. Slawin cannot remember why he downloaded it to his personal email. It may have been to work on the hurricane preparations at home or it may just have been a mistake. Another of the downloaded emails dealt with an entirely different issue, data entered into SalesForce without independent verification. Slawin also cannot remember why he did that or if it was downloaded in error. (Slawin Decl., ¶83).

<u>BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).</u>

<u>BAMS objects that this assertion is immaterial, as whether Slawin remembers why he forwarded certain information to his email address has no impact on whether such conduct violates BAMS's policies.  BAMS further objects that this assertion is immaterial because BAMS is not required to demonstrate Slawin in fact violated its policies in order for it to have had a good faith basis for terminating him.  *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel</u>

department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

100.   To his understanding and knowledge at the time, downloading the emails did not violate any policy of BAMS. (Slawin Decl., ¶84.)

BAMS objects that this assertion is immaterial, as Slawin does not dispute receiving, executing, acknowledging, and receiving training on various policies. (*See* BAMS SUMF ¶¶ 72, 75, 78, 82.)  Further, whether Slawin *understood* that his conduct violated BAMS's policies is immaterial because it has no impact on whether such conduct violates BAMS's policies.   BAMS further objects that this assertion is immaterial because BAMS is not required to demonstrate Slawin in fact violated its policies in order for it to have had a good faith basis for terminating him.   *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

101.   Slawin did not ask the Legal Department for a copy of an MSA because he was concerned that if someone in the Legal Department asked why he wanted to see an MSA, it would raise a red flag. (Slawin Decl., ¶85).

BAMS objects that this assertion is immaterial.

102.   In or about the last week of October 2017 there was a meeting at which Mark Kendall specifically discussed that the PCI non-compliance issue was "confidential". This meeting occurred after Slawin had received and seen numerous emails about the PCI non-compliance problem that were not marked confidential, which included emails that he had downloaded. (Slawin Decl., ¶86).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).  BAMS further objects that this assertion is immaterial, including because Slawin's obligations to comply with company policies regarding confidential information did not depend on whether the information at issue was specifically labeled as confidential.

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., various emails) by means other than the document itself, and such attempt does not fall into any permissible exception.  Fed. R. Evid. 1002, 1003, 1004.

103.    While it may not have been uncommon for SIAI's to be treated as confidential until the issue was fully assessed and appropriate remediation was determined such that it could be disseminated more broadly within BAMS, with respect to the SIAI that Slawin was tasked with remediating, it was kept confidential because BAMS wanted to conceal the fact that it was not PCI compliant. (Slawin Decl., ¶102).

BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind of others.  *See* Fed. R. Evid. 602.  Slawin does not cite to any record evidence to support this unadorned speculation.  BAMS further objects on the grounds that Plaintiff's assertion relies on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). In deposition, Slawin specifically stated that he did not recall others telling him the reasons for keeping the information at issue.  (Slawin Dep. 182:16-25, 194:12-19.[3])  Plaintiff's declaration testimony is an attempt to create a material

---

[3] While BAMS did not cite to this testimony in its opening motion, as it was not material to the bases for summary judgment, both of the cited spans are within the

dispute through inconsistent testimony, without explanation, by speculating as to others' motivations for keeping certain information confidential. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020). At most, this assertion constitutes "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit" that "will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Federal Officers*, 413 F. App'x 206, 207 (11th Cir. 2011).

104.   Mr. Slawin had sent an email to Mr. Kendall on June 2, 2017, which indicated that a copy had been sent to his personal email account. (Slawin Dep. 239:7-23; Ex. 20 [Doc. 175-11]), Undisputed Facts Nos. 43 - 45.

This may be considered.

105.   The June 2, 2017, email discussed anti-trust issues. (Slawin Dep., Ex. 20 [Doc. 175-11]).

BAMS objects that this assertion is immaterial.  The email did not contain confidential business information and mainly pertained to Slawin's personal feelings about Rubin.  The passing references to "anti-trust" did not reveal BAMS's confidential information.  Even if it did, it merely further confirms that Slawin

_____

deposition excerpts submitted in connection with BAMS's motion.  (ECF No. 175-4.)

violated BAMS's policies, though at a time when Kendall was indisputably still Slawin's peer.  (*See supra* ¶ 6.)

106.   Kendall did not speak to Slawin about sending the June 2, 2017, email to his (Slawin's) personal email account. (Slawin Decl. ¶115)

BAMS objects that this assertion is immaterial.

107.   Kendall did not tell Slawin orally or in writing that there was anything objectionable about Slawin having sent a copy of his June 2, 2017, email to his (Slawin's) personal email account. (Slawin Decl. ¶116).

BAMS objects that this assertion is immaterial.

108.   BAMS did not care about Mr. Sawin [sic] emailing confidential information to his personal email until it was about BAMS not being PCI compliant and not wanting to disclose that fact to merchants. (Slawin Dep., Ex. 20 [Doc. 175-11]).

BAMS objects that Plaintiff's evidence does not support the assertion stated, including because it contains no information about what BAMS "did not care about" and because the email itself did not contain confidential business information and mainly pertained to Slawin's personal feelings about Rubin.  Moreover, as Slawin notes below, even some of the emails initially flagged by Infosec dealt with matters other than PCI compliance.  (*Infra* at ¶ 78.)

109. Mr. Kendall pointed to this exact email as "important" when considering the termination decision in December 2017. (Kendall Dep., Ex. 49, p. 1; Slawin Dep., Ex. 20 [Doc. 175-11].)

BAMS objects that the cited evidence is inadmissible on the grounds that it constitutes speculation on the state of mind of others. *See* Fed. R. Evid. 602.

BAMS objects that Plaintiff's evidence does not support the proposition stated. Specifically, the December 12, 2017 email in Ex. 29 (ECF No. 182-24) merely provides "a summary of the emails that Eric Slawin sent outside of BAMS that I [Kendall] believe as being important for our review," without any reference to the termination decision. Moreover, the summary identifies a number of different emails, not the "exact" June 2, 2017 email singularly. BAMS further objects that this assertion is immaterial, including because the email at issue was after the decision was made to terminate Slawin and because it has no impact on whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate him. BAMS further objects the cited exhibit constitutes inadmissible hearsay, as it is an out-of-court statement intended to prove the truth of the matter asserted.

110. The June 2, 2017, email was not identified by the Infosec computer search, and is not one of the ten Incident Reports. (Docs. 175-17 through 175-26).

<u>BAMS objects that this assertion is immaterial.</u>

111.    The only way that BAMS was able to refer to the June 2, 2017 email to Mr. Kendall, with a cc to Mr. Slawin's personal email, was precisely because Mr. Kendall had noticed it at the time and remembered it in December 2017. (Kendall Dep., Ex. 49, p. 1; Slawin Dep., Ex. 20 [Doc. 175-11] Docs. 175-17 through 17526).

<u>BAMS objects that this assertion violates L.R. 56.1 because the assertion is stated as an issue.  *See* L.R. 56.1(B)(1).</u>

<u>BAMS objects that Plaintiff's evidence does not support the assertion stated. Kendall Dep., Ex. 49, p. 1 does not pertain to Kendall's knowledge in either June 2017 and it does not show that "only way" BAMS identified the June 2, 2017 email (among numerous others attached to the December 12, 2017 email) is if Kendall "noticed it at the time and remembered it in December 2017."  Further, Slawin Dep. Ex. 20 is not evidence of what Mr. Kendall noticed or remembered.  BAMS further objects that Docs. 175-17 through 175-26 do not stand for the stated proposition and are instead copies of the incident reports regarding Slawin's forwarding of BAMS emails to his personal email address.  BAMS therefore objects that this assertion is inadmissible speculation.  *See* Fed. R. Evid. 602. BAMS further objects that this assertion is immaterial.</u>

111.a  Kendall provided the information to Solan regarding BAMS' PCI non-compliance issue, and described the problems with disclosure, and reputational

damage. (SDMF 109; Solan Dep. 45:14-47:7, 48:18-52:12, 53:1-55:16, 56:10-61:2, 69:2-16, 79:6-82:2, 103:22-105:5, 113:23-114:22; Kendall Dep. 45:5-48:3, 66:5-67:2, 128:7-129:19; Ex. 40; Ex. 42; Ex. 49).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has filed neither the cited Kendall deposition transcript nor attached excerpts of the same to its response.  Additionally, Slawin failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced, some of which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief.  (ECF No. 2.)

BAMS objects that Solan Dept. 69:2-16 does not support the stated proposition and instead pertains to Slawin's downloading of emails. BAMS further objects that Solan Dep. 113:23-114:22 does not support the stated proposition and instead pertains to BAMS' loss of trust and confidence in Slawin.  BAMS further objects that Ex. 40 constitutes inadmissible hearsay as to the existence or substance of purported communications between Kendall and Solan.

**BAMS's Responses to Slawin's Assertions Regarding Slawin Did Not Violate Any Policy**

112.    While Mr. Kendall spoke to Mr. Slawin about keeping BAMS' PCI non-compliance quiet because it would be a problem "if it got out" that BAMS was not PCI compliant, the discussion about keeping the matter confidential occurred in or about the last week of October 2017. (Slawin Decl. ¶¶56, 86).

BAMS objects that this assertion is immaterial, including because Slawin's obligations to comply with company policies regarding confidential information did not depend on whether the information at issue was specifically labeled as confidential.

113.    The first time that emails about the PCI non-compliance issue first included reference to the issue being confidential was on or about October 26, 2017. (Ex. 19; Slawin Decl., ¶86).

BAMS objects that this assertion is immaterial, including because Slawin's obligations to comply with company policies regarding confidential information did not depend on whether the information at issue was specifically labeled as confidential.

**BAMS's Responses to Plaintiff's Assertions Regarding Proprietary Rights and Information Agreement**

114.    Slawin's November 5, 2015, offer letter did not advise him of any specific nondisclosure obligations and specifically did not advise him that it would be a violation of any BAMS policy if he were to download any information from his work email account to his personal email account. (Slawin Dep. 148:2-6. Slawin Decl., ¶99).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" depositions referenced.  (ECF No. 2.)

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document by means other than the document itself, and such attempt does not fall into any permissible exception. Fed. R. Evid. 1002, 1003, 1004. BAMS further objects that Plaintiff's evidence does not support the evidence stated. The cited deposition testimony pertains only to Slawin's understanding regarding the legal impact of the offer letter, not that the letter contained or did not contain specific contents:

> Q. As part of the offer from BAMS, you understood that you were also agreeing to certain nondisclosure obligations?
> A. I can't say that I understood that at the time.

(Slawin Dep. 148:2-6.) BAMS further objects on the grounds that Plaintiff's assertion relies on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). In deposition, Slawin specifically identified the offer letter. (Slawin Dep. 147:5-148:9; ECF No. 175-6.) This testimony and the offer letter are in the record and are undisputed. (*See* BAMS SUMF ¶ 4.) The offer letter on its face contains nondisclosure obligations. (*See* ECF No. 175-6 at PLAINTIFF 000151). Plaintiff's declaration testimony is an attempt to create a

material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020). BAMS further objects that it is immaterial that the offer letter did not specifically state "that it would be a violation of any BAMS policy if he were to download any information from his work email account to his personal email account," as that has no impact on whether such conduct would violate BAMS's policies. BAMS further objects that this assertion is immaterial because BAMS is not required to demonstrate Slawin in fact violated its policies in order for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

115.    During his employment by BAMS, Slawin did not disseminate any of BAMS' materials or information outside BAMS, to any other person, organization or entity. (Solan Dep. 161:15-162:1; Slawin Dep. 204:11-22).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" depositions referenced.  (ECF No. 2.)

BAMS further objects that Plaintiff's evidence does not assert the proposition stated with respect to Slawin Dep. 204:11-22.  BAMS further objects that this assertion is immaterial because it was not necessary for Slawin to further disseminate the information forwarded to his personal email address in order for him to violate BAMS's policies.  Further, BAMS is not required to demonstrate Slawin in fact violated its policies in order for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

116.    Slawin did not violate BAMS' Proprietary Rights and Information Agreement. (Solan Dep. 161:15-162:1; Slawin Dep. 204:11-22).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" depositions referenced.  (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated. Solan Dep. 161:15-162:1 expressly states that Solan believed Slawin violated the Proprietary Rights and Information Agreement. Further, Slawin Dep. 204:11-22 (which omits the question posed and the entirety of Slawin's answer) indicates the reason why Slawin did not delete the BAMS emails from his personal email account and does not pertain to Slawin's violation of BAMS' Proprietary Rights and Information Agreement. BAMS further objects that this assertion is immaterial because BAMS is not required to demonstrate Slawin in fact violated its policies in order for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

117. BAMS' Proprietary Rights And Information Agreement (Doc. 175-7) (hereinafter "Proprietary Rights and Information Agreement") does not prohibit BAMS' employees from emailing BAMS' materials or information to their personal emails, as long as those materials or information is not subsequently disseminated outside the company, to another person, organization or entity.

BAMS objects that Plaintiff's evidence does not support the assertion stated. The Proprietary Rights and Information Agreement did not require disclosures in order for Slawin to have violated the same; instead, as an example, Slawin was required to "hold and maintain, in strictest confidence and in accordance with Company policy, any proprietary and confidential information . . . ." (ECF No. 175-7 at § 5.) The act of forwarding company information to his personal email address is inconsistent with his requirement of holding the same "in strictest confidence and in accordance with Company policy," regardless of whether he further disseminated the same. BAMS further objects that this assertion is immaterial because BAMS is not required to demonstrate Slawin in fact violated its policies in order for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

118.    BAMS does not assert that Mr. Slawin released or published the emails to anyone outside the company. (Solan Dep. 161:15-162:1).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

BAMS objects that this assertion is immaterial because it was not necessary for Slawin to further disseminate the information forwarded to his personal email address in order for him to violate BAMS's policies. Further, BAMS is not required to demonstrate Slawin in fact violated its policies in order for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

119.    The Proprietary Rights and Information Agreement has 14 headings, 9 of which (1. Assignment of Inventions, 2. Prior Inventions, 6, Former Employer Information, 7. Third Party Information, 10. Governing Law, 11. Severability, 12. Survival, 13. Waiver, and 14. Entire Agreement), clearly have nothing to do with the factual issues in this case. (Doc. 175-7).

BAMS objects that this assertion is immaterial.

120.    Heading Nos. 3 and 4 of the Proprietary Rights and Information Agreement concern employee inventions, not emails. (Doc. 175-7).

BAMS objects that this assertion is immaterial.

121.    Heading No. 3 is entitled, Maintenance and Return of Records. It provides in part that, "I will keep and maintain adequate and current written records related to any invention made by me." *(Id.),* (Emphasis added).

BAMS objects that this assertion is immaterial.

122.    The rest of the language within Heading No. 3 refers to employee obligations at the time of leaving BAMS, which Mr. Solan admitted was not material to BAMS' decision to terminate Mr. Slawin's employment. *(Id.,* Solan Dep. 166:3-7).

BAMS objects that this assertion is immaterial.

123.    Heading No. 4 is similarly concerned with Slawin ". . . disclos[ing] all inventions ..." (Doc. 175-7).

BAMS objects that this assertion is immaterial.

124.    Heading No. 5 is entitled Company Information, and requires the BAMS employee to maintain confidential information ". . . in strictest confidence . . ." and not to ". . . release or publish the information to anyone outside the Company . . ." *(Id.)* Again, BAMS does not assert that Mr. Slawin released or published the emails to anyone outside the company. (Solan Dep. 161:15-162:1).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.) BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that the second sentence of the assertion is immaterial because the Proprietary Rights and Information Agreement did not require disclosures in order for Slawin to have violated the same; instead, as an example, Slawin was required to "hold and maintain, in strictest confidence and in accordance with Company policy, any proprietary and confidential information . . . ." (ECF No. 175-32 at § 5.) Whether Slawin further disseminated the emails is immaterial to whether the act of forwarding company information to his personal email address constitutes holding the same "in strictest confidence and in accordance with Company policy[.]" BAMS further objects that this assertion is immaterial because BAMS is not required to demonstrate Slawin in fact violated its policies in order for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the

employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

125.   Heading No. 8 ("Employment") is just a provision that the employment is at-will. (Doc. 175-7).

BAMS objects that this assertion is immaterial.

126.   Heading No. 9 ("Non-limitation of Rights") provides only that the employer is not waiving any rights it might have. *(Id.)*

BAMS objects that this assertion is immaterial.

127.   There was therefore no basis for Mr. Solan reasonably believing that Mr. Slawin had violated any provision of the Proprietary Rights And Information Agreement. *(Id.,* Solan Dep. 161:15-162:1).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)  BAMS further objects that this assertion violates L.R. 56.1 because the assertion is stated as an issue or legal conclusion.  *See* L.R. 56.1(B)(1).

BAMS objects that Plaintiff's evidence does not support the assertion stated.  The Proprietary Rights and Information Agreement did not require disclosures in order for Slawin to have violated the same; instead, as an example, Slawin was required to "hold and maintain, in strictest confidence and in accordance with Company policy, any

proprietary and confidential information . . . ."   (ECF No. 175-32 at § 5.)  The evidence presented does not demonstrate that the act of forwarding company information to his personal email address constitutes holding the same "in strictest confidence and in accordance with Company policy," and thus does not demonstrate Solan did not reasonably believe Slawin violated the Proprietary Rights and Information Agreement. BAMS further objects that this assertion is immaterial because BAMS is not required to demonstrate Slawin in fact violated its policies in order for it to have had a good faith basis for terminating him.  *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

**BAMS's Responses to Plaintiff's Assertions Regarding Associate Handbook**

128.    Mr. Solan testified that the relevant provisions of the Associate Handbook referred to the alleged use, access, disclosure, modification, destruction, damage and removal of confidential emails. (Solan Dep. 163:7-21).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

129.    Mr. Solan admitted that there was no evidence that Mr. Slawin disclosed any of the emails to anyone else, or that he modified, destroyed or damaged them. (Solan Dep. 158:13-159:3, 171:1-25).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

BAMS objects that this assertion is immaterial.

130.    Mr. Solan admitted that BAMS made the decision to fire Mr. Solan [sic] before it had any evidence that Mr. Solan had disclosed any of the emails to anyone outside the company. (Solan Dep. 172:1-20).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

BAMS objects that this assertion is confusing in that it refers to "the decision to fire Mr. Solan," and Plaintiff's cited evidence does not support this assertion. Regardless, BAMS objects that—even as to Slawin—this assertion is immaterial because it was not necessary for Slawin to further disseminate the information forward to his personal email address for him to violate BAMS's policies.  Further, BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis for terminating him.  *See Moakler v. Furkids, Inc.*, 374

F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

131.    While Mr. Solan asserted that Mr. Solan had "removed" the emails from BAMS' server, he acknowledged that those emails were still on BAMS' server. (Solan Dep., 159:12-24).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

BAMS objects that this assertion is confusing in that it states "Mr. Solan had 'removed' the emails from BAMS' server," and Plaintiff's cited evidence does not support this assertion. Regardless, BAMS objects that—even as to Slawin—this assertion is immaterial, as whether Slawin left originals of the emails on BAMS's system does not alter whether he removed copies from BAMS's system by forwarding the same to his personal account. Further, BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D.

89

Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

132.  Mr. Solan asserted that Mr. Slawin had violated the provision of the Associate Handbook regarding intellectual property because he had not preserved the confidentiality of the emails, but again, admitted that there was no evidence that Mr. Solan had disclosed them or sent them to anyone outside the company, or that he had done anything else with them other than send them to his personal email. (Solan Dep. 172:22-173:12).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

BAMS objects that this assertion is confusing in that it states "there was no evidence that Mr. Solan had disclosed [etc.]," and Plaintiff's cited evidence does not support this assertion.  Regardless, BAMS objects that—even as to Slawin—BAMS objects that Plaintiff's evidence does not support the assertion stated.  Among other things, the testimony cited does not pertain to the Associate Handbook (Dep. Exhibit 72; ECF No. 176-3).  (*E.g.*, Solan Dep. 172:22-173:12 (discussing Dep. Exhibit 71).) BAMS further objects that it does not support the proposition that Slawin sending the

emails to his personal email address was *not* a violation of the Associate Handbook. Further, BAMS objects that this assertion is immaterial as BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

133.    Slawin did not violate the Associate Handbook. (Solan Dep. 158:13-159:3, 159:12-24,163:7-21, 171:1-173:12).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated. Among other things, various spans of the testimony cited do not pertain to the Associate Handbook (Dep. Exhibit 72; ECF No. 176-3). (*E.g.*, Solan Dep. 171:1-173:12 (discussing Dep. Exhibit 71).) The testimony as to the Associate Handbook refers to "the same language we saw before about use, access, disclosure, modification, destruction, damage, delay and removal[.]" (*See* Solan Dep. 163:7-

21.)  In the referenced prior exchange, which is also cited in connection with this assertion, Solan clearly expresses his belief that Slawin removed confidential information from BAMS's servers:

> Q. Did Mr. Slawin remove any confidential information, to your understanding?
> A. From BAMS' servers, yes.

(Solan Dep. 159:18-20.)  BAMS further objects that this assertion is immaterial as BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis for terminating him.  *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

**BAMS's Responses to Slawin's Assertions Regarding Code of Ethics**

134. With respect to the Code of Ethics, Mr. Solan asserted that Mr. Slawin had violated the section regarding making sound business decisions but was unable to ". . . recall a specific sentence that was . . . violated . . ." (Solan Dep. 166:17168:4). Instead, Mr. Solan could only testify to his belief that Mr. Slawin had violated the Code of Ethics " ...  just in general." *(Id.).*

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

135. Slawin did not violate the Code of Ethics. (Solan Dep. 166:17-168:4).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the proposition stated, as the cited testimony clearly states that Solan believed that Slawin violated the Code of Ethics, and Slawin's mere sending of confidential business emails to his personal email account violated the Code of Ethics. BAMS further objects that this assertion is immaterial as BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

**BAMS's Responses To Slawin's Assertions Regarding Information Security Policy**

136.   Mr. Slawin never received the Global Information Security Policy. (Slawin Dep. 163:24-164:2).

BAMS objects that this assertion is immaterial as it does not impact whether the policy existed or whether BAMS believed in good faith that Slawin had violated the same.  Moreover, Slawin it is undisputed that Slawin received training on global information security.  (BAMS SUMF ¶ 82.)

137. Mr. Solan testified that Mr. Slawin had violated Section 3.3.2 ("Information Handling") of the Global Information Security Policy, referring specifically to the opening paragraph of that section, and to subsection (f). (Solan Dep. 158:3-12).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

138.   The opening paragraph of the section requires that "Company information" be handled so as to safeguard it from unauthorized, " . . . use, access, disclosure, modification, destruction, damage, delay, or removal. . ." (Doc. 176-1, p. 10 of 19).

This may be considered.

94

139.   Mr. Solan admitted that there was no evidence that Mr. Slawin had modified, destroyed or damaged the emails, or that he had done anything else with them other than send them to his personal email. (Solan Dep. 158:13-159:3, 171:125, 172:22-173:12; Slawin Decl. ¶120.)

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

140.   While Mr. Solan asserted that Mr. Solan had "removed" the emails from BAMS' server, he acknowledged that those emails were still on BAMS' server. (Solan Dep., 159:12-24).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

BAMS objects that this assertion is confusing in that it states "Mr. Solan had 'removed' the emails from BAMS' server," and Plaintiff's cited evidence does not support this assertion.   Regardless, BAMS objects that—even as to Slawin—this assertion is immaterial, as whether Slawin left originals of the emails on BAMS's system does not alter whether he removed copies from BAMS's system by forwarding the same to his personal account.  Further, BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis

for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

141.    Subsection (1) prohibits transfer by or storage on a device or network service not provided by BAMS/FDC (First Data), but Mr. Slawin did not save BAMS emails on any laptop. (Slawin Decl. ¶121).

BAMS objects that Plaintiff's evidence does not support the assertion stated regarding the substance of "Subsection (1)."

BAMS objects that this assertion violates the best evidence rule in that Slawin is attempting to prove the contents of a document (i.e., the policy) by means other than the document itself, and such attempt does not fall into any permissible exception. Fed. R. Evid. 1002, 1003, 1004. BAMS objects that this assertion is immaterial. Whether Slawin saved the emails to a laptop does not alter whether he transferred them to an external network service by forwarding them to a personal email account. Further, BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.)

(explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

142.    The termination letter required Mr. Slawin to return his company-issued laptop, which he did. (Solan Dep., Ex. 45 [Termination letter] [Doc. 175-27]; Slawin Decl. ¶122).

BAMS objects that this assertion is immaterial.

143.    Slawin did not violate the Information Security Policy. (Doc. 176-1, p. 10 of 19; Solan Dep. 158:3-12, 158:13-159:3, 171:1-25, 172:22-173:12, 159:12-24; Solan Dep., Ex. 45 [Termination letter] [Doc. 175:27]),

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated as to whether Slawin violated the Information Security Policy.  In fact, some of the cited testimony says exactly the opposite:

Q. And which of these did Mr. – did Mr. Slawin violate?  Can you understand me.

A. Yeah. Let me reread them. So to my knowledge, he violated the opening paragraph, as well as Section F. Those appear to be the two most relevant portions of this that were violated.

Q. I'm sorry. You said the first paragraph?

A. Yeah, the opening paragraph under 3.32, information handling, as well as the lettered F section underneath that.

\* \* \*

Q. Did Mr. Slawin remove any confidential information, to your understanding?

A. From BAMS' servers, yes.

(Solan Dep. 158:3-12, 159:18-19.) BAMS further objects that this assertion is immaterial, as BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

**BAMS's Responses To Plaintiff's Assertions Regarding End User Policy**

144. The End User Policy provides only that emails sent *outside* the company must be encrypted, and also sets forth a retention policy for emails. (Solan Decl., Exs. 1, 2).

BAMS objects that Plaintiff's evidence does not support the assertion stated. The evidence cited does not support the proposition that disclosure outside the

company is necessary for violating the End User Policy, that Slawin did not in fact violate the End User Policy, or that the End User Policy "provides only" the restrictions stated within this assertion. To the contrary, Section 3.7 of the End User Policy provides, "[t]he use of information systems or email accounts not provided by the Company and approved to handle BAMS Information is prohibited." (ECF No. 176-4 at 26, 42.) BAMS further objects that this assertion is immaterial, as BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis for terminating him. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

145.  Slawin did not violate the End User Policy because BAMS does not assert that Slawin released or published the emails to anyone outside the company. (Solan Dep. 161:15-162:1, Solan Decl., Exs. 1, 2).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated. The evidence cited does not support the proposition that disclosure outside the company is necessary for violating the End User Policy or that Slawin did not in fact violate the End User Policy.  To the contrary, Section 3.7 of the End User Policy provides, "[t]he use of information systems or email accounts not provided by the Company and approved to handle BAMS Information is prohibited."  (ECF No. 176-4 at 26, 42.)  BAMS further objects that this assertion is immaterial, as BAMS is not required to demonstrate Slawin in fact violated its policies for it to have had a good faith basis for terminating him.  *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

**BAMS's Responses to Slawin's Assertions Regarding December 8, 2017 Telephone Conference Call with Solan and Kendall**

146.    On Friday, December 8, 2017, late in the afternoon, Slawin received an electronic meeting invite, and dialed in to the meeting. He spoke by telephone with Mike Solan from HR and Mark Kendall. At the time, Mark Kendall was Slawin's immediate supervisor. (Slawin Decl., ¶87).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

147.    Solan asked Slawin why he had downloaded the emails. Slawin responded that he had downloaded some of them to work on them at home. (Slawin Decl., ¶88).

This may be considered.

148.    During the December 8, 2017 telephone conference, Solan did not identify the specific emails that he was talking about. (Slawin Decl., ¶88).

BAMS objects that this assertion is immaterial.

149.    During the December 8, 2017 telephone conference, Slawin was not asked to return or delete the emails that Slawin had downloaded to my personal email account. (Slawin Decl., ¶89).

BAMS objects that this assertion is immaterial.

150.    The December 8, 2017 telephone conference call was short; it lasted approximately 5 -10 minutes. (Slawin Decl., ¶90).

BAMS objects that this assertion is immaterial, as the length of the call has no bearing on BAMS's reasons for terminating Slawin's employment.

151.  At the end of the telephone call, Solan said he was going to send Slawin some documents to review. Solan did not describe the contents of those documents nor did he say that Slawin would be asked to sign any document. (Slawin Decl., ¶91).

BAMS objects that the second sentence of this assertion is immaterial, as whether Solan specifically informed Slawin of the documents that he would be sending at the time does not alter what was ultimately provided to Slawin.  The first sentence may be considered.

152.  During the telephone conversation on December 8, 2017, Slawin was courteous, business-like and professional. He answered the questions that he was asked. Slawin was not "apathetic, flippant, and unforthcoming" during the call. (Slawin Decl., ¶93).

BAMS objects that Slawin's assertion concerning his interpretation of his own conduct is immaterial to whether BAMS had a good faith belief that Slawin had violated company policy and that there was loss of trust that warranted termination. *See Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (Totenberg, J.) (explaining that federal courts should not serve as a "super-personnel department"); *see also Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct . . . ; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory[.]").

153. During the December 8, 2017 telephone call Slawin did not confirm that he (Slawin) did not usually send emails from his BAMS email address to his personal email address. The question of whether Slawin usually did that was not raised by Mr. Solan and it was not discussed. (Slawin Decl., ¶94).

BAMS objects that this assertion is immaterial.

154. During the December 8, 2017 telephone conference call Slawin was not advised that he had been terminated, nor was the possibility of termination mentioned by Mr. Solan or Mr. Kendall. (Slawin Decl., ¶95).

This may be considered.

155. Slawin subsequently on that same date, Friday, December 8, 2017, received an email stating that he had violated various company policies by downloading the emails, directing Slawin to "cease and desist" from downloading any further emails, requiring Slawin to delete the emails that he had downloaded, and requiring Slawin to sign a Declaration that he had done that. (Slawin Decl., ¶92).

This may be considered. (BAMS SUMF ¶¶ 63-64.)

**BAMS's Responses to Slawin's Assertions Regarding The Termination Date**

156. The decision to terminate Slawin's employment with BAMS was made and effective December 12, 2017. (Solan Dep., Ex. 45 [Termination letter] [Doc. 175:27], Solan Dep. 131:21-132:12, 132:25-134:2).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated as to when Slawin's termination decision was made and effective, but rather addresses (1) when Solan sent the termination letter to Slawin (which identifies an earlier effective date of his termination) and (2) separate information about Solan's knowledge of Slawin's personal email address.

157.    Mr. Solan admitted at his deposition that Mr. Slawin was fired on December 12, 2017:

> Q. . ... Let's go down one more. It says on Tuesday, December 12, 2017 2:05 p.m. Mike Solan to Eric Slawin; you see that?
> A. I do, yes.
> Q. Okay. And that's the email at which you forwarded him the termination letter by email, correct?
> A. It appears so, yes.
> Q. All right. Any reason not doubt that?
> A. Nope.
> Q. Okay. So Mr. Slawin was fired on December 12, 2017, correct?
> A. To my knowledge, that's correct.

(Solan Dep. 131:21-132:8).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated. Specifically, the quoted language excludes an objection to form from BAMS's counsel that affects the admissibility of the testimony for the proposition, and it also cuts off the remainder of Solan's answer, as well as a follow-up clarification by Solan:

> Q. Okay. So Mr. Slawin was fired on December 12, 2017, correct?
> A. To my knowledge, that's correct.
> MR. GALANEK: Objection, form.
> THE WITNESS: That's when we – that's when we were able to notify of his termination.
> BY MR. MARX:
> Q. What do you mean, were able?
> A. To my knowledge, we were trying to get in touch with him, and this is December 12th is [sic] when we were able to finally notify him of his termination.

(Solan Dep. 132:6-18.) This testimony is in the record, and the excerpts were submitted with BAMS's motion for summary judgment. (*See, e.g.*, BAMS SUMF ¶¶ 132.)

158. BAMS had Mr. Slawin's personal email at all relevant times, including the period December 8-12, 2017. (Solan Dep. 131:25-132:5, 132:19-133:24).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

BAMS objects that this assertion is immaterial, as BAMS's capability of emailing the termination letter does not affect when the decision to terminate Slawin was made.

159.    After the December 8, 2017 telephone call, Mr. Solan did not call or Instant Message Slawin until the morning of Monday, December 11, 2017. (Slawin Decl.¶100).

BAMS objects that this assertion is immaterial, as when BAMS informed Slawin of his termination does not affect when the decision to terminate Slawin was made.

160.    The termination letter was emailed to Mr. Slawin's personal email on December 12, 2017. (Solan Dep. 131:25-132:5, 132:19-133:24).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

161.    BAMS could have emailed the termination letter earlier, on Friday, December 8, 2017 or Monday, December 11, 2017. (Solan Dep. 134:15-23).

<u>BAMS objects that this assertion is immaterial, as BAMS's capability of emailing the termination letter does not affect when the decision to terminate Slawin was made.</u>

162.    On December 11, 2107, [sic] Mr. Slawin sent an email to Mr. Solan explaining why he would not sign the requested declaration:

> ….
>
> Should I acknowledge the statements in the declaration by writing my signature on the document I could make it appear that I as a declarant agree with the actions taken by other parties to withhold information possibly demonstrated by and referenced as "BAMS' confidential business information" in the declaration statement. I have not at any time taken nor will I ever agree with any actions taken by parties either individually or acting as joint tortfeasors which implies, demonstrates, or creates a belief that information should be withheld that could damage the counter-parties of Bank of America Merchant Services, Inc.
>
> ….

(Solan Dep., Ex. 48 [Doc. 175-29, BAMS 180, Page 2 of 11]).

<u>This may be considered.  (*See* BAMS SUMF ¶ 130.)</u>

162.A.        Slawin testified that the email was a continuation of his repeated complaints about BAMS' fraud:

> The e-mails's clear. . . when you look at holistically. . . it's clear, okay, that those e-mails, I wasn't going to delete those e-mails because I was in the middle of a fraud. And I'm not

> going to be pulled into that. And I'm not going to be -- I'm not
> going to be set up so I -- you know, my contention is I told
> them that and they terminated me. And they retaliated against
> me.

(Slawin Dep. 205:9-21) See also, (Slawin Dep. 203:17-205:2).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced. (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated, and the cited portions of the deposition transcript do not contain the quoted testimony.

163.    Mr. Slawin's reference to the "counter-parties" of BAMS was to the merchants, and he was objecting to BAMS' ongoing efforts to withhold from the merchants the information that BAMS was not PCI compliant. (Slawin Decl. ¶96).

BAMS objects on the grounds that Plaintiff's assertions rely on a sham declaration that is inadmissible under the Sham Affidavit Doctrine. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). In his deposition, Slawin testified the following:

Q. Did you ever tell anyone in HR that the company was engaged in fraudulent conduct?
A. HR? No.

* * *
Q. Did you ever express this concern that you had regarding misrepresentations to clients or fraud on clients, did you ever put that in writing and provide it to anyone at BAMS?
A. No.

(Slawin Dep. 185:21-23, 188:21-15; *see also id.* 198:23-199:12, 200:3-8.)   This testimony is in the record, and the excerpts were submitted with BAMS's motion for summary judgment.  (*See, e.g.*, BAMS SUMF ¶¶ 216, 218.)  Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine.  *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020).  BAMS further objects that the foregoing assertion concerning Slawin's interpretation of his own email is immaterial because, *inter alia*, it does not impact whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether Solan was aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate Slawin.

164.   Mr. Slawin was fired the next day, December 12, 2017. (Solan Dep., Ex. 45 [Termination letter] [Doc. 175:27]; Solan Dep. 131:25-132:5, 132:19-133:24).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated as to when Slawin was fired, but rather addresses (1) when Solan sent the termination letter to Slawin (which identifies an earlier effective date of his termination) and (2) separate information about Solan's knowledge of Slawin's personal email address.

164.A.       At his deposition, Mr. Solan was unable to testify as to when he made the termination recommendation to Ms. De Castro:

> Q. How many conversations did you have with Ms. De Castro about this - Mr. Slawin downloading emails? A. I would say at least three, but I don't recall exactly how many.
> Q. Okay. Do you recall any other than the one you've talked to me about?
> A. Yes. I recall a conversation with her around a recommendation based on the findings of our review. The recommendation was to — around terminating his employment.
> Q. And whose recommendation was that?
> A. It was my recommendation.
> Q. Okay. And was that sometime on or about December 8, 2017?
> A. I don't recall the specific dates, but it was towards the end of 2017.

(Solan Dep. 42:17-43:9).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2.)

BAMS further objects that Plaintiff's evidence does not support the assertion stated. In his deposition, Solan later identified the precise date of the recommendation:

> Q. Okay. So let me go back to my earlier question about this meeting. And I understand you don't remember whether it was before or after your 4:20 p.m. email to Mr. Slawin, but was the meeting with these other people, who you call the partners, Ms. De Castro and others, was that on December 8, 2017?
> A. Yes, it would have been on December 8th. I just don't recall this specific time.
> Q. But it was on December 8, 2017, correct?
> A. That's correct.
> Q. And that's when the decision was made to fire Mr. Slawin, correct?
> A. That is correct, after his interview.

(Solan Dep. 141:11-24; *see also id.* at 120:12-124:19, 127:8-12.) This testimony is in the record, and the excerpts were submitted with BAMS's motion for summary judgment. (*See, e.g.*, BAMS SUMF ¶ 116.) BAMS therefore further objects that this assertion is immaterial in that Solan's failure to recall the specific date earlier in his deposition does not present a genuine issue of fact when he recalled said date later in the same deposition.

165.   The contemporaneous email chain (Doc. 175-29 [Solan Dep., Ex. 48]) reflects only one attempt to call Mr. Slawin, and that was on the morning of December 11, 2017. *(Id.,* at BAMS 182, Page 4 of 11). The email chain does not refer to or memorialize any attempt to call Mr. Slawin on December 8, 2017, nor any attempt to contact Mr. Slawin by Instant Message. Moreover, none of the emails refer to any

termination decision. To the contrary, Mr. Solan's email to Mr. Slawin on December 11, 2017 at 2:17 P.M. *(Id.,* at BAMS 188, Page 10 of 11), refers only to the need "to talk through this situation, as well as next steps."

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion is immaterial.

166.  Mr. Solan did not call Mr. Slawin after the telephone conference on the afternoon of Friday December 8, 2017 until the morning of Monday, December 11, 2017. (Slawin Decl., ¶100).

BAMS objects that this assertion is immaterial.

**BAMS's Responses to Slawin's Assertions Regarding Causation**

167.  Mr. Slawin was fired because of a concern that Mr. Slawin might disclose to merchants the fact that BAMS was not PCI compliant:

> A. No. As stated earlier, that the reason for termination was both the policy violation, as well as our loss in [sic] trust and confidence that he could continue in his role.
> Q. And the loss of trust - I'm sorry. I apologize. I thought you were done.
>    The loss of trust and confidence had to do with the concern that Mr. Slawin might disclose to merchants the fact that BAMS was not PCI compliant, correct?
> A. Correct. He was —
>    MR. GALANEK: Objection, form.

THE WITNESS: -- part of this — correct, to perform
his role (indiscernible) organized effort as business to
address the issues, have a communication plan, and he
-- so we had no confidence that he would be able to
continue in that role and —
BY MR. MARX:
Q. So it was —
A. — maintain confidentiality.
Q. So it was part of that issue, right?
    MR. GALANEK: Objection, form.
A. Related to that issue.

(Solan Dep. 124:16-125:14).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of
this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a
copy of the specific pages of the" Solan deposition referenced.  (ECF No. 2).

BAMS further objects that it lodged objections to form affecting the
admissibility of the line of questioning; moreover, the citation excludes the initial
question (and objection) preceding the first answer, rendering the testimony
incomplete.  BAMS further objects that Plaintiff's evidence does not support the
assertion stated, as the first line of the testimony states "that the reason for
termination was both the policy violation, as well as our loss in [sic] trust and
confidence that he could continue in his role," not a freestanding concern about
potential disclosures.  BAMS further objects that this assertion is immaterial, as it
does not impact whether Slawin believed (subjectively or objectively) in any violation
of pertinent law, whether he engaged in any protected conduct, whether any alleged

protected conduct by Slawin was discussed by Solan or De Castro, whether either Solan

or De Castro were aware of any protected conduct, or whether any protected conduct

contributed to the decision to terminate Slawin.

168.  The two decision makers were Michael Solan and Mark Kendall. In its

Supplemental Interrogatory Responses, No. 3, BAMS responded that:

> . . . . By way of further and supplemental response,
> BAMS responds that . . . Mike Solan, Human Resources,
> and Mark Kendall, Plaintiff's manager concluded that there
> was a loss of confidence . . . and, therefore, they ultimately
> decided to terminate Plaintiff's employment with BAMS.

(Ex. 76) (Emphasis added). At his deposition, Plaintiff's counsel read that

answer to Mr. Kendall:

> Q. . . . And my question is: Is that a correct
> statement? A. It appears correct.

(Kendall Dep. 33:7-34:3).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of

this Court (ECF No. 2) in that Plaintiff has neither filed the cited deposition transcript

nor attached excerpts of the same to its response.

BAMS objects that Plaintiff's evidence does not support the assertion stated

in that the cited interrogatory response indicating that Solan and Kendall "decided

to terminate Plaintiff's employment" does not support Plaintiff's assertion that

Kendall was a "decision maker" in the sense of having authority to either implement

or block the termination decision.  BAMS further objects that this assertion is

immaterial in that Slawin contends he had reported concerns to Kendall since July 2017 (*see* BAMS SUMF ¶ 244), which is too remote to support an inference that any concerns purportedly expressed to Kendall contributed to Slawin's termination irrespective of whether Kendall had a decision-making role in connection with the same.

169.   Solan Dep., Ex. 51 [Doc. 175-31], purports to be Mr. Solan's record of the interactions during the time period December 8 - 20, 2017. At Bates No. BAMS 9587 [Doc. 175-31 at Page 3 of 5], Mr. Solan wrote in pertinent part,

. . . . the decision (as approved by Mark Kendall (Mgr.)

[sic] . . . is to terminate his [Mr. Slawin's] employment

(Emphasis added).

BAMS objects that Slawin's characterization as to what is "pertinent" in the cited exhibit states an issue in violation of L.R. 56.1(B)(1).  BAMS further objects that whether Kendall (among others identified in the document) approved the decision to terminate is immaterial in that it does not equate to whether Kendall in fact made the determination decision or had authority over the determination decision; moreover, it is immaterial in that Slawin contends he had reported concerns to Kendall since July 2017 (*see* BAMS SUMF ¶ 244), which is too remote to support an inference that any concerns purportedly expressed to Kendall contributed to Slawin's termination irrespective of whether Kendall had a decision-making role in connection with the same.

115

170.   Solan, the other decision maker, received Slawin's December 11, 2017 email stating that Slawin would not destroy the emails because he (Slawin) wanted to be able to demonstrate that he had not willingly participated in BAMS' fraudulent scheme. (Solan Dep., Ex. 48 [Doc. 175-29, BAMS 180, Page 2 of 11]).

BAMS objects that Plaintiff's evidence does not support the assertion stated, as the cited email does not contain any reference to a "fraudulent scheme" or fraud of any kind. Additionally, Plaintiff's evidence does not support his reference to Solan as "the other decision maker." While the Court may consider the email chain itself (*see* BAMS SUMF at ¶¶ 125-130), the substance of Slawin's email refusing to execute the declaration concerning the destruction of the emails that he sent to himself is immaterial to the resolution of the motion because, *inter alia*, the decision to terminate Slawin had already been made, Slawin was already aware that he could not access BAMS's system, and the email itself does not constitute protected conduct.

171.   Slawin was fired the next day. (Solan Dep., Ex. 45 [Termination letter] [Doc. 175:27]; Solan Dep. 131:25-132:5, 132:19-133:24).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated as to when Slawin was fired, but rather addresses (1) when Solan sent the termination

letter to Slawin (which identifies an earlier effective date of his termination) and (2)

separate information about Solan's knowledge of Slawin's personal email address.

172.   On December 7, 2017, Mr. Solan sent an email to Maryann De Castro, his

immediate supervisor and the person whom BAMS asserts accepted the

recommendation of Messrs. Solan and Kendall and made the ultimate termination

decision. (Solan Dep., Ex. 42; Solan Dep., 111:19-25). He wrote in pertinent part:

> See below for my summary of the Information Security
> Escalation regarding high risk confidential information
> that Eric Slawin sent to his personal email address.
> ….
> The content of the material . . . is related to the way
> BAMS treats Primary Account Number (PAN) and
> associated implications.
>
> . . . . The emails . . . include our acknowledgement that
> this issue exists . . . as well as some potentially damaging
> quotes about not wanting to implement internal
> compliance because of the cost . . .
>
>  ….
> There could be severe ramifications if the information . . .
> were to be shared publicly . . . . In addition to extensive
> reputational damage, Joe Moll also shared a scenario
> [emphasis in original] with a company that did not take
> adequate steps to protect customer data, where Visa and
> Amex dropped the processor with the issue.
> ….
>
> Partner with Legal to understand whether he has any
> whistleblower protections [emphasis added]

(Solan Dep., Ex. 42). (Emphasis added).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced. (ECF No. 2.) Further, BAMS objects that Plaintiff's characterization as to what is "pertinent" in the cited exhibit states an issue in violation of L.R. 56.1(B)(1).

BAMS further objects that Plaintiff's evidence does not support the assertion stated as to whether Kendall made any recommendation regarding Slawin's termination and as to the purported block quote from the email, which is erroneous. Otherwise, the Court may consider that Solan sent De Castro an email on December 7, 2017, that De Castro was Solan's supervisor, that Solan recommended Slawin's termination, and that De Castro accepted the recommendation and made the decision to terminate Slawin.

173. BAMS considered Slawin to be a potential whistleblower. (Solan Dep., Ex. 42).

BAMS objects that Plaintiff's evidence does not support the assertion stated. The cited exhibit merely includes the following line under "Recommended Next Steps": "Partner with Legal to understand *whether* he has any whistleblower protections." (ECF No. 182-21 at BAMS 00008367-8368 (emphasis added).) The document does not stand for the proposition that BAMS concluded Slawin was a "potential whistleblower," only that an assessment would be done regarding the same.

174.    Mr. Solan testified that when he spoke to Ms. De Castro the issue of PCI noncompliance was part of the discussion. (Solan Dep. 38:19-40:2).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Solan deposition referenced, which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief.  (ECF No. 2.)  BAMS further objects that this assertion is immaterial to the resolution of the motion, as whether "PCI noncompliance" (as the subject matter of several emails that Slawin sent himself) was addressed in the discussion at issue does not impact whether Slawin believed (subjectively or objectively) in any violation of pertinent law, whether he engaged in any protected conduct, whether any alleged protected conduct by Slawin was discussed by Solan or De Castro, whether either Solan or De Castro were aware of any protected conduct, or whether any protected conduct contributed to the decision to terminate Slawin.

175.    Notably absent from Mr. Solan's December 7, 2017 email to Ms. De Castro is any mention of any alleged policy violation. (Solan Dep., Ex. 42)

BAMS objects that Plaintiff's evidence does not support the assertion stated, as the subject line of the email refers to a policy violation (i.e., "Summary of High Risk Information Security Violation – Eric Slawin"), which is the subject matter of the entire email.  (ECF No. 182-21 at BAMS 00008367.)

176.    In Solan's December 7, 2017 email to Ms. De Castro there is no mention of the Code of Ethics, Global Information Security Policy, End User Policy, Proprietary Rights and Information Agreement, Associate Handbook, or Mr. Slawin's offer letter. (Solan Dep., Ex. 42).

BAMS objects that this fact is not material to the resolution of the motion, as the absence of citations to various policies in a singular email between De Castro and Solan does not support Slawin's contention that he was not fired for BAMS policy violations.

177.    The words "policy" and "violation" or "violated" are not anywhere in Mr. Solan's email. *(Id.)* Instead it was all about BAMS PCI noncompliance, the "reputational damage" that could result from disclosure that BAMS was not PCI compliant, the concern that a merchant who discovered that fact might terminate the MSA, and whether or not Mr. Slawin could be considered to be a "whistleblower."

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation) and because the assertion is stated as an issue. *See* L.R. 56.1(B)(1).  BAMS further objects that the record citation does not stand for the stated proposition, as the word "violation" is in the subject line of the email ("Summary of High Risk Information Security Violation – Eric Slawin").  (ECF No. 182-21 at BAMS 00008367.)  The first line after the salutation in Solan Dep., Ex.

42 states, "[s]ee below for a summary of the Information Security Escalation regarding high risk confidential information that Eric Slawin sent to his personal address." (*Id.*)  Additionally, the document states, "First Data Information Security validated that Eric Slawin sent multiple emails and documents with confidential and high risk content related to this SIAI to his personal email address, all of which successfully got through."  (*Id.*)  Further, under "Recommended Next Steps," the document includes the following: "Determine the appropriate disciplinary action, including termination."  Plaintiff's attempt to distract from his self-serving characterization of what the email was "all about" is not supported by the record. BAMS further objects that whether the email specifically includes certain words is immaterial.

178.    The Incident Reports themselves reflect that the only thing that BAMS was concerned about was the PCI noncompliance issue and whether it would be disclosed to merchants that BAMS was not PCI compliant. There were ten Incident Reports, marked as Exhibits 30 — 39 at Mr. Solan's deposition [Docs. 17517 - 175-26]. (Solan Decl. [Doc. 176-4], ¶28 — 29). Each one of the Incident Reports contains the following introductory description:

> Comment= [sic] Between 8/25/2017 and 11/28/2017,
> Eric Slawin forwarded 10 critical BAMS related emails
> to what appears to be a personal account,

eslawin116@gmail.com. The first email dates back to
6/13/2017 where David Ades sent an email to a group of
BAMS employees noting that BAMS was discovered as
using full PAN data in client support situations, and
debating whether BAMS should become PCI Compliant,
or to have First Data dedicate a team for BAMS requests.
The other emails were of the same topic, but with
engagement with other BAMS VP's, and the user also
forwarded Excel documents which outline the course
of action they plan to take to remediate the issue.[4]

But three of the ten Incident Reports did not concern BAMS' PCI noncompliance.

Solan Dep., Ex. 31 [Doc. 175-18] referred only to the preparations for Hurricane Irma,

Ex. 32 [Doc. 175-19] referred only to Mr. Slawin's Management Form, and Ex. 39 [Doc.

175-26] dealt with an entirely different issue, data entered into SalesForce without

independent verification. A reasonable conclusion from this is that BAMS Infosec, Mr.

Solan, Mr. Kendall and BAMS as a whole were so focused on the PCI noncompliance

issue that they did not even notice that three of the ten Incident Reports did not involve

PCI noncompliance.

BAMS objects that this assertion violates L.R. 56.1 because it combines

multiple assertions into one (rather than separately numbering each assertion,

supporting the same with a citation) and because the assertion is stated as an issue.

_____

[4]      (Solan Dep., Exs. 30 [Doc. 175-17], p. 3 of 7, 31 [Doc. 175-18], p. 3 of 7, Ex.
32 [Doc. 175-19] at Page 4 of 8, Ex. 33 [Doc. 175-20] at Page 3 of 9, Ex. 34 [Doc.
175-21] at Page 3 of 9, Ex. 35 [Doc. 175-22] at Page 3 of 9, Ex. 36 [Doc. 175-23] at
Page 3 of 6, Ex. 37 [Doc. 175-24] at Page 175-24] at Page 3 of 7, Ex. 38 [Doc. 175-
25] at Page 3 of 7, Ex. 39 [Doc. 175-26] at Page 3 of 7).

*See* L.R. 56.1(B)(1).  BAMS objects that Plaintiff's evidence does not support the assertion stated, including with respect to what inferences Plaintiff contends may be drawn from these exhibits.  By way of further response, Slawin cites to no testimony or other evidence in connection with this assertion interpreting the cited documents; there is no evidence submitted as to what individuals did or did not notice; there is no evidence that the Infosec team had any familiarity with the PAN data discussion aside from what was on the face of the documents or that this had any role in why the documents were flagged (particularly, as Slawin notes, three of them did not even pertain to the issue); and there is no evidence (on the face of the documents or otherwise) that Kendall or Solan played any role in the drafting of these documents or their substance (let alone what their "focus" was on).  Further, Slawin's block quote excludes the following language: "It is uncertain why this user forwarded these emails to a Gmail account and what business purpose it serves.  Further investigation may be required."  (ECF No. 175-18 at BAMS 00001552.)  BAMS further objects that Plaintiff's unsupported speculation as to such matters is inadmissible.  *See* Fed. R. Evid. 602.  BAMS further objects that the specific contents of the emails at issue are immaterial except in that they were confidential and sent to Slawin's personal email account.  The Court may nevertheless consider the ten exhibits themselves and the following assertions: (1) there were ten incident reports, (2) at least three of the incident reports pertained to emails addressing matters other than PCI compliance,

and (3) they each contained introductory descriptions, which Plaintiff partially quotes but which are more fully set forth in the documents themselves.

179.    David Ades confirmed BAMs' concern. He testified that if a merchant found out that BAMS was not PCI complaint, the merchant could terminate its credit card processing contract with BAMS, known as the merchant services agreement or MSA. More specifically, he testified that Disney could terminate its MSA with BAMS if it discovered that BAMS was not PCI compliant. (Ades Dep. 60:18-61:9).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Ades deposition referenced, which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief.  (ECF No. 2.)

BAMS objects that this assertion is immaterial.  Matters concerning the interpretation of requirements related to PCI compliance, including matters such as whether BAMS was compliant, are immaterial to the bases for summary judgment.

180.    David Ades was BAMS' Executive Vice President/General Manager and Head of Client Managed Sales. (Ades Dep., Ex. 16).

This may be considered.

181.    Mr. Ades also had been on the Visa Advisory Board which was involved with Payment Card Information Data Standards (PCI DSS) and confirmed that in 2017

BAMS was transferring data that was transmitting full PAN (Primary Account Number) "outside of that standard." (Ades Dep. 36:14-38:8).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Ades deposition referenced, which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief.  (ECF No. 2.)

BAMS objects that this assertion is immaterial.  Matters concerning the interpretation of requirements related to PCI compliance, including matters such as whether BAMS was compliant, are immaterial to the bases for summary judgment.

**BAMS's Responses to Slawin's Assertions Regarding Other Material Disputed Facts**

182.  Slawin traded stocks during ordinary business hours, but it was not often. (Slawin Decl., ¶103).

BAMS objects on the grounds that Plaintiff's assertion relies on a sham declaration that is inadmissible under the Sham Affidavit Doctrine.  *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").  When asked how frequently he traded stocks during normal business

125

hours, Plaintiff stated that he did not "not know the exact number." (Slawin Dep. 61:7-11.) This testimony is in the record. (BAMS SUMF at ¶ 183.) Plaintiff's declaration testimony is an attempt to create a material dispute through inconsistent testimony, without explanation. Plaintiff's declaration testimony should be stricken under the Sham Affidavit Doctrine. *Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020). BAMS further objects that the foregoing assertion concerning the frequency of Slawin's day trading is immaterial. Aside from Slawin's sham testimony regarding the frequency with which he traded stocks during business hours, this may be considered. (*See* BAMS SUMF ¶ 183.)

183. During his employment at BAMS, Slawin's use of alcohol increased as he was put under increasing pressure to misrepresent BAMS non-PCI compliance to merchants, and his distress at BAMS' fraud. In 2016 Slawin drank alcohol one a month. From July 2017 on, after he was pulled into BAMS' PCI non-compliance/PAN data problem Slawin started drinking around the equivalent of a fourth of a bottle of alcohol daily. Slawin self-medicated by drinking to deal with the stress and anxiety caused by his situation at BAMS, which he continued to do (Slawin Dep. 101:11-25, 102:22-103:10).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced, which are not

included even in the portions of the excerpts submitted in connection with BAMS's original brief.  (ECF No. 2.)

BAMS objects that Plaintiff's evidence does not support the assertion stated with respect to the reasons for Slawin's drinking, whether he experienced "pressure to misrepresent BAMS non-PCI compliance," and whether BAMS engaged in any fraud.  BAMS further objects that this assertion is immaterial.

184. Between mid-December 2017 and November 2018 Slawin was unemployed even though he had been diligently looking for work. (Slawin Dep. 120:23-121:1).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced, which are not included even in the portions of the excerpts submitted in connection with BAMS's original brief.  (ECF No. 2.)

185.  In 2018, I spent around $120 per week on alcohol. (Slawin Dep. 98:8-11).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced, which are not

included even in the portions of the excerpts submitted in connection with BAMS's original brief.  (ECF No. 2.)

BAMS objects that this assertion is immaterial.

186.  After a short time at UPS, Slawin's next job after BAMS was at Wells Fargo, where he was employed from December 2018 through June of 2019. (Slawin Decl., ¶108).

This may be considered.  (BAMS SUMF ¶ 139.)

187.  Slawin was drinking heavily while employed at Wells Fargo because of the emotional turmoil and family upheaval my experience and termination from BAMS was causing him. (Slawin Decl., ¶108).

BAMS objects that this fact is not material to the resolution of the motion as BAMS is entitled to summary judgment on all claims and, separately, Slawin's involuntary termination from Wells Fargo for policy violations cuts off his ability to collect these damages.  *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F. Supp 2d 1303, 1313 (S.D. Fla. 2004) (concluding plaintiff "failed to mitigate her damages by acting in a manner that caused her involuntary termination").

188.  Slawin attended an off premises Wells Fargo company party. He has no recollection of the events at that party because he was intoxicated. (Slawin Decl., ¶109).

This may be considered.  (*See* BAMS SUMF ¶ 149.)

189.  As a result of his conduct at that party, which he cannot precisely recall because he was intoxicated, Slawin was put on administrative leave. (Slawin Decl., ¶110).

This may be considered.  (*See* BAMS SUMF ¶ 149.)

190.  Slawin was also referred to Wells Fargo EAP and saw a psychiatrist as a result of this referral in the ensuing months while he was on administrative leave. (Slawin Dep. 44:6-21, 130:6-131:8).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.

BAMS objects that this assertion is immaterial.

191.  Slawin was not brought back from administrative leave, but was terminated by Wells Fargo. He was terminated for the alleged policy violation involving the above described after hours party at which he had been intoxicated. Slawin was never told that at that event he had been verbally abusive, made any threatening comments or had made an inappropriate sexual advance. He was only told that he was terminated for a policy violation. (Slawin Decl., ¶111).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that the third and fourth sentences of this assertion are immaterial. BAMS objects that Plaintiff's evidence does not support the assertion stated with respect to whether the policy violation was "alleged." Slawin's deposition testimony on the reason for his termination is in the record, and Slawin did not dispute the same. (*See* BAMS SUMF 149; Slawin Dep. 42:22-43:11.) Under the Sham Affidavit Doctrine, Slawin cannot contradict this testimony through a declaration, and any contradictory testimony from his declaration is inadmissible, should be stricken, and should not be considered. *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."); *see also Cruzan v. Hewlett Packard Enter. Co.*, 2020 WL 10574160, *7 (N.D. Ga. Sept. 23, 2020). The first sentence of this assertion may be considered. (*See* BAMS SUMF ¶ 149.)

192. Slawin attempted to commit suicide after my termination. (Slawin Dep. 130:6-131:8).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

<u>BAMS objects that this assertion is immaterial.</u>

193. Slawin's experience at and termination from BAMS precipitated a downward emotional spiral, during which he self medicated by overuse of alcohol to the point of blacking out. This was the catalyst for his termination from Wells Fargo. (Slawin Decl., ¶113).

<u>BAMS objects that Plaintiff's evidence does not support the assertion stated with respect to "the catalyst for his termination from Wells Fargo" as Plaintiff admits he does not recall the details of his conduct at the company event that resulted in his termination and, instead, admits he was terminated for policy violations. (*See infra* at ¶¶ 188-189, 191.) BAMS objects that the remainder of this assertion is immaterial to the resolution of the motion as BAMS is entitled to summary judgment on all claims and, separately, Slawin's claims concerning a "downward emotional spiral" and that "he self medicated by overuse of alcohol" do not change that he was involuntarily terminated from Wells Fargo for policy violations, cutting off his damages. *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F. Supp 2d 1303, 1313 (S.D. Fla. 2004) (concluding plaintiff "failed to mitigate her damages by acting in a manner that caused her involuntary termination").</u>

194. After Wells Fargo, Slawin continued to look for work and obtained subsequent employment at Citibank in or about August 2019 where he made $90,000 a year with an opportunity for a $10,000 bonus. (Slawin Decl., ¶114).

BAMS objects that this fact is not material to the resolution of the motion as BAMS is entitled to summary judgment on all claims and, separately, Slawin's involuntary termination from Wells Fargo cuts off his ability to collect these damages. *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F. Supp 2d 1303, 1313 (S.D. Fla. 2004) (concluding plaintiff "failed to mitigate her damages by acting in a manner that caused her involuntary termination").

195.    Slawin voluntarily left Citibank for a position at USAA in or about January 2020, where he is still currently employed. (Slawin Decl., ¶114).

BAMS objects that this fact is not material to the resolution of the motion as BAMS is entitled to summary judgment on all claims and, separately, Slawin's involuntary termination from Wells Fargo cuts off his ability to collect these damages. *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F. Supp 2d 1303, 1313 (S.D. Fla. 2004) (concluding plaintiff "failed to mitigate her damages by acting in a manner that caused her involuntary termination").

196.    Slawin started at USAA with a base salary of $115,000. (Slawin Decl., ¶114).

BAMS objects that this fact is not material to the resolution of the motion as BAMS is entitled to summary judgment on all claims and, separately, Slawin's involuntary termination from Wells Fargo cuts off his ability to collect these damages. *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F. Supp 2d 1303,

1313 (S.D. Fla. 2004) (concluding plaintiff "failed to mitigate her damages by acting in a manner that caused her involuntary termination").

197.   The SIAI that Mr. Kendall prepared on December 15, 2017, said nothing of substance and effectively just "kicked the can down the road." Thus the proposed "Remediation Plan" was:

> 1) Validate current situation and identify PAN data gaps.
> 2) Explore solutions to address, and select best solution.
> 3) Create project plan to implement solution.
> 4) Implement solution.
> 5) Test solution.
> 6) Implement ongoing controls (if applicable)

(Kendall Dep., Ex. 28).

BAMS objects that Plaintiff's evidence does not support the self-serving characterization that the SIAI "said nothing of substance" or "just 'kicked the can down the road.'" To the contrary, the face of the document contains a remediation plan (along with other material information), as the remainder of the assertion notes.  BAMS further objects that this assertion is immaterial.

198.  Mr. Kendall acknowledged that there was no remediation plan in the December 2017 SIAI, and testified when asked about the actual remediation, "I don't see it on these two pages." (Kendall Dep. Ex. 28, 99:11-15).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has neither filed the cited deposition transcript nor attached excerpts of the same to his response.  BAMS objects that the remaining

exhibit does not support the assertion stated.  It contains a section entitled "Management's Remediation Plan" and contains no information about what Kendall did or did not acknowledge.  BAMS further objects that this assertion is immaterial.

199.   It is clear from David Ades' June 13, 2017 email that BAMS personnel were receiving full PAN data, and that as a result, the Payment Card Industry Data Security Standards required BAMS to be PCI compliant. (Ades Dep., Ex. 16 [Doc. 176-6]; Ex. 79).

BAMS objects that the cited exhibits constitute inadmissible hearsay, as they are out-of-court statements intended to prove the truth of the matter asserted (*e.g.*, concerning the receipt of PAN data and whether BAMS was therefore required to be PCI compliant).  BAMS further objects that this assertion is immaterial.  Matters concerning the interpretation of requirements related to PCI compliance, including matters such as the scope of the application of those requirements or whether BAMS was compliant with the same, are immaterial to the bases for summary judgment.

200.   Slawin believed that "management across the board. ..engaged .engaged in wrongful conduct [which was] not disclosing . . .[the PCI non-compliance] problem. I mean it's omission. It's fraud. And I felt that the implications of this . . could ultimately affect shareholders of various companies." (Slawin Dep. 183:5-15).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

134

201.  Kendall agreed with Slawin that nondisclosure was fraud. (Slawin Dep. 194:5-14).

BAMS objects that this assertion violates L.R. 56.1 because it combines multiple assertions into one (rather than separately numbering each assertion, supporting the same with a citation).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff failed to "include as an exhibit to the brief a copy of the specific pages of the" Slawin deposition referenced.  (ECF No. 2.) BAMS further objects that Slawin's testimony contains inadmissible hearsay, as the purported statement by Kendall is an out-of-court statement with which Plaintiff attempts to prove the matter asserted (*e.g.*, that "nondisclosure was fraud") and therefore cannot be considered.  BAMS further objects that this assertion is immaterial.  Among other reasons for summary judgment, as explained in BAMS's reply, the time between when Slawin contends Kendall first became aware of Slawin's complaints and Slawin's termination is too distant to support a finding of causation, and Slawin ultimately lacked a subjective and objectively reasonable belief in a violation of pertinent law.

202.  Kendall does not dispute that Slawin made these complaints to him. (Kendall Dep. 93:25-94:5).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has neither filed the cited deposition transcript nor attached excerpts of the same to his response.

203.  Kendall testified that the whole PCI noncompliance issue was traumatic for him as well. (Kendall Dep. 175:7-16).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has neither filed the cited deposition transcript nor attached excerpts of the same to his response.

BAMS objects that this assertion is immaterial.

204.  Ali Davis admitted that merchants serviced by BAMS had customers who were consumers purchasing goods and services for their personal use. (Davis Dep. 103:3-22, 104:24-105:4, 105:23-106:19).

BAMS objects that this assertion violates L.R. 56.1 and the Standing Order of this Court (ECF No. 2) in that Plaintiff has neither filed the cited deposition transcript nor attached excerpts of the same to his response.

205.  BAMS' general counsel advised that BAMS' employees, when asked by merchants about BAMS' PCI compliance, should just refer the merchants to First Data (Ex. 63).

This may be considered.  (*See* BAMS SUMF ¶¶ 270-272.)

Respectfully submitted this 21st day March, 2025.

136

*/s/ Brian M. Underwood, Jr.*
Christopher Paul Galanek
Georgia Bar No. 282390
E-Mail: chris.galanek@bclplaw.com
Brian M. Underwood, Jr.
Georgia Bar No. 804091
E-Mail: brian.underwood@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA 30309
Telephone: 404-572-6600


*Counsel for Defendant Banc of America Merchants Services, LLC s/h/a Bank of America Merchant Services*

## **CERTIFICATION UNDER L.R. 7.1.D**

I hereby certify that the foregoing filing has been prepared with Times New Roman 14-point font, one of the font selections approved by the Court in L.R 5.1, N.D. Ga.

This 21st day of March, 2025.

*/s/ Brian Underwood, Jr.*
Brian M. Underwood, Jr. (Ga. Bar. 804091)

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 21st day of March, 2025.

*/s/ Brian Underwood, Jr.*
Brian M. Underwood, Jr. (Ga. Bar. 804091)