Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                       ATLANTA DIVISION
 3
 4
 5    ERIC SLAWIN,                )
                                  )
 6          Plaintiff,            )
                                  )
 7    vs.                         )CIVIL ACTION FILE
                                  )No.:  1:19-cv-04129-AT
 8    BANC OF AMERICA MERCHANT    )
      SERVICES, LLC s/h/a BANK    )
 9    OF AMERICA MERCHANT         )
      SERVICES,                   )
10                                )
            Defendant.            )
11    _____  )
12
13
14          Videotaped Deposition of Mark Kendall
15              (Signature is reserved.)
16                   July 12, 2024
17                    10:10 a.m.
18
19                          Remote via Zoom technology
20
21
22
23       Reported by:  Carla J. Hopson, RPR, CCR-1816
24
25
```

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

                                                        Page 2

1                       I N D E X

2     EXHIBITS   (For the Plaintiff)                    Page

3     Exhibit 6    7/10/2017, 1:05 Meeting invite        156

4     Exhibit 7    7/10/2017, 4:25 Meeting invite        157

5     Exhibit 8    7/11/2017 email from Moll to Davis    157

6     Exhibit 9    7/13/2017 email from Mozingo to

7                  Kendall                               160

8     Exhibit 10   7/22/17 email from Slawin to

9                  Kendall                               95

10    Exhibit 11   7/26/17 email from Slawin to

11                 Kendall                               83

12    Exhibit 12   8/22/2017 email from Kendall to

13                 Sweeney                               161

14    Exhibit 13   8/14/2017 email from Kendall to

15                 Newman                                168

16    Exhibit 14   8/16/2017 email from Slawin to

17                 Kendall                               176

18    Exhibit 15   8/16/2017 email fro Slawin to

19                 Kendall                               177

20    Exhibit 17   8/28/17 email from Kendall to

21                 Natasha Collins                       153

22    Exhibit 19   10/26/17 email from Kendall to

23                 Christine Clifford                    151

24    Exhibit 24   11/8/17 forwarded email from

25                 Slawin                                148

Page 3

1                            INDEX

2    EXHIBITS (Cont.)                                       Page

3    Exhibit 25    11/13/17 forwarded email from

4                  Slawin                                   150

5    Exhibit 26    12/6/17 email from Christine

6                  Clifford to Treica Brooks                147

7    Exhibit 28    December '17 SIAI draft                   97

8    Exhibit 30    Bates 1545-1550, incident details        112

9    Exhibit 31    Bates 1551-1556, incident details        117

10   Exhibit 32    Bates 1557-1563, incident details        118

11   Exhibit 33    Bates 1563-1571, incident details        120

12   Exhibit 34    Bates 1572-1579, incident details        121

13   Exhibit 35    Bates 1580-1587, incident details        123

14   Exhibit 36    Bates 1588-1592, incident details        124

15   Exhibit 37    Bates 1593-1598, incident details        125

16   Exhibit 38    Bates 1599-1604, incident details        125

17   Exhibit 39    Bates 1605-1610, incident details        126

18   Exhibit 40    11/30/17 email from BAMS Infosec

19                 to Association Relations at BOA           137

20   Exhibit 41    12/8/17 email from Galarza to

21                 Cizmedia                                   62

22   Exhibit 42    12/7/17 email from Solan to

23                 DeCastro                                   37

24   Exhibit 43    12/7/17 email from Solan to

25                 Kendall                                   138

Mark Kendall                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 4

1                              INDEX

2     EXHIBITS (Cont.)                                    Page

3     Exhibit 45    12/12/17 letter from Solan to

4                   Slawin                              90

5     Exhibit 46    Declaration of Eric Slawin         140

6     Exhibit 49    12/17/17 email from Kendall to

7                   Solan                              127

8     Exhibit 50    12/18/17 email from Solan to

9                   Kendall                            143

10    Exhibit 51    BAMS 9585-9588, Chart              106

11    Exhibit 60    6/2/17 email from Slawin to Kendall  53

12    Exhibit 62    11/20/17 Forward from Slawin to

13                  Slawin                             105

14    Exhibit 69    Propriety Rights and Information

15                  Agreement                          40

16    Exhibit 76    Banc of America Supplemental

17                  Responses                          29

18

19                  E X A M I N A T I O N S

20    Examination

21         (By Mr. Marx)                                7

22

23

24

25

Mark Kendall                              July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 5

```
 1     APPEARANCES OF COUNSEL:
 2     On Behalf of the Plaintiff:
 3            ROBERT N. MARX, ESQUIRE
              JEAN SIMONOFF MARX, ESQUIRE
 4            Marx & Marx, LLC
              1050 Crown Pointe Parkway, Suite 500
 5            Atlanta, Georgia 30338
              Email: lawyers@marxlawgroup.com
 6            Phone: (404) 261-9559
 7     On Behalf of the Defendant:
 8            CHRISTOPHER GALANEK, ESQUIRE
              Bryan Cave Leighton Paisner, LLP
 9            14th Floor
              1201 West Peachtree Street, NW
10            Atlanta, Georgia 30309-3488
              Email: chris.galanek@bclplaw.com
11            Phone: (404) 572-6979
12
13     Videographer:
14            Ted Yost
15     Also Present:
16            Jill Poole, Esquire
17            Shelley Marx
18
19
20
21
22
23
24
25
```

Mark Kendall                                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 6

1                           * * * * *

2              THE VIDEOGRAPHER:  Good morning.  We are

3       going on the record at 10:10 a.m. on July 12,

4       2024.  This is Media Unit One of the video

5       recorded deposition of Mark Kendall taken by

6       counsel for plaintiff in the matter of Eric

7       Slawin versus Banc of America Merchant

8       Services, et al., filed in the United States

9       District Court for the Northern District of

10      Georgia, Atlanta Division, Case Number

11      1:19-cv-04129-AT.

12              This deposition is being conducted

13      remotely using virtual technology.  My name is

14      Ted Yost representing Veritext, and I'm the

15      videographer.  The court reporter is Carla

16      Hopson from the firm Veritext.

17              At this time counsel and everyone will

18      turn -- excuse me -- everyone attending

19      remotely will now state their appearance and

20      affiliations for the record.

21              MR. MARX:  Robert Marx and Jeannie Marx

22      of Marx and Marx, LLC, for the plaintiff.  Also

23      attending is our paralegal, Shelley Marx.

24              MR. GALANEK:  This is Chris Galanek with

25      Bryan Cave Leighton Paisner.  I represent the

Page 7

1          defendant in the case.  I also represent the

2          witness individually, Mark Kendall.  And

3          present also is our corporate representative,

4          Jill Poole.

5     THEREUPON,

6                         MARK KENDALL,

7     having been first duly sworn, was examined and

8     testified upon his oath as follows:

9                         EXAMINATION

10         Q     (By Mr. Marx) Thank you.  Good morning,

11    Mr. Kendall.  My name, as you heard, is Robert Marx.

12    I represent the plaintiff, Eric Slawin, in this case

13    against Bank of America Merchant Services which we

14    will refer from time to time as BAMS, B-A-M-S.

15              Do you understand that?

16         A     Yes.

17         Q     Okay.  And when I refer to BAMS do you

18    understand I'll be referring to the defendant, Bank

19    of America Merchant Services?

20         A     Yes.

21         Q     Thank you.  Can I get your current

22    address?

23         A     2926 Wesley Avenue, Charlotte, North

24    Carolina.

25         Q     How do you spell Wesley?

Page 8

```
 1          A     W-E-S-L-E-Y.

 2          Q     And what is the zip code over there?

 3          A     28205.

 4          Q     28205?  Okay.  And the phone -- do you

 5    have a phone number there?

 6          A     908-917-8240.

 7          Q     Do you have any -- well, we have your

 8    email.  Is that markrkendall@gmail.com?

 9          A     Correct.

10          Q     Okay.  Just a few -- have you given a

11    deposition before?

12          A     No.

13          Q     Okay.  I'm going to ask you some

14    questions.  You can answer them -- if you answer

15    them, I would appreciate it if you answer verbally

16    instead of, you know, shaking your head or things

17    like that because the court reporter needs to get

18    down actual verbal responses.

19                If you don't understand the question,

20    just say so and I'll rephrase.  If you answer a

21    question, I'm going to assume that you understood it.

22                Do you understand that?

23          A     Yes.

24          Q     Is that okay with you?

25          A     Yes.
```

Mark Kendall                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 9

1          Q     Okay.  Are you represented by counsel

2     today?

3          A     Yes.

4          Q     Is that Mr. Galanek --

5          A     Yes.

6          Q     -- of the Bryan Cave Law Firm?

7          A     Correct.

8          Q     Okay.  Now, we're not doing a marathon

9     here.  If at any time you need a break for any

10    reason, just say so.  We'll be happy to, you know,

11    take a break.  I would only ask that before we go out

12    on a break you answer any then pending question.

13               Do you understand that?

14         A     Yes.

15         Q     Are you okay with that?

16         A     Yes.

17         Q     Are you taking any prescription or

18    over-the-counter medicines or pharmaceuticals that

19    would affect your ability to give testimony today?

20         A     No.

21         Q     Is there any medical or physical reason

22    why you cannot give testimony today?

23         A     No.

24         Q     Okay.  So you're physically -- you're --

25    where are you physically right now?

Mark Kendall
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

July 12, 2024

Page 10

1        A       In my home at the address I just stated.

2        Q       Okay.  And you're obviously looking at a

3    computer.  Is that a desktop or a laptop?

4        A       A desktop computer.

5        Q       Okay.  Are you looking at any other

6    programs on that computer other than just the Zoom?

7        A       No, only the Zoom.

8        Q       Okay.  And will you agree during the

9    course of this deposition not to look at any other

10   programs or applications on your computer other than

11   the -- well, the exhibits that will be shared through

12   the share screen?

13       A       I agree.

14       Q       Thank you.  Okay.  And will you agree

15   during the course of this deposition not to discuss

16   this case or the exhibits during any break with your

17   attorney?

18       A       I agree.

19              MR. GALANEK:  Objection.  That is -- no.

20         No, you will not agree to that.

21              THE WITNESS:  No, I do not agree.

22              MR. GALANEK:  That is not a

23         requirement -- that is not a requirement in the

24         11th Circuit, Robert, and if he chooses to

25         contact me with a question, that is fine by

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 11

```
 1          local rules and by federal rules.
 2               So he has that right.  I'm not going to
 3          say he's going to exercise that right.
 4          A    So I'm clarifying my previous answer to
 5     say I do not agree.
 6          Q    Fair enough.  I understand you've got
 7     direction from your counsel and I respect that.
 8               MR. MARX:  And Mr. Galanek, rather than
 9          get into a back-and-forth now, I suggest we
10          contact the court to see how the court rules
11          for further depositions.  But we can move on at
12          this point.
13          Q    (By Mr. Marx) When did Mr. Galanek start
14     representing you?
15          A    I'd have to consult documents I don't
16     have in front of me.
17          Q    Was it before this year?
18          A    We spoke last year, I believe.
19          Q    Okay.  I don't ever want to hear what Mr.
20     Galanek said to you.  I don't -- so don't back into
21     the privilege.  Don't tell me what you said to Mr.
22     Galanek, any -- if my question sounds ambiguous.
23     Okay?
24               I just want to know did there come a time
25     that you met with Mr. Galanek?
```

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 12

1        A      Yes.

2        Q      All right.  When was that?

3        A      I met with him on, I think, Tuesday this

4    week.

5        Q      Okay.  And this is now July 12th.  So

6    Tuesday would have been July 9th; is that right?

7        A      If that's -- I'd have to look at the

8    calendar to know.

9        Q      Okay.

10        A      But it was Tuesday.

11        Q      Okay.  And was anyone else present when

12    you met with Mr. Galanek?

13        A      With me or on the Zoom call where we met?

14        Q      Well, both.  Did you -- was your meeting

15    with Mr. Galanek remote or in person?

16        A      Remote.

17        Q      Okay.  Was anyone else on that remote?

18        A      Jill was also present, Jill --

19        Q      Jill Poole?

20        A      -- Poole, yes.

21        Q      Okay.  And she's from Fiserv.  Do you

22    know that?

23        A      Based on what she's said, yes.

24        Q      Okay.  Anyone else on that Zoom call?

25        A      I don't remember.

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 13

```
 1        Q     Okay.  And how long was that Zoom call?
 2        A     Approximately two hours.
 3        Q     Okay.  And did you look at any documents
 4   during that Zoom call?
 5        A     Yes.
 6        Q     Okay.  What documents did you look at?
 7        A     Emails provided by Chris from BAMS --
 8        Q     Okay.
 9        A     -- or from my time at BAMS.
10        Q     Okay.  Okay.  Can you remember looking at
11   any particular emails or documents?
12        A     There were probably 20, so I'm -- not
13   specifically.
14        Q     All right.  Did you look at any legal
15   papers?
16        A     What is a legal paper?
17        Q     I assume you don't understand the
18   question, so I'll move on.
19              Do you know who's compensating Mr.
20   Galanek for you -- for his appearance representing
21   you here today?
22        A     No.
23        Q     Okay.  Have you -- are you -- are you
24   paying Mr. Galanek for his representation of you here
25   today?
```

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 14

1          A      No.

2          Q      Okay.  Are you currently employed?

3          A      Yes.

4          Q      Okay.  By whom are you employed?

5          A      Wells Fargo Bank.

6          Q      Okay.  And where do you work for Wells

7     Fargo?

8          A      In Charlotte, North Carolina.

9          Q      Okay.  In what capacity?

10         A      I am a compliance officer for Wells

11    Fargo.

12         Q      Okay.  And how long have you been in that

13    position?

14         A      Approximately five years.

15         Q      Okay.  In your -- do you have a job title

16    there over at Wells Fargo?

17         A      I have to think about this because they

18    fiddled with them, but a compliance officer is the

19    common name that people would know.

20         Q      Okay.  We'll take that.  In your job

21    capacity as compliance officer at Wells Fargo do you

22    interact with anybody at Fiserv?

23         A      No.

24         Q      In your capacity as compliance officer at

25    Wells Fargo do you interact with anybody at Bank of

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 15

1      America?

2              A       No.

3              Q       Okay.  Now, there came a time that you

4      were employed by the defendant in this case, BAMS;

5      correct?

6              A       Correct.

7              Q       And that employment ended at some point;

8      correct?

9              A       Correct.

10             Q       When did it end?

11             A       It was approximately May of 2018.

12             Q       Okay.  And after you left BAMS in

13     approximately May of 2018 did you go to another

14     employer?

15             A       To Wells Fargo.

16             Q       That's when you started.  Okay.  Do you

17     know when you started at Wells Fargo?

18             A       Not without consulting other documents,

19     but roughly in the summer of 2018.

20             Q       Okay.  Do you know why your employment at

21     BAMS ended?

22             A       Yes.

23             Q       Why?

24             A       I voluntarily left the firm.

25             Q       Okay.  Was there any reason that you

Page 16

1    voluntarily left the firm?

2           A     I wanted to do a different role in

3    another firm, and BAMS was expected to unwind and I

4    wanted to have agency over where I ended up.

5           Q     Okay.  When did you come to the awareness

6    that BAMS was expected to unwind?

7           A     Prior to my departure in 2018 I was aware

8    of there being an agreement for a set time with at

9    the time First Data and Bank of America that had a

10   finite date.  So I was aware that it was not a

11   permanent partnership or a permanent joint venture.

12   I would say in 2016 or 2017 I was aware that it

13   was -- it had a finite timeframe that would need to

14   be renewed to continue.

15          Q     Okay.  You've used the term "unwind."

16   What's your -- what did you mean by using that term,

17   unwind?

18          A     Sure.  So the dissolution of the

19   partnership --

20          Q     Okay.

21          A     -- between BAMS and First Data.  Sorry.

22   Between Bank of America and First Data.

23          Q     Okay.  And how did you become aware of

24   that?

25          A     I can't remember a specific instance that

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 17

1    it was discussed.  It was kind of the nature of the

2    business that about everybody knew.  Everybody at

3    Bank of America Merchant Services understood that it

4    was a joint venture with an agreement with First Data

5    that had a timeframe, but it was common knowledge for

6    all associates at BAMS that it was not a permanent

7    partnership.

8          Q    While you were -- I'd like to go through

9    your employment history at BAMS.  During what period

10   of time were you employed at BAMS?

11         A    Without consulting other documentation, I

12   believe it started in 2015 working for BAMS.

13         Q    Till 2018?

14         A    2015.

15         Q    Yeah, until 2018.

16         A    Until 2018, correct.

17         Q    And when you started working for BAMS in

18   about 2015 what was your job title you were hired

19   into.

20         A    Sure.  I was a business control officer

21   for a technology -- their technology group.

22         Q    And how long did you stay in that

23   position?

24         A    Approximately a year and a half to two

25   years.

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 18

1         Q     Okay.  That should take us roughly to
2    2017; is that correct?
3         A     I believe so.  But again, without
4    having -- going through a resume or some other
5    documentation, I can't get the exact dates.  But
6    that's approximately correct.
7         Q     Okay.  But what was the next job title
8    that you went into after business control officer?
9         A     I don't remember the title or if there
10   was a title change, but my next role was with a third
11   party which are like vendors, people that BAMS
12   employed to do work.  I had a special project related
13   to third parties.  That was my next role.
14        Q     You don't remember when that was?
15        A     It was for about six months, so it was
16   probably over the -- you know, I don't remember the
17   exact dates now.
18        Q     Okay.
19        A     But it was about six months that I was on
20   the special project.
21        Q     Was it in 2018?  Do you know?
22        A     It would -- it would have ended in 2017.
23   So by the spring 2017 I was finished with that
24   project.
25        Q     Okay.  And after the spring of 2017 you

Mark Kendall                              July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 19

1    were still employed at BAMS; right?

2         A    Correct.

3         Q    Okay.  And what was your next job title

4    or job function?

5         A    My next role was with -- I believe it was

6    called the Operational Risk Center of Excellence

7    working under a corporate risk group.

8         Q    How long did you stay in that position?

9         A    Maybe four months approximately.  It was

10   the role immediately preceding my joining the client

11   manage team that Natasha Collins was running.  So

12   that was the role between when I was doing vendor

13   management type work and when I started working for

14   Natasha.

15              So that was -- let's call it spring and

16   summer of 2017.

17        Q    All right.  So in or about the spring or

18   summer of 2017 you started working in the unit that

19   reported to Natasha Collins; is that right?

20        A    Summer.  The summer 2017 is when I

21   started working for the unit that was related to

22   Natasha Collins.

23        Q    Okay.  And after that what was your next

24   job title or job function?

25        A    I believe I was a business control

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 20

1    officer again reporting to Natasha.

2         Q    And approximately how long did that last?

3         A    From the summer 2017 until the end of my

4    employment with BAMS in 2018.

5         Q    So you were business control officer, did

6    you say?

7         A    That's right.

8         Q    And that started in or about the summer

9    of 2017?

10         A    Correct.

11         Q    Okay.  Reporting to Natasha Collins;

12    correct?

13         A    Correct.

14         Q    And was that the job function/job title

15    you stayed in until the end of your employment at

16    BAMS?

17         A    Yes.

18         Q    Thank you.  All right.  Are you familiar

19    or do you know the plaintiff in this case, Eric

20    Slawin?

21         A    Yes.

22         Q    Okay.  And did there come a time that Mr.

23    Slawin reported to you?

24         A    Yes.

25         Q    Okay.  When was that?

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 21

1          A      Approximately fall of 2017.

2          Q      Okay.  Now, when Mr. -- before the fall

3    of 2017 do you know to whom Mr. Slawin reported?

4          A      To Natasha Collins.

5          Q      Are you aware of any time that Mr. Slawin

6    reported to somebody other than yourself or Natasha

7    Collins?

8          A      There was a period in the summer of 2017

9    where Natasha had appointed an interim manager.  I'm

10   not sure what else to call it.  Brian Rubin -- for

11   about six weeks, two months, six weeks, somewhere in

12   that range.  That temporary arrangement was

13   dissolved, and then I became Eric's manager.

14         Q      So Brian Rubin being the interim

15   manager -- did you say that was roughly six weeks in

16   the summer of 2017?

17         A      Correct.

18         Q      Okay.

19         A      Eric may have reported to Brian at that

20   time formally.  I don't know what the formal HR

21   arrangement was.  I never reported to Brian Rubin

22   directly.

23         Q      Okay.  So now Mr. Slawin, you said,

24   started reporting to you in or about the fall of

25   2017; is that right?

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 22

1          A      That's right.

2          Q      And at that time was he also reporting to

3     Ms. Collins, or were you reporting to Ms. Collins?

4     How did that work?

5          A      At least functionally -- I don't know how

6     it was written in HR.  Eric reported to me and I

7     reported to Natasha.

8          Q      Okay.  And did that reporting

9     relationship that you just described continue through

10    the end of Mr. Slawin's employment?

11         A      Yes.

12         Q      Okay.  Thank you.  Now, when you were

13    hired at BAMS in or about 2015 were you interviewed?

14         A      Yes.

15         Q      Okay.  Do you know who interviewed you?

16         A      Brian Rubin interviewed me.  Another

17    person, Doug Hague, who was my manager once I

18    received -- once I got the job he interviewed me.  If

19    there were others, I don't remember who they were.

20         Q      Do you know if anyone from Fiserv

21    interviewed you at the time?

22         A      Nobody from Fiserv or First Data

23    interviewed me.

24         Q      What -- do you know if anyone from Bank

25    of America interviewed you at that time?

Mark Kendall                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

                                                        Page 23

 1          A       No, only employees of BAMS interviewed

 2     me.

 3          Q       Okay.  Thank you.  Now, have you spoken

 4     to anyone other than counsel -- all my questions are

 5     other than counsel.  Have you spoken to anyone other

 6     than counsel from Fiserv regarding today's

 7     deposition?

 8          A       No, nobody other than counsel.

 9          Q       Okay.  I have to ask.  There's a

10     checklist.  I've got to ask these questions anyway.

11          A       Sure.

12          Q       Have you spoken to anyone from Bank of

13     America other than counsel in preparation for today's

14     deposition?

15          A       No.

16          Q       Okay.  Have you spoken to anybody other

17     than counsel in preparation for today's deposition?

18          A       No.

19          Q       Okay.  Did you speak to Ali Davis?

20          A       No.

21          Q       You speak to David Ades?

22          A       No.

23          Q       Did you speak to Natasha Collins?

24          A       No.

25          Q       Now, there came a time that Mr. Slawin's

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 24

1    employment was terminated; right?

2         A    Correct.

3         Q    Okay.  And you were one of the

4    decision-makers involved in making the decision to

5    terminate his employment; correct?

6              MR. GALANEK:  Objection.  Form.

7         Q    (By Mr. Marx) You can answer.

8         A    I was Eric's manager, and when I was

9    given the message that he was sending confidential

10   emails to his personal email I referred it to our HR

11   department at BAMS.

12        Q    Okay.  And were you one of the people who

13   made the decision to fire Mr. Slawin?

14        A    I personally did not make a decision.

15   That was handled by human resources according to

16   BAMS' policies.

17        Q    Do you know who decided to fire Mr.

18   Slawin?

19        A    No.

20        Q    Okay.  Do you know whether Mr. Slawin

21   decided to fire Mr. Slawin?

22              MR. GALANEK:  Objection.  Form.

23        A    Can you repeat the name?

24        Q    Do you know whether Mr. Solan, S-O-L-A-N,

25   decided to fire Mr. Slawin?

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 25

1          A      I don't know.

2                 MR. GALANEK:   Objection.   Form.

3          Q      (By Mr. Marx) Do you know why Mr. Slawin

4     was fired?

5          A      I referred Eric to HR because he had sent

6     many confidential emails to his personal email

7     address which is against company policy.

8          Q      Which policy?

9          A      I don't know the name of it, but in every

10    bank, in every -- I can't think of a single industry

11    where you're allowed to send confidential emails to

12    your personal email address for no reason.

13         Q      Are you aware of a specific policy at

14    BAMS that prohibited Mr. Slawin from sending emails

15    to his personal email?

16         A      I am not.

17         Q      Okay.   Excuse me.   Just to be clear, is

18    it your testimony that you do not know who decided to

19    fire Mr. Slawin?

20         A      I don't know of a single decision-maker

21    that ultimately made the decision.   I don't -- I

22    don't remember if -- who that was or if it was one

23    person or more than one.   I don't know about a single

24    person who made that determination.

25         Q      And you were not one of those

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 26

1    decision-makers; correct?

2         A    No.  Because I referred it to HR and

3    followed their guidance.

4         Q    "No" meaning you were not one of those

5    decision-makers; is that right?

6              MR. GALANEK:  Objection.  Form.

7         A    I -- I'm not really sure how to answer

8    this.  I referred Eric to -- I referred the situation

9    where Eric was sending confidential emails to HR and

10   followed the guidance of HR.  And I believe HR sent

11   any of the termination documents to Eric.

12             So as far as a single event, I don't know

13   about a single event that somebody decided he was no

14   longer employed.

15        Q    Well, the event I'm asking about is a

16   decision.  Did you make a decision to fire Mr.

17   Slawin, yes or no?

18        A    I did not make a decision to fire him.

19        Q    Okay.  76.  Just a minute.

20             Do you have an understanding as to why

21   Mr. Slawin was fired?

22        A    Yes.

23        Q    And what is that?

24        A    He sent many confidential emails to his

25   personal email address.

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 27

1        Q       Okay.  Do you have an understanding as to

2   whether Mr. Slawin was fired for any other reason?

3        A       No.

4        Q       To your knowledge was Mr. Slawin fired

5   for any reason other than what you've just testified?

6        A       No.

7        Q       Do you know Ali Davis?

8        A       I knew her very little through work.  I

9   never met with her in person that I can remember.

10       Q       Okay.  Did you ever speak to Ali Davis

11  about Mr. Slawin?

12       A       To my recollection, no.

13       Q       Did you ever speak to Ali Davis about why

14  Mr. Slawin was fired?

15       A       No.

16       Q       Okay.  Did anyone other than counsel ever

17  ask you why Mr. Slawin was fired?

18       A       No.

19       Q       Did you ever tell anyone other than --

20  other than counsel why Mr. Slawin was fired?

21       A       No.

22       Q       Did anyone other than counsel ever ask

23  you if you had been involved in deciding to fire Mr.

24  Slawin?

25       A       No.

Mark Kendall                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 28

1        Q     Did you ever tell anyone other than

2    counsel that you had been one of the people who

3    decided to fire Mr. Slawin?

4        A     Can you restate the question, please?

5        Q     Sure.  Did you ever tell anybody other

6    than counsel that you had been one of the people who

7    decided to fire Mr. Slawin?

8               MR. GALANEK:  Yeah.  I'm going to object

9          to the question, and I'm going to instruct the

10         witness not to answer the question because the

11         way you have now asked the question, it is --

12         it is suggesting that such a conversation

13         occurred with counsel.  So any response that he

14         gives ultimately involves a disclosure of the

15         privilege.

16              MR. MARX:  Well, okay.

17              MR. GALANEK:  And I'm going to --

18              MR. MARX:  Fair enough.

19              MR. GALANEK:  -- instruct the witness not

20         to answer that question.

21              MR. MARX:  Fair enough.  Let me rephrase

22         it in a way which hopefully won't meet with an

23         objection.

24         Q    (By Mr. Marx) Other than times in which

25    you were in the presence of your counsel or a

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 29

 1     counsel, did you ever tell anybody other than counsel
 2     without counsel being present that you had been one
 3     of the decision-makers who had decided to fire Mr.
 4     Slawin?
 5               MR. GALANEK:  I have to object again,
 6          Robert.  I don't believe you have cured the
 7          question.  So I'm -- I believe it's still --
 8          unfortunately, the way it is phrased
 9          potentially would require the witness to
10          divulge attorney-client communications.
11               If you just want to ask him -- I think
12          you've already done so -- whether or not he
13          ever discussed with anyone the decision to fire
14          Mr. Slawin, I think you've done that.  But you
15          can certainly do it again, and that would not
16          be an objectionable question.
17               MR. MARX:  I think I'll move on.
18               We're going to now -- 76.  Yeah.  Yeah.
19          We now are going to be showing you an exhibit
20          through the share screen.  So it's -- we've
21          premarked these exhibits.  What we do is
22          premark them and then they stay the same
23          through all the depositions for clarity.
24               This will be Exhibit 76, Plaintiff's 76.
25          I don't -- Shelley, I don't know how this

Mark Kendall                        July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 30

1     works.  I have a specific page that I'd like to

2     refer to.  How does that work?  Do I --

3          MR. GALANEK:  Well, Robert, I mean, the

4     whole -- the whole document needs to come up on

5     the screen.

6          MR. MARX:  All right.  Put the whole

7     document up.

8          MR. GALANEK:  So whoever's going to

9     project them -- because the witness has a right

10    to review the entirety of the document, not

11    just some single page.

12         MR. MARX:  Fair.  I'm just trying to

13    understand the process and comply.  I'm used to

14    emailing them.  So if I'm a little behind the

15    curve, just bear with me, please.

16         We're having some technical issues.  Can

17    we just go off the record for just a few

18    minutes, please?

19         THE VIDEOGRAPHER:  Yes.  We're going off

20    the record at 10:43 a.m.

21         (Recess.)

22         THE VIDEOGRAPHER:  This begins Media Two

23    in the deposition or Mark Kendall.  We are back

24    on the record at 10:44 a.m.

25    Q    (By Mr. Marx) Okay.  Mr. Kendall, you

Mark Kendall                         July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 31

1    have -- you know, we've put the whole thing on here.

2    And as your attorney properly stated, you have the

3    right to look at whatever you want to look on here.

4    So I don't know how -- I'm focused on page 2 of the

5    document, but I think that, you know, if you want to

6    scroll through up and down, let us know when you're

7    ready to answer questions.

8         A    Let me read this page 1 first.

9              Okay.  Proceed to page 2 please.

10             I've read page 2.

11        Q    I don't know.  We're not -- did you want

12   to go through the rest of the document, Mr. Kendall?

13   It's up to you.

14        A    I have not seen this document before, so

15   --

16             MR. GALANEK:  Robert?  Robert?

17        Q    We can go ahead.  Fine.  We're asking

18   what you want.  You need to scroll down and show.

19             MR. GALANEK:  Robert?

20             MR. MARX:  Yes, sir.

21             MR. GALANEK:  Are you only going to ask

22        him -- are you only asking him about a specific

23        interrogatory response?

24             MR. MARX:  That's right.

25             MR. GALANEK:  If you are, I -- he's

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 32

1    already said he hasn't seen the document

2    before.  He's not -- you're not -- I don't

3    believe you're asking him to authenticate the

4    document.

5         If that's the case, why don't you ask

6    your question about the Interrogatory Number 2

7    response and I'll merely -- when you ask your

8    question, then I will lodge an objection

9    because I believe this response has pretty --

10   or has subsequently been supplemented.  I don't

11   believe you're using the current version of the

12   response.

13        MR. MARX:  I'm sorry.  You don't believe

14   what?

15        MR. GALANEK:  I believe this response was

16   supplemented, I believe.  And I --

17        MR. MARX:  This is -- this is the

18   supplement.

19        MR. GALANEK:  It may be -- I'm pretty

20   sure it has, but --

21        MR. MARX:  This is the supplement.

22        MR. GALANEK:  I just asked you a

23   question.  That's fine.

24        MR. MARX:  All right.  That's fine.

25   Q    (By Mr. Marx) All right.  So Mr. Kendall,

Mark Kendall                        July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 33

1    are you ready for me to ask a question?  My question

2    refers to the material that's on page 2.  If you

3    would like to look at some other pages before

4    answering a question about that, that's fine.  Just

5    let me know what your pleasure is.

6           A     What is your question, please?

7           Q     Okay.  On page 2 -- this is -- this has

8    been served on us by defendants in this case.  The

9    document is entitled Defendant Bank of America

10   Merchant Services' Supplemental Responses to

11   Plaintiff's First Interrogatories.

12              And on page 2 there's a response.  But

13   I'm going to read the third paragraph of the response

14   into the record, and then I'll ask you my question.

15   And it says, "By way of further and unsupplemental

16   response, BAMS responds that after interviewing

17   plaintiff regarding the highly confidential --

18   confidential documents he sent to his home computer

19   and considering plaintiff's responses, Mike Solan,

20   Human Resources, and Mark Kendall, plaintiff's

21   manager, concluded that there was a loss of trust and

22   confidence between plaintiff and BAMS given

23   plaintiff's actions, and therefore they ultimately

24   decided to terminate plaintiff's employment with

25   BAMS."

Page 34

```
 1              And my question is:  Is that a correct

 2      statement?

 3         A     It appears correct.

 4         Q     Okay.  And does that statement not say

 5      that you were one of the decision-makers?

 6              MR. GALANEK:  Objection.  Form.

 7         Q     You can answer.

 8         A     You previously -- I believe you

 9      previously asked if I decided.  So this was -- and

10      this is what I said.  I referred it to human

11      resources and followed their guidance with the

12      termination of Eric.

13         Q     Okay.  So you were one of the people who

14      decided to fire Mr. Slawin; right?

15              MR. GALANEK:  Objection.  Form.

16         A     I agreed with the decision to fire Eric

17      Slawin because of him stealing confidential

18      documentation from the firm.

19         Q     That was your decision, though, wasn't

20      it?

21         A     No.

22              MR. GALANEK:  Objection.  Form.

23         Q     Isn't that what this says?

24              MR. GALANEK:  Objection.  Form.

25         A     I agreed with the conclusion to fire him.
```

Mark Kendall                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 35

1        Q      Whose conclusion was that?

2        A      HR made the -- drew up documentation and

3    I agreed with their conclusion.

4        Q      Okay.  Who was HR?  Was there anybody in

5    HR?

6        A      Mike Solan was who I worked with.

7        Q      Okay.  So is it your testimony that Mike

8    Solan made the conclusion to fire Mr. Slawin?

9        A      I don't know that there's a single person

10   that said, "I have decided to fire Eric Slawin."

11       Q      All right.  Now, you said that to your

12   understanding --

13              MR. MARX:  I'm through with this

14          document.  Take it down.

15       Q      So you said that your understanding Mr.

16   Slawin was fired because he had sent confidential

17   documents to his personal email; is that right?

18       A      Correct.

19       Q      And those personal confidential documents

20   that were sent to his personal email referred to PCI

21   compliance; correct?

22       A      Broadly, yes.

23       Q      Okay.  And that was the concern that was

24   articulated about these emails being sent to his

25   personal email; correct?

Mark Kendall                                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 36

1              MR. GALANEK:  Objection.  Form.

2         A    Can you restate the question, please?  I

3    don't understand.

4         Q    Yes.  The concern about these

5    confidential documents being sent to Mr. Slawin's

6    personal email was because they referred to the issue

7    of PCI compliance; correct?

8              MR. GALANEK:  Objection.  Form.

9         A    All confidential documentation would be

10   treated the same way.

11        Q    Okay.

12        A    But these particular -- irrespective of

13   subject matter.

14        Q    Okay.  And these documents that were

15   identified as having been sent to Mr. Slawin's

16   personal email referred to PCI compliance; correct?

17        A    Some of the documents did.

18        Q    Okay.  And that was what was concerning

19   to Mr. Solan and to yourself; correct?

20             MR. GALANEK:  Objection.  Form.

21        Q    You can answer.

22        A    Like I said before, any -- sending any

23   confidential information, irrespective of the

24   content, would be inappropriate and a potentially

25   fireable offense.

Page 37

1      Q    Okay.  Let's show the witness Exhibit 42.

2   Just hang on.  We're printing one of the exhibits.

3   It didn't print correctly.

4           (Off-record discussion.)

5      Q    (By Mr. Marx) Okay.  We're going to show

6   you now what we've marked as Exhibit 42.

7      A    I can see the screen.

8      Q    All right.  It's a two-page exhibit.  So

9   if you want to look at the second page, we can -- let

10  us know when you're ready.  Let me know when you're

11  ready to look at page 2.

12     A    I've read it, but I don't know who I --

13     Q    I haven't asked you a question yet.

14     A    Okay.

15     Q    I just wanted to know if you --

16     A    Okay.  I've read it.  I've read it.  I'd

17  need more context.

18     Q    Okay.  So this is a document that was

19  produced by the defendant bearing --

20          MR. GALANEK:  Excuse me.  Do we need --

21      excuse me.  Robert?  Robert?

22          MR. MARX:  Yeah.

23          MR. GALANEK:  Do we need to look at

24      page 2?  He said he's read it.  I thought you

25      asked him has he read page 1.  Does he need to

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 38

1            go to page 2?  I think he was saying he's read

2            page 1, so we probably need to scroll down to

3            page 2.

4                    THE WITNESS:  Can we read page 2, please?

5                    MR. MARX:  I just asked him if he needed

6            to.  I was waiting on him.

7                    MR. GALANEK:  Yeah.  I understand,

8            Robert.  I'm just -- I just think there was a

9            miscommunication.  I think what you were asking

10           him --

11                   MR. MARX:  That's fine.

12                   MR. GALANEK:  -- was are you done.  And

13           he was done with page 1.

14                   MR. MARX:  Okay.  Fair enough.

15           A      I've read the pages.

16           Q      Okay.  So Exhibit 42 is a document that

17     was produced by defendants bearing Bates numbers 8367

18     8368, a two-page document.  It purports to be an

19     email from Marianne de Castro to Mike Solan.

20     Subject:  Summary of high risk information security

21     violation - Eric Slawin, dated 12/17/2017 at 12:34

22     a.m.

23                   MS. MARX:  12/7.

24           Q      12/7/2017 at 12:34 a.m.  Have you seen

25     this before?

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 39

1          A      I have not.

2          Q      Okay.  Fair enough.  I'm going to read

3    something to you and ask you a question about it.  It

4    says:  Issue summary.  Eric Slawin was involved in

5    documenting and helping put together an SIAI

6    regarding significant organization-wide PCI

7    noncompliance issue.

8                 Okay.  "First Data Information Security

9    validated that Eric Slawin sent multiple emails and

10   documents with confidential and high risk content

11   related to this SIAI to his personal email address,

12   all of which successfully got through."

13                Does this refresh your recollection as to

14   whether the content of the emails Mr. -- that Mr.

15   Slawin sent to his personal email referred to the PCI

16   issue?

17         A      Yes.  And I said that that was one of the

18   things that he had sent.

19         Q      Okay.  And those are the emails that he

20   was fired for sending to his personal email; is that

21   right?

22         A      He was fired for sending confidential

23   emails to his personal email.

24         Q      Including the emails regarding the PCI

25   issue; correct?

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 40

1        A     Yes.

2              MR. MARX:  Let's show the witness of 69,

3        Shelley.

4        A     I can see the document.

5        Q     Okay.  Let me know when you've finished

6    scrolling through.

7              MR. MARX:  And Shelley, we'll move it as

8        he pleases.

9              Chris, I think you're muted.  I think --

10       I see you talking, but I think you're muted.

11             MR. GALANEK:  Sorry.  I didn't realize I

12       muted myself.  Yeah, Robert.  I'm sorry.

13       Could -- I'm having a tough time because I'm

14       old.  Could Shelley just Zoom in a little bit?

15       I'm having a hard time reading the document on

16       screen.

17             MR. MARX:  All right.  Okay.  Okay.

18       Yeah, okay.

19             MR. GALANEK:  Thank you.  Thank you.

20       That's -- that's helpful.

21       A     I've read the first page.  I don't

22    necessarily understand all the content within it.

23       Q     Are you ready to go to the second page?

24       A     Not yet.

25       Q     Okay.

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 41

```
 1        A     All right.  I've finished reading this
 2    page.
 3              Okay.  I've read through Number 14.
 4    Okay.
 5              All right.  I've finished reading it.
 6        Q     Okay.  So for the record, Exhibit 69 is
 7    documents produced by the defendant BAMS bearing
 8    Bates numbers 2718 through 2719.  It purports to be
 9    the proprietary rights and information agreement.
10    Have you seen this document before?
11        A     If I have, I don't remember it.
12        Q     Okay.  To your understanding did Mr.
13    Slawin violate anything in this document?
14              MR. GALANEK:  Objection.  Form and
15         foundation.
16        A     I don't think I have the capability to
17    read that and make that decision right now.  There's
18    a lot of content here, and I'm not a lawyer.
19        Q     Okay.  But you said to your understanding
20    that Mr. Slawin had violated company policy; is that
21    right?
22        A     Yes.  Like in any firm, you can't send
23    confidential information to your personal email
24    address anywhere in the banking industry that I've
25    ever worked.
```

Mark Kendall                        July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 42

1       Q      Moved to strike as nonresponsive.  Yes or

2    no:  You testified that to your understanding Mr.

3    Slawin was fired for a violation of company policy?

4    Yes or no.

5       A      That's what I said, yes.

6              MR. GALANEK:  I object.  Hold on.  I'll

7         object to the form of the question.

8              MR. MARX:  Okay.  You can object.

9       Q      Now, to your understanding, was there any

10   specific policy written down to your understanding

11   that Mr. Slawin violated?

12      A      I don't know.

13      Q      Are you aware of any?

14      A      No.

15      Q      Thank you.  How did you become aware that

16   Mr. Slawin had downloaded documents -- emails to his

17   personal email?

18      A      I had received an email from First Data

19   digital loss prevention that noted that he had sent

20   those emails, and then they provided the emails that

21   were sent.  I believe there were two messages I got

22   from First Data DLP and I think there were somewhere

23   in the neighborhood of 15 to 20 individual emails

24   that he had sent to himself.

25             MR. MARX:  Okay, Shelley.  Let's -- let's

Page 43

1              show the witness 41.

2         Q    Again, we'll scroll up and down.  Let us

3    know -- tell us when you're ready.

4         A    You can scroll down.  I've seen this

5    message before.  You can continue to scroll down to

6    page 2, please.

7              Yeah, I'm familiar with this message.

8    Not necessarily every single row within it, but these

9    are the -- this is the listing of the different

10   things that he sent to his personal email.

11             I've read that or I've seen it before,

12   and I do understand the content of it.

13        Q    Okay.  So for the record, Exhibit 41 is a

14   document produced by defendant bearing Bates numbers

15   1328 through 1331, an email from Robert Galarza to

16   Erik Cizmadia, C-I-Z-M-A-D-I-A, and other people.

17             You've seen this before, Mr. Kendall?

18        A    I've seen this message before.

19        Q    Okay.  How did it come about that you saw

20   it?

21        A    So I was shared -- my counsel provided me

22   with this.

23        Q    Okay.  All right.  Well -- and let me

24   just correct what I said before.  The -- on page 1328

25   there's also a message from Robert.  It's an email

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 44

1    chain from Robert Galarza to Mike Solan, Thursday,

2    December 7th, 2017, 4:08 pm.  And it appears to set

3    forth the content of the downloaded email.

4            And you said you saw this with your

5    attorney.  Had you seen it at the time?

6        A    Not -- not this specific one because I'm

7    not named on this.

8        Q    Well, that was my question.  Because we

9    haven't received one with your specific name on it.

10   That was my question.  You said you received an email

11   from First Data; is that right?

12       A    My recollection is that I got an email

13   from First Data with a listing of things that -- the

14   list of artifacts that he had sent to himself.

15   That's my recollection.

16       Q    Do you recall when you received that?

17       A    Approximately Thursday, the 7th.

18       Q    December 7, 2017?

19       A    Yes.

20       Q    Okay.

21            MR. MARX:  Mr. Galanek, we have not

22       received that document.

23            MR. GALANEK:  Robert, everything that

24       actually exists you have received.  That is --

25       all of Mr. Kendall's documents that were

Mark Kendall

July 12, 2024

Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 45

1          retained in the system if it existed at the

2          time of the request for production in the

3          litigation have been produced to you if it was

4          responsive to one of your requests.

5          Q    (By Mr. Marx) All right.  So even though

6     this document isn't addressed to you, you're saying

7     you saw a document substantially like this document

8     on or about December 7, 2017; is that right?

9          A    Yes.

10         Q    Okay.  So it looks -- to your

11    recollection the email you received was from First

12    Data; is that right?

13         A    To my recollection I got something from

14    the First Data info security group.

15         Q    It looks something like what we're

16    looking at, Exhibit 41; is that right?

17         A    Yeah.  Ultimately it had the same sort of

18    content.  It was a listing of the documents that

19    were -- that he had sent to his personal email.

20         Q    Okay.  And after receiving it, what, if

21    anything, did you do?

22         A    I contacted HR.  I remember contacting HR

23    for this.

24         Q    So when you say HR, is that any specific

25    individual?

Page 46

1        A       Mike Solon, who was in the -- he worked

2    on the same floor that I did.

3        Q       Okay.  Do you know what Mike Solan's job

4    title was at that time?

5        A       No, I don't.

6        Q       Okay.  And tell me about that

7    conversation.  Did you speak to Mr. Solan by email?

8    In person?  Telephone?  How did you connect with him?

9        A       I don't remember specifically --

10       Q       Okay.

11       A       -- if I called or what mode I

12   communicated with.

13       Q       Do you recall the substance of that

14   communication?

15       A       It was -- to summarize, it would be a

16   person that works for me appears to have sent a lot

17   of information to his personal email.  What do I do?

18       Q       Do you recall what, if anything, Mr.

19   Solan said?

20       A       I don't remember specifically.  But

21   following that, we had an investigation of the

22   content.  He wanted to understand what the content

23   was that was sent.  And so we had talked about what

24   the content was, some of the context around it, that

25   these were not things like, you know, healthcare

Mark Kendall                                     July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 47

1    information or things that someone could reasonably

2    send to themselves for an actual purpose, that these

3    were all work documents related to his

4    responsibilities at work, and that there was no

5    reasonable -- reasonable way we would understand why

6    he would have sent this to his personal email.

7         Q    And during that conversation did you

8    discuss the fact that some of these emails referred

9    to PCI compliance?

10        A    When I was explaining to Mike what the

11   content was and why it was concerning and why it was

12   not something more benign like a -- like I said, like

13   a healthcare reasonable thing that you could send to

14   yourself, that these had no business purpose to be in

15   his personal email.

16        Q    Okay.  And so again, during this

17   conversation or communication with Mr. Solan, did you

18   discuss the fact that some of these emails referred

19   to PCI compliance?

20        A    To give him context, but not with any

21   more detail than that so that he understood what it

22   was that he was looking at.

23        Q    Okay.  So in terms of an answer to my

24   question, is it correct that you during that

25   communication with Mr. Solan discussed the fact that

Mark Kendall                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 48

1    some of these emails referred to PCI compliance?

2         A    When I was explaining to him what the

3    emails were, yes.

4         Q    Thank you.  And when he --

5         A    What the different emails were, that this

6    one was about X, this one was about Y.

7         Q    All right.  When you received that email

8    from -- you said Infosec?  What was that called?

9         A    Info Security?  I'm not exactly sure, but

10   I was contacted by First Data.  It could have been

11   through a system.  It may not have been through an

12   email.  It could have been an alert through an

13   embedded system that sent -- that shared it.

14             I don't remember the exact mode, but I

15   was made aware from a representative at First Data

16   about this -- about Eric sending emails to himself.

17        Q    Okay.  So is it a correct statement that

18   you somehow became aware of it on or about December

19   7, 2017?

20        A    Correct.

21        Q    Okay.  And before that time you were not

22   aware of any situation where Mr. Solon was sending

23   business-related email -- Mr. Slawin was sending

24   business-related emails to his personal email;

25   correct?

Mark Kendall                                        July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 49

```
 1        A     Prior to that date I did not know about
 2   him sending emails to himself.
 3        Q     He sent some emails that were business
 4   related, just not about PCI compliance; is that
 5   right?
 6              MR. GALANEK:  Objection.  Form.
 7        A     Repeat that.  Are you -- are you asking
 8   about what did I --
 9              Start over again, please.
10        Q     Let me rephrase.  Prior to December 7,
11   2017 you were aware that Mr. Solan had sent -- that
12   Mr. Slawin -- well, let me -- my cocounsel keeps
13   correcting me.  I don't know why I'm focused on Mr.
14   Solan.
15              Prior to December 7, 2017, you were aware
16   that Mr. Slawin had sent business related emails to
17   his personal email; correct?
18        A     No, not correct.
19              MR. GALANEK:  Objection.  Form.
20        A     The first time I was made aware of Eric
21   sending emails to himself was when I got the
22   communication with the big list of all the emails he
23   had sent.
24        Q     Okay.  But my question -- I'm not
25   limiting my questions to PCI compliance like I did
```

Mark Kendall                                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 50

1    before.  I'm just asking:  Prior to December 7, 2017,
2    were you aware that Mr. Slawin had sent any kind of
3    business related emails to his personal email?  Yes
4    or no.
5         A    No.  I don't remember him talking about
6    sending personal emails to himself prior to that time
7    when I found the list of however many there were.
8         Q    But you received an email that he sent to
9    you which indicated a copy had been sent to his
10   personal email; correct?
11        A    What -- I don't understand the question.
12   What are we talking about?
13        Q    Prior to December 7, 2017, you had
14   received an email from Mr. Slawin which indicated
15   that he was sending a copy of that email to his
16   personal email; correct?
17        A    I don't recall seeing that.  Do you have
18   a document to show me?
19        Q    Are you denying that ever happened?
20        A    I don't recall seeing that.
21             MR. GALANEK:  Objection.  Form.
22        A    If you have the document, then show me.
23        Q    Okay.  What would you have done if you
24   had seen that?
25             MR. GALANEK:  Objection.  Form and

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 51

1        foundation.

2        A    If I found -- if I -- so are you saying

3    had I prior to the -- if that digital loss prevention

4    group sending me stuff was -- I didn't get that.

5    What would I have done had I known he was sending

6    confidential emails to himself?

7        Q    Yes.

8        A    What I should have done -- what I would

9    have done is I would have reported it to HR.  That

10   would have been the appropriate thing to do.

11        Well, let me rephrase that.  I would have

12   asked him why, why are you sending personal documents

13   to yourself that are -- that have no purpose?  And I

14   would try to understand why.  And if it seemed like

15   there was a reason that was not appropriate or -- I

16   don't even know what.  It -- it is reasonable to

17   report anybody who is sending confidential

18   information to their personal email.

19        Q    Okay.  But what about business related

20   information that's not confidential, is that okay to

21   send to his personal email?

22        MR. GALANEK:  Objection.  Form.

23        A    I don't know.  That's a BAMS policy and I

24   don't know the answer to that.

25        Q    Okay.  If you became aware that Mr.

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 52

1    Slawin had sent BAMS related email even of a -- not

2    of a confidential nature to his personal email what,

3    if anything, would you have done?

4           MR. GALANEK:  Objection to form.

5       A     I would have asked him what he was

6    sending to try to understand some context around what

7    he was sending.  And so it could be something -- so,

8    for example, if he was sending healthcare information

9    to himself, I would say maybe that you should follow

10   whatever the secure method is to do that or to access

11   it from a different site.  That would be a

12   conversation.

13           If I found he was sending something that

14   was company property, confidential information, it

15   would be a different conversation where I could

16   potentially go to HR.

17      Q     Okay.  So prior to December 7th, 2017,

18   did you ever have a conversation with Mr. Slawin

19   about him sending BAMS related emails to his personal

20   email?

21      A     I don't recall any conversation about

22   that prior to December 7th.

23      Q     In 2017; right?

24      A     Correct.

25      Q     All right.  Now, prior to receiving the

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 53

1    notice -- and I understand you don't remember how you

2    got it -- from First Data about the download -- we'll

3    call them the downloaded emails.  Are you okay with

4    that?

5           A      Yes.

6           Q      Were you expecting to get some kind of a

7    notification?

8           A      No, I was unaware of him sending personal

9    emails to -- company emails to his personal email.

10          Q      Okay.  Well, let me ask the question a

11   little differently.  Prior to that date on or about

12   December 7, 2017, were you aware of any investigation

13   by anybody into whether or not Mr. Slawin had

14   downloaded emails to his personal email?

15          A      I was not aware of any investigation at

16   that time.

17          Q      All right.  We're sending you Exhibit 60.

18   Yeah, we're sharing the screen.  Exhibit -- yeah, I'm

19   so used to the email.  Sorry.  Yes, we're sharing the

20   screen to show you Exhibit 60.  It's a one-page

21   document.  Let me know when you've had a chance to

22   look at it.

23          A      Yes, I'm familiar with this document.  I

24   received it from my counsel.

25          Q      Okay.  So now, just for the record,

Mark Kendall                              July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 54

1       Exhibit 60 is a document produced by the defendant

2       bearing BAMS Bates Number 163.  This is an email from

3       Eric Slawin to you; correct?

4              A      Uh-hmm.

5              Q      I'm sorry.  You need --

6              A      Yes.

7              Q      Yes.  Thank you.  Dated June 2nd, right,

8       2017?

9              A      That's what it says.

10             Q      It says, "Finally had enough of Brian."

11      Who's Brian?

12             A      Brian Rubin, the temporary manager.

13             Q      At the time that Mr. Slawin sent this to

14      you was -- do you remember was Mr. Brian the interim

15      manager at that time?

16             A      Yes.

17             Q      Okay.  So this was Mr. Slawin talking

18      about his manager at BAMS; right?

19             A      This is him complaining to his two-up

20      manager about his one-up manager.

21             Q      Okay.  And the one -- the one-up manager

22      he was complaining about was Mr. Brian Rubin.  Is

23      that it?

24             A      Yes.

25             Q      Okay.  And there's a cc to his personal

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 55

1    email; right?

2         A      I see that there.

3         Q      Okay.  And did that violate company

4    policy?

5         A      I don't know.

6                MR. GALANEK:  Objection to form.

7         A      I was not his manager at the time.

8         Q      Okay.  You were his manager later in the

9    year; is that right?

10        A      Yes.

11        Q      Okay.  And later in the year you

12   apparently had an understanding of company policy;

13   correct?

14               MR. GALANEK:  Objection.  Form.

15        A      What are you trying to ask?

16        Q      Well, when you became Mr. Slawin's

17   manager you were aware of company policy, according

18   to your understanding, regarding downloading emails

19   to a person's personal email; correct?

20        A      Are you asking me why I didn't report

21   this?

22        Q      One question at a time.  I'm asking you:

23   When you became Mr. Slawin's manager you were aware

24   at that time of a company policy regarding

25   downloading emails to personal email; correct?

Mark Kendall
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.
July 12, 2024

Page 56

```
 1        A      When I was his manager I was aware that
 2    you shouldn't send emails to your personal email,
 3    yes.
 4        Q      Okay.  And before you were his manager
 5    did you have that same understanding?
 6        A      Yes, I had the same understanding.
 7        Q      Okay.  And after you became his manager
 8    did you say to Mr. Slawin, I know you sent this on
 9    June 2 at some time, you should not have done that.
10    Now that I'm your manager, we need to have a
11    conversation about that?
12        A      No.
13        Q      Okay.  At the time that you received it
14    did you notify anybody that you had received this
15    document indicating that Mr. Slawin sent a copy to
16    his personal email?
17        A      No.
18        Q      Who's manager -- who was Mr. Slawin's
19    manager at the time, if you know?
20        A      Brian Rubin.
21        Q      Okay.
22        A      Brian Rubin reported to Natasha Collins.
23        Q      Okay.  Did you alert Mr. Rubin that Mr.
24    Slawin had done that?
25        A      No.  I think it's reasonable that the --
```

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 57

1    Q    The note -- it's a yes or no question.

2    A    No.

3    Q    Did you alert --

4         MR. GALANEK:  No.  No, Robert.  Robert.

5         MR. MARX:  No, no, no.  He's not allowed

6    to explain.  We went over that before.  You

7    want to speak -- it's a yes or no question.

8    Did he or did he not?

9         COURT REPORTER:  Excuse me.  One at a

10    time please, gentlemen.  I cannot take a

11    transcript when everybody's --

12        MR. MARX:  Well, I'm just saying --

13        COURT REPORTER:  Hello?

14        MR. MARX:  If Mr. Galanek wants to --

15        MR. GALANEK:  Robert?  Robert?

16        COURT REPORTER:  Anybody?  Okay.

17        MR. MARX:  -- question his witness on

18    direct examination, he's free to do so.  If a

19    question calls for yes or no, the witness does

20    not have an opportunity to explain or add on

21    things.  That's called moving to strike as

22    nonresponsive.  You would never get away with

23    that in a court of law.  And you, Mr.

24    Galanek --

25        MR. GALANEK:  Robert?  Robert?  He

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 58

1      absolutely as a witness when he -- you're

2      right.  He must respond yes or no.  He

3      absolutely can explain his response.

4            MR. MARX:  No, that's not a correct

5      statement.

6            MR. GALANEK:  If it's a question or --

7            MR. MARX:  That's not a correct

8      statement.  And in fact --

9            MR. GALANEK:  Robert?  Robert?

10           MR. MARX:  I know -- I know that you

11     objected to having this as a ground rule.

12     Again, I think we need to contact the court and

13     iron this out.  I do not think if we were in a

14     trial that Judge Totenberg would let him

15     explain his answers.  She would tell him that

16     he has his counsel who can explain it on

17     direct.  That's what would happen.

18           MR. GALANEK:  Robert -- Robert, at trial

19     you're in front of a jury.  You raised this

20     issue ten days ago.  I told you my position.

21     If you wanted to take it up with the court,

22     you've had the last --

23           MR. MARX:  I will.

24           MR. GALANEK:  -- ten days in which to do

25     so.  This is not at trial.  We are not in front

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 59

1      of a jury.  If you ask an ambiguous question of

2      the witness --

3              MR. MARX:  This may be shown -- this may

4      be shown in front of the jury actually.  So

5      it's the same process.

6              MR. GALANEK:  Robert?

7              MR. MARX:  It's the same process.  We'll

8      talk to the judge.  Okay?  I'll go on to my

9      next question.

10             MR. GALANEK:  Fine.

11     Q      Okay.  Did you tell --

12             MR. GALANEK:  Hey, court reporter -- hey,

13     Carla --

14             No.  Carla, please mark this -- mark the

15     question -- mark the interaction between

16     counsel, please.  I'm sure you --

17             MR. MARX:  Yeah, absolutely mark it for a

18     ruling because we will be going to the court.

19             COURT REPORTER:  I can't -- Okay.

20     Gentlemen.  Gentlemen.  Gentlemen?  I realize

21     this is on video, but I'm trying to make a

22     transcript and two people talking at once is

23     absolutely impossible.  So if we could try not

24     to do that, you'll have less dashes in your

25     transcript.

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 60

1          Thank you.  I know it's not the first
2      time you've heard it, but I'm just reminding
3      you.  Thank you.
4              MR. GALANEK:  Thank you, Carla.
5              MR. MARX:  If Galanek would not interrupt
6      me, it would work.
7      Q    (By Mr. Marx) Mr. Kendall, after you
8  became aware that Mr. Slawin had downloaded this
9  email, which is marked as Exhibit 60 to his personal
10  email did you talk to Ms. Collins about it?
11      A    I became aware of this email going to his
12  personal email as the -- with the cache of the other
13  emails.  That's the first time I noticed that it was
14  sent to it because the content is fairly shocking and
15  distracting.
16      Q    Move to strike as nonresponsive.
17          After you received this email dated June
18  2nd, 2017, indicating a copy to Mr. Slawin's personal
19  email did you speak to Miss Collins about it?
20      A    No.
21      Q    Thank you.  When you received this email
22  on or about June 2nd, 2017, did you read it?
23      A    Yes.
24      Q    Prior to Mr. Slawin being fired did you
25  interview him?

Mark Kendall                                        July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 61

1          A     Interview as a new hire?

2          Q     No.  No.  Let me rephrase the question.

3     Prior to Mr. Slawin being fired did you interview him

4     with respect to the downloading of the emails?

5          A     I did not.  But I was present when Mike

6     Solan did.

7          Q     Okay.  So there came a time that Mr.

8     Solan interviewed Mr. Slawin about the downloaded

9     emails?

10         A     Correct.

11         Q     And you were present at the time?

12         A     I was in Mike's office when we did that.

13         Q     Okay.  Do you know when that was?

14         A     It was approximately around that same

15    time of December 7th, 8th, around there.  Maybe the

16    Monday after, but around that time.

17         Q     And if we don't say so, would it be

18    correct that pretty much unless -- all our dates are

19    in 2017?

20         A     All the action was in 2017, yeah.

21         Q     Thank you.  Okay.  Now, I think you just

22    stated a few minutes ago that this email, this

23    Exhibit 60 dated June 2nd, 2017, was on the list.

24    That's how you became aware of it?  It was on the

25    list of downloaded emails; is that right?

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 62

1         A    Can you show me?  I don't remember what
2    the number was for that one.
3         Q    Yeah, let's show him Exhibit 60 again.
4              MR. GALANEK:  And Robert, I believe what
5         he was asking for was Exhibit 41 which has the
6         listing.
7              MR. MARX:  Oh, I'm sorry.  Can we show
8         the witness Exhibit 41?  Thank you, Chris.
9         A    Okay.  Can you ask your question again?
10        Q    Okay.  I'll ask it.  I didn't know if
11   you're supposed to scroll through it first before I
12   ask it, so --
13        A    No, we -- this is -- this is one we had
14   up a minute ago, so I'm familiar with this one.
15        Q    Yeah.  Right.  Okay.  So I think you
16   testified that the June 2nd, 2017 email, Exhibit 60,
17   that you first became aware of it because it was on
18   the list of downloaded emails; is that right?
19        A    I understood it as being flagged by the
20   DLP, digital loss prevention, around the December 7th
21   timeframe.
22        Q    Okay.  And again, that's 2017.  But it's
23   not listed on Exhibit 41, is it?
24        A    Is it?  I don't know.
25        Q    Well, take a look at it.

Page 63

1         A      I would need to compare subject lines to

2    do this.

3         Q      Go ahead.

4         A      What's the other subject line for the

5    other artifact you're talking about?

6         Q      Well, if you want to look at Exhibit 60,

7    we can show you Exhibit 60.  I don't know.  I can

8    read to you the subject line, if that's acceptable to

9    you.

10        A      "Check it out."  Okay.  I'm looking for

11   "check it out."

12        Q      Okay.  Yeah.

13        A      Is it in -- is it in that artifact?  Is

14   it in this exhibit?

15        Q      I don't see it.  That's why I'm asking

16   you if you see it.

17        A      I am going to read through it.

18        Q      All right.

19        A      Okay.  Keep rolling.  I'm at Number 5.

20        Q      Okay.

21        A      Yeah.  I don't see it on this document,

22   no.

23        Q      Okay.  All right.  Let's go back to the

24   interview that you said you were present regarding

25   Mr. -- the downloading of the emails.  You said you

Mark Kendall                        July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 64

1    were present in Mike Solan's office?

2         A     That's my -- that's my recollection, yes.

3         Q     Okay.  And was Mr. Slawin there in

4    person?

5         A     On the phone.

6         Q     On the phone.  Okay.  And was anyone else

7    present other than you and Mr. Slawin?

8         A     I don't recall.  I don't recall if

9    anybody was on the phone line also either.

10        Q     Okay.  And just tell us what you remember

11   about that conversation.

12        A     So Mike did the talking.  I was in the

13   room.  And he said to Eric, "We saw that you sent

14   these emails to yourself," and asked why he sent them

15   to himself.

16              And Eric didn't have an answer.  He

17   just -- like, he reminded me of my kids, you know,

18   when they get caught with their hand in the cookie

19   jar.  He didn't have anything -- he pretty much said

20   nothing.  He -- I don't know.  He didn't have --

21              Mike prompted him to say, "Did you need

22   these for a work purpose," or some other sort of

23   prompts.  And Eric had no response and just said, "I

24   don't know.  I just -- I don't know."

25              It was a very noncommittal answer was all

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 65

1      that Eric Slawin gave for why he sent the emails to

2      himself.

3            Q      Anything else you can recall about that

4      conversation?

5            A      I think -- not that -- not with

6      confidence, no.

7            Q      Okay.  Did you do any of the talking

8      during that conversation?

9            A      I don't recall that I did beyond

10     announcing that I was there.

11           Q      Okay.  Did you take notes?

12           A      I don't recall.  If I did, I don't have

13     them.

14           Q      Okay.  Do you know if Mr. Solan did?

15           A      I don't know.

16           Q      All right.  Did Mr. Solon refer to any

17     specific policy during that conversation?

18           A      I don't recall.

19           Q      Do you recall that he did or you just

20     don't recall either way?

21           A      I don't recall either way.

22           Q      Okay.

23           A      My strongest recollection is of that

24     asking "Why did you do it?"

25           Q      You don't recall Mr. Solan talking about

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 66

1      any specific policy; correct?

2           A      I don't recall him talking about a

3      specific policy, but I don't recall probably many

4      things that he was saying at the time.

5           Q      All right.  Did you have any conversation

6      with Mr. Solan on that -- at that time before Mr.

7      Slawin got on the telephone?

8           A      So to the best of my recollection, I

9      spoke with Mike Solan about what had happened, what

10     the content of the messages were, that they were

11     various confidential messages.  There were, I think,

12     two in there that were not.  One was like a

13     healthcare one and one was about a hurricane

14     response, something else.

15                 But the rest were all around other

16     confidential matters that I saw no business purpose

17     for him to send to himself, just so that Mike Solan

18     was aware of the context of what was going on.

19                 And then Mike had set up the

20     conversation.  And I don't know if I've got the

21     sequence exactly right.  Did I talk about that with

22     him in the room or did I talk about -- with him

23     before and then we had the phone call?  I don't know

24     the sequence.

25                 But my conversation with Mike was to give

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 67

1    him the context for why this was a problem that Eric

2    was sending this information to his personal.

3        Q    Okay.  Before Mr. Slawin got on the

4    phone, was there any discussion between you and Mr.

5    Solan about terminating Mr. Slawin?

6        A    I don't recall.

7        Q    Do you recall Mr. Salon using that word,

8    termination?

9        A    Not specifically.  I don't recall that.

10       Q    Or discharge or fire?

11       A    No, we were -- what we did say was we

12   need to get him on the phone and understand why he

13   did this so we can understand what to do next.

14       Q    And how long was that phone call where

15   you had Mr. Slawin on the telephone?

16       A    Relatively short, 30 minutes or less.

17       Q    Okay.  You consider 30 minutes a short

18   phone call?

19       A    It can be.

20       Q    So what happened during all those 30

21   minutes?

22       A    I don't recall the exact number of

23   minutes of the phone call.  I remember it was a

24   relatively short phone call.  Maybe it was 15, maybe

25   it was ten, maybe it was 30.  I don't recall the

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 68

1    length of the phone call.

2         Q    Okay.  So after Mr. Slawin got off the

3    phone then were you still in Mr. Solan's office?

4         A    Yes.

5         Q    Did you have any further conversation

6    with Mr. Solan about that issue?

7         A    That his response that he had no reason

8    and pretty much failed to respond to why he was

9    sending these emails to himself was concerning and

10   that termination may be appropriate based on what

11   he -- based on that.

12        Q    Who raised the issue of termination?

13        A    I don't recall.

14        Q    Was there any discussion about whether or

15   not Mr. Slawin was considered to be a whistleblower?

16        A    No.

17        Q    Was there any discussion about referring

18   the issue to legal as to whether or not Mr. Slawin

19   was considered to be a whistleblower?

20        A    Mike and I did not talk about that that I

21   recall.

22        Q    Okay.  Now, what did you say -- did you

23   say Mr. Solan referred to an investigation?

24        A    Can you repeat that?  I didn't hear which

25   name you said.

Mark Kendall                            July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 69

1      Q      Yeah.  Did you testify that Mr. Solan

2    referred to an investigation?

3      A      I'm not aware of any investigation with

4    Mike Solan that -- no, I'm not aware of that.

5      Q      Okay.  So -- so we're not missing

6    anything.  Basically the notice you received from

7    First Data about the downloaded emails, that was the

8    sum total of any investigation; is that right?

9      A      From what I was part of --

10            MR. GALANEK:  Objection.  Form.

11     A      From what I was part of, from the time

12    that I received notification that he sent those

13    emails I brought it to HR and I followed their

14    directives from that point on.  That's all that I'm

15    aware of is bringing them that information or talking

16    with them about that information.

17     Q      Okay.  And in terms of an interview,

18    you're aware of this phone call with Mr. Slawin on

19    the phone that you've just talked about.

20     A      Yes.

21     Q      Is that right?

22     A      Yes.

23     Q      You're not aware of any other interview

24    with Mr. Slawin; correct?

25     A      I am not, no.

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 70

1      Q     Okay.  Now, let's break this down.  Prior
2   to this conversation -- we'll call it the interview.
3   Is that okay with you?
4      A     The interview meaning when Mike Solan and
5   I were on the phone with Eric, yeah.
6      Q     Right.  Okay.  And again, was that, like,
7   on December 7th or 8th of 2017?
8      A     Approximately, yes.
9      Q     Okay.  Can you pin it down to the exact
10  date or not so much?
11     A     No, I can't.
12     Q     Okay.  So prior to the interview did you
13  provide human resources with any suggestions?
14     A     I don't recall.
15     Q     You don't recall doing that?
16     A     No, I don't.
17     Q     Prior to the interview, do you -- did you
18  provide human resources with any recommendations?
19     A     I don't recall.
20     Q     Okay.  You don't recall doing that?
21     A     I don't recall, no.
22     Q     Okay.  Prior to the interview, did you
23  send anything to human resources about Mr. Slawin?
24     A     I'm thinking through what it would be
25  other than the notification that he had sent those

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 71

1    emails.  I'm not aware of anything -- or I don't

2    remember anything that's -- other than those

3    messages.

4         Q    Okay.  You're not aware of anything in

5    writing along the lines of a proposal or

6    recommendation to HR; correct?

7         A    I don't recall.

8         Q    Okay.  Same questions.  After the

9    interview, do you recall sending human resources any

10   kind of a written proposal or recommendation?

11        A    No, I don't.  I do not recall.

12        Q    Okay.  After the interview do you recall

13   verbally suggesting or recommending any proposal to

14   HR?

15        A    I -- I remember saying that I would

16   support their decision to terminate if that was the

17   appropriate call.

18        Q    Who did you say that to?

19        A    Mike.

20        Q    Mike Solan?

21        A    Yes.

22        Q    Was that during what you've just said

23   happened, right, between you and Mr. Solan after Mr.

24   Slawin got off the telephone?

25        A    After we got off the tele -- after the

Mark Kendall                        July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 72

1    interview we said that -- we talked that termination

2    may be an appropriate option.

3         Q    Okay.  Other than that conversation, did

4    you make any proposals or recommendations to HR after

5    the interview?

6         A    I don't recall.

7         Q    Okay.  And I think you testified you

8    don't recall if you spoke about whether or not Mr.

9    Slawin should be considered a whistleblower during

10   that --

11        A    We did not talk --

12        Q    -- conversation?

13        A    We -- Mike and I never used the word

14   "whistleblower" that I can recall doing that.  And if

15   it was, it's a -- it's a fairly absurd notion based

16   on Eric's role.

17        Q    Okay.  To your understanding --

18        A    But we can talk about that later.

19        Q    It's absurd.  But I'm just asking whether

20   or not that term was used.  You don't recall it being

21   used?

22        A    I don't recall that term being used, no.

23        Q    Okay.  During what period of time were

24   you a business control officer?

25        A    I think that was, again, my title from

Page 73

1    like the fall of 2017 through the spring of 2018 when

2    I left.

3        Q    Okay.  So that -- was that like a

4    manager's position?

5        A    It was not always a manager's position.

6    In my case it was.  In other groups it wasn't.  So

7    when I first started with the firm I was a business

8    control officer and an individual contributor.  And

9    later on I was a business control officer and a

10   manager.

11       Q    Okay.  And I'm going to be asking with

12   respect to your situation.  If it's different with

13   respect to other people, we don't need to complicate

14   matters.  With respect to your situation, what does a

15   business control officer do?

16       A    So a business control officer's

17   responsibility is to assist the business that they

18   work with in identifying and remediating issues.

19   They are responsible for understanding, just the --

20   being the general risk expert in the business.

21            So banks have -- we think about three

22   lines of defense where the first is audit, the second

23   is a second line independent risk assessment -- or

24   independent risk management, and the third line is

25   the business.

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 74

1    So I was the risk expert in that third

2    line within the business.  I was not an independent

3    risk manager, which is what I do today.  So I was in

4    the business as a risk expert to help with

5    whatever -- whatever risk routines requirements.

6    But many of those were around identifying

7    issues, drafting -- SIAI stands for self-identified

8    audit issues.  I drafted many, many self-identified

9    audit issues, which we would then provide to audit,

10    who would then provide to senior management and

11    regulators.

12    That was -- that was a lot of what it

13    was.  And then I'd work with individuals within the

14    business to help them remediate issues that they

15    have.  So if they were trying to fix a particular

16    problem, project managing a little bit with the work

17    that they would need to do to fix that problem,

18    helping them come up with solutions, things like

19    that.

20    So a lot of scoping the problem and then

21    helping the business get it done.

22    Q    In terms of audits, we've referred to --

23    I think one exhibit referred to SIAI.  That's

24    self-identified audit issue; is that right?

25    A    That's right.  So BAMS had a performance

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 75

1    goal for everybody in -- that's in a risk or risk

2    management field in management to have a certain

3    percentage of issues be self identified.  Because

4    what you want to do is in any firm with good

5    governance, if you're the one that raises your hand

6    and says, "We have a problem," that's always better

7    than an auditor from the outside of the firm or a

8    regulator coming in or an auditor within the firm

9    saying you have a problem.

10              So we wanted to build a culture of

11   responsibility for the risk within your business.

12   And so a self-identified issue, one way to think

13   about it is it's like a document to begin a project

14   to fix a risk problem.

15              So self-identified audit issues are good

16   from the respect -- from the point of view of if you

17   have a problem, that's how you want to disclose them

18   versus them being audit identified or regulator

19   identified.

20        Q    So after that interview on December 7th

21   or 8th, 2017, to your understanding what, if

22   anything, happened next regarding Mr. Slawin?

23        A    From that point on everything, as I

24   remember it, was in the hands of HR.  I ceased

25   talking with him.  I believe his access was turned

Mark Kendall                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 76

1      off at that time, his access to company systems.  And

2      it was with HR at that point.

3           Q     Okay.  Did you have any participation in

4      asking Mr. Slawin to sign a declaration?

5           A     That was handled by HR.

6           Q     Okay.  Did you have any involvement in

7      drafting a termination letter?

8           A     No.  That was handled by HR.

9           Q     Okay.  Were you consulted on either of

10     those documents?

11          A     I don't recall.

12          Q     Okay.  Did you see at any time the

13     contents of the declaration that Mr. Slawin was asked

14     to sign?

15          A     I've seen it, but I don't recall if it

16     was at the point in time or with preparation with

17     counsel.

18          Q     Okay.  The same question on the

19     termination letter.  Did you see it at or about the

20     time it was sent to Mr. Slawin in December of 2017?

21          A     I believe I saw some documentation from

22     HR related to his termination.  I don't remember

23     exactly which documents I saw.  But I believe -- just

24     as his manager, I believe I did get some sort of

25     communication from HR about those documents.  I don't

Page 77

1    think I could pin this specific one, though.

2         Q     How did you become aware that Mr. Slawin

3    had been fired?

4         A     It must have been through HR telling me

5    that.

6         Q     You don't remember?

7         A     I don't remember the -- the moment.  That

8    said, I did remember -- I did know -- I became aware

9    that once his access was turned off -- he was not

10   working for the firm once his access was off.  You

11   can't work for the firm if you have no access to

12   company systems.  And his access was turned off

13   approximately the 7th of 8th of December.

14              And so until that -- something were to

15   change there, my understanding was he was not going

16   to be returning.

17        Q     Who turned the access off?  Do you know?

18        A     We had to have -- I believe a

19   representative in First Data did it, did the actual

20   flip the switch.

21        Q     Okay.  Did somebody tell someone at First

22   Data to do that?

23        A     I don't recall specifically, but it might

24   be through an HR routine.

25        Q     But you don't know how that happened?  Is

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 78

1      that what you're saying?

2           A      Right.

3           Q      Okay.  Now, there was a time where there

4      was an SIAI, self-identified audit issue, regarding

5      BAM not being PCI compliant; is that right?

6           A      I believe so, yes.

7           Q      That was in or about 2017?

8           A      I'm sorry.  Can you restate?  What --

9      what part are you asking about for it?

10          Q      I asked if it was -- if that was in or

11     about 2017.

12          A      We started discussing drafting a

13     self-identified audit issue in the summer of 2017.

14     That was a task that Eric had.  One of the first

15     things that came up after that was identified through

16     that one message with David Ades.

17                 Eric had the responsibility to gather the

18     appropriate information and draft the self-identified

19     audit issue for that prior to my becoming his

20     manager.

21          Q      BAMS was not PCI compliant; correct?

22          A      That --

23                 MR. GALANEK:  Objection.  Form.

24          A      -- was my understanding from the message

25     from David Ades.

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 79

```
 1        Q     I'm sorry.  What -- your understanding
 2   was from David Ades; is that right?
 3        A     From the -- from the message that David
 4   Ades had sent about that in May or June of 2017.
 5        Q     Well, the SI --  I'm sorry.  I didn't
 6   mean to interrupt.  Did you finish your answer?
 7        A     I think -- I think so, but maybe let's
 8   keep --
 9        Q     Okay.
10        A     -- going.  Maybe you'll get what you
11   want.
12        Q     So the SIAI to your understanding evolved
13   from the fact that BAMS was not PCI compliant; is
14   that correct?
15        A     Eric was tasked with drafting a
16   self-identified audit issue based on the discovery
17   that BAMS was not PCI compliant.
18        Q     BAMS was supposed to be PCI compliant
19   according to the agreements with the merchants; is
20   that correct?
21              MR. GALANEK:  Objection.  Form and
22        foundation.
23        A     I don't know anything about that.
24        Q     Okay.  Do you know whether or not BAMS
25   was supposed to be PCI complaint with respect to the
```

Mark Kendall                         July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 80

1    merchant services agreements or MSAs it signed with

2    various merchants?

3                MR. GALANEK:  Objection.  Form.

4         A    I don't know about that.

5         Q    Do you know whether BAMS was supposed to

6    be PCI compliant?

7         A    I don't know about that.

8         Q    Okay.  Did you ever see any of the MSAs?

9         A    Not to my recollection.

10        Q    Now, if -- if BAMS was not necessarily

11   required to be PCI compliant, what was the SIAI all

12   about?

13               MR. GALANEK:  Objection.  Form and

14        foundation.

15        A    So to handle the information someone had

16   to be PCI compliant.  And I didn't know if it was

17   First Data that was doing that work that required it

18   or if it was BAMS that was doing that work that

19   required it.

20               So a lot of our investigation was trying

21   to understand who did what and whose responsibility

22   it was to do that because understanding who was

23   handling what data at what time is necessary for

24   building a plan to fix whatever the problem is.

25        Q    So if someone was handling the data they

Mark Kendall                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 81

1    would be required to be PCI compliant; is that right?

2              MR. GALANEK:  Objection.  Form and

3         foundation.

4         A     I don't know the specific requirements of

5    what sort of data requires that.

6         Q     Do you understand the term PAN data?

7         A     What does that stand for?  I don't recall

8    that.

9         Q     Have you heard that term before?

10        A     I've heard that, yeah.  I think that's

11   personal account numbers, I believe.  But I don't

12   remember.

13        Q     Okay.  And if somebody -- if one of

14   the -- if BAMS was handling PAN data, is it not

15   correct that BAMS would be required to be PCI

16   compliant?

17             MR. GALANEK:  Objection.  Form.

18        Foundation.

19        A     I don't know.

20        Q     You don't know?  So the SIAI was based on

21   the fact that BAMS was not PCI compliant; is that

22   right?

23             MR. GALANEK:  Objection.  Form and

24        foundation.

25        A     The SIAI was to under -- was written --

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 82

1      was to be written about if there was a place that we
2      were expected to be PCI compliant and we were not, to
3      identify where those places were and develop --
4      develop remediation plans for.
5              Q      To become PCI compliant?
6              A      To remediate the issue.
7              MR. GALANEK:  Objection.  Form.
8              A      Not necessarily.  It doesn't mean that
9      BAMS was required to become PCI compliant.
10             Q      Have you ever received PCI compliance
11     training?
12             A      No.
13             Q      Okay.  And you said you referred to a --
14     an email by David Ades?
15             A      Counsel provided me with a -- yes.
16             Q      Okay.  Well, prior to your preparation
17     with counsel, had you seen an email from David Ades?
18             A      That was forwarded to me, yes.  That was
19     my first under -- the first time I got connected that
20     this was a problem.
21             Q      And that was forwarded to you by Mr.
22     Slawin; is that right?
23             A      I believe so, but I'd have to check the
24     logs.
25             Q      Do you know where the BAMS stored or

Mark Kendall                           July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 83

1    received or processed or transmitted PAN data?

2              MR. GALANEK:  Objection.  Form.

3         A    I believe our research said that there

4    were places where it was.

5         Q    Okay.  And if there were situations where

6    BAMS received, stored, processed, or transmitted PAN

7    data, it would be required to be PCI compliant; is

8    that correct?

9              MR. GALANEK:  Objection.  Form and

10             foundation.

11        A    I don't know.

12        Q    Okay.  This is Exhibit 11.

13             Okay.  Again, we'll scroll up and down

14   until you're ready to answer questions.  So just let

15   us know where to go.

16        A    I'm familiar with this message.

17        Q    Okay.  But do we need to scroll to

18   another page before we ask questions is my -- what I

19   want to know.

20        A    Let's just scroll through.  I'll reread

21   it.

22        Q    Okay.

23        A    Okay.  You can continue.

24             Okay.  Okay.  I'm complete with the

25   document.

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 84

1          Q      Okay.  Great.  So document -- excuse me.

2     Exhibit 11 are documents produced by defendant.  It's

3     an email chain bearing Bates numbers 425 through 427.

4     This is the email in which Mr. Slawin forwarded to

5     you Mr. Ades' email; correct?

6          A      Yes.

7          Q      So at the top there's an email from Eric

8     Slawin to you dated July 26th, 2017.  And it says,

9     "Per our discussion at the very bottom of this email

10    string are comments from David Ades about PCI

11    compliance."  Right?

12         A      Yes.

13         Q      Okay.  And then on the third and last

14    page of the exhibit, that's Mr. Ades's email;

15    correct?

16         A      Yes.

17         Q      In which he says, "We, BAMS, don't want

18    to go the route of PCI compliance."  Do you see that?

19         A      Yep.

20                MR. GALANEK:  Objection to form.

21         Q      "It would be a very costly and time

22    consuming exercise."  Do you see that?

23         A      Yep.

24                MR. GALANEK:  Objection.  Form.

25                Objection.

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 85

1      Q     And so, based on this email that was

2    forwarded to you from Mr. Ades, was it your

3    understanding that BAMS -- forwarded to you by Mr.

4    Slawin, was it your understanding that BAMS was

5    supposed to be PCI compliant?

6              MR. GALANEK:  Objection.  Form.

7      A     Based on this email I would -- my

8    interpretation of it is that the information

9    described must be handled in a way that meets PCI

10   compliance.

11     Q     Okay.  And based on this email it was

12   your understanding that BAMS was not handling that

13   information in a way that was PCI compliant; correct?

14     A     Based on what -- the words on the page,

15   yeah.

16     Q     All right.  So from somewhere around July

17   26th, 2017, after receiving this email it was your

18   understanding that BAMS was supposed to be PCI

19   compliant but was not; correct?

20     A     No, not correct.

21              MR. GALANEK:  Objection.  Form.

22     Q     What was your understanding?

23     A     That the data needed to be handled in a

24   PCI compliant matter -- manner.

25     Q     Okay.  And was it your understanding that

Mark Kendall                                           July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 86

1    the data was, in fact, being handled in a PCI
2    compliant manner?
3         A     Based on what this -- what this said,
4    that the data were not handled in a PCI compliant
5    manner potentially and the discussion was around what
6    options do we have to handle the data in a PCI
7    compliant manner.
8         Q     Go back to Exhibit 42.
9              MR. MARX:  Show the witness 42 again --
10             again with the share screen.
11             THE VIDEOGRAPHER:  Mr. Marx?
12             MR. MARX:  Yes, sir.
13             THE VIDEOGRAPHER:  Whenever -- whenever
14             you get to a stopping point, we've been going
15             over an hour.
16             MR. MARX:  Oh, yeah.  Just give me one or
17             two more questions on this document, then we'll
18             break.
19             THE VIDEOGRAPHER:  Okay.  That's fine.  I
20             just need to change the media when we get to a
21             stopping point.
22             MR. MARX:  All right.  I'm sorry.
23        Q     (By Mr. Marx) All right.  Let's just go --
24    run through 42, and then we'll take a break for
25    whatever reason.

Mark Kendall                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 87

1            So now 42, we've spoken.  Exhibit 42 is

2    documents 8367 to 68.  You haven't seen this document

3    before your meeting with counsel at least; correct?

4        A    Correct.

5        Q    Okay.  So if you look at the content

6    summary -- I'm just going to ask you to read it to

7    yourself and let me know when you're ready to ask --

8    to answer a question.

9        A    Okay.

10        Q    Okay.  Now, does this refresh your

11    recollection as to whether or not BAMS was supposed

12    to be PCI compliant but was not?

13            MR. GALANEK:  Objection.  Form.

14        A    My comment still stands.  The data must

15    be handled in a PCI compliant manner.  Who does it is

16    not material.

17        Q    Well, if BAMS was doing it, it needed to

18    be in a PCI compliant manner; correct?

19        A    Whoever's handling PAN data needs to have

20    PCI compliance.

21        Q    So if BAMS was handling PAN data, it

22    needed to have PCI compliance; correct?

23        A    Yes.

24        Q    All right.

25            MR. MARX:  All right.  We can take a

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 88

1           break now.  I'm going to mute myself.

2                   THE VIDEOGRAPHER:  We're off the record

3           at 12:08 p.m.

4                   (Recess.)

5                   THE VIDEOGRAPHER:  One second.  This

6           begins Media Three in the deposition of Mark

7           Kendall.  We are back on the record at 12:44

8           p.m.

9           Q    (By Mr. Marx) Okay.  Good afternoon, Mr.

10     Kendall.  Let's go back to, if we would, Exhibit 11.

11     This is the July 26th email from Mr. Slawin to you at

12     the end of which was -- the chain was Mr. Ades's

13     email.

14                   I have a question about something on the

15     first page; but if you want to go through the whole

16     thing again just let me know.

17           A    I'm good to proceed.

18           Q    Okay.  You see at the front end where it

19     says -- right under where it's to you right at the

20     beginning, it says "per our discussion."  Do you see

21     that?

22           A    Uh-hmm.

23           Q    What was that discussion?

24           A    I don't recall.

25           Q    Was it about PCI compliance?

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 89

1         A     I don't recall.

2         Q     Okay.  Was there a discussion in which

3     he, Mr. Slawin, referred to an email from Mr. Ades?

4               MR. GALANEK:  Objection.  Form.

5         A     I don't recall the conversation he's

6     referencing.

7         Q     Fair enough.  Okay.  So after the -- what

8     we're calling the interview which occurred on either

9     December 7th or 8th of 2017 when you and Mr. Solan

10    were in his office and Mr. Slawin was on the

11    telephone, after that did you speak to anybody other

12    than counsel regarding Mr. Slawin?

13        A     So I would have -- if he was -- once he

14    was terminated I needed to communicate to people that

15    they work with me instead of Eric.  So I needed to

16    communicate to any of his other stakeholders that he

17    worked with at the firm, but just in the capacity of

18    that Eric is not with the firm and it's with --

19    messages can go through me now.

20              That's -- that's my recollection of

21    anything related to that after the fact.  But that

22    was over the --

23        Q     Okay.

24        A     -- following weeks, not the next day.  It

25    was over a time period when I meet with people.

Page 90

1          Q     Okay.  So let me just be a little more

2     precise.  So from the time of what we're calling the

3     interview until the time that Mr. Slawin was

4     officially fired, did you speak to anybody other than

5     counsel about Mr. Slawin?

6          A     I don't recall.

7          Q     Okay.

8          A     I don't recall the day he was officially

9     fired either.  I don't know when that was or what the

10    time period is.

11         Q     Okay.  Let's look at 45.

12               MR. MARX:  Yeah.  Okay.  Let's show the

13         witness Exhibit 45.

14         Q     Let me know when you want -- when you're

15    able to answer questions, Mr. Kendall.

16         A     Okay.  I recognize this document from

17    review with counsel.

18         Q     Okay.  So Exhibit 45 is a document

19    produced by BAMS bearing dates [sic] 128 -- bearing

20    Bates number 1287 to 1288.  It was actually

21    identified by Mr. Slawin at his deposition as the

22    letter he received terminating his employment dated

23    December 12th, 2017.

24               Does this refresh your recollection as to

25    when Mr. Slawin was officially terminated?

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 91

1        A      I suppose.  This is a document --

2               MR. GALANEK:  Objection.  Form.

3        A      -- sent by HR, so --

4        Q      Is the answer, yes, it does?

5        A      Yes.

6        Q      Okay.  So between the time of what we're

7    calling the interview and now December 12th of 2017,

8    did you speak to anybody other than counsel about Mr.

9    Slawin?

10       A      I don't recall.

11       Q      Okay.  During this period of time from

12   the time that you received notice from First Data

13   about the downloaded emails until the time that Mr.

14   Slawin was officially fired, is there anything in

15   writing, email, memo form referring to Mr. Slawin

16   being fired?

17       A      I'm not aware of --

18              MR. GALANEK:  Objection.  Form.

19       A      -- that.

20       Q      Did you send or receive any emails to or

21   from Mr. Solan regarding that?

22       A      I don't recall.

23       Q      All right.  Did you prepare any memos to

24   file regarding that?

25       A      I don't recall.

Mark Kendall                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 92

1      Q    Do you know if anyone did?

2      A    I don't know.

3      Q    Okay.  Now, before you received

4   the notice from First Data -- and I understand you

5   don't remember exactly how you received it, but

6   sometime around December 7th or 8th, 2017.  Before

7   you received that notice about the downloaded emails,

8   were you aware that there was an investigation going

9   on regarding those emails?

10     A    No, I was not.

11     Q    Okay.  Prior to receiving that notice

12  from First Data, or rather, from Infosec -- you're

13  not sure about that -- were you aware of any

14  investigation by anybody regarding Mr. Slawin?

15     A    What is an investigation?

16     Q    To your understanding was there an

17  investigation regarding Mr. Slawin?

18     A    Not that I'm aware of.

19     Q    Okay.  Did Mr. Slawin speak to you about

20  how to remediate the issue of PCI noncompliance?

21     A    During what time?

22     Q    At any time.

23     A    Yes.  It was part of our role from the

24  time it was identified up until his termination to

25  identify the appropriate mode to draft a

Mark Kendall                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 93

1    self-identified audit issue and whatever corrective

2    actions we would need to take.

3         Q     Did you discuss with Mr. Slawin whether

4    or not to tell the merchants that BAMS is not PCI

5    compliant?

6         A     I don't recall.

7         Q     Okay.  Did Mr. Slawin tell you that he

8    was uncomfortable not telling the merchants that BAMS

9    was not PCI non -- was not PCI compliant?

10        A     I don't recall.

11        Q     If he says he did, can you deny that?

12              MR. GALANEK:  Objection to form.

13        A     Repeat what you're asking again, please?

14        Q     Sure.  Did Mr. Slawin tell you that he

15   was uncomfortable with not telling the merchants that

16   BAMS was not PCI compliant?

17        A     I don't remember a specific conversation

18   about that.

19        Q     Can you deny that Mr. Slawin said that?

20              MR. GALANEK:  Objection.  Form.

21        A     Can I deny that he said it to me?  If he

22   provided written documentation, I guess I couldn't.

23   I don't -- I don't think I understand what you're

24   trying to get me to say.

25        Q     Okay.  If Mr. Slawin testifies that he

Mark Kendall                              July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 94

1    told you that he was uncomfortable not telling the

2    merchants that BAMS was not PCI compliant, are you in

3    a position to deny that?

4         A    I don't have evidence refuting that

5    claim.

6         Q    And did he tell you in an email that he

7    didn't think the issue was really ever going to be

8    remediated?

9         A    I don't recall.

10        Q    Let's look at -- I'd like you to look at

11   Exhibit 42.

12             MR. MARX:  Let's show it to him again.

13        A    Okay.  This is Mike Solan's note.

14        Q    Right.  Okay.  I have a specific question

15   on that paragraph that says Content Summary.

16        A    Okay.

17        Q    If you go one -- where it says Content

18   Summary, the -- one, two, three, four, five -- six

19   lines down there's a sentence that begins, "Eric and

20   I have been working with" -- and it notes various

21   people.  Do you see that sentence?

22        A    I see that.

23        Q    I -- do you know who the "I" that he's

24   referring to is?

25        A    I don't.

Mark Kendall                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 95

1        Q      Was it you?

2        A      I don't know.

3        Q      Okay.

4               MR. GALANEK:  Objection.  Form.

5        Q      All right.  I'd like to -- were you in

6    fact working with Mr. Slawin to try to understand the

7    scope of the problem and to take steps to remediate

8    it?

9        A      Yes.

10       Q      Okay.  Okay.  So I'd like to show you now

11   Exhibit 10.  Let me know when you've had a chance to

12   look at Exhibit 10.

13       A      Yep, I've read that.

14       Q      Okay.  Now, this is a document produced

15   by defendants bearing Bates numbers 402.  Now, this

16   is an email from Mr. Slawin to you; right?

17       A      Yes.

18       Q      Dated July 22nd, 2017; right?

19       A      Yes.

20       Q      Okay.  In which he says -- well, it says,

21   "I, like you, are losing confidence that this really"

22   -- "can really be remediated after our discussion on

23   Friday.  And frankly, I'm getting uncomfortable with

24   the situation as a whole."  Do you see that?

25       A      I see that.

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 96

1        Q     Okay.  So were you also losing confidence

2    that the issue could be remediated?

3        A     I don't recall.

4        Q     Did you have discussions with Mr. Slawin

5    about whether or not the issue could in fact be

6    remediated?

7        A     Yes.

8        Q     Tell me about those discussions.

9        A     So what we did -- I don't know the

10   sequence of where this lands, but what -- one of the

11   things we were doing, we were trying to understand if

12   it could be remediated was by understanding where the

13   different problems were occurring so that we could

14   formulate an approach for how to remediate.

15            So we went and we interviewed different

16   businesses, and we tried to understand where they

17   used the data.  We asked questions about can they use

18   different data to accomplish the same purpose?

19            So those are the kind of discussions that

20   we had to understand the scope of the problem because

21   I needed to understand the full scope before we could

22   understand what our remediation plan could be.

23       Q     Okay.  Now, after Mr. Slawin was fired

24   did BAMS continue with the attempt to see if this

25   issue could be remediated?

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 97

1          A     I believe so.

2          Q     Do you know who was in charge of that?

3          A     I was working on it up until I left the

4     firm.  I don't remember the details about where that

5     went after Eric's termination.

6          Q     Okay.  Let's look at Exhibit 28.  Let me

7     know when you've had a chance to scroll through it.

8          A     Okay.

9          Q     It is only two pages.

10         A     Okay.  This looks like a submission for a

11    self-identified audit issue.

12         Q     Okay.  So for the record, this is

13    Plaintiff's Exhibit 28, a document produced by

14    defendants bearing Bates number 7235 and 7236.  And

15    was this the self-identified order issue submission

16    regarding the PCI compliance issue?

17         A     Yes, it appears to be.

18         Q     All right.  And that's dated December

19    15th, 2017; right?

20         A     Uh-hmm.

21         Q     Yes?

22         A     Yes.

23         Q     Yes.  And this was after -- you know,

24    after Mr. Slawin had been fired; right?

25         A     Yes.

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 98

1          Q      Okay.  Do you know who prepared this?

2          A      I don't know.

3          Q      Did you have a hand in preparing this?

4          A      Very likely.  It was either me or I

5     worked with someone to create it.

6          Q      Okay.  Do you recall seeing it at any

7     time before today?

8          A      I must have if my name's on it, yes.  I

9     can't tell you when that was, but I haven't thought

10    about this in seven years.

11         Q      Now, you were the assigned BCO; right?

12         A      Right.

13         Q      What does BCO stand for?

14         A      Business control officer.

15         Q      Okay.  So does that mean you had a hand

16    in preparing this?

17         A      It must be, yeah.

18         Q      Would that be a fair conclusion?

19         A      Yes.

20         Q      Okay.  So what was the remediation plan?

21         A      So it's listed on the left side of the

22    page.  To validate what the current gaps are, look at

23    solutions, create project plans to implement whatever

24    those solutions are, do it, test it, and implement

25    any new controls if needed.

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 99

1              This is kind of a blanket statement of
2     how most audit issues go.  It's scoping, identifying
3     solutions, executing and making sure it is --
4     whatever the solution is is sustainable.
5         Q    Would I be correct -- would somebody be
6     correct in interpreting this as just kicking the can
7     down the road?
8         A    No.
9         Q    No?
10             MR. GALANEK:  Objection.  Form.
11        Q    What was the actual remediation that was
12    suggested?
13        A    I don't recall.
14        Q    Is it in here?
15        A    I don't see it on these two pages.
16        Q    Okay.  Thank you.  What does that mean
17    here on the right -- to the right of your name it
18    says David Ades; right?
19        A    Uh-hmm.
20        Q    Sponsoring ex co-member.  What does that
21    mean?
22        A    It's administrative.  It's -- any audit
23    issue has an assigned executive committee member,
24    somebody that reports to the CEO.  And because he
25    was that person in my management chain, that's why

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 100

1    his name is there.

2        Q    Did you speak with Mr. Ades about

3    preparing this document, Exhibit 28?

4        A    I don't believe so.

5        Q    And what does it mean when it says

6    designated issue owner, Brian Glynn?

7        A    So Brian is the person who's likely to

8    actually take the steps to change processes to

9    remediate the issue.

10       Q    Okay.  Now, timeline for completion, TBD.

11   Does that mean to be decided?

12       A    Yes.

13       Q    So that means there was no date for this

14   to be completed?

15       A    Based on what this says, yes.

16       Q    All right.  What does that mean?  Do you

17   see where it says critical dependencies.

18       A    Uh-hmm.

19       Q    And it says -- the second one down, there

20   is four -- four bullet holes; right?  And I'm

21   interested in the second bullet hole down.  It says

22   PCI compliance in place for team providing solution.

23   Do you see that?

24       A    Yes.

25       Q    What does that mean?

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 101

1      A      So the crux of this issue is

2  understanding for the different processes that were

3  being run that needed to be in a PCI compliant

4  environment, who would do it.  So a dependency is

5  making sure that whoever is assigned to do the work

6  has that PCI compliant framework in place for them to

7  do that task, whatever that task is.

8            So we're dependent on a group of whomever

9  it is, be it BAMS, First Data, a third party,

10  whoever, has to have the requisite compliance to do

11  the work.

12     Q      Whoever was doing the work has to have

13  the requisite compliance; is that right?

14     A      Whoever will be doing the work when we

15  remediate this has to have that compliance, yes.

16     Q      And the work is transmission of PAN data;

17  is that right?

18     A      And any other identified --

19            MR. GALANEK:  Objection.  Form.

20     A      -- gaps from number one in the management

21  remediation plan.

22     Q      Okay.  So if PAN -- if BAMS was

23  transmitting or receiving PAN data, it would need to

24  be PCI compliant; is that correct?

25     A      If the solution in Step 2, 3, 4 in the

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 102

1    remediation plan, if the solution was decided that

2    BAMS would become PCI compliant or other certain

3    parts of BAMS would become PCI compliant, that is --

4            Say your question again.  Sorry.  I'm

5    losing the thread.

6        Q    That's okay.  I'll rephrase.  So if BAMS

7    was transmitting or receiving PAN data, it would need

8    to be PCI compliant; correct?

9        A    Whoever is handling that data needs to be

10   PCI compliant.

11       Q    And if -- and if BAMS was handling that

12   data, it would need to be PCI compliant; correct?

13       A    Right.

14       Q    All right.  I --

15       A    And just to be clear, can I -- can I give

16   clarification here?

17       Q    Yeah.  Okay.

18       A    To read -- the read the issue title, it

19   is specific to talking about BAMS account managers

20   handling these data.

21       Q    I'm sorry.  To read what?

22       A    At the very top where it says issue BAMS

23   account managers, that is specific to BAMS account

24   managers handling specific data.  So --

25       Q    PAN data.

Mark Kendall                           July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 103

1      A     Yes.  So this is related to BAMS account
2   managers who report up through David Ades that they
3   are handling that data.  It does not include other
4   parts of BAMS that might be doing the same thing.
5          So we are -- this is a -- kind of a
6   compartmentalized issue that talks about the people
7   that are in scope of that sponsoring executive
8   committee member, how do we remediate those people
9   handling the data, not other people in other
10  departments.
11         So it is compartmentalized into BAMS
12  account managers handling PAN data only.
13     Q     It's compartmentalized -- thank you for
14  that clarification -- is compartmentalized into BAMS
15  account managers handling PAN data without PCI DSS
16  compliance; right?
17     A     Right.  And --
18     Q     DSS refers to data security systems?
19     A     I don't recall.
20     Q     Okay.  But to the extent that they are
21  handling PAN data, those individuals, the critical
22  dependency would be that they need to be PCI
23  compliant if they're transmitting or receiving PAN
24  data; correct?
25     A     Correct.

Mark Kendall                              July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 104

1     Q    All right.  Now, if Mr. Slawin had not

2    been fired, would he have -- his name have appeared

3    on this Exhibit 28 in any context?

4     A    I don't know.

5         MR. GALANEK:  Objection.  Form.

6     Q    Okay.  Would he have ended up being an

7    issue owner?

8     A    No.

9         MR. GALANEK:  Objection.  Form.

10    Q    Would he have been an assigned BCO?

11    A    Potentially.

12        MR. GALANEK:  Objection.  Form.

13    A    I don't remember the organization of

14   whether I was representing as the BCO or if I

15   delegated that to Eric.

16    Q    Okay.

17    A    Had Eric -- may I continue on that

18   thought?

19    Q    Yeah, go ahead.

20    A    So in one of the first messages Brian

21   Glynn had requested Eric write up the SIAI back in

22   July of 2017.  Had Eric done that at that time, his

23   name would have appeared on the bottom.

24    Q    Okay.

25    A    May I give context around what happens

Page 105

1    with these issues?

2        Q    No, I think we've got enough context for

3    the answer here.  As you know, I let you go ahead and

4    clarify things, but we need to keep focus here.

5        A    That's fine.

6             MR. MARX:  I'd like to see 62.

7             All right.  Let's -- is this the -- yeah,

8        this is it.  Can you show the witness 62?

9        Q    (By Mr. Marx) It's a longish document, so

10   we'll scroll around as long as you want until you're

11   ready to answer questions about it.  Just let us

12   know.

13       A    All right.  Can you scroll down, please?

14   Stop there, please.

15            Okay.  Please continue.  Okay.  Continue

16   down, please.  Okay.  Stop here.  All right.  Okay.

17   Stop, please.  Okay.  Okay.  Okay.  All right.

18            I'm finished reading the document.

19   Whatever we need to do next.

20       Q    So Exhibit 62 begins with BAMS numbers

21   2691 through 269 -- BAMS Bates number 2691 through

22   2694.  And then the chart that was produced in native

23   format is Plaintiff's 7 through 14.  Have you seen

24   this before?

25       A    Yes.

Mark Kendall                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 106

1        Q     Okay.  What is this?

2        A     This is a -- some of that information

3    gathering I talked about where we were meeting with

4    different departments to understand their processes

5    and to understand where and what parts of the process

6    might be transmitting PAN data.

7              So you saw in there there were different

8    columns that were -- we were trying to understand who

9    it is transmitted between, is it a full account

10   number.  It's information finding so that we can

11   understand the full scope of where remediation is

12   required.

13       Q     And you're referring to the columns on

14   the chart; right?

15       A     Yes.

16       Q     Okay.

17       A     And the rows in that chart were all

18   different processes where we had done research into.

19       Q     Did we do this?

20             MR. MARX:  Was that 62?

21             Yeah.  So 51.  Yeah.  So show him Exhibit

22       51.

23             Oh, Mr. Kendall and Mr. Galanek, if you

24       need us to zoom in just let us know.

25       Q     (By Mr. Marx) Do you know who this is?

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 107

```
 1              MR. GALANEK:  If you -- if you can a
 2         little bit.  I mean, I think -- I'm assuming
 3         you're asking mostly about the notes.  So if
 4         you can just --
 5              There you go.  Thank you.
 6              MR. MARX:  Thank you, Shelley.
 7         A    I've finished reading.
 8              Oh, here we go.  Oh, boy, there's more.
 9              MR. GALANEK:  There's another page.
10              MR. MARX:  So Exhibit 51 --
11              MR. GALANEK:  Robert.  Robert, that's --
12         that's only the first page.
13              MR. MARX:  I'm sorry.
14              MR. GALANEK:  He hasn't reviewed the
15         second page yet.
16              MR. MARX:  I'm sorry.  I misunderstood.
17         A    Stop, please.  Please don't move it.
18    I've never seen this before, so I'm reading it fresh.
19              Okay.  I'm reading the second box now.
20              Okay.  I'm finished reading.
21         Q    Okay.  Now, before I ask you a question,
22    just for the record Exhibit 51 is --
23         A    Oh, sorry.  Do I have to read the rest of
24    this?  There's still three more pages -- two more
25    pages of this.  Okay?
```

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 108

1      Q     There's three more?  Oh, I'm sorry.  He
2   said he was done.
3      A     I'm done with the page that you had on
4   the screen.
5      Q     All right.  Mr. Kendall, I apologize.
6   I -- if you tell me I'm ready to answer questions
7   then I'll know.
8      A     Okay.
9      Q     I didn't realize "I'm done" was just to
10  move the document.
11     A     It was a two-page email.  I'll keep you
12  posted here.
13     Q     Thank you.
14     A     Next page, please.
15           Okay.  I'm ready to proceed with
16  questions.
17     Q     Thank you.  Okay.  Fine.  So again, just
18  for the record, Exhibit 51 appears to be a chart
19  listing chronologically actions produced by defendant
20  bearing BAMS Bates numbers 9586 to 9 -- I'm sorry.
21  9585.  Excuse me.  That's the last page.  It was out
22  of order.  Through 9588.  It is out of order.  It was
23  produced out of order.  Okay.
24           Anyway, my question is:  Have you --
25  first question:  Have you seen this before?

Page 109

1          A     I have not seen this.

2          Q     Okay.  It appears to be a chart that --

3     it looks like somebody prepared a chart listing

4     chronological actions taken regarding -- or ending in

5     Mr. Slawin's termination.

6               Did you have any hand in preparing this?

7          A     No, I've never seen it nor prepared the

8     document.

9          Q     Okay.  Fair enough.  Let me ask you a

10    question.  On page number 9586 going on to 9587 is a

11    box, and in the left-hand it says 12/8/17 and "Note

12    Associates" says John -- Michael John Solan.  I guess

13    that's Mike Solan.  And it goes on to the next page.

14               Does the material in that --

15               MR. GALANEK:  Robert?  Robert?

16               MR. MARX:  Yes, sir.

17               MR. GALANEK:  I'm sorry.  Do you mind

18          just scrolling to the box, or if you don't mind

19          having your paralegal scroll to the box that

20          you're talking about and blowing it up because

21          a lot of the entries are on 12/8.

22               MR. MARX:  Yeah.  Okay.  Right.

23               MR. GALANEK:  And I don't -- I don't

24          think the one you're talking about is on the

25          screen.

Mark Kendall
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.
July 12, 2024

Page 110

1              MR. MARX:  What's that?  I said 9586.

2         Oh, this page.  This page?  342.  Does that

3         help you?  342, onto 343.

4              MR. GALANEK:  Okay.

5              MR. MARX:  Okay.  We've got different

6         numbering systems going on.  I apologize.  Make

7         it as, you know, big as you can there.  I can't

8         hear you.

9              MS. MARX:  It's fine.  It's correct right

10        now.

11             MR. MARX:  It's okay now?

12             MS. MARX:  Yes, it's correct right now.

13        It says 43.

14             MR. MARX:  Okay.

15        Q    Let me know, Mr. Kendall, when you're

16   ready to answer a question.

17        A    I'm ready.  What's the question?

18        Q    Your question -- it's a simple question.

19   I'm not going to go into these -- you didn't write

20   this.  This box, does that refresh your recollection

21   of the interview you recall as either December 7th or

22   December 8th, does that refresh your recollection as

23   to whether in fact it was December 8th, 2017?

24        A    I will defer to the content of this

25   because it's written and I don't remember the

Page 111

1    specific dates from seven years ago.

2         Q    Okay.  That's the only question I had.

3    But you've not -- you had no hand in preparing this;

4    correct?

5         A    No.  But all of this content sounds very,

6    very familiar to me.

7         Q    All right.

8         A    Reading it again is like going back in

9    time.

10        Q    Fair enough.  Okay.  Thank you.

11             MR. MARX:  I'm done with this document,

12        Shelley.

13        A    Oh, it has those policies you were asking

14   about earlier at the bottom of the page there.

15        Q    Well, you didn't write it, so whoever

16   wrote it we can ask that person these questions.

17        A    Fair enough.

18             I can see this new page up on the screen,

19   the six-page document.  I'm not sure what -- what are

20   we doing now?

21        Q    Well, what I'd like to do is scroll

22   through it until you're satisfied that you can answer

23   a question about it.

24        A    This looks like a document produced by

25   First Data digital -- DLP, digital loss prevention.

Page 112

1            Okay.  Continue, please.  Continue,

2     please.  Continue.

3            This is a copy of the -- one of the

4     messages we've already looked at, so I am familiar

5     with this.

6            Okay.  I can answer a question on this.

7        Q    Okay.  So for the record, Exhibit 30 is a

8     document produced by defendant bearing BAMS Bates

9     numbers 1545 through 1550.

10           Okay.  And is this one of the incident

11    details that was emailed to you from First Data?

12       A    It appears to be.

13       Q    Now, it's not an email format.  It

14    doesn't have your name on it.  Is this how you

15    received the information?  I remember you said you

16    didn't remember how you received it.

17       A    My recollection is going to a specific

18    site that First Data had hosted where I downloaded

19    the emails, and there were about 20 of them total.

20    So I went and I retrieved the individual contents.

21           I don't remember seeing it in this

22    format, but I remember going to a -- like a secured

23    download location to pull the documents down to look

24    at them and that there were more than just the ten

25    that we've been talking about.

Page 113

1          Q     You went to -- I'm sorry.  You went to,

2     like, a website or something?

3          A     Yeah, I -- I remember going to -- it

4     wasn't like a -- I don't remember it being an email.

5     It was like a -- go to a secure location to download

6     these messages.  It wasn't -- I didn't get a -- like

7     a -- it wasn't like a forward with a bunch of

8     attachments.  It was something for --

9          Q     Okay.

10         A     -- where I was downloading it from

11    another server, not a direct email as far as I

12    remember it.

13         Q     And did you then download it to your

14    computer or something like that?

15         A     Yeah, I downloaded the approximately 20

16    messages and I looked through them.  There were one

17    or two that were somewhat benign and the rest were

18    all related to something that would be classified as

19    confidential.

20         Q     And after you downloaded them they were

21    in your computer; right?

22         A     I don't remember if I viewed them via,

23    like, a server or if I downloaded them.

24         Q     So this -- how did you get notice to

25    check a certain website?

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 114

1          A      I got a message from, I believe -- my

2     recollection is I got a message from someone at First

3     Data saying an employee in your reporting hierarchy

4     has done this -- has sent emails to himself and is --

5     and we've detected these emails, please go here to go

6     and review what he sent.

7          Q      And did you --

8          A      That's my recollection.

9          Q      Okay.  And how did you -- how did you

10    receive that notice?  Was it a telephone call or --

11         A      No, I got that as an email to prompt me

12    to go look at the documents he had sent himself.

13         Q      Okay.

14                MR. MARX:  And again, Chris, I

15         understand, you know, the defendant has made a

16         search, but I just want to let you know we

17         didn't receive that -- that email.

18                MR. GALANEK:  Yeah, Robert.  I mean,

19         again, we -- we produced -- we produced what

20         we -- what we are aware of.  We have made a

21         search and --

22                MR. MARX:  Okay.

23                MS. MARX:  Maybe they can do a search

24         again for this email.

25                MR. MARX:  Is that possible to -- to redo

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 115

1        the search to see if you got this specific

2        email?

3               MR. GALANEK:  Hey, guys, we -- we can

4        talk about it offline.  We've gone through

5        everything from Mr. Kendall, at least from what

6        he just said.

7               MR. MARX:  All right.

8               MR. GALANEK:  It doesn't sound like

9        that's substantive.  It sounds like that just

10       directs him to go pull what you're looking at.

11              MR. MARX:  Well, it directed him to go

12       pull documents at the heart of this case.  All

13       right.  We can have this discussion offline.  I

14       agree with that.

15       Q    (By Mr. Marx) So that's the question I

16  have then.  This is Exhibit 30.  Have you seen this

17  before?

18       A    I saw this during preparation with

19  counsel.  I've seen the attached email.  I don't

20  remember if I've seen this exact thing prior or if

21  this was the mode I got it while I was an employee at

22  BAMS.

23       Q    Okay.  Did you see -- did you receive any

24  communications at the time -- not when you were

25  sitting with counsel, but at the time in December of

Mark Kendall                                   July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 116

1    2000 -- November or December of 2017 any documents
2    that looked like this Exhibit 30 with maybe a
3    different incident number on it?
4            A    I don't remember what the header looked
5    like, but the message that you -- that is attached to
6    this, but when you scroll down I -- that was one of
7    the ones that I saw that Eric had emailed to himself.
8    I don't remember if it looked exactly like this with
9    this header page.
10           So keep going down.  The part I remember
11   seeing is that Eric sent -- keep going down that.
12   Stop.  Page 5.  I remember seeing that Eric had sent
13   what's on -- the content of page 5 and 6 to himself.
14           Q    Where it says "message body"?
15           A    Yeah.  The content of that message I was
16   able to understand that Eric had emailed that message
17   to his personal email.
18           Q    Okay.  So this is helpful.  So then on
19   this Exhibit 30 -- and if we go to the page which has
20   the BAMS 1549 on it, I believe, at the bottom and at
21   the top it says "message body," that's what you're
22   referring to; right?
23           A    That's the part that I -- this is
24   familiar to me.  This content is familiar to me as
25   one of the things --

Mark Kendall                                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

                                                    Page 117

1        Q    Okay.

2        A    -- that I saw that Eric sent to himself.

3        Q    Okay.  So the question I have is:  Did

4    you see it in exactly this format?

5        A    I don't recall if I saw it in this exact

6    format.

7        Q    All right.  Yeah.  And that goes on the

8    next page, right, page 1550, which is page 6 of 6?

9        A    Yeah, I saw everything -- the David Ades

10   message was the end of the message -- of the email

11   string that I had seen.

12       Q    All right.  Fine.  All right.  We're done

13   with 30.  Let's go to 31.

14            31 shows -- we're going to show you what

15   we've marked as Exhibit 31.  It looks to me the same

16   kind of thing with a different incident number,

17   probably a different email.  Scroll through it and

18   let me know when you're ready to answer questions.

19       A    Okay.  You can go pretty quick on this

20   one.  It'll be a similar answer.

21       Q    I expect it would be, but I need to go

22   through this with you.

23       A    Yep.  So you can scroll pretty quick down

24   to the body of the email.

25            All right.  Stop here, please.

Page 118

1          So I recall reviewing this email in the

2     listing of emails that Eric sent to himself.  The

3     previous four pages' header information I did not --

4     I don't recall seeing before.

5          Q    Thank you.  That's it for the -- I'm

6     going to do the same thing with Number 32, Mr.

7     Kendall.  Let me -- again, let me know again when

8     you're ready to answer questions.

9          A    Okay.  Keep scrolling, please.  Stop

10    here, please.  Okay.  Continue, please.  Okay.

11    Continue.  You can scroll down to the bottom of the

12    email, please.  This looks like it's missing

13    something.

14         Q    Here's the rest of it.

15         A    Maybe it was in a different spot than the

16    other ones were.  Maybe scroll up again, please.

17         Q    I don't see it -- that's all we were

18    given, so I can't do any better than to give you what

19    we received.

20         A    Okay.

21         Q    Okay.  So for the record then, Exhibit 32

22    were documents produced by the defendants bearing

23    BAMS Bates numbers 1557 through 1563.  And have you

24    seen this before?

25         A    The -- if you scroll up to the subject

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 119

1      message about my management form or whatever that

2      email is called, I remember seeing that as one of the

3      emails that Eric had sent to himself.  The rest of

4      this document I have not seen in this format or I

5      don't recall seeing this document in this format.

6              Q     I'm sorry.  What -- your answer, you're

7      referring to on which page?

8              A     The title of the email that this report

9      is flagging, update about my management form -- stop

10     here, please.

11             Q     Oh, all right.  Is that on page -- I see.

12     Page 6 of 7.

13             A     Yeah, I recall --

14             Q     Bates numbers 1562.  No?

15             A     Yeah, I recall seeing -- I recall seeing

16     a message that had the subject of update about my

17     management form, but not -- I don't recall this in

18     this format.

19             Q     I'm sorry.  I think -- which page are you

20     referring to, Mr. Kendall?

21             A     Where we are right now.

22             Q     1558.  I'm sorry.  Let me take a look at

23     that.

24             A     This page is showing he forwarded an

25     email to himself where the subject was update about

Page 120

```
 1    my management form.  And I recall reading an email
 2    with the same subject line when I was reviewing the
 3    emails he sent to himself.
 4                I don't remember the contents of that
 5    email, but I do --
 6        Q    All right.
 7        A    -- recall that subject.
 8        Q    All right.  Okay.  That was 32.  Let's do
 9    33.
10        A    Continue scrolling.  Hopefully we can
11    find the message body here.
12                Okay.  Can you go to show 5 -- page 5 in
13    full on the screen?
14                Okay.  Stop, please.
15                Okay.  Scroll down, please.  You can
16    continue down to the next page.
17                Okay.  Stop here, please.  All right.
18    Continue to scroll down, please.
19                Okay.  Continue down, please.  Okay.
20    Scroll down, please.  Okay.  I've finished reading.
21        Q    All right.  So again, Exhibit 33,
22    produced by defendants bearing BAMS Bates numbers
23    1564 through 1571 -- and let me just see if I can --
24    would it be a correct statement that -- hang on --
25    that you're aware of the content starting on page
```

Page 121

1    1567, which is page 4 of 8, where it says "message

2    body" and which continues on to page 1571 but that

3    you're not aware of the material prior to that?

4            A    That's correct.

5            Q    Okay.  Let me ask you a question.  And I

6    know you -- you're not familiar with all this

7    material prior to the message body.  But if you look

8    at page 4 of 8, which is page BAMS 1567, and then --

9    go up a bit there where it says "comment."

10           Do you see where it says "comment" --

11           A    Yes.

12           Q    -- right above where it says "message

13   body"?  I'm going to read you a sentence and then ask

14   you a question.  It states here between 8/25/2017 and

15   11/28/2017 Eric Slawin forwarded ten critical BAMS

16   related emails to what appears to be a personal

17   account, comma, ESlawin116@gmail.com.  Closed quote.

18           Does that refresh your recollection as to

19   how many downloaded emails there were?

20           A    I see that that's what it says.

21           Q    Yeah.  You said 20 at one time.  Could it

22   possibly have been ten?

23           MR. GALANEK:  Objection.  Form.

24           A    I recall 20.

25           Q    Fair enough.  Okay.  Down to 33.  Go to

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 122

1      34.

2            A     And can I expand on that answer?

3            Q     Yes.

4            A     There were two different messages, two

5      batches of ten or approximately ten.

6            Q     Okay.  I'm just telling you we -- we

7      received what we received.  And we may have a

8      conversation with your attorney about that.  This is

9      what we received.

10                 MR. GALANEK:  Robert, you've got them

11           all?  Robert, you've got them all.  I have seen

12           them in prepping other witnesses out of our

13           production.

14                 MR. MARX:  All right.

15                 MR. GALANEK:  So you have them all.  The

16           fact that you don't have them today, that is

17           not an issue for us.

18                 MR. MARX:  Well, we pulled everything

19           that was there, so we -- we'll see.  Let's go

20           to 34.

21           A     If you can scroll down to the body of the

22      email, please.  Okay.  Stop here, please.  This is --

23      this appears to be the same as the previous document.

24           Q     Right.  Okay.  So again for the record,

25      Exhibit 34 was produced by defendants bearing BAMS

Page 123

1    Bates numbers 1572 through 1579.  And is it correct

2    that you're not familiar with the material prior

3    where it says "message body" on page 5 of 8 but that

4    the "message body" going forward you're familiar with

5    that?

6         A    That's correct.

7         Q    35, the same thing.  Let me know when

8    you're ready.

9         A    You can scroll down to the body of the

10   message, please.

11             All right.  I've read this page.  Please

12   continue down.  Stay here, please.

13             Okay.  Down to the next page, please.

14   Stop here.  Scroll down, please.  Scroll down,

15   please.

16             I'm finished with this page.

17        Q    All right.

18        A    Okay.  All right.  I'm finished reading.

19        Q    So -- I'm sorry.  Are you ready, Mr.

20   Kendall?

21        A    Yes, I'm ready.

22        Q    Okay.  So Exhibit 35, produced by

23   defendants bearing Bates numbers 1580 through 1587.

24   And you're familiar, is it correct, with the material

25   beginning on page Bates numbers 1584, which is -- oh,

Page 124

1     yes, it's page 5 of 8, but you're not familiar with

2     the material before that; is that correct?

3          A     That's correct.

4          Q     Did you receive this document at any

5     time?

6          A     I was provided this document by counsel.

7          Q     Okay.  I'm sorry.  My bad.  I should have

8     been more precise.  Did you receive this document at

9     any time during November or December of 2017?

10         A     I don't recall.

11         Q     Okay.  That's 35.  This is 36.

12               Okay.  The same thing, Mr. Kendall.  Let

13    me know when you're ready.

14         A     Scroll down to the message body, please.

15               All right.  Stop here, please.  Okay.

16    Continue.  Okay.  Let me read this.

17         Q     Are you ready?

18         A     Yes.

19         Q     Okay.  So Exhibit 36, a document produced

20    by defendants bearing Bates numbers 158 -- 1588

21    through 1592.  And you are familiar, is this correct,

22    with the material beginning -- well, on the last

23    page, Bates BAMS 1592, page 5 of 5, which is message

24    body but you're not familiar with the material before

25    that.  Is that a correct statement?

Page 125

1        A        That is correct.

2        Q        Thank you.  I'm done with 36.  Move to

3    37.

4                 The same thing, let me know when.

5        A        Yep.  Down to the message body, please.

6                 Okay.  Let's stop here.  Okay.  So the

7    same statement.  I'm familiar with that message body

8    but not the rest of the content.

9        Q        Okay.  Again, just for the record, this

10   is Exhibit 37, Bates numbers -- produced by

11   defendants, BAMS 1593 through 1598.  And you're

12   familiar with the message body beginning on page

13   1597, which is 5 of 6 but not anything prior to that;

14   correct?

15       A        Correct.

16       Q        Thank you.  Exhibit 37.

17                MR. MARX:  You can start 38.

18       A        Please scroll down to the message.  All

19   right.  Stop here, please.  Okay.  Continue.  All

20   right.  Continue down.

21                So the same as last time:  I am familiar

22   with the contents of the message body not of the

23   other content around it.

24       Q        All right.  So again, just for the

25   record, Exhibit 38, a document produced by defendants

Mark Kendall                              July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 126

1    bearing BAMS -- Bates numbers 1599 through 15 --

2    1604.  Excuse me.  And you are familiar with the

3    message body starting on page 1603, which is 5 of 6,

4    but not any of the prior material; correct?

5         A    That is correct.

6         Q    Thank you.  39.

7         A    Please scroll to the message body.  Stop

8    here, please.  Stop, please.  Okay.

9              Scroll down, please.  I'm done with this

10   page.

11             Okay.  I'm finished with this.  Similar

12   to previous, I am familiar with the content of the

13   message body and not the rest.

14        Q    All right.  Again, Exhibit 39 produced by

15   defendants, Bates numbers 1605 through 1610.  You're

16   familiar with the message body which begins on page

17   1609, which is 5 of 6, but not any of the prior

18   material; correct?

19        A    That is correct.

20        Q    Thank you.  You didn't -- you didn't

21   actually see any of these documents, 30 through 39,

22   while you were employed at BAMS; correct?

23        A    The ones we just went through?

24        Q    Right.

25        A    I did see them while I was at BAMS.  I

Mark Kendall                           July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 127

1    looked at them when they came over from the First
2    Data, digital loss prevention.  A lot of them --
3         Q    I'm not -- I'm -- okay.  Let me be more
4    precise, then.  The body of these documents preceding
5    the message by what -- what you referred to intimate
6    detail and so on, you didn't receive it in that
7    format while you were employed at BAMS?
8         A    I -- I don't recall what the headers
9    looked like on it, that -- it looked --
10        Q    Did it look like these documents?
11        A    I don't recall.  That doesn't look
12   familiar.  I don't recall.
13        Q    So you recall receiving notice of the
14   emails but you don't recall receiving these
15   particular documents which says incident detail with
16   all the attributes; is that correct?
17        A    Correct.  I've -- I've seen the message
18   body for all the ones that you've shown.  But I don't
19   recall seeing the three or four-page headers that
20   went prior to it.
21        Q    Okay.  What number is it?  Let's do 49.
22   Let me show you now Exhibit 49.
23        A    Okay.  I see that.  You can go to page 2.
24   Stop, please.
25             Yeah.  These are all the emails when I

Mark Kendall                              July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 128

1    was saying that there were many.  Yeah.  Yep.  This

2    is the listing of all the emails that I was aware of

3    being sent from Eric to his personal email.  Yep.

4         Q    Okay.  Tell me when you're ready to

5    answer questions.

6         A    Okay.  Keep going down.

7         Q    Okay.  So Exhibit 49 at the front is an

8    email with -- the attachment is the subsequent pages.

9    They're not Bates numbered.  They were just printed

10   out that way.  They were produced in native format.

11        So Exhibit -- the first page of the

12   exhibit, which bears Bates numbers 9652, that's an

13   email that you sent to Mike Solan; right?

14        A    Yes.

15        Q    Okay.  On December 12th.

16        A    Correct.

17        Q    December 12th, 2017.

18        A    December 12th, yep.

19        Q    All right.  And why -- and you said, "Hi,

20   Mike:  Attached is a summary of the emails that Eric

21   Slawin sent outside BAMS that I believe has been

22   important for our review."  Right?

23        A    I see that.

24        Q    Okay.  Why did you send him that email?

25        A    I don't recall.

Page 129

```
 1        Q     Had the decision already been made at
 2   that time to fire Mr. Slawin?
 3        A     I don't recall.
 4        Q     Okay.  And then the subsequent pages --
 5   it was actually in chart format.  We couldn't print
 6   it out that way where the emails are listed and it
 7   says date sent to, and then on the next page is email
 8   subjects, description, and then PAN/PCR, yes or no?
 9   Do you see that?
10        A     Yes.
11        Q     And looks like at least 13 of them had to
12   do with PAN data or PCI compliance; is that right?
13        A     Yes.  If that's what it -- if that's
14   count, then yes, that's what that column means.  Was
15   the email about PAN or PCI data.
16        Q     Yeah.  That's how I counted it.  It came
17   to 13.  So "yes" in that column means that the email
18   dealt with PAN data or PCI compliance; correct?
19        A     That was how I coded it, yes.
20        Q     Okay.  Now, I want to ask you a question.
21   On one of these pages --
22             MR. MARX:  Shelley, I don't -- the pages
23        are not numbered, so it's the next to the last
24        page.  I just want you to go to the next to the
25        last page.  Just go to the next to the last
```

Page 130

1          page.  Just --

2          Q    Can you see the page?  All right.  So

3     fine.  You're there.

4               Now I want you to look at the box -- one,

5     two, three, four, five -- six lines up from the

6     bottom.  Do you see "Slawin sends Kendall IM

7     exchange"?  Do you see that?

8          A    Yes.

9          Q    What does that mean?

10         A    Instant message using a chat client that

11    BAMS used.  It's a --

12         Q    Tell me about that chat.

13         A    One of the previous -- the exchange

14    between Natasha and Eric where they talked about

15    Brian Rubin, that's an example of it.  So it's a chat

16    client that you can talk with different people within

17    your organization.

18              So you can say, hey, do you have a minute

19    to talk, or send a message.  Not as an email, but as

20    a -- just a message that would pop a notification on

21    the screen and say, you know, Eric -- Mark, you know,

22    Eric just sent you a message or something like that.

23         Q    Was that Skype?

24         A    Like Skype, yeah.  I don't remember what

25    the --

Page 131

1        Q     Was it Slack?  Was it Slack?

2        A     It wasn't Slack.  This was -- Slack, I

3    don't know if it existed back then, but -- and it

4    wasn't Skype.  Because Skype -- it was -- I don't

5    remember what the product was, but it was similar to

6    what you would use today as Skype or Teams or

7    something like that.

8        Q     And how often was that used?

9        A     Constantly.

10       Q     Were any of those messages on IM or the

11   antecedent of Skype or Slack involved Mr. Slawin's

12   downloaded emails?

13       A     I don't understand that question.

14       Q     Okay.  I'll rephrase.  Do you know

15   whether anybody used that methodology to discuss

16   what -- Mr. Slawin's downloading of emails?

17       A     I'm not aware of that.

18       Q     Do you know whether anybody used that

19   methodology to discuss whether or not Mr. Slawin

20   should be fired?

21       A     I'm not aware.

22       Q     Okay.  You're not aware of it means --

23   does that mean it didn't happen or you just don't

24   know either way?

25       A     It means I don't -- I don't know either

Mark Kendall                        July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 132

1    way.

2        Q    And did any of those -- anyone use the IM

3    feature to talk about PAN data issue?

4        A    I don't know either way.

5        Q    Did anyone use the IM feature to talk

6    about the PCI compliance issue?

7        A    I don't know either way.

8        Q    Did anyone use that IM feature to talk

9    about the SIAI regarding PCI compliance?

10       A    I don't know either way.

11       Q    So how -- if someone wanted to -- if

12   someone had used that -- for example, if Mr. Slawin

13   sent you an IM exchange --

14            Let's see.  This is one, two, three, four

15   five -- six lines up from the bottom and I'm trying

16   to piece together this -- one, two, three, four,

17   five --

18            So that was sent on 6/2/2017; is that

19   right?  One, two, three, four, five, six.

20       A    I can't see a date on the page, but if

21   that's what the document says, then --

22       Q    All right.  Well, okay.  It doesn't even

23   matter to my question.  The question is:  How would

24   you find that IM the next day?

25       A    I can answer how he sent me that message

Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 133

1    because --

2         Q    Well, my question is a little more

3    broader than that.  The question is:  If somebody

4    sends someone an IM, how does someone find it the day

5    after it's sent?

6         A    I don't know.  That's a technology

7    configuration question for how BAMS has that set up.

8         Q    And who was in -- Sorry.  Who to your

9    knowledge was in charge of that technology?

10        A    I don't know.

11        Q    Well, how would you describe that

12   technology?

13        A    What technology?

14        Q    That used IM features.

15        A    Are you asking -- what are you -- can you

16   rephrase?  I'm not understanding.

17        Q    Okay.  Who would you go to if you had a

18   question about an IM chat, a technical question about

19   it?  Who would you go to?

20        A    I would probably call a -- like a 1-800

21   number that we were given for technology problems.

22        Q    All right.  And to your --

23        A    I don't remember experiencing that

24   problem, so I don't remember doing anything like

25   that.

Mark Kendall                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 134

1      Q      Who at BAMS to your knowledge would know

2   about the use of IM features?

3      A      The use of -- I don't know what that

4   means, the use of IM means.

5      Q      I'll rephrase.  To your knowledge who at

6   BAMS would be the go-to person for technical

7   questions about use of the IM feature?

8      A      I don't know.

9      Q      Would there be some kind of department

10  that you would look for?

11     A      I don't know.

12            THE VIDEOGRAPHER:  And Mr. Marx, whenever

13        you get to a good stopping point, we need to

14        change to a new media.

15     Q      Did you use --

16            MR. MARX:  Yeah.  Thank you.  Just a few

17        more questions.

18     Q      Did you use the IM feature while you were

19  working at BAMS?

20     A      Yes.

21     Q      About how often?

22     A      Daily.

23     Q      How many times a day?

24     A      Many.  Ten.  One to ten.  One to 50.

25  Different every day.  But I would say daily just like

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 135

1    every other person in the firm.

2        Q    All right.  Now, if you were working at

3    BAMS and you wanted to refer to an IM from a prior

4    day, how would you do that?

5        A    You generally wouldn't because IMs are

6    generally for informal conversations or to do things

7    like set up meetings or ask a quick question about

8    something.  But they're not meant to be used as --

9    they're not artifacts that get generated.

10       Q    All right.  So if you are out for a day

11   or out of the loop and someone says they IM'd you

12   yesterday, you couldn't find it?

13       A    I don't recall how they had that set up.

14       Q    Is that also known as pinging?

15       A    Yes.  Although people use the word ping

16   to just mean contact, so -- but I -- like if I

17   were -- it is most commonly meant to be -- ping most

18   of the time refers to using instant messaging client.

19   But ping people will also use as phone, email, or IM

20   as a shorthand.

21       Q    To your knowledge was most of the

22   communication around BAMS' employees done via IM or

23   via email?

24       A    Anything that was -- I would say email.

25       Q    Okay.  What percentage of your

Mark Kendall                                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 136

1    communications were done by email and what by IM?

2         A     In count of words or substance?

3         Q     The percentage of the number of emails as

4    opposed to the number of IMs.

5         A     We sent many low substance IMs to each

6    other and the meaningful material content was through

7    email.

8         Q     Okay.

9         A     It's -- IMs are one-on-ones to say, can I

10   call you at 4 o'clock, friendly type of things.

11        Q     Okay.  But without respect to the -- your

12   description of whether it's meaningful or not

13   meaningful, in terms of the volume, about how many

14   percentage-wise IMs did you send as opposed to how

15   many emails would you send?

16        A     What do you consider a send?  Every time

17   I hit enter and send a message?

18        Q     Yes.  Yes.

19        A     I don't know.  A hundred -- I hit enter a

20   hundred times.  Every time I write a -- how you

21   doing, hit "enter," if that's a communication, then

22   many, many times.

23        Q     All right.  All right.

24        A     To the best of my knowledge all -- we

25   were expected to treat IM the same way we treat

Mark Kendall                           July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 137

1    email, that was all viewable and recordable by the

2    firm.  It wasn't -- it was a company platform on a

3    company computer that was monitored.

4          Q     Do you know who monitored it?

5          A     No.

6          Q     You said it was a company platform.

7    Which company?

8          A     BAMS.  It was a platform -- it was a

9    software platform on every BAMS computer.

10               MR. MARX:  Yeah, we can take a break now.

11               THE VIDEOGRAPHER:  We're going off the

12          record at 2:09 p.m.

13               (Recess.)

14               THE VIDEOGRAPHER:  This begins Media Four

15          in the deposition of Mark Kendall.  We are back

16          on the record at 2:16 p.m.

17          Q     (By Mr. Marx) Okay.  Exhibit 40?

18          A     Okay.  I've read the content.

19          Q     Okay.  Exhibit 40 is documents produced

20    by defendant bearing BAMS numbers 2662 through --

21    actually 2662, 8378 and 9187, 9188.  Have you seen

22    this document or any of these emails before?

23          A     I don't recall seeing this.

24          Q     41.  Do you have 41?

25          A     Okay.  You can scroll.  Okay.  I've read

Page 138

1      the document.

2           Q     Okay.  So Exhibit 41, documents produced

3      by defendants bearing BAMS one -- page numbers 1328

4      through 1330 -- I'm sorry -- 1331 appears to be

5      emails between Robert Galarza and Mike Solan and

6      attachments -- well, emails.  Have you seen this

7      before?

8           A     This does not look familiar to me.  I saw

9      it as part of what counsel shared with me, but I

10     don't remember seeing it at the time.

11          Q     Okay.  At the time meaning December of

12     2017?

13          A     Correct.

14          Q     Okay.  43.

15          A     Okay.  I've read this.

16          Q     Okay.  43, a document, a single page,

17     produced by defendants bearing BAMS 1953 -- Bates

18     1953.  This is an email from Mike Solan to you;

19     right?

20          A     That's what it looks like.

21          Q     Is this the document where you receive

22     notice of the emails?

23          A     I recall getting something from First

24     Data.

25          Q     Okay.  Now, this document -- I'm sorry.

Mark Kendall                               July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 139

1    This document says, "Hey, Mark, see attached for the
2    emails he sent to himself."  And this is dated
3    December 7th, 2014, 4:41 p.m.  Did you receive that
4    or about that time?
5              MS. MARX:  2017.
6              MR. MARX:  I said 2017.
7         A    If it has my name on it, then I received
8    it.
9         Q    Okay.  And it apparently has a zip file
10   attached, Symantec DLP analysis; right?
11        A    Is that a question?
12        Q    I asked, yeah, if there was one attached,
13   yes.
14        A    If -- it appears to say that on the page,
15   yes.
16        Q    So -- but your -- it's your testimony you
17   received notice of the downloaded emails not from
18   this email from Mike Solan, but something -- either
19   from a website or some other means of communication
20   from First Data.
21        A    My recollection is that I saw it from
22   First Data.  That's how I came up with the 20
23   something emails that we had in the previous one.
24        Q    Okay.  Do you recall anything about this
25   email, Exhibit 43?

Page 140

1          A       No.

2          Q       So any reason to doubt that you received

3     this email at or about the date indicated?

4          A       I don't -- it's an email to me with a

5     timestamp and my name on it.   What --

6                  No.   No doubt.

7          Q       It's -- apparently Mike Solan says in the

8     third -- in the third paragraph, "Let me know what

9     you think of the emails he sent and if there are any

10    specific questions that you think we should ask him

11    based on the selection of emails he chose."   Did you

12    respond to that?

13         A       I don't recall.

14         Q       Was this in preparation for what you're

15    calling the interview?

16         A       Likely.   It is likely that this was part

17    of our preparation to be ready to talk to Eric about

18    why he sent confidential email to himself.

19         Q       Did you have any conversation with Mr.

20    Solan about the downloaded emails prior to receiving

21    Exhibit 43?

22         A       I don't recall.

23         Q       Okay.   46.   There we go.

24         A       I've read the document.

25         Q       Okay.   Document 46 -- Exhibit 46,

Page 141

1    produced by defendants, BAMS Bates numbers 1268.

2    This appears to be the declaration that BAMS

3    requested for Eric Slawin to complete, which Mr.

4    Slawin identified at his deposition.  Have you seen

5    this prior to your preparation for today's

6    deposition?

7         A    I don't recall.

8         Q    Okay.  Did anyone speak to you about this

9    on or about December of 2017 other than counsel?

10        A    I don't recall.

11        Q    Did you speak to Mr. Solan about this at

12   the time?

13        A    My understanding is that Eric had

14   documentation he needed to sign and that Mike was

15   going to send him documentation.  So I'm assuming

16   that's what that documentation was.

17        Q    Okay.  But you didn't see it at the time;

18   right?

19        A    I don't recall seeing it at the time.

20        Q    Okay.  Let's go for a minute back to

21   Exhibit 43.  That was the email where Mike Solan

22   asked you any comments you had about the downloaded

23   emails.

24             Did you send him any response either in

25   email, in writing, or by conversation, or maybe

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 142

1      through an instant message?

2           A     I must have said something to him so that

3      we could plan for our conversation with Eric.  I

4      don't recall the mode or the content of that

5      communication.

6           Q     You're just thinking you must have based

7      on the fact that you had an interview with him; is

8      that it?

9           A     Yeah, I wouldn't have ignored him and

10     then walked into the room cold.

11          Q     Okay.  But you don't recall actually

12     sending an email; right?

13          A     I don't recall, no.

14          Q     And you don't recall a conversation;

15     correct?

16          A     No.

17          Q     And you don't recall anything like an

18     instant message; right?

19          A     I don't recall.

20          Q     And what did you tell Mr. Solan about

21     these emails?

22          A     That they had -- I'm paraphrasing because

23     I don't know exactly the words.  I said that he was

24     sending confidential emails that he had no purpose --

25     no reasonable purpose to send to himself and that I

Mark Kendall                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 143

1    wanted to defer to HR to figure out what to do next.

2          Q    Okay.  49.  Did we do 49 already?  Oh, we

3    already did that.  Never mind.  We did 49.  We've

4    already done that.  My mistake.  I'm sorry.

5               All right.  Good.  That's done.  Do we

6    have 50?

7          A    Okay.  Go to page 2, please.

8               Okay.  I've read it.

9          Q    All right.  So Exhibit 50 is documents

10   produced by defendants bearing Bates numbers 1510 to

11   1511.  It appears to be an email chain between Mr.

12   Slawin and Mr. Solan.  Have you seen this before or

13   prior to preparation for today's deposition?

14         A    I have not seen this before.

15         Q    Okay.  Now, on the first page appears to

16   have an email part of this chain on December 12th,

17   2017, at 2:05 p.m.  It appears to say, "Hi, Eric.

18   See attached for a letter that summarizes our

19   discussion today."  Then it goes on.

20              Were you present at a discussion on or

21   about December 12th, 2017 with Mr. Slawin?

22         A    I don't recall.

23         Q    Were you present at a discussion when Mr.

24   Slawin was notified that he was being fired?

25         A    I don't recall.

Page 144

1      Q      Okay.  How many other times have you been

2   involved in which a subordinate employee of yours was

3   fired?

4      A      Once.

5      Q      Once before Mr. Slawin?

6      A      Correct.

7      Q      Over how many years?

8      A      About three years prior, two years prior.

9      Q      And how many years have you been working

10   as a manager?

11      A      I stopped working as a manager after

12   working with Eric.

13      Q      And before that, how long were you

14   working?

15      A      About five years.

16      Q      Only two employees over a five-year

17   period; right?

18      A      Yes.

19      Q      And you don't remember whether you were

20   present when Mr. Slawin was told he was fired?

21      A      That's what I said.

22      Q      Okay.  Fair enough.  Were you -- this

23   other person who was fired, were you present when

24   that person was fired?

25      A      I don't recall.

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 145

1      Q      Did we do 61?  No.  Let me see 61.

2             MR. GALANEK:  Robert?

3             MR. MARX:  Yes, sir.

4             MR. GALANEK:  I just want to let you know

5      I've got -- fortunately, Brian is in the office

6      today.  I have asked him to -- I asked him

7      about 45 minutes ago to start trying to take a

8      look to see if there are any more of the

9      incident reports that you went through, the

10     nine that you went through.  But he's searching

11     for those.  If he finds them during the course

12     of the deposition, I'll let you know.  And if

13     he doesn't, we'll continue to either search for

14     them or figure out where they are or why they

15     are --

16             MR. MARX:  Okay.  I appreciate that.

17     Thank you.

18             MR. GALANEK:  Yeah, I know -- I know that

19     the witnesses referred to 20 emails that were

20     forwarded, and I've seen 20 emails that are

21     forwarded and I think that's what was on his

22     chart.  But I do have him -- I have Brian

23     looking for the actual incident reports for

24     you.

25             MR. MARX:  Fair.  Thank you.

Mark Kendall                         July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 146

1            THE WITNESS:  Chris, that -- that message
2       that I sent that we had up as an exhibit before
3       that was the table, that should have all the
4       titles of all the emails that were in there.
5            MR. GALANEK:  Right.  That's what --
6       that's -- that's what we're trying to search
7       for.
8            THE WITNESS:  Very good.
9            MR. MARX:  Yeah.  And also can -- maybe
10      Brian could see if you can find that email.
11      The witness keeps referring to an email he got
12      from First Data, not from Mike Solan on
13      December 7th.
14           MR. GALANEK:  Yeah.  And Robert, we'll --
15      I don't mind taking a look for it.  I just --
16      let's not discuss that issue in front of the
17      witness.
18           MR. MARX:  All right.
19           MR. GALANEK:  I think that one's better
20      discussed --
21           MR. MARX:  All right.  Well --
22           MR. GALANEK:  -- after the fact.  Okay?
23           MR. MARX:  All right.  I --
24           MR. GALANEK:  We'll -- if there's a -- if
25      there's an email that was sent to Mr. Kendall

Mark Kendall                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 147

```
1              we'll -- we will -- if we haven't produced it,
2              we'll produce it.
3                   MR. MARX:  All right.  Fair.
4                   MR. GALANEK:  But let's talk about that
5              not in front of the witness.  Okay?  Thank you.
6                   MR. MARX:  Yeah.  Okay.  I just -- I
7              mean, you started talking about this, so I'm --
8              I'm sorry, I didn't mean to --
9                   MR. GALANEK:  No, no, that's -- no, no,
10             that's why I -- we talked about what we are
11             looking for, that I'm aware that we are looking
12             for.
13                  MR. MARX:  All right.  We can move on
14             then.
15             Q    (By Mr. Marx) All right.  So let's look at
16        this.  Let's start with this next.  26.
17             A    Okay.  On to the next page, please.
18                  Okay.  Scroll down, please.
19                  Okay.  I've finished reading this.
20             Q    So Exhibit 26 is documents produced by
21        defendants -- the defendant.  Excuse me.  Bates --
22        the first page is Bates numbers 8558, the second one
23        is 8908.  It appears to be an email chain regarding
24        audits.  Have you seen this before?
25             A    I -- this is not familiar to me.
```

Mark Kendall                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 148

1      Q     Do you know Christine Clifford?

2      A     I recognize the name.  I don't know her

3   personally and I don't -- I haven't worked with her

4   since -- when I was at BAMS.

5      Q     Do you know what she did at BAMS?

6      A     I don't recall.

7      Q     Okay.  Thank you.  We're done with that

8   one.  That was 26.  Let's look at 24.

9      A     Okay.  Continue down.

10           Okay.  I've read that.

11     Q     Okay.  So Exhibit 24 are documents

12  produced by the defendant bearing Bates numbers 2093

13  to 2094.  Starting in the middle of the first page is

14  apparently an email from -- from you, actually, to

15  Mr. Slawin.

16     A     That's what it appears to be, yeah.

17     Q     Yeah.  And you said, "Let's remove it in

18  writing.  We can address it appropriately as we

19  discuss.  Period.  Good catch."

20           What was this all about?

21     A     Can you scroll down first?

22     Q     Sure.

23     A     Okay.  So Eric had prepared content for

24  ORC, operational risk counsel.  He had prepared a

25  presentation -- a short presentation for it and named

Mark Kendall                         July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 149

1    specifically details of this pending issue that we

2    were planning on writing.  And in those sort of

3    materials -- we don't put CSI, confidential

4    supervisory information, in that sort of material.

5            So he had put a -- because then we'd have

6    to -- we'd have to change the Infosec classification

7    to confidential supervisory instead of just

8    confidential.  So we don't -- it was -- it was

9    updating a presentation to put the appropriate level

10   of detail in the presentation for the audience.

11       Q    And what was that -- what you suggested

12   to remove in writing?

13       A    He had very specific details about the

14   issue.  And when you are writing specifics about any

15   issue or pending issue, that's a different

16   classification.  And that classification didn't match

17   up for the audience that was getting this

18   presentation.

19       Q    What issue was that you're talking about?

20       A    For PAN data.

21       Q    Okay.

22       A    So you wouldn't put details about PAN

23   data in a presentation such as this ORC deck.

24       Q    All right.

25       A    So the advisement was to remove it from

Page 150

1    the deck and to rephrase it so that it is appropriate

2    for the audience.

3            Q    So again, ORC, what's that?

4            A    Operational risk counsel, I believe.  I

5    don't know who was part of that.

6            Q    Then it says ORC deck.  Was that -- what

7    is he referring to?  The presentation for the ORC

8    meeting?

9            A    Yeah.  Deck is the presentation, yeah.

10           Q    Okay.  Do you know what the purpose of

11   that meeting was?

12           A    I don't recall.

13           Q    All right.  25.

14           A    Okay.  You can scroll down.  Yep.

15                I think we looked at this one before.  We

16   looked at one that has the same information on it.

17   Yep.

18           Q    Okay.

19           A    I'm ready to answer your question.

20           Q    Okay.  Thank you.  Exhibit 25, documents

21   produced by the defendant bearing BAMS Bates numbers

22   1536 through 37.  And starting down -- halfway down

23   that first page appears to be an email from you to

24   various individuals dated November 13, 2017.  Is that

25   right?

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 151

1          A     Yes.

2          Q     Okay.  And what is this email all about?

3          A     Can you scroll down a little bit, please,

4     so I can see the whole thing there?

5                Okay.  So this is sent out to different

6     operational units or leaders of different operational

7     units in our business to try to understand are there

8     processes in their business that use PAN data, and if

9     so, how?  It's getting more details so we can

10    formulate a remediation plan based on what we know to

11    be true.

12         Q     19.

13         A     Please stop scrolling.  Okay.  I can

14    continue.

15               Okay.  Continue.

16         Q     All right.

17         A     Okay.  I'm finished.

18         Q     All right.  So Exhibit 19 are documents

19    produced by defendant bearing Bates numbers 8582

20    through 8584.  This -- this is an email on the front

21    that you sent out; is that right?

22         A     Yes.

23         Q     Okay.  And it's dated October 26, 2017;

24    is that right?

25         A     That's what it says.

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 152

1        Q     Okay.  And so what is this email all

2    about?

3        A     So this is still our strategy for how do

4    we create an issue.  This is all stuff that Eric

5    could have done back in June when he learned about it

6    but opted not to.  So I'm doing the legwork to

7    understand what are the different -- what are the

8    different areas that we can address and what is

9    the -- talking with experts in the different

10   businesses about what sort of go-forward we can do.

11            So we're looking at -- a lot of the

12   options are:  Can we do anything that's relatively

13   easy, like masking or partial.  That's a relatively

14   easy fix to reduce our ability to do it.  Is it a

15   policy update to get people to stop sending or

16   receiving?

17            Is it a different technology or is it

18   looking at potentially either making a facility an

19   infrastructure PAN data or PCI compliant or

20   offloading work from BAMS to First Data to be in a

21   PCI compliant environment.

22            So this is still part of the research to

23   figure out what sort of issues do we write so we can

24   structure them so we can get it resolved.

25       Q     Okay.  So about this time, October 26,

Mark Kendall                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 153

1    2017, were you Mr. Slawin's manager?

2         A     Yes.

3         Q     Now, you said in the answer to my

4    question that Mr. Slawin was supposed to do this,

5    right, but he opted not to?

6         A     Yep.  Remember that first message from --

7    when Brian Glynn messages Eric about working on a

8    SIAI back, I think, in July?  He didn't do anything

9    with it.

10        Q     Well --

11        A     The performance plan, that he didn't

12   write any of the issues that he was supposed to in

13   his performance plan that we had set up to.  So in

14   lieu of him not doing the work, I still need to do

15   the work.

16        Q     Okay.  Is there any email from you to Mr.

17   Slawin saying that he should be doing this work?

18        A     No, I was leading the effort and brought

19   him in when needed.

20        Q     17.  Let's do 17.

21        A     Okay.  I'm ready for a question.

22        Q     All right.  So this is an email -- okay.

23   Exhibit 17 is -- has been produced by defendant

24   bearing Bates number 1621.  And this is an email

25   dated August 28, 2017, from you to Natasha Collins,

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 154

1    copy to Eric Slawin; right?

2         A     Yes.

3         Q     All right.  And what's this email all

4    about?

5         A     This is, again, still scoping.  So we

6    started out with knowing that there were some

7    operations happening in a PCI -- non-PCI compliant

8    form that needed to be PCI compliant.  And this is

9    still -- this is an update about what we're learning

10   about what different processes use different types of

11   data and where we might need to take remedial --

12   remediation-type action.

13              This is also about structuring the

14   administration of opening issues because we don't

15   want to -- we want to open issues in a way that the

16   responsible party is close enough to remediate the

17   issue.

18              You generally don't write very, very

19   large blanket issues with dozens and dozens of

20   corrective actions.  You tend to write them in a way

21   that an owner is responsible for an entire unit.

22              So like in the previous example that had

23   Brian Glynn on it, that was about a specific set of

24   actions that Brian Glynn had the ability to update

25   and change.  I wouldn't write an issue that was

Mark Kendall                            July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 155

1    overarching for everything because there's not just

2    one person who could fix it.

3              So this is some of that strategy about

4    how do we open the right issues here.  So there were

5    also groups in operations.  So we are in a sales

6    function.  There were groups in operations that were

7    doing different functions that came across PAN data.

8    But nobody in the sales organization can remediate a

9    problem existing in the operations organization.

10        Q    Okay.  So the last paragraph says, "Eric

11   and I will continue to work with operations to come

12   up with a plan for drafting an issue, but wanted to

13   keep you apprised of the progress so far."  You wrote

14   that; right?

15        A    It sure looks like it.

16        Q    Okay.

17        A    Yes.

18        Q    And Eric would be Eric Slawin; right?

19        A    Yes.

20        Q    You didn't write here that he opted not

21   to do it; right?

22        A    Why would I do that?  No.

23        Q    I'm asking.  You didn't write that, did

24   you?

25        A    No.  And I had no reason to.

Mark Kendall                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 156

1       Q       Okay.  6.

2       A       I've seen this message.  I can answer

3    questions.

4       Q       Okay.  Okay.  So Exhibit 6 is a document

5    produced by defendant bearing Bates numbers 404.

6    Now, this is an email that you received; right?

7       A       Yes.

8       Q       Okay.  It's dated July 12th, 2017.

9       A       For clarity, it's an email -- it's a

10   meeting invite, not an email.

11      Q       Okay.  Thank you for that clarification.

12   Okay.  Great.  And this -- so what was this?  Was Mr.

13   Slawin setting up a meeting?  Is that what's going

14   on?

15      A       Yes.

16      Q       Okay.  Who's Val, by the way?  He says,

17   "Hi, Val."

18      A       I -- somebody in a function that --

19   somebody that ran a process.  I don't know what

20   process it was, but somebody that ran a process

21   within the sales organization.

22      Q       Okay.  So as of this date Mr. Slawin

23   wasn't saying I'm not doing it; right?

24      A       I don't recall him ever saying I'm not

25   doing it.

Mark Kendall                     July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 157

1       Q      All right.  Thank you.  Exhibit 6.

2              MR. MARX:  Do 7.

3       A      Okay.  I can answer questions.

4       Q      Okay.  So Exhibit 7, documents produced

5   by defendant, Bates number 408.  Is this another

6   setting up of a meeting?

7       A      This looks similar to the email to Val.

8       Q      It's called like a meeting invite.  Is

9   that what you call it?

10      A      That's a -- that's a meeting.  Yeah, you

11  can tell it's a meeting invite because it has a start

12  and end time and a location code.

13      Q      I see.  Who sent this?  Oh, Eric Slawin

14  sent this out; is that right?

15      A      Yep.

16      Q      To you and other people?

17      A      Yep.

18      Q      Okay.  And did you attend that?

19      A      I -- I don't know.  I am assuming I did.

20  I don't -- I can't confirm or refute that I did.

21      Q      Okay.  Do you remember going, what

22  happened at that meeting?

23      A      No.

24      Q      No?  Let's do 8.

25      A      Okay.  Next page.

Page 158

1          Okay.  Keep going down.  Okay.  I can

2     answer questions.

3          Q     Okay.  Exhibit 8, documents produced by

4     defendant bearing Bates numbers 409 to 410.  The

5     front part of it is -- it looks like an email from

6     Joseph Moll to various individuals, including you; is

7     that right?

8          A     Yes.

9          Q     And any question -- any reason to doubt

10    you received this at or about the time indicated?

11         A     No.

12         Q     Okay.  And this is about the number of

13    violations of transmission of PAN data; is that

14    right?

15         A     Yeah.  It's a very specific subset of

16    what we were researching.  It is -- when

17    transmissions leave -- left BAMS to somewhere else

18    that they were detected.  So this is a -- just one

19    type of thing.

20              So like if a sales rep, for example, sent

21    a full card of data outside of -- outside of the BAMS

22    domain, that's what gets flagged here.  It doesn't

23    capture every other location where there might -- PAN

24    data might be used.

25              So this is -- this informed one part of

Mark Kendall                             July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 159

1    our research, but it isn't the full picture.

2         Q    So these figures represent just one

3    portion of the unmasked PAN data being transmitted or

4    received; is that right?

5         A    Yeah.  This is about -- when BAMS

6    associates were sending unmasked PAN data that was

7    detected via whatever software solutions they had to

8    detect it.  But it was when it left the BAMS

9    environment.

10             Typically I -- my understanding was it

11   was between individual merchants and -- individual

12   merchants and account reps.  So in the course of an

13   account rep working with their merchant, they might

14   send that information.

15             Typically this is related to chargebacks

16   where they would -- when they were -- when there were

17   chargebacks, that that data may or may not be masked

18   saying like -- like when somebody returns something

19   or if a merchant has a fraud question.

20             That's the kind of thing that in the --

21   in the course of resolving the merchant's dispute

22   that full account data was transmitted.

23        Q    So to the extent that that data was

24   transmitted unmasked, it was not PCI compliant; is

25   that right?

Mark Kendall                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 160

1        A      That's my understanding of it.

2        Q      What number was that?  Let's do 9.

3        A      Okay.  I'm familiar with this enough to

4    answer questions.

5        Q      Okay.  So this is Exhibit 9.  It's a

6    document produced by defendant bearing BAMS Bates

7    numbers 412 to 413.  What is this document?

8        A      This looks like, I think -- it looks like

9    Val and -- Val and Sharon had something to do with

10   this debit suspense process.  It's some operational

11   process.  And we had asked a couple questions about

12   some context around that process.

13              And so that's a summary of what we

14   learned during a review of that process.  And it

15   looks like Val responded in line to my questions, if

16   I had them there.

17              Or can you roll up again?  I don't know

18   if there -- was there an attachment that went with

19   this?

20              The response is below.  I don't know

21   what -- it's hard to tell without the formatting.

22   But -- but this is about one of the process owners

23   that ran a particular process that we were

24   investigating to understand what are our abilities to

25   stop using this personal account number information.

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 161

1      Q     And this was done with respect to what

2   you called debit suspense; is that right?

3      A     Yeah.  I don't really know anything about

4   what that means, just that that's the process.

5      Q     That was my next question.

6      A     Yeah.

7      Q     Okay.  12.

8      A     Okay.  Scroll down, please.  Scroll down,

9   please.

10           Okay.  I can answer some questions here.

11     Q     Okay.  So Exhibit 12 is documents -- are

12  documents produced by defendant bearing Bates numbers

13  BAMS 1145 to 1146.  On the top first page there's an

14  email from you to various individuals, including Eric

15  Slawin.  And there's an email chain before that where

16  Slawin sent you an email.  Can you tell me what this

17  is about?

18     A     So this is about how there are a lot of

19  different areas where when -- we're learning that

20  there are different areas that this PAN -- this PAN

21  data is being used in different departments and

22  trying to understand how do we administratively

23  document issues appropriately so that the right

24  people are attached to the right issues.

25           There's a lot of back-and-forth about

Page 162

1    who's going to be the owner, whether it be the --

2    what is it? -- the COO group or the operations group

3    versus the sales group.  And this was still trying to

4    figure out who was going to be the owner, how many

5    issues would it be, how would we structure it.  So

6    it's the administrative details of how to write an

7    issue here.

8         Q    So this was the -- the last in the email

9    chain -- I'm sorry -- it's August 22, 2017; is that

10   right?

11        A    It looks like August 18th from Eric to

12   Natasha.

13        Q    I'm sorry.  On the top -- am I missing

14   something?  It says Mark Kendall.

15        A    All the way -- scroll all the way up,

16   please.  From -- yeah, 8/22.

17        Q    Okay.  So, I'm sorry.  Just so the record

18   is clear, was it on 8 -- August 22nd that you sent

19   this email --

20        A    I'm relying --

21        Q    -- the last one?

22        A    Yeah.  I'm relying on whatever it says on

23   the page.  If that's what it says, then it was August

24   22nd.

25        Q    Okay.  And let me get this straight.  Are

Page 163

1    you telling me as of that date there still was no

2    understanding as to who was going to be the owner of

3    the SIAA -- SIAI regarding the PCI PAN data issue?

4         A    Correct.  Because we didn't know all

5    the -- we still didn't know all the details about

6    where it was being used, who was using it.

7         Q    Okay.  I'd like to ask you a question

8    about the body of this top email.  You wrote, "I got

9    verbal agreement from Natasha on the plan I proposed

10   to our group at the end of July.  Don't know where we

11   reverse course.  My mistake to not get agreement in

12   writing."

13            What -- what are you referring to in

14   reverse course?

15        A    I don't remember the details on the

16   underlying content, but this is -- I had a

17   conversation with Natasha that we were going to

18   organize it a certain way.  And then it sounds like

19   Carla said that there was going to be -- it was going

20   to go a different way of organizing it.

21            And this is me saying I should have had

22   it in writing about what the proposal was, the

23   original proposal that now seems to be different.

24        Q    Do you see the email right before that

25   from Carla Sweeney to Eric Slawin and you?

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 164

1          A       Uh-hmm.

2          Q       She refers to a CMS-owned issue.  Do you

3     see that?

4          A       Client managed services, Natasha's group.

5          Q       Okay.

6          A       I believe at the time I did not believe

7     it was going to be a CMS-owned issue because we were

8     unable to remediate all the content.  And that's why

9     we wanted to have it appropriately aligned to the --

10    any issues aligned to the people who could actually

11    fix it.

12             You generally don't have one owner that's

13    the owner but other people in different departments

14    do all the work.

15         Q       Okay.  I'm interested in that last

16    sentence, what you said.  What do you mean, we were

17    not going to be able to appropriately remediate all

18    the content?

19         A       So think of it like a project plan.  An

20    issue -- a self-identified issue is not much more

21    than a project plan.  If you write a project plan and

22    if it says that I am the owner of the entire project

23    but nobody in the group reports to me, I don't have

24    any authority or decision-making capability to decide

25    how those groups that don't report to me do their

Page 165

1    job.

2            So you tend to organize your issues so

3    that the people that are the owners are the ones that

4    can get it done.  So, for example, in the one that we

5    had up earlier today where it had Brian Glynn and

6    David Ades, Brian Glynn and David Ades can go knock

7    on people's doors and make them do the task because

8    they're all in their management chain.

9            It's a lot harder to do that when you're

10   trying to go get a person that's not in your

11   management chain or it's in a different department to

12   do that -- to do work.  It's like, fix my problem

13   that matters to me, do work to fix my problem.

14           That's generally not a -- that generally

15   doesn't get good results to get issues remediated on

16   time.  You tend to put them -- the owners closer to

17   the problems so that you can clearly connect that the

18   owner has the ability to fix the problem.

19       Q    Okay.  So -- so what you're saying is it

20   could be remediated but needed to be remediated by

21   somebody else?

22       A    One part of it -- I believe my stance in

23   here was there was one part that was very clearly

24   within the realm of David Ades's org and there were

25   other parts as we were learning more and more about

Mark Kendall                        July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 166

1    it that David had no authority over it.  They were

2    part of an operations group, and Carla was from the

3    operations group.

4              So this is a conversation of, we think

5    that certain people in the operations group should be

6    owners of a -- maybe a second issue or a third issue,

7    or however many they wanted to do related to the

8    problems that they were closest to.  So if they ran a

9    process they would write an issue about how their

10   process has control gaps or control deficiencies.  I

11   wouldn't write an issue that I would own that would

12   talk about their problems with their process.

13        Q    So at the time in August of 2017 did you

14   believe that a PAN data PCR issue could be

15   remediated?

16        A    Yes.

17        Q    And how did you expect that it would be

18   remediated?

19        A    The same way that we would remediate any

20   other issue that I -- we don't write issues for

21   things that we don't think can get fixed.  We would

22   do the due diligence to figure out what are our

23   choices, and it could be change a service, change a

24   process, change who performs the process, change

25   systems that we use to perform the process.

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 167

1              There were many different choices, and

2     each individual process that relied on PAN data might

3     have a different solution.  We weren't going to go

4     and say across the board we're handling it all one

5     way.

6              So, for example, it could be with some of

7     these processes that they're transmitting data that

8     their process doesn't require to transmit.  So they

9     could just mask the center, the middle eight

10    characters, and that's all they would need to do.  We

11    didn't want to -- it doesn't make sense to take a

12    draconian approach without knowing what is underneath

13    it.

14             But, yeah, I thought this was very much

15    able to be remediated.

16        Q    And did you have an understanding as to

17    what, if anything, was going to be done about David

18    Ades's statement that BAMS did not want to become PCI

19    compliant?

20        A    So one of the biggest --

21             MR. GALANEK:  I object to form.

22        A    That comment refers to outsourcing work

23    that was done -- that is done at BAMS to have First

24    Data do it instead.  That was a primary decision that

25    we were going through here about who's going to do

Page 168

1    this work.

2              And if the answer is First Data, it

3    might -- it may mean that we're going to lay off big

4    swaths of people at BAMS.  So you want to be very

5    careful that you understand exactly what you're going

6    to do before you take that sort of course.

7         Q    Okay.  So was it your understanding that

8    at the end of this remediation process that BAMS

9    would become PCI compliant?

10        A    No.

11        Q    Okay.

12        A    That was not -- there's not one solution.

13   The solution is not BAMS becomes PCI compliant.  It's

14   that to make all of the data that we are using that

15   requires PCI compliance to make whoever's doing that

16   work PCI compliant or to make it no longer requiring

17   that level of compliance.

18        Q    Let's do 13.

19        A    You can continue scrolling.

20             Okay.  Continue.  Okay.  Next page.

21             All right.  Continue.  You can go to

22   page 4.  All right.  Continue.

23             Okay.  Ready for a question.

24        Q    All right.  Let's just go back for a

25   second, please, to that earlier interchange we had

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 169

1    when you referred to certain other groups that might

2    be remediating or be owners we talked about, for

3    example -- Carla's group, for example.  Do you recall

4    that testimony?

5        A    Yes.

6        Q    These are all groups within BAMS; is that

7    right?

8        A    Correct.

9        Q    All right.  13 is documents produced by

10   defendant bearing various Bates numbers.  They appear

11   to be in sequence but not necessarily chronological

12   sequence.  So let's take it one by one.  The first

13   page is BAMS 1147.  And that's an email from you to

14   various people; right?

15       A    First meaning the most recent?  These are

16   in --

17       Q    Yeah, I apologize.

18       A    -- reverse chronological, yeah.

19       Q    The first page which in an email chain

20   would be, yeah, the most recent.

21       A    Yeah.  Yeah.

22       Q    Or the last in the chain.

23       A    Right.

24       Q    Right.  And that's an email on August 14,

25   2017 from you --

Page 170

1        A       Yes.

2        Q       -- to Newman -- Darien Newman, Eric

3    Slawin, copy to Carla Sweeney.  And what's going on

4    in this email?

5        A       It's more fighting about who's the owner

6    and how do we structure it.

7        Q       All right.  Let's take the next email,

8    August 14th, 2017, at 9:40.  You got a "cc" on this.

9    That's from Darien Newman to Eric Slawin, copy to

10   Carla Sweeney and you.  What's going on in that

11   email?

12       A       Eric had -- or Darien had work that he

13   was supposed to do that he didn't do, and he's trying

14   to get somebody else to do it for him.

15       Q       Okay.  Let's go to the next page on the

16   exhibit, which is Bates -- BAMS number 8576.  This is

17   an email.  I don't know if you were copied on it.

18   Darien Newman.  And this August -- it purports to be

19   August 14th, 2017, from Jessica Saha to various

20   individuals.  Have you seen that before --

21       A       Yes.

22       Q       I'm sorry.

23       A       Yes, I've seen that.  This is still about

24   trying to figure out how to structure the different

25   issues.

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 171

1      Q     Okay.  And then the email prior to that
2   also from Jessica Saha, August 14th, 2017, at 11:28.
3   Do you see that one?  Had you seen --
4      A     Yeah.
5      Q     -- that while you were employed at BAMS?
6      A     Yeah.
7      Q     You've seen the same --
8      A     I've seen this whole thread, yeah.
9      Q     Okay.  So without belaboring the issue,
10  this whole thread is about who's going to be
11  responsible for doing the SIAI; is that right?
12     A     How many there are and who's responsible
13  for what.
14     Q     Okay.  Let's go to the last page, which
15  is BAMS 1431.  It looks like it's a message from you
16  to Eric Slawin, August 14, 2017, 10:50 a.m.
17     A     Yep.
18     Q     The subject is PAN data.  It says, "Don't
19  respond to Darien or do any work for him.  I'll
20  address when I return."
21           What was that all about?
22     A     Sure.  So some background that'll help
23  here is that I was brought in to help train up Eric
24  who was not meeting the requirements of his job prior
25  to me working with him.  And Carla was brought in to

Page 172

1      train up Darien to help him do what he was supposed

2      to be doing.

3              Darien was trying to get Eric to agree to

4      things, and I did not have faith that Eric would do

5      the right thing and appropriately discharge what we

6      had worked on before or that he would agree to things

7      that Darien came up with.

8              So I didn't have faith that Eric could --

9      could do this work while I was on vacation.

10         Q    And that's the basis for this August

11     14th, 2017, 10:50 a.m. email?

12         A    I remember where I sent that email.

13         Q    I'm sorry?

14         A    I remember where I was when I sent that

15     email.

16         Q    All right.  But you don't remember where

17     you were when Mr. Slawin was terminated; right?

18         A    Is that a question?

19         Q    Yeah, it is.

20         A    Or are you badgering me?

21         Q    I'm not badgering you.  I'm asking you

22     why you remember one and not the other.

23         A    Do you want an answer or do you want

24     to -- are we -- are we going to keep going?

25         Q    You can answer it.

Mark Kendall                            July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 173

1          A     I'm going to decline -- I'm not going to

2     declare -- I'm not going to.

3          Q     Okay.  Well, why do you remember one and

4     not the other?

5          A     Why do you remember one thing and not the

6     other?

7          Q     I'm asking the questions.

8                THE WITNESS:  Chris, I don't know what to

9          do with this.

10               MR. GALANEK:  Yeah.  Mark, just -- if you

11         have -- if you can provide information to Mr.

12         Marx as to why you remember this email but not

13         another email, do so.  If you don't have a

14         response, let him know that you can't respond.

15         That's all you got to do.

16         A     Okay.  Okay.  So with relation to the

17    termination, termination at a firm is not like a TV

18    show where you get up and yell "you're fired."

19    There's not an incident.  There's not a moment where

20    it occurs.

21               Once I had turned over the work to HR to

22    go through the process, it was really up to them to

23    decide what the moment was where Eric no longer

24    worked for the firm.  And by that point I had other

25    things to do to do Eric's job and my job.

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 174

1           So the exact moment of when Eric was
2    terminated wasn't an event.
3           Q     Not an event in your mind; correct?
4           A     There was not a specific moment that at
5    this time of day Eric was terminated that I am aware
6    of because it was all done by HR and it was out of my
7    hands and I was on to doing the work that he didn't
8    do.
9           Q     Is there anything in writing that says
10   I'm off to doing the work that you haven't done or
11   words to that effect?
12          A     No.
13          Q     Thank you.
14          A     Not that I'm aware of.  If there is, who
15   knows?  Maybe there is.  I have no idea.
16          Q     I'm sorry.  Maybe -- you had an
17   interview -- what you called the interview where you
18   and Mr. Solan were in his office, Mr. Slawin on the
19   telephone.  You were calling that the interview.
20          A     That's -- yes.
21          Q     That was not where the termination
22   decision was communicated; correct?
23          A     Right.  Correct.
24          Q     Okay.  When Mr. Solan on December 12th,
25   communicated to Mr. Slawin by telephone that he was

Page 175

1    being terminated, were you present at that time?

2        A    I don't recall.  I don't recall if --

3        Q    You were not present or you just don't

4    remember either way?

5        A    That there was a phone call telling him

6    that he was terminated?  I don't recall being on that

7    specific phone call.  Frankly, the -- it was a pretty

8    traumatic time to see someone that you -- that you

9    thought you were getting along with, that you worked

10   with, when you see your name 25 different times in

11   different emails.

12            So apologies for not remembering the

13   details, but it was fairly upsetting, such that I

14   have no longer taken management roles and I have -- I

15   have probably limited my career because of this

16   experience.

17            So apologies?  I don't remember the

18   specific details about where I was at a specific

19   moment in time for this guy, what phone call I was

20   on.

21       Q    Did you say it was traumatic?

22       A    This whole thing and the emails -- or the

23   text messages that Eric sent me later on in the year,

24   yeah.  I thought it was pretty -- pretty unpleasant

25   to have Eric message me -- having to go through this

Page 176

1    whole thing, having what seems like a lot of my name

2    show up on these activities that he was doing, and

3    then to have him later on in the year continue to

4    message me when we no longer worked for the same firm

5    anymore.

6            Yeah, I thought it was traumatic what he

7    did.  And it is -- it has affected me, and I have not

8    taken management work since then because of it

9    because I don't want to deal with this again.

10       Q    But you don't remember where you were

11   when he was fired.  Is that it?

12       A    I already answered your question.

13       Q    All right.  Okay.  All right.  So let's

14   look at Exhibit 13.  We did 13.  Excellent.  Let's do

15   Exhibit 14.

16       A    All right.  Next.

17            Okay.  I can answer questions.

18       Q    Okay.  So Exhibit 14 is documents

19   produced by defendant, Bates numbers 1410 to 1411.

20   It appears to be an email chain where you were

21   involved.  Have you seen this before?

22       A    It looks like I'm on the "To" line, so

23   yes.

24       Q    So this is -- the email chain runs

25   from -- well, it looks like all of it is August 16th

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 177

1     of 2017 at various times during the day.  And what

2     was this all about?

3           A     This is more about Eric and Darien

4     fighting over who was going to take the issue that

5     led up to my message around "don't talk to Darien

6     anymore because the two of you are not figuring --

7     you're not on the same page."

8           Q     Okay.  Let's see 15.  This is a big one.

9           A     Okay.  Down, please.  Okay.  Continue.

10    Okay.  Continue.  Hold on.  This is unusual because

11    there's different --

12                 Is this the same as the other one at the

13    beginning, or are there new messages in between?

14                 It doesn't really matter.  We can just

15    keep going.  Continue.  This looks like it repeats.

16          Q     It does look that way.  Some of it,

17    anyway.

18          A     Okay.  Continue.  Continue.  This is

19    still more the same fighting of who's going to do

20    what.  This is still administrative setup fighting.

21          Q     Okay.  Let me know when you're ready to

22    answer questions.  I think you've already answered my

23    question.

24          A     Okay.  Let's do it now.  And if we need

25    to read the rest, I think I get the point of the

Case 1:19-cv-04129-AT    Document 196-1    Filed 09/18/25    Page 178 of 239

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 178

1    string.  I lived it.

2         Q    Okay.  So this Exhibit 15, which is a

3    whole chain of emails, some of which is in Exhibit 14

4    perhaps, is more of the interchange between Mr.

5    Newman and Mr. Slawin about ownership of the SIAI --

6    SIAI audit.  Is that a correct statement?

7         A    Yes, they're continuing to bicker about

8    who does what.

9         Q    All right.

10             MR. GALANEK:  Hey, Robert?

11             MR. MARX:  Yes, sir.

12             MR. GALANEK:  Can we -- can we take a

13        five-minute biological break?

14             MR. MARX:  Sure.

15             MR. GALANEK:  I need to use the restroom.

16             MR. MARX:  Yeah, let's make it ten.

17             THE VIDEOGRAPHER:  We're going off the

18        record at 3:26 p.m.

19             (Recess.)

20             THE VIDEOGRAPHER:  This begins Media Unit

21        Five in the deposition of Mark Kendall.  We are

22        back on the record at 3:38 -- or, excuse me --

23        3:39 p.m.

24         Q    (By Mr. Marx) Okay, Mr. Kendall.  In your

25    current position do you do any work for BAMS?

Mark Kendall                                 July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 179

1          A     No.

2          Q     Do you receive any compensation from

3     BAMS?

4          A     No.

5          Q     Okay.  In your current job do you do any

6     work for Bank of America?

7          A     No.

8          Q     Do you receive any compensation from Bank

9     of America?

10         A     No.

11         Q     Excuse me.  Sorry.  In your current job

12    do you do any work for First Data or Fiserv?

13         A     No.

14         Q     Do you receive any compensation for First

15    Data or Fiserv?

16         A     No.

17         Q     Okay.  Do you have an understanding as to

18    what, if any, company is a successor to BAMS?

19         A     Can you rephrase that?  I'm sorry.

20         Q     Yeah.  Do you have any knowledge of

21    whether any company is now a successor to what used

22    to be BAMS?

23         A     My understanding is that --

24               MR. GALANEK:  Objection to form.

25         A     To my understanding it's Fiserv and Bank

Page 180

1    of America.

2          Q     Okay.  Do you have any knowledge

3    regarding a company known as JB Weindell (phonetic)?

4          A     I don't know what that is.

5          Q     Okay.  When was the last time that you

6    spoke with Mike Solan?

7          A     Likely around the time of Eric's

8    termination, December 2017.

9          Q     Have you spoken with Mike Solan about

10   this case?

11         A     No.

12         Q     When was the last time you spoke to

13   Natasha Collins?

14         A     Approximately the time of my departure

15   from BAMS in the spring of 2018.

16         Q     Have you spoken to Ms. Collins about this

17   case?

18         A     No.

19         Q     When was the last time you spoke to David

20   Ades?

21         A     Sometime in 2017.

22         Q     Have you spoken to Mr. Ades about this

23   case?

24         A     No.

25         Q     Now, with respect to your testimony that

Page 181

1    your understanding is that Fiserv and Bank of America

2    are successors to BAMS, what is the basis of that

3    understanding?

4              MR. GALANEK:  Objection.  Form.

5         Q    You can answer.

6         A    At the time that I worked there that was

7    my understanding that -- what is it? -- First Data

8    got bought by Fiserv.  And I assumed that the two JV

9    participants are the remaining parties.

10        Q    Okay.

11             MR. MARX:  Okay.  I have no further

12             questions at this time.  We will be asking the

13             court or possibly asking the court for a

14             further deposition based on this discovery

15             issue regarding the IMs.  I do not expect Mr.

16             Galanek to stipulate to that or agree to that.

17             I just want to make my position clear that in

18             the absence of any subsequent production of IM

19             material, we have no further questions.

20             MR. GALANEK:  All right.

21             MR. MARX:  And with respect to any

22             production of any letter from First Data, which

23             may possibly being produced, we have no further

24             questions at this time.

25             MR. GALANEK:  All right.  I may have some

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 182

1     questions.  I'd like to go off the record for

2     about five minutes.  Let me look at my notes.

3            MR. MARX:  Okay.

4            MR. GALANEK:  But we can all come back in

5     about five minutes and I'll let you know --

6            MR. MARX:  All right.

7            THE VIDEOGRAPHER:  We're off the record

8     at 3:43 p.m.

9            (Recess.)

10           THE VIDEOGRAPHER:  We're going back on

11    the record at 3:48 p.m.

12           MR. GALANEK:  All right.  I've looked at

13    my notes.  I am going to reserve any questions

14    that I have for the witness for a later date.

15    The witness will read and sign, Carla.  So once

16    you have the transcript prepared, if you'll

17    send it on to me, that would be great.

18           COURT REPORTER:  Perfect.

19           MR. GALANEK:  And, Ted, I will ask for a

20    copy of the video.  And Carla, I am going to

21    assume that you will be attaching to the

22    deposition copies of the exhibits used today?

23           COURT REPORTER:  I will.

24           MR. GALANEK:  Great.  And to the extent

25    that I can get a rough, that would be

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 183

1          exceptional.

2                 COURT REPORTER:  Do we want to go off the

3          record and then discuss our orders and stuff

4          off the video?

5                 MR. GALANEK:  Sure.  Yeah.  I'm sorry.

6          Yeah, we don't -- we don't -- we don't need to

7          do that.  Yeah, we can go off the video.

8                 THE VIDEOGRAPHER:  Okay.  We're going off

9          the record at 3:49 p.m. this concludes the

10         deposition.

11                (Deposition concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 184

1                          DISCLOSURE
2       STATE OF GEORGIA    DEPONENT:  MARK KENDALL
3       COUNTY OF FULTON
4                   Pursuant to Article 10.B of the Rules and
        Regulations of the Board of Court Reporting of the
5       Judicial Council of Georgia, I make the following
        disclosure.
6
                    I am a Georgia Certified Court Reporter.
7       I am here as an independent contractor for Veritext
        Legal Solutions.  Veritext Legal Solutions was
8       contacted by the offices of Robert N. Marx, Esquire,
        to provide court reporting services for this
9       deposition.  Veritext Legal Solutions will not be
        taking this deposition under any contract that is
10      prohibited by O.C.G.A 9-11-28 (c).
11                  Veritext Legal Solutions has no
        contract/agreement to provide reporting services with
12      any party to the case, any counsel in the case, or
        any reporter or reporting agency from whom a referral
13      might have been made to cover this deposition.
        Veritext Legal Solutions will charge its usual and
14      customary rates to all parties in the case, and a
        financial discount will not be given to any party to
15      this litigation.
16
17
18      _____
        CARLA J. HOPSON, CCR# B-1816
19      July 16, 2024
20
21
22
23
24
25

Mark Kendall                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 185

C E R T I F I C A T E

1

2     STATE OF GEORGIA:

3     COUNTY OF FULTON:

4

5          I hereby certify that the foregoing deposition

6     was taken down, as stated in the caption, and the

7     colloquies, questions and answers were reduced to

8     typewriting under my direction; that the foregoing

9     transcript is a true and correct record of the

10    evidence given.

11         The above certification is expressly withdrawn

12    and denied upon the disassembly or photocopying of the

13    foregoing transcript, unless said disassembly or

14    photocopying is done under the auspices of Veritext

15    Legal Solutions, Certified Court Reporters, and the

16    signature and original seal is attached thereto.

17         I further certify that I am not a relative or

18    employee or attorney of any party, nor am I

19    financially interested in the outcome of the action.

20         This, the 16th day of July, 2024.

21

22

23    CARLA J. HOPSON, RPR
      Certified Shorthand Reporter

24    B-1816

25

Page 186

1    Christopher Galanek, Esq.

2    chris.galanek@bclplaw.com

3                   August 1, 2024

4    RE: Slawin, Eric v. Banc Of America Merchant Services, Et Al.

5        7/12/2024, Mark Kendall (#6777063)

6        The above-referenced transcript is available for

7    review.

8        Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12       The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   cs-southeast@veritext.com.

16    Return completed errata within 30 days from

17   receipt of testimony.

18     If the witness fails to do so within the time

19   allotted, the transcript may be used as if signed.

20

21

22               Yours,

23               Veritext Legal Solutions

24

25

Mark Kendall                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

                                                  Page 187

1    Slawin, Eric v. Banc Of America Merchant Services, Et Al.

2    Mark Kendall (#6777063)

3                     E R R A T A   S H E E T

4    PAGE_____ LINE_____ CHANGE_____

5    _____

6    REASON_____

7    PAGE_____ LINE_____ CHANGE_____

8    _____

9    REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____     _____

24   Mark Kendall                              Date

25

Mark Kendall                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

Page 188

1    Slawin, Eric v. Banc Of America Merchant Services, Et Al.

2    Mark Kendall (#6777063)

3                    ACKNOWLEDGEMENT OF DEPONENT

4        I, Mark Kendall, do hereby declare that I

5    have read the foregoing transcript, I have made any

6    corrections, additions, or changes I deemed necessary as

7    noted above to be appended hereto, and that the same is

8    a true, correct and complete transcript of the testimony

9    given by me.

10

11   _____    _____

12   Mark Kendall                        Date

13   *If notary is required

14                    SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                    _____ DAY OF _____, 20___.

16

17

18                    _____

19                    NOTARY PUBLIC

20

21

22

23

24

25

Mark Kendall                                           July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[& - 1599]**                                              Page 1

| | | | |
|---|---|---|---|
| **&** | **11:28**  171:2 | **13**  2:14 129:11 | **1545**  112:9 |
| **&**  5:4 | **11th**  10:24 | 129:17 150:24 | **1545-1550**  3:8 |
| **0** | **12**  1:16 2:12 | 168:18 169:9 | **1549**  116:20 |
| **04129**  1:7 6:11 | 6:3 161:7,11 | 176:14,14 | **1550**  112:9 |
| **1** | **12/12/17**  4:3 | **1328**  43:15,24 | 117:8 |
| | **12/17/17**  4:6 | 138:3 | **1551-1556**  3:9 |
| **1**  31:8 37:25 | **12/17/2017** | **1330**  138:4 | **1557**  118:23 |
| 38:2,13 186:3 | 38:21 | **1331**  43:15 | **1557-1563**  3:10 |
| **1-800**  133:20 | **12/18/17**  4:8 | 138:4 | **1558**  119:22 |
| **10**  2:8 95:11,12 | **12/6/17**  3:5 | **137**  3:19 | **156**  2:3 |
| **10.b**  184:4 | **12/7**  38:23 | **138**  3:25 | **1562**  119:14 |
| **10/26/17**  2:22 | **12/7/17**  3:22,24 | **14**  2:16 41:3 | **1563**  118:23 |
| **105**  4:13 | **12/7/2017** | 105:23 169:24 | **1563-1571**  3:11 |
| **1050**  5:4 | 38:24 | 171:16 176:15 | **1564**  120:23 |
| **106**  4:10 | **12/8**  109:21 | 176:18 178:3 | **1567**  121:1,8 |
| **10:10**  1:17 6:3 | **12/8/17**  3:20 | **140**  4:5 | **157**  2:4,5 |
| **10:43**  30:20 | 109:11 | **1410**  176:19 | **1571**  120:23 |
| **10:44**  30:24 | **120**  3:11 | **1411**  176:19 | 121:2 |
| **10:50**  171:16 | **1201**  5:9 | **143**  4:9 | **1572**  123:1 |
| 172:11 | **121**  3:12 | **1431**  171:15 | **1572-1579**  3:12 |
| **11**  2:10 83:12 | **123**  3:13 | **147**  3:6 | **1579**  123:1 |
| 84:2 88:10 | **124**  3:14 | **148**  2:25 | **158**  124:20 |
| **11/13/17**  3:3 | **125**  3:15,16 | **14th**  5:9 170:8 | **1580**  123:23 |
| **11/20/17**  4:12 | **126**  3:17 | 170:19 171:2 | **1580-1587**  3:13 |
| **11/28/2017** | **1268**  141:1 | 172:11 | **1584**  123:25 |
| 121:15 | **127**  4:7 | **15**  2:18 42:23 | **1587**  123:23 |
| **11/30/17**  3:18 | **128**  90:19 | 67:24 126:1 | **1588**  124:20 |
| **11/8/17**  2:24 | **1287**  90:20 | 177:8 178:2 | **1588-1592**  3:14 |
| **112**  3:8 | **1288**  90:20 | **150**  3:4 | **1592**  124:21,23 |
| **1145**  161:13 | **12:08**  88:3 | **151**  2:23 | **1593**  125:11 |
| **1146**  161:13 | **12th**  12:5 90:23 | **1510**  143:10 | **1593-1598**  3:15 |
| **1147**  169:13 | 91:7 128:15,17 | **1511**  143:11 | **1597**  125:13 |
| **117**  3:9 | 128:18 143:16 | **153**  2:21 | **1598**  125:11 |
| **118**  3:10 | 143:21 156:8 | **1536**  150:22 | **1599**  126:1 |
| | 174:24 | | |

Veritext Legal Solutions

Mark Kendall
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.
July 12, 2024

**[1599-1604 - 343]**                                    Page 2

**1599-1604**   3:16
**15th**   97:19
**16**   184:19
**160**   2:7
**1603**   126:3
**1604**   126:2
**1605**   126:15
**1605-1610**   3:17
**1609**   126:17
**161**   2:13
**1610**   126:15
**1621**   153:24
**163**   54:2
**168**   2:15
**16th**   176:25
   185:20
**17**   2:20 3:7
   153:20,20,23
**176**   2:17
**177**   2:19
**1816**   1:23
   184:18 185:24
**18th**   162:11
**19**   2:22 151:12
   151:18
**1953**   138:17,18
**1:05**   2:3
**1:19**   1:7 6:11

**2**

**2**   31:4,9,10
   32:6 33:2,7,12
   37:11,24 38:1
   38:3,4 43:6
   56:9 101:25
   127:23 143:7

**20**   13:12 42:23
   112:19 113:15
   121:21,24
   139:22 145:19
   145:20 188:15
**2000**   116:1
**2014**   139:3
**2015**   17:12,14
   17:18 22:13
**2016**   16:12
**2017**   16:12
   18:2,22,23,25
   19:16,18,20
   20:3,9 21:1,3,8
   21:16,25 44:2
   44:18 45:8
   48:19 49:11,15
   50:1,13 52:17
   52:23 53:12
   54:8 60:18,22
   61:19,20,23
   62:16,22 70:7
   73:1 75:21
   76:20 78:7,11
   78:13 79:4
   84:8 85:17
   89:9 90:23
   91:7 92:6
   95:18 97:19
   104:22 110:23
   116:1 124:9
   128:17 138:12
   139:5,6 141:9
   143:17,21
   150:24 151:23

153:1,25 156:8
   162:9 166:13
   169:25 170:8
   170:19 171:2
   171:16 172:11
   177:1 180:8,21
**2018**   15:11,13
   15:19 16:7
   17:13,15,16
   18:21 20:4
   73:1 180:15
**2024**   1:16 6:4
   184:19 185:20
   186:3
**2093**   148:12
**2094**   148:13
**21133**   184:18
   185:22
**22**   162:9
**22nd**   95:18
   162:18,24
**24**   2:24 148:8
   148:11
**25**   3:3 150:13
   150:20 175:10
**26**   3:5 147:16
   147:20 148:8
   151:23 152:25
**261-9559**   5:6
**2662**   137:20,21
**269**   105:21
**2691**   105:21,21
**2694**   105:22
**26th**   84:8 85:17
   88:11

**2718**   41:8
**2719**   41:8
**28**   3:7 97:6,13
   100:3 104:3
   153:25
**28205**   8:3,4
**29**   4:17
**2926**   7:23
**2:05**   143:17
**2:09**   137:12
**2:16**   137:16
**2nd**   54:7 60:18
   60:22 61:23
   62:16

**3**

**3**   101:25
**30**   3:8 67:16,17
   67:20,25 112:7
   115:16 116:2
   116:19 117:13
   126:21 186:16
**30309-3488**
   5:10
**30338**   5:5
**31**   3:9 117:13
   117:14,15
**32**   3:10 118:6
   118:21 120:8
**33**   3:11 120:9
   120:21 121:25
**34**   3:12 122:1
   122:20,25
**342**   110:2,3
**343**   110:3

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[35 - 8378]**                                         Page 3

**35**  3:13 123:7
123:22 124:11
**36**  3:14 124:11
124:19 125:2
**37**  3:15,23
125:3,10,16
150:22
**38**  3:16 125:17
125:25
**39**  3:17 126:6
126:14,21
**3:26**  178:18
**3:38**  178:22
**3:39**  178:23
**3:43**  182:8
**3:48**  182:11
**3:49**  183:9

**4**

**4**  101:25 121:1
121:8 136:10
168:22
**40**  3:18 4:15
137:17,19
**402**  95:15
**404**  5:6,11
156:5
**408**  157:5
**409**  158:4
**41**  3:20 43:1,13
45:16 62:5,8
62:23 137:24
137:24 138:2
**410**  158:4
**412**  160:7

**413**  160:7
**42**  3:22 37:1,6
38:16 86:8,9
86:24 87:1,1
94:11
**425**  84:3
**427**  84:3
**43**  3:24 110:13
138:14,16
139:25 140:21
141:21
**45**  4:3 90:11,13
90:18 145:7
**46**  4:5 140:23
140:25,25
**49**  4:6 127:21
127:22 128:7
143:2,2,3
**4:08**  44:2
**4:25**  2:4
**4:41**  139:3

**5**

**5**  63:19 116:12
116:13 120:12
120:12 123:3
124:1,23,23
125:13 126:3
126:17
**50**  4:8 134:24
143:6,9
**500**  5:4
**51**  4:10 106:21
106:22 107:10
107:22 108:18

**53**  4:11
**572-6979**  5:11

**6**

**6**  2:3 116:13
117:8,8 119:12
125:13 126:3
126:17 156:1,4
157:1
**6/2/17**  4:11
**6/2/2017**
132:18
**60**  4:11 53:17
53:20 54:1
60:9 61:23
62:3,16 63:6,7
**61**  145:1,1
**62**  3:21 4:12
105:6,8,20
106:20
**6777063**  186:5
187:2 188:2
**68**  87:2
**69**  4:14 40:2
41:6

**7**

**7**  2:4 4:21
44:18 45:8
48:19 49:10,15
50:1,13 53:12
105:23 119:12
157:2,4
**7/10/2017**  2:3,4
**7/11/2017**  2:5

**7/12/2024**
186:5
**7/13/2017**  2:6
**7/22/17**  2:8
**7/26/17**  2:10
**7235**  97:14
**7236**  97:14
**76**  4:16 26:19
29:18,24,24
**7th**  44:2,17
52:17,22 61:15
62:20 70:7
75:20 77:13
89:9 92:6
110:21 139:3
146:13

**8**

**8**  2:5 121:1,8
123:3 124:1
157:24 158:3
162:18
**8/14/2017**  2:14
**8/16/2017**  2:16
2:18
**8/22**  162:16
**8/22/2017**  2:12
**8/25/2017**
121:14
**8/28/17**  2:20
**83**  2:11
**8367**  38:17
87:2
**8368**  38:18
**8378**  137:21

Veritext Legal Solutions

Mark Kendall                                                           July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[8558 - ahead]**                                                      Page 4

| | | | |
|---|---|---|---|
| **8558** 147:22 | **abilities** 160:24 | 185:19 | **administration** |
| **8576** 170:16 | **ability** 9:19 | **actions** 33:23 | 154:14 |
| **8582** 151:19 | 152:14 154:24 | 93:2 108:19 | **administrative** |
| **8584** 151:20 | 165:18 | 109:4 154:20 | 99:22 162:6 |
| **8908** 147:23 | **able** 90:15 | 154:24 | 177:20 |
| **8th** 61:15 70:7 | 116:16 164:17 | **activities** 176:2 | **administrativ...** |
| 75:21 77:13 | 167:15 | **actual** 8:18 | 161:22 |
| 89:9 92:6 | **above** 121:12 | 47:2 77:19 | **advisement** |
| 110:22,23 | 185:11 186:6 | 99:11 145:23 | 149:25 |
| **9** | 188:7 | **actually** 44:24 | **affect** 9:19 |
| **9** 2:6 108:20 | **absence** 181:18 | 59:4 90:20 | **affected** 176:7 |
| 160:2,5 | **absolutely** 58:1 | 100:8 126:21 | **affiliations** |
| **9-11-28** 184:10 | 58:3 59:17,23 | 129:5 137:21 | 6:20 |
| **90** 4:4 | **absurd** 72:15 | 142:11 148:14 | **afternoon** 88:9 |
| **908-917-8240** | 72:19 | 164:10 | **agency** 16:4 |
| 8:6 | **acceptable** 63:8 | **add** 57:20 | 184:12 |
| **9187** 137:21 | **access** 52:10 | **additions** 188:6 | **ago** 58:20 |
| **9188** 137:21 | 75:25 76:1 | **address** 7:22 | 61:22 62:14 |
| **95** 2:9 | 77:9,10,11,12 | 10:1 25:7,12 | 111:1 145:7 |
| **9585** 108:21 | 77:17 | 26:25 39:11 | **agree** 10:8,13 |
| **9585-9588** 4:10 | **accomplish** | 41:24 148:18 | 10:14,18,20,21 |
| **9586** 108:20 | 96:18 | 152:8 171:20 | 11:5 115:14 |
| 109:10 110:1 | **account** 81:11 | **addressed** 45:6 | 172:3,6 181:16 |
| **9587** 109:10 | 102:19,23,23 | **ades** 23:21 | **agreed** 34:16 |
| **9588** 108:22 | 103:1,12,15 | 78:16,25 79:2 | 34:25 35:3 |
| **9652** 128:12 | 106:9 121:17 | 79:4 82:14,17 | **agreement** 4:15 |
| **97** 3:7 | 159:12,13,22 | 84:5,10 85:2 | 16:8 17:4 41:9 |
| **9:40** 170:8 | 160:25 | 89:3 99:18 | 163:9,11 |
| **9th** 12:6 | **accuracy** 186:9 | 100:2 103:2 | 184:11 |
| **a** | **acknowledge...** | 117:9 165:6,6 | **agreements** |
| **a.m.** 1:17 6:3 | 188:3 | 180:20,22 | 79:19 80:1 |
| 30:20,24 38:22 | **acknowledg...** | **ades's** 84:14 | **ahead** 31:17 |
| 38:24 171:16 | 186:12 | 88:12 165:24 | 63:3 104:19 |
| 172:11 | **action** 1:7 | 167:18 | 105:3 |
| | 61:20 154:12 | | |

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

[al - asked]                                                                    Page 5

al  6:8 186:4
  187:1 188:1
alert  48:12
  56:23 57:3
ali  23:19 27:7
  27:10,13
aligned  164:9
  164:10
allotted  186:19
allowed  25:11
  57:5
ambiguous
  11:22 59:1
america  1:8,9
  4:16 6:7 7:13
  7:19 15:1 16:9
  16:22 17:3
  22:25 23:13
  33:9 179:6,9
  180:1 181:1
  186:4 187:1
  188:1
analysis  139:10
announcing
  65:10
answer  8:14,14
  8:15,20 9:12
  11:4 24:7 26:7
  28:10,20 31:7
  34:7 36:21
  47:23 51:24
  64:16,25 79:6
  83:14 87:8
  90:15 91:4
  105:3,11 108:6

110:16 111:22
112:6 117:18
117:20 118:8
119:6 122:2
128:5 132:25
150:19 153:3
156:2 157:3
158:2 160:4
161:10 168:2
172:23,25
176:17 177:22
181:5
answered
  176:12 177:22
answering  33:4
answers  58:15
  185:7
antecedent
  131:11
anybody  14:22
  14:25 23:16
  28:5 29:1 35:4
  51:17 53:13
  56:14 57:16
  64:9 89:11
  90:4 91:8
  92:14 131:15
  131:18
anymore  176:5
  177:6
anyway  23:10
  108:24 177:17
apologies
  175:12,17

apologize  108:5
  110:6 169:17
apparently
  55:12 139:9
  140:7 148:14
appear  169:10
appearance
  6:19 13:20
appearances
  5:1
appeared  104:2
  104:23
appears  34:3
  44:2 46:16
  97:17 108:18
  109:2 112:12
  121:16 122:23
  138:4 139:14
  141:2 143:11
  143:15,17
  147:23 148:16
  150:23 176:20
appended
  188:7
applicable
  186:8
applications
  10:10
appointed  21:9
appreciate  8:15
  145:16
apprised
  155:13
approach
  96:14 167:12

appropriate
  51:10,15 68:10
  71:17 72:2
  78:18 92:25
  149:9 150:1
appropriately
  148:18 161:23
  164:9,17 172:5
approximately
  13:2 14:14
  15:11,13 17:24
  18:6 19:9 20:2
  21:1 44:17
  61:14 70:8
  77:13 113:15
  122:5 180:14
areas  152:8
  161:19,20
arrangement
  21:12,21
article  184:4
articulated
  35:24
artifact  63:5,13
artifacts  44:14
  135:9
asked  28:11
  32:22 34:9
  37:13,25 38:5
  51:12 52:5
  64:14 76:13
  78:10 96:17
  139:12 141:22
  145:6,6 160:11

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

[asking - bams]                                                    Page 6

**asking** 26:15
31:17,22 32:3
38:9 49:7 50:1
55:20,22 62:5
63:15 65:24
72:19 73:11
76:4 78:9
93:13 107:3
111:13 133:15
155:23 172:21
173:7 181:12
181:13
**assessment**
73:23
**assigned** 98:11
99:23 101:5
104:10
**assist** 73:17
**associates** 17:6
109:12 159:6
**association**
3:19
**assume** 8:21
13:17 182:21
**assumed** 181:8
**assuming** 107:2
141:15 157:19
**atlanta** 1:2 5:5
5:10 6:10
**attached**
115:19 116:5
128:20 139:1
139:10,12
143:18 161:24
185:16 186:11

**attaching**
182:21
**attachment**
128:8 160:18
**attachments**
113:8 138:6
**attempt** 96:24
**attend** 157:18
**attending** 6:18
6:23
**attorney** 10:17
29:10 31:2
44:5 122:8
185:18 186:13
**attributes**
127:16
**audience**
149:10,17
150:2
**audit** 73:22
74:8,9,9,24
75:15,18 78:4
78:13,19 79:16
93:1 97:11
99:2,22 178:6
**auditor** 75:7,8
**audits** 74:22
147:24
**august** 153:25
162:9,11,18,23
166:13 169:24
170:8,18,19
171:2,16
172:10 176:25
186:3

**auspices**
185:14
**authenticate**
32:3
**authority**
164:24 166:1
**available** 186:6
**avenue** 7:23
**aware** 16:7,10
16:12,23 21:5
25:13 42:13,15
48:15,18,22
49:11,15,20
50:2 51:25
53:12,15 55:17
55:23 56:1
60:8,11 61:24
62:17 66:18
69:3,4,15,18,23
71:1,4 77:2,8
91:17 92:8,13
92:18 114:20
120:25 121:3
128:2 131:17
131:21,22
147:11 174:5
174:14
**awareness** 16:5

**b**

**b** 7:14 184:18
185:24
**back** 11:9,20
30:23 63:23
86:8 88:7,10
104:21 111:8

131:3 137:15
141:20 152:5
153:8 161:25
168:24 178:22
182:4,10
**background**
171:22
**bad** 124:7
**badgering**
172:20,21
**bam** 78:5
**bams** 3:18 4:10
7:14,17 13:7,9
15:4,12,21
16:3,6,21 17:6
17:9,10,12,17
18:11 19:1
20:4,16 22:13
23:1 24:11,16
25:14 33:16,22
33:25 41:7
51:23 52:1,19
54:2,18 74:25
78:21 79:13,17
79:18,24 80:5
80:10,18 81:14
81:15,21 82:9
82:25 83:6
84:17 85:3,4
85:12,18 87:11
87:17,21 90:19
93:4,8,16 94:2
96:24 101:9,22
102:2,3,6,11,19
102:22,23

Mark Kendall                                             July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[bams - bit]**                                              Page 7

103:1,4,11,14
105:20,21
108:20 112:8
115:22 116:20
118:23 120:22
121:8,15
122:25 124:23
125:11 126:1
126:22,25
127:7 128:21
130:11 133:7
134:1,6,19
135:3,22 137:8
137:9,20 138:3
138:17 141:1,2
148:4,5 150:21
152:20 158:17
158:21 159:5,8
160:6 161:13
167:18,23
168:4,8,13
169:6,13
170:16 171:5
171:15 178:25
179:3,18,22
180:15 181:2
**banc** 1:8 4:16
6:7 186:4
187:1 188:1
**bank** 1:8 7:13
7:18 14:5,25
16:9,22 17:3
22:24 23:12
25:10 33:9
179:6,8,25

181:1
**banking** 41:24
**banks** 73:21
**based** 12:23
68:10,11 72:15
79:16 81:20
85:1,7,11,14
86:3 100:15
140:11 142:6
151:10 181:14
**basically** 69:6
**basis** 172:10
181:2
**batches** 122:5
**bates** 3:8,9,10
3:11,12,13,14
3:15,16,17
38:17 41:8
43:14 54:2
84:3 90:20
95:15 97:14
105:21 108:20
112:8 118:23
119:14 120:22
123:1,23,25
124:20,23
125:10 126:1
126:15 128:9
128:12 138:17
141:1 143:10
147:21,22
148:12 150:21
151:19 153:24
156:5 157:5
158:4 160:6

161:12 169:10
170:16 176:19
**bclplaw.com**
5:10 186:2
**bco** 98:11,13
104:10,14
**bear** 30:15
**bearing** 37:19
38:17 41:7
43:14 54:2
84:3 90:19,19
95:15 97:14
108:20 112:8
118:22 120:22
122:25 123:23
124:20 126:1
137:20 138:3
138:17 143:10
148:12 150:21
151:19 153:24
156:5 158:4
160:6 161:12
169:10
**bears** 128:12
**becoming**
78:19
**beginning**
88:20 123:25
124:22 125:12
177:13
**begins** 30:22
88:6 94:19
105:20 126:16
137:14 178:20

**behalf** 5:2,7
**belaboring**
171:9
**believe** 11:18
17:12 18:3
19:5,25 26:10
29:6,7 32:3,9
32:11,13,15,16
34:8 42:21
62:4 75:25
76:21,23,24
77:18 78:6
81:11 82:23
83:3 97:1
100:4 114:1
116:20 128:21
150:4 164:6,6
165:22 166:14
**benign** 47:12
113:17
**best** 66:8
136:24
**better** 75:6
118:18 146:19
**beyond** 65:9
**bicker** 178:7
**big** 49:22 110:7
168:3 177:8
**biggest** 167:20
**biological**
178:13
**bit** 40:14 74:16
107:2 121:9
151:3

Mark Kendall
July 12, 2024

Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[blanket - chain]**

Page 8

**blanket** 99:1
154:19
**blowing** 109:20
**boa** 3:19
**board** 167:4
184:4
**body** 116:14,21
117:24 120:11
121:2,7,13
122:21 123:3,4
123:9 124:14
124:24 125:5,7
125:12,22
126:3,7,13,16
127:4,18 163:8
**bottom** 84:9
104:23 111:14
116:20 118:11
130:6 132:15
**bought** 181:8
**box** 107:19
109:11,18,19
110:20 130:4
**boy** 107:8
**break** 9:9,11,12
10:16 70:1
86:18,24 88:1
137:10 178:13
**brian** 21:10,14
21:19,21 22:16
54:10,11,12,14
54:22 56:20,22
100:6,7 104:20
130:15 145:5
145:22 146:10

153:7 154:23
154:24 165:5,6
**bringing** 69:15
**broader** 133:3
**broadly** 35:22
**brooks** 3:6
**brought** 69:13
153:18 171:23
171:25
**bryan** 5:8 6:25
9:6
**build** 75:10
**building** 80:24
**bullet** 100:20
100:21
**bunch** 113:7
**business** 17:2
17:20 18:8
19:25 20:5
47:14 48:23,24
49:3,16 50:3
51:19 66:16
72:24 73:7,9
73:15,16,17,20
73:25 74:2,4
74:14,21 75:11
98:14 151:7,8
**businesses**
96:16 152:10

**c**

**c** 43:16 184:10
185:1,1
**cache** 60:12
**calendar** 12:8

**call** 12:13,24
13:1,4 19:15
21:10 53:3
66:23 67:14,18
67:23,24 68:1
69:18 70:2
71:17 114:10
133:20 136:10
157:9 175:5,7
175:19
**called** 19:6
46:11 48:8
57:21 119:2
157:8 161:2
174:17
**calling** 89:8
90:2 91:7
140:15 174:19
**calls** 57:19
**capability**
41:16 164:24
**capacity** 14:9
14:21,24 89:17
**caption** 185:6
**capture** 158:23
**card** 158:21
**career** 175:15
**careful** 168:5
**carla** 1:23 6:15
59:13,14 60:4
163:19,25
166:2 170:3,10
171:25 182:15
182:20 184:18
185:23

**carla's** 169:3
**carolina** 7:24
14:8
**case** 6:10 7:1
7:12 10:16
15:4 20:19
32:5 33:8 73:6
115:12 180:10
180:17,23
184:12,12,14
**castro** 38:19
**catch** 148:19
**caught** 64:18
**cave** 5:8 6:25
9:6
**cc** 54:25 170:8
**ccr** 1:23 184:18
**ceased** 75:24
**center** 19:6
167:9
**ceo** 99:24
**certain** 75:2
102:2 113:25
163:18 166:5
169:1
**certainly** 29:15
**certification**
185:11
**certified** 184:6
185:15,23
**certify** 185:5,17
**chain** 44:1 84:3
88:12 99:25
143:11,16
147:23 161:15

Mark Kendall
July 12, 2024

Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[chain - company]**                                                    Page 9

162:9 165:8,11
169:19,22
176:20,24
178:3
**chance**  53:21
95:11 97:7
**change**  18:10
77:15 86:20
100:8 134:14
149:6 154:25
166:23,23,24
166:24 187:4,7
187:10,13,16
187:19
**changes**  186:10
188:6
**characters**
167:10
**charge**  97:2
133:9 184:13
**chargebacks**
159:15,17
**charlotte**  7:23
14:8
**chart**  4:10
105:22 106:14
106:17 108:18
109:2,3 129:5
145:22
**chat**  130:10,12
130:15 133:18
**check**  63:10,11
82:23 113:25
**checklist**  23:10

**choices**  166:23
167:1
**chooses**  10:24
**chose**  140:11
**chris**  6:24 13:7
40:9 62:8
114:14 146:1
173:8
**chris.galanek**
5:10 186:2
**christine**  2:23
3:5 148:1
**christopher**  5:8
186:1
**chronological**
109:4 169:11
169:18
**chronologica...**
108:19
**circuit**  10:24
**civil**  1:7
**cizmadia**  43:16
**cizmedia**  3:21
**claim**  94:5
**clarification**
102:16 103:14
156:11
**clarify**  105:4
**clarifying**  11:4
**clarity**  29:23
156:9
**classification**
149:6,16,16
**classified**
113:18

**clear**  25:17
102:15 162:18
181:17
**clearly**  165:17
165:23
**client**  19:10
29:10 130:10
130:16 135:18
164:4
**clifford**  2:23
3:6 148:1
**close**  154:16
**closed**  121:17
**closer**  165:16
**closest**  166:8
**cms**  164:2,7
**cocounsel**
49:12
**code**  8:2 157:12
**coded**  129:19
**cold**  142:10
**collins**  2:21
19:11,19,22
20:11 21:4,7
22:3,3 23:23
56:22 60:10,19
153:25 180:13
180:16
**colloquies**
185:7
**column**  129:14
129:17
**columns**  106:8
106:13

**come**  11:24
16:5 20:22
30:4 43:19
74:18 155:11
182:4
**coming**  75:8
**comma**  121:17
**comment**  87:14
121:9,10
167:22
**comments**
84:10 141:22
**committee**
99:23 103:8
**common**  14:19
17:5
**commonly**
135:17
**communicate**
89:14,16
**communicated**
46:12 174:22
174:25
**communication**
46:14 47:17,25
49:22 76:25
135:22 136:21
139:19 142:5
**communicati...**
29:10 115:24
136:1
**company**  25:7
41:20 42:3
52:14 53:9
55:3,12,17,24

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[company - context]**                                          Page 10

76:1 77:12
137:2,3,6,7
179:18,21
180:3
**compare**  63:1
**compartment...**
103:6,11,13,14
**compensating**
13:19
**compensation**
179:2,8,14
**complaining**
54:19,22
**complaint**
79:25
**complete**  83:24
141:3 188:8
**completed**
100:14 186:16
**completion**
100:10
**compliance**
14:10,18,21,24
35:21 36:7,16
47:9,19 48:1
49:4,25 82:10
84:11,18 85:10
87:20,22 88:25
97:16 100:22
101:10,13,15
103:16 129:12
129:18 132:6,9
168:15,17
**compliant**  78:5
78:21 79:13,17

79:18 80:6,11
80:16 81:1,16
81:21 82:2,5,9
83:7 85:5,13
85:19,24 86:2
86:4,7 87:12
87:15,18 93:5
93:9,16 94:2
101:3,6,24
102:2,3,8,10,12
103:23 152:19
152:21 154:7,8
159:24 167:19
168:9,13,16
**complicate**
73:13
**comply**  30:13
**computer**  10:3
10:4,6,10
33:18 113:14
113:21 137:3,9
**concern**  35:23
36:4
**concerning**
36:18 47:11
68:9
**concluded**
33:21 183:11
**concludes**
183:9
**conclusion**
34:25 35:1,3,8
98:18
**conducted**  6:12

**confidence**
33:22 65:6
95:21 96:1
**confidential**
24:9 25:6,11
26:9,24 33:17
33:18 34:17
35:16,19 36:5
36:9,23 39:10
39:22 41:23
51:6,17,20
52:2,14 66:11
66:16 113:19
140:18 142:24
149:3,7,8
**configuration**
133:7
**confirm**  157:20
**connect**  46:8
165:17
**connected**
82:19
**consider**  67:17
136:16
**considered**
68:15,19 72:9
**considering**
33:19
**constantly**
131:9
**consult**  11:15
**consulted**  76:9
**consulting**
15:18 17:11

**consuming**
84:22
**cont**  3:2 4:2
**contact**  10:25
11:10 58:12
135:16
**contacted**
45:22 48:10
184:8
**contacting**
45:22
**content**  36:24
39:10,14 40:22
41:18 43:12
44:3 45:18
46:22,22,24
47:11 60:14
66:10 87:5
94:15,17
110:24 111:5
116:13,15,24
120:25 125:8
125:23 126:12
136:6 137:18
142:4 148:23
163:16 164:8
164:18
**contents**  76:13
112:20 120:4
125:22
**context**  37:17
46:24 47:20
52:6 66:18
67:1 104:3,25
105:2 160:12

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[continue - court]**                                Page 11

| | | | |
|---|---|---|---|
| **continue** 16:14 | 47:7,17 52:12 | 49:17,18 50:10 | **correctly** 37:3 |
| 22:9 43:5 | 52:15,18,21 | 50:16 52:24 | **costly** 84:21 |
| 83:23 96:24 | 56:11 64:11 | 54:3 55:13,19 | **council** 184:5 |
| 104:17 105:15 | 65:4,8,17 66:5 | 55:25 58:4,7 | **counsel** 5:1 6:6 |
| 105:15 112:1,1 | 66:20,25 68:5 | 61:10,18 66:1 | 6:17 9:1 11:7 |
| 112:2 118:10 | 70:2 72:3,12 | 69:24 71:6 | 23:4,5,6,8,13 |
| 118:11 120:10 | 89:5 93:17 | 78:21 79:14,20 | 23:17 27:16,20 |
| 120:16,18,19 | 122:8 140:19 | 81:15 83:8 | 27:22 28:2,6 |
| 123:12 124:16 | 141:25 142:3 | 84:5,15 85:13 | 28:13,25 29:1 |
| 125:19,20 | 142:14 163:17 | 85:19,20 87:3 | 29:1,2 43:21 |
| 145:13 148:9 | 166:4 | 87:4,18,22 | 53:24 58:16 |
| 151:14,15 | **conversations** | 99:5,6 101:24 | 59:16 76:17 |
| 155:11 168:19 | 135:6 | 102:8,12 | 82:15,17 87:3 |
| 168:20,21,22 | **coo** 162:2 | 103:24,25 | 89:12 90:5,17 |
| 176:3 177:9,10 | **cookie** 64:18 | 110:9,12 111:4 | 91:8 115:19,25 |
| 177:15,18,18 | **copied** 170:17 | 120:24 121:4 | 124:6 138:9 |
| **continues** | **copies** 182:22 | 123:1,6,24 | 141:9 148:24 |
| 121:2 | 186:14 | 124:2,3,21,25 | 150:4 184:12 |
| **continuing** | **copy** 50:9,15 | 125:1,14,15 | 186:14 |
| 178:7 | 56:15 60:18 | 126:4,5,18,19 | **count** 129:14 |
| **contract** 184:9 | 112:3 154:1 | 126:22 127:16 | 136:2 |
| 184:11 | 170:3,9 182:20 | 127:17 128:16 | **counted** 129:16 |
| **contractor** | **corporate** 7:3 | 129:18 138:13 | **counter** 9:18 |
| 184:7 | 19:7 | 142:15 144:6 | **county** 184:3 |
| **contributor** | **correct** 8:9 9:7 | 163:4 169:8 | 185:3 |
| 73:8 | 15:5,6,8,9 | 174:3,22,23 | **couple** 160:11 |
| **control** 17:20 | 17:16 18:2,6 | 178:6 185:9 | **course** 10:9,15 |
| 18:8 19:25 | 19:2 20:10,12 | 188:8 | 145:11 159:12 |
| 20:5 72:24 | 20:13 21:17 | **correcting** | 159:21 163:11 |
| 73:8,9,15,16 | 24:2,5 26:1 | 49:13 | 163:14 168:6 |
| 98:14 166:10 | 34:1,3 35:18 | **corrections** | **court** 1:1 6:9 |
| 166:10 | 35:21,25 36:7 | 188:6 | 6:15 8:17 |
| **controls** 98:25 | 36:16,19 39:25 | **corrective** 93:1 | 11:10,10 57:9 |
| **conversation** | 43:24 47:24 | 154:20 | 57:13,16,23 |
| 28:12 46:7 | 48:17,20,25 | | 58:12,21 59:12 |

Mark Kendall                                          July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[court - deciding]**                                    Page 12

| | | | |
|---|---|---|---|
| 59:18,19 | 39:8 42:18,22 | **date** 16:10 49:1 | **de** 38:19 |
| 181:13,13 | 44:11,13 45:12 | 53:11 70:10 | **deal** 176:9 |
| 182:18,23 | 45:14 48:10,15 | 100:13 129:7 | **dealt** 129:18 |
| 183:2 184:4,6 | 53:2 69:7 | 132:20 140:3 | **debit** 160:10 |
| 184:8 185:15 | 77:19,22 80:17 | 156:22 163:1 | 161:2 |
| **cover** 184:13 | 80:23,25 81:5 | 182:14 187:24 | **decastro** 3:23 |
| **create** 98:5,23 | 81:6,14 83:1,7 | 188:12 | **december** 3:7 |
| 152:4 | 85:23 86:1,4,6 | **dated** 38:21 | 44:2,18 45:8 |
| **critical** 100:17 | 87:14,19,21 | 54:7 60:17 | 48:18 49:10,15 |
| 103:21 121:15 | 91:12 92:4,12 | 61:23 84:8 | 50:1,13 52:17 |
| **crown** 5:4 | 96:17,18 101:9 | 90:22 95:18 | 52:22 53:12 |
| **crux** 101:1 | 101:16,23 | 97:18 139:2 | 61:15 62:20 |
| **cs** 186:15 | 102:7,9,12,20 | 150:24 151:23 | 70:7 75:20 |
| **csi** 149:3 | 102:24,25 | 153:25 156:8 | 76:20 77:13 |
| **culture** 75:10 | 103:3,9,12,15 | **dates** 18:5,17 | 89:9 90:23 |
| **cured** 29:6 | 103:18,21,24 | 61:18 90:19 | 91:7 92:6 |
| **current** 7:21 | 106:6 111:25 | 111:1 | 97:18 110:21 |
| 32:11 98:22 | 112:11,18 | **david** 23:21 | 110:22,23 |
| 178:25 179:5 | 114:3 127:2 | 78:16,25 79:2 | 115:25 116:1 |
| 179:11 | 129:12,15,18 | 79:3 82:14,17 | 124:9 128:15 |
| **currently** 14:2 | 132:3 138:24 | 84:10 99:18 | 128:17,18 |
| **curve** 30:15 | 139:20,22 | 103:2 117:9 | 138:11 139:3 |
| **customary** | 146:12 149:20 | 165:6,6,24 | 141:9 143:16 |
| 184:14 | 149:23 151:8 | 166:1 167:17 | 143:21 146:13 |
| **cv** 1:7 6:11 | 152:19,20 | 180:19 | 174:24 180:8 |
| | 154:11 155:7 | **davis** 2:5 23:19 | **decide** 164:24 |
| **d** | 158:13,21,24 | 27:7,10,13 | 173:23 |
| | 159:3,6,17,22 | **day** 89:24 90:8 | **decided** 24:17 |
| **d** 2:1 43:16 | 159:23 161:21 | 132:24 133:4 | 24:21,25 25:18 |
| **daily** 134:22,25 | 163:3 166:14 | 134:23,25 | 26:13 28:3,7 |
| **darien** 170:2,9 | 167:2,7,24 | 135:4,10 174:5 | 29:3 33:24 |
| 170:12,18 | 168:2,14 | 177:1 185:20 | 34:9,14 35:10 |
| 171:19 172:1,3 | 171:18 179:12 | 188:15 | 100:11 102:1 |
| 172:7 177:3,5 | 179:15 181:7 | **days** 58:20,24 | **deciding** 27:23 |
| **dashes** 59:24 | 181:22 | 186:16 | |
| **data** 16:9,21,22 | | | |
| 17:4 22:22 | | | |

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[decision - directed]**                                                Page 13

**decision** 24:4,4
24:13,14 25:20
25:21 26:1,5
26:16,16,18
29:3,13 34:5
34:16,19 41:17
71:16 129:1
164:24 167:24
174:22
**deck** 149:23
150:1,6,9
**declaration** 4:5
76:4,13 141:2
**declare** 173:2
188:4
**decline** 173:1
**deemed** 188:6
**defendant** 1:10
5:7 7:1,18 15:4
33:9 37:19
41:7 43:14
54:1 84:2
108:19 112:8
114:15 137:20
147:21 148:12
150:21 151:19
153:23 156:5
157:5 158:4
160:6 161:12
169:10 176:19
**defendants**
33:8 38:17
95:15 97:14
118:22 120:22
122:25 123:23

124:20 125:11
125:25 126:15
138:3,17 141:1
143:10 147:21
**defense** 73:22
**defer** 110:24
143:1
**deficiencies**
166:10
**delegated**
104:15
**denied** 185:12
**deny** 93:11,19
93:21 94:3
**denying** 50:19
**department**
24:11 134:9
165:11
**departments**
103:10 106:4
161:21 164:13
**departure** 16:7
180:14
**dependencies**
100:17
**dependency**
101:4 103:22
**dependent**
101:8
**deponent** 184:2
186:13 188:3
**deposing**
186:13
**deposition** 1:14
6:5,12 8:11

10:9,15 23:7
23:14,17 30:23
88:6 90:21
137:15 141:4,6
143:13 145:12
178:21 181:14
182:22 183:10
183:11 184:9,9
184:13 185:5
**depositions**
11:11 29:23
**describe**
133:11
**described** 22:9
85:9
**description**
129:8 136:12
**designated**
100:6
**desktop** 10:3,4
**detail** 47:21
127:6,15
149:10
**details** 3:8,9,10
3:11,12,13,14
3:15,16,17
97:4 112:11
149:1,13,22
151:9 162:6
163:5,15
175:13,18
**detect** 159:8
**detected** 114:5
158:18 159:7

**determination**
25:24
**develop** 82:3,4
**different** 16:2
43:9 48:5
52:11,15 73:12
96:13,15,18
101:2 106:4,7
106:18 110:5
116:3 117:16
117:17 118:15
122:4 130:16
134:25 149:15
151:5,6 152:7
152:8,9,17
154:10,10
155:7 161:19
161:20,21
163:20,23
164:13 165:11
167:1,3 170:24
175:10,11
177:11
**differently**
53:11
**digital** 42:19
51:3 62:20
111:25,25
127:2
**diligence**
166:22
**direct** 57:18
58:17 113:11
**directed** 115:11

Mark Kendall                                      July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[direction - downloading]**                              Page 14

| | | | |
|---|---|---|---|
| **direction**  11:7 | **dispute**  159:21 | 125:25 132:21 | 176:18 |
| 185:8 | **dissolution** | 137:22 138:1 | **doing**  9:8 19:12 |
| **directives** | 16:18 | 138:16,21,25 | 70:15,20 72:14 |
| 69:14 | **dissolved**  21:13 | 139:1 140:24 | 80:17,18 87:17 |
| **directly**  21:22 | **distracting** | 140:25 156:4 | 96:11 101:12 |
| **directs**  115:10 | 60:15 | 160:6,7 161:23 | 101:14 103:4 |
| **disassembly** | **district**  1:1,1 | **documentation** | 111:20 133:24 |
| 185:12,13 | 6:9,9 | 17:11 18:5 | 136:21 152:6 |
| **discharge** | **division**  1:2 | 34:18 35:2 | 153:14,17 |
| 67:10 172:5 | 6:10 | 36:9 76:21 | 155:7 156:23 |
| **disclose**  75:17 | **divulge**  29:10 | 93:22 141:14 | 156:25 168:15 |
| **disclosure** | **dlp**  42:22 62:20 | 141:15,16 | 171:11 172:2 |
| 28:14 184:1,5 | 111:25 139:10 | **documenting** | 174:7,10 176:2 |
| **discount** | **document**  30:4 | 39:5 | **domain**  158:22 |
| 184:14 | 30:7,10 31:5 | **documents** | **doors**  165:7 |
| **discovery** | 31:12,14 32:1 | 11:15 13:3,6 | **doubt**  140:2,6 |
| 79:16 181:14 | 32:4 33:9 | 13:11 15:18 | 158:9 |
| **discuss**  10:15 | 35:14 37:18 | 26:11 33:18 | **doug**  22:17 |
| 47:8,18 93:3 | 38:16,18 40:4 | 35:17,19 36:5 | **download**  53:2 |
| 131:15,19 | 40:15 41:10,13 | 36:14,17 39:10 | 112:23 113:5 |
| 146:16 148:19 | 43:14 44:22 | 41:7 42:16 | 113:13 |
| 183:3 | 45:6,7,7 50:18 | 44:25 45:18 | **downloaded** |
| **discussed**  17:1 | 50:22 53:21,23 | 47:3 51:12 | 42:16 44:3 |
| 29:13 47:25 | 54:1 56:15 | 76:10,23,25 | 53:3,14 60:8 |
| 146:20 | 63:21 75:13 | 84:2 87:2 | 61:8,25 62:18 |
| **discussing** | 83:25 84:1 | 112:23 114:12 | 69:7 91:13 |
| 78:12 | 86:17 87:2 | 115:12 116:1 | 92:7 112:18 |
| **discussion**  37:4 | 90:16,18 91:1 | 118:22 126:21 | 113:15,20,23 |
| 67:4 68:14,17 | 95:14 97:13 | 127:4,10,15 | 121:19 131:12 |
| 84:9 86:5 | 100:3 105:9,18 | 137:19 138:2 | 139:17 140:20 |
| 88:20,23 89:2 | 108:10 109:8 | 143:9 147:20 | 141:22 |
| 95:22 115:13 | 111:11,19,24 | 148:11 150:20 | **downloading** |
| 143:19,20,23 | 112:8 119:4,5 | 151:18 157:4 | 55:18,25 61:4 |
| **discussions** | 122:23 124:4,6 | 158:3 161:11 | 63:25 113:10 |
| 96:4,8,19 | 124:8,19 | 161:12 169:9 | 131:16 |

Mark Kendall
July 12, 2024

Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[dozens - embedded]**                                     Page 15

| | | | |
|---|---|---|---|
| **dozens** 154:19 | 3:3,5,18,20,22 | 118:1,12 119:2 | 25:14 26:9,24 |
| 154:19 | 3:24 4:6,8,11 | 119:8,25 120:1 | 35:24 39:9,14 |
| **draconian** | 5:5,10 8:8 | 120:5 122:22 | 39:19,23,24 |
| 167:12 | 24:10 25:6,12 | 128:3,8,13,24 | 42:16,20,20,23 |
| **draft** 3:7 78:18 | 25:15 26:25 | 129:7,15,17 | 47:8,18 48:1,3 |
| 92:25 | 35:17,20,25 | 130:19 135:19 | 48:5,16,24 |
| **drafted** 74:8 | 36:6,16 38:19 | 135:23,24 | 49:2,3,16,21,22 |
| **drafting** 74:7 | 39:11,15,20,23 | 136:1,7 137:1 | 50:3,6 51:6 |
| 76:7 78:12 | 41:23 42:17,18 | 138:18 139:18 | 52:19 53:3,9,9 |
| 79:15 155:12 | 43:10,15,25 | 139:25 140:3,4 | 53:14 55:18,25 |
| **drew** 35:2 | 44:3,10,12 | 140:18 141:21 | 56:2 60:13 |
| **dss** 103:15,18 | 45:11,19 46:7 | 141:25 142:12 | 61:4,9,25 |
| **due** 166:22 | 46:17 47:6,15 | 143:11,16 | 62:18 63:25 |
| **duly** 7:7 | 48:7,12,23,24 | 146:10,11,25 | 64:14 65:1 |
| **e** | 49:17 50:3,8 | 147:23 148:14 | 68:9 69:7,13 |
| **e** 2:1 4:19 8:1,1 | 50:10,14,15,16 | 150:23 151:2 | 71:1 91:13,20 |
| 185:1,1 187:3 | 51:18,21 52:1 | 151:20 152:1 | 92:7,9 112:19 |
| 187:3,3 | 52:2,20 53:9 | 153:16,22,24 | 114:4,5 118:2 |
| **earlier** 111:14 | 53:14,19 54:2 | 154:3 156:6,9 | 119:3 120:3 |
| 165:5 168:25 | 55:1,19,25 | 156:10 157:7 | 121:16,19 |
| **easy** 152:13,14 | 56:2,16 60:9 | 158:5 161:14 | 127:14,25 |
| **effect** 174:11 | 60:10,11,12,17 | 161:15,16 | 128:2,20 129:6 |
| **effort** 153:18 | 60:19,21 61:22 | 162:8,19 163:8 | 131:12,16 |
| **eight** 167:9 | 62:16 82:14,17 | 163:24 169:13 | 136:3,15 |
| **either** 64:9 | 84:3,4,5,7,9,14 | 169:19,24 | 137:22 138:5,6 |
| 65:20,21 76:9 | 85:1,7,11,17 | 170:4,7,11,17 | 138:22 139:2 |
| 89:8 90:9 98:4 | 88:11,13 89:3 | 171:1 172:11 | 139:17,23 |
| 110:21 131:24 | 91:15 94:6 | 172:12,15 | 140:9,11,20 |
| 131:25 132:4,7 | 95:16 108:11 | 173:12,13 | 141:23 142:21 |
| 132:10 139:18 | 112:13 113:4 | 176:20,24 | 142:24 145:19 |
| 141:24 145:13 | 113:11 114:11 | **emailed** 112:11 | 145:20 146:4 |
| 152:18 175:4 | 114:17,24 | 116:7,16 | 175:11,22 |
| **email** 2:5,6,8 | 115:2,19 | **emailing** 30:14 | 178:3 |
| 2:10,12,14,16 | 116:17 117:10 | **emails** 13:7,11 | **embedded** |
| 2:18,20,22,24 | 117:17,24 | 24:10 25:6,11 | 48:13 |

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[employed - exhibit]**                                                    Page 16

**employed** 14:2
  14:4 15:4
  17:10 18:12
  19:1 26:14
  126:22 127:7
  171:5
**employee** 114:3
  115:21 144:2
  185:18
**employees** 23:1
  135:22 144:16
**employer** 15:14
**employment**
  15:7,20 17:9
  20:4,15 22:10
  24:1,5 33:24
  90:22
**ended** 15:7,21
  16:4 18:22
  104:6
**enter** 136:17,19
  136:21
**entire** 154:21
  164:22
**entirety** 30:10
**entitled** 33:9
**entries** 109:21
**environment**
  101:4 152:21
  159:9
**eric** 1:5 4:5 6:6
  7:12 20:19
  21:19 22:6
  25:5 26:8,9,11
  34:12,16 35:10

38:21 39:4,9
48:16 49:20
54:3 64:13,16
64:23 65:1
67:1 70:5
78:14,17 79:15
84:7 89:15,18
94:19 104:15
104:17,21,22
116:7,11,12,16
117:2 118:2
119:3 121:15
128:3,20
130:14,21,22
140:17 141:3
141:13 142:3
143:17 144:12
148:23 152:4
153:7 154:1
155:10,18,18
157:13 161:14
162:11 163:25
170:2,9,12
171:16,23
172:3,4,8
173:23 174:1,5
175:23,25
177:3 186:4
187:1 188:1
**eric's** 21:13
  24:8 72:16
  97:5 173:25
  180:7
**erik** 43:16

**errata** 186:11
  186:13,16
**eslawin116**
  121:17
**esq** 186:1
**esquire** 5:3,3,8
  5:16 184:8
**et** 6:8 186:4
  187:1 188:1
**event** 26:12,13
  26:15 174:2,3
**everybody** 17:2
  17:2 75:1
**everybody's**
  57:11
**evidence** 94:4
  185:10
**evolved** 79:12
**ex** 99:20
**exact** 18:5,17
  48:14 67:22
  70:9 115:20
  117:5 174:1
**exactly** 48:9
  66:21 76:23
  92:5 116:8
  117:4 142:23
  168:5
**examination**
  4:20 7:9 57:18
**examined** 7:7
**example** 52:8
  130:15 132:12
  154:22 158:20
  165:4 167:6

169:3,3
**excellence** 19:6
**excellent**
  176:14
**exceptional**
  183:1
**exchange** 130:7
  130:13 132:13
**excuse** 6:18
  25:17 37:20,21
  57:9 84:1
  108:21 126:2
  147:21 178:22
  179:11
**executing** 99:3
**executive** 99:23
  103:7
**exercise** 11:3
  84:22
**exhibit** 2:3,4,5
  2:6,8,10,12,14
  2:16,18,20,22
  2:24 3:3,5,7,8,9
  3:10,11,12,13
  3:14,15,16,17
  3:18,20,22,24
  4:3,5,6,8,10,11
  4:12,14,16
  29:19,24 37:1
  37:6,8 38:16
  41:6 43:13
  45:16 53:17,18
  53:20 54:1
  60:9 61:23
  62:3,5,8,16,23

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[exhibit - finish]**                                                   Page 17

63:6,7,14
74:23 83:12
84:2,14 86:8
87:1 88:10
90:13,18 94:11
95:11,12 97:6
97:13 100:3
104:3 105:20
106:21 107:10
107:22 108:18
112:7 115:16
116:2,19
117:15 118:21
120:21 122:25
123:22 124:19
125:10,16,25
126:14 127:22
128:7,11,12
137:17,19
138:2 139:25
140:21,25
141:21 143:9
146:2 147:20
148:11 150:20
151:18 153:23
156:4 157:1,4
158:3 160:5
161:11 170:16
176:14,15,18
178:2,3
**exhibits**   2:2 3:2
4:2 10:11,16
29:21 37:2
182:22

**existed**   45:1
131:3
**existing**   155:9
**exists**   44:24
**expand**   122:2
**expect**   117:21
166:17 181:15
**expected**   16:3,6
82:2 136:25
**expecting**   53:6
**experience**
175:16
**experiencing**
133:23
**expert**   73:20
74:1,4
**experts**   152:9
**explain**   57:6,20
58:3,15,16
**explaining**
47:10 48:2
**expressly**
185:11
**extent**   103:20
159:23 182:24

**f**

**f**   185:1
**facility**   152:18
**fact**   47:8,18,25
58:8 79:13
81:21 86:1
89:21 95:6
96:5 110:23
122:16 142:7
146:22

**failed**   68:8
**fails**   186:18
**fair**   11:6 28:18
28:21 30:12
38:14 39:2
89:7 98:18
109:9 111:10
111:17 121:25
144:22 145:25
147:3
**fairly**   60:14
72:15 175:13
**faith**   172:4,8
**fall**   21:1,2,24
73:1
**familiar**   20:18
43:7 53:23
62:14 83:16
111:6 112:4
116:24,24
121:6 123:2,4
123:24 124:1
124:21,24
125:7,12,21
126:2,12,16
127:12 138:8
147:25 160:3
**far**   26:12
113:11 155:13
**fargo**   14:5,7,11
14:16,21,25
15:15,17
**feature**   132:3,5
132:8 134:7,18

**features**   133:14
134:2
**federal**   11:1
**fiddled**   14:18
**field**   75:2
**fighting**   170:5
177:4,19,20
**figure**   143:1
145:14 152:23
162:4 166:22
170:24
**figures**   159:2
**figuring**   177:6
**file**   1:7 91:24
139:9
**filed**   6:8
**finally**   54:10
**financial**
184:14
**financially**
185:19
**find**   120:11
132:24 133:4
135:12 146:10
**finding**   106:10
**finds**   145:11
**fine**   10:25
31:17 32:23,24
33:4 38:11
59:10 86:19
105:5 108:17
110:9 117:12
130:3
**finish**   79:6

Case 1:19-cv-04129-AT    Document 196-1    Filed 09/18/25    Page 206 of 239

Mark Kendall                                                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

[finished - fortunately]                                                     Page 18

finished   18:23
  40:5 41:1,5
  105:18 107:7
  107:20 120:20
  123:16,18
  126:11 147:19
  151:17
finite   16:10,13
fire   24:13,17,21
  24:25 25:19
  26:16,18 27:23
  28:3,7 29:3,13
  34:14,16,25
  35:8,10 67:10
  129:2
fireable   36:25
fired   25:4
  26:21 27:2,4
  27:14,17,20
  35:16 39:20,22
  42:3 60:24
  61:3 77:3 90:4
  90:9 91:14,16
  96:23 97:24
  104:2 131:20
  143:24 144:3
  144:20,23,24
  173:18 176:11
firm   6:16 9:6
  15:24 16:1,3
  34:18 41:22
  73:7 75:4,7,8
  77:10,11 89:17
  89:18 97:4
  135:1 137:2

173:17,24
  176:4
first   7:7 16:9
  16:21,22 17:4
  22:22 31:8
  33:11 39:8
  40:21 42:18,22
  44:11,13 45:11
  45:14 48:10,15
  49:20 53:2
  60:1,13 62:11
  62:17 69:7
  73:7,22 77:19
  77:21 78:14
  80:17 82:19,19
  88:15 91:12
  92:4,12 101:9
  104:20 107:12
  108:25 111:25
  112:11,18
  114:2 127:1
  128:11 138:23
  139:20,22
  143:15 146:12
  147:22 148:13
  148:21 150:23
  152:20 153:6
  161:13 167:23
  168:2 169:12
  169:15,19
  179:12,14
  181:7,22
fiserv   12:21
  14:22 22:20,22
  23:6 179:12,15

179:25 181:1,8
five   14:14
  94:18 130:5
  132:15,17,19
  144:15,16
  178:13,21
  182:2,5
fix   74:15,17
  75:14 80:24
  152:14 155:2
  164:11 165:12
  165:13,18
fixed   166:21
flagged   62:19
  158:22
flagging   119:9
flip   77:20
floor   5:9 46:2
focus   105:4
focused   31:4
  49:13
follow   52:9
followed   26:3
  26:10 34:11
  69:13
following   46:21
  89:24 184:5
follows   7:8
foregoing
  185:5,8,13
  188:5
form   24:6,22
  25:2 26:6 34:6
  34:15,22,24
  36:1,8,20

41:14 42:7
  49:6,19 50:21
  50:25 51:22
  52:4 55:6,14
  69:10 78:23
  79:21 80:3,13
  81:2,17,23
  82:7 83:2,9
  84:20,24 85:6
  85:21 87:13
  89:4 91:2,15
  91:18 93:12,20
  95:4 99:10
  101:19 104:5,9
  104:12 119:1,9
  119:17 120:1
  121:23 154:8
  167:21 179:24
  181:4
formal   21:20
formally   21:20
format   105:23
  112:13,22
  117:4,6 119:4
  119:5,18 127:7
  128:10 129:5
formatting
  160:21
formulate
  96:14 151:10
forth   11:9 44:3
  161:25
fortunately
  145:5

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[forward - glynn]**                                    Page 19

forward   4:12
113:7 123:4
152:10
forwarded   2:24
3:3 82:18,21
84:4 85:2,3
119:24 121:15
145:20,21
found   50:7
51:2 52:13
foundation
41:15 51:1
79:22 80:14
81:3,18,24
83:10
four   19:9 94:18
100:20,20
118:3 127:19
130:5 132:14
132:16,19
137:14
framework
101:6
frankly   95:23
175:7
fraud   159:19
free   57:18
fresh   107:18
friday   95:23
friendly   136:10
fro   2:18
front   11:16
58:19,25 59:4
88:18 128:7
146:16 147:5

151:20 158:5
full   96:21 106:9
106:11 120:13
158:21 159:1
159:22
fulton   184:3
185:3
function   19:4
19:24 20:14
155:6 156:18
functionally
22:5
functions   155:7
further   11:11
33:15 68:5
181:11,14,19
181:23 185:17

**g**

galanek   5:8
6:24,24 9:4
10:19,22 11:8
11:13,20,22,25
12:12,15 13:20
13:24 24:6,22
25:2 26:6 28:8
28:17,19 29:5
30:3,8 31:16
31:19,21,25
32:15,19,22
34:6,15,22,24
36:1,8,20
37:20,23 38:7
38:12 40:11,19
41:14 42:6
44:21,23 49:6

49:19 50:21,25
51:22 52:4
55:6,14 57:4
57:14,15,24,25
58:6,9,18,24
59:6,10,12
60:4,5 62:4
69:10 78:23
79:21 80:3,13
81:2,17,23
82:7 83:2,9
84:20,24 85:6
85:21 87:13
89:4 91:2,18
93:12,20 95:4
99:10 101:19
104:5,9,12
106:23 107:1,9
107:11,14
109:15,17,23
110:4 114:18
115:3,8 121:23
122:10,15
145:2,4,18
146:5,14,19,22
146:24 147:4,9
167:21 173:10
178:10,12,15
179:24 181:4
181:16,20,25
182:4,12,19,24
183:5 186:1
galarza   3:20
43:15 44:1
138:5

gaps   98:22
101:20 166:10
gather   78:17
gathering
106:3
general   73:20
generally   135:5
135:6 154:18
164:12 165:14
165:14
generated
135:9
gentlemen
57:10 59:20,20
59:20
georgia   1:1 5:5
5:10 6:10
184:2,5,6
185:2
getting   95:23
138:23 149:17
151:9 175:9
give   9:19,22
47:20 66:25
86:16 102:15
104:25 118:18
given   8:10 24:9
33:22 118:18
133:21 184:14
185:10 188:9
gives   28:14
glynn   100:6
104:21 153:7
154:23,24
165:5,6

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[gmail.com - healthcare]**                                         Page 20

| | | | |
|---|---|---|---|
| **gmail.com** 8:8 | **going** 6:3 8:13 | 88:17 134:13 | **handled** 24:15 |
| **gmail.com.** | 8:21 11:2,3 | 143:5 146:8 | 76:5,8 85:9,23 |
| 121:17 | 18:4 28:8,9,17 | 148:19 165:15 | 86:1,4 87:15 |
| **go** 9:11 15:13 | 29:18,19 30:8 | **governance** | **handling** 80:23 |
| 17:8 30:17 | 30:19 31:21 | 75:5 | 80:25 81:14 |
| 31:12,17 38:1 | 33:13 37:5 | **great** 84:1 | 85:12 87:19,21 |
| 40:23 52:16 | 39:2 59:18 | 156:12 182:17 | 102:9,11,20,24 |
| 59:8 63:3,23 | 60:11 63:17 | 182:24 | 103:3,9,12,15 |
| 83:15 84:18 | 66:18 73:11 | **ground** 58:11 | 103:21 167:4 |
| 86:8,23 88:10 | 77:15 79:10 | **group** 17:21 | **hands** 75:24 |
| 88:15 89:19 | 86:14 87:6 | 19:7 45:14 | 174:7 |
| 94:17 99:2 | 88:1 92:8 94:7 | 51:4 101:8 | **hang** 37:2 |
| 104:19 105:3 | 109:10 110:6 | 162:2,2,3 | 120:24 |
| 107:5,8 110:19 | 110:19 111:8 | 163:10 164:4 | **happen** 58:17 |
| 113:5 114:5,5 | 112:17,22 | 164:23 166:2,3 | 131:23 |
| 114:12 115:10 | 113:3 116:10 | 166:5 169:3 | **happened** |
| 115:11 116:19 | 116:11 117:14 | **groups** 73:6 | 50:19 66:9 |
| 117:13,19,21 | 118:6 121:13 | 155:5,6 164:25 | 67:20 71:23 |
| 120:12 121:9 | 123:4 128:6 | 169:1,6 | 75:22 77:25 |
| 121:25 122:19 | 137:11 141:15 | **guess** 93:22 | 157:22 |
| 127:23 129:24 | 156:13 157:21 | 109:12 | **happening** |
| 129:25 133:17 | 158:1 162:1,4 | **guidance** 26:3 | 154:7 |
| 133:19 134:6 | 163:2,17,19,19 | 26:10 34:11 | **happens** |
| 140:23 141:20 | 164:7,17 167:3 | **guy** 175:19 | 104:25 |
| 143:7 152:10 | 167:17,25,25 | **guys** 115:3 | **happy** 9:10 |
| 163:20 165:6 | 168:3,5 170:3 | **h** | **hard** 40:15 |
| 165:10 167:3 | 170:10 171:10 | | 160:21 |
| 168:21,24 | 172:24,24 | **h** 1:8 187:3 | **harder** 165:9 |
| 170:15 171:14 | 173:1,1,2 | **hague** 22:17 | **head** 8:16 |
| 173:22 175:25 | 177:4,15,19 | **half** 17:24 | **header** 116:4,9 |
| 182:1 183:2,7 | 178:17 182:10 | **halfway** 150:22 | 118:3 |
| **goal** 75:1 | 182:13,20 | **hand** 64:18 | **headers** 127:8 |
| **goes** 109:13 | 183:8 | 75:5 98:3,15 | 127:19 |
| 117:7 143:19 | **good** 6:2 7:10 | 109:6,11 111:3 | **healthcare** |
| | 75:4,15 88:9 | **handle** 80:15 | 46:25 47:13 |
| | | 86:6 | |

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[healthcare - information]**                                    Page 21

52:8 66:13
**hear** 11:19
68:24 110:8
**heard** 7:11 60:2
81:9,10
**heart** 115:12
**hello** 57:13
**help** 74:4,14
110:3 171:22
171:23 172:1
**helpful** 40:20
116:18
**helping** 39:5
74:18,21
**hereto** 188:7
**hey** 59:12,12
115:3 130:18
139:1 178:10
**hi** 128:19
143:17 156:17
**hierarchy**
114:3
**high** 38:20
39:10
**highly** 33:17
**hire** 61:1
**hired** 17:18
22:13
**history** 17:9
**hit** 136:17,19
136:21
**hmm** 54:4
88:22 97:20
99:19 100:18
164:1

**hold** 42:6
177:10
**hole** 100:21
**holes** 100:20
**home** 10:1
33:18
**hopefully** 28:22
120:10
**hopson** 1:23
6:16 184:18
185:23
**hosted** 112:18
**hour** 86:15
**hours** 13:2
**hr** 21:20 22:6
24:10 25:5
26:2,9,10,10
35:2,4,5 45:22
45:22,24 51:9
52:16 69:13
71:6,14 72:4
75:24 76:2,5,8
76:22,25 77:4
77:24 91:3
143:1 173:21
174:6
**human** 24:15
33:20 34:10
70:13,18,23
71:9
**hundred**
136:19,20
**hurricane**
66:13

**i**

**idea** 174:15
**identified**
36:15 74:7,8
74:24 75:3,12
75:15,18,19
78:4,13,15,18
79:16 90:21
92:24 93:1
97:11,15
101:18 141:4
164:20
**identify** 82:3
92:25
**identifying**
73:18 74:6
99:2
**ignored** 142:9
**im'd** 135:11
**immediately**
19:10
**implement**
98:23,24
**important**
128:22
**impossible**
59:23
**ims** 135:5 136:4
136:5,9,14
181:15
**inappropriate**
36:24
**incident** 3:8,9
3:10,11,12,13
3:14,15,16,17

112:10 116:3
117:16 127:15
145:9,23
173:19
**include** 103:3
**including** 39:24
158:6 161:14
**independent**
73:23,24 74:2
184:7
**index** 3:1 4:1
**indicated** 50:9
50:14 140:3
158:10
**indicating**
56:15 60:18
**individual**
42:23 45:25
73:8 112:20
159:11,11
167:2
**individually**
7:2
**individuals**
74:13 103:21
150:24 158:6
161:14 170:20
**industry** 25:10
41:24
**info** 45:14 48:9
**informal** 135:6
**information**
4:14 36:23
38:20 39:8
41:9,23 46:17

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[information - joint]**                                                      Page 22

47:1 51:18,20
52:8,14 67:2
69:15,16 78:18
80:15 85:8,13
106:2,10
112:15 118:3
149:4 150:16
159:14 160:25
173:11
**informed**
158:25
**infosec**  3:18
48:8 92:12
149:6
**infrastructure**
152:19
**instance**  16:25
**instant**  130:10
135:18 142:1
142:18
**instruct**  28:9
28:19
**interact**  14:22
14:25
**interaction**
59:15
**interchange**
168:25 178:4
**interested**
100:21 164:15
185:19
**interim**  21:9,14
54:14
**interpretation**
85:8

**interpreting**
99:6
**interrogatories**
33:11
**interrogatory**
31:23 32:6
**interrupt**  60:5
79:6
**interview**  60:25
61:1,3 63:24
69:17,23 70:2
70:4,12,17,22
71:9,12 72:1,5
75:20 89:8
90:3 91:7
110:21 140:15
142:7 174:17
174:17,19
**interviewed**
22:13,15,16,18
22:21,23,25
23:1 61:8
96:15
**interviewing**
33:16
**intimate**  127:5
**investigating**
160:24
**investigation**
46:21 53:12,15
68:23 69:2,3,8
80:20 92:8,14
92:15,17
**invite**  2:3,4
156:10 157:8

157:11
**involved**  24:4
27:23 39:4
131:11 144:2
176:21
**involvement**
76:6
**involves**  28:14
**iron**  58:13
**irrespective**
36:12,23
**issue**  36:6 39:4
39:7,16,25
58:20 68:6,12
68:18 74:24
75:12 78:4,13
78:19 79:16
82:6 92:20
93:1 94:7 96:2
96:5,25 97:11
97:15,16 99:23
100:6,9 101:1
102:18,22
103:6 104:7
122:17 132:3,6
146:16 149:1
149:14,15,15
149:19 152:4
154:17,25
155:12 162:7
163:3 164:2,7
164:20,20
166:6,6,9,11,14
166:20 171:9
177:4 181:15

**issues**  30:16
73:18 74:7,8,9
74:14 75:3,15
99:2 105:1
152:23 153:12
154:14,15,19
155:4 161:23
161:24 162:5
164:10 165:2
165:15 166:20
170:25
**it'll**  117:20

**j**

**j**  1:23 184:18
185:23
**jar**  64:19
**jb**  180:3
**jean**  5:3
**jeannie**  6:21
**jessica**  170:19
171:2
**jill**  5:16 7:4
12:18,18,19
**job**  14:15,20
17:18 18:7
19:3,4,24,24
20:14,14 22:18
46:3 165:1
171:24 173:25
173:25 179:5
179:11
**john**  109:12,12
**joining**  19:10
**joint**  16:11
17:4

Mark Kendall
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

July 12, 2024

**[joseph - learning]**                                                    Page 23

| | | | |
|---|---|---|---|
| **joseph** 158:6 | 88:7,10 90:15 | 40:5 42:12 | 145:4,12,18,18 |
| **judge** 58:14 | 106:23 108:5 | 43:3 46:3,25 | 148:1,2,5 |
| 59:8 | 110:15 115:5 | 49:1,13 51:16 | 150:5,10 |
| **judicial** 184:5 | 118:7 119:20 | 51:23,24 53:21 | 151:10 156:19 |
| **july** 1:16 6:3 | 123:20 124:12 | 55:5 56:8,19 | 157:19 160:17 |
| 12:5,6 84:8 | 130:6 137:15 | 58:10,10 60:1 | 160:20 161:3 |
| 85:16 88:11 | 146:25 162:14 | 61:13 62:10,24 | 163:4,5,10 |
| 95:18 104:22 | 178:21,24 | 63:7 64:17,20 | 170:17 173:8 |
| 153:8 156:8 | 184:2 186:5 | 64:24,24 65:14 | 173:14 177:21 |
| 163:10 184:19 | 187:2,24 188:2 | 65:15 66:20,23 | 180:4 182:5 |
| 185:20 | 188:4,12 | 77:8,17,25 | **knowing** 154:6 |
| **june** 54:7 56:9 | **kendall's** 44:25 | 79:23,24 80:4 | 167:12 |
| 60:17,22 61:23 | **kicking** 99:6 | 80:5,7,16 81:4 | **knowledge** |
| 62:16 79:4 | **kids** 64:17 | 81:19,20 82:25 | 17:5 27:4 |
| 152:5 | **kind** 17:1 50:2 | 83:11,15,19 | 133:9 134:1,5 |
| **jury** 58:19 59:1 | 53:6 71:10 | 87:7 88:16 | 135:21 136:24 |
| 59:4 | 96:19 99:1 | 90:9,14 92:1,2 | 179:20 180:2 |
| **jv** 181:8 | 103:5 117:16 | 94:23 95:2,11 | **known** 51:5 |
| **k** | 134:9 159:20 | 96:9 97:2,7,23 | 135:14 180:3 |
| | **knew** 17:2 27:8 | 98:1,2 104:4 | **knows** 174:15 |
| **keep** 63:19 79:8 | **knock** 165:6 | 105:3,12 | **l** |
| 105:4 108:11 | **know** 8:16 9:10 | 106:24,25 | |
| 116:10,11 | 11:24 12:8,22 | 108:7 110:7,15 | **l** 8:1 24:24 |
| 118:9 128:6 | 13:19 14:19 | 114:15,16 | **lands** 96:10 |
| 155:13 158:1 | 15:17,20 18:16 | 117:18 118:7 | **laptop** 10:3 |
| 172:24 177:15 | 18:21 20:19 | 121:6 123:7 | **large** 154:19 |
| **keeps** 49:12 | 21:3,20 22:5 | 124:13 125:4 | **law** 9:6 57:23 |
| 146:11 | 22:15,20,24 | 130:21,21 | **lawyer** 41:18 |
| **kendall** 1:14 | 24:17,20,24 | 131:3,14,18,24 | **lawyers** 5:5 |
| 2:7,9,11,12,14 | 25:1,3,9,18,20 | 131:25 132:4,7 | **lay** 168:3 |
| 2:17,19,20,22 | 25:23 26:12 | 132:10 133:6 | **leaders** 151:6 |
| 3:25 4:6,9,11 | 27:7 29:25 | 133:10 134:1,3 | **leading** 153:18 |
| 6:5 7:2,6,11 | 31:1,4,5,6,11 | 134:8,11 | **learned** 152:5 |
| 30:23,25 31:12 | 33:5 35:9 | 136:19 137:4 | 160:14 |
| 32:25 33:20 | 37:10,10,12,15 | 140:8 142:23 | **learning** 154:9 |
| 43:17 60:7 | | | 161:19 165:25 |

Mark Kendall
July 12, 2024

Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[leave - maker]**                                                                Page 24

**leave**  158:17
**led**  177:5
**left**  15:12,24
16:1 73:2 97:3
98:21 109:11
158:17 159:8
**legal**  13:14,16
68:18 184:7,7
184:9,11,13
185:15 186:23
**legwork**  152:6
**leighton**  5:8
6:25
**length**  68:1
**letter**  4:3 76:7
76:19 90:22
143:18 181:22
**level**  149:9
168:17
**lieu**  153:14
**likely**  98:4
100:7 140:16
140:16 180:7
**limited**  175:15
**limiting**  49:25
**line**  63:4,8 64:9
73:23,24 74:2
120:2 160:15
176:22 187:4,7
187:10,13,16
187:19
**lines**  63:1 71:5
73:22 94:19
130:5 132:15

**list**  44:14 49:22
50:7 61:23,25
62:18
**listed**  62:23
98:21 129:6
**listing**  43:9
44:13 45:18
62:6 108:19
109:3 118:2
128:2
**litigation**  45:3
184:15
**little**  27:8 30:14
40:14 53:11
74:16 90:1
107:2 133:2
151:3
**lived**  178:1
**llc**  1:8 5:4 6:22
**llp**  5:8
**local**  11:1
**location**  112:23
113:5 157:12
158:23
**lodge**  32:8
**logs**  82:24
**long**  13:1 14:12
17:22 19:8
20:2 67:14
105:10 144:13
**longer**  26:14
168:16 173:23
175:14 176:4
**longish**  105:9

**look**  10:9 12:7
13:3,6,14 31:3
31:3 33:3 37:9
37:11,23 53:22
62:25 63:6
87:5 90:11
94:10,10 95:12
97:6 98:22
112:23 114:12
119:22 121:7
127:10,11
130:4 134:10
138:8 145:8
146:15 147:15
148:8 176:14
177:16 182:2
**looked**  112:4
113:16 116:2,4
116:8 127:1,9
127:9 150:15
150:16 182:12
**looking**  10:2,5
13:10 45:16
47:22 63:10
115:10 145:23
147:11,11
152:11,18
**looks**  45:10,15
97:10 109:3
111:24 117:15
118:12 129:11
138:20 155:15
157:7 158:5
160:8,8,15
162:11 171:15

176:22,25
177:15
**loop**  135:11
**losing**  95:21
96:1 102:5
**loss**  33:21
42:19 51:3
62:20 111:25
127:2
**lot**  41:18 46:16
74:12,20 80:20
109:21 127:2
152:11 161:18
161:25 165:9
176:1
**low**  136:5

**m**

**m**  4:19 7:14
43:16
**made**  24:13
25:21,24 35:2
35:8 48:15
49:20 114:15
114:20 129:1
184:13 188:5
**make**  24:14
26:16,18 41:17
59:21 72:4
110:6 165:7
167:11 168:14
168:15,16
178:16 181:17
184:5
**maker**  25:20

Mark Kendall                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[makers - media]**                                          Page 25

| | | | |
|---|---|---|---|
| **makers**  24:4 | 87:18 | 59:3,7,17 60:5 | **material**  33:2 |
| 26:1,5 29:3 | **marathon**  9:8 | 60:7 62:7 86:9 | 87:16 109:14 |
| 34:5 | **marianne** | 86:11,12,16,22 | 121:3,7 123:2 |
| **making**  24:4 | 38:19 | 86:23 87:25 | 123:24 124:2 |
| 99:3 101:5 | **mark**  1:14 6:5 | 88:9 90:12 | 124:22,24 |
| 152:18 164:24 | 7:2,6 30:23 | 94:12 105:6,9 | 126:4,18 136:6 |
| **manage**  19:11 | 33:20 59:14,14 | 106:20,25 | 149:4 181:19 |
| **managed**  164:4 | 59:15,17 88:6 | 107:6,10,13,16 | **materials**  149:3 |
| **management** | 130:21 137:15 | 109:16,22 | **matter**  6:6 |
| 19:13 73:24 | 139:1 162:14 | 110:1,5,9,11,12 | 36:13 85:24 |
| 74:10 75:2,2 | 173:10 178:21 | 110:14 111:11 | 132:23 177:14 |
| 99:25 101:20 | 184:2 186:5 | 114:14,22,23 | **matters**  66:16 |
| 119:1,9,17 | 187:2,24 188:2 | 114:25 115:7 | 73:14 165:13 |
| 120:1 165:8,11 | 188:4,12 | 115:11,15 | **mean**  16:16 |
| 175:14 176:8 | **marked**  37:6 | 122:14,18 | 30:3 79:6 82:8 |
| **manager**  21:9 | 60:9 117:15 | 125:17 129:22 | 98:15 99:16,21 |
| 21:13,15 22:17 | **markrkendall** | 134:12,16 | 100:5,11,16,25 |
| 24:8 33:21 | 8:8 | 137:10,17 | 107:2 114:18 |
| 54:12,15,18,20 | **marx**  4:21 5:3 | 139:5,6 145:3 | 130:9 131:23 |
| 54:20,21 55:7 | 5:3,4,4,17 6:21 | 145:16,25 | 135:16 147:7,8 |
| 55:8,17,23 | 6:21,21,22,22 | 146:9,18,21,23 | 164:16 168:3 |
| 56:1,4,7,10,18 | 6:23 7:10,11 | 147:3,6,13,15 | **meaning**  26:4 |
| 56:19 73:10 | 11:8,13 24:7 | 157:2 173:12 | 70:4 138:11 |
| 74:3 76:24 | 25:3 28:16,18 | 178:11,14,16 | 169:15 |
| 78:20 144:10 | 28:21,24 29:17 | 178:24 181:11 | **meaningful** |
| 144:11 153:1 | 30:6,12,25 | 181:21 182:3,6 | 136:6,12,13 |
| **manager's**  73:4 | 31:20,24 32:13 | 184:8 | **means**  100:13 |
| 73:5 | 32:17,21,24,25 | **marxlawgrou...** | 129:14,17 |
| **managers** | 35:13 37:5,22 | 5:5 | 131:22,25 |
| 102:19,23,24 | 38:5,11,14,23 | **mask**  167:9 | 134:4,4 139:19 |
| 103:2,12,15 | 40:2,7,17 42:8 | **masked**  159:17 | 161:4 |
| **managing** | 42:25 44:21 | **masking** | **meant**  135:8,17 |
| 74:16 | 45:5 57:5,12 | 152:13 | **media**  6:4 |
| **manner**  85:24 | 57:14,17 58:4 | **match**  149:16 | 30:22 86:20 |
| 86:2,5,7 87:15 | 58:7,10,23 | | 88:6 134:14 |

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[media - name]**                                                                Page 26

137:14 178:20
**medical**  9:21
**medicines**  9:18
**meet**  28:22
  89:25
**meeting**  2:3,4
  12:14 87:3
  106:3 150:8,11
  156:10,13
  157:6,8,10,11
  157:22 171:24
**meetings**  135:7
**meets**  85:9
**member**  99:20
  99:23 103:8
**memo**  91:15
**memos**  91:23
**merchant**  1:8,9
  6:7 7:13,19
  17:3 33:10
  80:1 159:13,19
  186:4 187:1
  188:1
**merchant's**
  159:21
**merchants**
  79:19 80:2
  93:4,8,15 94:2
  159:11,12
**merely**  32:7
**message**  24:9
  43:5,7,18,25
  78:16,24 79:3
  83:16 114:1,2
  116:5,14,15,16

116:21 117:10
117:10 119:1
119:16 120:11
121:1,7,12
123:3,4,10
124:14,23
125:5,7,12,18
125:22 126:3,7
126:13,16
127:5,17
130:10,19,20
130:22 132:25
136:17 142:1
142:18 146:1
153:6 156:2
171:15 175:25
176:4 177:5
**messages**  42:21
66:10,11 71:3
89:19 104:20
112:4 113:6,16
122:4 131:10
153:7 175:23
177:13
**messaging**
135:18
**met**  11:25 12:3
12:12,13 27:9
**method**  52:10
**methodology**
131:15,19
**michael**  109:12
**middle**  148:13
167:9

**mike**  33:19
  35:6,7 38:19
  44:1 46:1,3
  47:10 61:5
  64:1,12,21
  66:9,17,19,25
  68:20 69:4
  70:4 71:19,20
  72:13 94:13
  109:13 128:13
  128:20 138:5
  138:18 139:18
  140:7 141:14
  141:21 146:12
  180:6,9
**mike's**  61:12
**mind**  109:17,18
  143:3 146:15
  174:3
**minute**  26:19
  62:14 130:18
  141:20 178:13
**minutes**  30:18
  61:22 67:16,17
  67:21,23 145:7
  182:2,5
**miscommuni...**
  38:9
**missing**  69:5
  118:12 162:13
**mistake**  143:4
  163:11
**misunderstood**
  107:16

**mode**  46:11
  48:14 92:25
  115:21 142:4
**moll**  2:5 158:6
**moment**  77:7
  173:19,23
  174:1,4 175:19
**monday**  61:16
**monitored**
  137:3,4
**months**  18:15
  18:19 19:9
  21:11
**morning**  6:2
  7:10
**move**  11:11
  13:18 29:17
  40:7 60:16
  107:17 108:10
  125:2 147:13
**moved**  42:1
**moving**  57:21
**mozingo**  2:6
**msas**  80:1,8
**multiple**  39:9
**mute**  88:1
**muted**  40:9,10
  40:12

**n**

**n**  2:1 4:19,19
  5:3 24:24
  184:8
**name**  6:13 7:11
  14:19 24:23
  25:9 44:9

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[name - nw]**                                          Page 27

68:25 99:17
100:1 104:2,23
112:14 139:7
140:5 148:2
175:10 176:1
**name's** 98:8
**named** 44:7
148:25
**natasha** 2:21
19:11,14,19,22
20:1,11 21:4,6
21:9 22:7
23:23 56:22
130:14 153:25
162:12 163:9
163:17 180:13
**natasha's** 164:4
**native** 105:22
128:10
**nature** 17:1
52:2
**necessarily**
40:22 43:8
80:10 82:8
169:11
**necessary**
80:23 188:6
**need** 9:9 16:13
31:18 37:17,20
37:23,25 38:2
54:5 56:10
58:12 63:1
64:21 67:12
73:13 74:17
83:17 86:20

93:2 101:23
102:7,12
103:22 105:4
105:19 106:24
117:21 134:13
153:14 154:11
167:10 177:24
178:15 183:6
**needed** 38:5
85:23 87:17,22
89:14,15 96:21
98:25 101:3
141:14 153:19
154:8 165:20
**needs** 8:17 30:4
87:19 102:9
**neighborhood**
42:23
**never** 21:21
27:9 57:22
72:13 107:18
109:7 143:3
**new** 61:1 98:25
111:18 134:14
177:13
**newman** 2:15
170:2,2,9,18
178:5
**nine** 145:10
**non** 93:9 154:7
**noncommittal**
64:25
**noncompliance**
39:7 92:20

**nonresponsive**
42:1 57:22
60:16
**north** 7:23 14:8
**northern** 1:1
6:9
**notary** 188:13
188:19
**note** 57:1 94:13
109:11 186:10
**noted** 42:19
188:7
**notes** 65:11
94:20 107:3
182:2,13
**notice** 53:1
69:6 91:12
92:4,7,11
113:24 114:10
127:13 138:22
139:17
**noticed** 60:13
**notification**
53:7 69:12
70:25 130:20
**notified** 143:24
**notify** 56:14
**notion** 72:15
**november**
116:1 124:9
150:24
**number** 6:10
8:5 32:6 41:3
54:2 62:2
63:19 67:22

90:20 97:14
101:20 105:21
106:10 109:10
116:3 117:16
118:6 127:21
133:21 136:3,4
153:24 157:5
158:12 160:2
160:25 170:16
**numbered**
128:9 129:23
**numbering**
110:6
**numbers** 38:17
41:8 43:14
81:11 84:3
95:15 105:20
108:20 112:9
118:23 119:14
120:22 123:1
123:23,25
124:20 125:10
126:1,15
128:12 137:20
138:3 141:1
143:10 147:22
148:12 150:21
151:19 156:5
158:4 160:7
161:12 169:10
176:19
**nw** 5:9

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[o - okay]**                                                Page 28

| **o** | | | |
|---|---|---|---|
| **o** 4:19 24:24 | **occurring** | 13:8,10,10,23 | 56:13,21,23 |
| **o'clock** 136:10 | 96:13 | 14:2,4,6,9,12 | 57:16 59:8,11 |
| **o.c.g.a** 184:10 | **occurs** 173:20 | 14:15,20 15:3 | 59:19 61:7,13 |
| **oath** 7:8 | **october** 151:23 | 15:12,16,20,25 | 61:21 62:9,10 |
| **object** 28:8 | 152:25 | 16:5,15,20,23 | 62:15,22 63:10 |
| 29:5 42:6,7,8 | **offense** 36:25 | 18:1,7,18,25 | 63:12,19,20,23 |
| 167:21 | **office** 61:12 | 19:3,23 20:11 | 64:3,6,10 65:7 |
| **objected** 58:11 | 64:1 68:3 | 20:22,25 21:2 | 65:11,14,22 |
| **objection** 10:19 | 89:10 145:5 | 21:18,23 22:8 | 67:3,17 68:2 |
| 24:6,22 25:2 | 174:18 | 22:12,15 23:3 | 68:22 69:5,17 |
| 26:6 28:23 | **officer** 14:10,18 | 23:9,16,19 | 70:1,3,6,9,12 |
| 32:8 34:6,15 | 14:21,24 17:20 | 24:3,12,20 | 70:20,22 71:4 |
| 34:22,24 36:1 | 18:8 20:1,5 | 25:17 26:19 | 71:8,12 72:3,7 |
| 36:8,20 41:14 | 72:24 73:8,9 | 27:1,10,16 | 72:17,23 73:3 |
| 49:6,19 50:21 | 73:15 98:14 | 28:16 30:25 | 73:11 76:3,6,9 |
| 50:25 51:22 | **officer's** 73:16 | 31:9 33:7 34:4 | 76:12,18 77:21 |
| 52:4 55:6,14 | **offices** 184:8 | 34:13 35:4,7 | 78:3 79:9,24 |
| 69:10 78:23 | **officially** 90:4,8 | 35:23 36:11,14 | 80:8 81:13 |
| 79:21 80:3,13 | 90:25 91:14 | 36:18 37:1,5 | 82:13,16 83:5 |
| 81:2,17,23 | **offline** 115:4,13 | 37:14,16,18 | 83:12,13,17,22 |
| 82:7 83:2,9 | **offloading** | 38:14,16 39:2 | 83:23,24,24 |
| 84:20,24,25 | 152:20 | 39:8,19 40:5 | 84:1,13 85:11 |
| 85:6,21 87:13 | **oh** 62:7 86:16 | 40:17,17,18,25 | 85:25 86:19 |
| 89:4 91:2,18 | 106:23 107:8,8 | 41:3,4,6,12,19 | 87:5,9,10 88:9 |
| 93:12,20 95:4 | 107:23 108:1 | 42:8,25 43:13 | 88:18 89:2,7 |
| 99:10 101:19 | 110:2 111:13 | 43:19,23 44:20 | 89:23 90:1,7 |
| 104:5,9,12 | 119:11 123:25 | 45:10,20 46:3 | 90:11,12,16,18 |
| 121:23 179:24 | 143:2 157:13 | 46:6,10 47:16 | 91:6,11 92:3 |
| 181:4 | **okay** 7:17 8:4 | 47:23 48:17,21 | 92:11,19 93:7 |
| **objectionable** | 8:10,13,24 9:1 | 49:24 50:23 | 93:25 94:13,14 |
| 29:16 | 9:8,15,24 10:2 | 51:19,20,25 | 94:16 95:3,10 |
| **obviously** 10:2 | 10:5,8,14 | 52:17 53:3,10 | 95:10,14,20 |
| **occurred** 28:13 | 11:19,23 12:5 | 53:25 54:17,21 | 96:1,23 97:6,8 |
| 89:8 | 12:9,11,17,21 | 54:25 55:3,8 | 97:10,12 98:1 |
| | 12:24 13:1,3,6 | 55:11 56:4,7 | 98:6,15,20 |

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[okay - owner]**                                              Page 29

| | | | |
|---|---|---|---|
| 99:16 100:10 | 135:25 136:8 | 171:1,9,14 | **opted**  152:6 |
| 101:22 102:6 | 136:11 137:17 | 173:3,16,16 | 153:5 155:20 |
| 102:17 103:20 | 137:18,19,25 | 174:24 176:13 | **option**  72:2 |
| 104:6,16,24 | 137:25 138:2 | 176:17,18 | **options**  86:6 |
| 105:15,15,16 | 138:11,14,15 | 177:8,9,9,10,18 | 152:12 |
| 105:16,17,17 | 138:16,25 | 177:21,24 | **orc**  148:24 |
| 105:17 106:1 | 139:9,24 | 178:2,24 179:5 | 149:23 150:3,6 |
| 106:16 107:19 | 140:23,25 | 179:17 180:2,5 | 150:7 |
| 107:20,21,25 | 141:8,17,20 | 181:10,11 | **order**  97:15 |
| 108:8,15,17,23 | 142:11 143:2,7 | 182:3 183:8 | 108:22,22,23 |
| 109:2,9,22 | 143:8,15 144:1 | **old**  40:14 | **orders**  183:3 |
| 110:4,5,11,14 | 144:22 145:16 | **once**  22:17,18 | **org**  165:24 |
| 111:2,10 112:1 | 146:22 147:5,6 | 59:22 77:9,10 | **organization** |
| 112:6,7,10 | 147:17,18,19 | 89:13 144:4,5 | 39:6 104:13 |
| 113:9 114:9,13 | 148:7,9,10,11 | 173:21 182:15 | 130:17 155:8,9 |
| 114:22 115:23 | 148:23 149:21 | **one's**  146:19 | 156:21 |
| 116:18 117:1,3 | 150:10,14,18 | **ones**  116:7 | **organize** |
| 117:19 118:9 | 150:20 151:2,5 | 118:16 126:23 | 163:18 165:2 |
| 118:10,10,20 | 151:13,15,17 | 127:18 136:9 | **organizing** |
| 118:21 120:8 | 151:23 152:1 | 165:3 | 163:20 |
| 120:12,14,15 | 152:25 153:16 | **open**  154:15 | **original**  163:23 |
| 120:17,19,19 | 153:21,22 | 155:4 | 185:16 |
| 120:20 121:5 | 155:10,16 | **opening**  154:14 | **outcome** |
| 121:25 122:6 | 156:1,4,4,8,11 | **operational** | 185:19 |
| 122:22,24 | 156:12,16,22 | 19:6 148:24 | **outside**  75:7 |
| 123:13,18,22 | 157:3,4,18,21 | 150:4 151:6,6 | 128:21 158:21 |
| 124:7,11,12,15 | 157:25 158:1,1 | 160:10 | 158:21 |
| 124:16,19 | 158:3,12 160:3 | **operations** | **outsourcing** |
| 125:6,6,9,19 | 160:5 161:7,8 | 154:7 155:5,6 | 167:22 |
| 126:8,11 127:3 | 161:10,11 | 155:9,11 162:2 | **overarching** |
| 127:21,23 | 162:17,25 | 166:2,3,5 | 155:1 |
| 128:4,6,7,15,24 | 163:7 164:5,15 | **opportunity** | **own**  166:11 |
| 129:4,20 | 165:19 168:7 | 57:20 | **owned**  164:2,7 |
| 131:14,22 | 168:11,20,20 | **opposed**  136:4 | **owner**  100:6 |
| 132:22 133:17 | 168:23 170:15 | 136:14 | 104:7 154:21 |

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[owner - pci]**                                                          Page 30

162:1,4 163:2
164:12,13,22
165:18 170:5
**owners** 160:22
165:3,16 166:6
169:2
**ownership**
178:5

**p**

**p.m.** 88:3,8
137:12,16
139:3 143:17
178:18,23
182:8,11 183:9
**page** 2:2 3:2
4:2 30:1,11
31:4,8,9,10
33:2,7,12 37:8
37:9,11,24,25
38:1,2,3,4,13
38:18 40:21,23
41:2 43:6,24
53:20 83:18
84:14 85:14
88:15 98:22
107:9,12,15
108:3,11,14,21
109:10,13
110:2,2 111:14
111:18,19
116:9,12,13,19
117:8,8,8
119:7,11,12,19
119:24 120:12
120:16,25

121:1,2,8,8
123:3,11,13,16
123:25 124:1
124:23,23
125:12 126:3
126:10,16
127:19,23
128:11 129:7
129:24,25
130:1,2 132:20
138:3,16
139:14 143:7
143:15 147:17
147:22 148:13
150:23 157:25
161:13 162:23
168:20,22
169:13,19
170:15 171:14
177:7 187:4,7
187:10,13,16
187:19
**pages** 33:3
38:15 97:9
99:15 107:24
107:25 118:3
128:8 129:4,21
129:22
**paisner** 5:8
6:25
**pan** 81:6,14
83:1,6 87:19
87:21 101:16
101:22,23
102:7,25

103:12,15,21
103:23 106:6
129:8,12,15,18
132:3 149:20
149:22 151:8
152:19 155:7
158:13,23
159:3,6 161:20
161:20 163:3
166:14 167:2
171:18
**paper** 13:16
**papers** 13:15
**paragraph**
33:13 94:15
140:8 155:10
**paralegal** 6:23
109:19
**paraphrasing**
142:22
**parkway** 5:4
**part** 69:9,11
78:9 92:23
116:10,23
138:9 140:16
143:16 150:5
152:22 158:5
158:25 165:22
165:23 166:2
**partial** 152:13
**participants**
181:9
**participation**
76:3

**particular**
13:11 36:12
74:15 127:15
160:23
**parties** 18:13
181:9 184:14
**partnership**
16:11,19 17:7
**parts** 102:3
103:4 106:5
165:25
**party** 18:11
101:9 154:16
184:12,14
185:18
**paying** 13:24
**pci** 35:20 36:7
36:16 39:6,15
39:24 47:9,19
48:1 49:4,25
78:5,21 79:13
79:17,18,25
80:6,11,16
81:1,15,21
82:2,5,9,10
83:7 84:10,18
85:5,9,13,18,24
86:1,4,6 87:12
87:15,18,20,22
88:25 92:20
93:4,9,9,16
94:2 97:16
100:22 101:3,6
101:24 102:2,3
102:8,10,12

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[pci - please]**                                              Page 31

103:15,22
129:12,15,18
132:6,9 152:19
152:21 154:7,7
154:8 159:24
163:3 167:18
168:9,13,15,16
**pcr** 129:8
166:14
**peachtree** 5:9
**pending** 9:12
149:1,15
**people** 14:19
18:11 24:12
28:2,6 34:13
43:16 59:22
73:13 89:14,25
94:21 103:6,8
103:9 130:16
135:15,19
152:15 157:16
161:24 164:10
164:13 165:3
166:5 168:4
169:14
**people's** 165:7
**percentage**
75:3 135:25
136:3,14
**perfect** 182:18
**perform** 166:25
**performance**
74:25 153:11
153:13

**performs**
166:24
**period** 17:9
21:8 72:23
89:25 90:10
91:11 144:17
148:19
**permanent**
16:11,11 17:6
**person** 12:15
22:17 25:23,24
27:9 35:9 46:8
46:16 64:4
99:25 100:7
111:16 134:6
135:1 144:23
144:24 155:2
165:10
**person's** 55:19
**personal** 24:10
25:6,12,15
26:25 35:17,19
35:20,25 36:6
36:16 39:11,15
39:20,23 41:23
42:17 43:10
45:19 46:17
47:6,15 48:24
49:17 50:3,6
50:10,16 51:12
51:18,21 52:2
52:19 53:8,9
53:14 54:25
55:19,25 56:2
56:16 60:9,12

60:18 67:2
81:11 116:17
121:16 128:3
160:25
**personally**
24:14 148:3
**pharmaceutic...**
9:18
**phone** 5:6,11
8:4,5 64:5,6,9
66:23 67:4,12
67:14,18,23,24
68:1,3 69:18
69:19 70:5
135:19 175:5,7
175:19
**phonetic** 180:3
**photocopying**
185:12,14
**phrased** 29:8
**physical** 9:21
**physically** 9:24
9:25
**picture** 159:1
**piece** 132:16
**pin** 70:9 77:1
**ping** 135:15,17
135:19
**pinging** 135:14
**place** 82:1
100:22 101:6
**places** 82:3
83:4
**plaintiff** 1:6 2:2
5:2 6:6,22 7:12

20:19 33:17,22
**plaintiff's**
29:24 33:11,19
33:20,23,24
97:13 105:23
**plan** 80:24
96:22 98:20
101:21 102:1
142:3 151:10
153:11,13
155:12 163:9
164:19,21,21
**planning** 149:2
**plans** 82:4
98:23
**platform** 137:2
137:6,8,9
**please** 28:4
30:15,18 31:9
33:6 36:2 38:4
43:6 49:9
57:10 59:14,16
93:13 105:13
105:14,15,16
105:17 107:17
107:17 108:14
112:1,2 114:5
117:25 118:9
118:10,10,12
118:16 119:10
120:14,15,17
120:18,19,20
122:22,22
123:10,11,12
123:13,14,15

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[please - process]**                                                    Page 32

124:14,15
125:5,18,19
126:7,8,8,9
127:24 143:7
147:17,18
151:3,13 161:8
161:9 162:16
168:25 177:9
**pleases** 40:8
**pleasure** 33:5
**pm** 44:2
**point** 11:12
15:7 69:14
75:16,23 76:2
76:16 86:14,21
134:13 173:24
177:25
**pointe** 5:4
**policies** 24:16
111:13
**policy** 25:7,8
25:13 41:20
42:3,10 51:23
55:4,12,17,24
65:17 66:1,3
152:15
**poole** 5:16 7:4
12:19,20
**pop** 130:20
**portion** 159:3
**position** 14:13
17:23 19:8
58:20 73:4,5
94:3 178:25
181:17

**possible** 114:25
**possibly** 121:22
181:13,23
**posted** 108:12
**potentially**
29:9 36:24
52:16 86:5
104:11 152:18
**preceding**
19:10 127:4
**precise** 90:2
124:8 127:4
**premark** 29:22
**premarked**
29:21
**preparation**
23:13,17 76:16
82:16 115:18
140:14,17
141:5 143:13
**prepare** 91:23
**prepared** 98:1
109:3,7 148:23
148:24 182:16
**preparing** 98:3
98:16 100:3
109:6 111:3
**prepping**
122:12
**prescription**
9:17
**presence** 28:25
**present** 5:15
7:3 12:11,18
29:2 61:5,11

63:24 64:1,7
143:20,23
144:20,23
175:1,3
**presentation**
148:25,25
149:9,10,18,23
150:7,9
**pretty** 32:9,19
61:18 64:19
68:8 117:19,23
175:7,24,24
**prevention**
42:19 51:3
62:20 111:25
127:2
**previous** 11:4
118:3 122:23
126:12 130:13
139:23 154:22
**previously** 34:8
34:9
**primary**
167:24
**print** 37:3
129:5
**printed** 128:9
**printing** 37:2
**prior** 16:7 49:1
49:10,15 50:1
50:6,13 51:3
52:17,22,25
53:11 60:24
61:3 70:1,12
70:17,22 78:19

82:16 92:11
115:20 121:3,7
123:2 125:13
126:4,17
127:20 135:3
140:20 141:5
143:13 144:8,8
171:1,24
**privilege** 11:21
28:15
**probably** 13:12
18:16 38:2
66:3 117:17
133:20 175:15
**problem** 67:1
74:16,17,20
75:6,9,14,17
80:24 82:20
95:7 96:20
133:24 155:9
165:12,13,18
**problems** 96:13
133:21 165:17
166:8,12
**proceed** 31:9
88:17 108:15
**process** 30:13
59:5,7 106:5
156:19,20,20
160:10,11,12
160:14,22,23
161:4 166:9,10
166:12,24,24
166:25 167:2,8
168:8 173:22

Mark Kendall                                           July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[processed - quick]**                                    Page 33

**processed** 83:1
83:6
**processes** 100:8
101:2 106:4,18
151:8 154:10
167:7
**produce** 147:2
**produced**
37:19 38:17
41:7 43:14
45:3 54:1 84:2
90:19 95:14
97:13 105:22
108:19,23
111:24 112:8
114:19,19
118:22 120:22
122:25 123:22
124:19 125:10
125:25 126:14
128:10 137:19
138:2,17 141:1
143:10 147:1
147:20 148:12
150:21 151:19
153:23 156:5
157:4 158:3
160:6 161:12
169:9 176:19
181:23
**product** 131:5
**production**
45:2 122:13
181:18,22

**programs** 10:6
10:10
**progress**
155:13
**prohibited**
25:14 184:10
**project** 18:12
18:20,24 30:9
74:16 75:13
98:23 164:19
164:21,21,22
**prompt** 114:11
**prompted**
64:21
**prompts** 64:23
**properly** 31:2
**property** 52:14
**proposal** 71:5
71:10,13
163:22,23
**proposals** 72:4
**proposed** 163:9
**proprietary**
41:9
**propriety** 4:14
**provide** 70:13
70:18 74:9,10
173:11 184:8
184:11
**provided** 13:7
42:20 43:21
82:15 93:22
124:6
**providing**
100:22

**public** 188:19
**pull** 112:23
115:10,12
**pulled** 122:18
**purports** 38:18
41:8 170:18
**purpose** 47:2
47:14 51:13
64:22 66:16
96:18 142:24
142:25 150:10
**pursuant** 184:4
**put** 30:6 31:1
39:5 149:3,5,9
149:22 165:16

**q**

**question** 8:19
8:21 9:12
10:25 11:22
13:18 28:4,9
28:10,11,20
29:7,16 32:6,8
32:23 33:1,1,4
33:6,14 34:1
36:2 37:13
39:3 42:7 44:8
44:10 47:24
49:24 50:11
53:10 55:22
57:1,7,17,19
58:6 59:1,9,15
61:2 62:9
76:18 87:8
88:14 94:14
102:4 107:21

108:24,25
109:10 110:16
110:17,18,18
111:2,23 112:6
115:15 117:3
121:5,14
129:20 131:13
132:23,23
133:2,3,7,18,18
135:7 139:11
150:19 153:4
153:21 158:9
159:19 161:5
163:7 168:23
172:18 176:12
177:23
**questions** 8:14
23:4,10 31:7
49:25 71:8
83:14,18 86:17
90:15 96:17
105:11 108:6
108:16 111:16
117:18 118:8
128:5 134:7,17
140:10 156:3
157:3 158:2
160:4,11,15
161:10 173:7
176:17 177:22
181:12,19,24
182:1,13 185:7
**quick** 117:19
117:23 135:7

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[quote - recognize]**                                      Page 34

**quote** 121:17

**r**

**r** 185:1 187:3,3
**raised** 58:19
  68:12
**raises** 75:5
**ran** 156:19,20
  160:23 166:8
**range** 21:12
**rates** 184:14
**rather** 11:8
  92:12
**read** 31:8,10
  33:13 37:12,16
  37:16,24,25
  38:1,4,15 39:2
  40:21 41:3,17
  43:11 60:22
  63:8,17 87:6
  95:13 102:18
  102:18,21
  107:23 121:13
  123:11 124:16
  137:18,25
  138:15 140:24
  143:8 148:10
  177:25 182:15
  186:9 188:5
**reading** 40:15
  41:1,5 105:18
  107:7,18,19,20
  111:8 120:1,20
  123:18 147:19
**ready** 31:7 33:1
  37:10,11 40:23

43:3 83:14
87:7 105:11
108:6,15
110:16,17
117:18 118:8
123:8,19,21
124:13,17
128:4 140:17
150:19 153:21
168:23 177:21
**realize** 40:11
  59:20 108:9
**really** 26:7 94:7
  95:21,22 161:3
  173:22 177:14
**realm** 165:24
**reason** 9:10,21
  15:25 25:12
  27:2,5 51:15
  68:7 86:25
  140:2 155:25
  158:9 186:11
  187:6,9,12,15
  187:18,21
**reasonable**
  47:5,5,13
  51:16 56:25
  142:25
**reasonably**
  47:1
**recall** 44:16
  46:13,18 50:17
  50:20 52:21
  64:8,8 65:3,9
  65:12,18,19,20

65:21,25 66:2
66:3 67:6,7,9
67:22,25 68:13
68:21 70:14,15
70:19,20,21
71:7,9,11,12
72:6,8,14,20,22
76:11,15 77:23
81:7 88:24
89:1,5 90:6,8
91:10,22,25
93:6,10 94:9
96:3 98:6
99:13 103:19
110:21 117:5
118:1,4 119:5
119:13,15,15
119:17 120:1,7
121:24 124:10
127:8,11,12,13
127:14,19
128:25 129:3
135:13 137:23
138:23 139:24
140:13,22
141:7,10,19
142:4,11,13,14
142:17,19
143:22,25
144:25 148:6
150:12 156:24
169:3 175:2,2
175:6
**receipt** 186:17

**receive** 91:20
  114:10,17
  115:23 124:4,8
  127:6 138:21
  139:3 179:2,8
  179:14
**received** 22:18
  42:18 44:9,10
  44:16,22,24
  45:11 48:7
  50:8,14 53:24
  56:13,14 60:17
  60:21 69:6,12
  82:10 83:1,6
  90:22 91:12
  92:3,5,7
  112:15,16
  118:19 122:7,7
  122:9 139:7,17
  140:2 156:6
  158:10 159:4
**receiving** 45:20
  52:25 85:17
  92:11 101:23
  102:7 103:23
  127:13,14
  140:20 152:16
**recent** 169:15
  169:20
**recess** 30:21
  88:4 137:13
  178:19 182:9
**recognize**
  90:16 148:2

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[recollection - remember]**                                    Page 35

**recollection**
27:12 39:13
44:12,15 45:11
45:13 64:2
65:23 66:8
80:9 87:11
89:20 90:24
110:20,22
112:17 114:2,8
121:18 139:21
**recommendat...**
71:6,10
**recommendat...**
70:18 72:4
**recommending**
71:13
**record** 6:3,20
30:17,20,24
33:14 37:4
41:6 43:13
53:25 88:2,7
97:12 107:22
108:18 112:7
118:21 122:24
125:9,25
137:12,16
162:17 178:18
178:22 182:1,7
182:11 183:3,9
185:9
**recordable**
137:1
**recorded** 6:5
**redo** 114:25

**reduce** 152:14
**reduced** 185:7
**refer** 7:14,17
30:2 65:16
135:3
**referenced**
186:6
**referencing**
89:6
**referral** 184:12
**referred** 24:10
25:5 26:2,8,8
34:10 35:20
36:6,16 39:15
47:8,18 48:1
68:23 69:2
74:22,23 82:13
89:3 127:5
145:19 169:1
**referring** 7:18
68:17 91:15
94:24 106:13
116:22 119:7
119:20 146:11
150:7 163:13
**refers** 33:2
103:18 135:18
164:2 167:22
**refresh** 39:13
87:10 90:24
110:20,22
121:18
**refute** 157:20
**refuting** 94:4

**regarding** 23:6
33:17 39:6,24
55:18,24 63:24
75:22 78:4
89:12 91:21,24
92:9,14,17
97:16 109:4
132:9 147:23
163:3 180:3
181:15
**regulations**
184:4
**regulator** 75:8
75:18
**regulators**
74:11
**related** 18:12
19:21 39:11
47:3 48:23,24
49:4,16 50:3
51:19 52:1,19
76:22 89:21
103:1 113:18
121:16 159:15
166:7
**relation** 173:16
**relations** 3:19
**relationship**
22:9
**relative** 185:17
**relatively** 67:16
67:24 152:12
152:13
**relied** 167:2

**relying** 162:20
162:22
**remaining**
181:9
**remedial**
154:11
**remediate**
74:14 82:6
92:20 95:7
96:14 100:9
101:15 103:8
154:16 155:8
164:8,17
166:19
**remediated**
94:8 95:22
96:2,6,12,25
165:15,20,20
166:15,18
167:15
**remediating**
73:18 169:2
**remediation**
82:4 96:22
98:20 99:11
101:21 102:1
106:11 151:10
154:12 168:8
**remember**
12:25 13:10
16:25 18:9,14
18:16 22:19
25:22 27:9
41:11 45:22
46:9,20 48:14

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[remember - response]**                                    Page 36

50:5 53:1
54:14 62:1
64:10 67:23
71:2,15 75:24
76:22 77:6,7,8
81:12 92:5
93:17 97:4
104:13 110:25
112:15,16,21
112:22 113:3,4
113:12,22
115:20 116:4,8
116:10,12
119:2 120:4
130:24 131:5
133:23,24
138:10 144:19
153:6 157:21
163:15 172:12
172:14,16,22
173:3,5,12
175:4,17
176:10
**remembering**
175:12
**reminded**
64:17
**reminding**  60:2
**remote**  1:19
12:15,16,17
**remotely**  6:13
6:19
**remove**  148:17
149:12,25

**renewed**  16:14
**rep**  158:20
159:13
**repeat**  24:23
49:7 68:24
93:13
**repeats**  177:15
**rephrase**  8:20
28:21 49:10
51:11 61:2
102:6 131:14
133:16 134:5
150:1 179:19
**report**  51:17
55:20 103:2
119:8 164:25
**reported**  1:23
19:19 20:23
21:3,6,19,21
22:6,7 51:9
56:22
**reporter**  6:15
8:17 57:9,13
57:16 59:12,19
182:18,23
183:2 184:6,12
185:23
**reporters**
185:15
**reporting**  20:1
20:11 21:24
22:2,3,8 114:3
184:4,8,11,12
**reports**  99:24
145:9,23

164:23
**represent**  6:25
7:1,12 159:2
**representation**
13:24
**representative**
7:3 48:15
77:19
**represented**  9:1
**representing**
6:14 11:14
13:20 104:14
**reps**  159:12
**request**  45:2
**requested**
104:21 141:3
**requests**  45:4
**require**  29:9
167:8
**required**  80:11
80:17,19 81:1
81:15 82:9
83:7 106:12
188:13
**requirement**
10:23,23
**requirements**
74:5 81:4
171:24
**requires**  81:5
168:15
**requiring**
168:16
**requisite**
101:10,13

**reread**  83:20
**research**  83:3
106:18 152:22
159:1
**researching**
158:16
**reserve**  182:13
**reserved**  1:15
**resolved**
152:24
**resolving**
159:21
**resources**
24:15 33:20
34:11 70:13,18
70:23 71:9
**respect**  11:7
61:4 73:12,13
73:14 75:16
79:25 136:11
161:1 180:25
181:21
**respond**  58:2
68:8 140:12
171:19 173:14
**responded**
160:15
**responds**  33:16
**response**  28:13
31:23 32:7,9
32:12,15 33:12
33:13,16 58:3
64:23 66:14
68:7 141:24
160:20 173:14

Mark Kendall                                                July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[responses - robert]**                                      Page 37

| | | | |
|---|---|---|---|
| **responses** 4:17 | 128:22 160:14 | 97:18,19,24 | 149:24 150:13 |
| 8:18 33:10,19 | 186:7 | 98:11,12 99:17 | 150:25 151:16 |
| **responsibilities** | **reviewed** | 99:17,18 | 151:18,21,24 |
| 47:4 | 107:14 | 100:16,20 | 153:5,22 154:1 |
| **responsibility** | **reviewing** | 101:13,17 | 154:3 155:4,14 |
| 73:17 75:11 | 118:1 120:2 | 102:13,14 | 155:18,21 |
| 78:17 80:21 | **right** 9:25 11:2 | 103:16,17 | 156:6,23 157:1 |
| **responsible** | 11:3 12:2,6 | 104:1 105:7,13 | 157:14 158:7 |
| 73:19 154:16 | 13:14 19:1,17 | 105:16,17 | 158:14 159:4 |
| 154:21 171:11 | 19:19 20:7,18 | 106:14 108:5 | 159:25 161:2 |
| 171:12 | 21:25 22:1 | 109:22 110:9 | 161:23,24 |
| **responsive** 45:4 | 24:1 26:5 30:6 | 110:12 111:7 | 162:10 163:24 |
| **rest** 31:12 | 30:9 31:3,24 | 113:21 115:7 | 168:21,22,24 |
| 66:15 107:23 | 32:24,25 34:14 | 115:13 116:22 | 169:7,9,14,23 |
| 113:17 118:14 | 35:11,17 37:8 | 117:7,8,12,12 | 169:24 170:7 |
| 119:3 125:8 | 39:21 40:17 | 117:25 119:11 | 171:11 172:5 |
| 126:13 177:25 | 41:1,5,17,21 | 119:21 120:6,8 | 172:16,17 |
| **restate** 28:4 | 43:23 44:11 | 120:17,21 | 174:23 176:13 |
| 36:2 78:8 | 45:5,8,12,16 | 121:12 122:14 | 176:13,16 |
| **restroom** | 48:7 49:5 | 122:24 123:11 | 178:9 181:20 |
| 178:15 | 52:23,25 53:17 | 123:17,18 | 181:25 182:6 |
| **results** 165:15 | 54:7,18 55:1,9 | 124:15 125:19 | 182:12 |
| **resume** 18:4 | 58:2 61:25 | 125:20,24 | **rights** 4:14 |
| **retained** 45:1 | 62:15,18 63:18 | 126:14,24 | 41:9 |
| **retrieved** | 63:23 65:16 | 128:13,19,22 | **risk** 19:6,7 |
| 112:20 | 66:5,21 69:8 | 129:12 130:2 | 38:20 39:10 |
| **return** 171:20 | 69:21 70:6 | 132:19,22 | 73:20,23,24 |
| 186:13,16 | 71:23 74:24,25 | 133:22 135:2 | 74:1,3,4,5 75:1 |
| **returning** | 78:2,5 79:2 | 135:10 136:23 | 75:1,11,14 |
| 77:16 | 81:1,22 82:22 | 136:23 138:19 | 148:24 150:4 |
| **returns** 159:18 | 84:11 85:16 | 139:10 141:18 | **road** 99:7 |
| **reverse** 163:11 | 86:22,23 87:24 | 142:12,18 | **robert** 5:3 6:21 |
| 163:14 169:18 | 87:25 88:19,19 | 143:5,9 144:17 | 7:11 10:24 |
| **review** 30:10 | 91:23 94:14 | 146:5,18,21,23 | 29:6 30:3 |
| 90:17 114:6 | 95:5,16,18 | 147:3,13,15 | 31:16,16,19 |

Veritext Legal Solutions

800.808.4958                                                770.343.9696

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[robert - second]**

Page 38

37:21,21 38:8
40:12 43:15,25
44:1,23 57:4,4
57:15,15,25,25
58:9,9,18,18
59:6 62:4
107:11,11
109:15,15
114:18 122:10
122:11 138:5
145:2 146:14
178:10 184:8
**role** 16:2 18:10
18:13 19:5,10
19:12 72:16
92:23
**roles** 175:14
**roll** 160:17
**rolling** 63:19
**room** 64:13
66:22 142:10
**rough** 182:25
**roughly** 15:19
18:1 21:15
**route** 84:18
**routine** 77:24
**routines** 74:5
**row** 43:8
**rows** 106:17
**rpr** 1:23 185:23
**rubin** 21:10,14
21:21 22:16
54:12,22 56:20
56:22,23
130:15

**rule** 58:11
**rules** 11:1,1,10
184:4
**ruling** 59:18
**run** 86:24
101:3
**running** 19:11
**runs** 176:24

**s**

**s** 1:8 4:19 7:14
8:1 24:24
187:3
**saha** 170:19
171:2
**sales** 155:5,8
156:21 158:20
162:3
**salon** 67:7
**satisfied** 111:22
**saw** 43:19 44:4
45:7 64:13
66:16 76:21,23
106:7 115:18
116:7 117:2,5
117:9 138:8
139:21
**saying** 38:1
45:6 51:2
57:12 66:4
71:15 75:9
78:1 114:3
128:1 153:17
156:23,24
159:18 163:21
165:19

**says** 33:15
34:23 39:4
54:9,10 75:6
84:8,17 88:19
88:20 93:11
94:15,17 95:20
95:20 99:18
100:5,15,17,19
100:21 102:22
109:11,12
110:13 116:14
116:21 121:1,9
121:10,12,20
123:3 127:15
129:7 132:21
135:11 139:1
140:7 150:6
151:25 155:10
156:16 162:14
162:22,23
164:22 171:18
174:9
**scope** 95:7
96:20,21 103:7
106:11
**scoping** 74:20
99:2 154:5
**screen** 10:12
29:20 30:5
37:7 40:16
53:18,20 86:10
108:4 109:25
111:18 120:13
130:21

**scroll** 31:6,18
38:2 43:2,4,5
62:11 83:13,17
83:20 97:7
105:10,13
109:19 111:21
116:6 117:17
117:23 118:11
118:16,25
120:15,18,20
122:21 123:9
123:14,14
124:14 125:18
126:7,9 137:25
147:18 148:21
150:14 151:3
161:8,8 162:15
**scrolling** 40:6
109:18 118:9
120:10 151:13
168:19
**seal** 185:16
**search** 114:16
114:21,23
115:1 145:13
146:6
**searching**
145:10
**second** 37:9
40:23 73:22,23
88:5 100:19,21
107:15,19
147:22 166:6
168:25

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[secure - services]**                                        Page 39

secure  52:10
  113:5
secured  112:22
security  38:20
  39:8 45:14
  48:9 103:18
see  11:10 37:7
  40:4,10 55:2
  63:15,16,21
  76:12,19 80:8
  84:18,22 88:18
  88:20 94:21,22
  95:24,25 96:24
  99:15 100:17
  100:23 105:6
  111:18 115:1
  115:23 117:4
  118:17 119:11
  120:23 121:10
  121:20 122:19
  126:21,25
  127:23 128:23
  129:9 130:2,6
  130:7 132:14
  132:20 139:1
  141:17 143:18
  145:1,8 146:10
  151:4 157:13
  163:24 164:3
  171:3 175:8,10
  177:8
seeing  50:17,20
  98:6 112:21
  116:11,12
  118:4 119:2,5

119:15,15
  127:19 137:23
  138:10 141:19
seemed  51:14
seems  163:23
  176:1
seen  31:14 32:1
  38:24 41:10
  43:4,11,17,18
  44:5 50:24
  76:15 82:17
  87:2 105:23
  107:18 108:25
  109:1,7 115:16
  115:19,20
  117:11 118:24
  119:4 122:11
  127:17 137:21
  138:6 141:4
  143:12,14
  145:20 147:24
  156:2 170:20
  170:23 171:3,7
  171:8 176:21
selection
  140:11
self  74:7,8,24
  75:3,12,15
  78:4,13,18
  79:16 93:1
  97:11,15
  164:20
send  25:11
  41:22 47:2,13
  51:21 56:2

66:17 70:23
  91:20 128:24
  130:19 136:14
  136:15,16,17
  141:15,24
  142:25 159:14
  182:17
sending  24:9
  25:14 26:9
  36:22 39:20,22
  48:16,22,23
  49:2,21 50:6
  50:15 51:4,5
  51:12,17 52:6
  52:7,8,13,19
  53:8,17 67:2
  68:9 71:9
  142:12,24
  152:15 159:6
sends  130:6
  133:4
senior  74:10
sense  167:11
sent  25:5 26:10
  26:24 33:18
  35:16,20,24
  36:5,15 39:9
  39:15,18 42:19
  42:21,24 43:10
  44:14 45:19
  46:16,23 47:6
  48:13 49:3,11
  49:16,23 50:2
  50:8,9 52:1
  54:13 56:8,15

60:14 64:13,14
  65:1 69:12
  70:25 76:20
  79:4 91:3
  114:4,6,12
  116:11,12
  117:2 118:2
  119:3 120:3
  128:3,13,21
  129:7 130:22
  132:13,18,25
  133:5 136:5
  139:2 140:9,18
  146:2,25 151:5
  151:21 157:13
  157:14 158:20
  161:16 162:18
  172:12,14
  175:23 186:14
sentence  94:19
  94:21 121:13
  164:16
sequence  66:21
  66:24 96:10
  169:11,12
served  33:8
server  113:11
  113:23
service  166:23
services  1:8,9
  6:8 7:13,19
  17:3 33:10
  80:1 164:4
  184:8,11 186:4
  187:1 188:1

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[set - slawin]**

Page 40

| | | | |
|---|---|---|---|
| **set** 16:8 44:2 | 95:10 105:8 | **single** 25:10,20 | 28:7 29:4,14 |
| 66:19 133:7 | 106:21 117:14 | 25:23 26:12,13 | 34:14,17 35:8 |
| 135:7,13 | 120:12 127:22 | 30:11 35:9 | 35:10,16 38:21 |
| 153:13 154:23 | 173:18 176:2 | 43:8 138:16 | 39:4,9,15 |
| **setting** 156:13 | **showing** 29:19 | **sir** 31:20 86:12 | 41:13,20 42:3 |
| 157:6 | 119:24 | 109:16 145:3 | 42:11,16 48:23 |
| **setup** 177:20 | **shown** 59:3,4 | 178:11 | 49:12,16 50:2 |
| **seven** 98:10 | 127:18 | **site** 52:11 | 50:14 52:1,18 |
| 111:1 | **shows** 117:14 | 112:18 | 53:13 54:3,13 |
| **shaking** 8:16 | **si** 79:5 | **sitting** 115:25 | 54:17 56:8,15 |
| **share** 10:12 | **siaa** 163:3 | **situation** 26:8 | 56:24 60:8,24 |
| 29:20 86:10 | **siai** 3:7 39:5,11 | 48:22 73:12,14 | 61:3,8 64:3,7 |
| **shared** 10:11 | 74:7,23 78:4 | 95:24 | 65:1 66:7 67:3 |
| 43:21 48:13 | 79:12 80:11 | **situations** 83:5 | 67:5,15 68:2 |
| 138:9 | 81:20,25 | **six** 18:15,19 | 68:15,18 69:18 |
| **sharing** 53:18 | 104:21 132:9 | 21:11,11,15 | 69:24 70:23 |
| 53:19 | 153:8 163:3 | 94:18 111:19 | 71:24 72:9 |
| **sharon** 160:9 | 171:11 178:5,6 | 130:5 132:15 | 75:22 76:4,13 |
| **sheet** 186:11 | **sic** 90:19 | 132:19 | 76:20 77:2 |
| **shelley** 5:17 | **side** 98:21 | **skype** 130:23 | 82:22 84:4,8 |
| 6:23 29:25 | **sign** 76:4,14 | 130:24 131:4,4 | 85:4 88:11 |
| 40:3,7,14 | 141:14 182:15 | 131:6,11 | 89:3,10,12 |
| 42:25 107:6 | 186:12 | **slack** 131:1,1,2 | 90:3,5,21,25 |
| 111:12 129:22 | **signature** 1:15 | 131:2,11 | 91:9,14,15 |
| **shocking** 60:14 | 184:18 185:16 | **slawin** 1:5 2:8 | 92:14,17,19 |
| **short** 67:16,17 | 185:22 | 2:10,16,18,25 | 93:3,7,14,19,25 |
| 67:24 148:25 | **signed** 80:1 | 3:4 4:4,5,11,12 | 95:6,16 96:4 |
| **shorthand** | 186:19 | 4:13 6:7 7:12 | 96:23 97:24 |
| 135:20 185:23 | **significant** 39:6 | 20:20,23 21:3 | 104:1 121:15 |
| **show** 31:18 | **similar** 117:20 | 21:5,23 24:13 | 128:21 129:2 |
| 37:1,5 40:2 | 126:11 131:5 | 24:18,20,21,25 | 130:6 131:19 |
| 43:1 50:18,22 | 157:7 | 25:3,14,19 | 132:12 141:3,4 |
| 53:20 62:1,3,7 | **simonoff** 5:3 | 26:17,21 27:2 | 143:12,21,24 |
| 63:7 86:9 | **simple** 110:18 | 27:4,11,14,17 | 144:5,20 |
| 90:12 94:12 | | 27:20,24 28:3 | 148:15 153:4 |

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[slawin - start]**                                          Page 41

153:17 154:1
155:18 156:13
156:22 157:13
161:15,16
163:25 170:3,9
171:16 172:17
174:18,25
178:5 186:4
187:1 188:1
**slawin's**  22:10
23:25 36:5,15
55:16,23 56:18
60:18 109:5
131:11,16
153:1
**software**  137:9
159:7
**solan**  3:22,24
4:3,7,8 24:24
33:19 35:6,8
36:19 38:19
44:1 46:7,19
47:17,25 49:11
49:14 61:6,8
65:14,25 66:6
66:9,17 67:5
68:6,23 69:1,4
70:4 71:20,23
89:9 91:21
109:12,13
128:13 138:5
138:18 139:18
140:7,20
141:11,21
142:20 143:12

146:12 174:18
174:24 180:6,9
**solan's**  46:3
64:1 68:3
94:13
**solon**  46:1
48:22 65:16
**solution**  99:4
100:22 101:25
102:1 167:3
168:12,13
**solutions**  74:18
98:23,24 99:3
159:7 184:7,7
184:9,11,13
185:15 186:23
**somebody**  21:6
26:13 77:21
81:13 99:5,24
109:3 133:3
156:18,19,20
159:18 165:21
170:14
**somewhat**
113:17
**sorry**  16:21
32:13 40:11,12
53:19 54:5
62:7 78:8 79:1
79:5 86:22
102:4,21
107:13,16,23
108:1,20
109:17 113:1
119:6,19,22

123:19 124:7
133:8 138:4,25
143:4 147:8
162:9,13,17
170:22 172:13
174:16 179:11
179:19 183:5
**sort**  45:17
64:22 76:24
81:5 149:2,4
152:10,23
168:6
**sound**  115:8
**sounds**  11:22
111:5 115:9
163:18
**southeast**
186:15
**speak**  23:19,21
23:23 27:10,13
46:7 57:7
60:19 89:11
90:4 91:8
92:19 100:2
141:8,11
**special**  18:12
18:20
**specific**  16:25
25:13 30:1
31:22 42:10
44:6,9 45:24
65:17 66:1,3
77:1 81:4
93:17 94:14
102:19,23,24

111:1 112:17
115:1 140:10
149:13 154:23
158:15 174:4
175:7,18,18
**specifically**
13:13 46:9,20
67:9 77:23
149:1
**specifics**
149:14
**spell**  7:25
**spoke**  11:18
66:9 72:8
180:6,12,19
**spoken**  23:3,5
23:12,16 87:1
180:9,16,22
**sponsoring**
99:20 103:7
**spot**  118:15
**spring**  18:23,25
19:15,17 73:1
180:15
**stakeholders**
89:16
**stance**  165:22
**stand**  81:7
98:13
**stands**  74:7
87:14
**start**  11:13
49:9 125:17
145:7 147:16
157:11

Mark Kendall
July 12, 2024

Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[started - suspense]**                                                    Page 42

| | | | |
|---|---|---|---|
| **started** 15:16 | 120:14,17 | **subordinate** | **summary** 38:20 |
| 15:17 17:12,17 | 122:22 123:14 | 144:2 | 39:4 87:6 |
| 19:13,18,21 | 124:15 125:6 | **subscribed** | 94:15,18 |
| 20:8 21:24 | 125:19 126:7,8 | 188:14 | 128:20 160:13 |
| 73:7 78:12 | 127:24 151:13 | **subsequent** | **summer** 15:19 |
| 147:7 154:6 | 152:15 160:25 | 128:8 129:4 | 19:16,18,20,20 |
| **starting** 120:25 | **stopped** 144:11 | 181:18 | 20:3,8 21:8,16 |
| 126:3 148:13 | **stopping** 86:14 | **subsequently** | 78:13 |
| 150:22 | 86:21 134:13 | 32:10 | **supervisory** |
| **state** 6:19 | **stored** 82:25 | **subset** 158:15 | 149:4,7 |
| 184:2 185:2 | 83:6 | **substance** | **supplement** |
| **stated** 10:1 | **straight** 162:25 | 46:13 136:2,5 | 32:18,21 |
| 31:2 61:22 | **strategy** 152:3 | **substantially** | **supplemental** |
| 185:6 | 155:3 | 45:7 | 4:16 33:10 |
| **statement** 34:2 | **street** 5:9 | **substantive** | **supplemented** |
| 34:4 48:17 | **strike** 42:1 | 115:9 | 32:10,16 |
| 58:5,8 99:1 | 57:21 60:16 | **successfully** | **support** 71:16 |
| 120:24 124:25 | **string** 84:10 | 39:12 | **suppose** 91:1 |
| 125:7 167:18 | 117:11 178:1 | **successor** | **supposed** 62:11 |
| 178:6 | **strongest** 65:23 | 179:18,21 | 79:18,25 80:5 |
| **states** 1:1 6:8 | **structure** | **successors** | 85:5,18 87:11 |
| 121:14 | 152:24 162:5 | 181:2 | 153:4,12 |
| **stay** 17:22 19:8 | 170:6,24 | **suggest** 11:9 | 170:13 172:1 |
| 29:22 123:12 | **structuring** | **suggested** | **sure** 16:18 |
| **stayed** 20:15 | 154:13 | 99:12 149:11 | 17:20 21:10 |
| **stealing** 34:17 | **stuff** 51:4 152:4 | **suggesting** | 23:11 26:7 |
| **step** 101:25 | 183:3 | 28:12 71:13 | 28:5 32:20 |
| **steps** 95:7 | **subject** 36:13 | **suggestions** | 48:9 59:16 |
| 100:8 | 38:20 63:1,4,8 | 70:13 | 92:13 93:14 |
| **stipulate** | 118:25 119:16 | **suite** 5:4 | 99:3 101:5 |
| 181:16 | 119:25 120:2,7 | **sum** 69:8 | 111:19 148:22 |
| **stop** 105:14,16 | 171:18 | **summarize** | 155:15 171:22 |
| 105:17 107:17 | **subjects** 129:8 | 46:15 | 178:14 183:5 |
| 116:12 117:25 | **submission** | **summarizes** | **suspense** |
| 118:9 119:9 | 97:10,15 | 143:18 | 160:10 161:2 |

Mark Kendall                                    July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[sustainable - thank]**                                    Page 43

sustainable
  99:4
swaths  168:4
sweeney  2:13
  163:25 170:3
  170:10
switch  77:20
sworn  7:7
  188:14
symantec
  139:10
system  45:1
  48:11,13
systems  76:1
  77:12 103:18
  110:6 166:25

**t**

t  4:19 185:1,1
  187:3,3
table  146:3
take  9:11 14:20
  18:1 35:14
  57:10 58:21
  62:25 65:11
  86:24 87:25
  93:2 95:7
  100:8 119:22
  137:10 145:7
  154:11 167:11
  168:6 169:12
  170:7 177:4
  178:12
taken  6:5 109:4
  175:14 176:8
  185:6

talk  59:8 60:10
  66:21,22 68:20
  72:11,18 115:4
  130:16,19
  132:3,5,8
  140:17 147:4
  166:12 177:5
talked  46:23
  69:19 72:1
  106:3 130:14
  147:10 169:2
talking  40:10
  50:5,12 54:17
  59:22 63:5
  64:12 65:7,25
  66:2 69:15
  75:25 102:19
  109:20,24
  112:25 147:7
  149:19 152:9
talks  103:6
task  78:14
  101:7,7 165:7
tasked  79:15
tbd  100:10
team  19:11
  100:22
teams  131:6
technical  30:16
  133:18 134:6
technology
  1:19 6:13
  17:21,21 133:6
  133:9,12,13,21
  152:17

ted  5:14 6:14
  182:19
tele  71:25
telephone  46:8
  66:7 67:15
  71:24 89:11
  114:10 174:19
  174:25
tell  11:21 27:19
  28:1,5 29:1
  43:3 46:6
  58:15 59:11
  64:10 77:21
  93:4,7,14 94:6
  96:8 98:9
  108:6 128:4
  130:12 142:20
  157:11 160:21
  161:16
telling  77:4
  93:8,15 94:1
  122:6 163:1
  175:5
temporary
  21:12 54:12
ten  58:20,24
  67:25 112:24
  121:15,22
  122:5,5 134:24
  134:24 178:16
tend  154:20
  165:2,16
term  16:15,16
  72:20,22 81:6
  81:9

terminate  24:5
  33:24 71:16
terminated
  24:1 89:14
  90:25 172:17
  174:2,5 175:1
  175:6
terminating
  67:5 90:22
termination
  26:11 34:12
  67:8 68:10,12
  72:1 76:7,19
  76:22 92:24
  97:5 109:5
  173:17,17
  174:21 180:8
terms  47:23
  69:17 74:22
  136:13
test  98:24
testified  7:8
  27:5 42:2
  62:16 72:7
testifies  93:25
testify  69:1
testimony  9:19
  9:22 25:18
  35:7 139:16
  169:4 180:25
  186:9,17 188:8
text  175:23
thank  7:10,21
  10:14 20:18
  22:12 23:3

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[thank - today]**                                                      Page 44

40:19,19 42:15
48:4 54:7 60:1
60:3,4,21
61:21 62:8
99:16 103:13
107:5,6 108:13
108:17 111:10
118:5 125:2,16
126:6,20
134:16 145:17
145:25 147:5
148:7 150:20
156:11 157:1
174:13
**thereto** 185:16
**thing** 31:1
47:13 51:10
88:16 103:4
115:20 117:16
118:6 123:7
124:12 125:4
151:4 158:19
159:20 172:5
173:5 175:22
176:1
**things** 8:16
39:18 43:10
44:13 46:25
47:1 57:21
66:4 74:18
78:15 96:11
105:4 116:25
135:6 136:10
166:21 172:4,6
173:25

**think** 12:3
14:17 25:10
29:11,14,17
31:5 38:1,8,9
40:9,9,10
41:16 42:22
56:25 58:12,13
61:21 62:15
65:5 66:11
72:7,25 73:21
74:23 75:12
77:1 79:7,7
81:10 93:23
94:7 105:2
107:2 109:24
119:19 140:9
140:10 145:21
146:19 150:15
153:8 160:8
164:19 166:4
166:21 177:22
177:25
**thinking** 70:24
142:6
**third** 18:10,13
33:13 73:24
74:1 84:13
101:9 140:8,8
166:6
**thought** 37:24
98:9 104:18
167:14 175:9
175:24 176:6
**thread** 102:5
171:8,10

**three** 73:21
88:6 94:18
107:24 108:1
127:19 130:5
132:14,16,19
144:8
**thursday** 44:1
44:17
**till** 17:13
**time** 6:17 7:14
7:14 9:9 11:24
13:9 15:3 16:8
16:9 17:10
20:22 21:5,20
22:2,21,25
23:25 40:13,15
44:5 45:2 46:4
48:21 49:20
50:6 53:16
54:13,15 55:7
55:22,24 56:9
56:13,19 57:10
60:2,13 61:7
61:11,15,16
66:4,6 69:11
72:23 76:1,12
76:16,20 78:3
80:23 82:19
84:21 89:25
90:2,3,10 91:6
91:11,12,13
92:21,22,24
98:7 104:22
111:9 115:24
115:25 121:21

124:5,9 125:21
129:2 135:18
136:16,20
138:10,11
139:4 141:12
141:17,19
152:25 157:12
158:10 164:6
165:16 166:13
174:5 175:1,8
175:19 180:5,7
180:12,14,19
181:6,12,24
186:18
**timeframe**
16:13 17:5
62:21 186:8
**timeline** 100:10
**times** 28:24
134:23 136:20
136:22 144:1
175:10 177:1
**timestamp**
140:5
**title** 14:15
17:18 18:7,9
18:10 19:3,24
20:14 46:4
72:25 102:18
119:8
**titles** 146:4
**today** 9:2,19,22
13:21,25 74:3
98:7 122:16
131:6 143:19

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[today - understanding]**                                        Page 45

145:6 165:5
182:22
**today's**  23:6,13
23:17 141:5
143:13
**together**  39:5
132:16
**told**  58:20 94:1
144:20
**top**  84:7 102:22
116:21 161:13
162:13 163:8
**total**  69:8
112:19
**totenberg**
58:14
**tough**  40:13
**train**  171:23
172:1
**training**  82:11
**transcript**
57:11 59:22,25
182:16 185:9
185:13 186:6
186:19 188:5,8
**transmission**
101:16 158:13
**transmissions**
158:17
**transmit**  167:8
**transmitted**
83:1,6 106:9
159:3,22,24
**transmitting**
101:23 102:7

103:23 106:6
167:7
**traumatic**
175:8,21 176:6
**treat**  136:25,25
**treated**  36:10
**treica**  3:6
**trial**  58:14,18
58:25
**tried**  96:16
**true**  151:11
185:9 188:8
**trust**  33:21
**try**  51:14 52:6
59:23 95:6
151:7
**trying**  30:12
55:15 59:21
74:15 80:20
93:24 96:11
106:8 132:15
145:7 146:6
161:22 162:3
165:10 170:13
170:24 172:3
**tuesday**  12:3,6
12:10
**turn**  6:18
**turned**  75:25
77:9,12,17
173:21
**tv**  173:17
**two**  13:2 17:24
21:11 30:22
37:8 38:18

42:21 54:19
59:22 66:12
86:17 94:18
97:9 99:15
107:24 108:11
113:17 122:4,4
130:5 132:14
132:16,19
144:8,16 177:6
181:8
**type**  19:13
136:10 154:12
158:19
**types**  154:10
**typewriting**
185:8
**typically**
159:10,15

**u**

**uh**  54:4 88:22
97:20 99:19
100:18 164:1
**ultimately**
25:21 28:14
33:23 45:17
**unable**  164:8
**unaware**  53:8
**uncomfortable**
93:8,15 94:1
95:23
**under**  19:7
81:25 82:19
88:19 184:9
185:8,14

**underlying**
163:16
**underneath**
167:12
**understand**
7:15,18 8:19
8:22 9:13 11:6
13:17 30:13
36:3 38:7
40:22 43:12
46:22 47:5
50:11 51:14
52:6 53:1
67:12,13 80:21
81:6 92:4
93:23 95:6
96:11,16,20,21
96:22 106:4,5
106:8,11
114:15 116:16
131:13 151:7
152:7 160:24
161:22 168:5
**understanding**
26:20 27:1
35:12,15 41:12
41:19 42:2,9
42:10 55:12,18
56:5,6 72:17
73:19 75:21
77:15 78:24
79:1,12 80:22
85:3,4,12,18,22
85:25 92:16
96:12 101:2

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[understanding - wanted]**    Page 46

133:16 141:13
159:10 160:1
163:2 167:16
168:7 179:17
179:23,25
181:1,3,7
**understood**
8:21 17:3
47:21 62:19
**unfortunately**
29:8
**unit**   6:4 19:18
19:21 154:21
178:20
**united**   1:1 6:8
**units**   151:6,7
**unmasked**
159:3,6,24
**unpleasant**
175:24
**unsupplemen...**
33:15
**unusual**   177:10
**unwind**   16:3,6
16:15,17
**update**   119:9
119:16,25
152:15 154:9
154:24
**updating**   149:9
**upsetting**
175:13
**use**   96:17 131:6
132:2,5,8
134:2,3,4,7,15

134:18 135:15
135:19 151:8
154:10 166:25
178:15
**used**   16:15
30:13 53:19
72:13,20,21,22
96:17 130:11
131:8,15,18
132:12 133:14
135:8 158:24
161:21 163:6
179:21 182:22
186:19
**using**   6:13
16:16 32:11
67:7 130:10
135:18 160:25
163:6 168:14
**usual**   184:13

| **v** |

**v**   186:4 187:1
188:1
**vacation**   172:9
**val**   156:16,17
157:7 160:9,9
160:15
**validate**   98:22
**validated**   39:9
**various**   66:11
80:2 94:20
150:24 158:6
161:14 169:10
169:14 170:19
177:1

**vendor**   19:12
**vendors**   18:11
**venture**   16:11
17:4
**verbal**   8:18
163:9
**verbally**   8:15
71:13
**verify**   186:9
**veritext**   6:14,16
184:7,7,9,11,13
185:14 186:14
186:23
**veritext.com.**
186:15
**version**   32:11
**versus**   6:7
75:18 162:3
**video**   6:4 59:21
182:20 183:4,7
**videographer**
5:13 6:2,15
30:19,22 86:11
86:13,19 88:2
88:5 134:12
137:11,14
178:17,20
182:7,10 183:8
**videotaped**
1:14
**view**   75:16
**viewable**   137:1
**viewed**   113:22
**violate**   41:13
55:3

**violated**   41:20
42:11
**violation**   38:21
42:3
**violations**
158:13
**virtual**   6:13
**volume**   136:13
**voluntarily**
15:24 16:1
**vs**   1:7

| **w** |

**w**   8:1
**waiting**   38:6
**walked**   142:10
**want**   11:19,24
29:11 31:3,5
31:11,18 37:9
57:7 63:6 75:4
75:17 79:11
83:19 84:17
88:15 90:14
105:10 114:16
129:20,24
130:4 145:4
154:15,15
167:11,18
168:4 172:23
172:23 176:9
181:17 183:2
**wanted**   16:2,4
37:15 46:22
58:21 75:10
132:11 135:3
143:1 155:12

Mark Kendall
July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[wanted - yeah]**                                             Page 47

164:9 166:7
**wants** 57:14
**way** 28:11,22
29:8 33:15
36:10 47:5
65:20,21 75:12
85:9,13 128:10
129:6 131:24
132:1,4,7,10
136:25 154:15
154:20 156:16
162:15,15
163:18,20
166:19 167:5
175:4 177:16
**we've** 29:20
31:1 37:6
74:22 86:14
87:1 105:2
110:5 112:4,25
114:5 115:4
117:15 143:3
**website** 113:2
113:25 139:19
**week** 12:4
**weeks** 21:11,11
21:15 89:24
**weindell** 180:3
**wells** 14:5,6,10
14:16,21,25
15:15,17
**went** 18:8 57:6
96:15 97:5
112:20 113:1,1
126:23 127:20

145:9,10
160:18
**wesley** 7:23,25
**west** 5:9
**whistleblower**
68:15,19 72:9
72:14
**whoever's** 30:8
87:19 168:15
**wide** 39:6
**wise** 136:14
**withdrawn**
185:11
**witness** 7:2
10:21 28:10,19
29:9 30:9 37:1
38:4 40:2 43:1
57:17,19 58:1
59:2 62:8 86:9
90:13 105:8
146:1,8,11,17
147:5 173:8
182:14,15
186:8,10,12,18
**witnesses**
122:12 145:19
**word** 67:7
72:13 135:15
**words** 85:14
136:2 142:23
174:11
**work** 14:6
18:12 19:13
22:4 27:8 30:2
47:3,4 60:6

64:22 73:18
74:13,16 77:11
80:17,18 89:15
101:5,11,12,14
101:16 152:20
153:14,15,17
155:11 164:14
165:12,13
167:22 168:1
168:16 170:12
171:19 172:9
173:21 174:7
174:10 176:8
178:25 179:6
179:12
**worked** 35:6
41:25 46:1
89:17 98:5
148:3 172:6
173:24 175:9
176:4 181:6
**working** 17:12
17:17 19:7,13
19:18,21 77:10
94:20 95:6
97:3 134:19
135:2 144:9,11
144:12,14
153:7 159:13
171:25
**works** 30:1
46:16
**write** 104:21
110:19 111:15
136:20 152:23

153:12 154:18
154:20,25
155:20,23
162:6 164:21
166:9,11,20
**writing** 71:5
91:15 141:25
148:18 149:2
149:12,14
163:12,22
174:9
**written** 22:6
42:10 71:10
81:25 82:1
93:22 110:25
**wrote** 111:16
155:13 163:8

| **x** |
| **x** 2:1 4:19 48:6 |
| **y** |

**y** 8:1 48:6
**yeah** 17:15
28:8 29:18,18
37:22 38:7
40:12,18 43:7
45:17 53:18,18
59:17 61:20
62:3,15 63:12
63:21 69:1
70:5 81:10
85:15 86:16
90:12 98:17
102:17 104:19
105:7 106:21

Mark Kendall                               July 12, 2024
Slawin, Eric Vs. Banc Of America Merchant Services, Et Al.

**[yeah - zoom]**                                        Page 48

| | |
|---|---|
| 106:21 109:22 | 128:18 150:14 |
| 113:3,15 | 150:17 153:6 |
| 114:18 116:15 | 157:15,17 |
| 117:7,9 119:13 | 171:17 |
| 119:15 121:21 | **yesterday** |
| 127:25 128:1 | 135:12 |
| 129:16 130:24 | **yost**   5:14 6:14 |
| 134:16 137:10 | **z** |
| 139:12 142:9 | **z**   43:16 |
| 145:18 146:9 | **zip**   8:2 139:9 |
| 146:14 147:6 | **zoom**   1:19 10:6 |
| 148:16,17 | 10:7 12:13,24 |
| 150:9,9 157:10 | 13:1,4 40:14 |
| 158:15 159:5 | 106:24 |
| 161:3,6 162:16 | |
| 162:22 167:14 | |
| 169:17,18,20 | |
| 169:21,21 | |
| 171:4,6,8 | |
| 172:19 173:10 | |
| 175:24 176:6 | |
| 178:16 179:20 | |
| 183:5,6,7 | |
| **year**   11:17,18 | |
| 17:24 55:9,11 | |
| 144:16 175:23 | |
| 176:3 | |
| **years**   14:14 | |
| 17:25 98:10 | |
| 111:1 144:7,8 | |
| 144:8,9,15 | |
| **yell**   173:18 | |
| **yep**   84:19,23 | |
| 95:13 117:23 | |
| 125:5 128:1,3 | |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.