Case 1:19-cv-04129-AT    Document 196-2    Filed 09/18/25    Page 1 of 178
Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 1

1            IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF GEORGIA

3                     ATLANTA DIVISION

4     _____

5     ERIC SLAWIN,

6            Plaintiff,

7        v.                          Civil Action No.

8     BANC OF AMERICA MERCHANT        1:19-cv-04129-AT

9     SERVICES, LLC S/H/A BANK OF

10    AMERICA MERCHANT SERVICES,

11           Defendant.

12    _____

13            VIDEOCONFERENCE DEPOSITION OF

14              NATASHA STEPTOE COLLINS

15    DATE:        Wednesday, August 7, 2024

16    TIME:        10:02 a.m.

17    LOCATION:    Remote Proceeding

18                 Duluth, GA 30097

19    REPORTED BY:  Jacob Bradford

20    JOB NO.:     6844261

21

22

23

24

25

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 2

 1                    A P P E A R A N C E S

 2     ON BEHALF OF PLAINTIFF ERIC SLAWIN:

 3          JEANNIE S. MARX, ESQUIRE (by videoconference)

 4          Marx & Marx, LLC

 5          1050 Crown Pointe Parkway, Suite 500

 6          Atlanta, GA 30338

 7          jeannie.marx@marxlawgroup.com

 8          (404) 261-9559

 9

10          ROBERT N. MARX, ESQUIRE (by videoconference)

11          Marx & Marx, LLC

12          1050 Crown Pointe Parkway, Suite 500

13          Atlanta, GA 30338

14          robert.marx@marxlawgroup.com

15          (404) 261-9559

16

17     ON BEHALF OF DEFENDANT BANC OF AMERICA MERCHANT

18     SERVICES, LLC S/H/A BANK OF AMERICA MERCHANT SERVICES,

19     AND NATASHA COLLINS:

20          BRIAN UNDERWOOD, ESQUIRE (by videoconference)

21          Bryan Cave Leighton Paisner, LLP

22          1201 West Peachtree Street Northwest, 14th Floor

23          Atlanta, GA 30309

24          brian.underwood@bclplaw.com

25          (404) 572-6600

Natasha Collins                                   August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 3

1              A P P E A R A N C E S (Cont'd)

2      ALSO PRESENT:

3           Shelley Marx, Paralegal, Marx & Marx, LLC (by

4           videoconference)

5           Sheila Lafferty, Corporate Representative, Fiserv

6           (by videoconference)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Natasha Collins                                   August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 4

1                        I N D E X

2    EXAMINATION:                                        PAGE

3        By Ms. Marx                                      8

4

5                      E X H I B I T S

6    NO.              DESCRIPTION                        PAGE

7    Exhibit 3        Collins Email Chain 6/13/17         41

8    Exhibit 5        Collins/Slawin Email String        104

9    Exhibit 12       Slawin Email 8/18/17               111

10   Exhibit 13       PAN Data Emails                    108

11   Exhibit 14       Email String, Bates Numbers

12                    1410-1411                          109

13   Exhibit 15       SIAI Ownership Issue Email

14                    Compilation                        112

15   Exhibit 16       Ades Email Chain 6/13/17            31

16   Exhibit 17       Kendall Email 8/28/17              113

17   Exhibit 18       Collins Email 9/5/17               114

18   Exhibit 19       Clifford Email String             119

19   Exhibit 20       BAMS's Objections and Responses

20                    to Plaintiff's First

21                    Interrogatories                   129

22   Exhibit 21       Verification of BAMS's Objections

23                    and Responses to Plaintiff's First

24                    Interrogatories                   129

25   Exhibit 27       Email                             124

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                       Page 5

1                    E X H I B I T S (Cont'd)

2       NO.              DESCRIPTION                    PAGE

3       Exhibit 28       Self-Identified Audit Issue

4                        Template 12/15/17              55

5       Exhibit 57       Email Compilation Regarding

6                        Verisign - Part 1              68

7       Exhibit 59       Email Compilation Regarding

8                        Verisign - Part 2              68

9       Exhibit 62       Kendall Email 11/13/17         121

10      Exhibit 83       Collins LinkedIn Profile       59

11      Exhibit 84       Coaching Form 9/25/17          117

12

13              (Exhibits Never Received By Reporter)

14

15

16

17

18

19

20

21

22

23

24

25

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 6

1                     P R O C E E D I N G S

2                     THE REPORTER:  Good morning.  My name

3       is Jacob Bradford; I am the reporter assigned by

4       Veritext to take the record of this proceeding.  We

5       are now on the record.  The time is 10:02 a.m.

6                     This is the deposition of Natasha

7       Collins taken in the matter of Eric Slawin vs. Banc of

8       America Merchant Services, et al., on August 7, 2024.

9                     And can I get the address that the

10      witness is presently located at?

11                    MS. COLLINS:  I am at 8764 Innisbrook

12      Run, Duluth, Georgia 30097.

13                    THE REPORTER:  Thank you.

14                    I am a notary authorized to take

15      acknowledgments and administer oaths in Georgia.

16      Parties agree that I will swear in the witness

17      remotely, outside of their presence.

18                    Additionally, absent an objection on

19      the record before the witness is sworn, all parties

20      and the witness understand and agree that any

21      certified transcript produced from the recording

22      virtually of this proceeding:

23                         - is intended for all uses permitted

24                            under applicable procedural and

25                            evidentiary rules and laws in the

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 7

1              same manner as a deposition recorded

2                 by stenographic means; and

3            - shall constitute written stipulation

4                 of such.

5            At this time will everyone in

6     attendance please identify yourselves for the record.

7            MS. MARX:  Yes.  My name is Jeannie

8     Marx.  I am a partner in Marx & Marx, when we -- this

9     firm represents Eric Slawin, the plaintiff in this

10    matter.

11           MR. UNDERWOOD:  My name is Brian

12    Underwood at BCLP, representing the witness and the

13    defendant.

14           MS. MARX:  Also with me are Shelley

15    Marx, our paralegal, and my law partner, Robert Marx.

16           THE REPORTER:  Thank you.

17           Hearing no objection, I will now swear

18    in the witness.

19           Natasha Collins, could you please your

20    right hand and then state and spell your first,

21    middle, and last name for the record?

22           MS. COLLINS:  Natasha Steptoe Collins.

23    N-A-T-A-S-H-A  S-T-E-P-T-O-E  C-O-L-L-I-N-S.

24    //

25    //

Natasha Collins                            August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 8

1     WHEREUPON,

2                    NATASHA STEPTOE COLLINS,

3     called as a witness and having been first duly sworn

4     to tell the truth, the whole truth, and nothing but

5     the truth, was examined and testified as follows:

6                    THE REPORTER:   Thank you.

7                    Counsel, you may proceed.

8                         EXAMINATION

9     BY MS. MARX:

10        Q    Ms. Collins, as you heard, my name is

11    Jeannie Marx.  I represent Eric Slawin in this matter.

12                   MS. MARX:  I'm sorry.  Mr. Bradford, is

13    there a way for me to make Ms. Collins -- yeah.

14    Perfect, great.  Excellent.  Thank you so much.

15    BY MS. MARX:

16        Q    Okay.  We represent Eric Slawin in this

17    matter.  Our purpose here today is to ask you some

18    questions.  If you don't understand a question, please

19    let me know that you don't understand the question.

20    Otherwise, I am going to assume that you -- if you

21    answer the question that you've understood it.

22             Is that acceptable to you?

23        A    Yes.

24        Q    Okay.  Is there any medical or physical

25    reason why you cannot give testimony here today?

Page 9

1          A     No.

2          Q     Are you taking any medications that would

3     impede your ability to give testimony here today?

4          A     No.

5          Q     Okay.  Can you restate for the record your

6     current address?

7          A     My current address is 8764 Innisbrook Run,

8     Duluth, Georgia 30097.

9          Q     Okay.  And what is your telephone number?

10         A     404-313-8955.

11         Q     And your email address, please?

12         A     Getnatashacollins,

13    G-E-T-N-A-T-A-S-H-A-C-O-L-L-I-N-S, at yahoo.com.

14         Q     Do you have any other email addresses?

15         A     That is the only one I'd like to use for

16    this proceeding, for this matter.

17         Q     Okay.  I'm just asking you.  Whether or not

18    you want to only use this one, do you have other ones?

19         A     I have a work email address.

20         Q     Okay.  And other than the work email address

21    and the getnatashacollins, do you; yes or no?

22         A     No.

23         Q     Okay.  When did the representation by

24    Mr. Underwood's firm of you for this proceeding begin?

25         A     It began when this original deposition was

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 10

1    being scheduled, which I believe was last year.
2          Q    Okay.  So sometime in 2023?
3          A    Yes.
4          Q    Okay.  And are you paying Mr. Underwood's
5    firm for their services in representing you in this
6    deposition?
7          A    I am not.
8          Q    Do you know who is?
9          A    I do not.
10         Q    Did you ask?
11         A    No.
12         Q    Okay.  Why not?
13         A    I did not think that was important.  I was
14   not requested to pay.
15         Q    All right.  Are you currently employed?
16         A    Yes.
17         Q    And by whom are you employed?
18         A    I'm employed by PayPal.
19         Q    And when did your employment start at
20   PayPal?
21         A    November 2021.
22         Q    And what do you do at PayPal?
23         A    Head of global sales operations.
24         Q    So from November 2021 until the present,
25   you've worked for PayPal in the position of head of

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 11

1       global sales operations?

2              A    Yes.

3              Q    Okay.  And what did you do prior to working

4       at PayPal?

5              A    I worked for Fiserv.

6              Q    Okay.  And during what period did you work

7       at Fiserv?

8              A    I worked at Fiserv from July of 2020 until

9       November of 2021.  Or until October of 2021, actually.

10             Q    Okay.  And what did you do at Fiserv?

11             A    I also led sales operations there.  Yeah,

12      specifically for -- the position was sales operations

13      and support for the small business and commercial

14      sales teams.

15             Q    And what did you do before working at

16      Fiserv?

17             A    That's the time when I worked for Bank of

18      America Merchant Services.

19             Q    Okay.  Bank of America Merchant Services,

20      also called BAMS; right?

21             A    Correct.  Yes.

22             Q    All right.  During what period of time did

23      you work for BAMS?

24             A    I worked for BAMS from October of 2010 until

25      July of 2020.

Page 12

```
 1        Q    July of 2020, okay.  Was July of 2020 when
 2   BAMS was dissolved?
 3        A    Correct.
 4        Q    And what was your title while you worked at
 5   BAMS?
 6        A    I had several.  Is there a specific period
 7   you're --
 8        Q    Yeah.  Okay.  So the title, the most recent
 9   title that you had had at BAMS when you left in July
10   of 2020, my question is is that the same job title you
11   had in 2017?
12        A    It is not.
13        Q    Okay.  So if you would be good enough to run
14   through the job titles that you had?  Just tell me
15   what you had between 2010 and 2020.
16                  MR. UNDERWOOD:  Objection to form.
17                  THE WITNESS:  In twenty --
18                  MS. MARX:  What's the basis of the
19   objection?
20                  MR. UNDERWOOD:  It's vague and
21   confusing.  You're asking her to provide titles over
22   the course of the period.
23                  MS. MARX:  Right.
24                  MR. UNDERWOOD:  The question -- I think
25   you started a question and then started another one.
```

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 13

1       That's the basis of the objection.

2       BY MS. MARX:

3            Q    Okay.  Ms. Collins, do you understand my

4       question that I'm asking you to set forth your job

5       titles between 2010 and 2020 when you were at BAMS?

6       Do you understand that?

7            A    Yes.

8            Q    Okay.  Can you do that?

9            A    In 2010, I was a business operations

10      executive until -- let's see, 2013.  Actually, I think

11      I held the business operations executive title until

12      2018.  And in 2018, my title changed to head of sales

13      operations.

14           Q    Okay.  And how long did you hold that title?

15           A    The title did not change.  My role changed a

16      bit, but my title did not change between 2018 and

17      2020, when I left BAMS.

18           Q    Okay.  So would it be fair to say that from

19      2010 through 2018, your title was business operations

20      executive; right?

21           A    Yes.  Yes.

22           Q    Okay.  So what were your job duties as

23      business operations executive?

24           A    Those duties changed from 2010 through 2018.

25      So again, is there a specific time period where you're

                                                      Page 14

1     most interested in --

2           Q    Yeah.

3           A    -- my job title -- in my job duties, rather?

4           Q    Yeah.  Okay.  In 2016, in the time period

5     2016 to 2018, what were your job duties?

6           A    Between 2016 and 2018, I would have had

7     responsibility for sales operations, specifically for

8     the enterprise sales team.

9           Q    What does that mean, responsibility for

10    sales operations?

11          A    We led the planning function, annual

12    planning function for the enterprise sales teams to

13    help that team set sales targets and then, during the

14    course of the year, measure their performance against

15    them; provide performance reporting and insights on

16    business performance against those goals.

17               I had responsibility for the risk --

18    operational risk management function.  We called it a

19    business control function, and may have also had

20    responsibility at that time for our onboarding team.

21    But I think that covers the duties during that

22    time-period.

23          Q    And when you say "the enterprise sales

24    team," what do you mean by that?

25          A    Customers of Bank of America that had more

Natasha Collins                          August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 15

1    than $2 million in annual revenues would have been

2    considered enterprise merchants or enterprise clients.

3            Q    Okay.  So would it be fair to say that your

4    job duties as business operations executive between

5    2016 and 2018 had to do with, I guess, identifying

6    potential new business for Bank of America clients who

7    would be enterprise -- would fit within that

8    enterprise definition of more than $2 million in

9    revenue and then assessing the metrics of obtaining

10   that business and interacting with those clients?

11           A    I did not have responsibility for obtaining

12   that business, for obtaining the clients.  I did have

13   responsibility to measure the performance of the sales

14   team in acquiring those clients and serving them.

15           Q    Okay.  And that included operational risk

16   management with respect to those clients; is that

17   right?

18           A    The business control function.

19           Q    Okay.  And what does that mean, "business

20   control function"?

21           A    So the business control team was considered

22   the first line of defense, partnering with the sales

23   team, to identify where potential risks were in our

24   processes and helping to put plans in place to

25   mitigate them.

Natasha Collins                         August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 16

```
 1        Q    So business control team, you said, was the
 2   first line of defense along with whom?
 3        A    Working with the sales teams that we
 4   supported.
 5        Q    All right.  Let's see.  What kinds of risks
 6   was your -- was the business control team in the
 7   business of identifying and mitigating?
 8        A    Operational risks, which cover the execution
 9   of business processes and mitigating any losses that
10   would result from the execution of those processes.
11        Q    And you say mitigating any losses that might
12   accrue as a result of risks associated with those
13   processes; right?  Do I understand that correctly?
14        A    Correct.  Yes.
15        Q    Whose risks were you interested in
16   mitigating?
17        A    Bank of America Merchant Services' risk.
18        Q    Okay.  Also Bank of America's risks?
19        A    We were not responsible for Bank of
20   America's risk.
21        Q    Did you have an understanding as to whether
22   or not risks that might be incurred by Bank of America
23   could impact -- I'm sorry.  Let me rephrase the
24   question.
25             Do you have any understanding as to whether
```

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 17

1    any risks that could be incurred by BAMS could impact

2    Bank of America's risks?

3         A    As Bank of America was part owner of Bank of

4    America Merchant Services, there could be a risk in

5    the execution -- in the Bank of America Merchant

6    Services' business that could impact Bank of America.

7         Q    Okay.  And do you have an understanding as

8    to whether or not First Data was the other partner in

9    the joint venture that created BAMS --

10        A    Yes.  That's correct.

11        Q    Okay.  And so would it also be true that

12   risks associated with BAMS could impact risks of First

13   Data?

14        A    Yes.

15        Q    Okay.  Now, there are a lot of players, and

16   I just want to see if I can get an understanding of

17   who all the players are here.

18             To whom did you report during the period

19   2016 to '18?

20        A    I reported to David Ades, head of enterprise

21   sales.

22        Q    Okay.  Who is Jessica Saha?

23        A    Jessica Saha had responsibility for our

24   client-managed services operational team at the time.

25        Q    Did Ms. Saha report to you?

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

```
                                                    Page 18

    1          A    She did not.

    2          Q    Did she report to Mr. Ades?

    3          A    I do not recall.  I do not believe she did.

    4          Q    Do you know to whom Jessica Saha reported?

    5          A    I do not recall.

    6          Q    Okay.  So if I'm kind of -- consider

    7     picturing an organizational chart, Ades was at the top

    8     of your organization; would that be correct?

    9          A    Yes.

   10          Q    Okay.  And Jessica Saha's team would be a

   11     totally different line, reporting line, right, to a

   12     different supervisor; is that correct?

   13                    MR. UNDERWOOD:  Objection to form.

   14          A    Yes.

   15          Q    You understand the question; right?  You

   16     said yes?

   17          A    Yes.

   18          Q    Different line.  Didn't report to Ades,

   19     okay.  Okay.  And was Ms. Saha, to your

   20     understanding -- do you have an understanding as to

   21     whether or not she was operations, part of the

   22     operations team?

   23          A    Yes.

   24          Q    Okay.  And the operations team was different

   25     than the sales team; right?
```

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 19

1          A     Yes.

2          Q     Okay.  And David Ades' team was the sales

3     team related to enterprise sales; right?

4          A     Yes.

5          Q     Okay.  Do you know someone by the name of

6     Darien Newman?

7          A     Yes.

8          Q     Okay.  And who was he?

9          A     Darien was the business control officer for

10    Jessica Saha's part of the business.

11         Q     So again, Darien Newman was part of a

12    totally different team than you and Mr. Ades and

13    whoever worked with you along with the enterprise

14    sales team; correct?

15         A     Yes.

16         Q     Did you have regular meetings with David

17    Ades?

18         A     Yes.

19         Q     During the period of 2016 to '18, how often

20    did you have meetings with him?

21         A     I don't recall exactly.

22         Q     Okay.  To the best of your recollection,

23    about how often did you meet with him?

24                    MR. UNDERWOOD:  Objection to form.

25    //

Natasha Collins                                            August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                              Page 20

1      BY MS. MARX:

2           Q     During the period 2016 to '18?

3           A     Probably weekly.

4           Q     Do you know someone by the name of Marty

5      Mederos?

6           A     Can you clarify what you mean by "know"?  Do

7      I know him?

8           Q     Have you ever heard of somebody by the name

9      of Marty Mederos?

10          A     Yes.

11          Q     Do you know who he is?

12          A     No.

13          Q     Okay.  In what capacity have you heard the

14     name Marty Mederos?

15          A     I've seen emails from him.

16          Q     Okay.  And do you recall what those emails

17     had to do with?

18          A     Those emails were in relationship to a

19     client that Bank of America and Bank of America

20     Merchant Services shared.

21          Q     And was that the Verisign client?

22          A     Yes.

23          Q     Okay.  When you talk about sharing a client,

24     can you explain what you mean by that?

25          A     Bank of America Merchant Services often got

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 21

1    the majority of their clients from Bank of

2    America -- Bank of America's existing client base.

3         Q    And do you have an understanding as to

4    whether or not -- let me back up for a minute.

5              And to your understanding, what services was

6    BAMS providing to clients that they got from Bank of

7    America's client base?

8         A    We were selling payment processing services.

9         Q    Okay.  So BAMS was selling payment

10   processing services to clients from Bank of America's

11   client base; right?

12        A    Yes.

13        Q    Okay.  And just so I understand, when you

14   say "client," does this mean merchants?

15        A    Yes.

16        Q    So clients includes merchants.  Does it

17   include, like, municipalities and cities and other

18   enterprise businesses that were Bank of America

19   customers, I guess, to whom now BAMS provided payment

20   processing services?

21                   MR. UNDERWOOD:  Objection to form.

22        A    Yes.

23        Q    Okay.  Do you have an understanding as to

24   whether or not Bank of America and BAMS partnered in

25   their provision of -- in the provision of payment

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 22

 1    processing services to clients from Bank of America's

 2    client base?

 3                    MR. UNDERWOOD:  Objection to form.

 4        A    Can you clarify what you mean by "partner"?

 5        Q    Okay.  How would you describe the working

 6    relationship between Bank of America and Bank of

 7    America Merchant Services with respect to providing

 8    payment processing services to Bank of America's

 9    clients that were referred to BAMS?

10        A    Bank of America would refer clients to Bank

11    of America Merchant Services to offer payment

12    processing services to those clients.

13        Q    So would it be fair to say --

14        A    But, but --

15        Q    Go ahead.

16        A    Sorry.

17        Q    No.  Go on.

18        A    The sales teams might participate in joint

19    meetings with those clients in order to sell those

20    services.  So employees of --

21        Q    So you're saying --

22        A    -- employees of Bank of America might

23    participate in meetings with employees of Bank of

24    America Merchant Services in the sale of those

25    services.

Page 23

1        Q    Okay.  And do you have an understanding as

2    to whether or not BAMS entered into agreements with

3    its clients to whom it was providing payment

4    processing services?

5                    MR. UNDERWOOD:  Objection to form.

6    BY MS. MARX:

7        Q    Do you understand the question?

8        A    Yeah.  Can you repeat that?

9        Q    Yeah.  Do you have an understanding as to

10   whether or not BAMS entered into agreements,

11   contracts, agreements with merchants to whom it was

12   providing payment processing services?

13                   MR. UNDERWOOD:  Objection to form.

14       A    Yes.

15       Q    Okay.  And what is your understanding?

16       A    My understanding is that Bank of America

17   Merchant Services would enter into contracts with

18   clients that they were providing payment processing

19   services to.

20       Q    Okay.  And were those agreements called

21   merchant services agreements?

22       A    Yes.

23       Q    MSAs; right?

24       A    Yes.

25       Q    Are you aware of whether or not -- during

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 24

1      your time at BAMS, whether BAMS and BOA together were

2      identified in any contracts that you might have seen

3      as the servicer to the client?

4            A     Can you repeat that question?

5            Q     Yeah.  Okay.  Let me actually go back.

6                  So just so that I can have a clear

7      understanding, so the merchant services agreements,

8      also called MSAs -- was there any other name for

9      the -- well, actually, back up.

10                 Did you have any role in the drafting,

11     review, or signing of MSAs between BAMS and its

12     clients to whom it provided payment processing

13     services?

14                       MR. UNDERWOOD:  Objection to form.

15           A     No.

16           Q     Okay.  So what is the basis of your

17     understanding that there were merchant services

18     agreements between BAMS and its clients?

19           A     The presence of a contract was a requirement

20     for some of the processes that my team did execute.

21     So my team had to validate that a contract was in

22     effect -- yeah, that a contract had been signed before

23     we could count that sale as being complete in our

24     performance reporting.

25           Q     Okay.  So in the capacity of validating

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 25

```
 1    existing contracts between BAMS and its clients, did
 2    you see those contracts?
 3         A    I did not see contracts personally.
 4         Q    Did you discuss MSAs with David Ades during
 5    your regular meetings?
 6         A    I would discuss those contracts with David
 7    Ades as needed, as required in the course of our
 8    conversations, but it was not a regular topic of
 9    conversation.
10         Q    Okay.  You thought you said you met with
11    David Ades probably weekly, you said.  What was the
12    purpose of those weekly meetings?
13         A    During those meetings, we touched base on a
14    number of topics regarding my team's performance,
15    questions that I might have for him, my career
16    development, any escalated issues.  That was the
17    nature of our conversations.
18         Q    Did you make notes of those weekly meetings
19    with Mr. Ades?
20         A    I made notes of action items that I might
21    need to follow up on.  I did not maintain a record of
22    every single conversation.
23         Q    Okay.  Now, when you would meet with
24    Mr. Ades to have these weekly meetings with him, was
25    anybody else present in those meetings?
```

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 26

1        A    It depended on what meeting it was.  There

2    was some meetings that were one-on-ones and others

3    that may have been group meetings.

4        Q    Was Tim Tynan -- first, do you know who Tim

5    Tynan is?  Do you know that name?

6        A    Yes.

7        Q    And who is that?

8        A    Tim Tynan was the CEO for Bank of America

9    Merchant Services.

10        Q    And Mr. Ades reported to him, to your

11    understanding?

12        A    Yes.

13        Q    Okay.  And you did not directly report to

14    Tim Tynan; did you?

15        A    During what time period?

16        Q    Okay.  So in the 2016 to '18 time period,

17    did you report directly to Tim Tynan?

18        A    I did not.

19        Q    Okay.  Did there come a time that you did?

20        A    Yes.

21        Q    Okay.  And when was that?

22        A    2018, I started reporting directly to him.

23        Q    And why was that?

24        A    I was promoted.

25        Q    Okay.  Let's see here.  Did your title

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                    Page 27

1      change after you were promoted in 2018?

2           A     Yes.

3           Q     To what title were you promoted in 2018?

4           A     Head of sales operations and planning.

5           Q     Okay.  All right.  I understand.  And is

6      that the job title that you held until July of 2020?

7           A     That's correct.

8           Q     Okay.  And between 2018 and '20 when you

9      were head of sales operations and planning, what was

10     David Ades' title?

11          A     David continued to be head of enterprise

12     sales.

13          Q     And did you still report to David?

14          A     I actually need to make a correction to that

15     previous answer.

16          Q     Okay.

17          A     At that time, David took on responsibility

18     for other sales segments, so he had responsibility for

19     all sales.

20          Q     Not just enterprise sales?

21          A     Correct.

22          Q     So his role increased?

23          A     Correct.

24          Q     And this is after 2018; right?

25          A     Correct.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 28

```
 1          Q    Do you know what "PCI compliance" means?

 2          A    I am familiar with the term.

 3          Q    And what is the -- what's your

 4     understanding?

 5          A    My understanding is that Bank of America

 6     Merchant Services had to meet certain regulatory

 7     requirements with regards to the way that we handled

 8     personally identifiable information about our clients,

 9     and specifically credit card promotions.

10               THE REPORTER:  And I'm sorry.  What was

11     that last part?  Client what?

12               THE WITNESS:  Credit card information.

13     BY MS. MARX:

14          Q    Okay.  So it was your understanding --

15               THE REPORTER:  And if possible, please

16     if could just silent your -- I apologize, Jeannie.

17               Natasha, if your phone is not on

18     silent, so we're avoiding interruptions.

19               MS. MARX:  Are we okay, now?

20               THE REPORTER:  Yep.

21               THE WITNESS:  Yes.

22     BY MS. MARX:

23          Q    Okay.  So it was your understanding that

24     BAMS had to meet certain regulatory requirements

25     regarding what was personal account information data,
```

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 29

1     credit card data, credit card information?

2          A     Correct.

3          Q     Okay.  And the credit card data that you're

4     referring to, is that also referred to as PAN data,

5     P-A-N data?

6          A     Yes.

7          Q     Okay.  And do you have an understanding that

8     PAN refers to primary contract number data?

9          A     Yes.

10         Q     Okay.  And PAN data, or primary account

11    number data, the actual credit card number --

12         A     Yes.

13         Q     -- on someone's credit card?  And did there

14    come a time that you became aware that BAMS was not

15    PCI compliant with respect to the transmission of PAN

16    data?

17                    MR. UNDERWOOD:  Objection to form.

18         A     Yes.

19         Q     Okay.  And would it be correct to say that

20    full PAN data is where the full account number is

21    unmasked?

22         A     Yes.

23         Q     Okay.  Can you describe the circumstances

24    under which you became aware that BAMS was not PCI

25    compliant?

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 30

```
 1                    MR. UNDERWOOD:  Objection to form.
 2                    MS. MARX:  What's the basis of the
 3        objection?
 4                    MR. UNDERWOOD:  You're calling on her
 5        to interpret legal requirements and regulations.
 6                    MS. MARX:  She just testified that BAMS
 7        was required to -- her testimony was BAMS had to meet
 8        regulatory requirements regarding PAN credit card
 9        data.  And I'm asking -- and she then testified that
10        she became aware that BAMS was not PCI compliant.
11                    My next question was for her to explain
12        the circumstances under which she became aware that
13        BAMS was not PCI compliant.
14                    Ms. Collins, you can answer --
15                    MR. UNDERWOOD:  I understand that,
16        Jeannie, and I'm not making a --
17                    MS. MARX:  You can answer the --
18                    MR. UNDERWOOD:  She's -- yes.  She can
19        answer the question.
20                    MS. MARX:  I am going to go to the
21        court if you continue to put in frivolous form
22        objections.
23        BY MS. MARX:
24             Q    Now, Ms. Collins, you can answer the
25        question about the circumstances under which you
```

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 31

1    learned that BAMS was not PCI compliant.

2                    MR. UNDERWOOD:  I maintain the

3    objection.

4                    But the witness can answer.

5                    MS. MARX:  Okay.

6                    THE WITNESS:  I learned about this in

7    an email from David Ades.

8    BY MS. MARX:

9         Q    So your receipt of an email from David Ades

10   was your first indication that BAMS was not PCI

11   compliant?

12        A    Yes.

13                   MR. UNDERWOOD:  Objection to form.

14   BY MS. MARX:

15        Q    And do you remember when that was?

16        A    I do not recall the date.

17                   MS. MARX:  So Shelley, pull up

18   Exhibit 16, 1-6.

19                   (Exhibit 16 was marked for

20                   identification.)

21   BY MS. MARX:

22        Q    Ms. Collins, we're going to share a screen

23   to show you exhibits.  Okay?

24        A    Okay.

25        Q    And I'm going to instruct you to read

Page 32

1    through the exhibits and just tell Shelley to scroll

2    down, and please let me know when you're ready to

3    answer questions about the exhibit.

4         A     This is the top of the page?

5         Q     Yes.  This is the top of the page.  And if

6    you need her to scroll further so that you can read

7    the whole thing, just let me know when she should

8    scroll down.

9         A     Okay.  I am ready to answer questions.

10        Q     Okay.  So the email that starts at the

11   bottom of Bates Number 1820 and goes on to Bates

12   Number 1821, is that the email that you're referring

13   to in which you learned that BAMS was not PCI

14   compliant?

15        A     Yes.

16                    MR. UNDERWOOD:  Objection to form.

17                    MS. MARX:  What's the basis of the

18   objection?

19                    MR. UNDERWOOD:  Again, you're asking

20   her PCI compliant without actually understanding

21   whether -- without actually establishing BAMS was

22   required to be PCI compliant.

23   BY MS. MARX:

24        Q     Okay.  Ms. Collins, so in this email, you

25   learned -- okay.  When you read Mr. Ades' email, did

Page 33

1    you have an understanding as to whether or not BAMS

2    was required to be PCI compliant?

3         A    Can you ask that question one more time?

4         Q    Yes.  At the time that you got this email

5    from Ades on June 13th, did you have an understanding

6    as to whether or not BAMS was required to be PCI

7    compliant?

8         A    I learned that by reading this email.

9         Q    Okay.  So it would be fair to say that your

10   understanding was that BAMS was required to be PCI

11   compliant but was not; is that right?

12        A    That was my understanding from reading this

13   email.

14        Q    Okay.  And is that because full PAN data was

15   being transmitted in an unencrypted, unsecured fashion

16   by BAMS employees?

17        A    Yes.

18        Q    Okay.  Prior to receiving Mr. Ades' email

19   dated June 13, 2017, that's in Exhibit 16, did you

20   have an understanding of the term "PCI compliance"?

21        A    I did not.

22        Q    Did you understand from Mr. Ades' email that

23   he did not want BAMS to become PCI compliant because

24   it would be costly and time consuming?

25             MR. UNDERWOOD:  Objection to form.

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 34

1    BY MS. MARX:

2        Q    You can answer the question.

3        A    That's what I read in this email.  He states

4    that --

5        Q    And was that your -- and was that your

6    understanding based on reading his email?

7        A    Yes.

8        Q    And based on reading his email, did you have

9    an understanding that the options were more merchants

10   to call First Data directly or to have First Data

11   dedicate a team to BAMS?  Did you understand that?

12       A    Yes.

13       Q    Okay.  And from reading this email, did you

14   understand that having merchants call First Data

15   directly was not a desired path because it would not

16   be a great client experience?

17       A    I had that understanding from the subsequent

18   email response by Brian Glynn.

19       Q    And what was your understanding as to why

20   having merchants call First Data directly would not be

21   a great client experience?

22       A    Bank of America had higher standards for

23   customer service handling than First Data did, so

24   there was a concern that the experience for our

25   client -- managed clients would not be satisfactory.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 35

1        Q    And weren't these also Bank of America

2    clients and not First Data clients?

3        A    That terminology is a little bit confusing

4    because Bank of America Merchant Services was owned by

5    both companies, and First Data provided some of the

6    processing services.  So I can't comment directly to

7    say whether clients were also clients of First Data or

8    not.  That's probably a legal nuance.

9        Q    Well, did you have an understanding as to

10   whether or not First Data provided the clients to BAMS

11   or BOA provided the clients to BAMS?

12       A    Bank of America provided the clients to

13   BAMS.

14       Q    Okay.  So would it be fair to say that as

15   far as the clients were concerned that BOA or BAMS was

16   the face of the relationship that they had regarding

17   the payment processing services that were being

18   provided?

19       A    I would say that they were the primary face.

20   There are times -- because First Data provided the

21   products that we sold to the clients, First Data was

22   also very involved in conversations with clients,

23   involved in sales calls with Bank of America Merchant

24   Services clients also.

25       Q    Okay.  But those were after the sales were

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 36

1    made; right?

2         A    During the sales process.

3         Q    Well, do you have any knowledge as to

4    whether First Data participated in

5    making -- participated in generating the sales?

6         A    Yes.  First Data participated in generating

7    the sales.

8         Q    So if I understand your answer about the

9    client experience concern, that was that Bank of

10   America had higher standards, so a merchant or client

11   getting information from First Data might not be

12   adequate.  Would that be fair to say?

13        A    No.  Can you repeat --

14        Q    Can you explain --

15        A    -- can you explain what you mean by

16   "inadequate"?

17        Q    Okay.  You testified -- okay.

18             THE REPORTER:  I'm sorry.  I'm not --

19   BY MS. MARX:

20        Q    Okay.  You testified before -- I asked for

21   your understanding regarding the client experience

22   concern, and you said that Bank of America had higher

23   standards than First Data, so going to First Data

24   would not be -- would not necessarily be satisfactory.

25             Can you explain that?

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 37

 1        A    The care, the handling of the client calls,

 2   the level of professionalism of the conversations in

 3   servicing situations.  We're talking about client

 4   servicing specifically may not have met Bank of

 5   America's standards.

 6        Q    Okay.  So why are you referring to Bank of

 7   America standards when the client was being serviced

 8   by BAMS?

 9        A    Bank of America -- Bank of America referred

10   the clients to us.  Bank of America had an ongoing

11   relationship with those clients for other banking

12   services, and Bank of America, in some ways, dictated

13   the level of service that they expected those clients

14   to receive from Bank of America Merchant Services.

15            And as part of our relationship with Bank of

16   America in this joint venture, there were specific

17   stipulations about how servicing would be handled, and

18   that was that it was to come from Bank of America

19   Merchant Services directly for our client-managed

20   clients.

21        Q    Okay.  So as far as Bank of America was

22   concerned, BAMS, not First Data, was to be the

23   interface with its clients; would that be a fair

24   statement?

25        A    Yes.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 38

1          Q    Okay.  Would it be fair to say that BAMS was

2     answerable to Bank of America regarding servicing

3     processes for ongoing -- with respect to ongoing MSAs?

4          A    Repeat the question, please.

5          Q    Would it be fair to say that BAMS was

6     answerable to Bank of America regarding servicing

7     processes for ongoing MSAs?

8          A    Yes.

9          Q    Okay.  So the option that Mr. Ades talked

10    about of having merchants call First Data directly,

11    which he explained might not be a great client

12    experience, do you have an understanding as to whether

13    that path was pursued by BAMS in addressing the PCI

14    noncompliance issue?

15         A    I do not recall whether that option of

16    having them call directly was pursued.

17         Q    Do you know whether First Data dedicated a

18    team to BAMS to handle the requests?

19         A    I do not recall.  I do not recall exactly

20    what the solution was.  I do know that that option was

21    considered and investigated.

22         Q    Okay.  Was a solution ever reached?

23         A    I do not recall.

24         Q    Would it be fair to say that if a solution

25    had been reached, it would be documented in some way?

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 39

 1          A     Yes.

 2          Q     What was your role then in addressing BAMS's

 3     PCI noncompliance issue?

 4          A     With our team's responsibility for the

 5     business control function, we were responsible for

 6     documenting any issues, such as the PCI compliance

 7     issue that were found and to partner with the sales

 8     team -- the client-managed organization, I should say

 9     more accurately -- to come up with a mitigation plan

10     for that.  So in a sense, our team was like a project

11     manager in helping the business put together a plan

12     for resolving the issue.

13          Q     Okay.  So what was your exact role?

14          A     My exact role was oversight of Eric in

15     execution of that activity.

16          Q     So you had here your team would document the

17     issues and partner with a sales team, you said

18     client-managed services, right, to put together a

19     remediation plan; is that right?

20          A     Yes.

21          Q     And did that require -- so the

22     client-managed services team, was that Jessica Saha's

23     team?

24          A     When I said client-managed organization, I

25     wasn't referring directly to Jessica's team.  The

Natasha Collins                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 40

1    client-managed organization that David Ades had

2    responsibility for.  David Ades had client-managed

3    sales and an account management team.

4         Q    Okay.  But the client-managed organization

5    team you're referring to was David Ades' team?

6         A    Correct.

7         Q    Okay.  And so you were overseeing by the

8    remediation, some kind of remediation plan for David

9    Ades' team; correct?

10        A    That would be correct.

11        Q    Okay.  Is that team also known as the CMSCS

12   team?

13        A    I suppose.  I don't recall the acronyms

14   exactly, but I've seen that documented.  I've seen it

15   documented that way in emails, in the emails that I

16   reviewed.

17        Q    Okay.  And so would be it fair to say that

18   the CMSCS team that you understand that to be David

19   Ades' team?  Would that be fair?

20        A    I believe that's correct.  I'm not trying to

21   be difficult.  It's just that that acronym, I don't

22   even remember exactly what part of the organization

23   referred to, don't remember exactly what all of those

24   alphabets stand for.

25        Q    Okay.  Fair enough.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                    Page 41

1                    MS. MARX:  Okay.  Shelley, can you show

2       her Exhibit 3?

3                    (Exhibit 3 was marked for

4                    identification.)

5       BY MS. MARX:

6            Q    Ms. Collins, do you know whether Jessica

7       Saha's team was referred by any initials or acronym?

8            A    In looking at this exhibit, I believe

9       Jessica's organization would have been CMS,

10      client-managed service.

11           Q    And how did you understand what her team

12      did?

13           A    I'm sorry.  Rephrase?

14           Q    How did you understand what her team did?

15      Okay.  Let me make it easier.

16                Would it be fair to say that that was also

17      referred to as operations?  Her team was operational?

18           A    Yes.

19           Q    And David Ades was sales; right?

20           A    Sales and account management.

21           Q    How would you describe the difference

22      between what Jessica Saha's team did as operations as

23      David Ades' team did as sales and account management?

24           A    So the account management team had more

25      senior-level associates that talked to often the

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 42

1      payment leaders at our clients, and they talked about

2      business issues, more strategic matters on accounts,

3      and the more complicated issues.

4              Jessica Saha's team had responsibility for

5      more day-to-day tactical servicing issues that had to

6      do with maintenance of the account, disputes,

7      chargebacks, taking care of -- yeah.  The best way to

8      describe it would be the more tactical issues that

9      came up on these accounts.  The account managers were

10     more of the primary face and the primary point of

11     contact for the clients.

12         Q    Well, do you know whether BAMS's clients,

13     merchants were told that BAMS was not PCI compliant?

14         A    I do not know.

15         Q    Did you have any discussions with Eric

16     Slawin about telling BAMS merchant clients that BAMS

17     was not PCI compliant?

18         A    No.  I did not have any conversations with

19     Brian -- with Eric about that.

20         Q    Did you have any conversations with David

21     Ades about telling BAMS's clients that BAMS was not

22     PCI compliant?

23         A    No.

24         Q    Did Eric Slawin ever express to you his

25     concern that BAMS's clients should be told that BAMS

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 43

```
 1    was not PCI compliant?

 2         A     No.

 3                   MR. UNDERWOOD:  Objection to form.

 4    BY MS. MARX:

 5         Q     Do you know whether Mark Kendall -- I'm

 6    sorry.  Let me restate that.

 7               Do you know whether Mr. Slawin ever told

 8    Mark Kendall that he was concerned about whether or

 9    not BAMS's clients were being told BAMS was not PCI

10    compliant?

11         A     I have no knowledge of conversations between

12    Mark and Eric.

13         Q     Okay.  And "Mark" is Mark Kendall; right?

14         A     Yes.

15         Q     And would it be fair to say that if

16    Mr. Slawin testified that he expressed to you concern

17    about what merchants were being told regarding BAMS's

18    PCI noncompliance that you would dispute that?  Would

19    it be fair to say that?

20         A     Repeat the question.

21         Q     Okay.  Would it be fair to say that if

22    Mr. Slawin testified that he discussed with you his

23    concern about what merchants were being told about

24    BAMS's PCI noncompliance that you would dispute that?

25    Would that be fair?
```

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 44

1        A    Yes.

2        Q    Okay.  So Shelley has up Exhibit Number 3.

3        A    Uh-huh.

4        Q    All right.  And let me know when you have

5    gone through that.

6        A    Okay.  You can keep scrolling.

7             Okay.  I've looked at the exhibit.

8        Q    Okay.  So can you identify Exhibit Number 3?

9        A    I'm sorry?  Can I identify?

10       Q    Can you identify this?  Is this an email

11   chain that you were part of at the time indicated in

12   the emails?

13       A    Yes.

14       Q    Okay.  So these are a set of emails,

15   including David Ades' email on June 13th right?  And

16   then two emails from Brian Glynn also on June 13th,

17   and then an email from you, right, to Brian Glynn,

18   David Ades, Monica Kennedy and Eric Slawin; right?

19       A    Yes.

20       Q    It's in 2017.

21            MS. MARX:  Now, if you flip back -- can

22   you show her back 16?

23   BY MS. MARX:

24       Q    And can you identify Exhibit 16 as the same

25   was Exhibit 3 insofar as the David Ades email and the

Natasha Collins                          August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 45

1     Brian Glynn email, both of June 13, but the Brian

2     Glynn email is the 9:51 a.m. email that's also

3     indicated on Exhibit 3; right?

4          A    Yes.

5          Q    Okay.  And so Exhibit 3 and Exhibit 16 are

6     the same except Exhibit 3 has two emails that are

7     later in time on June 13, 2017; right?

8          A    Yes.

9          Q    Okay.  And you were part of this email

10    chain, right, having received the Glynn emails and the

11    David Ades email and then responding; is that right?

12         A    Yes.

13         Q    Okay.  Now, if you look at Brian

14    Glynn's -- on Exhibit 3, Brian Glynn's 9:51 a.m. email

15    to David Ades and to you and to Monica Kennedy, he

16    says here "We understand that going down the path of

17    making BAMS PCI compliant is not something we want to

18    consider."

19              Do you see that?

20         A    Yes.

21         Q    Okay.  And would it be fair to say that

22    making BAMS PCI compliant was an option that was off

23    the table, to your understanding?

24                   MR. UNDERWOOD:  Objection to form.

25    //

Natasha Collins                                           August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 46

```
 1    BY MS. MARX:

 2         Q    You can answer.

 3         A    Yeah, because I wouldn't say it was off the

 4    table.  I would say it was not the preferred option.

 5         Q    Why was that?

 6         A    Because it says it's not something we want

 7    to consider.

 8         Q    Okay.  But why was it not the preferred

 9    option?  Do you know why?

10         A    In David's email, he says it was not the

11    preferred option because it would be costly.

12         Q    Do you know whether BAMS ever became PCI

13    compliant?

14         A    I do not recall.

15         Q    Well, let me ask you something.  Weren't you

16    responsible for overseeing the operational risk

17    function?

18         A    I was responsible for the business control

19    function.

20         Q    Okay.  Did that include --

21         A    I corrected that in my testimony.

22         Q    Okay.  So you don't know.  Okay.  Now, you

23    said you didn't recall whether having a dedicated

24    First Data team was a route you were going to down

25    to -- that BAMS was going to go down.  If you look at
```

Natasha Collins                                       August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                              Page 47

1      Brian Glynn's email on June 13th at 1:37 p.m. on

2      Exhibit 3, would it be fair to say that that was a

3      path that was not going to be pursued also?

4           A    It depends on what you mean by "pursued."

5      So here, it looks like the research was done about

6      that option, and it did not prove to be feasible.

7           Q    Okay.  So having a dedicated First Data team

8      wasn't feasible?

9           A    Brian says here that it was not the right

10     route.

11          Q    Did the business control function include

12     risk management?

13          A    It depends on what you mean by "risk

14     management."  It's a very, very broad term.  Risk

15     management in financial services is a very broad term

16     and takes into account a lot of functions.  So that's

17     why I'm being specific about our responsibility for

18     the first line of defense -- there are three lines of

19     defense in risk management.

20               So we have responsibility for the first line

21     of defense, which was helping the business proactively

22     identify risks and develop mitigation plans for them.

23     And then when risks for identified by second level of

24     defense, third level of defense, then we got involved

25     again in helping the business mitigate those as well

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 48

1    or develop plans for remediation.

2         Q    Okay.  I'm a little confused.  You said the

3    first line of defense is helping the business identify

4    risks and, what, come up with a remediation plan?

5         A    That's correct.

6         Q    Okay.  And that was part of your role?

7         A    That is correct.

8         Q    Okay.  And what was the second line of

9    defense?

10        A    The second line of defense would be the

11   corporate risk management function led outside of my

12   team that set policies, that communicated what risks

13   needed to be evaluated by the business in the

14   first-line functions.

15        Q    Okay.  And so you're basically saying that

16   the -- at a higher level, at a corporate level, the

17   second line of defense would identify the risks,

18   right, to be pursued and remediated?  Would that be

19   correct based on what came to them from you all guys

20   at a first line; right?

21        A    There are two places risks get identified.

22   Risks may get identified by the business.  Those are

23   considered self-identified, audit issues.  Risks could

24   get identified by the second line of defense as well

25   through their own independent evaluations.

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 49

1        Q    Okay.  So when you were referring to
2    self-identified risks, you're saying risks that would
3    be identified by your group?
4        A    By the sales teams, by the business itself.
5        Q    All right.  Well, I'm confused when you --
6        A    Our team -- our team.
7        Q    -- refer to the team then.
8              THE REPORTER:  And I'm sorry.  I didn't
9    catch --
10             THE WITNESS:  Yes.
11             THE REPORTER:  -- what you said,
12   Attorney Marx.
13   BY MS. MARX:
14       Q    I said I'm confused by what you mean by
15   identified by "the business."  What is "the business"?
16       A    By the sales team and account management
17   team reporting to David Ades that we supported.  Our
18   team, the business control team was not responsible
19   for proactively identifying risks.  The business
20   control team was responsible for coordinating the
21   process and encouraging David Ades and his leadership
22   team to identify risks.  When they identified them, we
23   documented them, helped them develop mitigation plans
24   and implement those plans.  I hope that helps.
25       Q    That helps.  And did one of those risks that

Slawin, Eric v. Banc of America Merchant Services, et al.

1    were identified in 2017 include PCI noncompliance?

2        A    Yes.

3        Q    Okay.  And so, going back to Exhibit 3, it

4    looks like you sent the email chain containing the

5    Brian Glynn emails and the David Ades email to Eric

6    Slawin to get it -- you said here "get it documented

7    and pull us together to review."

8             What is this what you wanted Eric Slawin to

9    do?

10       A    I wanted Eric to document the

11   self-identified audit issue and then pull the teams

12   together to review that documentation, approve it,

13   complete it, so that that issue could be submitted.

14       Q    Submitted to whom?

15       A    Submitted to the second line of defense, to

16   our enterprise risk management team.  You may see them

17   referred to as "ERM."

18       Q    Okay.  Let's take this step by step.

19            MS. MARX:  Could you just read back her

20   answer, please?

21            THE REPORTER:  Yep.  One moment.  I can

22   play that back.

23            (The reporter repeated the record as

24            requested.)

25   //

Natasha Collins                          August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 51

1    BY MS. MARX:

2         Q    What documentation were you referring to?

3         A    Documentation of the self-identified audit

4    issue.

5         Q    Specifically, what does that mean?

6         A    I recall that there were specific templates

7    that we were given and required to complete when an

8    issue was identified.  It required things like a

9    statement of what the issue was, potential impacts,

10   and it included the mitigation plan, and likely

11   milestones around when those -- when the mitigation

12   plan would be completed.

13        Q    Whose job was it to determine what the

14   mitigation plan would be?

15        A    I would say -- ask me one more time.  Whose

16   responsibility was --

17        Q    Yes.

18        A    -- it to determine --

19        Q    Determine --

20        A    -- that would be the responsibility of David

21   Ades and the Bank of America Merchant Services

22   leadership team.

23        Q    And that would be Tim Tynan?

24        A    Right.  Because we -- the business control

25   function would document the mitigation plan based on

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 52

1    the inputs from David's team.  So if they agreed with

2    the plan, we would document it and submit it.  Then it

3    would get reviewed by the enterprise risk management

4    team, and that team had the option to tell us that's

5    not a sufficient plan, we think you need to beef it in

6    this way or the other.  You need to do something

7    different in the plan, you need to do it faster.

8            So while it started with David's team, there

9    was an opportunity for the executive -- for the

10   enterprise risk management team to review it and give

11   us other direction on the mitigation plan.

12       Q    So when you say "the enterprise risk

13   management team," that would be David Ades and the

14   BAMS leadership team?  Is that what that means?

15       A    It would have been the person

16   responsible -- or chief risk and compliance officer,

17   who I believe was Tom Fontana --

18       Q    Tom Fontana --

19       A    -- at the time.

20            THE REPORTER:  I'm sorry.  What was

21   that?

22            MS. MARX:  Fontana, F-O-N-T-A-N-A.

23   BY MS. MARX:

24       Q    Okay.  And was Mr. Fontana part of the BAMS

25   leadership team?

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 53

```
 1          A    Yes.

 2          Q    And so when you talk about it going up to

 3     the second level ERM, that was within BAMS; right?

 4          A    Yes.

 5          Q    Okay.  Did you expect Mr. Slawin to include

 6     suggested mitigation or remediation in the SIAI?

 7          A    Did I expect him to include it?

 8          Q    Yes.

 9          A    I did, because it's part of the required

10     documentation.  I did not expect Eric to develop a

11     mitigation plan.  I expected him to include it in the

12     documentation.

13          Q    Where was he supposed to get the mitigation

14     plan from?

15          A    From David Ades and his leadership team.

16     And it's probably not even fair for me to say David

17     Ades, but with the working group that was on that

18     email.  It was Brian Glynn, Monica Kennedy, the people

19     that were on the distribution of that email.  A

20     working group would have come together, develop a

21     proposed mitigation plan before we would have pulled

22     David in.

23          Q    So Brian Glynn and Monica Kennedy, were they

24     within David Ades' team?

25          A    Brian Glynn was.  I don't recall Monica's
```

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 54

1    relationship at that time.

2         Q    Well, was part of that working group Jessica

3    Saha's team?

4         A    If Jessica Saha was on that email.  I don't

5    recall if she was brought in at that point in the

6    email.

7         Q    Well, did you instruct Mr. Slawin to get

8    information and include Jessica Saha's team?

9         A    I don't recall specifically naming names,

10   and I don't recall which names I would have given him.

11   The instructions that I gave him were those in the

12   email.

13        Q    Were these the only instructions you gave

14   him in this email?

15        A    I thought that's what we're talking about,

16   is the point at which I asked him to pull the people

17   together.

18        Q    So in this email, you were referring to

19   Monica Kennedy and Brian Glynn, because these are the

20   only people in the email; right?

21        A    Right.

22        Q    Okay.

23        A    Well, let's see here.  Yes.  Yep, on the

24   13th.

25        Q    Okay.  Who exactly was expected to suggest a

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 55

1    mitigation plan?

2         A    It would have been the people involved in

3    execution of the activities that presented the risk.

4         Q    Who was that?

5         A    So in this case, Brian Glynn's team.  I

6    suppose, after further investigation, we learned that

7    Jessica and Chris' team were also involved.  But on

8    Tuesday, June 13th, when this request was made, it was

9    really between Brian Glynn and Monica Kennedy.  So

10   those would have been the people that I would have

11   expected Eric to work with and come up with a

12   resolution -- come up with a mitigation plan.

13        Q    So Brian and Monica?

14        A    Correct.

15               MS. MARX:  Pull up Exhibit 28, Shell.

16               (Exhibit 28 was marked for

17               identification.)

18               THE WITNESS:  Okay.  I've finished

19   reading this document.

20   BY MS. MARX:

21        Q    Okay.  And can you identify it?

22        A    It is the self-identified audit issue

23   documentation and the one that was -- well, yeah.

24   It's the documentation on the self-identified audit

25   issue.

Natasha Collins                                       August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 56

1        Q    Okay.  And is this the template to which you

2   were referring previously?

3        A    Yes.

4        Q    And then this would have been submitted to

5   the second-level ERM; correct?

6        A    That's correct.

7        Q    Would it be fair to say that as of

8   December 15, 2017, there was no remediation plan

9   developed at that time?  If you look at the second

10  page?

11       A    There is a remediation plan documented here.

12       Q    What's the plan?

13       A    Validate the current situation and identify

14  PAN data gaps, explore solutions to address and select

15  the best solution, create a project plan to implement

16  the solution, implement the solution, test the

17  solution, and implement ongoing controls.

18       Q    Okay.  So the plan as of December 17th was

19  to further figure out how to remediate the problem;

20  would that be fair?

21       A    According to the way this is documented,

22  yes.

23       Q    Okay.  So as of December 15, 2017, there was

24  no remediation plan that actually solved the problem;

25  is that a correct statement?

Natasha Collins                                            August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 57

1        A    As of December -- as of this document, there
2    was not a solution identified.
3        Q    Okay.  And the timeline for completion to
4    identify a solution was TBD, to be determined; right?
5        A    I do not recall.  I do not see any time
6    frame listed here.
7        Q    Okay.  Look on page --
8        A    Oh, yeah.  It says timeline for completion
9    is TBD.
10       Q    Okay.  So is it fair to say that it wasn't
11   determined when a solution would be identified; is
12   that fair?
13       A    Yes.
14             MS. MARX:  Will you show her exhibit --
15   BY MS. MARX:
16       Q    Did you have any input into creating
17   Exhibit 28?
18       A    I don't recall.
19       Q    Would it have been part of your job duties
20   to review the SIAI submission before it was submitted?
21       A    Yes.
22       Q    So even if you don't recall specifically
23   having done so with respect to Exhibit 28, would it be
24   correct to say that it would have been part of your
25   normal job functions to have reviewed this kind of

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 58

1    document?

2         A    Yes.

3                   MS. MARX:  I think I need a little

4    bathroom break.  And I forgot to say, Ms. Collins, if

5    there comes a time -- I apologize for this -- if you

6    do or you need a break for some reason, just tell me.

7    We'll just finish a line of questioning.

8                   So I apologize for not kind of giving

9    you that heads up before.  But I need a bathroom

10   break, and we've been going for a little while.

11                  Can we take ten minutes, please?

12                  MR. UNDERWOOD:  That's fine.

13                  THE REPORTER:  All right.  We are going

14   off the record.  The time is 11:44 a.m.

15                  (Off the record.)

16                  THE REPORTER:  We are back on the

17   record.  The time is 1:01 p.m.

18   BY MS. MARX:

19        Q    Ms. Collins, did you ever work for Bank of

20   America?

21        A    Yes.

22        Q    Okay.  And when did you work for Bank of

23   America?

24        A    2001 or 2002 until the time that I started

25   working at BAMS in 2010.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 59

```
 1          Q     Okay.  So you worked at Bank of America, and
 2    then you worked for BAMS?
 3          A     Yes.
 4          Q     And what did you do at Bank of America?
 5          A     At Bank of America, I worked on change
 6    management in their technology division.
 7          Q     Do you have a LinkedIn profile?
 8          A     Yes, I do.
 9          Q     Okay.  And who wrote -- I mean, did you
10    create your own profile on LinkedIn?
11          A     Yes.
12          Q     And are you active on LinkedIn?
13          A     Can you define "active"?
14          Q     Okay.  How often do you go on to LinkedIn to
15    look at your profile or interact with other folks on
16    LinkedIn?
17          A     Once or twice a week.
18                      MS. MARX:  Okay.  Can you pull up 83?
19                      (Exhibit 83 was marked for
20                      identification.)
21    BY MS. MARX:
22          Q     Ms. Collins, this is the LinkedIn profile
23    that I pulled up for you from LinkedIn.
24                Is this your LinkedIn profile?
25          A     It appears to be.
```

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 60

```
1                    MS. MARX:  Okay.  Can you scroll down?
2        BY MS. MARX:
3            Q    Okay.  And is there any reason to question
4        whether or not this is your profile?  You're sure that
5        this is it; right?
6            A    Well, I'm looking at the top where it says
7        change management executive at Bank of America, so
8        you're only showing me a part of it, I assume, because
9        that's not my current -- that's not what the current
10       headline, so to speak, would be.
11                   MS. MARX:  Okay.  If I go to your -- we
12       can pull up your profile?  Okay.  You know what?  I
13       can do it.  Bear with me a second.
14                   THE WITNESS:  Uh-huh.
15                   (Discussion held off the record.)
16       BY MS. MARX:
17           Q    All right.  Ms. Collins, I am going to show
18       you -- are you able to see this profile at all?  Are
19       you able go into --
20           A    It is.  It's very blurry.
21           Q    It's very blurry.
22                   MS. MARX:  How can I do it?
23                   (Discussion held off the record.)
24                   MS. MARX:  Just bear with me a second.
25       I just want to be clear about this because this is the
```

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 61

```
 1      profile as I see it.
 2                  (Discussion held off the record.)
 3      BY MS. MARX:
 4          Q    Okay.  Ms. Collins, this is your LinkedIn
 5      profile that I've just pulled up from LinkedIn and
 6      which is Exhibit 83.
 7          A    This looks out of date.
 8          Q    Okay.  Well, this is the profile when we put
 9      your name in.
10          A    Perhaps at some point I created a new one,
11      although I don't recall that.  But this is not what my
12      current profile would look like.
13          Q    Okay.  All right.  So you're saying
14      Exhibit 83 was a LinkedIn profile at some point in
15      time?
16          A    I am saying that the information here does
17      represent part of my background.
18          Q    But this is not your current profile; is
19      that what you're saying?
20          A    That is what I'm saying, yes.
21          Q    And there is another profile for you on
22      LinkedIn?  Is that what you're saying?
23          A    Yes.
24          Q    Okay.  That's fine.  Because I was a little
25      confused looking at this.
```

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 62

1          All right.  So to go back to the SIAI issue,

2     now, at the time -- after June 13th and you got the

3     email from Ades, or at that time was Mr. Slawin your

4     direct report?

5          A    I believe that is the case, but I'm not

6     entirely certain.

7          Q    Well, in June of 2017, to whom did

8     Mr. Slawin report?

9          A    As I said, I believe that he reported to me.

10    We had a lot of changes in the structure of that team,

11    and I can't be entirely certain whether it was a

12    direct reporting relationship or indirect reporting

13    relationship at that time.

14         Q    Okay.  And which time are we talking about,

15    are you referring to?

16         A    The time that you just --

17         Q    In June --

18         A    -- June of 2017.

19         Q    Okay.  And you said we had a lot of changes

20    to that team.  Which team are you referring to?

21         A    Business controls.

22         Q    Okay.  So business controls was the team

23    responsible for the PCI noncompliance issue?

24         A    Yes.  It was the team that was documented

25    that issue with David Ades' team.

Page 63

1          Q    Okay.  But at the Level 1 line of defense,

2     which as you described it, the business controls team

3     was the team documenting the PCI noncompliance issue;

4     correct?

5          A    Yes.

6          Q    Okay.  And David Ades' team, would the way

7     to understand that be, like, the Level 2 team?

8          A    No.  The level --

9          Q    Okay -- go ahead.

10         A    The Level 2 team was enterprise risk

11    management.

12         Q    And that meant for all of BAMS?

13         A    Yes.

14         Q    Okay.  So would it be correct to say that

15    the Level 1 team, of which Mr. Slawin was a part, was

16    not responsible for a remediation plan relative to the

17    entire enterprise?

18         A    Yes.

19         Q    And so I understand this, Mr. Slawin's

20    role -- so Mr. Slawin's role, he was part of risk

21    management, which was part of business control, for

22    David Ades' team; is that right?

23         A    I would not say that he was part of risk

24    management.  I would say that he was part of business

25    controls.

Natasha Collins                      August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 64

1          Q     Okay.  But relative to -- okay.  So being

2     part of business controls, did that involve risk

3     management with respect to the PCI noncompliance

4     issue?

5          A     It involved the scope of responsibilities

6     that I testified to earlier.

7          Q     Okay.  So that was to identify the risk and

8     to come up with some remediation plan; correct?

9          A     It was to document risks identified by the

10    business and to partner with the risk -- partner with

11    the business on the remediation plans and

12    implementation of them.

13         Q     And that was regarding --

14         A     I explained previously the difference

15    between that and risk management.

16         Q     And that was regarding the PCI noncompliance

17    issue; correct?

18         A     What was regarding the PCI noncompliance

19    issue?

20         Q     You just testified now that Slawin's role

21    was to partner with the business to document the

22    risks.  We're talking about the risks -- document the

23    risks and partner with, you said, the business.  And

24    this had to do with the PCI noncompliance issue that

25    had been identified and brought to your attention in

Page 65

1    June of 2017; correct?

2         A    Yes.

3         Q    Okay.  Are you aware of whether any of

4    BAMS's MSAs required BAMS to be PCI compliant?

5         A    I am not aware.

6         Q    Does that mean you don't know one way or

7    another or to your understanding, they did not?  I

8    just want clarity on your answer.

9         A    It means I am not aware whether they did one

10   way or the other.

11        Q    Okay.  Did you discuss with David Ades,

12   telling the merchants with whom BAMS -- to whom BAMS

13   provided payment processing that BAMS is not PCI

14   compliant?

15        A    I did not.

16        Q    Why not?

17        A    That was not in the scope of the discussions

18   we had.  It did not come up.

19        Q    But did it concern you that BAMS's merchants

20   might have exposure that they didn't know about if

21   they didn't know that BAMS was not PCI compliant?

22                   MR. UNDERWOOD:  Objection to form.

23        A    It did not.

24        Q    It didn't concern you?

25                   THE REPORTER:  And I'm sorry.  What was

Case 1:19-cv-04129-AT    Document 196-2    Filed 09/18/25    Page 66 of 178
Natasha Collins                                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 66

1    that, Mr. Underwood?

2                   MR. UNDERWOOD:  Just an objection to

3    form.

4                   THE WITNESS:  It did not.

5    BY MS. MARX:

6         Q    Okay.  And why was that?

7         A    Because we were working towards a

8    remediation plan.

9         Q    So during the time that you were working

10   towards a remediation plan, did you have any opinion

11   as to whether or not BAMS's merchants should know that

12   BAMS was not PCI compliant?

13        A    I did not.

14        Q    So you had no opinion one way or another?

15        A    That's correct.

16        Q    Okay.  And that's because you were working

17   towards a remediation plan to remediate the issue of

18   BAMS's noncompliance?

19        A    That's correct.

20        Q    Okay.  And in December of 2017, when the

21   SIAI was submitted, I think you agreed that the plan

22   did not itself identify a specific remediation plan;

23   correct?

24                   MR. UNDERWOOD:  Objection to form.

25        A    It did --

Case 1:19-cv-04129-AT    Document 196-2    Filed 09/18/25    Page 67 of 178

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 67

1        Q    To resolve the piece -- I'm sorry.  To
2    resolve the PCI noncompliance issue?
3        A    I testified earlier that there was a
4    remediation plan in place.
5        Q    But the plan was to continue the
6    investigation and to come up with a plan; isn't that
7    right?
8        A    To come up with a solution.
9        Q    Right.  And so the SIAI itself did not come
10   up with a solution; isn't that right?
11       A    Yes.
12       Q    That's a correct statement; right?
13       A    Yes.
14       Q    What happened -- strike that.
15            Are you aware of whether there were
16   merchants who asked BAMS about BAMS's PCI compliance
17   during this period when the SIAI was being developed?
18       A    Yes.
19       Q    Okay.  And what were those merchants told
20   regarding BAMS's PCI compliance?
21       A    I am only aware of -- let me see.  I only
22   recall the one that was documented in the materials
23   that I reviewed, and that was covered in standard
24   documentation that we provided regarding compliance,
25   using information that we had from First Data.

Natasha Collins                           August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 68

1          Q    Okay.  So was that the Verisign company, the

2     Verisign merchant that was asking?  Is that what

3     you're referring to?

4          A    That's correct.

5          Q    Okay.  And in fact --

6               MS. MARX:  Let's take a look, Shelley,

7     at -- show her Exhibit 59.  And pull up both 59 and

8     57.  Okay?

9               (Exhibit 57 and Exhibit 59 were marked

10              for identification.)

11    BY MS. MARX:

12         Q    So I understand you correctly, the response

13    to inquiries that were being made by Verisign as to

14    BAMS's PCI compliance was to refer Verisign to First

15    Data's information; is that right?

16         A    First Data was our third-party service

17    provider.  So for specific questions on those

18    questionnaires, we relied on information from First

19    Data.

20         Q    Okay.  But didn't Verisign ask you for

21    information regarding BAMS's PCI compliance, not First

22    Data's PCI compliance?

23         A    I don't know the specific questions that

24    were asked by Verisign.

25              MS. MARX:  Okay.  Pull up 59 and 57.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 69

```
 1     BY MS. MARX:
 2         Q    All right.  I'm going to ask you to leaf
 3     through this document, read through it.  And when
 4     you're ready, let me know, because then I have
 5     specific questions about this document.
 6         A    Okay.  You can scroll down.
 7              Hold on one sec.  Okay.
 8              Okay.  Keep scrolling.
 9              Okay.  Keep scrolling.
10              Hold on one second.  Don't scroll any
11     further.
12              Okay.  You can keep scrolling.
13              Hold on one second.
14              Okay.  You can keep scrolling.
15              Okay.  Keep scrolling.
16              Okay.  You can keep scrolling.  Okay.
17              Okay.  You can keep scrolling.
18              Okay.  Keep scrolling, please.
19              I'm sorry.  Could you scroll back down?  I
20     wasn't finished with that section.  Okay.
21              Okay.  Keep scrolling.
22              Okay.  You can keep scrolling, if there's
23     more.
24              Okay.  Let's keep scrolling.  Okay.  Pause
25     here.
```

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 70

1              Okay.  You can keep scrolling.

2              Keep scrolling, please.

3              Please keep going, keep scrolling.

4              Okay.  Keep scrolling.

5              I'm sorry.  Can you scroll back up?

6              Okay.  Keep going back up.

7              And keep scrolling up one more time.

8              Okay.  Okay.

9                   MR. UNDERWOOD:  And Jeannie, just to be

10    clear, I have a question.  Are these two different

11    Bates spans spliced together?  Because I think there's

12    a -- it starts in the 500s and looks like it goes to

13    the 1000s.

14                   MS. MARX:  Yes.  So this is a

15    compilation of emails related to Verisign.  They were

16    produced --

17                   MR. UNDERWOOD:  Okay.  I just wanted

18    to --

19                   MS. MARX:  Yeah.

20                   MR. UNDERWOOD:  Got it.  Thank you for

21    the clarification.  I appreciate it.

22                   MS. MARX:  That's fine.

23                   THE WITNESS:  Okay.  Keep scrolling.

24              Okay.  Keep scrolling.

25              Is that the end?

Slawin, Eric v. Banc of America Merchant Services, et al.

Page 71

1              MS. MARX:  Yeah.  Also show her 57.

2       BY MS. MARX:

3           Q    I'm going to show you another exhibit that's

4       related to Verisign.  I'm going to ask you questions

5       about this.  I just figured it would be easier.

6           A    Uh-huh.  Keep scrolling, please.

7                Keep scrolling, please.

8                Keep scrolling, please.

9                Keep scrolling.

10               Keep scrolling.

11               Keep scrolling.

12               Keep scrolling.

13               Keep scrolling.

14               Okay.  Keep scrolling.

15               Keep scrolling.

16               Okay.  Keep scrolling, or if that's the end.

17       Is that the end?  Okay.  Then I'm done reading this

18       document.

19          Q    Okay.  Are you familiar with Verisign?  And

20       if so, can you tell me what Verisign is?

21          A    I am not familiar with the client.

22          Q    Okay.  Earlier, you testified to some issue

23       with respect to Verisign.  What were you referring to?

24          A    I was referring to this string of emails.

25          Q    To the string of emails that are contained

Slawin, Eric v. Banc of America Merchant Services, et al.

Page 72

1    in Exhibits 57 and 59?

2         A    That's correct.

3         Q    Okay.  And as to the emails contained in 57

4    and 59, would it be fair to say that you saw all of

5    those emails in or around the time that they were

6    written?

7         A    I saw the emails that were directed to me on

8    the dates listed in the emails.

9         Q    Okay.  Did there come a time that you became

10   aware that Verisign was asking BAMS to provide

11   documentation regarding BAMS's PCI compliance?

12        A    What I understand from reviewing these

13   documents is that Verisign is trying to assess PCI

14   compliance of the Payeezy product, not the BAMS

15   compliance.

16        Q    Well, was Verisign asking BAMS to provide an

17   attestation regarding its BAMS PCI compliance?

18        A    As I mentioned previously, I did not review

19   Verisign's questionnaire.

20        Q    Did you have any discussions -- strike that.

21             Do you have an understanding as to what Eric

22   Slawin's role was with respect to responding to

23   Verisign's questionnaire?

24        A    Yes.

25        Q    Okay.  And what was that understanding?

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 73

1         A    Eric's role was to receive these -- let me

2    back up.  Eric had two functions.  His first function

3    was to define a process for these requests to be

4    handled.

5              The way he designed that process required

6    him to receive the requests from our business

7    consultants, our sales team, and distribute

8    them -- actually, to answer the questions that he was

9    able to respond to and then work with First Data or

10   others at BAMS to get the remaining questions answered

11   and deliver completed questionnaires back to the

12   sellers.

13        Q    So I understand what you just testified to,

14   so part of Mr. Slawin's job is that he would receive

15   questionnaires from merchants; right?  And he would

16   answer the questions that he could from BAMS's

17   perspective and work with First Data or other folks

18   within BAMS to deliver a completed questionnaire back

19   to the customer; is that right?

20        A    The one thing I would correct in your

21   statement is that he did not receive the documents

22   from merchants.

23        Q    Okay.  He received them from consultants or

24   other business folks within BAMS; right?

25        A    That is correct.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 74

1        Q    Okay.  And that would be someone like Jorge

2    Abello?

3        A    That's correct.

4        Q    Who was a business consultant?

5        A    That's correct.

6        Q    Okay.  But at the end of the day,

7    Mr. Slawin's responsibility was to provide a completed

8    questionnaire.  Was it sent back to the merchant

9    directly or back to the consultant?

10       A    His responsibility would be back to the

11   consultant.

12       Q    Okay.  But in any event, to have that

13   questionnaire fully completed?

14       A    Yes.

15       Q    Okay.  Got you.  All right.  Now, did there

16   come a time that -- let's strike that for a minute.

17            Let me ask you.  Do you know when Verisign

18   first approached BAMS to complete the questionnaire?

19       A    From my review of the exhibits, it seems

20   that it was April of 2017.

21       Q    Okay.  And that's what's reflected in

22   Exhibit 57 at 420 to 421; right?

23       A    From my review of the documents, it appears

24   that this is the first request by Verisign for the

25   assessment information, and it was on

Natasha Collins                                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 75

1    April 28th -- yes, Friday, April 28th.

2         Q    Okay.  And as I see it, so it was Alan

3    Morris from Verisign sent the request to Jorge Abello,

4    who was, I guess, the business consultant who dealt

5    with Verisign?

6         A    That's correct.

7         Q    Who is Beatrice Williams?

8         A    Beatrice Williams was also on the business

9    controls team.

10        Q    So that's Eric's team?

11        A    Yes.

12        Q    Did she report to Mr. Slawin?

13        A    I don't believe that was the reporting

14   relationship.  I don't recall specifically.

15        Q    Do you know why she was cced on the

16   questionnaire from Alan Morris on the 28th?

17        A    I am not exactly certain.  But as a member

18   of the business controls team, she likely played

19   a -- played a role in answering -- helping to get

20   these questionnaires answered.  I do not recall

21   specifically what her role was.

22        Q    What was her role vis-a-vis Eric Slawin?

23        A    I don't recall specifically.  I would expect

24   that they were peers.

25        Q    Okay.  And Marty Mederos was also cced on

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 76

1    the email from Alan Morris to Jorge Abello; right?

2    You see that?

3         A    Yes.

4         Q    And Marty Mederos was at Bank of America?

5         A    Yes.

6         Q    Am I right?

7         A    Yes.

8         Q    Okay.  Do you know why Marty Mederos was

9    cced on Alan Morris' email to Jorge Abello at BAMS?

10        A    I don't know with certainty.  I can make

11   assumptions.  I don't know.

12        Q    Well, do you have an opinion as to why that

13   was?

14        A    From the email chains --

15             MR. UNDERWOOD:  Objection to form.

16             THE REPORTER:  I'm sorry.  What was

17   that?

18             MR. UNDERWOOD:  Just an objection to

19   form.

20             The witness can answer.

21             THE WITNESS:  From the emails

22   that -- from the emails that I reviewed, it appears

23   that Marty has a relationship with Verisign at Bank of

24   America.

25   //

Natasha Collins                                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 77

1    BY MS. MARX:

2        Q    Okay.  All right.  And so, if you look on

3    Exhibit 57 at page 420, Beatrice Williams then sends

4    the questionnaire to First Data to be answered; is

5    that right?  Am I understanding this correctly, in

6    June?

7        A    Correct.  That's correct.

8        Q    Okay.  And if we go back a page to 419,

9    would it be correct to say that in June of 2017, First

10   Data is responding that it's for BAMS to complete the

11   questionnaire; is that right?

12       A    No.

13       Q    Okay.  First --

14       A    No.

15       Q    Well, if you look at the email dated June 6,

16   2017, at 10:28 a.m., from Keri Patterson to Beatrice

17   Williams, is she not saying that it's up to -- it's

18   for BAMS to complete the questionnaire?  I'm trying to

19   understand the email --

20       A    What I see --

21       Q    Yeah.  Go on.

22            THE REPORTER:  I'm sorry.  What was

23   that?

24            MS. MARX:  I said I'm trying to

25   understand this email.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                            Page 78

1                    THE WITNESS:  In the first sentence,

2       she says:  It is up to BAMS to complete these.  And if

3       there is a need for First Data to assist, you can

4       direct the request through the portal.

5                    So in my opinion, that means First Data

6       is willing to help with these requests.

7       BY MS. MARX:

8            Q    Okay.  Well, did there come a time that

9       First Data pushed back and said that they were not

10      going to help, and it's not for them to complete the

11      question, and that BAMS needs to do it?

12                   MR. UNDERWOOD:  Objection to form.

13                   THE WITNESS:  Yeah.  Restate the

14      question again?

15                   MS. MARX:  Could you please read the

16      question back?

17                   THE REPORTER:  All right.  One moment.

18                   (The reporter repeated the record as

19                   requested.)

20                   THE WITNESS:  Yeah.  There are several

21      things in there that you say First Data said, some of

22      which they did; some of which they didn't.

23      BY MS. MARX:

24           Q    Okay.  Which did they say and which didn't

25      they say?  Tell me what First Data said?

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 79

1          A     First Data said they believed BAMS should

2     have the information to complete this request.

3          Q     And was the information that was being

4     sought about First Data's PCI compliance or was the

5     information being sought about BAMS's PCI compliance?

6          A     The information being sought was about PCI

7     compliance of the Payeezy product that First Data

8     provided to us.

9          Q     Okay.  And to your understanding, did that

10    include whether BAMS was PCI compliant with respect to

11    that product?

12                    MR. UNDERWOOD:  Objection to form.

13         A     I don't know.  I don't think I understand

14    exactly your question.  I don't think I can interrupt

15    what Verisign was asking about reviewing their

16    questionnaire.

17         Q     Okay.  So if you look further up, Jorge

18    Abello sends an email in July, on July 17th:  Is this

19    something the BAMS PCI team can fill out?  This is a

20    small opportunity; however, an important relationship

21    to the bank.

22                    Do you have any idea what he's talking about

23    there?

24         A     Which part?

25         Q     Okay.  Is this something the BAMS PCI team

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 80

```
 1    can fill out?

 2         A    I don't know who he's referring to as a BAMS

 3    PCI team.

 4         Q    Okay.  And he is referring, he says "This is

 5    an important relationship to the bank."

 6              Do you have an understanding about what he's

 7    referring to there?

 8         A    My opinion would be that he means this is a

 9    large client, that they have significant assets with

10    the bank.  That would be my opinion and interpretation

11    of it.

12         Q    Significant to BAMS or significant to BOA,

13    or both?

14         A    Significant to the bank.

15         Q    The bank is BOA?

16         A    Bank of America.

17         Q    Okay.  If you look at Exhibit 57, page 416,

18    my first question to you actually with respect to

19    Exhibit 57 -- Exhibit 57 is like an email chain.  And

20    did you see all of these emails back and forth in July

21    of 2017?

22              MR. UNDERWOOD:  Objection to form.

23         A    I can only assume I saw the emails that have

24    my name on them.

25         Q    All right.  If you look at Bates Number 416,
```

Natasha Collins                                                   August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 81

1      your name is on an email from Loreto Evangelista at

2      BAMS.  You were cced on this.

3              Do you remember getting the email that's

4      dated August 8, 2017, at 7:59 a.m.?

5          A    I don't recall much of this because it was

6      seven years ago.

7          Q    Okay.  Well, is there any reason to doubt

8      that you got this email?

9          A    No.

10         Q    Okay.  And what, if anything, did you do in

11     response to getting this email?

12         A    I don't know if it's in this exhibit, but

13     there are emails that show that, maybe even this same

14     day, I began to follow up with Eric to understand what

15     had been done and what process he expected business

16     consultants to follow when they got requests.

17         Q    Okay.  Tell me everything that you can

18     recall about your conversations that you think started

19     around this time with Mr. Slawin regarding the process

20     that he expected business consultants to follow?

21         A    My recollection would be limited to what is

22     documented in these emails.  And from the emails, I

23     see that I asked Eric to follow -- actually, we need

24     to scroll through the document and find it.  But I

25     believe I asked Eric to follow up, and he said he

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 82

1      would give Jorge a call.  And then I also asked him to

2      send me the process that he had documented for the

3      business consultants to follow.  And then I --

4            Q    And did -- go ahead.

5            A    And then I recall an email exchange

6      where -- or at least I saw an email exchange where he

7      mentioned -- thank you.  This is the email that I was

8      referring to where I asked what process should they be

9      following?  Can he give them guidance?  And then to

10     send the process documentation to me.

11                After this, there were emails between Eric

12     and I where I was questioning the way he designed the

13     process, because the way he designed the process

14     required all of these requests to follow through him.

15     And there seemed to me to be a more direct way to get

16     this done that limited his involvement and limited his

17     workload is what I'm looking for -- limited his

18     workload, because that was a frequent complaint of his

19     was his workload.

20           Q    And his workload included putting together

21     the SIAI with respect to the PCI noncompliance issue;

22     correct?

23           A    That's correct.

24           Q    Okay.  And so, in your direction to

25     Mr. Slawin regarding the process, did you suggest to

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 83

1    him that he tell the merchants to go directly to First

2    Data?

3        A    I do not suggest that merchants go directly

4    to First Data.

5        Q    Okay.  What was your suggestion?

6        A    My suggestion was that the business

7    consultants go directly to the control view portal

8    maintained by First Data to submit their requests.

9        Q    So that means that meant to go to

10   essentially First Data to get a response for the

11   questionnaires; is that right?

12       A    That's correct.

13       Q    Okay.  So whether you are directing Eric

14   Slawin to tell the merchants to go to First Data or

15   you were directing Mr. Slawin to tell the business

16   consultants to go to First Data, the point was the

17   direction was that the requests should be directed to

18   First Data.  Would that be a correct way to understand

19   the direction?

20       A    The direction was to -- yes, there was the

21   direction.  So that it was a much simpler process and

22   much more straightforward.

23       Q    Okay.  And so, if you look at Exhibit 57,

24   and you look at page 1380, is this an email that you

25   sent to Mr. Slawin --

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 84

1        A    Yes.

2        Q    -- on August 8, 2017?

3        A    Yes.

4        Q    Okay.  So ultimately, you thought it was

5    appropriate that the business consultants go to First

6    Data or the information be gotten from First Data?  I

7    just want to understand what your understanding was.

8        A    My suggestion was that was the way to begin

9    the process.

10        Q    Okay.  I understand.  Did Mr. Slawin express

11    to you concern that not telling the merchants was

12    fraudulent or about -- sorry.  Let me strike that

13    question.  Let me rephrase it.

14            Did Mr. Slawin complain to you or raise a

15    concern to you that not telling the merchants that

16    BAMS was not PCI compliant was fraudulent or

17    dishonest?

18                MR. UNDERWOOD:  Objection to form.

19        A    No.

20        Q    Did Mr. Slawin ever express concern to you

21    that he was being positioned to misrepresent facts to

22    merchants?

23        A    No.

24        Q    Did Mr. Slawin ever express to you his

25    concern about the ramifications, if it became public,

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                        Page 85

1      that BAMS was not PCI compliant?

2            A     No.

3            Q     Did you have an opinion as to whether or not

4      there would be any ramifications to BAMS if it became

5      public that BAMS was not PCI compliant?

6                        MR. UNDERWOOD:  Objection to form.

7            A     Did I have an opinion?

8            Q     Yes.

9            A     About -- repeat the question one more time.

10     Sorry.

11           Q     Did you have an opinion as to whether or not

12     there would be any ramifications to BAMS if merchants

13     were to find out that BAMS was not PCI compliant?

14                       MR. UNDERWOOD:  Objection to form.

15           A     Yes.

16           Q     Okay.  And what was your opinion?

17           A     My opinion was that there could be

18     reputational risk.

19           Q     And what do you mean by "reputational risk"?

20           A     There could be damage to trust in Bank of

21     America Merchant Services.

22           Q     And would that affect BOA as well, in your

23     opinion?

24           A     Today, as you're asking me, yes.

25           Q     So would it be fair to say that there was a

Natasha Collins                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 86

1    motivation within the BAMS institution to keep

2    confidential the issue of BAMS's PCI noncompliance

3    with respect to merchant knowledge of it?

4                    MR. UNDERWOOD:  Objection to form.

5    BY MS. MARX:

6         Q    You can answer.

7         A    There was concern about keeping it

8    confidential.

9         Q    Within BAMS; is that right?

10        A    That's correct.  That's correct.

11        Q    So if Eric Slawin communicated his concern

12   that not disclosing to merchants BAMS's PCI

13   noncompliance could constitute dishonesty or an act of

14   trust, would you agree that that would be within

15   BAMS's code of ethics in terms of an obligation of

16   BAMS employees?

17                   MR. UNDERWOOD:  Objection to form.

18        A    Restate the question, please.

19        Q    Yeah.  I'm sorry.  That's a bad question.

20             Are you familiar with BAMS's code of ethics?

21        A    Yes.

22        Q    Okay.  And do you have an understanding as

23   to whether BAMS's code of ethics provided that

24   employees should raise concerns about improper

25   conduct, including acts that they thought were

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                    Page 87

1     dishonest or acts constituting a breach of trust?

2          A    Ask the question one more time.  Sorry.

3                    MS. MARX:  Could you read that question

4     back, please?

5                    THE REPORTER:  All right.  One moment.

6                    (The reporter repeated the record as

7                    requested.)

8                    THE WITNESS:  Yes.

9     BY MS. MARX:

10         Q    Okay.  And what was your understanding about

11    the BAMS code of ethics as it concerned employees

12    raising concerns about conduct they thought were

13    dishonest acts or constituted a breach of trust?  What

14    should they do?

15         A    That it should be raised.

16         Q    Okay.  And do you have an understanding as

17    to whether or not BAMS's code of conduct also provided

18    for nonretaliation against employees who raise such

19    concerns?

20         A    Yes.

21         Q    And what was that understanding?

22         A    That these employees should not be

23    retaliated against.

24         Q    Okay.  Going back to Exhibit 57, Bates

25    Number 416, the email that Loreto Evangelista wrote

Natasha Collins                                      August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 88

1    that you were cced on, the first question is do you

2    know who Loreto Evangelista is?

3         A    I do.

4         Q    Okay.  And who is that person?

5         A    I don't recall exactly what his role was at

6    this point in time because he had several different

7    roles during the time that we worked together.

8         Q    Well, do you know why he was writing this

9    email?

10        A    I'm not entirely sure.  I was surprised when

11   I saw it.  I don't recall his role in this issue or

12   its resolution.  My only guess -- I shouldn't guess.

13   I'm not sure.

14        Q    Okay.  And why were you surprised when you

15   saw it?

16        A    Because I don't recall what Loreto's role

17   was at the time and did not recall that he had a role

18   in this process.

19        Q    Okay.  So other than getting this email, you

20   don't otherwise know anything about it; is that right?

21        A    Rephrase that question?

22        Q    Other than getting the email, you don't

23   otherwise know anything about it; is that right?

24        A    I'm really not sure what you're asking.  I

25   see that I got the email and that Loreto is asking

Natasha Collins                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 89

1    these questions, and I would assume that he is asking

2    these questions in the role that he is being asked to

3    perform.  I don't know what that role is.

4         Q    Okay.  He says here, let's see.  Do you know

5    what he meant when he said "The process that was

6    implemented by Eric has more activity than we

7    thought"?  Do you know what that means?

8         A    That means that this process for taking in

9    requests from merchants for information about -- for

10   the security assessments had higher volumes than

11   initially anticipated.

12        Q    So does that mean that there were more

13   merchants sending in requests around the issue of data

14   security than had been anticipated?

15        A    Yes.

16        Q    Okay.  And just so you understand, when I

17   say "Eric," do you understand that I'm referring to

18   Eric Slawin?

19        A    Yes.

20        Q    And when you say "Eric," are you referring

21   to Eric Slawin?

22        A    Yes.

23        Q    Okay.  If you look down in the Loreto

24   Evangelista email, it says "So we proposed some

25   solutions that will take time -- in the interim, we

Slawin, Eric v. Banc of America Merchant Services, et al.

Page 90

1    can't upset clients."

2              Do you know what that sentence refers to?

3        A    That sentence refers to solutions we're

4    putting in place to help better respond to the volume

5    that was coming in, but it would take time to get

6    those solutions put in place.  I don't recall what

7    those solutions were.  But until that was done, we

8    still needed to respond to the requests and make sure

9    they were handled.

10       Q    Okay.  So after this he mail, if you turn to

11   the next page, which is 417 in Exhibit 57, Jorge

12   Abello writes that the client is going to need to be

13   advised -- the client and the bank is going to need to

14   be advised that they are unable to complete the

15   request.

16             Do you have an understanding what that

17   means?

18       A    My opinion from reading the email chain is

19   that because this has bounced around for a while and

20   we haven't responded to the request that we're not

21   going to be able to get it done for the client.  We're

22   not going to be able to get the questionnaire done.

23       Q    Okay.  You testified a minute ago that there

24   were solutions being considered to respond, and you

25   didn't recall what the solutions were.  Did you have

Natasha Collins                                   August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 91

1    an understanding as to how the merchant questionnaire

2    requests would be handled in the interim?

3         A    I don't recall.

4         Q    Okay.  And so let me just understand this.

5    So on that same day, August 8th, there is the

6    email -- August 8th, 2017, there is the email that we

7    just talked about from Jorge Abello at 9:52.  And then

8    if you go to Bates Number 1380, which is, like, the

9    second-to-last page in Exhibit 57, was -- okay.

10              So your response then was the email to Eric

11   Slawin at 10:46 to try to get the process more

12   streamlined?

13                   MR. UNDERWOOD:  Objection to form.

14                   THE WITNESS:  Yes.

15                   MS. MARX:  Okay.  So I have -- can you

16   show her -- let's see.

17   BY MS. MARX:

18        Q    Okay.  If you turn to Bates Number 567 in

19   Exhibit 57, which is the third-to-last page, there's

20   an email that you write -- that you wrote to

21   Mr. Slawin on August 8, 2017, at 10:31 a.m.

22              First of all, did you write that email?

23        A    I have no reason to believe that I didn't.

24        Q    Okay.  What did you mean when you said "I

25   think it is time that we get this reviewed at the XCO

Natasha Collins                                  August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 92

1    level for better ownership and coordination"?

2         A    The process that we were trying to follow to

3    get these requests handled needed to be reviewed by

4    our executive committee, given the volume that we had

5    coming in and the time it was taking to respond to

6    them.

7         Q    Okay.  So at that point, Mr. Slawin was

8    going to be reliant on getting feedback from the

9    executive level folks regarding the process to respond

10   to handle these questionnaires; is that what you're

11   saying?

12        A    I did not say that he should wait on that.

13        Q    How should he have -- well, why did you

14   think that it was time to go to the executive -- what

15   did you say?  What's "XCO" mean?

16        A    Executive committee.

17        Q    Okay -- for better ownership and

18   coordination.  Why did you think that was necessary?

19        A    Because of the volume of requests that we

20   were getting and the time it was taking to respond to

21   them.

22        Q    Okay.  And what did you think Mr. Slawin

23   should be doing while you were waiting to get the

24   input from the executive committee?

25        A    Continue to handle the coordination of the

Natasha Collins                                August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 93

1     responses on these requests.

2          Q     Okay.  And did that involve sending them to

3     First Data SharePoint to be addressed?

4                    MR. UNDERWOOD:  Objection to form.

5          A     According to the process that he had

6     outlined.

7          Q     Okay.  Let's turn to Exhibit 59.

8                    MR. UNDERWOOD:  And Jeannie, I don't

9     want to interrupt your questioning on these exhibits.

10    But whenever you finish with these documents, if you

11    wouldn't mind a quick bathroom break, I would

12    appreciate it.

13                   MS. MARX:  Oh.  That's fine.  You know

14    what?  Let's do the bathroom break right now then.

15    Okay?

16                   MR. UNDERWOOD:  Okay.  I appreciate it.

17                   MS. MARX:  Is ten minutes sufficient?

18                   MR. UNDERWOOD:  That would be great.

19                   MS. MARX:  Cool.  Okay.

20                   THE REPORTER:  All right.  Going off

21    the record.  The time is 2:26 p.m.

22                   (Off the record.)

23                   THE REPORTER:  We are back on the

24    record.  The time is 2:41 p.m.

25    //

Page 94

1    BY MS. MARX:

2         Q    Ms. Collins, I'm going to direct your

3    attention to Bates Number 1047 of Exhibit 59.  It's

4    the second-to-last page.  It's an email from Jorge

5    Abello to Alan Morris on August 8th at 4:57 p.m.  And

6    it states that he's attaching a letter of our PCI

7    compliance.

8              And am I correct to understand that that is

9    regarding BAMS's PCI compliance; do you know?

10        A    I don't know.  I have not seen the document.

11        Q    Okay.  And you look at the email at the

12   bottom of 1046 that goes on to 1047 from Alan Morris

13   back to Jorge Abello, he's asking for "Are you able to

14   provide the actual assessment report regarding

15   policies, procedures, and technical systems that

16   store, process, or transmit cardholder data and not

17   simply the one-page letter indicating PCI compliance?"

18             Do you know what that is referring to?

19        A    I'm not sure what you mean by do I know what

20   it's referring to.  I only know what I'm reading in

21   this email.

22        Q    Okay.  How do you understand what Mr. Morris

23   is asking for?

24        A    I don't know.

25                  MR. UNDERWOOD:  Objection.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                           Page 95

1                THE WITNESS:  I don't know what

2       the -- sorry.

3                     Go ahead, Brian.

4       BY MS. MARX:

5            Q    Okay.  So you don't know whether he's asking

6       for BAMS's PCI compliance; is that right?

7            A    Right.  I don't know what he means by the

8       words "actual assessment report."

9            Q    Okay.  If you turn to 1045.  There's an

10      email from Alan Morris to Jorge Abello on August 17th,

11      2017, at 9:12.  And he says "We sent our questionnaire

12      to BOA at end of April and still haven't received a

13      response."

14                   What is he referring to?

15           A    Which part?  So when he says we sent our

16      questionnaire to BOA, he's referring to the

17      questionnaire --

18           Q    Right.

19           A    -- with specific questions that they want to

20      assess about their vendors and still haven't received

21      a response to those -- to all of those questions.

22           Q    Okay.  And if you look a little further

23      down, it says "Can you please obtain and send over the

24      PCI report?"

25                   Do you know what that refers to?

Case 1:19-cv-04129-AT    Document 196-2    Filed 09/18/25    Page 96 of 178
Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 96

1        A    I don't.  I don't know what a PCI report is.

2    If you scroll further up, Jorge says -- scroll back

3    down, please.  Jorge says "Attached are the PCI

4    documents."

5        Q    Right.  And if you look on 1044, if you

6    scroll up, Allan Morris is saying "We still need

7    either the report on compliance or the questionnaire

8    to be returned."

9             Right?  So and the subject is the new

10   merchant PCI questionnaire.  Would it be -- is it fair

11   to say that this is about Verisign's interest in

12   BAMS's PCI compliance, that that's what Alan Morris is

13   trying to get here?

14             MR. UNDERWOOD:  Objection to form.

15       A    Yeah.  I don't know what Alan is trying to

16   get other than what's stated in this email.

17       Q    Okay.  Well, the subject says "new merchant

18   PCI questionnaire," and it's directed to Jorge Abello

19   at BAMS?

20       A    Uh-huh.  I agree with that.

21       Q    So would it be fair to say that Mr. Morris

22   is interested in having PCI questions answered with

23   respect to BAMS, since it's being sent to BAMS?

24             MR. UNDERWOOD:  Objection to form.

25   //

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 97

1    BY MS. MARX:

2          Q    You can answer.

3          A    It would be fair that Mr. Morris is

4    directing these questions at BAMS about PCI

5    compliance.

6          Q    Okay.  If you look at 1038, Bates

7    Number 1038, which is these documents.  Eric Slawin

8    sent you an email on September 19th regarding new

9    merchant PCI questionnaire.  That's the subject;

10   right?  Do you see it?

11         A    Yes.

12         Q    Okay.  Do you know why he sent you this

13   email?

14         A    Looking at this email and the one that was

15   forwarded below it, he is trying -- I would assume

16   that Eric is trying to deflect blame for the

17   questionnaire not having been answered.

18         Q    What do you mean "deflect blame"?

19         A    He says "I cannot complete this

20   questionnaire."

21         Q    Well, was First Data responding to him?

22         A    According to his response, no.

23         Q    Okay.  And in fact, First Data was not

24   responding to him and was pushing back; isn't that

25   right?

Natasha Collins                               August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 98

1          A    Correct.

2          Q    Okay.  So he wasn't deflecting blame.

3     That's your characterization.  But, in fact, he wasn't

4     getting the information necessary to respond to the

5     questionnaire; isn't that right?

6                    MR. UNDERWOOD:  Objection to form.

7          A    Yep.  The first line of his email says "I'm

8     not sure what to do myself with this issue."  So I can

9     only assume by reading this email that he is saying

10    that he does not want to be held responsible for the

11    issue.  That's what I meant by deflecting blame.  He

12    does not want to be held responsible for it, and he is

13    explaining what he has done.

14         Q    Is it fair to interpret this email as

15    Mr. Slawin explaining why he can't complete the

16    questionnaire?

17         A    Yes.

18         Q    Okay.  And if you look at Bates Number 551,

19    you send an email to Larry Brennan on September 20,

20    2017, at 10:30; correct?  You see that email?

21         A    Yes.

22         Q    Okay.  And you're corroborating that First

23    Data is refusing to help; is that right?

24         A    Correct.

25         Q    Okay.  So that's not a Slawin issue if First

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 99

1    Data isn't providing information that is deemed

2    necessary; is that right?  Would you agree with that?

3                MR. UNDERWOOD:  Objection to form.

4        A    Can you repeat the question?

5        Q    Yeah.  If First Data isn't providing

6    information, would you agree that that's not an Eric

7    Slawin problem?  That's not his issue?

8                MR. UNDERWOOD:  Objection to form.

9        A    What I would say is that Eric had the

10   responsibility to explore all avenues to get questions

11   answered.

12       Q    Well, one of those possibilities was to tell

13   the merchant -- to answer the merchants and not to

14   deflect the questions to First Data; right?  That BAMS

15   could have simply come forward and told the merchants

16   that they weren't PCI compliant?

17               MR. UNDERWOOD:  Objection to form.

18       A    It depends on the questions that the

19   Verisign questionnaire asked.  From the emails that I

20   have reviewed and Eric's own comments, the part that

21   is being requested and that he is having trouble

22   completing is about the technical nature of the

23   product and how the product works.  That is very

24   different when you keep saying "BAMS' compliance."

25   That's a very broad term.

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 100

1         Q    Okay.  The subject lines on the various

2    emails was "new merchant PCI compliance;" isn't that

3    right?  I mean, if you look at --

4         A    That is what the email says.

5         Q    Okay.  If the avenue of asking First Data to

6    provide the data was closed, what did you expect

7    Mr. Slawin to do?

8         A    I expected Mr. Slawin to do the same

9    activities I did, which were to find other people in

10   BAMS with more technical knowledge who could assist in

11   answering the questions.

12        Q    Well, didn't he do that?  If you look at

13   Exhibit 552 -- Bates Number 552 in Exhibit 59, where

14   he sent an email to Larry Brennan and Dan Mong on

15   September 19th at 5:13?

16                 MR. UNDERWOOD:  Objection to form.

17   BY MS. MARX:

18        Q    In this email, isn't he asking for help with

19   translation of the information?

20        A    He is.

21        Q    Okay.

22        A    This was after the escalation to me.

23        Q    Well, if you take a look at -- look at 532.

24   And by the way, when was this escalated to you?

25        A    August 8th.

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 101

1      Q    Okay.  And as far as you were concerned, in
2    as late as September 18th, you were talking about a
3    very broken process working -- that you all were
4    working on to remediate around responses to client
5    requests, for information on our risk and security
6    environment; weren't you?
7                    MR. UNDERWOOD:  Objection to form.
8      A    Yes.
9      Q    Okay.  So if you look at Exhibit 59, Bates
10   Number 532.  This is an email that you sent on
11   September 18th at 10:02 p.m. to Matthew Howarter
12   regarding the Verisign vendor security questionnaire.
13               Right?  Is this an email that you sent?
14     A    Yes.
15     Q    Okay.  Who is Mr. Howarter?
16     A    Mat Howarter was in our product team, the
17   BAMS product team.
18     Q    Was he in Mr. Ades' team?
19     A    He was not.
20     Q    Why did you send this email to Mr. Howarter?
21     A    Because he was responsible -- he was our
22   product manager at BAMS for the Payeezy product that
23   was the subject of the Verisign emails.  As a product
24   manager, Matt would have had more technical
25   information on the performance of the product, and I

Natasha Collins                            August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 102

1    thought he could lend Eric some assistance in

2    answering those more technical questions.

3         Q    Who was Tom Brown?

4         A    From the email string, it appears that Tom

5    Brown was Jorge Abello's boss.

6         Q    And Payeezy is spelled P-A-Y-E-E-Z-Y; is

7    that right?  That's the product you're talking about?

8         A    Yes.

9         Q    Okay.  So you were copied on an email from

10   Tom Brown to Jorge Abello and Eric Slawin on

11   September 19th.  You see this email at 10:39 in the

12   morning from Tom Brown -- oh, 10:38, 10:38.

13        A    Yes.

14        Q    It's Bates Number 541.  So there wasn't a

15   process to answer the questions that Verisign had with

16   respect to PCI compliance; is that right?

17        A    Can you repeat that question?

18        Q    There wasn't a process to answer the

19   questions that Verisign had with respect to PCI

20   compliance; isn't that right?

21        A    There was a process -- there was a process

22   that we were using to get it done, but it was not

23   working.

24        Q    Right.  Okay.  Now, to kind of go back a

25   little bit and talk for a moment about the SIAI issue,

Natasha Collins                          August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 103

1    was there some confusion over who owned the issue?

2        A    I think that's fair to say.

3        Q    Okay.  And can you explain what ownership of

4    the issue means?

5        A    There were multiple organizations involved

6    in the issue that led to the self-identified audit

7    issue, and the two organizations had different leaders

8    and different business control teams.

9            So there was a question as to which business

10   control team should be responsible for documenting the

11   issue, working on that remediation plan, and

12   ultimately getting it implemented.  So that's what I

13   meant by issue ownership, which business control team

14   should take the leadership in documenting it and

15   working on the plan.

16       Q    Okay.  So would it be fair to say that that

17   confusion over which team should take the leadership

18   with respect to documenting the issue and coming up

19   with a remediation plan, that confusion was not a

20   Mr. Slawin issue; was it?

21           MR. UNDERWOOD:  Objection to form.

22       A    Yeah.  What do you mean by "Mr. Slawin

23   issue"?

24       Q    Well, it wasn't his fault if there was

25   confusion as to which team was responsible for what?

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 104

1          A    I would say that Mr. Slawin created the

2     confusion.  I think that we gave -- I gave clear

3     guidance and asked him to document the issue and pull

4     the teams together.  And in subsequent emails, we see

5     where he pushed back on that responsibility.

6          Q    Well, didn't Mr. Kendall say that he got

7     certain directions from you and the course changed?

8     Are you aware of that?

9          A    I did see those emails.

10                   MS. MARX:  Okay.  So let's do this,

11    Shelley.  Let's pull out Exhibit 5.

12                   (Exhibit 5 was marked for

13                   identification.)

14    BY MS. MARX:

15         Q    Okay.  So Exhibit 5, can you identify this

16    document?

17         A    This is an email exchange between Eric and

18    myself.

19         Q    Okay.  And so would it be fair to say that

20    119 and 120, what's in bold are your comments, and the

21    rest of it is what Eric prepared; is that right?

22         A    I'm sorry.  I don't see anything in bold.

23    Ah.

24         Q    Do you now?

25         A    I do now.

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 105

```
 1        Q    Okay.  And if you look on the first page of
 2    the Exhibit, Bates Number 118, it says "This is
 3    updated with comments from our discussion."
 4             And my question is would it be fair to say
 5    that the bold, what's in bold are your comments?
 6        A    I would say that what's in bold look to be
 7    my notes from the discussion, but I would also say
 8    that the comments that are not in bold are my previous
 9    comments as well.
10        Q    So on page 119, which are your notes that
11    you made and which is what Mr. Slawin provided to you?
12        A    On this page that we're looking at
13    specifically -- I can't see the numbers to know if
14    it's 119.
15        Q    Yeah.  119, there you are.
16        A    So at the top, it appears -- I don't recall
17    this, but it appears where it says "new issues since
18    we last met," that those bullet points were
19    documentation from Eric about his progress, and then
20    the bolded comments are my notes that I added in.
21    However, when we start with "open audit issues," that
22    appears to be the original documentation of notes from
23    a prior conversation that we had that I made, and then
24    I added on the comments in bold in the most recent
25    meeting.
```

Page 106

1        Q    So you're saying everything from the open

2    audit issues through the balance of the document, so

3    the open audit issues on Bates Number 119 through the

4    balance of the document on 120 are all of your notes;

5    is that right?

6        A    Let's go down to 120, please.  Yes.

7        Q    Okay.  And you write here -- so Eric raised

8    to you the issue of receiving client information

9    requests.  Do you see that, the second-to-last bullet

10    with respect to the issues he did, new issues since we

11    met, in that section?

12        A    Yes.

13        Q    Okay.  You said "revised process to remove

14    BCO as traffic cop."

15            What does that mean?

16        A    This refers to the email that we saw earlier

17    where I was asking why Eric put himself in the middle

18    as the first point of contact and that he was to be

19    consulted when his next step in the process was for

20    the business consultant to submit the questionnaire to

21    the First Data website.  There was no need for him to

22    be in the middle if all of the requests needed to go

23    to the First Data website as the next step.

24        Q    Okay.  So that had to do with the

25    questionnaires; right?

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 107

1          A     Correct.

2          Q     Okay.  So if you go down -- if you go to the

3     last point on 119, follow up with Lisa Santana, that

4     paragraph?

5          A     Uh-huh.

6          Q     Did that have to do with the remediation

7     issue regarding the PCI noncompliance issue?

8          A     No.

9          Q     What does the remediation plan that you are

10    talking about there refer to?

11         A     In the numbered list, it says "RIAI/retail

12    billing audit."  RIAI means it was a risk-identified

13    audit issue, and it was about a retail billing.

14         Q     That has nothing to do with a PCI issue;

15    right?

16         A     That's correct.

17         Q     Okay.  I'm going to direct your attention

18    back to Exhibit 59, and if you look at page 534.  You

19    sent an email to Brian Glynn, Loreto Evangelista, and

20    other people, including Eric Slawin.

21               It says here:  As we continue discussion to

22    improve clarity around ownership of the process, what

23    does that mean, "ownership of the process" there?

24         A     "Ownership" may not have been the right

25    phrasing, but this is about who will do what in the

Case 1:19-cv-04129-AT    Document 196-2    Filed 09/18/25    Page 108 of 178
Natasha Collins                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 108

1    process to get client information requests handled.

2        Q    Okay.  And if you look at -- so that's in

3    August.  All right.

4                MS. MARX:  Did you send her Exhibit 13?

5    Can you send Exhibit 13 to her?  Thanks.  Share

6    screen, I'm sorry.  Share screen, Exhibit 13.

7                (Exhibit 13 was marked for

8                identification.)

9    BY MS. MARX:

10       Q    Okay.  So Exhibit 13 is an email chain

11   regarding ownership of the issues regarding the PAN

12   data, BAMS's PCI noncompliance issue; is that right?

13       A    This is my first time seeing these

14   documents, but that appears to be what it is.

15       Q    Were you familiar with the issue as to the

16   involvement of Darien Newman and Jessica Saha's group

17   in this SIAI process?

18       A    I was familiar that there were discussions

19   with Darien and Jessica about ownership of the issue

20   and how to --

21       Q    Okay.  And what was the -- do you know if

22   there was a resolution about that?

23       A    The resolution around ownership that I saw

24   was Mark's email back to me and Eric, giving an update

25   on how he was handling the issue.  I do believe that

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 109

1     Mark and I discussed it, and I did change course from

2     what I had originally agreed with Jessica, and so I

3     accepted Mark's proposal for how he wanted to split up

4     responsibilities on the issue.

5          Q    Okay.  And as I understand it, Mark's

6     proposal was that Eric's group, right, and his group,

7     the Ades team would be responsible for their own line

8     of business; is that right?

9          A    That is my understanding.

10                   MR. UNDERWOOD:  Objection to form.

11    BY MS. MARX:

12         Q    And again, Mark is Mark Kendall; right?

13         A    Yes.

14                   MS. MARX:  Okay.  Exhibit 14, I'm going

15    to share Exhibit 14 with you.

16                   (Exhibit 14 was marked for

17                   identification.)

18                   THE WITNESS:  Pause here, please.

19                   Okay.  You can keep scrolling.

20                   Okay.  Can you keep scrolling.

21    BY MS. MARX:

22         Q    That's the end.

23         A    Okay.

24         Q    So Exhibit 14 is Bates Numbers 1410 through

25    1411.  Have you ever seen these emails before?

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 110

1          A    I have not.

2          Q    Okay.  Are you familiar with the issue?

3          A    Yes.

4          Q    And is this the issue that we've been

5     talking about about ownership of the PAN data issue

6     among different lines of business?

7          A    Yes.

8          Q    Okay.  And is CSS the operations line under

9     Jessica Saha?

10         A    I believe that is correct.

11         Q    Okay.  And CMS in this email refers to the

12    line of business under David Ades' group; right?

13         A    That's correct.

14         Q    Okay.  Now, did there come a time where

15    Mr. Slawin wrote you an email asking for

16    clarification?

17              MR. UNDERWOOD:  Objection to form.

18    BY MS. MARX:

19         Q    About ownership of the issues?

20         A    I do think I've seen that email.

21              MS. MARX:  Can you share Exhibit 18?

22    Oh, wait.  I'm sorry.  It's not Exhibit 18.  One

23    second.  Exhibit 12, I believe.  Yeah.

24              I'm sorry.  We're going to share

25    Exhibit 12.

Natasha Collins                                August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 111

1              (Exhibit 12 was marked for

2              identification.)

3     BY MS. MARX:

4          Q    Tell me when you are ready to answer

5     questions.

6          A    Keep scrolling, please.

7               Okay.  I am ready to answer questions.

8          Q    Okay.  So did Mr. Slawin send you an email

9     on August 18th at 10:20 p.m., asking questions related

10    to the SIAI division of ownership responsibility?

11         A    It does appear so.

12         Q    Well, do you remember getting the email?

13         A    I don't recall getting it because this was

14    seven years ago.  I see it on the screen.

15         Q    Is this issue as to the ownership of the

16    issue by CSS and CMS which you previously referred to

17    when you said you changed course?

18         A    I'm sorry.  Can you repeat the question.

19         Q    Yeah.  You said previously you changed

20    course regarding the issue of ownership of the issue.

21    And I'm asking if the contents of Mr. Slawin's email

22    to you is what you changed course about?

23         A    Yes.

24         Q    Okay.  Did you ever respond to Mr. Slawin?

25         A    I don't recall.

Natasha Collins                                       August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                            Page 112

1                    MS. MARX:  Can you pull up Exhibit 15?

2                    (Exhibit 15 was marked for

3                    identification.)

4                    THE WITNESS:  You can keep scrolling.

5                    Keep scrolling, please.

6                    Okay.  You can keep scrolling.

7                    Keep scrolling.

8                    Keep scrolling.

9                    Keep scrolling.

10                   Keep scrolling.

11                   Keep scrolling.

12                   Keep scrolling.

13                   Keep scrolling.

14                   Uh-huh.  Keep scrolling.

15                   Keep scrolling.

16                   Keep scrolling.

17                   Keep scrolling.

18                   Keep scrolling.

19                   You can keep scrolling.  It looks like

20      that's the end.  If that's the end, I'm ready to

21      answer questions.

22      BY MS. MARX:

23          Q     Okay.  And is Exhibit 15 a compilation of

24      emails related to the ownership of issue -- ownership

25      of SIAI issue related to the PCI compliance about

Natasha Collins                          August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 113

1    which we've been speaking?

2        A    Yes.

3        Q    Okay.  You said you changed course.  Can you

4    explain what your change of course was?

5        A    Originally, I agreed with Jessica that we

6    would open one issue.  Eric could manage it, work with

7    Darien for inputs on her part of the organization for

8    simplicity.

9            When Mark got involved -- when Mark Kendall

10   got involved, he had a difference of opinion.  I don't

11   recall why and his justification, but I do recall

12   agreeing with him that it was fine to split the issues

13   up and to have each organization manage their own and

14   to refer to the other BCO -- the other business

15   control function in each other's issues where

16   appropriate.

17       Q    Okay.  And the emails that have your name in

18   them in Exhibit 15, either that you sent or received

19   or received a copy of, would it be fair to say that

20   you either sent them, received them or received a copy

21   of them?

22       A    Yes.

23                MS. MARX:  Can you share Exhibit 17?

24                (Exhibit 17 was marked for

25                identification.)

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 114

1    BY MS. MARX:

2         Q    Exhibit 17 is an email from Mark Kendall to

3    Natasha Collins indicated August 28, 2017, at 2:51

4    regarding FYI, PAN data update.

5              Is this the email that you're

6    referring -- that you had previously referred to as

7    Mr. Kendall expressing his view that each organization

8    should handle its own SIAI issue regarding the PAN

9    data issue?

10        A    This is likely one of them.

11                  MS. MARX:  Okay.  Can you share

12   Exhibit 18?

13                  (Exhibit 18 was marked for

14                  identification.)

15   BY MS. MARX:

16        Q    Tell me when you're ready.

17        A    If this is the end of the document, I am

18   ready.

19        Q    Okay.  So this document bears Bates

20   Numbers 1156.  It's an email from Natasha Collins to

21   Eric Slawin on September 5, 2017, at 1:27 p.m.  And it

22   says "weekly one-on-one with Natasha C. and Eric S."

23             So did you write this?  Is everything in

24   this email something that you wrote?

25        A    I think that is correct.

Natasha Collins                          August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 115

1      Q    Okay.  So it says here "Natasha to contact

2  Jessica regarding SIAI on consumer PAN data to more

3  clearly identify responsibilities between Darien and

4  Eric."

5           So would it be fair to say that the

6  confusion over responsibilities between business

7  segments on the SIAI issue with respect to the PAN

8  data issue had not yet been resolved as of

9  September 5th?

10     A    I wouldn't say that they hadn't been

11  resolved.  I would say that I was ensuring that

12  Jessica -- I would just leave it at that.  I wouldn't

13  say that they were not resolved.

14     Q    Well, if you go down to the

15  second-from-the-last bullet, it says "No notification

16  to Eric of client-managed team role on SIAI for

17  resolution."

18           What does that mean?

19     A    Well, this bullet is in reference to a

20  different SIAI.  This is about onboarding clients

21  without a tax ID.

22     Q    I see.  Okay.  If you go down to the last

23  bullet, it says: "Continuing to support client risk

24  information requests while awaiting executive

25  discussions on new process.  Natasha to discuss with

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 116

1      Tom Fontana."

2              What does that refer to?

3          A    That refers to me working with Tom Fontana,

4      who was head of our risk function, to discuss the

5      volume of requests we were getting in and the best

6      process to get them resolved.

7          Q    Those were the merchant requests, like the

8      Verisign requests that we were talking about before?

9          A    Yes.

10         Q    Do you recall how the resolution of the

11     division of responsibilities on the SIAI issue was

12     communicated to Mr. Slawin, if at all?

13         A    I don't recall.  I'm not clear on the date

14     of this email versus the one that we were looking at

15     earlier.  I didn't pay attention to the exact date of

16     the one from Mark where he was giving his opinion on

17     how it should be handled.

18         Q    Well, we can pull it up again.  That's

19     Exhibit 17, but it's dated August 28th.

20         A    Okay.  And I have seen subsequent emails

21     well beyond August 28th where Mark was working with

22     other teams to review processes and get the issues

23     documented.  That would lead me to believe that there

24     was resolution around the roles and responsibilities.

25         Q    Okay.  But as of September -- do you have

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 117

1    any recollection of contacting Jessica regarding the

2    SIAI PAN data issue?

3         A    I don't have any recall.

4         Q    Okay.  Would it be fair to say that you

5    contacted her regarding the division of ownership on

6    that issue sometime on or after September 5, 2017?

7         A    I would expect that's what happened.

8                   MS. MARX:  Can you put up Exhibit 19?

9    Actually, Shelley, can you pull up Exhibit 84 first?

10                  (Exhibit 84 was marked for

11                  identification.)

12   BY MS. MARX:

13        Q    Is this a coaching form?  Exhibit 84, is

14   this a coaching form that you gave to Eric Slawin in

15   or around the end of -- September 25, 2017?

16        A    Either I delivered it or Mark did.  I don't

17   remember if there was a cover page for the email.

18   Yes.  So I sent it to Eric.

19        Q    Okay.  Did you write this coaching form?

20        A    I do believe that I did.

21        Q    Did Mark Kendall have input into preparing

22   this coaching form?

23        A    I don't recall.

24        Q    Do you recall having any discussions with

25   Mark Kendall about the coaching form?

Natasha Collins                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 118

1          A    I recall having discussions with Mark about
2    it after it was created and when Mark took
3    responsibility for managing Eric.
4          Q    What do you remember about the -- when did
5    you have those conversations?
6          A    I don't recall.
7          Q    Do you recall whether this coaching form was
8    prepared in or around the time that the Verisign
9    questionnaire response issue was going on and you were
10   involved in?
11         A    We could look back at the dates of those
12   Verisign emails to confirm.  That's the only way that
13   I would know that.
14         Q    Okay.  Fair enough.  We can do that,
15   actually.  So if you look at Exhibit 59 and look at
16   541, Bates Number 541, which -- just a few days before
17   the coaching, you were still dealing with the Verisign
18   issue because you were cced on Tom Brown's email to
19   Jorge Abello on September 19th; right?
20         A    Yes.
21         Q    Okay.  So just in terms of the time frame,
22   would it be fair to say that the Verisign -- the issue
23   regarding responding to the Verisign questionnaire and
24   PCI request was still going on at that time, at the
25   time of the coaching form?

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 119

1          A    Based on these emails, yes.

2          Q    Okay.  Thank you.

3                    MS. MARX:  Okay.  Exhibit 19.

4                    (Exhibit 19 was marked for

5                    identification.)

6                    THE WITNESS:  Oh, I'm sorry.  I'm still

7     reading that part.  Thank you.  Let's just pause for a

8     minute.

9                    Just pause one minute.  There's a lot

10    of detail here that I need to read.

11                   Okay.  Now you can scroll.  Thank you.

12                   Okay.  Keep scrolling.

13                   Okay.  If this is the end of the

14    document, I'm ready for questions.

15    BY MS. MARX:

16         Q    Okay.  So was Christine Clifford in Jessica

17    Saha's group?

18         A    Yes.

19         Q    Okay.  Can you explain what's going on in

20    this series of emails?

21         A    My assessment is that Chris' team is looking

22    at moving some of the activity -- some of the

23    activities that they do to a First Data team in order

24    to give their team an opportunity to work on more

25    complex tasks, and there may be an opportunity to

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 120

1    include those activities that had some PCI compliance

2    risk associated with it.  And she was looking for

3    points of contact to work with on this.

4           Q    Okay.  So that was a possible solution that

5    had previously been rejected by Mr. Glynn; correct?

6           A    That is -- yes.  I'm just thinking through

7    what this option is versus what was in that other

8    email.  I think that's correct.

9           Q    Okay.  And the emails contained in

10   Exhibit 19 that you sent, received, or are cced on, is

11   it fair to say that you sent, received, or were cced

12   on them at the time -- you know, when they were

13   written or sent to you?

14          A    Yes.

15          Q    Okay.  So Ms. Clifford refers to the project

16   as a confidential project, and that she wants to keep

17   the audience small, given the sensitivity of us

18   looking at moving some of our CMS work.  Do you know

19   what she was referring to when she refers to

20   "confidential"?

21          A    Well, the first thing I'd say is that there

22   are a number of projects that go on in companies that

23   are confidential for any number of reasons.  This one,

24   based on the way she is writing this email, I would

25   assume is confidential because, as discussed

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 121

1    previously, Bank of America would prefer for us not to

2    have First Data have direct contact with our

3    client-managed clients.

4         Q    Okay.  By the way, are you aware of whether

5    the PCI noncompliance issue was discussed with Bank of

6    America?

7         A    I am not.  I do not recall.  Not aware.

8         Q    Okay.  So when you say you're not aware,

9    does that mean -- or you don't recall, does that mean,

10   to your knowledge, it didn't happen, or you don't

11   recall one way or another?

12        A    My response means that I don't recall one

13   way or the other.

14        Q    Okay.  And are you aware of whether the

15   BAMS's PCI noncompliance issue was discussed with

16   First Data?

17        A    I am not aware one way or the other.

18                  MS. MARX:  Let's do Exhibit 62.

19                  (Exhibit 62 was marked for

20                  identification.)

21                  THE WITNESS:  Okay.  You can keep

22   scrolling.

23                  You can keep scrolling.

24                  Okay.  Let's pause here.

25                  Okay.  You can keep scrolling.

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 122

1              Okay.  Let's keep scrolling.

2              Okay.  Keep scrolling.

3              Okay.  Keep scrolling.

4              Okay.  Keep scrolling.

5              Keep scrolling.

6              Keep scrolling.

7              Okay.  That looks like that's the end

8     of the document.  Can we go back to the top?  I want

9     to read Mark's instructions for that spreadsheet now

10    that I've seen it.  Okay.  Right here.

11             Okay.  I'm ready for questions.

12    BY MS. MARX:

13        Q    Okay.  So is this a copy of an email that

14    you received that was sent by Mark Kendall on

15    November 13, 2017, that at 10:48 a.m.?

16        A    It does appear so, yes.

17        Q    Okay.  And did you understand this email to

18    be information gathering for purposes of the SIAI

19    audit issue to be submitted regarding the BAMS PCI

20    noncompliance issue?

21        A    I am not sure if this email is in

22    conjunction with that activity.

23        Q    Well, if you look at the spreadsheet which

24    was sent to us in native format, in the spreadsheet

25    there is Plaintiff's 9 through 13 -- oh, through 14,

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 123

1    which we Bates numbered because it was unnumbered, has

2    to do with full PAN data to BAMS.

3                Does that help you?

4        A    I understand what the document is about, but

5    the prior email you showed me was also about

6    determining which processes should be sent or which

7    processes could be sent to First Data as part of Chris

8    Clifford's reorganization of activities.

9        Q    Well, I'm just referring now to Exhibit 62.

10       A    Uh-huh.

11       Q    But my question is this.  At this time,

12   wasn't the SIAI still being developed with respect to

13   the PAN data issue?

14       A    I'm going to wait until she scrolls to the

15   top so I can see the date.  Yeah.  I believe that that

16   is the case, yes.

17       Q    Okay.  And he reminds everyone that the

18   discussion about this issue and potential remediation

19   is confidential.  And you're listed as among the

20   people to talk to about getting permission to talk

21   about this with -- outside your working team; right?

22       A    Yes.

23       Q    Okay.  As to whom was the -- did you

24   understand Mr. Kendall to be referring to the issue

25   being confidential?

Natasha Collins                                      August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                      Page 124

1          A     Can you rephrase the question?

2                      MR. UNDERWOOD:  Objection to form.

3     BY MS. MARX:

4          Q     Yeah, okay.  So when he says "Discussions

5     about this issue and potential remediation is

6     confidential," did you have an understanding as to

7     whom that discussion was limited?

8          A     As he goes on to say, he says "Please do not

9     discuss outside of this working team."  So as I look

10    at this email, it would have been the people that are

11    in the "to" line and the "cc" line.  Anybody on this

12    email distribution.  Let me put it that way.

13         Q     Okay.  And so anybody, even within BAMS,

14    outside of these -- the distribution line, this is

15    information shouldn't be shared with; right?

16         A     That's correct.

17         Q     Did you do anything in response to receiving

18    this email?

19         A     I do not recall taking any specific action.

20                      MS. MARX:  Can you show her Exhibit 27?

21                      (Exhibit 27 was marked for

22                      identification.)

23                      THE WITNESS:  Is this the end of the

24    document?

25         //

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 125

1    BY MS. MARX:

2         Q    Yeah.

3         A    Then I am ready for questions.

4         Q    This document bears Bates Number 9406.

5              Do you recognize this document?

6         A    I don't recall seeing this email.

7         Q    Were you ever apprised of the need to go

8    to -- well, let's start out.

9              Were you aware of a "Tier 2 gov call"?  Do

10   you know what that is?

11        A    That's what I'm trying to recall.  I don't

12   recall what this would have been about.

13        Q    Well, it says here "We need to provide them

14   the BAMS PCI attestation to prove compliance."

15             Do you know anything about that?

16        A    I don't.

17        Q    And do you know what Tier 2 refers to and

18   Tier 1 refers to in this email?

19        A    I do not.

20        Q    Is Tier 1 and Tier 2 your earlier reference

21   to the first and second line of defense?

22                  MR. UNDERWOOD:  Objection to form.

23        A    I'm not sure whether it is or not.

24        Q    Okay.  If you wanted to understand what this

25   email was about, who would you have asked?

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 126

1        A    I would have asked Erica Machado.

2        Q    And who was she?

3        A    She was a BAMS employee at the time.  Don't

4    recall her responsibilities or her role, but she was

5    someone that I worked with later in my career at BAMS.

6    So seeing her name here, that would have been the

7    person I would reach out to.

8        Q    Do you know where she works now?

9        A    I do not.

10            MS. MARX:  All right.  So let's go back

11   to Exhibit 28, which we already did.

12   BY MS. MARX:

13       Q    Tell me when you're ready.  Do you need her

14   to scroll down?

15            So my question is this document details

16   issue impact/consequences.  So major reputational risk

17   to BAMS, and that was because of what?

18       A    I'm not sure I understand the question.

19       Q    Okay.  Do you understand what the reference

20   in this document is when it says under issue

21   impact/consequences "major reputational risk to BAMS"?

22       A    Yes.  There would be reputational risk to

23   BAMS if this issue is not resolved.

24       Q    Would there be reputational risk to BAMS if

25   the issue were public outside of BAMS?

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 127

1        A     Yes.

2        Q     And would there be risk to clients and

3    cardholders due to nonadherence to PCI standards?

4        A     There could be.

5        Q     And would that risk have to do with

6    potential risks if there were a data breach?

7        A     That's correct.

8        Q     Okay.  At the time of this document, this

9    submission on December 15, 2017, at that time, did you

10   have an opinion as to whether or not BAMS should tell

11   the merchants it was processing payments for that it

12   was not PCI compliant?

13       A     So let me make sure I understand the

14   question.  You're asking me in December of 2017, did I

15   have an opinion?

16       Q     Yes.

17       A     I think I stated previously I did not -- I

18   had an opinion.  I did not have an opinion that there

19   was anything to share at the time.

20       Q     Well, actually, when you answered that

21   question, it had to do with when you discovered the

22   issue in June.  And now I'm asking you six months

23   later when the SIAI issue is submitted with no

24   resolution, did you have an opinion as to whether or

25   not the merchants should be told?

Natasha Collins                          August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 128

1       A    I had an opinion, yes.

2       Q    And what was that opinion?

3       A    That opinion was -- stayed the same, that

4   there was nothing to share at this time because we

5   were working toward resolution.

6       Q    So if there was never a resolution, meaning

7   solution to the issue, would it be fair to say that

8   your opinion is that the merchants should not have

9   been told?  Would that be fair?

10                 MR. UNDERWOOD:  Objection to form.

11      A    Yeah.  Very confusing question because I

12  think you're asking me in December to project what

13  would have happened in the future.

14      Q    Well, would it be fair to say that in

15  December, you had no timeline or ETA for a solution to

16  the BAMS non-PCI compliance issue?

17      A    In this document, there is no timeline for

18  completion.

19      Q    And did you ever become aware of a timeline

20  for completion, meaning a solution?

21      A    I don't recall whether I did or not.

22      Q    And sitting here today, you don't recall

23  whether or not there was a solution to the PCI -- the

24  BAMS PCI noncompliance issue; isn't that correct?

25      A    That is correct.

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 129

1          Q    To your recollection, was any subsequent
2     SIAI submission submitted with respect to the BAMS's
3     handling of PAN data without PCI compliance?
4          A    Can you repeat that question?
5          Q    Yeah.  To your recollection, was there ever
6     a subsequent SIAI submitted respect to the BAMS's PCI
7     noncompliance issue?
8          A    I am not aware of.  I don't know one way or
9     the other.
10         Q    Okay.  In December 2017, did you have a
11    deadline in your mind as to how long BAMS should wait
12    before telling its clients that it was not PCI
13    compliant?
14                    MR. UNDERWOOD:  Objection to form.
15         A    I did not.
16         Q    Did you discuss the issue in December of
17    2017 with anyone about telling merchants that BAMS was
18    not PCI compliant?
19         A    I don't recall having any conversations
20    about that.
21                    MS. MARX:  Shell, can you show
22    Ms. Collins Exhibits 20 and 21?
23                    (Exhibit 20 and Exhibit 21 were marked
24                    for identification.)
25    //

Natasha Collins                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 130

1    BY MS. MARX:

2        Q    Okay.  Ms. Collins, I'm going to show you

3    the first page of Exhibit 20, which are BAMS's

4    Objections and Responses to Plaintiff's First

5    Interrogatories.  And then I'm going to direct your

6    attention to Exhibit 21.

7            Exhibit 21 is your verification of BAMS's

8    Objections and Responses to Plaintiff's

9    Interrogatories as being true and correct, which you

10   signed.

11           Is that your signature on this verification?

12       A    Yes.  That's my signature.

13       Q    Okay.  Did you prepare the responses in

14   Exhibit 20 which is what you are -- which you verified

15   in Exhibit 21 to be true and correct?

16       A    I don't recall if I prepared them or

17   reviewed them after they were prepared by someone

18   else.

19       Q    Okay.  And is everything in these responses

20   true and correct?

21               MR. UNDERWOOD:  Objection to form.

22       A    I can only assume that they are because I

23   signed the document in 2021.

24       Q    Okay.  And did you read Exhibit 20 before

25   you signed the verification, which is Exhibit 21?

Natasha Collins                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 131

1          A    I would believe that I did.

2          Q    Okay.  And so, it would be your -- would it

3     be your practice to read through a document that

4     you're attesting to be true and correct before making

5     that attestation?

6          A    Yes.

7                    MS. MARX:  I think we're going to take

8     a break for about ten minutes.  Okay?

9                    MR. UNDERWOOD:  That works.

10                   MS. MARX:  Thank you.

11                   THE REPORTER:  All right.  We are going

12    off the record.  The time is 4:23 p.m.

13                   (Off the record.)

14                   THE REPORTER:  We are back on the

15    record.  The time is 4:38 p.m.

16    BY MS. MARX:

17         Q    Ms. Collins, did there come a time that you

18    became aware that Mr. Slawin was terminated?

19         A    Yes.

20         Q    Okay.  And how did you become aware of that?

21         A    I believe I was informed by Mark Kendall.

22         Q    And what did Mr. Kendall say to you?

23         A    That info security had detected that he was

24    sending emails with BAMS documentation to his personal

25    email address in violation of our information security

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 132

```
 1    policy.
 2        Q    Did Mr. Kendall tell you that the emails
 3    that Mr. Slawin had sent involved the BAMS PCI
 4    noncompliance issue?
 5        A    I can't recall if he mentioned that at the
 6    time of termination.
 7        Q    Okay.  Did he mention that at any other time
 8    to you?
 9        A    Either he did or someone did.  I'm not sure
10    who mentioned that to me.
11        Q    And is that your understanding that the
12    emails that Mr. Slawin sent had to do with BAMS's PCI
13    noncompliance issue?
14        A    It is my understanding that some of the
15    emails had to do with that issue.
16        Q    Okay.  Did Mr. Kendall consult with you
17    before Mr. Slawin's termination?
18        A    Did he consult with me on what specifically?
19        Q    Consult with you before Mr. Slawin's
20    termination about terminating Mr. Slawin?
21        A    I don't think there was a consultation.  I
22    think he informed me of the conversations he was
23    having with HR about this and keeping me apprised.
24        Q    Did you participate in the decision to
25    terminate Mr. Slawin?
```

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

                                                    Page 133

```
 1         A    I don't recall.  Let me rephrase.  I don't

 2    believe that I was.

 3                   MS. MARX:  Okay.  I have no more

 4    questions right now.

 5                   MR. UNDERWOOD:  Okay.  I think the

 6    defendant will reserve our questions for a later date.

 7    But the witness will read and sign the transcript when

 8    it's ready.

 9                   THE REPORTER:  All right.  And who

10    needs a transcript order?

11                   MS. MARX:  We do.

12                   THE REPORTER:  How would you like that?

13                   MR. UNDERWOOD:  We do.

14                   MS. MARX:  Yeah.  So we want the E-Tran

15    with the exhibits attached, and we don't need a hard

16    copy.

17                   THE REPORTER:  All right.  Standard

18    delivery is fine?

19                   MS. MARX:  Yes.

20                   THE REPORTER:  Got it.  And how about

21    you, Attorney Underwood?

22                   MR. UNDERWOOD:  Yeah.  We'll have the

23    same as well.

24                   THE REPORTER:  Got it.  And do you need

25    anything, Sheila Lafferty?
```

Natasha Collins                              August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 134

1              MS. LAFFERTY:  No, I do not.

2              THE REPORTER:  Got it.  And just to

3     confirm, how many exhibits is this going to have

4     attached?

5              MS. MARX:  Hang on.  We're counting

6     them.  Nineteen, my paralegal is telling me.

7              THE REPORTER:  All right.  Got it.

8              All right.  Hearing no objection, we

9     are going off the record.  The time is 4:43 p.m.

10              (Signature reserved.)

11              (Whereupon, at 4:43 p.m., the

12              proceeding was concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Natasha Collins                      August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 135

                    CERTIFICATE OF DEPOSITION OFFICER

1                    CERTIFICATE OF DEPOSITION OFFICER

2              I, JACOB BRADFORD, the officer before whom

3      the foregoing proceedings were taken, do hereby

4      certify that any witness(es) in the foregoing

5      proceedings, prior to testifying, were duly sworn;

6      that the proceedings were recorded by me and

7      thereafter reduced to typewriting by a qualified

8      transcriptionist; that said digital audio recording of

9      said proceedings are a true and accurate record to the

10     best of my knowledge, skills, and ability; that I am

11     neither counsel for, related to, nor employed by any

12     of the parties to the action in which this was taken;

13     and, further, that I am not a relative or employee of

14     any counsel or attorney employed by the parties

15     hereto, nor financially or otherwise interested in the

16     outcome of this action.

17

                              JACOB BRADFORD

18                            Notary Public in and for the

                              State of Georgia

19

20

21     [X] Review of the transcript was requested.

22

23

24

25

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 136

1                    CERTIFICATE OF TRANSCRIBER

2            I, LYNN M. SCHINDLER, do hereby certify that

3        this transcript was prepared from the digital audio

4        recording of the foregoing proceeding, that said

5        transcript is a true and accurate record of the

6        proceedings to the best of my knowledge, skills, and

7        ability; that I am neither counsel for, related to,

8        nor employed by any of the parties to the action in

9        which this was taken; and, further, that I am not a

10       relative or employee of any counsel or attorney

11       employed by the parties hereto, nor financially or

12       otherwise interested in the outcome of this action.

13

14

15                                        LYNN M. SCHINDLER

16

17

18

19

20

21

22

23

24

25

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 137

1    Brian Underwood

2    brian.underwood@bclplaw.com

3                       August 21, 2024

4    RE: Slawin, Eric v. Banc Of America Merchant Services, Et Al.

5         8/7/2024, Natasha Collins (#6844261)

6         The above-referenced transcript is available for

7    review.

8         Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12        The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   cs-southeast@veritext.com.

16    Return completed errata within 30 days from

17   receipt of testimony.

18     If the witness fails to do so within the time

19   allotted, the transcript may be used as if signed.

20

21

22                  Yours,

23                  Veritext Legal Solutions

24

25

Natasha Collins                                     August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 138

1    Slawin, Eric v. Banc Of America Merchant Services, Et Al.

2    Natasha Collins (#6844261)

3                   E R R A T A   S H E E T

4    PAGE_____ LINE_____ CHANGE_____

5    _____

6    REASON_____

7    PAGE_____ LINE_____ CHANGE_____

8    _____

9    REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____    _____

24   Natasha Collins                              Date

25

Case 1:19-cv-04129-AT    Document 196-2    Filed 09/18/25    Page 139 of 178
Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

Page 139

1    Slawin, Eric v. Banc Of America Merchant Services, Et Al.

2    Natasha Collins (#6844261)

3                    ACKNOWLEDGEMENT OF DEPONENT

4        I, Natasha Collins, do hereby declare that I

5    have read the foregoing transcript, I have made any

6    corrections, additions, or changes I deemed necessary as

7    noted above to be appended hereto, and that the same is

8    a true, correct and complete transcript of the testimony

9    given by me.

10

11    _____    _____

12    Natasha Collins                         Date

13    *If notary is required

14                        SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                        _____ DAY OF _____, 20____.

16

17

18                        _____

19                        NOTARY PUBLIC

20

21

22

23

24

25

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

[& - 2020]                                                                 Page 1

| & |
| --- |
| **&** 2:4,11 3:3 7:8 |

| 0 |
| --- |
| **04129** 1:8 |

| 1 |
| --- |
| **1** 5:6 63:1,15 125:18,20 |
| **1-6** 31:18 |
| **1000s** 70:13 |
| **1038** 97:6,7 |
| **104** 4:8 |
| **1044** 96:5 |
| **1045** 95:9 |
| **1046** 94:12 |
| **1047** 94:3,12 |
| **1050** 2:5,12 |
| **108** 4:10 |
| **109** 4:12 |
| **10:02** 1:16 6:5 101:11 |
| **10:20** 111:9 |
| **10:28** 77:16 |
| **10:30** 98:20 |
| **10:31** 91:21 |
| **10:38** 102:12 102:12 |
| **10:39** 102:11 |
| **10:46** 91:11 |
| **10:48** 122:15 |
| **11/13/17** 5:9 |
| **111** 4:9 |
| **112** 4:14 |

**113** 4:16
**114** 4:17
**1156** 114:20
**117** 5:11
**118** 105:2
**119** 4:18 104:20 105:10 105:14,15 106:3 107:3
**11:44** 58:14
**12** 4:9 110:23 110:25 111:1
**12/15/17** 5:4
**120** 104:20 106:4,6
**1201** 2:22
**121** 5:9
**124** 4:25
**129** 4:21,24
**13** 4:10 33:19 45:1,7 108:4,5 108:6,7,10 122:15,25
**1380** 83:24 91:8
**13th** 33:5 44:15 44:16 47:1 54:24 55:8 62:2
**14** 4:11 109:14 109:15,16,24 122:25
**1410** 109:24
**1410-1411** 4:12

**1411** 109:25
**14th** 2:22
**15** 4:13 56:8,23 112:1,2,23 113:18 127:9
**16** 4:15 31:18 31:19 33:19 44:22,24 45:5
**17** 4:16 113:23 113:24 114:2 116:19
**17th** 56:18 79:18 95:10
**18** 4:17 17:19 19:19 20:2 26:16 110:21 110:22 114:12 114:13
**1820** 32:11
**1821** 32:12
**18th** 101:2,11 111:9
**19** 4:18 117:8 119:3,4 120:10
**19th** 97:8 100:15 102:11 118:19
**1:01** 58:17
**1:19** 1:8
**1:27** 114:21
**1:37** 47:1

| 2 |
| --- |
| **2** 5:8 15:1,8 63:7,10 125:9 125:17,20 |

**20** 4:19 27:8 98:19 129:22 129:23 130:3 130:14,24 139:15
**2001** 58:24
**2002** 58:24
**2010** 11:24 12:15 13:5,9 13:19,24 58:25
**2013** 13:10
**2016** 14:4,5,6 15:5 17:19 19:19 20:2 26:16
**2017** 12:11 33:19 44:20 45:7 50:1 56:8 56:23 62:7,18 65:1 66:20 74:20 77:9,16 80:21 81:4 84:2 91:6,21 95:11 98:20 114:3,21 117:6 117:15 122:15 127:9,14 129:10,17
**2018** 13:12,12 13:16,19,24 14:5,6 15:5 26:22 27:1,3,8 27:24
**2020** 11:8,25 12:1,1,10,15

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

[2020 - accepted]                                                    Page 2

13:5,17 27:6
**2021** 10:21,24
 11:9,9 130:23
**2023** 10:2
**2024** 1:15 6:8
 137:3
**21** 4:22 129:22
 129:23 130:6,7
 130:15,25
 137:3
**25** 117:15
**261-9559** 2:8
 2:15
**26343** 136:14
**27** 4:25 124:20
 124:21
**27079** 135:17
**28** 5:3 55:15,16
 57:17,23 114:3
 126:11
**28th** 75:1,1,16
 116:19,21
**2:26** 93:21
**2:41** 93:24

**3**

**3** 4:7 41:2,3
 44:2,8,25 45:3
 45:5,6,14 47:2
 50:3
**30** 137:16
**30097** 1:18
 6:12 9:8
**30309** 2:23
**30338** 2:6,13

**31** 4:15

**4**

**404** 2:8,15,25
**404-313-8955**
 9:10
**41** 4:7
**416** 80:17,25
 87:25
**417** 90:11
**419** 77:8
**420** 74:22 77:3
**421** 74:22
**4:23** 131:12
**4:38** 131:15
**4:43** 134:9,11
**4:57** 94:5

**5**

**5** 4:8 104:11,12
 104:15 114:21
 117:6
**500** 2:5,12
**500s** 70:12
**532** 100:23
 101:10
**534** 107:18
**541** 102:14
 118:16,16
**55** 5:4
**551** 98:18
**552** 100:13,13
**567** 91:18
**57** 5:5 68:8,9
 68:25 71:1
 72:1,3 74:22

77:3 80:17,19
 80:19 83:23
 87:24 90:11
 91:9,19
**572-6600** 2:25
**59** 5:7,10 68:7
 68:7,9,25 72:1
 72:4 93:7 94:3
 100:13 101:9
 107:18 118:15
**5:13** 100:15
**5th** 115:9

**6**

**6** 77:15
**6/13/17** 4:7,15
**62** 5:9 121:18
 121:19 123:9
**68** 5:6,8
**6844261** 1:20
 137:5 138:2
 139:2

**7**

**7** 1:15 6:8
**7:59** 81:4

**8**

**8** 4:3 81:4 84:2
 91:21
**8/18/17** 4:9
**8/28/17** 4:16
**8/7/2024** 137:5
**83** 5:10 59:18
 59:19 61:6,14
**84** 5:11 117:9
 117:10,13

**8764** 6:11 9:7
**8th** 91:5,6 94:5
 100:25

**9**

**9** 122:25
**9/25/17** 5:11
**9/5/17** 4:17
**9406** 125:4
**9:12** 95:11
**9:51** 45:2,14
**9:52** 91:7

**a**

**a.m.** 1:16 6:5
 45:2,14 58:14
 77:16 81:4
 91:21 122:15
**abello** 74:2
 75:3 76:1,9
 79:18 90:12
 91:7 94:5,13
 95:10 96:18
 102:10 118:19
**abello's** 102:5
**ability** 9:3
 135:10 136:7
**able** 60:18,19
 73:9 90:21,22
 94:13
**above** 137:6
 139:7
**absent** 6:18
**acceptable** 8:22
**accepted** 109:3

Natasha Collins
August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

**[account - answer]**                                      Page 3

account  28:25
29:10,20 40:3
41:20,23,24
42:6,9 47:16
49:16
accounts  42:2,9
accrue  16:12
accuracy  137:9
accurate  135:9
136:5
accurately  39:9
acknowledge...
139:3
acknowledg...
137:12
acknowledg...
6:15
acquiring
15:14
acronym  40:21
41:7
acronyms
40:13
act  86:13
action  1:7
25:20 124:19
135:12,16
136:8,12
active  59:12,13
activities  55:3
100:9 119:23
120:1 123:8
activity  39:15
89:6 119:22
122:22

acts  86:25 87:1
87:13
actual  29:11
94:14 95:8
actually  11:9
13:10 24:5,9
27:14 32:20,21
56:24 73:8
80:18 81:23
117:9 118:15
127:20
added  105:20
105:24
additionally
6:18
additions  139:6
address  6:9 9:6
9:7,11,19,20
56:14 131:25
addressed  93:3
addresses  9:14
addressing
38:13 39:2
adequate  36:12
ades  4:15 17:20
18:2,7,18 19:2
19:12,17 25:4
25:7,11,19,24
26:10 27:10
31:7,9 32:25
33:5,18,22
38:9 40:1,2,5,9
40:19 41:19,23
42:21 44:15,18
44:25 45:11,15

49:17,21 50:5
51:21 52:13
53:15,17,24
62:3,25 63:6
63:22 65:11
101:18 109:7
110:12
administer
6:15
advised  90:13
90:14
affect  85:22
ago  81:6 90:23
111:14
agree  6:16,20
86:14 96:20
99:2,6
agreed  52:1
66:21 109:2
113:5
agreeing
113:12
agreements
23:2,10,11,20
23:21 24:7,18
ah  104:23
ahead  22:15
63:9 82:4 95:3
al  6:8 137:4
138:1 139:1
alan  75:2,16
76:1,9 94:5,12
95:10 96:12,15
allan  96:6

allotted  137:19
alphabets
40:24
america  1:8,10
2:17,18 6:8
11:18,19 14:25
15:6 16:17,22
17:3,4,5,6
20:19,19,25
21:2,18,24
22:6,7,10,11,22
22:24 23:16
26:8 28:5
34:22 35:1,4
35:12,23 36:10
36:22 37:7,9,9
37:10,12,14,16
37:18,21 38:2
38:6 51:21
58:20,23 59:1
59:4,5 60:7
76:4,24 80:16
85:21 121:1,6
137:4 138:1
139:1
america's
16:18,20 17:2
21:2,7,10 22:1
22:8 37:5
annual  14:11
15:1
answer  8:21
27:15 30:14,17
30:19,24 31:4
32:3,9 34:2

Natasha Collins
August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

**[answer - aware]**                                              Page 4

36:8 46:2
50:20 65:8
73:8,16 76:20
86:6 97:2
99:13 102:15
102:18 111:4,7
112:21
**answerable**
38:2,6
**answered**
73:10 75:20
77:4 96:22
97:17 99:11
127:20
**answering**
75:19 100:11
102:2
**anticipated**
89:11,14
**anybody** 25:25
124:11,13
**apologize** 28:16
58:5,8
**appear** 111:11
122:16
**appears** 59:25
74:23 76:22
102:4 105:16
105:17,22
108:14
**appended**
139:7
**applicable** 6:24
137:8

**appreciate**
70:21 93:12,16
**apprised** 125:7
132:23
**approached**
74:18
**appropriate**
84:5 113:16
**approve** 50:12
**april** 74:20
75:1,1 95:12
**asked** 36:20
54:16 67:16
68:24 81:23,25
82:1,8 89:2
99:19 104:3
125:25 126:1
**asking** 9:17
12:21 13:4
30:9 32:19
68:2 72:10,16
79:15 85:24
88:24,25 89:1
94:13,23 95:5
100:5,18
106:17 110:15
111:9,21
127:14,22
128:12
**assess** 72:13
95:20
**assessing** 15:9
**assessment**
74:25 94:14
95:8 119:21

**assessments**
89:10
**assets** 80:9
**assigned** 6:3
**assist** 78:3
100:10
**assistance**
102:1
**associated**
16:12 17:12
120:2
**associates**
41:25
**assume** 8:20
60:8 80:23
89:1 97:15
98:9 120:25
130:22
**assumptions**
76:11
**atlanta** 1:3 2:6
2:13,23
**attached** 96:3
133:15 134:4
137:11
**attaching** 94:6
**attendance** 7:6
**attention** 64:25
94:3 107:17
116:15 130:6
**attestation**
72:17 125:14
131:5
**attesting** 131:4

**attorney** 49:12
133:21 135:14
136:10 137:13
**audience**
120:17
**audio** 135:8
136:3
**audit** 5:3 48:23
50:11 51:3
55:22,24 103:6
105:21 106:2,3
107:12,13
122:19
**august** 1:15 6:8
81:4 84:2 91:5
91:6,21 94:5
95:10 100:25
108:3 111:9
114:3 116:19
116:21 137:3
**authorized**
6:14
**available** 137:6
**avenue** 100:5
**avenues** 99:10
**avoiding** 28:18
**awaiting**
115:24
**aware** 23:25
29:14,24 30:10
30:12 65:3,5,9
67:15,21 72:10
104:8 121:4,7
121:8,14,17
125:9 128:19

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

**[aware - bears]**                                                     Page 5

| | | | |
|---|---|---|---|
| 129:8 131:18 | 34:11 35:10,11 | **bams's**  4:19,22 | 59:4,5 60:7 |
| 131:20 | 35:13,15 37:8 | 39:2 42:12,21 | 76:4,23 79:21 |
| **b** | 37:22 38:1,5 | 42:25 43:9,17 | 80:5,10,14,15 |
| **b**  4:5 5:1 | 38:13,18 42:13 | 43:24 65:4,19 | 80:16 85:20 |
| **back**  21:4 24:5 | 42:16,16,21,25 | 66:11,18 67:16 | 90:13 121:1,5 |
| 24:9 44:21,22 | 43:9 45:17,22 | 67:20 68:14,21 | **banking**  37:11 |
| 50:3,19,22 | 46:12,25 52:14 | 72:11 73:16 | **base**  21:2,7,11 |
| 58:16 62:1 | 52:24 53:3 | 79:5 86:2,12 | 22:2 25:13 |
| 69:19 70:5,6 | 58:25 59:2 | 86:15,20,23 | **based**  34:6,8 |
| 73:2,11,18 | 63:12 65:4,12 | 87:17 94:9 | 48:19 51:25 |
| 74:8,9,10 77:8 | 65:12,13,21 | 95:6 96:12 | 119:1 120:24 |
| 78:9,16 80:20 | 66:12 67:16 | 108:12 121:15 | **basically**  48:15 |
| 87:4,24 93:23 | 72:10,14,16,17 | 129:2,6 130:3 | **basis**  12:18 |
| 94:13 96:2 | 73:10,18,24 | 130:7 132:12 | 13:1 24:16 |
| 97:24 102:24 | 74:18 76:9 | **banc**  1:8 2:17 | 30:2 32:17 |
| 104:5 107:18 | 77:10,18 78:2 | 6:7 137:4 | **bates**  4:11 |
| 108:24 118:11 | 78:11 79:1,10 | 138:1 139:1 | 32:11,11 70:11 |
| 122:8 126:10 | 79:19,25 80:2 | **bank**  1:9 2:18 | 80:25 87:24 |
| 131:14 | 80:12 81:2 | 11:17,19 14:25 | 91:8,18 94:3 |
| **background** | 84:16 85:1,4,5 | 15:6 16:17,18 | 97:6 98:18 |
| 61:17 | 85:12,13 86:1 | 16:19,22 17:2 | 100:13 101:9 |
| **bad**  86:19 | 86:9,16 87:11 | 17:3,3,5,6 | 102:14 105:2 |
| **balance**  106:2,4 | 96:19,23,23 | 20:19,19,25 | 106:3 109:24 |
| **bams**  11:20,23 | 97:4 99:14,24 | 21:1,2,6,10,18 | 114:19 118:16 |
| 11:24 12:2,5,9 | 100:10 101:17 | 21:24 22:1,6,6 | 123:1 125:4 |
| 13:5,17 17:1,9 | 101:22 122:19 | 22:8,10,10,22 | **bathroom**  58:4 |
| 17:12 21:6,9 | 123:2 124:13 | 22:23 23:16 | 58:9 93:11,14 |
| 21:19,24 22:9 | 125:14 126:3,5 | 26:8 28:5 | **bclp**  7:12 |
| 23:2,10 24:1,1 | 126:17,21,23 | 34:22 35:1,4 | **bclplaw.com** |
| 24:11,18 25:1 | 126:24,25 | 35:12,23 36:9 | 2:24 137:2 |
| 28:24 29:14,24 | 127:10 128:16 | 36:22 37:4,6,9 | **bco**  106:14 |
| 30:6,7,10,13 | 128:24 129:11 | 37:9,10,12,14 | 113:14 |
| 31:1,10 32:13 | 129:17 131:24 | 37:15,18,21 | **bear**  60:13,24 |
| 32:21 33:1,6 | 132:3 | 38:2,6 51:21 | **bears**  114:19 |
| 33:10,16,23 | | 58:19,22 59:1 | 125:4 |

Natasha Collins
August 7, 2024

Slawin, Eric v. Banc of America Merchant Services, et al.

**[beatrice - certified]**                                                    Page 6

**beatrice** 75:7,8
  77:3,16
**beef** 52:5
**began** 9:25
  81:14
**behalf** 2:2,17
**believe** 10:1
  18:3 40:20
  41:8 52:17
  62:5,9 75:13
  81:25 91:23
  108:25 110:10
  110:23 116:23
  117:20 123:15
  131:1,21 133:2
**believed** 79:1
**best** 19:22 42:7
  56:15 116:5
  135:10 136:6
**better** 90:4
  92:1,17
**beyond** 116:21
**billing** 107:12
  107:13
**bit** 13:16 35:3
  102:25
**blame** 97:16,18
  98:2,11
**blurry** 60:20,21
**boa** 24:1 35:11
  35:15 80:12,15
  85:22 95:12,16
**bold** 104:20,22
  105:5,5,6,8,24

**bolded** 105:20
**boss** 102:5
**bottom** 32:11
  94:12
**bounced** 90:19
**bradford** 1:19
  6:3 8:12 135:2
  135:18
**breach** 87:1,13
  127:6
**break** 58:4,6,10
  93:11,14 131:8
**brennan** 98:19
  100:14
**brian** 2:20 7:11
  34:18 42:19
  44:16,17 45:1
  45:1,13,14
  47:1,9 50:5
  53:18,23,25
  54:19 55:5,9
  55:13 95:3
  107:19 137:1
**brian.underw...**
  2:24 137:2
**broad** 47:14,15
  99:25
**broken** 101:3
**brought** 54:5
  64:25
**brown** 102:3,5
  102:10,12
**brown's** 118:18
**bryan** 2:21

**bullet** 105:18
  106:9 115:15
  115:19,23
**business** 11:13
  13:9,11,19,23
  14:16,19 15:4
  15:6,10,12,18
  15:19,21 16:1
  16:6,7,9 17:6
  19:9,10 39:5
  39:11 42:2
  46:18 47:11,21
  47:25 48:3,13
  48:22 49:4,15
  49:15,18,19
  51:24 62:21,22
  63:2,21,24
  64:2,10,11,21
  64:23 73:6,24
  74:4 75:4,8,18
  81:15,20 82:3
  83:6,15 84:5
  103:8,9,13
  106:20 109:8
  110:6,12
  113:14 115:6
**businesses**
  21:18

**c**

**c** 2:1 3:1 6:1
  7:23 9:13
  114:22
**call** 34:10,14,20
  38:10,16 82:1
  125:9

**called** 8:3 11:20
  14:18 23:20
  24:8
**calling** 30:4
**calls** 35:23 37:1
**capacity** 20:13
  24:25
**card** 28:9,12
  29:1,1,3,11,13
  30:8
**cardholder**
  94:16
**cardholders**
  127:3
**care** 37:1 42:7
**career** 25:15
  126:5
**case** 55:5 62:5
  123:16
**catch** 49:9
**cave** 2:21
**cc** 124:11
**cced** 75:15,25
  76:9 81:2 88:1
  118:18 120:10
  120:11
**ceo** 26:8
**certain** 28:6,24
  62:6,11 75:17
  104:7
**certainty** 76:10
**certificate**
  135:1 136:1
**certified** 6:21

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.

August 7, 2024

**[certify - complete]**

Page 7

**certify** 135:4
136:2
**chain** 4:7,15
44:11 45:10
50:4 80:19
90:18 108:10
**chains** 76:14
**change** 13:15
13:16 27:1
59:5 60:7
109:1 113:4
138:4,7,10,13
138:16,19
**changed** 13:12
13:15,24 104:7
111:17,19,22
113:3
**changes** 62:10
62:19 137:10
139:6
**characterizati...**
98:3
**chargebacks**
42:7
**chart** 18:7
**chief** 52:16
**chris** 55:7
119:21 123:7
**christine**
119:16
**circumstances**
29:23 30:12,25
**cities** 21:17
**civil** 1:7

**clarification**
70:21 110:16
**clarify** 20:6
22:4
**clarity** 65:8
107:22
**clear** 24:6
60:25 70:10
104:2 116:13
**clearly** 115:3
**client** 17:24
20:19,21,23
21:2,7,11,14
22:2 24:3
28:11 34:16,21
34:25 36:9,10
36:21 37:1,3,7
37:19 38:11
39:8,18,22,24
40:1,2,4 41:10
71:21 80:9
90:12,13,21
101:4 106:8
108:1 115:16
115:23 121:3
**clients** 15:2,6
15:10,12,14,16
21:1,6,10,16
22:1,9,10,12,19
23:3,18 24:12
24:18 25:1
28:8 34:25
35:2,2,7,7,10
35:11,12,15,21
35:22,24 37:10

37:11,13,20,23
42:1,11,12,16
42:21,25 43:9
90:1 115:20
121:3 127:2
129:12
**clifford** 4:18
119:16 120:15
**clifford's** 123:8
**closed** 100:6
**cms** 41:9
110:11 111:16
120:18
**cmscs** 40:11,18
**coaching** 5:11
117:13,14,19
117:22,25
118:7,17,25
**code** 86:15,20
86:23 87:11,17
**collins** 1:14
2:19 4:7,8,17
5:10 6:7,11
7:19,22,22 8:2
8:10,13 13:3
30:14,24 31:22
32:24 41:6
58:4,19 59:22
60:17 61:4
94:2 114:3,20
129:22 130:2
131:17 137:5
138:2,24 139:2
139:4,12

**come** 26:19
29:14 37:18
39:9 48:4
53:20 55:11,12
64:8 65:18
67:6,8,9 72:9
74:16 78:8
99:15 110:14
131:17
**comes** 58:5
**coming** 90:5
92:5 103:18
**comment** 35:6
**comments**
99:20 104:20
105:3,5,8,9,20
105:24
**commercial**
11:13
**committee** 92:4
92:16,24
**communicated**
48:12 86:11
116:12
**companies** 35:5
120:22
**company** 68:1
**compilation**
4:14 5:5,7
70:15 112:23
**complain** 84:14
**complaint**
82:18
**complete** 24:23
50:13 51:7

Natasha Collins                                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

**[complete - control]**                                                Page 8

74:18 77:10,18
78:2,10 79:2
90:14 97:19
98:15 139:8
**completed**
51:12 73:11,18
74:7,13 137:16
**completing**
99:22
**completion**
57:3,8 128:18
128:20
**complex**
119:25
**compliance**
28:1 33:20
39:6 52:16
67:16,20,24
68:14,21,22
72:11,14,15,17
79:4,5,7 94:7,9
94:17 95:6
96:7,12 97:5
99:24 100:2
102:16,20
112:25 120:1
125:14 128:16
129:3
**compliant**
29:15,25 30:10
30:13 31:1,11
32:14,20,22
33:2,7,11,23
42:13,17,22
43:1,10 45:17

45:22 46:13
65:4,14,21
66:12 79:10
84:16 85:1,5
85:13 99:16
127:12 129:13
129:18
**complicated**
42:3
**concern**   34:24
36:9,22 42:25
43:16,23 65:19
65:24 84:11,15
84:20,25 86:7
86:11
**concerned**
35:15 37:22
43:8 87:11
101:1
**concerns**   86:24
87:12,19
**concluded**
134:12
**conduct**   86:25
87:12,17
**confidential**
86:2,8 120:16
120:20,23,25
123:19,25
124:6
**confirm**   118:12
134:3
**confused**   48:2
49:5,14 61:25

**confusing**
12:21 35:3
128:11
**confusion**
103:1,17,19,25
104:2 115:6
**conjunction**
122:22
**consequences**
126:16,21
**consider**   18:6
45:18 46:7
**considered**
15:2,21 38:21
48:23 90:24
**constitute**   7:3
86:13
**constituted**
87:13
**constituting**
87:1
**consult**   132:16
132:18,19
**consultant**   74:4
74:9,11 75:4
106:20
**consultants**
73:7,23 81:16
81:20 82:3
83:7,16 84:5
**consultation**
132:21
**consulted**
106:19

**consumer**
115:2
**consuming**
33:24
**cont'd**   3:1 5:1
**contact**   42:11
106:18 115:1
120:3 121:2
**contacted**
117:5
**contacting**
117:1
**contained**
71:25 72:3
120:9
**containing**   50:4
**contents**
111:21
**continue**   30:21
67:5 92:25
107:21
**continued**
27:11
**continuing**
115:23
**contract**   24:19
24:21,22 29:8
**contracts**   23:11
23:17 24:2
25:1,2,3,6
**control**   14:19
15:18,20,21
16:1,6 19:9
39:5 46:18
47:11 49:18,20

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.

August 7, 2024

[control - data]

Page 9

51:24 63:21
83:7 103:8,10
103:13 113:15
**controls** 56:17
62:21,22 63:2
63:25 64:2
75:9,18
**conversation**
25:9,22 105:23
**conversations**
25:8,17 35:22
37:2 42:18,20
43:11 81:18
118:5 129:19
132:22
**cool** 93:19
**coordinating**
49:20
**coordination**
92:1,18,25
**cop** 106:14
**copied** 102:9
**copies** 137:14
**copy** 113:19,20
122:13 133:16
**corporate** 3:5
48:11,16
**correct** 11:21
12:3 16:14
17:10 18:8,12
19:14 27:7,21
27:23,25 29:2
29:19 40:6,9
40:10,20 48:5
48:7,19 55:14

56:5,6,25
57:24 63:4,14
64:8,17 65:1
66:15,19,23
67:12 68:4
72:2 73:20,25
74:3,5 75:6
77:7,7,9 82:22
82:23 83:12,18
86:10,10 94:8
98:1,20,24
107:1,16
110:10,13
114:25 120:5,8
124:16 127:7
128:24,25
130:9,15,20
131:4 139:8
**corrected** 46:21
**correction**
27:14
**corrections**
139:6
**correctly** 16:13
68:12 77:5
**corroborating**
98:22
**costly** 33:24
46:11
**counsel** 8:7
135:11,14
136:7,10
137:14
**count** 24:23

**counting** 134:5
**course** 12:22
14:14 25:7
104:7 109:1
111:17,20,22
113:3,4
**court** 1:1 30:21
**cover** 16:8
117:17
**covered** 67:23
**covers** 14:21
**create** 56:15
59:10
**created** 17:9
61:10 104:1
118:2
**creating** 57:16
**credit** 28:9,12
29:1,1,3,11,13
30:8
**crown** 2:5,12
**cs** 137:15
**css** 110:8
111:16
**current** 9:6,7
56:13 60:9,9
61:12,18
**currently** 10:15
**customer** 34:23
73:19
**customers**
14:25 21:19
**cv** 1:8

| **d** |
| --- |
| **d** 4:1 6:1 |
| **damage** 85:20 |
| **dan** 100:14 |
| **darien** 19:6,9 |
| 19:11 108:16 |
| 108:19 113:7 |
| 115:3 |
| **data** 4:10 17:8 |
| 17:13 28:25 |
| 29:1,3,4,5,8,10 |
| 29:11,16,20 |
| 30:9 33:14 |
| 34:10,10,14,20 |
| 34:23 35:2,5,7 |
| 35:10,20,21 |
| 36:4,6,11,23,23 |
| 37:22 38:10,17 |
| 46:24 47:7 |
| 56:14 67:25 |
| 68:16,19 73:9 |
| 73:17 77:4,10 |
| 78:3,5,9,21,25 |
| 79:1,7 83:2,4,8 |
| 83:10,14,16,18 |
| 84:6,6 89:13 |
| 93:3 94:16 |
| 97:21,23 98:23 |
| 99:1,5,14 |
| 100:5,6 106:21 |
| 106:23 108:12 |
| 110:5 114:4,9 |
| 115:2,8 117:2 |
| 119:23 121:2 |
| 121:16 123:2,7 |

Case 1:19-cv-04129-AT    Document 196-2    Filed 09/18/25    Page 149 of 178
Natasha Collins
August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

[data - directly]                                                      Page 10

123:13 127:6
129:3
**data's** 68:15,22
79:4
**date** 1:15 31:16
61:7 116:13,15
123:15 133:6
138:24 139:12
**dated** 33:19
77:15 81:4
116:19
**dates** 72:8
118:11
**david** 17:20
19:2,16 25:4,6
25:11 27:10,11
27:13,17 31:7
31:9 40:1,2,5,8
40:18 41:19,23
42:20 44:15,18
44:25 45:11,15
49:17,21 50:5
51:20 52:13
53:15,16,22,24
62:25 63:6,22
65:11 110:12
**david's** 46:10
52:1,8
**day** 42:5,5 74:6
81:14 91:5
139:15
**days** 118:16
137:16
**deadline**
129:11

**dealing** 118:17
**dealt** 75:4
**december** 56:8
56:18,23 57:1
66:20 127:9,14
128:12,15
129:10,16
**decision** 132:24
**declare** 139:4
**dedicate** 34:11
**dedicated**
38:17 46:23
47:7
**deemed** 99:1
139:6
**defendant** 1:11
2:17 7:13
133:6
**defense** 15:22
16:2 47:18,19
47:21,24,24
48:3,9,10,17,24
50:15 63:1
125:21
**define** 59:13
73:3
**definition** 15:8
**deflect** 97:16
97:18 99:14
**deflecting** 98:2
98:11
**deliver** 73:11
73:18
**delivered**
117:16

**delivery** 133:18
**depended** 26:1
**depends** 47:4
47:13 99:18
**deponent**
137:13 139:3
**deposing**
137:13
**deposition** 1:13
6:6 7:1 9:25
10:6 135:1
**describe** 22:5
29:23 41:21
42:8
**described** 63:2
**description** 4:6
5:2
**designed** 73:5
82:12,13
**desired** 34:15
**detail** 119:10
**details** 126:15
**detected**
131:23
**determine**
51:13,18,19
**determined**
57:4,11
**determining**
123:6
**develop** 47:22
48:1 49:23
53:10,20
**developed** 56:9
67:17 123:12

**development**
25:16
**dictated** 37:12
**difference**
41:21 64:14
113:10
**different** 18:11
18:12,18,24
19:12 52:7
70:10 88:6
99:24 103:7,8
110:6 115:20
**difficult** 40:21
**digital** 135:8
136:3
**direct** 62:4,12
78:4 82:15
94:2 107:17
121:2 130:5
**directed** 72:7
83:17 96:18
**directing** 83:13
83:15 97:4
**direction** 52:11
82:24 83:17,19
83:20,21
**directions**
104:7
**directly** 26:13
26:17,22 34:10
34:15,20 35:6
37:19 38:10,16
39:25 74:9
83:1,3,7

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

[disclosing - email]                                                    Page 11

**disclosing**
86:12
**discovered**
127:21
**discuss** 25:4,6
65:11 115:25
116:4 124:9
129:16
**discussed** 43:22
109:1 120:25
121:5,15
**discussion**
60:15,23 61:2
105:3,7 107:21
123:18 124:7
**discussions**
42:15 65:17
72:20 108:18
115:25 117:24
118:1 124:4
**dishonest** 84:17
87:1,13
**dishonesty**
86:13
**dispute** 43:18
43:24
**disputes** 42:6
**dissolved** 12:2
**distribute** 73:7
**distribution**
53:19 124:12
124:14
**district** 1:1,2
**division** 1:3
59:6 111:10

116:11 117:5
**document**
39:16 50:10
51:25 52:2
55:19 57:1
58:1 64:9,21
64:22 69:3,5
71:18 81:24
94:10 104:3,16
106:2,4 114:17
114:19 119:14
122:8 123:4
124:24 125:4,5
126:15,20
127:8 128:17
130:23 131:3
**documentation**
50:12 51:2,3
53:10,12 55:23
55:24 67:24
72:11 82:10
105:19,22
131:24
**documented**
38:25 40:14,15
49:23 50:6
56:11,21 62:24
67:22 81:22
82:2 116:23
**documenting**
39:6 63:3
103:10,14,18
**documents**
72:13 73:21
74:23 93:10

96:4 97:7
108:14
**doing** 92:23
**doubt** 81:7
**drafting** 24:10
**due** 127:3
**duluth** 1:18
6:12 9:8
**duly** 8:3 135:5
**duties** 13:22,24
14:3,5,21 15:4
57:19

**e**

**e** 2:1,1 3:1,1 4:1
4:5 5:1 6:1,1
7:23,23 9:13
102:6,6 133:14
138:3,3,3
**earlier** 64:6
67:3 71:22
106:16 116:15
125:20
**easier** 41:15
71:5
**effect** 24:22
**either** 96:7
113:18,20
117:16 132:9
**email** 4:7,8,9
4:11,13,15,16
4:17,18,25 5:5
5:7,9 9:11,14
9:19,20 31:7,9
32:10,12,24,25
33:4,8,13,18,22

34:3,6,8,13,18
44:10,15,17,25
45:1,2,2,9,11
45:14 46:10
47:1 50:4,5
53:18,19 54:4
54:6,12,14,18
54:20 62:3
76:1,9,14
77:15,19,25
79:18 80:19
81:1,3,8,11
82:5,6,7 83:24
87:25 88:9,19
88:22,25 89:24
90:18 91:6,6
91:10,20,22
94:4,11,21
95:10 96:16
97:8,13,14
98:7,9,14,19,20
100:4,14,18
101:10,13,20
102:4,9,11
104:17 106:16
107:19 108:10
108:24 110:11
110:15,20
111:8,12,21
114:2,5,20,24
116:14 117:17
118:18 120:8
120:24 122:13
122:17,21
123:5 124:10

Case 1:19-cv-04129-AT    Document 196-2    Filed 09/18/25    Page 151 of 178
Natasha Collins
August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

[email - exhibit]                                                    Page 12

124:12,18
125:6,18,25
131:25
**emails** 4:10
20:15,16,18
40:15,15 44:12
44:14,16 45:6
45:10 50:5
70:15 71:24,25
72:3,5,7,8
76:21,22 80:20
80:23 81:13,22
81:22 82:11
99:19 100:2
101:23 104:4,9
109:25 112:24
113:17 116:20
118:12 119:1
119:20 120:9
131:24 132:2
132:12,15
**employed**
10:15,17,18
135:11,14
136:8,11
**employee** 126:3
135:13 136:10
**employees**
22:20,22,23
33:16 86:16,24
87:11,18,22
**employment**
10:19
**encouraging**
49:21

**ensuring**
115:11
**enter** 23:17
**entered** 23:2,10
**enterprise** 14:8
14:12,23 15:2
15:2,7,8 17:20
19:3,13 21:18
27:11,20 50:16
52:3,10,12
63:10,17
**entire** 63:17
**entirely** 62:6,11
88:10
**environment**
101:6
**eric** 1:5 2:2 6:7
7:9 8:11,16
39:14 42:15,19
42:24 43:12
44:18 50:5,8
50:10 53:10
55:11 72:21
73:2 75:22
81:14,23,25
82:11 83:13
86:11 89:6,17
89:18,20,21
91:10 97:7,16
99:6,9 102:1
102:10 104:17
104:21 105:19
106:7,17
107:20 108:24
113:6 114:21

114:22 115:4
115:16 117:14
117:18 118:3
137:4 138:1
139:1
**eric's** 73:1
75:10 99:20
109:6
**erica** 126:1
**erm** 50:17 53:3
56:5
**errata** 137:11
137:13,16
**es** 135:4
**escalated** 25:16
100:24
**escalation**
100:22
**esquire** 2:3,10
2:20
**essentially**
83:10
**establishing**
32:21
**et** 6:8 137:4
138:1 139:1
**eta** 128:15
**ethics** 86:15,20
86:23 87:11
**evaluated**
48:13
**evaluations**
48:25
**evangelista**
81:1 87:25

88:2 89:24
107:19
**event** 74:12
**evidentiary**
6:25
**exact** 39:13,14
116:15
**exactly** 19:21
38:19 40:14,22
40:23 54:25
75:17 79:14
88:5
**examination**
4:2 8:8
**examined** 8:5
**excellent** 8:14
**except** 45:6
**exchange** 82:5
82:6 104:17
**execute** 24:20
**execution** 16:8
16:10 17:5
39:15 55:3
**executive** 13:10
13:11,20,23
15:4 52:9 60:7
92:4,9,14,16,24
115:24
**exhibit** 4:7,8,9
4:10,11,13,15
4:16,17,18,19
4:22,25 5:3,5,7
5:9,10,11
31:18,19 32:3
33:19 41:2,3,8

**[exhibit - first]**                                    Page 13

44:2,7,8,24,25
45:3,5,5,6,14
47:2 50:3
55:15,16 57:14
57:17,23 59:19
61:6,14 68:7,9
68:9 71:3
74:22 77:3
80:17,19,19
81:12 83:23
87:24 90:11
91:9,19 93:7
94:3 100:13,13
101:9 104:11
104:12,15
105:2 107:18
108:4,5,6,7,10
109:14,15,16
109:24 110:21
110:22,23,25
111:1 112:1,2
112:23 113:18
113:23,24
114:2,12,13
116:19 117:8,9
117:10,13
118:15 119:3,4
120:10 121:18
121:19 123:9
124:20,21
126:11 129:23
129:23 130:3,6
130:7,14,15,24
130:25

**exhibits** 5:13
31:23 32:1
72:1 74:19
93:9 129:22
133:15 134:3
**existing** 21:2
25:1
**expect** 53:5,7
53:10 75:23
100:6 117:7
**expected** 37:13
53:11 54:25
55:11 81:15,20
100:8
**experience**
34:16,21,24
36:9,21 38:12
**explain** 20:24
30:11 36:14,15
36:25 103:3
113:4 119:19
**explained**
38:11 64:14
**explaining**
98:13,15
**explore** 56:14
99:10
**exposure** 65:20
**express** 42:24
84:10,20,24
**expressed**
43:16
**expressing**
114:7

**f**

**f** 52:22
**face** 35:16,19
42:10
**fact** 68:5 97:23
98:3
**facts** 84:21
**fails** 137:18
**fair** 13:18 15:3
22:13 33:9
35:14 36:12
37:23 38:1,5
38:24 40:17,19
40:25 41:16
43:15,19,21,25
45:21 47:2
53:16 56:7,20
57:10,12 72:4
85:25 96:10,21
97:3 98:14
103:2,16
104:19 105:4
113:19 115:5
117:4 118:14
118:22 120:11
128:7,9,14
**familiar** 28:2
71:19,21 86:20
108:15,18
110:2
**far** 35:15 37:21
101:1
**fashion** 33:15
**faster** 52:7

**fault** 103:24
**feasible** 47:6,8
**feedback** 92:8
**figure** 56:19
**figured** 71:5
**fill** 79:19 80:1
**financial** 47:15
**financially**
135:15 136:11
**find** 81:24
85:13 100:9
**fine** 58:12
61:24 70:22
93:13 113:12
133:18
**finish** 58:7
93:10
**finished** 55:18
69:20
**firm** 7:9 9:24
10:5
**first** 4:20,23
7:20 8:3 15:22
16:2 17:8,12
26:4 31:10
34:10,10,14,20
34:23 35:2,5,7
35:10,20,21
36:4,6,11,23,23
37:22 38:10,17
46:24 47:7,18
47:20 48:3,14
48:20 67:25
68:14,16,18,21
73:2,9,17

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

**[first - go]**

Page 14

74:18,24 77:4
77:9,13 78:1,3
78:5,9,21,25
79:1,4,7 80:18
83:1,4,8,10,14
83:16,18 84:5
84:6 88:1
91:22 93:3
97:21,23 98:7
98:22,25 99:5
99:14 100:5
105:1 106:18
106:21,23
108:13 117:9
119:23 120:21
121:2,16 123:7
125:21 130:3,4
**fiserv** 3:5 11:5
11:7,8,10,16
**fit** 15:7
**flip** 44:21
**floor** 2:22
**folks** 59:15
73:17,24 92:9
**follow** 25:21
81:14,16,20,23
81:25 82:3,14
92:2 107:3
**following** 82:9
**follows** 8:5
**fontana** 52:17
52:18,22,24
116:1,3
**foregoing**
135:3,4 136:4

139:5
**forgot** 58:4
**form** 5:11
12:16 18:13
19:24 21:21
22:3 23:5,13
24:14 29:17
30:1,21 31:13
32:16 33:25
43:3 45:24
65:22 66:3,24
76:15,19 78:12
79:12 80:22
84:18 85:6,14
86:4,17 91:13
93:4 96:14,24
98:6 99:3,8,17
100:16 101:7
103:21 109:10
110:17 117:13
117:14,19,22
117:25 118:7
118:25 124:2
125:22 128:10
129:14 130:21
**format** 122:24
**forth** 13:4
80:20
**forward** 99:15
**forwarded**
97:15
**found** 39:7
**frame** 57:6
118:21

**fraudulent**
84:12,16
**frequent** 82:18
**friday** 75:1
**frivolous** 30:21
**full** 29:20,20
33:14 123:2
**fully** 74:13
**function** 14:11
14:12,18,19
15:18,20 39:5
46:17,19 47:11
48:11 51:25
73:2 113:15
116:4
**functions** 47:16
48:14 57:25
73:2
**further** 32:6
55:6 56:19
69:11 79:17
95:22 96:2
135:13 136:9
**future** 128:13
**fyi** 114:4

**g**

**g** 6:1 9:13
**ga** 1:18 2:6,13
2:23
**gaps** 56:14
**gathering**
122:18
**generating**
36:5,6

**georgia** 1:2
6:12,15 9:8
135:19
**getnatashacol...**
9:12,21
**getting** 36:11
81:3,11 88:19
88:22 92:8,20
98:4 103:12
111:12,13
116:5 123:20
**give** 8:25 9:3
52:10 82:1,9
119:24
**given** 51:7
54:10 92:4
120:17 139:9
**giving** 58:8
108:24 116:16
**global** 10:23
11:1
**glynn** 34:18
44:16,17 45:1
45:2,10 50:5
53:18,23,25
54:19 55:9
107:19 120:5
**glynn's** 45:14
45:14 47:1
55:5
**go** 22:15,17
24:5 30:20
46:25 59:14
60:11,19 62:1
63:9 77:8,21

Slawin, Eric v. Banc of America Merchant Services, et al.

**[go - impact]**                                              Page 15

82:4 83:1,3,7,9
83:14,16 84:5
91:8 92:14
95:3 102:24
106:6,22 107:2
107:2 115:14
115:22 120:22
122:8 125:7
126:10
**goals**   14:16
**goes**   32:11
70:12 94:12
124:8
**going**   8:20
30:20 31:22,25
36:23 45:16
46:24,25 47:3
50:3 53:2
58:10,13 60:17
69:2 70:3,6
71:3,4 78:10
87:24 90:12,13
90:21,22 92:8
93:20 94:2
107:17 109:14
110:24 118:9
118:24 119:19
123:14 130:2,5
131:7,11 134:3
134:9
**good**   6:2 12:13
**gotten**   84:6
**gov**   125:9
**great**   8:14
34:16,21 38:11

93:18
**group**   26:3
49:3 53:17,20
54:2 108:16
109:6,6 110:12
119:17
**guess**   15:5
21:19 75:4
88:12,12
**guidance**   82:9
104:3
**guys**   48:19

### h

**h**   1:9 2:18 4:5
5:1 7:23 9:13
138:3
**hand**   7:20
**handle**   38:18
92:10,25 114:8
**handled**   28:7
37:17 73:4
90:9 91:2 92:3
108:1 116:17
**handling**   34:23
37:1 108:25
129:3
**hang**   134:5
**happen**   121:10
**happened**
67:14 117:7
128:13
**hard**   133:15
**head**   10:23,25
13:12 17:20
27:4,9,11

116:4
**headline**   60:10
**heads**   58:9
**heard**   8:10 20:8
20:13
**hearing**   7:17
134:8
**held**   13:11 27:6
60:15,23 61:2
98:10,12
**help**   14:13 78:6
78:10 90:4
98:23 100:18
123:3
**helped**   49:23
**helping**   15:24
39:11 47:21,25
48:3 75:19
**helps**   49:24,25
**hereto**   135:15
136:11 139:7
**higher**   34:22
36:10,22 48:16
89:10
**hold**   13:14 69:7
69:10,13
**hope**   49:24
**howarter**
101:11,15,16
101:20
**hr**   132:23
**huh**   44:3 60:14
71:6 96:20
107:5 112:14
123:10

### i

**idea**   79:22
**identifiable**
28:8
**identification**
31:20 41:4
55:17 59:20
68:10 104:13
108:8 109:17
111:2 112:3
113:25 114:14
117:11 119:5
121:20 124:22
129:24
**identified**   5:3
24:2 47:23
48:21,22,23,24
49:2,3,15,22
50:1,11 51:3,8
55:22,24 57:2
57:11 64:9,25
103:6 107:12
**identify**   7:6
15:23 44:8,9
44:10,24 47:22
48:3,17 49:22
55:21 56:13
57:4 64:7
66:22 104:15
115:3
**identifying**
15:5 16:7
49:19
**impact**   16:23
17:1,6,12

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

[impact - issue]                                                                                    Page 16

126:16,21
**impacts** 51:9
**impede** 9:3
**implement**
  49:24 56:15,16
  56:17
**implementati...**
  64:12
**implemented**
  89:6 103:12
**important**
  10:13 79:20
  80:5
**improper** 86:24
**improve**
  107:22
**inadequate**
  36:16
**include** 21:17
  46:20 47:11
  50:1 53:5,7,11
  54:8 79:10
  120:1
**included** 15:15
  51:10 82:20
**includes** 21:16
**including** 44:15
  86:25 107:20
**increased**
  27:22
**incurred** 16:22
  17:1
**independent**
  48:25

**indicated** 44:11
  45:3 114:3
**indicating**
  94:17
**indication**
  31:10
**indirect** 62:12
**info** 131:23
**information**
  28:8,12,25
  29:1 36:11
  54:8 61:16
  67:25 68:15,18
  68:21 74:25
  79:2,3,5,6 84:6
  89:9 98:4 99:1
  99:6 100:19
  101:5,25 106:8
  108:1 115:24
  122:18 124:15
  131:25
**informed**
  131:21 132:22
**initially** 89:11
**initials** 41:7
**innisbrook**
  6:11 9:7
**input** 57:16
  92:24 117:21
**inputs** 52:1
  113:7
**inquiries** 68:13
**insights** 14:15
**insofar** 44:25

**institution** 86:1
**instruct** 31:25
  54:7
**instructions**
  54:11,13 122:9
**intended** 6:23
**interact** 59:15
**interacting**
  15:10
**interest** 96:11
**interested** 14:1
  16:15 96:22
  135:15 136:12
**interface** 37:23
**interim** 89:25
  91:2
**interpret** 30:5
  98:14
**interpretation**
  80:10
**interrogatories**
  4:21,24 130:5
  130:9
**interrupt** 79:14
  93:9
**interruptions**
  28:18
**investigated**
  38:21
**investigation**
  55:6 67:6
**involve** 64:2
  93:2
**involved** 35:22
  35:23 47:24

55:2,7 64:5
  103:5 113:9,10
  118:10 132:3
**involvement**
  82:16 108:16
**issue** 4:13 5:3
  38:14 39:3,7
  39:12 50:11,13
  51:4,8,9 55:22
  55:25 62:1,23
  62:25 63:3
  64:4,17,19,24
  66:17 67:2
  71:22 82:21
  86:2 88:11
  89:13 98:8,11
  98:25 99:7
  102:25 103:1,4
  103:6,7,11,13
  103:18,20,23
  104:3 106:8
  107:7,7,13,14
  108:12,15,19
  108:25 109:4
  110:2,4,5
  111:15,16,20
  111:20 112:24
  112:25 113:6
  114:8,9 115:7
  115:8 116:11
  117:2,6 118:9
  118:18,22
  121:5,15
  122:19,20
  123:13,18,24

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.

August 7, 2024

**[issue - late]**

Page 17

124:5 126:16
126:20,23,25
127:22,23
128:7,16,24
129:7,16 132:4
132:13,15
**issues** 25:16
39:6,17 42:2,3
42:5,8 48:23
105:17,21
106:2,3,10,10
108:11 110:19
113:12,15
116:22
**items** 25:20

**j**

**jacob** 1:19 6:3
135:2,18
**jeannie** 2:3 7:7
8:11 28:16
30:16 70:9
93:8
**jeannie.marx**
2:7
**jessica** 17:22,23
18:4,10 19:10
39:22 41:6,22
42:4 54:2,4,8
55:7 108:16,19
109:2 110:9
113:5 115:2,12
117:1 119:16
**jessica's** 39:25
41:9

**job** 1:20 12:10
12:14 13:4,22
14:3,3,5 15:4
27:6 51:13
57:19,25 73:14
**joint** 17:9
22:18 37:16
**jorge** 74:1 75:3
76:1,9 79:17
82:1 90:11
91:7 94:4,13
95:10 96:2,3
96:18 102:5,10
118:19
**july** 11:8,25
12:1,1,9 27:6
79:18,18 80:20
**june** 33:5,19
44:15,16 45:1
45:7 47:1 55:8
62:2,7,17,18
65:1 77:6,9,15
127:22
**justification**
113:11

**k**

**keep** 44:6 69:8
69:9,12,14,15
69:16,17,18,21
69:22,24 70:1
70:2,3,3,4,6,7
70:23,24 71:6
71:7,8,9,10,11
71:12,13,14,15
71:16 86:1

99:24 109:19
109:20 111:6
112:4,5,6,7,8,9
112:10,11,12
112:13,14,15
112:16,17,18
112:19 119:12
120:16 121:21
121:23,25
122:1,2,3,4,5,6
**keeping** 86:7
132:23
**kendall** 4:16
5:9 43:5,8,13
104:6 109:12
113:9 114:2,7
117:21,25
122:14 123:24
131:21,22
132:2,16
**kennedy** 44:18
45:15 53:18,23
54:19 55:9
**keri** 77:16
**kind** 18:6 40:8
57:25 58:8
102:24
**kinds** 16:5
**know** 8:19 10:8
18:4 19:5 20:4
20:6,7,11 26:4
26:5 28:1 32:2
32:7 38:17,20
41:6 42:12,14
43:5,7 44:4

46:9,12,22
60:12 65:6,20
65:21 66:11
68:23 69:4
74:17 75:15
76:8,10,11
79:13 80:2
81:12 88:2,8
88:20,23 89:3
89:4,7 90:2
93:13 94:9,10
94:18,19,20,24
95:1,5,7,25
96:1,15 97:12
105:13 108:21
118:13 120:12
120:18 125:10
125:15,17
126:8 129:8
**knowledge**
36:3 43:11
86:3 100:10
121:10 135:10
136:6
**known** 40:11

**l**

**l** 7:23,23 9:13
9:13
**lafferty** 3:5
133:25 134:1
**large** 80:9
**larry** 98:19
100:14
**late** 101:2

Case 1:19-cv-04129-AT    Document 196-2    Filed 09/18/25    Page 157 of 178
Natasha Collins
August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

**[law - management]**                                        Page 18

law   7:15
laws   6:25
lead   116:23
leaders   42:1
  103:7
leadership
  49:21 51:22
  52:14,25 53:15
  103:14,17
leaf   69:2
learned   31:1,6
  32:13,25 33:8
  55:6
leave   115:12
led   11:11 14:11
  48:11 103:6
left   12:9 13:17
legal   30:5 35:8
  137:23
leighton   2:21
lend   102:1
letter   94:6,17
level   37:2,13
  41:25 47:23,24
  48:16,16 53:3
  56:5 63:1,7,8
  63:10,15 92:1
  92:9
likely   51:10
  75:18 114:10
limited   81:21
  82:16,16,17
  124:7
line   15:22 16:2
  18:11,11,18

47:18,20 48:3
48:8,10,14,17
48:20,24 50:15
58:7 63:1 98:7
109:7 110:8,12
124:11,11,14
125:21 138:4,7
138:10,13,16
138:19
lines   47:18
  100:1 110:6
linkedin   5:10
  59:7,10,12,14
  59:16,22,23,24
  61:4,5,14,22
lisa   107:3
list   107:11
listed   57:6 72:8
  123:19
little   35:3 48:2
  58:3,10 61:24
  95:22 102:25
llc   1:9 2:4,11,18
  3:3
llp   2:21
located   6:10
location   1:17
long   13:14
  129:11
look   45:13
  46:25 56:9
  57:7 59:15
  61:12 68:6
  77:2,15 79:17
  80:17,25 83:23

83:24 89:23
94:11 95:22
96:5 97:6
98:18 100:3,12
100:23,23
101:9 105:1,6
107:18 108:2
118:11,15,15
122:23 124:9
looked   44:7
looking   41:8
  60:6 61:25
  82:17 97:14
  105:12 116:14
  119:21 120:2
  120:18
looks   47:5 50:4
  61:7 70:12
  112:19 122:7
loreto   81:1
  87:25 88:2,25
  89:23 107:19
loreto's   88:16
losses   16:9,11
lot   17:15 47:16
  62:10,19 119:9
lynn   136:2,15

**m**

m   136:2,15
machado   126:1
made   25:20
  36:1 55:8
  68:13 105:11
  105:23 139:5

mail   90:10
maintain   25:21
  31:2
maintained
  83:8
maintenance
  42:6
major   126:16
  126:21
majority   21:1
make   8:13
  25:18 27:14
  41:15 76:10
  90:8 127:13
making   30:16
  36:5 45:17,22
  131:4
manage   113:6
  113:13
managed   17:24
  34:25 37:19
  39:8,18,22,24
  40:1,2,4 41:10
  115:16 121:3
management
  14:18 15:16
  40:3 41:20,23
  41:24 47:12,14
  47:15,19 48:11
  49:16 50:16
  52:3,10,13
  59:6 60:7
  63:11,21,24
  64:3,15

Case 1:19-cv-04129-AT   Document 196-2   Filed 09/18/25   Page 158 of 178
Natasha Collins                                                        August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

[manager - merchant]                                                      Page 19

**manager** 39:11
101:22,24
**managers** 42:9
**managing**
118:3
**manner** 7:1
**mark** 43:5,8,12
43:13,13 109:1
109:12,12
113:9,9 114:2
116:16,21
117:16,21,25
118:1,2 122:14
131:21
**mark's** 108:24
109:3,5 122:9
**marked** 31:19
41:3 55:16
59:19 68:9
104:12 108:7
109:16 111:1
112:2 113:24
114:13 117:10
119:4 121:19
124:21 129:23
**marty** 20:4,9
20:14 75:25
76:4,8,23
**marx** 2:3,4,4,10
2:11,11 3:3,3,3
4:3 7:7,8,8,8,14
7:15,15 8:9,11
8:12,15 12:18
12:23 13:2
20:1 23:6

28:13,19,22
30:2,6,17,20,23
31:5,8,14,17,21
32:17,23 34:1
36:19 41:1,5
43:4 44:21,23
46:1 49:12,13
50:19 51:1
52:22,23 55:15
55:20 57:14,15
58:3,18 59:18
59:21 60:1,2
60:11,16,22,24
61:3 66:5 68:6
68:11,25 69:1
70:14,19,22
71:1,2 77:1,24
78:7,15,23
86:5 87:3,9
91:15,17 93:13
93:17,19 94:1
95:4 97:1
100:17 104:10
104:14 108:4,9
109:11,14,21
110:18,21
111:3 112:1,22
113:23 114:1
114:11,15
117:8,12 119:3
119:15 121:18
122:12 124:3
124:20 125:1
126:10,12
129:21 130:1

131:7,10,16
133:3,11,14,19
134:5
**marxlawgrou...**
2:7,14
**mat** 101:16
**materials** 67:22
**matt** 101:24
**matter** 6:7 7:10
8:11,17 9:16
**matters** 42:2
**matthew**
101:11
**mean** 14:9,24
15:19 20:6,24
21:14 22:4
36:15 47:4,13
49:14 51:5
59:9 65:6
85:19 89:12
91:24 92:15
94:19 97:18
100:3 103:22
106:15 107:23
115:18 121:9,9
**meaning** 128:6
128:20
**means** 7:2 28:1
52:14 65:9
78:5 80:8 83:9
89:7,8 90:17
95:7 103:4
107:12 121:12
**meant** 63:12
83:9 89:5

98:11 103:13
**measure** 14:14
15:13
**mederos** 20:5,9
20:14 75:25
76:4,8
**medical** 8:24
**medications**
9:2
**meet** 19:23
25:23 28:6,24
30:7
**meeting** 26:1
105:25
**meetings** 19:16
19:20 22:19,23
25:5,12,13,18
25:24,25 26:2
26:3
**member** 75:17
**mention** 132:7
**mentioned**
72:18 82:7
132:5,10
**merchant** 1:8
1:10 2:17,18
6:8 11:18,19
16:17 17:4,5
20:20,25 22:7
22:11,24 23:17
23:21 24:7,17
26:9 28:6 35:4
35:23 36:10
37:14,19 42:16
51:21 68:2

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

**[merchant - noncompliance]**                                    Page 20

74:8 85:21
86:3 91:1
96:10,17 97:9
99:13 100:2
116:7 137:4
138:1 139:1
**merchants** 15:2
21:14,16 23:11
34:9,14,20
38:10 42:13
43:17,23 65:12
65:19 66:11
67:16,19 73:15
73:22 83:1,3
83:14 84:11,15
84:22 85:12
86:12 89:9,13
99:13,15
127:11,25
128:8 129:17
**met** 25:10 37:4
105:18 106:11
**metrics** 15:9
**middle** 7:21
106:17,22
**milestones**
51:11
**million** 15:1,8
**mind** 93:11
129:11
**minute** 21:4
74:16 90:23
119:8,9
**minutes** 58:11
93:17 131:8

**misrepresent**
84:21
**mitigate** 15:25
47:25
**mitigating** 16:7
16:9,11,16
**mitigation** 39:9
47:22 49:23
51:10,11,14,25
52:11 53:6,11
53:13,21 55:1
55:12
**moment** 50:21
78:17 87:5
102:25
**mong** 100:14
**monica** 44:18
45:15 53:18,23
54:19 55:9,13
**monica's** 53:25
**months** 127:22
**morning** 6:2
102:12
**morris** 75:3,16
76:1,9 94:5,12
94:22 95:10
96:6,12,21
97:3
**motivation**
86:1
**moving** 119:22
120:18
**msas** 23:23
24:8,11 25:4
38:3,7 65:4

**multiple** 103:5
**municipalities**
21:17

**n**

**n** 2:1,10 3:1 4:1
6:1 7:23,23
9:13,13 29:5
52:22,22
**name** 6:2 7:7
7:11,21 8:10
19:5 20:4,8,14
24:8 26:5 61:9
80:24 81:1
113:17 126:6
**names** 54:9,10
**naming** 54:9
**natasha** 1:14
2:19 6:6 7:19
7:22 8:2 28:17
114:3,20,22
115:1,25 137:5
138:2,24 139:2
139:4,12
**native** 122:24
**nature** 25:17
99:22
**necessarily**
36:24
**necessary**
92:18 98:4
99:2 139:6
**need** 25:21
27:14 32:6
52:5,6,7 58:3,6
58:9 78:3

81:23 90:12,13
96:6 106:21
119:10 125:7
125:13 126:13
133:15,24
**needed** 25:7
48:13 90:8
92:3 106:22
**needs** 78:11
133:10
**neither** 135:11
136:7
**never** 5:13
128:6
**new** 15:6 61:10
96:9,17 97:8
100:2 105:17
106:10 115:25
**newman** 19:6
19:11 108:16
**nineteen** 134:6
**non** 128:16
**nonadherence**
127:3
**noncompliance**
38:14 39:3
43:18,24 50:1
62:23 63:3
64:3,16,18,24
66:18 67:2
82:21 86:2,13
107:7 108:12
121:5,15
122:20 128:24
129:7 132:4,13

**nonretaliation** 87:18
**normal** 57:25
**northern** 1:2
**northwest** 2:22
**notary** 6:14 135:18 139:13 139:19
**note** 137:10
**noted** 139:7
**notes** 25:18,20 105:7,10,20,22 106:4
**notification** 115:15
**november** 10:21,24 11:9 122:15
**nuance** 35:8
**number** 9:9 25:14 29:8,11 29:11,20 32:11 32:12 44:2,8 80:25 87:25 91:8,18 94:3 97:7 98:18 100:13 101:10 102:14 105:2 106:3 118:16 120:22,23 125:4
**numbered** 107:11 123:1
**numbers** 4:11 105:13 109:24 114:20

**o**

**o** 6:1 7:23,23 9:13 52:22
**oaths** 6:15
**objection** 6:18 7:17 12:16,19 13:1 18:13 19:24 21:21 22:3 23:5,13 24:14 29:17 30:1,3 31:3,13 32:16,18 33:25 43:3 45:24 65:22 66:2,24 76:15,18 78:12 79:12 80:22 84:18 85:6,14 86:4,17 91:13 93:4 94:25 96:14,24 98:6 99:3,8,17 100:16 101:7 103:21 109:10 110:17 124:2 125:22 128:10 129:14 130:21 134:8
**objections** 4:19 4:22 30:22 130:4,8
**obligation** 86:15
**obtain** 95:23
**obtaining** 15:9 15:11,12
**october** 11:9,24
**offer** 22:11
**officer** 19:9 52:16 135:1,2
**oh** 57:8 93:13 102:12 110:22 119:6 122:25
**okay** 8:16,24 9:5,9,17,20,23 10:2,4,12 11:3 11:6,10,19 12:1,8,13 13:3 13:8,14,18,22 14:4 15:3,15 15:19 16:18 17:7,11,15,22 18:6,10,19,19 18:24 19:2,5,8 19:22 20:13,16 20:23 21:9,13 21:23 22:5 23:1,15,20 24:5,16,25 25:10,23 26:13 26:16,19,21,25 27:5,8,16 28:14,19,23 29:3,7,10,19,23 31:5,23,24 32:9,10,24,25 33:9,14,18 34:13 35:14,25 36:17,17,20 37:6,21 38:1,9 38:22 39:13 40:4,7,11,17,25 41:1,15 43:13 43:21 44:2,6,7 44:8,14 45:5,9 45:13,21 46:8 46:20,22,22 47:7 48:2,6,8 48:15 49:1 50:3,18 52:24 53:5 54:22,25 55:18,21 56:1 56:18,23 57:3 57:7,10 58:22 59:1,9,14,18 60:1,3,11,12 61:4,8,13,24 62:14,19,22 63:1,6,9,14 64:1,1,7 65:3 65:11 66:6,16 66:20 67:19 68:1,5,8,20,25 69:6,7,8,9,12 69:14,15,16,16 69:17,18,20,21 69:22,24,24 70:1,4,6,8,8,17 70:23,24 71:14 71:16,17,19,22 72:3,9,25 73:23 74:1,6 74:12,15,21 75:2,25 76:8

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.

August 7, 2024

**[okay - p.m.]**

Page 22

77:2,8,13 78:8
78:24 79:9,17
79:25 80:4,17
81:7,10,17
82:24 83:5,13
83:23 84:4,10
85:16 86:22
87:10,16,24
88:4,14,19
89:4,16,23
90:10,23 91:4
91:9,15,18,24
92:7,17,22
93:2,7,15,16,19
94:11,22 95:5
95:9,22 96:17
97:6,12,23
98:2,18,22,25
100:1,5,21
101:1,9,15
102:9,24 103:3
103:16 104:10
104:15,19
105:1 106:7,13
106:24 107:2
107:17 108:2
108:10,21
109:5,14,19,20
109:23 110:2,8
110:11,14
111:7,8,24
112:6,23 113:3
113:17 114:11
114:19 115:1
115:22 116:20

116:25 117:4
117:19 118:14
118:21 119:2,3
119:11,12,13
119:16,19
120:4,9,15
121:4,8,14,21
121:24,25
122:1,2,3,4,7
122:10,11,13
122:17 123:17
123:23 124:4
124:13 125:24
126:19 127:8
129:10 130:2
130:13,19,24
131:2,8,20
132:7,16 133:3
133:5
**onboarding**
  14:20 115:20
**once**  59:17
**ones**  9:18 26:2
**ongoing**  37:10
  38:3,3,7 56:17
**open**  105:21
  106:1,3 113:6
**operational**
  14:18 15:15
  16:8 17:24
  41:17 46:16
**operations**
  10:23 11:1,11
  11:12 13:9,11
  13:13,19,23

14:7,10 15:4
18:21,22,24
27:4,9 41:17
41:22 110:8
**opinion**  66:10
  66:14 76:12
  78:5 80:8,10
  85:3,7,11,16,17
  85:23 90:18
  113:10 116:16
  127:10,15,18
  127:18,24
  128:1,2,3,8
**opportunity**
  52:9 79:20
  119:24,25
**option**  38:9,15
  38:20 45:22
  46:4,9,11 47:6
  52:4 120:7
**options**  34:9
**order**  22:19
  119:23 133:10
**organization**
  18:8 39:8,24
  40:1,4,22 41:9
  113:7,13 114:7
**organizational**
  18:7
**organizations**
  103:5,7
**original**  9:25
  105:22
**originally**
  109:2 113:5

**outcome**
  135:16 136:12
**outlined**  93:6
**outside**  6:17
  48:11 123:21
  124:9,14
  126:25
**overseeing**  40:7
  46:16
**oversight**  39:14
**own**  48:25
  59:10 99:20
  109:7 113:13
  114:8
**owned**  35:4
  103:1
**owner**  17:3
**ownership**  4:13
  92:1,17 103:3
  103:13 107:22
  107:23,24
  108:11,19,23
  110:5,19
  111:10,15,20
  112:24,24
  117:5

**p**

**p**  2:1,1 3:1,1
  6:1 7:23 29:5
  102:6
**p.m.**  47:1 58:17
  93:21,24 94:5
  101:11 111:9
  114:21 131:12
  131:15 134:9

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

**[p.m. - person]**                                                    Page 23

134:11
**page** 4:2,6 5:2
  32:4,5 56:10
  57:7 77:3,8
  80:17 83:24
  90:11 91:9,19
  94:4,17 105:1
  105:10,12
  107:18 117:17
  130:3 138:4,7
  138:10,13,16
  138:19
**paisner** 2:21
**pan** 4:10 29:4,8
  29:10,15,20
  30:8 33:14
  56:14 108:11
  110:5 114:4,8
  115:2,7 117:2
  123:2,13 129:3
**paragraph**
  107:4
**paralegal** 3:3
  7:15 134:6
**parkway** 2:5,12
**part** 5:6,8 17:3
  18:21 19:10,11
  28:11 37:15
  40:22 44:11
  45:9 48:6
  52:24 53:9
  54:2 57:19,24
  60:8 61:17
  63:15,20,21,23
  63:24 64:2

73:14 79:24
  95:15 99:20
  113:7 119:7
  123:7
**participate**
  22:18,23
  132:24
**participated**
  36:4,5,6
**parties** 6:16,19
  135:12,14
  136:8,11
**partner** 7:8,15
  17:8 22:4 39:7
  39:17 64:10,10
  64:21,23
**partnered**
  21:24
**partnering**
  15:22
**party** 68:16
**path** 34:15
  38:13 45:16
  47:3
**patterson**
  77:16
**pause** 69:24
  109:18 119:7,9
  121:24
**pay** 10:14
  116:15
**payeezy** 72:14
  79:7 101:22
  102:6

**paying** 10:4
**payment** 21:8,9
  21:19,25 22:8
  22:11 23:3,12
  23:18 24:12
  35:17 42:1
  65:13
**payments**
  127:11
**paypal** 10:18
  10:20,22,25
  11:4
**pci** 28:1 29:15
  29:24 30:10,13
  31:1,10 32:13
  32:20,22 33:2
  33:6,10,20,23
  38:13 39:3,6
  42:13,17,22
  43:1,9,18,24
  45:17,22 46:12
  50:1 62:23
  63:3 64:3,16
  64:18,24 65:4
  65:13,21 66:12
  67:2,16,20
  68:14,21,22
  72:11,13,17
  79:4,5,6,10,19
  79:25 80:3
  82:21 84:16
  85:1,5,13 86:2
  86:12 94:6,9
  94:17 95:6,24
  96:1,3,10,12,18

96:22 97:4,9
  99:16 100:2
  102:16,19
  107:7,14
  108:12 112:25
  118:24 120:1
  121:5,15
  122:19 125:14
  127:3,12
  128:16,23,24
  129:3,6,12,18
  132:3,12
**peachtree** 2:22
**peers** 75:24
**people** 53:18
  54:16,20 55:2
  55:10 100:9
  107:20 123:20
  124:10
**perfect** 8:14
**perform** 89:3
**performance**
  14:14,15,16
  15:13 24:24
  25:14 101:25
**period** 11:6,22
  12:6,22 13:25
  14:4,22 17:18
  19:19 20:2
  26:15,16 67:17
**permission**
  123:20
**permitted** 6:23
**person** 52:15
  88:4 126:7

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

[personal - process]                                                    Page 24

**personal** 28:25
131:24
**personally** 25:3
28:8
**perspective**
73:17
**phone** 28:17
**phrasing**
107:25
**physical** 8:24
**picturing** 18:7
**piece** 67:1
**place** 15:24
67:4 90:4,6
**places** 48:21
**plaintiff** 1:6 2:2
7:9
**plaintiff's** 4:20
4:23 122:25
130:4,8
**plan** 39:9,11,19
40:8 48:4
51:10,12,14,25
52:2,5,7,11
53:11,14,21
55:1,12 56:8
56:11,12,15,18
56:24 63:16
64:8 66:8,10
66:17,21,22
67:4,5,6
103:11,15,19
107:9
**planning** 14:11
14:12 27:4,9

**plans** 15:24
47:22 48:1
49:23,24 64:11
**play** 50:22
**played** 75:18
75:19
**players** 17:15
17:17
**please** 7:6,19
8:18 9:11
28:15 32:2
38:4 50:20
58:11 69:18
70:2,3 71:6,7,8
78:15 86:18
87:4 95:23
96:3 106:6
109:18 111:6
112:5 124:8
**point** 42:10
54:5,16 61:10
61:14 83:16
88:6 92:7
106:18 107:3
**pointe** 2:5,12
**points** 105:18
120:3
**policies** 48:12
94:15
**policy** 132:1
**portal** 78:4
83:7
**position** 10:25
11:12

**positioned**
84:21
**possibilities**
99:12
**possible** 28:15
120:4
**potential** 15:6
15:23 51:9
123:18 124:5
127:6
**practice** 131:3
**prefer** 121:1
**preferred** 46:4
46:8,11
**prepare** 130:13
**prepared**
104:21 118:8
130:16,17
136:3
**preparing**
117:21
**presence** 6:17
24:19
**present** 3:2
10:24 25:25
**presented** 55:3
**presently** 6:10
**previous** 27:15
105:8
**previously** 56:2
64:14 72:18
111:16,19
114:6 120:5
121:1 127:17

**primary** 29:8
29:10 35:19
42:10,10
**prior** 11:3
33:18 105:23
123:5 135:5
**proactively**
47:21 49:19
**probably** 20:3
25:11 35:8
53:16
**problem** 56:19
56:24 99:7
**procedural**
6:24
**procedures**
94:15
**proceed** 8:7
**proceeding**
1:17 6:4,22
9:16,24 134:12
136:4
**proceedings**
135:3,5,6,9
136:6
**process** 36:2
49:21 73:3,5
81:15,19 82:2
82:8,10,13,13
82:25 83:21
84:9 88:18
89:5,8 91:11
92:2,9 93:5
94:16 101:3
102:15,18,21

Case 1:19-cv-04129-AT     Document 196-2     Filed 09/18/25     Page 164 of 178

Natasha Collins
August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

[process - questions]
Page 25

102:21 106:13
106:19 107:22
107:23 108:1
108:17 115:25
116:6
**processes** 15:24
16:9,10,13
24:20 38:3,7
116:22 123:6,7
**processing** 21:8
21:10,20 22:1
22:8,12 23:4
23:12,18 24:12
35:6,17 65:13
127:11
**produced** 6:21
70:16
**product** 72:14
79:7,11 99:23
99:23 101:16
101:17,22,22
101:23,25
102:7
**products** 35:21
**professionali...**
37:2
**profile** 5:10
59:7,10,15,22
59:24 60:4,12
60:18 61:1,5,8
61:12,14,18,21
**progress**
105:19
**project** 39:10
56:15 120:15

120:16 128:12
**projects** 120:22
**promoted**
26:24 27:1,3
**promotions**
28:9
**proposal** 109:3
109:6
**proposed** 53:21
89:24
**prove** 47:6
125:14
**provide** 12:21
14:15 72:10,16
74:7 94:14
100:6 125:13
**provided** 21:19
24:12 35:5,10
35:11,12,18,20
65:13 67:24
79:8 86:23
87:17 105:11
**provider** 68:17
**providing** 21:6
22:7 23:3,12
23:18 99:1,5
**provision** 21:25
21:25
**public** 84:25
85:5 126:25
135:18 139:19
**pull** 31:17 50:7
50:11 54:16
55:15 59:18
60:12 68:7,25

104:3,11 112:1
116:18 117:9
**pulled** 53:21
59:23 61:5
**purpose** 8:17
25:12
**purposes**
122:18
**pursued** 38:13
38:16 47:3,4
48:18
**pushed** 78:9
104:5
**pushing** 97:24
**put** 15:24 30:21
39:11,18 61:8
90:6 106:17
117:8 124:12
**putting** 82:20
90:4

**q**

**qualified** 135:7
**question** 8:18
8:19,21 12:10
12:24,25 13:4
16:24 18:15
23:7 24:4
30:11,19,25
33:3 34:2 38:4
43:20 60:3
70:10 78:11,14
78:16 79:14
80:18 84:13
85:9 86:18,19
87:2,3 88:1,21

99:4 102:17
103:9 105:4
111:18 123:11
124:1 126:15
126:18 127:14
127:21 128:11
129:4
**questioning**
58:7 82:12
93:9
**questionnaire**
72:19,23 73:18
74:8,13,18
75:16 77:4,11
77:18 79:16
90:22 91:1
95:11,16,17
96:7,10,18
97:9,17,20
98:5,16 99:19
101:12 106:20
118:9,23
**questionnaires**
68:18 73:11,15
75:20 83:11
92:10 106:25
**questions** 8:18
25:15 32:3,9
68:17,23 69:5
71:4 73:8,10
73:16 89:1,2
95:19,21 96:22
97:4 99:10,14
99:18 100:11
102:2,15,19

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.

August 7, 2024

**[questions - reflected]**

Page 26

111:5,7,9
112:21 119:14
122:11 125:3
133:4,6
**quick** 93:11

**r**

**r** 2:1 3:1 6:1
138:3,3
**raise** 84:14
86:24 87:18
**raised** 87:15
106:7
**raising** 87:12
**ramifications**
84:25 85:4,12
**rather** 14:3
**reach** 126:7
**reached** 38:22
38:25
**read** 31:25 32:6
32:25 34:3
50:19 69:3
78:15 87:3
119:10 122:9
130:24 131:3
133:7 137:9
139:5
**reading** 33:8,12
34:6,8,13
55:19 71:17
90:18 94:20
98:9 119:7
**ready** 32:2,9
69:4 111:4,7
112:20 114:16

114:18 119:14
122:11 125:3
126:13 133:8
**really** 55:9
88:24
**reason** 8:25
58:6 60:3 81:7
91:23 137:11
138:6,9,12,15
138:18,21
**reasons** 120:23
**recall** 18:3,5
19:21 20:16
31:16 38:15,19
38:19,23 40:13
46:14,23 51:6
53:25 54:5,9
54:10 57:5,18
57:22 61:11
67:22 75:14,20
75:23 81:5,18
82:5 88:5,11
88:16,17 90:6
90:25 91:3
105:16 111:13
111:25 113:11
113:11 116:10
116:13 117:3
117:23,24
118:1,6,7
121:7,9,11,12
124:19 125:6
125:11,12
126:4 128:21
128:22 129:19

130:16 132:5
133:1
**receipt** 31:9
137:17
**receive** 37:14
73:1,6,14,21
**received** 5:13
45:10 73:23
95:12,20
113:18,19,20
113:20 120:10
120:11 122:14
**receiving** 33:18
106:8 124:17
**recent** 12:8
105:24
**recognize**
125:5
**recollection**
19:22 81:21
117:1 129:1,5
**record** 6:4,5,19
7:6,21 9:5
25:21 50:23
58:14,15,17
60:15,23 61:2
78:18 87:6
93:21,22,24
131:12,13,15
134:9 135:9
136:5
**recorded** 7:1
135:6
**recording** 6:21
135:8 136:4

**reduced** 135:7
**refer** 22:10
49:7 68:14
107:10 113:14
116:2
**reference**
115:19 125:20
126:19
**referenced**
137:6
**referred** 22:9
29:4 37:9
40:23 41:7,17
50:17 111:16
114:6
**referring** 29:4
32:12 37:6
39:25 40:5
49:1 51:2
54:18 56:2
62:15,20 68:3
71:23,24 80:2
80:4,7 82:8
89:17,20 94:18
94:20 95:14,16
114:6 120:19
123:9,24
**refers** 29:8 90:2
90:3 95:25
106:16 110:11
116:3 120:15
120:19 125:17
125:18
**reflected** 74:21

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

**[refusing - required]**                                                  Page 27

| | | | |
|---|---|---|---|
| **refusing** 98:23 | **relative** 63:16 | 102:17 111:18 | **represent** 8:11 |
| **regarding** 5:5,7 | 64:1 135:13 | 129:4 | 8:16 61:17 |
| 25:14 28:25 | 136:10 | **repeated** 50:23 | **representation** |
| 30:8 35:16 | **reliant** 92:8 | 78:18 87:6 | 9:23 |
| 36:21 38:2,6 | **relied** 68:18 | **rephrase** 16:23 | **representative** |
| 43:17 64:13,16 | **remaining** | 41:13 84:13 | 3:5 |
| 64:18 67:20,24 | 73:10 | 88:21 124:1 | **representing** |
| 68:21 72:11,17 | **remediate** | 133:1 | 7:12 10:5 |
| 81:19 82:25 | 56:19 66:17 | **report** 17:18,25 | **represents** 7:9 |
| 92:9 94:9,14 | 101:4 | 18:2,18 26:13 | **reputational** |
| 97:8 101:12 | **remediated** | 26:17 27:13 | 85:18,19 |
| 107:7 108:11 | 48:18 | 62:4,8 75:12 | 126:16,21,22 |
| 108:11 111:20 | **remediation** | 94:14 95:8,24 | 126:24 |
| 114:4,8 115:2 | 39:19 40:8,8 | 96:1,7 | **request** 55:8 |
| 117:1,5 118:23 | 48:1,4 53:6 | **reported** 1:19 | 74:24 75:3 |
| 122:19 | 56:8,11,24 | 17:20 18:4 | 78:4 79:2 |
| **regards** 28:7 | 63:16 64:8,11 | 26:10 62:9 | 90:15,20 |
| **regular** 19:16 | 66:8,10,17,22 | **reporter** 5:13 | 118:24 |
| 25:5,8 | 67:4 103:11,19 | 6:2,3,13 7:16 | **requested** |
| **regulations** | 107:6,9 123:18 | 8:6 28:10,15 | 10:14 50:24 |
| 30:5 | 124:5 | 28:20 36:18 | 78:19 87:7 |
| **regulatory** 28:6 | **remember** | 49:8,11 50:21 | 99:21 135:21 |
| 28:24 30:8 | 31:15 40:22,23 | 50:23 52:20 | **requests** 38:18 |
| **rejected** 120:5 | 81:3 111:12 | 58:13,16 65:25 | 73:3,6 78:6 |
| **related** 19:3 | 117:17 118:4 | 76:16 77:22 | 81:16 82:14 |
| 70:15 71:4 | **reminds** 123:17 | 78:17,18 87:5 | 83:8,17 89:9 |
| 111:9 112:24 | **remote** 1:17 | 87:6 93:20,23 | 89:13 90:8 |
| 112:25 135:11 | **remotely** 6:17 | 131:11,14 | 91:2 92:3,19 |
| 136:7 | **remove** 106:13 | 133:9,12,17,20 | 93:1 101:5 |
| **relationship** | **reorganization** | 133:24 134:2,7 | 106:9,22 108:1 |
| 20:18 22:6 | 123:8 | **reporting** | 115:24 116:5,7 |
| 35:16 37:11,15 | **repeat** 23:8 | 14:15 18:11 | 116:8 |
| 54:1 62:12,13 | 24:4 36:13 | 24:24 26:22 | **require** 39:21 |
| 75:14 76:23 | 38:4 43:20 | 49:17 62:12,12 | **required** 25:7 |
| 79:20 80:5 | 85:9 99:4 | 75:13 | 30:7 32:22 |

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

**[required - right]**                                    Page 28

33:2,6,10 51:7
51:8 53:9 65:4
73:5 82:14
139:13
**requirement**
24:19
**requirements**
28:7,24 30:5,8
**research** 47:5
**reserve** 133:6
**reserved**
134:10
**resolution**
55:12 88:12
108:22,23
115:17 116:10
116:24 127:24
128:5,6
**resolve** 67:1,2
**resolved** 115:8
115:11,13
116:6 126:23
**resolving** 39:12
**respect** 15:16
22:7 29:15
38:3 57:23
64:3 71:23
72:22 79:10
80:18 82:21
86:3 96:23
102:16,19
103:18 106:10
115:7 123:12
129:2,6

**respond** 73:9
90:4,8,24 92:5
92:9,20 98:4
111:24
**responded**
90:20
**responding**
45:11 72:22
77:10 97:21,24
118:23
**response** 34:18
68:12 81:11
83:10 91:10
95:13,21 97:22
118:9 121:12
124:17
**responses** 4:19
4:23 93:1
101:4 130:4,8
130:13,19
**responsibilities**
64:5 109:4
115:3,6 116:11
116:24 126:4
**responsibility**
14:7,9,17,20
15:11,13 17:23
27:17,18 39:4
40:2 42:4
47:17,20 51:16
51:20 74:7,10
99:10 104:5
111:10 118:3
**responsible**
16:19 39:5

46:16,18 49:18
49:20 52:16
62:23 63:16
98:10,12
101:21 103:10
103:25 109:7
**rest** 104:21
**restate** 9:5 43:6
78:13 86:18
**result** 16:10,12
**retail** 107:11,13
**retaliated**
87:23
**return** 137:13
137:16
**returned** 96:8
**revenue** 15:9
**revenues** 15:1
**review** 24:11
50:7,12 52:10
57:20 72:18
74:19,23
116:22 135:21
137:7
**reviewed** 40:16
52:3 57:25
67:23 76:22
91:25 92:3
99:20 130:17
**reviewing**
72:12 79:15
**revised** 106:13
**riai** 107:11,12
**right** 7:20
10:15 11:20,22

12:23 13:20
15:17 16:5,13
18:11,15,25
19:3 21:11
23:23 27:5,24
33:11 36:1
39:18,19 41:19
43:13 44:4,15
44:17,18 45:3
45:7,10,11
47:9 48:18,20
49:5 51:24
53:3 54:20,21
57:4 58:13
60:5,17 61:13
62:1 63:22
67:7,9,10,12
68:15 69:2
73:15,19,24
74:15,22 76:1
76:6 77:2,5,11
78:17 80:25
83:11 86:9
87:5 88:20,23
93:14,20 95:6
95:7,18 96:5,9
97:10,25 98:5
98:23 99:2,14
100:3 101:13
102:7,16,20,24
104:21 106:5
106:25 107:15
107:24 108:3
108:12 109:6,8
109:12 110:12

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.

August 7, 2024

**[right - second]**

Page 29

118:19 122:10
123:21 124:15
126:10 131:11
133:4,9,17
134:7,8
**risk**   14:17,18
15:15 16:17,20
17:4 46:16
47:12,13,14,19
48:11 50:16
52:3,10,12,16
55:3 63:10,20
63:23 64:2,7
64:10,15 85:18
85:19 101:5
107:12 115:23
116:4 120:2
126:16,21,22
126:24 127:2,5
**risks**   15:23
16:5,8,12,15,18
16:22 17:1,2
17:12,12 47:22
47:23 48:4,12
48:17,21,22,23
49:2,2,19,22,25
64:9,22,22,23
127:6
**robert**   2:10
7:15
**robert.marx**
2:14
**role**   13:15
24:10 27:22
39:2,13,14

48:6 63:20,20
64:20 72:22
73:1 75:19,21
75:22 88:5,11
88:16,17 89:2
89:3 115:16
126:4
**roles**   88:7
116:24
**route**   46:24
47:10
**rules**   6:25
**run**   6:12 9:7
12:13

---

**s**

**s**   1:9 2:1,3,18
3:1 4:5 5:1 6:1
7:23,23,23
9:13,13 114:22
138:3
**saha**   17:22,23
17:25 18:4,19
54:4 110:9
**saha's**   18:10
19:10 39:22
41:7,22 42:4
54:3,8 108:16
119:17
**sale**   22:24
24:23
**sales**   10:23
11:1,11,12,14
13:12 14:7,8
14:10,12,13,23
15:13,22 16:3

17:21 18:25
19:2,3,14
22:18 27:4,9
27:12,18,19,20
35:23,25 36:2
36:5,7 39:7,17
40:3 41:19,20
41:23 49:4,16
73:7
**santana**   107:3
**satisfactory**
34:25 36:24
**saw**   72:4,7
80:23 82:6
88:11,15
106:16 108:23
**saying**   22:21
48:15 49:2
61:13,16,19,20
61:22 77:17
92:11 96:6
98:9 99:24
106:1
**says**   45:16 46:6
46:10 47:9
57:8 60:6 78:2
80:4 89:4,24
95:11,15,23
96:2,3,17
97:19 98:7
100:4 105:2,17
107:11,21
114:22 115:1
115:15,23
124:4,8 125:13

126:20
**scheduled**   10:1
**schindler**   136:2
136:15
**scope**   64:5
65:17
**screen**   31:22
108:6,6 111:14
**scroll**   32:1,6,8
60:1 69:6,10
69:19 70:5
81:24 96:2,2,6
119:11 126:14
**scrolling**   44:6
69:8,9,12,14,15
69:16,17,18,21
69:22,24 70:1
70:2,3,4,7,23
70:24 71:6,7,8
71:9,10,11,12
71:13,14,15,16
109:19,20
111:6 112:4,5
112:6,7,8,9,10
112:11,12,13
112:14,15,16
112:17,18,19
119:12 121:22
121:23,25
122:1,2,3,4,5,6
**scrolls**   123:14
**sec**   69:7
**second**   47:23
48:8,10,17,24
50:15 53:3

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.

August 7, 2024

**[second - siai]**                                                    Page 30

56:5,9 60:13
60:24 69:10,13
91:9 94:4
106:9 110:23
115:15 125:21
**section** 69:20
106:11
**security** 89:10
89:14 101:5,12
131:23,25
**see** 13:10 16:5
17:16 25:2,3
26:25 45:19
50:16 54:23
57:5 60:18
61:1 67:21
75:2 76:2
77:20 80:20
81:23 88:25
89:4 91:16
97:10 98:20
102:11 104:4,9
104:22 105:13
106:9 111:14
115:22 123:15
**seeing** 108:13
125:6 126:6
**seemed** 82:15
**seems** 74:19
**seen** 20:15 24:2
40:14,14 94:10
109:25 110:20
116:20 122:10
**segments** 27:18
115:7

**select** 56:14
**self** 5:3 48:23
49:2 50:11
51:3 55:22,24
103:6
**sell** 22:19
**sellers** 73:12
**selling** 21:8,9
**send** 82:2,10
95:23 98:19
101:20 108:4,5
111:8
**sending** 89:13
93:2 131:24
**sends** 77:3
79:18
**senior** 41:25
**sense** 39:10
**sensitivity**
120:17
**sent** 50:4 74:8
75:3 83:25
95:11,15 96:23
97:8,12 100:14
101:10,13
107:19 113:18
113:20 117:18
120:10,11,13
122:14,24
123:6,7 132:3
132:12 137:14
**sentence** 78:1
90:2,3
**september** 97:8
98:19 100:15

101:2,11
102:11 114:21
115:9 116:25
117:6,15
118:19
**series** 119:20
**service** 34:23
37:13 41:10
68:16
**serviced** 37:7
**servicer** 24:3
**services** 1:9,10
2:18,18 6:8
10:5 11:18,19
16:17 17:4,6
17:24 20:20,25
21:5,8,10,20
22:1,7,8,11,12
22:20,24,25
23:4,12,17,19
23:21 24:7,13
24:17 26:9
28:6 35:4,6,17
35:24 37:12,14
37:19 39:18,22
47:15 51:21
85:21 137:4
138:1 139:1
**servicing** 37:3
37:4,17 38:2,6
42:5
**serving** 15:14
**set** 13:4 14:13
44:14 48:12

**seven** 81:6
111:14
**several** 12:6
78:20 88:6
**share** 31:22
108:5,6 109:15
110:21,24
113:23 114:11
127:19 128:4
**shared** 20:20
124:15
**sharepoint**
93:3
**sharing** 20:23
**sheet** 137:11
**sheila** 3:5
133:25
**shell** 55:15
129:21
**shelley** 3:3 7:14
31:17 32:1
41:1 44:2 68:6
104:11 117:9
**show** 31:23
41:1 44:22
57:14 60:17
68:7 71:1,3
81:13 91:16
124:20 129:21
130:2
**showed** 123:5
**showing** 60:8
**siai** 4:13 53:6
57:20 62:1
66:21 67:9,17

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

[siai - statement]

Page 31

| | | | |
|---|---|---|---|
| 82:21 102:25 | 42:24 43:7,16 | 128:7,15,20,23 | **specifically** |
| 108:17 111:10 | 43:22 44:18 | **solutions** 56:14 | 11:12 14:7 |
| 112:25 114:8 | 50:6,8 53:5 | 89:25 90:3,6,7 | 28:9 37:4 51:5 |
| 115:2,7,16,20 | 54:7 62:3,8 | 90:24,25 | 54:9 57:22 |
| 116:11 117:2 | 63:15 75:12,22 | 137:23 | 75:14,21,23 |
| 122:18 123:12 | 81:19 82:25 | **solved** 56:24 | 105:13 132:18 |
| 127:23 129:2,6 | 83:14,15,25 | **somebody** 20:8 | **spell** 7:20 |
| **sign** 133:7 | 84:10,14,20,24 | **someone's** | **spelled** 102:6 |
| 137:12 | 86:11 89:18,21 | 29:13 | **spliced** 70:11 |
| **signature** | 91:11,21 92:7 | **sorry** 8:12 | **split** 109:3 |
| 130:11,12 | 92:22 97:7 | 16:23 22:16 | 113:12 |
| 134:10 135:17 | 98:15,25 99:7 | 28:10 36:18 | **spreadsheet** |
| 136:14 | 100:7,8 102:10 | 41:13 43:6 | 122:9,23,24 |
| **signed** 24:22 | 103:20,22 | 44:9 49:8 | **stand** 40:24 |
| 130:10,23,25 | 104:1 105:11 | 52:20 65:25 | **standard** 67:23 |
| 137:19 | 107:20 110:15 | 67:1 69:19 | 133:17 |
| **significant** 80:9 | 111:8,24 | 70:5 76:16 | **standards** |
| 80:12,12,14 | 114:21 116:12 | 77:22 84:12 | 34:22 36:10,23 |
| **signing** 24:11 | 117:14 131:18 | 85:10 86:19 | 37:5,7 127:3 |
| **silent** 28:16,18 | 132:3,12,20,25 | 87:2 95:2 | **start** 10:19 |
| **simpler** 83:21 | 137:4 138:1 | 104:22 108:6 | 105:21 125:8 |
| **simplicity** | 139:1 | 110:22,24 | **started** 12:25 |
| 113:8 | **slawin's** 63:19 | 111:18 119:6 | 12:25 26:22 |
| **simply** 94:17 | 63:20 64:20 | **sought** 79:4,5,6 | 52:8 58:24 |
| 99:15 | 72:22 73:14 | **southeast** | 81:18 |
| **single** 25:22 | 74:7 111:21 | 137:15 | **starts** 32:10 |
| **sitting** 128:22 | 132:17,19 | **spans** 70:11 | 70:12 |
| **situation** 56:13 | **small** 11:13 | **speak** 60:10 | **state** 7:20 |
| **situations** 37:3 | 79:20 120:17 | **speaking** 113:1 | 135:19 |
| **six** 127:22 | **sold** 35:21 | **specific** 12:6 | **stated** 96:16 |
| **skills** 135:10 | **solution** 38:20 | 13:25 37:16 | 127:17 |
| 136:6 | 38:22,24 56:15 | 47:17 51:6 | **statement** |
| **slawin** 1:5 2:2 | 56:16,16,17 | 66:22 68:17,23 | 37:24 51:9 |
| 4:8,9 6:7 7:9 | 57:2,4,11 67:8 | 69:5 95:19 | 56:25 67:12 |
| 8:11,16 42:16 | 67:10 120:4 | 124:19 | 73:21 |

Natasha Collins
Slawin, Eric v. Banc of America Merchant Services, et al.
August 7, 2024

**[states - team]**                                                      Page 32

**states** 1:1 34:3
  94:6
**stayed** 128:3
**stenographic**
  7:2
**step** 50:18,18
  106:19,23
**steptoe** 1:14
  7:22 8:2
**stipulation** 7:3
**stipulations**
  37:17
**store** 94:16
**straightforward**
  83:22
**strategic** 42:2
**streamlined**
  91:12
**street** 2:22
**strike** 67:14
  72:20 74:16
  84:12
**string** 4:8,11,18
  71:24,25 102:4
**structure** 62:10
**subject** 96:9,17
  97:9 100:1
  101:23
**submission**
  57:20 127:9
  129:2
**submit** 52:2
  83:8 106:20
**submitted**
  50:13,14,15

56:4 57:20
  66:21 122:19
  127:23 129:2,6
**subscribed**
  139:14
**subsequent**
  34:17 104:4
  116:20 129:1,6
**sufficient** 52:5
  93:17
**suggest** 54:25
  82:25 83:3
**suggested** 53:6
**suggestion** 83:5
  83:6 84:8
**suite** 2:5,12
**supervisor**
  18:12
**support** 11:13
  115:23
**supported** 16:4
  49:17
**suppose** 40:13
  55:6
**supposed** 53:13
**sure** 60:4 88:10
  88:13,24 90:8
  94:19 98:8
  122:21 125:23
  126:18 127:13
  132:9
**surprised**
  88:10,14
**swear** 6:16
  7:17

**sworn** 6:19 8:3
  135:5 139:14
**systems** 94:15

**t**

**t** 4:5 5:1 7:23
  7:23,23 9:13
  9:13 52:22
  138:3,3
**table** 45:23
  46:4
**tactical** 42:5,8
**take** 6:4,14
  50:18 58:11
  68:6 89:25
  90:5 100:23
  103:14,17
  131:7
**taken** 6:7 135:3
  135:12 136:9
**takes** 47:16
**talk** 20:23 53:2
  102:25 123:20
  123:20
**talked** 38:9
  41:25 42:1
  91:7
**talking** 37:3
  54:15 62:14
  64:22 79:22
  101:2 102:7
  107:10 110:5
  116:8
**targets** 14:13
**tasks** 119:25

**tax** 115:21
**tbd** 57:4,9
**team** 14:8,13
  14:20,24 15:14
  15:21,23 16:1
  16:6 17:24
  18:10,22,24,25
  19:2,3,12,14
  24:20,21 34:11
  38:18 39:8,10
  39:16,17,22,23
  39:25 40:3,5,5
  40:9,11,12,18
  40:19 41:7,11
  41:14,17,22,23
  41:24 42:4
  46:24 47:7
  48:12 49:6,6,7
  49:16,17,18,18
  49:20,22 50:16
  51:22 52:1,4,4
  52:8,10,13,14
  52:25 53:15,24
  54:3,8 55:5,7
  62:10,20,20,22
  62:24,25 63:2
  63:3,6,7,10,15
  63:22 73:7
  75:9,10,18
  79:19,25 80:3
  101:16,17,18
  103:10,13,17
  103:25 109:7
  115:16 119:21
  119:23,24

Natasha Collins
August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

[team - together]

Page 33

123:21 124:9
**team's** 25:14
39:4
**teams** 11:14
14:12 16:3
22:18 49:4
50:11 103:8
104:4 116:22
**technical** 94:15
99:22 100:10
101:24 102:2
**technology**
59:6
**telephone** 9:9
**tell** 8:4 12:14
32:1 52:4 58:6
71:20 78:25
81:17 83:1,14
83:15 99:12
111:4 114:16
126:13 127:10
132:2
**telling** 42:16,21
65:12 84:11,15
129:12,17
134:6
**template** 5:4
56:1
**templates** 51:6
**ten** 58:11 93:17
131:8
**term** 28:2
33:20 47:14,15
99:25

**terminate**
132:25
**terminated**
131:18
**terminating**
132:20
**termination**
132:6,17,20
**terminology**
35:3
**terms** 86:15
118:21
**test** 56:16
**testified** 8:5
30:6,9 36:17
36:20 43:16,22
64:6,20 67:3
71:22 73:13
90:23
**testifying** 135:5
**testimony** 8:25
9:3 30:7 46:21
137:9,17 139:8
**thank** 6:13 7:16
8:6,14 70:20
82:7 119:2,7
119:11 131:10
**thanks** 108:5
**thing** 32:7
73:20 120:21
**things** 51:8
78:21
**think** 10:13
12:24 13:10
14:21 52:5

58:3 66:21
70:11 79:13,14
81:18 91:25
92:14,18,22
103:2 104:2
110:20 114:25
120:8 127:17
128:12 131:7
132:21,22
133:5
**thinking** 120:6
**third** 47:24
68:16 91:19
**thought** 25:10
54:15 84:4
86:25 87:12
89:7 102:1
**three** 47:18
**tier** 125:9,17,18
125:20,20
**tim** 26:4,4,8,14
26:17 51:23
**time** 1:16 6:5
7:5 11:17,22
13:25 14:4,20
14:22 17:24
24:1 26:15,16
26:19 27:17
29:14 33:3,4
33:24 44:11
45:7 51:15
52:19 54:1
56:9 57:5 58:5
58:14,17,24
61:15 62:2,3

62:13,14,16
66:9 70:7 72:5
72:9 74:16
78:8 81:19
85:9 87:2 88:6
88:7,17 89:25
90:5 91:25
92:5,14,20
93:21,24
108:13 110:14
118:8,21,24,25
120:12 123:11
126:3 127:8,9
127:19 128:4
131:12,15,17
132:6,7 134:9
137:18
**timeframe**
137:8
**timeline** 57:3,8
128:15,17,19
**times** 35:20
**title** 12:4,8,9,10
13:11,12,14,15
13:16,19 14:3
26:25 27:3,6
27:10
**titles** 12:14,21
13:5
**today** 8:17,25
9:3 85:24
128:22
**together** 24:1
39:11,18 50:7
50:12 53:20

Natasha Collins
August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

**[together - underwood]**                                         Page 34

54:17 70:11
82:20 88:7
104:4
**told** 42:13,25
43:7,9,17,23
67:19 99:15
127:25 128:9
**tom** 52:17,18
102:3,4,10,12
116:1,3 118:18
**took** 27:17
118:2
**top** 18:7 32:4,5
60:6 105:16
122:8 123:15
**topic** 25:8
**topics** 25:14
**totally** 18:11
19:12
**touched** 25:13
**toward** 128:5
**towards** 66:7
66:10,17
**traffic** 106:14
**tran** 133:14
**transcriber**
136:1
**transcript** 6:21
133:7,10
135:21 136:3,5
137:6,19 139:5
139:8
**transcriptionist**
135:8

**translation**
100:19
**transmission**
29:15
**transmit** 94:16
**transmitted**
33:15
**trouble** 99:21
**true** 17:11
130:9,15,20
131:4 135:9
136:5 139:8
**trust** 85:20
86:14 87:1,13
**truth** 8:4,4,5
**try** 91:11
**trying** 40:20
72:13 77:18,24
92:2 96:13,15
97:15,16
125:11
**tuesday** 55:8
**turn** 90:10
91:18 93:7
95:9
**twenty** 12:17
**twice** 59:17
**two** 44:16 45:6
48:21 70:10
73:2 103:7
**tynan** 26:4,5,8
26:14,17 51:23
**typewriting**
135:7

**u**

**uh** 44:3 60:14
71:6 96:20
107:5 112:14
123:10
**ultimately** 84:4
103:12
**unable** 90:14
**under** 6:24
29:24 30:12,25
110:8,12
126:20
**understand**
6:20 8:18,19
13:3,6 16:13
18:15 21:13
23:7 27:5
30:15 33:22
34:11,14 36:8
40:18 41:11,14
45:16 63:7,19
68:12 72:12
73:13 77:19,25
79:13 81:14
83:18 84:7,10
89:16,17 91:4
94:8,22 109:5
122:17 123:4
123:24 125:24
126:18,19
127:13
**understanding**
16:21,25 17:7
17:16 18:20,20
21:3,5,23 23:1

23:9,15,16
24:7,17 26:11
28:4,5,14,23
29:7 32:20
33:1,5,10,12,20
34:6,9,17,19
35:9 36:21
38:12 45:23
65:7 72:21,25
77:5 79:9 80:6
84:7 86:22
87:10,16,21
90:16 91:1
109:9 124:6
132:11,14
**understood**
8:21
**underwood**
2:20 7:11,12
12:16,20,24
18:13 19:24
21:21 22:3
23:5,13 24:14
29:17 30:1,4
30:15,18 31:2
31:13 32:16,19
33:25 43:3
45:24 58:12
65:22 66:1,2
66:24 70:9,17
70:20 76:15,18
78:12 79:12
80:22 84:18
85:6,14 86:4
86:17 91:13

Veritext Legal Solutions
800.808.4958                                       770.343.9696

Case 1:19-cv-04129-AT   Document 196-2   Filed 09/18/25   Page 174 of 178
Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

**[underwood - witness]**                                    Page 35

93:4,8,16,18
94:25 96:14,24
98:6 99:3,8,17
100:16 101:7
103:21 109:10
110:17 124:2
125:22 128:10
129:14 130:21
131:9 133:5,13
133:21,22
137:1
**underwood's**
9:24 10:4
**unencrypted**
33:15
**united**  1:1
**unmasked**
29:21
**unnumbered**
123:1
**unsecured**
33:15
**update**  108:24
114:4
**updated**  105:3
**upset**  90:1
**use**  9:15,18
**used**  137:19
**uses**  6:23
**using**  67:25
102:22

**v**

**v**  1:7 137:4
138:1 139:1

**vague**  12:20
**validate**  24:21
56:13
**validating**
24:25
**various**  100:1
**vendor**  101:12
**vendors**  95:20
**venture**  17:9
37:16
**verification**
4:22 130:7,11
130:25
**verified**  130:14
**verify**  137:9
**verisign**  5:6,8
20:21 68:1,2
68:13,14,20,24
70:15 71:4,19
71:20,23 72:10
72:13,16 74:17
74:24 75:3,5
76:23 79:15
99:19 101:12
101:23 102:15
102:19 116:8
118:8,12,17,22
118:23
**verisign's**
72:19,23 96:11
**veritext**  6:4
137:14,23
**veritext.com.**
137:15

**versus**  116:14
120:7
**videoconfere...**
1:13 2:3,10,20
3:4,6
**view**  83:7 114:7
**violation**
131:25
**virtually**  6:22
**vis**  75:22,22
**volume**  90:4
92:4,19 116:5
**volumes**  89:10
**vs**  6:7

**w**

**wait**  92:12
110:22 123:14
129:11
**waiting**  92:23
**want**  9:18
17:16 33:23
45:17 46:6
60:25 65:8
84:7 93:9
95:19 98:10,12
122:8 133:14
**wanted**  50:8,10
70:17 109:3
125:24
**wants**  120:16
**way**  8:13 28:7
38:25 40:15
42:7 52:6
56:21 63:6
65:6,10 66:14

73:5 82:12,13
82:15 83:18
84:8 100:24
118:12 120:24
121:4,11,13,17
124:12 129:8
**ways**  37:12
**we've**  58:10
110:4 113:1
**website**  106:21
106:23
**wednesday**
1:15
**week**  59:17
**weekly**  20:3
25:11,12,18,24
114:22
**west**  2:22
**williams**  75:7,8
77:3,17
**willing**  78:6
**witness**  6:10,16
6:19,20 7:12
7:18 8:3 12:17
28:12,21 31:4
31:6 49:10
55:18 60:14
66:4 70:23
76:20,21 78:1
78:13,20 87:8
91:14 95:1
109:18 112:4
119:6 121:21
124:23 133:7
135:4 137:8,10

Natasha Collins                                    August 7, 2024
Slawin, Eric v. Banc of America Merchant Services, et al.

**[witness - z]**                                    Page 36

| | | |
|---|---|---|
| 137:12,18 | **wrote**  59:9 | **z** |
| **words**  95:8 | 87:25 91:20 | **z**  102:6 |
| **work**  9:19,20 | 110:15 114:24 | |
| 11:6,23 55:11 | **x** | |
| 58:19,22 73:9 | **x**  4:1,5 5:1 | |
| 73:17 113:6 | 135:21 | |
| 119:24 120:3 | **xco**  91:25 92:15 | |
| 120:18 | **y** | |
| **worked**  10:25 | **y**  102:6,6 | |
| 11:5,8,17,24 | **yahoo.com.** | |
| 12:4 19:13 | 9:13 | |
| 59:1,2,5 88:7 | **yeah**  8:13 | |
| 126:5 | 11:11 12:8 | |
| **working**  11:3 | 14:2,4 23:8,9 | |
| 11:15 16:3 | 24:5,22 42:7 | |
| 22:5 53:17,20 | 46:3 55:23 | |
| 54:2 58:25 | 57:8 70:19 | |
| 66:7,9,16 | 71:1 77:21 | |
| 101:3,4 102:23 | 78:13,20 86:19 | |
| 103:11,15 | 96:15 99:5 | |
| 116:3,21 | 103:22 105:15 | |
| 123:21 124:9 | 110:23 111:19 | |
| 128:5 | 123:15 124:4 | |
| **workload** | 125:2 128:11 | |
| 82:17,18,19,20 | 129:5 133:14 | |
| **works**  99:23 | 133:22 | |
| 126:8 131:9 | **year**  10:1 14:14 | |
| **write**  91:20,22 | **years**  81:6 | |
| 106:7 114:23 | 111:14 | |
| 117:19 | **yep**  28:20 | |
| **writes**  90:12 | 50:21 54:23 | |
| **writing**  88:8 | 98:7 | |
| 120:24 | | |
| **written**  7:3 | | |
| 72:6 120:13 | | |

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.


Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.