The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF GEORGIA
                             ATLANTA DIVISION

ERIC SLAWIN,                            :
                                        :
          PLAINTIFF,                    :
                                        :
vs.                                     :  DOCKET NUMBER
                                        :  1:19-CV-4129-AT
BANC OF AMERICA MERCHANT                :
SERVICES, LLC, S/H/A BANK OF            :
AMERICA MERCHANT SERVICES,              :
                                        :
          DEFENDANT.                    :
```

**TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS**

**BEFORE THE HONORABLE AMY TOTENBERG**

**UNITED STATES SENIOR DISTRICT JUDGE**

**SEPTEMBER 13, 2022**

**4:15 P.M.**

*MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*

*TRANSCRIPT PRODUCED BY:*

*OFFICIAL COURT REPORTER:*        *SHANNON R. WELCH, RMR, CRR*
                                  *2394 UNITED STATES COURTHOUSE*
                                  *75 TED TURNER DRIVE, SOUTHWEST*
                                  *ATLANTA, GEORGIA  30303*
                                  *(404) 215-1383*

                    UNITED STATES DISTRICT COURT
                    OFFICIAL CERTIFIED TRANSCRIPT

2

**A P P E A R A N C E S   O F   C O U N S E L**


**FOR THE PLAINTIFF:**


        ROBERT N. MARX
        JEAN S. MARX
        MARX & MARX, LLC


**FOR THE DEFENDANT:**


        AITEN M. McPHERSON
        BRYAN CAVE LEIGHTON PAISNER LLP - ATL

**P R O C E E D I N G S**

**(Atlanta, Fulton County, Georgia; September 13, 2022.)**

THE COURT:  All right.  Good afternoon.  This is Judge Totenberg.  Sorry for the delay.  We just -- we were not through with a sentencing that I was conducting until now.

I know that you wanted to speak with me about this independent medical evaluation and also how it might impact the originally agreed-upon extension of discovery.  I had some other questions as well.

I know that there was some things outstanding.  I'm not sure whether you are prepared to address that or not.  I would need to have a little break if you are wanting to.

But let me ask you this:  As I understand, the plaintiff was deposed and asked -- and said during the course of his deposition that he doesn't feel that he at this juncture is experiencing this.

So what is the defendant's response to plaintiff's position that no independent medical exam is now required because he is not suffering mental anguish and does not intend to introduce an expert report speaking to such mental anguish?

MS. McPHERSON:  Judge Totenberg, this is Aiten McPherson for the defendant.  You know, our position is plaintiff here has pled his mental condition in controversy both in his complaint and his deposition.  He spent about a page in his complaint going through his emotional distress and

4

his depression after his termination from BAMS.

He listed out a pretty long list of issues that he experiences, including sadness, frustration, insomnia, food cravings, anxiety, suicidal thoughts, strained relationships with family, and issues with alcohol.

And during his deposition, he testified to some of those issues as well.  He testified that he has been diagnosed with depression; had been prescribed medication for his depression.  Although, he was no longer taking that medication is my understanding.

He testified about his subsequent depression post his termination, issues with his wife, his unfortunate attempt to commit suicide after his termination, and his continued issues with alcohol.

So it is our position he's gone far beyond the garden-variety emotional distress claim.  And we would like an independent medical expert to examine him to determine, you know, whether he is still claiming any distress; if not, when such distress ended; whether anything else has contributed to that distress.

Plaintiff here has produced about, I think, 20, 24 pages of medical records.  And some of them appear to indicate some preexisting issues.  And we would like to examine that as well.

THE COURT:  Okay.  What is plaintiff's counsel's

5

response to that?

MR. MARX: Yes. The first thing, Your Honor -- this is Mr. Marx -- is all of these items, which have been identified by defense counsel, are in the past, at least two years prior to the deposition.

The case law we believe is -- even though Mr. Slawin talks about anxiety and depression, this is within the rubric of garden-variety mental anguish, which is what the cases in our opinion indicate.

There is no cause of action for intentional infliction of emotional distress. There is no allegation of severe or specific mental conditions in the complaint or in his deposition. And so we, respectfully, disagree with the characterization.

And in addition, if he were to be examined, we submit it would be not fruitful. I don't think -- the experts could not opine on his current medical condition. As to his past medical condition, we are happy to provide, you know, releases if they are properly framed. One was a blank. So we have yet to put a doctor's name on it. And they can have that discovery.

But I think case law reflects that given that there is no claim for continuing or prognosis -- mental anguish that it would be -- it has not, as a matter of law, put his mental condition in controversy within the contemplation of Rule 35.

THE COURT:  Well, you have not asserted a separate tort action for intentional infliction of emotional distress, but you are seeking damages based on emotional distress?

MR. MARX:  Mental anguish damages for past mental anguish.

And, Your Honor, I think the case law is pretty clear that that does not amount to placing his current medical condition in controversy within the rule.

THE COURT:  So have you already given a medical release to the defendant's counsel so that they could obtain evidence regarding the defendant's treatment?

MR. MARX:  I believe we did.  I'm not 100 percent sure of that, to be honest.

There was one release that was requested.  It was blank.  It didn't have a name of a doctor on it.  And we said if you can give us -- not a blank one but with the name of the doctor, we will have -- we'll have it executed.

THE COURT:  Did the plaintiff see a particular doctor or counselor for the distress that you have described -- the emotional distress, which -- I mean, I don't know that it had all of the dimensions that Ms. McPherson described.

But, anyway, anything that was like that, did your client see a doctor or a medical professional or therapist in conjunction with those conditions?

MR. MARX:  Yes.  In the past.  In, I think, 2018 and

'17.

THE COURT:  And '17?

MR. MARX:  '17, '18, and/or '19.  He wasn't totally sure about the dates.  But nothing after 2019, Your Honor.

THE COURT:  All right.

So, Ms. McPherson, were you given an authorization to obtain documents from the treating physician or therapist for that time period?

MS. McPHERSON:  Your Honor, not for that time period.  During his deposition, Mr. Slawin testified there was a Dr. Wolfberg that he had seen in 2015, I believe.

I'm not exactly sure when he stopped seeing him, but I think it was shortly thereafter because he retired.  And it was the first we learned about the doctor -- the medical release that Mr. Marx is referring to.

We have had some back-and-forth on how, I guess, to configure it.  And the last time he mentioned it was right before vacation.  So I was going to send it to him this week.

But they provided some medical records from 2017, 2018, and 2019.  But it is unclear to us if Mr. Slawin stopped seeing the doctors because he no longer was depressed.  He testified at times that, you know, he didn't have the money to see some of the doctors and then his insurance ran out.

So that is part of the reason we would like our own independent analysis.  And, you know, we would contend that

there is some pretty severe mental issues that he is alleging here.  He alleges he tried to commit suicide at the end of 2018 after he was terminated from his subsequent job after he was employed at BAMS.

And he alleges that he was depressed at that time, had issues with his family and alcohol, which is part of the reason that he claims he was terminated from his next job at Wells Fargo.

So, you know -- and I know that Mr. Marx and I will differ on the case law.  But there is some case law that states that if there are allegations of depression that go beyond a mere claim for emotional distress and he sets out severe damage, you know, and goes into detail other than just one line in his complaint for mental anguish, which he does, and he testified in his deposition that his claims for mental anguish were based on some of these issues that he described as well.  So it is our position that it goes beyond that garden-variety mental distress claim.

THE COURT:  What was the scope of the independent medical exam that you were looking at?  An hour evaluation?  A -- something more?  What were you -- what is your request?

MS. McPHERSON:  Yes.  Your Honor, we were willing to work with Mr. Slawin and his counsel on that.

Our expert has offered to do everything via Zoom if that would be helpful, if Mr. Slawin doesn't want to take time

off work.

But yeah, absolutely. We're thinking an hour or two just to have her assess his condition.

Like I mentioned before, we only have about 20, 24 pages of medical records. So they are not very thorough. They do mention prior issues with depression and other issues with alcohol. So we wanted to delve into that further.

And given that Mr. Slawin appears to allege that at some point his condition got better, we want to know where that point is. Because, you know, arguably it would cut off some of the damages here.

THE COURT: Wouldn't it make better sense to sort of analyze your need for this after you got his -- after the medical records, assuming that plaintiff's counsel is prepared to give you a release?

MS. McPHERSON: Your Honor, the medical records that we have not received would be older, from 2015. I think they would absolutely help. But we would want something more current.

You know, we --

**(Unintelligible cross-talk)**

THE COURT: I'm sorry. When did you get -- so you've gotten nothing from the '17, '18, '19 period?

MS. McPHERSON: No. No. So what we have is from the '17, '18 -- or from the '18 and '19 period. I believe it was

part of the Wells Fargo employee assistance program that he attended after his issues at Wells Fargo.  And he spoke to two psychologists, psychiatrists, or counselors.  I'm not sure exactly.  We have those medical records.

So the ones that I need to send the medical release to Mr. Marx for is from 2015.

THE COURT:  Was he working for your -- for the defendant at that time in 2015?

MS. McPHERSON:  He was not.  He was not, Your Honor.

THE COURT:  So was the plaintiff seeing a therapist on a regular basis in that time period in 2015, Mr. Marx?

MR. MARX:  His testimony is that he saw a therapist on several occasions.  I'm not sure it was regularly.  But it was in 2015.

THE COURT:  And are you objecting to the provision of those or not?

MR. MARX:  No, no objection.  We just want -- we can work that out.  We got a blank.  I don't want to sign a blank.  If they have the name of the doctor, then we'll have it executed.

THE COURT:  Okay.  Have you-all had any settlement negotiations?

MS. McPHERSON:  We had a mediation, Your Honor, in November.  That was unsuccessful.  November 2021.

THE COURT:  Okay.  Well, what is the principal

element of the damages that the plaintiff is seeking?  Is it back pay or -- I mean, what is -- I'm just trying to understand how the mental -- the psychological damages work into the ultimate -- what you would be seeking at trial.

MR. MARX:  Your Honor, as we understand it, Mr. Slawin can get back pay.  Yes, we're looking for that. Some damages for mental anguish, yes.  Injury to reputation and effect on his career.

THE COURT:  I'm going to go offline for a second and look at something in this file.  Okay?

So just hold on.  And I'll be back with you in two or three minutes.

MR. MARX:  Yes, Your Honor.

MS. McPHERSON:  Yes, Your Honor.

**(A brief break was taken at 4:31 P.M.)**

THE COURT:  Hi.

Before I address this, let me just ask you this:  I see there is a host of other things in the memorandum that plaintiff's counsel filed today about documents you haven't received.

Are those matters that you-all have attempted to resolve, or are those outstanding as well?

MR. MARX:  Your Honor, this is Mr. Marx.

We've been attempting to resolve discovery disputes throughout the course of this litigation.

12

What has been a roadblock is we have not received any verification as to whether any responsive documents are being withheld.  We don't know which documents are responsive to which document request and so on.

We were trying to engage in the discussion that we could put a joint statement together for the Court.  But to get to that point, we need some -- the information as to what the defendant has given us, whether any responsive documents are being withheld, and so on.

And so that has been kind of a roadblock.  And that, from our point of view, is why we feel, you know, it would be -- we entered into that joint motion to extend discovery for the purpose of getting that resolved so that we could then proceed with depositions and complete discovery.

So that has been the roadblock.

THE COURT:  How long did you want as an -- how long did you want as an extension?

MR. MARX:  Well, in the joint motion, the parties at that time requested an extension until February 17.  We can discuss that.

Initially, the defendant had requested an extension until January 31.  We asked for two additional weeks.  And so the parties had agreed on that date, February 17.

THE COURT:  Okay.  Well, let me just say, when I'm looking at the entire posture of the case, I think you've

got -- the defendants need to resolve these discovery issues as to the documents with the plaintiff.

I understand what the plaintiff's position is about the evaluation or interview. But it doesn't sound exactly like a garden-variety set of "I was upset for" -- "and hurt for a few weeks and/or even a number of months." But it sounded like he -- your client went through a lot more, including that it impacted his family life, his whole sense of himself.

And I realize he is not seeking separate damages. But I think the notion that if he had -- on one hand, that if he had a preexisting condition, well, that might explain it. It might not at all. It might just simply be a classic eggshell thing for the defendant. That, you know, whatever issues he suffered or experienced beforehand, that this really caused a whole other level of damage and depression.

So -- but it doesn't sound fully garden-variety either. So, you know, what I think -- I would not authorize an evaluation that is more than 90 minutes as an interview. But I think it is a legitimate request under the circumstances.

But I will just say it is in my own mind conditioned on your getting -- the defendant getting these documents together and being responsive and also the extension until mid February.

If the defendant -- if the plaintiff is no longer really suffering from these conditions, that is fine. He just

14

simply is going to be interviewed about it, about what he experienced.

And that is -- you know, I mean, I'm sure it won't be -- and if he objects at some point and feels like it is overly intrusive, then you need to have some process that you have agreed upon for being able to interrupt the interview.

But I would suggest that he just get it over with. But if he feels that it is absolutely too intrusive, then he is allowed to have a break and give you a call and you can be available to him.

And if it has to be terminated at that point, so be it. But I would hope that it would just -- you know, he was just going to go through it and it would be at a conclusion.

But I'm not going to -- basically, you-all can resolve this question about the documents. And if you can't resolve the documents, I'm not going to authorize the medical evaluation.

I mean, this is really a little bit of everyone needs to get on board and get this done.

MS. McPHERSON:  And, Your Honor, this is Aiten McPherson.

When you say the documents, I just want to be clear. I think Mr. Marx and I have different positions on the document production.  We have produced documents, and we have already agreed to supplement to provide Bates ranges to clarify what

has been produced.  And we're ready to do that in the next week.

My understanding is how we left our last discovery conference was that we were going to speak after they got back from vacation about timing for supplementation.  We had already agreed to supplement that and provide that and a privilege log as well.

THE COURT:  Is that the way you see it also, Mr. Marx?

MR. MARX:  Well, that would go a long way.  If we can get clarification pursuant to what I outlined, that will go a long way towards certainly having that discussion, possibly narrowing or maybe even resolving the documents issue.  And we welcome that, and we'll work with defendant to have that discussion.

THE COURT:  Okay.  I mean, I'm looking --

MS. McPHERSON:  Your Honor, we -- I apologize.

THE COURT:  Go ahead.

MS. McPHERSON:  Our conference was not just about -- I just want to be clear -- not just about plaintiff's issues but about ours as well.

There's certain supplementation that we have asked for and have not received.  They are more as far as the substance of requests.  And that was part of what we were supposed to discuss after plaintiff's counsel's vacation to see

when both sides could supplement.

So I just don't want there to be a misunderstanding that it is just on one end. It is our position -- and I'm sure Mr. Marx will disagree -- that plaintiff needs to supplement some of his discovery responses as well.

THE COURT: All right. And you are going to do a full privilege log since that seems to be part of the issue?

MS. McPHERSON: Yes, we have agreed to do that. And we have asked plaintiff to do that as well. Mr. Marx indicated he wasn't sure if there was anything privileged withheld but that he would check. Because neither party has provided a privilege log at this point.

THE COURT: What is the story about BAMS allegedly refusing to produce information to enable plaintiff to properly address subpoenas to select merchants?

MS. McPHERSON: I'm not sure, Your Honor. We did not discuss that at our conference.

MR. MARX: Your Honor, this is Mr. Marx.

That is one of the outstanding discovery disputes regarding an interrogatory that was propounded and there has been an objection to it. And we don't have -- you know, I don't think the Court wants to get into this piecemeal.

But we have got -- there has been objection to giving us documentation about the JV Wind Down, which is the successor corporation pursuant to the pleadings in this case.

And these are the issues that we look forward to discussing with the defendant once we get some clarification as to, you know, which -- which documents relate to which document requests and whether there is anything being withheld and so on.

THE COURT:  All right.

MR. MARX:  But yes, we have asked for that information and we have not received it.

THE COURT:  All right.  And there still is a Bank of America motion to quash outstanding there or not?

MS. McPHERSON:  Yes.  Yes, Your Honor.  I believe Bank of America and Fiserv both filed motions to quash subpoenas that were served by Mr. Marx.  And those are separate third-party subpoenas.

THE COURT:  Okay.

MR. MARX:  Your Honor, this is Mr. Marx.

And we had included this in our response.  We would request the ability to supplement our responses to those motions to quash just limited to what we didn't know at the time the appearance of Ms. Poole and Ms. Lafferty at Mr. Slawin's deposition in July.

They both work for Fiserv, and they both represented themselves as being the corporate representative for BAMS.  And we think that it is relevant to that discussion and those motions.  We didn't have that information at that time.

18

THE COURT:  Well, I'll allow you to supplement it. But I would like you to take a look at what you -- I mean, it just seems like this is a very broad subpoena.  And obviously you may need to have a subpoena that is -- that seeks all this relevant information.

But, you know, there are 132 document requests -- that is a lot -- in the subpoena.  And I think, you know, on one hand, I'm not going to authorize the plaintiff to be deposed until you work -- all work these kind of more ordinary issues -- work through them.

But I think -- on one hand, I think that you need to be able to get proper discovery from the third party -- these third parties but that is -- and also the defendant here.

But I think that you need to look at this again in terms of what -- maybe there is a redundancy in some of the requests so that it ends up looking more exhausting and exhaustive than it really is.

But I think I would suggest as you -- before you file your supplement addition to this that you really look at this and see whether you can trim it down at all.

MR. MARX:  We are open to modifying it, Your Honor. In fact, I had mentioned that to the attorney for Bank of America, and I did offer him a substantial narrowing.  But that was declined.  But we're open to considering it.

THE COURT:  Okay.  Okay.  All right.  Well, it sounds

like you really could -- are you-all -- are you-all in Atlanta, or are you someplace else?

MR. MARX:  I believe we are all here.

MS. McPHERSON:  Yeah, I think we're all in Atlanta, Your Honor.

THE COURT:  Have you ever met in person other than for deposition, or was that also by Zoom?

MR. MARX:  That was also by Zoom, Your Honor.

THE COURT:  Do you object to meeting in person?

MR. MARX:  No.  I think it is a fine idea.

THE COURT:  Okay.  I think --

MS. McPHERSON:  No, Your Honor.

THE COURT:  I think you should go ahead and meet in person to try to resolve some of these and move forward.  And then you can also at that time discuss a protocol for the -- as to the therapist.

And if there is -- and if you have somebody who would do the evaluation, if you would also give a bio for that person so that Mr. Marx can go over that with his client and see if there is any reason why they would object to that person in particular.

MS. McPHERSON:  Yes, Your Honor.

MR. MARX:  Okay.

THE COURT:  Okay.  All right.  I'm going to extend discovery until mid February and -- to February 17.  And,

meanwhile, why don't you try to get your ducks in order so that you can all meet within ten days and maybe share some information in advance so that you will be more -- be able to be more productive, which might be --

MR. MARX:  Thank you, Your Honor.

THE COURT:  -- again a suggested revision of the document requests or whatever else also that BAMS has that would be -- can tell counsel that might give him an outline of what you intend to do that would be more -- would be -- be responsive or you think that you have already done in response to some of the issues he has raised in his filing of today.

And if you then find that you can't resolve these matters, just agree upon a schedule for giving me a joint discovery statement.

MS. McPHERSON:  Yes, Your Honor, we'll do that.

THE COURT:  Okay.

MS. McPHERSON:  And I just want to clarify.  I want to make sure I heard you correctly, Your Honor.

You want us to meet in person within ten days?

THE COURT:  That is right.

MS. McPHERSON:  Is there any way -- I apologize.  I have a trial starting October 3rd in Delaware.

Is there any way to extent that to even 30 days?

THE COURT:  How does the October 3rd help you?  Because then -- how does the 30 days -- how long do you think

that trial is going?

MS. McPHERSON:  It is only a two-day trial.

THE COURT:  All right.  All right.  What date are you going to -- tell me a specific date that you are proposing alternatively.

MS. McPHERSON:  That we would meet on or before?

THE COURT:  I'm just trying so it is absolutely -- if I'm going to give you that extra time, then I would like to get a definite date.

MS. McPHERSON:  I appreciate that, Your Honor.

How about October 14th -- on or before then?

MR. MARX:  Your Honor, this is Mr. Marx.

I'm certainly -- I certainly understand -- having gone through a trial recently myself, which is in my papers, I certainly understand the pressures.

I'm just -- I'm just trying to figure out that we now have essentially a month to sit and wait until anything is like -- like this gets resolved.

Is there -- I mean, can we --

THE COURT:  Why don't you-all just do this in the next seven days so that it doesn't affect the trial as much?

I mean, just today is --

MR. MARX:  I'm available --

THE COURT:  How about just doing it next Monday so that you just have it -- I mean, it is not going to go on for

hours.  It is just --

MR. MARX:  Monday works.

MS. McPHERSON:  We'll figure it out on this end, Your Honor.  And, you know, my goal before we speak -- we'll look at the issues.  I'm just trying to build in enough time for that.  But we'll figure it out.  Either Mr. Galanek and I, we'll figure it out.

THE COURT:  All right.  Why don't you say Monday?  But if you need ten days, you can have ten days.  So you-all can talk about the time of the day, et cetera.  But either Monday or sometime within ten days of that.  Okay?

MR. MARX:  Okay.

THE COURT:  All right.  But be prepared, everybody, to walk in with some concrete -- something concrete as to any of these sort of outstanding document issues and also the doctor or the -- whoever is going to be evaluating.

All right?

MR. MARX:  Your Honor, this is Mr. Marx again.

Aiten had said that the defendant would agree to clarify what has been produced.  It would certainly allow us to make some headway at an in-person meeting if we can get that before then.  Because if we were to meet without that information, we still don't know what to say because we still don't know where we are in the docs.

MS. McPHERSON:  Your Honor, I'm happy to provide that

if Mr. Marx will provide his supplemental responses by then as well.

THE COURT:  Okay.  Well, it sounds like then everyone get them -- share something with each other -- today is Wednesday -- by next Monday and then you meet by the following -- by Friday of next week.  And then it is not just encroaching too much on your time to --

MR. MARX:  Your Honor, this is Mr. Marx again.

These are different things.  And with due respect, we have agreed to supplement certain things.  Some certain things are still in dispute.  But we may not be able to supplement by Monday.  We may not be able to supplement within ten days.

What I'm talking about is just knowing what is in dispute, what is not in dispute.  And then we can come in on Monday and have that conversation.  And then both parties would supplement but not necessarily by that time of that conference.

THE COURT:  I wasn't looking for you to supplement. I was looking for you-all to identify what the issues were and what --

MR. MARX:  Okay.

THE COURT:  -- what needed exactly -- what needed to be done.  Is there a problem with that particular item or not? So that you don't just simply meet and then you don't -- and then you get a new set of objections or that you have a new set of objections.

So if there is a set of that -- if there are particular documents that have not been produced or that you think are out there -- I mean, you have mentioned them yourself and some of them in your motion.

Just, you know, put this in a form that you can go one, two, three, four, five.  And you can go discuss that.  And the same thing as to any concerns that the defendant has.

And if you cannot resolve these issues, then ultimately you should -- we're going to need to know what issues you are going to be submitting a discovery joint discovery statement on so that we can figure out how many pages you have and how productive we can -- the way to make this as productive as possible.

But that would be after defense counsel's trial, so --

MR. MARX:  Thank you.

THE COURT:  -- try to -- I'm just trying to get it going now so by next Friday you know one way or the other where you are -- how things are moving.

MR. MARX:  Thank you, Your Honor.

THE COURT:  All right.  So yes, still Monday, I think you should --

MS. McPHERSON:  Thank you, Your Honor.

THE COURT:  -- you should distribute to each other what item -- what items you are wanting to go through and what

25

things you feel have not been produced or are outstanding.

MR. MARX: We can do that, Your Honor.

THE COURT: Okay. Very good.

And also I think it would be important for the plaintiff's counsel to have the name of the doctor so he could go meet with his -- so he can talk with his client or the therapist before -- before Friday.

MS. McPHERSON: Yeah. I'm happy to provide that. I have that name.

THE COURT: Okay. And if he is planning or she is planning to administer any tests, I think you should know what those tests -- he needs to know what those tests are.

MS. McPHERSON: Okay.

THE COURT: Okay.

MS. McPHERSON: Yes, Your Honor.

THE COURT: Okay. All right. Great. Good luck.

MR. MARX: Thank you, Your Honor.

THE COURT: All right. Very good. That concludes this matter for today.

MS. McPHERSON: Thank you, Your Honor.

**(The proceedings were thereby concluded at 4:59 PM.)**

C E R T I F I C A T E

UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of the United States District Court, for the Northern District of Georgia, Atlanta Division, do hereby certify that the foregoing 25 pages constitute a true transcript of proceedings had before the said Court, held in the City of Atlanta, Georgia, in the matter therein stated.

        In testimony whereof, I hereunto set my hand on this, the 3rd day of December, 2025.


                            _____
                            SHANNON R. WELCH, RMR, CRR
                            OFFICIAL COURT REPORTER
                            UNITED STATES DISTRICT COURT

MR. MARX: [32]
MS. McPHERSON: [30]
THE COURT: [55]

**'**

**'17 [5]** 7/1 7/2 7/3 9/23 9/25
**'18 [4]** 7/3 9/23 9/25 9/25
**'19 [3]** 7/3 9/23 9/25

**-**

**-- try [1]** 24/17
**-- what [1]** 23/21

**1**

**100 [1]** 6/12
**13 [2]** 1/13 3/2
**132 [1]** 18/6
**1383 [1]** 1/25
**14th [1]** 21/11
**17 [3]** 12/19 12/23 19/25
**1:19-CV-4129-AT [1]** 1/5

**2**

**20 [2]** 4/21 9/4
**2015 [6]** 7/11 9/17 10/6 10/8 10/11
 10/14
**2017 [1]** 7/19
**2018 [3]** 6/25 7/20 8/2
**2019 [2]** 7/4 7/20
**2021 [1]** 10/24
**2022 [2]** 1/13 3/2
**2025 [1]** 26/13
**215-1383 [1]** 1/25
**2394 [1]** 1/24
**24 [2]** 4/21 9/4
**25 [1]** 26/9

**3**

**30 [2]** 20/23 20/25
**30303 [1]** 1/25
**31 [1]** 12/22
**35 [1]** 5/25
**3rd [3]** 20/22 20/24 26/13

**4**

**404 [1]** 1/25
**4:15 [1]** 1/14
**4:31 [1]** 11/15
**4:59 [1]** 25/21

**7**

**75 [1]** 1/24

**9**

**90 [2]** 1/4 13/18

**A**

**ability [1]** 17/18
**able [5]** 14/6 18/12 20/3 23/11 23/12
**about [23]** 3/6 3/24 4/11 4/21 5/7 7/4
 7/14 9/4 11/19 13/3 14/1 14/1 14/15
 15/5 15/19 15/20 15/21 16/13 16/24
 21/11 21/24 22/10 23/13
**absolutely [4]** 9/2 9/18 14/8 21/7
**action [2]** 5/10 6/2
**addition [2]** 5/15 18/19
**additional [1]** 12/22

**address [3]** 3/11 11/17 16/15
**administer [1]** 25/11
**advance [1]** 20/3
**affect [1]** 21/21
**after [12]** 1/6 4/1 4/13 7/4 8/3 8/3 9/13
 9/13 10/2 15/4 15/25 24/14
**afternoon [1]** 3/3
**again [4]** 18/14 20/6 22/18 23/8
**agree [2]** 20/13 22/19
**agreed [7]** 3/8 12/23 14/6 14/25 15/6
 16/8 23/10
**agreed-upon [1]** 3/8
**ahead [2]** 15/18 19/13
**AIDED [1]** 1/21
**AITEN [4]** 2/8 3/21 14/20 22/19
**alcohol [4]** 4/5 4/14 8/6 9/7
**all [32]**
**allegation [1]** 5/11
**allegations [1]** 8/11
**allege [1]** 9/8
**allegedly [1]** 16/13
**alleges [2]** 8/2 8/5
**alleging [1]** 8/1
**allow [2]** 18/1 22/20
**allowed [1]** 14/9
**already [4]** 6/9 14/24 15/5 20/10
**also [11]** 3/7 13/22 15/8 18/13 19/7
 19/8 19/15 19/18 20/7 22/15 25/4
**alternatively [1]** 21/5
**Although [1]** 4/9
**AMERICA [6]** 1/6 1/7 17/10 17/12
 18/23 26/3
**amount [1]** 6/7
**AMY [1]** 1/11
**analysis [1]** 7/25
**analyze [1]** 9/13
**anguish [9]** 3/19 3/20 5/8 5/23 6/4 6/5
 8/14 8/15 11/7
**anxiety [2]** 4/4 5/7
**any [12]** 1/8 4/18 10/21 12/1 12/2 12/8
 19/20 20/21 20/23 22/14 24/7 25/11
**anything [5]** 4/19 6/22 16/10 17/4
 21/17
**anyway [1]** 6/22
**apologize [2]** 15/17 20/21
**appear [1]** 4/22
**appearance [1]** 17/20
**appears [1]** 9/8
**appreciate [1]** 21/10
**are [38]**
**arguably [1]** 9/10
**as [31]**
**ask [2]** 3/13 11/17
**asked [5]** 3/14 12/22 15/22 16/9 17/7
**asserted [1]** 6/1
**assess [1]** 9/3
**assistance [1]** 10/1
**assuming [1]** 9/14
**ATL [1]** 2/9
**ATLANTA [7]** 1/2 1/25 3/2 19/1 19/4
 26/8 26/10
**attached [1]** 1/4
**attaching [1]** 1/7
**attempt [1]** 4/12
**attempted [1]** 11/21
**attempting [1]** 11/24
**attended [1]** 10/2
**attorney [1]** 18/22

**authorization [1]** 7/6
**authorize [3]** 13/17 14/16 18/8
**available [2]** 14/10 21/23

**B**

**back [5]** 7/16 11/2 11/6 11/11 15/4
**BAMS [5]** 4/1 8/4 16/13 17/23 20/7
**BANC [1]** 1/6
**BANK [4]** 1/6 17/9 17/12 18/22
**based [2]** 6/3 8/16
**basically [1]** 14/14
**basis [1]** 10/11
**Bates [1]** 14/25
**be [40]**
**because [8]** 3/19 7/13 7/21 9/10 16/11
 20/25 22/22 22/23
**been [13]** 4/7 4/8 5/3 11/24 12/1 12/10
 12/15 15/1 16/21 16/23 22/20 24/2 25/1
**before [12]** 1/11 7/18 9/4 11/17 18/18
 21/6 21/11 22/4 22/22 25/7 25/7 26/9
**beforehand [1]** 13/14
**being [6]** 12/2 12/9 13/22 14/6 17/4
 17/23
**believe [6]** 5/6 6/12 7/11 9/25 17/11
 19/3
**better [2]** 9/9 9/12
**beyond [3]** 4/15 8/11 8/17
**bio [1]** 19/18
**bit [1]** 14/18
**blank [5]** 5/19 6/15 6/16 10/18 10/18
**board [1]** 14/19
**both [6]** 3/24 16/1 17/12 17/22 17/22
 23/15
**break [3]** 3/12 11/15 14/9
**brief [1]** 11/15
**broad [1]** 18/3
**BRYAN [1]** 2/9
**build [1]** 22/5

**C**

**call [1]** 14/9
**can [24]** 5/20 6/16 10/17 11/6 12/19
 14/9 14/14 15/10 18/20 19/15 19/19
 20/2 20/8 21/19 22/9 22/10 22/21 23/14
 24/5 24/6 24/11 24/12 25/2 25/6
**can't [2]** 14/15 20/12
**cannot [1]** 24/8
**career [1]** 11/8
**case [7]** 5/6 5/22 6/6 8/10 8/10 12/25
 16/25
**cases [1]** 5/8
**cause [1]** 5/10
**caused [1]** 13/15
**CAVE [1]** 2/9
**certain [3]** 15/22 23/10 23/10
**certainly [5]** 15/12 21/13 21/13 21/15
 22/20
**certify [1]** 26/8
**cetera [1]** 22/10
**characterization [1]** 5/14
**check [1]** 16/11
**circumstances [1]** 13/19
**cite [1]** 1/4
**City [1]** 26/10
**claim [4]** 4/16 5/23 8/12 8/18
**claiming [1]** 4/18
**claims [2]** 8/7 8/15
**clarification [2]** 15/11 17/2

**C**

clarify **[3]**  14/25 20/17 22/20
classic **[1]**  13/12
clear **[3]**  6/6 14/22 15/20
client **[4]**  6/23 13/7 19/19 25/6
CM **[2]**  1/2 1/3
CM/ECF **[2]**  1/2 1/3
come **[1]**  23/14
commit **[2]**  4/13 8/2
complaint **[4]**  3/24 3/25 5/12 8/14
complete **[1]**  12/14
COMPUTER **[1]**  1/21
COMPUTER-AIDED **[1]**  1/21
concerns **[1]**  24/7
concluded **[1]**  25/21
concludes **[1]**  25/18
conclusion **[1]**  14/13
concrete **[2]**  22/14 22/14
condition **[8]**  3/23 5/17 5/18 5/25 6/8
 9/3 9/9 13/11
conditioned **[1]**  13/20
conditions **[3]**  5/12 6/24 13/25
conducting **[1]**  3/5
conference **[5]**  1/10 15/4 15/19 16/17
 23/16
configure **[1]**  7/17
conjunction **[1]**  6/24
considering **[1]**  18/24
constitute **[1]**  26/9
contemplation **[1]**  5/25
contend **[1]**  7/25
continued **[1]**  4/13
continuing **[1]**  5/23
contributed **[1]**  4/19
controversy **[3]**  3/23 5/25 6/8
conversation **[1]**  23/15
corporate **[1]**  17/23
corporation **[1]**  16/25
correctly **[1]**  20/18
could **[7]**  5/16 6/10 12/6 12/13 16/1
 19/1 25/5
counsel **[7]**  5/4 6/10 8/23 9/14 11/19
 20/8 25/5
counsel's **[3]**  4/25 15/25 24/14
counselor **[1]**  6/19
counselors **[1]**  10/3
County **[1]**  3/2
course **[2]**  3/14 11/25
Court **[12]**  1/3 1/6 1/9 1/1 1/23 12/6
 16/22 26/6 26/7 26/10 26/17 26/17
COURTHOUSE **[1]**  1/24
cravings **[1]**  4/4
cross **[1]**  9/21
cross-talk **[1]**  9/21
CRR **[3]**  1/23 26/6 26/16
current **[3]**  5/17 6/7 9/19
cut **[1]**  9/10
CV **[1]**  1/5

**D**

damage **[2]**  8/13 13/15
damages **[7]**  6/3 6/4 9/11 11/1 11/3
 11/7 13/9
date **[4]**  12/23 21/3 21/4 21/9
dates **[1]**  7/4
day **[3]**  21/2 22/10 26/13
days **[10]**  1/4 20/2 20/19 20/23 20/25

21/21 22/9 22/9 22/11 23/12
December **[1]**  26/13
declined **[1]**  18/24
defendant **[14]**  1/8 2/7 3/22 10/8 12/8
 12/21 13/13 13/21 13/24 15/14 17/2
 18/13 22/19 24/7
defendant's **[3]**  3/17 6/10 6/11
defendants **[1]**  13/1
defense **[2]**  5/4 24/14
definite **[1]**  21/9
Delaware **[1]**  20/22
delay **[1]**  3/4
delve **[1]**  9/7
deposed **[2]**  3/14 18/9
deposition **[9]**  3/15 3/24 4/6 5/5 5/13
 7/10 8/15 17/21 19/7
depositions **[1]**  12/14
depressed **[2]**  7/21 8/5
depression **[8]**  4/1 4/8 4/9 4/11 5/7
 8/11 9/6 13/15
described **[3]**  6/19 6/21 8/16
detail **[1]**  8/13
determine **[1]**  4/17
diagnosed **[1]**  4/7
did **[8]**  6/12 6/18 6/22 9/22 12/16 12/17
 16/16 18/23
didn't **[4]**  6/15 7/22 17/19 17/25
differ **[1]**  8/10
different **[2]**  14/23 23/9
dimensions **[1]**  6/21
disagree **[2]**  5/13 16/4
discovery **[14]**  3/8 5/21 11/24 12/12
 12/14 13/1 15/3 16/5 16/19 18/12 19/25
 20/14 24/10 24/11
discuss **[5]**  12/20 15/25 16/17 19/15
 24/6
discussing **[1]**  17/2
discussion **[4]**  12/5 15/12 15/15 17/24
dispute **[3]**  23/11 23/14 23/14
disputes **[2]**  11/24 16/19
distress **[12]**  3/25 4/16 4/18 4/19 4/20
 5/11 6/2 6/3 6/19 6/20 8/12 8/18
distribute **[1]**  24/24
DISTRICT **[7]**  1/1 1/1 1/12 26/4 26/7
 26/7 26/17
DIVISION **[2]**  1/2 26/8
do **[14]**  8/24 9/6 15/1 16/6 16/8 16/9
 19/9 19/18 20/9 20/15 20/25 21/20 25/2
 26/8
docket **[2]**  1/5 1/5
docs **[1]**  22/24
doctor **[8]**  6/15 6/17 6/18 6/23 7/14
 10/19 22/16 25/5
doctor's **[1]**  5/20
doctors **[2]**  7/21 7/23
document **[7]**  1/8 12/4 14/23 17/3 18/6
 20/7 22/15
documentation **[1]**  16/24
documents **[14]**  7/7 11/19 12/2 12/3
 12/8 13/2 13/21 14/15 14/16 14/22
 14/24 15/13 17/3 24/2
does **[5]**  3/19 6/7 8/14 20/24 20/25
doesn't **[5]**  3/15 8/25 13/4 13/16 21/21
doing **[1]**  21/24
don't **[14]**  5/16 6/20 10/18 12/3 16/2
 16/21 16/22 20/1 21/20 22/8 22/23
 22/24 23/23 23/23
done **[3]**  14/19 20/10 23/22

down **[2]**  16/24 18/20
Dr. **[1]**  7/11
Dr. Wolfberg **[1]**  7/11
DRIVE **[1]**  1/24
ducks **[1]**  20/1
due **[1]**  23/9
during **[3]**  3/14 4/6 7/10

**E**

each **[2]**  23/4 24/24
ECF **[2]**  1/2 1/3
effect **[1]**  11/8
eggshell **[1]**  13/13
either **[3]**  13/17 22/6 22/10
element **[1]**  11/1
else **[3]**  4/19 19/2 20/7
emotional **[7]**  3/25 4/16 5/11 6/2 6/3
 6/20 8/12
employed **[1]**  8/4
employee **[1]**  10/1
enable **[1]**  16/14
encroaching **[1]**  23/7
end **[3]**  8/2 16/3 22/3
ended **[1]**  4/19
ends **[1]**  18/16
engage **[1]**  12/5
enough **[1]**  22/5
entered **[1]**  12/12
entire **[1]**  12/25
entry **[1]**  1/5
ERIC **[1]**  1/3
essentially **[1]**  21/17
et **[1]**  22/10
evaluating **[1]**  22/16
evaluation **[6]**  3/7 8/20 13/4 13/18
 14/17 19/18
even **[4]**  5/6 13/6 15/13 20/23
ever **[1]**  19/6
everybody **[1]**  22/13
everyone **[2]**  14/18 23/3
everything **[1]**  8/24
evidence **[1]**  6/11
exactly **[4]**  7/12 10/4 13/4 23/21
exam **[2]**  3/18 8/20
examine **[2]**  4/17 4/23
examined **[1]**  5/15
executed **[2]**  6/17 10/20
exhausting **[1]**  18/16
exhaustive **[1]**  18/17
experienced **[2]**  13/14 14/2
experiences **[1]**  4/3
experiencing **[1]**  3/16
expert **[3]**  3/20 4/17 8/24
experts **[1]**  5/16
explain **[1]**  13/11
extend **[2]**  12/12 19/24
extension **[5]**  3/8 12/17 12/19 12/21
 13/22
extent **[1]**  20/23
extra **[1]**  21/8

**F**

fact **[1]**  18/22
family **[3]**  4/5 8/6 13/8
far **[2]**  4/15 15/23
Fargo **[3]**  8/8 10/1 10/2
February **[5]**  12/19 12/23 13/23 19/25
 19/25

**F**

**February 17 [3]** 12/19 12/23 19/25
**feel [3]** 3/15 12/11 25/1
**feels [2]** 14/4 14/8
**few [1]** 13/6
**figure [5]** 21/16 22/3 22/6 22/7 24/11
**file [2]** 11/10 18/18
**filed [5]** 1/2 1/6 1/8 11/19 17/12
**filing [1]** 20/11
**find [1]** 20/12
**fine [2]** 13/25 19/10
**first [2]** 5/2 7/14
**Fiserv [2]** 17/12 17/22
**five [1]** 24/6
**following [2]** 1/1 23/6
**food [1]** 4/3
**foregoing [1]** 26/8
**form [1]** 24/5
**forth [1]** 7/16
**forward [2]** 17/1 19/14
**four [1]** 24/6
**framed [1]** 5/19
**Friday [3]** 23/6 24/18 25/7
**fruitful [1]** 5/16
**frustration [1]** 4/3
**full [2]** 1/8 16/7
**fully [1]** 13/16
**Fulton [1]** 3/2
**further [1]** 9/7

**G**

**Galanek [1]** 22/6
**garden [5]** 4/16 5/8 8/17 13/5 13/16
**garden-variety [5]** 4/16 5/8 8/17 13/5 13/16
**GEORGIA [6]** 1/1 1/25 3/2 26/4 26/8 26/10
**get [16]** 9/22 11/6 12/6 14/7 14/19 14/19 15/11 16/22 17/2 18/12 20/1 21/8 22/21 23/4 23/24 24/17
**gets [1]** 21/18
**getting [3]** 12/13 13/21 13/21
**give [6]** 6/16 9/15 14/9 19/18 20/8 21/8
**given [5]** 5/22 6/9 7/6 9/8 12/8
**giving [2]** 16/23 20/13
**go [13]** 8/11 11/9 14/13 15/10 15/11 15/18 19/13 19/19 21/25 24/5 24/6 24/25 25/6
**goal [1]** 22/4
**goes [2]** 8/13 8/17
**going [19]** 3/25 7/18 11/9 14/1 14/13 14/14 14/16 15/4 16/6 18/8 19/24 21/1 21/4 21/8 21/25 22/16 24/9 24/10 24/18
**gone [2]** 4/15 21/14
**good [4]** 3/3 25/3 25/16 25/18
**got [6]** 9/9 9/13 10/18 13/1 15/4 16/23
**gotten [1]** 9/23
**Great [1]** 25/16
**guess [1]** 7/16

**H**

**had [17]** 3/8 4/8 6/20 7/11 7/16 8/6 10/21 10/23 12/21 12/23 13/10 13/11 15/5 17/17 18/22 22/19 26/9
**hand [4]** 13/10 18/8 18/11 26/12
**happy [3]** 5/18 22/25 25/8
**has [20]** 1/6 3/23 4/7 4/19 4/21 5/24 8/24 12/1 12/8 12/10 12/15 14/11 15/1

**have [55]**
**haven't [1]** 11/19
**having [2]** 15/12 21/13
**he [59]**
**he's [1]** 4/15
**headway [1]** 22/21
**heard [1]** 20/18
**held [1]** 26/10
**help [2]** 9/18 20/24
**helpful [1]** 8/25
**her [1]** 9/3
**here [6]** 3/23 4/21 8/2 9/11 18/13 19/3
**hereby [1]** 26/8
**hereunto [1]** 26/12
**Hi [1]** 11/16
**him [6]** 4/17 7/12 7/18 14/10 18/23 20/8
**himself [1]** 13/8
**his [44]**
**hold [1]** 11/11
**honest [1]** 6/13
**Honor [38]**
**HONORABLE [1]** 1/11
**hope [1]** 14/12
**host [1]** 11/18
**hour [2]** 8/20 9/2
**hours [1]** 22/1
**how [14]** 3/7 7/16 11/3 12/16 12/16 15/3 20/24 20/25 20/25 21/11 21/24 24/11 24/12 24/19
**however [1]** 1/7
**hurt [1]** 13/5

**I**

**I'll [2]** 11/11 18/1
**I'm [28]**
**idea [1]** 19/10
**identified [1]** 5/4
**identify [1]** 23/18
**impact [1]** 3/7
**impacted [1]** 13/8
**important [1]** 25/4
**included [1]** 17/17
**including [2]** 4/3 13/7
**independent [5]** 3/7 3/18 4/17 7/25 8/19
**indicate [2]** 4/22 5/9
**indicated [1]** 16/9
**infliction [2]** 5/11 6/2
**information [7]** 12/7 16/14 17/8 17/25 18/5 20/3 22/23
**Initially [1]** 12/21
**Injury [1]** 11/7
**insomnia [1]** 4/3
**insurance [1]** 7/23
**intend [2]** 3/19 20/9
**intentional [2]** 5/10 6/2
**interrogatory [1]** 16/20
**interrupt [1]** 14/6
**interview [3]** 13/4 13/18 14/6
**interviewed [1]** 14/1
**introduce [1]** 3/20
**intrusive [2]** 14/5 14/8
**is [103]**
**issue [2]** 15/13 16/7
**issues [23]** 4/2 4/5 4/7 4/12 4/13 4/23

16/11 16/20 16/23 20/7 20/11 22/20 24/7

8/1 8/8 8/16 9/6 9/6 10/2 13/1 13/14 15/20 17/1 18/10 20/11 22/5 22/15 23/18 24/8 24/10
**it [77]**
**item [2]** 23/22 24/25
**items [2]** 5/3 24/25

**J**

**January [1]** 12/22
**January 31 [1]** 12/22
**JEAN [1]** 2/5
**job [2]** 8/3 8/7
**joint [5]** 12/6 12/12 12/18 20/13 24/10
**JUDGE [3]** 1/12 3/4 3/21
**Judge Totenberg [2]** 3/4 3/21
**July [1]** 17/21
**juncture [1]** 3/15
**just [38]**
**JV [1]** 16/24

**K**

**kind [2]** 12/10 18/9
**know [33]**
**knowing [1]** 23/13

**L**

**Lafferty [1]** 17/20
**last [2]** 7/17 15/3
**law [6]** 5/6 5/22 5/24 6/6 8/10 8/10
**learned [1]** 7/14
**least [1]** 5/4
**left [1]** 15/3
**legitimate [1]** 13/19
**LEIGHTON [1]** 2/9
**let [3]** 3/13 11/17 12/24
**level [1]** 13/15
**life [1]** 13/8
**like [15]** 4/16 4/23 6/22 7/24 9/4 13/4 13/6 14/4 18/2 18/3 19/1 21/8 21/18 21/18 23/3
**limited [1]** 17/19
**line [2]** 1/6 8/13
**list [1]** 4/2
**listed [1]** 4/2
**litigation [1]** 11/25
**little [2]** 3/12 14/18
**LLC [2]** 1/6 2/5
**LLP [1]** 2/9
**log [3]** 15/6 16/7 16/12
**long [6]** 4/2 12/16 12/16 15/10 15/12 20/25
**longer [3]** 4/9 7/21 13/24
**look [6]** 11/10 17/1 18/2 18/14 18/19 22/4
**looking [7]** 8/20 11/6 12/25 15/16 18/16 23/17 23/18
**lot [2]** 13/7 18/7
**luck [1]** 25/16

**M**

**make [4]** 9/12 20/18 22/21 24/12
**many [1]** 24/11
**MARX [22]** 2/4 2/5 2/5 2/5 5/3 7/15 8/9 10/6 10/11 11/23 14/23 15/9 16/4 16/9 16/18 17/13 17/16 19/19 21/12 22/18 23/1 23/8
**matter [3]** 5/24 25/19 26/11
**matters [2]** 11/21 20/13

**M**

**may [5]** 1/2 1/4 18/4 23/11 23/12
**maybe [3]** 15/13 18/15 20/2
**McPHERSON [5]** 2/8 3/22 6/21 7/6 14/21
**me [6]** 3/6 3/13 11/17 12/24 20/13 21/4
**mean [10]** 6/20 11/2 14/3 14/18 15/16 18/2 21/19 21/22 21/25 24/3
**meanwhile [1]** 20/1
**MECHANICAL [1]** 1/21
**mediation [1]** 10/23
**medical [18]** 3/7 3/18 4/17 4/22 5/17 5/18 6/7 6/9 6/23 7/14 7/19 8/20 9/5 9/14 9/16 10/4 10/5 14/16
**medication [2]** 4/8 4/9
**meet [8]** 19/13 20/2 20/19 21/6 22/22 23/5 23/23 25/6
**meeting [2]** 19/9 22/21
**memorandum [1]** 11/18
**mental [15]** 3/19 3/20 3/23 5/8 5/12 5/23 5/24 6/4 6/4 8/1 8/14 8/15 8/18 11/3 11/7
**mention [1]** 9/6
**mentioned [4]** 7/17 9/4 18/22 24/3
**MERCHANT [2]** 1/6 1/7
**merchants [1]** 16/15
**mere [1]** 8/12
**met [1]** 19/6
**mid [2]** 13/22 19/25
**might [6]** 3/7 13/11 13/12 13/12 20/4 20/8
**mind [1]** 13/20
**minutes [2]** 11/12 13/18
**misunderstanding [1]** 16/2
**modifying [1]** 18/21
**Monday [8]** 21/24 22/2 22/8 22/11 23/5 23/12 23/15 24/21
**money [1]** 7/22
**month [1]** 21/17
**months [1]** 13/6
**more [10]** 8/21 9/18 13/7 13/18 15/23 18/9 18/16 20/3 20/4 20/9
**motion [4]** 12/12 12/18 17/10 24/4
**motions [3]** 17/12 17/19 17/25
**move [1]** 19/14
**moving [1]** 24/19
**Mr. [27]** 5/3 5/6 7/10 7/15 7/20 8/9 8/23 8/25 9/8 10/6 10/11 11/6 11/23 14/23 15/9 16/4 16/9 16/18 17/13 17/16 17/21 19/19 21/12 22/6 22/18 23/1 23/8
**Mr. Galanek [1]** 22/6
**Mr. Marx [18]** 5/3 7/15 8/9 10/6 10/11 11/23 14/23 15/9 16/4 16/9 16/18 17/13 17/16 19/19 21/12 22/18 23/1 23/8
**Mr. Slawin [7]** 5/6 7/10 7/20 8/23 8/25 9/8 11/6
**Mr. Slawin's [1]** 17/21
**Ms. [4]** 6/21 7/6 17/20 17/20
**Ms. Lafferty [1]** 17/20
**Ms. McPherson [2]** 6/21 7/6
**Ms. Poole [1]** 17/20
**much [2]** 21/21 23/7
**my [6]** 4/10 13/20 15/3 21/14 22/4 26/12
**myself [1]** 21/14

**N**

**name [6]** 5/20 6/15 6/16 10/19 25/5

25/9
**narrowing [2]** 15/13 18/23
**necessarily [1]** 23/16
**need [11]** 3/12 9/13 10/5 12/7 13/1 14/5 18/4 18/11 18/14 22/9 24/9
**needed [2]** 23/21 23/21
**needs [3]** 14/18 16/4 25/12
**negotiations [1]** 10/22
**neither [1]** 16/11
**new [2]** 23/24 23/24
**next [7]** 8/7 15/1 21/21 21/24 23/5 23/6 24/18
**no [13]** 3/18 4/9 5/10 5/11 5/23 7/21 9/24 9/24 10/17 10/17 13/24 19/10 19/12
**NORTHERN [3]** 1/1 26/4 26/7
**not [45]**
**nothing [2]** 7/4 9/23
**notion [1]** 13/10
**November [2]** 10/24 10/24
**November 2021 [1]** 10/24
**now [4]** 3/5 3/18 21/16 24/18
**number [4]** 1/5 1/6 1/5 13/6

**O**

**object [2]** 19/9 19/20
**objecting [1]** 10/15
**objection [3]** 10/17 16/21 16/23
**objections [2]** 23/24 23/25
**objects [1]** 14/4
**obtain [2]** 6/10 7/7
**obviously [1]** 18/3
**occasions [1]** 10/13
**October [3]** 20/22 20/24 21/11
**October 14th [1]** 21/11
**October 3rd [2]** 20/22 20/24
**off [2]** 9/1 9/10
**offer [1]** 18/23
**offered [1]** 8/24
**official [7]** 1/1 1/2 1/3 1/7 1/23 26/6 26/17
**offline [1]** 11/9
**Okay [22]** 4/25 10/21 10/25 11/10 12/24 15/16 17/15 18/25 18/25 19/11 19/23 19/24 20/16 22/11 22/12 23/3 23/20 25/3 25/10 25/13 25/14 25/16
**older [1]** 9/17
**once [1]** 17/2
**one [11]** 5/19 6/14 6/16 8/13 13/10 16/3 16/19 18/8 18/11 24/6 24/18
**ones [1]** 10/5
**only [4]** 1/2 1/6 9/4 21/2
**open [2]** 18/21 18/24
**opine [1]** 5/17
**opinion [1]** 5/9
**order [1]** 20/1
**ordinary [1]** 18/9
**originally [1]** 3/8
**other [9]** 3/9 8/13 9/6 11/18 13/15 19/6 23/4 24/18 24/24
**our [13]** 3/22 4/15 5/9 7/24 8/17 8/24 12/11 15/3 15/19 16/3 16/17 17/17 17/18
**ours [1]** 15/21
**out [10]** 4/2 7/23 8/12 10/18 21/16 22/3 22/6 22/7 24/3 24/11
**outline [1]** 20/8
**outlined [1]** 15/11

**outstanding [6]** 3/10 11/22 16/19 17/10 22/15 25/1
**over [2]** 14/7 19/19
**overly [1]** 14/5
**own [2]** 7/24 13/20

**P**

**P.M [2]** 1/14 11/15
**page [2]** 1/5 3/25
**pages [4]** 4/22 9/5 24/11 26/9
**PAISNER [1]** 2/9
**papers [1]** 21/14
**part [5]** 7/24 8/6 10/1 15/24 16/7
**partial [1]** 1/8
**particular [4]** 6/18 19/21 23/22 24/2
**parties [4]** 12/18 12/23 18/13 23/15
**party [3]** 16/11 17/14 18/12
**past [4]** 5/4 5/17 6/4 6/25
**pay [2]** 11/2 11/6
**PDF [1]** 1/1
**percent [1]** 6/12
**period [6]** 1/4 7/8 7/9 9/23 9/25 10/11
**person [7]** 19/6 19/9 19/14 19/18 19/20 20/19 22/21
**physician [1]** 7/7
**piecemeal [1]** 16/22
**placing [1]** 6/7
**plaintiff [14]** 1/4 2/3 3/14 3/23 4/21 6/18 10/10 11/1 13/2 13/24 16/4 16/9 16/14 18/8
**plaintiff's [8]** 3/17 4/25 9/14 11/19 13/3 15/20 15/25 25/5
**planning [2]** 25/10 25/11
**pleadings [1]** 16/25
**pled [1]** 3/23
**PM [1]** 25/22
**point [7]** 9/9 9/10 12/7 12/11 14/4 14/11 16/12
**Poole [1]** 17/20
**portion [1]** 1/4
**position [6]** 3/18 3/22 4/15 8/17 13/3 16/3
**positions [1]** 14/23
**possible [1]** 24/13
**possibly [1]** 15/12
**post [1]** 4/11
**posture [1]** 12/25
**preexisting [2]** 4/23 13/11
**prepared [3]** 3/11 9/14 22/13
**prescribed [1]** 4/8
**pressures [1]** 21/15
**pretty [3]** 4/2 6/6 8/1
**principal [1]** 10/25
**prior [2]** 5/5 9/6
**privilege [3]** 15/6 16/7 16/12
**privileged [1]** 16/10
**problem [1]** 23/22
**proceed [1]** 12/14
**proceedings [4]** 1/10 1/21 25/21 26/9
**process [1]** 14/5
**produce [1]** 16/14
**produced [7]** 1/22 4/21 14/24 15/1 22/20 24/2 25/1
**production [1]** 14/24
**productive [3]** 20/4 24/12 24/13
**professional [1]** 6/23
**prognosis [1]** 5/23
**program [1]** 10/1

**P**

prohibited [1] 1/7
proper [1] 18/12
properly [2] 5/19 16/14
proposing [1] 21/4
propounded [1] 16/20
protocol [1] 19/15
provide [6] 5/18 14/25 15/6 22/25 23/1
 25/8
provided [2] 7/19 16/11
provision [1] 10/15
psychiatrists [1] 10/3
psychological [1] 11/3
psychologists [1] 10/3
purpose [1] 12/13
pursuant [2] 15/11 16/25
put [4] 5/20 5/24 12/6 24/5

**Q**

quash [3] 17/10 17/12 17/19
question [1] 14/15
questions [1] 3/9

**R**

raised [1] 20/11
ran [1] 7/23
ranges [1] 14/25
ready [1] 15/1
realize [1] 13/9
really [6] 13/14 13/25 14/18 18/17
 18/19 19/1
reason [3] 7/24 8/7 19/20
received [5] 9/17 11/20 12/1 15/23
 17/8
recently [1] 21/14
records [6] 4/22 7/19 9/5 9/14 9/16
 10/4
redundancy [1] 18/15
referencing [1] 1/5
referring [1] 7/15
reflects [1] 5/22
refusing [1] 16/14
regarding [2] 6/11 16/20
regular [1] 10/11
regularly [1] 10/13
relate [1] 17/3
relationships [1] 4/4
release [5] 6/10 6/14 7/15 9/15 10/5
releases [1] 5/18
relevant [2] 17/24 18/5
report [1] 3/20
Reporter [5] 1/3 1/6 1/23 26/6 26/17
representative [1] 17/23
represented [1] 17/22
reputation [1] 11/7
request [4] 8/21 12/4 13/19 17/18
requested [3] 6/14 12/19 12/21
requests [5] 15/24 17/4 18/6 18/16
 20/7
required [1] 3/18
resolve [8] 11/22 11/24 13/1 14/15
 14/16 19/14 20/12 24/8
resolved [2] 12/13 21/18
resolving [1] 15/13
respect [1] 23/9
respectfully [1] 5/13
response [4] 3/17 5/1 17/17 20/10
responses [3] 16/5 17/18 23/1

responsive [5] 12/2 12/3 12/8 13/22
 20/10
restricted [1] 1/3
retired [1] 7/13
revision [1] 20/6
right [17] 3/3 7/5 7/17 16/6 17/6 17/9
 18/25 19/24 20/20 21/3 21/3 22/8 22/13
 22/17 24/21 25/16 25/18
RMR [3] 1/23 26/6 26/16
roadblock [3] 12/1 12/10 12/15
ROBERT [1] 2/4
rubric [1] 5/7
rule [2] 5/25 6/8
Rule 35 [1] 5/25

**S**

S/H/A [1] 1/6
sadness [1] 4/3
said [4] 3/14 6/15 22/19 26/10
same [1] 24/7
saw [1] 10/12
say [5] 12/24 13/20 14/22 22/8 22/23
schedule [1] 20/13
scope [1] 8/19
second [1] 11/9
see [8] 6/18 6/23 7/23 11/18 15/8 15/25
 18/20 19/19
seeing [3] 7/12 7/21 10/10
seeking [4] 6/3 11/1 11/4 13/9
seeks [1] 18/4
seems [2] 16/7 18/3
seen [1] 7/11
select [1] 16/15
send [2] 7/18 10/5
SENIOR [1] 1/12
sense [2] 9/12 13/8
sentencing [1] 3/5
separate [3] 6/1 13/9 17/13
SEPTEMBER [2] 1/13 3/2
served [1] 17/13
SERVICES [2] 1/6 1/7
set [5] 13/5 23/24 23/24 24/1 26/12
sets [1] 8/12
settlement [1] 10/21
seven [1] 21/21
several [1] 10/13
severe [3] 5/12 8/1 8/12
SHANNON [3] 1/23 26/6 26/16
share [2] 20/2 23/4
she [1] 25/10
shortly [1] 7/13
should [5] 19/13 24/9 24/22 24/24
 25/11
sides [1] 16/1
sign [1] 10/18
simply [3] 13/12 14/1 23/23
since [1] 16/7
sit [1] 21/17
SLAWIN [8] 1/3 5/6 7/10 7/20 8/23 8/25
 9/8 11/6
Slawin's [1] 17/21
so [45]
some [27] 3/8 3/10 4/6 4/22 4/23 7/16
 7/19 7/23 8/1 8/10 8/16 9/9 9/10 11/7
 12/7 14/4 14/5 16/5 17/2 18/15 19/14
 20/2 20/11 22/14 22/21 23/10 24/4
somebody [1] 19/17
someplace [1] 19/2

something [5] 8/21 9/18 11/10 22/14
 23/4
sometime [1] 22/11
sorry [2] 3/4 9/22
sort [2] 9/12 22/15
sound [2] 13/4 13/16
sounded [1] 13/6
sounds [2] 18/25 23/3
SOUTHWEST [1] 1/24
speak [3] 3/6 15/4 22/4
speaking [1] 3/20
specific [2] 5/12 21/4
spent [1] 3/24
spoke [1] 10/2
starting [1] 20/22
stated [1] 26/11
statement [3] 12/6 20/14 24/11
states [7] 1/1 1/12 1/24 8/10 26/3 26/7
 26/17
STENOGRAPHY [1] 1/21
still [6] 4/18 17/9 22/23 22/23 23/11
 24/21
stopped [2] 7/12 7/20
story [1] 16/13
strained [1] 4/4
submit [1] 5/15
submitting [1] 24/10
subpoena [3] 18/3 18/4 18/7
subpoenas [3] 16/15 17/13 17/14
subsequent [2] 4/11 8/3
substance [1] 15/24
substantial [1] 18/23
successor [1] 16/24
such [2] 3/20 4/19
suffered [1] 13/14
suffering [2] 3/19 13/25
suggest [2] 14/7 18/18
suggested [1] 20/6
suicidal [1] 4/4
suicide [2] 4/13 8/2
supplement [12] 14/25 15/6 16/1 16/4
 17/18 18/1 18/19 23/10 23/11 23/12
 23/16 23/17
supplemental [1] 23/1
supplementation [2] 15/5 15/22
supposed [1] 15/25
sure [11] 3/11 6/13 7/4 7/12 10/3 10/13
 14/3 16/3 16/10 16/16 20/18

**T**

take [2] 8/25 18/2
taken [1] 11/15
taking [1] 4/9
talk [3] 9/21 22/10 25/6
talking [1] 23/13
talks [1] 5/7
TED [1] 1/24
TELEPHONE [1] 1/10
tell [2] 20/8 21/4
ten [6] 20/2 20/19 22/9 22/9 22/11
 23/12
terminated [3] 8/3 8/7 14/11
termination [3] 4/1 4/12 4/13
terms [1] 18/15
testified [6] 4/6 4/7 4/11 7/10 7/22 8/15
testimony [2] 10/12 26/12
tests [3] 25/11 25/12 25/12
than [4] 8/13 13/18 18/17 19/6

**T**

**Thank [6]** 20/5 24/16 24/20 24/23 25/17 25/20
**that [180]**
**them [5]** 4/22 18/10 23/4 24/3 24/4
**themselves [1]** 17/23
**then [20]** 7/23 10/19 12/13 14/5 14/8 19/15 20/12 20/25 21/8 21/11 22/22 23/1 23/3 23/5 23/6 23/14 23/15 23/23 23/24 24/8
**therapist [6]** 6/23 7/7 10/10 10/12 19/16 25/7
**there [28]**
**There's [1]** 15/22
**thereafter [1]** 7/13
**thereby [1]** 25/21
**therein [1]** 26/11
**these [13]** 5/3 8/16 13/1 13/21 13/25 17/1 18/9 18/12 19/14 20/12 22/15 23/9 24/8
**they [13]** 5/19 5/20 6/10 7/19 9/5 9/5 9/17 10/19 15/4 15/23 17/22 17/22 19/20
**thing [3]** 5/2 13/13 24/7
**things [7]** 3/10 11/18 23/9 23/10 23/10 24/19 25/1
**think [29]**
**thinking [1]** 9/2
**third [3]** 17/14 18/12 18/13
**third-party [1]** 17/14
**this [41]**
**thorough [1]** 9/5
**those [11]** 4/7 6/24 10/4 10/16 11/21 11/22 17/13 17/18 17/24 25/12 25/12
**though [1]** 5/6
**thoughts [1]** 4/4
**three [2]** 11/12 24/6
**through [7]** 3/5 3/25 13/7 14/13 18/10 21/14 24/25
**throughout [1]** 11/25
**time [16]** 7/8 7/9 7/17 8/5 8/25 10/8 10/11 12/19 17/20 17/25 19/15 21/8 22/5 22/10 23/7 23/16
**times [1]** 7/22
**timing [1]** 15/5
**today [5]** 11/19 20/11 21/22 23/4 25/19
**together [2]** 12/6 13/22
**too [2]** 14/8 23/7
**tort [1]** 6/2
**totally [1]** 7/3
**TOTENBERG [3]** 1/11 3/4 3/21
**towards [1]** 15/12
**transcript [7]** 1/1 1/5 1/7 1/8 1/10 1/22 26/9
**transcripts [1]** 1/2
**treating [1]** 7/7
**treatment [1]** 6/11
**trial [7]** 11/4 20/22 21/1 21/2 21/14 21/21 24/14
**tried [1]** 8/2
**trim [1]** 18/20
**true [1]** 26/9
**try [3]** 19/14 20/1 24/17
**trying [6]** 11/2 12/5 21/7 21/16 22/5 24/17
**TURNER [1]** 1/24
**two [7]** 5/4 9/2 10/2 11/11 12/22 21/2

24/6
**two-day [1]** 21/2

**U**

**ultimate [1]** 11/4
**ultimately [1]** 24/9
**unclear [1]** 7/20
**under [1]** 13/19
**understand [6]** 3/13 11/2 11/5 13/3 21/13 21/15
**understanding [2]** 4/10 15/3
**unfortunate [1]** 4/12
**Unintelligible [1]** 9/21
**UNITED [6]** 1/1 1/12 1/24 26/3 26/7 26/17
**unsuccessful [1]** 10/24
**until [7]** 3/5 12/19 12/22 13/22 18/9 19/25 21/17
**up [1]** 18/16
**upon [3]** 3/8 14/6 20/13
**upset [1]** 13/5
**us [6]** 6/16 7/20 12/8 16/24 20/19 22/20

**V**

**vacation [3]** 7/18 15/5 15/25
**variety [5]** 4/16 5/8 8/17 13/5 13/16
**verification [1]** 12/2
**very [4]** 9/5 18/3 25/3 25/18
**via [1]** 8/24
**view [1]** 12/11
**vs [1]** 1/5

**W**

**wait [1]** 21/17
**walk [1]** 22/14
**want [13]** 8/25 9/9 9/18 10/17 10/18 12/16 12/17 14/22 15/20 16/2 20/17 20/17 20/19
**wanted [2]** 3/6 9/7
**wanting [2]** 3/12 24/25
**wants [1]** 16/22
**was [40]**
**wasn't [3]** 7/3 16/10 23/17
**way [7]** 15/8 15/10 15/12 20/21 20/23 24/12 24/18
**we [82]**
**we'll [8]** 6/17 10/19 15/14 20/15 22/3 22/4 22/6 22/6
**we're [6]** 9/2 11/6 15/1 18/24 19/4 24/9
**We've [1]** 11/24
**Wednesday [1]** 23/5
**week [3]** 7/18 15/2 23/6
**weeks [2]** 12/22 13/6
**WELCH [3]** 1/23 26/6 26/16
**welcome [1]** 15/14
**well [19]** 3/9 4/7 4/24 6/1 8/16 10/25 11/22 12/18 12/24 13/11 15/7 15/10 15/21 16/5 16/9 18/1 18/25 23/2 23/3
**Wells [3]** 8/8 10/1 10/2
**went [1]** 13/7
**were [14]** 3/4 5/15 7/6 8/16 8/20 8/21 8/22 12/5 15/4 15/24 17/13 22/22 23/18 25/21
**what [39]**
**whatever [2]** 13/13 20/7
**when [6]** 4/18 7/12 9/22 12/24 14/22 16/1
**where [3]** 9/9 22/24 24/18

**whereof [1]** 26/12
**whether [7]** 3/11 4/18 4/19 12/2 12/8 17/4 18/20
**which [13]** 5/3 5/8 6/20 8/6 8/14 12/3 12/4 16/24 17/3 17/3 17/3 20/4 21/14
**who [1]** 19/17
**whoever [1]** 22/16
**whole [2]** 13/8 13/15
**why [5]** 12/11 19/20 20/1 21/20 22/8
**wife [1]** 4/12
**will [8]** 1/3 6/17 8/9 13/20 15/11 16/4 20/3 23/1
**willing [1]** 8/22
**Wind [1]** 16/24
**withheld [4]** 12/3 12/9 16/10 17/4
**within [7]** 5/7 5/25 6/8 20/2 20/19 22/11 23/12
**without [1]** 22/22
**Wolfberg [1]** 7/11
**won't [1]** 14/3
**work [9]** 8/23 9/1 10/18 11/3 15/14 17/22 18/9 18/9 18/10
**working [1]** 10/7
**works [1]** 22/2
**would [37]**
**Wouldn't [1]** 9/12

**Y**

**yeah [3]** 9/2 19/4 25/8
**years [1]** 5/5
**yes [15]** 5/2 6/25 8/22 11/6 11/7 11/13 11/14 16/8 17/7 17/11 17/11 19/22 20/15 24/21 25/15
**yet [1]** 5/19
**you [125]**
**you've [2]** 9/22 12/25
**you-all [8]** 10/21 11/21 14/14 19/1 19/1 21/20 22/9 23/18
**your [48]**
**yourself [1]** 24/3

**Z**

**Zoom [3]** 8/24 19/7 19/8